**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT NEW YORK**

-------------------------------------------------------- x

DEBORAH D. PETERSON,                   :     Case No. 18 Misc. 8302
Personal Representative of the Estate  :
of James C. Knipple (Dec.), et al.,    :
                                       :     (Civil Action Nos. 01-2094 (RCL)
                    Plaintiffs,        :     and 1-2684 (RCL) (D.D.C.))
                                       :
            v.                         :
                                       :     **PUBLIC VERSION**
ISLAMIC REPUBLIC OF IRAN, et al.,      :
                                       :
                    Defendants.        :

-------------------------------------------------------- x


### CLEARSTREAM BANKING, S.A.'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION TO VACATE RESTRAINTS

Francis A. Vasquez, Jr. (FV-1446)
Frank Panopoulos (FP-6173)
W H I T E   &   C A S E  LLP
701 Thirteenth Street, N.W.
Washington, D.C.  20005
Tel: (202) 626-3600
Fax: (202) 639-9355

*Counsel for Clearstream Banking, S.A.*

September 4, 2008

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

FACT BACKGROUND ....................................................................................................... 2

I.      THE NATURE OF CLEARSTREAM'S BUSINESS ............................................ 2

      A.      Transferring and Settling Securities Transactions for Customers ............ 2

      B.      The Omnibus Account With Citibank N.A. ............................................... 4

II.     PLAINTIFFS' RESTRAINTS ................................................................................ 6

III.    THE JUNE 27 HEARING AND THE ACCOUNTS RESTRAINED ................... 6

ARGUMENT ....................................................................................................................... 10

I.      PLAINTIFFS' RESTRAINTS VIOLATE NEW YORK CPLR § 5201 AND UCC
      § 8-112 ................................................................................................................... 10

II.     PLAINTIFFS' RESTRAINTS VIOLATE THE FOREIGN SOVEREIGN
      IMMUNITIES ACT ............................................................................................... 15

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

Federal Cases                                                                                                      Page

*Autotech Tech. LP v. Integral Research & Dev. Corp.*,
499 F.3d 737 (7th Cir. 2007) ...............................................................................................16

*Fidelity Partners, Inc. v. First Trust Co. of N.Y.*,
58 F. Supp. 2d 52 (S.D.N.Y. 1997)...........................................................11, 12, 14, 17

*Fidelity Partners, Inc. v. First Trust Co. of N.Y.*,
58 F. Supp. 2d 55 (S.D.N.Y. 1999)...................................................11, 12, 15, 16, 17

*Fidelity Partners, Inc. v. Phil. Exp. & Foreign Loan Guar. Corp.*,
921 F. Supp. 1113 (S.D.N.Y. 1996)......................................................................16, 17

*Hercaire Int'l Inc. v. Argentina*,
821 F.2d 559 (11th Cir. 1987) ...............................................................................16

*Mones v. Commercial Bank of Kuwait*,
399 F. Supp. 2d 310 (S.D.N.Y. 2005)...................................................................17

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992) ...............................................................................16

*Stephens v. Nat'l Distillers & Chem. Corp.*,
69 F.3d 1226 (2d Cir. 1996)...................................................................................16

State Cases

*McCloskey v. Chase Manhattan Bank*,
11 N.Y.2d 936 (Ct. App. 1962) ...............................................................................17

Federal Statutes

U.S. Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1332(a)(2)-(4), 1391(f), 1441(d),
1602-1611 (1996)................................................................................................2, 16

State Statutes

N.Y. C.P.L.R. § 5201(c)(4) (McKinney 1997)............................................................2, 10, 12, 13

N.Y. U.C.C. §§ 8-102(a)(7), (9), (17) (McKinney 2002)............................................................11

## <u>TABLE OF AUTHORITIES</u>
<u>(cont'd)</u>

N.Y. U.C.C. § 8-112(c) (McKinney 2002) ....................................................................2, 12, 13, 15

N.Y. U.C.C. § 8-317 (McKinney 2002) .......................................................................................12

<u>Other Authorities</u>

8 Lary Lawrence, *Lawrence's Anderson on the U.C.C.* § 8-317:19 (3d ed. 2003, supp. June 2008) ..........................................................................................................................................12

8 William D. Hawkland, *Hawkland U.C.C. Series* § 8-317:11 (rev. 2006, supp. May 2008)…...12

UNIDROIT Draft Convention on Substantive Rules Regarding Intermediated Securities….12, 13

## <u>INTRODUCTION</u>

Clearstream Banking, S.A. ("Clearstream") submits this memorandum of law in support of its Motion to Vacate Restraints on        securities that Plaintiffs restrained at Citibank N.A. ("Citibank") in New York City. 〔Redacted〕

In September 2007, Plaintiffs were awarded a default judgment against the Islamic Republic of Iran in the amount of approximately US $2.6 billion by the U.S. District Court for the District of Columbia (Judge Royce C. Lamberth), arising from the 1983 bombing of the U.S. Marine barracks in Beirut, Lebanon.   While Clearstream recognizes the significance of the judgment, Clearstream has had no role in any of the underlying actions.

Plaintiffs registered their judgment in this district and served a Writ of Attachment on Citibank and Restraining Notice on Clearstream (collectively the "Restraints"), thereby restraining        debt securities (i.e., bonds) worth approximately        that Clearstream 〔Redacted〕 maintained in a custodial Omnibus Account with Citibank.[1]   At the request of Clearstream, a hearing was held before Judge Koeltl on June 27, 2008 to lift and/or modify the restraints.   At the hearing, Clearstream presented a witness and produced documents disclosing information about the restrained securities and the Clearstream customers holding (or that held) interests in those securities.   Because the testimony concerned confidential material subject to a Protective Order issued by Judge Lamberth, the hearing and documents were placed under seal.[2]   At the end of the hearing, Judge Koeltl lifted the Restraints on two securities (in total, worth US $250 million of the amount restrained), kept the remaining securities restrained pending further proceedings, and instructed the parties that further proceedings in this case should be before the Part I judge.

---

[1] Copies of the Writ of Attachment served on Citibank on June 13, 2008, and the Amended Restraining Notice served on Clearstream on June 23, 2008, are attached as Exhibits 1A and 1B, respectively, to the Compendium of Exhibits ("Compendium") accompanying this motion.

[2] A copy of Judge Lamberth's Protective Order is attached as Compendium Exhibit 2.  A transcript of the June 27, 2008 hearing ("June 27 Hr'g Tr.") is attached hereto as Compendium Exhibit 3.

Accordingly, Clearstream moves before this Court to vacate the restraints on      of the remaining securities Plaintiffs have restrained.  The basis for Clearstream's motion is N.Y. Uniform Commercial Code ("UCC") § 8-112(c), which provides that a judgment debtor's interest in security entitlements like those restrained here can be reached by making an attachment or levy only upon the securities intermediary "with whom the debtor's securities account is maintained."  The testimony and evidence produced at the June 27 hearing showed [Redacted] that for      of the securities that remain restrained, Clearstream is not the securities intermediary with whom the judgment debtor's securities account is maintained.  What is maintained at [Redacted] Clearstream with respect to these      securities is the account of another intermediary bank.  That intermediary bank, in turn, maintains the securities accounts in which Plaintiffs allege the judgment debtor has an interest.

Plaintiffs suggest that Iran might own the underlying interest in the      securities at issue. [Redacted] Assuming arguendo that is the case, then Plaintiffs' Restraints on those securities also must be vacated because they violate the U.S. Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332(a)(2), (3), (4), 1391(f), 1441(d), 1602-1611, as amended.  Specifically, 28 U.S.C. § 1609 and § 1610 provide that only a foreign state's property "in the United States" is subject to attachment and execution.  The evidence from the June 27 hearing established that the interests [Redacted] in the      securities purportedly owned by Iran are *not* in the United States.

## FACT BACKGROUND

I.      THE NATURE OF CLEARSTREAM'S BUSINESS

   A.   Transferring and Settling Securities Transactions for Customers

Clearstream is a Luxembourg corporation that is both a bank and international securities settlement system.  *See* June 27 Hr'g Tr. at 7:14-8:7.  Clearstream is recognized and regulated by the European system of Central Banks and facilitates the transfer of money and securities around

the world.  *Id.*  Similar to its competitors in the United States (the Depository Trust & Clearing Corporation) and Europe (Euroclear), Clearstream ensures that securities transactions are promptly and effectively settled between trading parties.  *Id.* at 7:19-25, 14:12-18:20.

Clearstream's customers are limited to Central Banks and financial institutions.  *Id.* at 21:25-22:16.  The customer opens a securities account with Clearstream, which can be a "proprietary" account, i.e., containing the customer's own investment in the securities generally to support treasury management, reserve or money market activity, or a "non-proprietary" or custody account, i.e., a custodial account in which the customer holds investments in the securities as a custodian on behalf of its own customers.  *Id.* at 32:9-33:13.[3]

When performing banking and settlement services, Clearstream acts not for its own financial interests, but for the accounts held by its customers.  *Id.* at 14:12-20.  Attached as Compendium Exhibits 5A-E are charts describing the transactions Clearstream undertakes to transfer and settle a particular securities transaction.[4]  When the customer wishes to engage in a particular securities transaction, it instructs Clearstream to settle a transaction on such securities. Clearstream then credits or debits, as the case may be, the customer's account regarding that security and, if the counterparty also has an account with Clearstream, debits or credits the counterparty's account regarding that security.  *Id.* at 14:21-15:6, 17:3-18 and Exhibits 5B and 5D.[5]  The customer might also wish to have the cash transaction related to its securities

---

[3] *See also* Legal Responses to EU Clearing and Settlement Legal Certainty Group Questionnaire by Joyce M. Hansen of the Federal Reserve Bank of New York (March 6, 2006), at 4-5 (response to question 6) ("Typically, a broker will maintain 2 accounts at its clearing bank, a 'proprietary account' and a 'customer account.'  In its proprietary account, the broker holds its own securities and in its customer account it collectively holds securities for its customers (without identifying the customers."), attached as Compendium Exhibit 4 (hereinafter "N.Y. Fed. Legal Responses").

[4] The 5 charts comprising Exhibit 5 were created by Clearstream for the June 27 hearing and were used to explain how Clearstream transfers and settles transactions.  The charts were produced as Exhibit B during the hearing.

[5] If the counterparty does not have an account with Clearstream, then the counterparty's account with that security is debited or credited through a series of debits and credits between Clearstream and the bank in which the counterparty has its securities account.  *See* June 27 Hr'g Tr. at 16:12-17:2, 17:25-8:20 and Exhibits 5C and 5E.

transaction simultaneously settled through Clearstream.  In that event, Clearstream credits or debits, as the case may be, cash to the customer's account and, if the counterparty also has an account with Clearstream, debits or credits cash to the counterparty's account.  *Id.* at 17:5-18 and Exhibit 5C.[6]

Clearstream may also transfer securities between parties the consideration of which has been settled separately and independently of Clearstream's settlement system.  That is, the consideration corresponding to the securities transfer is not delivered at all through Clearstream but directly between the parties.  *Id.* at 15:11-16:7.  Clearstream designates transactions in which the securities transfer is accompanied by cash settlement through Clearstream as "DVP" transactions: delivery versus payment.  *Id.* at 17:5-18:20 and Exhibits 5D and 5E.  Transactions in which the securities transfer is not accompanied by any cash settlement through Clearstream are designated as "DFOP" transactions: delivery free of payment.  *Id.* at 15:11-17:2 and Exhibits 5B and 5C.  A DVP transaction signifies a change of beneficial ownership in the security because consideration has been paid for delivery of the security.  *Id.* at 17:5-15, 47:1-13.  A DFOP transaction may mean there is no change of beneficial ownership interest in the security, or it may mean that there has been a change of such ownership because the consideration at the conclusion of the transaction has been settled outside Clearstream's banking system.  *Id.* at 15:11-16:10.  Clearstream, however, cannot determine whether or not a DFOP transaction evidences a change of beneficial ownership.  *Id.*

    B.    The Omnibus Account With Citibank N.A.

The      securities at issue in this case are bonds issued by sovereign governments or multilateral inter-governmental institutions like the European Investment Bank.  *Id.* at 22:9-16.  **Redacted**

---

[6] If the counterparty does not have an account with Clearstream, then the cash transaction is settled by crediting or debiting cash to the counterparty's account through a series of debits and credits between Clearstream and the bank in which the counterparty has its account.  *See* June 27 Hr'g Tr. at 15:20-16:7, 17:25-18:20 and Exhibits 5E.

Each bond is identified by a unique International Securities Identifying Number ("ISIN") that facilitates electronic trading of the bond globally. *Id.* at 9:25-11:7.[7]  Each bond is represented in physical form by a note or certificate that is deposited under the agreements governing the bond issue with the Depository Trust & Clearing Corporation in New York ("DTC") or the New York Federal Reserve Bank.  Hundreds of banks, companies, and institutions have invested in a share of each bond and are thus considered to own an entitlement or interest in the bond. *Id.* at 9:9-11:17, 19:18-25 and Exhibit 5A; N.Y. Fed. Legal Responses at 3 (response to question 2).  As noted, Clearstream's customers either own an interest in these bonds through their proprietary accounts or hold their customer's interests in the bonds through their non-proprietary or custody accounts.  In the later case, the identity of the customer having the underlying ownership interest is not known by Clearstream and not reflected on Clearstream's records.  June 27 Hr'g Tr. at 12:13-18, 15:11-16:10, 71:5-8; N.Y. Fed. Legal Responses at 4 (responses to question 5) ("the ultimate investor will almost never be recorded by name on the books of an upper-tier intermediary or the issuer") and 5 (response to question 6) ("in its customer account [the broker] collectively holds securities for its customers (without identifying the customers)").

In order to effectuate transactions with respect to these and all other securities like them whose physical note or form is deposited with the DTC or N.Y. Federal Reserve Bank, Clearstream maintains an Omnibus Account with Citibank into which Clearstream sub-deposits the interests it holds in those securities on behalf of its customers.  June 27 Hr'g Tr. at 9:9-22, 11:21-13:2.  In other words, Clearstream, as the custodian of its customers' securities interests, deposits those interests in turn into a custodial account with Citibank.  The Omnibus Account has

---

[7] A list of the bonds at issue in this case is attached as Compendium Exhibit 6.  This list was produced as Exhibit C during the June 27 hearing, and corresponds to the securities listed in the Restraints.  Compare Exhibit 6 with Exhibit 1A (Writ of Attachment) at 16, Exhibit 1B (Restraining Notice) at 5-6.  Exhibit 6 identifies the bond by ISIN, and provides details such as the issuer, date of distribution, maturity date, initial face amount of the bond, and interest paid. *See* June 27 Hr'g at 20:16-21:21.

5

sub-accounts identified by ISIN for each of the securities deposited into it, but the individual customer interests in the securities are not reflected in the Omnibus Account. *Id.* at 11:21-13:2.

## II.    PLAINTIFFS' RESTRAINTS

On June 13, 2008, Plaintiffs served a Writ of Attachment on Citibank, identifying securities in which Iran allegedly had an interest. *See* Exhibit 1A at 16. According to the Writ, Clearstream customers held interests in these securities, one of which is an [Redacted]

*Id.* at para. 1. The [ ] customer's account at Clearstream is identified as account [ ] *Id.* The Writ alleges that the [Redacted]

The

Writ further alleges that the [Redacted]

On June

16, 2008, Plaintiffs served a Restraining Notice on Clearstream, as amended on June 23rd, containing the same allegations that were contained in the Writ served on Citibank.[8]

The securities were restrained in the amounts of the interest in each security held by the [Redacted] customers. Those amounts totaled approximately [ ] The effect of the Restraints was to freeze any transactions with respect to these securities up to the amounts restrained, including transactions by other Clearstream customers having an interest in the securities. June 27 Hr'g Tr. at 25:18-27:1.

## III.    THE JUNE 27 HEARING AND THE ACCOUNTS RESTRAINED

Because, among other things, the Restraints were affecting other Clearstream customers' interests in the securities, Clearstream petitioned the Court for a hearing to modify and/or lift the

---

[8] Compare Exhibits 1A and 1B.  The Restraining Notice contained an extra page omitted from the Writ that identified the [ ] security. *See* June 27 Hr'g Tr. at 30:7-31:1. [Redacted]
[9] A chart showing the amounts restrained and the [ ] Clearstream customers' respective holdings for each of the securities is attached as Compendium Exhibit 7.  This chart was produced as Exhibit D during the June 27 hearing.

Restraints.[10]  Clearstream explained to the Court that it could not oppose the Restraints by the usual method of motion and affidavits because under Luxembourg's banking secrecy laws, it is a violation of the criminal code for a bank to disclose customer information unless such disclosure occurs by oral testimony in court pursuant to a court order to testify.[11]  In order to comply with its obligations under Luxembourg law, Clearstream requested that the Court schedule a hearing at which Clearstream would present a witness who would testify about the Omnibus Account and the securities at issue, and present documentary evidence during the course of the hearing in support of his testimony.  The Court granted Clearstream's request and scheduled the hearing for June 27, 2008.

Mr. Mark Gem, Executive Vice President of Clearstream, testified for Clearstream at the June 27 hearing.  *Id.* at 6:12-7:6.  After discussing how Clearstream's settlement system operated and the Omnibus Account functioned, Mr. Gem identified the         customers referred to in the Restraints:                                                                          **Redacted**

Mr. Gem then reviewed account documentation for these         customers, including the documents submitted by them to open their accounts.  *Id.* at 31:6-32:6.  The account documentation for         showed that it has   accounts at Clearstream:            **Redacted**

---

[10] *See* letter from White & Case to Judge Koeltl dated June 23, 2008, attached as Compendium Exhibit 8.  Citibank had brought an Order to Show Cause to lift the Restraints on January 16, 2008.  *See* Citibank Order to Show Cause supporting declarations, attached as Compendium Exhibit 9.

[11] *See* Exhibit 8 at 2 (referring to opinion of Luxembourg law attached to letter).  Clearstream's ability to respond to discovery requests is even more circumscribed.  *See* the legal opinion of Mr. Philippe Dupont of the law firm Arendt & Medernach, Avocats a la cour (attached as Compendium Exhibit 21) ("Dupont Opinion") (discussing that under Luxembourg's banking secrecy laws, Clearstream cannot respond to any discovery requests unless they are served via the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, 18 March 1970.

Mr. Gem next discussed the customers' respective interests in the restrained securities.                                                    **Redacted**

With respect to        securities,

, Mr. Gem, testified the interest of              in these securities                **Redacted**

that Plaintiffs sought to attach was no longer in Clearstream and that the restraints were impairing the interests of other customers who held entitlements to the securities.  *Id.* at 25:21-27:1, 34:14-39:8, 41:3-12.  Specifically, the underlying documentation showed that the interest in these        securities that                                                         **Redacted**


**Redacted**

(i.e., a bank or institution that did not have an account with Clearstream). *Id.* at 41:13-50:7 and Compendium Exhibits 11-12.[13]  Therefore, the                    interest in the securities no longer was held in Clearstream.  Moreover, the                    restraint on these securities prevented the remaining customers holding an interest in the securities from being fully paid on their entitlements.  *Id.* at 25:18-26:12.                                  **Redacted**

With respect to      security,                              Mr. Gem testified that


*Id.* at 27:4-28:1, 50:12-51:11 and Compendium Exhibit 13.[14]

**Redacted**

---

[12] Selected documents establishing these accounts are attached as Compendium Exhibit 10.  These documents were produced as part of Exhibit F during the June 27 hearing.

[13] Compendium Exhibits 11 and 12 show the transaction history for                                            **Redacted**

Exhibits 11 and 12 were produced as Exhibits H and I during the June 27 Hearing. Compendium Exhibit 13 is the extract from Clearstream's records showing the account position of and was produced as Exhibit J during the June 27 Hearing.

With respect to    other securities,                                                    Redacted

                          Mr. Gem testified that these securities


                                                                         *Id.* at 28:6-29:13,

51:16-55:6, 57:24-59:6 and Compendium Exhibit 14.[15]                        Redacted


                                          *Id.* at 54:19-24.

With respect to the remaining    securities, Mr. Gem testified that


                                                          Redacted

                                            *Id.* at 56:2-57:23, 59:13-

61:3 and Compendium Exhibits 15 and 16.[16]

        At the end of Mr. Gem's testimony, Clearstream moved to release the Restraints on

            the    securities in which the purported

        *Id.* at 61:12-62:5.  With respect tc                Clearstream observed that the Court

would have to decide at some point whether the                    was the same entity as the

judgment debtor,                      *Id.* at 62:6-12.                  Redacted

        Clearstream also moved to lift the restraints on the remaining    securities, in which

              interests had been transferred            to               Redacted

account and in which        held the interests on behalf of its own customers.    Clearstream  Redacted

argued that it had no evidence that                  continued to hold the beneficial interest in

---

[15] Compendium Exhibit 14

                                                                         Redacted

was produced as Exhibit K during the June 27 Hearing.
[16] Compendium Exhibit 15

Exhibit 15 was produced as Exhibit M during the June 27 Hearing.  Compendium Exhibit 16 shows and documents
                                                                      Exhibit 16 was
produced as Exhibit L during the June 27 Hearing.

those securities after the transfer because consideration could have been paid outside of the

Clearstream system.  *Id.* at 62:13-62:22.  Nonetheless, Clearstream noted that neither could the

Court discount that the beneficial ownership remained with                    *Id.* at 62:23-63:1. **Redacted**

    At the end of the hearing, the Court signed a Final Order vacating the restraints on

**Redacted**

withdrawing Plaintiffs' discovery requests, and placing the hearing under seal.

*See* Final Order dated June 27, 2008, attached as Compendium Exhibit 17.

## ARGUMENT

## I.    PLAINTIFFS' RESTRAINTS VIOLATE NEW YORK CPLR § 5201 AND UCC § 8-112

    N.Y. CPLR § 5201 stipulates the type of debt or property that is subject to enforcement

and the proper garnishee.  N.Y. CPLR § 5201(c)(4) provides specifically that "section 8-112 of

the uniform commercial code shall govern the extent to which and the means by which any

interest in a certificated security, uncertificated security or security entitlement (as defined in

article eight of the uniform commercial code) may be reached by garnishment, attachment or

other legal process."  In the instant case, Plaintiffs have sought to restrain the judgment debtor's

security entitlements, i.e., its interests in each of the securities.[17]

    N.Y. UCC § 8-112(c) provides in relevant part that creditors may reach a debtor's interest

in a security entitlement "only by legal process upon the securities intermediary with whom the

debtor's securities account is maintained"); *see* N.Y. UCC § 8-112, cmt. 3 ("If Debtor holds

securities through Broker, and Broker in turn holds through Clearing Corporation, Debtor's

property interest is a security entitlement against Broker. Accordingly, Debtor's creditor cannot

---

[17] N.Y. UCC § 8-102(a)(17) defines "security entitlement" as "the rights and property interest of an entitlement holder with respect to a financial asset specified in part 5."  An "entitlement holder" is defined in N.Y. UCC § 8-102(a)(7) in relevant part as "a person identified in the records of a securities intermediary as the person having a security entitlement against the securities intermediary."  N.Y. UCC § 8-102(a)(9)(i) and (iii) defines a "financial asset" to include a security or an interest in a security.  *See also* N.Y. Fed. Legal Responses at 2 (discussing same definitions).

reach Debtor's interest by legal process directed to the Clearing Corporation."); *Fidelity Partners, Inc. v. First Trust Co. of New York*, 58 F. Supp. 2d 52, 54 (S.D.N.Y. 1997) (*Fidelity I*) (holding that securities intermediaries and clearing corporations are improper garnishees if the judgment debtor's interest is not specifically denominated on their financial books); *Fidelity Partners, Inc. v. First Trust Co. of New York*, 58 F. Supp. 2d 55, 57 (S.D.N.Y. 1999) (*Fidelity II*) (holding same on motion for reconsideration).

This Court's decision in *Fidelity Partners* is dispositive of the instant case. In that case, the judgment creditor Fidelity Partners Inc. ("Fidelity") sought to enforce a judgment in New York that it obtained against judgment debtor Philippine Export and Foreign Loan Guarantee Corporation ("Philguarantee"). *Fidelity I,* 58 F. Supp. 2d at 53-54. Specifically, Fidelity sought turnover of Philguarantee's interest in a security (a type of bond called a FLIRB) held by First Trust Company of New York ("First Trust"). *Id.* First Trust was the fiscal and paying agent for the bond. *Id.* at 54. Philguarantee held its participating interest in the bond through ING Bank of Manila, which was the only entity on whose books the interest of Philguarantee was reflected. *Id.* ING Bank, in turn, held its interest in the bond through Euroclear, where ING's interest was reflected in a book-entry credit to a securities account maintained by Euroclear in Brussels. *Id.*; *see also Fidelity II*, 58 F. Supp. 2d at 57.

This Court found First Trust, Morgan Guaranty, and Euroclear were all improper garnishees pursuant to CPLR § 5201(c)(4) and N.Y. U.C.C. § 8-317 (the predecessor to § 8-112(c)), since none of them was a "firm or corporation which carries on its books an account in the name of the judgment debtor." *Fidelity I*, 58 F. Supp. 2d at 54 (citations and internal punctuation omitted). According to the Court, New York law directed "that Fidelity's execution efforts with respect to the FLIRB's be directed at ING Bank of Manila, upon whose books

Philguarantee's interest is specifically denominated." *Id.* at 54; *accord Fidelity II*, 58 F. Supp. 2d at 57 (holding "First Trust is an improper garnishee because it is not a financial intermediary on whose books the interest of the debtor appears"); *see also* 8 Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 8-317:19 (3d ed. 2003, supp. June 2008) (citing *Fidelity I* and *Fidelity II*) ("A creditor can only reach a judgment debtor's interest in a certificated security by the service of process upon the financial intermediary upon whose books the interests of the debtor appear."); 8 William D. Hawkland, *Hawkland Uniform Commercial Code Series* § 8-317:11 (rev. 2006, supp. May 2008) (citing *Fidelity I*) ("[T]the creditor can effectuate a lien by legal process upon the financial intermediary "on whose books the interest of the debtor appears.").

The principle embodied in N.Y. UCC § 8-112(c) has been codified in the Draft Convention on Substantive Rules Regarding Intermediated Securities ("Draft Convention"), which has been negotiated under the auspices of the International Institute for the Unification of Private Law ("UNIDROIT").[18]   A copy of the Draft Convention is attached as Compendium Exhibit 18.   In comments submitted by the United States in preparation of the Convention, the United States promoted the principle embodied in UCC § 8-112(c) by advocating that attachment of security interests at the level or tier above the account holder's intermediary should not be allowed: "The Convention generally should prohibit upper-tier attachment on a tier other than that of the debtor-account holder's intermediary."[19]   Likewise, in explaining to the European Commission the circumstances under which a security entitlement can be attached under U.S. law, the U.S. Government explained that under UCC § 8-112, attachment at the level of upper-

---

[18]   Information on the Draft Convention is available at the following UNIDROIT website: http://www.unidroit.org/english/workprogramme/study078/item1/main.htm, accessed on August 27, 2008.

[19]   *See* Comments by the Government of the United States of America, February 2006, para. 5, attached as Compendium Exhibit 19 (available at http://www.unidroit.org/english/documents/2006/study78/s-78-035-e.pdf , accessed on August 27, 2008).

tier intermediaries is not allowed: "a creditor's claim against an entitlement holder's security entitlement may be made: only by legal process upon the entitlement holder's securities intermediary.  Process directed at an upper-tier intermediary will be ineffective."[20]  Accordingly, Article 19 of the Draft Convention prohibits upper-tier attachment of intermediated securities.[21]

Here, Plaintiffs have improperly attached upper-tier intermediaries in violation of N.Y. UCC § 8-112(c).  Clearstream (and, for that matter, Citibank) is an improper garnishee under N.Y. CPLR § 5201(c)(4) because the evidence produced at the June 27 hearing clearly showed that for the        securities entitlements held by        Clearstream is not "the securities intermediary with whom the debtor's securities account is maintained."  N.Y. UCC § 8-112(c). That is, Clearstream does not "carr[y] on its books an account in the name of the judgment debtor."  *Fidelity I*, 58 F. Supp. 2d at 54.

Specifically, the evidence from the hearing showed

Assuming arguendo that
maintains the purported judgment debtor's security account and is the judgment debtor's securities intermediary.

.[23]  Clearstream, in turn, sub-deposits the interests of *its* customers in

---

[20] *See* N.Y. Fed Legal Responses at 14 (responses 27 and 28).

[21] *See* Draft Convention, Art. 19.1: "Subject to paragraph 3, no attachment of intermediated securities of an account holder shall be made against, or so as to affect: (a) a securities account of any person other than that account holder; (b) the issuer of any securities credited to a securities account of that account holder; or (c) a person other than the account holder or the relevant intermediary."  Paragraph 3 of Article 19 provides that a contracting state may declare that under its domestic law attachment may be made against a person other than the relevant intermediary.  No such declaration has been made by the United States.

[22] *See* June 27 Hr'g Tr. at 54:19-24 (
                    ).
    *See* June 27 Hr'g Tr. at 33:9-13

the securities into the Omnibus Account with Citibank.  Significantly, Clearstream does not

maintain the judgment debtor's securities account.  Rather, as Compendium Exhibit 15

demonstrates, Clearstream maintains an account **Redacted**

                                                        Indeed, Clearstream does not even

know who            customers are, let alone who holds the underlying interests in the securities

maintained by        .  *See* June 27 Hr'g Tr. at 12:13-18 ("the individual customer accounts are

not reflected down the custody stream, but in this omnibus concept, which is generally adopted

in the United States market, all of the interests are globalized in single positions cascading down

into the ultimate position against the issuer account").[25]

        Thus, both Clearstream and Citibank are upper-tier securities intermediaries, analogous to

the role of Euroclear and Morgan Guaranty, respectively, in *Fidelity Partners*.  *See Fidelity II*, 58

F. Supp. 2d at 57 ("Philguarantee held its participation interest in the FLIRB's through ING

Bank of Manila.  The only entity on whose books the interest of Philguarantee was reflected was

ING Bank.  ING Bank, in turn, held its interest in the FLIRBs through Euroclear, where its

interest was reflected in a book-entry credit to a securities account maintained by Morgan

Guaranty's Brussels branch office."); *see also* N.Y. U.C.C. § 8-112(c), cmt. 3 ("If Debtor holds

securities through Broker, and Broker in turn holds through Clearing Corporation, Debtor's

property interest is a security entitlement against Broker.  Accordingly, Debtor's creditor cannot

reach Debtor's interest by legal process directed to the Clearing Corporation.").  Therefore,

Plaintiffs' execution efforts cannot be directed at Clearstream (or Citibank).

---

                                                                                    **Redacted**

    *See* Exhibit 15
[25] The same is true of Citibank.  *See* Exhibit 1A at 16, para. 2, and Exhibit 1B at 5, para. 2 (acknowledging that
                                                                                    .

## II.     PLAINTIFFS' RESTRAINTS VIOLATE THE FOREIGN SOVEREIGN IMMUNITIES ACT

Plaintiffs suggest that because the         security entitlements at issue were delivered from

                                            , the entitlements may still be owned by         **Redacted**

*See* Exhibit 1A at 16, para. 3

                                                                                Assuming

arguendo that is the case, and further assuming that the                         is the same as the

judgment debtor,[26] then Plaintiffs' Restraints on the     security entitlements violate the FSIA.   **Redacted**

Under the FSIA, "the property in the United States of a foreign state" shall be immune

from attachment and execution unless one of the specified exceptions to attachment immunity

listed in the FSIA applies.  28 U.S.C. § 1609; *Stephens v. Nat'l Distillers and Chem. Corp.*, 69

F.3d 1226, 1230 (2d Cir. 1996).  If the foreign sovereign's property does not fall under any of the

exceptions, then the Court lacks jurisdiction to restrain the property.  *Id.*; *accord Hercaire Int'l,*

*Inc. v. Argentina*, 821 F.2d 559, 563 (11th Cir. 1987) (holding that the FSIA "provides the

exclusive basis for federal court jurisdiction in civil actions against foreign states, their agencies

and instrumentalities, *and the circumstances under which judgments rendered against foreign*

*states can be executed*") (emphasis added).

In this case, the property sought to be attached, i.e., the     security entitlements

purportedly still owned by                 , must be "in the United States," pursuant to 28 U.S.C.   **Redacted**

§ 1609 and § 1610.  Courts interpreting these provisions have overwhelmingly confirmed that

the FSIA's plain language mandates that only non-immune sovereign assets *within the United*

*States* can be attached.  *See, e.g., Autotech Technologies LP v. Integral Research & Dev. Corp.*,

499 F.3d 737, 750 (7th Cir. 2007) ("The FSIA did not purport to authorize execution against a

---

[26] *See* June 27 Hr'g Tr. at 62:6-12 (raising that the Court must determine whether                    **Redacted**
      ).

foreign sovereign's property, or that of its instrumentality, wherever that property is located around the world."); *Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee*, 921 F. Supp. 1113, 1118-19 (S.D.N.Y. 1996) (same); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1477 (9th Cir. 1992) ("[S]ection 1610 does not empower United States courts to levy on assets located outside the United States.").

As discussed above, the security entitlements at issue are reflected in

Redacted

*See Fidelity II*, 58 F. Supp. 2d at 57 ("Philguarantee's interest in the FLIRBs was located in the Republic of the Philippines, where Philguarantee resides and where ING Bank of Manila, upon whose books Philguarantee's interest was represented, is located.").

Redacted

.  These Clearstream accounts only reflect book-entry credits and debits of            interests in the securities on behalf of its customers.  Accordingly, just as in the *Fidelity Partners* case, the Court does not have jurisdiction to restrain the securities

Redacted

entitlements to those securities that            purportedly holds.  *Fidelity I*, 58 F. Supp. 2d at 54 ("the Court holds that principles of sovereign immunity prohibit execution against Philguarantee's interest in the FLIRB's") (*citing Fidelity Partners*, 921 F. Supp. at 1119); *see also Mones v. Commercial Bank of Kuwait*, 399 F. Supp. 2d 310, 315 (S.D.N.Y. 2005) (vacated on other grounds) (holding that courts "cannot reach assets held by a financial intermediary outside of its jurisdiction"); *McCloskey v. Chase Manhattan Bank*, 11 N.Y.2d 936, 936 (N.Y. 1962) (affirming dismissal of complaint in aid of attachment where warrant of execution served on New York bank could not reach judgment-debtor's funds deposited in bank's branch office in Frankfurt, Germany).

## CONCLUSION

For the foregoing reasons, the Court should grant Clearstream's motion and vacate the restraints on the      securities.

Redacted

Dated:  September 4, 2008                     Respectfully submitted,

WHITE & CASE LLP

By: _____
       Francis A. Vasquez, Jr. (FV-1446)
       Frank Panopoulos (FP-6173)
       701 Thirteenth Street, N.W.
       Washington, D.C.  20005
       Tel: (202) 626-3600
       Fax: (202) 639-9355

       *Counsel for Clearstream Banking, S.A.*