# EXHIBIT 18



INTERNATIONAL INSTITUTE FOR THE UNIFICATION OF PRIVATE LAW
INSTITUT INTERNATIONAL POUR L'UNIFICATION DU DROIT PRIVE

| | |
|---|---|
| **DIPLOMATIC CONFERENCE TO ADOPT A CONVENTION ON SUBSTANTIVE RULES REGARDING INTERMEDIATED SECURITIES** | UNIDROIT 2008<br>CONF. 11 – Doc. 3<br>Original: English/French |
| Geneva, 1 to 13 September 2008 | February 2008 |

# DRAFT CONVENTION ON SUBSTANTIVE RULES REGARDING INTERMEDIATED SECURITIES *

### CHAPTER I – DEFINITIONS, SCOPE OF APPLICATION AND INTERPRETATION

*Article 1*
*Definitions*

In this Convention:

(a)  *"securities"* means any shares, bonds or other financial instruments or financial assets (other than cash) which are capable of being credited to a securities account and of being acquired and disposed of in accordance with the provisions of this Convention;

(b)  *"intermediated securities"* means securities credited to a securities account or rights or interests in securities resulting from the credit of securities to a securities account;

(c)  *"securities account"* means an account maintained by an intermediary to which securities may be credited or debited;

(d)  *"intermediary"* means a person who in the course of a business or other regular activity maintains securities accounts for others or both for others and for its own account and is acting in that capacity and includes a central securities depository if and to the extent that it acts in that capacity;

(e)  *"account holder"* means a person in whose name an intermediary maintains a securities account, whether that person is acting for its own account or for others (including in the capacity of intermediary);

(f)  *"account agreement"* means, in relation to a securities account, the agreement between the account holder and the relevant intermediary governing that securities account;

(g)  *"relevant intermediary"* means, with respect to a securities account, the intermediary that maintains the securities account for the account holder;

---

\*     Drafting proposals by the UNIDROIT Secretariat to amend the text of the draft Convention appear in marked-up.

(h) *"insolvency proceeding"* means a collective judicial or administrative proceeding, including an interim proceeding, in which the assets and affairs of the debtor are subject to control or supervision by a court or other competent authority for the purpose of reorganisation or liquidation;

(i) *"insolvency administrator"* means a person (including a debtor in possession where applicable) authorised to administer an insolvency proceeding, including one authorised on an interim basis;

(j) securities are *"of the same description"* as other securities if they are issued by the same issuer and:

(i) they are of the same class of shares or stock; or

(ii) in the case of securities other than shares or stock, they are of the same currency and denomination and are treated as forming part of the same issue;

(k) *"control agreement"* means an agreement between an account holder, the relevant intermediary and another person, or, if so provided by the non-Convention law, an agreement between an account holder and another person of which notice is given to the relevant intermediary, which relates to intermediated securities and includes either or both of the following provisions:

(i) that the relevant intermediary is not permitted to comply with any instructions given by the account holder in respect of the intermediated securities to which the agreement relates without having received the consent of that other person;

(ii) that the relevant intermediary is obliged to comply with any instructions given by that other person in respect of the intermediated securities to which the agreement relates in such circumstances and as to such matters as may be provided by the agreement or the non-Convention law, without any further consent of the account holder;

(l) *"designating entry"* means an entry in a securities account made in favour of a person other than the account holder in respect of intermediated securities, which, under the account agreement, a control agreement, the uniform rules of a securities settlement system or the non-Convention law, has either or both of the following effects:

(i) that the relevant intermediary is not permitted to comply with any instructions given by the account holder in respect of the intermediated securities in relation to which the entry is made without having received the consent of that other person;

(ii) that the relevant intermediary is obliged to comply with any instructions given by that other person in respect of the intermediated securities in respect of which the entry is made in such circumstances and as to such matters as may be provided by the account agreement, a control agreement, the uniform rules of a securities settlement system or the non-Convention law, without any further consent of the account holder;

(m) *"non-Convention law"* means the law in force in the State whose law is applicable under Article 3, other than the provisions of this Convention;

(n) *"securities settlement system"* means a system which:

(i) settles, or clears and settles, securities transactions;

(ii) is operated by a central bank or central banks or is subject to regulation, supervision or oversight by a governmental or public authority in respect of its rules; and

(iii) has been notified, on the ground of the reduction of risk to the stability of the financial system, as a securities settlement system in a declaration by the Contracting State the law of which governs the rules of the system;

(o)    "*securities clearing system*" means a system which:

   (i)    clears, but does not settle, securities transactions through a central counterparty or otherwise;

   (ii)    is operated by a central bank or central banks or is subject to regulation, supervision or oversight by a governmental or public authority in respect of its rules; and

   (iii)    has been notified, on the ground of the reduction of risk to the stability of the financial system, as a securities clearing system in a declaration by the Contracting State the law of which governs the rules of the system;

(p)    "*uniform rules*" means, in relation to a securities settlement system or securities clearing system, rules of that system (including system rules constituted by the non-Convention law) which are common to the participants or to a class of participants and are publicly accessible.

*Article 2*
*Declaration concerning certain system operators*

A Contracting State may declare that a person who is the operator of a system for the holding and transfer of securities on records of the issuer or other records which constitute the primary record of entitlement to them as against the issuer is not an intermediary for the purposes of this Convention.

*Article 3*
*Sphere of application*

This Convention applies where:

(a)    the applicable conflict of laws rules designate the law in force in a Contracting State as the applicable law; or

(b)    the circumstances do not involve a choice in favour of any law other than the law of a Contracting State.

*Article 4*
*Central Securities Depositories*

This Convention does not apply to the activity of creation, recording or reconciliation of securities conducted by central securities depositories or other persons *vis-à-vis* the issuer of those securities.

*Article 5*
*Performance of functions of intermediaries by other persons*

1.    A Contracting State may declare that under its non-Convention law a person other than the relevant intermediary is responsible for the performance of a function or functions (but not all functions) of the relevant intermediary under this Convention, either generally or in respect of intermediated securities, or securities accounts, of any category or description.

2. A declaration under this Article shall:

   (a) specify, if applicable, the category or description of intermediated securities or securities accounts, to which the declaration relates;

   (b) identify, by name or description:

   i) the relevant intermediary;

   ii) the parties to the account agreement; and

   iii) the person or persons other than the relevant intermediary who is or are responsible as described in paragraph 1; and

   (c) specify, with respect to each such person, the functions for which it is so responsible and, if applicable, the relevant category or description of intermediated securities or securities accounts.

3. Subject to any express provision to the contrary, where a declaration under this Article applies, references in any provision in this Convention to an intermediary or the relevant intermediary are to the person responsible for performing the function to which that provision applies.

*Article 6*
*Principles of interpretation*

In the implementation, interpretation and application of this Convention, regard is to be had to its purposes, to the general principles on which it is based, to its international character and to the need to promote uniformity and predictability in its application.

**CHAPTER II – RIGHTS OF THE ACCOUNT HOLDER**

*Article 7*
*Intermediated securities*

1. The credit of securities to a securities account confers on the account holder:

   (a) the right to receive and exercise the rights attached to the securities, including in particular dividends, other distributions and voting rights:

   (i) where the account holder is not an intermediary or is an intermediary acting for its own account; and,

   (ii) in any other case, if provided by the non-Convention law;

   (b) the right, by instructions to the relevant intermediary, to effect a disposition under Article 9 or grant an interest under Article 10;

   (c) the right, by instructions to the relevant intermediary, to cause the securities to be held otherwise than through a securities account, to the extent permitted by the law under which the securities are constituted, the terms of the securities, the non-Convention law and, to the extent permitted by the non-Convention law, the account agreement or the uniform rules of a securities settlement system;

   (d) unless otherwise provided in this Convention, such other rights, including rights and interests in securities, as may be conferred by the non-Convention law.

2.    Unless otherwise provided in this Convention:

   (a)    the rights referred to in paragraph 1 are effective against third parties;

   (b)    the rights referred to in paragraph 1(a) may be exercised against the relevant intermediary or the issuer of the securities, or both, in accordance with this Convention, the terms of the securities and the law under which the securities are constituted;

   (c)    the rights referred to in paragraph 1(b) and 1(c) may be exercised only against the relevant intermediary.

3.    Where an account holder has acquired a security interest, or a limited interest other than a security interest, by credit of securities to its securities account under Article 9(4), the non-Convention law determines any limits on the rights described in paragraph 1 of this Article.

*Article 8*
*Measures to enable account*
*holders to receive and exercise rights*

1.    An intermediary must take appropriate measures to enable its account holders to receive and exercise the rights specified in Article 7(1), but this obligation does not require the relevant intermediary to take any action that is not within its power or to establish a securities account with another intermediary.

2.    This Chapter does not affect any right of the account holder against the issuer of the securities.


**CHAPTER III – TRANSFER OF INTERMEDIATED SECURITIES**

*Article 9*
*Acquisition and disposition by debit and credit*

1.    Subject to Article 13, intermediated securities are acquired by an account holder by the credit of securities to that account holder's securities account.

2.    No further step is necessary, or may be required by the non-Convention law, to render the acquisition of intermediated securities effective against third parties.

3.    Subject to Article 13, intermediated securities are disposed of by an account holder by the debit of securities to that account holder's securities account.

4.    A security interest, or a limited interest other than a security interest, in intermediated securities may be acquired and disposed of by debit and credit of securities to securities accounts under this Article.

5.    Nothing in this Convention limits the effectiveness of debits and credits to securities accounts which are effected on a net basis in respect of securities of the same description.

*Article 10*
*Grant of interests in intermediated securities by other methods*

1.  An account holder grants an interest in intermediated securities, including a security interest or a limited interest other than a security interest, to another person so as to be effective against third parties if:

    (a)   the account holder enters into an agreement with or in favour of that person; and

    (b)   one of the conditions specified in paragraph 2 applies and the relevant Contracting State has made a declaration in respect of that condition under paragraph 4,

and no further step is necessary, or may be required by the non-Convention law, to render the interest effective against third parties.

2.  The conditions referred to in paragraph 1(b) are as follows:

    (a)   that the person to whom the interest is granted is the relevant intermediary;

    (b)   that a designating entry in favour of that person has been made;

    (c)   that a control agreement in favour of that person applies.

3.  An interest in intermediated securities may be granted under this Article so as to be effective against third parties:

    (a)   in respect of a securities account (and such an interest extends to all intermediated securities from time to time standing to the credit of the relevant securities account);

    (b)   in respect of a specified category, quantity, proportion or value of the intermediated securities from time to time standing to the credit of a securities account.

4.  A Contracting State may declare that under its law:

    (a)   the condition specified in any one or more of sub-paragraphs (a) to (c) of paragraph 2 is sufficient to render an interest effective against third parties;

    (b)   this Article shall not apply in relation to interests in intermediated securities granted by or to parties falling within such categories as may be specified in the declaration;

    (c)   paragraph 3, or either sub-paragraph of paragraph 3, does not apply;

    (d)   paragraph 3(b) applies with such modifications as may be specified in the declaration.

5.  A declaration in respect of paragraph 2(b) shall specify whether a designating entry has the effect described in Article 1(l)(i) or Article 1(l)(ii) or both.

6.  A declaration in respect of paragraph 2(c) shall specify whether a control agreement must include the provision described in Article 1(k)(i) or Article 1(k)(ii) or both.

7.  The non-Convention law determines in what circumstances a non-consensual security interest in intermediated securities may arise and become effective against third parties.

*Article 11*
*Other methods under non-Convention law*

This Convention does not preclude any method provided by the non-Convention law:

(a)   for the acquisition or disposition of intermediated securities or of an interest in intermediated securities;

(b)   for the creation of an interest in intermediated securities and for making such an interest effective against third parties,

other than the methods provided by Articles 9 and 10.

*Article 12*
*Evidential requirements*

The non-Convention law determines the evidential requirements in respect of the matters referred to in Articles 9 and 10.

*Article 13*
*Invalidity and reversal*

1.   A debit of securities to a securities account or a designating entry is invalid if the relevant intermediary is not authorised to make that debit or designating entry:

(a)   by the account holder and, in the case of a debit or designating entry that relates to intermediated securities which are subject to an interest granted under Article 10, by the person to whom that interest is granted; or

(b)   by the non-Convention law.

2.   Subject to Article[s] 14 [and 15], the non-Convention law and, to the extent permitted by the non-Convention law, an account agreement or the uniform rules of a securities settlement system determine:

(a)   subject to paragraph 1(a), the validity of a debit, credit or designating entry;

(b)   whether a debit, credit or designating entry is liable to be reversed;

(c)   where a debit, credit or designating entry is liable to be reversed, its effect (if any) against third parties and the consequences of reversal;

(d)   whether and in what circumstances a debit, credit or designating entry may be made subject to a condition; and

(e)   where a debit, credit or designating entry is made subject to a condition, its effect (if any) against third parties before the condition is fulfilled and the consequences of the fulfilment or non-fulfilment of the condition.

*Article 14*
*Acquisition by an innocent person of intermediated securities*

1.   Where securities are credited to the securities account of an account holder at a time when the account holder does not know that another person has an interest in securities or intermediated securities and that the credit violates the rights of that other person with respect to that interest:

(a)   the account holder is not subject to the interest of that other person;

(b)   the account holder is not liable to that other person; and

(c)   the credit is not invalid or liable to be reversed on the ground that the interest or rights of that other person invalidate any previous debit or credit made to another securities account.

2.   Where securities are credited to the securities account of an account holder, or an interest becomes effective against third parties under Article 10, at a time when the account holder or the person to whom the interest is granted does not know of an earlier defective entry:

(a)   the credit or interest is not rendered invalid, ineffective against third parties or liable to be reversed as a result of that defective entry; and

(b)   the account holder, or the person to whom the interest is granted, is not liable to anyone who would benefit from the invalidity or reversal of that defective entry.

3.   Paragraphs 1 and 2 do not apply in respect of an acquisition of securities, other than the grant of a security interest, made by way of gift or otherwise gratuitously.

4.   For the purposes of this Article:

(a)   "*defective entry*" means a credit of securities or designating entry which is invalid or liable to be reversed, including a conditional credit or designating entry which becomes invalid or liable to be reversed by reason of the operation or non-fulfilment of the condition [ ;

(b)   a person knows of an interest or fact if that person:

(i)   has actual knowledge of the interest or fact; or

(ii)   has knowledge of facts sufficient to indicate that there is a significant probability that the interest or fact exists and deliberately avoids information that would establish that this is the case; and

(c)   when the person referred to in sub-paragraph (b) is an organisation, it knows of an interest or fact from the time when the interest or fact is or ought reasonably to have been brought to the attention of the individual responsible for the matter to which the interest or fact is relevant ].

5.   To the extent permitted by the non-Convention law, paragraph 2 is subject to any provision of the uniform rules of a securities settlement system or of the account agreement.

*Article 15*
*Priority among competing interests*

1.   This Article determines priority between interests in the same intermediated securities which become effective against third parties under Article 10 or Article 11.

2.   Subject to paragraph 5 and Article 16, interests that become effective against third parties under Article 10 have priority over any interest that becomes effective against third parties by any other method provided by the non-Convention law.

3.      Interests that become effective against third parties under Article 10 rank among themselves according to the time of occurrence of the following events:

       (a)     if the relevant intermediary is itself the holder of the interest, when the agreement granting the interest is entered into;

       (b)     when a designating entry is made;

       (c)     when a control agreement is entered into, or, if applicable, a notice is given to the relevant intermediary.

4.      Where an intermediary has an interest that has become effective against third parties under Article 10 and makes a designation or enters into a control agreement with the consequence that an interest of another person becomes effective against third parties, the interest of that other person has priority over the interest of the intermediary unless that other person and the intermediary expressly agree otherwise.

5.      A non-consensual security interest in intermediated securities arising or recognised under any provision of the non-Convention law has such priority as is afforded to it by that law.

6.      As between persons entitled to any interests referred to in paragraphs 2, 3 and 4 and, to the extent permitted by the non-Convention law, paragraph 5, the priorities provided by this Article may be varied by agreement between those persons, but any such agreement does not affect third parties.

*Article 16*
*Priority of interests granted by an intermediary*

1.      Except as provided by paragraph 2, this Convention does not determine the priority or the relative rights and interests between the rights of account holders of an intermediary and interests granted by that intermediary so as to be effective against third parties under Article 10.

2.      An interest in intermediated securities granted by an intermediary so as to become effective against third parties under Article 10 has priority over the rights of account holders of that intermediary if at the time the interest becomes so effective [the test in Article 14 is satisfied].

**CHAPTER IV – INTEGRITY OF THE INTERMEDIATED HOLDING SYSTEM**

*Article 17*
*Effectiveness of rights in insolvency proceedings*

1.      The rights of an account holder under Article 7(1), and an interest that has become effective against third parties under Article 10, are effective against the insolvency administrator and creditors in any insolvency proceeding in respect of the relevant intermediary or in respect of any other person responsible for the performance of a function of the relevant intermediary under Article 5.

2.      Nothing in this Convention impairs the effectiveness of an interest in intermediated securities against the insolvency administrator and creditors in any insolvency proceeding where that interest is effective under the non-Convention law.

*Article 18*
*Effects of insolvency*

Subject to Article 24 and Article 33, nothing in this Convention affects:

(a) any rules of law applicable in insolvency proceedings relating to the avoidance of a transaction as a preference or a transfer in fraud of creditors; or

(b) any rules of procedure relating to the enforcement of rights to property which is under the control or supervision of an insolvency administrator.

*Article 19*
*Prohibition of upper-tier attachment*

1. Subject to paragraph 3, no attachment of intermediated securities of an account holder shall be made against, or so as to affect:

(a) a securities account of any person other than that account holder;

(b) the issuer of any securities credited to a securities account of that account holder; or

(c) a person other than the account holder and the relevant intermediary.

2. In this Article *"attachment of intermediated securities of an account holder"* means any judicial, administrative or other act or process to freeze, restrict or impound intermediated securities of that account holder in order to enforce or satisfy a judgment, award or other judicial, arbitral, administrative or other decision against or in respect of that account holder or in order to ensure the availability of such intermediated securities to enforce or satisfy any future such judgment, award or decision.

3. A Contracting State may declare that under its non-Convention law an attachment of intermediated securities of an account holder made against or so as to affect a person other than the relevant intermediary has effect also against the relevant intermediary. Any such declaration shall identify that other person by name or description and shall specify the time at which such an attachment becomes effective against the relevant intermediary.

*Article 20*
*Instructions to the intermediary*

1. An intermediary is neither bound nor entitled to give effect to any instructions with respect to intermediated securities of an account holder given by any person other than that account holder.

2. Paragraph 1 is subject to:

(a) the provisions of the account agreement, any other agreement between the intermediary and the account holder or any other agreement entered into by the intermediary with the consent of the account holder;

(b) the rights of any person (including the intermediary) who holds an interest that has become effective against third parties under Article 10;

(c) subject to Article 19, any judgment, award, order or decision of a court, tribunal or other judicial or administrative authority of competent jurisdiction;

(d) any applicable provision of the non-Convention law; and

(e) where the intermediary is the operator of a securities settlement system, the uniform rules of that system.

*Article 21*
*Holding or availability of sufficient securities*

1.     An intermediary must, for each description of securities, hold or have available for the benefit of its account holders other than itself securities and intermediated securities of an aggregate number or amount equal to the aggregate number or amount of securities of that description credited to securities accounts which it maintains for such account holders.

2.     An intermediary may comply with paragraph 1:

   (a)   by procuring that securities are held on the register of the issuer in the name, or for the account, of its account holders;

   (b)   by holding securities as the registered holder on the register of the issuer;

   (c)   by possession of certificates or other documents of title;

   (d)   by holding intermediated securities with another intermediary; or

   (e)   by any other appropriate method.

3.     If at any time the requirements of paragraph 1 are not complied with, the intermediary must within the time provided by the non-Convention law take such action as is necessary to ensure compliance with those requirements.

4.     This Article does not affect any provision of the non-Convention law, or, to the extent permitted by the non-Convention law, any provision of the uniform rules of a securities settlement system or of an account agreement, relating to the method of complying with the requirements of this Article or the allocation of the cost of ensuring compliance with those requirements or otherwise relating to the consequences of failure to comply with those requirements.

*Article 22*
*Allocation of securities to account holders' rights*

1.     Securities and intermediated securities of each description held by an intermediary as described in Article 21(2) shall be allocated to the rights of the account holders of that intermediary to the extent necessary to ensure compliance with Article 21(1).

2.     Subject to Article 16, securities and intermediated securities allocated under paragraph 1 shall not form part of the property of the intermediary available for distribution among or realisation for the benefit of creditors of the intermediary.

3.     The allocation required by paragraph 1 shall be effected by the non-Convention law and, to the extent required or permitted by the non-Convention law, by arrangements made by the relevant intermediary.

4.     The arrangements referred to in paragraph 3 may include arrangements under which an intermediary holds securities and intermediated securities in segregated form:

   (a)   for the benefit of its account holders generally; or

   (b)   for the benefit of particular account holders or groups of account holders,

in such manner as to ensure that such securities and intermediated securities are allocated in accordance with paragraph 1.

5.      A Contracting State may declare that under its non-Convention law the allocation required by paragraph 1 applies only to securities and intermediated securities that are held by an intermediary in segregated form under arrangements such as are referred to in paragraph 4 and does not apply to securities and intermediated securities held by an intermediary for its own account.


*Article 23*
*Loss sharing in case of insolvency of the intermediary*

1.      This article applies in any insolvency proceeding in respect of an intermediary unless otherwise provided by any conflicting rule applicable in that proceeding.

2.      If the aggregate number or amount of securities and intermediated securities of any description allocated under Article 22 to an account holder, a group of account holders or the intermediary's account holders generally is less than the aggregate number or amount of securities of that description credited to the securities accounts of that account holder, that group of account holders or the intermediary's account holders generally (as the case may be), the shortfall shall be borne:

        (a)     where securities and intermediated securities have been allocated to a single account holder, by that account holder;

        (b)     in any other case, by the account holders to whom the relevant securities have been allocated, in proportion to the respective number or amount of securities of that description credited to their securities accounts.

3.      To the extent permitted by the non-Convention law, where the intermediary is the operator of a securities settlement system and the uniform rules of the system make provision in case of a shortfall, the shortfall shall be borne in the manner so provided.


*Article 24*
*~~Effect of debits, credits etc. and instructions on i~~Insolvency of operator*
*or participant in securities settlement system*

1.      To the extent permitted by the non-Convention law, the following provisions shall have effect notwithstanding the commencement of an insolvency proceeding in respect of the operator of the relevant system or any participant in the relevant system:

        (a)     any provision of the uniform rules of a securities settlement system or of a securities clearing system in so far as that provision precludes the revocation of any instruction given by a participant in the system for making a disposition of securities, or for making a payment relating to an acquisition or disposition of securities, after the time at which that instruction is treated under the rules of the system as having been entered irrevocably into the system;

        (b)     any provision of the uniform rules of a securities settlement system in so far as that provision precludes the invalidation or reversal of a debit or credit of securities to, or a designating entry in, a securities account which forms part of the system after the time at which that debit, credit or designating entry is treated as irrevocable under the rules of the system.

2.      Paragraph 1 applies notwithstanding that any invalidation, reversal or revocation referred to in that paragraph would otherwise occur under any rule applicable in an insolvency proceeding.

*Article 25*
*Obligations and liability of intermediaries*

The obligations of an intermediary under this Convention and the extent of the liability of an intermediary in respect of those obligations are subject to any applicable provision of the non-Convention law and, to the extent permitted by the non-Convention law, the account agreement or the uniform rules of a securities settlement system. If the substance of an obligation of an intermediary under this Convention is the subject of any provision of the non-Convention law or, to the extent permitted by the non-Convention law, the account agreement or the uniform rules of a securities settlement system, compliance with that provision satisfies that obligation.


**CHAPTER V – RELATIONSHIP WITH ISSUERS OF SECURITIES**


*Article 26*
*Position of issuers of securities*

1.      The law of a Contracting State shall permit the holding through intermediaries of securities that are permitted to be traded on an exchange or regulated market, and the effective exercise in accordance with Article 7 of the rights attached to such securities which are so held, but need not require that all such securities be issued on terms that permit them to be held through intermediaries.

2.      In particular, the law of a Contracting State shall recognise the holding of such securities by a person acting in its own name on behalf of another person or other persons and shall permit such a person to exercise voting or other rights in different ways in respect of different parts of a holding of securities of the same description; but this Convention does not determine the conditions under which such a person is authorised to exercise such rights.

3.      This Convention does not determine whom an issuer is required to recognise as the holder of securities.


*Article 27*
*Set-off*

1.      As between an account holder who holds intermediated securities for its own account and the issuer of those securities, the fact that the account holder holds the securities through an intermediary or intermediaries shall not of itself, in any insolvency proceeding in respect of the issuer, preclude the existence or prevent the exercise of any rights of set-off which would have existed and been exercisable if the account holder had held the securities otherwise than through an intermediary.

2.      This Article does not affect any express provision of the terms of issue of the securities.

# CHAPTER VI – SPECIAL PROVISIONS WITH RESPECT TO COLLATERAL TRANSACTIONS

*Article 28*
*Scope and ~~interpretation in~~ definitions of Chapter VI*

1.      This Chapter applies to collateral agreements under which a collateral provider grants a security interest in intermediated securities to a collateral taker in order to secure the performance of any existing, ~~or~~ future or contingent obligation of the collateral provider or a third person.

2.      In this Chapter:

   (a)    "*collateral agreement*" means a security collateral agreement or a title transfer collateral agreement;

   (b)    "*security collateral agreement*" means an agreement between a collateral provider and a collateral taker providing (in whatever terms) for the grant of an interest other than full ownership in intermediated securities for the purpose of securing the performance of relevant obligations;

   (c)    "*title transfer collateral agreement*" means an agreement, including an agreement providing for the sale and repurchase of securities, between a collateral provider and a collateral taker providing (in whatever terms) for the transfer of full ownership of intermediated securities by the collateral provider to the collateral taker for the purpose of securing or otherwise covering the performance of relevant obligations;

   (d)    "*relevant obligations*" means any ~~present~~existing, future or contingent obligations of a collateral provider or a third person;

   (e)    "*collateral securities*" means intermediated securities delivered under a collateral agreement;

   (f)    "*collateral taker*" means a person to whom an interest in intermediated securities is granted under a security collateral agreement or to whom full ownership of intermediated securities is transferred under a title transfer collateral agreement;

   (g)    "collateral *provider*" means an account holder by whom an interest in intermediated securities is granted under a security collateral agreement or full ownership of intermediated securities is transferred under a title transfer collateral agreement;

   (h)    "*enforcement event*" means, in relation to a collateral agreement, an event of default or other event on the occurrence of which, under the terms of that collateral agreement, the collateral taker is entitled to enforce its security or operate a close-out netting provision;

   (i)    "*equivalent collateral*" means securities of the same description as collateral securities;

   (j)    "*close-out netting provision*" means a provision of a collateral agreement, or of a set of connected agreements of which a collateral agreement forms part, under which, on the occurrence of an enforcement event, either or both of the following shall occur, or may at the election of the collateral taker occur, whether through the operation of netting or set-off or otherwise:

         (i)     the respective obligations of the parties are accelerated so as to be immediately due and expressed as an obligation to pay an amount representing their estimated current value or are terminated and replaced by an obligation to pay such an amount;

         (ii)    an account is taken of what is due from each party to the other in respect of such obligations, and a net sum equal to the balance of the account is payable by the party from whom the larger amount is due to the other party.

*Article 29*
*Recognition of title transfer collateral agreements*

1.     The law of a Contracting State shall permit a title transfer collateral agreement to take effect in accordance with its terms.

2.     If an enforcement event occurs while any obligation of the collateral taker to transfer equivalent collateral under a title transfer collateral agreement remains outstanding, that obligation and the relevant obligations may be the subject of a close-out netting provision.

*Article 30*
*Enforcement*

1.     On the occurrence of an enforcement event, the collateral taker may:

   (a)   realise the collateral securities provided under a security collateral agreement:

      (i)    by selling them and applying the net proceeds of sale in or towards the discharge of the relevant obligations; or

      (ii)   by appropriating the collateral securities as the collateral taker's own property and setting off their value against, or applying their value in or towards the discharge of, the relevant obligations, provided that the collateral agreement provides for realisation in this manner and specifies the basis on which collateral securities are to be valued for this purpose; or

   (b)   operate a close-out netting provision.

2.     Collateral securities may be realised, and a close-out netting provision may be operated, under paragraph 1:

   (a)   subject to any contrary provision of the collateral agreement, without any requirement that:

      (i)    prior notice of the intention to realise or operate the close-out netting provision shall have been given;

      (ii)   the terms of the realisation or the operation of the close-out netting provision be approved by any court, public officer or other person; or

      (iii)  the realisation be conducted by public auction or in any other prescribed manner or the close-out netting provision be operated in any prescribed manner; and

   (b)   notwithstanding the commencement or continuation of an insolvency proceeding in respect of the collateral provider or the collateral taker.

*Article 31*
*Right to use collateral securities under security collateral agreement*

1.     If and to the extent that the terms of a security collateral agreement so provide, the collateral taker shall have the right to use and dispose of the collateral securities as if it were the owner of them (a *"right of use"*).

2.     Where a collateral taker exercises a right of use, it thereby incurs an obligation to replace the collateral securities originally transferred (the *"original collateral securities"*) by transferring to the collateral provider, not later than the discharge of the relevant obligations, equivalent collateral or, where the security collateral agreement provides for the transfer of other assets [following the occurrence of any event relating to or affecting any securities provided as collateral], those other assets.

3.  Securities transferred under paragraph 2 before the relevant obligations have been fully discharged:

(a)  shall, in the same manner as the original collateral securities, be subject to a security interest under the relevant security collateral agreement, which shall be treated as having been created at the same time as the security interest in respect of the original collateral securities was created; and

(b)  shall in all other respects be subject to the terms of the relevant security collateral agreement.

4.  The exercise of a right of use shall not render invalid or unenforceable any right of the collateral taker under the relevant security collateral agreement.

*Article 32*
*Requirements of non-Convention law relating to enforcement*

Articles 29, 30 and 31 do not affect any requirement of the non-Convention law to the effect that the realisation or valuation of collateral securities or the calculation of any obligations must be conducted in a commercially reasonable manner.

*Article 33*
*Top-up or substitution of collateral*

1.  Where a collateral agreement includes:

(a)  an obligation to deliver additional collateral securities:

(i)  in order to take account of changes in the value of the collateral provided under the collateral agreement or in the amount of the relevant obligations;

(ii)  in order to take account of any circumstances giving rise to an increase in the credit risk incurred by the collateral taker as determined by reference to objective criteria relating to the creditworthiness, financial performance or financial condition of the collateral provider or other person by whom the relevant obligations are owed;

(iii)  to the extent permitted by the non-Convention law, in any other circumstances specified in the collateral agreement.

(b)  a right to withdraw collateral securities or other assets on providing collateral securities or other assets of substantially the same value,

the provision of securities or other assets as described in sub-paragraphs (a) and ~~paragraph~~ (b) of this paragraph shall not be treated as invalid, reversed or declared void solely on the basis that they are provided during a prescribed period before, or on the day of but before, the commencement of an insolvency proceeding in respect of the collateral provider, or after the relevant obligations have been incurred.

2.  A Contracting State may declare that paragraph 1(a)(ii) does not apply.

Case 1:10-cv-04518-LAP   Document 113-18   Filed 09/04/08   Page 18 of 18

*Article 34*
*Declarations in respect of Chapter VI*

1.   A Contracting State may declare that this Chapter shall not apply ~~under its non-Convention law~~.

2.   A Contracting State may declare that ~~under its non-Convention law~~ this Chapter shall not apply:

(a)   in relation to collateral agreements entered into by natural persons or persons falling within such other categories as may be specified in the declaration;

(b)   in relation to intermediated securities which are not permitted to be traded on an exchange or regulated market;

(c)   in relation to collateral agreements which provide for relevant obligations falling within such categories as may be specified in the declaration.

– END –