**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT NEW YORK**

```
-------------------------------------------------------x
DEBORAH D. PETERSON,                          :
Personal Representative of the Estate          :        Case No. 18 Misc. 8302
of James C. Knipple (Dec.), et al.,            :
                                               :
                             Plaintiffs,        :        (Civil Action Nos. 01-2094 (RCL)
                v.                             :        and 1-2684 (RCL) (D.D.C.))
                                               :
ISLAMIC REPUBLIC OF IRAN, et al.,              :        FILED UNDER SEAL CONTAINS
                                               :        CONFIDENTIAL MATERIAL
                             Defendants.        :        SUBJECT TO PROTECTIVE ORDER
-------------------------------------------------------x
```

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**CLEARSTREAM BANKING, S.A.'S MOTION TO VACATE RESTRAINTS**

# TABLE OF CONTENTS

Page

Introduction ........................................................................................................ 4

ARGUMENT ...................................................................................................... 6

I-   Clearstream's Motion: is Barred Because It is Untimely Under Local Rule 6.3; is
     Barred By The Doctrine of Law of the Case; and Fails to Meet the Requirements
     of FRCP Rule 60(b) ..................................................................................... 6

II-  Clearstream is the Proper Garnishee Pursuant to U.C.C. 8-112(a) and (e) .......... 10

III-    Citibank New York is a Proper Garnishee Because It Holds Money or
        Personal Property in Which the Judgment Debtor has an Interest ....................... 15

IV-     Plaintiffs' Restraints are Proper as They Only Affect Defendants' Assets
        Located Within the United States ................................................................ 16

V-   Clearstream Lacks Standing to Raise FSIA and a Motion to Vacate the Restraints
     ............................................................................................................ 21

VI-     The Transfers from ▆▆▆ to ▆▆▆▆▆▆▆ May be Set Side as Fraudulent
        Conveyances ........................................................................................... 23

CONCLUSION ................................................................................................. 27

## TABLE OF AUTHORITIES

<u>Federal Cases</u>
*ABKCO Industries, Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 675, 350 N.E.2d 899, 385 N.Y.S.2d 511 (1976) ........................................................................................................ 20

*Autotech Technologies LP v. Integral Research & Development Corp.,* 499 F3d 737 (7th Cir. 2007) .............................................................................................................. 19

<u>Capital Distribution Services Ltd. v. Ducor Express Airlines, Inc.</u>, 440 F. Supp.2d 195, 204 (E.D.N.Y. 2006) ................................................................................................ 27

*Fidelity Partners, Inc. v. First Trust Company of New York*, 58 F. Supp. 2d 52 (S.D.N.Y. 1997) ........................................................................................................................ 10

*Fidelity Partners, Inc. v. First Trust Company of New York*, 58 F. Supp. 2d 55 (S.D.N.Y. 1999) ........................................................................................................................ 10

*Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee Corp.*, 921 F. Supp. 1113 (S.D.N.Y. 1996) ........................................................................................ 10

*Heircare International v Argentina, 821 F.2d 559 (11th Cir. 1987)* ................................ 21

*In re Feit & Drexler, Inc.*, 42 B.R. 355 (S.D.N.Y. Bkrcy. Ct. 1984) ................................ 15

*Koehler v. Bank of Bermuda, Ltd.*, 2005 U.S. Dist. LEXIS 3760, 27-28 (S.D.N.Y. 2005) .................................................................................................................................... 20

*Mendell v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) aff'd, 501 U.S. 115, 111 S. Ct. 2173, 115 L. Ed. 2d 109 (1991) .................................................................................. 9

*Mones v. Commercial Bank of Kuwai*, 399 F. Supp.2d 310 (S.D.N.Y. 2005) ................ 19

*Securities Corp. v. London & Lancashire Ins. Co.*, 255 N.Y. 120, 124, 174 N.E. 299, 300 (1931) ................................................................................................................ 20

*Sequa Capital Corporation v. Nave*, 921 F.Supp. 1072, 1075 (S.D.N.Y. 1996) ............. 12

<u>United States v. Yonkers Branch- NAACP</u>, 856 F.2d 7, 11-13 (2d Cir. 1988) ................. 8


<u>Federal Statutes</u>
Federal Rule of Civil Procedure 64 ................................................................................ 12

Federal Sovereign Immunities Act ("FSIA") ................................................................ 16

28 USC § 1605A ............................................................................................................. 24

FRCP, rule 60(b) ................................................................................................... 4, 9

Local Rule 6.3 ................................................................................................... 4, 6

Other Authorities
Siegal, New York Practice (4th Ed.),  Section 487 ................................................. 15, 19, 21

Siegel New York Practice (4th Ed.), Section 486 ............................................... 15

Siegel, New York Practice (4th Ed.),  Section 491 ........................................... 21

State Cases
Miller v. Doniger, 28 A.D.3d 405, 814 N.Y.S.2d 141 (1st Dep't 2006) ........................... 27

Severnoe Securities Corp. v. London & Lancashire Ins. Co., 255 N.Y. 120, 124, 174 N.E.
    299, 300 (1931) ................................................................................................... 20

State Statutes
CPLR § 5228 ................................................................................................... 12, 15

CPLR 5201 ................................................................................................... 11

CPLR 5201(b) ................................................................................................... 4, 16

CPLR 5204(c)(4) ................................................................................................... 11

CPLR 5225(b) ................................................................................................... 5, 16

New York Debtor and Creditor Law, Section 273-a ..................................................... 5, 26

New York Debtor and Creditor Law, Section 276 ..................................................... 5, 26

New York U.C.C. 8-112(a) ................................................................................................... 11

U.C.C. 8-102(a)(4) ................................................................................................... 11

U.C.C. 8-112 (e) ................................................................................................... 4, 11, 12, 15

UCC 8-112 ................................................................................................... 11

# Introduction

Plaintiffs submit this memorandum of law in opposition to the motion of Clearstream Banking, S.A. ("Clearstream") to vacate restraints on 19 securities that are restrained by the June 23, 2008 Amended Restraining Notice served on Clearstream and the June 13, 2008 Writ of Execution served on Citibank, N.A. Clearstream and Citibank have previously moved to vacate the restrains on these securities.

The Court by Judge Koeltl, unequivocally denied the motion on June 27, 2008 and specifically ruled that the restraints are to remain in place to permit discovery so plaintiffs can prepare for a turnover proceeding. Clearstream's motion for relief from the Court's prior order is untimely under Local Rule 6.3, violates the Law of the Case Doctrine, and fails to raise grounds for relief from a final order under F.R.C.P.60(b).

UCC § 8-112(e) gives this Court the flexibility needed to fashion a legal or equitable remedy to reach the interest of a judgment debtor in securities regardless of the form of such interest, where it cannot be readily reached by other legal process. Therefore, attaching or restraining the judgment debtor's securities account at its bank in ███ is not the sole means at this Court's disposal to aid plaintiffs in enfacing the judgment. Because the securities are traceable to accounts at Clearstream and Citibank in New York, the Court can, and has, effectively restrained the judgment debtor's interest in such securities in New York City. The Court also has the power to appoint a receiver to take possession of certificates evidencing the notes and bonds in which the judgment debtor has an interest, which bonds are also located in New York City.

Furthermore, the intangible nature of 2 of the securities (as well as interest payments on other securities) was converted to cash upon redemption. The cash ($███████) is held by Citibank in New York in a segregated account that is restrained, thereby making Citibank a proper garnishee with respect to such cash under CPLR 5201(b) and 5225(b).

Because the bonds and notes in which the judgment debtor has an interest each is evidenced by one global certificate held in New York City by Depository Trust & Clearing Corporation and/or the Federal Reserve, and because payments of interest or principal upon maturity must, under the terms of the bonds, all be made through those entities and thereafter through Citibank and Clearstream in New York before reaching the judgment debtor, the bonds are located in the United States. Therefore, enforcement of the judgment against them does not violate The Foreign Sovereign Immunities Act.

Clearstream lacks standing to assert the Foreign Sovereign Immunities Act since it is not a foreign sovereign and is not harmed by the continuation of the restraints. Clearstream is a mere stakeholder.

Lastly, there are sufficient badges of fraud to strongly suggest that transfers of the restrained securities made by the judgment debtor's ████████ to an ████ bank, were made with intent to deprive plaintiffs of their ability to satisfy their judgment from the securities in violation of New York Debtor and Creditor Law Sections 273-a and 276. Therefore the transfers should be set aside and Clearstream, who has custody of the securities interests, should be directed to restore them to the account of ████████ ███ at Clearstream, which is currently restrained by Plaintiffs' restraints and this Court's Final Order dated June 27, 2008.

## Statement of Facts

The Court is respectfully referred to the Declaration of Liviu Vogel dated October 17, 2008, submitted herewith, for a statement of facts.

## ARGUMENT

**I-    Clearstream's Motion: is Barred Because It is Untimely Under Local Rule 6.3; is Barred By The Doctrine of Law of the Case; and Fails to Meet the Requirements of FRCP Rule 60(b)**

Clearstream and Citibank together moved to vacate the Plaintiffs' writ of execution and restraining notice at the hearing on June 27, 2008 (the "June 27 hearing"). At that time, Judge Koeltl decided that two of the securities should be released, but the remainder were to remain restrained.[1]  At the conclusion of the June 27 hearing, Judge Koeltl issued a final order to that effect (the "Final Order"), which modified the restraining notice and writ "to the extent of excluding" two securities, but it kept the restraint in place in regard to all other securities that were covered by the original restraining notice.[2]  This was a final order and, therefore, Clearstream's current motion to vacate the writ and restraining notice is improper because it attempts to reargue a motion that has already been decided under a different theory.  Local Rule 6.3 provides that,  "[a] notice of motion for reconsideration or re-argument of a court order determining a motion shall be served within ten (10) days after the entry of the Court's determination of the original motion...."  Here, the Court's order was entered on June 27, 2008 and Clearstream failed to serve its notice of motion within the ten day period required by

---

[1] June 27 hearing Transcript, a copy of which is annexed as Exhibit 3 to Clearstream's Compendium of Exhibits submitted in support of its motion ("Clearstream's Compendium") at 66-68.

[2] A copy of the June 27, 20008 Final Order is annexed to Clearstream's Compendium as Exhibit 17.

local Rule 6.3. Instead it served its notice of motion on September 4, 2008 and amended notice of motion on September 5, 2008.

Furthermore, the Final Order issued by Judge Koeltl and his ruling during the June 27 hearing that the restraints will remain in place until discovery can be had to develop evidence for a turnover proceeding, is law of the case and should continue to govern in subsequent stages of the same case.

Clearstream is, in effect, attempting to alter the Final Order and rulings issued by Judge Koeltl at the June 27 hearing.  The Judge made it clear in his statements on the record that the restraints in question were to remain in place until the Plaintiffs are able to conduct further discovery and commence a turnover proceeding.[3]  Judge Koeltl contemplated the need for further discovery and inclusion of parties with an interest in the assets affected by the restraint.[4]  The Court kept the restraining notices in place in order to provide plaintiffs with the time that is necessary to develop the evidence through further discovery and initiation of a turnover proceeding.[5]  It is at that time, and not before then, when the court will determine if there is enough evidence to support the turnover or, if the evidence is found to be lacking, to remove the restraints. Clearstream was served with a subpoena duces tecum by plaintiffs on July 31, 2008. Instead of complying with the subpoena as it initially promised to do, Clearstream made the instant motion thereby thwarting Judge Koeltl's ruling. Plaintiffs are also in the process of obtaining letters under the Hague Convention for discovery through ███ Courts against ████████ to determine the owner of interest in the restrained securities.

---

[3] June 27 hearing Transcript at 68.
[4] *Id.*
[5] *Id.*

Clearstream's counsel was so informed by Plaintiff's counsel before the instant motion was made. The Second Circuit has described the Doctrine of Law of the Case as follows:

> The doctrine of law of the case "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 75 L. Ed. 2d 318, 103 S. Ct. 1382 (1983); *United States v. Melendez-Carrion*, 820 F.2d 56, 60 n.1 (2d Cir. 1987). Law of the case requires "adherence by an appellate court to its own decision at an earlier stage of the litigation," *United States v. Cirami*, 563 F.2d 26, 33 n.6 (2d Cir. 1977), and applies both to that which is expressly  decided "as well [as] to everything decided by necessary implication," *Fogel v. Chestnutt*, 668 F.2d 100, 108 (2d Cir. 1981), *cert. denied sub nom. Currier v. Fogel*, 459 U.S. 828, 74 L. Ed. 2d 66, 103 S. Ct. 65 (1982). Although "a discretionary doctrine which 'does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided,'" *United States v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982) (quoting *Slotkin v. Citizens Cas. Co.*, 614 F.2d 301, 312 (2d Cir. 1979), *cert. denied*, 449 U.S. 981, 66 L. Ed. 2d 243, 101 S. Ct. 395, 101 S. Ct. 396 (1980)), law of the case will be followed "absent 'cogent' or 'compelling' reasons," *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir.), *cert. denied sub nom. Catholic Home Bureau v. Doe*, 464 U.S. 864, 78 L. Ed. 2d 171, 104 S. Ct. 195 (1983). It is not enough for the party seeking consideration to make a more persuasive argument. *See Fogel*, 668 F.2d at 109. There must be "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Doe*, 709 F.2d at 789 (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478, at 790 (1981) (footnote omitted)); *Melendez-Carrion*, 820 F.2d at 60 n.1.

United States v. Yonkers Branch- NAACP, 856 F.2d 7, 11-13 (2d Cir. 1988).

Clearstream is improperly attempting to raise new legal theories in what is effectively a motion for relief from Judge Koeltl's Final Order.  The basis of its previous motion was that "████████████████████████████████████

████████████████████████████████████████████████

████████ . . ." (June 27 hearing Transcript at 62:18-21)  In making this motion, Clearstream noted that "███████████████████████████████

████████████████████████████████████████████

██████████████████████████████ (*Id. at* 62:23-63:1) The Court

has decided that matter as evidenced in the transcript and the Final Order.  Judge Koeltl

clearly stated that ' ███████████████████████████████████████

████████████████████████████████████████████

███████████ . . ." (*Id. a*t 66:25-67:5)

No new facts are alleged by Clearstream to have been discovered since June 27,

2008 and Clearstream has not alleged any mistake, inadvertence, surprise, or excusable

neglect nor any other ground under which relief from a final order may be granted.

FRCP, rule 60(b) provides as follows:

> "**(b)  Ground for Relief from a Final Judgment, Order, or Proceeding**.
> On motion and just terms the court may relieve a party or its legal
> representative from a final judgment, order, or proceeding for the
> following reasons:
>
> (1)  mistake, inadvertence, surprise, or excusable neglect;
> (2)  newly discovered evidence that, with reasonable diligence,
> could not have been discovered in time to move for a new
> trial under Rule 59(b);
> (3)  fraud (whether previously, called intrinsic or extrinsic),
> misrepresentation, or misconduct by an opposing party;
> (4)  the judgment is void;
> (5)  the judgment has been satisfied, released or discharged; it is
> based on an earlier judgment that has been reversed or
> vacated; or applying it prospectively is no longer equitable;
> or
> (6)  any other reason that justifies relief."

"Motions under Rule 60(b) are addressed to the sound discretion of the district

court and are generally granted only upon a showing of exceptional circumstances."

*Mendell v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) aff'd, 501 U.S. 115, 111 S. Ct.

2173, 115 L. Ed. 2d 109 (1991).  Clearstream has failed to show any exceptional

circumstances justifying relief from the Final Order.

135887                                                    9

## II-    Clearstream is the Proper Garnishee Pursuant to U.C.C. 8-112(a) and (e)

In its Memorandum of Law in Support of its Motion to Vacate the Restraints ("MOL"), Clearstream argues that it is an improper garnishee.[6] Clearstream equates the situation here with the facts in the *Fidelity* cases, and calls the decision in *Fidelity Partners* "dispositive of the instant case." (MOL at 11)[7] Clearstream claims that the reason the creditor failed in that case was because the judgment debtor's interest was not specifically denominated on the books and records of the garnishee. However, that was not the sole basis of the decision in that case. The assets in the *Fidelity Partners* case faced a situs problem that is not present in the instant case. In *Fidelity I*, the court found that because "*neither* the [bonds], *nor* [respondent]'s participation interest in the [bonds], are located in New York or in any part of the United States, Fidelity [could not] execute on those assets." (emphasis added).[8] In Fidelity I the global bond certificate was held in London, England. In the instant case global certificates for the bonds and notes in question are in fact located in the United States in New York. (see Point IV, *infra*.) Moreover, with respect securities that were redeemed or paid interest, the judgment debtor's interest is in the cash held by Citibank in a separate account in New York, making Citibank a proper garnishee (See point III, *infra*) irrespective of the arguments raised by Clearstream with respect to the situs of securities.

---

[6] MOL at 10-14. Clearstream also argues, without standing to do so, that Citibank is an improper garnishee.

[7] There are three decisions rendered in connection with the same set of facts. First, there was *Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee Corp.*, 921 F. Supp. 1113 (S.D.N.Y. 1996) ("*Fidelity Partners*") . Then, there was *Fidelity Partners, Inc. v. First Trust Company of New York*, 58 F. Supp. 2d 52 (S.D.N.Y. 1997) ("*Fidelity I*"). Finally, there was *Fidelity Partners, Inc. v. First Trust Company of New York*, 58 F. Supp. 2d 55 (S.D.N.Y. 1999) ("*Fidelity II*") (all together the "*Fidelity* cases").

[8] *Fidelity I* at 53.

Plaintiffs have restrained the Defendant's interest in certificated securities located in New York. New York U.C.C. 8-112(a) provides that "[t]he interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate. . ." In this instance, Clearstream has clearly stated in its motion that "each bond is represented in physical form by a note or certificate." (MOL at p. 5) The definition of a certificated security in Article 8 of the New York U.C.C. is "a security that is represented by a certificate."[9] By Clearstream's own admission, the security is represented by a certificate or note and, therefore, pursuant to U.C.C. 8-112(a), the proper means by which the Plaintiffs may reach it is by actual seizure of the certificates.[10]

If one were to literally interpret UCC 8-112 as Clearstream by its motion suggests, then the interest of Iran in the global certificates as notes may be reached by the Plaintiffs only by actual seizure of the global certificates. As noted below in Point IV each of the global certificates is held in New York by the Depositary Trust and Clearing Corporation or by the Federal Reserve. While cumbersome, compliance with UCC 8-112(a) could be accomplished through appointment of a receiver pending a turnover

---

[9] U.C.C. 8-102(a)(4)

[10] Clearstream argues that the judgment debtor's property interest is a "security entitlement." However, this argument is pure semantics. The definitions in Article 8 are circular, and the definitions for "certificated security," "financial asset," "security," "security certificate," "security entitlement," and "uncertificated security" all overlap to some degree by referencing another one of these defined terms. In addition, the bonds at issue in this case could be viewed as a debt. Several of the prospectuses connected with the bonds at issue in this case identify themselves as "debt securities," (which may signal a contradicting title in itself) and bond issuances are often viewed as debts which entitle the lenders/purchasers to repayment of principal and interest. CPLR 5201 states that "[a] money judgment may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor…" These debts are certain to become due at a certain date, some in the past and some in the future. Some have already been paid and are now cash which is restrained in a Citibank account in New York. (June 27 hearing at 56:17-59:5) The remainder of the bonds are evidenced by a certificate or "note," and as such could also qualify as a negotiable instrument and therefore CPLR 5204(c)(4) dictates that the "person holding it shall be the garnishee." All of these potential definitions for the judgment debtor's interest are semantic technicalities. Even where the conclusion of the argument directs us to Article 8 of the U.C.C. the court cannot ignore the presence of U.C.C. 8-112 (e), which provides that the Court can fashion an appropriate remedy to reach an equitable result.

order.  Federal Rule of Civil Procedure 64 permits courts to grant provisional and final

remedies in accordance with state law.[11]  FRCP 64 states that "every remedy is available

that, under the law of the state where the court is located, provides for seizing a person or

property to secure satisfaction of the potential judgment."

New York state law provides this court with two means by which it may grant

relief to Plaintiffs in this case.  First, New York law expressly provides for injunctive

relief in N.Y. UCC § 8-112(e).  Section 8-112(e) entitles Plaintiffs to "aid from a court of

competent jurisdiction, by injunction or otherwise, in reaching the certificated security,

uncertificated security, or security entitlement or in satisfying the claim by a means

allowed at law or in equity in regard to property that cannot readily be reached by other

legal process."  The facts of this case are unique, and they compel the use of the Court's

equitable power under this statute.  It is respectfully submitted that the continuance of the

restraining notice and writ of attachment in accordance with Judge Koeltl's decision and

Final Order on June 27, 2008, is an effective and simple equitable remedy that serves the

interests of the Plaintiffs without undue hardship to any party.  This is evidenced by the

fact that the restraining order has been in effect and no true party in interest has appeared

to complain about it.

The second remedy available under New York state law is the appointment of a

receiver under CPLR § 5228, which states in relevant part as follows:

> "**(a) Appointment of receiver**.  Upon motion of a judgment
> creditor, upon such notice as the court may require, the court may
> appoint a receiver who may be authorized to administer, collect,
> improve, lease, repair or sell any real or personal property in which
> the judgment debtor has an interest or do any other acts designed to
> satisfy the judgment.  As far as practicable, the court shall require

---

[11] Further, there is no basis for concluding that injunctive relief is unavailable through FRCP 64. *Sequa Capital Corporation v. Nave*, 921 F.Supp. 1072, 1075 (S.D.N.Y. 1996).

that notice be given to the judgment debtor and to any other judgment creditors of the judgment debtor. The order of appointment shall specify the property to be received, the duties of the receiver and the manner in which they are to be performed. A receiver shall have no power to employ counsel unless expressly so authorized by order of the court. A receiver shall be entitled to necessary expenses and to such commissions, not exceeding five percent of the sums received and distributed by him, as the court which appointed him allows, but if a judgment creditor is appointed receiver, he shall not be entitled to compensation. If a receiver has been appointed, a court making an order directing payment, or delivery, of property shall direct that payment, or delivery, be made to the receiver rather than to a sheriff. Sections 6402, 6403, 6404 and 6405 are applicable to receivers appointed under this subdivision."

The Judgment Debtor in this case has already demonstrated that it will make every effort to hide or secrete any of its assets that are currently in the United States. The debtor has made numerous transfers in aid of these efforts and it should not be permitted to further thwart the attempts of the injured Plaintiffs to collect the money they are entitled to under this judgment. In fact, ████████ since learning of the restraining order affecting the securities, attempted to conduct transactions affecting the securities, but was prevented form doing so by the restrains that Clearstream now seeks to vacate (June 27 hearing at 65:2-5, and 66:3-9). This court may authorize a receiver to take, hold, administer, collect or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment. The court has the necessary power to grant these remedies, and should do so in order to allow Plaintiffs to safeguard assets that are extremely likely to be subject to a turn over proceeding to enforce the judgment.

If this court deems it appropriate, it may appoint a receiver and authorize the receiver to conduct discovery to find the location and ownership of assets, including but

not limited to the certificates representing the bond issuances that are subject to the current restraining order, in order to satisfy the judgment. The court may authorize the receiver to take possession of the certificates evidencing the bonds, the money held by Citibank or others representing the proceeds of redemption and interest payments on the bonds, receive all payments that are made in connection with the bonds and notes as they come due, and hold such assets pending a final order in a turnover proceeding. The receiver would also have the obligation to enforce the rights of others holding a beneficial interest in the securities as if the securities had not become the subject of the receivership including distribution of interest and redemption proceeds. During the testimony of Mr. Gem on June 27, 2008, he testified that Citibank had essentially done what a receiver should be appointed to do, thereby showing that the solution is viable. Citibank, upon receipt of interest payments on some of the bonds, calculated the portion allocable to the interest of the judgment debtor as described in the restraining notices, and segregated that amount into a separate account, while distributing the balance to the parties owning an interest in the securities. Similarly, when two of the bonds were redeemed, Citibank calculated the judgment debtor's claimed interest in the proceeds and segregated the funds in a separate account. (June 27 hearing transcript at 57:14-59:5 and Clearstream Compendium Exhibit 16, introduced at the June 27 hearing as Exhibit L). A receiver should be able to accomplish these tasks thereby protecting all parties with an interest in the securities. Citibank is obviously biased in favor of its clients (who indirectly include ▮▮▮▮▮▮ and the ▮▮▮▮▮▮▮▮ and its own financial interest and should not continue to be entrusted with the preservation of the assets in which the Plaintiffs have an interest.

135887                                        14

"Problems in getting through to the property and realizing on it are the reason for the CPLR's broad variety of enforcement proceedings," including Section 5228.[12] The law will not tolerate an arbitrary attempt, in an arrangement between the debtor and some third person, to put an otherwise leviable asset beyond the reach of the debtor's creditors.[13] The Judgment Debtor in this case has taken numerous steps in an attempt to hide assets and render the judgment entered against it valueless, but the Court should not honor such calculated evasion designed to judgment-proof the debtor.[14] There is reasonable belief based on the disclosure made by Clearstream at the June 27 hearing and the disclosure letters dated June 12 and 13, 2008, respectively, from the United States Department of Justice to Plaintiff's attorney, David Cook (a copy of those letters is annexed hereto as Exhibit A), that the restrained assets belong to the judgment debtor. N.Y. UCC § 8-112(e) provides the court with the power to keep these restraints in place until the Plaintiffs have sufficient time to initiate a turnover proceeding. Alternatively, New York law also empowers this court to set up a receivership to hold all of the assets involved and distribute payments to all those who hold legitimate interests in them.

**III-   Citibank New York is a Proper Garnishee Because It Holds Money or Personal Property in Which the Judgment Debtor has an Interest**

Mr. Gem testified that on June 16, 2008 that two of the bonds were redeemed and proceeds were paid by the issuer in connection with the bonds. The court specifically questioned Mr. Gem at the June 27, 2008 hearing, "where are the proceeds of those redemptions now?" and Mr. Gem responded that they were "with Citibank New York."

---

[12] Siegel New York Practice (4th Ed.), Section 486
[13] Siegal, New York Practice (4th Ed.), Section 487
[14] [*See In re Feit & Drexler, Inc.*, 42 B.R. 355 (S.D.N.Y. Bkrcy. Ct. 1984) (noting a history of substantial efforts to hide and secrete assets).]

He also testified that interest was paid to Citibank on four other securities on June 15, and 24, 2008. The total sum of the redeemed securities and interest as of June 24, 2008 was $�In, which Citibank deposited in a segregated account in New York to comply with the restraining notice. See June 27, hearing transcript at 51:12-55:5 and Clearstream Compendium Exhibit 14 marked at the June 27 hearing as Exhibit K.

CPLR 5201(b) states "[a] money judgment may be enforced against any property which could be assigned or transferred . . . unless it is exempt from application to the satisfaction of judgment." CPLR 5225(b) specifies that:

> "[u]pon a special proceeding commenced by the judgment creditor, against a <u>person in possession or custody of money or other personal property</u> in which the judgment debtor has an interest . . . the court shall require such person to pay the money . . . to the judgment creditor . . .[Emphasis added]"

Citibank is in possession or custody of money belonging to the judgment debtor. Therefore, Citibank is the proper subject of the current restraining orders, and in the future it will be the proper garnishee when Plaintiffs have the opportunity to initiate a turnover proceeding.

## IV-   Plaintiffs' Restraints are Proper as They Only Affect Defendants' Assets Located Within the United States

Clearstream cites a string of cases in support of its assertion that the restraints are in violation of the Federal Sovereign Immunities Act ("FSIA"), but none of the cases cited are factually similar to the instant case. The alleged violation is based on the premise that the restrained assets are located outside of the United States. Here, Plaintiffs have restrained assets that are physically located within the United States.

The Defendant holds an interest in bonds which are "represented in physical form by a note or certificate that is deposited under the agreements governing the bond issue with the Depository Trust & Clearing Corporation in New York ("DTC") or the New York Federal Reserve Bank." (MOL at 5; and June 27 hearing transcript at 19:11-22, and Clearstream Compendium Exhibit 16.[15]) When payment of principal or interest is made upon these bonds, the money is paid initially to DTC or the New York Federal Reserve Bank, both located in New York, who then distributes the proceeds to institutions having an interest in these bonds as reflected on their books. The foregoing procedure is detailed by most of the issuers of the bonds in prospectuses filed with the S.E.C. Copies of the prospectuses for most of the bonds[16] (together with a brief synopsis of relevant details prepared by Plaintiffs) are annexed hereto as Exhibit B. The prospectuses also confirm, as admitted by Clearstream, that the bonds are indeed located in the custody of DTC or The Federal Reserve or their respective nominees located in New York.

As an example, the bond bearing ISIN ▇▇▇▇▇▇▇▇▇▇▇▇ matured on June 16, 2008, three days after Plaintiffs served a writ of execution on Citibank. The prospectus for that bond provides that it is represented by a single global certificate registered in the name of DTC to be deposited with a custodian for DTC, and that

---

[15] Creation Online sheets attached as part of Clearstream Compendium Exhibit 16 detail each transfer instruction made by ▇▇▇▇▇▇▇▇▇▇ from its account to ▇▇▇▇▇▇ account and reflects the location of the global bond certificate in which an interest was transferred under the heading entitled, "Place of Safekeeping," showing either "FRNYUS . . ." {Federal Reserve in New York} or "DTCYUS . . ." {Depository Trust and Clearing Corporation in New York}. Clearstream's Mr. Gem testified that the Creation Online System is used by its customers, in this case ▇▇▇▇▇▇▇▇▇▇, to instruct Clearstream to effect transactions in the customer's account. He described the information reflected in the Creation Online report, including the location where the security is ultimately deposited. See, June 27 hearing transcript, 44:18-46:9, referring to Exhibit H reproduced in Clearstream Compendium as Exhibit 11. The Creation Online reports in Clearstream Compendium Exhibit 16 are the same type of reports described in detail by Mr. Gem.

[16] Missing are prospectuses for bonds bearing ISIN's ▇▇▇▇▇▇▇▇▇▇ and ▇▇▇▇▇▇, which Plaintiffs were unable to locate. Citibank, upon whom a subpoena was served to produce copies of the prospectuses has failed to produce same and is in contempt of the subpoena.

payments of principal and/or interest are made to DTC, who then credits participants'
accounts with payments in amounts proportionate to their respective beneficial interests
as shown on DTC's records.  In this case, Citibank was a participant at DTC.  Citibank in
turn reflected a beneficial interest in this bond ████ on its books in favor of
Clearstream, who in turn, held on its books a beneficial interest in the principal sum of
$█████████ in favor of █████████ as a result of a transfer of the interest from
█████████████  Upon maturity of the bond, because the payment by necessity was
made through DTC in New York, and then to Citibank in New York, the Plaintiffs were
able to successfully restrain the money before payment out of the United States to ████
████ who likely holds the bonds as custodian for the benefit of ███████████
Indeed, Mr. Gem acknowledged that the proceeds from the redeemed bond ████
including the principal sum of $█████████ as a result of the restraining notices served
by Plaintiffs is █████████████" (June 27 hearing transcript 57:14-59:6).

Each of the bonds that are the subject of the restraining notices and the court's
June 27 restraining order will be redeemed in a similar fashion resulting in money
payments made in New York to DTC and from DTC to Citibank.  There is no question
that the bonds, in which it will be proved that the judgment debtor has an interest, are
located within the United States.  Thus, the bond certificates are physically located in the
United States, and the money payments of principal and interest on the bonds have and
will pass through the United States.  The restraining notices that are in place are working,
and should remain in place in order to prevent the money from being transferred out of
the United States back to Iran.

Once again, Clearstream relies heavily on the *Fidelity* cases in addressing the situs issue.[17] These cases are wholly distinct from the instant case. The assets in question in *Fidelity* were Series B Philippine Reduction Interest Bonds ("FLIRB's"). The issuance of these FLIRB's was governed by an agreement which specifically stated that the FLIRB's be offered only outside of the United States, (citing to the Issuance Agreement, §3.1). Fidelity attempted to cure this situs problem by compelling First Trust to deliver a definitive bearer bond, however the agreement also mandated that delivery of any definitive bearer bonds (upon request by a person or entity holding an interest in the FLIRB's) be made to an address outside the United States. Fidelity was ultimately unsuccessful in its attempt because it could not rectify the situs problem and the FSIA prevented seizure of assets located outside of the United States. We do not face the same problem in this case. The bond certificates do not have any such restriction and are already physically present in the United States. The prospectuses for these securities contemplate that the global certificates evidencing each bond will be located in New York.

It has been said that the situs of an intangible is somewhat of a legal fiction and may vary from one context to another, however, as Judge Cardozo said, it should be fixed by "a common sense appraisal of the requirements of justice and convenience in particular conditions." Siegel's New York Practice Section 487 (citing *Severnoe Securities Corp. v. London & Lancashire Ins. Co.*, 255 N.Y. 120, 124, 174 N.E. 299, 300

---

[17] Clearstream also cites *Mones v. Commercial Bank of Kuwai*, 399 F. Supp.2d 310 (S.D.N.Y. 2005) (complaint dismissed on remand)(where the only open branch of the bank, and thus the location of the assets, was in Kuwait), *Autotech Technologies LP v. Integral Research & Development Corp.*, 499 F3d 737 (7th Cir. 2007) ("Autotech frankly admitted that it intended to use the writ to levy against assets outside the United States. . . not only did Autotech fail to identify any assets in the United States that Integral had, it freely admitted that it was not trying to reach any such assets.")

(1931). In most cases where there is physical property involved it is not as difficult to determine the situs. In *Koehler v. Bank of Bermuda, Ltd.*, 2005 U.S. Dist. LEXIS 3760, 27-28 (S.D.N.Y. 2005) for example, the Court stated "[q]uite simply, [the] shares have their situs in the place in which the share certificates have always been located," which, as applied to this case, is New York. In addition, it is clear under New York law, that stock certificates must be located within the state in order to be attached. In *ABKCO Industries, Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 675, 350 N.E.2d 899, 385 N.Y.S.2d 511 (1976) the Court found that when intangibles are deemed to have become embodied in formal paper writings, "attachment depends on the physical presence of the written instrument within the attaching jurisdiction."[18]

The Court in *ABKCO* also noted that the situs of an intangible property is in New York where another party to an agreement is found "upon whom rests the obligation of performance."[19] In this case, DTC, the Federal Reserve Bank, Citibank and Clearstream are all parties to a series of agreements whose performance in New York is necessary to effectuate the terms of the bonds and the payment and/or transfer of interests therein. (June 27 hearing transcript at 9:7-18:21). Ultimately, if and when a turnover order is obtained by Plaintiffs the Court may issue an order requiring those whose performance must occur in New York to withhold cash payments (to the extent of Iran's interest) as they become due and pay same to plaintiffs; in effect an order of attornment.

Clearstream takes a myopic view of the situs issue, ignoring the obvious and numerous contacts between the securities in which the judgment debtor has an interest

---

[18] *ABKCO Industries, Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 675, 350 N.E.2d 899, 385 N.Y.S.2d 511 (1976) also states that "[t]angible personal property obviously has a unique location and can only be attached where it is."
[19] *Id.*

and the City of New York.  The assets are currently located in New York and when the

money is due to be paid on the bonds it will be paid into New York through the DTC or

Federal Reserve.  From there, it goes to Citibank, who is restrained at this time from

transferring the assets at issue.  At that time, the assets are clearly within the jurisdiction

of this court and should not be allowed to be transferred outside of the United States.

"Considering that we are enforcing here a duly rendered (and with full jurisdiction) New

York judgment: a construction that aids enforcement should, as between competing

possibilities, be the one selected."[20]  "The law will not tolerate an arbitrary attempt, in an

arrangement between the debtor and some third person, to put an otherwise leviable asset

beyond the reach of the debtor's creditors."[21]

## V-    Clearstream Lacks Standing to Raise FSIA and a Motion to Vacate the Restraints

Clearstream lacks standing to raise (1) the FSIA and (2) the necessity of releasing

the funds.  First, Clearstream is not a foreign sovereign and thus it is not protected by the

Foreign Sovereign Immunity Act.  Clearstream cites to *Heircare International v*

*Argentina, 821 F.2d 559 (11th Cir. 1987).*  This is a case that was decided purely on an

immunity issue.  It involves a waiver of immunity by a foreign sovereign and discusses

whether that waiver applies to its instrumentalities.  Clearstream is not in the same

position as either of the parties to that case.  It is not a foreign sovereign nor an

instrumentality or agency of such sovereign.  As a result, it has no standing to raise

immunity claims.

---

[20] Siegel, New York Practice (4th Ed.),  Section 491.
[21] Siegel, New York Practice (4th Ed.), Section 487.

Second, Clearstream has stated that the trades that it performs on these accounts are "not for its own financial interests, but for the accounts held by its customers."[22] Therefore, restraining these accounts should not, and does not, harm Clearstream in any manner.  Judge Koeltl recognized Clearstream's lack of standing when he stated that there needs to be further proceedings where ███████████████████████████████

████████████████████████████████████████████████████

████ which would provide ███████████████████████████

████████████████████████████████████████████████

█████████████████[23]    The true party in interest here is the judgment debtor Islamic Republic of Iran and ███████████, neither of which has appeared before this Court nor even attempted to communicate with the Plaintiffs in this case.  Clearstream implicitly acknowledged its lack of interest in the securities when its counsel initially contacted Plaintiffs' counsel on June 19, 2008 with a proposed schedule for a hearing at which Clearstream would present live testimony to show Plaintiffs and the Court that a part of the restrained securities could not possibly belong to Iran and should be released. During this telephone conversation between Plaintiffs' attorney, Liviu Vogel, Clearstream's attorney, Frank Panopoulos and Citibank's attorney, Sharon Schneier, Mr. Panopoulos stated that the majority of the securities were properly restrained and that except for the securities in which Iran clearly had no interest, Clearstream will not oppose the Plaintiffs' restraints on the balance of the securities.  Indeed, at the June 27, 2008 hearing, Clearstream made only a weak argument for release of the balance of the securities stating as follows:

---

[22] MOL at 3 citing June 27 hearing transcript 14:12-20.
[23] June 27 hearing Transcript at 68:3-8.



July 27 hearing transcript, 62:13-63:1.  Clearstream is not being harmed in any way by

the continuing restraint of the securities and proceeds pending discovery against █████

████ and a turnover proceeding thereafter to be brought by the Plaintiffs.

## VI-   The Transfers from █████ to █████████ May be Set Side as Fraudulent Conveyances

████████ could readily have appeared and made an application to vacate the

restraint if it so chose.  In doing so, it would have to, of course, submit evidence that the

beneficial owners of the securities (its customer[s]) are not ████████████████ or

the judgment debtors.  Indeed it would have been the natural thing for ████████ to

come forward voluntarily to clear its innocent customers' securities, just as Clearstream

did in this case in June, 2008 when it moved for release of restraints on two securities that

it could prove were in no way related to Iran.[24]  However, ████████ has failed to

---

[24] It is apparent that ████████ has no interest in appearing in this Court to clear the air, presumably
because Iran is still the beneficial owner of the securities.  Plaintiff's attorney, Liviu, Vogel, telephoned the
general manager of ████████████, on or about July 22, 2008, inquiring whether ████
████ would cooperate by voluntarily submitting to a deposition.  ████████ replied that he was aware
of Plaintiffs' restraint on the securities and wanted to cooperate, but could not do so without ████████

make an appearance.  Instead, it and/or ███████████████ has apparently persuaded

Clearstream to act as its surrogate to make this motion, claiming ignorance of the true

owner of the securities in ██████████ account number ██████ on the ground that

███████████████████████████████████████████

████████████. It is difficult to believe the argument that ████ transferred over $

████ in securities to an unrelated third party ██████████████████████████

███████████████████████████████████████████

████████; or conversely, that a third party ████████████████████████

███████████████████████████████████████████

███████████.

     It is far more plausible to believe that ████ caused the transfer of the securities in a

series of transactions intended to add a veil of secrecy as to the identity of the owner of

assets held in New York City that are subject to levy by judgment creditors, like

plaintiffs, under a newly enacted statute intended to compensate United States citizens

who are victims of state-sponsored terrorism.  On January 16, 2008, the U.S. House of

Representatives introduced and passed a bill containing the text of what was to become

28 USC § 1605A, which creates a private right of action retroactively for wrongful death

against sovereign nations that are found to have sponsored a terrorist act causing the

death of U.S. Citizens.[25]  On January 18, 2008, only two days after this important bill was

passed, ████████ sent an ██████████ to Clearstream marked ██████████

███████████████████████████████, i.e., ███████████

---

Court order because of bank secrecy laws.  Given the large sums involved one would presume that ████
████ would take the necessary steps to submit evidence pursuant to a protective order (as Clearstream has
done) if the securities were truly owned by innocent third parties.  Plaintiff's are in the process of securing
a letter of request for discovery against ██████████ by ██████ Courts pursuant to the Hague Convention.
[25] See Exhibit C annexed hereto for text of 28 U.S.C. § 1605A and legislative history thereof.

135887                                                    24

██████████████████████████████. The same day, Clearstream acknowledged

the opening of ████████████ account number █████ Prior to that date, ████████████

had had only ████████████ account at Clearstream for its own use, which was opened

in ████ (See Exhibit D annexed hereto, marked as Exhibit F at the June 27 hearing; and

June 27 hearing transcript at 31:25-33:18.)[26] Thereafter, in a series of ████████████

████████████████ and ██████████████████ instructed Clearstream to

████████████████ the securities (that are now restrained) ████████████ to ████

████████████████ account number ██████████████ In doing so, the physical

location of the bond certificates remained in New York at the DTC or Federal Reserve;

but Clearstream now gained the ability to deny knowledge of the identity of the owner of

the interest transferred.  Nevertheless, the securities that have been restrained are <u>directly</u>

<u>traceable</u> through Clearstream's records to ██████████████ (Clearstream

Compendium Exhibit 16, and June 27 hearing transcript at 56:14-59:22).  Importantly,

the <u>only securities in the United States</u> in ████████████ account number ██████ are the

very same securities that were transferred by ████████████████ from its Clearstream

account number ████ (June 27 hearing transcript, 64:22 – 65:2).  Before the restraining

orders were served, only two of the securities (hereinafter ██████ and ██████ originally

transferred from ████████████████, having a face value of $████████████, were

transferred out of ████████████ account number █████ They were transferred ██████

to ████████████ ████████████ account; i.e. ██████████ became the ████████████

████ . ████████████ subsequently transferred ██████ and ██████ in exchange for

---

[26]  It is interesting to note that ████████████████████████████████████, which
is wholly owned by ████████████████, which is wholly-owned by ████████████. See copies
of documents from ████████████ website and from ████████████████ website annexed hereto as
Exhibit E.

payment totaling $█████████ through Clearstream (see Clearstream Compendium Exhibits 11 and 12). These securities ultimately left the Clearstream system through subsequent transfers and therefore the Plaintiff's restraining notices previously covering them were modified by the Court on June 27, 2008 to exclude those securities since it was evident that ███ no longer had an interest in them.

Because ████████ appears to have received ██████████████ and ████ valued at $████████████████████ a strong inference can be made that the transfer was a fraudulent conveyance. In fact it is likely that all of the transfers from ██████████ to ████████ were fraudulent conveyances made for the purpose of placing the assets beyond the reach of plaintiffs as judgment creditors. If plaintiff after discovery can so prove, then the conveyances may be set aside by the court thereby returning the securities to the same status as the sole security in ██████ ████████ account at Clearstream (ISIN ████████) (June 27 hearing transcript at 27:4-28:1, 50:12-51:11 and Clearstream Compendium Exhibit 13). Clearstream's motion does not dispute that the situs of the assets in ████████████ account at Clearstream is in the United States and is properly restrained.

New York Debtor and Creditor Law, Section 273-a provides that, "Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after the final judgment for the plaintiff, the defendant fails to satisfy the judgment". New York Debtor and Creditor Law, Section 276 provides that "every conveyance made and every obligation incurred with actual intent, as distinguished from

intent presumed in law, to hinder, delay, or defraud either present of future creditors, is fraudulent as to both present and future creditors."

If, after discovery, it can be proved that ███████████'s transfer of securities to ██████████ was indeed a fraudulent conveyance, then ██████████ will be named as a defendant in a turnover proceeding and a judgment will be rendered, either setting aside the conveyances and directing ██████████ and/or Clearstream to restore the security interests in ███████████'s restrained account, or for damages against ██████████ if the securities are no longer in its possession. See, <u>Capital Distribution Services Ltd. v. Ducor Express Airlines, Inc.</u>, 440 F. Supp.2d 195, 204 (E.D.N.Y. 2006); and <u>Miller v. Doniger</u>, 28 A.D.3d 405, 814 N.Y.S.2d 141 (1st Dep't 2006).  In such event, ██████████'s "securities entitlement" interest in securities held by Clearstream in the United States will be subject to enforcement of a judgment against ██████████.  This is yet another reason why the restraining notices ordered to remain in effect by Judge Koeltl, should continue to remain in effect pending discovery and a turnover proceeding.


## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court deny the motion of Clearstream to vacate the restraints served by the Plaintiffs against Clearstream and Citibank, and grant such other and further relief as it deems just.

Dated: October 17, 2008

Respectfully submitted,

Salon Marrow Dyckman Newman & Broudy LLP
Attorneys for Plaintiffs

By: _____

    Liviu Vogel (LV-7552)
    292 Madison Avenue
    New York, NY  10017
    (212)  661-7100

## CERTIFICATION OF SERVICE

I hereby certify that on the 17th day of October 2008, I caused to be served an under seal version of Plaintiffs' Memorandum of Law in Opposition to Clearstream Banking, S.A.'s Motion to Vacate Restraints, Declaration of Liviu Vogel dated October 17, 2008 and Plaintiffs' Exhibits A through E in opposition to Clearstream Banking, S.A.'s Motion to Vacate Restraints upon the following parties by regular mail:

White & Case LLP
Francis A. Vasquez, Jr.
Frank Panopoulos
701 Thirteenth Street, N.W.
Washington, D.C. 20005

*Counsel for Clearstream Banking, S.A.*

Sharon L. Schneier, Esq.
Davis Wright Tremaine LLP
1633 Broadway, 27th Floor
New York, New York 10019-6708

*Counsel for Citibank, N.A.*

Liviu Vogel
(LV-7552)

136224