**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT NEW YORK**

------------------------------------------------------- x

DEBORAH D. PETERSON,                        :        Case No. 18 Misc. 302
Personal Representative of the Estate          :
of James C. Knipple (Dec.), et al.,             :
                                                          :        (Civil Action Nos. 01-2094 (RCL)
                    Plaintiffs,              :        and 1-2684 (RCL) (D.D.C.))
                                                          :
          v.                                          :
                                                          :        **PUBLIC VERSION**
ISLAMIC REPUBLIC OF IRAN, et al.,        :
                                                          :
                    Defendants.            :
------------------------------------------------------- x

**CLEARSTREAM BANKING, S.A.'S REPLY**
**IN SUPPORT OF ITS MOTION TO VACATE RESTRAINTS**

Francis A. Vasquez, Jr. (FV-1446)
Frank Panopoulos (FP-6173)
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, D.C.  20005
Tel: (202) 626-3600
Fax: (202) 639-9355

*Counsel for Clearstream Banking, S.A.*

November 14, 2008

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................. iii

PREFACE ........................................................................................................................1

I.    CLEARSTREAM IS NOT REARGUING ISSUES RAISED DURING THE JUNE 27
      HEARING................................................................................................................2

II.   UCC § 8-112(C) PRECLUDES RESTRAINT OF THE SECURITY ENTITLMENTS
      AT THE INTERMEDIARY LEVEL OF CLEARSTREAM .............................................4

      A.    Clearstream Does Not Hold The Judgment Debtors' Security Entitlements;
            It Holds           Interests In The Underlying Securities.......................................5

      B.    UCC § 8-112(c) Was Adopted To Eliminate The Problem Of Creditors
            Directing Legal Process Against Clearing Corporations .........................................8

      C.    The Situs Of Global Notes In New York Is Not Relevant To The
            Requirements Of UCC § 8-112(c) ........................................................................12

      D.    UCC § 8-112(e) Cannot Be Used To Contravene The Provisions Of N.Y.
            UCC § 8-112(c)..................................................................................................13

III.  CLEARSTREAM HAS STANDING TO RAISE A FOREIGN SOVEREIGN
      IMMUNITIES ACT DEFENSE TO PLAINTIFFS' RESTRAINTS...............................16

CONCLUSION................................................................................................................18

## TABLE OF AUTHORITIES

Federal Cases                                                                                          Page

*Arnold Graphics Indus., Inc. v. Indep. Agent Ctr., Inc.*,
775 F.2d 38 (2d Cir. 1985) ............................................................................3

*C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.*,
419 F. Supp. 2d 419 (S.D.N.Y. 2005).............................................................15

*Colautti v. Franklin*,
439 U.S. 379 (1979)..................................................................................14

*FG Hemisphere Assocs., LLC v. Republic of Congo*,
455 F.3d 575 (5th Cir. 2006) ...............................................................16, 17

*Fidelity Partners, Inc. v. First Trust Co. of N.Y.*,
58 F. Supp. 2d 52 (S.D.N.Y. 1997)......................................................... 12-13

*Frazier v. Turning Stone Casino*,
No. 5:02 CV 131 FJS/GJD, 2005 WL 2033483 (N.D.N.Y. Aug. 16, 2005) ..................4

*Frommert v. Conkright*,
433 F.3d 254 (2d Cir. 2006).......................................................................15

*Hercaire Int'l, Inc. v. Argentina*,
821 F.2d 559 (11th Cir. 1987) ....................................................................16

*Huffman v. Saul Holdings Ltd. P'ship*,
262 F.3d 1128 (10th Cir. 2001) ...................................................................3

*In re Vioxx Prod. Liab. Litig.*,
438 F. Supp. 2d 664 (E.D.La. 2006).............................................................4

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992)........................................................................... 14-15

*Montague v. Elec. Corp. of Am.*,
76 F. Supp. 933 (S.D.N.Y. 1948)................................................................14

*Nat'l Cong. for Puerto Rican Rights v. City of New York*,
191 F.R.D. 52 (S.D.N.Y. 1999) ...................................................................4

*O'Shea v. Littleton*,
414 U.S. 488 (1974)........................................................................... 14-15

## TABLE OF AUTHORITIES
### (cont'd).

Page

*Quern v. Jordan*,
440 U.S. 332 (1979)................................................................................................3

*Republic of Austria v. Altmann*,
541 U.S. 677 (2004)..............................................................................................16

*Rubin v. Islamic Republic of Iran*,
456 F. Supp. 2d 228 (D. Mass. 2006) ...................................................................17

*Salomon Bros. Mun. Partners Fund, Inc. v. Thornton*,
410 F. Supp. 2d 330 (S.D.N.Y. 2006)...................................................................15

*Stephens v. Nat'l Distillers & Chem. Corp.*,
69 F.3d 1226 (2d Cir. 1996)..................................................................................16

*Tholmer v. Pliler*,
No. CIV S-04-1368 (GEB)(CMK), 2007 WL 2711066 (E.D. Cal. Sept. 14, 2007).......................4

*United States v. Menasche*,
348 U.S. 528 (1955)..............................................................................................14

*Varity Corp. v. Howe*,
516 U.S. 489 (1996)..............................................................................................14

*Walker Int'l Holdings, Ltd. v. Republic of Congo*,
395 F.3d 229 (5th Cir. 2004) ........................................................................... 16-17

*Weininger v. Castro*,
462 F. Supp. 2d 457 (S.D.N.Y. 2006)...................................................................17

*Williams v. Taylor*,
529 U.S. 362 (2000)..............................................................................................14

State Cases

*ABKCO Indus., Inc. v. Apple Films, Inc.*,
39 N.Y.2d 670 (1976)...........................................................................................17

Federal Statutes, Treatises, and Rules

U.S. Foreign Sovereign Immunities Act, 28 U.S.C. § 1609 ......................................3, 16

Hague Convention on the Service Abroad of Judicial And Extrajudicial Documents in Civil or
Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163........................................2

**TABLE OF AUTHORITIES**
**(cont'd).**

Page

Fed. R. Civ. P. 60.................................................................................................2, 3, 4

State Statutes

N.Y. C.P.L.R. § 5201 (McKinney 1997)..............................................................7, 8, 9

N.Y. U.C.C. §§ 8-102(a), 112, 503 (McKinney 2002 )....................................... *passim*

Other Authorities

Carl S. Bjerre & Sandra M. Rocks, *ABCs of the UCC* (Amelia H. Boss, ed.,
American Bar Association 2004) (*excerpts*)...........................................................5-6, 7

7A, 8 William D. Hawkland, *Hawkland Uniform Commercial Code Series*
§§ 8-112:01, 317:11 (rev. 2006, supp. May 2008) ......................................2, 4, 9, 11, 14

8 Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code*
§§ 8-112:3, 317:19 (3d ed. 2003, supp. 2008) ............................................................ 8-9

J.S. Rogers, *Policy Perspectives on Revised UCC Article 8*, 43 U.C.L.A. L. REV. 1431
(June 1996)..................................................................................................................11

Steven L. Schwarcz, *Intermediary Risk in a Global Economy*, 50 DUKE L. J. 1541
(April 2001) .......................................................................................................... 10-11

UNIDROIT Preliminary Draft Convention on Substantive Rules Regarding
Intermediated Securities (April 2004) ..................................................................... 9-10

UNIDROIT Draft Convention on Substantive Rules Regarding Intermediated Securities
(as revised on Oct. 10, 2008) .......................................................................................13

## **PREFACE**

Plaintiffs' Opposition ignores the precision and subtlety contained in Article 8 of the N.Y. Uniform Commercial Code, which they glibly describe as "pure semantics."  Opp. at 11, n. 10. UCC § 8-112(c) provides clearly and unambiguously that a judgment creditor can reach a judgment debtor's interest in a security entitlement "only by legal process upon the securities intermediary with whom the debtor's securities account is maintained."  Clearstream is a securities intermediary that does ***not*** maintain the judgment debtor's securities account; rather, it maintains the account of another intermediary bank at which Plaintiffs allege the judgment debtor's securities account is maintained.[1]

Plaintiffs nonetheless ask the Court to disregard the language of § 8-112(c) and the intermediary status of Clearstream, by collapsing the chain of intermediaries through which the security entitlements at issue are held and treating Clearstream as tantamount to both the bank at the bottom of the chain that maintains the judgment debtor's security account and the depository bank at the top of the chain where the global certificates representing the bond issues are reposed—neither of which is true.  Plaintiffs' argument undermines the language and fundamental policies the UCC and the UNIDROIT Draft Convention On Substantive Rules Regarding Intermediated Securities adopted to protect the integrity of the indirect holding system and the ability of upper-level intermediaries to engage in securities transactions without impediment.  If Plaintiffs want to attach the judgment debtor's securities account, then they must follow § 8-112(c) and serve process on                    , where those accounts allegedly are

---

[1] *See* Opp'n at 18: "Upon maturity of the bond, because the payment by necessity was made through DTC in New York, and then to Citibank in New York, the Plaintiffs were able to successfully restrain the money before payment out of the United States to              , ***who likely holds the bonds as custodian for the benefit of***              " (Emphasis added).  Plaintiffs likewise acknowledge in other parts of their Opposition that              is the intermediary where the              security accounts are purportedly maintained. *See, e.g.*, Opp'n at 24-27.

maintained.  If they believe that they can attach the physical certificates representing the bonds, then Plaintiffs must follow N.Y. UCC § 8-112(a) and seize the certificates at the depository where they are immobilized.

Nor does UCC § 8-112(e) help Plaintiffs because the equitable remedy in § 8-112(e) "provides for *no relaxation* of the requirements of the rest of section 8-112[.]").  7A William D. Hawkland, *Hawkland Uniform Commercial Code Series* § 8-112:01 (rev. 2006, supp. May 2008) (citations omitted) (emphasis added).  The provisions of § 8-112(e) cannot be relied upon to usurp the provisions of § 8-112(c); that would negate and render meaningless § 8-112(c) and the entire scheme for creditor process contained in § 8-112.  The proper use of § 8-112(e) in this case would be, for example, for Plaintiffs to ask the Court for assistance in serving process in through the Hague Convention on the Service Abroad of Judicial And Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965,  20 U.S.T. 361, 658 U.N.T.S. 163.

## I.    CLEARSTREAM IS NOT REARGUING ISSUES RAISED DURING THE JUNE 27 HEARING

Plaintiffs contend that Clearstream's Motion seeks reconsideration of the Court's June 27 Final Order without raising any of the grounds for reconsideration under Rule 60(b) of the Federal Rules of Civil Procedure.  Moreover, they contend that Clearstream is barred by the law of the case doctrine from challenging the Court's June 27 Final Order.  Opp'n at 1, 6-9.  These contentions are without merit.  Clearstream's Motion raises an issue of law that neither was raised nor addressed at the June 27 hearing.

At the request of Clearstream to comply with Luxembourg law, Judge Koeltl ordered a hearing on June 27, 2008, at which Clearstream presented evidence and oral testimony regarding the restrained securities.  The purpose of the hearing was to discuss the entities that held (or had held) interests in those securities, to request vacating the restraints with respect to the interests in

securities because those interests were no longer connected with the judgment debtor or

Clearstream, and to request vacating the restraints with respect to the interests in      securities

held in            non-proprietary account because Clearstream had no evidence that the beneficial

ownership of those interests remained with the                        Judge Koeltl granted

Clearstream's request with respect to the interests in the     securities that were no longer at

Clearstream, and denied Clearstream's request with respect to the interests in the     securities

because, as Plaintiffs themselves point out, the underlying beneficial ownership in those interests

had yet to be determined.  Opp'n at 6; June 27 Hr'g Tr. (Compendium Ex. 3) at 66:16-68:10.

Nowhere in Clearstream's letter requesting the hearing (Compendium Ex. 8) or during

the hearing itself did Clearstream argue that Plaintiffs' restraints were in violation of UCC § 8-

112(c) and the Foreign Sovereign Immunities Act.  Indeed, Clearstream could not have done so

because the factual foundation for those arguments was only established at the hearing.

Because these issues were not presented to or considered by Judge Koeltl on June 27th,

they do not violate the law of the case doctrine.  *See, e.g.*, *Quern v. Jordan*, 440 U.S. 332, 348

n.18 (1979) ("The doctrine of law of the case comes into play only with respect to issues

previously determined."); *Arnold Graphics Indus., Inc. v. Indep. Agent Ctr., Inc.*, 775 F.2d 38, 41

(2d Cir. 1985) (same) (citation omitted); *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128,

1132 (10th Cir. 2001) ("The law of the case doctrine is intended to prevent continued re-

argument of issues already decided") (internal citations and punctuation omitted).

Moreover, Clearstream is neither seeking to revisit, reargue, or reconsider Judge Koeltl's

June 27 Final Order and, therefore, its Motion to Vacate Restraints is not a motion for

reconsideration pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.  Clearstream's

Motion to Vacate Restraints has none of the characteristics of a motion for reconsideration: it is

not requesting the same relief as the prior oral application made before Judge Koelt and it concerns different legal issues than those considered by Judge Koeltl. *See, e.g., Nat'l Congress for Puerto Rican Rights v. City of New York*, 191 F.R.D. 52, 53 (S.D.N.Y. 1999) (Local Civil Rule 6.3 applies "to avoid repetitive arguments on issues that have been fully considered by the court") (internal quote and citation omitted); *Frazier v. Turning Stone Casino*, No. 5:02 CV 131 FJS/GJD, 2005 WL 2033483, at *1, n.2 (N.D.N.Y. Aug. 16, 2005) (holding that an order — that "adjudicate[d] fewer than all the claims or the rights and liabilities of fewer than all the parties" — was not a final order subject to Rule 60(b) (citation omitted)); *Tholmer v. Pliler*, No. CIV S-04-1368 (GEB) (CMK), 2007 WL 2711066, at *1 n.1 (E.D. Cal. Sept. 14, 2007) (treating motion seeking additional injunctive relief as a new motion and not a motion for reconsideration); *In re Vioxx Products Liability Litig.*, 438 F. Supp. 2d 664, 665 n.1 (E.D.La. 2006) (rejecting argument that application was an improper motion for reconsideration when the Court explicitly did not rule on the present issue in its earlier ruling).

## II.   UCC § 8-112(C) PRECLUDES RESTRAINT OF THE SECURITY ENTITLEMENTS AT THE INTERMEDIARY LEVEL OF CLEARSTREAM

UCC § 8-112(c) provides that creditors may reach a debtor's interest in a security entitlement "only by legal process upon the securities intermediary with whom the debtor's securities account is maintained."  As one commentator notes, "Subsection 8-112(c) . . . make[s] clear that the legal process must be directed to the debtor's own intermediary."  7A *Hawkland Uniform Commercial Code Series* § 8-112:01.  Comment 3 to § 8-112(c) specifically explains that a creditor cannot serve process on an intermediary like Clearstream:  "Debtor's creditor cannot reach Debtor's interest by legal process directed to the Clearing Corporation."

To circumvent the clear and unambiguous language of § 8-112(c), Plaintiffs argue that the statute is convoluted, does not prevent the Court from restraining the security entitlements

held with Clearstream pursuant to § 8-112(a) because the global certificates representing the underlying bonds are physically present in New York, and the Court can use its equitable authority under § 8-112(e) to maintain the restraints.  Opp'n at 10-12.  None of these arguments has any merit because they are based on Plaintiffs' miscomprehending both the nature of the security interests at issue and the legal regime governing the holding and negotiation of those interests set forth in Article 8 of the N.Y. UCC.

> ### A.  Clearstream Does Not Hold The Judgment Debtors' Security Entitlements; It Holds       Interests In The Underlying Securities

Up until the last quarter of the twentieth century, securities were represented by a physical certificate, such as stock certificate or a bearer bond.  The high cost and greater time involved in negotiating the sale of physical certificates became impractical in modern financial markets and, therefore, securities were "dematerialized"; that is, securities no longer were represented by a physical certificate, but instead took electronic form as book entries on the records of brokers and other financial intermediaries.[2]  Dematerialization also changed the way securities are held by investors.  In the case of securities represented by a physical certificate, the investor deals directly with the issuer of the security and directly possesses the security.[3]  In the case of dematerialized securities, investors do not deal directly with the issuer; instead they hold their investment indirectly through banks and brokers that, in turn, hold interests in the securities through tiers of other intermediaries like clearing corporations, in a chain that ultimately reaches back to the issuer: "Instead, the clearing corporation's books indicate the ownership interests of the brokers or banks that are its members, and the records of those intermediaries, in turn, indicate the ownership interests of their customers, i.e., lower-tier intermediaries or, at the

---

[2] *See* Carl S. Bjerre and Sandra M. Rocks, *The ABCs of the UCC, Article 8: Investment Securities*, at 2 (ABA 2004) (relevant excerpts attached as Supplemental Compendium Exhibit 22).

[3] *Id.* at 4.

bottom of the chain, the actual investors."[4]  The investor's ownership interest in the case of indirect holding is called a "security entitlement."[5]

The security interests that Plaintiffs have restrained are entitlements in dematerialized bonds issued by governments or intergovernmental organizations in the amounts of US $1 billion or more.[6]  These bonds are represented by a global certificate that is kept "immobilized" at the Depository Trust & Clearing Corporation ("DTC") or N.Y. Federal Reserve Bank,[7] and the interest in the bond by the actual investor is held at the level of the investor's bank or broker in book entry form; the bank or broker, in turn, holds its interests in the bonds through a custodial or proprietary account with its own intermediary bank or clearing corporation, on up through a chain of intermediaries leading eventually to the DTC.[8]  As Clearstream's witness, Mr. Gem testified:

[9]

---

[4] *Id.* at 3, 5.  Compendium Exhibit 5 is a chart showing the intermediary chain.

[5] *Id.* at 6, 33 ("A security entitlement might be thought of . . . simply as rights to a security that an investor holds indirectly (that is, through a broker or other intermediary rather than in a direct relationship with the issuer)").

[6] *See* Clearstream's Memorandum of Law in Support of Its Motion to Vacate Restraints ("Memorandum") at 4-5; Compendium Exhibit 6 (listing bonds at issue).

[7] An "immobilized" note means the physical note is reposed and registered with a depository like the DTC and "does not move nor change registration despite the high volume of trades affecting" it.  Bjerre and Rocks, *The ABCs of the UCC*, at 3; *see also* June 27 Hr'g Tr. at 11:21-12:1

[8] Bjerre and Rocks, *The ABCs of the UCC*, at 5-6 (discussing the indirect holding system and security entitlements).

[9] June 27 Hr'g Tr. at 12:13-18, 22:5-8.

Article 8 of the UCC codifies a legal regime that was carefully crafted to facilitate transactions in such dematerialized securities.  Plaintiffs completely disregard the refined aspects of this regime and its subtleties.  Rather than trying to comprehend the statute and its interaction with the garnishee provisions of N.Y. C.P.L.R. § 5201, Plaintiffs describe the statutory scheme as "semantic technicalities" and resort to broad generalizations about the property interests they have attached to support circumventing the statute.  Opp'n at 11 n.10, 16.

For example, Plaintiffs contend that it is "pure semantics" to describe the property interest at issue as a "security entitlement" because the definitions in UCC Article 8 are "circular," and the terms "security entitlement," "certificated security," and "security certificate" are convoluted. Opp'n at 11 n.10.  According to Plaintiffs, it is more expedient to treat the underlying interest generally as a "debt."  _Id._  These terms, however, have distinct meanings that impact a creditor's ability to attach the underlying property interest.  A "certificated security" is defined as "a security represented by a certificate," _see_ UCC § 8-102(a)(4), such as a bearer instrument or a global note held at a centralized depository like the DTC.[10]  UCC § 8-112(a) provides that the interest of a debtor in a certificated security can be reached by a creditor "only by actual seizure of the security certificate," or by serving the issuer if the certificate has been returned to the issuer.  Plaintiffs recognize as much when they state that compliance with § 8-112(a) would be "cumbersome" but could be accomplished through appointment of a receiver.  Opp'n at 11-12.

In contrast, the UCC defines a "security entitlement" as "the rights and property interest" of a person identified in the records of a securities intermediary as the person holding such rights with respect to a financial asset, such as a security.  _See_ UCC § 8-102(a)(7), (9), (17). Recognizing the dematerialized nature of the security entitlement and the indirect holding of

---

[10] _See_ Bjerre and Rocks, _The ABCs of the UCC_, at 3.

such interests through a chain of intermediaries, UCC § 8-112(c) provides that the interest of a debtor in a security entitlement may be reached by a creditor "only by legal process upon the securities intermediary with whom the debtor's securities account is maintained," i.e., upon the bank or broker or other "lower tier" intermediary with whom the investor has its securities account.

Significantly, the terms used in UCC § 8-112 are recognized by the relevant garnishee provisions of N.Y. CPLR § 5201 as distinct and encompassing different means of attachment:

> Where property or a debt is evidenced by a negotiable instrument for the payment of money . . . the instrument, document or certificate shall be treated as property capable of delivery and the person holding it shall be the garnishee; except that section 8 – 112 of the uniform commercial code shall govern the extent to which **and the means by which** any interest in a certificated security, uncertificated security or security entitlement (as defined in article eight of the uniform commercial code) may be reached by garnishment, attachment or other legal process.

N.Y. CPLR. § 5201(a)(4) (emphasis added).

Plaintiffs stand UCC § 8-112 and CPLR § 5201 on their head by arguing the nomenclature and intermediary tier structure set forth in UCC Article 8 can be disregarded and the security entitlements at issue can be treated generically as "debts" held by Clearstream—a clearing intermediary that is not the bank with whom the judgment debtor's security account is maintained. Their argument should be rejected because it conflicts with the incorporation of the defined terms and provisions of UCC § 8-112 into the garnishee provisions of CPLR § 5201(a)(4), as well as the very purpose of UCC § 8-112(c).

**B.    UCC § 8-112(c) Was Adopted To Eliminate The Problem Of Creditors Directing Legal Process Against Clearing Corporations**

While "UCC § 8-112 is entitled 'creditor's legal process' it would more appropriate if it were called 'limitations on execution on interests in securities.'"  8 Lary Lawrence, *Lawrence's*

*Anderson on the Uniform Commercial Code* § 8-112:3 (3d. ed., supp. 2008).  The very purpose of UCC § 8-112(c) is to protect clearing intermediaries: "[In] New York, where the principal clearing corporation for the United States securities markets is located, it was thought necessary to add special legislation to the civil procedure statutes to eliminate th[e] potential problem" of creditors directing legal process against clearing corporations.  *See* 7A *Hawkland Uniform Commercial Code Series* § 8-112:01 (citing NY CPLR § 5201(c)(4)).  Comment 3 to UCC § 8-112 makes it even clearer that an intermediary like Clearstream is an inappropriate garnishee:

> If Debtor holds securities through Broker, and Broker in turn holds through Clearing Corporation, Debtor's property interest is a security entitlement against Broker. Accordingly, Debtor's creditor cannot reach Debtor's interest by legal process directed to the Clearing Corporation.

N.Y. UCC § 8-112, cmt. 3; *see also* N.Y. UCC § 8-503, cmt. 2 ("The idea that discrete objects might be traced through the hands of different persons ***has no place*** in the Revised Article 8 rules for the indirect holding system.") (emphasis added).

The policy considerations underlying the statute are best articulated in the Explantory Report to the UNIDROIT Draft Convention submitted by the UNIDROIT Secretariat in September 2008.  In discussing the prohibition of upper-tier attachment in Article 19 of the Convention, the Report explains that Article 19 seeks to prevent two important problems caused by upper-tier attachment.  First, upper-tier attachment undermines the ability of an intermediary to perform its functions.[11]  Higher-tier intermediaries have "no means of identifying any interest of an account holder holding securities with a lower-tier intermediary"[12] and thus compliance

---

[11] Diplomatic Conference to Adopt a Convention on Substantive Rules Regarding Intermediated Securities, Explanatory Report at 28 (February 2008), *available at* http://www.unidroit.org/mm/conf11-004-e.pdf (attached as Supplemental Compendium Exhibit 23) (hereinafter 2008 Explanatory Report).

[12] Preliminary Draft Convention on Harmonised Substantive Rules Regarding Securities Held with an Intermediary at 5 (April 2004), *available at* http://www.unidroit.org/english/documents/2004/study78/s-78-013-e.pdf (attached as Supplemental Compendium Exhibit 24).

with an attachment order would freeze the entire account and interfere with "account holders which have nothing to do with the subject-matter of the attachment."[13]  In fact, Plaintiffs caused this very problem when they restrained the two securities in which the judgment debtor's interest had left Clearstream; the result of those restraints prevented the remaining Clearstream customers holding interests in the securities from being fully paid on their entitlements.[14]

Second, upper-tier attachment has the ability to mislead an account holder at a lower tier or someone dealing with an account holder at a lower tier by giving the impression that the restrained securities are in fact transferable at the lower-tier level, even though an attachment order is in effect:  "If an account at a lower level appears to show the ability of the account holder to transfer or pledge securities credited to that account, then, if in fact these securities are encumbered by an attachment order at a higher tier, the account holder or persons dealing with the account holder at the lower level may, in the absence of information about the attachment order, be misled."[15]  The failure of lower-tier accounts to accurately reflect the account holder's freely-available holdings "would have a negative impact on the overall integrity of the intermediated securities holding system."[16]

Therefore, in order to protect the indirect holding system, UCC § 8-112(c) limits "the ability of investors (and their creditors) to assert rights or claims against intermediaries that are not in privity" with the judgment debtor.  *See* Steven L. Schwarcz, *Intermediary Risk in a Global Economy*, 50 DUKE L. J. 1541, 1592-93 (April 2001).  In doing so, UCC § 8-112(c) respects the

---

[13] 2008 Explanatory Report at 28.

[14] June 27 Hr'g Tr. at 25:18-26:12.

[15] 2008 Explanatory Report at 28.

[16] *Id. See also* UNIDROIT Study Group on Harmonised Substantive Rules Regarding Indirectly Held Securities, Position Paper at 18 (August 2003) (finding upper-tier attachment as increasing the risk that commercial transactions by account holders of the lower-tier intermediary would be frozen and would result in severe disruptions to the operation of the indirect holding system) (attached as Supplemental Compendium Exhibit 25).

"impracticality of imposing duties on an intermediary with respect to an investor whose identity and ownership interest is not recorded on the intermediary's books." *Id.*; *see also* 7A *Hawkland Uniform Commercial Code Series* § 8-112:01 ("It is readily apparent that it would make no sense to say that Creditor could reach [the judgment debtor's] property by process directed to Clearing Corporation, for Clearing Corporation would **never have even heard of**" the judgment debtor) (emphasis added).[17]

Accordingly, for "the indirect holding system to work," a judgment creditor cannot be permitted to "enforce its asserted claim . . . by legal process" against a clearing corporation or other intermediary in or through which the custodian of a judgment debtor's entitlements holds its securities interests.  J.S. Rogers, *Policy Perspectives on Revised UCC Article 8*, 43 U.C.L.A. L. Rev. 1431, 1456 (June 1996); *see also id.* at 1457 ("Because [the judgment debtor's] property interest is 'located' [with its] Custodian, it is clear, as a matter of general principle, that the only proper subject of legal process . . . would be [the] Custodian" and not a Clearing Corporation, who "does not have possession of some item of property in which [the judgment debtor] has a **direct property interest**[.]") (emphasis added).

Plaintiffs' argument that the security entitlements in Clearstream's Omnibus Account can be restrained because the entitlements are a "debt" and the global notes for the underlying bonds are present in New York at the DTC completely undermines the purposes of UCC § 8-112(c). The argument is inimical to the proper functioning of the indirect holding system for securities. Equally inimical is Plaintiffs' contention that Citibank and Clearstream are proper garnishees

---

[17] As described on page 5 of Clearstream's Memorandum, in the case where a Clearstream customer has a non-proprietary or custody account with Clearstream, the identity of the customer's customer having the underlying ownership interest in the security entitlements is not known by Clearstream and not reflected on Clearstream's records.  *See* June 27 Hr'g Tr. at 12:13-18, 15:11-16:10, 71:5-8; N.Y. Fed. Legal Responses (Compendium Exhibit 4), at 4 (responses to question 5) ("the ultimate investor will almost never be recorded by name on the books of an upper-tier intermediary or the issuer") and 5 (response to question 6) ("in its customer account [the broker] collectively holds securities for its customers (without identifying the customers)").

because they hold proceeds from          redeemed bonds.  Opp'n at 15-16.  As long as the proceeds of the bonds remain with Clearstream (or Citibank) in the indirect holding system, they are subject to the limitations of UCC § 8-112(c)—whether they are segregated or not.

### C.   The Situs Of Global Notes In New York Is Not Relevant To The Requirements Of UCC § 8-112(c)

Plaintiffs argue that the restraints are proper because the global certificates representing the underlying bonds are held with DTC or the N.Y. Federal Reserve Bank in New York.  Opp'n at 10, 17.  On this basis, they distinguish *Fidelity Partners, Inc. v. First Trust Company of New York*, and argue that payments to the intermediaries participating in the bonds are made in New York and from there ultimately reach the judgment debtors' accounts held with          *Id.* at 18. Plaintiffs' arguments fail for the reasons stated above: they disregard the structure of UCC § 8-112 and disingenuously collapse the different tiers along the intermediary chain by treating Clearstream as both the holder of the global notes and the bank with whom the judgment debtors' security account is maintained.  Indeed, adopting Plaintiffs' argument would create a substantial, non-statutory exception to UCC § 8-112(c) for all cases where the global certificate is immobilized in New York that would swallow the rule.

Moreover, Plaintiffs' misread *First Fidelity*.  The financial intermediaries in that case, First Trust, Morgan Guaranty, and Euroclear — like Clearstream and Citibank in this case — were improper garnishees because none of them "carrie[d] on [their] books an account in the name of the judgment debtor."  58 F. Supp. 2d 52, 54 (S.D.N.Y. 1997) (citations and internal punctuation omitted).  The court's principle holding in that case was that Fidelity should direct its "execution efforts  . . .  at ING Bank of Manila, upon whose books [the judgment debtor's] interest [was] specifically denominated."  58 F. Supp. 2d at 54.  The court did not instruct Fidelity to direct its

execution efforts at Morgan Guaranty in London, where the global certificate was held in that case.

The United States, moreover, has adopted the holding in *Fidelity Partners* in recommending that the principles underlying UCC 8-112(c) be included in the UNIDROIT Draft Convention.[18] In its submission to the Draft Convention, the United States explicitly references *Fidelity Partners*, advocates for strict rules against upper-tier attachments, and categorically rejects the position that physical location of the share certificates is a relevant consideration to whether attachment is appropriate.[19]

Accordingly, Plaintiffs' discussion about the existence of physical bond certificates and their reliance on the bond prospectuses filed with the S.E.C. (Opp'n at 17-18) is irrelevant; the location of the global certificates in New York does not alter the fact that Clearstream is not the securities intermediary at which the judgment debtor's account is maintained, or that the property interest at issue is a security entitlement.

**D.    UCC § 8-112(e) Cannot Be Used To Contravene The Provisions Of N.Y. UCC § 8-112(c)**

Plaintiffs further argue that the Court can disregard the provisions of UCC § 8-112(c) and continue restraining the security entitlements at Clearstream through the Court's equitable power granted by UCC § 8-112(e), including appointing a receiver.  Opp'n at 12-15.  Plaintiffs' argument is meritless because it is contrary to cardinal principles of statutory construction and Plaintiffs do not meet the requirements for equitable or injunctive relief.

---

[18] Draft Convention on Substantive Rules Regarding Intermediated Securities, *as revised on* Oct. 10, 2008, *available at* http://www.unidroit.org/mm/confl1-048rev-e.pdf (attached as Supplemental Compendium Exhibit 26).

[19] UNIDROIT Committee of Governmental Experts for the Preparation of a Draft Convention on Harmonised Substantive Rules Regarding Securities Held with an Intermediary, Comments by the Government of the United States of America at 2 (February 2006) (advocating that upper-tier attachment should be prohibited, even if the judgment, attachment, upper-tier intermediary, and share certificates are all in the same country), *available at* http://www.unidroit.org/english/documents/2006/study78/s-78-036-e.pdf (attached as Supplemental Compendium Exhibit 27).

Plaintiffs' reliance on UCC § 8-112(e) violates two well-established principles of statutory construction.  First, the "canon of construction that a statute should be interpreted so as not to render one part inoperative" contradicts Plaintiffs' claim that UCC § 8-112(e) can trump the express limitations of UCC § 8-112(c).  *See Colautti v. Franklin*, 439 U.S. 379, 392 (1979) (citing *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)) (rejecting interpretation of statute that would render other conditions in statute "redundant or largely superfluous"); *see also Williams v. Taylor*, 529 U.S. 362, 404 (2000) (holding that it is a "cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute").

Second, Plaintiffs' argument violates the canon that "the specific governs over the general." *See Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996); *see also Montague v. Elec. Corp. of Am.*, 76 F. Supp. 933, 936 (S.D.N.Y. 1948) ("The settled rule of statutory construction is that, where there is a special statutory provision[] affording a remedy for particular specific cases and where there is also a general provision which is comprehensive enough to include what is embraced in the former, the special provision will prevail over the general provision, and the latter will be held to apply only to such cases as are not within the former.").

Indeed, UCC § 8-112(e) "simply makes clear that a creditor is entitled to appropriate aid from courts of competent jurisdiction" and  "provides for ***no relaxation*** of the requirements of the rest of section 8-112[.]").  7A *Hawkland Uniform Commercial Code Series* § 8-112:01 (citations omitted) (emphasis added).  Subsection (e) is merely a guarantee of judicial assistance in the absence of a relevant "state law" provision and cannot be used to invalidate other provisions of the UCC.  *Id.*

Plaintiffs' also do not meet the requirements for equitable relief.  It is a "basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an

adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974)); *see also Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) ("[T]he Supreme Court has consistently disfavored the expansion of the availability of equitable relief where remedies at law are sufficient."); *C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 436 (S.D.N.Y. 2005) ("Equity has no place where, as here, money damages will suffice.").

Plaintiffs assert that the "facts of this case are unique, and they compel the use of the Court's equitable power under this statute." Opp'n at 12. That is hardly the case. Plaintiffs have an adequate remedy at law against the third-party bank that allegedly holds the judgment debtor's securities account and they can reach that bank in        , and attach any assets there, through service under the Hague Convention as they admittedly are doing. *See* Opp'n at 23-24 n.24. Moreover, assuming arguendo Plaintiffs can displace the limitations of UCC § 8-112(c) through the equitable power granted to the Court by UCC § 8-112(e), Plaintiffs still fail to meet the requirements for an injunction.

***First***, Plaintiffs cannot show that they are being irreparably harmed. Even without the restraints, Plaintiffs can serve process directly against the bank where the judgment debtor's securities account is maintained and attach assets there. Hence, Plaintiffs would not suffer "extreme or very serious damage" (*Salomon Bros. Mun. Partners Fund, Inc. v. Thornton*, 410 F. Supp. 2d 330, 332 (S.D.N.Y. 2006)) if the restraints were lifted. ***Second***, Plaintiffs cannot show success on the merits because UCC § 8-112(c) expressly rejects the kind of upper-tier attachment sought by Plaintiffs. ***Third***, Plaintiffs have failed to establish that the balance of hardships tip decidedly in their favor. If anything, the balance of hardships tips in favor of Clearstream

15

because Plaintiffs' restraints are impeding the transaction of securities interests through the indirect holding system.

### III.   CLEARSTREAM HAS STANDING TO RAISE A FOREIGN SOVEREIGN IMMUNITIES ACT DEFENSE TO PLAINTIFFS' RESTRAINTS

In its Memorandum, Clearstream raises that assuming arguendo the entitlements at issue are still owned by the judgment debtor after their transfer to            and further assuming that the                           is the same as the judgment debtor, then Plaintiffs' Restraints on the security entitlements violate the FSIA because the entitlements are not "property in the United States of a foreign state" as required by the U.S. Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1609-1610.  Memorandum at 15.

A claim of sovereign immunity "raises a jurisdictional defense."  *Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004).   Federal courts lack subject matter jurisdiction over enforcement proceedings against the property of a foreign state unless a statutory exception to immunity applies.  *See Stephens v. Nat'l Distillers and Chem. Corp.*, 69 F.3d 1226, 1230 (2d Cir. 1996); *Hercaire Int'l, Inc. v. Argentina*, 821 F.2d 559, 563 (11th Cir. 1987).

Plaintiffs' argument that Clearstream lacks standing to assert a FSIA defense, Opp'n at 21-23, is against the clear weight of authority holding that a "sovereign immunity claim may be raised by a garnishee as well as by a foreign sovereign."  *FG Hemisphere Assocs., LLC v. The République Du Congo*, 455 F.3d 575, 584 (5th Cir. 2006) (reversing writ of garnishment and holding that "§ 1610(a) requires that the foreign sovereign's property be located in the United States when the district court determines whether the [FSIA] exception applies") (citations omitted); *see also Walker Int'l Holdings, Ltd. v. Republic of Congo*, 395 F.3d 229, 233 (5th Cir. 2004) (finding "[no] authority for the proposition that it is the sovereign's exclusive right to raise the issue of sovereign immunity under the FSIA. . . .  Neither 28 U.S.C. § 1610(a) nor (b)

requires the presence of the foreign sovereign or gives the sovereign exclusive standing to raise the waiver element."); *Weininger v. Castro*, 462 F. Supp. 2d 457, 473-74 (S.D.N.Y. 2006) (citing *FG Hemisphere*, 455 F.3d at 596) (acknowledging that the sovereign immunity of foreign state can be raised by a garnishee) (additional citation omitted); *Rubin v. Islamic Republic of Iran*, 456 F. Supp. 2d 228, 232 (D. Mass. 2006) (citing *Walker Int'l*, 395 F.3d at 233) ("Likewise, there is no suggestion in the plain language of § 1609 that raising the question of a property's immunity from execution is a right reserved to the foreign sovereign itself.").

As discussed on page 16 of Clearstream's Memorandum, the security entitlements at issue are reflected in          records that it maintains for its customer, which are located in where          is headquartered, and not in the United States.  Neither the Omnibus Account nor          s non-proprietary account with Clearstream is the situs of the securities entitlements. These Clearstream accounts only reflect book-entry credits and debits of          interests in the securities.  *See* Compendium Exhibit 15 (excerpts from          account statement).  Therefore, Plaintiffs are wrong to assert that the judgment debtors' assets are located within the United States and covered by the FSIA's exceptions to attachment immunity.[20]   Because the entitlements are located outside the United States, they are not property in the United States and the Court lacks jurisdiction to attach the entitlements.

---

[20] Plaintiffs mistakenly rely on *ABKCO Industries, Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670 (1976) as authority for their belief that the judgment debtor's interests are located in New York.  In *ABKCO*, the property sought to be attached was an "interest in [a] Licensing Agreement."  The New York Court of Appeals found the "situs of that intangible property" to be New York, because that was the location of the other "party to the Licensing Agreement." *Id.* at 675.  That issue is not present here, as the relevant party,          is outside the United States.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Clearstream's motion and vacate restraints

on the                    at issue.

Dated:  November 14, 2008                    Respectfully submitted,

                                             WHITE & CASE LLP

                                             By: _____
                                                 Francis A. Vasquez, Jr. (FV-1446)
                                                 Frank Panopoulos (FP-6173)
                                                 701 Thirteenth Street, N.W.
                                                 Washington, D.C.  20005
                                                 Tel: (202) 626-3600
                                                 Fax: (202) 639-9355

                                             *Counsel for Clearstream Banking, S.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of November 2008, I caused to be served public and under seal versions of Clearstream Banking S.A.'s Reply Memorandum of Law in Support of Its Motion to Vacate Restraints and the Supplemental Compendium of Exhibits to Clearstream Banking, S.A.'s Motion to Vacate Restraints on the following parties, by e-mail and federal express next-day delivery:

Liviu Vogel, Esq.
Salon Marrow Dyckman Newman & Broudy LLP
292 Madison Avenue,
New York, New York 10017

*Counsel for Plaintiffs*

Sharon L. Schneier, Esq.
Davis Wright Tremaine LLP
1633 Broadway, 27th Floor
New York, New York 10019-6708

*Counsel for Citibank, N.A.*

Willie Lin