# EXHIBIT 24



**UNIDROIT Study Group on Harmonised
Substantive Rules regarding Securities Held
with an Intermediary**

UNIDROIT 2004
Study LXXVIII – Doc. 13
Original: English
April 2004

**PRELIMINARY DRAFT CONVENTION ON HARMONISED SUBSTANTIVE RULES
REGARDING SECURITIES HELD WITH AN INTERMEDIARY**

**Convention on harmonised substantive rules
regarding securities held with an intermediary**
**(Preliminary discussion draft)**

### CHAPTER I - INTERPRETATION

**Article 1
[Definitions and interpretation]**

(1)  In this Convention –

(a)  **"securities"** means any shares, bonds or other financial instruments or assets (other than cash) or any interest therein;

(b)  **"securities account"** means an account maintained by an intermediary to which securities may be credited or debited;

(c)  **"intermediary"** means a person that in the course of a business or other regular activity maintains securities accounts for others or both for others and for its own account and is acting in that capacity;

(d)  **"account holder"** means a person in whose name an intermediary maintains a securities account;

(e)  **"account agreement"** means, in relation to a securities account, the agreement with the relevant intermediary governing that securities account;

(f)  **"securities held with an intermediary"** means the rights of an account holder resulting from a credit of securities to a securities account;

(g)  **"relevant intermediary"** means the intermediary that maintains the securities account for the account holder;

(h)  **"disposition"** means any transfer of title, whether outright or by way of security, and any grant of a security interest, whether possessory or non-possessory;

(i)  **"perfection"** means, in relation to a disposition, completion of any steps necessary to render the disposition effective against third parties, and **"perfected"** has a corresponding meaning;

(j)  **"adverse claim"** means, with respect to any securities, a claim that a person has an interest in those securities that is effective against third parties and that it is a violation of the rights of that person for another person to hold or dispose of those securities;

(k)  **"insolvency proceeding"** means a collective judicial or administrative proceeding, including an interim proceeding, in which the assets and affairs of the debtor are subject to control or supervision by a court or other competent authority for the purpose of reorganization or liquidation;

(l)  **"insolvency administrator"** means a person authorized to administer a reorganization or liquidation, including one authorized on an interim basis, and includes a debtor in possession if permitted by the applicable insolvency law;

(m)  **"the applicable law"** means, in relation to the application of this Convention in a Contracting State, the provisions of the law of that Contracting State, other than those provided by this Convention, in relation to the subject matter of this Convention;

*Explanatory note*

*This definition reflects the fact that the Convention is not drafted as a comprehensive code covering all substantive rules relevant to its subject matter, but as a set of key provisions to be incorporated by Contracting States into their existing laws, with whatever modifications of their existing laws are appropriate. As is made clear in various provisions of the Convention, the rules of the Convention must have priority.*

(n)   **enforcement event"** means, in relation to a relevant collateral agreement, an event on the occurrence of which, under the terms of the relevant collateral agreement, the collateral taker is entitled to enforce its security;

(o)   **"relevant collateral agreement"**, **"collateral provider"**, **"collateral taker"**, **"collateral securities"** and **"secured obligations"** have the meanings respectively given in article 21;

(p)   securities are **"of the same description"** as other securities if they are securities of the same issuer, of the same currency and denomination, and form part of the same issue, as those other securities, and references to securities of a particular description shall be construed accordingly.

(2)   For the purposes of this Convention a person acts with notice of an adverse claim if that person –

(a)   knows of the adverse claim; or

(b)   is aware of facts sufficient to indicate that there is a significant probability that the adverse claim exists and deliberately avoids information that would establish the existence of the adverse claim.

(3)   For the purposes of paragraph (2) –

(a)   knowledge received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time when it would have been brought to his attention if the organization had exercised due diligence;

(b)   an organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines. Due diligence does not require an individual acting for the organization to communicate information unless such communication is part of his regular duties or unless he has reason to know of the transaction and that the transaction would be materially affected by the information.

## CHAPTER II – SCOPE OF THE CONVENTION

### Article 2
### [Scope of the Convention]

[Scope article – to exclude arrangements under which account holders' rights consist solely of purely contractual or personal rights against the intermediary.]

## CHAPTER III – SECURITIES ACCOUNTS AND ACCOUNT HOLDERS' RIGHTS

### Article 3
### [Rights arising from credit of securities to a securities account]

(1)   Subject to the following provisions of this article, the credit of securities to a securities account with an intermediary confers on the account holder the following rights –

(a)   the right to receive and enjoy the fruits of ownership of the securities and in particular –

   (i)   to receive all dividends, distributions and other benefits receivable in respect of the securities;

   (ii)  to direct the exercise of all voting and other rights exercisable in respect of the securities;

(b)   the right, by instructions to the intermediary, to dispose of the securities in any of the ways provided by Chapter IV;

(c)   the right, by instructions to the intermediary, to cause the securities to be held by the account holder with a different intermediary;

(d) the right, by instructions to the intermediary, to withdraw the securities so as to be held by the account holder otherwise than with an intermediary, to the extent that the securities may be so held under the law under which the securities are constituted and the terms of issue of the securities;

(e) subject to this Convention, such other rights as may be conferred by the applicable law.

(2) To the extent that the rights referred to in paragraph (1)(a) above are dependent on the assistance of the intermediary –

(a) the rights do not entitle the account holder to receive or effect more than can be received or effected through such assistance as is within the power of the intermediary to provide; and

(b) the manner of performance of the obligations of the intermediary in providing such assistance and the extent of the liability of the intermediary for any failure to perform those obligations are governed by the account agreement.

(3) The rights referred to in paragraph (1) –

(a) are effective against the intermediary and third parties; but

(b) except as otherwise provided by this Convention, by the terms of issue of any securities or by the law under which any securities are constituted, may be enforced only against the relevant intermediary.

### Article 4
### [Duties of intermediary with respect to the operation of securities accounts]

(1) Subject to paragraph (2), an intermediary –

(a) is bound to give effect to any instructions of an account holder with respect to securities held by that account holder with that intermediary;

(b) is neither bound nor entitled to give effect to any instructions with respect to such securities given by any other person; and

(c) is not bound by or compelled to recognize any interest in any securities credited to a securities account held with it other than the interest of the account holder.

(2) Paragraph (1) is subject to –

(a) the provisions of the account agreement and of any other agreement or undertaking entered into by the intermediary;

(b) the rights of any person (including the intermediary) who holds a security interest created by a disposition effected in the manner specified in article 9(4); and

(c) subject to paragraph (3), any requirement imposed by an order of a court of competent jurisdiction.

(3) The courts of a Contracting State shall not make an order which would enforce or assist in the enforcement, in a manner inconsistent with article 3(3)(b), of any right or claim of –

(a) an account holder;

(b) a person holding or claiming an interest in securities held with an intermediary under any disposition effected by an account holder; or

(c) a person, including without limitation an attachment or execution creditor, seeking to enforce any judgment or claim against a person referred to in (a) or (b) above.

*Explanatory note*

*Paragraph (3) prohibits the making of orders, such as so-called "upper tier attachment" orders, which would disrupt the system of holding securities through intermediaries by permitting an account holder holding securities with an intermediary, or a creditor seeking to enforce a judgment or claim against such an account holder by attaching securities held by the account holder, to obtain an order against a higher-tier intermediary compelling the higher-tier intermediary to freeze or segregate securities held in an account in which the account holder is indirectly interested. The risk of such an order undermines the integrity of the intermediated holding system, because a higher-tier intermediary will typically have no means of identifying any interest of an account holder holding securities with a lower-tier intermediary, but will merely operate an omnibus securities account, in the name of the lower-tier intermediary. The freezing of such an account will therefore damage the interests of all account holders of the lower-tier intermediary and severely disrupt the operation of the system.*

**Article 5
[Duty of intermediary to hold securities in respect of account holders' rights]**

(1)     Subject to the following provisions of this article, an intermediary must [acquire and at all times hold][promptly acquire and thereafter maintain] sufficient securities in respect of account holders' rights.

(2)     Accordingly an intermediary –

(a)     subject to paragraph (3), may not credit securities to a securities account;

(b)     may not dispose of securities held by it;
if it would as a result hold insufficient securities in respect of account holders' rights.

[(3)    Paragraph (2) does not preclude an intermediary, in circumstances permitted by the applicable law for the promotion of liquidity in a system for the settlement of transfers of securities, from crediting securities to a securities account in anticipation of a related credit of securities.]

(4)     The fact that a credit or disposition is made in contravention of paragraph (2) does not render that credit or disposition ineffective, but –

(a)     the intermediary must immediately take steps to ensure that it holds sufficient securities in respect of account holders' rights; and

(b)     this paragraph does not affect any liability of the intermediary to compensate an account holder for any loss arising from the contravention.

(5)     If an intermediary holds insufficient securities in respect of account holders' rights because it holds or has held securities with another intermediary (***"the higher-tier intermediary"***) and the number or amount of the securities so held has been reduced under article 5 as a result of the insolvency or other default of the higher-tier intermediary, the intermediary is obliged to eliminate the deficiency by acquiring securities out of its own resources, except to the extent that the account agreements between the intermediary and its account holders provide otherwise [in circumstances where the intermediary is obliged by those agreements to hold securities of the relevant kind with the higher-tier intermediary or there is no intermediary other than the higher-tier intermediary with which the intermediary is able to hold securities of the relevant kind].

(6)     For the purposes of this article an intermediary holds insufficient securities in respect of account holders' rights if the number or amount of securities appropriated to the rights of account holders under article 6 is less than the number or amount required by that article to be so appropriated.

*Explanatory notes*

*(1)    Paragraph (3) provides a limited exception to the general prohibition on any mismatch between the balances on securities accounts maintained by an intermediary and the underlying securities held by the intermediary and appropriated to account holders. The exception reflects the operational practice in*

*some securities settlement systems, where large volumes of transactions are processed and credits may be made in the expectation of matching receipts of cash or securities, generally in the same day or processing cycle. This exception will apply only where the applicable law so provides and will be subject to the regulatory requirements applicable to the relevant system.*

*(2)   The effect of paragraphs (4) and (5) is that a lower-tier intermediary underwrites the solvency and integrity of a higher-tier intermediary except to the extent that this duty is excluded or limited by its agreements with its account holders. If the words within square brackets at the end of paragraph (5) are included, provisions excluding or limiting this duty will be permitted only in certain fairly narrowly defined circumstances – essentially where the intermediary has no choice but to hold securities of the kind in respect of which the deficiency arises with the particular higher-tier intermediary which has become insolvent, for example because they are securities which, under the law or holding system of a particular jurisdiction, may be held only through one intermediary such as a CSD. The scope for contractual modification in this paragraph contrasts with paragraphs (2) and (3), which do not leave any flexibility for account agreements to permit deliberate "overcrediting" by the intermediary. These provisions raise policy questions which need to be discussed.*

## Article 6
## [Appropriation of securities to account holders' rights: securities so appropriated not property of the intermediary]

(1)   Securities of each description held by an intermediary (whether or not with another intermediary) are appropriated to the rights of account holders to the extent necessary to ensure that the aggregate number or amount of the securities of that description so appropriated is equal to the aggregate number or amount of such securities credited to securities accounts maintained by the intermediary.

(2)   The securities so appropriated do not form part of the property of the intermediary available for distribution among or realization for the benefit of its creditors in the event of an insolvency proceeding in respect of the intermediary or otherwise subject to claims of creditors of the intermediary.

(3)   The means by which securities are appropriated in accordance with this article are determined by the applicable law.

*Explanatory note*

*Paragraph (3) recognizes that different legal systems use different techniques for ensuring that securities held for account holders are protected from the insolvency of the intermediary. In particular, such protection may be conferred by creating a segregated pool of account holders' securities. A segregation requirement may also be imposed as a matter of regulation. Segregation is not imposed by the Convention, but Contracting States remain free to provide for it, either as a regulatory requirement or as part of the legal mechanism by which the appropriation required by this article is achieved (or both).*

## Article 7
## [Effect of insufficiency of securities held in respect of account holders' rights]

(1)   This article applies where an intermediary holds insufficient securities in respect of account holders' rights.

(2)   A deficiency in respect of securities of a given description shall for all purposes (including without limitation that of allocating among account holders any loss arising from the deficiency on the insolvency of the intermediary or otherwise) be treated as allocated to the account holders to whose securities accounts securities of that description are credited, in proportion to the respective numbers or amounts of securities so credited.

(3)   In any allocation required under paragraph (2) no account shall be taken of -

(a) the origin of, or any past dealings in, any securities held by the intermediary in respect of account holders' rights; or

(b) the order in which or time at which any securities are credited or debited to the respective securities accounts of account holders.

(4) Paragraph (3) does not preclude any rule of law or provision of an account agreement requiring or permitting securities to be debited to the securities account of a particular account holder in circumstances where –

(a) the account holder has delivered or transferred to an intermediary, for credit to the account holder's securities account, securities which had not previously been held with an intermediary; and

(b) it is subsequently shown that those securities are not free from adverse claims following that delivery or transfer.

## Article 8
### [Protection of rights of account holders on insolvency of intermediary]

(1) This Chapter applies notwithstanding the opening of an insolvency proceeding in respect of an intermediary; and accordingly the rights of an account holder constituted by the credit of securities to a securities account are effective against the insolvency administrator and creditors in the insolvency proceeding.

(2) Following the opening of an insolvency proceeding in respect of an intermediary, article 3(3)(b) does not prevent an account holder who holds securities with that intermediary from himself taking any action which the intermediary is, or would but for the opening of the insolvency proceeding be, obliged to take for the purpose of giving effect or assisting in giving effect to the rights of the account holder under article 3(1).

*Explanatory note*

*Paragraph (2) constitutes an exception to the general rule that account holders may enforce their rights only against their immediate intermediary. In order to ensure that account holders are not deprived of the ability to enforce their rights where their intermediary has become insolvent, the normal rule is disapplied so that account holders may, for example, be able to give instructions for the transfer of their securities to another intermediary even if there is no insolvency administrator of the former intermediary able or willing to act on their behalf.*

CHAPTER IV – ACQUISITION AND DISPOSITION OF SECURITIES HELD WITH AN INTERMEDIARY

## Article 9
### [Acquisition and disposition of securities held with an intermediary]

(1) Securities held with an intermediary are acquired by an account holder by the credit of those securities to a securities account of that account holder.

(2) Without limiting paragraph (1), no further step or event is necessary, or may be required by law, as a condition of the vesting of securities held with an intermediary in an account holder.

(3) An account holder may dispose of securities held with an intermediary -

(a) by causing them to be debited to his securities account on terms that the securities will be transferred to the intermediary for its own account;

(b)   by causing them to be debited to his securities account on terms that a corresponding credit will be made to a securities account of another person with the intermediary or with another intermediary.

(4)   An account holder may create a security interest over securities held with an intermediary, or over a securities account, by causing the securities or the account to be delivered into the control of another person.

(5)   A security interest so created with respect to a securities account has effect with respect to all securities from time to time credited to the relevant account, without the need for any further identification or appropriation of particular securities.

(6)   The above rules do not preclude any other method provided by the applicable law for the acquisition or disposition of securities held with an intermediary, provided always that the priority of an interest created by any such other method is subject to the rules in article 13.

*Explanatory note*

*As paragraph (6) makes clear, it is not envisaged that the Convention would set out an exhaustive rule on the possible forms of disposition or attempt to ban "informal" dispositions (dispositions effected otherwise than by book entry). The principle of supremacy of book entry dispositions over other dispositions is reflected in the rules on priorities in article 13.*

## Article 10
## [Netting and tracing of debits and credits to securities accounts]

(1)   Debits and credits to securities accounts may be effected on a net basis.

(2)   A debit or credit of securities to a securities account is not ineffective because it is not possible to identify a securities account to which a corresponding credit or debit is effected.

## Article 11
## [Control]

(1)   The following rules determine when an account holder is to be treated as causing securities held with an intermediary, or a securities account, to be delivered into the control of another person.

(2)   If an account holder agrees with an intermediary to grant to that intermediary a security interest in securities, or in a securities account, held by the account holder with that intermediary, he thereby delivers those securities or that securities account into the control of the intermediary.

(3)   If an account holder causes securities, or a securities account, held by the account holder with an intermediary to be designated or appropriated in a manner such that the intermediary will give effect to any instructions that it may receive from another person for the further disposition or transfer of the securities, or of the securities from time to time credited to the securities account, [and enters into arrangements which provide for the securities account and any account statements relating to the securities account to be annotated in such manner as to indicate that such designation or appropriation has been made,] he thereby delivers the securities, or the securities account, into the control of that other person.

*[Explanatory note]*

*The effect of the words included in square brackets is to make the effectiveness of control created by agreement with the intermediary dependent on an element of publicity, requiring that the securities account and any account statements be annotated in such a manner as to make the control arrangement apparent. It is for discussion whether this should be a necessary element of control.*

### Article 12
### [Perfection of dispositions of securities held with an intermediary]

(1)     A disposition of securities held with an intermediary which is effected in a manner specified in article 9(3) or (4) is thereby perfected.

(2)     Paragraph (1) does not preclude any other rule of the applicable law relating to the perfection of a disposition of securities held with an intermediary, provided always that the priority of an interest perfected otherwise than by one of the methods referred to in paragraph (1) is subject to the rules in article 13.

### Article 13
### [Priority among competing dispositions]

(1)     The following rules determine priority among interests arising under dispositions of securities held with an intermediary, subject to any contrary agreement between persons entitled to any such interests.

(2)     Subject to paragraph (5), an interest which has been perfected has priority over an interest which has not been perfected.

(3)     Interests created by dispositions perfected under article 12(1) –

(a)     have priority over any interest created by a disposition perfected in any other manner permitted by the applicable law; and

(b)     rank among themselves in the following order –

   (i)     first, a disposition perfected in the manner specified in article 9(3);

   (ii)    second, a disposition perfected by the delivery of control of the securities to the relevant intermediary;

   (iii)   third, a disposition perfected by the delivery of control of the securities to a person other than the relevant intermediary.

(4)     Two or more dispositions perfected by the delivery of control of the securities to a person other than the relevant intermediary rank among themselves in the order in which they were so perfected.

(5)     An interest arising by operation of law under any mandatory rule of the applicable law has such priority as is afforded to it by the rule in question.

(6)     Subject to the preceding provisions, the priority of any competing interests is determined by the applicable law.

*Explanatory note*

*This article creates a "cascade", ranking interests in five tiers for purposes of priority – (a) interests perfected by book entry transfer to a new account; (b) perfected interests of the intermediary; (c) interests of other persons perfected by control (with precedence among competing interests at this level being determined by time (paragraph (4)); (d) other perfected interests (paragraph (2)); and (e) unperfected interests.  Mandatory liens imposed by law have the priority given by the relevant law (paragraph (5)).*

CHAPTER V - PROTECTION FROM ADVERSE CLAIMS

## Article 14
### [Protection of intermediary]

(1) An intermediary which, otherwise than by a credit to a securities account held by it with another intermediary, acquires securities for credit to a securities account maintained or to be maintained by it, or otherwise in pursuance of an obligation under article 5, is not subject to any adverse claim subsisting with respect to those securities at the time of the acquisition if the intermediary does not at that time have notice of the adverse claim.

(2) An intermediary which disposes of securities (whether or not held with another intermediary) in pursuance of instructions given by an account holder or by a person who holds a security interest perfected in accordance with article 12 is not liable to a person having an adverse claim with respect to those securities unless –

(a) the intermediary acts in contravention of an order of a competent court;

(b) the adverse claim arises from an interest created by a disposition perfected under article 12(1) or under the applicable law; or

[(c) the intermediary acts in collusion with another person and with the intention of violating the rights of the adverse claimant.]

## Article 15
### [Acquisition from intermediary]

(1) A person who acquires an interest in securities (whether or not securities held with an intermediary) from an intermediary under a disposition effected in contravention of article 5(2) is not subject to any adverse claim in respect of the rights of account holders of that intermediary if that person does not at that time have notice that the disposition is effected in contravention of article 5(2).

(2) This does not apply where the interest is acquired by way of gift or otherwise gratuitously.

## Article 16
### [Acquisition by account holder]

(1) An account holder who acquires securities by credit to his securities account is not subject to any adverse claim subsisting with respect to those securities at the time of the credit if the account holder does not at that time have notice of the adverse claim.

(2) This does not apply where the interest is acquired by way of gift or otherwise gratuitously.

## Article 17
### [Acquisition from account holder by delivery of control]

A person who acquires or perfects a security interest in securities held with an intermediary by obtaining control of those securities in accordance with article 11 is not subject to an adverse claim subsisting with respect to those securities at the time that he obtains control if that person does not at that time have notice of the adverse claim.

## Article 18
### [Reversal of debits and credits to securities accounts]

Without prejudice to any special rule of the applicable law regarding the finality of dispositions effected through securities accounts (including securities accounts maintained by an intermediary acting in the capacity of central securities depository or operator of a clearing or settlement system) –

(a)  a debit or credit of securities to a securities account may not be reversed so as to prejudice an intermediary who, without notice of any defect in or with respect to that debit or credit, has effected a further debit or credit which is dependent on it; and

(b)  a credit of securities to a securities account of an account holder may not be reversed so as to prejudice that account holder if the account holder, without notice of any defect in or with respect to that credit, has effected a further disposition of the securities thereby credited to the securities account.

### CHAPTER VI – POSITION OF ISSUERS OF SECURITIES HELD WITH AN INTERMEDIARY

### Article 19
### [Position of issuers of securities]

(1)  Any rule of law of a Contracting State, and any provision of the terms of issue of securities constituted under the law of a Contracting State, which would prevent the effective exercise by an account holder of the rights specified in article 2(1)(e) shall be modified to the extent required to make possible the effective exercise of those rights.

(2)  Subject to paragraph (1), nothing in this Convention makes an issuer of securities bound by, or compels such an issuer to recognize, a right or interest of any person in or in respect of such securities to an extent greater, or in circumstances more extensive, than is provided by the law under which the securities are constituted and the terms of issue of the securities.

*Explanatory note*

*Paragraph (1) requires Contracting States to make limited changes to their corporate law to the extent that their corporate law currently incorporates rules which inhibit the effective enjoyment of rights in securities held with an intermediary. An example would be a corporate law rule which does not permit a holder of a block of shares, for example a nominee or custodian acting for an intermediary, to split the votes on the shares so as to reflect the voting instructions of different account holders. Paragraph (2) makes it clear, however, that Contracting States are not obliged to make more radical changes so as to treat account holders as if they were direct holders of the securities.*

### Article 20
### [Rights of set-off]

(1)  Subject to paragraph (2), if –

(a)  an insolvency proceeding has been commenced in respect of an issuer of debt securities;

(b)  an account holder holds debt securities of that issuer with an intermediary; and

(c)  a set-off would, or could at the election of the account holder, be effected between the rights of that account holder and any claim of the issuer against the account holder if the account holder held a document of title to those securities or were recorded in a register of title as the holder of those securities;

then such a set-off shall be effected, or, as the case may be, be to the same extent and in the same manner capable of being effected, notwithstanding the fact that the account holder holds the securities with an intermediary.

(2)  This article does not affect any express provision of the terms of issue of the relevant securities, save to the extent that any such express provision is overridden by any mandatory rule of law applicable in the relevant circumstances.

*Explanatory note*

*The effect of this article is that, in insolvency proceedings against an issuer of debt securities, the fact that such securities are held through one or more intermediaries does not, of itself, affect any mandatory or optional set-off which would have occurred or been available had the securities been held directly; but this is subject (paragraph (2)) to any express provision to the contrary in the terms of issue (e.g. a provision that the issuer is entitled to ignore rights of indirect holders or that rights under the securities are immune from set-off against extraneous claims), save to the extent that such provisions may themselves be invalidated as being contrary to mandatory rules of law (e.g. a rule making set-off obligatory in the insolvency proceedings).*

### CHAPTER VII – COLLATERAL: ENFORCEMENT AND RIGHT OF USE

### Article 21
### [Special provisions on enforcement]

(1)     This article applies in respect of an agreement (a **"relevant collateral agreement"**) under which a person other than a natural person (the **"collateral provider"**) creates a security interest in favour of another person (the **"collateral taker"**) in securities held with an intermediary which are of a kind regularly traded on a financial market (the **"collateral securities"**) in order to secure the performance of financial obligations of any kind referred to in paragraph (2) (the **"secured obligations"**).

(2)     The secured obligations may consist of or include any obligation of a financial character, including –

(a)     present or future, actual or contingent or prospective obligations (including obligations arising under a master agreements, whether under a provision for the acceleration or close-out of obligations or otherwise);

(b)     obligations to deliver securities or other property;

(c)     obligations owed to the collateral taker by a person other than the collateral provider;

(d)     obligations of a specified description arising from time to time.

(3)     On the occurrence of an enforcement event, the collateral taker may realize the collateral securities –

(a)     by selling them and applying the net proceeds of sale in or towards the discharge of the secured obligations;

(b)     by appropriating the collateral securities as the collateral taker's own property and setting off their value against, or applying their value in or towards the discharge of, the secured obligations, provided that the relevant collateral agreement provides for realization in this manner and specifies the basis on which collateral securities are to be valued for this purpose.

(4)     Collateral securities may be realized under paragraph (3) –

(a)     subject to any contrary provision of the relevant collateral agreement, without any requirement that –

   (i)     prior notice of the intention to realize shall have been given;

   (ii)    the terms of the realization be approved by any court, public officer or other person; or

   (iii)   the realization be conducted by public auction or in any other prescribed manner; and

(b)     notwithstanding the commencement or continuation of an insolvency proceeding in respect of the collateral provider or the collateral taker.

(5)     Realization under paragraph (3) shall be effected in a commercially reasonable manner.

### Article 22
### [Special provisions on the right to use collateral securities]

(1)     If and to the extent that the terms of a relevant collateral agreement so provide, the collateral taker shall have the right to use and dispose of the collateral securities as if it were the owner of them (a **"right of use"**).

(2)     Where a collateral taker exercises a right of use, it thereby incurs an obligation to replace the collateral securities originally transferred (the **"original collateral securities"**) by transferring the same number or amount of securities of the same description to the collateral provider not later than the performance of the secured obligations.

(3)     Securities transferred under paragraph (2) at a time before the secured obligations have been fully discharged –

(a)     shall, in the same manner as the original collateral securities; be subject to a security interest under the relevant collateral agreement, which shall be treated as having been created at the same time as the security interest in respect of the original collateral securities was created; and

(b)     shall in all other respects be subject to the terms of the relevant collateral agreement.

(4)     The exercise of a right of use shall not render invalid or unenforceable any right of the collateral taker under the relevant collateral agreement.

(5)     The relevant collateral agreement may provide that, if an enforcement event occurs before the secured obligations have been fully performed, either or both of the following shall occur, or may at the election of the collateral taker occur, whether through the operation of netting or set-off or otherwise –

(a)     the respective obligations of the parties are accelerated so as to be immediately due and expressed as an obligation to pay an amount representing their estimated current value or are terminated and replaced by an obligation to pay such an amount;

(b)     an account is taken of what is due from each party to the other in respect of such obligations, and a net sum equal to the balance of the account is payable by the party from whom the larger amount is due to the other party.

### Article 23
### Declarations in respect of Chapter VII

A Contracting State may, at the time of signature, ratification, acceptance, approval or accession, make a declaration that this Chapter shall not apply in respect of the law of that Contracting State.

### CHAPTER VIII - SPECIAL PROVISIONS
### ON SETTLEMENT FINALITY
[to be added]

### CHAPTER [IX] – FINAL CLAUSES

### Article 24
### [Modification of conflicting principles or rules of law]

If any principle or rule of the law of a Contracting State would be contrary to or inconsistent with any provision of this Convention, the relevant provision of this Convention shall prevail and any such principle or rule is modified to the extent required to ensure that the provisions of this Convention have effect in accordance with their terms.

*Explanatory note*

*This article makes it clear that the express terms of the Convention prevail over any contrary result which would otherwise follow from the general rules of the domestic law of a Contracting State. The Convention is not intended to require wholesale harmonization of the substantive laws of Contracting States, and in particular is structured to as to permit the core substantive provisions embodied in the Convention to be incorporated into the laws of Contracting States which adopt different conceptual frameworks and characterizations of the rights arising from the holding of securities with intermediaries; but some of the consequences which would generally flow from such concepts and characterization will sometimes be modified by the express terms of the Convention.*

[Other final clauses to be added]