# EXHIBIT 26

 INTERNATIONAL INSTITUTE FOR THE UNIFICATION OF PRIVATE LAW
INSTITUT INTERNATIONAL POUR L'UNIFICATION DU DROIT PRIVE

**DIPLOMATIC CONFERENCE TO ADOPT A
CONVENTION ON SUBSTANTIVE RULES
REGARDING INTERMEDIATED SECURITIES**
Geneva, 1 to 13 September 2008

UNIDROIT 2008
CONF. 11 – Doc. 48 Rev.
Original: English / French
10 October 2008

# DRAFT CONVENTION ON SUBSTANTIVE RULES REGARDING INTERMEDIATED SECURITIES

**THE STATES SIGNATORY TO THIS CONVENTION**,

**CONSCIOUS** of the growth and development of global capital markets and recognising the benefits of holding securities, or interests in securities, through intermediaries in increasing the liquidity of modern securities markets,

**RECOGNISING** the need to protect persons that acquire or otherwise hold intermediated securities,

**AWARE** of the importance of reducing legal risk, systemic risk and associated costs in relation to domestic and cross-border transactions involving intermediated securities so as to facilitate the flow of capital and access to capital markets,

**MINDFUL** of the need to enhance the international compatibility of legal systems as well as the soundness of domestic and international rules relating to intermediated securities,

**DESIRING** to establish a common legal framework for the holding and disposition of intermediated securities,

**BELIEVING** that a functional approach in the formulation of rules to accommodate the various legal traditions involved would best serve the purposes of this Convention,

**HAVING** due regard for non-Convention law in matters not determined by the Convention,

**RECOGNISING** that this Convention does not limit or otherwise affect the powers of Contracting States to regulate, supervise or oversee the holding and disposition of intermediated securities or any other matters expressly covered by the Convention, except in so far as such regulation, supervision or oversight would contravene the provisions of this Convention,

**HAVE AGREED** upon the following provisions:

**CHAPTER I – DEFINITIONS, SCOPE OF APPLICATION AND INTERPRETATION**

*Article 1*
*Definitions*

In this Convention:

(a) *"securities"* means any shares, bonds or other financial instruments or financial assets (other than cash) which are capable of being credited to a securities account and of being acquired and disposed of in accordance with the provisions of this Convention;

(b) *"intermediated securities"* means securities credited to a securities account or rights or interests in securities resulting from the credit of securities to a securities account;

(c) *"securities account"* means an account maintained by an intermediary to which securities may be credited or debited;

(d) *"intermediary"* means a person (including a central securities depository) who in the course of a business or other regular activity maintains securities accounts for others or both for others and for its own account and is acting in that capacity;

(e) *"account holder"* means a person in whose name an intermediary maintains a securities account, whether that person is acting for its own account or for others (including in the capacity of intermediary);

(f) *"account agreement"* means, in relation to a securities account, the agreement between the account holder and the relevant intermediary governing the securities account;

(g) *"relevant intermediary"* means, with respect to a securities account, the intermediary that maintains the securities account for the account holder;

(h) *"insolvency proceeding"* means a collective judicial or administrative proceeding, including an interim proceeding, in which the assets and affairs of the debtor are subject to control or supervision by a court or other competent authority for the purpose of reorganisation or liquidation;

(i) *"insolvency administrator"* means a person (including a debtor in possession where applicable) authorised to administer an insolvency proceeding, including one authorised on an interim basis;

(j) securities are *"of the same description"* as other securities if they are issued by the same issuer and:

   (i) they are of the same class of shares or stock; or

   (ii) in the case of securities other than shares or stock, they are of the same currency and denomination and are treated as forming part of the same issue;

(k) *"control agreement"* means an agreement in respect of intermediated securities between an account holder, the relevant intermediary and another person or, if so provided by the non-Convention law, between an account holder and the relevant intermediary or between an account holder and another person of which notice is given to the relevant intermediary, which includes either or both of the following provisions:

   (i) that the relevant intermediary is not permitted to comply with any instructions given by the account holder in respect of the intermediated securities to which the agreement relates without having received the consent of that other person;

   (ii) that the relevant intermediary is obliged to comply with any instructions given by that other person in respect of the intermediated securities to which the agreement relates in

such circumstances and as to such matters as may be provided by the agreement, without any further consent of the account holder;

(l)       *"designating entry"* means an entry in a securities account made in favour of a person (including the relevant intermediary) other than the account holder in respect of intermediated securities, which, under the account agreement, a control agreement, the uniform rules of a securities settlement system or the non-Convention law, has either or both of the following effects:

(i)       that the relevant intermediary is not permitted to comply with any instructions given by the account holder in respect of the intermediated securities in relation to which the entry is made without having received the consent of that other person;

(ii)      that the relevant intermediary is obliged to comply with any instructions given by that other person in respect of the intermediated securities in respect of which the entry is made in such circumstances and as to such matters as may be provided by the account agreement, a control agreement or the uniform rules of a securities settlement system, without any further consent of the account holder;

(m)      *"non-Convention law"* means the law in force in the Contracting State referred to in Article 2, other than the provisions of this Convention;

(n)      *"securities settlement system"* means a system which:

(i)       settles, or clears and settles, securities transactions;

(ii)      is operated by a central bank or central banks or is subject to regulation, supervision or oversight by a governmental or public authority in respect of its rules; and

(iii)     has been identified as a securities settlement system in a declaration made by the Contracting State the law of which governs the system on the ground of the reduction of risk to the stability of the financial system;

(o)      *"securities clearing system"* means a system which:

(i)       clears, but does not settle, securities transactions through a central counterparty or otherwise;

(ii)      is operated by a central bank or central banks or is subject to regulation, supervision or oversight by a governmental or public authority in respect of its rules; and

(iii)     has been identified as a securities clearing system in a declaration made by the Contracting State the law of which governs the system on the ground of the reduction of risk to the stability of the financial system;

(p)      *"uniform rules"* means, in relation to a securities settlement system or securities clearing system, rules of that system (including system rules constituted by the non-Convention law) which are common to the participants or to a class of participants and are publicly accessible.

*Article 2*
*Sphere of application*

This Convention applies where:

(a)      the applicable conflict of laws rules designate the law in force in a Contracting State as the applicable law; or

(b)      the circumstances do not lead to the application of any law other than the law in force in a Contracting State.

*Article 3*
*Principles of interpretation*

In the implementation, interpretation and application of this Convention, regard is to be had to its purposes, the general principles on which it is based, its international character and the need to promote uniformity and predictability in its application.

*Article 4*
*Central bank and regulated intermediaries*

A Contracting State may declare that this Convention shall apply only to securities accounts maintained by:

(a)   intermediaries falling within such categories as may be described in the declaration, which are subject to authorisation, regulation, supervision or oversight by a government or public authority in respect of that activity; or

(b)   a central bank.

*Article 5*
*Excluded functions*

This Convention does not apply to the performance of functions of creation, recording or reconciliation of securities, *vis-à-vis* the issuer of those securities, by a person such as a central securities depository, central bank, transfer agent or registrar.

*Article 6*
*Performance of functions of intermediaries by other persons*

1.    A Contracting State may declare that under its non-Convention law a person other than the relevant intermediary is responsible for the performance of a function or functions (but not all functions) of the relevant intermediary under this Convention, either generally or in respect of intermediated securities, or securities accounts, of any category or description.

2.    A declaration under this Article shall:

(a)   specify, if applicable, the category or description of intermediated securities or securities accounts, to which the declaration relates;

(b)   identify, by name or description:

(i)    the relevant intermediary;

(ii)    the parties to the account agreement; and

(iii)   the person or persons other than the relevant intermediary who is or are responsible as described in paragraph 1; and

(c)   specify, with respect to each such person:

(i)    the functions for which such person is so responsible;

(ii)   the provisions of this Convention that apply to such person, including whether Article 9, Article 10, Article 15 or Article 23 applies to such person; and

(iii)   if applicable, the relevant category or description of intermediated securities or securities accounts.

3.    Unless otherwise provided in this Convention, where a declaration under this Article applies, references in any provision in this Convention to an intermediary or the relevant intermediary are to the person or persons responsible for performing the function to which that provision applies.


*Article 7*
*Effects of insolvency*

Unless otherwise provided in this Convention, nothing in this Convention affects any substantive or procedural rules of law applicable in an insolvency proceeding.


*Article 8*
*Relationship with issuers*

1.    Subject to Article 29(2), this Convention does not affect any right of the account holder against the issuer of the securities.

2.    This Convention does not determine whom the issuer is required to recognise as the holder of the securities or as the person entitled to receive and exercise the rights attached to the securities or to recognise for any other purpose.


**CHAPTER II – RIGHTS OF THE ACCOUNT HOLDER**


*Article 9*
*Intermediated securities*

1.    The credit of securities to a securities account confers on the account holder:

(a)    the right to receive and exercise any rights attached to the securities, including in particular dividends, other distributions and voting rights:

(i)    where the account holder is not an intermediary or is an intermediary acting for its own account; and

(ii)    in any other case, if so provided by the non-Convention law;

(b)    the right, by instructions to the relevant intermediary, to effect a disposition under Article 11 or grant an interest under Article 12;

(c)    the right, by instructions to the relevant intermediary, to cause the securities to be held otherwise than through a securities account, to the extent permitted by the applicable law, the terms of the securities and, to the extent permitted by the non-Convention law, the account agreement or the uniform rules of a securities settlement system;

(d)    unless otherwise provided in this Convention, such other rights, including rights and interests in securities, as may be conferred by the non-Convention law.

2.    Unless otherwise provided in this Convention:

(a)    the rights referred to in paragraph 1 are effective against third parties;

(b)    the rights referred to in paragraph 1(a) may be exercised against the relevant intermediary or the issuer of the securities, or both, in accordance with this Convention, the terms of the securities and the applicable law;

(c)    the rights referred to in paragraph 1(b) and 1(c) may be exercised only against the relevant intermediary.

3.    Where an account holder has acquired a security interest, or a limited interest other than a security interest, by credit of securities to its securities account under Article 11(4), the non-Convention law determines any limits on the rights described in paragraph 1 of this Article.

*Article 10*
*Measures to enable account holders to receive and exercise rights*

1.    An intermediary must take appropriate measures to enable its account holders to receive and exercise the rights specified in Article 9(1).

2.    This Convention does not require the relevant intermediary to establish a securities account with another intermediary or to take any action that is not within its power.

## CHAPTER III – TRANSFER OF INTERMEDIATED SECURITIES

*Article 11*
*Acquisition and disposition by debit and credit*

1.    Subject to Article 16, intermediated securities are acquired by an account holder by the credit of securities to that account holder's securities account.

2.    No further step is necessary, or may be required by the non-Convention law, to render the acquisition of intermediated securities effective against third parties.

3.    Subject to Articles 15 and 16, intermediated securities are disposed of by an account holder by the debit of securities to that account holder's securities account.

4.    A security interest, or a limited interest other than a security interest, in intermediated securities may be acquired and disposed of by debit and credit of securities to securities accounts under this Article.

5.    Nothing in this Convention limits the effectiveness of debits and credits to securities accounts which are effected on a net basis in respect of securities of the same description.

*Article 12*
*Acquisition and disposition by other methods*

1.    Subject to Article 16, an account holder grants an interest in intermediated securities, including a security interest or a limited interest other than a security interest, to another person if:

(a)    the account holder enters into an agreement with or in favour of that person; and

(b)    one of the conditions specified in paragraph 3 applies and the relevant Contracting State has made a declaration in respect of that condition under paragraph 5.

2.    No further step is necessary, or may be required by the non-Convention law, to render the interest effective against third parties.

3.    The conditions referred to in paragraph 1(b) are as follows:

(a)    the person to whom the interest is granted is the relevant intermediary;

(b)    a designating entry in favour of that person has been made;

(c)    a control agreement in favour of that person applies.

4.    An interest in intermediated securities may be granted under this Article so as to be effective against third parties:

(a)    in respect of a securities account (and such an interest extends to all intermediated securities from time to time standing to the credit of the relevant securities account);

(b)    in respect of a specified category, quantity, proportion or value of the intermediated securities from time to time standing to the credit of a securities account.

5.    A Contracting State may declare that under its law:

(a)    the condition specified in any one or more of the sub-paragraphs of paragraph 3 is sufficient to render an interest effective against third parties;

(b)    this Article shall not apply in relation to interests in intermediated securities granted by or to parties falling within such categories as may be specified in the declaration;

(c)    paragraph 4, or either sub-paragraph of paragraph 4, does not apply;

(d)    paragraph 4(b) applies with such modifications as may be specified in the declaration.

6.    A declaration in respect of paragraph 3(b) shall specify whether a designating entry has the effect described in Article 1(l)(i) or Article 1(l)(ii) or both.

7.    A declaration in respect of paragraph 3(c) shall specify whether a control agreement must include the provision described in Article 1(k)(i) or Article 1(k)(ii) or both.

8.    The applicable law determines in what circumstances a non-consensual security interest in intermediated securities may arise and become effective against third parties.


*Article 13*
*Acquisition and disposition under non-Convention law*

This Convention does not preclude any method provided by the non-Convention law for:

(a)    the acquisition or disposition of intermediated securities or of an interest in intermediated securities; or

(b)    the creation of an interest in intermediated securities and for making such an interest effective against third parties,

other than the methods provided by Articles 11 and 12.

*Article 14*
*Effectiveness in insolvency*

1.    Rights and interests that have become effective against third parties under Article 11 or Article 12 are effective against the insolvency administrator and creditors in any insolvency proceeding, to the same extent as comparable interests in that insolvency proceeding.

2.    This Article does not apply to the circumstances referred to in Article 21.

3.    Nothing in this Convention impairs the effectiveness of an interest in intermediated securities against the insolvency administrator and creditors in any insolvency proceeding where that interest has become effective by any method referred to in Article 13.

*Article 15*
*Unauthorised debits or designating entries*

1.    An intermediary may make a debit of securities to a securities account or a designating entry or remove a designating entry only if it is authorised to do so:

       (a)    in respect of a debit, by the account holder and, if applicable, the person in whose favour a designating entry has been made;

       (b)    in respect of a designating entry, by the account holder;

       (c)    in respect of the removal of a designating entry, by the person in whose favour the designating entry has been made; or

       (d)    by the non-Convention law.

2.    The non-Convention law and, to the extent permitted by the non-Convention law, the account agreement or the uniform rules of a securities settlement system determine the consequences of an unauthorised debit, an unauthorised removal of a designating entry or, subject to Article 18(2), an unauthorised designating entry.

*Article 16*
*Invalidity, reversal and conditions*

       Subject to Article 18, the non-Convention law and, to the extent permitted by the non-Convention law, the account agreement or the uniform rules of a securities settlement system determine whether and in what circumstances a debit, credit, designating entry or removal of a designating entry is invalid, is liable to be reversed or may be subject to a condition, and the consequences thereof.

*Article 17*
*Terms used in Chapter III*

       In this Chapter:

       (a)    "*acquirer*" means

              (i)    an account holder to whose securities account securities are credited; or

              (ii)    a person to whom an interest in intermediated securities is granted under Article 12;

(b)     in determining whether a person ought to know of an interest or fact:

(i)     the determination must take into account the characteristics and requirements of securities markets, including the intermediated holding system; and

(ii)     the person is under no general duty of inquiry or investigation;

(c)     where a person is an organisation, such person actually knows or ought to know of an interest or fact from the time when the interest or fact is or ought reasonably to have been brought to the attention of the individual responsible for the matter to which the interest or fact is relevant;

(d)     "*defective entry*" means a credit of securities or designating entry which is invalid or liable to be reversed, including a conditional credit or designating entry which becomes invalid or liable to be reversed by reason of the operation or non-fulfilment of the condition;

(e)     "*relevant time*" means the time that a credit is made or the time referred to in Article 19(3).


*Article 18*
*Acquisition by an innocent person*

1.     Unless an acquirer actually knows or ought to know, at the relevant time, that another person has an interest in securities or intermediated securities and that the credit to the securities account of the acquirer or the interest granted to the acquirer violates the rights of that other person with respect to the interest of that other person:

(a)     the right or interest acquired by the acquirer is not subject to the interest of that other person;

(b)     the acquirer is not liable to that other person; and

(c)     the credit, designating entry or the interest granted is not rendered invalid against third parties or liable to be reversed on the ground that the right or interest of that other person invalidate any previous debit or credit made to another securities account.

2.     Unless an acquirer actually knows or ought to know, at the relevant time, of an earlier defective entry:

(a)     the credit or interest is not rendered invalid, ineffective against third parties or liable to be reversed as a result of that defective entry; and

(b)     the acquirer is not liable to anyone who would benefit from the invalidity or reversal of that defective entry.

3.     Paragraphs 1 and 2 do not apply in respect of an acquisition of securities, other than the grant of a security interest, made by way of gift or otherwise gratuitously.

4.     Where an acquirer is not protected by paragraph 1 or paragraph 2, the applicable law determines the rights and liabilities, if any, of the acquirer.

5.     To the extent permitted by the non-Convention law, paragraph 2 is subject to any provision of the uniform rules of a securities settlement system or of the account agreement.

6.     This Article does not modify the priorities determined by Article 19.

*Article 19*
*Priority among competing interests*

1.    This Article determines priority between interests in the same intermediated securities which become effective against third parties under Article 12 or Article 13.

2.    Subject to paragraph 5 and Article 20, interests that become effective against third parties under Article 12 have priority over any interest that becomes effective against third parties by any other method provided by the non-Convention law.

3.    Interests that become effective against third parties under Article 12 rank among themselves according to the time of occurrence of the following events:

    (a)    if the relevant intermediary is itself the holder of the interest and the interest is effective against third parties under Article 12(3)(a), when the agreement granting the interest is entered into;

    (b)    when a designating entry is made;

    (c)    when a control agreement is entered into or, if applicable, a notice is given to the relevant intermediary.

4.    Where an intermediary has an interest that has become effective against third parties under Article 12 and makes a designating entry or enters into a control agreement with the consequence that an interest of another person becomes effective against third parties, the interest of that other person has priority over the interest of the intermediary unless that other person and the intermediary expressly agree otherwise.

5.    A non-consensual security interest in intermediated securities arising under the applicable law has such priority as is afforded to it by that law.

6.    As between persons entitled to any interests referred to in paragraphs 2, 3 and 4 and, to the extent permitted by the applicable law, paragraph 5, the priorities provided by this Article may be varied by agreement between those persons, but any such agreement does not affect third parties.

7.    A Contracting State may declare that under its non-Convention law, subject to paragraph 4, an interest granted by a designating entry has priority over any interest granted by any other method provided by Article 12.

*Article 20*
*Priority of interests granted by an intermediary*

1.    Except as provided by paragraph 2, this Convention does not determine the priority or the relative rights and interests between the rights of account holders of an intermediary and interests granted by that intermediary so as to be effective against third parties under Article 12 or Article 13.

2.    An interest in intermediated securities granted by an intermediary so as to become effective against third parties under Article 12 has priority over the rights of account holders of that intermediary unless, at the relevant time, the person to whom the interest is granted actually knows or ought to know that the interest granted violates the rights of one or more account holders.

**CHAPTER IV – INTEGRITY OF THE INTERMEDIATED HOLDING SYSTEM**

*Article 21*
*Effectiveness in the insolvency of the relevant intermediary*

1.      Rights and interests that have become effective against third parties under Article 11 or Article 12 are effective against the insolvency administrator and creditors in any insolvency proceeding in respect of the relevant intermediary or in respect of any other person responsible for the performance of a function of the relevant intermediary under Article 6.

2.      This Article does not apply to interests granted under Article 12 by an account holder to the relevant intermediary or any other person responsible for the performance of a function of the relevant intermediary under Article 6.

3.      Paragraph 1 does not affect:

        (a)    any rules of law applicable in the insolvency proceeding relating to the avoidance of a transaction as a preference or a transfer in fraud of creditors; or

        (b)    any rules of procedure relating to the enforcement of rights to property which is under the control or supervision of the insolvency administrator.

4.      Nothing in this Article impairs the effectiveness of an interest in intermediated securities against the insolvency administrator and creditors in any insolvency proceeding referred to in paragraph 1, where that interest has become effective by any method referred to in Article 13.

*Article 22*
*Prohibition of upper-tier attachment*

1.      Subject to paragraph 3, no attachment of intermediated securities of an account holder shall be made against, or so as to affect:

        (a)    a securities account of any person other than that account holder;

        (b)    the issuer of any securities credited to a securities account of that account holder; or

        (c)    a person other than the account holder and the relevant intermediary.

2.      In this Article *"attachment of intermediated securities of an account holder"* means any judicial, administrative or other act or process to freeze, restrict or impound intermediated securities of that account holder in order to enforce or satisfy a judgment, award or other judicial, arbitral, administrative or other decision or in order to ensure the availability of such intermediated securities to enforce or satisfy any future judgment, award or decision.

3.      A Contracting State may declare that under its non-Convention law an attachment of intermediated securities of an account holder made against or so as to affect a person other than the relevant intermediary has effect also against the relevant intermediary. Any such declaration shall identify that other person by name or description and shall specify the time at which such an attachment becomes effective against the relevant intermediary.

*Article 23*
*Instructions to the intermediary*

1.    An intermediary is neither bound nor entitled to give effect to any instructions with respect to intermediated securities of an account holder given by any person other than that account holder.

2.    Paragraph 1 is subject to:

(a)    the provisions of the account agreement, any other agreement between the intermediary and the account holder or any other agreement entered into by the intermediary with the consent of the account holder;

(b)    the rights of any person (including the intermediary) who holds an interest that has become effective against third parties under Article 12;

(c)    subject to Article 22, any judgment, award, order or decision of a court, tribunal or other judicial or administrative authority of competent jurisdiction;

(d)    any applicable provision of the non-Convention law; and

(e)    where the intermediary is the operator of a securities settlement system, the uniform rules of that system.

*Article 24*
*Holding or availability of sufficient securities*

1.    An intermediary must, for each description of securities, hold or have available for the benefit of its account holders, other than itself, securities and intermediated securities of an aggregate number or amount equal to the aggregate number or amount of securities of that description credited to securities accounts which it maintains for such account holders.

2.    An intermediary may comply with paragraph 1 by:

(a)    procuring that securities are held on the register of the issuer in the name, or for the account, of its account holders;

(b)    holding securities as the registered holder on the register of the issuer;

(c)    possession of certificates or other documents of title;

(d)    holding intermediated securities with another intermediary; or

(e)    any other appropriate method.

3.    If at any time the requirements of paragraph 1 are not complied with, the intermediary must within the time permitted by the non-Convention law take such action as is necessary to ensure compliance with those requirements.

4.    This Article does not affect any provision of the non-Convention law, or, to the extent permitted by the non-Convention law, any provision of the uniform rules of a securities settlement system or of the account agreement, relating to the method of complying with the requirements of this Article or the allocation of the cost of ensuring compliance with those requirements or otherwise relating to the consequences of failure to comply with those requirements.

*Article 25*
*Allocation of securities to account holders' rights*

1.      Securities and intermediated securities of each description held by an intermediary as described in Article 24(2) shall be allocated to the rights of the account holders of that intermediary to the extent necessary to ensure compliance with Article 24(1).

2.      Subject to Article 20, securities and intermediated securities allocated under paragraph 1 shall not form part of the property of the intermediary available for distribution among or realisation for the benefit of creditors of the intermediary.

3.      The allocation required by paragraph 1 shall be effected by the non-Convention law and, to the extent required or permitted by the non-Convention law, by arrangements made by the relevant intermediary.

4.      The arrangements referred to in paragraph 3 may include arrangements under which an intermediary holds securities and intermediated securities in segregated form for the benefit of:

        (a)     its account holders generally; or

        (b)     particular account holders or groups of account holders,

in such manner as to ensure that such securities and intermediated securities are allocated in accordance with paragraph 1.

5.      A Contracting State may declare that, where all securities and intermediated securities held by an intermediary for its account holders are in segregated form under arrangements such as are referred to in paragraph 4, under its non-Convention law the allocation required by paragraph 1 applies only to those securities and intermediated securities and does not apply to securities and intermediated securities held by an intermediary for its own account.

6.      This Article applies notwithstanding the commencement or continuation of an insolvency proceeding in respect of the intermediary.

*Article 26*
*Loss sharing in case of insolvency of the intermediary*

1.      This Article applies in any insolvency proceeding in respect of an intermediary unless otherwise provided by any conflicting rule applicable in that proceeding.

2.      If the aggregate number or amount of securities and intermediated securities of any description allocated under Article 25 to an account holder, a group of account holders or the intermediary's account holders generally (as the case may be) is less than the aggregate number or amount of securities of that description credited to the securities accounts of that account holder, that group of account holders or the intermediary's account holders generally, the shortfall shall be borne:

        (a)     where securities and intermediated securities have been allocated to a single account holder, by that account holder; and

        (b)     in any other case, by the account holders to whom the relevant securities have been allocated, in proportion to the respective number or amount of securities of that description credited to their securities accounts.

3.    To the extent permitted by the non-Convention law, where the intermediary is the operator of a securities settlement system and the uniform rules of the system make provision in case of a shortfall, the shortfall shall be borne in the manner so provided.

*Article 27*
*Insolvency of system operator or participant*

To the extent permitted by the law governing the relevant system, the following provisions shall have effect notwithstanding the commencement of an insolvency proceeding in respect of the operator of that system or any participant in that system and notwithstanding any invalidation, reversal or revocation that would otherwise occur under any rule applicable in an insolvency proceeding:

(a)    any provision of the uniform rules of a securities settlement system or of a securities clearing system in so far as that provision precludes the revocation of any instruction given by a participant in the system for making a disposition of intermediated securities, or for making a payment relating to an acquisition or disposition of intermediated securities, after the time at which that instruction is treated under the rules of the system as having been entered irrevocably into the system;

(b)    any provision of the uniform rules of a securities settlement system in so far as that provision precludes the invalidation or reversal of a debit or credit of securities to, or a designating entry or removal of a designating entry in, a securities account which forms part of the system after the time at which that debit, credit, designating entry or removal of a designating entry is treated under the rules of the system as not liable to be reversed.

*Article 28*
*Obligations and liability of intermediaries*

1.    The obligations of an intermediary under this Convention, including the manner in which an intermediary complies with its obligations, may be specified by the non-Convention law and, to the extent permitted by the non-Convention law, the account agreement or the uniform rules of a securities settlement system. If the substance of any such obligation is addressed by any provision of the non-Convention law or, to the extent permitted by the non-Convention law, the account agreement or the uniform rules of a securities settlement system, compliance with that provision satisfies that obligation.

2.    The liability of an intermediary in respect of its obligations is governed by the non-Convention law and, to the extent permitted by the non-Convention law, the account agreement or the uniform rules of a securities settlement system.

*Article 29*
*Position of issuers of securities*

1.    The law of a Contracting State shall permit the holding through one or more intermediaries of securities that are permitted to be traded on an exchange or regulated market, and the effective exercise in accordance with Article 9 of the rights attached to such securities which are so held, but need not require that all such securities be issued on terms that permit them to be held through intermediaries.

2.      In particular, the law of a Contracting State shall recognise the holding of such securities by a person acting in its own name on behalf of another person or other persons and shall permit such a person to exercise voting or other rights in different ways in respect of different parts of a holding of securities of the same description; but this Convention does not determine the conditions under which such a person is authorised to exercise such rights.

*Article 30*
*Set-off*

As between an account holder who holds intermediated securities for its own account and the issuer of those securities, the fact that the account holder holds the securities through an intermediary or intermediaries shall not of itself, in any insolvency proceeding in respect of the issuer, preclude the existence or prevent the exercise of any rights of set-off which would have existed and been exercisable if the account holder had held the securities otherwise than through an intermediary.

**CHAPTER V – SPECIAL PROVISIONS WITH RESPECT TO
COLLATERAL TRANSACTIONS**

*Article 31*
*Scope of application and definitions in Chapter V*

1.      This Chapter applies to collateral agreements under which a collateral provider grants an interest in intermediated securities to a collateral taker in order to secure the performance of any existing, future or contingent obligations of the collateral provider or a third person.

2.      Nothing in this Chapter impairs any provision of the non-Convention law which provides for additional rights or powers of a collateral taker or additional obligations of a collateral provider.

3.      In this Chapter:

(a)      "*collateral agreement*" means a security collateral agreement or a title transfer collateral agreement;

(b)      "*security collateral agreement*" means an agreement between a collateral provider and a collateral taker providing (in whatever terms) for the grant of an interest other than full ownership in intermediated securities for the purpose of securing the performance of relevant obligations;

(c)      "*title transfer collateral agreement*" means an agreement, including an agreement providing for the sale and repurchase of securities, between a collateral provider and a collateral taker providing (in whatever terms) for the transfer of full ownership of intermediated securities by the collateral provider to the collateral taker for the purpose of securing or otherwise covering the performance of relevant obligations;

(d)      "*relevant obligations*" means any existing, future or contingent obligations of a collateral provider or a third person;

(e)      "*collateral securities*" means intermediated securities delivered under a collateral agreement;

(f)      "*collateral taker*" means a person to whom an interest in intermediated securities is granted under a collateral agreement;

(g)   "collateral *provider*" means an account holder by whom an interest in intermediated securities is granted under a collateral agreement;

(h)   "*enforcement event*" means, in relation to a collateral agreement, an event of default or other event on the occurrence of which, under the terms of that collateral agreement or by the operation of law, the collateral taker is entitled to realise the collateral securities or a close-out netting provision may be operated;

(i)   "*equivalent collateral*" means securities of the same description as collateral securities;

(j)   "*close-out netting provision*" means a provision of a collateral agreement, or of a set of connected agreements of which a collateral agreement forms part, under which, on the occurrence of an enforcement event, either or both of the following shall occur, or may at the election of the collateral taker occur, whether through the operation of netting or set-off or otherwise:

(i)   the respective obligations of the parties are accelerated so as to be immediately due and expressed as an obligation to pay an amount representing their estimated current value or are terminated and replaced by an obligation to pay such an amount;

(ii)   an account is taken of what is due from each party to the other in respect of such obligations, and a net sum equal to the balance of the account is payable by the party from whom the larger amount is due to the other party.

*Article 32*
*Recognition of title transfer collateral agreements*

The law of a Contracting State shall permit a title transfer collateral agreement to take effect in accordance with its terms.

*Article 33*
*Enforcement*

1.   On the occurrence of an enforcement event:

(a)   the collateral taker may realise the collateral securities delivered under a security collateral agreement by:

(i)   selling them and applying the net proceeds of sale in or towards the discharge of the relevant obligations; or

(ii)   appropriating the collateral securities as the collateral taker's own property and setting off their value against, or applying their value in or towards the discharge of, the relevant obligations, provided that the collateral agreement provides for realisation in this manner and specifies the basis on which collateral securities are to be valued for this purpose; or

(b)   a close-out netting provision may be operated.

2.   If an enforcement event occurs while any obligation of the collateral taker to deliver equivalent collateral under a collateral agreement remains outstanding, that obligation and the relevant obligations may be the subject of a close-out netting provision.

3.   Collateral securities may be realised, and a close-out netting provision may be operated, under this Article:

(a)   subject to any contrary provision of the collateral agreement, without any requirement that:

(i)     prior notice of the intention to realise or operate the close-out netting provision shall have been given;

(ii)     the terms of the realisation or the operation of the close-out netting provision be approved by any court, public officer or other person; or

(iii)     the realisation be conducted by public auction or in any other prescribed manner or the close-out netting provision be operated in any prescribed manner; and

(b)     notwithstanding the commencement or continuation of an insolvency proceeding in respect of the collateral provider or the collateral taker.


## Article 34
### Right to use collateral securities

1.     If and to the extent that the terms of a security collateral agreement so provide, the collateral taker shall have the right to use and dispose of the collateral securities as if it were the owner of them (a *"right of use"*).

2.     Where a collateral taker exercises a right of use, it thereby incurs an obligation to replace the collateral securities originally delivered (the *"original collateral securities"*) by delivering to the collateral provider, not later than the discharge of the relevant obligations, equivalent collateral or, where the security collateral agreement provides for the delivery of other assets following the occurrence of any event relating to or affecting any securities delivered as collateral, those other assets.

3.     Securities delivered under paragraph 2 before the relevant obligations have been fully discharged shall:

(a)     in the same manner as the original collateral securities, be subject to an interest under the relevant security collateral agreement, which shall be treated as having been created at the same time as the interest in respect of the original collateral securities was created; and

(b)     in all other respects be subject to the terms of the relevant security collateral agreement.

4.     The exercise of a right of use shall not render invalid or unenforceable any right of the collateral taker under the relevant security collateral agreement.


## Article 35
### Requirements of non-Convention law relating to enforcement

Articles 32, 33 and 34 do not affect any requirement of the non-Convention law to the effect that the realisation or valuation of collateral securities or the calculation of any obligations must be conducted in a commercially reasonable manner.


## Article 36
### Top-up or substitution of collateral

1.     Where a collateral agreement includes:

(a)     an obligation to deliver additional collateral securities:

(i)      in order to take account of changes in the value of the collateral delivered under the collateral agreement or in the amount of the relevant obligations;

(ii)     in order to take account of any circumstances giving rise to an increase in the credit risk incurred by the collateral taker as determined by reference to objective criteria relating to the creditworthiness, financial performance or financial condition of the collateral provider or other person by whom the relevant obligations are owed; or

(iii)    to the extent permitted by the non-Convention law, in any other circumstances specified in the collateral agreement; or

(b)     a right to withdraw collateral securities or other assets on delivering collateral securities or other assets of substantially the same value,

the delivery of securities or other assets as described in sub-paragraphs (a) and (b) of this paragraph shall not be treated as invalid, reversed or declared void solely on the basis that they are delivered during a prescribed period before, or on the day of but before, the commencement of an insolvency proceeding in respect of the collateral provider, or after the relevant obligations have been incurred.

2.      A Contracting State may declare that paragraph 1(a)(ii) shall not apply.


*Article 37*
*Certain insolvency provisions disapplied*

Where Article 36 does not apply, a collateral agreement or the delivery of collateral securities under such agreement shall not be treated as invalid, reversed or declared void solely on the basis that the agreement is entered into or the collateral securities are delivered during a prescribed period before, or on the day of but before, the commencement of an insolvency proceeding in respect of the collateral provider.


*Article 38*
*Declarations in respect of Chapter V*

1.      A Contracting State may declare that this Chapter shall not apply.

2.      A Contracting State may declare that this Chapter shall not apply:

(a)     in relation to collateral agreements entered into by natural persons or other persons falling within such categories as may be specified in the declaration;

(b)     in relation to intermediated securities which are not permitted to be traded on an exchange or regulated market;

(c)     in relation to collateral agreements which relate to relevant obligations falling within such categories as may be specified in the declaration.

## CHAPTER VI – TRANSITIONAL PROVISION

*Article 39*
*Priority*

1.    This Convention does not affect the priority of interests granted under the law in force in a Contracting State before the date on which this Convention has entered into force in respect of that Contracting State.

2.    A Contracting State may declare that a pre-existing interest shall retain the priority it enjoyed before the relevant date only if, at any time before that date, the interest has become effective against third parties by satisfying a condition specified in the declaration made by that Contracting State in accordance with Article 12(5)(a).

3.    In this Article:

    (a)    "pre-existing interest" means any interest, other than a non-consensual security interest, that has been granted before the relevant date other than by a credit to a securities account;

    (b)    "the relevant date" means the date stated by a Contracting State in the declaration made under this Article and that date shall not be later than two years after the effective date of that declaration.

4.    Article 45(6) does not apply to the declaration provided for in this Article.

## CHAPTER VII – FINAL PROVISIONS

*Article 40*
*Signature, ratification, acceptance, approval or accession*

1.    This Convention shall be open for signature in Geneva on [ … ] at the concluding meeting of the diplomatic Conference to adopt a Convention on Substantive Rules regarding Intermediated Securities held at Geneva from [ … ]. After [ … ] this Convention shall be open to all States for signature at the Headquarters of the International Institute for the Unification of Private Law (UNIDROIT) in Rome until it enters into force in accordance with Article 42.

2.    This Convention shall be subject to ratification, acceptance or approval by States which have signed it.

3.    Any State which does not sign this Convention may accede to it at any time.

4.    Ratification, acceptance, approval or accession is effected by the deposit of a formal instrument to that effect with the Depositary.

*Article 41*
*Regional Economic Integration Organisations*

1.      A Regional Economic Integration Organisation which is constituted by sovereign States and has competence over certain matters governed by this Convention may similarly sign, accept, approve or accede to this Convention. The Regional Economic Integration Organisation shall in that case have the rights and obligations of a Contracting State, to the extent that that Organisation has competence over matters governed by this Convention. Where the number of Contracting States is relevant in this Convention, the Regional Economic Integration Organisation shall not count as a Contracting State in addition to its Member States which are Contracting States.

2.      The Regional Economic Integration Organisation shall, at the time of signature, acceptance, approval or accession, make a declaration to the Depositary specifying the matters governed by this Convention in respect of which competence has been transferred to that Organisation by its Member States. The Regional Economic Integration Organisation shall promptly notify the Depositary of any changes to the distribution of competence, including new transfers of competence, specified in the declaration under this paragraph.

3.      Any reference to a "Contracting State", "Contracting States", "State Party" or "States Parties" in this Convention applies equally to a Regional Economic Integration Organisation where the context so requires.

*Article 42*
*Entry into force*

1.      This Convention enters into force on the first day of the month following the expiration of six months after the date of the deposit of the third instrument of ratification, acceptance, approval or accession between the States which have deposited such instruments.

2.      For each State that ratifies, accepts, approves or accedes to this Convention after the deposit of the third instrument of ratification, acceptance, approval or accession, this Convention enters into force in respect of that State on the first day of the month following the expiration of six months after the date of the deposit of its instrument of ratification, acceptance, approval or accession.

*Article 43*
*Territorial units*

1.      If a Contracting State has two or more territorial units in which different systems of law are applicable in relation to the matters dealt with in this Convention, it may, at the time of signature, ratification, acceptance, approval or accession, declare that this Convention is to extend to all its territorial units or only to one or more of them, and may modify its declaration by submitting another declaration at any time.

2.      Any such declarations are to be notified to the Depositary and shall state expressly the territorial units to which this Convention applies.

3.      If a Contracting State has not made any declaration under paragraph 1, this Convention shall apply to all territorial units of that State.

4.      Where a Contracting State extends this Convention to one or more of its territorial units, declarations permitted under this Convention may be made in respect of each such territorial unit, and the declarations made in respect of one territorial unit may be different from those made in respect of another territorial unit.

5.      In relation to a Contracting State with two or more territorial units in which different systems of law are applicable in relation to the matters dealt with in this Convention, any reference to the law in force in a Contracting State or to the law of a Contracting State shall be construed as referring to the law in force in the relevant territorial unit.

*Article 44*
*Reservations*

No reservations may be made to this Convention.

*Article 45*
*Declarations*

1.      Declarations authorised by the provisions of the Convention other than the initial declaration provided for in Article 43(1) may be made in accordance with the following provisions.

2.      Those declarations or subsequent declarations amending those declarations or any withdrawal of such a declaration made under this Convention shall be notified in writing to the Depositary.

3.      Any declaration made at the time of signature, ratification, acceptance, approval or accession, or made prior to the entry into force of the Convention for the State concerned, shall take effect simultaneously with the entry into force of the Convention for the State concerned. Declarations made upon signature or prior to the ratification must be confirmed upon ratification.

4.      A Contracting State may make a subsequent declaration at any time after the date on which this Convention has entered into force for it, by notifying the Depositary to that effect.

5.      Any such subsequent declaration shall take effect on the first day of the month following the expiration of six months after the date of receipt of the notification by the Depositary.

6.      Notwithstanding the previous paragraphs, this Convention shall continue to apply, as if no such subsequent declarations had been made, in respect of all rights and interests arising prior to the effective date of any such subsequent declaration.

*Article 46*
*Applicability of declarations*

A declaration made by a Contracting State under Chapters I to VI of this Convention is applicable only if the law in force in that Contracting State is the non-Convention law.

*Article 47*
*Withdrawal of declarations*

1.     Any Contracting State having made a declaration under this Convention may withdraw it at any time by notifying the Depositary. Such withdrawal is to take effect on the first day of the month following the expiration of six months after the date of receipt of the notification by the Depositary.

2.     Notwithstanding the preceding paragraph, this Convention shall continue to apply, as if no such withdrawal had been made, in respect of all rights, interests and obligations arising prior to the effective date of any such withdrawal.

*Article 48*
*Denunciations*

1.     Any State Party may denounce this Convention by notification in writing to the Depositary.

2.     Any such denunciation shall take effect on the first day of the month following the expiration of six months after the date of receipt of the notification by the Depositary. Where a longer period for that denunciation to take effect is specified in the notification, it shall take effect upon the expiration of such period after receipt of the notification by the Depositary.

3.     Notwithstanding the previous paragraphs, this Convention shall continue to apply, as if no such denunciation had been made, in respect of all rights, interests and obligations arising prior to the effective date of any such denunciation.

*Article 49*
*Evaluation meetings, revision Conferences and related matters*

1.     The Depositary will convene not less than once every 24 months an Evaluation Meeting, to which will be invited the Contracting States, the States and Observers participating to the Geneva Conference, the member States of UNIDROIT as well as other invited Observers.

2.     The Agenda of the Evaluation Meeting may include the following matters:

    (a)    the implementation and operation of the Convention;

    (b)    whether any modification to the Convention or to the Official Commentary is desirable.

3.     The Depositary will take due account of the results of the Evaluation Meeting and, if appropriate, may convene a diplomatic Conference.

4.     The amendments adopted by the diplomatic Conference referred to in paragraph 3 will enter into force on such a date as will be determined by the Conference in respect of Contracting States who ratify, approve or accept these amendments.

5.     After the entry into force of the amendments referred to in the paragraph 4, the States who will ratify, approve or accede to the Convention will accede to its text as modified by these amendments.

*Article 50*
*Depositary and its functions*

1.     Instruments of ratification, acceptance, approval or accession shall be deposited with UNIDROIT, which is hereby designated the Depositary.

2.     The Depositary shall:

(a)    inform all Contracting States of:

(i)    each new signature or deposit of an instrument of ratification, acceptance, approval or accession, together with the date thereof;

(ii)   the date of entry into force of this Convention;

(iii)  each declaration made in accordance with this Convention, together with the date thereof;

(iv)   the withdrawal or amendment of any declaration, together with the date thereof; and

(v)    the notification of any denunciation of this Convention together with the date thereof and the date on which it takes effect;

(b)    transmit certified true copies of this Convention to all Contracting States;

(c)    perform such other functions customary for depositaries.


IN WITNESS WHEREOF the undersigned Plenipotentiaries, having been duly authorised, have signed this Convention.


DONE at Geneva, on [ ... ], in a single original in the English and French languages, both texts being equally authentic, such authenticity to take effect upon verification by the Secretariat of the Conference under the authority of the President of the Conference within ninety days hereof as to the consistency of the texts with one another.


– END –