UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------- x

DEBORAH D. PETERSON,
Personal Representative of the Estate
of James C. Knipple (Dec.), et al.,

          Plaintiffs,

    v.

ISLAMIC REPUBLIC OF IRAN, et al.,

          Defendants.

------------------------------------------------------------- x

Case No. 18 Misc. 302 (BSJ)



## CLEARSTREAM BANKING, S.A.'S SUPPLEMENTAL BRIEF

Francis A. Vasquez, Jr. (FV-1446)
Frank Panopoulos (FP-6975)
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Tel: (202) 626-3600
Fax: (202) 639-9355

*Counsel for Clearstream Banking, S.A.*

December 12, 2008

Pursuant to the Court's instruction at the end of oral argument on November 25, 2008, Clearstream Banking, S.A. ("Clearstream") submits this supplemental brief addressing Plaintiffs' argument that fraudulent conveyance law preempts the express limitations of N.Y. UCC § 8-112(c).[1] Plaintiffs cited three cases in support of their argument. The cases are inapposite because (1) they involve fraudulent conveyance actions where the parties to those actions were subject to the Court's personal jurisdiction, and (2) the securities at issue in those cases were physical certificates, accounts receivable, or money capable of transfer from one party to another. Here, B — the intermediary bank in which the judgment debtor allegedly holds security entitlements — is neither the transferee of the entitlements under New York's fraudulent conveyance statutes, nor has a basis been established for the court to exercise personal jurisdiction over it or its customer (the transferee). Further, the nature of the security entitlements at issue is such that they are not capable of transfer between parties; they exist only as a right against the intermediary that created them by book entry credit. Consequently, Plaintiffs cannot invoke fraudulent conveyance remedies in order to salvage restraints admittedly in violation of UCC § 8-112(c).

## I.   Fraudulent Conveyance Law Does Not Preempt UCC § 8-112(c)

Plaintiffs cited three cases in support of their preemption argument: *Nastro v. D'Onofrio*, 263 F. Supp. 2d 446 (D.C. Conn. 2003); *Blue Giant Equip. Corp. v. Tec-Ser, Inc.*, 459 N.Y.S.2d 948 (3d Dep't 1983); and *Capital Distributions Services., Ltd. v. Ducor Export Airlines, Inc.*, 440 F. Supp. 2d 195 (E.D.N.Y. 2006). Only one case, *Nastro*, concerns the UCC.

---

[1] November 25, 2008 Hr'g Tr. at 64:2-70:22, 79:20-80:1. This supplemental brief is written without referring to Confidential Information because it essentially concerns a legal issue, thereby avoiding filing the brief under seal. Accordingly, the November 25, 2008, argument transcript is not attached hereto. Clearstream understands the Court received a copy of the transcript from the court reporter. Further, the entities involved in the alleged fraudulent transfer are referred to anonymously as "A" and "B". A is identified on page 16, line 3 of the November 25 hearing transcript; B is identified on page 22, line 9 of the November 25 hearing transcript.

In *Nastro v. D'Onofrio*, the judgment debtor transferred stock certificates he owned in three Connecticut-based companies to a trust located in Jersey, Channel Islands, after the plaintiff obtained a judgment against him in California. *Nastro*, 263 F. Supp. 2d at 448-49. Plaintiff sought, among other things, a preliminary injunction preventing the trustee from further transfer of the stock certificates and trust assets during the pendency of the litigation. *Id.* at 459. The court held that under Connecticut UCC § 8-112(a), the certificates were located in Jersey and, therefore, it could not exercise jurisdiction over them. *Id.* at 453. The court also held that there was "no basis to exercise personal jurisdiction over the trustee in Connecticut." *Id.* The judgment debtor then argued that because the Court did not have personal jurisdiction over the trustee, and because under Connecticut UCC § 8-112 the interest of the judgment debtor in the certificates could only be reached by actual seizure of them, which would have to be in Jersey, the Court could not provide the injunctive relief to plaintiff. *Id.* at 454.

In response to the judgment debtor's argument, the district court first noted that pursuant to Connecticut UCC § 1-103,[2] "[s]o far as fraudulent disposition law is concerned, the UCC is not preemptive; fraudulent disposition law supplements the UCC." *Id.* at 455. The Court then held that the UCC's provisions regarding attachment of certificated securities did not preclude the court from granting equitable relief in the form of ordering the Connecticut corporations — over which it did have jurisdiction — to delete the trustee as the owner of the certificates on their registers and issue new certificates in favor of the judgment debtor:

> Because the certificates evidence ownership of Connecticut corporations, which have been named as defendants to this action, the court could order the corporations to delete the trustee as the

---

[2] Connecticut Gen. Stat. § 42a-1-103 provides: "Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." The same provision is contained in N.Y. UCC § 1-103.

> owner of the stock in the corporate ledger and issue new certificates in favor of D'Onofrio. . . .
>
> The court has the ability to alter ownership of the stock through the corporation itself, and no provision of the UCC expressly repeals or supercedes the ability of the court to effect this transfer pursuant to [the Uniform Fraudulent Transfers Act].

*Id.* at 455.

Plaintiffs' reliance on *Nastro* is based on a superficial reading of the case. The case is inapposite for two fundamental reasons. First, the *Nastro* court had jurisdiction over the Connecticut corporations that issued the certificates and, therefore, could order them to issue new certificates. In this case, no basis has been established for personal jurisdiction over B or B's customer, such that the Court could order B or its customer to debit the entitlements in the securities at issue for credit back to A. Second, the property in *Nastro*, physical stock certificates, was a form of property capable of being transferred. The securities entitlements at issue here are not capable of being conveyed or transferred.

As discussed during oral argument, the entitlements at issue are different than physical certificates. *See* UCC § 8-503 cmt. 2 ("A person's claim of ownership of a certificated security is a right to a specific identifiable physical object, and that right can be asserted against any person who ends up in possession of that physical certificate, unless cut off by the rules protecting purchasers for value without notice. ***Those concepts do not work for the indirect holding system. A security entitlement is not a claim to a specific identifiable thing[.]***") (emphasis added). Securities entitlements are only rights that the holder has against the intermediary that created the entitlements by book entry credit to the customer's securities account. *See* UCC § 8-501(b)(1) ("a person acquires a security entitlement if a securities intermediary indicates by book entry that a financial asset has been credited to the person's

3

securities account.");[3] UCC § 8-503 cmt. 2 ("A security entitlement . . . is a package of rights and interests that a person has against the person's securities intermediary and the property held by the intermediary.").[4] Those rights are specified in Part 5 of UCC Article 8 and subject to the choice of laws rules set forth in UCC § 8-110. *See* UCC § 8-102(a)(17) ("'Security entitlement' means the rights and property interest of an entitlement holder with respect to a financial asset specified in Part 5."); *id.* cmt. 17 ("The Part 5 rules specify the rights and property interest that comprise a security entitlement."); UCC § 8-110(b) ("The local law of the securities intermediary's jurisdiction, as specified in subsection (e), governs: . . . (2) the rights and duties of the securities intermediary and entitlement holder arising out of a security entitlement.").

When the securities account is debited, the holder's securities entitlements cease to exist. By their very nature, securities entitlements are not property that can be transferred, a fact noted more than once by the UCC commentary:

> Securities, in the Article 8 sense, are fungible interests or obligations that are intended to be tradeable. The concept of security entitlement under Part 5 is quite different. A security entitlement is the package of rights that a person has against the person's own intermediary with respect to the positions carried in the person's securities account. ***That package of rights is not, as such, something that is traded.*** When a customer sells a security that she had held through a securities account, her security entitlement is terminated; when she buys a security that she will hold through her securities account, she acquires a security entitlement.

N.Y. UCC § 8-501 cmt. 5 (emphasis added); *see also* N.Y. UCC § 8-503 cmt. 2 ("The idea that discrete objects might be traced through the hands of different persons has no place in the

---

[3] *See also* UCC § 8-501 cmt. 1 ("section 8-501(b) provides that a person has a security entitlement when a financial asset has been credited to a 'securities account'"); Carl S. Bjerre & Sandra M. Rocks, *The ABCs of the UCC, Article 8: Investment Securities*, at 34 (ABA 2004) ("The entitlement holder acquires the security entitlement in most cases when the securities intermediary credits the financial asset to the entitlement holders *securities account*.").

[4] *See also* J.S. Rogers, *Policy Perspectives on Revised UCC Article 8*, 43 U.C.L.A. L. REV. 1431, 1455 (June 1996) ("[A]n entitlement holder's property interest is a bundle of rights that can be asserted directly only against the entitlement holder's own intermediary").

4

Revised Article 8 rules for the indirect holding system."); *ABCs of the UCC*, at 36 ("When an entitlement holder acquires a security entitlement, she does not take it over from some predecessor in interest (as purchasers in the direct holding system do); instead, her security entitlement is a new item of property, minted just for her. By the same token, when an entitlement holder liquidates a position with the securities intermediary, the security entitlement is simply extinguished, rather than being transferred to some successor in interest.").[5]

Consequently, while fraudulent conveyance law might supplement the provisions of UCC § 8-112 with respect to the attachment of physical certificates — i.e., the issue considered in *Nastro* — fraudulent conveyance law neither preempts nor supplements the provisions of UCC § 8-112(c) with respect to the attachment of securities entitlements. Instead, fraudulent conveyance law has been "displaced" by those and other provisions of Article 8 regarding securities entitlements and cannot supplement them. UCC § 1-103 ("Unless displaced by the particular provisions of this title, the principles of law and equity . . . . shall supplement its provisions."). As a result, unlike in *Nastro*, Plaintiffs do not have the remedy provided in New York Debtor & Creditor Law § 278(1) (McKinney 2001) to "have the conveyance set aside or obligation annulled," or to "disregard the conveyance and attach or levy upon the property conveyed." Plaintiffs' remedies with respect to their fraudulent conveyance action remain as prescribed in UCC § 8-112(c): to serve process on the securities intermediary where the judgment debtors' securities account is allegedly maintained.

Plaintiffs remaining cases, *Blue Giant* and *Capital Distributions* neither concern nor discuss the UCC, and in any event are inapposite for the same reasons as *Nastro*. In *Blue Giant*, the

---

[5] *See also* Legal Responses to EU Clearing and Settlement Legal Certainty Group Questionnaire by Joyce M. Hansen of the Federal Reserve Bank of New York (March 6, 2006) (Compendium Exhibit 4), at 11 (response to question 18) ("There is no 'object' that is transferred. A security entitlement is created, and another security entitlement is usually simultaneously extinguished.").

5

judgment debtor company assigned accounts receivable and litigation proceeds on those accounts to the company president's wife. *See* 459 N.Y.S.2d at 949. Personal jurisdiction over the company president's wife was not an issue, and the form of property could be conveyed. In *Capital Distributions*, an officer of the judgment debtor company transferred money from the company's accounts to relatives and friends. *See* 440 F. Supp. 2d at 199-200. Personal jurisdiction over the transferees was not an issue and the form of property could be conveyed.

## II. Plaintiffs Cannot Commence A Turnover Action Against Clearstream To Set Aside The Alleged Fraudulent Conveyance

For the reasons discussed above, Plaintiffs do not have a basis for commencing a turnover action against Clearstream pursuant to N.Y. CPLR § 5225 to set aside the alleged fraudulent conveyance.[6] Moreover, Clearstream is not even "a person in possession or custody of money or other personal property in which the judgment debtor has an interest." N.Y. CPLR § 5225(b). Clearstream holds B's securities entitlements in its accounts, which are B's rights against Clearstream and in which B's customer (the purported judgment debtor) does not have an interest; B's customer's securities entitlements are held in its accounts with B. *See* UCC § 8-503 cmt. 2 ("The entitlement holder cannot assert rights directly against other persons, such as other intermediaries through whom the intermediary holds the positions . . . .").[7]

Further, Luxembourg law would govern the substantial legal issues raised in such a proceeding. UCC § 8-110(b) provides that various issues concerning the security entitlements are governed by the "securities intermediary's jurisdiction," including (i) the rights and duties of Clearstream and B arising out of the security entitlements (UCC § 8-110(b)(2)); and (ii) whether

---

[6] *See* Nov. 25 Hr'g Tr. at 66:1-14.

[7] *See also* ABCs of the UCC, at 36 ("The indirect holding system accommodates more than one tier of securities intermediary between the issuer and the ultimate investor. That is, the securities intermediary through which a security entitlement is held might not directly own the security or other financial asset; instead the securities intermediary may, itself, have a security entitlement to that security against a clearing corporation or against another securities intermediary.").

6

Plaintiffs' can assert an adverse claim against B (UCC § 8-110(b)(4)). The "securities intermediary's jurisdiction" is determined by reference to the rules in subsection UCC § 8-110(e). Those rules provide, among other things, that if "an agreement between the securities intermediary and its entitlement holder governing the securities account expressly provides that the agreement is governed by the law of a particular jurisdiction, that jurisdiction is the securities intermediary's jurisdiction." N.Y. UCC § 8-110(e)(2).[8] Clearstream's General Terms and Conditions for its customers, which all customers accept when opening an account with Clearstream, provides in Article 61 that Luxembourg law governs that agreement and, thus, the account and other matters discussed therein. A copy of Clearstream's General Terms and Conditions, which is a public document, is attached hereto as Compendium Exhibit 28.

Dated: December 12, 2008

Respectfully submitted,

**WHITE & CASE LLP**

By: _/s/ Frank Panopoulos_
Francis A. Vasquez, Jr. (FV-1446)
Frank Panopoulos (FP-6975)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Tel: (202) 626-3600
Fax: (202) 639-9355

*Counsel for Clearstream Banking, S.A.*

---

[8] According to Professor Rogers, Revised Article 8 made previous "choice of law conundrums disappear. . . . by a series of mechanical rules that, in essence, may be regarded as specifying that the location of the [securities entitlements] is the place where the securities account is maintained." J.S. Rogers, *Policy Perspectives on Revised U.C.C. Article 8*, at 1460.

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of December 2008, I caused to be served Clearstream Banking, S.A.'s Supplemental Brief upon the following parties, by e-mail and federal express next-day delivery:

| | |
|---|---|
| Liviu Vogel, Esq.<br>Salon Marrow Dyckman Newman & Broudy LLP<br>292 Madison Avenue,<br>New York, New York 10017<br><br>*Counsel for Plaintiffs* | Sharon L. Schneier, Esq.<br>Davis Wright Tremaine LLP<br>1633 Broadway, 27th Floor<br>New York, New York 10019-6708<br><br>*Counsel for Citibank, N.A.* |

_____
Willie Lin