Exhibit 28

clearstream | DEUTSCHE BÖRSE GROUP

# General Terms and Conditions

July 2008

# General Terms and Conditions

July 2008 edition

Document number: 0067/07.2008

This document is the property of Clearstream Banking, société anonyme ("Clearstream Banking"). No part of this document may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying and recording, for any purpose without the express written consent of Clearstream Banking. Information in this document is subject to change without notice and does not represent a commitment on the part of Clearstream Banking, or any other entity belonging to Clearstream International, société anonyme.

© Copyright Clearstream International, société anonyme (2008). All rights reserved.

Clearstream© is a registered trademark of Clearstream International, société anonyme.

# Foreword

These General Terms and Conditions set forth the terms and conditions governing the provision of services and products by Clearstream Banking, société anonyme, Luxembourg ("CBL") to its Customers.

The provision of any such services and/or products by CBL to a Customer shall result in such Customer being bound by these General Terms and Conditions which shall apply to all the accounts of the Customer with CBL, unless expressly agreed to the contrary in writing.

The English version of these General Terms and Conditions is legally binding and shall prevail over the French translation which has been provided for commercial reasons only.

Customers are requested to duly complete and execute the "Acknowledgement of Receipt and Acceptance" attached herewith and return it to:

> Clearstream Banking, Luxembourg, Credit Unit,
> 42 Avenue JF Kennedy
> L-1855 Luxembourg

The Customer understands and acknowledges that, in the event that the Customer fails properly to execute and return this 'Acknowledgement of Receipt and Acceptance', CBL retains the right to decline to provide services and/or products or to perform any obligation pursuant to the General Terms and Conditions or pursuant to any other agreement between CBL and such Customer.

# 1. General

## Article 1

The following terms shall have the following meanings when used in these General Terms and Conditions:

**Business day**
A day on which CBL is open for business.

**Clearstream Banking, Luxembourg ("CBL")**
Clearstream Banking, Luxembourg, a duly licensed bank organised as a société anonyme incorporated under the laws of the Grand Duchy of Luxembourg, hereinafter referred to as "CBL".

**CBL system**
The clearance and settlement system operated by CBL.

**Customer**
A legal person or entity, whether public or private, which has been accepted by CBL as a Customer.

**Delivery**
Physical delivery or transfer by book entry, as the context may indicate.

**Governing Documents**
The General Terms and Conditions and the Customer Handbook which may be amended from time to time, and such other documents as CBL may, from time to time, so designate.

**Reversal order**
Any law, regulation, order, judgement, injunction, asset freeze or other action of, or by, any government, court or other instrumentality of government, the legal effect of which is to:

i) deprive CBL, the Customer, the Customer's counterparty, or any clearance system, depository, sub-depository, custodian or sub-custodian or any agent, acting on behalf of any of the foregoing, of the ability or authority to deliver securities, precious metals, currency or other assets or to make credits or debits to the account of one of the foregoing;

ii) constitute a determination that an entity listed in clause (i) did not have such ability or authority;

iii) require an entity listed in clause (i) to revoke, reverse, rescind or correct such debits or credits, or both.

**Securities**
Certificates of deposit, shares, notes and in general any instrument evidencing the ownership or creditor's rights whether in bearer or registered form, whether endorsable or not and any instrument or right (including a right not represented by a writing) which CBL considers, in its discretion, to be a security.

**Stop order**
A stop-transfer or similar order lodged with the relevant issuer, registrar or fiscal or similar agent or any court or any governmental body.

**Stop order notice**
An officially published notice of loss, theft, cancellation, opposition or nullification proceedings, or, a listing with any international self-regulatory organisation that a security is lost, stolen, cancelled, opposed or the subject of nullification proceedings or of a stop-transfer or similar order.

## Article 2

These General Terms and Conditions set forth the terms and conditions governing the provision of services by CBL to its Customers, including but not limited to the clearance, settlement, custody and administration of securities, other financial instruments and precious metals, and any other services which are offered by CBL now or will be in the future. All handbooks, instructions, documents or other publications issued by CBL shall be subject to these General Terms and Conditions, except as may be specifically provided therein.

## Article 3

CBL reserves the right not to accept an applicant for CBL services as a Customer. CBL is not obliged to disclose its reasons for not accepting any applicant.

## Article 4

CBL will establish on its books such accounts for the Customer as CBL requires from time to time for the conduct of the Customer's business.

All such accounts shall be opened in the name of the Customer, who will be responsible and solely liable for the fulfilment of all obligations pertaining thereto.

# 2. Securities

## Article 5

CBL will accept deposits of securities designated as eligible for deposit and delivery within the CBL system on lists published by CBL. CBL may revise these lists from time to time. In the event that CBL removes securities from such lists, CBL shall return to each relevant Customer such securities in its possession, or, deliver such securities to a third party in accordance with the Customer's reasonable instructions and in accordance with the terms and conditions of the Governing Documents.

## Article 6

[repealed]

## Article 7

CBL shall treat all securities received as fungible.

## Article 8

Securities deposited with CBL must be of good delivery at the time of deposit and thereafter. CBL determines whether securities are of good delivery. Reasons for determining that securities are not of good delivery include, but are not limited to, the following:

i) the securities have been called for redemption prior to delivery to CBL;

ii) there is an apparent or actual defect in the title to such securities;

iii) there is an encumbrance affecting such securities which means that they cannot be freely transferred or delivered free of such encumbrance in any relevant market;

iv) the securities are, or become, subject to a stop order or a stop order notice;

v) deposit of such securities would violate any law, regulation or order of any government, governmental agency (including any court or tribunal), or, self-regulatory organisation, or would subject CBL, its nominee or any third party on whose behalf CBL is acting, to any requirements under any law, regulation or order by reason of the acceptance or holding of such securities by CBL, its nominee or such third party;

vi) certificates representing such securities are not genuine, or are not in good physical condition;

vii) unexercised warrants or similar rights are not attached to certificates representing such securities, unless all such unattached warrants or similar rights are eligible for deposit and delivery within the CBL system, independently from such securities;

viii) the securities are registered securities or uncertificated securities, unless such securities have been registered in such fashion or provided with such transfer documents as may be required by CBL; or

ix) any other circumstance exists which leads CBL or any agent or depository of CBL receiving delivery of such securities to consider that such securities are not of good delivery.

## Article 9

Any security found not to be of good delivery at any time after its deposit with CBL may be debited to the account of the Customer for whose account the security was most recently deposited into the CBL system. If the credit balance of such security in the Customer's account is insufficient to cover such debit, the Customer shall immediately replace such security with an equivalent security of good delivery. If such Customer does not, within the terms foreseen by the Governing Documents, so deliver (or cause to be credited) such securities, CBL may purchase, for the account and at the sole expense of such Customer, the amount of such securities.

The Customer shall indemnify CBL in respect of any direct or indirect loss, claim, liability or expense suffered or incurred by CBL arising from the fact that securities deposited by it, or for it, with CBL are found to be not of good delivery, unless such is due to the gross negligence or wilful misconduct of CBL.

## Article 10

In the case of a security which is the subject of a stop order, the Customer who deposited the security shall use its reasonable best efforts to cause such stop order to be promptly lifted. If the stop order is not promptly lifted, CBL is authorised to return the security to the Customer at the Customer's expense, and to debit such security to the Customer's account. Stop orders with respect to Luxembourg securities shall be uplifted in accordance with applicable law.

## Article 11

No Customer shall have any right to specific securities but, each Customer will instead be entitled, subject to these General Terms and Conditions, to require CBL to deliver to the Customer or a third party an amount of securities of an issue equivalent to the amount credited to any securities account in the Customer's name, without regard to the certificate numbers of any securities certificates. CBL's obligation to any Customer with respect to such securities will be limited to effecting such delivery. CBL may decline to execute, or execute only in part, a request to physically deliver certificates representing fungible securities if CBL does not have certificates in the appropriate denominations available.

If CBL does not have available certificates in the appropriate denominations, CBL undertakes, at the Customer's request and expense, to obtain certificates in the appropriate denominations.

## Article 12

Transfers of securities between accounts within the CBL system shall be effected by book-entry only. Any other delivery of securities shall be made by physical delivery.

## Article 13

If a Customer instructs CBL to deliver or transfer an amount of securities of a given issue which, after giving effect to any outstanding credits or applicable securities lending provisions, exceeds the available and freely transferable amount of such securities standing to the Customer's credit, CBL may refuse to execute the instruction or execute it only to the extent of the securities standing to the credit of the Customer's account.

## Article 14

Physical deliveries of certificates representing securities shall be at the expense and risk of the Customer requesting the delivery. CBL reserves the right to determine the appropriate method of physical delivery for such certificates, and the extent and writer of any insurance coverage for such delivery. The costs of such insurance shall be borne by the Customer.

## Article 15

CBL shall not be under any obligation to keep the securities deposited with it at the place where the deposit is made. Accordingly, CBL may hold the securities at any other place or deposit them with other depositories, in Luxembourg or abroad, including banks, custodians and sub-custodians, or other clearing systems upon such terms and conditions as may be customary for deposits with such entities, or upon such other terms and conditions as may be approved by CBL. CBL may permit any such entity, in turn, to redeposit or hold securities with one or more other entities used by it without the prior approval by CBL. The names and addresses of the depositories used by CBL will be furnished to the Customer upon request.

## Article 16

In the event of the mutilation, loss, theft, destruction or other unavailability of deposited securities, CBL may apply for the issue of stop orders or initiate such other measures as CBL may deem appropriate under the circumstances, and may endeavour to replace

such securities in accordance with the laws or practices of the relevant countries and the terms and conditions of the relevant securities. The Customer shall undertake such steps to assist in effecting the recovery of such securities as CBL may reasonably request. Unless such mutilation, loss, theft, destruction or other unavailability is due to CBL's gross negligence or wilful misconduct, the Customer shall bear the expenses of any such measures undertaken by CBL to recover or replace such securities.

### Article 17

CBL has no obligation to investigate, nor makes representation with respect to, nor has any liability for the financial condition or corporate status of any issuer or guarantor of securities accepted for deposit pursuant of these General Terms and Conditions, nor for the validity of any such securities.

### Article 18

CBL has no obligation to take any action with respect to any rights, options or warrants, nor to attend on behalf of or represent the Customer at meetings of holders of securities nor at any other occasion where action by the holder of securities is required or permitted, except to the extent that CBL has been explicitly instructed by the Customer, and has, in writing, agreed to take such action, or as otherwise provided in the Governing Documents. CBL provides Securities related information to its Customers on a best effort basis. However, in accordance with the provisions of article 48, CBL does not warrant the accuracy or completeness of such information.

### Article 19

In connection with a Customer's attendance, in person or by proxy, at a meeting of holders of securities, CBL shall, at the request of the Customer, block the relevant securities for the required period and issue a certificate to that effect.

### Article 20

CBL will collect securities (including, without limitation, stock dividends and securities issued upon the exercise of any option, right or warrant of a deposited security or attached thereto) or cash amounts distributable or payable in respect of the principal of, premium or interest on, or dividends or other amounts in respect of securities deposited by the Customer with CBL. At the instruction of the Customer, CBL will convert deposited securities from one form to another, shall surrender deposited securities upon the maturity or redemption thereof, shall obtain new coupon sheets when made available by the issuer of deposited securities, and shall provide such other similar services in relation to the safekeeping of securities as CBL and the Customer may from time to time agree. Distribution of a right with respect to a security held for a Customer shall be credited to the relevant Customer account.

### Article 21

CBL shall promptly transmit to the appropriate agent of the issuer any order received from a Customer constituting the exercise of a right, option or warrant held for the account of such Customer.

Securities received upon such exercise will be credited to the relevant Customer account if such securities are eligible for deposit and delivery in the CBL system; otherwise, CBL will deliver such securities to the Customer at the Customer's risk and expense.

Rights for which CBL has been instructed to transmit a notice of exercise will be withdrawn from the Customer's account on the day of the transmittal of the notice of exercise to the agent of the issuer.

### Article 22

The allocation of securities for redemption, in accordance with a partial redemption notice, will occur only after CBL has been officially notified of the drawn numbers. Such allocation will be made on the basis of reported positions at the time of the allocations. Drawn numbers will be allocated among the holdings of such securities in the CBL system.

## 3. Cash accounts

### Article 23

CBL shall establish one or more cash accounts for each Customer with the purpose of making and receiving payments in connection with the transfer of securities, precious metals and other assets, for the payment of fees, commissions or other charges due from the Customer to CBL, and for other purposes. Cash accounts may consist of several sub-divisions in different currencies or units of account, as appropriate.

CBL may effect transfers between a Customer's cash accounts or subdivisions thereof in connection with payments executed on behalf of the Customer.

Except to the extent otherwise governed by a separate written agreement between the Customer and CBL, the Customer shall not have the right to cause, or permit, any of its cash accounts or any sub-division to have a debit balance. In the event of such a debit balance the Customer shall immediately deliver for credit (or otherwise cause to be credited) to such cash account a supply of sufficient freely available funds in the relevant currency to eliminate such debit balance. CBL reserves the right not to execute any instruction if it would cause a debit balance to exist in any Customer's account (or any subdivision), or, if a debit balance exists on one or more accounts (or any subdivision).

CBL will provide the Customer with the terms and conditions, including any applicable interest rates, governing credit and debit balances of the Customer's cash accounts. CBL reserves the right to modify such terms and conditions, and shall notify the Customer accordingly.

### Article 24

Debits and credits will be made to cash accounts in accordance with the Governing Documents. In the case of credit entries made on the basis of pre-advices, such credit entries will be conditional upon CBL receiving final confirmation of payments by the payor and of actual receipt of such payment in freely available funds for CBL's account at its cash correspondent bank. The Customer shall ensure that all pre-advised transfers are finally and irrevocably received for CBL's account at the due time, and, at the appropriate cash correspondent bank of CBL.

## 4. Precious metal accounts

### Article 25

CBL will accept deposits of precious metals in the kinds, forms and qualities designated as eligible for deposit and delivery within the CBL system on lists published by CBL. CBL may revise these lists from time to time. In the event that CBL removes specific kinds, forms or qualities of precious metals from such lists, CBL shall return to each relevant Customer such precious metals in its possession, or, deliver such precious metals to a third party in accordance with the Customer's reasonable instructions and in accordance with the terms and conditions of the Governing Documents.

### Article 26

Precious metals will be held on a fungible basis.

Deposits in precious metal accounts shall be fungible only as regards each kind, form or quality of precious metal. The quantities of each kind, form, or quality of precious metal shall be held separately by CBL, its depository, or depositories, and the total quantity of each kind, form or quality thereof shall be the exclusive and separate property of the persons for whom CBL holds such metal.

### Article 27

Precious metals deposited with CBL must be of good delivery at the time of deposit and thereafter. The provisions of the Grand-Ducal Regulation of 18th December, 1981, as amended from time to time, shall apply. CBL will determine whether precious metals are of good delivery.

### Article 28

The provisions in section 2 above regarding securities held with CBL shall apply, mutatis mutandis, to holdings of precious metals to the relevant extent.

## 5. Fees charged by CBL

### Article 29

Fees, commissions and other charges for services provided by CBL are contained in the Fee Schedule provided to the Customer, as may be modified by CBL from time to time. CBL will give the Customer advance notice of such modifications.

### Article 30

To the extent that such are not included in the fees, commissions and other charges set forth in the Fee Schedule, the Customer shall bear the cost of any expenses incurred by CBL in connection with the provision of requested services to the Customer or in connection with any action reasonably undertaken on CBL's initiative to protect the interests of the Customer.

## Article 31

The Customer authorises CBL to debit to the Customer's cash account or accounts, CBL's fees, commissions and other charges for services rendered, and expenses mentioned in article 30, as well as any other sums owed by the Customer to CBL.

# 6. Instructions

## Article 32

CBL shall prescribe the format, modes of communication and procedures by which a Customer is to tender its instructions to CBL, as well as any authentication procedures or requirements. CBL may amend such formats, modes, procedures or requirements from time to time, and will advise the Customer accordingly.

## Article 33

Once an instruction has become irrevocable in accordance with the Governing Documents, CBL may ignore any subsequent cancellation or amendment of such instruction.

## Article 34

CBL may refuse to execute an incomplete or incorrect instruction.

## Article 35

The Customer shall be liable for any error it has made in composing or transmitting an instruction to CBL.

## Article 36

The Customer shall notify CBL in writing of the person or persons authorised to give instructions on its behalf. CBL has no obligation to carry out any investigation in that respect.

Powers of attorney and signatory authorities lodged with CBL shall be valid unless, and until, a revocation or amendment sent by registered letter or tested telex is received by CBL.

Unless such revocation or amendment specifies a later date, such revocation or amendment shall be considered effective on the second business day after the date of its receipt by CBL.

Unless it has been negligent, CBL will not be liable to the Customer for acting in good faith in relying upon documents or instructions regardless of the medium through which such documents or instructions have been received, which bear signatures, powers of attorney, passwords, codes, or other indicia of authenticity which are later determined not to be genuine. The Customer shall hold CBL harmless from any loss, claim, liability or expense asserted against or imposed upon CBL as a result of such action.

## Article 37

CBL is not obligated to execute an instruction of a Customer if CBL believes that to do so will or may contravene any law or regulation, any relevant market practice or CBL's general business practice.

If CBL, in good faith, executes an instruction of a Customer which contravenes a law, regulation or market practice, CBL shall not be liable to the Customer for doing so. The Customer shall hold CBL harmless from any loss, claim, liability or expense asserted against or imposed upon CBL as a result of any such contravention.

## Article 38

CBL will inform the Customer of the pertinent deadlines for the receipt of instructions for particular processing cycles. These deadlines may be amended by CBL from time to time. CBL shall not be obligated to execute (and shall bear no responsibility if it executes) any instruction in a particular processing cycle received after the deadline for such processing cycle.

## Article 39

Notwithstanding any terms or conditions herein to the contrary, and notwithstanding the content of any other communication from the Customer, the Customer hereby authorises to the fullest extent possible (but does not require) CBL to execute the Customer's settlement instructions in advance of the settlement date specified by the Customer and to credit the value from such settled transaction on the settlement date or as otherwise specified in the Governing Documents.

## Article 40

The Customer shall provide to CBL all information that CBL may require for submission to legal, regulatory or market authorities, as and when so required. By providing such information, the Customer shall

warrant the completeness and accuracy of such information and shall authorise CBL to act upon such information in good faith, including, but not limited to, transmitting such information to pertinent authorities, or, providing declarations, affidavits or certificates of ownership in connection with services provided by CBL.

CBL shall have no obligation to carry out any investigation in respect of such information. The Customer will hold CBL harmless from any liability resulting from the Customer's failure to provide complete and accurate information.

CBL shall take reasonable measures to ensure that professional secrecy is maintained with regard to the services it provides to the Customer.

Unless otherwise provided in the Governing Documents or unless CBL has been authorised by the Customer so to do, CBL may not disclose to any third party any information relating to, or received from, the Customer except as required by applicable law, regulation or market rule or practice, or by a competent legal, regulatory or market authority.

### Article 41

The Customer shall at all times exercise due care in ensuring and maintaining the security of the communications media by which it transmits instructions to CBL or receives reports from CBL.

### Article 42

CBL may alter or withdraw any communications facilities it provides to the Customer with prior notice, unless exceptional circumstances preclude the provision of such notice.

## 7. Right of retention, pledge, set-off and other rights of CBL

### Article 43

CBL shall have a general right of retention, with respect to any securities, currencies and precious metals held by the Customer within the CBL system, now or in the future, whether at CBL or at another location, to secure the entire present or future obligations which the Customer has or may subsequently have towards CBL, in consequence of the services rendered to it by CBL.

### Article 44

All securities, currencies and precious metals held by the Customer within the CBL system, now or in the future, whether at CBL or at another location, are pledged in favour of CBL to secure the entire present or future obligations which the Customer has, or may subsequently have, towards CBL in consequence of any credit extensions by CBL to the Customer.

It is expressly agreed and understood that all securities, currencies and precious metals accounts of the Customer within the CBL system are, unless agreed upon to the contrary in writing, special accounts for the purpose of perfecting the pledge granted by the foregoing provisions.

The Customer shall notify CBL if securities, currencies and precious metals are deposited which the Customer holds on behalf of its clients and which may not be pledged. Upon receipt of such notification, CBL shall be entitled to demand, as a condition for continuing its relationship with the Customer, adequate security for such credit exposure of such Customer to CBL. In the absence of such notification, CBL will be entitled to assume that all securities, currencies and precious metals are held for the account of the Customer.

### Article 45

Except to the extent otherwise governed by a separate written agreement between the Customer and CBL, the Customer shall not have the right to cause any of its accounts in securities, currencies, precious metals, or other assets with CBL to have a debit balance, and in the event of such a debit balance the Customer shall immediately deliver for credit (or otherwise cause to be credited) to such account sufficient securities, currencies, precious metals, or other assets, as appropriate, to eliminate such debit balance. If, within seven business days, the Customer does not so deliver (or otherwise cause to be credited) such securities, precious metals, currencies or other assets, CBL may purchase on such market, in such manner and for such consideration as CBL shall deem appropriate, for the account and at the expense of such Customer, such amount of securities, precious metals, currencies or other assets sufficient to eliminate such debit balance. CBL reserves the right not to execute any instruction if it would cause a debit balance to exist in an account (or any sub-division) of the Customer (except in the case of an instruction which relates to assets held for the Customer's clients), or, if a debit balance exists on one or more accounts (or any sub-division).

### Article 46

Except to the extent specifically agreed between CBL and the Customer in writing to the contrary and except to the extent that any credit balance on any account of the Customer is, or represents, an asset which the Customer hold on behalf of its clients:

i) all accounts of a Customer shall be considered, in fact and in law, to be the elements of one sole and indivisible account;

ii) CBL may at any time set off, in whole or in part, credit and debit balances of the Customer; and

iii) CBL reserves the right to transfer the balance of any account or subdivision in credit to any account or subdivision in debit at any time and without any prior notice, even if such accounts or sub-divisions are maintained in different currencies, or, if the transactions therein are reported in different statements of account. CBL shall be authorised to sell any securities, precious metals or other assets standing to the credit of the Customer for this purpose, and may also for this purpose effect all conversions into a currency of its choice at the rate of exchange existing on the date of such conversion.

CBL will promptly notify the Customer of any such set-off, transfer, sale or conversion.

## 8. General provisions

### Article 47

CBL may engage third parties to provide any of the services to be provided by CBL pursuant of the Governing Documents.

### Article 48

CBL undertakes to perform such duties and only such duties as are specifically set forth in these General Terms and Conditions or in the Governing Documents. In the absence of negligence or wilful misconduct on its part, CBL shall not be liable to the Customer for any loss, claim, liability, expense or damage arising from any action taken or omitted to be taken by CBL, in connection with the provision of services contemplated hereby and by the Governing Documents. CBL, however, shall not be liable for any indirect or unforeseeable loss, claim, liability, expense or other damage unless such action or omission constitutes gross negligence or wilful misconduct on the part of CBL.

CBL shall not be liable for any action taken, or any failure to take any action required to be taken which fulfils its obligations hereunder in the event and to the extent that the taking of such action or such failure arises out of or is caused by events beyond CBL's reasonable control, including, without limitation, war, insurrection, riots, civil or military conflict, sabotage, labour unrest, strike, lock-out, fire, water damage, acts of God, accident, explosion, mechanical breakdown, computer or systems failure, failure of equipment, failure or malfunction of communications media, or interruption of power supplies; the failure to perform, for any reason, of the Customer's counterparty or of such counterparty's depository, custodian, or financial institution; acts or omissions of issuers and any entity acting for such issuers, order routers; the acts or omissions of (or the bankruptcy or insolvency of) any of CBL's depositories, sub-depositories, custodians, sub-custodians or of any other clearance system or of any carrier transporting securities between CBL and/or any of the foregoing; the failure to perform for any reason of, or the incorrect performance of, any financial institution used by and properly instructed by CBL to carry out payment instructions; reversal order, law, judicial process, decree, regulation, order or other action of any government, governmental body (including any court or tribunal or central bank or military authority), or self-regulatory organisation.

If, however, a Customer suffers any loss or liability as the result of any act or omission of, or the bankruptcy or insolvency of, any entity acting for issuers and in charge of such issuers register, CBL's depositories, sub-depositories, custodians, sub-custodians or of any other clearance system or of any carrier transporting securities between CBL and/or any of the foregoing, CBL shall take such steps in order to effect a recovery as it shall reasonably deem appropriate under all the circumstances. This is provided that CBL, unless it shall be liable for such loss or liability by virtue of its gross negligence or wilful misconduct, shall charge to the Customer the amount of any cost or expense incurred in effecting, or attempting to effect, such recovery.

If, in CBL's judgement, one of the events described in this article occurs or appears likely to occur, CBL reserves the right to undertake such measures as it may deem necessary to protect the interests of CBL and/or its Customers.

### Article 49

CBL shall provide statements of account to the Customer as specified in the Governing Documents. The statements shall be considered to have been accepted and approved unless the Customer notifies CBL to the contrary within thirty calendar days after the statement has been mailed or made available through telecommunications facilities, as applicable.

### Article 50

CBL reserves the right to reverse any erroneous debit or credit entries to any account at any time. An erroneous debit or credit entry shall include, but not be limited to, a debit or credit made in connection with a transaction which becomes subject to a reversal order.

Losses in a collective holding of a particular class of securities are to be borne jointly and on a pro rata basis by the co-owners of the collective holding on the basis of the credit balance existing at the time where the loss occurred. If it is not possible to determine such time, the close of the books on the day immediately preceding the day on which the loss was discovered shall be conclusive.

### Article 51

The Customer undertakes to comply with (i) all laws, decrees, regulations and governmental orders (including, but not limited to, any orders, writs, judgements, injunctions, decrees, stipulations, determinations or awards entered by any court, tribunal, government, governmental authority, regulatory, self regulatory or administrative agency or governmental commission) applicable to the Customer, or to securities, precious metals, currencies or other assets held on the Customer's behalf by CBL, or, regarding the services requested by the Customer, performed or to be performed, for the Customer, or on the Customer's behalf, by CBL, and (ii) any contract, agreement or other instrument binding upon the Customer. The Customer shall indemnify CBL against any loss, claim, damage, liability or expense incurred by CBL (i) as a result of the failure of the Customer to fulfil the obligations set forth in the preceding sentence, or (ii) by virtue of the fact that CBL holds securities, precious metals, currencies or other assets deposited by the Customer or has received payments in connection therewith, or in connection with, any transaction performed, or to be performed, at the instruction or on behalf of the Customer, and, arising out of, or, caused by the operation of any laws, decrees, regulations or governmental orders, or (iii) as a result of Customer's direct instruction to issuers or any entity acting for such issuers, or (iv) as the case may be, as a result of the exercise by the final investors or by the Customer, of their respective rights to claim direct ownership in their respective assets held by CBL in the relevant issuer's register.

### Article 52

CBL may assume that the Customer has full legal capacity to hold or dispose of the assets it keeps with CBL, unless CBL has been notified to the contrary by the Customer, or, by any court, tribunal, government, governmental authority, regulatory or administrative agency, government commission, or by any trustee, liquidator, receiver, conservator, custodian, administrator or similar official appointed with regard to the Customer's assets under any bankruptcy, insolvency, liquidation, reorganisation, investor protection, composition or banking or similar law. The Customer shall immediately notify CBL in writing of any changes in the Customer's legal capacity or in the Customer's rights in respect of securities, precious metals, currency or other assets deposited by the Customer with CBL. The Customer shall be solely and entirely liable for any consequences resulting from the Customer's failure to fulfil this obligation.

### Article 53

Unless to the extent specifically waived in whole or in part by CBL, CBL may regard all transactions conducted by a Customer with or through CBL as inter-related. Consequently, CBL may, except to such extent, decline to provide services or perform any obligation if the Customer does not fulfil its obligations under the Governing Documents or any other agreement between CBL and the Customer.

### Article 54

The Customer shall provide annual audited financial statements and balance sheets to CBL as soon as possible, and shall promptly provide such additional information relating to the Customer's finances as CBL may reasonably request.

### Article 55

Either party may terminate the Customer's use of the services provided by the CBL system upon not less than one month's written notice. The terminating party

shall have no obligation to disclose its reasons for such termination. Notwithstanding the foregoing, CBL reserves the right to terminate or suspend the provision of services to the Customer with immediate effect, and without prior notice, if in CBL's opinion the Customer is in material breach of any obligation incumbent upon it under the Governing Documents or any other agreement between CBL and the Customer.

This also applies if circumstances arise which CBL reasonably believes would materially affect the Customer's ability to fulfil the obligations incumbent upon it under the Governing Documents or any other agreement between CBL and the Customer, including, but not limited to, the occurrence of any of the following events:

i) the commencement by the Customer, or by any other person (including any supervisory or regulatory authority) with respect to the Customer, of a case or other proceeding seeking liquidation, reorganisation or other similar relief with respect to the Customer or its debts under any bankruptcy, composition, receivership, conservatorship, insolvency or other similar law now, or hereafter, in effect or seeking the appointment of a trustee, receiver, conservator, liquidator, custodian, administrator or other similar official of it or any substantial part of its property under any such law;

ii) the authorisation of a measure described in (i) by a corporate governing body of the Customer;

iii) an admission by the Customer of its inability to pay its debts generally as they become due;

iv) the calling by the Customer of a general meeting of its creditors for the purpose of seeking a compromise of its debts;

v) a general assignment by the Customer for the benefit of its creditors;

vi) the attachment or execution upon or against any asset or property of the Customer;

vii) the suspension of operations, the assumption or substitution of management, or any other change in control in the affairs of the Customer resulting from the action of any court, tribunal, government, governmental authority, regulatory or administrative agency or governmental commission; or

viii) any other reason that CBL may determine.

### Article 56

Following the termination of the provision of services to the Customer for any reason, the Customer shall only be released from its obligations towards CBL when CBL confirms in writing to the Customer that all the fees, commissions and other charges due to CBL have been paid and all other obligations which CBL requires the Customer to discharge have been discharged.

Upon giving such confirmation, unless to the extent otherwise agreed in writing, CBL shall hold at the disposal of the Customer the securities, precious metals, currencies and other assets standing to the credit of the Customer.

Unless the Customer shall request delivery to itself or a third party during a period of thirty calendar days from such written confirmation by CBL, CBL shall deliver to the Customer the securities, precious metals, currencies and other assets standing to the credit of the Customer's account promptly following expiry of such period.

Any such delivery to the Customer or a third party shall be at the Customer's expense and risk and shall, unless otherwise reasonably instructed by the Customer, be made to the then current mailing address on file at CBL for the Customer.

### Article 57

The Customer agrees that CBL's books and records (regardless of the media in, or upon, which such are maintained) shall constitute sufficient evidence of any obligations of the Customer to CBL and of any facts or events relied upon by CBL. CBL shall have no obligation to maintain any record relating to services provided by CBL to the Customer after the expiration of a period of ten years from the time of the generation of such record.

### Article 58

Any action, claim or counterclaim by a Customer relating to services provided (or the failure to provide or properly perform services) by CBL to the Customer shall be barred upon the expiration of such period of ten years unless applicable law would bar such an action, claim or counterclaim upon the expiration of a shorter period, in which case such an action, claim or counterclaim shall be barred upon the expiration of such shorter period.

## Article 59

Except as may be expressly provided therein, the Governing Documents and any other agreement between CBL and a Customer are solely for the benefit of CBL and the relevant Customer. No other party (including, without limitation, any client, participant or other entity on whose behalf the Customer may be acting) shall have or be entitled to assert any rights, claim or remedies against CBL.

## Article 60

If any term or other provision of these General Terms and Conditions is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of these General Terms and Conditions shall nevertheless remain in full force and effect so long as the economic or legal substance of the relationship contemplated hereby is not affected in any manner adverse to both the Customer and CBL. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, CBL will modify these General Terms and Conditions so as to effect the original intent of both the Customer and CBL as closely as possible, in an acceptable manner to the end that the relationship contemplated hereby is fulfilled to the greatest extent possible.

## Article 61

These General Terms and Conditions shall be governed by and construed in accordance with the laws of the Grand Duchy of Luxembourg. Matters not expressly provided for in these General Terms and Conditions shall be governed by the applicable provisions of Luxembourg law. The Customer will submit to the non-exclusive jurisdiction of the competent Luxembourg courts for any litigation which may arise.

## Article 62

CBL reserves the right to amend these General Terms and Conditions as well as any other Governing Documents at any time.

For these General Terms and Conditions, CBL shall notify the Customer in writing by mail of any such amendment and of the effective date thereof. Unless the Customer shall inform CBL in writing to the contrary within ten business days following the date of receipt of CBL's notice, the Customer shall be deemed to have accepted such amendments.

For the remaining Governing Documents, CBL shall notify the Customer by electronic means of any such amendments and of the effective date thereof. The amendments will be published through CBL's internet site. The electronic version of the Governing Documents as published on CBL's internet site in English shall be at any time the legally binding version of these Governing Documents.

## Article 63

Any right or authority granted to, or reserved by, CBL in these General Terms and Conditions shall be exercisable by CBL in its sole discretion.

## Article 64

Any communication in writing by CBL shall be deemed to have been received ten business days after it has been mailed to the then current mailing address on file at CBL for the Customer.

Any communication made available by electronic means by CBL shall be deemed to have been received one business day after it has been communicated to the then current contact details on file at CBL for the Customer.

The Customer is responsible for keeping the contact details of his Clearstream website registration current and valid. The Customer may designate a new mailing address or new contact details at any time by providing CBL with written notice thereof.

Any notice to be provided by the Customer to CBL in pursuance of the Governing Documents (including these General Terms and Conditions) shall be made in writing by registered mail, unless otherwise specified therein. Correspondence for CBL should be sent to:

> Clearstream Banking, Luxembourg
> 42 Avenue JF Kennedy
> L-1855 Luxembourg

**Contact**
marketing@clearstream.com
www.clearstream.com

**Published by**
**Clearstream Banking Luxembourg**
**Registered address**
Clearstream Banking SA
42 avenue JF Kennedy
L-1855 Luxembourg

**Postal address**
Clearstream Banking SA
L-2967 Luxembourg

July 2008

Document number: 0067/01.2006