UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
DEBORAH D. PETERSON                             : Case No. 18 Misc. 8302 (JGK)
Personal Representative of the Estate           :
Of James C. Knipple (Dec.), et al.,             : (Civil Action Nos. 01-2094 (RCL)
                                                : and 1-2684 (RCL) D.D.C.)
                        Plaintiffs,             :
                                                :
            v.                                  :
                                                :
                                                :
ISLAMIC REPUBLIC OF IRAN, et al.,               :
                                                :
                        Defendants.             :
-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR ORDER COMPELLING CLEARSTREAM BANKING, S.A. TO COMPLY WITH SUBPOENA DUCES TECUM BY PROVIDING TESTIMONY IN COURT

137201 1

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| INTRODUCTION | 4 |
| STATEMENT OF FACTS | 4 |
| LUXEMBURG LAW DOES NOT PROHIBIT CLEARSTREAM FROM COMPLYING WITH THIS COURT'S ORDER TO GIVE TESTIMONY AND PRODUCE DOCUMENTS IN COURT | 9 |
| FEDERAL AND NEW YORK DISCOVERY PROCEDURES ARE NOT PRE-EMPTED BY THE HAGUE CONVENTION | 10 |
| CONCLUSION | 13 |

137210.1

## TABLE OF AUTHORITIES

**PAGE**

*Standard Fruit & Steamship Company v The Waterfront
Commission of New York Habor,* 43 N.Y. 2d 11, 15,
371 N.E. 2d 453, 455, 400 N.Y. 2d 732, 734 (NY 1977) .................. 11

*Societe Nationale Industrielle Aerospatiale v. U.S. District
Court for the Southern District of Iowa,* 482 U.S. 522,
107 S.Ct. 2542, 96l. Ed. 2d 461 (1987) ............................ 11

*First American Corporation v. PriceWaterhouse LLP,*
154 F. 3d 16 (2d Cir 1998) ....................... ........... ....... 11, 12

## INTRODUCTION

Plaintiffs respectfully submit the following Memorandum of Law in Support of their application for an order deeming the Subpoena Duces Tecum dated July 31, 2008 served on Clearstream Banking, S.A., amended to require testimony and document production in Court and compelling Clarstream to comply therewith on a date to be fixed by the Court.

## STATEMEMENT OF FACTS

Prior to the hearing in this action before Judge Koeltl held on June 27, 2008, Plaintiffs had served a Subpoena Duces Tecum on Clearstream Banking, S.A. ("Clearstream"), seeking testimony of a witness and production of 57 categories of documents broadly described therein, as well as an Information Subpoena with 41 questions, copies of which are annexed as Exhibit A to the Declaration of Liviu Vogel dated December 12, 2008 submitted herewith. At the hearing on June 27, 2008, Clearstream presented various documents and exhibits that were referred to by its witness, Mark Gem, during his testimony. At the end of his testimony, Clearstream moved for a stay of the discovery served on Clearstream, in part because the information sought was irrelevant and overbroad. (June 27th transcript, page 74, line 2-page 75, line 1.) Although Judge Koeltl did not review the discovery request, he relied on the representations of Clearstream's counsel and concluded that they were indeed overbroad. Plaintiffs consented to withdraw the discovery against Clearstream, agreeing that discovery requests could be more narrowly drawn in light of the testimony and documents produced by Clearstream on June 27th. Judge Koeltl specifically acknowledged the Plaintiffs need to serve discovery on Clearstream in a more narrow fashion stating in part as follows:

137210.1                                         4

> "On the other hand, the Plaintiffs have to be in a position not only to get a restraint, but to get a turnover. And they can't do that without linking, I take it, the funds that have been restrained to the Defendant in the case. So they are entitled to some discovery in the process of enforcing their judgment against Defendant.
>
> * * *
>
> And I'm sure that the Plaintiffs can draft more reasonable requests for the purpose of enforcing a judgment in Washington.
>
> * * *
>
> So the answer is the outstanding discovery requests are withdrawn without prejudice to service of appropriately-tailored discovery requests.

(June 27th hearing transcript at page 76, line 2-page 77, line 1).

Consistent therewith, the Court's Final Order dated June 27, 2008 states that it is, "ORDERED, that the discovery Plaintiffs served on Clearstream and Citi thus far are hereby withdrawn without prejudice . . . ."

At no time during the June 27, 2008 hearing did Clearstream raise any objections to the then outstanding discovery requests on the basis of the Hague Convention. Instead, Clearstream indicated that it would cooperate in providing discovery. Clearstream's counsel, Frank Panapoulos stated in relevant part as follows:

> "And really if they have something more specific . . . , maybe we could work something out. And lastly, just to raise that even to provide responses to discovery subpoenas, we would have to come back before the Court because of the banking secrecy laws, which is why we tried to make an effort to produce and talk about everything here. And, if necessary, I'm willing to put Mr. Gem back on the stand and ask him each and everyone of these questions in the information subpoena, if it would be necessary, rather than have to go through additional discovery and all the fighting that would entail."

(June 27 transcript, page 74, line 12 through page 75, line 1.)

137210.1                                                5

Given Clearstream's apparent willingness to "work something out", Plaintiffs' attorney, Liviu Vogel, sent an e-mail to Clearstream's attorney, Frank Panapoulos, on June 21, 2008 with a draft description of documents to be annexed to a formal subpoena duces tecum. The e-mail acknowledged Clearstreams need to provide discovery pursuant to a Court Order by testimony in open Court according to Luxemburg Bank secrecy laws. The e-mail requested that the parties schedule a date for such testimony on consent. The July 21, 2008 e-mail together with its attachment is annexed as Exhibit B to the Declaration of Liviu Vogel dated December 12, 2008 submitted herewith. Mr. Panapoulos e-mailed Mr. Vogel on July 21, 2008 acknowledging receipt of the proposed discovery and stating that he would discuss it with his client. A copy of that e-mail is annexed as Exhibit C to the Declaration of Liviu Vogel dated December 12, 2008 submitted herewith. Thereafter, counsel for Clearstream sent e-mails on July 25 and July 28, 2008 to Mr. Vogel requesting that he call to discuss the discovery issues. On July 28, 2008, Mr. Vogel and Mr. Panapoulos had a detailed discussion regarding each and every one of the 20 categories of the documents described in the proposed subpoena. The parties agreed with respect to the production of some of the items, but disagreed with respect to others. On July 30, 2008, Mr. Panapoulos and Mr. Vogel again spoke on the telephone with Mr. Panapoulos suggesting that Clearstream's witness appear in Court to provide discovery testimony on August 20, 2008 and proposing to draft a scheduling order to that effect to be submitted to the Court for approval. During that conversation, Mr. Vogel asked whether Clearsteam would consent to an in camera review of disputed documents by the Court. Mr. Panapoulos indicated that he would check with his client regarding that. In addition, Mr. Vogel asked Mr. Panapoulos whether he would accept service on behalf of his client of the subpoena. Mr. Panapoulos indicated that the subpoena should instead be served on Clearstream at its Manhattan office.

On July 31, 2008, Mr. Panapoulos telephoned Mr. Vogel indicating that his client would not consent to an in camera review of disputed documents. However, Clearstream would bring the documents to Court for possible review in camera if the Court disagreed with Clearstream's position. Mr. Panapoulos indicated that the parties should consider agreeing to a second date for a hearing and testimony in the event that an in camera review of documents is required. The suggested dates to do so were either August 27, 28 or 29.

On July 29, 2008, Mr. Panapoulos e-mailed Mr. Vogel a draft letter to Judge Koeltl asking him to grant a hearing on discovery. A copy of that e-mail and the attached draft letter prepared by Mr. Panapoulos is annexed as Exhibit D to the Declaration of Liviu Vogel dated December 12, 12008 submitted herewith. The draft letter states in relevant part as follows:

> "We write to respectfully ask Your Honor to permit another hearing before You so that Clearstream Banking S.A. ("Clearstream") can testify and disclose information to Plaintiffs, including documents, in response to discovery requests Plaintiffs served on Clearstream. A hearing with live testimony is required for the same reasons discussed in Clearstream's letter to the Court dated June 23, 2008, with respect to its objections to the Restraining Notices (i.e., Luxemburg's banks secrecy laws). Clearstream and Plaintiffs have discussed the responses and narrowed their differences. The hearing would cover production of documents responsive to the discovery requests and testimony concerning the requests, including those to which Clearstream objects. We anticipate the testimony to refer at times to the binder of documents produced at the June 27th hearing, as well as to new documents which shall be furnished to the Court and Plaintiffs in the same manner as was done during the June 23rd hearing."

On July 31, 2008, Frank Panapoulos sent two e-mails to Liviu Vogel concerning finalizing the proposed discovery order and attaching a draft order. Copies of the e-mails and draft order are annexed as Exhibit E to the Declaration of Liviu Vogel dated December 12, 2008 submitted herewith. As indicated in the Declaration of Liviu Vogel, he was scheduled to leave for a two week vacation outside the United States and had to leave the office quickly. Therefore, Mr. Vogel authorized Mr. Panapoulos to sign the proposed letter to Judge Koeltl on his behalf.

137210.1                           7

The Subpoena Duces Tecum at issue was served by personal delivery on Cleastream at its office located at 350 Madison Avenue, 23rd floor, New York, NY 10017 on July 31, 2007. A copy of the Subpoeana Duces Tecum and Affidavit of Service is annexed as Exhibit F to the accompanying Declaration of Liviu Vogel dated December 12, 2008 submitted herewith. The Subpoena contained virtually the same description of documents as was previously discussed between the attorneys for Plaintiffs and Clearstream, with some minor clarifications made as a result of their discussions. The Subpoena mistakenly requests appearance of the witness at Plaintiffs' attorney's office rather than the Court. But, the error was to be cured by the proposed consent order (see Exhibit E annexed to the accompanying Declaration of Liviu Vogel dated December 12, 2008).

Notwithstanding the agreement reached between the parties, on August 7, 2008, Clearstream's attorney, Frank Panapoulos, sent a letter to Judge Koeltl indicating that Clearstream intended to move to quash the discovery subpoena served by Plaintiffs and to seek modification of the restraints. A copy of Mr. Panapoulos' August 7th letter is annexed as Exhibit G to the accompanying Declaration of Liviu Vogel dated December 12, 2008.

On August 14, 2008, Mr. Panapoulos sent a letter to Hon. Paul A. Crotty briefly outlining Clearstream's argument with respect to discovery and the restraints. A copy of the August 14, 2008 letter is annexed as Exhibit H to the accompanying Declaration of Liviu Vogel dated December 12, 2008 submitted herewith.

On August 22, 2008, Liviu Vogel, wrote to Hon. Paul A. Crotty in response to Clearstream's August 14, 2008 letter. A copy of Mr. Vogel's August 22, 2008 letter is annexed hereto as Exhibit I to his Declaration dated December 12, 2008 submitted herewith.

## LUXEMBURG LAW DOES NOT PROHIBIT CLEARSTREAM FROM COMPLYING WITH THIS COURT'S ORDER TO GIVE TESTIMONY AND PRODUCE DOCUMENTS IN COURT

In connection with Clearsteam's pending motion to vacate the restraints, it submitted as Exhibits 8 and 20, legal opinions from the Luxemburg law firm of Arendt & Medernach dated June 20, 2008 and August 19, 2008, respectively. The former was used to support Clearstream's supposed need to produce documents to the Court by way of oral testimony under Court Order because of Luxemburg bank secrecy law. The latter is being used by Clearstream to support its argument that the subpoena at issue violates Luxemburg Law because it requests the production of documents without testimony. The two opinions are virtually identical with respect to the law cited. The subpoena at issue (as clarified by the parties' proposed scheduling order (Exhibit E)) does indeed seek testimony of Clearstream in Court and, therefore, does not violate Luxemburg Law in accordance with the opinion given by Luxemburg counsel. Indeed, the proposed discovery order that the parties consented to, contemplated the appearance of Clearstream's witness under Court Order in the same manner as occurred on June 27, 2008, to comply with Luxemburg's Bank secrecy laws. The second opinion also suggests that a discovery subpoena issued by a U. S. Court is improper because it is pre-empted by the Hague Convention. The opinion further indicates that such discovery may not be available under the Hague Convention because Luxemburg has elected not to honor requests made under the Convention for the purpose of obtaining "pre-trial discovery."

Clearstream's inconsistent arguments in this regard are reminiscent of its arguments with respect to vacating the restraints on the securities. It was perfectly acceptable for Clearstream to testify and produce documents concerning the tracing of transfers of securities to prove that the

137210.1 9

Islamic Republic of Iran could not possibly own an interest in two of the securities that were transferred out of the Clearstream's system, but unacceptable for the Plaintiffs to trace the transfer of the securities in the same manner to prove that the Islamic Republic of Iran continued to have an interest in the remaining securities. Similarly, Clearstream argues that its officer could testify in a U.S. Court and produce documents in connection with such testimony under a consentual Court Order, but is prohibited from doing so under a Court Order to which it does not consent. Logically, it would seem that a Court Order sought by Clearsteam would provide less of an excuse from potential liability under Luxemburg law; whereas a court order initiated by others against Clearstream would protect Clearstream from the sanctions of Luxemburg's law.

Read carefully, the opinion of Arendt & Medernach dated August 19, 2008, does <u>not</u> indicate that Clearstream would be subject to sanctions under Luxemburg law if it is required by a U.S. Court Order to appear in Court to testify and produce documents incident to such testimony. The opinion does <u>not</u> state that the existence of the Hauge Convention has any bearing on whether Clearstream would be subject to sanctions under Luxemburg law if it testified in a U.S. Court as a result of a Court Order.

## FEDERAL AND NEW YORK DISCOVERY PROCEDURES ARE NOT PRE-EMPTED BY THE HAGUE CONVENTION

The New York Court of Appeals has held that, "a corporation doing business in New York may be subpoenaed to testify as a witness about a corporate transaction through its officers and employees who have knowledge of the transaction. [citations omitted] It is no excuse to say that the officers and their employees who participated in the corporate transaction involved are not within the jurisdiction or that they refuse to appear or testify in New York. So long as the person who participated in the questioned corporate activity is an officer or employee, or is under its control or direction, it is the corporation's responsibility to produce that person pursuant to a subpoena served

upon the corporation." *Standard Fruit & Steamship Company v The Waterfront Commission of New York Habor*, 43 N.Y. 2d 11, 15, 371 N.E. 2d 453, 455, 400 N.Y. 2d 732, 734 (NY 1977).

Furthermore, the Hauge Convention is not a pre-emptive replacement for other means of obtaining evidence located abroad under Federal or state law. See *Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern District of Iowa*, 482 U.S. 522, 107 S.Ct. 2542, 96 L. Ed. 2d 461 (1987). In determining whether to apply the Hauge Convention discovery procedures or those under Federal Rules, the Court's apply a four factor analysis as follows:

> (i) the competing interests of the nations whose laws are in conflict; (ii) the hardship that compliance would impose on the party or witness for whom discovery was sought; (iii) the importance to the litigation of the information and documents requested; and (4) [Sic.] the good faith of the party resisting discovery.

*First American Corporation v. PriceWaterhouse LLP*, 154 F. 3d 16 (2d Cir 1998).

According to the opinion of Arendt & Medernach dated August 19, 2008 the goal of Luxemburg Bank secrecy laws is to maintain the confidentiality of the identity of the bank's clients (Arendt & Medernach opinion at page 2, third paragraph). Balanced against this is the interest of the United States to protect its citizens against state-sponsored terrorism and to compensate those who have been damaged by the killing and injury of U.S. Soldiers by such state-sponsored terrorism. In light of the fact that Clearstream has already disclosed the identity of ▓▓▓ and ▓▓▓ as its customers in connection with the securities in question, the goal of Luxemburg law to maintain their identity confidential, is moot with respect to this case. Consequently, the interest of the United States far outweighs any theoretical interest of Luxemburg.

Clearstream is a large institution with apparently substantial resources and an office located in Manhattan. Clearstream has not asserted any hardship in having to produce the documents and witness in response to a subpoena and a Court Order. Indeed, Clearsteam consented to produce a witness and documents, and then mysteriously breached its agreement. Clearstream would be hard

137210.1                                        11

pressed to argue that it would suffer undue hardship to comply with the discovery requests given its prior consent to do so without compensation.

The importance to the litigation of the information and documents requested was recognized by Judge Koeltl in his statements on the record at the June 27, 2008 hearing. The document requests are narrowly drawn, and many of them have been agreed upon between the parties prior to August 1, 2008. The documents are relevant to determining the identity of the beneficial owner of the securities restrained as well as determining the existence of a fraudulent conveyance of the securities by ▮▮▮▮▮ to ▮▮▮▮▮

It is evident that Clearstream has not acted in good faith with respect to the requested disclosure. Clearstreem after detailed discussion with Plaintiffs' counsel agreed to produce many of the documents requested and agreed to produce a witness under a consent order that would enable Clearstream to comply with Luxemburg law. Indeed, counsel for Clearstream prepared a proposed letter and consent order to be submitted to the Court for execution to implement Plaintiffs' discovery request. Plaintiffs' attorney authorized Clearstream's attorney to execute the letter to the Court on his behalf. Instead of doing so, Clearstream submitted a letter to the Court indicating its intent to move to quash the subpoena and to vacate the restraint. Clearstream has acted in bad faith.

The Court in *First American, supra*., also noted that the Hague Convention did not offer a meaningful avenue of discovery in that case ecause it would be unduly time consuming and expensive and because the Plaintiff could not separately describe each document it sought with sufficient specificity. This was another factor that persuaded the Court to conclude that the Plaintiff would not be required to initially avail itself of remedies under the Hauge Convention. Similarly, in the instant case, the opinion of Arendt & Medernach dated August 19, 2008

137210.1                                    12

suggests that Luxemburg would not honor a letter of request under the Hauge Convention because it has elected not to do so for purpose of obtaining "pre-trial discovery." Although the instant discovery proceedings are for purpose of post-trial judgment enforcement, Luxemburg might view them as pre-trial proceedings relative to the proposed special proceeding for turnover and fraudulent conveyance.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deem the subpoena served by Plaintiffs on Clearstream amended to require testimony and document production in Court and issue an order requiring Clearstream to produce a witness to give testimony in Court and to produce the documents requested in the subpoena.

Dated:   December 12, 2008
         New York, New York

                                                  Salon Marrow Dyckman Newman & Broudy LLP

                                                  _____
                                                  Liviu Vogel (LV-7552)
                                                  Attorneys for Plaintiffs
                                                  292 Madison Avenue, 6th floor
                                                  New York, NY 10017
                                                  (212) 661-7100

TO: Frank Panapoulos, Esq.
    White & Case LLP
    701 13th Street, N.W.
    Washington, D.C. 20005