# EXHIBIT I

# SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

ATTORNEYS AT LAW

292 MADISON AVENUE • NEW YORK, NY 10017

Telephone   (212) 661-7100

Facsimile   (212) 661-3339

LIVIU VOGEL
lvogel@salonmarrow.com
Ext. 909
Direct Dial (646) 843-1909

*Also admitted in Connecticut

2 University Plaza, Suite 210
Hackensack, NJ 07601
Telephone (201) 662-0656
Facsimile   (201) 487-9054

257 Lyons Plains Road
Weston, CT 06883
Telephone (203) 227-0023
Facsimile   (646) 843-1910

800 Corporate Drive, Suite 208
Ft. Lauderdale, FL 33334
Telephone (954) 491-0099
Facsimile   (954) 491-1544

August 22, 2008

**VIA FACSIMILE**

The Honorable Paul A. Crotty: (212) 805-6340
United States District Court
Southern District of New York
Patrick Moynihan U.S. Courthouse
500 Pearl Street, Chambers 735
New York, NY 10007

   Re:   **Peterson v. Islamic Republic of Iran, Case No. 18 Misc. 8302; Response to Clearstream's Pre-motion Conference Request**

Dear Judge Crotty:

   This Firm represents the Plaintiffs in the above-referenced action. I am writing in response to the letter of Frank Panopoulos, attorney for Clearstream Banking S.A. ("Clearstream") dated August 14, 2008, which requests a pre-motion and motion conference.

   In June, 2008, Plaintiffs served *subpoenas deuces tecum* on both Clearstream and Citibank seeking extensive documentation. In light of the testimony given by Clearstream at the June 27 hearing, it was evident to all parties and the Court that the Plaintiffs' initial subpoenas could be more narrowly drawn. Accordingly, Plaintiffs consented to the withdrawal thereof.

   Thereafter, on July 21, 2008, I drafted a narrow list of documents to be annexed to a *subpoena deuces tecum* and transmitted same to Mr. Panopoulos for discussion. I had a detailed conversation with Mr. Panopoulos on July 28, 2008, concerning each of the twenty categories of items contained in Plaintiffs' draft subpoena. Although counsel could not agree on everything, there was agreement on the majority of items. On July 30, 2008, counsel again conferred and

# SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

Hon. Paul A. Crotty
United States District Court
August 22, 2008
Page 2

agreed to produce a witness from Clearstream on August 20, 2008, to testify before this Court and produce documents (as required by Luxembourg Law according to Clearstream). I suggested that the potential solution for disputed documents could include an *in camera* review by the Court. At the conclusion of the discussion, Clearstream's counsel requested that I serve the subpoena on Clearstream's office in Manhattan, rather than he accepting service in his office. Plaintiffs served the subpoena on Clearstream's office in Manhattan on July 31, 2008.

On July 31, 2008, counsel again conferred by telephone. Clearstream's attorney could not agree to an *in camera* review, but did agree to bring all the documents to Court for possible review if the Court disagrees with Clearstream's position. On that date, Mr. Panopoulos sent me a draft consent order, pursuant to which a hearing would be scheduled on August 20, 2008 for Clearstream to provide oral testimony and produce documents in response to the subpoena served on July 31, 2008.

The following day, I left on vacation for two weeks, having last discussed with Clearstream's attorney that he would submit the proposed order to the Court for execution. Upon my return from vacation on August 14, 2008, I discovered that instead Clearstream had submitted an entirely different letter to the Court, seeking both to quash the subpoena entirely and to further modify the restraining notice served on Clearstream. I only learned of Clearstream's changed position in a brief telephone conversation with Clearstream's counsel on August 14, 2008, which I cannot characterize as having been made in "good faith," given the sudden unexplained reversal by Clearstream.

At the hearing on June 27, 2008, the Court and all parties clearly understood that further discovery would be served on Clearstream, to be more narrowly drawn in light of the testimony given on that date. The Court acknowledged that the Plaintiffs are entitled to further disclosure before commencing a turnover proceeding. Plaintiffs are in the process of preparing an application to the Court for letters *rogatory* to be sent to ▇▇▇▇ courts under the Hague Convention for discovery against Clearstream's client, in whose account the restrained securities are held. Clearstream's client has no apparent presence in the United States and is therefore not subject to discovery proceedings, except by way of the Hague Convention. Plaintiffs are entitled to seek further disclosure from Clearstream or any other person regarding all matter relevant to the satisfaction of the judgment (CPLR §5223). Disclosure of assets of the judgment-debtors held by Clearstream worldwide is clearly relevant to the satisfaction of the judgment. The underlying action commenced in the District Court of Washington D.C. had been pending since 2001, therefore disclosure of securities transactions involving the judgment-debtors' assets since 2001 is relevant. Under New York law, certain transfers made by a judgment-debtor after an action is pending against the judgment-debtor, is deemed a fraudulent conveyance. Information concerning contacts between Clearstream's customer and Clearstream's operations in the United States is relevant to whether the Courts in the United States have jurisdiction over its customer and therefore relevant to the satisfaction of the judgment. Clearstream's testimony at the June 27

# SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

Hon. Paul A. Crotty
United States District Court
August 22, 2008
Page 3

hearing was self-serving and therefore should not preclude discovery of documents in Clearstream's possession. Clearstream consented to voluntarily appearing before this Court in response to the first subpoena served upon it, and therefore waived any claims that it can only be served with discovery requests pursuant to the Hague Convention. Clearstream is doing business in Manhattan and is therefore subject to the jurisdiction of this Court.

At the hearing on June 27, 2008, the Court specifically held that the restraining notices served on both Clearstream and Citibank were to remain in effect except to the extent that they were modified by the Court's order entered on that date. Clearstream had the opportunity to raise USCC 8-112 as a basis for lifting the restraints, but failed to do so. The Court acknowledged that Clearstream's customer should appear before the Court in connection with the discovery and turnover proceedings, but nevertheless held that the restraints served on Citibank and Clearstream would remain in effect. ████████████████████████████████████████████████████████████████████████████████████████████████ Consequently, it is evident that the restraining notices served on Clearstream and Citibank have the intended effect of preventing the judgment-debtors or others from transferring the securities and money beyond the reach of the Plaintiffs. Until such time as the Plaintiffs have had an opportunity to conduct discovery through letters *rogatory* by way of the Hague Convention against Clearstream's customer and the commencement of a turnover proceeding against that customer as well as Clearstream and Citibank, the identified assets should remain restrained. Neither the judgment-debtors nor Clearstream's customer has appeared in this Court to contest the restraints or to dispute that the judgment-debtors have an interest in the securities that have been restrained. Clearstream is in no way harmed by the continued restraints. Clearstream's sudden change of position was undoubtedly motivated by pressure from the judgment-debtors or its foreign customer, both of whom have failed to appear in this Court to protect their own interests. UCC §8-112 (e) gives authority to this Court "by injunction or otherwise", to assist the Plaintiffs in satisfying their judgment "by means of law or equity in regards to property that cannot readily be reached by other legal process."

Because Clearstream's customer appears to have no presence in the United States, it cannot be served with a restraining notice. It can however be served with a turnover petition after discovery is completed under the Hague Convention. Until such time, this Court should enjoin both Clearstream and Citibank from transferring the securities and assets that have thus far been restrained. Plaintiffs believe that the Court at the hearing on June 27, 2008, in its pronouncements that the restraints shall continue in effect, has already granted relief under UCC §8-112(e). Nevertheless, to avoid all doubt, Plaintiffs intend to cross-move this Court for a specific injunction under UCC §8-112(e) addressed to Clearstream and Citibank, enjoining them from transferring any of the securities or assets that were previously identified in the restraining notices served upon them.

# SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

Hon. Paul A. Crotty
United States District Court
August 22, 2008
Page 4

                                                     Respectfully yours,

                                                   By: _____
                                                         Liviu Vogel

cc via facsimile:      Frank Panopoulos, Esq.
                            Sharon L. Schneier, Esq.

LV:jg

CELEBRATING OUR 60TH YEAR OF SERVICE

135201