UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

-------------------------------------------------------------- x
DEBORAH D. PETERSON,                          :
Personal Representative of the Estate         :
of James C. Knipple (Dec.), et al.,           :
                                              :   Case No. 18 Misc. 302 (BSJ)
              Plaintiffs,                     :
                                              :
       v.                                     :
                                              :
ISLAMIC REPUBLIC OF IRAN, et al.,             :
                                              :
              Defendants.                     :
-------------------------------------------------------------- x


**CLEARSTREAM BANKING, S.A.'S RESPONSE TO
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM REGARDING DISCOVERY**


Francis A. Vasquez, Jr. (FV-1446)
Frank Panopoulos (FP-6975)
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Tel: (202) 626-3600
Fax: (202) 639-9355

*Counsel for Clearstream Banking, S.A.*

December 23, 2008

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................... i

I.  PLAINTIFFS' DISCOVERY REQUESTS SHOULD BE QUASHED BECAUSE
    THEY ARE OVERBROAD AND BURDENSOME .......................................................... 1

    A.  Plaintiffs' Subpoena Is Overbroad ......................................................................... 2

    B.  Plaintiffs' Subpoena Is Unduly Burdensome ......................................................... 6

II. PLAINTIFFS MUST SEEK DISCOVERY THROUGH THE HAGUE
    CONVENTION .................................................................................................................. 8

    A.  Luxembourg's National Interest In Upholding Its Banking Secrecy Laws
        Is Substantial .......................................................................................................... 9

    B.  Clearstream Would Be Subjected To Criminal Sanctions If It Were Forced
        To Comply With The Subpoena ........................................................................... 10

    C.  Plaintiffs Have Obtained Adequate Discovery From Clearstream ....................... 12

    D.  Clearstream Has Demonstrated Good Faith In Complying With Plaintiffs'
        Discovery Demands .............................................................................................. 13

## **TABLE OF AUTHORITIES**

<u>Federal Cases</u>                                                                                                                   <u>Page</u>

*Application of Chase Manhattan Bank*,
297 F.2d 611 (2d Cir. 1962).................................................................................................10

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) ....................................................................................3, 6, 7

*Eisemann v. Greene*,
No. 97 Civ. 6094 (JSR), 1998 WL 164821 (S.D.N.Y. Apr. 8, 1998)..............................4

*Elliott Assocs. v. Republic of Peru*,
Nos. 96 Civ. 7917 (RWS), 96 Civ. 7916 (RWS), 1997 WL 436493 (S.D.N.Y. Aug. 1, 1997) ......8

*Gap, Inc. v. Stone Int'l Trading, Inc.*,
No. 93 Civ. 0638 (SWK), 1994 WL 38651 (S.D.N.Y. Feb. 4, 1994)............................11

*In re Blackstone Partners*,
No. 04 Civ. 7757 (NRB), 2005 WL 1560505 (S.D.N.Y. July 1, 2005)...........................2

*In re Westinghouse Elec. Corp. Uranium Contracts Litig.*,
563 F.2d 992 (10th Cir. 1977) ...............................................................................................12

*Ings v. Ferguson*,
282 F.2d 149 (2d Cir. 1960)..................................................................................................10

*JP Morgan Chase Bank v. Winnick*,
No. 03 Civ. 8535 (GEL), 2006 WL 278192 (S.D.N.Y. Feb. 6, 2006).......................2, 7

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
No. 03 Civ. 5560 (RMB) (HBP), 2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008) ..............5

*Minpeco, S.A. v. Conticommodity Servs., Inc.*,
116 F.R.D. 517 (S.D.N.Y. 1987) ........................................................................9, 11, 12, 13

*Night Hawk Ltd. v. Briarpatch Ltd., LP*,
No. 03 Civ. 1382 (RWS), 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ......................2

*Palumbo v. Shulman*,
No. 97 Civ. 4314 (JGK) (KNF), 1998 WL 720668 (S.D.N.Y. Oct. 13, 1998)...............5

*Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd.*,
No. M8-85(HB), 5:04CV1153, 2005 WL 3046284 (S.D.N.Y. Nov. 14, 2005) .......11, 13

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992) ............................................................................................... 12

*Semtek Int'l Inc. v. Merkuriy Ltd.*,
No. 3607 (DRH), 1996 WL 238538 (N.D.N.Y. May 1, 1996) ......................................................... 4

*Societe Internationale Pour Participations Industrielles & Commerciales, S.A. v. Rogers*,
357 U.S. 197 (1958) ..................................................................................................... 11, 13

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*,
482 U.S. 522 (1987) ............................................................................................................. 8

*Trade Dev. Bank v. Cont'l Ins. Co.*,
469 F.2d 35 (2d Cir. 1972) ................................................................................................... 12

Federal Statutes and Rules

Fed. R. Civ. P. 45(c)(3)(A)(iv) .............................................................................................. 2

Other Authorities

Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18,
    1970, 23 U.S.T. 2555, 847 U.N.T.S. 231 ............................................................................ 7

Plaintiffs' Memorandum of Law in Support of Plaintiffs' Application for Order Compelling Clearstream Banking, S.A. to Comply With Subpoena Duces Tecum By Providing Testimony In Court ("Plaintiffs' Supplemental Memorandum") devotes a great deal of attention to recapitulating counsels' discussions about discovery of Clearstream, which Plaintiffs claim resulted in an agreement.  No such agreement was reached and the discussion history does not address what the Court requested Plaintiffs should address in their supplemental brief: "Mr. Vogel, I would like something indicating to me what discovery you believe you need, and why you think you are entitled to discovery from Clearstream at this stage of the game."  Nov. 25 Hr'g Tr. at 80:12-15.  Plaintiffs *fail* to provide any such information; instead, their entire submission is based on the circular argument: (i) there is a subpoena that should be enforced; (ii) Clearstream breached an agreement about discovery; and (iii) therefore, the subpoena should be enforced.  The Court should reject this argument, as well as the overbroad and irrelevant discovery requests Plaintiffs now seek to enforce through the subpoena they served on Clearstream, attached as Exhibit F to their Supplemental Memorandum ("Subpoena").

I.  **PLAINTIFFS' DISCOVERY REQUESTS SHOULD BE QUASHED BECAUSE THEY ARE OVERBROAD AND BURDENSOME**

At the close of the June 27th hearing, Judge Koeltl noted that the amount of Clearstream's disclosure during the hearing was "extraordinary" and that, with respect to any future discovery, "plaintiffs now have a roadmap for what's relevant and what's not relevant."[1] Clearstream—in good faith and with all candor to the Court and Plaintiffs—provided that roadmap: testimony and documentation about A and B, their respective accounts, and the "transfer" of the security entitlements at issue from A to B (and for two securities, from B to

---

[1] June 27 Hr'g Tr. at 75:24, 76:12.

others).² Apparently a roadmap is not enough; Plaintiffs also want Clearstream to do the driving by furnishing them with even more information about B—information that Clearstream either does not have or is irrelevant to the real discovery issues and burdensome to produce.

Rule 45 of the Federal Rules of Civil Procedure requires a court to "quash or modify a subpoena" if the subpoena subjects the recipient to "undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). In determining what is "unduly burdensome," a court may consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *JP Morgan Chase Bank v. Winnick*, No. 03 Civ. 8535 (GEL), 2006 WL 278192, at *2 (S.D.N.Y. Feb. 6, 2006) (internal quotes and citations omitted). "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03 Civ. 1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003). Courts consistently have held that "a subpoena that pursues material with little apparent or likely relevance to the subject matter is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." *In re Blackstone Partners*, No. 04 Civ. 7757 (NRB), 2005 WL 1560505, at *2 (S.D.N.Y. July 1, 2005) (internal quotes and citation omitted).

A. **Plaintiffs' Subpoena Is Overbroad**

During oral argument on November 25th, Plaintiffs' counsel stated that the real purpose of the discovery they seek against Clearstream was to develop Plaintiffs' fraudulent conveyance claim and a basis for *in personam* jurisdiction over B. *See* Nov. 25 Hr'g Tr. at 48:15-25. The

---

² The term "transfer" is used here conventionally to describe what in fact is not a transfer but the extinguishing of A's security entitlements and the acquiring of B's securities entitlements by a new book entry credit to its non-proprietary account. *See* Clearstream's Supplemental Brief at 3-5 (discussing that securities' entitlements cannot be transferred).

2

discovery requests in the Subpoena served on Clearstream do not serve these purposes; instead the Subpoena "sweepingly pursues material with little apparent or likely relevance" to Plaintiffs' stated discovery purposes.  *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50 (S.D.N.Y. 1996) (internal quotes and citation omitted).  For example:

- <u>Clearstream's General Terms and Conditions</u>.  Document Requests 1-3 seek the General Terms and Conditions, and any amendments thereto, governing A's and B's accounts.  These requests are not relevant to developing Plaintiffs' fraudulent conveyance claim and establishing *in personam* jurisdiction over B, because the General Terms and Conditions relate to Clearstream's and its customers rights and duties with respect to the accounts.  Nonetheless, these requests are moot because Clearstream attached its General Terms and Conditions, which is the same for all customers, as Exhibit 28 to its Supplemental Brief.

- <u>Instructions from B regarding the nature of its accounts</u>.  Clearstream disclosed the documents requested in Request No. 4 during the June 27th hearing.  June 27 Hearing Exhibit F contained instructions from B to open its non-proprietary, custodial account, and Exhibit F1 contained the instructions to open B's proprietary account.  The instructions contained in Exhibit F were reproduced as Compendium Exhibit 10 accompanying Clearstream's pending motion to vacate the restraints under the U.C.C.  Page 4 of Compendium Exhibit 10 is a SWIFT (Society for Worldwide Interbank Financial Telecommunication) message from B instructing Clearstream to open a "customers" account, i.e., a custodial account for B's customers, with the "same setup" as B's proprietary account.  Plaintiffs base Request No. 4 on their speculation that "there's no difference between" B's proprietary and custodial accounts because of B's instruction to set up the new, custodial account with the "same setup" as its other account.  *See* Nov. 25 H'rg Tr. at 47:9-48:10.

3

The reference to the "same setup" does not mean that the accounts are the same; the reference is to how the accounts operate.  The proof that the account is a custodial account is in the instruction to open a "customers" account and Clearstream's confirmation on page 5 of Compendium Exhibit 10 that it opened a "customers" account.  The difference between custodial accounts and proprietary accounts is discussed on page 3 of Clearstream's memorandum in support of its motion to vacate the restraints.

- <u>Clearstream's internal policies and procedures</u>.  Document Requests 5, 6, 8, 12, and 20 request documents relating to Clearstream's internal policies and procedures, all of which are not relevant to developing Plaintiffs' fraudulent conveyance claim and establishing *in personam* jurisdiction over B.  *See Semtek Int'l Inc. v. Merkuriy Ltd.*, No. 3607 (DRH), 1996 WL 238538, at *3 (N.D.N.Y. May 1, 1996) ("The specific requests . . . appear to include within their scope documents sensitive to the *operations* of [the non-party subpoena recipient] but which are irrelevant to the pending proceeding.") (emphasis added); *Eisemann v. Greene*, No. 97 Civ. 6094 (JSR), 1998 WL 164821, at *2 (S.D.N.Y. Apr. 8, 1998) (granting motion to quash where information requested was of "doubtful and tangential relevance").

- <u>Documents regarding the history of the accounts</u>.  Document Requests 9-10, 13, 15, and 18 request documents concerning the entire history of A's and B's accounts, regardless of whether the information touches upon the securities entitlements subject to the Restraining Notice that were held at the time of the Restraints.  Moreover, the Instructions request this information going back to January 1, 2001 — *seven* years prior to the time B acquired the entitlements in its custodial account.

Going back to January 2001 and retracing every entitlement that A held and then divested is not only time consuming but an irrelevant endeavor because whatever entitlements A held in

4

the Omnibus Account at the time of the Restraining Notice have been restrained, and all transfers from A's account to B's custodial account have been fully disclosed. These requests simply do not concern the securities entitlements that were held at the time of the Restraining Notice. *See Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560 (RMB) (HBP), 2008 WL 4452134, at *5 (S.D.N.Y. Oct. 2, 2008) (quashing subpoena seeking documents beyond the relevant period); *Palumbo v. Shulman*, No. 97 Civ. 4314 (JGK) (KNF), 1998 WL 720668, at *5 (S.D.N.Y. Oct. 13, 1998) (imposing "temporal limits" on subpoena to the period of the relevant business matter).

Further, these overbroad requests will yield a considerable amount of information regarding transactions that are not relevant to developing Plaintiffs' fraudulent conveyance claim and establishing *in personam* jurisdiction over B.

- Communications between commercial entities. Document requests 4, 7, 9-11, and 14, request various communications between Clearstream and Citibank, A, B, and taxing authorities. These requests are not relevant to developing Plaintiffs' fraudulent conveyance claim and establishing *in personam* jurisdiction over B. Plaintiffs already have detailed information concerning the existence of A's securities entitlements in the Omnibus Account and the acquisition of these entitlements by B, including instructions from A documenting the transactions involving B. Communications from or to these two customers and Clearstream, or with taxing authorities, cannot add anything more to the documented transactions and entitlement holdings that are already established. *See Kingsway*, 2008 WL 4452134, at *5 (quashing subpoena as to *communications* beyond the relevant policy at issue).

- Documents requesting information on underlying beneficial ownership interests. Document Requests 16 and 17 seek information on the underlying beneficial ownership in the

5

restrained securities entitlements. Clearstream already has testified that as a securities intermediary, it does not have any information on the underlying beneficial ownership of the securities entitlements held by B in its custodial account.[3] With respect to A's account, Request 17 goes even farther and asks for information outside the Omnibus Account regarding *any property* in which the judgment debtor has an interest, disregarding that any such property is beyond the jurisdiction of the court because it would be outside of the United States and, therefore, immune from attachment and execution under the Foreign Sovereign Immunities Act. All of A's property in the United States, i.e., in the Omnibus Account, has been disclosed.

- Document Request No. 19. Document Request No. 19 seeks documents forming the basis of Mr. Gem's inference, with respect to the two securities entitlements that were released by Judge Koeltl, that B paid consideration when it acquired the securities entitlements for its own account. *See* June 27 Hr'g Tr. at 47:1-13; 49:12-20. The basis of Mr. Gem's inference is clear from his testimony: the transfer from a non-proprietary account to a proprietary account implies that consideration was paid. *See id.* at 47:4-7, 10-13; 49:16-20. The documents underlying the inference are the documents Mr. Gem reviewed concerning these transactions during the course of his testimony, all of which were provided to Plaintiffs.

It is evident that Plaintiffs' Subpoena is a "fishing expedition [that] will reel in material with little apparent or likely relevance" to counsel's stated purposes for discovery against Clearstream. *Concord*, 169 F.R.D. at 51 (internal quotes and citations omitted). The subpoena, therefore, should be quashed to prevent an undue burden on Clearstream.

**B.     Plaintiffs' Subpoena Is Unduly Burdensome**

Clearstream's status as a non-party garnishee entitles Clearstream to "consideration

---

[3] *See* Clearstream's Memorandum is support of its motion to vacate restraints at 5 (citing to June 27 hearing testimony and other exhibits in the record).

regarding expense and inconvenience." *Concord*, 169 F.R.D. at 49, 53 (quashing subpoena when compliance would subject numerous employees to "countless hours of research, analysis, and compilation") (internal quotation omitted); *JP Morgan*, 2006 WL 278192, at *2 (denying motion to compel when subpoena would impose the "severe burden" of requiring the non-party subpoena recipient to "designate several of its personnel to work full time for a period of at least weeks, and probably months, to search records") (internal quotation omitted).

In order to identify and produce many of the documents requested by the Subpoena, particularly going back to January 1, 2001, Clearstream would be required to dedicate significant resources, including time, employee productivity, and expenses. As Mr. Gem explained at the June 27, 2008, hearing, these transactions often take place through multiple apparently unlinked transactions, and identifying them requires tracing funds between or within customer accounts; identifying potentially responsive documents cannot simply be accomplished by looking at the face of a document, but requires considerable investigation. *See* June 27 Hr'g Tr. at 44:17-46:12 (describing documentation of just one transfer from A to B). Further, many documents will be lengthy and would require Clearstream to undertake a comprehensive redaction process to protect the privacy of its clients. *See id.* at 38:19-25.

As a non-party garnishee, Clearstream should not be subject to such undue burden and forced to expend the time, employee resources, and funds required to comply with document requests that are both irrelevant and overbroad. This is especially the case when other avenues exist for Plaintiffs to develop their fraudulent conveyance claim and establishing *in personam* jurisdiction over B, such as discovery of B via the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 231 ("Hague Convention"), which Plaintiffs stated they are pursuing. Nov. 25 Hr'g Tr. at 46:11-19.

## II.   PLAINTIFFS MUST SEEK DISCOVERY THROUGH THE HAGUE CONVENTION

To the extent the Court decides that some discovery of Clearstream is appropriate, then, to comply with Luxembourg law, that discovery must proceed under the Hague Convention.[4]

According to the Supreme Court, the procedures of the Hague Convention should be resorted to "whenever they will facilitate the gathering of evidence by the means authorized in the Convention." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 541 (1987); *Elliott Assocs. v. Republic of Peru*, Nos. 96 Civ. 7917 (RWS), 96 Civ. 7916 (RWS), 1997 WL 436493, at *2 (S.D.N.Y. Aug. 1, 1997) ("Application for a letter of request to take testimony pursuant to the Hague Convention is an appropriate mechanism for obtaining discovery of a non-party witness in a foreign country.") (citations omitted).

Both the United States and Luxembourg are parties to the Hague Convention, and if a United States court were to issue a letter rogatory via the channels provided for in the Hague Convention, Clearstream would be invited by the Luxembourg central authority under the treaty, the General State Prosecutor, to comply with the request. *See* Dupont Op. at 3 (Compendium Exhibit 21). In that event, Clearstream would be legally bound to comply by Luxembourg law without infringing on its obligations under the banking secrecy laws. *Id.*

In determining whether to apply the Hague Convention's discovery procedures, courts in this District consider four factors: (1) the competing interests of the nations whose laws are in conflict, (2) the hardship of compliance on the party or witness from whom discovery is sought,

---

[4] Plaintiffs question the Opinion of Arendt & Medernach ("Dupont Opinion") (Compendium Exhibit 21) concerning the requirements of Luxembourg's banking secrecy laws as applied to discovery, and object to Clearstream not raising the requirement of proceeding under the Hague Convention during the June 27 hearing. Pls.' Supp. Mem. at 5, 9-10. Plaintiffs' contention is misplaced because the June 27 hearing did not concern discovery and the information disclosed during that hearing was not in response to discovery requests. Rather, Clearstream appeared as a result of Judge Koeltl's order compelling it to appear in response to Citibank's order to show cause, and for the purposes of explaining and describing the underlying accounts and entitlements at issue in the Restraining Notices, and specifically to release the restraints on the two securities entitlements no longer having any connection to A and B.

8

(3) the importance to the litigation of the information requested, and (4) the good faith of the party resisting discovery.  *See, e.g.*, *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 522 (S.D.N.Y. 1987).  Under the circumstances of this case, these factors militate in favor of proceeding under the Hague Convention.

### A.     Luxembourg's National Interest In Upholding Its Banking Secrecy Laws Is Substantial

Luxembourg's interest in its banking secrecy laws is substantial.  Plaintiffs assert that the "goal of Luxemburg [sic] Bank secrecy laws is to maintain the confidentiality of the identity of the bank's clients."  Pls.' Supp. Mem. at 11.  The statement is inaccurate.  The Dupont Opinion explains that Luxembourg law directs banks to "ensure the confidentiality of any information confided to them by clients during the course of their business relations."  Dupont Op. at 2.  Simply because the identity of A and B has already been established does not relieve Clearstream of its obligation to protect those customers' confidential account information.

The prohibition on disclosure of customer information is specifically addressed in Article 458 of the Luxembourg Criminal Code, which would apply to the disclosure of documents and information sought in the Subpoena.  *See* Dupont Op. at 1; *see also Minpeco*, 116 F.R.D. at 524 (finding that Switzerland's national interest in bank secrecy was "substantial" because they had criminalized the disclosure of customer account information).  Moreover, Luxembourg's banking secrecy laws are not protecting a merely "theoretical" interest of Luxembourg as Plaintiffs assert (Pls.' Supp. Mem. at 11); rather, the laws have the legitimate purpose of protecting commercial privacy inside and outside of Luxembourg, which this Court has recognized as a "legitimate purpose."  *Minpeco*, 116 F.R.D. at 524 (finding Switzerland's national interest in protecting commercial privacy to be a "legitimate purpose").

Although the United States has an interest in securing compliance with discovery rules and ensuring that Plaintiffs have access to discoverable information, that interest would still be upheld by Plaintiffs' use of letters rogatory through the Hague Convention; whereas Luxembourg's interest in its banking secrecy laws would be spurned if the Hague Convention was not used. Indeed, the Second Circuit has recognized that there is "an obligation to respect the laws of other sovereign states even though they may differ in economic and legal philosophy from our own." *Application of Chase Manhattan Bank*, 297 F.2d 611, 613 (2d Cir. 1962); *see also Ings v. Ferguson*, 282 F.2d 149, 152 (2d Cir. 1960) ("Upon fundamental principles of international comity, our courts dedicated to the enforcement of our laws should not take such action as may cause a violation of the laws of a friendly neighbor or, at the least, an unnecessary circumvention of its procedures.").

### B. Clearstream Would Be Subjected To Criminal Sanctions If It Were Forced To Comply With The Subpoena

Plaintiffs casually assert that Clearstream would not face any hardship if it were forced to comply with the Subpoena. Pls.' Supp. Mem. at 10-11. Given the criminal penalties that Clearstream and its employees would be subjected to under Luxembourg law, this argument is decidedly mistaken. Disclosure of customer account information in response to the Subpoena in the absence of an order by the Luxembourg General State Prosecutor directing Clearstream to testify and make the disclosures in court, would subject Clearstream to civil penalties under Luxembourg law, and individual Clearstream employees to criminal prosecution. *See* Dupont Op. at 1, 3. Luxembourg courts regularly enforce the banking secrecy laws. *Id.* at 2. Indeed, the United States Supreme Court has recognized, "[i]t is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for nonproduction, and this excuse is not weakened

10

because the laws preventing compliance are those of a foreign sovereign." *Societe Int'l Pour Participations Industrielles & Commerciales, S.A. v. Rogers*, 357 U.S. 197, 211 (1958).

Further, this Court has held the fact that a foreign entity is a *non-party* is an important factor to consider in determining whether to order compliance with a subpoena, when compliance would violate foreign law. *See, e.g.*, *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd.*, No. M8-85 (HB), 5:04CV1153, 2005 WL 3046284, at *2 (S.D.N.Y. Nov. 14, 2005) ("FSS is neither a plaintiff in this suit, seeking to avail itself of access to U.S. courts while shielding its files from discovery, nor is FSS a defendant."); *Gap, Inc. v. Stone Int'l Trading, Inc.*, No. 93 Civ. 0638 (SWK), 1994 WL 38651, at *1 (S.D.N.Y. Feb. 4, 1994) ("[C]ourts commonly look to the status of the person from whom discovery is sought as one factor in determining whether to apply the provisions of the [Hague Convention]"); *Minpeco*, 116 F.R.D. at 526 ("[W]here the party sought to be compelled to produce documents in violation of foreign secrecy laws is *merely a neutral source of information*, and not itself a target of a criminal investigation or an adverse party in litigation, some courts have found the hardship to weigh more heavily in the balance.") (emphasis added).

Plaintiffs erroneously assert that the Subpoena "does not violate Luxemburg [*sic*] Law in accordance with the opinion given by Luxemburg [*sic*] counsel," because the Subpoena seeks the testimony of Clearstream in Court. Pls.' Supp. Mem. at 9. However, the Dupont Opinion explains that limited disclosure of banking information is only permitted when it is provided in the course of oral testimony before a court, upon order of the court, like the June 27, 2008, hearing before Judge Koeltl. Dupont Op. at 2. This exception, however, does not apply to the testimony and documents provided in response to a subpoena, as is being demanded of Clearstream here. *Id.* at 3. Rather, to act in compliance with Luxembourg's banking secrecy

laws, disclosure in response to a post-judgment discovery request would have to occur through the official channels set forth in the Hague Convention. *Id.* at 3.

Moreover, as the information Plaintiffs' seek can be obtained through alternative sources, this Court should not order discovery that would override foreign secrecy laws. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) ("Where the outcome of litigation 'does not stand or fall on the present discovery order,' . . . courts have generally been unwilling to override foreign secrecy laws") (quoting *In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 563 F.2d 992, 999 (10th Cir. 1977)).

### C. Plaintiffs Have Obtained Adequate Discovery From Clearstream

Clearstream already testified and produced all the relevant and material documentation related to the restrained securities and its customers holding (or that held) interests in them, at the June 27, 2008, hearing. Plaintiffs have obtained a significant amount of discovery for their use and any further information to develop Plaintiffs' fraudulent conveyance claim and establish *in personam* jurisdiction over B can only come from that bank.

The information already disclosed to Plaintiffs mitigates in favor of using the Hague Convention to obtain any further information from Clearstream. *See, e.g.*, *Trade Dev. Bank v. Cont'l Ins. Co.*, 469 F.2d 35, 40 (2d Cir. 1972) (affirming finding that there was "neither compelling necessity for this information nor potential prejudice to defendant from nondisclosure . . . since the transcripts of the customers' accounts and the other records giving details as to the transactions about which the Insurer had inquired were adequate to enable it to prepare for trial") (internal quotations omitted); *Minpeco*, 116 F.R.D. at 527-28 (finding it persuasive that although information sought under the subpoena was potentially relevant to plaintiffs' case, plaintiffs had already obtained "a significant amount of discovery for use in their case against the remaining defendants").

### D. Clearstream Has Demonstrated Good Faith In Complying With Plaintiffs' Discovery Demands

It is beyond dispute that Clearstream has acted in good-faith and candidly, while at the same time complying with Luxembourg's banking secrecy laws. *See, e.g., Peninsula Asset Mgmt.*, 2005 WL 3046284, at *3 (holding that a non-party had demonstrated its good faith by producing some documents prior to being served with a subpoena, which it could not comply with under Korean law). As noted, Judge Koeltl recognized that good faith, describing the disclosure by Clearstream as "extraordinary." June 27 Hr'g Tr. at 75:24. Clearstream's disclosures — through the testimony of a witness subject to cross-examination — "certainly cuts against a finding" of bad faith. *Minpeco*, 116 F.R.D. at 528.

Moreover, this is not a situation in which the party resisting discovery under the Federal Rules has "relied on a sham law . . . to refuse disclosure." *Id.* Clearstream's refusal to comply with Plaintiffs' Subpoena is a result of legal inability, and not "willfulness, bad faith, or any other fault." *Id.* (internal quotation omitted). Indeed, there is absolutely nothing about Clearstream's conduct that would suggest that it has "courted legal impediments to production of [the requested documents and information]." *Societe Internationale*, 357 U.S. at 209. Rather, it is seeking to cooperate with this Court while complying with Luxembourg's governing laws.

Dated: December 23, 2008

Respectfully submitted,

WHITE & CASE LLP

By: _____
Francis A. Vasquez, Jr. (FV-1446)
Frank Panopoulos (FP-6975)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Tel: (202) 626-3600
Fax: (202) 639-9355

*Counsel for Clearstream Banking, S.A.*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of December 2008, I caused to be served Clearstream Banking, S.A.'S Response To Plaintiffs' Supplemental Memorandum Regarding Discovery upon the following parties, by e-mail and federal express next-day delivery:

Liviu Vogel, Esq.
Salon Marrow Dyckman Newman & Broudy LLP
292 Madison Avenue,
New York, New York 10017

*Counsel for Plaintiffs*

Sharon L. Schneier, Esq.
Davis Wright Tremaine LLP
1633 Broadway, 27th Floor
New York, New York 10019-6708

*Counsel for Citibank, N.A.*


_____
Willie Lin