UNITED STATES DISCTRIC COURT
SOUTHERN DISTRICT OF NEW YORK

---

DEBORAH D. PETERSON
Personal Representative of the Estate of James C. Knipple (Dec.), et al.,

                                Plaintiffs,

v.

ISLAMIC REPUBLIC OF IRAN, et al.,

                                Defendants.

---

Case No. 18 Misc. 302 (BSJ)

FILED UNDER SEAL SUBJECT TO PROTECTIVE ORDER

## PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO CLEARSTREAM S.A.'S SUPPLEMENTAL BRIEF

# 137420.1

Contrary to Clearstream's argument in its brief dated December 12, 2008 the facts in, Nastro v. D'Onofrio, 263 F. Supp. 2d 446 (D.C. Conn. 2003) are very similar to those of the instant case, making its holding applicable and persuasive. Clearstream tries to distinguish Nastro, claiming that the Court had personal jurisdiction over the transferee, whereas this Court does not have personal jurisdiction over the transferee. However, the Nastro court specifically acknowledged that it did not have personal jurisdiction over the trustee to whom D'Onofrio (the judgment debtor) had transferred his stock certificates in the Connecticut corporations. Because it lacked such jurisdiction, (and quasi-in rem in jurisdiction over the stock certificates located outside the U.S.) the Court fashioned a preliminary equitable remedy. Pending final judgment, the Court compelled the Connecticut corporations, over whom it had personal jurisdiction, to refuse to accept, register on in any way acknowledge a transfer of ownership in the stock certificates held by the trustee. The Court reasoned that the "UFTA gives the court broad authority to remedy fraud. <u>The court has the ability to alter ownership of the stock through the corporation itself</u>, and no provision of the UCC expressly repeals or supersedes the ability of the court to effect this transfer pursuant to UFTA." [Emphasis added]. 263 F. Supp. 2d at 455. Similarly, pursuant to New York Debtor and Creditor Law Section 278, this Court has the ability to have the conveyance set aside by compelling Clearstream to extinguish the book entries on ▮▮▮ account ▮▮▮ and restore the book entries on ▮▮▮ account ▮▮▮. Indeed, Clearstream is an important component in setting aside the conveyances since it maintains the accounts of both ▮▮▮ and ▮▮▮ whose book entries should be modified to set aside the fraudulent conveyances. While this Court apparently has no personal jurisdiction over ▮▮▮[1], the transferee of the securities at issue, the Court has personal jurisdiction over

---

[1] Plaintiffs have been unable to secure discovery on this and, other issues from Clearstream, who has thus far refused to comply with Plaintiff's discovery requests.

Clearstream (as well as quasi-in rein jurisdiction over the global bond certificates held by DTC in New York). Clearstream has offices located in Manhattan at 350 Madison Avenue and at least one omnibus account with Citibank in New York (June 27, 2008 hearing transcript, p.9, lines 16-22).

Clearstream also tries to distinguish <u>Nastro</u> on the ground that it involved certificated securities which are capable of being transferred, whereas the instant case involves security entitlements that are not capable of being conveyed or transferred. While this is clever, it clearly tries to exalt form over substance leading to absurd results. Clearstream itself recognizes that the securities at issue in its pending motion were "transferred" as ▮▮▮ from ▮▮▮ ▮▮▮ account to ▮▮▮ account. (e.g., June 27, 2008 hearing transcript, p.24, line 18 - p.25, line 6; p.44, line 20 - p.46, line 3; and p.56, line 17 - p.57, line 1). Were the Court to adopt Clearstream's form over substance argument, it would send a signal to all debtors that they may avoid paying judgments and other debts with impunity by investing all their assets in securities entitlements and then "transferring" them without consideration to a friendly third party.

Clearstream's argument ignores the plain statement of the Court in <u>Nastro</u> as follows:

> Although the UCC governs the rights of creditors vis-a-vis certificate holders in the usual case, it does not provide an exclusive list of all remedies available to defrauded parties:
>
> "Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."
>
> Conn. Gen. Stat. § 42a-1-103; see generally Peter A. Alces, The Law of Fraudulent Transactions, § 5:20 at 5-25 (West 2002) ("So far as fraudulent disposition law is concerned, the UCC is not preemptive; fraudulent disposition law supplements the UCC."). Therefore, the fact that the UCC mandates that a court take action

# 137420.1                                    3

> against stock certificates only within its jurisdiction, whether in the hands of the debtor, his representative, or the issuer, does not hamper the court's ability to issue new certificates as equitable relief from the perpetration of a fraud.
>
> Because the certificates evidence ownership of Connecticut corporations, which have been named as defendants to this action, the court could order the corporations to delete the trustee as the owner of the stock in the corporate ledger and issue new certificates in favor of D'Onofrio.

263 F. Supp. 2d at 454-455.

Moreover, courts have viewed the transfer of book-entry securities entitlements as a "transfer" subject to a fraudulent conveyance analysis. For example, the Court in Fidelity Partners, Inc. v. First Trust Company of New York, 58 F. Supp. 2d 55, 60 (S.D.N.Y. 1999), construing the sale of Philguarantees's participation interest in Philippine Reduction Interest Bonds, noted that, "[a] sale may be disregarded as a fraudulent conveyance if the sale was not for fair consideration . . ." In concluding that fair consideration had been paid and no fraudulent conveyance had occurred, the Court's analysis shows that the debtor's security entitlement interest in the bond was or "transfer" of "conveyance" subject to fraudulent conveyance law. Adler, Coleman Clearing Corp. v. Ensminger, 247 B.R. 51 (S.D.N.Y. Bkcy. Ct. 1999), is another example where the Court construed conveyances of book-entry securities (247 B.R. at 83) to determine whether they were avoidable fraudulent conveyances. The Court in that case concluded that the conveyances were fraudulent transfers avoidable under both the Bankruptcy Code and New York Debtor and Creditor Law sections 273 and 274 (247 B.R. at 116).

Clearstream also appears to argue that Luxembourg Law governs "whether an adverse claim can be asserted against a person who acquires a security entitlement from the securities intermediary or a person who purchases a securities entitlement or interest therein from an entitlement holder." U.C.C. §8-110(b)(4). Firstly, Clearstream's argument ignores the holding

# 137420.1                                              4

in Nastro, supra, which concludes that the U.C.C. does not pre-empt fraudulent conveyance law. Secondly, the transfer of securities by ▮▮▮ to ▮▮▮ without consideration with intent to defraud creditors is neither an acquisition from the securities intermediary nor a purchase from an entitlement holder, and thus U.C.C. §8-110(b)(4) does not apply. Lastly, we are not told what Luxembourg Law would govern and what effect, if any, such law would have on the need to continue the status quo pending the commencement of a proceeding for turnover and/or to set aside or disregard the conveyance under N.Y. Debtor and Creditor Law §278; making it difficult to understand or respond to this part of Clearstream's argument.

    Clearstream also argues that it cannot be named party in a turnover proceeding under CPLR 5225 because it is neither in possession of property in which the judgment debtor has an interest or a transferee of property from the judgment debtor. However, if one disregards the fraudulent conveyance as permitted by Debtor and Creditor Law §278, then the securities are still owned by ▮▮▮, and Clearstream is in possession of property in which the judgment debtor has an interest. Moreover, CPLR 5225 (c) provides that the court may order any person to execute and deliver any document necessary to effect payment or delivery, thereby requiring that any such person be a named party to a proceeding under CPLR 5225. Clearstream clearly is an appropriate party to a fraudulent conveyance action, whether it be brought pursuant to CPLR 5225 or a plenary action.

Dated: December 23, 200

Respectfully submitted,

Salon Marrow Dyckman Newman & Broudy LLP
Attorneys for Plaintiffs

By: _____
Liviu Vogel (LV-7552)
292 Madison Avenue
New York, NY 10017
(212) 661-7100

# 137420.1

## CERTIFICATE OF SERVICE

On December 23, 2008, I caused to be served a copy of the **Plaintiff's Memorandum of Law in Response to Clearstream S.A.'s Supplemental Brief** via e-mail and via Federal Express overnight delivery addressed to the last known address of the addressees as indicated below:

Via e-mail: fpanopoulos@washdc.whitecase.com
Frank Panopoulos, Esq.
White & Case LLP
701 13th Street, N.W.
Washington, D.C. 20005

_____
LIVIU VOGEL

135545.1