1av1petc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   DEBORAH D. PETERSON, Personal
    Representative of the Estate
4   of James C. Knipple (Dec.), et
    al.,
5
                    Plaintiffs,
6
            v.                              10-CV-4518 (BSJ)(GWG)
7
    ISLAMIC REPUBLIC OF IRAN, et
8   al.,

9                   Defendants.             Conference

10  ------------------------------x
                                            New York, N.Y.
11                                          October 31, 2011
                                            11:42 a.m.
12
    Before:
13
                    HON. GABRIEL W. GORENSTEIN,
14
                                            Magistrate Judge
15
                            APPEARANCES
16
    SALON MARROW DYCKMAN NEWMAN & BROUDY LLP
17       Attorneys for Peterson Plaintiffs
    BY:  LIVIU VOGEL, ESQ.
18
    STONE BONNER & ROCCO LLP
19       Attorneys for Peterson Plaintiffs
    BY:  JAMES P. BONNER, ESQ.
20
    PERLES LAW FIRM, PC
21       Attorneys for Peterson Plaintiffs
    BY:  STEVEN R. PERLES, ESQ.
22       EDWARD McALLISTER, ESQ.

23  PATTON BOGGS LLP
         Attorneys for Defendant Banca UBAE S.p.A.
24  BY:  UGO COLELLA, ESQ.
         JOHN J. ZEFUTIE, JR., ESQ.

25

1av1petc

```
 1                            APPEARANCES
                             (Continued)
 2
    CHAFFETZ LINDSEY LLP
 3       Attorneys for Defendant Bank Markazi
    BY:  DAVID M. LINDSEY, ESQ.
 4       JAMES M. HOSKING, ESQ.
         ANDREAS FRISCHKNECHT, ESQ.
 5
    WHITE & CASE LLP
 6       Attorneys for Defendant  Clearstream Banking, S.A.
    BY:  FRANK PANOPOULOS, ESQ.
 7       NICOLE E. ERB, ESQ.
         DWIGHT A. HEALY, ESQ.
 8
    DAVIS WRIGHT TREMAINE LLP
 9       Attorneys for Defendant Citibank, N.A.
    BY:  SHARON L. SCHNEIER, ESQ.
10
    FLEISCHMAN LAW FIRM
11       Attorneys for Defendants Valore, Spencer, Bonk, Arnold
    BY:  KEITH M. FLEISCHMAN, ESQ.
12       JUNE PARK, ESQ.
13  STROOCK & STROOCK & LAVAN LLP
         Attorneys for Greenbaum & Acosta Judgment Creditors
14  BY:  CURTIS C. MECHLING, ESQ.
         BEN WEATHERS-LOWIN, ESQ.
15
    DLA PIPER LLP
16       Attorneys for Heiser Third-Party/Cross Defendants
    BY:  RICHARD M. KREMEN, ESQ.
17       BARBARA L. SENIAWSKI, ESQ.
18  FAY KAPLAN LAW, P.A.
         Attorneys for Defendants Owens, Khiliki, Muila
19  BY:  ANNIE P. KAPLAN, ESQ.
         THOMAS FORTUNE FAY, ESQ.
20
    HEIDEMAN NUDELMAN & KALIK, P.C.
21       Attorneys for Plaintiffs
    BY:  NOEL J. NUDELMAN, ESQ. (Present Via Telephone)
22
    JESSICA RANKIN, ESQ.
23       Attorney for Plaintiffs (Present Via Telephone)
24  ALSO PRESENT:  DAVID JONES, AUSA
                   Civil Division, US Attorney's Office
25
```

1av1petc

```
 1          (In open court)

 2          (Case called)

 3          (Appearances noted)

 4          THE COURT:  I guess I wanted to begin with a

 5   relatively minor procedural issue, which has to do with the

 6   confidentiality order, filings and what's public and what's

 7   not.  I gather that the name of the Iranian bank and the

 8   Italian bank have been redacted from everything on the theory

 9   that that's subject to the District of Columbia confidentiality

10   order.  But this is a public courtroom.  We now have a notice

11   of appearance on behalf of two banks.  Is there some reason we

12   can't modify whatever's in place to allow the Italian and the

13   Iranian bank's names to not be confidential?  They've made

14   motions.  They're here.  Anyone see a problem with that?

15          Since the two of you are here, I'm addressing you.

16          MR. LINDSEY:  Your Honor, David Lindsey from Bank

17   Markazi.  The reason my client's name has been confidential up

18   to now is because that -- the identity of my client came known

19   due to the information from the Treasury Department, and it was

20   the Treasury Department who asked Judge Lambert to enter the

21   order that was entered, so we ourselves did not ask to be

22   confidential, our name, but the Treasury Department asked for

23   such, and so I would think we would need perhaps to ask OFAC

24   before releasing or changing the terms of the confidentiality

25   order.
```

1av1petc

1          THE COURT:  Did they suggest that for your benefit or

2     for the United States' benefit?

3          MR. LINDSEY:  It's the statute, your Honor, providing

4     for Treasury and Justice to assist judgment creditors -- in

5     this situation to assist them in locating assets of the foreign

6     sovereign, provides that OFAC or the Treasury may ask that the

7     information given to those judgment creditors be kept

8     confidential and that the courts shall enter a -- an order as

9     such, and that was that statute that they were following.

10         THE COURT:  But surely, they would only do that for

11    the benefit of the privacy of the persons with assets; right?

12         MR. LINDSEY:  I'm not quite sure why OFAC wants all of

13    that confidential, frankly, sir, other than they do not want

14    that information -- how they go about finding information, I

15    suppose, and information they deem to be confidential, but I --

16    I wasn't part of that thinking.

17         THE COURT:  Let's hear from someone from the US

18    Attorney's Office.  Someone just stood up in the back.  Perhaps

19    you can note your appearance.  Actually, we don't need a

20    microphone.  Just stand there.

21         MR. JONES:  Thank you, your Honor.  David Jones.

22         THE COURT:  You don't need the microphone.

23         MR. JONES:  David Jones with the Civil Division of the

24    US Attorney's Office, and I actually am asking not to note an

25    appearance because appearing requires the blessing of the

1av1petc

1    Assistant Attorney General, which I don't have, so I'm here in

2    an observing capacity, and I can't speak to the representations

3    that were just made.  I'm also further hindered by the fact

4    that the main assistant responsible for this and has been

5    monitoring it is covering a family medical emergency, so I am a

6    backup person with no authorization --

7              THE COURT:  A backup person, with no authorization,

8    and no appearance.

9              MR. JONES:  Yes.  Though I'm happy to have my

10   nonappearance noted.  And I'll say in general, we're in touch

11   with OFAC, we're monitoring the case, Judge Jones earlier

12   entered an order specifically directing that pleadings be sent

13   to us to facilitate that, and so --

14             THE COURT:  Could you send me a letter with OFAC's

15   position or somebody on this topic, perhaps?

16             MR. JONES:  On the topic of confidentiality, your

17   Honor?

18             THE COURT:  Just with the names of the two banks,

19   because I think it's going to make filings all that more

20   complicated.

21             MR. JONES:  Yeah, I understand, your Honor.  Let me --

22   I'll seek the appropriate blessings to do so and just -- the

23   request specifically is just to see if we have any objection to

24   publicly --

25             THE COURT:  The names of these two banks being

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

1av1petc

1     unsealed.

2              MR. JONES:  Okay.

3              THE COURT:  Not account numbers, not anything else.

4              MR. JONES:  Yes.  I can relay that and promptly notify

5     the court what the reaction is.  I'm sorry for the headache,

6     your Honor.  I am -- I know it gets cumbersome.

7              THE COURT:  It's okay.  To my mind the cat's out of

8     the bag.  This is a public courtroom.  I've not sealed it.  I

9     don't know who's here, but whoever's here now knows the

10    information and could put it up in the internet.  So whether

11    that should or shouldn't have happened, I don't know, but it's

12    hard to see what the interest is at this point.  All right.

13             MR. JONES:  Your Honor, one thing that just may help

14    people understand why I'm here and the nature of the

15    government's interest, ordinarily, as a theoretical matter,

16    these types of proceedings shouldn't require government

17    participation or appearance, as I understand it, but it's

18    navigating awfully closely to matters of concern, including the

19    operation of the economics sanction regime and for that reason

20    we monitor and then ultimately would determine if there's

21    anything that requires us to come in.  But otherwise we have a

22    passive role.

23             THE COURT:  Okay.  Thank you.

24             MR. JONES:  Thank you.

25             MR. LINDSEY:  Your Honor?

1av1petc

1          THE COURT:  Hold on.  Thank you, Mr. Jones.  Before

2     you spoke, I think you were going to say something?

3          MR. VOGEL:  Yes, your Honor.  Liviu Vogel, the

4     attorney for the Peterson plaintiffs.  I just want to correct

5     one thing Mr. Lindsey said.  The identity of Banca UBAE and

6     Markazi were not disclosed in the original response from OFAC

7     that was made subject to protective order.  That information

8     became known to us when Clearstream made a motion before the

9     court back in June of 2008 to release $250 million worth of

10     bonds because they claimed that they had -- that the former

11     owner of then Bank Markazi had already transferred them to

12     third parties and they were no longer in the possession and

13     control of Clearstream.  And so therefore, it was not OFAC who

14     asked for confidentiality with respect to the identity of the

15     two banks.  In OFAC's disclosure that was given to us on

16     June 11th, 2008, they identified these entities as anonymous

17     entities, and they do not give the name of them or their

18     identities.

19          MR. LINDSEY:  Your Honor, if I may?

20          THE COURT:  Yes.

21          MR. LINDSEY:  Actually, OFAC did provide that

22     information in a second submission.

23          MR. VOGEL:  Correct.

24          MR. LINDSEY:  It wasn't in the first one but it was in

25     the second one.

1av1petc

1        Your Honor, if I may point out one thing, I know this

2   is a headache, but technically folks shouldn't be in the room

3   unless they've signed the confidentiality agreement.  And I

4   just state that.  I understand your frustration.

5        THE COURT:  Well, it's not frustration.  I mean, I

6   don't know -- I mean, I set a public proceeding, which is all I

7   intend to have in this case.  I'll see what else I can do.  I

8   guess there could be a motion to seal the courtroom.  You folks

9   entered, as I totally understand it, a notice of appearance,

10  but prior to your doing that, I never said anything about the

11  courtroom being sealed.

12       MR. LINDSEY:  I understand, your Honor.  I just wanted

13  to --

14       THE COURT:  So I think the cat is out of the bag, not

15  because of anything that the court did.

16       MR. COLELLA:  Your Honor, if I may be heard briefly.

17       THE COURT:  Yes.

18       MR. COLELLA:  I'm sure you're aware there's a pending

19  motion before Judge Jones on this very issue, and it hasn't

20  been decided.

21       THE COURT:  On solely the names of these two entities?

22       MR. COLELLA:  Well, it deals with the -- disclosing

23  the contents of the Italian proceedings.

24       THE COURT:  That's not what I'm talking about.  I'm

25  just talking about the names of these two banks; that's all.

1av1petc

1          Okay.  Well, we're going to proceed, as I said, in an

2     open courtroom.  If someone thinks they have to say something

3     beyond the names of those two banks that's confidential, then

4     they're going to have to either not say it -- I can't imagine

5     I'm going to seal the courtroom at this point.  I don't know

6     what the procedure's going to be, but the courtroom is not

7     sealed.

8          Okay.  Let's try to move along to the merits of why

9     we're here today.  I think I need to have a little more

10    understanding about what's going on in this case in order to

11    resolve what seems to be the main dispute between the parties

12    having to do with where we go from here, and I guess I think I

13    would want actually to start with the first letter I got.  That

14    was from the White & Case people.

15         Let me try giving my sense of what's going on and then

16    I'll let the main parties correct me.

17         We had the restraint and then the motion to vacate the

18    restraint, which I gather was done in a number of filings.

19    That was in 2008.  Then in 2010 there was a complaint by the

20    plaintiffs for a turnover proceeding in which Clearstream,

21    Citibank, and Bank Markazi and Banca UBAE and Iran were named

22    in the amended complaint.  Bank Markazi and UBAE have moved to

23    dismiss those turnover proceedings, and then we have an

24    interpleader action by Citibank, which has now named other

25    interpleader defendants I guess who are aligned with

1av1petc

1     plaintiffs.

2              My first question is:  I know that there is a

3     jurisdictional argument that was made in the motion to vacate

4     the restraint, though I've not seen any of the briefing on it.

5     And my question is:  The jurisdictional argument has to do with

6     whether, at least in part, whether Clearstream is a securities

7     intermediary in which the judgment debtor's account is

8     maintained.  My question, first for Clearstream people, not for

9     anyone else:  Is it your view that if you were successful on

10    that, all the rest of this goes away or only some of it?

11             MR. PANOPOULOS:  Good morning, your Honor.  Frank

12    Panopoulos.

13             We need to parse that out.  There's a jurisdictional

14    motion where we challenge personal jurisdiction over

15    Clearstream in New York, but that is not necessary to decide

16    the motions to vacate the restraints, essentially because under

17    New York law, any party who has an interest in the restraints

18    can appear to challenge the restraints and to turn over all the

19    restraints, and they don't waive personal jurisdiction

20    arguments.

21             The UCC argument that Clearstream has made and the --

22    and the situs argument that plaintiffs make, if they're decided

23    in Clearstream's favor, the restraints and the turnover goes

24    away.  But -- and our motions assume, for the purpose of the

25    situs argument, that even if we were found to be in New York,

1av1petc

```
 1    the situs of the -- of the intangible assets that are at issue
 2    are not here but in Luxembourg.
 3          THE COURT:  Okay.  So -- hold on.  If you prevailed on
 4    that argument, there's obviously no turnover proceeding and
 5    therefore, there's no motion to dismiss.  The other banks do
 6    not need to move to dismiss the turnover proceeding.  But the
 7    interpleader action was not filed by you; it was filed by
 8    Citibank?
 9          MR. PANOPOULOS:  It was filed by Citibank, and the
10    reason, if I may -- I mean, Citibank can join, but -- in a
11    nutshell, there's a lot of judgment creditors that have
12    judgments against Iran and they're filing turnover actions and,
13    you know, restraints against Clearstream, against Citibank, and
14    rather than have all these different actions where you have a,
15    you know, a duplication of the same factual and legal issues
16    that are at issue here, you know, we thought it would be better
17    to bring everybody to one party, and that's basically what the
18    interpleader did.
19          THE COURT:  So the interpleader is against anyone that
20    you could think of that had a judgment against Iran, only
21    people who got a judgment in the marine barracks case?  Or
22    Citibank was --
23          MR. PANOPOULOS:  No, these are -- I'll let Citibank
24    discuss it, but the judgment creditors are not just with
25    respect to the 1983 bombing of the marine barracks in Beirut.
```

1av1petc

1    There are also other judgment creditors of Iran from other

2    bombings.  But I'll let Citibank answer your question as to who

3    was interpleaded.

4          THE COURT:  Okay.  And while you're answering my

5    question, I guess, I kind of wonder how it came about that this

6    happened, because normally, if I have a piece of property

7    belonging to a judgment debtor and someone comes up to me and

8    says, "You know what, here's my judgment, give me that piece of

9    property," I'm under no obligation to figure out if there are

10   other judgment creditors out there.  I'm completely held

11   harmless by just obeying the procedures with respect to that

12   one judgment creditor.  I don't have to go around filing

13   interpleader actions every time that happens.  So if you can

14   also answer the question of why that happened here.

15         MS. SCHNEIER:  Okay.  Your Honor, this goes back to

16   Judge Jones' June 27th order and she directed Citibank to

17   basically bring in anyone who had served Citibank or

18   Clearstream some legal document advising that it claimed a

19   legal interest in the property; in other words, not just

20   someone who had a judgment but who served us a writ of

21   execution or, you know, assortment of other documents.  So

22   you're right; there could be other judgment creditors against

23   Iran, but they have not put us on notice that they are claiming

24   an interest in these specific assets, and in fact, when the

25   case was just at the miscellaneous stage, some of these

1av1petc

1    judgment creditors who had been brought in had actually sought

2    to intervene in that miscellaneous action.  So Judge Jones is

3    also aware that there were other judgment creditors who had an

4    interest in this case and just maybe -- you can cut me off if

5    this is too much information, but Judge Jones tried to make

6    sure that all of the judgment creditors who had an interest in

7    these specific assets of Iran as opposed to other, what's

8    called blocked assets of Iran were before her, and there are

9    other proceedings involving other assets actually before Judge

10   Patterson, but this set is before her and she wanted all of

11   these parties brought in and that's what we did, in terms that

12   we were notified by a writ of execution, *lis pendens* or some

13   other legal piece of paper that they had an interest.

14         THE COURT:  Okay.  So now my original question, which

15   is:  If Clearstream is successful on its UCC argument, where

16   does that leave your interest here?

17         MS. SCHNEIER:  Well, we're -- well, if the court finds

18   that Clearstream is successful, then Citibank is, you know,

19   further up the chain and the same UCC arguments apply to us

20   because we have, you know, absolutely, you know, no

21   relationship with any of these other parties and, you know,

22   assuming that's what the court finds, there would be, I assume,

23   a discharge of, you know, Citibank for complying with the

24   court's order.

25         THE COURT:  Okay.  That's what I thought.

1av1petc

1          Let me hear from plaintiffs on this point.

2          MR. VOGEL:  Thank you, your Honor.  The UCC basis for

3    naming Clearstream as the garnishee is not the -- is not the

4    only basis for naming a particular party garnishee here, so if

5    they're successful on that issue, it only knocks out one

6    argument.  There are at least three other arguments that make

7    Citibank a proper garnishee, so if Clearstream wasn't even in

8    this case, we'd still have a proper claim against Citibank.

9    They are raised in the various motion papers that have been

10   filed, and that includes TRIA, it includes --

11          THE COURT:  TRIA?

12          MR. VOGEL:  Yes.  The Foreign Sovereign Immunities Act

13   Section 1610(f)(1)(A) and it also includes a creditor's bill

14   cause of action which we asserted in our amended turnover

15   complaint.

16          THE COURT:  What's TRIA?

17          MR. VOGEL:  TRIA is a footnote to 1610.  It's the

18   Terrorist Risk Insurance Act.  And it basically says that any

19   asset that is a blocked asset, it can be used to satisfy a

20   judgment such as those that are held by the judgment creditors

21   here for terrorist acts, and the way that an interest in

22   property is defined under the TRIA cases and TRIA regulations

23   is a much more loose definition, a much more broad definition

24   than the UCC analysis under a securities intermediary and

25   securities entitlement, and so therefore I would argue that the

1av1petc

1    TRIA or 1610(f)(1)(A), which would use the same broad analysis

2    of -- and definition of what a property interest is, as well as

3    a creditor's bill, would use such a broad interpretation that

4    Citibank would still be a proper garnishee and the motion, if

5    successful under the UCC, would not be dispositive.

6              THE COURT:  Okay.  I assume you disagree with that?

7              MS. SCHNEIER:  I do.  I mean, I think the TRIA

8    argument is also addressed in the papers on the motions to

9    vacate the restraint.  The -- I don't know if you want to

10   hear --

11             THE COURT:  I don't want the merits.

12             MS. SCHNEIER:  -- the merits of it, but some of this

13   is a little bit different to me, but I think most of these

14   issues are addressed in the papers.  I think it's all sort of

15   wrapped up together.  The creditor's bill argument is something

16   I don't think I've ever heard Mr. Vogel quite articulate, but I

17   know the TRIA and the FSIA arguments are addressed in those --

18   in those papers.  The motion to vacate the restraints sort of

19   touched on a lot of issues in the case.

20             THE COURT:  Okay.

21             MR. PANOPOULOS:  Your Honor?

22             THE COURT:  Yes.

23             MR. PANOPOULOS:  If it helps, the -- after July 2010,

24   when Judge Jones ordered further briefing on the UCC issues and

25   the other issues raised by the plaintiffs and the defense --

1av1petc

1   and Clearstream, there were five sets of briefs, three by

2   Clearstream, two by Mr. Vogel on behalf of the Peterson

3   plaintiffs, that crystallized the issues for the court, and in

4   that briefing we addressed the TRIA argument, and that's where

5   it could be found.

6        THE COURT:  Right.  Well, at this point I wasn't

7   asking where it is.  What I'm trying to do is determine what

8   some of the threshold issues are, determine what, if any,

9   discovery goes to those threshold issues, and then determine

10  what threshold issues are and what discovery goes with that,

11  because the big dispute today, I mean, is discovery.

12       MR. PANOPOULOS:  Right, I'm prepared to address that,

13  and –– I'm prepared to address that.  It will take me maybe ten

14  minutes to walk the court through that, to discuss the

15  threshold issues.

16       THE COURT:  Okay.  Well, why don't we start with you

17  doing that and we'll let everyone respond and see where we are.

18       MR. PANOPOULOS:  So the issues that the court has to

19  decide on the motion that was referred to the court, the motion

20  to vacate, are legal issues.  The first legal issue is ––

21       THE COURT:  They don't happen to be the same four

22  issues as Mr. Vogel's, do they?

23       MR. PANOPOULOS:  No, they're not.

24       THE COURT:  Okay.  Go ahead.

25       MR. PANOPOULOS:  I mean, the first legal issue, to put

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

1av1petc

1    it succinctly, is whether the kind of intangible property

2    interests that can be restrained under New York law, right, is

3    coextensive with the property interest created by the UCC under

4    Article VIII, which governs security entitlements.

5              THE COURT:  And that's for purposes of your UCC

6    argument.

7              MR. PANOPOULOS:  Of the UCC argument.  And, you know,

8    I can walk the court through the outline of the UCC argument

9    or -- I can, or not.  But --

10             THE COURT:  I think not, because again, my --

11             MR. PANOPOULOS:  Yes, I understand.  But that's a

12   legal issue.

13             The second issue is the situs -- what the plaintiffs

14   call the situs argument, and the issue there, again, is a legal

15   argument, and it's whether Bank Markazi's intangible property

16   interest, which is the security entitlement, whether it's sited

17   in Luxembourg or in New York.  And there are -- there are

18   sublegal issues under that, including whether the UCC supplants

19   the common law situs rules, right, and by the way, you know,

20   all the references to the UCC and all the arguments are in this

21   last set of five briefs that were submitted in the case.

22             Another subargument under that is, you know, under the

23   New York law, the situs of intangible properties is the

24   location of where the intangible right is to be performed, the

25   terms and conditions agreement which governs the account at

1av1petc

1    issue and governs the securities, the rights and duties to the

2    securities entitlement, it's governed by Luxembourg law, so in

3    any event, we argue that Luxembourg is the situs.  Plaintiffs

4    argue that nonetheless, the situs of the intangible right is

5    here because Clearstream can be found here.  And that's the

6    *Harris v. Balk* argument.  As I said before, even if we assume

7    that Clearstream is found in New York -- and we don't concede

8    that and there is a motion where we challenge personal

9    jurisdiction, but you don't need to decide it for purposes of

10   deciding this situs argument, which is plaintiff's alternative

11   argument to the UCC argument -- even there, under *Harris*, under

12   the rule of *Harris v. Balk* and the progeny -- and its progeny,

13   the intangible property right of Markazi is -- still doesn't

14   travel with Clearstream.  It's not in New York, even if we're

15   found to be here.

16        So now with respect to discovery on those legal

17   issues, right, which is what plaintiffs basically raise --

18   their letter raises three "fact-intensive issues," all right?

19   And, you know, the first one is that the knowledge of the

20   beneficial ownership, they say they need discovery on the

21   knowledge of beneficial ownership.  There's -- that issue,

22   the -- who the beneficial owner is, is not relevant to

23   Clearstream's motions.  It's not relevant to Clearstream's

24   motions because our motion papers assume that Bank Markazi is

25   the beneficial owner.  What happened was, that in -- we put in

1av1petc

1    our first set of motions basically arguing that Clearstream and

2    Citibank are not the proper garnishees, and Judge Jones issued

3    an order in June of -- on June 23rd, 2009, saying she agreed

4    that with respect to the securities entitlements that are in

5    UBAE's account, Clearstream is not the proper garnishee.  Now I

6    won't go into the details, but the long and short of it is that

7    but she considered whether the fraudulent conveyance argument

8    changed the analysis, and so there was -- and that was what the

9    further briefing was about.  The fraudulent conveyance analysis

10   doesn't change the analysis under the UCC or the situs

11   argument, and for purposes of the argument, we've assumed in

12   our papers that there was a fraudulent conveyance, the

13   conveyances were transferred back to Bank Markazi's accounts,

14   and that Bank Markazi is the beneficial owner.  Assuming that,

15   so there's no need for any discovery on beneficial ownership.

16   And with respect to the fact of who the beneficial owner is, we

17   have OFAC saying so in responses to a subpoena, a supplemental

18   subpoena issued by plaintiffs in April of 2010, and Bank

19   Markazi also has submitted papers saying that they're the

20   beneficial owner.  So we don't see why there's any need on

21   discovery for beneficial ownership.

22           The next fact-intensive discovery that plaintiffs are

23   asking for is the assets are located in Luxembourg, where UBAE

24   opened the account.  This is a legal issue under the UCC;

25   right?  Under the UCC -- and, you know, I won't cite to the

1av1petc

1    provisions, right -- a security entitlement is acquired by a

2    customer when their account is credited with a position in the

3    securities.  All of this is in Luxembourg.  When Clearstream

4    appeared on June 27th, 2008, before Judge Koeltl to move to

5    quash the -- to lift the restraints, we submitted and produced

6    documents and testimony discussing the accounts, the opening of

7    the accounts, the transfers at issue, and -- and the transfers

8    at issue, and documenting the transfers at issue.  These

9    documents were then, you know, used by plaintiffs to go get

10   discovery, they were used by plaintiffs in their -- in their

11   motion papers, and most if not all of them are attached one way

12   or the other to the motion papers.  So those documents

13   establish that the accounts, the UBAE accounts and the Bank

14   Markazi accounts are opened in Luxembourg, and as far as we're

15   concerned, that's an established fact, and I'm not even sure

16   it's disputed.  What is disputed by plaintiffs is that the

17   situs is not in Luxembourg but is in New York.  But that's a

18   legal issue, not a intensive factual issue.

19        And then the third fact, you know, discovery

20   fact-intensive issue they ask for, about or for, is that no

21   activities relative to the assets occurred in New York, and

22   what this means is that if you read their motion papers, in

23   order to try and show that there's a nexus in New York with

24   respect to Bank Markazi's, you know, property right, you have

25   to look to the activities of the bond issuer, you have to look

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

1av1petc

1    to the activities of the banks who pay out the bond, you have

2    to look at the activities of everybody except Clearstream and

3    Bank Markazi, and what they do is they -- they accumulate all

4    of -- all of this activity surrounding the bonds or the, you

5    know, or the -- surrounding the bonds under the securities at

6    issue and they say because of all of this activity, there's a

7    nexus in New York for which we can claim that there's a situs

8    to the intangible property right, and, you know, our argument

9    is, as a matter of law you're wrong, because even if you assume

10   all this activity, it's irrelevant to whether or not Bank

11   Markazi's right travels with Clearstream, under your -- under

12   your situs argument.

13            And just to -- and just to finish -- because I'm done

14   for now, I guess -- is that what's at issue here are 20 -- are

15   the entitlements in 20 securities.  Basically what happens is

16   that there's an issuer who issues a billion-dollar bond and

17   different investors take positions in these bonds.  Some take

18   10 million, some take a hundred million, some take 50 million.

19   Bank Markazi had positions in these 20 bonds.  Some of the

20   positions were 50 million, some were a hundred million, some

21   were 200 million.  And so the bonds are not issued in paper so

22   that, you know, Bank Markazi holds a piece of paper that says

23   you have, you know, 50 million positions, a position of

24   $50 million in this bond.  It's all done electronically or what

25   they call dematerialized, which means that the issuer issues a

1av1petc

1    bond that resides with the deposit -- depository trust in New

2    York and everything after that is done electronically on book

3    record.  And so when I talk about bonds, I'm talking about the

4    bonds that have been issued and the bonds in which the security

5    entitlements have positions in.

6            THE COURT:  Okay.  So if I can sum up, on the issue of

7    knowledge of beneficial ownership, Mr. Panopoulos, and the

8    activities relevant to the assets occurring in New York, it

9    seems like you're willing to assume the plaintiff's allegations

10   on that front, that you had knowledge and that all the

11   activities they claim that are going on in New York, that those

12   actually happened; you just think that they're not legally

13   relevant.  Sticking to your second argument.

14           MR. PANOPOULOS:  Yes.

15           THE COURT:  Okay.  It was less clear to me on the

16   assets in Luxembourg argument.  I think what you were saying is

17   at this point no one really wants discovery or reasonably

18   expects discovery on the issue of where the accounts were

19   actually opened, the documents are sort of self-proving, and

20   that anything that flows from that is a legal issue.

21           MR. PANOPOULOS:  Except that the -- the issue of where

22   the account is opened is defined and governed by the UCC, so

23   you would start there.  So it's a legal issue.  The UCC points

24   you to the account agreement.  The account agreement is in

25   evidence.  It clearly says governed by Luxembourg law.

1av1petc

1          THE COURT:  No one is disputing the specificity of the

2   account agreement.

3          MR. PANOPOULOS:  No one is at all, your Honor.

4          THE COURT:  You think all you need for that argument

5   is the account agreement, the only factual thing.

6          MR. PANOPOULOS:  Yes.  And if there is anything else,

7   right, we think it's been -- it's there, and maybe they should

8   tell the court what they need specifically and we can address

9   the court.

10          THE COURT:  Okay.

11          MR. PANOPOULOS:  I'd also like to say, your Honor,

12   please, that we only agree or assume plaintiff's facts for the

13   purposes of this motion only.

14          THE COURT:  Okay.  So Mr. Vogel, I think you're up.

15   So now of course it's their motion, so if they say, you know,

16   we're making the following legal points and to do that, we only

17   need the following facts, you're certainly welcome to say,

18   well, that's not legally correct and that if you have those

19   facts, you're still not correct legally, that's fine, we should

20   have that debate, in the motion papers, but I guess the

21   question becomes, what is the nature of the factual discovery

22   that you're claiming you'll need to meet those legal arguments?

23   We've already essentially heard Mr. Panopoulos say that for

24   purposes of the briefing, he's willing to concede the points

25   that you say that you're seeking discovery on.  So if you can

1av1petc

1    address what's wrong with that argument, that will help.

2           MR. VOGEL:  Certainly, your Honor.

3           First of all, the list that Mr. Panopoulos used to

4    make his arguments is, as you can imagine, was used in our

5    letter to the court for illustrative purposes and is not at all

6    a complete list of what the factual issues are, because I could

7    have gone on for pages.  So starting with that premise as

8    false, through our motion papers that we've already submitted

9    on Clearstream's motion, we asked the court for discovery, and

10   we tell the court that because this is a fact-intensive issue

11   concerning the situs of the assets raised by Clearstream that

12   we need discovery on these issues.  But that in terms of

13   responding to the motion, we claim that there are enough facts

14   that have been disclosed to us already that the court should

15   determine without doubt that the court has personal

16   jurisdiction over Clearstream, and as a result, under the law

17   and the legal analysis, because it has that jurisdiction, this

18   is an intangible right, and under New York common law, the

19   situs of the intangible right is wherever the garnishee can be

20   found, and in this case we claim that Clearstream can be found

21   here in New York and therefore the court has the power to order

22   Clearstream to dispose of those assets as the court sees fit.

23          So in terms of -- let me start from the beginning.

24   Mr. Panopoulos says that the issue of situs and the UCC are two

25   alternative arguments.  They are not alternative arguments.

1av1petc

1    The UCC, according to Clearstream, defines the nature of the

2    property right.  However, there is clear caselaw on the fact

3    that the UCC does not -- does not address the situs of those

4    property rights.  That is left to common law, which is why we

5    had 18 briefs submitted, because it's not as simple an issue.

6    And the common law, among other things, as I said before,

7    states that if you have jurisdiction over the garnishee, then

8    you have the situs where the garnishee can be found.

9           Another argument is -- under New York law is that the

10   nature of the property right, intangible right requires

11   performance by various properties in order to get an economic

12   benefit.  So we did in our papers a fact analysis of why we

13   believed that many of those, if not most of those, critical

14   performances that are required by various parties to create an

15   economic value in the owner of that property right all occurred

16   near New York.  And because we've been deprived of discovery

17   from Clearstream as to instructions given to them to make these

18   transfers as to instruction -- instructions that they in turn

19   gave to Citibank here in New York and that Citibank in turn

20   gave to correspondent banks here in New York for the benefit of

21   the defendants to make, to transfer these funds out to them

22   when funds -- when these bonds matured and funds were paid, all

23   of that occurred here in New York.  The bonds themselves are

24   not actually --

25           THE COURT:  But they may say to me, "We'll accept all

1av1petc

1    that happened," I suspect.  I'll check in a second.  And then

2    they say to me, "Okay, all those things happened as you say in

3    New York.  That makes no difference legally."  And they may be

4    wrong, but it doesn't mean that we need to determine those

5    facts in order to decide their argument on the motion.

6         MR. VOGEL:  Well, that's not entirely true because

7    it's a fact-intensive analysis, and if you look at the cases

8    that are cited in all of our briefs, there are important

9    factors in each one, and we can't guess at what those facts are

10   and say, well, we believe that all of these things happened.  I

11   mean, they either are the facts or they're not, and we're not

12   going to know that if the facts are in their possession.

13        THE COURT:  But you could imagine the best possible

14   fact situation for you, and if they say it doesn't matter, then

15   we can at least resolve it on those grounds, if you're right.

16        MR. VOGEL:  I guess the best possible fact situation

17   is that the account was open here in Manhattan, that

18   representatives from Markazi came to Manhattan and met with

19   people from Citibank and from -- and from Clearstream and that

20   they had all kinds of communications with this forum in terms

21   of e-mails and all kinds of transactions, but I'd be lying to

22   the court if I made up facts.  I can't just make up facts from

23   whole cloth.  And the caselaw clearly indicates that it's an

24   intensive analysis.

25        For example, I'll just give you one case, where the

1av1petc

1    court found that the situs of the asset was I believe in

2    Argentina.  I think it was a Citibank case, in fact.  It was

3    Citibank's branch in Argentina.  And in that case the account

4    was opened by the Argentine government locally with Citibank in

5    Argentina, they came and met regularly with representatives of

6    that bank, they got investment advice at that bank.  So all of

7    these fact-intensive issues are relevant, and we can't possibly

8    know what those are or guess at what they would be without

9    doing discovery.

10          THE COURT:  Right.  No, but you can say in your brief

11   just what you said to me, that all these fact-intensive

12   issues -- I assume Mr. Panopoulos is going to say to me, none

13   of that stuff matters, all that matters is the authenticity of

14   this account agreement, and if it comes out of Luxembourg and

15   it doesn't matter what other facts you came up with, that's not

16   going to be relevant.  He may be wrong.

17          MR. VOGEL:  Well, if he's right on that law, then

18   sure, that's correct, but I think the law is fairly clear that

19   that's not the case in New York.  It's a very fact-intensive

20   analysis.

21          THE COURT:  All right.  Well, keep going.  Assuming

22   you were not finished.  I thought I interrupted you.

23          MR. VOGEL:  There may be more.  Let me take just a

24   quick look at my notes.

25          Oh, on the issue about the beneficial ownership and

1av1petc

1    Clearstream's knowledge of that, Clearstream's knowledge and

2    when they had knowledge, had knowledge of the beneficial

3    ownership only became relevant when we went to Italy and got

4    discovery from UBAE that indicated that Clearstream knew that

5    Markazi continued to be the beneficial owner of these assets

6    once they were transferred to UBAE and has nevertheless stated

7    to the contrary and before this court in June of 2008 and sent

8    us on a wild goose chase for over a year and a half until we

9    could find this out on our own, and all parts of the scheme to

10   defraud creditors in the United States and to help Markazi hide

11   its identity as the true owner of these assets here in New York

12   and to help Markazi violate United States OFAC regulations and

13   Iranian transaction regulations and -- that were passed against

14   it at sanctions and that -- that became relevant once we

15   learned that about when they knew about this, and we asserted

16   in our amended complaint a cause of action for damages against

17   Clearstream for 250 million because it was 250 million that

18   they secured a release of back in June of 2008 by having -- by

19   having failed to notify Clear -- Citibank that as Citibank

20   participated in sending these assets out and selling them on

21   behalf of and for the benefit of Markazi, they would be

22   violating US law.  Had Citibank known that, that money would

23   never have gone anywhere and it would have been available for

24   the creditors that are sitting here represented by counsel in

25   this room to have -- to enforce their judgments.  That's where

1av1petc

1    that issue becomes relevant, not necessarily on the motion

2    that's now pending by Clearstream.

3         And in terms of whether our discovery at this point,

4    your Honor, should be limited only to the pending motion or

5    whether we should in tandem move the case forward and have

6    additional discovery on the further issues so that when this

7    motion is decided, if it's decided in favor of the plaintiffs,

8    we will have moved along and gotten discovery and not wasted --

9    wasted further time, the issue about what they knew and when

10   they knew it is relevant for further discovery.

11        Again, on the location of the assets, Clearstream

12   incorrectly stated that the UCC provides for that.  Just

13   clearly not so.  Caselaw has said so.  The situs is determined

14   by state law, and that's New York State law that applies.

15        And again, the activities relative to the assets that

16   occurred in New York are relevant for the argument that I

17   addressed with the court.  So I think we need discovery on that

18   issue, and particularly the new third-party defendants that

19   have come into this case and have not had the benefit of three

20   years of what I've been through doing discovery, certainly

21   they're entitled to their say about what discovery they may

22   need to address these motions.

23        THE COURT:  I don't think I got any other letters from

24   plaintiffs on this particular area of discovery, so I don't

25   know if anyone wants to be heard about what facts they're

1av1petc

1    looking for beyond what Mr. Vogel said, but -- I don't know if

2    there is anyone.  So Mr. Panopoulos?  Oh, I'm sorry.

3          MR. KREMEN:  Your Honor, Richard Kremen on behalf of

4    the Heiser judgment creditors.

5          Several points.  One is that we are recent into the

6    fray and there apparently has been discovery that has in fact

7    occurred.  We've gotten access to simply the documents that

8    were attached to the pleadings, and in order to prepare our

9    responses to the motions that have in fact been filed, we would

10   like to get access to any discovery that has in fact been

11   produced to date in this case.

12          The other point is a procedural issue.  At this point

13   we've issued various risks.  Obviously there are various

14   motions that have been filed at this point in time.  But our

15   risks are really not at issue, and I think there's a threshold

16   issue at this stage as to whether or not they are in fact going

17   to be filing risks -- filing motions with respect to the risks,

18   for example, that we have issued or whether we are simply going

19   to be asked to respond to the risks which really only goes to

20   Peterson, and I would think that --

21          THE COURT:  Are there issues, or you don't know?

22          MR. KREMEN:  I don't know what issues they're going to

23   be saying with respect to us, but at a minimum I think they

24   ought to be clarified, and if in fact they are going to be

25   relying on the same arguments, they ought to in fact be

1av1petc

1    required to make some type of pleading to make it clear what we

2    are being asked to respond to, your Honor.

3            THE COURT:  Pleading or a brief?

4            MR. KREMEN:  A brief, or if they're going to --

5            THE COURT:  A motion to vacate.

6            MR. KREMEN:  Or motion to vacate, or whatever argument

7    they're going to be raising, I think it needs to be clarified

8    as to exactly what arguments are going to be raised with

9    respect to at least the Heiser judgment.

10           THE COURT:  Okay.  Well, I guess on the first point,

11   Mr. Vogel, I mean, I assume you're the person who has the

12   discovery.

13           MR. VOGEL:  I'm sorry, your Honor?

14           THE COURT:  On the first point that was just made,

15   access to discovery beyond what might be attached, is there

16   some mechanism to do that?

17           MR. VOGEL:  You mean access to the discovery that we

18   have obtained?

19           THE COURT:  Yes.

20           MR. VOGEL:  Yes, of course.

21           THE COURT:  So I assume that can be worked out.

22           MR. VOGEL:  Yes.

23           THE COURT:  That was the first point Mr. Kremen

24   raised.

25           All right.  On the second point, maybe this goes to

1av1petc

1     the issue of your briefing that was being raised in the

2     letters.  Frankly, I would be helped by rebriefing.  I don't

3     even have copies of the 18 briefs or whatever it is, and it

4     sounds like if there were successive briefs, people were

5     expanding on issues that were previously raised on other

6     briefs, and I think it would be a big help for me, not to

7     mention the other plaintiffs, if we can have combined in a

8     single motion from Clearstream -- yes, Clearstream, not UBAE --

9     precisely what the threshold jurisdictional arguments are.  You

10    seem to be resisting that, Mr. Panopoulos.

11             MR. PANOPOULOS:  No, not at all.  Not at all.  I

12    agree.  I'm more interested in page limits because I don't

13    think we can do it in 25.

14             THE COURT:  I don't have to have limits, so --

15             MR. PANOPOULOS:  That's good.

16             THE COURT:  I mean, I have faith in the lawyers not

17    going on unnecessarily, but I don't want to set page limits and

18    have them truncate their arguments.  I want to have the full

19    explanation.

20             MR. PANOPOULOS:  And then there's the timing, but we

21    could work out a schedule.

22             THE COURT:  Okay.  So you saw these letters from

23    plaintiff on the briefing.  It sounded like there was a dispute

24    on that.

25             MR. PANOPOULOS:  Well, with respect to the Heiser

1av1petc

1    plaintiffs, we would make the same responses.  I mean, you

2    know, basically, yeah, we would move to vacate on the same --

3    for the same reasons we have in the Peterson.  That's why we

4    brought them; that's why they were interpled.

5            THE COURT:  For some reason I thought I saw in your

6    letter plaintiff's rebriefings being expensive and time

7    consuming.  Do I remember that?

8            MR. PANOPOULOS:  It is expensive and time consuming,

9    but obviously if it helps the court --

10           THE COURT:  Yes.  And it will also help all the new

11   plaintiffs that have come in in all the interpleader actions.

12           MR. PANOPOULOS:  Obviously it would help them.  I

13   mean, yes, it would.

14           THE COURT:  Okay.  So at a minimum, it seems to me you

15   should assume that everything in the past no longer is with us

16   briefingwise and that you're going to do a new set of memoranda

17   of law.  You can use old affidavits as attachments, you can

18   reference them, but the memoranda of law is what I really care

19   about.  So all these threshold arguments are in one place.

20           MR. PANOPOULOS:  Sure.

21           THE COURT:  Okay.  Now, you know, I mean, I'm ready to

22   start thinking about discovery issues.  I just don't know that

23   I've --

24           MR. PANOPOULOS:  I'd like to just address a couple of

25   aspects.

1av1petc

```
 1            THE COURT:  Sure.
 2            MR. PANOPOULOS:  One is that if you were to look at
 3    Tab 7 of our letter, Judge Jones' order -- I can read it to
 4    you, but on page 4 at the bottom, it states, "It is further
 5    ordered that Clearstream shall stipulate that all of the
 6    documents contained in the binder Clearstream produced and used
 7    at the June 27, 2008 hearing are authentic and admissible as
 8    business records."  All right?  So we did that.  Those records
 9    are records about the opening of the account in Luxembourg,
10    etc., etc.  Frankly, it's disingenuous for me to hear from
11    Mr. Vogel that there was an account opened in New York where
12    Markazi showed up with Citibank and Clearstream, when all of
13    these records are already in the record.  But what I'd like --
14            THE COURT:  Hold on.  I think what he's saying is that
15    in addition to those records, there could have been these other
16    activities and he doesn't know what they are.
17            MR. PANOPOULOS:  Okay.  Well, that's not what I heard,
18    okay.
19            THE COURT:  Because he hasn't had discovery.
20            MR. PANOPOULOS:  And secondly, if -- if the other
21    plaintiffs are entitled to the discovery that Mr. Vogel has
22    from UBAE in Italy, we would like access to that also, because
23    we haven't had access to it either.
24            THE COURT:  Any problem with that, Mr. Vogel?  I mean,
25    normally when one uses court process in obtaining discovery,
```

1av1petc

1    the law is that they're made available to everyone.  So it's

2    another principle that should apply to everyone here.

3             MR. PANOPOULOS:  And my last point, your Honor --

4             THE COURT:  Yes.

5             MR. PANOPOULOS:  -- is that the documents that

6    Clearstream put into that binder go to the issues that were

7    raised in the Argentine case because they go -- the factors

8    that the court enunciated there about where performance is

9    etc., etc., that's what those documents talk about.  So --

10            THE COURT:  Okay.  But I guess you need to have --

11            MR. PANOPOULOS:  That will be in the brief.

12            THE COURT:  Well, maybe we're going down the path you

13   suggested, and I think it's a path, frankly, I prefer, just to

14   put the argument on the table, which is to make this discovery

15   position in the context of having the issues presented to me so

16   that I can make a judgment about whether that discovery is

17   going to make a difference for purposes of deciding the motion,

18   and if it's not, then it's not necessary, and if it is, then

19   I'll say that.  I mean, that's what you want.

20            MR. PANOPOULOS:  Yes.  I think that's absolutely

21   right.

22            THE COURT:  I think Mr. Vogel wants to move this

23   along, but --

24            MR. PANOPOULOS:  Right.  And in that context it will

25   be specific, it won't be general, and we can talk about it.

1av1petc

 1   And my last point, your Honor --

 2              THE COURT:  Go ahead.

 3              MR. PANOPOULOS:  -- is that, I just want to make the

 4   court aware that Bank Markazi's motion, which challenges the

 5   court's subject matter jurisdiction over the res, right, is

 6   also dispositive of this entire case, perhaps even of the

 7   restraints and of the turnover as well, and even if you were

 8   to -- even if the court were to find against Clearstream on the

 9   UCC issues, it would still have to deal with Bank Markazi's

10   subject matter jurisdiction motion under the Foreign Sovereign

11   Immunities Act, and I'm just raising that so the court is aware

12   of that.

13              THE COURT:  Does that apply to all the accounts?

14              MR. PANOPOULOS:  All the accounts, yes, because we've

15   assumed -- because you're assuming that everything has gone

16   back to Markazi for purposes of the, you know, alleged

17   fraudulent conveyance.  And that was also, you know -- I mean,

18   that's been briefed by Bank Markazi, at least in its opening

19   motion.  The other plaintiffs have yet to respond, but I do

20   want to make the point.

21              THE COURT:  Because there was a stay there as well.

22              MR. PANOPOULOS:  That was stayed, yes.  Yes.  And

23   that's it.

24              THE COURT:  All right.  I mean, there's enough

25   threshold jurisdictional issues that I don't feel this is the

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

1av1petc

1    moment to explore that further.  That moment may come when I

2    read the other side's explanation in the context of motions

3    when I've had better opportunity to consider it, but not at

4    this moment at this conference.

5            So what I want, looking at this from the big picture,

6    is to have a schedule that allows threshold motions for which

7    whoever's making them is essentially going to concede any facts

8    that the plaintiffs want and be able to say that that's

9    irrelevant to their motion.  I mean, that's within limits,

10   obviously.  You know, the account opening documents, they don't

11   have to assume that that could be challenged.  But, you know,

12   that's the theory.  The theory that there's going to be no

13   factual disputes in the sense that we have no factual disputes

14   on the motion to dismiss a complaint for failure to state a

15   claim.  You accept whatever it is that the plaintiffs want to

16   allege or say that they might find in discovery and you make

17   the motion that says, notwithstanding that, the case, you know,

18   has to be dismissed.  So I feel that has to be decided as soon

19   as possible and in advance of freestanding discovery.

20           So that's my ruling with respect to the discovery

21   issues.

22           Now in response to the motions to dismiss, the

23   plaintiffs, you know, will say things that plaintiffs say in

24   any case where there's a 12(b)(6) motion, which is you need to

25   accept, you know, all the potential facts as being true.  We're

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

1av1petc

1    at a little disadvantage here because there's no pleading under

2    which they have alleged all these facts they say they could

3    find in discovery, but I think the same principle is going to

4    apply.  And when I read the plaintiff's responses, I'll hear

5    what they say could matter and why and then the defendants will

6    say, well, none of that matters or they'll say, you know, you

7    got us and you're right, that is going to be relevant and

8    there's a dispute on it, factual dispute on it and plaintiffs

9    are entitled to discovery and they will have some argument on

10   that point.

11            So with those parameters, I'd like to figure out who

12   should be moving when and on what schedule.  I already said

13   there's no page limitations.  So I'm open to proposals.

14            Mr. Vogel, since you got the bad news, what's your

15   view as to how we should proceed?

16            MR. VOGEL:  Well, I suppose Clearstream is going to

17   need time to put this all into one concrete brief.  I know that

18   there was an application or a proposed application by Markazi

19   to amend its brief to talk about the new Second Circuit

20   opinion, which is perfectly legitimate, but my concern is that

21   the request is somewhat broad in their proposed order about

22   what they're going to include in an additional brief and --

23            THE COURT:  You mean Bank Markazi or someone else?

24            MR. VOGEL:  Bank Markazi.  And --

25            THE COURT:  Maybe I should hear from them first and

1av1petc

1    we'll see what they want to brief on.

2              MR. VOGEL:  Certainly.

3              THE COURT:  Will that help, Mr. Vogel?

4              MR. VOGEL:  Yes, and then I won't have to speculate.

5              THE COURT:  Okay.

6              MR. LINDSEY:  Your Honor, there was a reported Second

7    Circuit decision over the summer that helped define the

8    immunity with regard to central banks.  My client, Bank

9    Markazi, is a Central Bank of Iran.  I think it would be

10   helpful, frankly, if we redraft our brief.  I think it would be

11   much shorter now.  I think the issues are crystallized a great

12   deal.  The thrust of the complaint currently before the court

13   talks about alterego, talks about my client is the alterego of

14   the government of Iran.  Second Circuit has said that's

15   irrelevant.  So I don't know if they plan to replead their

16   complaint as well, but if I can rewrite my brief, it will be

17   much shorter, much more focused based on that decision.  I

18   would say two of the three affidavits that went with my motion

19   to dismiss will probably be eliminated now.

20             THE COURT:  Do you want to amend your complaint or no?

21             MR. VOGEL:  Your Honor, I was just going to address

22   that.  Our complaint was drafted on the basis of a footnote in

23   a Second Circuit opinion in the same case where the Second

24   Circuit said that had the plaintiff alleged alterego, they

25   might have had a claim.  So we focused on alterego, and then of

1av1petc

1    course the Second Circuit changed its mind a few months ago.

2    So although there are facts currently in our pleading that I

3    think adequately support the 1611 issue, we could probably make

4    it more clear and probably ought to have the opportunity to do

5    so.

6              But I guess my question for Markazi's counsel was,

7    aside from the Second Circuit opinion that they want to

8    address, their proposed order seems to say that they want to

9    also talk about other briefs that they have now gotten access

10   to that they didn't previously have access to because they were

11   sealed, and my concern is that under Rule 12, you're only

12   allowed one motion to dismiss, and you can't have a second bite

13   at the apple.  So if now they're alleging new things that they

14   would be -- that would be violated with Rule 12, I would

15   certainly like that they be limited to what's permissible under

16   Rule 12(g)(2).

17             THE COURT:  Well, if you're doing an amended

18   complaint, I think the concern dissipates, does it not?  Or you

19   want to do an amended complaint; right?  It's up to you.  I'm

20   not going to force you.

21             MR. VOGEL:  Yeah.

22             THE COURT:  Yes, you want to.

23             MR. VOGEL:  Yes.

24             THE COURT:  All right.  So you do an amend complaint,

25   and I think the clock is reset to zero and they file a motion,

1av1petc

1    right, they can say what they want in response.

2              MR. PANOPOULOS:  Your Honor?

3              THE COURT:  Yes.

4              MR. PANOPOULOS:  If he files an amended complaint,

5    Clearstream would still consider that any response to that

6    amended complaint is stayed as to it until the threshold issue

7    under the -- that we've been discussing is decided.

8              THE COURT:  Yes.  I mean, the same principle would

9    apply there.

10             MR. PANOPOULOS:  Thank you, your Honor.

11             MS. SCHNEIER:  Your Honor, I would just join in that

12   request, which is what Judge Jones had previously ordered.

13             THE COURT:  Yes.  The theory -- I'm just going to have

14   to try to put this together.  I was originally starting with

15   the motion.  But now we're starting with the amended complaint.

16   There's going to be an amended complaint filed on the turnover

17   proceeding.  Then I would say simultaneously we get the motion

18   to dismiss the amended complaint, along with the Clearstream

19   rebriefing of the motion to vacate the restraints, and then

20   anybody who wants to respond to those, which would include all

21   the new plaintiffs, and all the new plaintiffs would then

22   respond, and then there would be reply briefs?  Does that make

23   sense?

24             MR. PANOPOULOS:  Yes.

25             THE COURT:  So first date is when you want to file

1av1petc

1    your amended complaint.

2            MR. VOGEL:  We can do that within 30 days, your Honor.

3            THE COURT:  Yes.

4            MR. PANOPOULOS:  But we'll go ahead and work -- file

5    our motion irrespective of the amended complaint -- I mean, his

6    amended complaint.  The amended complaint is about --

7            THE COURT:  Your issues are completely divorced from

8    their issues, from Banca UBAE and Bank Markazi's issues.

9            MR. PANOPOULOS:  Yes.  With respect to the amended

10   complaint.  Our issues under the UCC, right --

11           THE COURT:  With respect to anything.  Are there

12   similar issues coming out of both of you?

13           MR. PANOPOULOS:  Okay.  Yes, there are.  It's a claim

14   against Clearstream directly, right, against it for being

15   involved in a fraudulent conveyance.  They've alleged that also

16   against UBAE in the amended complaint.  That has nothing to

17   do -- well, let me put it this way.

18           THE COURT:  You want a stay on that, just the way

19   Judge Jones gave it to you.

20           MR. PANOPOULOS:  Right, yes, because if you decide the

21   UCC issues and the situs issues, it goes away.

22           THE COURT:  So we should have two schedules, one the

23   motion to dismiss the amended complaint and the other the

24   rebriefing on the motion to vacate.  Is that your point?

25           MR. PANOPOULOS:  Ms. Erb is indicating consolidated

1av1petc

briefs by the plaintiffs on, yes, two separate tracks, our

motion, amended complaint, responses, to which ours and

Citibank's is stayed, and then consolidated briefs by the

plaintiff --

         THE COURT:  Wait.  That was too fast.  Say it again?

Amended complaint?

         MR. PANOPOULOS:  Amended complaint, as to which

Clearstream and Citibank, any response is stayed until the

motion referred to your Honor is decided.  And then with

respect to the -- with respect to our motion to vacate the

restraints, we would like a consolidated brief by all of the

plaintiffs.

         THE COURT:  In response.

         MR. PANOPOULOS:  In response.  Obviously we'd put one

in.

         THE COURT:  Okay.  So Mr. Vogel?

         MR. VOGEL:  Your Honor, there's a procedural problem

here, and maybe it's just me and I'm missing something, but we

raised this as a defense to the interpleader petition filed by

Citibank.  Technically the interpleader petition is only

against the new third-party defendants and the original parties

to the Peterson plaintiffs' turnover complaint, which includes

the three banks, Iran, and of course the plaintiffs.  There's

no connection between the two.  They're just kind of floating

before this court, but there's no pleading inter --

1av1petc

| 1 | THE COURT:  Wait.  Make sure I understand that.  The |
|---|

1         THE COURT:  Wait.  Make sure I understand that.  The

2    interpleader doesn't mean you and the original people; it just

3    means all these new people who I am mentally aligning with you

4    but you're calling third-party interpleader --

5         MR. VOGEL:  Defendants.

6         THE COURT:  -- interpleader defendants.

7         MR. VOGEL:  Correct.

8         THE COURT:  And tell me what the problem with that is.

9         MR. VOGEL:  Well, the problem is, the proper way to

10   commence an interpleader --

11        THE COURT:  Is to have everybody included.

12        MR. VOGEL:  -- is to name everybody, but because

13   you're not starting a new action, the way to do is to put in a

14   counterclaim against the plaintiff, cross-claims against the

15   banks, who have expressed an interest in --

16        THE COURT:  I'm sorry.  Counterclaims meaning, did you

17   sue Citibank?

18        MR. VOGEL:  Yes.  Citibank is a defendant.

19        THE COURT:  In your turnover proceeding action.

20        MR. VOGEL:  Correct.

21        THE COURT:  You think that's the only way there should

22   have been a counterclaim is turnover.

23        MR. VOGEL:  That's clear law to that effect.

24   Otherwise we're not a party and none of the other banks are

25   parties.  They haven't been named.

1av1petc

1          THE COURT:  So they should amend their interpleader

2     action to name you?

3          MR. VOGEL:  I think that they -- no, it shouldn't be

4     that way, because we commenced this action by a turnover.  The

5     proper way, the proper procedure for them to do it is to

6     counterclaim against us, cross-claim against the other banks,

7     and then the interpleader defendants now, if they want to

8     assert claims against these funds, can do so.  Otherwise, they

9     can't do it because they've been named as third-party

10    defendants to an action where the assets are not even at issue

11    and they can't -- the other defendants, the banks that hold

12    these assets, are not parties to that.  And in particular,

13    Clearstream, who is the garnishee.

14         THE COURT:  I mean, I think we're in uncharted

15    territory because they were instructed to file an interpleader

16    action in this docket.

17         MR. VOGEL:  Well, that's correct, your Honor, but if

18    you look at that, if you look at that order, the order says

19    that Citibank had, in its discretion, commenced an

20    interpleader, a petition including counterclaims, cross-claims,

21    etc., etc.  It was up to Citibank to do it if they wished to do

22    it.  It was in their discretion.  They chose to do it.  And

23    they did it wrong.  They have an obligation to follow the rules

24    of civil procedure.  Otherwise, we're -- this -- you can

25    decide, your Honor can decide whatever your Honor wishes, and

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

1av1petc

1    this whole thing could be unraveled on a simple procedural

2    issue on appeal because none of these, the other judgment

3    creditors are really parties to this entire action, nor are the

4    other banks that express an interest in it.  It's not a true

5    interpleader.

6             THE COURT:  Are you worried about it being unraveled

7    on appeal?

8             MS. SCHNEIER:  No, your Honor, I'm not.  I think the

9    purpose here was to bring before the court all the parties that

10   have an interest in this case so they can have an opportunity

11   to be heard, and that's what's happening here.  Only Mr. Vogel

12   has raised this issue with me.  He said he was going to send me

13   some authority to this effect, and I have not seen it.  We had

14   this argument before Judge Jones and it didn't -- it didn't go

15   anywhere, but, you know, I'm not sure I understand what the --

16            THE COURT:  This was raised before Judge Jones?

17            MS. SCHNEIER:  Yes.  And that was -- and the

18   purpose --

19            MR. VOGEL:  No.

20            THE COURT:  We're getting a no, but that's okay.

21            MS. SCHNEIER:  But the purpose of what Judge Jones

22   wanted here was to bring before the court all of the different

23   parties so they could have an opportunity to assert their

24   claims, and they have asserted counterclaims and cross-claims

25   against Citi, Clearstream, and so the only one who's been

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

1av1petc

1    raising this -- and I'm not -- still not sure exactly why --

2    has been Mr. Vogel.  So --

3         THE COURT:  Well, I'll take him at his word that it

4    will unravel on appeal, but if we consolidate for all purposes

5    these actions, which effectively they are, I think by virtue of

6    the docket, everyone gets noticed.  What could the possible

7    claim be from the plaintiff?  There's no lack of notice; right?

8         MR. VOGEL:  It's not a lack of notice, but there's no

9    just no pleading that forms the basis of the claim, so the way

10   I learned it in law school, civil procedure, is, you've got to

11   have a complaint and an answer for every claim, okay?  So

12   you've got a bunch of claims here that are not represented by

13   pleadings.  If the court wants to leave it the way it is,

14   that's up to the court.  I just -- I just don't see it.  It

15   just doesn't make sense to me.  It doesn't follow the rules of

16   civil procedure.

17        THE COURT:  Yes.

18        MR. PANOPOULOS:  I would agree that consolidation is

19   probably the way to go, your Honor.

20        THE COURT:  Well, I guess it's hard to believe that

21   with everyone given notice to address each of the claims and

22   actually being a party -- everyone we care about is a party to

23   this proceeding.  They will all be given notice.  Consider

24   everything consolidated.  I think the niceties of whether this

25   should have been counterclaims or a separate action at that

1av1petc

1    point don't matter.

2             So Mr. Vogel, I'm not concerned.  I thank you for

3    raising the issue.

4             We were going down the road of giving a date for your

5    amended complaint.  So let's start on two tracks.  And you

6    wanted I think 30 days, which would be November 30th.

7    Mr. Vogel, that's all right for you?

8             MR. VOGEL:  Yes.

9             THE COURT:  Okay.  File your amended complaint.  And

10   then previously existing stay to respond to that complaint by

11   Citibank and Clearstream is going to be stayed.  Then we're

12   going to get the motion to dismiss from both banks or just one?

13            MR. COLELLA:  Your Honor, may I be heard.  Perhaps

14   there's no accident today that I'm sitting between all the

15   parties because Banca UBAE really doesn't have a bone to pick

16   on the underlying issues you've been hearing.  We've had a

17   personal jurisdiction motion, essentially a personal

18   jurisdiction motion on file against Peterson since May, we

19   filed the cross-claims filed by the other creditors, creditors.

20   Only the Acosta and Greenbaum plaintiffs cross-claimed against

21   us.  We filed a motion to dismiss that on similar grounds on

22   September 27th.  And if you're going to go with two tracks,

23   we would want the plaintiffs, the Peterson plaintiffs and the

24   Acosta/Greenbaum plaintiffs to respond on the date they file

25   the amended complaint, on November 30th, and we can then

1av1petc

 1    reply shortly after that.  Because our -- we don't have

 2    anything more to say than what we've already said in our

 3    motions, and there's absolutely no connection between our bank

 4    and this -- and these transactions that are being discussed

 5    with the United States.  And I think that's going to be

 6    undisputed.  But we'd like to -- they haven't given us their

 7    theory of personal jurisdiction yet, yet it's invisible in the

 8    pleadings because there really isn't any prima facie case made

 9    other than the fact that there's only one claim made against us

10    and that's on the 250 million, and it doesn't dispute that that

11    transaction occurred in Luxembourg, and we had no -- we had

12    no --

13              THE COURT:  Okay.  Well, it sounds like if the

14    defendants were successful, Clearstream were successful, this

15    is going to go away.  Am I right, Mr. Panopoulos?

16              MR. PANOPOULOS:  Yes.

17              THE COURT:  UBAE then goes away.

18              MR. PANOPOULOS:  Yes.

19              THE COURT:  So I guess the question is whether this

20    issue should be briefed now.  Should that be briefed now?  I

21    don't know.  It's just going to delay what we really want to

22    do, which is clear out whether this case is staying or not.

23              MR. COLELLA:  But if Clearstream doesn't prevail, then

24    we're going to sort of be back in on the same issues and so we

25    would -- again, we think our issues are very straightforward,

1av1petc

1    very simple.

2            THE COURT:  I know, but if this case goes on, then you

3    are one of 50 other things that are going to start happening.

4    The question is, why should we brief your thing up front?

5            MR. COLELLA:  Because this case is hanging out there

6    against the bank and --

7            THE COURT:  I know.  Just as plaintiffs are suffering

8    not having discovery, you may have to suffer putting off your

9    motion to dismiss until we have this question answered.  That's

10   my point.

11           MR. COLELLA:  Will it be stayed against us too,

12   pending the resolution of the Clearstream issue?

13           THE COURT:  Yes.

14           MR. COLELLA:  Okay.  If that's how your Honor wants to

15   proceed, we're not going to have an objection to that.

16           THE COURT:  Okay.  So --

17           MR. FLEISCHMAN:  Your Honor -- oh.

18           THE COURT:  Go ahead.

19           MR. FLEISCHMAN:  But I'm not going to interrupt you,

20   your Honor.  Go ahead.

21           THE COURT:  Well, no.  Go ahead.  Just identify

22   yourself.

23           MR. FLEISCHMAN:  Yes.  Keith Fleischman for the Valore

24   judgment creditors, plaintiffs.  We have a couple of hats.  Do

25   I understand the court that for the amended complaint -- and

1av1petc

1    this may solve any jurisdictional problem -- that all of the

2    judgment creditors can join that amended complaint with the

3    Peterson plaintiffs?

4              THE COURT:  Mr. Vogel?

5              MR. VOGEL:  Your Honor, I only just heard that

6    suggestion a moment ago, and certainly something that could be

7    done.  I mean, there are issues about -- potential issues about

8    which of the plaintiffs have what kind of rights with respect

9    to this asset based upon what kind of enforcement proceedings

10   they have historically undertaken, but I suppose we could

11   somehow deal with that in a single pleading.  It may get rather

12   lengthy, but it could be done.

13             THE COURT:  Anyone else have any views on that?  If

14   there's no objection, I'll simply allow it.

15             MR. LINDSEY:  No objection by Bank Markazi, your

16   Honor.

17             MR. PANOPOULOS:  No objection by Clearstream.

18             MR. COLELLA:  No objection by UBAE.

19             THE COURT:  Okay.

20             MR. KREMEN:  Richard Kremen again on behalf of the

21   Heiser judgment creditors.  I'm not sure I understand exactly,

22   you know -- we all have individual interests and, for example,

23   you had mentioned earlier -- somebody mentioned it ought to be

24   consolidated briefs.  You know, we all have our own -- our own

25   interests, we all have our own priorities.  There certainly are

1av1petc

1  similar issues that can in fact be consolidated for the ease of

2  the court, but I'm concerned about how you go about filing an

3  amended pleading when we're not under any kind of a cooperation

4  agreement or any kind of agreement amongst ourselves.

5          THE COURT:  I wasn't going to require it.  I thought

6  someone was asking for permission.  Were you planning to file a

7  complaint, a turnover complaint?

8          MR. KREMEN:  No, your Honor.  We were going to leave

9  it as it stands right now.  We can file a turnover, but I think

10 it would be individual, not as an amended pleading.

11         THE COURT:  Well, and I didn't mean to say that this

12 was going to be required.

13         So I guess going back to you, Mr. -- I'm sorry.

14         MR. FLEISCHMAN:  Your Honor, Keith Fleischman.

15         THE COURT:  -- Mr. Fleischman, did you wish to file --

16 it sounds like not every third-party defendant, whatever I can

17 call you, is interested in filing a turnover at this point.

18         MR. FLEISCHMAN:  Your Honor, we may, but I'd like to

19 explore it with counsel for the Peterson plaintiffs.

20         THE COURT:  Okay.  Well, why don't we just leave it

21 that way.  If you folks reach an agreement, fine; if not,

22 that's fine too.

23         MR. FLEISCHMAN:  Thank you, your Honor.

24         MS. SCHNEIER:  Your Honor, may I just raise one thing

25 about that, one little thing?

1av1petc

 1          THE COURT:  Yes.

 2          MS. SCHNEIER:  One of the situations we had and I

 3     think one of the things that Judge Jones tried to do here is

 4     not have all of these duplicative actions pending.  The Heisers

 5     had filed another action in another case and you've had them,

 6     you know, sort of consolidated -- I'm speaking sort of loosely

 7     here -- and that was one of the reasons for the interpleader

 8     proceeding so everything would be brought in one, you know,

 9     proceeding, and notwithstanding, you know, Mr. Vogel's

10     complaint exactly about how it was done, we are all together

11     and every -- and I just don't want to have what we've had

12     before, which is a lot of different proceedings and a lot of

13     different complaints.  That was part of the purpose of the

14     interpleader here.

15          THE COURT:  Well, I guess I don't really understand

16     the need for a turnover complaint given the interpleader.  I

17     mean, certainly the original plaintiffs --

18          MS. SCHNEIER:  If they can all come together, I don't

19     have a problem.  I just don't want to have --

20          THE COURT:  But it's hard to force a party to join a

21     complaint.  I mean, I have no problem consolidating the

22     briefing so that you can do one brief to respond to all the

23     complaints, which presumably will have similar allegations with

24     similar principles that you would use to address them, but I

25     don't know whether I can stop them from filing a complaint.

1av1petc

 1          MS. SCHNEIER:  Well, I think that was, you know -- we

 2     dealt with this with DLA Piper before, that to try to stay

 3     these other actions, and since all of these issues are

 4     already -- as to these assets are already before this court --

 5          THE COURT:  And I have no problem staying it.  I agree

 6     with you on that.

 7          MS. SCHNEIER:  Okay.

 8          THE COURT:  If that's all you care about.  Talking

 9     very technically about the requests to file a complaint.

10          MS. SCHNEIER:  In this case, the filing in this case.

11          THE COURT:  In this case.  Not that it's going to stop

12     people from filing complaints in other cases, but I think it

13     should be filed in this case, obviously, and you could then

14     deal with the stays, if necessary.  Whatever stay is going to

15     exist as to the Peterson's complaint certainly should exist as

16     to any other complaint.

17          MS. SCHNEIER:  I just think simple and keeping it

18     together will be better.  I think that's what we've been

19     working towards.  I'm not sure what Mr. Kremen has in mind,

20     but --

21          THE COURT:  Well, you didn't want to file it, so

22     you're fine.

23          MR. KREMEN:  Your Honor, I'm not sure what the comment

24     is.  We're here today before this court in this case and, you

25     know, all I was saying was that I'll think about whether I'm

1av1petc

1    going to file an amended complaint or whatever I'm going to do.

2    All I was trying to say was, at this point in time there is no

3    agreement that exists amongst the various plaintiffs and I

4    didn't want to suggest to the court that we were agreeing that

5    there would in fact be one, quote-unquote, amended pleading

6    that would in fact incorporate all the parties.

7              THE COURT:  That's fine.  And for all we know, there

8    may be the amended complaint only involving the Peterson

9    people.  I don't know that anyone even needs to file amended

10   complaints given the interpleader action, but I don't think I

11   have to decide anything on that right now.

12             Let me try to go back to the schedule.  So we made it

13   as far as amended complaint to be filed by November 30th by

14   the Peterson people.  We're going to have the same stay as

15   previously.  I guess my proposal is to stay as to UBAE also the

16   time to respond because they're not going to have this

17   threshold jurisdiction issue right now that I'm trying to deal

18   with as quickly as possible.  So that leaves Markazi?

19             MR. LINDSEY:  And as far as refiling motion to

20   dismiss, we would ask, with the holidays, into January if we

21   could, your Honor, maybe mid January.

22             THE COURT:  I don't have a calendar.

23             MR. LINDSEY:  I don't have one.  It's in my phone

24   downstairs.

25             (Discussion held off the record)

1av1petc

1          THE COURT:  17th?

2          MR. LINDSEY:  That's fine, your Honor.  Thank you.

3          THE COURT:  All right.  And then I'll give you

4    February 17th for response?  And then how much do you want

5    for reply brief?  Three weeks?

6          MR. LINDSEY:  Three weeks would be fine, your Honor.

7          THE COURT:  March 11.  Okay.  So that's set.

8          Now I need a schedule from you on your consolidated

9    thing that doesn't require any prior brief.

10          MR. PANOPOULOS:  Friday, December 17th?  I think

11    that's the Friday.

12          THE COURT:  Okay.  Response was January 17th?  And

13    then reply February 10th.

14          MR. VOGEL:  Your Honor, the period between December 17

15    and January 17th has a number of holidays --

16          THE COURT:  Okay.  No problem.

17          MR. VOGEL:  -- if we can push that out a bit.

18          THE COURT:  December 17th is a Saturday.

19          MS. ERB:  Oh, 16th.

20          THE COURT:  December 16th is a Friday.

21          MR. PANOPOULOS:  Okay.

22          THE COURT:  So January 31st, is that enough time?

23          MR. VOGEL:  I think so, your Honor.

24          THE COURT:  Okay.  And reply, February 21.  And I

25    don't view the response to the motion to dismiss as including a

1av1petc

1    motion to compel discovery or however it was framed in the

2    order.  The response to the motion to dismiss will be an

3    explanation of what discovery you didn't get and why, you know,

4    what it could show theoretically and why that's relevant and

5    means that the motion to vacate can't be granted.  Everything I

6    just said was about the motion to vacate.

7              So Mr. Vogel, do you understand now?

8              MR. VOGEL:  Yes, your Honor.

9              THE COURT:  Are we perhaps done or is there more?

10             MR. PANOPOULOS:  One other matter, your Honor.

11             THE COURT:  Don't worry.  I'll give you all a chance.

12             MR. PANOPOULOS:  Well, I'll let --

13             MR. KREMEN:  Your Honor, I just wanted to understand

14   the court's statement.  Again, they're going to be filing their

15   motion to vacate.

16             THE COURT:  Right.

17             MR. KREMEN:  Is the court saying to us that we only

18   have one consolidated response or can the individual judgment

19   creditors file their own pleadings if they want to rather than

20   just simply relying upon Mr. Vogel?

21             THE COURT:  Oh, certainly file your own pleadings.

22   You should all do it on the same date, but I can't imagine

23   why --

24             MR. PANOPOULOS:  Richard, are you saying pleading or

25   briefing?

1av1petc

 1          THE COURT:  No, not pleading.  You mean response to

 2     the motion to vacate.

 3          MR. KREMEN:  Yes.  It was getting back to the comment

 4     you made earlier about a consolidated response.

 5          THE COURT:  I heard that as a single plaintiff

 6     generally responding and maybe they meant it as one response.

 7     Did you mean one response?

 8          MR. PANOPOULOS:  It would be good if it was one

 9     response, but you can't force them.

10          THE COURT:  It would certainly help me if there was

11     one response.  It would be great if Mr. Vogel circulated his

12     brief in advance and then you could just write a letter saying

13     "I join in full" or not in full the arguments or "I join only

14     these arguments" or whatever it is.

15          MR. KREMEN:  Your Honor, we're not going to try to

16     duplicate anything.  All I want to do is keep the option open.

17     We have individual arguments.  We want to keep the right to

18     file our individual arguments.

19          THE COURT:  Yes.

20          MR. PANOPOULOS:  The matter I wanted to raise, so I

21     understand that Clearstream's response to the amended complaint

22     continues to be stayed, and what about our response to the

23     other turnover motions?  For example, Mr. Kremen has filed a

24     turnover complaint against Clearstream in another action.  That

25     turnover complaint in that action was one of the reasons why

1av1petc

1    they were interpled.  I don't know --

2              THE COURT:  Where is the action pending?

3              MR. PANOPOULOS:  It's pending before Judge Batts, and

4    Judge Dolinger is the magistrate on the case and, you know,

5    I've reached out to Mr. Kremen to, you know, come to terms

6    about whether, you know, that turnover complaint could be

7    consolidated with this one or withdrawn and, you know, we can't

8    reach terms but, you know, I -- it doesn't work if we're going

9    to have to respond to other turnover complaints that would

10   require us to respond in the same way as we would here to the

11   same legal and fact issues.  The restraints and the writ of

12   execution in that turnover complaint concern the same assets as

13   here, the restrained assets in the omnibus account.

14             MR. KREMEN:  Your Honor, the action has been filed.

15   They've not even responded to the action.  At this point --

16             THE COURT:  You filed as a turnover.

17             MR. KREMEN:  As a turnover, and they've never even

18   answered it.  It's just simply sitting there, and my

19   understanding is that they've requested another extension of

20   time, so they're not really duplicating.

21             THE COURT:  Do you have any, objection assuming Judge

22   Batts is on board, consolidating that with this case?

23             MR. KREMEN:  I think the action can simply be stayed

24   at this time and we can proceed in this forum.

25             MR. PANOPOULOS:  Sure.  If you're willing to stay the

1av1petc

1    action until the decisions are done in this case, that's okay

2    with us for now.

3                THE COURT:  Okay.  Why don't you do a stipulation.  If

4    for some reason Judge Batts has a problem with that, having a

5    case sitting on her docket indefinitely, we can talk about

6    whether something else should happen.

7                MR. PANOPOULOS:  Should we address the stipulation to

8    Judge Dolinger, your Honor, or Judge Batts?

9                THE COURT:  Send it to me, and depending upon what the

10   referral is --

11               MR. PANOPOULOS:  Right, okay.  We'll get it.

12               MS. SCHNEIER:  That would apply to us as well.

13               THE COURT:  Yes.  Same thing for Citibank.

14           Okay.  I'm hoping that someone will present this to me

15   in an order and form that I can use.  But maybe Mr. Panopoulos

16   can just circulate a proposed order and then take any comments

17   and send it to me, and if people have objections, they can send

18   a letter as well.  Is that all right?

19               MR. PANOPOULOS:  That's fine, your Honor.

20               THE COURT:  Before you do that, I'll hear from anyone

21   who wants to be heard.  So does anyone else wish to be heard on

22   anything?

23               MR. FLEISCHMAN:  Your Honor, just procedurally, so

24   you're not going to issue a minute order on this, you're going

25   to wait for --

1av1petc

|   |   |
|---|---|
| 1 | THE COURT:  Yes.  I think I'd like to have something |
| 2 | so that the world knows what's going on. |
| 3 | MR. FLEISCHMAN:  Thank you, your Honor. |
| 4 | THE COURT:  All right.  And -- |
| 5 | MR. PANOPOULOS:  Yes.  The cross-claims and the |
| 6 | counterclaims that were asserted -- well, the cross-claims have |
| 7 | been asserted against Clearstream by some of the plaintiff |
| 8 | groups that have been interpled and counterclaims against |
| 9 | Citibank, Judge Jones stayed those responses as well, and we |
| 10 | would just ask that they also be stayed.  I'll put it in the |
| 11 | order. |
| 12 | THE COURT:  Yes.  Those will be stayed. |
| 13 | MR. LINDSEY:  Your Honor, the same as to Bank Markazi. |
| 14 | THE COURT:  Okay.  Yes. |
| 15 | MS. SCHNEIER:  Citibank too. |
| 16 | THE COURT:  Yes. |
| 17 | MR. KREMEN:  Your Honor, I heard a comment about also |
| 18 | in reference to Citibank.  I assume we're only talking about |
| 19 | the Clearstream matters. |
| 20 | MS. SCHNEIER:  Yes. |
| 21 | THE COURT:  Anything else from anybody?  Yes. |
| 22 | MR. VOGEL:  Your Honor, I just want to have some |
| 23 | clarity on the names of UBAE and Markazi.  Are those now being |
| 24 | decided still?  We're in the process of redacting the |
| 25 | historical pleadings in this matter.  It's taking an inordinate |

1av1petc

1     amount of time --

2              THE COURT:  Basically it's just their two names,

3     probably.

4              MR. VOGEL:  Their two names and all the other stuff.

5     The other stuff, there's no question it should be taken out.

6     But the question is, do we or do we not continue to keep their

7     names out of the pleadings?

8              THE COURT:  I'm hoping that the United States of

9     America will solve this problem for us.  Mr. Jones, are you

10    still here?

11             MR. JONES:  I am, your Honor.

12             THE COURT:  When do you think we might get your

13    letter?

14             MR. JONES:  I can write it fast.  I just need someone

15    to tell me what to do.

16             I'll speak to them later today.  It would be very

17    helpful to know, as I discuss this with them, if anyone

18    believes there's any other basis for the banks' names not to be

19    public, because --

20             THE COURT:  Other than Judge Lambert's order, you

21    mean, or whatever it is that started this?

22             MR. JONES:  Yeah, your Honor, you know what, I don't

23    even know --

24             THE COURT:  Maybe you can answer this question, which

25    is whether they have any objection to it.  I think that might

1av1petc

1    help.

2          MR. JONES:  I'll put that to OFAC.  I guess I would

3    just invite anyone who believes that OFAC could perceive a

4    problem to tell me.  That would be helpful.

5          THE COURT:  All right.  Anyone who wants to address

6    the OFAC on this matter should write to Mr. Jones by Wednesday,

7    5 p.m., okay?

8          MR. FLEISCHMAN:  Your Honor, Keith Fleischman.  Just

9    as a practical matter, this is open court.  This is a public

10   forum.  It's done already, and I just -- I find it a little

11   strange, but I understand -- it's almost a procedure that's

12   moot because this is open court.  There could be -- anyone

13   could be sitting in here, and these names have been repeatedly

14   stated.

15         THE COURT:  I think I said that at the beginning.

16         MR. FLEISCHMAN:  I know.  I just don't understand.  I

17   guess, your Honor, you have the power right now to say that at

18   this point any confidentiality has been waived.

19         THE COURT:  I believe I do have the power.  I'd still

20   like to hear from the government though.  I gather that we have

21   not heard objections from Banca UBAE or Bank Markazi.

22         I'll take silence as no objection.

23         Yes.

24         MR. PANOPOULOS:  Just on that point, your Honor, I

25   just want to clarify that the protective order has been

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

1av1petc

```
 1    supplemented by other orders of the court, by Judge Koeltl and

 2    then Judge Jones, with respect to banking secrecy information

 3    from Clearstream.  And that information is, you know -- doesn't

 4    fall under the rubric of the protective order or the

 5    information that OFAC gave to the plaintiffs.  So even though,

 6    you know, Bank Markazi's name and UBAE's name may be unredacted

 7    from the pleadings or in the open, that doesn't mean that any

 8    of the other banking secrecy information that's been, you know,

 9    produced here can be made public at all.

10             THE COURT:  That's correct.  I'm just talking about

11    these two names for purposes of filing.

12             MR. COLELLA:  And your Honor, just on behalf of UBAE,

13    we still have a pending motion in front of Judge Jones, and

14    we're not waiving our rights to points made there, which

15    involve the Italian proceedings and all of that information

16    remaining under the protective order.  As I understand the

17    court, you're just talking about the names in the pleading.

18             THE COURT:  And the motion papers and any filings.

19             MR. COLELLA:  Right.

20             THE COURT:  Any other issues from anybody?

21             Okay.  Thank you.

22                              o0o

23

24

25
```