UNITED STATES DISTRICT COURT
SOUTHERN DISTICT OF NEW YORK

|  |  |
|---|---|
| DEBORAH D. PETERSON<br>Personal Representative of the Estate of James C.<br>Knipple (Deceased), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ISLAMIC REPUBLIC OF IRAN, et al.,<br><br>Defendants. | **Case No. 18 Misc. 302(BSJ)**<br><br>**INFORMATION SUBPOENA UPON**<br>**WRITTEN QUESTIONS**<br><br>Islamic Republic of Iran<br>c/o Ministry of Foreign Affairs<br>Iman Khomeini SQ, Tehran-Iran<br><br>Iranian Ministry of Information & Security<br>c/o Gholam Hossein Mohseni Ejeie<br>Second Negarestan Street Pasdaran Avenue<br>Tehran-Iran<br><br>Judgment Debtors |

**GREETINGS:**

TO:     The Representatives of the Judgment Debtors to be examined listed on attached Exhibit
"C."

    **WHEREAS**, in an action in the United States District Court, District of Columbia,
between DEBORAH PETERSON, Personal Representative of the Estate of James C. Knipple
(Deceased) and the plaintiffs listed in Exhibit "B" annexed hereto, as Plaintiffs, and ISLAMIC
REPUBLIC OF IRAN and the IRANIAN MINISTRY OF INFORMATION AND SECURITY
as defendants, who are all the parties named in said action, a judgment was entered on September
9, 2007 in favor of Plaintiffs, DEBORAH PETERSON, Personal Representative of the Estate of
James C. Knipple (Deceased) and the plaintiffs listed in Exhibit "B" annexed hereto, judgment
creditors against Defendants, ISLAMIC REPUBLIC OF IRAN and the IRANIAN MINISTRY
OF INFORMATION AND SECURITY, judgment debtors, in the amount of $2,656,944,877.00
o f  whi c h $2,656,944,877.00, together with interest thereon from September 9, 2007 remains
due and unpaid; and

    **WHEREAS,** said Judgment was filed in the Clerk's office of the Supreme Court of the
State of New York, County of New York on June 16, 2008, and in the United States District
Court of the Southern District of New York on March 24, 2008, and

    **NOW, THEREFORE WE COMMAND YOU,** pursuant to New York Civil Practice
Law and Rules Section 5224 and Federal Rules Civil Rule 69(a), 28 U.S.C., to answer in writing
under oath, separately and fully, each question in the questionnaire accompanying this subpoena,
each answer referring to the question to which it responds; and that you return the answers
together with the original within seven (7) days after your receipt of the questions and this
subpoena.    A copy of said questions is annexed hereto as Exhibit "A".    INFORMATION

CONTAINED IN THE QUESTIONS AND EXHIBITS ANNEXED HERETO ARE SUBJECT TO A PROTECTIVE ORDER ENTERED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA DATED JUNE 11, 2008, A COPY OF WHICH IS ANNEXED HERETO AS EXHIBIT E.

**TAKE NOTICE** that false swearing or failure to comply with this subpoena is punishable as a contempt of court.

**WITNESS**, Honorable Barbara S. Jones, one of the judges of our said court, at the court house in the County of New York on the _____ day of _____ , 2009.

The undersigned hereby certifies that this information subpoena complies with Rule 5224 of the Civil Practice Law and Rules of the State of New York and that I have a reasonable belief that the party receiving this subpoena has in their possession information about the debtor that will assist the creditor in collecting the judgment.

*Dated:* __March 24__, 2009
New York, NY

Liviu Vogel, Esq. (LV-7552)
Salon Marrow Dyckman Newman & Broudy, LLP
292 Madison Avenue
New York, New York 10017
(212) 661-7100

Enclosed: Questions Form;
Original and copy
Prepaid, addressed return envelope

# EXHIBIT A

## QUESTIONS AND ANSWERS IN CONNECTION WITH INFORMATION SUBPOENA

TO:      Representatives of the Judgment Debtors listed on attached Exhibit C

STATE OF _____:

COUNTY OF_____:                                              , SS:

_____, being duly sworn, deposes and says; that he is the
_____ of _____ recipient of an Information
Subpoena herein and the original and a copy of the questions thereon, and makes the following
answers thereto, from information and records of the recipient.

## DEFINITIONS

A.      The term "Document" is to be used in its broadest sense, means the original and any non-

identical copy, regardless of origin or location, and includes any printed, written, recorded,

taped, electronic, graphic, computer retrievable or other tangible mater, however, produced or

reproduced, whether in draft form or otherwise.  The term includes, not is not limited to, letters,

telegrams, facsimiles, correspondence, memoranda, and notes (including those of telephone and

oral conversations), records, agreements, receipts, bills, invoices, in your possession, custody or

control to which you have or had access.

B.      The term "Person" means any natural person, any business entity (whether partnership,

association, cooperative or corporation), and any governmental entity or department, agency,

bureau or political subdivision thereof.

C.      The term "contract" shall refer to any contract entered into between the Plaintiff and the

Defendant.

D.      References to the plural shall include the singular and references to the singular shall include the plural.

E.      The term "any" includes the word "all" and "all" includes the word "any".

F.      The term "each" includes the word "every" and "every" includes the word "each".

G.      If you consider any of the following questions or parts thereof to be objectionable, answer so much of each question and each part thereof as is not objectionable, in your view, and separately state the part of each question as to which you raise objection and each ground for each such objection.

H.      If any answer is qualified, state specifically the terms of each qualification and the reason for it. If a question cannot be answered in full, state the part which can be answered and answer the same in full to the extent possible; state further and specifically the reason(s) why the remainder cannot be answered.

I.      A request to "identify" a document is a request to state as applicable:

    1.      The date of the document;

    2.      The type of document;

    3.      The names and present witnesses of the person or persons who prepared the document and the signers and addressers of the document;

    4.      The name of the employer or principal who the signers, addressers and preparing were representing;

    5.      The present location of the document;

    6.      The name and current business and home addresses of the present custodians of the original document, and any copies of it;

    7.      A summary of the contents of the document; and

8.      If the original document was destroyed, the date and reason for or circumstances under which it was destroyed.

J.      As used herein "Bank Markazi," refers to the Central Bank of Iran known as Bank Markazi Jomhouri Islami Iran.

K.      As used herein, "UBAE" refers to Banca UBAE SpA, having an office at Via Quintino Sella, 2-00187 Rome, Italy – P.O. Box 290.

L.      As used herein "Clearstream" refers to Clearstream Banking, S.A., a bank and clearing system with offices in Luxembourg and New York, New York, U.S.A.

M.      As used herein the word "Judgment Debtors" unless otherwise qualified, shall refer to the ISLAMIC REPUBLIC OF IRAN and the IRANIAN MINISTRY OF INFORMATION AND SECURITY, singularly and/or collectively, and shall include, but shall not be limited to, their agents, employees, officers, directors, political leaders, political sub-divisions, elected or appointed officials, instrumentalities; and entities owned or controlled by them, including but not limited to the following:

1. AGRICULTURAL COOPERATIVE BANK OF IRAN (a.k.a. BANK TAAVON KESHAVARZI IRAN), No. 129 Patrice Lumumba Street, Jalal-Al-Ahmad Expressway, P.O. Box 14155/6395, Tehran, Iran

2. AGRICULTURAL DEVELOPMENT BANK OF IRAN (a.k.a. BANK JOSIAIYI KESHAHVARZI), Farahzad Expressway, Tehran, Iran

3. BANK JOSIAIYI KESHAHVARZI (a.k.a. AGRICULTURAL DEVELOPMENT BANK OF IRAN), Farahzad Expressway, Tehran, Iran

4. BANK MARKAZI JOMHOURI ISLAMI IRAN (a.k.a. THE CENTRAL BANK OF IRAN), Ferdowsi Avenue, P.O. Box 11365-8551, Tehran, Iran

5. BANK MASKAN (a.k.a. HOUSING BANK (of Iran)), Ferdowsi St., Tehran, Iran

6. BANK MELLAT, Park Shahr, Varzesh Avenue, P.O. Box 11365/5964, Tehran, Iran, and all offices worldwide, including, but not limited to:

a. BANK MELLAT (Branch), Ziya Gokalp Bulvari No. 12, Kizilay, Ankara, Turkey

b. BANK MELLAT (Branch), Binbir Cicek Sokak, Buyukdere Caddesi, P.O. Box 67, Levant, Istanbul, Turkey

c. BANK MELLAT (Branch), 48 Gresham Street, London EC2V 7AX, England

7. BANK MELLI, P.O. Box 11365-171, Ferdowsi Avenue, Tehran, Iran, and all offices worldwide, including, but not limited to:

a. BANK MELLI (Branch), 4 Moorgate, London EC2R 6AL, England

b. BANK MELLI (Branch), Schadowplatz 12, 4000 Dusseldorf 1, Germany

c. BANK MELLI (Branch), Friedenstrasse 4, P.O. Box 160 154, 6000 Frankfurt am Main, Germany

d. BANK MELLI (Branch), P.O. Box 112129, Holzbruecke 2, 2000 Hamburg 11, Germany

e. BANK MELLI (Branch), Odeonsplatz 18, 8000 Munich 22, Germany

f. BANK MELLI (Branch), 43 Avenue Montaigne, 75008 Paris, France

g. BANK MELLI (Branch), 601 Gloucester Tower, The Landmark, 11 Pedder Street, P.O. Box 720, Hong Kong

h. BANK MELLI (Representative Office), 333 New Tokyo Building, 3-1 Marunouchi, 3-chome, Chiyoda-ku, Tokyo, Japan

i. BANK MELLI (Representative Office), 818 Wilshire Boulevard, Los Angeles, California 90017, U.S.A

j. BANK MELLI (Representative Office), 767 Fifth Avenue, 44th Floor, New York, New York 10153, U.S.A

k. BANK MELLI (Representative Office), Smolensky Boulevard 22/14, Kv. S., Moscow, Russia

l. BANK MELLI (Branch), Flat No. 1, First Floor, 8 Al Sad El-Aaly, Dokki, P.O. Box 2654, Cairo, Egypt

m. BANK MELLI (Branch), Ben Yas Street, P.O. Box No. 1894, Riga Deira, Dubai, U.A.E

n. BANK MELLI (Branch), P.O. Box 2656, Shaikha Maryam Building, Liwa Street, Abu Dhabi, U.A.E

o. BANK MELLI (Branch), B.P.O. Box 1888, Clock Tower, Industrial Road, Al-Ain Club Building in from Emertel Al Ain, Al Ain, Abu Dhabi, U.A.E

p. BANK MELLI (Branch), P.O. Box 1894, Riqa, Ban Yas Street, Deira, Dubai, U.A.E

q. BANK MELLI (Branch), Mohd-Habib Building, Al-Fahidi Street, P.O. Box 3093, Bur Dubai, Dubai, U.A.E

r. BANK MELLI (Branch), P.O. Box 248, Fujairah, U.A.E

s. BANK MELLI (Branch), Sami Sagar Building Oman Street Al-Nakheel, P.O. Box 5270, Ras-Al Khaimah, U.A.E

t. BANK MELLI (Branch), P.O. Box 459, Al Bory Street, Sharjah, U.A.E.

u. BANK MELLI (Branch), P.O. Box 785, Government Road, Shaikh Mubarak Building, Manama, Bahrain

v. BANK MELLI (Branch), P.O. Box 23309, Shaikh Salman Street, Road No. 1129, Muharraq 211, Bahrain

w. BANK MELLI (Branch), P.O. Box 5643, Mossa Abdul Rehman Hassan Building, 238 Al Burj St., Ruwi, Muscat, Oman

8. BANK OF INDUSTRY AND MINE (of Iran) (a.k.a. BANK SANAT VA MADAN), Hafez Avenue, P.O. Box 11365/4978, Tehran, Iran

9. BANK REFAH KARGARAN (a.k.a. WORKERS WELFARE BANK (of Iran)), Moffettah No. 125, P.O. Box 15815 1866, Tehran, Iran

10. BANK SADERAT IRAN, Bank Saderat Tower, P.O. Box 15745-631, Somayeh Street, Tehran, Iran, and all offices worldwide, including, but not limited to:

a. BANK SADERAT IRAN (Branch), Hamdam Street, Airport Road Intersection, P.O. Box 700, Abu Dhabi, U.A.E

b. BANK SADERAT IRAN (Branch), Al-Am Road, P.O. Box 1140, Al Ein, Abu Dhabi, U.A.E

c. BANK SADERAT IRAN (Branch), Liwara Street, P.O. Box 16, Ajman, U.A.E

d. BANK SADERAT IRAN (Branch), 3rd Floor Dom Dasaf Building, Mejloka Street 7A, Ashkhabad, Turkmenistan

e. BANK SADERAT IRAN (Branch), 25-29 Panepistimiou Street, P.O. Box 4308, GR-10210, Athens 10672, Greece

f. BANK SADERAT IRAN (Branch), Imam Ali Street, Sahat Yaghi, Ras Elain-Alektisad Building 2nd Floor, Baalbeck, Lebanon

g. BANK SADERAT IRAN (Branch and Offshore Banking Unit), 106 Government Road, P.O. Box 825, Manama Town 316, Bahrain

h. BANK SADERAT IRAN (Branch), Hamra Pavillion Street, Savvagh and Daaboul Building 1st Floor, P.O. Box 113-6717, Beirut, Lebanon

i. BANK SADERAT IRAN (Branch), Alghobairi Boulevard, Beirut, Lebanon

j. BANK SADERAT IRAN (Branch), 28 Sherif Street, P.O. Box 462, Cairo, Egypt

k. BANK SADERAT IRAN (Branch), Old Ben-Ghanem Street (next to God Market), P.O. Box 2256, Doha, Qatar

l. BANK SADERAT IRAN (Branch), Almaktoum Road, P.O. Box 4182, Deira, Dubai, U.A.E

m. BANK SADERAT IRAN (Branch), Bazar Murshid, P.O. Box 4182, Deira, Dubai, U.A.E

n. BANK SADERAT IRAN (Branch), Alfahid Road, P.O. Box 4182, Bur Dubai, Dubai, U.A.E

o. BANK SADERAT IRAN (Branch), Sherea Shekikh Zayad Street, P.O. Box 55, Fujairah, U.A.E

p. BANK SADERAT IRAN (Branch), Wilhelm Leuschner Strasse 41, P.O. Box 160151, W-6000 Frankfurt am Main, Germany

q. BANK SADERAT IRAN (Branch), P.O. Box 112227, Hopfenhof Passage, Kleiner Bustah 6-10, W-2000 Hamburg 11, Germany

r. BANK SADERAT IRAN (Branch), Lothbury, London EC2R 7HD, England

s. BANK SADERAT IRAN (Representative Office), 707 Wilshire Boulevard, Suite 4880, Los Angeles, California 90017, U.S.A

t. BANK SADERAT IRAN (Representative Office), 55 East 59th Street, 16th Floor, New York, New York 10022, U.S.A.

u. BANK SADERAT IRAN (Branch), P.O. Box 4269, Mutrah, Muscat, Oman

v. BANK SADERAT IRAN (Branch), 16 Rue de la Paix, Paris 2eme, 75002 Paris, France

w. BANK SADERAT IRAN (Branch), Alaroba Road, P.O. Box 316, Sharjah, U.A.E

11. BANK SANAT VA MADAN (a.k.a. BANK OF INDUSTRY AND MINE (of Iran)), Hafez Avenue, P.O. Box 11365/4978, Tehran, Iran

12. BANK SEPAH, Emam Khomeini Square, P.O. Box 11364, Tehran, Iran, and all offices worldwide, including, but not limited to:

a. BANK SEPAH (Branch), Muenchener Strasse 49, P.O. Box 10 03 47, W-6000 Frankfurt am Main 1, Germany

b. BANK SEPAH (Branch), 5/7 Eastcheap, EC3M 1JT London, England

c. BANK SEPAH (Representative Office), 650 Fifth Avenue, New York, New York 10019, U.S.A

d. BANK SEPAH (Branch), 17 Place Vendome, 75001 Paris, France.

e. BANK SEPAH (Branch), Via Barberini 50, 00187 Rome, Italy

f. BANK SEPAH (Representative Office), Ufficio di Rappresentan Za, Via Ugo Foscolo 1, 20121 Milan, Italy

13. BANK TAAVON KESHAVARZI IRAN (a.k.a. AGRICULTURAL COOPERATIVE BANK OF IRAN) No. 129 Patrice Lumumba Street, Jalal-Al-Ahmad Expressway, P.O. Box 14155/6395, Tehran, Iran

14. BANK TEJARAT, 130 Taleghani Avenue, Nejatoullahie, P.O. Box 11365-5416, Tehran, Iran, and all offices worldwide, including, but not limited to:

a. BANK TEJARAT (Branch), 6/8 Clements Lane, London EC4N 7AP, England

b. BANK TEJARAT (Branch), 44 Avenue des Champs Elysees, 75008 Paris, France

15. DEUTSCH-IRANISCHE HANDELSBANK AG (n.k.a. EUROPAEISCH-IRANISCHE HANDELSBANK AG) Depenau 2, W-2000 Hamburg 1, Germany, and all offices worldwide, including, but not limited to:

a. DEUTSCH-IRANISCHE HANDELSBANK AG (n.k.a. EUROPAEISCH-IRANISCHE HANDELSBANK AG) (Representative Office), 23 Argentine Square, Beihaghi Bulvard, P.O. Box 15815/1787, Tehran 15148, Iran

16. EUROPAEISCH-IRANISCHE HANDELSBANK AG (f.k.a. DEUTSCH-IRANISCHE HANDELSBANK AG) Depenau 2, W-2000 Hamburg 1, Germany, and all offices worldwide, including, but not limited to:

a. EUROPAEISCH-IRANISCHE HANDELSBANK AG (f.k.a. DEUTSCH-IRANISCHE HANDELSBANK AG) (Representative Office), 23 Argentine Square, Beihaghi Bulvard, P.O. Box 15815/1787, Tehran 15148, Iran

17. HOUSING BANK (of Iran) (a.k.a. BANK MASKAN), Ferdowsi St., Tehran, Iran

18. IRAN OVERSEAS INVESTMENT BANK LIMITED (f.k.a. IRAN OVERSEAS INVESTMENT CORPORATION LIMITED), 120 Moorgate, London EC2M 6TS, England, and all offices worldwide, including, but not limited to:

a. IRAN OVERSEAS INVESTMENT BANK LIMITED (Representative Office), 1137 Avenue Vali Asr off Park-e-SAll, P.O. Box 15115/531, Tehran, Iran

b. IRAN OVERSEAS INVESTMENT BANK LIMITED (Agency), Suite 3c Olympia House, 61/63 Dame Street, Dublin 2, Ireland

c. IRAN OVERSEAS INVESTMENT BANK LIMITED (Agency), Improgetti, Via Germanico 24, 00192 Rome, Italy

d. IRAN OVERSEAS TRADING COMPANY LIMITED (Subsidiary), 120 Moorgate, London EC2M 6TS, England

e. IRAN OVERSEAS INVESTMENT CORPORATION LIMITED (n.k.a. IRAN OVERSEAS INVESTMENT BANK LIMITED), 120 Moorgate, London EC2M 6TS, England .

19. THE CENTRAL BANK OF IRAN (a.k.a. BANK MARKAZI JOMHOURI ISLAMI IRAN), Ferdowsi Avenue, P.O. Box 11365-8551, Tehran, Iran

20. WORKERS WELFARE BANK (of Iran) (a.k.a. BANK REFAH KARGARAN), Moffettah No. 125, P.O. Box 15815 1866, Tehran, Iran

## QUESTIONS TO BE ANSWERED IN CONNECTION WITH
## THE INFORMATION SUBPOENA

1. In or about      , did Judgment Debtors instruct or otherwise cause Clearstream

to transfer Judgment Debtors' interest in $      denominated value of securities

identified by ISIN      "      " from Bank Markazi's Clearstream

account number    to UBAE's account number    at Clearstream? If so:

    a. On what date was Clearstream instructed or caused to do so?

    b. On what date was the transfer made?

c.      To whom was the asset transferred?

d.      In what capacity did the transferee receive and hold the asset?

e.      Identify the consideration, if any, given in exchange for this transfer.  Include:

     (1)      the type of consideration,

     (2)      the value of the consideration,

     (3)      who transferred the consideration,

     (4)      who received the consideration, and

     (5)      when the consideration was received.

f.      Set forth all purposes of the transfer of the securities.

g.      Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

     (1)      the nature of Judgment Debtors' interest or control;

     (2)      the value of Judgment Debtors' interest;

     (3)      the title in which interest was then held;

     (4)      any contingencies to Judgment Debtors' interest or right to control;

     (5)      the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

          (i)      the circumstances under which such interest or control ceased;

          (ii)      whether the interest or right to control was transferred and if so, describe:

               (A)      any consideration received in exchange including its value,

               (B)      the date of the transfer, and

        (3)     who transferred the consideration,

        (4)     who received the consideration, and

        (5)     when the consideration was received.

f.     Set forth all purposes of the transfer of the securities.

g.     Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008? If so, describe the nature of the interest or control including the following:

        (1)     the nature of Judgment Debtors' interest or control;

        (2)     the value of Judgment Debtors' interest;

        (3)     the title in which interest was then held;

        (4)     any contingencies to Judgment Debtors' interest or right to control;

        (5)     the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

            (i)     the circumstances under which such interest or control ceased;

            (ii)     whether the interest or right to control was transferred and if so, describe:

                (A)     any consideration received in exchange including its value,

                (B)     the date of the transfer, and

                (C)     the identity of the person or entity to whom such interest in or control of the securities was transferred.

Did you instruct Clearstream to transfer your $         interest in ISIN           from your Clearstream account number     to UBAE's account number       at Clearstrem? If so:

a.   On what date did you give this instruction?

b.   On what date was the transfer made?

c.   To whom did you transfer the asset?

d.   Identify the consideration, if any, given in exchange for this transfer.  Include:

    (1)   the type of consideration,

    (2)   the value of the consideration and your basis for the value assigned,

    (3)   who transferred the consideration to you, and

    (4)   when the consideration was received.

e.   After the transfer was completed, disclose any direct interest, beneficial interest,

or control you retained over the asset.

**ANSWER:**

3.   In or about ▮▮▮▮▮▮▮▮, did Judgment Debtors instruct or otherwise cause Clearstream

to transfer Judgment Debtors' interest in $▮▮▮▮▮▮▮▮ denominated value of securities

identified by ISIN ██████████ ██████████ from Bank Markazi's Clearstream account

number ████ to UBAE's account number ████ at Clearstream? If so:

    a.     On what date was Clearstream instructed or caused to do so?

    b.     On what date was the transfer made?

    c.     To whom was the asset transferred?

    d.     In what capacity did the transferee receive and hold the asset?

    e.     Identify the consideration, if any, given in exchange for this transfer.  Include:

          (1)    the type of consideration,

          (2)    the value of the consideration,

          (3)    who transferred the consideration,

          (4)    who received the consideration, and

          (5)    when the consideration was received.

    f.     Set forth all purposes of the transfer of the securities.

    g.     Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

          (1)    the nature of Judgment Debtors' interest or control;

          (2)    the value of Judgment Debtors' interest;

          (3)    the title in which interest was then held;

          (4)    any contingencies to Judgment Debtors' interest or right to control;

          (5)    the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

              (i)    the circumstances under which such interest or control ceased;

(ii)     whether the interest or right to control was transferred and if so,

describe:

      (A)     any consideration received in exchange including its value,

      (B)     the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities was transferred.

**ANSWER:**

4.     In or about [blank], did Judgment Debtors instruct or otherwise cause Clearstream to transfer Judgment Debtors' interest in $[blank] denominated value of securities identified by ISIN [blank] from Bank Markazi's Clearstream account number [blank] to UBAE's account number [blank] at Clearstream? If so:

    a.     On what date was Clearstream instructed or caused to do so?

    b.     On what date was the transfer made?

    c.     To whom was the asset transferred?

d.      In what capacity did the transferee receive and hold the asset?

e.      Identify the consideration, if any, given in exchange for this transfer.  Include:

      (1)      the type of consideration,

      (2)      the value of the consideration,

      (3)      who transferred the consideration,

      (4)      who received the consideration, and

      (5)      when the consideration was received.

f.      Set forth all purposes of the transfer of the securities.

g.      Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

      (1),      the nature of Judgment Debtors' interest or control;

      (2)      the value of Judgment Debtors' interest;

      (3)      the title in which interest was then held;

      (4)      any contingencies to Judgment Debtors' interest or right to control;

      (5)      the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

            (i)      the circumstances under which such interest or control ceased;

            (ii)      whether the interest or right to control was transferred and if so, describe:

                  (A)      any consideration received in exchange including its value,

                  (B)      the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities

was transferred.

**ANSWER:**

5.      In or about                , did Judgment Debtors instruct or otherwise cause Clearstream

to transfer Judgment Debtors' interest in $                denominated value of securities

identified by ISIN                                   from Bank Markazi's Clearstream

account number        to UBAE's account number        at Clearstream? If so:

    a.      On what date was Clearstream instructed or caused to do so?

    b.      On what date was the transfer made?

    c.      To whom was the asset transferred?

    d.      In what capacity did the transferee receive and hold the asset?

    e.      Identify the consideration, if any, given in exchange for this transfer. Include:

        (1)     the type of consideration,

        (2)     the value of the consideration,

  (3) who transferred the consideration,

  (4) who received the consideration, and

  (5) when the consideration was received.

f. Set forth all purposes of the transfer of the securities.

g. Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

  (1) the nature of Judgment Debtors' interest or control;

  (2) the value of Judgment Debtors' interest;

  (3) the title in which interest was then held;

  (4) any contingencies to Judgment Debtors' interest or right to control;

  (5) the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

    (i) the circumstances under which such interest or control ceased;

    (ii) whether the interest or right to control was transferred and if so, describe:

      (A) any consideration received in exchange including its value,

      (B) the date of the transfer, and

(C) the identity of the person or entity to whom such interest in or control of the securities was transferred.

**ANSWER:**

6.     In or about _____, did Judgment Debtors instruct or otherwise cause Clearstream

to transfer Judgment Debtors' interest in $_____ denominated value of securities

identified by ISIN _____ _____ from Bank Markazi's Clearstream

account number ___ to UBAE's account number ___ at Clearstream? If so:

   a.     On what date was Clearstream instructed or caused to do so?

   b.     On what date was the transfer made?

   c.     To whom was the asset transferred?

   d.     In what capacity did the transferee receive and hold the asset?

   e.     Identify the consideration, if any, given in exchange for this transfer.  Include:

      (1)     the type of consideration,

      (2)     the value of the consideration,

      (3)     who transferred the consideration,

      (4)     who received the consideration, and

      (5)     when the consideration was received.

   f.     Set forth all purposes of the transfer of the securities.

   g.     Did Judgment Debtors have any direct or indirect interest, beneficial interest, or

control over the securities on June 13, 2008?  If so, describe the nature of the interest or

control including the following:

(1)     the nature of Judgment Debtors' interest or control;

(2)     the value of Judgment Debtors' interest;

(3)     the title in which interest was then held;

(4)     any contingencies to Judgment Debtors' interest or right to control;

(5)     the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

    (i)     the circumstances under which such interest or control ceased;

    (ii)    whether the interest or right to control was transferred and if so, describe:

        (A)     any consideration received in exchange including its value,

        (B)     the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities was transferred.


**ANSWER:**

7.     In or about , did Judgment Debtors instruct or otherwise cause Clearstream

to transfer Judgment Debtors' interest in $          denominated value of securities

identified by ISIN                              from Bank Markazi's Clearstream

account number      to UBAE's account number      at Clearstream? If so:

   a.     On what date was Clearstream instructed or caused to do so?

   b.     On what date was the transfer made?

   c.     To whom was the asset transferred?

   d.     In what capacity did the transferee receive and hold the asset?

   e.     Identify the consideration, if any, given in exchange for this transfer.  Include:

          (1)     the type of consideration,

          (2)     the value of the consideration,

          (3)     who transferred the consideration,

          (4)     who received the consideration, and

          (5)     when the consideration was received.

   f.     Set forth all purposes of the transfer of the securities.

   g.     Did Judgment Debtors have any direct or indirect interest, beneficial interest, or

control over the securities on June 13, 2008?  If so, describe the nature of the interest or

control including the following:

          (1)     the nature of Judgment Debtors' interest or control;

          (2)     the value of Judgment Debtors' interest;

(3)     the title in which interest was then held;

(4)     any contingencies to Judgment Debtors' interest or right to control;

(5)     the period of time during which such interest and control existed, and if

such interest or control no longer exists, set forth:

       (i)     the circumstances under which such interest or control ceased;

       (ii)    whether the interest or right to control was transferred and if so,

       describe:

              (A)     any consideration received in exchange including its value,

              (B)     the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities

was transferred.

**ANSWER:**

8.     In or about          , did Judgment Debtors instruct or otherwise cause Clearstream

to transfer Judgment Debtors' interest in $          denominated value of securities

identified by ISIN [redacted] [redacted] from Bank Markazi's Clearstream account

number [redacted] to UBAE's account number [redacted] at Clearstream?  If so:

    a.    On what date was Clearstream instructed or caused to do so?

    b.    On what date was the transfer made?

    c.    To whom was the asset transferred?

    d.    In what capacity did the transferee receive and hold the asset?

    e.    Identify the consideration, if any, given in exchange for this transfer.  Include:

        (1)    the type of consideration,

        (2)    the value of the consideration,

        (3)    who transferred the consideration,

        (4)    who received the consideration, and

        (5)    when the consideration was received.

    f.    Set forth all purposes of the transfer of the securities.

    g.    Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

        (1)    the nature of Judgment Debtors' interest or control;

        (2)    the value of Judgment Debtors' interest;

        (3)    the title in which interest was then held;

        (4)    any contingencies to Judgment Debtors' interest or right to control;

        (5)    the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

            (i)    the circumstances under which such interest or control ceased;

        (ii)     whether the interest or right to control was transferred and if so,

describe:

           (A)     any consideration received in exchange including its value,

           (B)     the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities

was transferred.

**ANSWER:**

9.     In or about       , did Judgment Debtors instruct or otherwise cause Clearstream

to transfer Judgment Debtors' interest in $         denominated value of securities

identified by ISIN               from Bank Markazi's Clearstream

account number    to UBAE's account number    at Clearstream? If so:

     a.     On what date was Clearstream instructed or caused to do so?

     b.     On what date was the transfer made?

     c.     To whom was the asset transferred?

d. In what capacity did the transferee receive and hold the asset?

e. Identify the consideration, if any, given in exchange for this transfer.  Include:

 (1) the type of consideration,

 (2) the value of the consideration,

 (3) who transferred the consideration,

 (4) who received the consideration, and

 (5) when the consideration was received.

f. Set forth all purposes of the transfer of the securities.

g. Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

 (1) the nature of Judgment Debtors' interest or control;

 (2) the value of Judgment Debtors' interest;

 (3) the title in which interest was then held;

 (4) any contingencies to Judgment Debtors' interest or right to control;

 (5) the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

  (i) the circumstances under which such interest or control ceased;

  (ii) whether the interest or right to control was transferred and if so, describe:

   (A) any consideration received in exchange including its value,

   (B) the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities

was transferred.

**ANSWER:**

10.     In or about ▮▮▮▮▮, did Judgment Debtors instruct or otherwise cause Clearstream

to transfer Judgment Debtors' interest in $▮▮▮▮ denominated value of securities

identified by ISIN ▮▮▮▮▮ ▮▮▮▮▮ from Bank Markazi's Clearstream account

number ▮▮ to UBAE's account number ▮▮ at Clearstream?  If so:

    a.     On what date was Clearstream instructed or caused to do so?

    b.     On what date was the transfer made?

    c.     To whom was the asset transferred?

    d.     In what capacity did the transferee receive and hold the asset?

    e.     Identify the consideration, if any, given in exchange for this transfer.  Include:

        (1)     the type of consideration,

        (2)     the value of the consideration,

(3)     who transferred the consideration,

(4)     who received the consideration, and

(5)     when the consideration was received.

f.     Set forth all purposes of the transfer of the securities.

g.     Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

(1)     the nature of Judgment Debtors' interest or control;

(2)     the value of Judgment Debtors' interest;

(3)     the title in which interest was then held;

(4)     any contingencies to Judgment Debtors' interest or right to control;

(5)     the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

(i)     the circumstances under which such interest or control ceased;

(ii)     whether the interest or right to control was transferred and if so, describe:

(A)     any consideration received in exchange including its value,

(B)     the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities was transferred.

**ANSWER:**

11.   In or about , did Judgment Debtors instruct or otherwise cause Clearstream to transfer Judgment Debtors' interest in $_____ denominated value of securities identified by ISIN _____ _____ from Bank Markazi's Clearstream account number ____ to UBAE's account number ____ at Clearstream? If so:

    a.   On what date was Clearstream instructed or caused to do so?

    b.   On what date was the transfer made?

    c.   To whom was the asset transferred?

    d.   In what capacity did the transferee receive and hold the asset?

    e.   Identify the consideration, if any, given in exchange for this transfer.  Include:

        (1)   the type of consideration,

        (2)   the value of the consideration,

        (3)   who transferred the consideration,

        (4)   who received the consideration, and

        (5)   when the consideration was received.

    f.   Set forth all purposes of the transfer of the securities.

g.      Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

(1)     the nature of Judgment Debtors' interest or control;

(2)     the value of Judgment Debtors' interest;

(3)     the title in which interest was then held;

(4)     any contingencies to Judgment Debtors' interest or right to control;

(5)     the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

(i)      the circumstances under which such interest or control ceased;

(ii)     whether the interest or right to control was transferred and if so, describe:

(A)     any consideration received in exchange including its value,

(B)      the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities was transferred.

**ANSWER:**

12.    In or about [REDACTED], did Judgment Debtors instruct or otherwise cause Clearstream

to transfer Judgment Debtors' interest in $[REDACTED] denominated value of securities

identified by ISIN [REDACTED]   [REDACTED] from Bank Markazi's Clearstream

account number [REDACTED] to UBAE's account number [REDACTED] at Clearstream?  If so:

a.    On what date was Clearstream instructed or caused to do so?

b.    On what date was the transfer made?

c.    To whom was the asset transferred?

d.    In what capacity did the transferee receive and hold the asset?

e.    Identify the consideration, if any, given in exchange for this transfer.  Include:

 (1)    the type of consideration,

 (2)    the value of the consideration,

 (3)    who transferred the consideration,

 (4)    who received the consideration, and

 (5)    when the consideration was received.

f.    Set forth all purposes of the transfer of the securities.

g.    Did Judgment Debtors have any direct or indirect interest, beneficial interest, or

control over the securities on June 13, 2008?  If so, describe the nature of the interest or

control including the following:

 (1)    the nature of Judgment Debtors' interest or control;

 (2)    the value of Judgment Debtors' interest;

 (3)    the title in which interest was then held;

(4)    any contingencies to Judgment Debtors' interest or right to control;

(5)    the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

    (i)    the circumstances under which such interest or control ceased;

    (ii)    whether the interest or right to control was transferred and if so, describe:

        (A)    any consideration received in exchange including its value,

        (B)    the date of the transfer, and

(C)    the identity of the person or entity to whom such interest in or control of the securities was transferred.


**ANSWER:**


13.    In or about ▇▇▇▇▇▇▇▇ , did Judgment Debtors instruct or otherwise cause Clearstream to transfer Judgment Debtors' interest in $▇▇▇▇▇▇▇ denominated value of securities

identified by ISIN [                    ] [                    ] from Bank Markazi's Clearstream

account number [    ] to UBAE's account number [    ] at Clearstream? If so:

  a.    On what date was Clearstream instructed or caused to do so?

  b.    On what date was the transfer made?

  c.    To whom was the asset transferred?

  d.    In what capacity did the transferee receive and hold the asset?

  e.    Identify the consideration, if any, given in exchange for this transfer.  Include:

        (1)    the type of consideration,

        (2)    the value of the consideration,

        (3)    who transferred the consideration,

        (4)    who received the consideration, and

        (5)    when the consideration was received.

  f.    Set forth all purposes of the transfer of the securities.

  g.    Did Judgment Debtors have any direct or indirect interest, beneficial interest, or

control over the securities on June 13, 2008? If so, describe the nature of the interest or

control including the following:

        (1)    the nature of Judgment Debtors' interest or control;

        (2)    the value of Judgment Debtors' interest;

        (3)    the title in which interest was then held;

        (4)    any contingencies to Judgment Debtors' interest or right to control;

        (5)    the period of time during which such interest and control existed, and if

        such interest or control no longer exists, set forth:

               (i)    the circumstances under which such interest or control ceased;

(ii)     whether the interest or right to control was transferred and if so, describe:

(A)     any consideration received in exchange including its value,

(B)     the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities was transferred.

**ANSWER:**

14.     In or about ▮▮▮▮▮, did Judgment Debtors instruct or otherwise cause Clearstream to transfer Judgment Debtors' interest in $▮▮▮▮▮ denominated value of securities identified by ISIN ▮▮▮▮▮ ▮▮▮▮▮ from Bank Markazi's Clearstream account number ▮▮▮ to UBAE's account number ▮▮▮ at Clearstream? If so:

a.     On what date was Clearstream instructed or caused to do so?

b.     On what date was the transfer made?

c.     To whom was the asset transferred?

d.    In what capacity did the transferee receive and hold the asset?

e.    Identify the consideration, if any, given in exchange for this transfer.  Include:

    (1)    the type of consideration,

    (2)    the value of the consideration,

    (3)    who transferred the consideration,

    (4)    who received the consideration, and

    (5)    when the consideration was received.

f.    Set forth all purposes of the transfer of the securities.

g.    Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

    (1)    the nature of Judgment Debtors' interest or control;

    (2)    the value of Judgment Debtors' interest;

    (3)    the title in which interest was then held;

    (4)    any contingencies to Judgment Debtors' interest or right to control;

    (5)    the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

        (i)    the circumstances under which such interest or control ceased;

        (ii)    whether the interest or right to control was transferred and if so, describe:

            (A)    any consideration received in exchange including its value,

            (B)    the date of the transfer, and

(C)   the identity of the person or entity to whom such interest in or control of the securities was transferred.

ANSWER:

15.   In or about ▮▮▮▮▮▮▮▮, did Judgment Debtors instruct or otherwise cause Clearstream to transfer Judgment Debtors' interest in $▮▮▮▮▮▮ denominated value of securities identified by ISIN ▮▮▮▮▮▮ ▮▮▮▮▮▮ from Bank Markazi's Clearstream account number ▮▮ to UBAE's account number ▮▮ at Clearstream?  If so:

    a.   On what date was Clearstream instructed or caused to do so?

    b.   On what date was the transfer made?

    c.   To whom was the asset transferred?

    d.   In what capacity did the transferee receive and hold the asset?

    e.   Identify the consideration, if any, given in exchange for this transfer.  Include:

        (1)   the type of consideration,

        (2)     the value of the consideration,

        (3)     who transferred the consideration,

        (4)     who received the consideration, and

        (5)     when the consideration was received.

f.     Set forth all purposes of the transfer of the securities.

g.     Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

        (1)     the nature of Judgment Debtors' interest or control;

        (2)     the value of Judgment Debtors' interest;

        (3)     the title in which interest was then held;

        (4)     any contingencies to Judgment Debtors' interest or right to control;

        (5)     the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

            (i)     the circumstances under which such interest or control ceased;

            (ii)     whether the interest or right to control was transferred and if so, describe:

                (A)     any consideration received in exchange including its value,

                (B)     the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities was transferred.

**ANSWER:**



16.   In or about ▮▮▮▮▮▮▮, did Judgment Debtors instruct or otherwise cause Clearstream

to transfer Judgment Debtors' interest in $▮▮▮▮▮▮▮ denominated value of securities

identified by ISIN ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ from Bank Markazi's Clearstream account

number ▮▮ to UBAE's account number ▮▮ at Clearstream? If so:

   a.   On what date was Clearstream instructed or caused to do so?

   b.   On what date was the transfer made?

   c.   To whom was the asset transferred?

   d.   In what capacity did the transferee receive and hold the asset?

   e.   Identify the consideration, if any, given in exchange for this transfer.  Include:

       (1)   the type of consideration,

       (2)   the value of the consideration,

       (3)   who transferred the consideration,

       (4)   who received the consideration, and

       (5)   when the consideration was received.

 f.  Set forth all purposes of the transfer of the securities.

 g.  Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

   (1)  the nature of Judgment Debtors' interest or control;

   (2)  the value of Judgment Debtors' interest;

   (3)  the title in which interest was then held;

   (4)  any contingencies to Judgment Debtors' interest or right to control;

   (5)  the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

    (i)  the circumstances under which such interest or control ceased;

    (ii)  whether the interest or right to control was transferred and if so, describe:

     (A)  any consideration received in exchange including its value,

     (B)   the date of the transfer, and

(C)  the identity of the person or entity to whom such interest in or control of the securities was transferred.

**ANSWER:**

17.     In or about , did Judgment Debtors instruct or otherwise cause Clearstream to transfer Judgment Debtors' interest in $▮▮▮▮▮▮ denominated value of securities identified by ISIN ▮▮▮▮▮▮ ▮▮▮▮▮▮ from Bank Markazi's Clearstream account number ▮▮▮ to UBAE's account number ▮▮▮ at Clearstream? If so:

    a.    On what date was Clearstream instructed or caused to do so?

    b.    On what date was the transfer made?

    c.    To whom was the asset transferred?

    d.    In what capacity did the transferee receive and hold the asset?

    e.    Identify the consideration, if any, given in exchange for this transfer.  Include:

        (1)    the type of consideration,

        (2)    the value of the consideration,

        (3)    who transferred the consideration,

        (4)    who received the consideration, and

        (5)    when the consideration was received.

    f.    Set forth all purposes of the transfer of the securities.

    g.    Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008? If so, describe the nature of the interest or control including the following:

        (1)    the nature of Judgment Debtors' interest or control;

(2)     the value of Judgment Debtors' interest;

(3)     the title in which interest was then held;

(4)     any contingencies to Judgment Debtors' interest or right to control;

(5)     the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

       (i)     the circumstances under which such interest or control ceased;

       (ii)    whether the interest or right to control was transferred and if so, describe:

              (A)     any consideration received in exchange including its value,

              (B)     the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities was transferred.

**ANSWER:**



18.     In or about ▮▮▮▮▮, did Judgment Debtors instruct or otherwise cause Clearstream to transfer Judgment Debtors' interest in $▮▮▮▮ denominated value of securities identified by ISIN ▮▮▮▮ ▮▮▮▮ from Bank Markazi's Clearstream account number ▮▮ to UBAE's account number ▮▮ at Clearstream?  If so:

   a.     On what date was Clearstream instructed or caused to do so?

   b.     On what date was the transfer made?

   c.     To whom was the asset transferred?

   d.     In what capacity did the transferee receive and hold the asset?

   e.     Identify the consideration, if any, given in exchange for this transfer.  Include:

      (1)     the type of consideration,

      (2)     the value of the consideration,

      (3)     who transferred the consideration,

      (4)     who received the consideration, and

      (5)     when the consideration was received.

   f.     Set forth all purposes of the transfer of the securities.

   g.     Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

      (1)     the nature of Judgment Debtors' interest or control;

      (2)     the value of Judgment Debtors' interest;

      (3)     the title in which interest was then held;

      (4)     any contingencies to Judgment Debtors' interest or right to control;

(5)     the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

    (i)     the circumstances under which such interest or control ceased;

    (ii)     whether the interest or right to control was transferred and if so, describe:

        (A)     any consideration received in exchange including its value,

        (B)     the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities was transferred.

**ANSWER:**

19.     In or about ▮▮▮▮▮▮▮, did Judgment Debtors instruct or otherwise cause Clearstream to transfer Judgment Debtors' interest in $▮▮▮▮▮▮▮ denominated value of securities

identified by ISIN                         from Bank Markazi's Clearstream account

number     to UBAE's account number    at Clearstream? If so:

       a.     On what date was Clearstream instructed or caused to do so?

       b.     On what date was the transfer made?

       c.     To whom was the asset transferred?

       d.     In what capacity did the transferee receive and hold the asset?

       e.     Identify the consideration, if any, given in exchange for this transfer.  Include:

            (1)     the type of consideration,

            (2)     the value of the consideration,

            (3)     who transferred the consideration,

            (4)     who received the consideration, and

            (5)     when the consideration was received.

       f.     Set forth all purposes of the transfer of the securities.

       g.     Did Judgment Debtors have any direct or indirect interest, beneficial interest, or

control over the securities on June 13, 2008? If so, describe the nature of the interest or

control including the following:

            (1)     the nature of Judgment Debtors' interest or control;

            (2)     the value of Judgment Debtors' interest;

            (3)     the title in which interest was then held;

            (4)     any contingencies to Judgment Debtors' interest or right to control;

            (5)     the period of time during which such interest and control existed, and if

such interest or control no longer exists, set forth:

                 (i)     the circumstances under which such interest or control ceased;

      (ii)     whether the interest or right to control was transferred and if so, describe:

            (A)     any consideration received in exchange including its value,

            (B)     the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities was transferred.

**ANSWER:**

20.     In or about ▮▮▮▮▮▮▮, did Judgment Debtors instruct or otherwise cause Clearstream to transfer Judgment Debtors' interest in $▮▮▮▮▮▮ denominated value of securities identified by ISIN ▮▮▮▮▮▮ ▮▮▮▮▮▮ from Bank Markazi's Clearstream account number ▮▮▮ to UBAE's account number ▮▮▮ at Clearstream? If so:

     a.     On what date was Clearstream instructed or caused to do so?

     b.     On what date was the transfer made?

     c.     To whom was the asset transferred?

d.     In what capacity did the transferee receive and hold the asset?

e.     Identify the consideration, if any, given in exchange for this transfer.  Include:

     (1)    the type of consideration,

     (2)    the value of the consideration,

     (3)    who transferred the consideration,

     (4)    who received the consideration, and

     (5)    when the consideration was received.

f.     Set forth all purposes of the transfer of the securities.

g.     Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

     (1)    the nature of Judgment Debtors' interest or control;

     (2)    the value of Judgment Debtors' interest;

     (3)    the title in which interest was then held;

     (4)    any contingencies to Judgment Debtors' interest or right to control;

     (5)    the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

          (i)    the circumstances under which such interest or control ceased;

          (ii)    whether the interest or right to control was transferred and if so, describe:

               (A)    any consideration received in exchange including its value,

               (B)    the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities

was transferred.

**ANSWER:**

21.     In or about [redacted], did Judgment Debtors instruct or otherwise cause Clearstream

to transfer Judgment Debtors' interest in $[redacted] denominated value of securities

identified by ISIN [redacted] [redacted] from Bank Markazi's Clearstream account

number [redacted] to UBAE's account number [redacted] at Clearstream?  If so:

     a.     On what date was Clearstream instructed or caused to do so?

     b.     On what date was the transfer made?

     c.     To whom was the asset transferred?

     d.     In what capacity did the transferee receive and hold the asset?

     e.     Identify the consideration, if any, given in exchange for this transfer.  Include:

          (1)     the type of consideration,

    (2)    the value of the consideration,

    (3)    who transferred the consideration,

    (4)    who received the consideration, and

    (5)    when the consideration was received.

f.    Set forth all purposes of the transfer of the securities.

g.    Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

    (1)    the nature of Judgment Debtors' interest or control;

    (2)    the value of Judgment Debtors' interest;

    (3)    the title in which interest was then held;

    (4)    any contingencies to Judgment Debtors' interest or right to control;

    (5)    the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

        (i)    the circumstances under which such interest or control ceased;

        (ii)    whether the interest or right to control was transferred and if so, describe:

            (A)    any consideration received in exchange including its value,

            (B)    the date of the transfer, and

(C)    the identity of the person or entity to whom such interest in or control of the securities was transferred.

**ANSWER:**

22.    In or about _____ , did Judgment Debtors instruct or otherwise cause or permit

Clearstream or UBAE to transfer an interest in $_____ denominated value of securities

identified by ISIN _____ "_____ " from UBAE's account number ___ at

Clearstream to UBAE's _____ account number ___ at Clearstream? If so:

    a.    On what date was Clearstream or UBAE instructed, caused or permitted to do so?

    b.    On what date was the transfer made?

    c.    To whom was the asset transferred?

    d.    In what capacity did the transferee receive and hold the asset?

    e.    Identify the consideration, if any, given in exchange for this transfer.  Include:

        (1)    the type of consideration,

        (2)    the value of the consideration,

        (3)    who transferred the consideration,

        (4)    who received the consideration, and

        (5)    when the consideration was received.

f.      Set forth all purposes of the transfer of the securities.

g.      After the transfer was completed, disclose any direct interest, beneficial interest, or control Judgment Debtors retained over the asset.

h.      Did Judgment Debtors have any direct or indirect interest, beneficial interest, or control over the securities on June 13, 2008?  If so, describe the nature of the interest or control including the following:

      (1)      the nature of Judgment Debtors' interest or control;

      (2)      the value of Judgment Debtors' interest;

      (3)      the title in which interest was then held;

      (4)      any contingencies to Judgment Debtors' interest or right to control;

      (5)      the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

            (i)      the circumstances under which such interest or control ceased;

            (ii)      whether the interest or right to control was transferred and if so, describe:

                  (A)      any consideration received in exchange including its value,

                  (B)      the date of the transfer, and

(C)      the identity of the person or entity to whom such interest in or control of the securities was transferred.

**ANSWER:**

23.    In or about ███████, did Judgment Debtors instruct or otherwise cause or permit

Clearstream or UBAE to transfer an interest in $█████████ denominated value of securities

identified by ISIN ████████ "████████" from UBAE's account number ████at

Clearstream to UBAE's ████████ account number ████ at Clearstream?  If so:



    a.    On what date was Clearstream or UBAE instructed, caused or permitted to do so?

    b.    On what date was the transfer made?

    c.    To whom was the asset transferred?

    d.    In what capacity did the transferee receive and hold the asset?

    e.    Identify the consideration, if any, given in exchange for this transfer.  Include:

        (1)    the type of consideration,

        (2)    the value of the consideration,

        (3)    who transferred the consideration,

        (4)    who received the consideration, and

        (5)    when the consideration was received.

    f.    Set forth all purposes of the transfer of the securities.

    g.    After the transfer was completed, disclose any direct interest, beneficial interest,

or control Judgment Debtors retained over the asset.

    h.    Did Judgment Debtors have any direct or indirect interest, beneficial interest, or

control over the securities on June 13, 2008?  If so, describe the nature of the interest or

control including the following:

(1)     the nature of Judgment Debtors' interest or control;

(2)     the value of Judgment Debtors' interest;

(3)     the title in which interest was then held;

(4)     any contingencies to Judgment Debtors' interest or right to control;

(5)     the period of time during which such interest and control existed, and if such interest or control no longer exists, set forth:

      (i)     the circumstances under which such interest or control ceased;

      (ii)     whether the interest or right to control was transferred and if so, describe:

            (A)     any consideration received in exchange including its value,

            (B)     the date of the transfer, and

(C)     the identity of the person or entity to whom such interest in or control of the securities was transferred.

**ANSWER:**

24.     State whether Bank Markazi is an instrumentality of the Islamic Republic of Iran.

**ANSWER:**

25.     State whether the document attached as Exhibit D hereto is a true and correct copy of an

application by Bank Markazi to open an account at Clearstream.  If so, state whether the

information provided by Bank Markazi in the attached Exhibit D was true at the time the

documents were prepared and executed.  If any such information has changed, please so indicate

and provide the new information indicating the date when the change occurred.

**ANSWER:**

26.     State whether the government of Islamic Republic of Iran owns any of the stock or other ownership interest of Bank Markazi. If so, state:

a.      the percentage of total ownership interest owned by the government of Islamic Republic of Iran;

b.      whether the government of Islamic Republic of Iran controls the management of Bank Markazi; and

c.      whether the government of Islamic Republic of Iran has the right to appoint the directors or officers of Bank Markazi.

**ANSWER:**

27.     State whether the money and other assets on deposit with Bank Markazi are owned exclusively by the government of Islamic Republic of Iran and its instrumentalities.

**ANSWER:**

28.    State whether the securities identified in questions 1 through 23 above, and/or the proceeds thereof, were held, transferred, or otherwise used by Judgment Debtors in connection with commercial activities.  If so, describe the commercial activities.

**ANSWER:**

29.    (a)    Set forth if there are any written agreement(s) between the Judgment Debtors and UBAE.

(b)    If any such written agreements exist as referenced in (a), identify and annex copies of any and all such written agreement(s) to these interrogatories.

**ANSWER:**

30.    Set forth the names, addresses, titles, and positions of each and every person acting on

behalf of the Judgment Debtors, who participated in directing, causing or consenting to the

transfers of the assets mentioned in questions 1 through 23 above.

**ANSWER:**

31.    (a)    Set forth if there are any written agreement(s) between the Judgment Debtors and

Clearstream.

    (b)    If any such written agreements exist as referenced in (a), identify and annex

copies of any and all such written agreement(s) to these interrogatories.

**ANSWER:**

32.    Set forth in detail the fees and commissions paid to Clearstream in connection with your

account number ▮▮▮▮(including, but not limited to maintenance, transaction, and loan fees)

during the period from January 1, 2007 through the date of your response, stating for each fee:

        (i)     its purpose,

        (ii)    the amount, and

        (iii)   date paid.

**ANSWER:**

33.    Have the Judgment Debtors maintained any account with UBAE during the period from January 1, 2007 through the date of your response?  If so, state as follows:

      a.    the account number;

      b.    the account holder's name;

      c.    the name of beneficial owners of the account;

      d.    the date each account was first opened;

      e.    the date each account was closed;

      f.    the fees and commissions paid to UBAE in connection with each account (including, but not limited to maintenance, transaction, and loan fees) during the period from January 1, 2007 through the date of your response, stating for each fee:

      (i)    its purpose,

      (ii)    the amount, and

      (iii)    date paid;

      g.    identify the assets on deposit in such accounts, including ISIN numbers, quantity and market value.

**ANSWER:**

34.    Do Judgment Debtor's have any interest in any accounts with financial institutions located in the United States of America, whether title is held under the name of the Judgment Debtor, its agents or instrumentalities, or in the name of others?  If so, as to each account, what is the title of the account, the date opened, amounts presently on deposit, name and address of the financial institution with whom the account is held; if closed, the amount on deposit when closed and date closed?

**ANSWER:**

35.    Are Judgment Debtors involved in any transactions, directly or indirectly, with anyone located in the United States of America, as a result of which Judgment Debtors may now have, or may in the future become entitled to, money or credit?  If so, describe the full details of each such transaction including, but not limited to, the name and address of the person located in the United States of America with whom such transactions exist.

**ANSWER:**

36.     Do Judgment Debtors have an interest, directly or indirectly, in any real or personal property located within the United States of America?  If so, describe in detail the property, its location, the title in which such property is held and the nature of Judgment Debtors' interest therein.

**ANSWER:**

37.     State the name of the person answering these questions and his or her position,

office, or title with Judgment Debtors.

**ANSWER:**

I hereby certify that I have reviewed the above Interrogatories and responses thereto and that

they are true and accurate to the best of my knowledge and belief.

_____

Subscribed and sworn to me this

_____ day of _____,2009.

_____
Notary Public/

137661

60

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), *et al.*, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) | Consolidated Civil Actions:<br>01-2094 (RCL)<br>01-2684 (RCL) |
| ISLAMIC REPUBLIC OF IRAN, *et al*, | ) ) |
| Defendants. | ) ) ) |

**JUDGMENT**

In accord with the Memorandum Opinion issued this date, it is hereby

ORDERED that Default Judgment be entered in favor of plaintiffs and against

defendants, jointly and severally, in the amount of $2,656,944,877.00, which shall be allocated

in the following manner:

1.    *Wrongful Death Claims Brought by the Personal Representatives and Estates of*

*Deceased Servicemen*



| | |
|---|---|
| Abbott, Terry | $1,485,255.00 |
| Allman, John Robert | $945,937.00 |
| Bates, Ronny Kent | $2,991,635.00 |
| Baynard, James | $636,517.00 |
| Brannon, Jess W. | $988,897.00 |
| Belmer, Alvin Burton | $8,384,746.00 |
| Blankenship, Richard D. | $1,421,889.00 |
| Blocker, John W | $975,671.00 |
| Boccia, Joseph John Jr | $1,276,641.00 |
| Bohannon, Leon | $766,590.00 |

ECF
DOCUMENT
I hereby attest and certify that this is a printed copy
of a document which was electronically filed with the
United States District Court for the District of Columbia.
Date Filed _9/7/07_
NANCY MAYER-WHITTINGTON, CLERK
by _____
9/6/08

- 1 -

| | |
|---|---|
| Bonk, John Jr. | $904,220.00 |
| Boulos, Jeffrey Joseph | $1,154,112.00 |
| Boyett, John Norman | $2,235,375.00 |
| Burley, William | $170,847.00 |
| Callahan, Paul | $974,546.00 |
| Camara, Mecot | $1,882,308.00 |
| Campus, Bradley | $433,959.00 |
| Ceasar, Johnnie | $313,593.00 |
| Conley, Robert Allen | $962,677.00 |
| Cook, Charles Dennis | $837,147.00 |
| Copeland, Johnny Len | $541,325.00 |
| Cosner, David | $1,105,668.00 |
| Coulman, Kevin | $1,287,092.00 |
| Crudale, Rick | $1,004,731.00 |
| Cyzick, Russell | $575,554.00 |
| Devlin, Michael | $939,887.00 |
| Dorsey, Nathaniel | $638,703.00 |
| Dunnigan, Timothy | $709,232.00 |
| Earle, Bryan | $1,286,372.00 |
| Estes, Danny R. | $1,000,157.00 |
| Fluegel, Richard Andrew | $1,089,811.00 |
| Fulcher, Michael D. | $1,257,150.00 |
| Gallagher, Sean | $674,382.00 |
| Gangur, George | $1,000,935.00 |
| Garcia, Randall | $1,127,694.00 |
| Ghumm, Harold | $1,260,508.00 |
| Giblin, Timothy | $1,301,526.00 |
| Gorchinski, Michael | $1,931,668.00 |
| Gordon, Richard | $965,609.00 |
| Green, Davin M. | $1,025,050.00 |
| Hairston, Thomas | $1,489,395.00 |
| Haskell, Michael | $2,871,058.00 |
| Helms, Mark Anthony | $1,028,509.00 |
| Hester, Stanley G. | $1,493,349.00 |
| Hildreth, Donald Wayne | $1,425,177.00 |
| Holberton, Richard | $1,818,176.00 |
| Hudson, Dr. John | $4,072,010.00 |
| Hukill, Maurice Edward | $3,038,258.00 |
| Iacovino, Edward Jr. | $407,196.00 |
| Innocenzi, Paul III | $1,715,253.00 |
| Jackowski, James | $463,355.00 |
| James, Jeffrey Wilbur | $251,607.00 |
| Jenkins, Nathaniel Walter | $7,599,314 |

-2-

| | |
|---|---|
| Johnston, Edward Anthony | $1,246,535.00 |
| Jones, Steven | $801,721.00 |
| Julian, Thomas Adrian | $415,311.00 |
| Keown, Thomas | $1,013,901.00 |
| Kluck, Daniel | $922,630.00 |
| Knipple, James C. | $1,018,665.00 |
| Kreischer, Freas H. III | $1,059,185.00 |
| Laise, Keith | $447,984.00 |
| Langon, James IV | $1,066,903.00 |
| LaRiviere, Michael Scott | $1,056,282.00 |
| LaRiviere, Steven | $986,622.00 |
| Lemnah, Richard | $1,842,869.00 |
| Livingston, Joseph R. ("Joel") III | $1,762,193.00 |
| Lyon, Paul D. Jr. | $1,034,459.00 |
| Macroglou, John | $2,183,935.00 |
| Maitland, Samuel Jr. | $970,700.00 |
| Martin, Charlie Robert | $1,316,085.00 |
| Massa, David | $674,558.00 |
| McCall, John | $853,420.00 |
| McDonough, James E. | $952,847.00 |
| McMahon, Timothy R. | $984,020.00 |
| Menkins, Richard II | $850,938.00 |
| Meurer, Ronald | $1,855,272.00 |
| Milano, Joseph Peter | $674,258.00 |
| Moore, Joseph | $980,150.00 |
| Myers, Harry Douglas | $891,144.00 |
| Nairn, David | $1,562,682.00 |
| Olson, John Arne | $1,010,497.00 |
| Owens, Joseph Albert | $502,237.00 |
| Page, Connie Ray | $1,012,211.00 |
| Parker, Ulysses Gregory | $641,523.00 |
| Pearson, John L. | $1,816,369.00 |
| Perron, Thomas S. | $424,110.00 |
| Phillips, John Arthur Jr. | $1,030,308.00 |
| Pollard, William Roy | $1,111,556.00 |
| Prevatt, Victor Mark | $862,635.00 |
| Price, James | $989,921.00 |
| Prindeville, Patrick Kerry | $305,675.00 |
| Quirante, Diomedes J. | $2,178,822.00 |
| Richardson, Warren | $796,673.00 |
| Rotondo, Louis J. | $2,276,348.00 |
| Sauls, Michael Caleb | $974,601.00 |
| Schnorf, Charles Jeffrey | $2,790,541.00 |

- 3 -

| | |
|---|---|
| Schultz, Scott Lee | $675,361.00 |
| Scialabba, Peter | $2,462,179.00 |
| Scott, Gary Randall | $432,024.00 |
| Shipp, Thomas Alan | $738,895.00 |
| Shropshire, Jerryl | $212,061.00 |
| Simpson, Larry H. Jr. | $5,995,660.00 |
| Smith, Kirk Hall | $710,042.00 |
| Smith, Thomas Gerard | $980,543.00 |
| Smith, Vincent | $1,285,915.00 |
| Sommerhof, William Scott | $1,361,062.00 |
| Spencer, Stephen Eugene | $974,298.00 |
| Stelpflug, William | $1,094,429.00 |
| Stephens, Horace Renardo Jr. ("Ricky") | $446,107.00 |
| Stockton, Craig | $1,007,526.00 |
| Stokes, Jeffrey | $1,599,994.00 |
| Sturghill, Eric D. | $725,378.00 |
| Sundar, Devon | $1,394,608.00 |
| Thorstad, Thomas Paul | $1,921,086.00 |
| Tingley, Stephen | $1,439,655.00 |
| Vallone, Donald H. Jr. | $462,193.00 |
| Washington, Eric Glenn | $1,069,270.00 |
| Wigglesworth, Dwayne | $1,001,122.00 |
| Williams, Rodney J. | $671,206.00 |
| Williams, Scipio Jr. | $1,635,994.00 |
| Williamson, Johnny Adam | $443,409.00 |
| Winter, William Ellis | $2,534,910.00 |
| Woollett, Donald Elberan | $2,021,565.00 |
| Wyche, Craig | $1,025,860.00 |
| Young, Jeffrey D. | $618,891.00 |

2.  *Battery Claims Brought by Injured Servicemen*

| | |
|---|---|
| Albright, Marvin | $5,000,000.00 |
| Arroyo, Pablo | $5,000,000.00 |
| Banks, Anthony | $7,500,000.00 |
| Burnette, Rodney Darrell | $8,000,000.00 |
| Comes, Frank Jr. | $1,500,000.00 |
| Dolphin, Glenn | $3,000,000.00 |
| Eaves, Frederick Daniel | $1,500,000.00 |
| Frye, Charles | $2,200,000.00 |
| Gamer, Truman Dale | $7,500,000.00 |
| Gerlach, Larry | $12,000,000.00 |
| Hlywiak, John | $1,500,000.00 |

-4-

| | |
|---|---|
| Hunt, Orval | $8,000,000.00 |
| Jacobs, Joseph P. | $5,000,000.00 |
| Kirkpatrick, Brian | $8,000,000.00 |
| Matthews, Burnham | $7,000,000.00 |
| Mitchell, Timothy | $4,555,099.00 |
| Moore, Lovelle "Darrell" | $8,314,513.00 |
| Nashton, Jeffrey | $11,776,632.00 |
| Oliver, John | $3,277,542.00 |
| Rivers, Paul | $7,000,000.00 |
| Russell, Stephen | $9,252,749.00 |
| Spaulding, Dana | $9,559,609.00 |
| Swinson, Craig Joseph | $1,500,000.00 |
| Toma, Michael | $7,500,000.00 |
| Wheeler, Danny | $5,000,000.00 |
| Young, Thomas D. | $1,500,000.00 |

3.    *Claims Brought by Family Members of Deceased Servicemen*

| | |
|---|---|
| Abbey, Lilla Woollett | $2,500,000.00 |
| Abbott, James | $5,000,000.00 |
| Abbott, Mary (Estate of) | $5,000,000.00 |
| Adams, Elizabeth | $2,500,000.00 |
| Ahlquist, Eileen Prindeville | $2,500,000.00 |
| Alarcon, Miralda (Judith Maitland) | $8,000,000.00 |
| Allman, Anne | $5,000,000.00 |
| Allman, Robert | $5,000,000.00 |
| Allman, Theodore (Estate of) | $2,500,000.00 |
| Allman, DiAnne Margaret ("Maggie") | $2,500,000.00 |
| Alvarez, Margaret E | $2,500,000.00 |
| Angus, Kimberly F. | $2,500,000.00 |
| Bates, Donnie | $2,500,000.00 |
| Bates, Johnny | $2,500,000.00 |
| Bates, Laura | $5,000,000.00 |
| Bates, Margie | $5,000,000.00 |
| Bates, Monty | $2,500,000.00 |
| Bates, Thomas Jr. | $2,500,000.00 |
| Bates, Thomas C., Sr. | $5,000,000.00 |
| Baumgartner, Mary E | $2,500,000.00 |
| Baynard, Anthony | $2,500,000.00 |
| Baynard, Barry | $2,500,000.00 |
| Baynard, Emerson | $2,500,000.00 |
| Baynard, Philip | $2,500,000.00 |
| Baynard, Thomasine | $8,000,000.00 |

-5-

| | |
|---|---|
| Baynard, Timothy | $2,500,000.00 |
| Baynard, Wayne. | $2,500,000.00 |
| Baynard, Stephen | $5,000,000.00 |
| Beard, Anna | $2,500,000.00 |
| Beck, Mary Ann | $2,500,000.00 |
| Belmer, Alue | $5,000,000.00 |
| Belmer, Annette | $2,500,000.00 |
| Belmer, Clarence | $2,500,000.00 |
| Belmer, Colby Keith | $5,000,000.00 |
| Belmer, Denise | $2,500,000.00 |
| Belmer, Donna | $2,500,000.00 |
| Belmer, Faye | $8,000,000.00 |
| Belmer, Kenneth | $2,500,000.00 |
| Belmer, Luddie | $5,000,000.00 |
| Biellow, Shawn | $2,500,000.00 |
| Black, Mary Frances | $2,500,000.00 |
| Blankenship, Donald Jr. | $2,500,000.00 |
| Blankenship, Donald Sr. | $5,000,000.00 |
| Blankenship, Mary (Estate of) | $5,000,000.00 |
| Blocker, Alice | $5,000,000.00 |
| Blocker, Douglas | $2,500,000.00 |
| Blocker, John R. | $5,000,000.00 |
| Blocker, Robert | $2,500,000.00 |
| Boccia, James | $2,500,000.00 |
| Boccia, Joseph Sr. | $5,000,000.00 |
| Boccia, Patricia | $5,000,000.00 |
| Boccia, Raymond | $2,500,000.00 |
| Boccia, Richard | $2,500,000.00 |
| Boccia, Ronnie (Veronica) | $2,500,000.00 |
| Boddie, Leticia | $2,500,000.00 |
| Bohannon, Angela | $2,500,000.00 |
| Bohannon, Anthony | $2,500,000.00 |
| Bohannon, Carrie | $5,000,000.00 |
| Bohannon, David | $2,500,000.00 |
| Bohannon, Edna | $8,000,000.00 |
| Bohannon, Leon Sr. | $5,000,000.00 |
| Bohannon, Ricki | $2,500,000.00 |
| Bolinger, Billie Jean | $5,000,000.00 |
| Boulos, Joseph | $5,000,000.00 |
| Boulos, Lydia | $2,500,000.00 |
| Boulos, Marie | $5,000,000.00 |
| Bowler, Rebecca | $2,500,000.00 |
| Boyett, Lavon | $5,000,000.00 |
| Boyett, Norman E. Jr. (Estate of) | $5,000,000.00 |

-6-

| | |
|---|---|
| Boyett, Theresa U. Roth | $8,000,000.00 |
| Boyett, William A. | $2,500,000.00 |
| Breeden, Susan Schnorf | $2,500,000.00 |
| Briscoe, Damion | $2,500,000.00 |
| Brown, Christine | $5,000,000.00 |
| Brunette, Rosanne | $2,500,000.00 |
| Buckner, Mary Lynn | $8,000,000.00 |
| Burley, Claude (Estate of) | $5,000,000.00 |
| Burley, William Douglas (Estate of) | $2,500,000.00 |
| Burley, Myra | $2,500,000.00 |
| Calabro, Kathleen | $2,500,000.00 |
| Caldera, Rachel | $2,500,000.00 |
| Callahan, Avenell | $5,000,000.00 |
| Callahan, Michael | $2,500,000.00 |
| Calloway, Patricia (Patsy Ann) | $2,500,000.00 |
| Camara, Elisa Rock | $2,500,000.00 |
| Camara, Theresa Riggs | $2,500,000.00 |
| Campbell, Candace | $2,500,000.00 |
| Campus, Clare | $5,000,000.00 |
| Capobianco, Elaine | $2,500,000.00 |
| Carter, Florene Martin | $2,500,000.00 |
| Cash, Phyllis A. | $2,500,000.00 |
| Catano, Theresa | $2,500,000.00 |
| Ceasar, Bruce | $2,500,000.00 |
| Ceasar, Franklin | $2,500,000.00 |
| Ceasar, Fredrick | $2,500,000.00 |
| Ceasar, Robbie Nell | $5,000,000.00 |
| Ceasar, Sybil | $1,250,000.00 |
| Cecca, Christine Devlin | $2,500,000.00 |
| Chapman, Tammy | $2,500,000.00 |
| Cherry, James | $2,500,000.00 |
| Cherry, Sonia | $2,500,000.00 |
| Chios, Adele H. | $2,500,000.00 |
| Christian, Jana M. | $2,500,000.00 |
| Christian, Sharon Rose | $2,500,000.00 |
| Ciupaska, Susan | $2,500,000.00 |
| Clark, LeShune Stokes | $2,500,000.00 |
| Clark, Rosemary | $2,500,000.00 |
| Cobble, Mary Ann | $5,000,000.00 |
| Collard, Karen Shipp | $2,500,000.00 |
| Collier, Jennifer | $5,000,000.00 |
| Collier, Melia Winter | $8,000,000.00 |
| Coltrane, Deborah M. | $8,000,000.00 |
| Conley, James N. Jr | $5,000,000.00 |

-7-

| | |
|---|---|
| Conley, Roberta Li | $5,000,000.00 |
| Cook, Charles F. | $5,000,000.00 |
| Cook, Elizabeth A. | $2,500,000.00 |
| Cook, Mary A. (Estate of) | $5,000,000.00 |
| Copeland, Alan Tracy | $2,500,000.00 |
| Copeland, Betty | $5,000,000.00 |
| Copeland, Donald | $5,000,000.00 |
| Corry, Blanche | $2,500,000.00 |
| Cosner, Harold | $5,000,000.00 |
| Cosner, Jeffrey | $2,500,000.00 |
| Cosner, Leanna | $5,000,000.00 |
| Cosner, Marva Lynn (Estate of) | $5,000,000.00 |
| Cossaboom, Cheryl | $2,500,000.00 |
| Coulman, Bryan Thomas | $2,500,000.00 |
| Coulman, Christopher J. | $2,500,000.00 |
| Coulman, Dennis P. | $2,500,000.00 |
| Coulman, Lorraine M. | $5,000,000.00 |
| Coulman, Robert D. | $2,500,000.00 |
| Coulman, Robert Louis | $5,000,000.00 |
| Covington, Charlita Martin | $5,000,000.00 |
| Crouch, Amanda | $5,000,000.00 |
| Crudale, Marie | $5,000,000.00 |
| Cyzick, Eugene | $2,500,000.00 |
| Dallachie, Lynn | $8,000,000.00 |
| Deal, Anne | $2,500,000.00 |
| Derbyshire, Lynn Smith | $2,500,000.00 |
| Desjardins, Theresa | $5,000,000.00 |
| Devlin, Christine | $5,000,000.00 |
| Devlin, Daniel | $2,500,000.00 |
| Devlin, Gabrielle | $2,500,000.00 |
| Devlin, Richard | $2,500,000.00 |
| Devlin, Sean | $2,500,000.00 |
| Donahue (Milano), Rosalie | $2,500,000.00 |
| Doray, Ashley | $5,000,000.00 |
| Doss, Rebecca | $2,500,000.00 |
| Dunnigan, Chester | $2,500,000.00 |
| Dunnigan, Elizabeth Ann | $2,500,000.00 |
| Dunnigan, Michael | $2,500,000.00 |
| Dunnigan, William | $2,500,000.00 |
| Dunnigan, Claudine | $5,000,000.00 |
| Edquist, Janice Thorstad | $2,500,000.00 |
| Ervin, Mary Ruth | $5,000,000.00 |
| Estes, Barbara | $5,000,000.00 |
| Estes, Charles | $5,000,000.00 |

-8-

137661

| | |
|---|---|
| Estes, Frank | $2,500,000.00 |
| Fansler, Lori | $2,500,000.00 |
| Farthing, Angela Dawn | $2,500,000.00 |
| Ferguson, Arlington | $1,250,000.00 |
| Ferguson, Hilton | $1,250,000.00 |
| Fish, Linda Sandback | $8,000,000.00 |
| Fox, Nancy Brocksbank | $5,000,000.00 |
| Fox, Tia | $2,500,000.00 |
| Freshour, Tammy | $8,000,000.00 |
| Fulcher, Ruby | $5,000,000.00 |
| Gallagher, Barbara | $5,000,000.00 |
| Gallagher, Brian | $2,500,000.00 |
| Gallagher, James (Estate of) | $5,000,000.00 |
| Gallagher, James Jr. | $2,500,000.00 |
| Gallagher, Kevin | $2,500,000.00 |
| Gallagher, Michael | $2,500,000.00 |
| Gangur, Dimitri | $5,000,000.00 |
| Gangur, Mary | $5,000,000.00 |
| Garcia, Jess | $5,000,000.00 |
| Garcia, Ronald | $2,500,000.00 |
| Garcia, Roxanne | $2,500,000.00 |
| Garcia, Russell | $2,500,000.00 |
| Garcia, Violet | $5,000,000.00 |
| Garza, Suzanne Perron | $2,500,000.00 |
| Gattegno, Jeanne | $2,500,000.00 |
| Ghumm, Arlene | $8,000,000.00 |
| Ghumm, Ashley | $5,000,000.00 |
| Ghumm, Bill | $2,500,000.00 |
| Ghumm, Edward | $2,500,000.00 |
| Ghumm, Hildegard | $5,000,000.00 |
| Ghumm, Jedaiah (Estate of) | $5,000,000.00 |
| Ghumm, Jesse | $2,500,000.00 |
| Ghumm, Leroy | $5,000,000.00 |
| Ghumm, Moronica | $5,000,000.00 |
| Giblin, Donald | $2,500,000.00 |
| Giblin, Jeanne | $5,000,000.00 |
| Giblin, Michael | $2,500,000.00 |
| Giblin, Tiffany | $5,000,000.00 |
| Giblin, Valerie | $8,000,000.00 |
| Giblin, William | $2,500,000.00 |
| Gilford-Smith, Thad | $2,500,000.00 |
| Gintonio, Rebecca | $2,500,000.00 |
| Goff, Dawn | $2,500,000.00 |
| Gorchinski, Christina | $5,000,000.00 |

-9-

| | |
|---|---|
| Gorchinski, Judy | $8,000,000.00 |
| Gorchinski, Kevin | $5,000,000.00 |
| Gorchinski, Valerie | $5,000,000.00 |
| Gordon, Alice | $5,000,000.00 |
| Gordon, Joseph | $2,500,000.00 |
| Gordon, Linda | $2,500,000.00 |
| Gordon, Norris (Estate of) | $5,000,000.00 |
| Gordon, Paul | $2,500,000.00 |
| Grant, Andrea | $2,500,000.00 |
| Graves, Deborah | $2,500,000.00 |
| Green, Deborah | $8,000,000.00 |
| Gregg, Liberty Quirante | $2,500,000.00 |
| Griffin, Alex | $2,500,000.00 |
| Grimsley, Catherine E. | $2,500,000.00 |
| Gummer, Megan | $2,500,000.00 |
| Guz, Lyda Woollett | $2,500,000.00 |
| Hairston, Darlene | $8,000,000.00 |
| Hanrahan, Tara | $2,500,000.00 |
| Hart, Mary Clyde | $2,500,000.00 |
| Haskill, Brenda | $2,500,000.00 |
| Haskell, Jeffrey | $2,500,000.00 |
| Hedge, Kathleen S. | $8,000,000.00 |
| Helms, Christopher Todd | $2,500,000.00 |
| Helms, Marvin R. | $5,000,000.00 |
| Hester, Doris | $8,000,000.00 |
| Hildreth, Clifton | $5,000,000.00 |
| Hildreth, Julia | $5,000,000.00 |
| Hildreth, Mary Ann | $8,000,000.00 |
| Hildreth, Michael Wayne | $5,000,000.00 |
| Hilton, Sharon A. | $2,500,000.00 |
| Holberton, Donald | $2,500,000.00 |
| Holberton, Patricia Lee | $5,000,000.00 |
| Holberton, Thomas | $2,500,000.00 |
| Hollifield, Tangie | $2,500,000.00 |
| Horner, Debra | $8,000,000.00 |
| House, Elizabeth | $2,500,000.00 |
| Houston, Joyce A. | $5,000,000.00 |
| Howell, Tammy Camara | $8,000,000.00 |
| Hudson, Lisa H. | $8,000,000.00 |
| Hudson, Lorenzo | $2,500,000.00 |
| Hudson, Lucy | $5,000,000.00 |
| Hudson, Ruth | $2,500,000.00 |
| Hudson, Samuel (Estate of) | $5,000,000.00 |
| Hudson, William J. | $5,000,000.00 |

| | |
|---|---|
| Hugis, Susan Thorstad (Estate of) | $2,500,000.00 |
| Hurlburt, Nancy Tingley | $2,500,000.00 |
| Hurston, Cynthia Perron | $2,500,000.00 |
| Iacovino, Edward Sr. (Estate of) | $5,000,000.00 |
| Iacovino, Elizabeth | $5,000,000.00 |
| Innocenzi, Deborah | $8,000,000.00 |
| Innocenzi, Kristin | $5,000,000.00 |
| Innocenzi, Mark | $2,500,000.00 |
| Innocenzi, Paul IV | $5,000,000.00 |
| Jaccom, Bernadette | $2,500,000.00 |
| Jackowski, John Jr. | $2,500,000.00 |
| Jackowski, John Sr. | $5,000,000.00 |
| Jacobus, Victoria | $2,500,000.00 |
| James, Elaine | $5,000,000.00 |
| Jenkins, Nathalie C. | $5,000,000.00 |
| Jenkins, Stephen | $2,500,000.00 |
| Jewett, Rebecca | $2,500,000.00 |
| Johnson, Linda Martin | $2,500,000.00 |
| Johnson, Ray | $2,500,000.00 |
| Johnson, Rennitta Stokes | $2,500,000.00 |
| Johnson, Sherry | $5,000,000.00 |
| Johnston, Charles | $2,500,000.00 |
| Johnston, Edwin | $5,000,000.00 |
| Johnston, Mary Ann | $5,000,000.00 |
| Johnston, Zandra LaRiviere | $2,500,000.00 |
| Jones, Alicia | $2,500,000.00 |
| Jones, Corene Martin | $2,500,000.00 |
| Jones, Kia Briscoe | $2,500,000.00 |
| Jones, Mark | $2,500,000.00 |
| Jones, Ollie | $5,000,000.00 |
| Jones, Sandra D. | $5,000,000.00 |
| Jones, Synovure (Estate of) | $2,500,000.00 |
| Jordan, Robin Copeland | $2,500,000.00 |
| Jordan, Susan Scott | $2,500,000.00 |
| Julian, Joyce | $5,000,000.00 |
| Julian, Karl | $5,000,000.00 |
| Jurist, Nada | $2,500,000.00 |
| Keown, Adam | $2,500,000.00 |
| Keown, Bobby Jr. | $2,500,000.00 |
| Keown, Bobby Sr. | $5,000,000.00 |
| Keown, Darren | $2,500,000.00 |
| Keown, William | $2,500,000.00 |
| Kirker, Mary Joe | $2,500,000.00 |
| Kluck, Kelly | $2,500,000.00 |

-11-

137661

| | |
|---|---|
| Kluck, Michael | $2,500,000.00 |
| Knipple, John D. (Estate of) | $5,000,000.00 |
| Knipple, John R. | $2,500,000.00 |
| Knipple, Pauline (Estate of) | $5,000,000.00 |
| Knox, Shirley L. | $2,500,000.00 |
| Kreischer, Doreen | $5,000,000.00 |
| Kreischer, Freas H. Jr. | $5,000,000.00 |
| Lake, Cynthia D. | $2,500,000.00 |
| Lange, Wendy L. | $2,500,000.00 |
| Langon, James III | $5,000,000.00 |
| LaRiviere, Eugene | $2,500,000.00 |
| LaRiviere, Janet | $5,000,000.00 |
| LaRiviere, John M. | $2,500,000.00 |
| LaRiviere, Lesley | $2,500,000.00 |
| LaRiviere, Michael | $2,500,000.00 |
| LaRiviere, Nancy | $2,500,000.00 |
| LaRiviere, Richard | $2,500,000.00 |
| LaRiviere, Richard G. (Estate of) | $5,000,000.00 |
| LaRiviere, Robert | $2,500,000.00 |
| LaRiviere, William | $2,500,000.00 |
| Lawton, Cathy L. | $2,500,000.00 |
| LeGault, Heidi Crudale | $8,000,000.00 |
| Lemnah, Clarence (Estate of) | $5,000,000.00 |
| Lemnah, Etta | $5,000,000.00 |
| Lemnah, Fay | $2,500,000.00 |
| Lemnah, Harold | $2,500,000.00 |
| Lemnah, Marlys | $8,000,000.00 |
| Lemnah, Robert | $2,500,000.00 |
| Lemnah, Ronald | $2,500,000.00 |
| Livingston, Annette R. | $8,000,000.00 |
| Livingston, Joseph R. IV | $5,000,000.00 |
| Livingston, Joseph R. Jr. (Estate of) | $5,000,000.00 |
| Lynch, Robin M. | $2,500,000.00 |
| Lyon, Earl | $2,500,000.00 |
| Lyon, Francisco | $2,500,000.00 |
| Lyon, June | $2,500,000.00 |
| Lyon, Maria | $5,000,000.00 |
| Lyon, Paul D. Sr. | $5,000,000.00 |
| Lyon, Valerie | $2,500,000.00 |
| Macroglou, Heather | $5,000,000.00 |
| Mahoney, Kathleen Devlin | $2,500,000.00 |
| Maitland, Kenty | $2,500,000.00 |
| Maitland, Leysnal | $5,000,000.00 |
| Maitland, Samuel Sr. | $5,000,000.00 |

-12-

| | |
|---|---|
| Maitland, Shirla | $2,500,000.00 |
| Marshall, Virginia Boccia | $2,500,000.00 |
| Martin, John | $2,500,000.00 |
| Martin, Pacita | $8,000,000.00 |
| Martin, Renerio | $5,000,000.00 |
| Martin, Ruby | $5,000,000.00 |
| Martin, Shirley | $5,000,000.00 |
| Mason, Mary | $5,000,000.00 |
| Massa, Cristina | $5,000,000.00 |
| Massa, Edmund | $2,500,000.00 |
| Massa, Joao ("John") | $2,500,000.00 |
| Massa, Jose ("Joe") | $2,500,000.00 |
| Massa, Manuel Jr. | $2,500,000.00 |
| Massa, Ramiro | $2,500,000.00 |
| McCall, Mary | $5,000,000.00 |
| McCall, Thomas (Estate of) | $5,000,000.00 |
| McCall, Valerie | $2,500,000.00 |
| McDermott, Gail | $2,500,000.00 |
| McFarlin, Julia A. | $2,500,000.00 |
| McMahon, George | $2,500,000.00 |
| McMahon, Michael | $2,500,000.00 |
| McPhee, Patty | $5,000,000.00 |
| Menkins, Darren | $2,500,000.00 |
| Menkins, Gregory | $2,500,000.00 |
| Menkins, Margaret | $5,000,000.00 |
| Menkins, Richard H. | $5,000,000.00 |
| Meurer, Jay T. | $2,500,000.00 |
| Meurer, John | $5,000,000.00 |
| Meurer, John Thomas | $2,500,000.00 |
| Meurer, Mary Lou | $5,000,000.00 |
| Meurer, Michael | $2,500,000.00 |
| Meyer, Penny | $2,500,000.00 |
| Milano, Angela | $5,000,000.00 |
| Milano, Peter Jr. | $5,000,000.00 |
| Miller, Earline | $5,000,000.00 |
| Miller, Henry | $2,500,000.00 |
| Miller, Patricia | $2,500,000.00 |
| Montgomery, Helen | $2,500,000.00 |
| Moore, Betty | $5,000,000.00 |
| Moore, Harry | $5,000,000.00 |
| Moore, Kimberly | $2,500,000.00 |
| Moore, Mary | $8,000,000.00 |
| Moore, Melissa Lea | $2,500,000.00 |
| Moore, Michael (Estate of) | $2,500,000.00 |

-13-

| | |
|---|---|
| Moy, Elizabeth Phillips | $2,500,000.00 |
| Myers, Debra | $2,500,000.00 |
| Myers, Geneva | $5,000,000.00 |
| Myers, Harry A. | $5,000,000.00 |
| Nairn, Billie Ann | $5,000,000.00 |
| Nairn, Campbell J. III | $2,500,000.00 |
| Nairn, Campbell J. Jr. (Estate of) | $5,000,000.00 |
| Nairn, William P. | $2,500,000.00 |
| Norfleet, Richard | $5,000,000.00 |
| O'Connor, Deborah | $2,500,000.00 |
| Olaniji, Pearl | $5,000,000.00 |
| Olson, Bertha (Estate of) | $5,000,000.00 |
| Olson, Karen L. | $2,500,000.00 |
| Olson, Randal D. | $2,500,000.00 |
| Olson, Roger S. | $2,500,000.00 |
| Olson, Ronald J. | $2,500,000.00 |
| Olson, Sigurd (Estate of) | $5,000,000.00 |
| Owens, David | $2,500,000.00 |
| Owens, Deanna | $2,500,000.00 |
| Owens, Frances | $5,000,000.00 |
| Owens, James (Estate of) | $5,000,000.00 |
| Owens, Steven | $2,500,000.00 |
| Page, Connie Mack | $5,000,000.00 |
| Page, Judith K | $5,000,000.00 |
| Palmer, Lisa Menkins | $2,500,000.00 |
| Paolozzi, Geraldine | $2,500,000.00 |
| Pare, Maureen | $2,500,000.00 |
| Parker, Henry James | $2,500,000.00 |
| Parker, Sharon | $2,500,000.00 |
| Pearson, Helen M. | $5,000,000.00 |
| Pearson, John L. Jr. | $5,000,000.00 |
| Pearson, Sonia | $8,000,000.00 |
| Perron, Brett | $2,500,000.00 |
| Perron, Deborah Jean | $2,500,000.00 |
| Perron, Michelle | $2,500,000.00 |
| Perron, Ronald R. | $5,000,000.00 |
| Persky, Muriel | $5,000,000.00 |
| Peterson, Deborah D. | $2,500,000.00 |
| Petry, Sharon Conley | $2,500,000.00 |
| Petrick, Sandra | $2,500,000.00 |
| Phelps, Donna Vallone | $5,000,000.00 |
| Phillips, Harold | $2,500,000.00 |
| Phillips, John Arthur Sr. | $5,000,000.00 |
| Plickys, Donna Tingley | $2,500,000.00 |

-14-

| | |
|---|---|
| Pollard, Margaret Aileen | $8,000,000.00 |
| Pollard, Stacey Yvonne | $5,000,000.00 |
| Prevatt, Lee Hollan | $2,500,000.00 |
| Prevatt, Victor Thornton | $5,000,000.00 |
| Price, John | $5,000,000.00 |
| Price, Joseph | $2,500,000.00 |
| Prindeville, Barbara D. (Estate of) | $5,000,000.00 |
| Prindeville, Kathleen Tara | $2,500,000.00 |
| Prindeville, Michael | $2,500,000.00 |
| Prindeville, Paul | $5,000,000.00 |
| Prindeville, Sean | $2,500,000.00 |
| Quirante, Belinda J. | $5,000,000.00 |
| Quirante, Edgar | $2,500,000.00 |
| Quirante, Godofredo (Estate of) | $5,000,000.00 |
| Quirante, Milton | $2,500,000.00 |
| Quirante, Sabrina | $2,500,000.00 |
| Ray, Susan | $2,500,000.00 |
| Reininger, Laura M. | $2,500,000.00 |
| Richardson, Alan | $2,500,000.00 |
| Richardson, Beatrice | $5,000,000.00 |
| Richardson, Clarence | $5,000,000.00 |
| Richardson, Eric | $2,500,000.00 |
| Richardson, Lynette | $2,500,000.00 |
| Richardson, Vanessa | $2,500,000.00 |
| Richardson-Mills, Philiece | $5,000,000.00 |
| Ricks, Melrose | $5,000,000.00 |
| Riva, Belinda Quirante | $2,500,000.00 |
| Rockwell, Barbara | $5,000,000.00 |
| Rooney, Linda | $2,500,000.00 |
| Rose, Tara Smith | $2,500,000.00 |
| Ruark, Tammi | $2,500,000.00 |
| Rudkowski, Juliana | $2,500,000.00 |
| Russell, Marie McMahon | $2,500,000.00 |
| Sanchez, Alicia Lynn | $5,000,000.00 |
| Sauls, Andrew | $2,500,000.00 |
| Sauls, Henry Caleb | $2,500,000.00 |
| Sauls, Riley A. | $2,500,000.00 |
| Schnorf, Margaret Medler | $5,000,000.00 |
| Schnorf, Richard (brother) | $2,500,000.00 |
| Schnorf, Richard (father) | $5,000,000.00 |
| Schnorf, Robert | $2,500,000.00 |
| Schultz, Beverly | $5,000,000.00 |
| Schultz, Dennis James | $2,500,000.00 |
| Schultz, Dennis Ray | $5,000,000.00 |

-15-

| | |
|---|---|
| Scialabba, Frank | $5,000,000.00 |
| Scialabba, Jacqueline | $8,000,000.00 |
| Scialabba, Samuel Scott | $5,000,000.00 |
| Scott, Jon Christopher | $2,500,000.00 |
| Scott, Kevin James | $2,500,000.00 |
| Scott, Larry L. (Estate of) | $5,000,000.00 |
| Scott, Mary Ann | $5,000,000.00 |
| Scott, Sheria | $2,500,000.00 |
| Scott, Stephen Allen | $2,500,000.00 |
| Seguerra, Jacklyn | $2,500,000.00 |
| Shipp, Bryan Richard | $5,000,000.00 |
| Shipp, James David | $2,500,000.00 |
| Shipp, Janice | $2,500,000.00 |
| Shipp, Maurice | $2,500,000.00 |
| Shipp, Pauline | $8,000,000.00 |
| Shipp, Raymond Dennis | $2,500,000.00 |
| Shipp, Russell | $2,500,000.00 |
| Sinsioco, Susan J. | $2,500,000.00 |
| Smith-Ward, Ana | $8,000,000.00 |
| Smith, Angela Josephine (Estate of) | $5,000,000.00 |
| Smith, Bobbie Ann | $5,000,000.00 |
| Smith, Cynthia | $2,500,000.00 |
| Smith, Donna Marie | $2,500,000.00 |
| Smith, Erma | $2,500,000.00 |
| Smith, Holly | $2,500,000.00 |
| Smith, Ian | $5,000,000.00 |
| Smith, Janet | $2,500,000.00 |
| Smith, Joseph K. III | $2,500,000.00 |
| Smith, Joseph K. Jr. | $5,000,000.00 |
| Smith, Keith | $5,000,000.00 |
| Smith, Kelly B. | $2,500,000.00 |
| Smith, Shirley L. | $5,000,000.00 |
| Smith, Tadgh | $2,500,000.00 |
| Smith, Terrence | $2,500,000.00 |
| Smith, Timothy B | $2,500,000.00 |
| Sommerhof, Jocelyn J. | $5,000,000.00 |
| Sommerhof, John | $2,500,000.00 |
| Sommerhof, William J | $5,000,000.00 |
| Spencer, Douglas | $2,500,000.00 |
| Stelpflug, Christy Williford | $2,500,000.00 |
| Stelpflug, Joseph | $2,500,000.00 |
| Stelpflug, Kathy Nathan | $2,500,000.00 |
| Stelpflug, Laura Barfield | $2,500,000.00 |
| Stelpflug, Peggy | $5,000,000.00 |

-16-

137661

| | |
|---|---|
| Stelpflug, William | $5,000,000.00 |
| Stephens, Horace Sr. | $5,000,000.00 |
| Stephens, Joyce | $5,000,000.00 |
| Stephens, Keith | $2,500,000.00 |
| Stockton, Dona | $5,000,000.00 |
| Stockton, Donald (Estate of) | $5,000,000.00 |
| Stockton, Richard | $2,500,000.00 |
| Stokes, Irene | $5,000,000.00 |
| Stokes, Nelson Jr. | $2,500,000.00 |
| Stokes, Nelson Sr. (Estate of) | $5,000,000.00 |
| Stokes, Robert | $2,500,000.00 |
| Stokes-Graham, Gwenn | $2,500,000.00 |
| Sturghill, Marcus D. | $2,500,000.00 |
| Sturghill, Marcus L. Jr. | $5,000,000.00 |
| Sturghill, NaKeisha Lynn | $2,500,000.00 |
| Sundar, Doreen | $8,000,000.00 |
| Tella, Margaret | $2,500,000.00 |
| Terlson, Susan L. | $2,500,000.00 |
| Thompson, Mary Ellen | $2,500,000.00 |
| Thorstad, Adam | $5,000,000.00 |
| Thorstad, Barbara | $5,000,000.00 |
| Thorstad, James Jr. | $2,500,000.00 |
| Thorstad, James Sr. | $5,000,000.00 |
| Thorstad, John | $2,500,000.00 |
| Thorstad, Ryan | $5,000,000.00 |
| Thurman, Betty Ann | $2,500,000.00 |
| Tingley, Barbara | $5,000,000.00 |
| Tingley, Richard L. | $5,000,000.00 |
| Tingley, Russell | $2,500,000.00 |
| Tolliver, Keysha | $5,000,000.00 |
| Turek, Mary Ann | $5,000,000.00 |
| Valenti, Karen | $5,000,000.00 |
| Vallone, Anthony | $2,500,000.00 |
| Vallone, Donald H. | $5,000,000.00 |
| Vallone, Timothy | $2,500,000.00 |
| Vargas, Leona Mae | $2,500,000.00 |
| Voyles, Denise | $2,500,000.00 |
| Wallace, Ila | $5,000,000.00 |
| Wallace, Kathryn Thorstad | $2,500,000.00 |
| Wallace, Richard J. | $2,500,000.00 |
| Warwick, Barbara Thorstad | $2,500,000.00 |
| Washington, Linda | $2,500,000.00 |
| Washington, Vancine | $2,500,000.00 |
| Watson, Kenneth | $2,500,000.00 |

-17-

137661

| | |
|---|---|
| Whitener, Diane | $2,500,000.00 |
| Wigglesworth, Daryl | $2,500,000.00 |
| Wigglesworth, Darrin A. | $2,500,000.00 |
| Wigglesworth, Henry | $5,000,000.00 |
| Wigglesworth, Mark | $2,500,000.00 |
| Wigglesworth, Robyn | $2,500,000.00 |
| Wigglesworth, Sandra | $5,000,000.00 |
| Wigglesworth, Shawn | $2,500,000.00 |
| Williams, Dianne Stokes | $2,500,000.00 |
| Williams, Gussie Martin | $2,500,000.00 |
| Williams, Janet | $5,000,000.00 |
| Williams, Johnny | $2,500,000.00 |
| Williams, Rhonda | $2,500,000.00 |
| Williams, Ronald | $2,500,000.00 |
| Williams, Ruth | $5,000,000.00 |
| Williams, Scipio J. | $5,000,000.00 |
| Williams, Wesley | $5,000,000.00 |
| Williams-Edwards, Delma | $2,500,000.00 |
| Williamson, Tony | $2,500,000.00 |
| Williamson, Jewelene | $5,000,000.00 |
| Winter, Michael | $5,000,000.00 |
| Wiseman, Barbara | $8,000,000.00 |
| Woodford, Phyllis | $2,500,000.00 |
| Woodle, Joyce | $2,500,000.00 |
| Woollett, Beverly | $5,000,000.00 |
| Woollett, Paul | $5,000,000.00 |
| Wright, Melvina Stokes | $2,500,000.00 |
| Wright, Patricia | $5,000,000.00 |
| Wyche, Glenn | $2,500,000.00 |
| Wyche, John | $2,500,000.00 |
| Young, John F. | $5,000,000.00 |
| Young, John W. | $2,500,000.00 |
| Young, Judith Carol | $5,000,000.00 |
| Young, Sandra Rhodes | $5,000,000.00 |
| Zimmerman, Joanne | $2,500,000.00 |
| Zone, Stephen Thomas | $2,500,000.00 |
| Zosso, Patricia Thorstad | $2,500,000.00 |

4.  *Claims Brought by Family Members of Injured Servicemen*

| | |
|---|---|
| Ali, Jamaal Muata | $1,250,000.00 |
| Angeloni, Margaret | $1,250,000.00 |
| Arroyo, Jesus | $1,250,000.00 |
| Arroyo, Milagros | $1,250,000.00 |

-18-

| | |
|---|---|
| Carletta, Olympia | $2,500,000.00 |
| Carpenter, Kimberly | $4,000,000.00 |
| Comes, Joan | $2,500,000.00 |
| Comes, Patrick | $1,250,000.00 |
| Comes, Christopher | $1,250,000.00 |
| Comes, Frank Sr. | $2,500,000.00 |
| Crawford, Deborah | $1,250,000.00 |
| Davis, Barbara | $4,000,000.00 |
| Franklin, Alice Warren | $1,250,000.00 |
| Gerlach, Patricia | $4,000,000.00 |
| Gerlach, Travis | $2,500,000.00 |
| Gerlach, Megan | $2,500,000.00 |
| Hernandez, Arminda | $1,250,000.00 |
| Hlywiak, Margaret | $2,500,000.00 |
| Hlywiak, Peter Jr. | $1,250,000.00 |
| Hlywiak, Peter Sr. | $2,500,000.00 |
| Hlywiak, Paul | $1,250,000.00 |
| Hlywiak, Joseph | $1,250,000.00 |
| Hunt, Cynthia Lou | $4,000,000.00 |
| Ibarro, Rosa | $2,500,000.00 |
| Jacobs, Andrew Scott | $2,500,000.00 |
| Jacobs, Daniel Joseph | $2,500,000.00 |
| Jacobs, Danita | $4,000,000.00 |
| Kirkpatrick, Kathleen | $4,000,000.00 |
| Lewis, Grace | $2,500,000.00 |
| Magnotti, Lisa | $1,250,000.00 |
| Mitchell, Wendy | $4,000,000.00 |
| Moore, James Otis (Estate of) | $1,250,000.00 |
| Moore, Johnney S. (Estate of) | $2,500,000.00 |
| Moore, Marvin S. | $1,250,000.00 |
| Moore, Alie Mae | $2,500,000.00 |
| Moore-Jones, Jonnie Mae | $1,250,000.00 |
| Nashton, Alex W. (Estate of) | $2,500,000.00 |
| Oliver, Paul | $2,500,000.00 |
| Oliver, Riley | $2,500,000.00 |
| Oliver, Michael John | $2,500,000.00 |
| Oliver, Ashley E. | $2,500,000.00 |
| Oliver, Patrick S. | $2,500,000.00 |
| Oliver, Kayley | $2,500,000.00 |
| Russell, Tanya | $2,500,000.00 |
| Russell, Wanda | $4,000,000.00 |
| Russell, Jason | $2,500,000.00 |
| Shaver, Clydia | $1,250,000.00 |
| Spaulding, Scott | $1,250,000.00 |

-19-

| | |
|---|---|
| Stanley, Cecilia | $2,500,000.00 |
| Stilpen, Mary | $1,250,000.00 |
| Swank, Kelly | $1,250,000.00 |
| Swinson, Kenneth J. (Estate of) | $2,500,000.00 |
| Swinson, Ingrid M. (Estate of) | $2,500,000.00 |
| Swinson, Daniel | $1,250,000.00 |
| Swinson, William | $1,250,000.00 |
| Swinson, Dawn | $1,250,000.00 |
| Swinson, Teresa | $1,250,000.00 |
| Warren, Bronzell | $1,250,000.00 |
| Watson, Jessica | $1,250,000.00 |
| Webb, Audrey | $1,250,000.00 |
| Wheeler, Jonathan | $2,500,000.00 |
| Wheeler, Benjamin | $2,500,000.00 |
| Wheeler, Marlis "Molly" (Estate of) | $2,500,000.00 |
| Wheeler, Kerry | $1,250,000.00 |
| Wheeler, Andrew | $2,500,000.00 |
| Wheeler, Brenda June | $4,000,000.00 |
| Wold, Jill | $1,250,000.00 |
| Young, Nora (Estate of) | $2,500,000.00 |
| Young, James | $1,250,000.00 |
| Young, Robert (Estate of) | $2,500,000.00 |

IT IS FURTHER ORDERED that the claims brought by the following plaintiffs are

hereby DISMISSED WITHOUT PREJUDICE:

Albright, Marvin Jr.
Albright, Mirequrn
Albright, Shertara
Banks, Anthony (son)
Banks, Michael
Banks, Taiarra
Berry, Lori
Burnette, Christopher
Burnette, Gwen
Camara, Mecot Jr.
Comes, Dale
Comes, Tommy
Crop, Kimberly
Decker, Connie
Dolphin, Erin
Douglass, Frederick (Estate of)
Eaves, Christopher

-20-

Eaves, India
Eaves, Sylvia Jean
Foister, Gerald
Frye, Charles Jr.
Frye, Gina
Frye, Lialani
Frye, Lincoln
Frye, Randall
Garner, Joseph
Garner, Justina
Garner, Penny
Garner, Reva
Goodman, Kari
Haskell, Barbara
Haskell, Richard
Hlywiak, Jordan
Hlywiak, Taylor
Hunt, Jack Darrell
Hunt, Marcy Elizabeth
Hunt, Mendy Leigh
Hunt, Molly Faye
Livingston, Carol
Massa, Manuel Sr. (Estate of)
Matthews, Chadwick
Matthews, Debra
Matthews, Drew
Meurer, Deborah
Miller, Shirley D.
Mitchell, Elvera
Mitchell, Robert
Price, Betty Lou (Estate of)
Price, Timothy
Rivers, Jeremy
Rivers, Paul (son)
Rivers, Sandra
Schak, Carol
Schak, George
Spencer, Lynne M.
Washington, Patrice
Williams, Kevin Coker
Williams, George Robinson
Williams, Dorothy (Estate of)
Williamson, Bill
Wise, Debra

-21-

Woodcock, Gwen

IT IS FURTHER ORDERED that the claims brought by the following plaintiffs are

hereby DISMISSED WITH PREJUDICE:

Beamon, Ashley Tutwiler
Beresford, Michael
Beresford, Susan
Beresford, William
Bianco, Sandra Karen
Bianco, Sandra
Bonk, Catherine
Bonk, John Sr.
Bonk, Kevin
Bonk, Thomas
Calloway, Donald
Clark, Michael Jr.
Corry, Charles
DiGiovanni, Lisa
DiGiovanni, Marion
DiGiovanni, Robert
DiGiovanni, Danielle
Fiedler, Sherry Lynn
Fluegel, Robert
Fluegel, Thomas A.
Fluegel, Marilou
Green, Rebecca Iverson
Hairston, Evans
Hairston, Felicia
Hairston, Julia Bell
Hukill, Henry Durban
Hukill, Mark Andrew
Hukill, Matthew Scott
Hukill, Melissa
Hukill, Meredith Anne
Hukill, Mitchell Charles
Hukill, Monte
Hukill, Virginia Ellen
Jackowski, Mary
Jones, Stonn
Joyce, Penni
Kirkwood, Carl Sr.
Kirkwood, Jeff

-22-

Kirkwood, Shirley
Kirkwood. Carl Arnold Jr.
Kronenbitter, Patricia
Laise, Kris
Laise, Bill
Laise, Betty
Lewis, Natalie
Macroglou, James
Macroglou, Lorraine
Macroglou, Bill
Mason, Richard
McDonald, Kathy
McDonough, Edward W.
McDonough, Sean
McDonough, Edward Joseph
Morgan, Geraldine
Nashton, Pamela J.
Persky, Herbert
Phelps, Charles Jr.
Phelps, Charles Sr.
Prevatt-Wood, Victoria
Rhosto, Deborah Spencer
Rockwell, Natalie
Rockwell, Donald
Rotondo, Rose (Estate of)
Rotondo, Luis (Estate of) (father)
Santoserre, Phyllis (Estate of)
Simpson, Robert
Simpson, Renee Eileen
Simpson, Larry H. Sr.
Simpson, Anna Marie
Vallone, Donna Beresford
Wallace, Bobby L.
Watkins, Lula Mae (Estate of)
Watkins, Simon
Wirick, Sally Jo

IT IS FURTHER ORDERED that plaintiffs, at their own cost and consistent with the

requirements of 28 U.S.C. § 1608(e), send a copy of this Judgment and the Findings of Fact and

Conclusions of Law issued this date to defendants.

IT IS FURTHER ORDERED that the Clerk of this Court shall terminate this case from

-23-

the dockets of this Court.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, September 7, 2007.

-24-

I

**Exhibit C**
**Names and Addresses of Judgment Debtor Representatives Served**


HIS EXCELLENCY AYATOLLAH ALI HOSEINI-KHAMENEI
THE OFFICE OF THE SUPREME LEADER
Islamic Republic Street
Shahid Keshvar Doust Street
Tehran, Islamic Republic of Iran

HIS EXCELLENCY MAHMOUD AHMADINEJAD THE PRESIDENT
Palestine Avenue
Azerbaijan Intersection
Tehran, Islamic Republic of Iran
Fax: +98 21 6 649 5880

THE IRANIAN MINISTRY OF INFORMATION AND SECURITY,
ISLAMIC REPUBLIC OF IRAN
Pasadaran Avenue
Golestan Yekom
Teheran, Iran
ATTN: President Dr. Ahmadinejad or
Agent for Service of Process or
Responsible Officer

ISLAMIC REPUBLIC OF IRAN
Khomeini Avenue
United Nations Street
Teheran, Iran
ATTN: President Dr. Ahmadinejad or
Agent for Service of Process or
Responsible Officer

MINISTRY OF FOREIGN AFFAIRS
ISLAMIC REPUBLIC OF IRAN
MANOUCHEHR MOTTAKI,
FOREIGN MINISTER
Imam Khomeini SQ
Tehran, Iran

BANK MARKAZI JOMHOURI ISLAMI IRAN
Mirdamad Blvd., No. 144
P.O. Box 15875/7177
Tehran, Islamic Republic of Iran

**Exhibit D**



## Exhibit E

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEBORAH D. PETERSON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 01-2094 (RCL) |
| v. ) | |
| ) | |
| THE ISLAMIC REPUBLIC OF IRAN, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| STEVEN GREENBAUM, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 02-2148 (RCL) |
| v. ) | |
| ) | |
| THE ISLAMIC REPUBLIC OF IRAN, et al., ) | |
| ) | |
| Defendants. ) | |

### PROTECTIVE ORDER

Based upon the Court's consideration of this matter, including the Rule 45 Third-Party subpoenas issued by plaintiffs in the above-referenced cases, and the Department of the Treasury's Office of Foreign Assets Control's ("OFAC") Unopposed Emergency Motion concerning those subpoenas (Docket No. 325), it is hereby ordered that:

1.    OFAC is authorized, pursuant to the terms set forth herein, to disclose information responsive to the subpoenas issued by the plaintiffs in the above-referenced cases on February 27, 2008, and March 10, 2008.

2.      All information produced in response to the Subpoena, and any portion thereof, is to be deemed confidential ("Confidential Information"), unless plaintiffs are otherwise advised by OFAC.

3.      Confidential Information may be used only for the purpose of attempting to collect upon the judgment entered in the above-captioned matters ("the Greenbaum/Peterson Litigation"), pursuant to procedures authorized by law, and for no other purpose.

4.      No person shall be permitted to have access to Confidential Information, nor shall any person be informed of the substance of the Confidential Information by any person permitted to have access thereto, except as provided in this Order, as otherwise agreed upon by the parties to the Greenbaum/Peterson Litigation and OFAC in writing, or by order of the Court.

5.      Confidential Information shall not be disclosed or distributed to any person or entity other than the following:

> a.      the attorneys (including their paralegal, clerical, or other assistants) for parties to the Greenbaum/Peterson Litigation or in any proceedings incident to efforts to collect on the judgments entered therein who have a need therefore in connection with said proceedings;
>
> b.      the courts and their support personnel in the Greenbaum/Peterson Litigation and in any proceedings incident to efforts to collect on the judgments entered therein;
>
> c.      persons and entities and their counsel served with writs of attachment or other legal process incident to efforts to collect on the judgments entered in the Greenbaum/Peterson Litigation or those holding assets identified in the Confidential Information;
>
> d.      local or federal law enforcement personnel involved in any legal proceedings incident to efforts to collect on the judgments entered in the Greenbaum/Peterson Litigation; and
>
> e.      any other person to whom disclosure is required in order to pursue proceedings incident to efforts to collect on the judgments entered in the Greenbaum/Peterson Litigation, pursuant to procedures authorized by law.

6.      To the extent that Confidential Information is disclosed to persons as described in subparagraphs 5(c)-(e), only those portions of the Confidential Information that are necessary for each specific proceeding incident to efforts to collect on the judgments or that relate to the specific assets at issue shall be disclosed to such persons. All persons described in subparagraphs 5(a)-(e) above shall be provided with a copy of this Protective Order and restricted to using Confidential Information only for purposes directly related to the satisfaction of judgments issued in the Greenbaum/Peterson Litigation and not for any other litigation or proceeding or for any business, commercial, competitive, personal or other purpose. Photocopies of documents containing Confidential Information shall be made only to the extent necessary to facilitate the permitted use hereunder.

7.      Confidential Information shall not be disclosed to any person or persons described under subparagraph 5(e) unless and until such person has been shown this Protective Order and has agreed in writing to be bound by its terms, by signing a copy of the attached Acknowledgment form. A copy of each executed Acknowledgment shall be kept by counsel for the party on behalf of whom disclosure is made pursuant to subparagraph 5(e).

8.      The termination of the Greenbaum/Peterson Litigation or any proceeding incident to efforts to collect on the judgments entered in the Greenbaum/Peterson Litigation shall not relieve any person or party provided Confidential Information of his, her, or its obligations under this Order.

9.      All Confidential Information that is filed with any court, and any pleadings, motions, exhibits, or other papers filed with the court, referencing or containing Confidential Information, shall be filed under seal and kept under seal until further order of the Court.

10.     Within sixty (60) days of the resolution of the last proceeding incident to efforts to collect on the judgments entered in the Greenbaum/Peterson Litigation by settlement or final judgment, and the termination of any appeals therefrom, all Confidential Information, and copies thereof, shall be promptly destroyed, provided that counsel may retain one complete set of any such materials that were presented in any form to the Court. Any such retained materials shall be placed in an envelope or envelopes marked "Confidential Information Subject to Protective Order," and to which shall be attached a copy of this Order.

11.     The provisions of this Order restricting the use and disclosure of Confidential Information shall not apply to documents or other information which were, are, or become public knowledge not in violation of this Order.

12.     Entry of this Order constitutes only a determination that OFAC is authorized to disclose information as provided herein under the Trade Secrets Act. Entry of this Order does not constitute a determination as to any right, privilege, or immunity OFAC may have with respect to plaintiffs' subpoenas, or as to any objection(s) OFAC may have to plaintiffs' subpoenas. OFAC's disclosure of information pursuant to this Order shall not constitute a waiver of any right, privilege, or immunity OFAC may have with respect to such information.

13.     Entry of this Order shall not prohibit the United States or any agency, department, officer, or employee thereof, from using or disclosing Confidential Information for any other purposes authorized or allowed by law.

SO ORDERED.

Signed by Royce C. Lamberth, Chief Judge, on June 11, 2008.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been mailed by registered international mail, return receipt requested, postage prepaid, via the United States Postal Service, on this $27 \, th$ day of _March_, 2009 to the following representatives of the judgment debtors:

HIS EXCELLENCY AYATOLLAH ALI HOSEINI-KHAMENEI
THE OFFICE OF THE SUPREME LEADER
Islamic Republic Street
Shahid Keshvar Doust Street
Tehran, Islamic Republic of Iran

HIS EXCELLENCY MAHMOUD AHMADINEJAD THE PRESIDENT
Palestine Avenue
Azerbaijan Intersection
Tehran, Islamic Republic of Iran
Fax: +98 21 6 649 5880

THE IRANIAN MINISTRY OF INFORMATION AND SECURITY,
ISLAMIC REPUBLIC OF IRAN
Pasadaran Avenue
Golestan Yekom
Teheran, Iran
ATTN: President Dr. Ahmadinejad or
Agent for Service of Process or
Responsible Officer

ISLAMIC REPUBLIC OF IRAN
Khomeini Avenue
United Nations Street
Teheran, Iran
ATTN: President Dr. Ahmadinejad or
Agent for Service of Process or
Responsible Officer

MINISTRY OF FOREIGN AFFAIRS
ISLAMIC REPUBLIC OF IRAN
MANOUCHEHR MOTTAKI,
FOREIGN MINISTER
Imam Khomeini SQ
Tehran, Iran

BANK MARKAZI JOMHOURI ISLAMI IRAN
Mirdamad Blvd., No. 144
P.O. Box 15875/7177
Tehran, Islamic Republic of Iran

Liviu Vogel (LV-7552)

Subscribed and sworn to me this

_____ day of MARCH ,2009.

Notary Public

ADRIA MERCEDES PONCE
Notary Public, State of New York
No. 01PO6067690
Qualifiedin Bronx County
Commission Expires December 17, 200

| Item Description (Nature de l'envoi) | Registered Article (Envoi recommandé) | ☐ Letter (Lettre) | Printed Matter (Imprimé) | ☐ Other (Autre) | Express Mail International |
|---|---|---|---|---|---|

☐ Insured Parcel (Colis avec valeur déclarée) | Insured Value (Valeur déclarée) | Article Number

Office of Mailing (Bureau de dépôt) | Date of Posting (Date de dépôt)

Addressee Name or Firm (Nom ou raison sociale du destinataire)
ISLAMIC ... COMPANY

Street and No. (Rue et No) ...

Place and Country (Localité et pays) Iran

This receipt must be signed by: (1) the addressee; or, (2) a person authorized to sign under the regulations of the country of destination; or, (3) if those regulations so provide, by the employee of the office of destination. This signed form will be returned by the service of the first mail. | Postmark of the office of destination (Timbre du bureau de destination)

(Cet avis doit être signé par le destinataire ou par une personne y autorisée en vertu des règlements du pays de destination, ou, si ces règlements le comportent, par l'agent du bureau de destination, et renvoyé par le premier courrier directement à l'expéditeur.)

☐ The article mentioned above was duly delivered. (L'envoi mentionné ci-dessus a été dûment livré.) | Date

Signature of Addressee (Signature du destinataire) | Office of Destination Employee Signature (Signature de l'agent du bureau du destination)

PS Form **2865,** March 2007 (Reverse) PSN 7530-01-000-9775

---

| Item Description (Nature de l'envoi) | Registered Article (Envoi recommandé) | ☐ Letter (Lettre) | Printed Matter (Imprimé) | ☐ Other (Autre) | Express Mail International |
|---|---|---|---|---|---|

☐ Insured Parcel (Colis avec valeur déclarée) | Insured Value (Valeur déclarée) | Article Number

Office of Mailing (Bureau de dépôt) | Date of Posting (Date de dépôt)

Addressee Name or Firm (Nom ou raison sociale du destinataire)
HIS EXCELLENCY MAHMOUD AHMADINEJAD
THE PRESIDENT

Street and No. (Rue et No) — Palestine Avenue
Azerbaijan Intersection

Place and Country (Localité et pays) Tehran, Islamic Republic of Iran

This receipt must be signed by: (1) the addressee; or, (2) a person authorized to sign under the regulations of the country of destination; or, (3) if those regulations so provide, by the employee of the office of destination. This signed form will be returned by the service of the first mail. | Postmark of the office of destination (Timbre du bureau de destination)

(Cet avis doit être signé par le destinataire ou par une personne y autorisée en vertu des règlements du pays de destination, ou, si ces règlements le comportent, par l'agent du bureau de destination, et renvoyé par le premier courrier directement à l'expéditeur.)

☐ The article mentioned above was duly delivered. (L'envoi mentionné ci-dessus a été dûment livré.) | Date

Signature of Addressee (Signature du destinataire) | Office of Destination Employee Signature (Signature de l'agent du bureau du destination)

PS Form **2865,** March 2007 (Reverse) PSN 7530-01-000-9775



**Registered No.** RA345276468US

| Reg. Fee | $10.80 |
| Handling Charge | $0.00 |
| Postage | $17.65 |

Return Receipt $2.20
Restricted Delivery

Received by

Customer Must Declare Full Value $0.00

Domestic Insurance up to $25,000 is included based upon the declared value. International Indemnity is limited. (See Reverse).

Date Stamp MAR 03/27/09 2009

OFFICIAL USE

10017
Liviu Vogel, Esq.
Salon Marrow Dyckman Newman & Broudy LLP
292 Madison Avenue - 6th floor
New York, NY 10017
USA

THE IRANIAN MINISTRY OF INFORMATION AND SECURITY, ISLAMIC REPUBLIC OF IRAN
Pasadaran Avenue
Golestan Yekom
Teheran, Iran
ATTN: President Dr. Ahmadinejad or Agent for Service/or Responsible Officer

PS Form 3806, Receipt for Registered Mail   Copy 1 - Customer
May 2007 (7530-02-000-9051)   (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com ®

---

**Registered No.** RA345276471US

| Reg. Fee | $10.80 |
| Handling Charge | $0.00 |
| Postage | $17.65 |

Return Receipt $2.20
Restricted Delivery $5.00

Received by

Customer Must Declare Full Value $0.00

Domestic Insurance up to $25,000 is included based upon the declared value. International Indemnity is limited. (See Reverse).

Date Stamp MAR 03/27/09 2009

OFFICIAL USE

10017
Liviu Vogel, Esq.
Salon Marrow Dyckman Newman & Broudy LLP
292 Madison Avenue - 6th Floor
New York, NY 10017
USA

HIS EXCELLENCY MAHMOUD AHMADINEJAD
THE PRESIDENT
Palestine Avenue
Azerbaijan Intersection
Tehran, Islamic Republic of Iran

PS Form 3806, Receipt for Registered Mail   Copy 1 - Customer
May 2007 (7530-02-000-9051)   (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com ®

---

**Registered No.** RA345276485US

| Reg. Fee | $10.80 |
| Handling Charge | $0.00 |
| Postage | $17.65 |

Return Receipt $2.20
Restricted Delivery $5.00

Received by

Customer Must Declare Full Value $0.00

Domestic Insurance up to $25,000 is included based upon the declared value. International Indemnity is limited. (See Reverse).

Date Stamp 04 MAR 03/27/09 2009

OFFICIAL USE

10017
Liviu Vogel, Esq.
Salon Marrow Dyckman Newman & Broudy LLP
292 Madison Avenue - 6th floor
New York, NY 10017
USA

MINISTRY OF FOREIGN AFFAIRS
ISLAMIC REPUBLIC OF IRAN
MANOUCHEHR MOTTAKI,
FOREIGN MINISTER
Imam Khomeini SQ
Tehran, Iran

PS Form 3806, Receipt for Registered Mail   Copy 1 - Customer
May 2007 (7530-02-000-9051)   (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com ®

---

**Registered No.** RA345276499US

| Reg. Fee | $10.80 |
| Handling Charge | $0.00 |
| Postage | $17.65 |

Return Receipt $2.20
Restricted Delivery $0.00

Received by

Customer Must Declare Full Value $0.00

Domestic Insurance up to $25,000 is included based upon the declared value. International Indemnity is limited. (See Reverse).

Date Stamp 04 MAR 27 2009

OFFICIAL USE

10017
Liviu Vogel, Esq.
Salon Marrow Dyckman Newman & Broudy LLP
292 Madison Avenue - 6th floor
New York, NY 10017
USA

ISLAMIC REPUBLIC OF IRAN
Khomeini Avenue
United Nations Street
Teheran, Iran
ATTN: President Dr. Ahmadinejad or Agent for Service or Responsible Officer

PS Form 3806, Receipt for Registered Mail   Copy 1 - Customer
May 2007 (7530-02-000-9051)   (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com ®

| Registered No. | | Date Stamp ⌐✓ |
| --- | --- | --- |
| RA345276454US | | |

| Reg. Fee | $10.80 | | |
| --- | --- | --- | --- |
| Handling Charge | $0.00 | Return Receipt | $2.20 |
| Postage | $17.65 | Restricted Delivery | $0.00 |
| Received by | | | |

Customer Must Declare Full Value $ $0.00

Domestic Insurance up to $25,000 is included based upon the declared value. International Indemnity is limited. (See Reverse).

**OFFICIAL USE**

To Be Completed By Post Office

To Be Completed By Customer (Please Print) All Entries Must Be in Ballpoint or Typed

FROM
10017
Lmiu Vogel, Esq.
Salon Marrow Dyckman Newman & Broudy LLP
292 Madison Avenue - 6th Floor
New York, NY 10017
USA

IR Iran
HIS EXCELLENCY AYATOLLAH ALI HOSEINI-KHAMENEI
THE OFFICE OF THE SUPREME LEADER
Islamic Republic Street
Shahid Keshvar Doust Street
Tehran, Islamic Republic of Iran

PS For...
May 2007 (7530-02-000-9051)
For domestic delivery information, visit our website at *www.usps.com* ®
(See Information on Reverse)

---

| Registered No. | | Date Stamp |
| --- | --- | --- |
| RA345276454US | | |

| Reg. Fee | $10.80 | | |
| --- | --- | --- | --- |
| Handling Charge | $0.00 | Return Receipt | $2.20 |
| Postage | $17.65 | Restricted Delivery | $0.00 |
| Received by | | | |

Customer Must Declare Full Value $ $0.00

Domestic Insurance up to $25,000 is included based upon the declared value. International Indemnity is limited. (See Reverse).

**OFFICIAL USE**

To Be Completed By Post Office

To Be Completed By Customer (Please Print) All Entries Must Be in Ballpoint or Typed

FROM
Lmiu Vogel, Esq.
Salon Marrow Dyckman Newman & Broudy LLP
292 Madison Avenue - 6th floor
New York, NY 10017
USA

IR Iran
BANK MARKAZI JOMHOURI ISLAMI IRAN
Mirdamad Blvd., No. 144
P.O. Box 15875/177
Tehran, Islamic Republic of Iran

PS Form 38...
May 2007 (7530-02-000-9051)
For domestic delivery information, visit our website at *www.usps.com* ®
(See Information on Reverse)