C31WdunC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

CLAUDINE DUNNINGAN, et al.,

                    Plaintiffs,

            v.                              10 CV 4518 (BSJ)(GWG)

THE ISLAMIC REPUBLIC OF IRAN,

                    Defendant.

------------------------------x
                                    New York, N.Y.
                                    March 1, 2012
                                    3:30 p.m.

Before:

                    HON. GABRIEL W. GORENSTEIN,

                                    Magistrate Judge

                    APPEARANCES

SALON MARROW DYCKMAN NEWMAN & BROUDY LLP
     Attorneys for Peterson Plaintiffs
BY:  LIVIU VOGEL
     -and-
STONE BONNER & ROCCO LLP
BY:  JAMES P. BONNER
     -and-
STEVEN R. PERLES
     -and-
FAY KAPLAN LAW P.A.
BY:  THOMAS FORTUNE FAY
     ANNIE P. KAPLAN

STROOCK & STROOCK & LAVAN LLP
     Attorneys for Greenbaum and Acosta Plaintiffs
BY:  JAMES L. BERNARD
     BEN WEATHERS-LOWIN

DAN GASKILL
     Attorney for Valore

FLEISCHMAN
     Attorneys for Valore Judgment Creditors

C31WdunC

1    BY:   JUNE H. PARK

2    DLA PIPER US LLP
          Attorneys for Heiser Creditors
3    BY:   DALE K. CATHELL

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C31WdunC

CHAFFETZ LINDSEY LLP
        Attorneys for Defendant Bank Markazi
BY:   DAVID M. LINDSEY
        ANDREAS FRISCHNECHT

PATTON BOGGS LLP
        Attorneys for Defendant Banca UBAE
BY:   UGO COLELLA
        JOHN J. ZEFUTIE, Jr.
WHITE & CASE LLP
        Attorneys for Defendant Clearstream Banking
BY:   FRANK PANOPOULOS
        NICOLE E. ERB

DAVIS WRIGHT TREMAINE LLP
        Attorneys for Defendant Citibank N.A.
BY:   SHARON L. SCHNEIER
        CHRISTOPHER J. ROBINSON

C31WdunC

1              (Case called)

2              MR. VOGEL:  Liviu Vogel, attorney for the Peterson

3      plaintiffs.

4              MR. BONNER:  Jim Bonner, with Stone Bonner & Rocco,

5      also for the Peterson plaintiffs.

6              MR. BERNARD:  James Bernard and Ben Weathers-Lowin,

7      from Stroock & Stroock & Lavan, on behalf of the Greenbaum and

8      Acosta plaintiffs.

9              MR. CATHELL:  Dale Cathell, DLA Piper, for the Heiser

10     creditors, and my colleague David Misler is also participating

11     by phone.

12             MR. LINDSEY:  David Lindsey, Chaffetz Lindsey, for

13     Bank Markazi.

14             MR. COLELLA:  Ugo Colella and John Zefutie, Jr.,

15     Patton Boggs, on behalf Banca UBAE.

16             MR. PANOPOULOS:  Frank Panopoulos and Nicole Erb, for

17     Clearstream Banking S.A.

18             MS. SCHNEIER:  Good afternoon, your Honor.  Sharon

19     Schneier and Chris Robinson, Davis Wright Tremaine, for

20     Citibank.

21             THE COURT:  Is the person on the phone making an

22     appearance or.

23             MS. RANKIN:  Jessica Rankin for the judgment

24     creditors.

25             THE COURT:  Why don't you say that again.

C31WdunC

1          MS. RANKIN:   Jessica Rankin for the judgment

2      creditors.

3          THE COURT:   We're here based on a letter from

4      plaintiffs dated February 14 about the briefing schedule.   I

5      got letters dated also February 14 from Citibank, February 17

6      from Clearstream, and 21 from Bank Markazi.

7          Obviously I'm not going to decide any of these legal

8      issues now.   I wanted to give the parties essentially a chance

9      to propose a new briefing schedule, which at least someone

10     did -- I think it was Markazi -- so that they could take into

11     account the arguments that they've outlined in their letters.

12     I guess the only new thing is that the plaintiffs want to

13     insert a summary judgment motion into the whole thing.

14          Mr. Vogel, right?

15          MR. VOGEL:   Correct, your Honor.

16          THE COURT:   I'm happy to hear from you on that, but I

17     guess you need to talk about my prior ruling where I set forth

18     the order in which I was going to do this and why that should

19     be changed.   If you have to go into the merits in order to do

20     that, so be it, but go ahead.

21          MR. VOGEL:   Okay.   Your prior order contemplated that

22     there were to be threshold issues to be decided to determine

23     whether the Court had subject matter jurisdiction, and the

24     basis for the claim of lack of subject matter jurisdiction, at

25     least from Clearstream's side, was that under the FSIA Section

C31WdunC

1   1610(a) and (b), for that matter, the Court only has subject

2   matter jurisdiction if the property upon which the judgment

3   creditors seek to enforce their judgment is, in fact, located

4   in the United States and is used for a commercial purpose.

5   That requirement no longer became true as of the February 6

6   executive order signed by Barack Obama which had the effect of

7   blocking the assets, and we know that they were in fact blocked

8   because Citibank wrote a letter.

9           THE COURT:  What didn't become true?

10          MR. VOGEL:  It no longer became true that the basis of

11   subject matter jurisdiction for this Court is the presence of

12   assets belonging to Iran in the United States used for a

13   commercial purpose.  That is no longer the basis for it.

14   1610(a) and (b) is mooted and is trumped by the Terrorist Risk

15   Insurance Act, which in shorthand is called TRIA, and it's a

16   footnote to 1610 and it says basically notwithstanding any

17   other law, TRIA applies.  And TRIA applies basically to the

18   property of a terrorist party or its agency or instrumentality

19   and it may be used to satisfy judgment against that terrorist

20   party provided that the plaintiffs have the right kind of

21   judgment, which is the judgment under 1605(a)(7) based on

22   terrorist acts, which we do, and the assets are blocked.

23   That's one of the requirements of TRIA.

24              So once the assets became blocked, that in and of

25   itself, the act of blocking the assets, gave this Court subject

C31WdunC

1    matter jurisdiction without question, regardless of whether the

2    property is here or not here, used for a commercial purpose or

3    not used for a commercial purpose, belongs to Iran or belongs

4    to one of its agencies or instrumentalities like the Central

5    Bank.

6          THE COURT:  You say without question.  But this is the

7    very thing that's questioned in the later letters, is it not?

8          MR. VOGEL:  The other parties do question that issue,

9    but the case law is fairly simple, fairly clear on its face,

10   and the statute itself is quite clear on its face.  The subject

11   matter jurisdiction issue no longer exists and essentially

12   becomes an in rem action.  Once the asset is blocked, under

13   this statute, the judgment creditors are allowed to take that

14   asset, whoever has it, it happens to be at Citibank, so it

15   doesn't matter anymore whether Clearstream has it or UBAE has

16   it or whether it's here or it's there, it's an asset that's

17   blocked and this statute is specifically intended to benefit

18   creditors, judgment creditors who suffered at the hands of a

19   terrorist party.  So it's much simplified now because --

20         THE COURT:  And that's fine.  I just have to tell you

21   I'm not going to decide this now.

22         MR. VOGEL:  I'm not asking your Honor to decide it.

23         THE COURT:  If you want to pick out some smaller

24   issue, I'm sure that the other parties will have no problem

25   with that you say is going to answer all the subject matter

C31WdunC

1    jurisdictions and have you just deal with that and if you're

2    wrong, understand that we'll go through the original process as

3    set before where they can raise these other arguments.  We can

4    try that.

5                MR. VOGEL:  Let me explain.  Perhaps I haven't made

6    myself fully clear.

7                The plaintiffs and judgment creditors are not claiming

8    that either Clearstream or the Central Bank of Iran should not

9    be permitted to raise any of these arguments.  We're not saying

10   that.  We're just saying those arguments, if they wish to raise

11   them, are appropriate to be raised in conjunction with a

12   summary judgment motion because there are no longer any issues

13   of fact.

14               THE COURT:  If you do not have a new summary judgment

15   motion that doesn't require any discovery --

16               MR. VOGEL:  Correct.

17               THE COURT:  -- and for which you will swear on

18   whatever stack of Bibles we have that there will not be a

19   counterstatement excluding any issues of fact, we can talk

20   about that, because I don't think I've heard from any of the

21   parties; I'm not sure they'd care whether you briefed

22   something.  The thing I didn't want to have happen before was

23   to have a discovery process, which is what I understood was

24   being required.

25               MR. VOGEL:  And my point is we don't need discovery to

C31WdunC

1   make a summary judgment motion.

2                THE COURT:  Whatever.

3                MR. VOGEL:  It's a partial summary judgment motion.

4                THE COURT:  Maybe there won't be an objection to

5   interweaving this into the motion schedule in some way, so let

6   me hear from whoever wants to be heard.

7                MR. LINDSEY:  Your Honor, David Lindsey for Bank

8   Markazi.

9                For the record, we disagree with his interpretation of

10  TRIA.  There are two steps in TRIA.  You have to first find

11  it's blocked and then there's a second step on ownership, and

12  Judge Cote's decision in Calderon went into that in great

13  detail.  I won't repeat all of the arguments now.

14                Your Honor, there's no reason to change the schedule

15  you had in place.  We were set to file our motion to dismiss.

16  The plaintiffs were due to respond to Clearstream's motion.

17                THE COURT:  Let's assume there's no rush.  What is the

18  prejudice to you to having this issue decided?

19                MR. LINDSEY:  I'm sorry?

20                THE COURT:  What's the prejudice to you having this

21  issued decided in a format that plaintiffs want?

22                MR. LINDSEY:  I'm not sure I quite understand which

23  issue he's talking about.

24                THE COURT:  Let's find out.  You're going to move for

25  partial summary judgment on what topic and relying on what

C31WdunC

1   facts?

2           MR. VOGEL:  We're going to move for partial summary

3   judgment that the judgment creditors are collectively entitled

4   to a turnover order of the assets that are restrained at

5   Citibank and claiming that there are no issues of fact as a

6   result of the blocking order by President Barack Obama.

7           THE COURT:  But what factual matters would you rely on

8   in your Rule 56 statement?

9           MR. VOGEL:  The factual matters we would rely on are

10  that we have the right kind of judgment.

11          THE COURT:  That's a legal thing.  You have a

12  judgment.

13          MR. VOGEL:  Yes.  Correct.  But it's also a fact that

14  we do have a judgment.

15          THE COURT:  Yes.

16          MR. VOGEL:  There are admissions in the affidavit of

17  Mr. Mazumi, who is an officer of Central Bank of Iran, that

18  indicate that they're the sole beneficial owner of the assets

19  that are restrained.  I think he says it maybe ten times during

20  that affidavit that's already been submitted to the Court.

21  Citibank has blocked the assets, so that's one of the facts

22  that we need to prove.  Iran is a terrorist party.  They are a

23  terrorist party, we'll be able to prove that.  That's a fact.

24  What else do we have to prove?

25          The rest of it is essentially legal issues that we

C31WdunC

have to show that the Central Bank, basically opposing all the

arguments that counsel want to make.  We can do that in reply

papers on summary judgment motion.

THE COURT:  In other words, they think they can get

the turnover order based upon these facts, which I don't know

if they're disputed or not, but if they're not --

MR. LINDSEY:  We do have sovereign immunity arguments

we still intend to make and that we would make during the

motion to dismiss process.  I'm not sure I understand why we

need an overlapping process of briefing the very same issues

that are going to be briefed on the motions to dismiss.

Everything he's talking about here --

THE COURT:  If now his view entitles him to a

judgment, what's the prejudice or harm?

MR. LINDSEY:  Your Honor, the money's not going

anywhere, that's for sure.  So there's no prejudice if the

Court would like to give the parties a different structure, I

suppose, on how to address these arguments.  But I don't see

why we need that.  We had a perfectly good process in place.

THE COURT:  We had a process in place because of the

problem that those arguments would potentially dispose of the

case, which I understand you now still say they will do.  But

in order for plaintiffs to prevail, they were going to have to

marshal certain facts that were going to be disputed and do it

through discovery, and we didn't want that to have to happen

C31WdunC

1    when there were these threshold motions in place.  If there's

2    overlapping on the issues, then I'm not sure what the advantage

3    is to putting off the plaintiff's briefing.

4            MR. LINDSEY:  Your Honor, frankly, I'm not quite sure

5    what changed from when we came up with the motion to dismiss

6    schedule and today.  The executive order did change some of our

7    arguments in our analysis but really hasn't changed much

8    anything else.  Our major arguments are still there.  We

9    haven't retreated from any of them.

10           THE COURT:  I understand that.  What I understand

11   changed, and I have not probed this in any great detail, but

12   what I understand changed is that the plaintiffs said in order

13   to get their turnover they were going to need certain factual

14   discovery and that was going to be disputed and I didn't want

15   to have that happen until we dealt with the threshold issues.

16   That's what's changed now.

17           MR. VOGEL:  Correct.

18           THE COURT:  That answers your question.

19           MR. LINDSEY:  Your Honor, respectfully, I don't

20   believe the executive order had that change.  But are we

21   talking about having discovery now?

22           THE COURT:  No, no discovery.

23           MR. LINDSEY:  No discovery?  And so the motion for

24   summary judgment would overlie the motions to dismiss?

25           THE COURT:  We'll figure out something.

C31WdunC

                    MR. PANOPOULOS:  I mean, this is half cocked, and just

let me raise this with the Court.

                    Mr. Vogel misspoke.  The restraints aren't in rem

proceeding.  Turnover is a quasi in rem proceeding.  In quasi

in rem, you need personal jurisdiction over defendants and

there are personal jurisdiction arguments here that haven't

been addressed yet.  So the Court needs to be aware of that.

                    I want to figure out a way to do this, hearing what

you say, your Honor, about expediting the proceeding because if

what he says is true and it disposes of everything, most likely

the Court should hear it before it hears the other arguments,

let's say.  But in our motion to dismiss, to lift the

restraints, which is made in the in rem proceeding of the

restraint, not in the turnover proceeding, and that's

important, we address the issue of TRIA, and we expected once

this executive order was issued for Mr. Vogel to address it in

opposition to our motion in the context of the restraints and

the proceeding that's in rem.  And I think that if he wants to

make a motion or a limited application or argument with respect

to that, that's fine.  But it should be done in the context of

opposing our motion to which we would reply and to which, you

know, Bank Markazi and even UBAE and Citibank would reply as

opposed to having a new summary judgment motion for turnover

which switches the proceeding from in rem to quasi in rem

without having any of the personal jurisdiction arguments

C31WdunC

1    before the Court decided, for one.

2           So it's fine to address the issue of the executive

3    order.  I think it should be briefed.  It's not only complex,

4    but it's a serious issue.  It's an issue that at least in this

5    District Court there are competing opinions.  The Second

6    Circuit will consider it at some point, so that's fine.

7           Another issue I'd like to raise is that if the motions

8    are scuttled, then we have other proceedings against us that

9    are pending that have been stayed until those motions are

10   resolved.  So I would still want whatever Mr. Vogel is

11   proposing to be within the context of our motion and not

12   outside of it.

13          THE COURT:  I just lost you.  Scuttled?

14          MR. PANOPOULOS:  In other words, if Mr. Vogel is

15   advocating, what he advocates in his letters is our motions are

16   moot and should be terminated and --

17          THE COURT:  That's not what I propose.  No one's

18   talking about scuttling your motion.

19          MR. PANOPOULOS:  In that context, he can file an

20   opposition to our motion just on that limited issue, that's

21   fine.  We have a briefing schedule, and then we would reply to

22   it.

23          THE COURT:  Okay.  What's the objection to him moving

24   for partial summary judgment?

25          MR. LINDSEY:  Your Honor, if I may say, my client

C31WdunC

| | |
|---|---|
| 1 | being a foreign sovereign, we believe the sovereign immunity |
| 2 | issue should be decided first before we're forced to respond to |
| 3 | summary judgment proceedings. |
| 4 | THE COURT:  We're kind of back where we were.  The |
| 5 | theory is because these arguments are threshold, there's no |
| 6 | point in reaching your summary judgment motion, but I guess the |
| 7 | prejudice you're now saying is you don't want to have to brief |
| 8 | the response without knowing that you're subject to the Court's |
| 9 | jurisdiction, is that it? |
| 10 | MR. LINDSEY:  Correct, your Honor. |
| 11 | THE COURT:  That's some prejudice. |
| 12 | MR. VOGEL:  Your Honor, the only issue that the |
| 13 | Central Bank of Iran is going to be raising is whether 1611 |
| 14 | immunity applies or not.  There's case law, admittedly it's |
| 15 | only a District Court case here in the Southern District, that |
| 16 | says sovereign immunity is gone as a result of TRIA and the |
| 17 | argument they want to make is no longer effective. |
| 18 | THE COURT:  I don't want to deal with the merits, |
| 19 | Mr. Vogel.  Stay off the merits. |
| 20 | MR. VOGEL:  That's fine, but my point is that the |
| 21 | Central Bank of Iran is free to make that argument within the |
| 22 | context of a summary judgment motion.  They're either right and |
| 23 | they win or they're wrong and they lose. |
| 24 | THE COURT:  They're saying they don't want to have to |
| 25 | do it until we reach their threshold issue, correct? |

C31WdunC

1           MR. LINDSEY:  On the sovereign immunity.

2           MR. VOGEL:  But that's the only issue they would be

3      arguing.  There's really nothing else to argue.

4           MR. LINDSEY:  Your Honor, that's not true.  We have

5      other arguments.

6           THE COURT:  Nonsovereign immunity.

7           MR. LINDSEY:  We have arguments other than 1611 to

8      make.  Treaty of amity arguments, motions to make in our motion

9      to dismiss that we do believe that the sovereign immunity

10     issue, as a matter of law, must be decided first before we are

11     forced to involve ourselves in the litigation process in the

12     United States.

13          MR. COLELLA:  May I be heard very quickly.

14          THE COURT:  Why don't you identify yourself for the

15     benefit of the record.

16          MR. COLELLA:  Ugo Colella.

17          If they're going to seek summary judgment, we have our

18     personal jurisdiction motion which has been pushed off into no

19     man's land -- at this point, we're on hold -- would be a live

20     issue, if they're going to seek summary judgment against us.

21     If we're going to go down the road of summary judgment, we

22     would want to brief our motion for personal jurisdiction as

23     well.

24          MR. VOGEL:  Your Honor, we do not intend to make a

25     summary judgment motion against UBAE or the related claim

C31WdunC

```
1    against Clearstream, which relates solely to $250 million

2    claim.

3              THE COURT:  It's just against Markazi.

4              MR. VOGEL:  It is against the restrained assets.

5              THE COURT:  Assets.

6              MR. VOGEL:  That's correct.

7              THE COURT:  And it's a turnover proceeding.

8              MR. VOGEL:  Correct, which is, under New York State

9    law, supposed to be a summary proceeding expedited, and I

10   realize that this is fairly expedited because of the complexity

11   of sovereign immunity because it has been over three years.

12             THE COURT:  So it's really down to you.  You're the

13   only one he wants summary judgment against, and your point is I

14   shouldn't have to deal with it.

15             MR. LINDSEY:  That's correct, your Honor.  And the law

16   is fairly clear, your Honor, that the Court should take up that

17   issue first.  And, your Honor, by the way, if I may say, we

18   were going along in an orderly process before now.  I continue

19   to believe nothing's changed and we should just continue with

20   the scheduling order.

21             THE COURT:  I understand that.  There's some force to

22   it.  The thing that has changed is it wasn't merely the fact in

23   my mind of foreign sovereign immunity, but whatever motion

24   plaintiffs were contemplating seemed to involve discovery.  So

25   something has changed, but not everything, in my mind.
```

C31WdunC

1          MR. LINDSEY:  If I may say, your Honor, our motion to

2     dismiss will have no affidavits attached.  There are no factual

3     issues in dispute.  So I want to make that clear on the record.

4          THE COURT:  Go ahead.

5          MR. PANOPOULOS:  One other matter.  I mean, there's

6     also the issue of the standard because on a motion for summary

7     judgment, right, the plaintiff is given inferences that are in

8     their favor.  But on a motion to lift the restraint, you don't

9     have that.  The Court has to make a factual determination on

10    disputed facts.  Now, here, we don't have disputed facts

11    because, as we said in October, Clearstream has agreed,

12    assuming that what plaintiffs allege is true, we still win on

13    the law, although there are some facts that even as the courts

14    say speak for themselves, for example, that the accounts

15    weren't opened in New York.  I would think the Court needs to

16    keep that in mind as well if it's going to allow Mr. Vogel to

17    make a summary judgment motion, even if it's limited, as

18    opposed to some sort of motion within the parameters of our

19    motion to lift the restraints, which is what I would ask the

20    Court to do instead, rather than summary judgment.

21          THE COURT:  Mr. Vogel.

22          MR. VOGEL:  Your Honor, if I may just answer

23    Mr. Lindsey's point about sovereign immunity being a

24    preliminary issue, I will point out that in two cases the issue

25    of sovereign immunity was decided in the context of a summary

C31WdunC

judgment motion by the plaintiffs, and one of them went up to

the Second Circuit and was approved.  One case is the

Weininnger case, which is only a Judge Marrero case here, 462

F.Supp.2d, and the other is the Weinstein case, which went up

to the Second Circuit, that was brought on by the plaintiff as

a motion to appoint a receiver to sell property, and the bank

moved to dismiss in that case on the theory that there was an

instrumentality of the state and there was a bank SEC issue

involved and that was a foreign sovereign immunity issue as

well, and the judge didn't make a preliminary finding as well

but decided them together in one motion, one decision.

          MR. BERNARD:  If I may suggest a way forward, your

Honor.

          THE COURT:  Okay.  Why don't you identify yourself

again.

          MR. BERNARD:  James Bernard, from Stroock, on behalf

of the plaintiffs Greenbaum and Acosta.

          I think as your Honor was indicating earlier in

connection with not wanting to get into the merits, there was a

dispute between parties as to whether or not counsel is correct

that the foreign sovereign immunity issue needs to be decided

first, and, therefore, I would suggest let us make our summary

judgment motion --

          THE COURT:  That I've decided already, that it was

going to be made first.  We had an argument about that, didn't

C31WdunC

1    we?

2            MR. BERNARD:  No, I believe that's the argument that's

3    being made right now.

4            THE COURT:  No, no, no.  Months ago.

5            MR. BERNARD:  I'm sorry.  I meant the specific foreign

6    sovereign immunity argument counsel is referring to under 1611,

7    that issue that's just being raised.  My point simply being,

8    your Honor, we could make our summary judgment motion and if

9    they want to say in opposition to that, Judge, before you

10   decide anything else that needs to be argued decide this issue,

11   we have the opportunity to say, no, Judge, you don't need to do

12   that and rather than getting into that on the merits today, we

13   can get into that in the context of the brief.

14           THE COURT:  I lost you.  You file this motion and they

15   say no, we've been on sovereign immunity, we don't have to

16   answer, they don't have to answer?  I lost you.

17           MR. BERNARD:  They would not answer at that point if

18   that's the position they want to take.  Clearstream, I imagine,

19   your Honor, would also oppose that summary judgment motion and

20   make all the arguments it wants to make about the UCC and

21   everything else in which case all of the issues would come at

22   one place at one time as opposed to in separate pieces.

23           THE COURT:  General moving against Markazi?

24           MR. BERNARD:  That's the point Mr. Vogel is making.

25   It's against the asset.  As counsel said, it's an in rem

C31WdunC

proceeding.  It's a summary judgment motion with respect to the

assets.  If Clearstream has an argument it wants to make with

respect to the assets, it can make that argument.  If Bank

Markazi wants to make a motion or oppose the motion with

respect to the assets --

THE COURT:  But it wants to make these threshold

motions without dealing with it on the merits.

MR. BERNARD:  I understand that.  My point is it's

disputed whether they should be entitled to do that because as

Mr. Vogel just said there are at least two cases that he's

already identified where these issues do get addressed all at

once.  They don't get the right to split it up.  And the reason

why that's important, and it's not just abstract, Judge, to put

this in the real world, we represent plaintiffs who have

judgments who are looking for justice, who want to get their

judgments satisfied.  I understand these proceedings take time.

Our clients have been waiting for three years.  These assets

have been blocked.

Our clients want to be able to seize those assets to

satisfy their judgments, and my concern is that if we split

this briefing up and then counsel says he wants to be able to

take the issue up to the Second Circuit and, Judge, stay

everything else while I take the issue of sovereign immunity up

to the Second Circuit, we might be here for another three years

before the plaintiffs in this case are entitled to recover

C31WdunC

```
 1    those assets.  So my suggestion is since it is disputed like

 2    all the other disputed issues we've been talking about, let

 3    them all get briefed.  We'll move for summary judgment because

 4    of the assets.  Clearstream will say no, because of this UCC

 5    argument.  Markazi will say no, we're entitled to sovereign

 6    immunity and the assets belong to us, and if the Court decides,

 7    looking at the papers, that the Markazi issue should be after

 8    it sees our opposition to that, then we've litigated that issue

 9    and we've lost.  But let's not decide that how.

10             THE COURT:  How is this any different from what

11    Mr. Vogel is proposing?

12             MR. BERNARD:  It's not different from what Mr. Vogel

13    was proposing.

14             THE COURT:  I thought you had some third way.  You set

15    me up.

16             MR. BERNARD:  Obviously what I was trying to avoid.

17             It's not at all different from what Mr. Vogel was

18    saying.  What I'm concerned with is Markazi has asked of this

19    Court that they be allowed to brief something separately with

20    something else the Court was entertaining and I respectfully

21    suggest the Court shouldn't entertain it, that anybody who

22    wants to oppose that summary judgment motion should have to do

23    so at the same time.  There shouldn't be some staging of

24    opposition to the summary judgment motion.

25             THE COURT:  I think we're still where we are, and this
```

C31WdunC

1    is a balancing of the desire of folks to move this along and

2    the prejudice that's being claimed to having to brief something

3    when there's some threshold issue that you think is going to

4    obviate the need for me to reach that motion.  Of course, if

5    you're right, I wouldn't reach the motion, but you would still

6    have had to brief it.  It doesn't seem like a terribly strong

7    interest.  I'll give you another shot at it.

8            MR. LINDSEY:  Your Honor, I'm sorry I haven't been

9    able to persuade you up to now.  All these issues are being

10   addressed now before the Court and these motions to dismiss.

11           THE COURT:  Right.

12           MR. LINDSEY:  And the schedule you created with all of

13   us in the room last October, whenever it was, and we sat in

14   this room and we came up with this schedule, and, your Honor, I

15   would propose nothing has changed that changes or that should

16   change that schedule, that we would have the motions to dismiss

17   and responses and replies and the threshold issues would be

18   decided.  Nothing has changed to make us suddenly need an

19   overlaying of motion for summary judgment.  It appears to me,

20   your Honor, too, that I guess the motion, both motions, motions

21   to dismiss and motions for summary judgment are going to

22   address some of the same issues.  It's not quite clear to me

23   how this is going to work.  I don't know why we need the

24   overlapping process.

25           THE COURT:  They're going to address some of the same

C31WdunC

```
 1    issues.  This is their point.  This is why this is not
 2    prejudicial to you, in their view.
 3              MR. LINDSEY:  Your Honor, it is prejudicial for us
 4    because we are having to participate in the litigation process,
 5    have a whole different round of briefing.
 6              THE COURT:  No, but if it's the same issues --
 7              MR. LINDSEY:  It's hard to say now until I see their
 8    papers.  It could be some of the same issues.  But, your Honor,
 9    there's really no reason to take that step now.  It's not going
10    to accomplish anything that we're not accomplishing already.
11              THE COURT:  What it accomplishes is in the event
12    you're wrong under threshold issues, it puts the case in a much
13    more advanced stage than it would be.
14              MR. LINDSEY:  There are a number of issues that will
15    be decided at the end of the motions to dismiss.  Once those
16    are decided, this will be a very narrow case, a very narrow
17    case.  There won't be a whole lot to decide after that
18    probably.
19              THE COURT:  If you win.
20              MR. LINDSEY:  No.
21              THE COURT:  Either way.
22              MR. LINDSEY:  Either way it's going to be a pretty
23    narrow case.
24              THE COURT:  And they want to plug the hole in that
25    narrow case by being geared up for their summary judgment.
```

C31WdunC

1           MR. LINDSEY:  I'm not quite sure I understand, your

2     Honor.

3           THE COURT:  If you lose, they want to have the

4     briefing already out there as to that narrow piece that's left.

5           MR. LINDSEY:  It's a proposal, your Honor, that we

6     would file these papers and then you would first decide the

7     motions to dismiss?

8           THE COURT:  I assume as a logical matter, I would have

9     to.

10          MR. LINDSEY:  Okay.

11          THE COURT:  They may end up briefing something for

12    nothing because it turns out you're right, if they're willing

13    to take that risk apparently.

14          MR. LINDSEY:  We would have to respond, of course, to

15    their briefs.

16          THE COURT:  I understand that.  We're going in circles

17    at this point.  You have to respond and then you're telling me

18    how it's all the same issues anyway.  I'm saying who cares.

19          MR. LINDSEY:  Your Honor, to be clear, I'm not saying

20    it's all the same issues.  They're not mirror images, and I'm

21    not sure until I see the papers.  Certainly they're talking

22    about having to address sovereign immunity in the context of a

23    motion for summary judgment.  We're already addressing

24    sovereign immunity in a context of a motion to dismiss.

25          THE COURT:  Here's my ruling.  Let's have a motion

C31WdunC

```
1    schedule that doesn't slow down your motions, allows them to

2    file their motion, if you want to come back after that, and

3    we'll have you respond.  If, for some reason, the motion isn't

4    what you think it is and it's creating some burden that you

5    think you could make a case to me you shouldn't have to respond

6    to it, I'll let you come back.

7            MR. LINDSEY:  Thank you, your Honor.

8            THE COURT:  But writing a 20-page memo of law is not

9    going to be the kind of burden I'm talking about.

10           MR. COLELLA:  Your Honor, on behalf of Banca UBAE, I

11   just want to also seek clarification from the Court.  To the

12   extent that they file a summary judgment motion and those

13   issues might, and they don't seek summary judgment against

14   UBAE, but some of the factual issues they want to establish in

15   summary judgment might impact the UBAE claim, we would then, so

16   long as we're included in what your Honor just said, seek leave

17   to file our personal jurisdiction motion.  In other words,

18   there could be facts that overlap.

19           THE COURT:  If you have a defense to the summary

20   judgment motion based on personal jurisdiction, is that what

21   you're saying?

22           MR. COLELLA:  No, that the facts that they want to

23   establish on the claims against Markazi could bleed into the

24   claims that they have just against Clearstream and UBAE.  We

25   would seek leave to file a personal jurisdiction motion if
```

C31WdunC

 1        that's the case.

 2                THE COURT:  Come back.  We'll deal with it later when

 3        we have to deal with it.  At the end of the day, I can say

 4        we're going to reserve on the summary judgment motion.  That's

 5        a possibility too.  I just want to give them a chance.

 6                MR. COLELLA:  I just want to make sure we're within

 7        the scope of what your Honor just said about Bank Markazi, that

 8        if they see something that causes them pause, they have the

 9        ability to come back to you.

10                THE COURT:  Sure.  Anybody can come back to me.  How

11        is that?

12                MR. COLELLA:  I'm just preserving our rights.  That's

13        all.

14                THE COURT:  Yes.  I'm giving it to you.

15                MR. PANOPOULOS:  So if I understand it correctly, then

16        Clearstream's motion will be stayed until he files his motion.

17                THE COURT:  Would be stayed, or we would have a

18        different response time?

19                MR. PANOPOULOS:  We've put in our motion.  It's up to

20        them to put in an opposition.

21                THE COURT:  One thing I wondered about is whether the

22        order affected any of the existing motions.

23                MR. PANOPOULOS:  It did.  The existing motions have

24        now been put on hold.

25                THE COURT:  No.  I meant the merits of the arguments

C31WdunC

1    in the motions.

2              MR. PANOPOULOS:  Conceivably.

3              THE COURT:  Should we have rebriefing?

4              MR. PANOPOULOS:  We don't need rebriefing because our

5    briefing still stands.

6              THE COURT:  That's my question.  Does anyone else need

7    to rebrief something that's already in, or is it all absolutely

8    the way it was before?

9              MR. PANOPOULOS:  We're the only ones in, your Honor.

10             THE COURT:  You're the only ones who filed a brief so

11   far?

12             MR. PANOPOULOS:  Yes.

13             THE COURT:  And you want to stick with it?

14             MR. PANOPOULOS:  Yes, assuming we get a reply to their

15   opposition or at least on the limited issue they're raising,

16   obviously we would say something about it too.

17             THE COURT:  I'm not saying you're bound by the

18   arguments.  I just meant you were happy with the brief now

19   despite the blocking order.

20             MR. PANOPOULOS:  Yes, yes, yes.

21             I guess we need clarity because we're still unclear,

22   your Honor.  We have a briefing, right?  And what I understand

23   is that Mr. Vogel doesn't want to respond to our brief.  He

24   just wants to make one argument that we touch upon in our

25   brief, but because we don't have the full argument, we couldn't

C31WdunC

```
 1   address it in full, and we would reply in any event if he

 2   didn't oppose it.

 3            THE COURT:  I didn't understand that at all.

 4            MR. PANOPOULOS:  We put in a brief.

 5            THE COURT:  No, I didn't understand that he said that

 6   at all.  You put in a brief moving --

 7            MR. PANOPOULOS:  To lift the restraints.  And we

 8   addressed five or six arguments.  One of those arguments was

 9   the TRIA argument.  That was before the executive order.  What

10   I understand Mr. Vogel to be saying is that he just wants a

11   motion for summary judgment for turnover, just on the issue of

12   the TRIA argument and not on the UCC arguments that we made.

13            THE COURT:  Let's ask him.

14            Do you want to oppose on the various other arguments,

15   or not?

16            MR. PANOPOULOS:  Your Honor, I have not thought about

17   Clearstream's arguments, if they fell at all within the TRIA

18   argument because this is fresh, it just came down February 6,

19   and how and whether Clearstream's points survive because of

20   TRIA and the blocking order.

21            THE COURT:  My view is you have to respond to his

22   arguments, however you wish.

23            MR. PANOPOULOS:  He says here that it moots our motion

24   to lift the restraints, so obviously he must have thought of

25   it.
```

C31WdunC

1          THE COURT:  He's entitled to oppose on any basis he

2     wants, but you can't ignore their arguments because if you

3     don't oppose them, I'll assume they're valid, and you may lose

4     on them.  He's going to oppose your arguments.

5          MS. ERB:  In a motion.

6          THE COURT:  In an opposition.

7          MR. VOGEL:  What it moots is relief.

8          THE COURT:  That could be a basis.  You could oppose

9     this motion on any basis you want.

10          MR. VOGEL:  That's fine.  We could do that in the

11     context of our summary judgment.

12          THE COURT:  I'd like it to be done in an orderly way,

13     which means if someone moves to lift the restraints, I need an

14     opposition from you that addresses exclusively that motion.

15          MR. VOGEL:  That's fine.

16          THE COURT:  At the same time, you may if you wish in a

17     separate brief say here's our motion for summary judgment, we

18     rely on points two and three, however you want to do it, or in

19     full.  I don't care, but you need to separately address the

20     motions that are coming down.

21          MR. VOGEL:  Okay.

22          THE COURT:  That was my vision of this.

23          MR. VOGEL:  I understand.  I'm will.

24          THE COURT:  I'm willing to add your summary judgment

25     on top of this.  If you want to put it in the middle, put it in

C31WdunC

1      the middle.

2                  MR. VOGEL:  I understand your vision, your Honor, and

3      I suppose that if TRIA didn't exist, an alternative argument we

4      would have is the old argument that we asserted, so therefore

5      Clearstream's brief would be relevant to that.  So in that

6      context, we will respond to it.

7                  THE COURT:  And to the extent that some argument is

8      only relevant if you lose on some other argument, everybody

9      better make this very clear in their briefs so I understand

10     what the structure of the argument is.

11                 MR. VOGEL:  As clear as humanly possible under the

12     circumstances, yes, we will.

13                 THE COURT:  Good.  So I'm back to where I was.  As far

14     as I'm concerned, your structure on the briefing schedule

15     remains in place.  All we're doing is adding their ability to

16     file on whatever schedule you want to work out now or you folks

17     want to work out on your own.  Should we try to do this now

18     with dates brief by brief?

19                 MR. LINDSEY:  Yes.

20                 THE COURT:  Is that the better way to do it?

21                 MR. LINDSEY:  Your Honor, if I may, according to the

22     schedule, when it was stayed, the next event was the

23     plaintiffs' response to Clearstream's motion to lift the

24     restraints.  And then two days after that was our motion to

25     dismiss.

C31WdunC

```
 1                THE COURT:  Markazi's motion to dismiss?

 2                MR. LINDSEY:  Yes, sir.

 3                I spoke to Mr. Vogel just before this hearing a few

 4      days ago, and he agreed that we would file our motion to

 5      dismiss on March 15, if that's agreeable with the Court.

 6                THE COURT:  I'm looking at your February 21 letter, so

 7      I'm now adding a week to it?

 8                MR. LINDSEY:  Yes, sir.

 9                THE COURT:  But before we get to that, the plaintiff

10      was going to respond to Clearstream's motion.

11                MR. LINDSEY:  Correct.  It was like three days before

12      our motion to dismiss.

13                THE COURT:  When do you want to respond to

14      Clearstream's motion now?

15                MR. VOGEL:  We can do the 12th, your Honor.

16                THE COURT:  March 12.

17                MR. VOGEL:  Assuming that's a weekday.  I don't have a

18      calendar in front of me.

19                THE COURT:  Plaintiffs' response.  What's the next

20      thing, Bank Markazi's motion to dismiss?

21                MR. LINDSEY:  On the 15th.

22                THE COURT:  March 15.

23                MR. LINDSEY:  Yes, sir.

24                THE COURT:  Then plaintiffs and third-party

25      respondents' opposition April 17, just adding a week to your
```

C31WdunC

 1   proposal.

 2            MR. LINDSEY:  Yes, your Honor.  That's fine.

 3            MR. PANOPOULOS:  April 17 is when we would reply to

 4   the opposition.

 5            THE COURT:  No.  It's plaintiffs' and third-party

 6   respondents' opposition to Bank Markazi's motion to dismiss.  I

 7   don't think we got to Clearstream's reply because it's not on

 8   your schedule.  I don't know what the original schedule was for

 9   Clearstream's reply.

10            When does Clearstream want to reply?

11            MR. PANOPOULOS:  April 12, your Honor.

12            THE COURT:  And then back to Markazi's reply would be

13   May 10, working off your schedule and adding a week.  Those

14   were the only two motions originally?

15            MR. VOGEL:  Correct.

16            THE COURT:  Clearstream and Markazi, right?

17            MR. LINDSEY:  Yes.  That would be the motion to

18   dismiss schedule.

19            THE COURT:  How do you want to insert summary judgment

20   into this?  By the way, when was Clearstream's reply?  I didn't

21   write it down.

22            MR. LINDSEY:  I have April 12, but I'm not sure what

23   day of the week that is.

24            THE COURT:  Thursday.

25            MS. ERB:  Can we make it Friday?

C31WdunC

1              MR. PANOPOULOS:  Friday, the 13th, your Honor.

2              MR. VOGEL:  Sorry.  What was that date?

3              THE COURT:  April 13, for Clearstream's reply.

4              MR. PANOPOULOS:  To your opposition.

5              MR. VOGEL:  You changed it from the 12th?

6              MS. ERB:  From a Thursday to a Friday.

7              THE COURT:  Do you want to overlay?  Do you want to do

8       it after?  What do you want to do?

9              MR. VOGEL:  April 1, your Honor.

10             THE COURT:  April 1 for plaintiffs' motion.

11             Who is going to be responding to this?  Which parties?

12      Clearstream?  You don't know yet?  Okay.  May 1 for opposition.

13      Is that a weekday?  Anyone know?  In the old days, we used to

14      have calendars.  Let's assume it's a weekday.  If not, whatever

15      the weekday is after that, and then three weeks later for

16      reply.  May 22, assuming we're not adjusting for weekday.  I

17      think that was the only business before we get to the 4:00

18      proceeding, which is the sealing issues.

19             Is there anything else before we get to that?

20             MR. LINDSEY:  No, your Honor.

21             MR. BERNARD:  Nothing further.

22             THE COURT:  I think what I have to do for this piece

23      is ask everyone to leave who did not file a brief or a letter.

24      I think the briefs cover the letters.  I don't know who is in

25      the audience there.  Don't we need to do that?

C31WdunC

```
 1              MR. LINDSEY:  Your Honor, if I may, while we did not

 2      file it ourselves, we worked with the other defendants in

 3      putting that letter together.

 4              THE COURT:  I'm sorry.  Who are parties to the letter?

 5      Maybe you didn't sign in.  Everyone who hasn't spoken is going

 6      to have to be vouched for by someone who isn't here.  Let's

 7      take a break.

 8              (Proceedings adjourned)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```