defraud Plaintiffs and to obscure Iran's investment of funds utilized to sponsor terrorism and Iran's WMD acquisition program.

194.  Similarly, conspiring with Clearstream and UBAE to hide Iran's interest in the Restrained Bonds in order to hinder the ability of Iran's creditors to collect their judgments and to circumvent the sanctions imposed against Iran by the United States and other governments demonstrates that Markazi does not qualify as a central bank entitled to the protections of 28 U.S.C. Section 1611(b).

195.  The long history of efforts by Iran and Markazi to disguise their illicit activities as legitimate financial transactions further supports the conclusion that neither Iran nor Markazi can claim any entitlement to immunity from execution under the FSIA.  Iran and Markazi engage in that deception to circumvent U.S. and international sanctions designed to curtail Iran's sponsorship of global terrorism and WMD acquisition and proliferation.

196.  The ongoing participation of Iran and Markazi in those deceptive transactions confirms that: (a) Markazi continues to engage in widespread commercial activity in the United States despite our government's extensive efforts to sanction and discipline Markazi; and (b) Markazi is not a legitimate central bank.  That conduct also confirms Secretary Geithner's statement that any transaction involving Iran or Markazi is, by definition, suspect.

197.  In recent years, Iran's commercial activity in the United States has produced a number of enforcement actions against the banking institutions that facilitated Iran's activities. For example, in May 2004, the Federal Reserve fined UBS, Switzerland's largest bank, $100 million for sending U.S. dollars to Iran and other sanctioned nations and intentionally hiding the transactions by submitting false monthly reports to the Federal Reserve.

181752

198.  Likewise, in December 2005, U.S. state and federal regulators fined the Dutch bank ABN Amro Bank NV $80 million for actions that included its Dubai branch's modification of payment instructions on wire transfers, letters of credit, and checks issued by Iran's Bank Melli and a Libyan bank in order to hide their involvement in the transactions and enable them to access the U.S. banking system.

199.  Iran has also used deceptive practices to hide the role played in financial transactions by the Islamic Republic of Iran Shipping Lines (IRISL), which was designated as a terrorist entity in September 2008 for its involvement in supporting Iran's missile programs.

200.  To evade those sanctions, IRISL has created an extensive network of front companies and corporate shells and changed the names of its ships.  As an August 29, 2011 *Wall Street Journal* article reported:[13]

> IRISL responded by camouflaging much of its fleet, reflagging and renaming scores of its blacklisted ships.  It parceled out some to newly minted affiliates and created shell companies abroad to serve as nominal owners.  Behind the scenes, IRISL retained control.
>
> The ships themselves remain easy to identify via their unique and permanent hull numbers, or IMO numbers, which the International Maritime Organization issues to all cargo vessels over 300 gross tonnage.  Treasury posts blacklisted or "blocked" IMO numbers on its website.  Treasury's blacklists are the basis for identifying the ships described in this article—all designated by Treasury for their links to IRISL.  But these numbers don't always appear on cargo-shipping documentation, as the Washington-based Wisconsin Project's Iran Watch noted in a report last year.  This can make it difficult for people to understand whom they're doing business with.
>
> This has sparked a game of whack-a-hull.  Treasury over the past year alone has added to its blacklist more than 100 additional IRISL-affiliated individuals, companies and ships, in places ranging from Germany to Malta, the United Arab Emirates, Singapore and Hong Kong.

---

[13] http://online.wsj.com/article/SB10001424053111904875404576529860210045514.html

201.  The transfer of the Restrained Bonds into the United States, and any attempted transfer of the Restrained Bonds out of the United States is prohibited, and/or regulated pursuant to 50 U.S.C. Sections 1701-1702 or proclamations, orders, regulations, or licenses issued pursuant thereto, including 73 F.R. 66541, 31 C.F.R. §560.516, and 31 C.F.R. §§ 560.204 and 560.206.

202.  By reason of the foregoing, the Restrained Bonds are subject to execution or attachment in aid of execution in order to satisfy the Judgment pursuant to 28 U.S.C. §1610 (f)(1)(A) and Section 201 of the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, Title II, §201(a), 116 Stat. 2337 (2002) ("TRIA").

203.  Given the deceptive practices employed by Iran, Markazi and their co-conspirator banks to invest the Restrained Bonds in the United States and to structure subsequent transfers in a manner designed to shield the Restrained Bonds from Plaintiffs' collection efforts, Markazi's use of the funds exhibits none of the characteristics of legitimate central banking activity.

## FIRST COUNT
### (Declaratory Judgment Against Markazi)

204.  Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein at length.

205.  Markazi is an agency or instrumentality of Iran, which controls Markazi to such an extent that it has no independence or free will and is, instead, the alter ego of Iran.

206.  Markazi has also engaged in fraudulent conveyances in violation of New York Debtor and Creditor Law Sections 273-a and 276, thereby requiring that any veil of separation between Markazi and the Iran be pierced.

207.  Markazi claims that it is legally a separate entity from Iran and that it is a foreign central bank entitled to the benefit of 28 U.S.C. Section 1611(b)(1).  Therefore, an actual controversy exists between Plaintiffs and Markarzi.

208.  Crediting Markazi's claim that it maintains a separate existence from Iran would work a profound fraud and injustice, violate public policy and defeat an important legislative purpose because it would prevent Plaintiffs from enforcing the Judgment and furthering the important U.S. policies expressed in the FSIA's provisions regarding state-sponsored terrorism. Accordingly, recognizing Markazi's separate existence would: (a) prevent Plaintiffs from receiving the damages awarded them as compensation for Iran's terrorist acts; and (b) thwart Congress's purpose in enacting Section 1605(a)(7) of the FSIA, which Congress adopted to compensate American victims of terrorism and to deter future terrorist attacks against American citizens.

209.  By reason of the foregoing, any presumption of separation between Markazi and Iran is rebutted.  Thus, Plaintiffs are entitled to a judgment pursuant to 28 U.S.C. Section 2201 declaring that: (a) Markazi is the agent and/or alter ego of Iran;(b) the Restrained Bonds are beneficially owned by Iran, and are subject to execution for enforcement of Plaintiffs' Judgment; and (c) the Restrained Bonds are not covered by 28 U.S.C. Section 1611(b)(1).

## SECOND COUNT
### (Against Iran, Markazi and Clearstream for Rescission of Fraudulent Conveyances in Violation of New York Debtor and Creditor Law Section 276(a))

210.  Plaintiffs' repeat and reallege each of the foregoing paragraphs as if fully set forth herein at length.

211.  Defendants Iran, Markazi, Clearstream and UBAE (*i.e.,* the Conspirators) intentionally engaged in a conspiracy to make fraudulent conveyances designed to avoid Iran's

debt to Plaintiffs and other creditors and to evade the U.S. Iranian Transactions Regulations and other laws.

212.  Plaintiffs suffered damages as a proximate result of the Conspirators' conspiracy and agreement.

213.  In furtherance of that conspiracy and agreement, the Conspirators committed numerous overt acts, including: (a) the transfers and conveyances in ███████ and ███████ of the 21 Restrained Bonds identified above from Markazi's account at Clearstream to the ███████████████ at Clearstream; (b) ███████████████ of the two bonds valued at $250,000,000.00 described above from the ███████████ to UBAE's ████████ account at Clearstream; and (c) ████████████ of the two bonds valued at $250,000,000.00 from UBAE's ████████ account ████████.

214.  The foregoing transfers and payment of proceeds were made at the direction of Iran and with the active assistance of ████ and Clearstream as intermediaries. ████████



215.  The foregoing transfers were made by Iran, through its agent, and/or alter ego, Markazi, in a deliberate attempt to stave off creditors by putting property in such a form and place that the creditors could not reach it.  Markazi made the fraudulent conveyances that Plaintiffs describe as the agent and/or alter ego of Iran and with the actual intent to hinder, delay, or defraud creditors, including Plaintiffs.

216. ███████████████████████████████████████
████████████████████████████████████████
██████

217. The fraudulent conveyances from Markazi's account at Clearstream to the
████████████████ that ██████████████████████████ benefit did not affect

the place of custody of the assets in Clearstream's account at Citibank in New York and did not

serve any type of financial, banking or other rational purpose other than to cloak the property

with ██████ name. By performing those transactions, the Conspirators intended to impede the

ability of Iran's judgment creditors to satisfy their judgments against Iran.

218. All of those above-referenced conveyances involved the Judgment Debtors' assets

and were made without fair consideration.

219. At the time of the conveyances, the Judgment Debtors were indebted to Plaintiffs

by virtue of the Judgment.

220. The Judgment is a final judgment rendered against the Judgment Debtors that

remains unsatisfied.

221. The Conspirators knew that the Judgment Debtors were indebted to Plaintiffs and

other U.S. creditors prior to the fraudulent conveyances.

222. Iran is the beneficial owner of the Restrained Bonds notwithstanding any of the

transfers and conveyances described above.

223. Markazi's transfers of its property to the ██████████████████ constitute

fraudulent transfers and conveyances that should be voided pursuant to NY Debtor & Creditor

Law § 270 *et seq.*, and are recoverable with interest and attorneys' fees.

224. Iran, Markazi, Clearstream and UBAE caused the transfer of the 21 Restrained Bonds identified above with the actual intent to hinder, delay, or defraud Plaintiffs and other creditors of Iran.

225. The fraudulent conveyances of the 21 Restrained Bonds from Markazi's account at Clearstream to the ████████████ should be set aside and annulled under New York Debtor and Creditor Law Section 278.

226. By reason of the foregoing, Plaintiffs are entitled to an Order from the Court: (a) setting aside the conveyances by ███████████; and/or (b) directing Clearstream and Citibank to disregard the conveyances and to make book entries required to restore the Restrained Bonds to the account of Markazi that is custodized at Clearstream and sub-custodized at Citibank in New York. That relief will permit Plaintiffs to levy upon Markazi's assets to satisfy their Judgment.

227. Plaintiffs respectfully request that the Court enter a judgment: (a) rescinding all conveyances of the 21 Restrained Bonds from Markazi's account at Clearstream to the ████████████; and (b)(i) disregarding the fraudulent conveyances and directing Citibank to transfer all of the Restrained Bonds directly to Plaintiffs or (b)(ii) directing Clearstream and Citibank to disregard the conveyances and to make book entries required to restore the Restrained Bonds to the account of Markazi that is custodized at Clearstream and sub-custodized at Citibank in New York, so that it can be levied upon to satisfy Plaintiffs' Judgment.

228. By reason of the foregoing, Plaintiffs are entitled to an award of reasonable attorneys' fees under New York Debtor and Creditor Law Section 276(a).

### THIRD COUNT
**(Against Iran, Markazi and Clearstream for Rescission of Fraudulent Conveyances in Violation of New York Debtor and Creditor Law Section 273-a)**

229.  Plaintiffs repeat and reallege each of the foregoing allegations as if set forth in full herein.

230.  At the time of the fraudulent conveyances that Plaintiffs describe above, the Judgment Debtors were indebted to Plaintiffs by virtue of the Judgment.

231.  The Judgment is a final judgment rendered against the Judgment Debtors.

232.  The Judgment Debtors have failed to satisfy the Judgment.

233.  The transfers and conveyances of the Restrained Bonds by Iran through its agents were made without fair consideration.

234.  At the time of these conveyances, the Judgment Debtors were defendants in the action in which Plaintiffs obtained their Judgment.

235.  Iran is the beneficial owner of the Restrained Bonds notwithstanding any of the transfers and conveyances described above.

236.  By reason of the foregoing, New York Debtor and Creditor Law Section 273-a dictates that Markazi's conveyances of the Restrained Bonds were fraudulent as to Plaintiffs without regard to the actual intent of Markazi or the Judgment Debtors.

237.  By reason of the foregoing, Plaintiffs are entitled to an Order from the Court: (a) setting aside the conveyances of the Restrained Bonds by Markazi to UBAE; and/or (b) an Order directing Clearstream and Citibank (i) to disregard those conveyances and (ii) to make book entries required to restore the Restrained Bonds to the account of Markazi that is custodized at Clearstream and sub-custodized at Citibank in New York, so that Plaintiffs can levy upon them to satisfy Plaintiffs' Judgment.

## FOURTH COUNT
### (Against All Defendants for Turnover Pursuant to CPLR § 5225)

181752

238.   Plaintiffs repeat and reallege each of the preceding paragraphs as if fully set forth in full herein.

239.   Iran has an interest in the Restrained Bonds held by Defendants Citibank and Clearstream.

240.   Section 5225(b) of the CPLR states:

> **(b)   Property not in the possession of judgment debtor.**  Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

241.   Plaintiffs' rights in the Restrained Bonds are superior to the rights of Citibank, Clearstream, and UBAE, all of whom are mere stakeholders.

242.   Pursuant to Fed. R. Civ. P. 69(a) and CPLR Section 5225, Plaintiffs hereby request that this Court enforce Plaintiffs' Judgment against Iran by an order: (a) conveying, assigning and directing the payment to Plaintiffs of all rights, title and interest of Iran in the Restrained Bonds as well as any proceeds from the Restrained Bonds; and/or (b) directing the transfer of Iran's rights, title and interest in the Restrained Bonds to a receiver appointed for the benefit of Plaintiffs with the power to collect interest, principal and other proceeds from the Restrained Bonds as they become due under the terms of the underlying securities.

### FIFTH COUNT
### (Against All Defendants for Turnover Pursuant to CPLR § 5227)

243.   Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth in full herein.

244.  By agreement and/or operation of law, Citibank, as sub-custodian of the Restrained Bonds, is obligated to Clearstream, which as custodian of the Restrained Bonds is in turn obligated to Markazi, the agent and alter ego of Iran, for payments of principal and interest made by the issuers of the Restrained Bonds and for payments made in connection with the Restrained Bonds.

245.  The Restrained Bonds include bonds and/or notes that call for the issuers' payment of interest and principal in the United States to those owning an interest in the Restrained Bonds in U.S. dollars on various fixed dates.  In addition, any cash held in the Citibank suspense account that currently holds the cash proceeds collected from the bonds that comprised the Restrained Bonds is payable in U.S. dollars in New York.

246.  By reason of the foregoing, pursuant to CPLR Section 5227, Plaintiffs are entitled to a judgment: (a) requiring Citibank to pay to Plaintiffs the debt that Citibank owes to Clearstream with respect to the Restrained Bonds, and requiring Clearstream to pay to Plaintiffs the debt that Clearstream in turn owes Markazi with respect to the Restrained Bonds, upon maturity, or so much of those debts as is sufficient to satisfy the Judgment, and to execute and deliver any documents necessary to effect such payment; or (b) ███████████

███████████████████████████████████████████████████

███████  ██  ████████████████████

### SIXTH COUNT
**(Against All Defendants for Equitable Relief Pursuant to
Fed. R. Civ. P. 69(a) and Federal and State Common Law)**

247.  Plaintiffs repeat and reallege each of the preceding paragraphs as if fully set forth herein.

248.  The Initial Execution and Execution served on Citibank and Clearstream for enforcement of the Judgment have been returned unsatisfied.  Therefore, Plaintiffs have exhausted their legal remedies.

249.  Pursuant to Fed. R. Civ. P. 69(a), federal and New York state common law, and the inherent equitable power of the Court, Plaintiffs are entitled as an alternative remedy – a Creditor's Bill to reach the equitable interest of the Judgment Debtors in the Restrained Bonds.

250.  Assuming, *arguendo*, that enforcement of the Judgment against the Restrained Bonds is unavailable through remedies at law, the Court should exercise its equitable powers in connection with a Creditor's Bill and otherwise.

251.  Plaintiffs are entitled to a declaration by the Court that the Judgment Debtors have an ownership interest in the Restrained Bonds, including all cash proceeds from any payments of interest and principal on the bonds, that may be reached by the Plaintiffs to enforce the Judgment under the present circumstances.

252.  An objective weighing of the equities underlying the terrorism exception to the FSIA and TRIA, on the one hand, and Article 8 of the U.C.C., on the other, compels the conclusion that the Court should use its equitable powers to allow Plaintiffs to reach the Restrained Bonds to enforce the Judgment.

253.  Exercising the Court's discretion to apply the narrow exception to Article 8 of the U.C.C. is reasonable and equitable here because, among other factors: (a) the Restrained Bonds, which are held in New York by Citibank, were readily traced by Clearstream, as evidenced by the testimony and documents put into evidence by Clearstream at the June 27, 2008 hearing; (b) Iran, a judgment debtor, intentionally disguised and/or secreted its identity as beneficial owner of the Restrained Bonds to hinder, delay or defraud creditors; (c) Clearstream and UBAE

knew, or should have known, that Markazi, as agent of Judgment Debtors, was the beneficial owner of the Restrained Bonds; (d) the Judgment Debtors have intentionally deceived purchasers of the Restrained Bonds to evade U.S. and international sanctions imposed because of Iran's long history of human rights violations, state sponsorship of terrorism against U.S. nationals, and aggressive and illicit efforts to develop WMDs; (e) applying that exception will serve the important policy interests codified in the FSIA, which promotes compensation of the victims of terrorism and the punishment of rogue terrorist nations, while doing no damage to the policies of fostering finality and speed in securities transactions underlying U.C.C. Article 8.

254.  Moreover, applying a narrow exception in these circumstances is consistent with U.C.C. 8-112(e), which provides that "[a] creditor whose debtor is the owner of a . . . security entitlement is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the security entitlement or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process." [Emphasis added].

255.  Pursuant to the Court's equitable powers embodied in a Creditor's Bill and otherwise, the Plaintiffs are further entitled to an order directing Clearstream and Citibank to cause the turnover to the Plaintiffs of the Restrained Bonds as partial satisfaction of the Judgment.

## SEVENTH COUNT
### (Against Clearstream and UBAE for Tortious Interference with Collection of Money Judgment)

256.  Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth in full herein.

257.  At all relevant times, Clearstream and UBAE knew or should have known that: (a) Markazi, as alter ego of Iran, was the beneficial owner of the Restrained Bonds and that Iran

was a judgment debtor that owed a substantial money judgment to Plaintiffs; and (b) maintaining the custody of the Restrained Bonds and processing payments due on the Restrained Bonds would require the services of U.S. financial institutions or their subsidiaries, including, but not limited to, Citibank.

258. ███████████████ were required by applicable United States law to inform Citibank, a U.S. financial institution, that assets in Citibank's custody were held for the benefit of Markazi, which used ███████████ as intermediaries.

259. In furtherance of the Conspirators' unlawful scheme, Markazi, Clearstream and ████ intentionally concealed Markazi's status as the beneficial owner of the Restrained Bonds in Citibank's custody in New York. Markazi, Clearstream and UBAE engaged in that deception to induce Citibank to continue to provide services in connection with the Restrained Bonds owned by Markazi ███████████████████████.

260. Because of that deception, Citibank remained unaware that it was providing services in New York ████████████████████████, and provided services in or around ████████ and █████████, that effected the transfer of: (a) the Restrained Bonds to the ████████████ at Clearstream; and (b) Markazi's interests in two bonds with a nominal value of $250,000,000.00 from Clearstream's omnibus account at Citibank in New York to the account ████████████████.

261. The transfer instructions that Markazi, UBAE and Clearstream issued in connection with those transactions required Citibank, *inter alia*: (a) to ████████████ in Restrained Bonds between Markazi's Clearstream account and the ████████████████ at Clearstream; and (b) to transfer the $250 million in bonds from Clearstream's Omnibus Account in New York to ████████.

181752

262.   Markazi received the proceeds paid in exchange for the transfer of the $250 million in bonds after payment of proceeds was effected through correspondent banks located in New York.

263.   Citibank was also induced by Markazi, Clearstream and UBAE to implement instructions originating from Markazi, as agent and alter ego of Iran, for collection and payment of interest and other proceeds received from issuers and paying agents in connection with the Restrained Bonds.  Markazi beneficially owns the Restrained Bonds as alter ego of Iran, and Citibank holds custody of those bonds in New York.  The payments received by Markazi in connection with its sale and ownership of the Restrained Bonds arose from transactions among multiple financial institutions located in New York, including fiscal agents, paying agents, correspondent banks and Citibank.

264.   Had Citibank been informed by Markazi, Clearstream or UBAE that the bonds custodized in Clearstream's omnibus account were held for the benefit of Markazi, Citibank would have been bound by law to inform OFAC of that information and to refuse to effect the transfer of the Restrained Bonds.  Had Markazi, Clearstream or UBAE informed Citibank of that information, the Restrained Bonds would have remained in Citibank's custody in New York and would be available for enforcement of the Judgment.

265.   In furtherance of the Conspirators' scheme, Clearstream and UBAE actively participated in: (a) the transmission and implementation of the instructions that Markazi issued, as Iran's agent and alter ego, regarding the ████████████████████████ ████████████████████████████████; and (b) the collection and payment of interest and other proceeds received from the issuers and paying agents of the Restrained Bonds that Markazi beneficially owned.

266. Clearstream and UBAE directly benefitted from their participation in this unlawful conduct by charging and collecting fees and commissions from ███████████████ ███████████████████████

267. By engaging in the foregoing misconduct, Clearstream and UBAE acted knowingly to tortiously interfere with Plaintiffs' collection of the Judgment.

268. ████████████████████████████████████ ███████████████████████████████████ ████████████████████████████████████ ████████

269. Accordingly, to the extent that the actions of Clearstream and ███████ Markazi's assets out of the reach of Plaintiffs (which Plaintiffs deny), Plaintiffs are entitled to: (a) an accounting of the fees and other benefits that Clearstream and ██████ received by virtue of their active participation in the transfer of Iran's assets; (b) an award of damages in the amount of at least ███████; (c) punitive damages in an amount to be determined at trial; and (d) the payment of their attorneys' fees and expenses.

## EIGHTH COUNT
### (Against Clearstream and UBAE for Prima Facie Tort)

270. Plaintiffs repeat and reallege each of the foregoing paragraphs as if set forth in full herein.

271. Clearstream and ██████ intentionally inflicted harm on Plaintiffs by: (a) ████████ the interests of Iran and Markazi in the two bonds with a nominal value of ███████████ from Clearstream's omnibus account at Citibank in New York to the account of third party purchasers; and (b) transferring the Restrained Bonds from Markazi's account at Clearstream to the ██████ ██████████████████ at Clearstream.

272.  To the extent that the conduct of Clearstream and ███████████ the Restrained Bonds out of the reach of Plaintiffs (which Plaintiffs deny), Plaintiffs suffered damages of at least ███████, which is the value of the Restrained Bonds that otherwise would have been available to Plaintiffs to satisfy the Judgment.

273.  Defendants Clearstream and UBAE had no excuse or justification for causing the transfer of the Restrained Bonds to the ████████████.

274.  By reason of the intentional misconduct in which Clearstream and UBAE engaged, Plaintiffs are entitled to: (a) an accounting of the fees and other benefits received by Clearstream and UBAE by virtue of their active participation in the transfer of the Iran's assets beyond Plaintiffs' reach; (b) an award of damages in the amount of at least ███████; (c) the payment of punitive damages in an amount to be determined at trial; and (d) the payment of Plaintiffs' expenses and attorneys' fees.

**WHEREFORE**, the Plaintiffs respectfully demand a judgment entered in their favor and against Defendants as follows:

A.  damages in an amount to be determined at trial;

B.  punitive damages in an amount to be determined at trial;

C.  the payment of Plaintiffs' attorneys' fees and expenses;

D.  interest at the legal rate;

E.  the equitable and declaratory relief that Plaintiffs request in each of the foregoing counts; and

F.  such other and further relief as the Court deems appropriate.

Dated:  New York, New York,
         December 7, 2010

181752                          56

SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

By: _____

Liviu Vogel
292 Madison Avenue, 6th Floor
New York, NY  10017
Tel:  (212) 661-7100


STONE BONNER & ROCCO LLP
James P. Bonner
Patrick L. Rocco
260 Madison Avenue, 17th Floor
New York, NY  10016
Tel: (212) 239-4340


*Attorneys for Plaintiffs/Judgment Creditors*

181752

June 27, 2008 in the Miscellaneous Action.  The parties shall file the publicly redacted versions of the pleadings from the Miscellaneous Action in the Consolidated Action.

     5.     Going forward, all submissions by the parties shall be made in the Consolidated Action.  Any submissions filed under seal shall require a public version of the submission showing only redacted information, which must be filed on ECF the following business day.

     6.     Plaintiffs shall promptly file a publicly redacted version of the Amended Complaint from the Consolidated Action.

**SO ORDERED:**

BARBARA S. JONES
**UNITED STATES DISTRICT JUDGE**

Dated: New York, New York
      August 1, 2011

2

## RIDER A

Abbott, Terry
Allman, John Robert
Bates, Ronny Kent
Baynard, James
Beamon, Jess W.
Belmer, Alvin Burton
Blankenship, Richard D.
Blocker, John W.
Boccia, Joseph John Jr.
Bohannon, Leon
Bonk, John Jr.
Boulos, Jeffrey Joseph
Boyett, John Norman
Burley, William
Callahan, Paul
Camara, Mecot
Campus, Bradley
Ceasar, Johnnie
Conley, Robert Allen
Cook, Charles Dennis
Copeland, Johnny Len
Cosner, David
Coulman, Kevin
Crudale, Rick
Cyzick, Russell
Devlin, Michael
Dorsey, Nathaniel
Dunnigan, Timothy
Earle, Bryan
Estes, Danny R.
Fluegel, Richard Andrew
Fulcher, Michael D.
Gallagher, Sean
Gangur, George
Garcia, Randall
Ghumm, Harold
Giblin, Timothy
Gorchinski, Michael
Gordon, Richard
Green, Davin M.
Hairston, Thomas
Haskell, Michael

Helms, Mark Anthony
Hester, Stanley G.
Hildreth, Donald Wayne
Holberton, Richard
Hudson, Dr. John
Hukill, Maurice Edward
Iacovino, Edward Jr.
Innocenzi, Paul III
Jackowski, James
James, Jeffrey Wilbur
Jenkins, Nathaniel Walter
Johnston, Edward Anthony
Jones, Steven
Julian, Thomas Adrian
Keown, Thomas
Kluck, Daniel
Knipple, James C.
Kreischer, Freas H. III
Laise, Keith
Langon, James IV
LaRiviere, Michael Scott
LaRiviere, Steven
Lemnah, Richard
Livingston, Joseph R. ("Joel") III
Lyon, Paul D. Jr.
Macroglou, John
Maitland, Samuel Jr.
Martin, Charlie Robert
Massa, David
McCall, John
McDonough, James E.
McMahon, Timothy R.
Menkins, Richard II
Meurer, Ronald
Milano, Joseph Peter
Moore, Joseph
Myers, Harry Douglas
Nairn, David
Olson, John Arne
Owens, Joseph Albert
Page, Connie Ray
Parker, Ulysses Gregory
Pearson, John L.
Perron, Thomas S.
Phillips, John Arthur Jr.

Pollard, William Roy
Prevatt, Victor Mark
Price, James
Prindeville, Patrick Kerry
Quirante, Diomedes J.
Richardson, Warren
Rotondo, Louis J.
Sauls, Michael Caleb
Schnorf, Charles Jeffrey
Schultz, Scott Lee
Scialabba, Peter
Scott, Gary Randall
Shipp, Thomas Alan
Shropshire, Jerryl
Simpson, Larry H. Jr.
Smith, Kirk Hall
Smith, Thomas Gerard
Smith, Vincent
Sommerhof, William Scott
Spencer, Stephen Eugene
Stelpflug, William
Stephens, Horace Renardo Jr. ("Ricky")
Stockton, Craig
Stokes, Jeffrey
Sturghill, Eric D.
Sundar, Devon
Thorstad, Thomas Paul
Tingley, Stephen
Vallone, Donald H. Jr.
Washington, Eric Glenn
Wigglesworth, Dwayne
Williams, Rodney J.
Williams, Scipio Jr.
Williamson, Johnny Adam
Winter, William Ellis
Woollett, Donald Elberan
Wyche, Craig
Young, Jeffrey D.
Albright, Marvin
Arroyo, Pablo
Banks, Anthony
Burnette, Rodney Darrell
Comes, Frank Jr.
Dolphin, Glenn
Eaves, Frederick Daniel

Frye, Charles
Garner, Truman Dale
Gerlach, Larry
Hlywiak, John
Hunt, Orval
Jacobs, Joseph P.
Kirkpatrick, Brian
Matthews, Burnham
Mitchell, Timothy
Moore, Lovelle "Darrell"
Nashton, Jeffrey
Oliver, John
Rivers, Paul
Russell, Stephen
Spaulding, Dana
Swinson, Craig Joseph
Toma, Michael
Wheeler, Danny
Young, Thomas D.
Abbey, Lilla Woollett
Abbott, James
Abbott, Mary (Estate of)
Adams, Elizabeth
Ahlquist, Eileen Prindeville
Alarcon, Miralda (Judith Maitland)
Allman, Anne
Allman, Robert
Allman, Theodore (Estate of)
Allman, DiAnne Margaret ("Maggie")
Alvarez, Margaret E.
Angus, Kimberly F.
Bates, Donnie
Bates, Johnny
Bates, Laura
Bates, Margie
Bates, Monty
Bates, Thomas Jr.
Bates, Thomas C., Sr.
Baumgartner, Mary E.
Baynard, Anthony
Baynard, Barry
Baynard, Emerson
Baynard, Philip
Baynard, Thomasine
Baynard, Timothy

Baynard, Wayne
Baynard, Stephen
Beard, Anna
Beck, Mary Ann
Belmer, Alue
Belmer, Annette
Belmer, Clarence
Belmer, Colby Keith
Belmer, Denise
Belmer Donna
Belmer, Faye
Belmer, Kenneth
Belmer, Luddie
Biellow, Shawn
Black, Mary Frances
Blankenship, Donald Jr.
Blankenship, Donald Sr.
Blankenship, Mary (Estate of)
Blocker, Alice
Blocker, Douglas
Blocker, John R.
Blocker, Robert
Boccia, James
Boccia, Joseph Sr.
Boccia, Patricia
Boccia, Raymond
Boccia, Richard
Boccia, Ronnie (Veronica)
Boddie, Leticia
Bohannon, Angela
Bohannon, Anthony
Bohannon, Carrie
Bohannon, David
Bohannon, Edna
Bohannon, Leon Sr.
Bohannon, Ricki
Bolinger, Billie Jean
Boulos, Joseph
Boulos, Lydia
Boulos, Marie
Bowler, Rebecca
Boyett, Lavon
Boyett, Norman E. Jr. (Estate of)
Boyett, Theresa U. Roth
Boyett, William A.

148941.1

Breeden, Susan Schnorf
Briscoe, Damion
Brown, Christine
Brunette, Rosanne
Buckner, Mary Lynn
Burley, Claude (Estate of)
Burley, William Douglas (Estate of)
Burley, Myra
Calabro, Kathleen
Caldera, Rachel
Callahan, Avenell
Callahan, Michael
Calloway, Patricia (Patsy Ann)
Camara, Elisa Rock
Camara, Theresa Riggs
Campbell, Candace
Campus, Clare
Capobianco, Elaine
Carter, Florene Martin
Cash, Phyllis A.
Catano, Theresa
Ceasar, Bruce
Ceasar, Franklin
Ceasar, Fredrick
Ceasar, Robbie Nell
Ceasar, Sybil
Cecca, Christine Devlin
Chapman, Tammy
Cherry, James
Cherry, Sonia
Chios, Adele H.
Christian, Jana M.
Christian, Sharon Rose
Ciupaska, Susan
Clark, LeShune Stokes
Clark, Rosemary
Cobble, Mary Ann
Collard, Karen Shipp
Collier, Jennifer
Collier, Melia Winter
Coltrane, Deborah M.
Conley, James N. Jr.
Conley, Roberta Li
Cook, Charles F.
Cook, Elizabeth A.

Cook, Mary A. (Estate of)
Copeland, Alan Tracy
Copeland, Betty
Copeland, Donald
Corry, Blanche
Cosner, Harold
Cosner, Jeffrey
Cosner, Leanna
Cosner, Marva Lynn (Estate of)
Cossaboom, Cheryl
Coulman, Bryan Thomas
Coulman, Christopher J.
Coulman, Dennis P.
Coulman, Lorraine M.
Coulman, Robert D.
Coulman, Robert Louis
Covington, Charlita Martin
Crouch, Amanda
Crudale, Marie
Cyzick, Eugene
Dallachie, Lynn
Deal, Anne
Derbyshire, Lynn Smith
Desjardins, Theresa
Devlin, Christine
Devlin, Daniel
Devlin, Gabrielle
Devlin, Richard
Devlin, Sean
Donahue (Milano), Rosalie
Doray, Ashley
Doss, Rebecca
Dunnigan, Chester
Dunnigan, Elizabeth Ann
Dunnigan, Michael
Dunnigan, William
Dunnigan, Claudine
Edquist, Janice Thorstad
Ervin, Mary Ruth
Estes, Barbara
Estes, Charles
Estes, Frank
Fansler, Lori
Farthing, Angela Dawn
Ferguson, Arlington

Ferguson, Hilton
Fish, Linda Sandback
Fox, Nancy Brocksbank
Fox, Tia
Freshour, Tammy
Fulcher, Ruby
Gallagher, Barbara
Gallagher, Brian
Gallagher, James (Estate of)
Gallagher, James Jr.
Gallagher, Kevin
Gallagher, Michael
Gangur, Dimitri
Gangur, Mary
Garcia, Jess
Garcia, Ronald
Garcia, Roxanne
Garcia, Russell
Garcia, Violet
Garza, Suzanne Perron
Gattegno, Jeanne
Ghumm, Arlene
Ghumm, Ashley
Ghumm, Bill
Ghumm, Edward
Ghumm, Hildegard
Ghumm, Jedaiah (Estate of)
Ghumm, Jesse
Ghumm, Leroy
Ghumm, Moronica
Giblin, Donald
Giblin, Jeanne
Giblin, Michael
Giblin, Tiffany
Giblin, Valerie
Giblin, William
Gilford-Smith, Thad
Gintonio, Rebecca
Goff, Dawn
Gorchinski, Christina
Gorchinski, Judy
Gorchinski, Kevin
Gorchinski, Valerie
Gordon, Alice
Gordon, Joseph

Gordon, Linda
Gordon, Norris (Estate of)
Gordon, Paul
Grant, Andrea
Graves, Deborah
Green, Deborah
Gregg, Liberty Quirante
Griffin, Alex
Grimsley, Catherine E.
Gummer, Megan
Guz, Lyda Woollett
Hairston, Darlene
Hanrahan, Tara
Hart, Mary Clyde
Haskill, Brenda
Haskell, Jeffrey
Hedge, Kathleen S.
Helms, Christopher Todd
Helms, Marvin R.
Hester, Doris
Hildreth, Clifton
Hildreth, Julia
Hildreth, Mary Ann
Hildreth, Michael Wayne
Hilton, Sharon A.
Holberton, Donald
Holberton, Patricia Lee
Holberton, Thomas
Hollifield, Tangie
Horner, Debra
House, Elizabeth
Houston, Joyce A.
Howell, Tammy Camara
Hudson, Lisa H.
Hudson, Lorenzo
Hudson, Lucy
Hudson, Ruth
Hudson, Samuel (Estate of)
Hudson, William J.
Hugis, Susan Thorstad (Estate of)
Hurlburt, Nancy Tingley
Hurston, Cynthia Perron
Iacovino, Edward Sr. (Estate of)
Iacovino, Elizabeth
Innocenzi, Deborah

Innocenzi, Kristin
Innocenzi, Mark Innocenzi, Paul IV
Jaccom, Bernadette
Jackowski, John Jr.
Jackowski, John Sr.
Jacobus, Victoria
James, Elaine
Jenkins, Nathalie C.
Jenkins, Stephen
Jewett, Rebecca
Johnson, Linda Martin
Johnson, Ray
Johnson, Rennitta Stokes
Johnson, Sherry
Johnston, Charles
Johnston, Edwin
Johnston, Mary Ann
Johnston, Zandra LaRiviere
Jones, Alicia
Jones, Corene Martin
Jones, Kia Briscoe
Jones, Mark
Jones, Ollie
Jones, Sandra D.
Jones, Synovure (Estate of)
Jordan, Robin Copeland
Jordan, Susan Scott
Julian, Joyce
Julian, Karl
Jurist, Nada
Keown, Adam
Keown, Bobby Jr.
Keown, Bobby Sr.
Keown, Darren
Keown, William
Kirker, Mary Joe
Kluck, Kelly
Kluck, Michael
Knipple, John D. (Estate of)
Knipple, John R.
Knipple, Pauline (Estate of)
Knox, Shirley L.
Kreischer, Doreen
Kreischer, Freas H. Jr.
Lake, Cynthia D.

Lange, Wendy L.
Langon, James III
LaRiviere, Eugene
LaRiviere, Janet
LaRiviere, John M.
LaRiviere, Lesley
LaRiviere, Michael
LaRiviere, Nancy
LaRiviere, Richard
LaRiviere, Richard G. (Estate of)
LaRiviere, Robert
LaRiviere, William
Lawton, Cathy L.
LeGault, Heidi Crudale
Lemnah, Clarence (Estate of)
Lemnah, Etta
Lemnah, Fay
Lemnah, Harold
Lemnah, Marlys
Lemnah, Robert
Lemnah, Ronald
Livingston, Annette R.
Livingston, Joseph R. IV
Livingston, Joseph R. Jr. (Estate of)
Lynch, Robin M.
Lyon, Earl
Lyon, Francisco
Lyon, June
Lyon, Maria
Lyon, Paul D. Sr.
Lyon, Valerie
Macroglou, Heather
Mahoney, Kathleen Devlin
Maitland, Kenty
Maitland, Leysnal
Maitland, Samuel Sr.
Maitland, Shirla
Marshall, Virginia Boccia
Martin, John
Martin, Pacita
Martin, Renerio
Martin, Ruby
Martin, Shirley
Mason, Mary
Massa, Cristina

Massa, Edmund
Massa, Joao ("John")
Massa, Jose ("Joe")
Massa, Manuel Jr.
Massa, Ramiro
McCall, Mary
McCall, Thomas (Estate of)
McCall, Valerie
McDermott, Gail
McFarlin, Julia A.
McMahon, George
McMahon, Michael
McPhee, Patty
Menkins, Darren
Menkins, Gregory
Menkins, Margaret
Menkins, Richard H.
Meurer, Jay T.
Meurer, John
Meurer, John Thomas
Meurer, Mary Lou
Meurer, Michael
Meyer, Penny
Milano, Angela
Milano, Peter Jr.
Miller, Earline
Miller, Henry
Miller, Patricia
Montgomery, Helen
Moore, Betty
Moore, Harry
Moore, Kimberly
Moore, Mary
Moore, Melissa Lea
Moore, Michael (Estate of)
Moy, Elizabeth Phillips.
Myers, Debra
Myers, Geneva
Myers, Harry A.
Nairn, Billie Ann
Nairn, Campbell J. III
Nairn, Campbell J. Jr. (Estate of)
Nairn, William P.
Norfleet, Richard
O'Connor, Deborah

Olaniji, Pearl
Olson, Bertha (Estate of)
Olson, Karen L.
Olson, Randal D.
Olson, Roger S.
Olson, Ronald J.
Olson, Sigurd (Estate of)
Owens, David
Owens, Deanna
Owens, Frances
Owens, James (Estate of)
Owens, Steven
Page, Connie Mack
Page, Judith K.
Palmer, Lisa Menkins
Paolozzi, Geraldine
Pare, Maureen
Parker, Henry James
Parker, Sharon
Pearson, Helen M.
Pearson, John L. Jr.
Pearson, Sonia
Perron, Brett
Perron, Deborah Jean
Perron, Michelle
Perron, Ronald R.
Persky, Muriel
Peterson, Deborah D.
Petry, Sharon Conley
Petrick, Sandra
Phelps, Donna Vallone
Phillips, Harold
Phillips, John Arthur Sr.
Plickys, Donna Tingley
Pollard, Margaret Aileen
Pollard, Stacey Yvonne
Prevatt, Lee Hollan
Prevatt, Victor Thornton
Price, John
Price, Joseph
Prindeville, Barbara D. (Estate of)
Prindeville, Kathleen Tara
Prindeville, Michael
Prindeville, Paul
Prindeville, Sean

Quirante, Belinda J.
Quirante, Edgar
Quirante, Godofredo (Estate of)
Quirante, Milton
Quirante, Sabrina
Ray, Susan
Reininger, Laura M.
Richardson, Alan
Richardson, Beatrice
Richardson, Clarence
Richardson, Eric
Richardson, Lynette
Richardson, Vanessa
Richardson-Mills, Philiece
Ricks, Melrose
Riva, Belinda Quirante
Rockwell, Barbara
Rooney, Linda Rose,
Tara Smith
Ruark, Tammi
Rudkowski, Juliana
Russell, Marie McMahon
Sanchez, Alicia Lynn
Sauls, Andrew
Sauls, Henry Caleb
Sauls, Riley A.
Schnorf, Margaret Medler
Schnorf, Richard (brother)
Schnorf, Richard (father)
Schnorf, Robert
Schultz, Beverly
Schultz, Dennis James
Schultz, Dennis Ray
Scialabba, Frank
Scialabba, Jacqueline
Scialabba, Samuel Scott
Scott, Jon Christopher
Scott, Kevin James
Scott, Larry L. (Estate of)
Scott, Mary Ann
Scott, Sheria
Scott, Stephen Allen
Seguerra, Jacklyn
Shipp, Bryan Richard
Shipp, James David

Shipp, Janice
Shipp, Maurice
Shipp, Pauline
Shipp, Raymond Dennis
Shipp, Russell
Sinsioco, Susan J.
Smith-Ward, Ana
Smith, Angela Josephine (Estate of)
Smith, Bobbie Ann
Smith, Cynthia
Smith, Donna Marie
Smith, Erma
Smith, Holly
Smith, Ian
Smith, Janet
Smith, Joseph K. III
Smith, Joseph K. Jr.
Smith, Keith
Smith, Kelly B.
Smith, Shirley L.
Smith, Tadgh
Smith, Terrence
Smith, Timothy B.
Sommerhof, Jocelyn J.
Sommerhof, John
Sommerhof, William J.
Spencer, Douglas
Stelpflug, Christy Williford
Stelpflug, Joseph
Stelpflug, Kathy Nathan
Stelpflug, Laura Barfield
Stelpflug, Peggy
Stelpflug, William
Stephens, Horace Sr.
Stephens, Joyce
Stephens, Keith
Stockton, Dona
Stockton, Donald (Estate of)
Stockton, Richard
Stokes, Irene
Stokes, Nelson Jr.
Stokes, Nelson Sr. (Estate of)
Stokes, Robert
Stokes-Graham, Gwenn
Sturghill, Marcus D.

Sturghill, Marcus L. Jr.
Sturghill, NaKeisha Lynn
Sundar, Doreen
Tella, Margaret
Terlson, Susan L.
Thompson, Mary Ellen
Thorstad, Adam
Thorstad, Barbara
Thorstad, James Jr.
Thorstad, James Sr.
Thorstad, John
Thorstad, Ryan
Thurman, Betty Ann
Tingley, Barbara
Tingley, Richard L.
Tingley, Russell
Tolliver, Keysha
Turek, Mary Ann
Valenti, Karen
Vallone, Anthony
Vallone, Donald H.
Vallone, Timothy
Vargas, Leona Mae
Voyles, Denise
Wallace, Ila
Wallace, Kathryn Thorstad
Wallace, Richard J.
Warwick, Barbara Thorstad
Washington, Linda
Washington, Vancine
Watson, Kenneth
Whitener, Diane
Wigglesworth, Daryl
Wigglesworth, Darrin A.
Wigglesworth, Henry
Wigglesworth, Mark
Wigglesworth, Robyn
Wigglesworth, Sandra
Wigglesworth, Shawn
Williams, Dianne Stokes
Williams, Gussie Martin
Williams, Janet
Williams, Johnny
Williams, Rhonda
Williams, Ronald

Williams, Ruth
Williams, Scipio J.
Williams, Wesley
Williams-Edwards, Delma
Williamson, Tony
Williamson, Jewelene
Winter, Michael
Wiseman, Barbara
Woodford, Phyllis
Woodle, Joyce
Woollett, Beverly
Woollett, Paul
Wright, Melvina Stokes
Wright, Patricia
Wyche, Glenn
Wyche, John
Young, John F.
Young, John W.
Young, Judith Carol
Young, Sandra Rhodes
Zimmerman, Joanne
Zone, Stephen Thomas
Zosso, Patricia Thorstad
Ali, Jamaal Muata
Angeloni, Margaret
Arroyo, Jesus
Arroyo, Milagros
Carletta, Olympia
Carpenter, Kimberly
Comes, Joan
Comes, Patrick
Comes, Christopher
Comes, Frank Sr.
Crawford, Deborah
Davis, Barbara
Franklin, Alice Warren
Gerlach, Patricia
Gerlach, Travis
Gerlach, Megan
Hernandez, Arminda
Hlywiak, Margaret
Hlywiak, Peter Jr.
Hlywiak, Peter Sr.
Hlywiak, Paul
Hlywiak, Joseph

Hunt, Cynthia Lou
Ibarro, Rosa
Jacobs, Andrew Scott
Jacobs, Daniel Joseph
Jacobs, Danita
Kirkpatrick, Kathleen
Lewis, Grace
Magnotti, Lisa
Mitchell, Wendy
Moore, James Otis (Estate of)
Moore, Johnney S. (Estate of)
Moore, Marvin S.
Moore, Alie Mae
Moore-Jones, Jonnie Mae
Nashton, Alex W. (Estate of)
Oliver, Paul
Oliver, Riley
Oliver, Michael John
Oliver, Ashley E.
Oliver, Patrick S.
Oliver, Kayley
Russell, Tanya
Russell, Wanda
Russell, Jason
Shaver, Clydia
Spaulding, Scott
Stanley, Cecilia
Stilpen, Mary
Swank, Kelly
Swinson, Kenneth J. (Estate of)
Swinson, Ingrid M. (Estate of)
Swinson, Daniel
Swinson, William
Swinson, Dawn
Swinson, Teresa
Warren, Bronzell
Watson, Jessica
Webb, Audrey
Wheeler, Jonathan
Wheeler, Benjamin
Wheeler, Marlis "Molly" (Estate of)
Wheeler, Kerry
Wheeler, Andrew
Wheeler, Brenda June
Wold, Jill

148941.1

Young, Nora (Estate of)
Young, James
Young, Robert (Estate of)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBORAH D. PETERSON, <br> Personal Representative of the <br> Estate of James C. Knipple (Dec.), *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Consolidated Civil Actions:
01-2094 (RCL)
01-2684 (RCL)

## <u>JUDGMENT</u>

In accord with the Memorandum Opinion issued this date, it is hereby

ORDERED that Default Judgment be entered in favor of plaintiffs and against

defendants, jointly and severally, in the amount of $2,656,944,877.00, which shall be allocated

in the following manner:

1.  *Wrongful Death Claims Brought by the Personal Representatives and Estates of*

    *Deceased Servicemen*

| | |
|---|---|
| Abbott, Terry | $1,485,243.00 |
| Allman, John Robert | $545,937.00 |
| Bates, Ronny Kent | $2,991,659.00 |
| Baynard, James | $626,517.00 |
| Beamon, Jess W. | $988,897.00 |
| Belmer, Alvin Burton | $8,384,746.00 |
| Blankenship, Richard D. | $1,421,889.00 |
| Blocker, John W. | $975,621.00 |
| Boccia, Joseph John Jr. | $1,276,641.00 |
| Bohannon, Leon | $706,549.00 |

| | |
|---|---|
| Bonk, John Jr. | $904,220.00 |
| Boulos, Jeffrey Joseph | $1,154,112.00 |
| Boyett, John Norman | $2,235,375.00 |
| Burley, William | $170,847.00 |
| Callahan, Paul | $974,546.00 |
| Camara, Mecot | $1,882,308.00 |
| Campus, Bradley | $433,959.00 |
| Ceasar, Johnnie | $313,593.00 |
| Conley, Robert Allen | $962,677.00 |
| Cook, Charles Dennis | $837,147.00 |
| Copeland, Johnny Len | $541,325.00 |
| Cosner, David | $1,105,668.00 |
| Coulman, Kevin | $1,287,092.00 |
| Crudale, Rick | $1,004,731.00 |
| Cyzick, Russell | $575,554.00 |
| Devlin, Michael | $939,887.00 |
| Dorsey, Nathaniel | $638,703.00 |
| Dunnigan, Timothy | $709,232.00 |
| Earle, Bryan | $1,286,372.00 |
| Estes, Danny R. | $1,000,157.00 |
| Fluegel, Richard Andrew | $1,089,811.00 |
| Fulcher, Michael D. | $1,257,150.00 |
| Gallagher, Sean | $674,382.00 |
| Gangur, George | $1,000,935.00 |
| Garcia, Randall | $1,127,694.00 |
| Ghumm, Harold | $1,260,508.00 |
| Giblin, Timothy | $1,301,526.00 |
| Gorchinski, Michael | $1,931,668.00 |
| Gordon, Richard | $965,609.00 |
| Green, Davin M. | $1,025,050.00 |
| Hairston, Thomas | $1,489,395.00 |
| Haskell, Michael | $2,871,058.00 |
| Helms, Mark Anthony | $1,028,509.00 |
| Hester, Stanley G. | $1,493,349.00 |
| Hildreth, Donald Wayne | $1,425,177.00 |
| Holberton, Richard | $1,818,176.00 |
| Hudson, Dr. John | $4,072,010.00 |
| Hukill, Maurice Edward | $3,038,258.00 |
| Iacovino, Edward Jr. | $407,196.00 |
| Innocenzi, Paul III | $1,715,253.00 |
| Jackowski, James | $463,355.00 |
| James, Jeffrey Wilbur | $251,607.00 |
| Jenkins, Nathaniel Walter | $7,599,314 |

| | |
|---|---|
| Johnston, Edward Anthony | $1,246,535.00 |
| Jones, Steven | $801,721.00 |
| Julian, Thomas Adrian | $415,311.00 |
| Keown, Thomas | $1,013,901.00 |
| Kluck, Daniel | $922,630.00 |
| Knipple, James C. | $1,018,665.00 |
| Kreischer, Freas H. III | $1,059,185.00 |
| Laise, Keith | $447,984.00 |
| Langon, James IV | $1,066,903.00 |
| LaRiviere, Michael Scott | $1,056,282.00 |
| LaRiviere, Steven | $986,622.00 |
| Lemnah, Richard | $1,842,869.00 |
| Livingston, Joseph R. ("Joel") III | $1,762,193.00 |
| Lyon, Paul D. Jr. | $1,034,459.00 |
| Macroglou, John | $2,183,935.00 |
| Maitland, Samuel Jr. | $970,700.00 |
| Martin, Charlie Robert | $1,316,085.00 |
| Massa, David | $674,558.00 |
| McCall, John | $853,420.00 |
| McDonough, James E. | $952,847.00 |
| McMahon, Timothy R. | $984,020.00 |
| Menkins, Richard II | $850,938.00 |
| Meurer, Ronald | $1,855,272.00 |
| Milano, Joseph Peter | $674,258.00 |
| Moore, Joseph | $980,150.00 |
| Myers, Harry Douglas | $891,144.00 |
| Nairn, David | $1,562,682.00 |
| Olson, John Arne | $1,010,497.00 |
| Owens, Joseph Albert | $502,237.00 |
| Page, Connie Ray | $1,012,211.00 |
| Parker, Ulysses Gregory | $641,523.00 |
| Pearson, John L. | $1,816,369.00 |
| Perron, Thomas S. | $424,110.00 |
| Phillips, John Arthur Jr. | $1,030,308.00 |
| Pollard, William Roy | $1,111,556.00 |
| Prevatt, Victor Mark | $862,635.00 |
| Price, James | $989,921.00 |
| Prindeville, Patrick Kerry | $305,675.00 |
| Quirante, Diomedes J. | $2,178,822.00 |
| Richardson, Warren | $796,673.00 |
| Rotondo, Louis J. | $2,276,348.00 |
| Sauls, Michael Caleb | $974,601.00 |
| Schnorf, Charles Jeffrey | $2,790,541.00 |