

# Memorandum

To           : White & Case / Attn. Mr Frank Panopoulos
From        : Philippe Dupont / Grégory Minne
Date          : 7 January 2011
Subject      : Entitlement to securities held with Clearstream Banking
Your references  : /
Our references  : 37538-4754788

---

### Introduction

1. You request our advice with resp ect to the  entitlement of Bank Markazi aga inst Clearstream Banking S.A. ( **Clearstream**) regarding securit ies (**Securities**) credited to an account held with Clearstream in Luxem bourg and sub-deposited by Clearstream in its name wi th Citibank in New York (I.), the place of performance of Clearstream's obligations  to hold and return the Securities (II.), and the law applicable to t he entitlement of Bank Markazi to the Securities (III.).

2. This memorandum is limited to the matters sta ted herein a nd does not extend, and is not to be read as exten ding by impl ication, to any other matters. It is ba sed exclusively on, and relates solely to  matters of, Luxembourg law, including its rules  on conflicts of laws, in force at the date hereof and assume that no foreign laws will h ave any bearing on it.

3. Luxembourg legal concepts are expressed in  English ter ms and not in their or iginal French terms. The concepts concer ned may not be identical to the concepts describ ed by the same English t erms as th ey exist  in the laws  of other jur isdictions. This memorandum may, therefore, only  be relied on upon the e xpress condition that any issues of t he interpretation or lia bility arisin g thereunder will be governed  by Luxembourg Law and be brought before a court in Luxembourg.

## I.    Clearstream's obligations under the account agreement with Bank Markazi

4. Clearstream's obligations under its account agreement with Bank Markazi are limited in nature to cl earance, se ttlement, cu stodial, a dministrative a nd other an cillary services, as provided by the general terms & condi tions governing the relationship betw een Clearstream and Bank  Markazi.  As custodia n Clearstream does n ot acquire any proprietary  rights in th e Securities deposited with it by  Bank Markazi. Under its obligations  as custodia n, Clearstream can, under Luxe mbourg law, only transfe r entitlements booked in its customer's account upon the latter's instructions.

## II.    Entitlement of Bank Markazi to the Securities

5. Securities held in a securities acco unt with Clearstream and which are transferrable b y book entries are considered under Luxembourg law to be fungible securities.

6. From a traditional civil  law point of view , the deposit of fungible goods is characterized as an irregular deposit  ( *depôt irrégulier* ). Under ordinary  principles of civil law the custodian  becomes t he legal o wner of th e fungible  goods de posited wit h it.



Accordingly, depositors are only entitled to a personal claim (*droit personnel*) against the custodian.

7.   The Luxembourg legislature has, however, created a specific regime for deposits of fungible securities by a Grand Ducal regulation of 17 February 1971 which has been replaced by the Luxembourg law of 1st August 2001 on the circulation of securities and other fungible instruments, as amended (the **Securities Act**)[1].

8.   There is no exhaustive list of all the types of financial instruments to which the Securities Act applies. The Luxembourg legislature has adopted a pragmatic approach which is to provide for a definition which potentially encloses any new financial instrument created by the financial markets and which may be credited to a securities account and transferred by book entry.

The Securities Act thus applies to securities within the broadest possible sense which are deposited or held in an account with a custodian and which are fungible[2], whether they are materialized or dematerialized, in bearer form, to the order of or in registered form, subject to Luxembourg law or a foreign law, and irrespective of the form in which they have been issued under their governing law. Entitlements to securities held in a securities account with Clearstream are thus governed by the Securities Act.

9.   The Securities Act provides a protective measure in favor of depositors of fungible securities which consists in granting a right *in rem* to depositors. As a derogation to general civil law principles, the custodian of fungible securities does not become the owner thereof.

The depositor has the same entitlement to the securities as if the securities had remained with it[3]. The entitlement of depositors is characterized as right *in rem* of an intangible nature (*droit réel de nature incorporelle*), up to the number of securities booked to their accounts, on the entirety of the securities of the same kind deposited with or held in an account by the custodian[4] i.e. Clearstream.

Such right *in rem* can pursuant to Article 6 of the Securities Act only be exercised by the depositor against its custodian[5] even if its custodian (here Clearstream) has sub-deposited the Securities with a higher tier intermediary. There is only one exception to this general rule: in case of bankruptcy of its custodian the depositor acquires a direct right against the sub-custodian of its custodian. Since Clearstream is not bankrupt this exception does not apply.

10.  In summary, where Bank Markazi holds a securities account with Clearstream it has a right *in rem* of an intangible nature on the Securities held in its account, but it may exercise its entitlement to the Securities only against Clearstream. Luxembourg law denies any rights to Bank Markazi to exercise any rights to the Securities against Citibank with which Clearstream has sub-deposited the Securities in its name.

---

[1] Loi du 1 er août 2001 concernant la circulation de titres et d'autres instruments fongibles (Mémorial A, 2001, p.2180) as amended by Loi du 5 août 2005 sur les contrats de garantie financière (Mémorial A, 2005, p.2212). The provisions of the Luxembourg Civil Code continue to apply unless the Securities Act departs from such provisions.
[2] Securities received on deposit or held in an account with a custodian without indication of numbers or other individual identification elements are deemed to be fungible (Article 1 § 2 of the Securities Act).
[3] Article 6 §1 of the Securities Act.
[4] Article 6 §2 of the Securities Act.
[5] Article 6 §3 of the Securities Act.



### III. Place of performance of Clearstream's obligations with respect to Bank Markazi's entitlements

11. As mentioned in section I above, under the Securities Act, the entitlement to securities deposited with a custodian can only be enforced by the depositor against such custodian[6].

12. From a conflict of laws perspective, it is traditionally held that a bank is the obligor of the characteristic performance with respect to the services rendered to its clients[7].

13. According to Luxembourg case law[8], the characteristic performance in bilateral agreements is that of the party who performs the obligation in consideration of the money paid for such performance.

14. Based on the foregoing, we are of the view that under Luxembourg law the place where Clearstream must perform its obligations with respect to Bank Markazi's entitlements is Luxembourg, not New York.

15. The parties have expressly confirmed this analysis resulting from the law in providing contractually in article 61 of the General Terms and Conditions of Clearstream that: "These General Terms and Conditions shall be governed and construed in accordance with the laws of the Grand Duchy of Luxembourg. Matters not expressly provided for in these General Terms and Conditions shall be governed by the applicable provisions of Luxembourg law. The Customer will submit to the non-exclusive jurisdiction of the competent Luxembourg courts for any litigation which may arise."

16. Irrespective of any choice of forum clause, under Luxembourg law, Bank Markazi cannot enforce its proprietary rights against Clearstream in New York, but must do so in Luxembourg, Luxembourg being the place where its securities account is held and the place of performance under its account agreement with Clearstream[9].

### IV. Place of location of Clearstream's obligations with respect to Bank Markazi's entitlements

17. Under the Securities Act[10], a custodian is entitled to sub-deposit securities remitted or transferred to an account held with such custodian with other custodians located in Luxembourg or abroad.

The custodian must ensure that such securities be held separately from its own securities with such other custodians. Pursuant to Article 12 of the Securities Act

[6] Article 6 §3 of the Securities Act.
[7] F. SCHOCKWEILER, *Les conflits de lois et les conflits de juridictions en droit international privé luxembourgeois*, 2nd ed., Paul Baulr er, s.d., n° 510; A.-C. VAN GYSEL/J. INGBER « A la recherche de la prestation caractéristique », *Rev. Dr. ULB*, 1994, p. 92-93.
[8] Court of Appeal, 23 May 2001, cause number 20289; Court of Appeal, 2 March 2000, *Pas.* 31, p. 274 ff.; Court of Appeal, 20 June 1995, cause number 16 651; Court of Appeal, 10 May 1994, cause number 15 664; Luxembourg District Court, 1 June 2005, cause number 91269; Luxembourg District Court, 27 February 2003, cause number 47586; Luxembourg District Court, 10 July 2002, cause number 75629; Luxembourg District Court, 20 July 2001, cause number 49020.
[9] Article 2, Article 5 (1) and Article 23 of the Council Regulation (EC) No 44/2001 of 22 December 2000 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters; H. Gaudemet-Tallon, Compétence et execution des jugements en Europe, 4e éd., LGDJ, 2010, p.159 ff.
[10] Article 12 of the Securities Act.



"neither the applicability of the law nor the location of the securities, which shall be deemed to remain with the custodian, shall be affected by such sub-deposit."

18. According to the parliamentary works[11] of the Securities Act[12], Luxembourg law applies the traditional conflict of laws rule on proprietary law aspects (i.e. *lex rei sitae* [13]). Luxembourg law assumes that book-entry securities held with a custodian are located at the place of the registered office (*siège social*) or the principal place of business (*siège d' exploitation*) of such custodian, even if these securities are sub-deposited abroad by such custodian. This rule is supported by the fungible nature of the securities held with the custodian and the intangible nature of the right of the depositor. Since the right of the depositor can be exercised against the custodian only, such right is governed by Luxembourg law since the account where the securities are credited on behalf of the depositor is located in Luxembourg. Accordingly, Luxembourg law governs the entitlements of Bank Markazi to the Securities held in its securities account with Clearstream, irrespective of the fact that Clearstream has sub-deposited certain US securities with Citibank.

19. Based on the foregoing, we are of the view that under Luxembourg law the entitlement of Bank Markazi is governed by Luxembourg law.

## IV. Bank Markazi may exercise its voting rights against the issuer

20. We have reviewed footnote 16 of Plaintiffs' Opposition Memorandum dated November 11, 2010, in which Plaintiffs refer to the European Commission, EU Clearing and Settlement Legal Certainty Group Questionnaire (Apr. 24, 2006) (the **Questionnaire**), to argue that Bank Markazi can enforce rights in the securities against upper tier intermediaries. Plaintiffs misinterpret the Questionnaire, as they:

- confuse the rights *in rem* to the securities exercisable against the intermediary with the rights "attached" to the securities exercisable against the issuer,

- and wrongly argue that the rights *in rem* to the securities may be enforced against upper tier intermediaries.

The authors of this Memorandum are quite familiar with the Questionnaire as they are the authors of the Luxembourg responses to the Questionnaire.

21. The Securities Act distinguishes between the rights *in rem* to the securities and the rights "attached" to the securities. The latter are the corporate and contractual rights attached to the securities.

The Questionnaire expressly addresses this distinction in its question no. 9 which reads as follows: "is there any distinction between (i) the rights arising out of the securities against the issuer and (ii) the rights in respect of holding the security?".

The response to this question in relation to Luxembourg law contained in the Questionnaire is the following:

---

[11] The parliamentary works are the various preparatory documents leading to the vote of a law and include i.a. the draft version(s) of the relevant law and comments by various institutions including the government and the state council on the draft law. The parliamentary works are an important source used by courts to determine the intention of the legislature when courts need to interpret the provisions of a law.
[12] Doc. Parl. N° 4695, 29 September 2000, p. 9.
[13] Also named *lex situs*.



"The Securities Act clearly distinguishes betwe en the rig hts arising out of th e securities against the issuer and the rights in respect of the holding of the securities.

(i) […] The rights arisin g out of the securitie s may be exercised following the procedures established by the Securities Act:

Article 8: "The rights attached to securities and other financial instruments may be exercise d by mean s of the pr oduction of a certif icate, set up f or the purposes set out therein , by the depository certif ying the number of securities or other financial instruments booked to the account.

For the purposes of p articipating in a general meeting of a company, the numerical list of securities or other financial in struments booked to an account with a depository may validly be replaced by a certificate delivered by such depository to the depositor which confirms the unavailabilit y of the securities or other financial instru ments booked to the a ccount up to the date of the general meeting".

(ii) As to the rights in respect of the holding of the securities, the depositor has a right *in rem* of an intangible nature, a right of co-ownership in an intangible pool of book-entry securities. The depositor can only exercise this right *in rem* against the depository (Art. 6 of the Securities Act)."

22.   In relation to rights "a ttached" to securit ies, the Quest ionnaire accordingly also indicates in relation to Luxembourg law in its paragraph 12.14. that "Pursuant to Article 8 of the S ecurities Act, the investor can dire ctly assert t he rights at tached to t he securities (economical and non-economical rights) against the issuer including in case of insolvency of the latter (e.g. to vote in its winding-up) by means of the production of a certificate issued by th e depository certifying th e number of securit ies booked to th e securities a ccount." Economical an d non-econ omical righ ts cover mainly voting rights and contractual rights against the issuer.

The rights attached to the securitie s may thus be exercised directly by the in vestor against the issuer (not against upper tier intermediaries).

23.   However, the rights to the securities may only be exercised by the depositor against its custodian as expressly set out in Article 6 of the Securities Act.

Again, the Questionnaire confirms in its paragr aph 7.14. th at unless th e custodian is insolvent, no rights to the securities may be exercised by the depositor against the sub-custodian of the releva nt securities: "It is to b e noted tha t, unless th e depositor y is declared bankrupt, such right *in rem* can only be enforced by the inves tor (depositor) against its direct depository (Art. 6 of the Securities Act)".

The Questionnaire also confirms this point in its paragraph 12.14.: "The investor's co-ownership rights are directly enforceable only a gainst the intermediary maintaining the securities account".

24.   We also wo uld like to p oint out that , as a respo nse to question 26 (Ca n the invest or enforce rights against an upper-tier intermediary (i) normally, (ii) in the e vent of breach of duty by the intermediary, (iii) i n the event of breach of duty by the upper-ti er



intermediary, (iv) if th    e event is insolvency       rather tha   n breach   of duty?) t   he Questionnaire provides in relation t  o Luxembo urg law that "under the Securities A   ct, accountholders do not have direct rights against  upper-tier intermediaries appointed by their intermediary, subject however to the dire    ct right of  r ecovery of clients of such intermediary in event of the latter's insolvency (cf answer to question 15)".

Also, the Luxembourg law response to the question 27 "in wh at circumstances can (i) a creditor and  (ii) a non-creditor third    party (such as a liquid  ator) of the investor claim securities fr om an upper-tier inter  mediary?" i s the follow ing: "unless in the event of insolvency of the intermediary, an  investor and a fortiori a creditor and a non-creditor third party of the investor, may not claim any securities from an upper-tier intermediary. Furthermore, to the extent that the    upper-tier intermediary is a   securities sett lement system and in accordance with        Article 15    of the Securities Act,     attachments o  f securities accounts opened with a settlement institution are not permitted".

*****