```
X86REPET1                       SEALED
```

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   DEBORAH D. PETERSON, Personal
     Representative of the Estate
 4   of James C. Knipple (Dec.),
     et al.,
 5               Plaintiffs,

 6          v.                          01 CV 2094(RCL)
                                 and 01 CV 2684(RCL)(D.D.C.)
 7

     ISLAMIC REPUBLIC OF IRAN,
 8   et al.,
                 Defendants.
 9   ------------------------------x

10                                  June 27, 2008
                                    11:15 a.m.
11

12   Before:

13                 HON. JOHN G. KOELTL,

14                                     District Judge

15                      APPEARANCES

16

     SALON MARROW DYCKMAN NEWMAN & BROUDY, LLP
17        Attorneys for Plaintiffs
     BY:  LIVIU VOGEL
18        WILLIAM CORTELLESSA

19   LAW OFFICES OF THOMAS FORTUNE FAY, PA
          Attorneys for Plaintiffs
20   BY:  THOMAS FORTUNE FAY

21   PERLES LAW FIRM, PC
          Attorneys for Plaintiffs
22   BY:  STEVEN R. PERLES

23   COOK COLLECTION ATTORNEYS, PLC
          Attorneys for Plaintiffs
24   BY:  DAVID J. COOK

25

X86REPET1                          SEALED

1                    A P P E A R A N C E S (continued)

2    WHITE & CASE
          Attorneys for Defendants
3    BY:  FRANK PANOPOULOS
          CHRISTIAN HEYNE
4
     DAVIS WRIGHT TREMAINE, LLP
5         Attorneys for Citibank
     BY:  SHARON L. SCHNEIER
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

X86REPET1                    SEALED

1            (In open court)

2            THE DEPUTY CLERK:  Peterson vs. Republic of Iran.  All

3    parties please state who they are for the record.

4            MR. PANOPOULOS:  Good morning, your honor.  Frank

5    Panopoulos, law firm of White & Case, representing third-party

6    with interest Clearstream Banking, SA.

7            Your Honor, on my right is Mr. Christian Heyne.  He is

8    the chief of the legal department of Clearstream Banking, SA.

9            THE COURT:  How is his name spelled?

10           MR. HEYNE:  H-E-Y-N-E.

11           MS. SCHNEIER:  Sharon Schneier for -- from Davis

12   Wright Tremaine, representing Citibank.

13           MR. VOGEL:  Good morning, your honor.  Liviu Vogel of

14   Salon, Marrow, Dyckman, Newman & Broudy, representing the

15   plaintiffs.  On my right is my associate, William Cortellessa,

16   and to my far right are three attorneys that represent the

17   plaintiff in the Washington, DC action.  They will introduce

18   themselves.

19           MR. COOK:  Good morning, your honor.  David Cook on

20   behalf of Deborah D. Peterson.

21           MR. FORTUNE FAY:  Good morning, your honor.  Thomas

22   Fortune Fay on behalf of Deborah D. Peterson, et al.

23           MR. PERLES:  Good morning, your honor.  Steven Perles

24   on behalf of Deborah Peterson, et al.

25           THE COURT:  Good morning, all.  All right.

X86REPET1                    SEALED

1          MR. PANOPOULOS:  Your Honor, if I may.

2          Your Honor, just to thank the Court again for

3     appreciating the situation that the restraints have caused and

4     for allowing this hearing to occur today.

5          I just wanted to remind the Court that the testimony

6     that we will hear relates to the information that was covered

7     by Judge Lambert's protective order.  And the testimony will be

8     both confidential material that will be under seal under that

9     protective order, as well as information that is confidential

10    and proprietary with respect to Clearstream's banking services.

11    So I would ask the Court at this time if we could have this

12    proceeding under seal.

13         THE COURT:  All right.  What I would like to do is

14    begin it not under seal until you reach such point that you're

15    going to deal with confidential information.

16         MR. PANOPOULOS:  Yes, your Honor.

17         THE COURT:  At that point I've read the papers, I

18    specifically ask that the order be filed in the public record.

19    And I appreciate that information is subject to the protective

20    order from Judge Lambert.

21         I've read the papers.  I appreciate that not only is

22    it subject to the confidentiality order, but that it does deal

23    with confidential, proprietary information, and there is a

24    compelling reason for closure when that information is

25    discussed.  So the narrowest remedy for that, and one which

X86REPET1                    SEALED

1   would accomplish the goals of keeping the information

2   confidential, is to seal only the portion of the hearing that

3   deals specifically with the confidential information, though I

4   fully appreciate that most of the testimony would probably be

5   confidential because it deals with such things as specific bank

6   account matters, which are well recognized to be confidential.

7           MR. PANOPOULOS:  Yes.  And the way that we'll present

8   the evidence is that for the first section, it's material

9   that's not confidential, and then after it is.

10          So with your Honor's permission, I'd like to call

11  Mr. Mark -- so nervous I forgot his name.  Mr. Mark Gem to the

12  stand.  And I'd like to distribute a binder, your Honor, that

13  has the information that we'll be going over.

14          THE COURT:  Did anyone wish to be heard before we

15  start?

16          MR. VOGEL:  Your Honor, Liviu Vogel for the

17  plaintiffs.  As such time as the information becomes

18  confidential and the testimony will then be sealed, we request

19  that the Court voir dire those persons who are in attendance to

20  ensure that they are the proper persons under the existing

21  protective order that can receive that kind of information.

22          Thank you.

23          THE COURT:  Sure.  Well, when you talk about voir

24  dire, I'm sure when we reach that point -- I imagine there are

25  probably people coming in on other matters.  This will be very

X86REPET1                    SEALED

1    short before I have to go to another sentencing matter, and I'm

2    going to take a break.  And you all probably know the people in

3    the courtroom after I ask people who are not directly involved

4    in this proceeding to leave.  So we'll deal with that when we

5    come to it.

6              MR. PANOPOULOS:  Very well.  Thank you.

7    MARK GEM,

8         called as a witness by the Defendants,

9         having been duly sworn, testified as follows:

10   DIRECT EXAMINATION

11   BY MR. PANOPOULOS:

12   Q.  Mr. Gem, could you please tell the Court what your

13   functions are at Clearstream.

14   A.  Clearstream, I'm a member of the executive committee.  And

15   I look after a number of departments, including the network

16   management function, which is responsible for the subdeposit of

17   the securities that Clearstream maintains on behalf of its

18   customers in various countries, including the United States.

19   Q.  And are you a member of the executive committee?

20   A.  Yes, indeed I am.

21   Q.  And what other functions do you have there?

22   A.  I'm also responsible for such things as corporate planning,

23   corporate strategy, marketing.

24              THE COURT:  Do you have a title?

25              THE WITNESS:  Head of business management, your Honor.

7

X86REPET1               SEALED          Gem - direct

1           THE COURT:  Is that -- is that an officer of the

2    company?

3           THE WITNESS:  Yes, indeed it is.

4           THE COURT:  Doesn't have a title like managing

5    director or vice president or anything like that?

6           THE WITNESS:  Indeed, executive vice president.

7           THE COURT:  Go ahead.

8    BY MR. PANOPOULOS:

9    Q.  And, Mr. Gem, you have knowledge of the omnibus account

10   that's at issue here?

11   A.  Yes, I do.

12          THE COURT:  Could you just tell me briefly what

13   Clearstream is.

14          THE WITNESS:  Clearstream -- the correct name is

15   Clearstream Banking, SA.  Clearstream Banking, SA, is a bank in

16   Luxembourg.  It is also a securities settlement system

17   recognized and regulates as such by the European system of

18   central banks.

19          We are a company which was founded as a security

20   settlement system in 1971 by a consultant of US and

21   international banks in order to act as a depository for

22   Eurobonds; that is to say, to act in a function which is

23   equivalent to that performed, say, by the depository trust and

24   clearing corporation here in New York or by, say, Euroclear

25   Bank in Brussels.

X86REPET1                 SEALED        Gem - direct

1      We became a bank in 1994, at that time known as
2  Citadel Bank.  We became a part of the Deutsche BESA group,
3  which is the group owned by the -- or controlled by the German
4  stock exchange in 2002.  The German stock exchange is a
5  100 percent shareholder of Clearstream Banking, SA, via
6  Luxembourg Holding Company Clearstream International, SA, of
7  which I'm also an officer.
8      THE COURT:  Go ahead.
9      MR. PANOPOULOS:  Your Honor, if you would turn to the
10  Exhibit B in the Tab.  There are four charts that described the
11  clearing services that Clearstream provides.  And for the
12  benefit of the Court --
13      THE COURT:  We are at Tab?
14      MR. PANOPOULOS:  On Tab B, Exhibit B, your Honor, for
15  the benefit of the Court and the plaintiffs and the others.
16      I would just ask Mr. Gem if he could just describe
17  what is in the charts and explain Clearstream's delivery and
18  settlement services.
19      THE COURT:  Just for the record of the proceeding, I
20  take it there's no objection to receiving CDL Exhibit B in
21  evidence, right?
22      MR. VOGEL:  No objection, your Honor.
23      THE COURT:  Okay.
24      (Defendant's Exhibit B received in evidence)
25      MR. PANOPOULOS:  Just for the record, Exhibit A are

X86REPET1                    SEALED        Gem - direct

1   the restraining notices served on -- and the writ of attachment

2   on Citibank.  And I didn't want to refer to them because I

3   didn't want to get into confidential material at this time.

4   Those are already in the record.

5             THE COURT:  Okay.

6   BY MR. PANOPOULOS:

7   Q.  So, Mr. Gem, could you please describe what is in each of

8   the charts that is in Exhibit B.

9   A.  The first chart is a schematic view of the custody

10  arrangements that we organized for the subdeposit of foreign

11  securities; that is to say, securities which are issued

12  elsewhere than through Clearstream Banking itself in

13  Luxembourg.  And in this case, I've chosen the person as an

14  example of the subdeposit of a US issued bond.  In this case we

15  take an illustrative example, say, of a security issued by the

16  European investment bank.  What this is showing is how the

17  subdeposit of our customer's balances would feed into the

18  omnibus account that we maintained Clearstream Banking

19  maintains with Citibank here in New York and how that balance

20  would contribute to the total balance of security interests or

21  interests in that security at the depository trust and clearing

22  corporation here in New York.

23            So if we start at the bottom of the chart, you'll see

24  that the European --

25            THE COURT:  Can I ask you just -- maybe you're going

X86REPET1                    SEALED          Gem - direct

1     to get to this.  You're talking about a bond, ISIN and

2     identifying number?

3              THE WITNESS:  Indeed.

4              THE COURT:  Is that for a specific bond?  Is that the

5     identifying number for, for example, a series of -- a specific

6     series of a bond, given maturity date, given interest rate, so

7     that you can identify it?  That's a bond?  That's the

8     identification number for that bond?

9              THE WITNESS:  It is --

10             THE COURT:  There can be lots of those bonds issued,

11    but that's the identifying number for that -- that particular

12    bond?

13             THE WITNESS:  For that particular bond, indeed, which

14    would generally be issued in the form of a global note in which

15    the interests of all of the holders and notice of that notes

16    are effectively --

17             THE COURT:  There can be lots of bonds with that

18    number, yes or no?

19             THE WITNESS:  There can be lots of positions in that

20    bond with that number, but the issue itself will have a unique

21    identifier.

22    BY MR. PANOPOULOS:

23    Q.  And, Mr. Gem, by position do you mean an interest in that

24    bond?

25    A.  I mean an interest in that bond.

X86REPET1              SEALED          Gem - direct

1          THE COURT:  Let me just give you an example, just so

2   that I understand.  An issue of bond -- let's say, $15 million

3   in bonds.  There are lots of people who can buy individual

4   participations of the bond.  Let's say 5 people buy $10 million

5   of that bond issue, but each of those people would have -- each

6   of the bonds that are given to those people, participations in

7   the bond issue, would have the same ISIN number?

8          THE WITNESS:  Exactly.

9          MR. PANOPOULOS:  And if I might just direct the Court

10  to Exhibit C.  You've anticipated, you know, the next Exhibit.

11  This exhibit -- it's not confidential.  It's from public

12  information.  It lists the ■ securities, the ISINs, the bonds

13  that are at issue and that are listed in the writs of

14  attachment and restraining orders and, as you'll see, your

15  Honor, describes who the issuer is, the distribution date, the

16  maturity date and the initial amount of the interest of the

17  issue and the interest.  I just note it for the Court's --

18          THE COURT:  Thank you.

19  BY MR. PANOPOULOS:

20  Q.  Okay.  Mr. Gem, if you could proceed, then.

21  A.  So given that that is the case, what the first page in

22  Exhibit B is showing is that indeed, if you take this as being

23  an issue on security for total nominal value of 1 billion US

24  dollars, then in this example you could see that we have said

25  at the depository trust incorporation where all the interests

X86REPET1                    SEALED          Gem - direct

1    in that bond must ultimately be immobilized, I would have a

2    broker, for example, holding $50 million.  You would have a

3    custodian -- let's say Citibank of New York, illustratively --

4    for $500 million, and another custodian -- let's say Bank of

5    New York Mellon -- for 450 million.  In that, behind that we

6    would say Clearstream might have a position in that bond on its

7    omnibus account with Citibank New York of say 400 million.  And

8    another Citibank customer might have 100 million, giving the

9    total positions of 500 million at Citibank, New York, at DTCC

10   New York.  Behind that 400 million that Clearstream banking

11   would have, we might have a number of customers -- in this case

12   three customers -- all having a certain interest.

13        And the point that I would make is that the individual

14   customer accounts are not reflected down the custody stream,

15   but in this omnibus concept, which is generally adopted in the

16   United States market, all of the interests are globalized in

17   single positions cascading down into the ultimate position

18   against the issuer account.

19   Q.  And I would ask you, Mr. Gem, in the omnibus account are

20   there subaccounts for each of the securities?

21   A.  Effectively there are subaccounts for each of the

22   securities, but not for each of the holders.

23   Q.  And are there corresponding cash accounts for each of those

24   securities?

25   A.  No, there are not.  The cash accounts that the custodians

X86REPET1                    SEALED          Gem - direct

1   would maintain with each other would be typically identical to

2   normal correspondence Nostra accounts.

3   Q.   Yes.  And if you could simply describe to the Court the

4   next four pages, which are an illustrative --

5            THE COURT:  I'm going to have to break for about a

6   half an hour.

7            MR. PANOPOULOS:  That's fine, your Honor.

8            THE COURT:  So let's take a half an hour.  Thank you.

9            (Recess)

10           (Continued on next page)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

X86REPET1                    SEALED        Gem - direct

1      MARK GEM, resumed.

2            THE CLERK:  The witness is reminded that he is still

3      under oath.

4            THE COURT:  Do you understand?

5            THE WITNESS:  I understand.

6    BY MR. PANOPOULOS:

7    Q.  Your Honor, Mr. Gem, we were in Exhibit B and you had just

8    explained the first chart about what the omnibus account was

9    and we are now on the second page and if you could briefly

10   describe for the court the illustrative transaction on the

11   second page of Exhibit B.

12   A.  Yes.  The next pages are concerning the main transaction

13   types which we, as a settlement system, would undertake on

14   behalf of our customers.

15         Before turning to the first what we call an internal

16   delivery free of payment, I should emphasize that Clearstream

17   Banking as the custodian are not acting for their own account,

18   rather for the accounts of their customers in settling

19   contracts between parties which have been concluded separately

20   and independently of the settlement system.

21         So in this first example, we take a very simple

22   transaction which is where one customer of Clearstream Banking

23   is delivering securities to another customer of Clearstream

24   Banking delivery free.

25         What this chart is showing is that that would mean

X86RYPET2              SEALED        Gem - direct

1    that the position in the security concern of customer A in the

2    top left-hand portion of the page is reduced or marked down by

3    the amount of the delivery, in this case $50 million U.S.

4    dollars nominal, and the account of Clearstream's customer C on

5    the top right-hand of the chart is marked up by 50 million U.S.

6    dollars nominal.

7              The important point to note is that there is no change

8    in the positions of the custodians beneath.  The position of

9    the Clearstream Banking has at Citibank as its custodian in New

10   York is not changed as a result of that transaction.

11             What is meant by delivery free, it means that there is

12   no compensating cash payment in the books, in this case

13   Clearstream Banking.  It may mean, therefore, that the delivery

14   has been made without the change in the beneficial ownership of

15   the customer, of the party who is owning the interest

16   represented by customer A or it may mean that there has been a

17   change of beneficial ownership because the consideration at the

18   conclusion of the sale and purchase agreement has been paid

19   outside of Clearstream Banking.

20   Q.  Clarify, Mr. Gem, for the court and for plaintiffs,

21   basically what you are saying is that there is a transfer of a

22   value in securities between the Clearstream customers, but the

23   payment stream that you would expect from the buyer to the

24   seller isn't in Clearstream, it might be somewhere else, for

25   example, Euroclear or some of the other clearing houses?

X86RYPET2                    SEALED           Gem - direct

1   A.   In that example it would not, in fact, it would not be in

2   Euroclear, it may be a commercial bank or, indeed, there may

3   not be a distribution at all, there is no change in beneficial

4   ownership, it maybe the customer of customer A is transferring

5   between two custodians that he employs, but he remains the

6   beneficial owner of the securities.   That may also be a

7   possibility.

8         My point is that you cannot conclude that because the

9   delivery is free the beneficial ownership has or has not

10  changed as a consequence.

11  Q.   Then turning our attention to the next chart.

12  A.   The next chart is the same transaction, but whether

13  delivery free is made not to another Clearstream customer, but

14  to somebody else, in this case to a direct participant at the

15  Depository Trust and Clearing Corporation.

16        So here the customer C would onward deliver 50 million

17  U.S. dollars of shares to in this example I suggested a broker,

18  the point there being it is exactly the same considerations

19  apply in terms of the free character of the delivery, but the

20  difference is that the positions of the custodians downstream

21  are affected because the delivery has occurred outside of

22  Clearstream.   So as a consequence, the custody account of

23  Clearstream Banking at Citibank New York is also reduced by 50

24  million, because in this case the delivery is also made to a

25  party who is not a customer of Citibank, Citibank's position at

X86RYPET2              SEALED         Gem - direct

1    the Depository Trust Clearing Corporation New York is also

2    reduced by 50 million.

3    Q.   Then turning our attention to the third transaction in

4    Exhibit B.

5    A.   Yes.   The third transaction is very similar to the first,

6    except that it is made against payment.   What that means is

7    that the corresponding consideration for in this case the sale

8    of securities from customer C to customer A is settled on the

9    cash side in the books of Clearstream Banking, meaning that

10   Clearstream will take the account, cash account of customer A

11   for the nominal value times the trade price in the security and

12   credit the account of customer C, and that is done

13   simultaneously with the securities delivery, meaning that the

14   two parties are short of what we call finality, that if I pay I

15   get my securities or if I deliver my securities I get paid.

16        Once again, because that is an internal transaction,

17   nothing happens in Clearstream's Banking security balances or

18   cash balances.

19        THE COURT:   Why does the account at Clearstream go

20   down to 350 million.

21        THE WITNESS:   I'm sorry, your Honor, I used the values

22   regarding from the previous chart so the shares are equal, so

23   they are not reduced in that transaction, they remain at 350

24   million in this example.

25   A.   The fourth example is an external delivery against payment,

X86RYPET2              SEALED        Gem - direct

1   meaning that the securities are delivered from a Clearstream

2   customer to somebody who is not a Clearstream customer for

3   payment.

4           What that means is that the custodians in the chain

5   have to manage both the delivery of the securities and the

6   collection of the proceeds in such a way that both parties

7   receive finality.

8           So in this example you see the customer A would be

9   delivering 50 million of securities to custodian B, in this

10  case we suggested illustrative the Bank of New York Mellon as

11  an example, and that means that the accounts of customer A is

12  marked down by 50 million, that the accounts of Bank of New

13  York Mellon is marked up by 50 million at DDCC and,

14  consequently, we see the accounts of Citibank New York is also

15  marked down by that amount.

16          The payment flow is, of course, that at one level Bank

17  of New York Mellon would pay Citibank New York, Citibank New

18  York would credit Clearstream Banking U.S. dollar account at

19  Citibank New York and we would credit the proceeds to our

20  customer, customer A in our books.

21  Q.  Turning your attention to Exhibit C.

22          MR. PANOPOULOS:  Your Honor, at this point I am going

23  to refer to the writ of attachment, but I could refer to it

24  generically --

25          THE COURT:  If we are turning to confidential

X86RYPET2                SEALED           Gem - direct

1   information, I wonder if there is anyone in the court who is

2   not associated with all of you.

3           (Pause)

4           MR. PANOPOULOS:  Excellent.  I wasn't looking.

5   BY MR. PANOPOULOS:



X86RYPET2          SEALED        Gem - direct



X86RYPET2          SEALED          Gem - direct



X86RYPET2              SEALED        Gem - direct



X86RYPET2              SEALED        Gem - direct



X86RYPET2            SEALED        Gem - direct



X86RYPET2              SEALED        Gem - direct

1



X86RYPET2                    SEALED          Gem - direct



X86RYPET2              SEALED        Gem - direct



X86RYPET2                    SEALED              Gem - direct



X86RYPET2          SEALED          Gem - direct



X86RYPET2          SEALED          Gem - direct





X86RYPET2               SEALED        Gem - direct



X86RYPET2              SEALED         Gem - direct



X86RYPET2                    SEALED          Gem - direct



X86RYPET2              SEALED          Gem - direct



X86RYPET2              SEALED        Gem - direct

1



X86RVPET3              SEALED      Gem - direct



X86RVPET3          SEALED    Gem - direct



X86RVPET3                    SEALED      Gem - direct





X86RVPET3          SEALED      Gem - direct



X86RVPET3          SEALED      Gem - direct





43

X86RVPET3          SEALED    Gem - direct



X86RVPET3        SEALED     Gem - direct

1



X86RVPET3              SEALED      Gem - direct





X86RVPET3          SEALED     Gem - direct

1

X86RVPET3               SEALED       Gem - direct



X86RVPET3          SEALED     Gem - direct



X86RVPET3          SEALED      Gem - direct





51

X86RVPET3          SEALED     Gem - direct



X86RVPET3                    SEALED    Gem - direct



X86RVPET3         SEALED      Gem - direct



X86RVPET3          SEALED      Gem - direct



X86RVPET3            SEALED     Gem - direct



X86RVPET3              SEALED      Gem - direct

[redacted]

X86RVPET3            SEALED     Gem - direct



X86RVPET3              SEALED     Gem - direct

1



X86RVPET3          SEALED     Gem - direct



X86RVPET3                    SEALED    Gem - direct



X86RVPET3          SEALED      Gem - direct





64

X86RVPET3          SEALED          Gem - cross





X86RVPET3          SEALED          Gem - cross

X86RVPET3                    SEALED          Gem - cross



X86RVPET3            SEALED        Gem - cross

1

X86RVPET3          SEALED          Gem - cross



X86RVPET3          SEALED          Gem - cross



X86RVPET3          SEALED          Gem - cross



X86RVPET3          SEALED          Gem - cross



X86RVPET3          SEALED        Gem - cross



X86RVPET3          SEALED          Gem - redirect



X86RVPET3

1              (Witness excused)

2              MR. PANOPOULOS:   Your Honor, I have one further

3       application.   If you remember our phone conference on Monday,

4       plaintiffs have served discovery on Clearstream and on

5       Citibank.   They indeed served an information subpoena that

6       lists somewhere close to 30 or more questions and testifying

7       subpoenas for people to come and be deposed.   We would like to

8       ask the Court to stay any discovery of the restraining

9       notices -- with respect to the restraining notice and with

10      respect to these proceedings of Clearstream, because we think,

11      one, we've provided all the relevant and material information;

12      two, the discovery they have served is burdensome.   I think all

13      of it is irrelevant at this point.   And really if they have

14      something more specific than asking us who at Clearstream knows

15      all the employees at Clearstream who work on these accounts,

16      maybe we could work something out.

17             And lastly, just to raise that even to provide

18      responses to discovery subpoenas, we would have to come back

19      before the Court because of the banking secrecy laws, which is

20      why we try to make an effort to produce and to talk about

21      everything here.

22             And, if necessary, I'm willing to put Mr. Gem back on

23      the stand and ask him each and every one of these questions in

24      the information subpoena, if it would be necessary, rather than

25      to have to go through additional discovery and all the fighting

X86RVPET3

1  that would entail.

2        MS. SCHNEIER:  Your Honor, if I could just join in

3  that request.  We were also served, in fact, they had already

4  served Citi, we just did not know about it at the time of the

5  conference, with an information subpoena with 40 requests and a

6  document request with 48 requests that I think at the very

7  least is overbroad and calls for things like all documents

8  reflecting communications between Citi and Clearstream.

9        I think, in light of what they've learned today, most

10  of the requests are irrelevant; most of it, you know, would not

11  be in Citi's possession, anyway.  And so I join in Clearstream

12  counsel's request that discovery be stayed at this point.

13        MR. VOGEL:  Your Honor, I object to the positions

14  taken by both Clearstream and Citibank.  I believe I was just

15  trying to ask only a few questions of the witness at

16  Clearstream to try to get into some discovery, and I was met

17  with objections and now I'm met with --

18        THE COURT:  Not many.

19        MR. VOGEL:  -- a motion to quash all discovery that

20  we've served.  So as far as Citibank and Clearstream are

21  concerned, I now know everything I need to know.  I just -- I

22  can't agree with that.

23        THE COURT:  The truth, as usual, is somewhere in

24  between.  The amount of disclosure is extraordinary.  And the

25  parties haven't given me all of the discovery.  I've heard it

76

X86RVPET3

1   described as enormous and burdensome.

2          On the other hand, the plaintiffs have to be in a

3   position not only to get a restraint, but to get a turnover.

4   And they can't do that without linking, I take it, the funds

5   that have been restrained to the defendant in the case.   So

6   they are entitled to some discovery in the process of enforcing

7   their judgment against the defendant.

8          I can't believe, on the other hand, that the discovery

9   requests that were issued are tailored to the information that

10  the plaintiffs now have.  And it should be.   It shouldn't be

11  omnibus, wonder bus, fishing expedition discovery when the

12  plaintiffs now have a roadmap for what's relevant and what's

13  not relevant.

14         So to ask for all of the employees of Clearstream who

15  have had any contact with ███ or Citibank in connection with

16  this is not reasonable.  And I'm sure that the plaintiffs can

17  draft more reasonable requests for the purpose of enforcing a

18  judgment in Washington.

19         MR. VOGEL:  Your Honor, if I could just add, you are

20  correct in light of what happened today, the discovery demands

21  can certainly be more tailored.  These demands were prepared

22  before today, so we served obviously as broad as we could

23  because we didn't know anything.

24         THE COURT:  So the answer is the outstanding discovery

25  requests are withdrawn without prejudice to service of

X86RVPET3

1   appropriately-tailored discovery requests.  Yes.

2         MR. PANOPOULOS:  Your Honor, that would include the

3   restraining notice served on us through the state court, as

4   well, because it's the same discovery.  The Court has the power

5   to stay discovery in the state court that's ancillary to a

6   proceeding in the federal court.

7         THE COURT:  Well, hold on.  I take it that the

8   plaintiff's intent is to withdraw -- first of all, to withdraw

9   any outstanding discovery requests.  With respect to

10  restraining notices that are issued from the state court, it's

11  restraining the same funds, yes?

12        MR. PANOPOULOS:  Yes, your Honor.

13        THE COURT:  So it's not necessary to withdraw them, so

14  that the one thing that's out there is Citibank has raised an

15  objection.  The restraining notice in this Court is not

16  affected because it was issued by the clerk and not by a judge

17  so --

18        MR. PANOPOULOS:  There's a *nunc pro tunc* order by

19  Judge Lamberth that takes care of that issue, I believe.

20        THE COURT:  Plaintiffs went back to Judge Lamberth?

21        MR. PANOPOULOS:  They did, and they got it -- when

22  they served the restraining --

23        THE COURT:  They weren't happy?

24        MR. PANOPOULOS:  No --

25        THE COURT:  They had to go to Washington?

X86RVPET3

1          MR. PANOPOULOS:  -- they weren't abiding by the

2  Federal Sovereign Immunities Act, your Honor, which required a

3  court order; they didn't have it.  But they went in front of

4  Judge Lamberth, got a *nunc pro tunc* order just two days ago

5  that's retroactive to March 10th.  So I think the issue is

6  moot.

7          THE COURT:  Okay.  I'm not quite sure why plaintiffs

8  would have gone to Judge Lamberth rather than to deal with a

9  notice that came from the clerk of this Court, but so be it.

10  Yes.

11         MR. VOGEL:  Your Honor, I think I can answer that.

12  The reason for it was that there were other discovery demands

13  and executions served prior to the commencement of the

14  execution last week in this Court.  And it was done in Chicago,

15  I believe, and in California.  And this dated back to March 10.

16  And because Citibank's attorneys were so good at researching

17  their brief, it showed a technical defect in all of these other

18  executions.  So counsel down in D.C. decided that might as well

19  just get one from the beginning of time and make everything

20  kosher.

21         THE COURT:  Meaning no disrespect?

22         MR. VOGEL:  No disrespect at all, your Honor.

23         THE COURT:  All right.  Well, I'm right then.  All of

24  the discovery requests are withdrawn.  The state restraints,

25  restraining notices, stay.  I'll vacate -- are these two the

X86RVPET3

1    two securities covered by the state order?

2            MR. PANOPOULOS:  Yes, it's exactly the same as the --

3            THE COURT:  DM51 and BK38?

4            MR. PANOPOULOS:  Yes, your Honor.

5            THE COURT:  Parties agree.  Do you want to withdraw

6    the restraint on those two, Mr. Vogel, from the state court?

7            MR. VOGEL:  Yes.  As I said, but with respect to those

8    two securities, we consent to it be deemed withdrawn.

9            THE COURT:  Okay.  Why don't you hand up a proposed

10   order.  Show it to the plaintiff.

11           MR. PANOPOULOS:  Yes, your Honor, I will.

12           THE COURT:  Show it to the plaintiff, and then I'll

13   sign it.  And the order that I entered earlier, which set a

14   briefing schedule and all, is that now academic?

15           MR. PANOPOULOS:  It is academic, I believe so, your

16   Honor.  There's one housekeeping matter that has to do with

17   keeping the under seal.  And that, you know, the hearing today

18   and the testimony today should only be used for the purposes of

19   this proceeding.  You know, what we don't want is for the

20   plaintiffs to take, you know, these transcripts and these

21   documents and to go to any other number of proceedings that are

22   outside of this proceeding and disseminate them.

23           But other than that housekeeping matter, that's all

24   there is, and I don't think we need a hearing next Thursday,

25   and I'll go get the order now, your Honor.

X86RVPET3

1        THE COURT:  Well, I thought -- I didn't say it.  I
2   sealed the proceedings because they deal with confidential
3   material, after we went through the public part.  And so the
4   transcript of the sealed proceeding is itself sealed.  The
5   parties have access to the transcript.
6        Shouldn't that be subject to the protective order that
7   Judge Lamberth issued or subject to all of the same
8   restrictions in that order?  And that order was a pretty good
9   order, I thought.
10        MR. PANOPOULOS:  Yes, your Honor.  The only loophole
11   in that order is that it allows for other parties related to
12   the main case in D.C. to have access to that information if the
13   plaintiffs disseminate it to them.  For example -- well, in
14   some ways I'm theorizing, but there's a possibility that
15   plaintiffs could go to one of their actions in the Northern
16   District of California, where they've sued other financial
17   institutions, and they could, you know, somehow use these
18   transcripts under the guise of the protective order.
19        I'm being handed something that says, Any other
20   person -- right.  Under the protective order 5E, says, Any
21   other person to whom disclosure is required in order to pursue
22   proceedings incident to efforts to collect the judgments
23   entered in Greenbaum Peterson litigation.  And we think that
24   that's too broad; that the disclosure here of Clearstream's
25   banking information pursuant to the banking secrecy laws of

X86RVPET3

1    Luxembourg and your Honor's orders should not be subject to

2    that dissemination.  That's what we think and that's what we're

3    applying to the Court for.

4        I mean obviously, you know, if they want to go after

5    one of the banks we've talked about today before this Court in

6    this proceeding, that's one matter.  But to go after some oil

7    company or some other financial institution in some other

8    proceeding that's related to this, it's another, your Honor.

9        THE COURT:  I thought the plaintiffs were fairly

10   reasonable.  I thought that the plaintiffs thought that Judge

11   Lamberth thought it was fairly restrictive; I thought that

12   that's why the parties were concerned even about the disclosure

13   of these materials from what happened before Judge Lamberth to

14   Clearstream, and needed an order from me before this was

15   released to Clearstream.

16       It would seem to me, and correct me if I'm wrong, that

17   this is sealed; so access is to the parties who have access to

18   the materials that Judge Lamberth has said these are the

19   parties with access or permitted access limited to the purposes

20   that Judge Lamberth set out.  And that if it's going to be

21   accessed to any further person, it should only be with the

22   permission of Judge Lamberth, preferably Judge Lamberth, or

23   this Court.

24       MR. PANOPOULOS:  Yes, your Honor.  Again, 5A also has,

25   The attorneys including their assistants, would also have

X86RVPET3

1    access to the information.  Again, just to show another

2    loophole in the order.

3            THE COURT:  Oh, I think attorneys know how to deal,

4    and so do their assistants, with protective orders, matters

5    under seal.

6            MR. VOGEL:  I can tell you, in fact, your Honor, that

7    I have two temporary summer law clerks working for me who are

8    not normally with the firm, and I've had them both sign the

9    protective order just to be super careful.  So I think that I

10   can understand Clearstream's concern, but I think that Judge

11   Lamberth's protective order adequately protects Clearstream and

12   everyone concerned.

13           THE COURT:  All right.  I don't believe that, by the

14   way, a court order on confidentiality restricts the Court or

15   court personnel.  I don't believe that we have to sign the

16   protective order.

17           Why don't you take five minutes, show the proposed

18   order to the plaintiff.  It seems to me -- are there any other

19   orders that I have to issue?  That order should be a final

20   order in the sense of it should vacate the prior scheduling

21   order for me.  And if there are any other issues that I should

22   deal with in the order, think about it, put them in.

23           MR. PANOPOULOS:  In that case, your Honor, we'll work

24   on it on a laptop.  And if it's possible, could we print the

25   order using the Court's facilities and printer?

X86RVPET3

1    THE COURT:  How do you propose to do that?  If you put

2    it on a laptop, you're going to download it to a disk?

3    MR. PANOPOULOS:  Use a flash drive.

4    THE COURT:  Maybe some of my law clerks --

5    MR. PANOPOULOS:  It's very simple, your Honor.  It's

6    very simple.

7    THE COURT:  Well, you do that.  You can pass it up.

8    MR. PANOPOULOS:  Okay, your Honor.  We'll take five

9    minutes.  Thank you.

10    (Recess)

11    THE COURT:  I've read the proposed order; I've signed

12    it.  We'll make a copy, I should have done it before I came

13    down, and give it to you and see that it's filed.  So that ends

14    this proceeding.

15    There was a set of the documents that I had been given

16    on the order to show cause on a disk.  Were the originals filed

17    under seal?

18    MS. SCHNEIER:  We were told, your Honor, that if

19    you're filing documents under seal, the procedure now is to put

20    them on a disk.  If you want, we can give you a hard copy, we

21    printed them out.  But that's what the clerk's office told us

22    to do.

23    THE COURT:  Okay.  Well, I'll file this under seal

24    then.

25    MS. SCHNEIER:  I think we filed that under seal.

X86RVPET3

1     That's a courtesy copy for you.

2          THE COURT:  Oh, you did file already.

3          MS. SCHNEIER:  Yes, yes.

4          THE COURT:  I thought I had to sign an order.

5          MS. SCHNEIER:  They took it.

6          THE COURT:  They took it under seal.

7          MS. SCHNEIER:  Yes.

8          THE COURT:  I don't see any reason for me to keep the

9     courtesy copy.  I'll give them back to you, along with both

10    notebooks with all of the sealed materials.

11         MR. PANOPOULOS:  Your Honor, should we file under seal

12    on a disk with the material in the notebooks?

13         THE COURT:  I don't see any reason to.

14         MR. PANOPOULOS:  Okay.  Thank you, your Honor.

15         THE COURT:  Usually exhibits don't get filed.

16         MR. PANOPOULOS:  Okay, your Honor.  Thank you.

17         THE COURT:  We'll make a copy of the order.  And if

18    you wait around in court, you can have copies and we'll see

19    that the original gets filed.

20         MR. PANOPOULOS:  I will.

21         THE COURT:  We'll also return to you the flash drive.

22         MR. PANOPOULOS:  We have it.

23         THE COURT:  Okay.

24         MR. PANOPOULOS:  Very convenient device, your Honor.

25         THE COURT:  Okay.  I'll take your word for it.  That

X86RVPET3

1    ends this proceeding.  If there are further motions, I assume

2    that they'll go to the Part 1 judge.  So I appreciate the

3    quality and professionalism of all of the lawyers involved.

4    Hope to see you on another case.

5            MR. PANOPOULOS:  Thank you, your Honor.

6            MR. VOGEL:  Thank you, your Honor.

7            MS. SCHNEIER:  Thank you for making yourself

8    available.

9            MR. PANOPOULOS:  I'll wait in the back of the

10   courtroom, your Honor.

11           THE COURT:  Fine.

12                         *    *    *

13

14

15

16

17

18

19

20

21

22

23

24

25

86

INDEX OF EXAMINATION

Examination of:                                    Page

MARK GEM

Direct By Mr. Panopoulos . . . . . . . . . .      6

Cross By Mr. Vogel . . . . . . . . . . . .        63

Redirect By Mr. Panopoulos . . . . . . . .        72

DEFENDANT EXHIBITS

Exhibit No.                                    Received

  B   . . . . . . . . . . . . . . . . . .         8

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300