FEDERAL RESERVE BANK OF NEW YORK

NEW YORK, N.Y. 10045-0001

TELEPHONE 212 720-5024
FACSIMILE 212 720-1756
JOYCE.HANSEN@NY.FRB.ORG

JOYCE M. HANSEN
DEPUTY GENERAL COUNSEL
AND SENIOR VICE PRESIDENT

March 6, 2006

Mr. Martin Thomas
C107 3/62
Financial Markets Infrastructure Unit
Financial Services Policy and Financial Markets
Internal Market and Services DG
European Commission
B -1049 Brussels
BELGIUM

Dear Martin:

As we recently discussed on the phone, we have prepared a legal response to

the EU Clearing and Settlement Legal Certainty Group Questionnaire.  Enclosed you will

find our answers.  If you have any questions please feel free to contact me at

(212) 720-5024 or Jennifer Wolgemuth at (212) 720-6911.

Sincerely,

Joyce M. Hansen

Enclosure



**EUROPEAN COMMISSION**
Internal Market and Services DG

FINANCIAL SERVICES POLICY AND FINANCIAL MARKETS
**Financial markets infrastructure**

MARKT/G2/D(2005)

**Subject:**       **EU Clearing and Settlement
Legal Certainty Group
Questionnaire**

Please provide clear and concise answers specifying the existing legal situation, whether there are points of uncertainty, a nd upon what specific elem ents the answer given depends (for example, the terms of any relevant contract).

It is fundam entally important in all appli cable instances that the answers given should specify in what ways the answer would        differ according to type of issuer, of intermediary or of security.

It is to be noted that the bulk of the questionnaire draws no distinction between (I)CSDs and other interm ediaries (in the sense proposed below).  Answers should make the distinction wherever relevant.

Where helpful, please identify the source of   law (for exam ple, legislation, regulation, jurisprudence or doctrine).  In the case of   legislation specific to the subject-m atter of the questionnaire, please provide copies (or weblinks).

In this questionnaire, 'securities' is to be taken to m        ean all financial instrum ents (excluding cash balances unless explicitly   asked for below) that em body entitlements and that can be subject to book-entry holding   and transfer, irrespective of whether the holding can be characterised as direct or indirect.

In this questionnaire, 'rights in securities' is to be taken to m ean both rights arising out of the instrum ent against the issuer or th   ird parties and rights or entitlem ents of the holder in respect of the instrument as such, and 'rights in securities' is to be taken to be synonymous with 'interests in securities.'

In this questionnaire, 'interm ediary' is to  be taken to m ean any person or entity that maintains positions regarding securities by   way of book-entry.  In this m eaning, note that intermediary does not exclude an entity that m  aintains positions by way of book-entry for investors where according to the app  licable law there is a direct relationship between the investor and the issuer.  And in  this questionnaire, 'securities accounts' is accordingly to be taken to m    ean all acc ounts m aintained by interm ediaries where positions for clients regarding securities are entered by way of book-entry.

Please note also that som   e issues are inte  ntionally addressed m ore than once from different angles.

**QUESTIONS**

**(0)     In respect of what legal system are the following answers given?**

This response confines itself to U.S. com mercial law, prim arily Article 8, specifically Part 5 of Article 8, and part s of Article 9, of the Unif orm Com mercial Code ("UCC"); it does not discuss other la ws or regulations or rules, which m ay significantly affect aspects of the indirectly-held securities system , such as securities, tax, accounting, banking laws, regulations or rules, or any other laws, regulations or rules. The subject m atter of Article 8 is "Investment Securities" and the subject of Article 9 is "Secured Transactions." Ar ticle 8 and Article 9 have been adopted throughout the United States. The United Stat es Treasury issues securities through the Federal Reserve Banks and persons holdi ng those securities on the books of the Reserve Banks do so through TRADES.      The TRADES regulations apply Federal substantive law to certain aspects of the transactions at the level of the Federal Reserve Banks and provide f or the application of     the substantive law of     the securities intermediary's jurisdiction (as def ined in Article 8 of the UCC) for holdings of Treasury securities at the lower levels. In addition, persons m ay also hold Treasury securities directly through a system called "Treasury Direct" which is not designed for trading. This response does not discuss     the Treasury regulations for TRADES or "Treasury Direct."

It is im portant to convey at the outset that Article 8 plays a lim ited role in the securities markets. Article 8 does not govern    contracts for the purchase and sale of securities, clearing arrangem ents, or re gulate the relationships between and am    ong clearing corporations, brokers, or dealers, and their customers except to the extent such entities act as securities interm ediaries. Article 8 and Article 9 sim    ply provide the rules f or identif ying the rights, interests, obligations and priorities of      interests in securities, whether certificated or un      certificated, held directly or through intermediaries. As noted above, m     any im portant issues regarding the securities markets in the United States are governed     by State and Federal securities laws and regulations and State and Federal banking la    ws and regulations and are outside the scope of the UCC.

**I.   CONTENT AND STRUCTURE OF A LEGAL SYSTEM**

**General aspects**

Before answering any of the specific questi ons posed, it's useful to set the stage by defining a few terms central to Article 8's f ramework for "indirectly held securities:" (1) the "securities account" is established by agreem ent between a securities interm ediary and its custom er and the securities interm ediary agrees to treat the person m    aintaining the account to which an indirectly held investm ent is credited as entitled to exercise the rights comprising the investm ent; (2) the "securities in termediary" is a person in the business of maintaining securities accounts for others, such  as a bank or broker, and is acting in that capacity (as opposed to, *e.g.*, a party to a trade); (3) the "financial asset" is the investm ent held indirectly (m ore specif ically def ined below); (4) the "securities entitlem ent" is the name given to the property rights and intere    sts of the person holding a financial asset through a securities account; and (5) an "entitlem      ent holder" is the person having a security entitlement to a financial asset against its securities intermediary (the "investor" or "customer" in the questions). These terms are used throughout this response.

In addition, references to Article 8 in the responses are in the following form :
"8-XXX," XXX being the section of Article 8 referenced.

(1)     **What are securities?  Does a concept of  securities such as is used in the Directive for Markets in Financial   Instruments 2004/39/EC exist?  If not, please describe the concepts used.  What distinctions (** *e.g.* **bearer, registered, physical, dematerialised  , book-entry) are made and w    ith what consequences?**

Under Article 8, a security is "an obligation of an issuer or a share, participation or other interest in an issuer or   in property or an enterprise of an issuer: (i) which is represented by a security certificat e or in bearer or registered form , or the transfer of which m ay be registered upon books m aintained for that purpose by or on behalf of the issuer, (ii) which is one of a class or series or by its term s is divisible into a class or series of shares, participations, in terests, or obligations; and (iii) which:  (A) is, or is of  a type, dealt in or traded on   securities exchanges or securities m arkets; or (B) is a m edium for investment and by its te rms expressly provides that it is a security governed by [Article 8]."  8-102(15).

In the Article 8 context, the term   security is not the only relevant concept, as any "financial asset" can be credited to a securities account.  In addition to securities, financial assets include:  (1) an obligation of a person or a share, participation, or other interest in a person or in property or an ente rprise of a person, which is, or is of a type, dealt in or traded on financial markets, or which is recognized in any area in which it is issued or dealt in as a m    edium f or inve stment or any property which a securities intermediary agrees to treat as a f   inancial asset and (2) property which a securities intermediary agrees to treat as a financial asset.  8-102(9).

(2)     **In w hat manner are securities crea   ted and issued?  What steps are necessary to have (existing or new ly issued) securities validly held and transferred with the involvement of intermediaries?**

Issuance of securities is not the subject of  Article 8.  Most typically, an issuer issues a global certificate to a nom    inee of the upper-tier interm  ediary, which then credits interests in that security to         securities accounts m  aintained on its books. Securities can also be issued entirely in dematerialized form.

An entitlem ent holder can acquire a secu  rity entitlem ent in only one of  three ways:  (1) the securities interm     ediary cr edits a f  inancial asset to the entitlem    ent holder's securities account; (2) the securities  intermediary accepts a financial asset for credit to the entitlem ent holder's securities  account; or (3) the securities interm ediary is obligated by law to credit a f   inancial  asset to the entitlem  ent holder's securities account (a security entitlement implied in law).

**Securities accounts**

(3)  **What is a securities account?  What is its role and function?  What are the relevant custody, commercial, accounting and tax laws?**

A securities account is an account to which a financial asset is credited or may be credited pursuant to an agreement under which the person maintaining the account "undertakes to treat the person for whom the account is maintained as entitled to exercise the rights that comprise the financial asset." 8-501.  When a financial asset has been credited to a securities account a person acquires a security entitlement with respect to that financial asset.

(4)  **What securities may be credited to securities accounts?  May cash be credited to securities accounts and, if so, does the account-holder have a right enforceable against third parties or against the intermediary only?  What is the nature of such right?**

As noted above, any "financial asset" may be credited to a securities account. The securities intermediary can agree to treat essentially anything, including cash, credited to the securities account as a financial asset.  For a discussion of the rights of entitlement holders against third parties and intermediaries, *see* the answer to question 7.

(5)  **Must the investor be recorded by name on the books of an upper-tier intermediary or of the issuer?**

No, and, in fact, the ultimate investor will almost never be recorded by name on the books of an upper-tier intermediary or the issuer.

## Nominee and omnibus accounts

(6)  **May securities be credited to a securities account in the name of a person or entity who is acting on behalf of another (i) where the existence of the other is not indicated and (ii) where the existence but not the identity of the other is indicated?  May the securities account be opened in the name of the person or entity who is maintaining the account?  May securities be credited to a securities account in the name of a person or entity who is acting on behalf of more than one other, *i.e.* such that those others hold a collective securities position, rather than segregated individual positions per person?  Is the person or entity in whose name the securities account is credited (if different from the person or entity maintaining the account) considered to be an intermediary?  Does that person or entity have to disclose whether it is acting on behalf of investors and, if so, their identities?**

Securities may be credited to a securities account in the name of a person or entity that is acting on behalf of another, such as a trustee, agent, or investment advisor, where the existence of the other is not indicated.  In addition, a trustee, agent or advisor may indicate the capacity in which it acts without identifying specifically the names of its customers.  An intermediary may satisfy its obligation to maintain financial assets corresponding to its securities entitlements by maintaining those assets with one or more other securities intermediaries and would typically hold those assets in a collective position.  Typically, a broker will maintain 2 accounts at its clearing bank, a "proprietary account" and a "customer account."  In its proprietary account, the

broker holds its own securities and in its custom er account it collectively holds securities for its customers (without identifying the customers).

**Nature of rights**

(7)   **What rights arise w hen securities a re credited to securities accounts? Is there a specific regime for establishing these rights?  Are these rights characterised as a claim, an intangible, a chattel, or a new  and separate legal asset, distinct from the underlying securities, w hich can be the object of proprietary rights (*e.g.* ownership, security interest, usufruct) and proprietary dispositions (*e.g.* sale, pledge, loan)?  What obligations of the investor may also arise?**

Article 8 establishes the rights of an entitlem ent holder in the security entitlements credited to its securities account.   Security entitlement is defined broadly as the "rights" and "property interests" of an "entitlem ent holder" specifi ed by Part 5 of Article 8 with respect to a "financial asset."  8-102(17).

*1. The "property interest"*

A security entitlem ent involves a property interest in the financial asset (as contrasted with in personam rights against the securities interm ediary) <u>only</u> to the extent it includes rights to the financial a sset enforceable against other persons.  8-104(c) lim its an entitlem ent holder's interest as a "purchaser" of a financial asset to the rights enum erated in 8-503.  8-503(a) pr ovides that financial assets held by a securities interm ediary are "not property of the securities interm ediary" and are exempt from claims of general creditors of the securities intermediary (but not certain secured creditors).  The subsection further provides that financial assets are held by a securities intermediary for its entitlement holders "to the extent necessary" to meet its obligations to entitlem ent holders.  This provision protects the entitlem ent holder from the securities intermediary's general creditors and, thus, provides som e property interest, **but it does not empow er the entitlem ent holder to assert rights against any person other than its intermediary, except in the very limited circumstances described below**.

8-503(b) describes the entitlement holder's property interest in a financial asset as a "pro rata property interest" in all interests in that f inancial asset held by the securities interm ediary.  This *pro rata* interest in the fungible bulk of a particular financial asset, however, is **not** a claim to a specific asset held by the financial intermediary.  8-102, com ment 17.  The draf ters refer to the entitlem ent holder as having obtained a property interest "only in the sense that under Section 8-503 a security entitlem ent is treated as a *sui generis* form of property interest."  8-104, comment 2.

Under subsection 8-503(c), enforcem ent of that property interest against the securities intermediary is limited to the rights enumerated in Sections 8-505 through 8-508.  (These are discussed below in the disc ussion of "rights" against the securities intermediary.)

*2. The "rights"*

*a. "rights" against third parties*

Article 8 provides an entitlement holder limited rights in the financial asset against persons other than its securities intermediary.  The entitlement holder has no ability to exercise economic or other rights to the financial asset directly against the issuer; however, the securities intermediary has an obligation to obtain and pass on those economic rights to the entitlement holder and to exercise ownership rights on behalf of the entitlement holder as further described below.  Part 5 of Article 8 only enumerates limited property interests enforceable against "purchasers," (which term is defined in Section 1-201(33) of the UCC to include essentially any recipient of a voluntary transfer, including a secured party, which could be an upper tier intermediary) and describes no rights against the issuer of the financial assets.  8-102, comment 17.

Much of the indirect holding system involves at least two tiers of securities intermediaries (meaning that the financial asset is a securities entitlement).  Article 8 does not give an entitlement holder any rights against an upper-tier intermediary, except as described below.

Article 8 does include rights of an entitlement holder against purchasers of a financial asset underlying a security entitlement, but only in "extremely unusual circumstances."  8-503, comment 2.  Such a circumstance arises when each of the following conditions have been met:  <u>First</u>, the securities intermediary is subject to insolvency proceedings.  Before the entitlement holder can pursue rights against the purchaser, the administrator in the securities intermediary's insolvency proceeding must have elected not to pursue those rights.  <u>Second</u>, the securities intermediary does not have sufficient financial assets to meet its obligations to entitlement holders.  <u>Third</u>, the transfer of the financial asset to that particular purchaser violated the securities intermediary's obligation to maintain sufficient interests in the financial asset.  <u>Fourth</u>, the purchaser is not entitled to protection under 8-503(e).  8-503(e) protects any purchaser who has given value and obtained control of the financial asset from any action based on the entitlement holder's property interest unless that purchaser colluded with the securities intermediary in violating its duties to the entitlement holder.  The vast majority of purchasers qualify for this protection.

*b. "rights" against its securities intermediary*

Article 8 gives an entitlement holder a number of specific rights against its securities intermediary.  The rights an entitlement holder may enforce against the securities intermediary are limited to enforcement of the securities intermediary's Article 8 obligations.  There are eight statutory obligations, listed below as [1] through [8].

*i. statutory obligations*

**The first set of obligations relate to the entitlement holder's receipt of the economic and corporate rights that make up the financial asset.**  A securities intermediary must take action[1] to obtain a payment or distribution made by the issuer of a financial asset. 8-505(a). This is accompanied by an almost absolute obligation (subject to set-off or counterclaim) to the entitlement holder[2] to pass along payments or distributions made by the issuer of a financial asset and received by the securities intermediary.  8-505(b).  (Note that the obligation to pass through economic benefits of the financial asset is the only obligation of a securities intermediary **not** subject to

limitation by agreem ent or a com mercial r easonableness standard. 8-505(b).)  The securities intermediary is obligated [3] to exercise ownership rights with respect to the financial asset on behalf of the entitlement holder--these rights encompass such things as voting rights, conversion rights, right s to m ake dem and for paym ent of an instrument which is a financial asset, a nd rights to enforce legal obligations. 8-506, comments 3-4.

**The second set of obligations relate to protecting the entitlement holder from the financial risk of the securities intermediary.**  The securities interm ediary must[4] promptly obtain and maintain sufficient quantities of the financial asset to satisfy the claims of its entitlem ent holders.  8-504( a).  The only exception to this requirem ent is for "a clearing corporation that is itself the obligor of an option." 8-504(d).  The securities interm ediary also has an obligation not [5] to grant security interests in the financial assets held for entitlement holders without agreement.  8-504(b).

**The final three obligations relate to co mplying with entitlement orders or directions from the entitlement holder**.  An "entitlement order" directs the securities intermediary to "transfer or [ redeem] a financial asset to which the entitlem ent holder has a security entitlem ent." 8-102(a)(8).  The entitlem ent order only directs the transfer; it is not an order to sell the financial asset.

The securities interm ediary m ust[6] com ply with an entitlem ent order, if originated by the entitlem ent holder and the securities interm ediary has (1) reasonable opportunity to assure itself of genuineness and authenticity and (2) reasonable opportunity to com ply.  8-507(a).  If the s ecurities intermediary acts on an ineffective entitlement order, it m ust[7] re-establish a security entitlem ent and pay or credit any distributions or payments not received as a result of a wrongful tran sfer.  8-507(b).  If the securities intermediary does not re-estab lish the security entitlement, it is liable for damages.  8-507(b).  Finally, the securities interm ediary has a duty [8] to "act at the direction of an entitlem ent holder to cha nge a security entitlem ent into another available form of holding f or which the entitle ment holder is eligible, or to cause the financial asset to be transferred to a s ecurities account of the entitlem ent holder with another securities intermediary."  8-508.

*ii. standards of performance*

A securities intermediary satisfies its obligations under Article 8 by com plying with other legal requirem ents, by exercisi ng due care in accordance with reasonable commercial standards, or by perform ing its duties as specified by agreem ent. 8-504(c)(1)-(2); 8-505(a)(1)-(2); 8-506(1)-(2); 8-507(a)(1)-(2); 8-508(a)(1)-(2); 8-509. A securities interm ediary's com pliance with another statute, regulation, or rule satisfies this Article 8 duty if the substance of the duty is the subject of that other legal requirement.  8-509(a).  To the extent not covered by statute, regulation, rule, or by the party's agreem ent, duties are to be perfor med and rights are to be exercised in a "commercially reasonable manner."  8-509(b).

A securities interm ediary m ay withhol d perform ance of its obligations because of unfulfilled obligations the entitlement holder has to the securities intermediary.  8-509(c).  This right to withhold perform ance m ay arise out of a

security interest, under a security ag      reement with the entitlem      ent holder or
otherwise, or under other law or agreement.  8-509(c).

(8)      **What is the legal position of th      e intermediary in respect of the
securities credited to an investor's securities account?**

As stated above, to the extent necessary   to satisfy securities entitlem ents with
respect to a financial asset, the interests held in that financial asset by the intermediary
are held f or entitlem ent holders and are not    property of the securities interm ediary.
Thus, the securities interm ediary does not "o wn" the f inancial assets credited to the
securities accounts m aintained on its books,  although it m ay be reflected in the books
of the issuer or its transf er agent as the re gistered holder or have a security entitlem ent
(or be an investor/account holder) in resp    ect of an upper-tier interm    ediary.  The
securities interm ediary m ay have a security interest in those f    inancial assets, if  it
extended credit to the entitlem ent holder to purchase such f inancial assets or if  it has
otherwise obtained the agreem ent of the entitlem ent holder that those f inancial assets
secured other obligations the entitlement holder owes the securities intermediary.

(9)      **Is there any distinction betw      een (i)   the rights arising out of the
securities against the issuer and (ii) th e rights in respect of holding the
security?**

Yes.  If one holds securities indirectly    through a securities interm ediary as a
securities entitlem ent rather than directly, the specif ic rights the holder has are
described by and determ ined by Part V of Article 8-505 through 508.  There is no
direct exercise of rights against the issu    er.  However, the issuer cannot raise any
defenses against the entitlem ent holder that it could not assert against the entitlem    ent
holder if the entitlement holder held the security directly.

(10)      **Where securities are held in pooled form (     *e.g.* a collective securities
position, rather than segregated indi vidual positions per person), does
the investor have rights attaching to particular securities in the pool?**

No.  The security entitlement holder does not have rights attaching to particular
securities in the pool, he has a *pro rata* share of the interests in the financial asset held
by its securities interm ediary to the am ount needed to satisfy the aggregate claim s of
the entitlem ent holders in that issue.  This is true even if          investor positions are
"segregated."

(11)      **In what manner does the investor acqui re rights in respect of securities
credited to his securities account (     *i.e.* is the transferee's right in the
securities derived from the right of     the transferor or is it originally
created in the moment of crediting in his favour)?**

The investor acquires rights in respect of    the f inancial assets credited to his
securities account at the m oment the credit is m ade (*i.e.*, the security entitlem ent is
created).  8-501(b)(1).  The investor m   ay also acquire such rights when a securities
intermediary receives a financial asset from   the investor or acquires a financial asset
for the investor and, in either case, accepts     that financial asset for credit to the
investor's account.  8-501(b)(2).  Finally, th  e investor m ay acquire such rights when
the securities intermediary becomes obligated by other law, regulation or rule to credit
a financial asset to the investor's securities account.  8-501(b)(3).

(12)    **What legal effects arise from a credit entry on a securities account (** *e.g.* **book-entry as conferring or evidencing the root of title, book-entry as a replacement for the possession of the document of title, book-entry as an essential element for exercising the rights attaching to securities, other rights or obligations)?  Please distinguish the legal effects against (i) the issuer, (ii) the intermediary, (iii) an upper-tier intermediary (or intermediaries) or (iv) third parties?**

The holder has those rights explained above in the answer to question 7 against its securities intermediary and against third parties.  The holder obtains its economic rights and other ownership rights to the financial asset through its intermediary.  The entitlement holder's rights are good against third parties unless it granted a security interest or took the entitlement with notice of an adverse claim  ( *see also* answers to questions 23-25).

(13)    **Is the investor entitled to set-off or net rights against the intermediary in respect of securities with obligations that investor might have to the intermediary?**

Article 8 would not afford an investor these rights, and it would seem unusual for an account agreement to provide this right.

(14)    **Is the intermediary entitled to set-off or net obligations to the investor in respect of securities with rights the intermediary might have against the investor?  Can any such entitlement be altered by contract?**

Article 8 does not afford an intermediary these rights.  Securities account agreements typically give the securities intermediary a security interest in the contents of a securities account in respect to credit extended to the customer by its intermediary.  In addition, a securities intermediary has an automatic perfected lien in securities that entitlement holders have purchased with credit extended by the securities intermediary.  9-206(a), (b); 9-328(3).

(15)    **Is the investor protected against the insolvency of an intermediary and, if so, how?  Does the investor have to rely on the intervention of a court or liquidator?  In what way is the answer different if the insolvency is of an upper-tier intermediary?**

Under Article 8, an investor is protected against the insolvency of its securities intermediary insofar as the security entitlements credited to the investor's securities account are not part of the securities intermediary's bankruptcy estate (and likewise, an investor is protected from the insolvency of an upper-tier intermediary).  However, an investor is always vulnerable to a securities intermediary that does not itself have interests in a financial asset sufficient to cover all of the securities entitlements that it has created in that financial asset.  This is best illustrated by example:

if a securities intermediary (SI) becomes insolvent, and it is discovered that SI created total security entitlements to 500 shares of Company X in the securities accounts of 5 entitlement holders (10 shares each) on SI's books, but that SI itself had a security entitlement of only 100 shares of Company X on the books of an upper-tier securities intermediary, under Article 8, each entitlement holder holding through SI would only get 20 shares of Company X,

9

*i.e.*, its *pro rata* share of SI's interest in Company X.  (The Article 8 insolvency distribution schem e does not apply to all insolvent securities intermediaries, and other insolvency distributions schemes applicable to som e types of securities interm ediaries m ight require different results.)

The interests of an entitlement holder in the financial assets trump the interests of any of the securities intermediary's creditors that have a security interest in the same financial asset.  8-511(a).  Note that this rule has two exceptions.  If the secured creditor has "control" over the f inancial a sset it will have priority over entitlem ent holders who have securities entitlem ent with re spect to that financial asset.  8-511(b).  If the securities interm ediary is a clearing co rporation, the claim s of its creditors have priority over the claim s of entitlement holders.  8-511(c).  (This second exception is to allow for the secured financing that aids in clearing corporations' settlement activities.)

Article 8's lim ited protection for investors is "prem ised on the view that the important policy of protecting investors ag ainst the risk of wrongful conduct by their intermediaries is sufficiently treated by other law." 8-511, com ment 2.  The "other law" includes, among others, Federal and St ate banking law and Federal securities law which require a securities interm ediary to separately account for custom er securities versus proprietary securities, and the Securities Investor Protection Act, which protects investors against losses up to $500,000 for cash and securities (of which only $100,000 can be to reim burse cash claim s) held at firms which are m embers of the Securities Investor Protection Corporation (as are all securities f irms that are also required to register as broker-dealers).

(16) **What liability does the intermed        iary have (i) for upper-tier intermediaries or (ii) other third    parties that it may rely on for the performance of its functions?  M    ay any such liability be altered by contract?**

A securities interm ediary has a duty unde r Article 8 to obtain and m aintain sufficient quantities of financial assets to satisf y the claim s of its entitlem ent holders.  8-504(a).  In satisfying that duty, the securitie s intermediary m ust either (1) act with respect to the duty as agreed upon by th e entitlem ent holder and the securities intermediary or (2) in the absence of an agreement, exercise due care in accordance with reasonable com mercial standards.  8-504(c).  Though the standard m ay be specified by agreem ent, the official co mments to 8-504 and UCC Section 1-302(b) provide that the duty m ay not be discla imed.  Moreover, the official com ments specifically indicate that the duty of care applies in the securities interm ediary's selection of its own securities interm ediary or interm ediaries through whom the intermediary holds financial assets.  In de termining whether the duty is satisfied or breached in the selection of the securities intermediary's own interm ediary where it holds financial assets to satisfy its own entitle ment holders claims, one looks in part to custom and practice and whether the inte rmediary has little or no choice in the selection of the intermediary, which may be the case when holding foreign securities in a securities account.

The interaction between statutory duties a nd the provisions of the agreem ent between the securities interm ediary and its custom er is com plex and nuanced.  Note that the official comments to Section 8-504 are quite lengthy, and evidence a strong interest in the many risks a securities interm ediary may contract around, particularly with respect

to foreign securities and foreign custodians.  This is an area which is heavily regulated and satisfaction of a regulatory duty constitutes compliance with the substance of a duty (imposed in 8-504 through 8-508) under 8-509(a).

**Transfer of securities**

(17)   **What steps are necessary for securities to be transferred?  Please elaborate both operational and legal steps.  Do these steps differ as regards the effectiveness between the parties to the transfer and *vis-à-vis* third-parties (*e.g.* perfection requirements)?**

A transfer of an interest in securities typically requires an agreement between the transferee and the transferor, although for a sale no writing is required and for a pledge a writing is often but not always required.  A transfer as between those parties may be "effective" without the steps described below occurring, although the respective parties rights against and vulnerabilities to many third parties, including their respective securities intermediaries, will be affected if those steps have not occurred.

In the indirect holding system, security entitlements are created and extinguished--that accomplishes the settlement of securities transactions, much like a payment of bank money.  Operationally,  Party A, having a securities account at Securities Intermediary X containing a security entitlement to Security I, might instruct its Securities Intermediary X to transfer or deliver Security I to Party B, also having a securities account at Security Intermediary X.  Securities Intermediary X will simultaneously create a security entitlement to Security I in Party B's securities account and extinguish the security entitlement to Security I in Party A's securities account.

(18)   **What is the object of the transfer of securities (*e.g.* a claim against the intermediary, a *sui generis* right, the security itself)?**

There is no "object" that is transferred.  A security entitlement is created, and another security entitlement is usually simultaneously extinguished.  A security entitlement comprises the rights and interests explained in the answer to question 7.

(19)   **At exactly what moment or moments in time does a transferee become entitled, and to what?  At what moment or moments in time does the transferor become disentitled?**

These rights are mostly determined by the system rules, which are outside the scope of Article 8.  As far as Article 8 is concerned, the interests and rights described in the answer to question 7 are related to the time in which the security entitlement is created/extinguished.

(20)   **Which concepts of finality (*e.g.* unconditionality, irrevocability, enforceability) apply to transfers of securities?  Is any such concept chosen by an intermediary or imposed by law?  Do they relate to the**

transfer orders, the settlement, the pa   ssing of title or ow   nership, the fulfilment of the underlying obligations, or other?

Concepts of finality are not addressed in Article 8.  Finality m ay be the subject of the rules of any securities interm ediary or clearinghouse or other law or regulation. However, the Article 8 rules generally and in particular the rules on adverse claim   s contribute to the certainty of    rights to f   inancial assets and securities entitlem   ent thereto.

(21)   **What w ould be the effect on concep      ts of finality of each of (i) a revocation of transfer instructions, (   ii) the debiting of provisional or erroneous credits; (iii) insolvency ch    allenges, (iv) fraud?  Are there specific rules relating to erroneous entries on accounts?**

*See* answer to question 20 .

(22)   **Are there specific rules relating to    conditional transfers of rights,  *i.e.* rules w hich specify that transfers of    securities are considered to be conditional and w hich w ould allow (re-)debiting or reversal and, if so, under what circumstances?  What posi tion does the receiving investor have as a result of such credits?**

*See* answer to question 20.

## Priorities

(23)   **What rules apply w  hen (i) competin g claims are asserted against the intermediary; (ii) competing claims   are asserted respectively against the intermediary and an upper-tier intermediary?**

An entitlement holder claim ing an interest in a f inancial asset credited to its securities account maintained with a securities intermediary will share *pro rata* with other entitlem ent holders claim ing interests   in the sam e f inancial asset credit to their securities accounts at the securities interm ediary.  The *pro rata* share will be a share of the securities interm ediary's own  total interest in the f  inancial asset in question.  8-511(a).  That claim  will take pr iority over the claim s of other creditors of the securities interm ediary, subject to  a few exceptions, explained f urther in the answer to question 25.

Among parties with a security interest in a financial asset credited to a securities account, the party that has perfected  its security interest by control will beat a party that has perfected its security inte rest by filing.  Special rules apply when the creditor asserting that security interest is    the securities interm ediary, the securities intermediary's securities interm ediary, or a clearing corporation, discussed in m    ore detail in the answer to question 15.

Note that Charles Mooney has provided additional responses to this question and questions 24-25 and 29-33.

(24)   **What rules protect a transferee    acting in good faith (the '   *bona fide* purchaser')?  What are the limits of the *bona fide* protection?**

Article 8 includes three specif ic rules to protect purchasers: One rule protects the entitlem ent holder f rom adverse claim s asserted against it to the financial asset if the entitlem ent holder ac quired the security entitlem ent for value and without notice of the adverse claim s. 8-502. (Note that Section 8-116 m ay make the securities interm ediary a "purchas er f or value" of the f inancial asset. Thus, the securities interm ediary has the rights of a purchaser when it needs to assert those rights against third persons.)   The second rule sim ilarly protects from adverse claim s a person who purchased a f inancial asset or security entitlem ent from an entitlement holder if the purchaser gave value, had no notice of the adverse claim and obtained control of the security   entitlem ent. 8-510(a). The third rule protects a purchaser of a financial asset against claim s of an entitlem ent holder to a property interest in that f inancial asset, by *limiting* the entitlem ent holder's ability to enforce that claim   against the purchaser to those instances where: (i) the securities interm ediary is insolvent, (ii) the securities interm ediary does not have sufficient interests in the f inancial asset to satisfy the security entitlem ents of all of its entitlem ent holders to that asset, (iii)   the securities interm ediary violated its obligation to keep suf ficient interests in the financial asset by transf erring it to the purchaser, **and** (iv) the purchaser either (a) di   dn't give value, (b) didn't obtain control, or (c) colluded with the securities   intermediary in its f ailure to m eet the obligation to hold suf ficient financial assets to satisf y all of its entitlem ent holders security entitlem ents in such financial asset. 8-503(d). Essentially, unless the purchaser was involved in the wrongdoing of the securities interm   ediary, an entitlement holder will be precluded from raising a claim against it.

(25)     **Are there rules regarding liens of        intermediaries over investor's securities accounts?  If so, what are they and are they mandatory?**

A securities interm ediary m ay not grant a  security interest in a f inancial asset that it is required to m   aintain in order to   meet all of its custom ers' claim s to that financial asset, except with the agreement of the relevant customer.

A securities interm ediary that has extended credit to an entitlem ent holder to purchase a financial asset m aintained by an entitlem ent holder in a securities account maintained at that securities interm  ediary has a statutory lien over those f   inancial assets, and that lien has priority over a   ll other liens. 9-206(a), (b); 9-328(3). A securities interm ediary m ay also, by agreem ent with the entitlem ent holder, have a security interest in f  inancial assets credited to the entitlem   ent holder's securities account to secure obligations the en        titlement holder m   ay owe the securities intermediary.

## Upper-tier attachment

(26)     **Can the investor enforce rights agai  nst an upper-tier intermediary (i) normally, (ii) in the event of breach of duty by the intermediary, (iii) in the event of breach of duty by the    upper-tier intermediary, (iv) if the event is insolvency rather than breach of duty?**

Generally, no.  The investor has no rights under Article 8 against an upper-tier intermediary, as upper-tier interm ediary *per se*.  The investor m ay have rights against an upper-tier interm ediary to the extent     it colluded with the investor's securities intermediary to violate the securities interm ediary's obligations to entitlem ent holders and certain other conditions, detailed in the answer to question 24.  8-503(d).

(27)   **In what circumstances can (i) a creditor and (ii) a non-creditor third-party (such as a liquidator) of the investor claim securities from an upper-tier intermediary?**

8-112 explains where a creditor's claim against an entitlement holder's security entitlement may be made: only by legal process upon the entitlement holder's securities intermediary. Process directed at an upper-tier intermediary will be ineffective. (If the interest of the debt or the creditor is claiming is in a security entitlement maintained in the name of a secured party, the creditor may reach that interest by legal process upon the secured party. 8-112(d).) Under Article 8, a creditor or third-party such as a liquidator of an investor might be able to make a claim to financial assets against an upper-tier intermediary in the circumstances set forth in 8-503(d), detailed in the answer to question 24.

(28)   **In what circumstances can (i) a creditor and (ii) a non-creditor third-party (such as a liquidator) of the intermediary claim securities from an upper-tier intermediary?**

This answer assumes that the question refers to an upper-tier intermediary of the securities intermediary itself. 8-112 explains where a creditor's claim against an entitlement holder's security entitlement may be made: only by legal process upon the entitlement holder's (in this case the securities intermediary's) securities intermediary. Process directed at an upper-tier intermediary will be ineffective. (If the interest of the debtor the creditor is claiming is in a security entitlement maintained in the name of a secured party, the creditor may reach that interest by legal process upon the secured party. 8-112(d).) Note that the attachable assets of a securities intermediary are net of the financial assets deemed not owned by the securities intermediary (*i.e.*, proprietary financial assets). Under Article 8, a creditor or third-party such as a liquidator of a securities intermediary might be able to make a claim to financial assets against an upper-tier intermediary in the circumstances set forth in 8-503(d), detailed in the answer to question 24.

**<u>Shortfalls</u>**

(29)   **Is a shortfall ( *i.e.* the intermediary's position with an upper-tier intermediary is less than the aggregate recorded position of the intermediary's account-holders) at the level of the intermediary possible? What rules are applied to resolve the resulting difference of positions? Are there any rules on how to handle such a situation from an accounting point of view (for example through an interim securities debit balance)? How are shortfalls handled in practice?**

In the general terms of Article 8, a shortfall should not happen. A securities intermediary may not create security entitlements greater than its interests in a particular security. 8-504. A securities intermediary could obviously violate that requirement. The only rule in such instances is that the security entitlement holders simply share *pro rata* in the interests held by the securities intermediary. That rule applies at each level. That is, the holdings of each securities intermediary holding a security entitlement through an upper-tier intermediary will be reduced to its *pro rata* share of the upper-tier securities intermediary's holdings. In turn, each entitlement holder holding through one of those securities intermediary will have its holdings reduced to its *pro rata* share of its securities intermediary's holdings.

This no-shortfall rule is a general requirement that is dealt with in more specificity in other regulatory law, compliance with which constitutes compliance with the above-referenced section of Article 8.  8-509(a).  In certain circumstances, those rules do allow for temporary shortfalls.  For example, in the case of fails, a firm is permitted a certain period of time to clear up any resulting shortfall before it would be required to obtain the necessary securities from some other source.  In actual fact, shortfalls occur frequently due to fails and for other reasons, but are of no general consequence except in the case of the securities intermediary's insolvency.

(30)     **What duty is there on the intermediary to avoid shortfalls?**

*See* answer to question 29.  Article 8 requires a securities intermediary to maintain a financial asset in quantities at least equal to the security entitlements it has established in favour of entitlement holders.  8-504(a).  Article 8 allows for this duty to be satisfied by compliance with other applicable law.  8-509(a).

(31)     **Does the treatment of shortfalls differ according to whether there is (i) no fault on the part of the intermediary, (ii) if fault, fraud or (iv) if fault, negligence or similar breach of duty?  Does the treatment of shortfalls differ according to whether the intermediary is solvent or insolvent?**

As noted above, a securities intermediary has a duty under Article 8 (that duty may be impacted by other law or regulations) to not create security entitlements greater than its interests in a particular security.   Breach of that duty (or other applicable law or regulations) may result in various sanctions against or other liability of the securities intermediary.  In terms of the interest that the entitlement holders have in the financial assets credited to it securities account:  regardless of fault, fraud, or negligence of the securities intermediary, under Article 8, the entitlement holder has only a *pro rata* share in the securities intermediary's interest in the financial asset in question.  Entitlement holders may have other claims against the securities intermediary (*e.g.*, damages for breach of its Article 8 or other applicable duty).  This is of little consequence absent the insolvency of the securities intermediary.  In Article 8's insolvency scheme, the *pro rata* analysis applies as well, but other insolvency or other regulatory schemes may trump Article 8, leading to a different result.  In addition, note that the collusion of the securities intermediary with a third-party purchaser might give the customer claims against that purchaser.  *See* answer to question 24.

(32)     **Can the responsibility of the intermediary for negligence or wilful behaviour (*e.g.* of its employees) be contractually excluded or reduced?**

This is not addressed in Article 8, other than as discussed in the answer to question 7, in part 2.b.ii.  Generally, parties can contract for the standard of care.  The extent to which a securities intermediary can contract its way out of liability for basic negligence or wilful behaviour is probably limited by other law.

(33)     **If at any level the underlying securities are physical, what is the position if they are destroyed, *e.g.* stolen, burned, ruined by water?**

Where a securities intermediary obtained registered securities to support its security entitlements, if a registered certificate is destroyed, a replacement may be

obtained pursuant to the rules of 8-405 wh  ich m ay require posting of an indem  nity bond or meeting other requirements of the issuer.  In the rare case in which a securities intermediary has obtained a registered secur  ity and has not yet had it re-registered in its own nam e, the rights of  entitlem ent holders depend on whether the interm  ediary exercised reasonable com mercial standards of  care.  If  it did, the entitlem ent holders have no greater rights against the interm      ediary than the interm    ediary has in the certificates.  If it did not, the entitlem ent holders may further sue the interm ediary for damages.

## II.   Corporate Actions/Voting rights[1]

(34)   **What are the rights of the invest      or, and how   do they operate in practice, as against (i) the issuer, (  ii) the intermediary, (iii) the upper-tier intermediary (a) in relation to    voting or receiving of information on shareholders' meetings and (b)  in relation to corporate actions,  *e.g.* payments of dividends and coupons,   and any other action that affects price or structure?**

*See* answer to question 7.

(35)   **How can these rights be exercised?      Who is entitled to assert rights against the issuer in respect of secu      rities credited to a securities account? Under w  hat circumstances  is the intermediary required to pass benefits on to the investor?  Ho    w is this achieved if there is an omnibus or a nominee account?**

*See* answer to question 7.

(36)   **How is it ensured that no more th      an those so entitled exercise, or benefit from, the rights attaching to securities?**

*See* answer to question 7.

(37)   **Is the investor entitled to exercise   a right to set-off or net against the issuer rights in respect of securities   with obligations that the investor might have to the issuer?**

No.

## III.   Choice of the Securities location/Place of issue

(38)   **Are there any rules and, if so, what that have the effect of restricting an issuer's ability to choose the legal a    nd/or operational location of its securities for the purposes of the issue process?**

The issuer's jurisdiction is not relevant  for purposes of Article 8's rules on the indirect holding system.

---

[1]   These quest ions are of equal  i nterest t o,  and  may overl ap wi th enqui ries m ade by ,  t hose i n t he Commission dealing with company law and corporate governance issues.

## IV.  THE CROSS-BORDER DIMENSION

### Generally

(39)  **Are foreign securities, meaning those that are (i) governed by a foreign law (ii) issued by a foreign entity, (iii) issued within in a foreign jurisdiction or (iv) issued in a foreign currency, treated differently from domestic ones and, if so, how (as regards the issuer, intermediaries and investors)?  Does the answer depend on the foreign country to which the securities are related?**

For purposes of determining the rights and obligations of a securities intermediary, an entitlement holder having a securities account there, and third parties asserting claims to the financial assets credited to that securities account, the only relevant jurisdiction is "the local law of the securities intermediary's jurisdiction" 8-110(b).  A securities intermediary's jurisdiction is either (the first of the following list to apply): first, that jurisdiction specified for purposes of this particular section of Article 8 as the jurisdiction of the securities intermediary in the agreement between the securities intermediary and the entitlement holder; second, that jurisdiction specified in the agreement between the securities intermediary and the entitlem holder, as the governing law of the agreement); third, the jurisdiction in which the office of the securities intermediary at which the account is maintained, as specified in the agreement between the securities intermediary and the entitlement holder, is located; fourth, the jurisdiction in which the office of the securities intermediary identified in the account statement as the office serving the entitlement holders' account is located; and fifth, the jurisdiction in which the chief executive office of the securities intermediary is located.  8-110(e).

### Specifically

(40)  **Are there any rules which specifically define a domestic investor's right to foreign securities credited to a domestic account?  If so, what is the nature of the right given and does it differ from the right of investor to domestic securities?**

If the "domestic account" is a securities account governed by maintained at a securities intermediary in the United States, then the investor's rights under Article 8 do not depend on whether the financial asset in its securities account is a foreign security or a domestic security--its Article 8 rights and interests are the same.

(41)  **Does the protection of a domestic investor differ in relation to the holding of foreign securities (i) with a domestic intermediary or (ii) with a foreign intermediary, *e.g.* in case of the insolvency of the intermediary?**

The identity of the foreign country is irrelevant, but, given the cascade described in the answer to Question 39, an investor holding through a foreign intermediary might not have its rights determined under Article 8 unless the account agreement had the appropriate selection.  In the event of the insolvency of the

intermediary, the "lex concursus" will determ ine the rights of the investors. In the United States, the relevant insolvency la w will dif fer depending on the type of entity (bank, broker/dealer) that acts as intermediary.

(42)    **Are foreign intermediaries (w here (i) the headquarters, (ii) a branch or (iii) an office is in a foreign jurisdic tion) treated differently from domestic ones? Does the answ er depend on w hich country the foreign intermediaries are related to?**

An investor holding securities indirectly through a securities interm ediary will not be entitled to the protections of Ar ticle 8 unless the agreem ent governing the securities account specifically identifies the jurisdiction as an Article 8 jurisdiction

(43)    **How is finality (in the meaning of questions 20 and 21) achieved for transactions involving (i) foreign interm ediaries or (ii) links betw een more than one intermediary? Does th e answ er depend on the type of intermediary or securities?**

Finality is not addressed in Article 8.

(44)    **Do foreign intermediaries w hich hold domestic securities need a special authorised status in order to convey rights to its investors? How are foreign intermediaries recognised w hen entering into a link w ith domestic intermediaries?**

This is not addressed in Article 8.

(45)    **Under what rules may domestic investors acquire foreign securities?**

This is not addressed in Article 8.

(46)    **Under what rules may domestic investors use foreign intermediaries?**

This is not addressed in Article 8. Ho wever, it may be addressed by regulatory law. For exam ple, the Securities Exchange Com mission im poses regulatory requirements on investm ent companies (m utual funds) that use foreign interm ediaries as custodians for their assets.

(47)    **Are there any regulatory or other restrictions affecting foreign investors exercising shareholders' rights in do mestic securities, or inhibiting domestic investors from exercising foreign rights?**

There may be, but such restrictions are not found in Article 8.

V.  PUBLIC LAW AND REGULATORY CONTEXT

(48)    **What rules are applicable to the exis tence, establishment and operation of intermediaries (and w here relevant for co-operation betw een particular intermediaries)?**

Article 8 does not contain these rules.

(49) **Who is entitled to maintain securities accounts?  Does the holding or transfer of securities on behalf of others require any license or any other authorisation from a public authority?**

Article 8 does not address these questions.

(50) **Is the access of investors to intermediaries in another Member State affected by their access to central bank money and, if so, how?**

N/A.

(51) **Does an account agreement have to comply with any requirements as to form or content?**

No.

(52) **Are there any disclosure requirements on the intermediary regarding securities credited to securities accounts (relating to (i) taxation, (ii) company law, (iii) takeover regulation, (iv) money laundering, (v) control of regulated entities or (vi) any other matter).  Is there any requirement to ascertain and/or disclose details of final investors (*e.g.* beneficial owners) of securities held with the intermediary?**

Article 8 does not impose disclosure requirements on intermediaries.

(53) **What data storage requirements are there?**

Article 8 does not impose data storage requirements on intermediaries.

(54) **Are there any transfer restrictions applicable to securities (*e.g.* are transfers restricted to certain types of investors or intermediaries, is there a need for notifications or certifications, can delivery only occur against payment, is there a prohibition of over-the-counter transactions, etc.)?  What is the effect of a breach such restrictions?**

Article 8 validates issuer's restrictions on transfer; Federal securities laws contain transfer restrictions but the scope and consequences of such restrictions are beyond the scope of our advice here.

(55) **How is it effected that title to the securities passes from the seller to the buyer only at the very moment when the transfer of the purchase price from the buyer to the seller becomes effective (delivery versus payment (DvP))?  Are the relevant rules established by an intermediary, by market conventions or imposed by law?  Is the effectiveness of the credit to the securities account conditional upon the payment of the purchase price?**

DvP rules are not part of Article 8, and generally are not imposed by law but rather through clearing and settlement system rules, market convention and by contract.  The issue of when title passes or payment due would be addressed by contract between the buyer and the seller or exchange trading rules.

(56)   **Is the intermediary required to have information about final investors (*e.g.* beneficial owners) of securities before it takes any action in respect of such securities?**

No.

(57)   **Is there any specific penal law protection in case of fraud on the side of the intermediary?  Are there any other specific rules of penal law applicable to protect the investors' interest against appropriations or other encroachments by the intermediary upon investors' rights?**

Yes, but not in Article 8.  Such protec tions are found in other law, such as Federal and State securities laws and regula tions.  For instance, state law m ay include (as New York State law does) a crim inal rehypothecation statute, making it a crime for a securities intermediary to encumber a customer's securities without consent.

**March 2005**

**Response:  March 2006**