**In The Matter Of:**

*DEBORAH D. PETERSON v.*
*ISLAMIC REPUBLIC OF IRAN, ET AL*

---

*October 31, 2011*

---

*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK, NY 10007*
*212 805-0330*

Original File 1av1petc.txt
**Min-U-Script® with Word Index**

**This Page Intentionally Left Blank**

**DEBORAH D. PETERSON v.**
**ISLAMIC REPUBLIC OF IRAN, ET AL**                                    **October 31, 2011**

1av1petc                                                                      Page 1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   DEBORAH D. PETERSON, Personal
     Representative of the Estate
 4   of James C. Knipple (Dec.), et
     al.,
 5
              Plaintiffs,
 6
         v.                    10-CV-4518 (BSJ)(GWG)
 7
     ISLAMIC REPUBLIC OF IRAN, et
 8   al.,
 9        Defendants.          Conference
10   ------------------------------x
                               New York, N.Y.
11                             October 31, 2011
                               11:42 a.m.
12
     Before:
13
            HON. GABRIEL W. GORENSTEIN,
14
                                Magistrate Judge
15
                 APPEARANCES
16
     SALON MARROW DYCKMAN NEWMAN & BROUDY LLP
17        Attorneys for Peterson Plaintiffs
     BY:  LIVIU VOGEL, ESQ.
18
     STONE BONNER & ROCCO LLP
19        Attorneys for Peterson Plaintiffs
     BY:  JAMES P. BONNER, ESQ.
20
     PERLES LAW FIRM, PC
21        Attorneys for Peterson Plaintiffs
     BY:  STEVEN R. PERLES, ESQ.
22        EDWARD McALLISTER, ESQ.
23   PATTON BOGGS LLP
          Attorneys for Defendant Banca UBAE S.p.A.
24   BY:  UGO COLELLA, ESQ.
          JOHN J. ZEFUTIE, JR., ESQ.
25
```

1av1petc                                                                      Page 2

```
 1                APPEARANCES
                 (Continued)
 2
     CHAFFETZ LINDSEY LLP
 3        Attorneys for Defendant Bank Markazi
     BY:  DAVID M. LINDSEY, ESQ.
 4        JAMES M. HOSKING, ESQ.
          ANDREAS FRISCHKNECHT, ESQ.
 5
     WHITE & CASE LLP
 6        Attorneys for Defendant  Clearstream Banking, S.A.
     BY:  FRANK PANOPOULOS, ESQ.
 7        NICOLE E. ERB, ESQ.
          DWIGHT A. HEALY, ESQ.
 8
     DAVIS WRIGHT TREMAINE LLP
 9        Attorneys for Defendant Citibank, N.A.
     BY:  SHARON L. SCHNEIER, ESQ.
10
     FLEISCHMAN LAW FIRM
11        Attorneys for Defendants Valore, Spencer, Bonk, Arnold
     BY:  KEITH M. FLEISCHMAN, ESQ.
12        JUNE PARK, ESQ.
     STROOCK & STROOCK & LAVAN LLP
13        Attorneys for Greenbaum & Acosta Judgment Creditors
     BY:  CURTIS C. MECHLING, ESQ.
14        BEN WEATHERS-LOWIN, ESQ.
15
     DLA PIPER LLP
16        Attorneys for Heiser Third-Party/Cross Defendants
     BY:  RICHARD M. KREMEN, ESQ.
17        BARBARA L. SENIAWSKI, ESQ.
18   FAY KAPLAN LAW, P.A.
          Attorneys for Defendants Owens, Khiliki, Muila
19   BY:  ANNIE P. KAPLAN, ESQ.
          THOMAS FORTUNE FAY, ESQ.
20
     HEIDEMAN NUDELMAN & KALIK, P.C.
21        Attorneys for Plaintiffs
     BY:  NOEL J. NUDELMAN, ESQ. (Present Via Telephone)
22
     JESSICA RANKIN, ESQ.
23        Attorney for Plaintiffs (Present Via Telephone)
24   ALSO PRESENT:  DAVID JONES, AUSA
                     Civil Division, US Attorney's Office
25
```

1av1petc                                                                      Page 3

```
 1        (In open court)
 2        (Case called)
 3        (Appearances noted)
 4        THE COURT: I guess I wanted to begin with a
```
relatively minor procedural issue, which has to do with the
confidentiality order, filings and what's public and what's
not. I gather that the name of the Iranian bank and the
Italian bank have been redacted from everything on the theory
that that's subject to the District of Columbia confidentiality
order. But this is a public courtroom. We now have a notice
of appearance on behalf of two banks. Is there some reason we
can't modify whatever's in place to allow the Italian and the
Iranian bank's names to not be confidential? They've made
motions. They're here. Anyone see a problem with that?

        Since the two of you are here, I'm addressing you.

        MR. LINDSEY: Your Honor, David Lindsey from Bank
Markazi. The reason my client's name has been confidential up
to now is because that -- the identity of my client came known
due to the information from the Treasury Department, and it was
the Treasury Department who asked Judge Lambert to enter the
order that was entered, so we ourselves did not ask to be
confidential, our name, but the Treasury Department asked for
such, and so I would think we would need perhaps to ask OFAC
before releasing or changing the terms of the confidentiality
order.

1av1petc                                                                      Page 4

        THE COURT: Did they suggest that for your benefit or
for the United States' benefit?

        MR. LINDSEY: It's the statute, your Honor, providing
for Treasury and Justice to assist judgment creditors -- in
this situation to assist them in locating assets of the foreign
sovereign, provides that OFAC or the Treasury may ask that the
information given to those judgment creditors be kept
confidential and that the courts shall enter a -- an order as
such, and that was that statute that they were following.

        THE COURT: But surely, they would only do that for
the benefit of the privacy of the persons with assets; right?

        MR. LINDSEY: I'm not quite sure why OFAC wants all of
that confidential, frankly, sir, other than they do not want
that information -- how they go about finding information, I
suppose, and information they deem to be confidential, but I --
I wasn't part of that thinking.

        THE COURT: Let's hear from someone from the US
Attorney's Office. Someone just stood up in the back. Perhaps
you can note your appearance. Actually, we don't need a
microphone. Just stand there.

        MR. JONES: Thank you, your Honor. David Jones.

        THE COURT: You don't need the microphone.

        MR. JONES: David Jones with the Civil Division of the
US Attorney's Office, and I actually am asking not to note an
appearance because appearing requires the blessing of the

October 31, 2011

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL

---

1av1petc                                                                    Page 5

1  Assistant Attorney General, which I don't have, so I'm here in
2  an observing capacity, and I can't speak to the representations
3  that were just made. I'm also further hindered by the fact
4  that the main assistant responsible for this and has been
5  monitoring it is covering a family medical emergency, so I am a
6  backup person with no authorization --
7        THE COURT: A backup person, with no authorization,
8  and no appearance.
9        MR. JONES: Yes. Though I'm happy to have my
10 nonappearance noted. And I'll say in general, we're in touch
11 with OFAC, we're monitoring the case, Judge Jones earlier
12 entered an order specifically directing that pleadings be sent
13 to us to facilitate that, and so --
14       THE COURT: Could you send me a letter with OFAC's
15 position or somebody on this topic, perhaps?
16       MR. JONES: On the topic of confidentiality, your
17 Honor?
18       THE COURT: Just with the names of the two banks,
19 because I think it's going to make filings all that more
20 complicated.
21       MR. JONES: Yeah, I understand, your Honor. Let me --
22 I'll seek the appropriate blessings to do so and just -- the
23 request specifically is just to see if we have any objection to
24 publicly --
25       THE COURT: The names of these two banks being

---

1av1petc                                                                    Page 6

1  unsealed.
2        MR. JONES: Okay.
3        THE COURT: Not account numbers, not anything else.
4        MR. JONES: Yes. I can relay that and promptly notify
5  the court what the reaction is. I'm sorry for the headache,
6  your Honor. I am -- I know it gets cumbersome.
7        THE COURT: It's okay. To my mind the cat's out of
8  the bag. This is a public courtroom. I've not sealed it. I
9  don't know who's here, but whoever's here now knows the
10 information and could put it up in the internet. So whether
11 that should or shouldn't have happened, I don't know, but it's
12 hard to see what the interest is at this point. All right.
13       MR. JONES: Your Honor, one thing that just may help
14 people understand why I'm here and the nature of the
15 government's interest, ordinarily, as a theoretical matter,
16 these types of proceedings shouldn't require government
17 participation or appearance, as I understand it, but it's
18 navigating awfully closely to matters of concern, including the
19 operation of the economics sanction regime and for that reason
20 we monitor and then ultimately would determine if there's
21 anything that requires us to come in. But otherwise we have a
22 passive role.
23       THE COURT: Okay. Thank you.
24       MR. JONES: Thank you.
25       MR. LINDSEY: Your Honor?

---

1av1petc                                                                    Page 7

1        THE COURT: Hold on. Thank you, Mr. Jones. Before
2  you spoke, I think you were going to say something?
3        MR. VOGEL: Yes, your Honor. Liviu Vogel, the
4  attorney for the Peterson plaintiffs. I just want to correct
5  one thing Mr. Lindsey said. The identity of Banca UBAE and
6  Markazi were not disclosed in the original response from OFAC
7  that was made subject to protective order. That information
8  became known to us when Clearstream made a motion before the
9  court back in June of 2008 to release $250 million worth of
10 bonds because they claimed that they had -- that the former
11 owner of then Bank Markazi had already transferred them to
12 third parties and they were no longer in the possession and
13 control of Clearstream. And so therefore, it was not OFAC who
14 asked for confidentiality with respect to the identity of the
15 two banks. In OFAC's disclosure that was given to us on
16 June 11th, 2008, they identified these entities as anonymous
17 entities, and they do not give the name of them or their
18 identities.
19       MR. LINDSEY: Your Honor, if I may?
20       THE COURT: Yes.
21       MR. LINDSEY: Actually, OFAC did provide that
22 information in a second submission.
23       MR. VOGEL: Correct.
24       MR. LINDSEY: It wasn't in the first one but it was in
25 the second one.

---

1av1petc                                                                    Page 8

1        Your Honor, if I may point out one thing, I know this
2  is a headache, but technically folks shouldn't be in the room
3  unless they've signed the confidentiality agreement. And I
4  just state that. I understand your frustration.
5        THE COURT: Well, it's not frustration. I mean, I
6  don't know -- I mean, I set a public proceeding, which is all I
7  intend to have in this case. I'll see what else I can do. I
8  guess there could be a motion to seal the courtroom. You folks
9  entered, as I totally understand it, a notice of appearance,
10 but prior to your doing that, I never said anything about the
11 courtroom being sealed.
12       MR. LINDSEY: I understand, your Honor. I just wanted
13 to --
14       THE COURT: So I think the cat is out of the bag, not
15 because of anything that the court did.
16       MR. COLELLA: Your Honor, if I may be heard briefly.
17       THE COURT: Yes.
18       MR. COLELLA: I'm sure you're aware there's a pending
19 motion before Judge Jones on this very issue, and it hasn't
20 been decided.
21       THE COURT: On solely the names of these two entities?
22       MR. COLELLA: Well, it deals with the -- disclosing
23 the contents of the Italian proceedings.
24       THE COURT: That's not what I'm talking about. I'm
25 just talking about the names of these two banks; that's all.

---

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL

October 31, 2011

---

1    Okay.  Well, we're going to proceed, as I said, in an
2  open courtroom.  If someone thinks they have to say something
3  beyond the names of those two banks that's confidential, then
4  they're going to have to either not say it -- I can't imagine
5  I'm going to seal the courtroom at this point.  I don't know
6  what the procedure's going to be, but the courtroom is not
7  sealed.
8    Okay.  Let's try to move along to the merits of why
9  we're here today.  I think I need to have a little more
10  understanding about what's going on in this case in order to
11  resolve what seems to be the main dispute between the parties
12  having to do with where we go from here, and I guess I think I
13  would want actually to start with the first letter I got.  That
14  was from the White & Case people.
15    Let me try giving my sense of what's going on and then
16  I'll let the main parties correct me.
17    We had the restraint and then the motion to vacate the
18  restraint, which I gather was done in a number of filings.
19  That was in 2008.  Then in 2010 there was a complaint by the
20  plaintiffs for a turnover proceeding in which Clearstream,
21  Citibank, and Bank Markazi and Banca UBAE and Iran were named
22  in the amended complaint.  Bank Markazi and UBAE have moved to
23  dismiss those turnover proceedings, and then we have an
24  interpleader action by Citibank, which has now named other
25  interpleader defendants I guess who are aligned with

---

1  plaintiffs.
2    My first question is:  I know that there is a
3  jurisdictional argument that was made in the motion to vacate
4  the restraint, though I've not seen any of the briefing on it.
5  And my question is:  The jurisdictional argument has to do with
6  whether, at least in part, whether Clearstream is a securities
7  intermediary in which the judgment debtor's account is
8  maintained.  My question, first for Clearstream people, not for
9  anyone else:  Is it your view that if you were successful on
10  that, all the rest of this goes away or only some of it?
11    MR. PANOPOULOS: Good morning, your Honor.  Frank
12  Panopoulos.
13    We need to parse that out.  There's a jurisdictional
14  motion where we challenge personal jurisdiction over
15  Clearstream in New York, but that is not necessary to decide
16  the motions to vacate the restraints, essentially because under
17  New York law, any party who has an interest in the restraints
18  can appear to challenge the restraints and to turn over all the
19  restraints, and they don't waive personal jurisdiction
20  arguments.
21    The UCC argument that Clearstream has made and the --
22  and the situs argument that plaintiffs make, if they're decided
23  in Clearstream's favor, the restraints and the turnover goes
24  away.  But -- and our motions assume, for the purpose of the
25  situs argument, that even if we were found to be in New York,

---

1  the situs of the -- of the intangible assets that are at issue
2  are not here but in Luxembourg.
3    THE COURT: Okay.  So -- hold on.  If you prevailed on
4  that argument, there's obviously no turnover proceeding and
5  therefore, there's no motion to dismiss.  The other banks do
6  not need to move to dismiss the turnover proceeding.  But the
7  interpleader action was not filed by you; it was filed by
8  Citibank?
9    MR. PANOPOULOS: It was filed by Citibank, and the
10  reason, if I may -- I mean, Citibank can join, but -- in a
11  nutshell, there's a lot of judgment creditors that have
12  judgments against Iran and they're filing turnover actions and,
13  you know, restraints against Clearstream, against Citibank, and
14  rather than have all these different actions where you have a,
15  you know, a duplication of the same factual and legal issues
16  that are at issue here, you know, we thought it would be better
17  to bring everybody to one party, and that's basically what the
18  interpleader did.
19    THE COURT: So the interpleader is against anyone that
20  you could think of that had a judgment against Iran, only
21  people who got a judgment in the marine barracks case?  Or
22  Citibank was --
23    MR. PANOPOULOS: No, these are -- I'll let Citibank
24  discuss it, but the judgment creditors are not just with
25  respect to the 1983 bombing of the marine barracks in Beirut.

---

1  There are also other judgment creditors of Iran from other
2  bombings.  But I'll let Citibank answer your question as to who
3  was interpleaded.
4    THE COURT: Okay.  And while you're answering my
5  question, I guess, I kind of wonder how it came about that this
6  happened, because normally, if I have a piece of property
7  belonging to a judgment debtor and someone comes up to me and
8  says, "You know what, here's my judgment, give me that piece of
9  property," I'm under no obligation to figure out if there are
10  other judgment creditors out there.  I'm completely held
11  harmless by just obeying the procedures with respect to that
12  one judgment creditor.  I don't have to go around filing
13  interpleader actions every time that happens.  So if you can
14  also answer the question of why that happened here.
15    MS. SCHNEIER: Okay.  Your Honor, this goes back to
16  Judge Jones' June 27th order and she directed Citibank to
17  basically bring in anyone who had served Citibank or
18  Clearstream some legal document advising that it claimed a
19  legal interest in the property; in other words, not just
20  someone who had a judgment but who served us a writ of
21  execution or, you know, assortment of other documents.  So
22  you're right; there could be other judgment creditors against
23  Iran, but they have not put us on notice that they are claiming
24  an interest in these specific assets, and in fact, when the
25  case was just at the miscellaneous stage, some of these

---

---

1av1petc                                              Page 13

1 judgment creditors who had been brought in had actually sought
2 to intervene in that miscellaneous action.  So Judge Jones is
3 also aware that there were other judgment creditors who had an
4 interest in this case and just maybe -- you can cut me off if
5 this is too much information, but Judge Jones tried to make
6 sure that all of the judgment creditors who had an interest in
7 these specific assets of Iran as opposed to other, what's
8 called blocked assets of Iran were before her, and there are
9 other proceedings involving other assets actually before Judge
10 Patterson, but this set is before her and she wanted all of
11 these parties brought in and that's what we did, in terms that
12 we were notified by a writ of execution, lis pendens or some
13 other legal piece of paper that they had an interest.
14       THE COURT: Okay.  So now my original question, which
15 is:  If Clearstream is successful on its UCC argument, where
16 does that leave your interest here?
17       MS. SCHNEIER: Well, we're -- well, if the court finds
18 that Clearstream is successful, then Citibank is, you know,
19 further up the chain and the same UCC arguments apply to us
20 because we have, you know, absolutely, you know, no
21 relationship with any of these other parties and, you know,
22 assuming that's what the court finds, there would be, I assume,
23 a discharge of, you know, Citibank for complying with the
24 court's order.
25       THE COURT: Okay.  That's what I thought.

---

1av1petc                                              Page 14

1       Let me hear from plaintiffs on this point.
2       MR. VOGEL: Thank you, your Honor.  The UCC basis for
3 naming Clearstream as the garnishee is not the -- is not the
4 only basis for naming a particular party garnishee here, so if
5 they're successful on that issue, it only knocks out one
6 argument.  There are at least three other arguments that make
7 Citibank a proper garnishee, so if Clearstream wasn't even in
8 this case, we'd still have a proper claim against Citibank.
9 They are raised in the various motion papers that have been
10 filed, and that includes TRIA, it includes --
11       THE COURT: TRIA?
12       MR. VOGEL: Yes.  The Foreign Sovereign Immunities Act
13 Section 1610(f)(1)(A) and it also includes a creditor's bill
14 cause of action which we asserted in our amended turnover
15 complaint.
16       THE COURT: What's TRIA?
17       MR. VOGEL: TRIA is a footnote to 1610.  It's the
18 Terrorist Risk Insurance Act.  And it basically says that any
19 asset that is a blocked asset, it can be used to satisfy a
20 judgment such as those that are held by the judgment creditors
21 here for terrorist acts, and the way that an interest in
22 property is defined under the TRIA cases and TRIA regulations
23 is a much more loose definition, a much more broad definition
24 than the UCC analysis under a securities intermediary and
25 securities entitlement, and so therefore I would argue that the

---

1av1petc                                              Page 15

1 TRIA or 1610(f)(1)(A), which would use the same broad analysis
2 of -- and definition of what a property interest is, as well as
3 a creditor's bill, would use such a broad interpretation that
4 Citibank would still be a proper garnishee and the motion, if
5 successful under the UCC, would not be dispositive.
6       THE COURT: Okay.  I assume you disagree with that?
7       MS. SCHNEIER: I do.  I mean, I think the TRIA
8 argument is also addressed in the papers on the motions to
9 vacate the restraint.  The -- I don't know if you want to
10 hear --
11       THE COURT: I don't want the merits.
12       MS. SCHNEIER: -- the merits of it, but some of this
13 is a little bit different to me, but I think most of these
14 issues are addressed in the papers.  I think it's all sort of
15 wrapped up together.  The creditor's bill argument is something
16 I don't think I've ever heard Mr. Vogel quite articulate, but I
17 know the TRIA and the FSIA arguments are addressed in those --
18 in those papers.  The motion to vacate the restraints sort of
19 touched on a lot of issues in the case.
20       THE COURT: Okay.
21       MR. PANOPOULOS: Your Honor?
22       THE COURT: Yes.
23       MR. PANOPOULOS: If it helps, the -- after July 2010,
24 when Judge Jones ordered further briefing on the UCC issues and
25 the other issues raised by the plaintiffs and the defense --

---

1av1petc                                              Page 16

1 and Clearstream, there were five sets of briefs, three by
2 Clearstream, two by Mr. Vogel on behalf of the Peterson
3 plaintiffs, that crystallized the issues for the court, and in
4 that briefing we addressed the TRIA argument, and that's where
5 it could be found.
6       THE COURT: Right.  Well, at this point I wasn't
7 asking where it is.  What I'm trying to do is determine what
8 some of the threshold issues are, determine what, if any,
9 discovery goes to those threshold issues, and then determine
10 what threshold issues are and what discovery goes with that,
11 because the big dispute today, I mean, is discovery.
12       MR. PANOPOULOS: Right, I'm prepared to address that,
13 and -- I'm prepared to address that.  It will take me maybe ten
14 minutes to walk the court through that, to discuss the
15 threshold issues.
16       THE COURT: Okay.  Well, why don't we start with you
17 doing that and we'll let everyone respond and see where we are.
18       MR. PANOPOULOS: So the issues that the court has to
19 decide on the motion that was referred to the court, the motion
20 to vacate, are legal issues.  The first legal issue is --
21       THE COURT: They don't happen to be the same four
22 issues as Mr. Vogel's, do they?
23       MR. PANOPOULOS: No, they're not.
24       THE COURT: Okay.  Go ahead.
25       MR. PANOPOULOS: I mean, the first legal issue, to put

---

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL                                    October 31, 2011

1av1petc                                                    Page 17

1  it succinctly, is whether the kind of intangible property
2  interests that can be restrained under New York law, right, is
3  coextensive with the property interest created by the UCC under
4  Article VIII, which governs security entitlements.
5          THE COURT: And that's for purposes of your UCC
6  argument.
7          MR. PANOPOULOS: Of the UCC argument. And, you know,
8  I can walk the court through the outline of the UCC argument
9  or -- I can, or not. But --
10         THE COURT: I think not, because again, my --
11         MR. PANOPOULOS: Yes, I understand. But that's a
12 legal issue.
13         The second issue is the situs -- what the plaintiffs
14 call the situs argument, and the issue there, again, is a legal
15 argument, and it's whether Bank Markazi's intangible property
16 interest, which is the security entitlement, whether it's sited
17 in Luxembourg or in New York. And there are -- there are
18 sublegal issues under that, including whether the UCC supplants
19 the common law situs rules, right, and by the way, you know,
20 all the references to the UCC and all the arguments are in this
21 last set of five briefs that were submitted in the case.
22         Another subargument under that is, you know, under the
23 New York law, the situs of intangible properties is the
24 location of where the intangible right is to be performed, the
25 terms and conditions agreement which governs the account at

1av1petc                                                    Page 18

1  issue and governs the securities, the rights and duties to the
2  securities entitlement, it's governed by Luxembourg law, so in
3  any event, we argue that Luxembourg is the situs. Plaintiffs
4  argue that nonetheless, the situs of the intangible right is
5  here because Clearstream can be found here. And that's the
6  Harris v. Balk argument. As I said before, even if we assume
7  that Clearstream is found in New York -- and we don't concede
8  that and there is a motion where we challenge personal
9  jurisdiction, but you don't need to decide it for purposes of
10 deciding this situs argument, which is plaintiff's alternative
11 argument to the UCC argument -- even there, under Harris, under
12 the rule of Harris v. Balk and the progeny -- and its progeny,
13 the intangible property right of Markazi is -- still doesn't
14 travel with Clearstream. It's not in New York, even if we're
15 found to be here.
16         So now with respect to discovery on those legal
17 issues, right, which is what plaintiffs basically raise --
18 their letter raises three "fact-intensive issues," all right?
19 And, you know, the first one is that the knowledge of the
20 beneficial ownership, they say they need discovery on the
21 knowledge of beneficial ownership. There's -- that issue,
22 the -- who the beneficial owner is, is not relevant to
23 Clearstream's motions. It's not relevant to Clearstream's
24 motions because our motion papers assume that Bank Markazi is
25 the beneficial owner. What happened was, that in -- we put in

1av1petc                                                    Page 19

1  our first set of motions basically arguing that Clearstream and
2  Citibank are not the proper garnishees, and Judge Jones issued
3  an order in June of -- on June 23rd, 2009, saying she agreed
4  that with respect to the securities entitlements that are in
5  UBAE's account, Clearstream is not the proper garnishee. Now I
6  won't go into the details, but the long and short of it is that
7  but she considered whether the fraudulent conveyance argument
8  changed the analysis, and so there was -- and that was what the
9  further briefing was about. The fraudulent conveyance analysis
10 doesn't change the analysis under the UCC or the situs
11 argument, and for purposes of the argument, we've assumed in
12 our papers that there was a fraudulent conveyance, the
13 conveyances were transferred back to Bank Markazi's accounts,
14 and that Bank Markazi is the beneficial owner. Assuming that,
15 so there's no need for any discovery on beneficial ownership.
16 And with respect to the fact of who the beneficial owner is, we
17 have OFAC saying so in responses to a subpoena, a supplemental
18 subpoena issued by plaintiffs in April of 2010, and Bank
19 Markazi also has submitted papers saying that they're the
20 beneficial owner. So we don't see why there's any need on
21 discovery for beneficial ownership.
22         The next fact-intensive discovery that plaintiffs are
23 asking for is the assets are located in Luxembourg, where UBAE
24 opened the account. This is a legal issue under the UCC;
25 right? Under the UCC -- and, you know, I won't cite to the

1av1petc                                                    Page 20

1  provisions, right -- a security entitlement is acquired by a
2  customer when their account is credited with a position in the
3  securities. All of this is in Luxembourg. When Clearstream
4  appeared on June 27th, 2008, before Judge Koeltl to move to
5  quash the -- to lift the restraints, we submitted and produced
6  documents and testimony discussing the accounts, the opening of
7  the accounts, the transfers at issue, and -- and the transfers
8  at issue, and documenting the transfers at issue. These
9  documents were then, you know, used by plaintiffs to go get
10 discovery, they were used by plaintiffs in their -- in their
11 motion papers, and most if not all of them are attached one way
12 or the other to the motion papers. So those documents
13 establish that the accounts, the UBAE accounts and the Bank
14 Markazi accounts are opened in Luxembourg, and as far as we're
15 concerned, that's an established fact, and I'm not even sure
16 it's disputed. What is disputed by plaintiffs is that the
17 situs is not in Luxembourg but is in New York. But that's a
18 legal issue, not a intensive factual issue.
19         And then the third fact, you know, discovery
20 fact-intensive issue they ask for, about or for, is that no
21 activities relative to the assets occurred in New York, and
22 what this means is that if you read their motion papers, in
23 order to try and show that there's a nexus in New York with
24 respect to Bank Markazi's, you know, property right, you have
25 to look to the activities of the bond issuer, you have to look

| 1av1petc | Page 21 |
| --- | --- |

1 to the activities of the banks who pay out the bond, you have
2 to look at the activities of everybody except Clearstream and
3 Bank Markazi, and what they do is they -- they accumulate all
4 of -- all of this activity surrounding the bonds or the, you
5 know, or the -- surrounding the bonds under the securities at
6 issue and they say because of all of this activity, there's a
7 nexus in New York for which we can claim that there's a situs
8 to the intangible property right, and, you know, our argument
9 is, as a matter of law you're wrong, because even if you assume
10 all this activity, it's irrelevant to whether or not Bank
11 Markazi's right travels with Clearstream, under your -- under
12 your situs argument.
13     And just to -- and just to finish -- because I'm done
14 for now, I guess -- is that what's at issue here are 20 -- are
15 the entitlements in 20 securities.  Basically what happens is
16 that there's an issuer who issues a billion-dollar bond and
17 different investors take positions in these bonds.  Some take
18 10 million, some take a hundred million, some take 50 million.
19 Bank Markazi had positions in these 20 bonds.  Some of the
20 positions were 50 million, some were a hundred million, some
21 were 200 million.  And so the bonds are not issued in paper so
22 that, you know, Bank Markazi holds a piece of paper that says
23 you have, you know, 50 million positions, a position of
24 $50 million in this bond.  It's all done electronically or what
25 they call dematerialized, which means that the issuer issues a

| 1av1petc | Page 22 |
| --- | --- |

1 bond that resides with the deposit -- depository trust in New
2 York and everything after that is done electronically on book
3 record.  And so when I talk about bonds, I'm talking about the
4 bonds that have been issued and the bonds in which the security
5 entitlements have positions in.
6     THE COURT: Okay.  So if I can sum up, on the issue of
7 knowledge of beneficial ownership, Mr. Panopoulos, and the
8 activities relevant to the assets occurring in New York, it
9 seems like you're willing to assume the plaintiff's allegations
10 on that front, that you had knowledge and that all the
11 activities they claim that are going on in New York, that those
12 actually happened; you just think that they're not legally
13 relevant.  Sticking to your second argument.
14     MR. PANOPOULOS: Yes.
15     THE COURT: Okay.  It was less clear to me on the
16 assets in Luxembourg argument.  I think what you were saying is
17 at this point no one really wants discovery or reasonably
18 expects discovery on the issue of where the accounts were
19 actually opened, the documents are sort of self-proving, and
20 that anything that flows from that is a legal issue.
21     MR. PANOPOULOS: Except that the -- the issue of where
22 the account is opened is defined and governed by the UCC, so
23 you would start there.  So it's a legal issue.  The UCC points
24 you to the account agreement.  The account agreement is in
25 evidence.  It clearly says governed by Luxembourg law.

| 1av1petc | Page 23 |
| --- | --- |

1     THE COURT: No one is disputing the specificity of the
2 account agreement.
3     MR. PANOPOULOS: No one is at all, your Honor.
4     THE COURT: You think all you need for that argument
5 is the account agreement, the only factual thing.
6     MR. PANOPOULOS: Yes.  And if there is anything else,
7 right, we think it's been -- it's there, and maybe they should
8 tell the court what they need specifically and we can address
9 the court.
10     THE COURT: Okay.
11     MR. PANOPOULOS: I'd also like to say, your Honor,
12 please, that we only agree or assume plaintiff's facts for the
13 purposes of this motion only.
14     THE COURT: Okay.  So Mr. Vogel, I think you're up.
15 So now of course it's their motion, so if they say, you know,
16 we're making the following legal points and to do that, we only
17 need the following facts, you're certainly welcome to say,
18 well, that's not legally correct and that if you have those
19 facts, you're still not correct legally, that's fine, we should
20 have that debate, in the motion papers, but I guess the
21 question becomes, what is the nature of the factual discovery
22 that you're claiming you'll need to meet those legal arguments?
23 We've already essentially heard Mr. Panopoulos say that for
24 purposes of the briefing, he's willing to concede the points
25 that you say that you're seeking discovery on.  So if you can

| 1av1petc | Page 24 |
| --- | --- |

1 address what's wrong with that argument, that will help.
2     MR. VOGEL: Certainly, your Honor.
3     First of all, the list that Mr. Panopoulos used to
4 make his arguments is, as you can imagine, was used in our
5 letter to the court for illustrative purposes and is not at all
6 a complete list of what the factual issues are, because I could
7 have gone on for pages.  So starting with that premise as
8 false, through our motion papers that we've already submitted
9 on Clearstream's motion, we asked the court for discovery, and
10 we tell the court that because this is a fact-intensive issue
11 concerning the situs of the assets raised by Clearstream that
12 we need discovery on these issues.  But that in terms of
13 responding to the motion, we claim that there are enough facts
14 that have been disclosed to us already that the court should
15 determine without doubt that the court has personal
16 jurisdiction over Clearstream, and as a result, under the law
17 and the legal analysis, because it has that jurisdiction, this
18 is an intangible right, and under New York common law, the
19 situs of the intangible right is wherever the garnishee can be
20 found, and in this case we claim that Clearstream can be found
21 here in New York and therefore the court has the power to order
22 Clearstream to dispose of those assets as the court sees fit.
23     So in terms of -- let me start from the beginning.
24 Mr. Panopoulos says that the issue of situs and the UCC are two
25 alternative arguments.  They are not alternative arguments.

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL

October 31, 2011

1  The UCC, according to Clearstream, defines the nature of the
2  property right.  However, there is clear caselaw on the fact
3  that the UCC does not -- does not address the situs of those
4  property rights.  That is left to common law, which is why we
5  had 18 briefs submitted, because it's not as simple an issue.
6  And the common law, among other things, as I said before,
7  states that if you have jurisdiction over the garnishee, then
8  you have the situs where the garnishee can be found.
9         Another argument is -- under New York law is that the
10  nature of the property right, intangible right requires
11  performance by various properties in order to get an economic
12  benefit.  So we did in our papers a fact analysis of why we
13  believed that many of those, if not most of those, critical
14  performances that are required by various parties to create an
15  economic value in the owner of that property right all occurred
16  near New York.  And because we've been deprived of discovery
17  from Clearstream as to instructions given to them to make these
18  transfers as to instruction -- instructions that they in turn
19  gave to Citibank here in New York and that Citibank in turn
20  gave to correspondent banks here in New York for the benefit of
21  the defendants to make, to transfer these funds out to them
22  when funds -- when these bonds matured and funds were paid, all
23  of that occurred here in New York.  The bonds themselves are
24  not actually --
25         THE COURT: But they may say to me, "We'll accept all

1  that happened," I suspect.  I'll check in a second.  And then
2  they say to me, "Okay, all those things happened as you say in
3  New York.  That makes no difference legally."  And they may be
4  wrong, but it doesn't mean that we need to determine those
5  facts in order to decide their argument on the motion.
6         MR. VOGEL: Well, that's not entirely true because
7  it's a fact-intensive analysis, and if you look at the cases
8  that are cited in all of our briefs, there are important
9  factors in each one, and we can't guess at what those facts are
10  and say, well, we believe that all of these things happened.  I
11  mean, they either are the facts or they're not, and we're not
12  going to know that if the facts are in their possession.
13         THE COURT: But you could imagine the best possible
14  fact situation for you, and if they say it doesn't matter, then
15  we can at least resolve it on those grounds, if you're right.
16         MR. VOGEL: I guess the best possible fact situation
17  is that the account was open here in Manhattan, that
18  representatives from Markazi came to Manhattan and met with
19  people from Citibank and from -- and from Clearstream and that
20  they had all kinds of communications with this forum in terms
21  of e-mails and all kinds of transactions, but I'd be lying to
22  the court if I made up facts.  I can't just make up facts from
23  whole cloth.  And the caselaw clearly indicates that it's an
24  intensive analysis.
25         For example, I'll just give you one case, where the

1  court found that the situs of the asset was I believe in
2  Argentina.  I think it was a Citibank case, in fact.  It was
3  Citibank's branch in Argentina.  And in that case the account
4  was opened by the Argentine government locally with Citibank in
5  Argentina, they came and met regularly with representatives of
6  that bank, they got investment advice at that bank.  So all of
7  these fact-intensive issues are relevant, and we can't possibly
8  know what those are or guess at what they would be without
9  doing discovery.
10         THE COURT: Right.  No, but you can say in your brief
11  just what you said to me, that all these fact-intensive
12  issues -- I assume Mr. Panopoulos is going to say to me, none
13  of that stuff matters, all that matters is the authenticity of
14  this account agreement, and if it comes out of Luxembourg and
15  it doesn't matter what other facts you came up with, that's not
16  going to be relevant.  He may be wrong.
17         MR. VOGEL: Well, if he's right on that law, then
18  sure, that's correct, but I think the law is fairly clear that
19  that's not the case in New York.  It's a very fact-intensive
20  analysis.
21         THE COURT: All right.  Well, keep going.  Assuming
22  you were not finished.  I thought I interrupted you.
23         MR. VOGEL: There may be more.  Let me take just a
24  quick look at my notes.
25         Oh, on the issue about the beneficial ownership and

1  Clearstream's knowledge of that, Clearstream's knowledge and
2  when they had knowledge, had knowledge of the beneficial
3  ownership only became relevant when we went to Italy and got
4  discovery from UBAE that indicated that Clearstream knew that
5  Markazi continued to be the beneficial owner of these assets
6  once they were transferred to UBAE and has nevertheless stated
7  to the contrary and before this court in June of 2008 and sent
8  us on a wild goose chase for over a year and a half until we
9  could find this out on our own, and all parts of the scheme to
10  defraud creditors in the United States and to help Markazi hide
11  its identity as the true owner of these assets here in New York
12  and to help Markazi violate United States OFAC regulations and
13  Iranian transaction regulations and -- that were passed against
14  it at sanctions and that -- that became relevant once we
15  learned that about when they knew about this, and we asserted
16  in our amended complaint a cause of action for damages against
17  Clearstream for 250 million because it was 250 million that
18  they secured a release of back in June of 2008 by having -- by
19  having failed to notify Clear -- Citibank that as Citibank
20  participated in sending these assets out and selling them on
21  behalf of and for the benefit of Markazi, they were
22  violating US law.  Had Citibank known that, that money would
23  never have gone anywhere and it would have been available for
24  the creditors that are sitting here represented by counsel in
25  this room to have -- to enforce their judgments.  That's where

**October 31, 2011**

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL

---

1av1petc                                                               Page 29

1 that issue becomes relevant, not necessarily on the motion
2 that's now pending by Clearstream.
3        And in terms of whether our discovery at this point,
4 your Honor, should be limited only to the pending motion or
5 whether we should in tandem move the case forward and have
6 additional discovery on the further issues so that when this
7 motion is decided, if it's decided in favor of the plaintiffs,
8 we will have moved along and gotten discovery and not wasted --
9 wasted further time, the issue about what they knew and when
10 they knew it is relevant for further discovery.
11        Again, on the location of the assets, Clearstream
12 incorrectly stated that the UCC provides for that.  Just
13 clearly not so.  Caselaw has said so.  The situs is determined
14 by state law, and that's New York State law that applies.
15        And again, the activities relative to the assets that
16 occurred in New York are relevant for the argument that I
17 addressed with the court.  So I think we need discovery on that
18 issue, and particularly the new third-party defendants that
19 have come into this case and have not had the benefit of three
20 years of what I've been through doing discovery, certainly
21 they're entitled to their say about what discovery they may
22 need to address these motions.
23        THE COURT: I don't think I got any other letters from
24 plaintiffs on this particular area of discovery, so I don't
25 know if anyone wants to be heard about what facts they're

---

1av1petc                                                               Page 30

1 looking for beyond what Mr. Vogel said, but -- I don't know if
2 there is anyone.  So Mr. Panopoulos?  Oh, I'm sorry.
3        MR. KREMEN: Your Honor, Richard Kremen on behalf of
4 the Heiser judgment creditors.
5        Several points.  One is that we are recent into the
6 fray and there apparently has been discovery that has in fact
7 occurred.  We've gotten access to simply the documents that
8 were attached to the pleadings, and in order to prepare our
9 responses to the motions that have in fact been filed, we would
10 like to get access to any discovery that has in fact been
11 produced to date in this case.
12        The other point is a procedural issue.  At this point
13 we've issued various risks.  Obviously there are various
14 motions that have been filed at this point in time.  But our
15 risks are really not at issue, and I think there's a threshold
16 issue at this stage as to whether or not they are in fact going
17 to be filing risks -- filing motions with respect to the risks,
18 for example, that we have issued or whether we are simply going
19 to be asked to respond to the risks which really only goes to
20 Peterson, and I would think that --
21        THE COURT: Are there issues, or you don't know?
22        MR. KREMEN: I don't know what issues they're going to
23 be saying with respect to us, but at a minimum I think they
24 ought to be clarified, and if in fact they are going to be
25 relying on the same arguments, they ought to in fact be

---

1av1petc                                                               Page 31

1 required to make some type of pleading to make it clear what we
2 are being asked to respond to, your Honor.
3        THE COURT: Pleading or a brief?
4        MR. KREMEN: A brief, or if they're going to --
5        THE COURT: A motion to vacate.
6        MR. KREMEN: Or motion to vacate, or whatever argument
7 they're going to be raising, I think it needs to be clarified
8 as to exactly what arguments are going to be raised with
9 respect to at least the Heiser judgment.
10        THE COURT: Okay.  Well, I guess on the first point,
11 Mr. Vogel, I mean, I assume you're the person who has the
12 discovery.
13        MR. VOGEL: I'm sorry, your Honor?
14        THE COURT: On the first point that was just made,
15 access to discovery beyond what might be attached, is there
16 some mechanism to do that?
17        MR. VOGEL: You mean access to the discovery that we
18 have obtained?
19        THE COURT: Yes.
20        MR. VOGEL: Yes, of course.
21        THE COURT: So I assume that can be worked out.
22        MR. VOGEL: Yes.
23        THE COURT: That was the first point Mr. Kremen
24 raised.
25        All right.  On the second point, maybe this goes to

---

1av1petc                                                               Page 32

1 the issue of your briefing that was being raised in the
2 letters.  Frankly, I would be helped by rebriefing.  I don't
3 even have copies of the 18 briefs or whatever it is, and it
4 sounds like if there were successive briefs, people were
5 expanding on issues that were previously raised on other
6 briefs, and I think it would be a big help for me, not to
7 mention the other plaintiffs, if we can have combined in a
8 single motion from Clearstream -- yes, Clearstream, not UBAE --
9 precisely what the threshold jurisdictional arguments are.  You
10 seem to be resisting that, Mr. Panopoulos.
11        MR. PANOPOULOS: No, not at all.  Not at all.  I
12 agree.  I'm more interested in page limits because I don't
13 think we can do it in 25.
14        THE COURT: I don't have to have limits, so --
15        MR. PANOPOULOS: That's good.
16        THE COURT: I mean, I have faith in the lawyers not
17 going on unnecessarily, but I don't want to set page limits and
18 have them truncate their arguments.  I want to have the full
19 explanation.
20        MR. PANOPOULOS: And then there's the timing, but we
21 could work out a schedule.
22        THE COURT: Okay.  So you saw these letters from
23 plaintiff on the briefing.  It sounded like there was a dispute
24 on that.
25        MR. PANOPOULOS: Well, with respect to the Heiser

---

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL                          October 31, 2011

1av1petc                                          Page 33

1  plaintiffs, we would make the same responses.  I mean, you
2  know, basically, yeah, we would move to vacate on the same --
3  for the same reasons we have in the Peterson.  That's why we
4  brought them; that's why they were interpled.
5          THE COURT: For some reason I thought I saw in your
6  letter plaintiff's rebriefings being expensive and time
7  consuming.  Do I remember that?
8          MR. PANOPOULOS: It is expensive and time consuming,
9  but obviously if it helps the court --
10         THE COURT: Yes.  And it will also help all the new
11 plaintiffs that have come in in all the interpleader actions.
12         MR. PANOPOULOS: Obviously it would help them.  I
13 mean, yes, it would.
14         THE COURT: Okay.  So at a minimum, it seems to me you
15 should assume that everything in the past no longer is with us
16 briefingwise and that you're going to do a new set of memoranda
17 of law.  You can use old affidavits as attachments, you can
18 reference them, but the memoranda of law is what I really care
19 about.  So all these threshold arguments are in one place.
20         MR. PANOPOULOS: Sure.
21         THE COURT: Okay.  Now, you know, I mean, I'm ready to
22 start thinking about discovery issues.  I just don't know that
23 I've --
24         MR. PANOPOULOS: I'd like to just address a couple of
25 aspects.

1av1petc                                          Page 34

1          THE COURT: Sure.
2          MR. PANOPOULOS: One is that if you were to look at
3  Tab 7 of our letter, Judge Jones' order -- I can read it to
4  you, but on page 4 at the bottom, it states, "It is further
5  ordered that Clearstream shall stipulate that all of the
6  documents contained in the binder Clearstream produced and used
7  at the June 27, 2008 hearing are authentic and admissible as
8  business records."  All right?  So we did that.  Those records
9  are records about the opening of the account in Luxembourg,
10 etc., etc.  Frankly, it's disingenuous for me to hear from
11 Mr. Vogel that there was an account opened in New York where
12 Markazi showed up with Citibank and Clearstream, when all of
13 these records are already in the record.  But what I'd like --
14         THE COURT: Hold on.  I think what he's saying is that
15 in addition to those records, there could have been these other
16 activities and he doesn't know what they are.
17         MR. PANOPOULOS: Okay.  Well, that's not what I heard,
18 okay.
19         THE COURT: Because he hasn't had discovery.
20         MR. PANOPOULOS: And secondly, if -- if the other
21 plaintiffs are entitled to the discovery that Mr. Vogel has
22 from UBAE in Italy, we would like access to that also, because
23 we haven't had access to it either.
24         THE COURT: Any problem with that, Mr. Vogel?  I mean,
25 normally when one uses court process in obtaining discovery,

1av1petc                                          Page 35

1  the law is that they're made available to everyone.  So it's
2  another principle that should apply to everyone here.
3          MR. PANOPOULOS: And my last point, your Honor --
4          THE COURT: Yes.
5          MR. PANOPOULOS: -- is that the documents that
6  Clearstream put into that binder go to the issues that were
7  raised in the Argentine case because they go -- the factors
8  that the court enunciated there about where performance is
9  etc., etc., that's what those documents talk about.  So --
10         THE COURT: Okay.  But I guess you need to have --
11         MR. PANOPOULOS: That will be in the brief.
12         THE COURT: Well, maybe we're going down the path you
13 suggested, and I think it's a path, frankly, I prefer, just to
14 put the argument on the table, which is to make this discovery
15 position in the context of having the issues presented to me so
16 that I can make a judgment about whether that discovery is
17 going to make a difference for purposes of deciding the motion,
18 and if it's not, then it's not necessary, and if it is, then
19 I'll say that.  I mean, that's what you want.
20         MR. PANOPOULOS: Yes.  I think that's absolutely
21 right.
22         THE COURT: I think Mr. Vogel wants to move this
23 along, but --
24         MR. PANOPOULOS: Right.  And in that context it will
25 be specific, it won't be general, and we can talk about it.

1av1petc                                          Page 36

1  And my last point, your Honor --
2          THE COURT: Go ahead.
3          MR. PANOPOULOS: -- is that, I just want to make the
4  court aware that Bank Markazi's motion, which challenges the
5  court's subject matter jurisdiction over the res, right, is
6  also dispositive of this entire case, perhaps even of the
7  restraints and of the turnover as well, and even if you were
8  to -- even if the court were to find against Clearstream on the
9  UCC issues, it would still have to deal with Bank Markazi's
10 subject matter jurisdiction motion under the Foreign Sovereign
11 Immunities Act, and I'm just raising that so the court is aware
12 of that.
13         THE COURT: Does that apply to all the accounts?
14         MR. PANOPOULOS: All the accounts, yes, because we've
15 assumed -- because you're assuming that everything has gone
16 back to Markazi for purposes of the, you know, alleged
17 fraudulent conveyance.  And that was also, you know -- I mean,
18 that's been briefed by Bank Markazi, at least in its opening
19 motion.  The other plaintiffs have yet to respond, but I do
20 want to make the point.
21         THE COURT: Because there was a stay there as well.
22         MR. PANOPOULOS: That was stayed, yes.  Yes.  And
23 that's it.
24         THE COURT: All right.  I mean, there's enough
25 threshold jurisdictional issues that I don't feel this is the

1 moment to explore that further.  That moment may come when I
2 read the other side's explanation in the context of motions
3 when I've had better opportunity to consider it, but not at
4 this moment at this conference.
5        So what I want, looking at this from the big picture,
6 is to have a schedule that allows threshold motions for which
7 whoever's making them is essentially going to concede any facts
8 that the plaintiffs want and be able to say that that's
9 irrelevant to their motion.  I mean, that's within limits,
10 obviously.  You know, the account opening documents, they don't
11 have to assume that that could be challenged.  But, you know,
12 that's the theory.  The theory that there's going to be no
13 factual disputes in the sense that we have no factual disputes
14 on the motion to dismiss a complaint for failure to state a
15 claim.  You accept whatever it is that the plaintiffs want to
16 allege or say that they might find in discovery and you make
17 the motion that says, notwithstanding that, the case, you know,
18 has to be dismissed.  So I feel that has to be decided as soon
19 as possible and in advance of freestanding discovery.
20        So that's my ruling with respect to the discovery
21 issues.
22        Now in response to the motions to dismiss, the
23 plaintiffs, you know, will say things that plaintiffs say in
24 any case where there's a 12(b)(6) motion, which is you need to
25 accept, you know, all the potential facts as being true.  We're

1 at a little disadvantage here because there's no pleading over
2 which they have alleged all these facts they say they could
3 find in discovery, but I think the same principle is going to
4 apply.  And when I read the plaintiff's responses, I'll hear
5 what they say could matter and why and then the defendants will
6 say, well, none of that matters or they'll say, you know, you
7 got us and you're right, that is going to be relevant and
8 there's a dispute on it, factual dispute on it and plaintiffs
9 are entitled to discovery and they will have some argument on
10 that point.
11        So with those parameters, I'd like to figure out who
12 should be moving when and on what schedule.  I already said
13 there's no page limitations.  So I'm open to proposals.
14        Mr. Vogel, since you got the bad news, what's your
15 view as to how we should proceed?
16        MR. VOGEL:  Well, I suppose Clearstream is going to
17 need time to put this all into one concrete brief.  I know that
18 there was an application or a proposed application by Markazi
19 to amend its brief to talk about the new Second Circuit
20 opinion, which is perfectly legitimate, but my concern is that
21 the request is somewhat broad in their proposed order about
22 what they're going to include in an additional brief and --
23        THE COURT:  You mean Bank Markazi or someone else?
24        MR. VOGEL:  Bank Markazi.  And --
25        THE COURT:  Maybe I should hear from them first and

1 we'll see what they want to brief on.
2        MR. VOGEL:  Certainly.
3        THE COURT:  Will that help, Mr. Vogel?
4        MR. VOGEL:  Yes, and then I won't have to speculate.
5        THE COURT:  Okay.
6        MR. LINDSEY:  Your Honor, there was a reported Second
7 Circuit decision over the summer that helped define the
8 immunity with regard to central banks.  My client, Bank
9 Markazi, is a Central Bank of Iran.  I think it would be
10 helpful, frankly, if we redraft our brief.  I think it would be
11 much shorter now.  I think the issues are crystallized a great
12 deal.  The thrust of the complaint currently before the court
13 talks about alterego, talks about my client is the alterego of
14 the government of Iran.  Second Circuit has said that's
15 irrelevant.  So I don't know if they plan to replead their
16 complaint as well, but if I can rewrite my brief, it will be
17 much shorter, much more focused based on that decision.  I
18 would say two of the three affidavits that went with my motion
19 to dismiss will probably be eliminated now.
20        THE COURT:  Do you want to amend your complaint or no?
21        MR. VOGEL:  Your Honor, I was just going to address
22 that.  Our complaint was drafted on the basis of a footnote in
23 a Second Circuit opinion in the same case where the Second
24 Circuit said that had the plaintiff alleged alterego, they
25 might have had a claim.  So we focused on alterego, and then of

1 course the Second Circuit changed its mind a few months ago.
2 So although there are facts currently in our pleading that I
3 think adequately support the 1611 issue, we could probably make
4 it more clear and probably ought to have the opportunity to do
5 so.
6        But I guess my question for Markazi's counsel was,
7 aside from the Second Circuit opinion that they want to
8 address, their proposed order seems to say that they want to
9 also talk about other briefs that they have now gotten access
10 to that they didn't previously have access to because they were
11 sealed, and my concern is that under Rule 12, you're only
12 allowed one motion to dismiss, and you can't have a second bite
13 at the apple.  So if now they're alleging new things that they
14 would be -- that would be violated with Rule 12, I would
15 certainly like that they be limited to what's permissible under
16 Rule 12(g)(2).
17        THE COURT:  Well, if you're doing an amended
18 complaint, I think the concern dissipates, does it not?  Or you
19 want to do an amended complaint; right?  It's up to you.  I'm
20 not going to force you.
21        MR. VOGEL:  Yeah.
22        THE COURT:  Yes, you want to.
23        MR. VOGEL:  Yes.
24        THE COURT:  All right.  So you do an amend complaint,
25 and I think the clock is reset to zero and they file a motion,

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL

October 31, 2011

1av1petc                                                                Page 41

1  right, they can say what they want in response.
2        MR. PANOPOULOS: Your Honor?
3        THE COURT: Yes.
4        MR. PANOPOULOS: If he files an amended complaint,
5  Clearstream would still consider that any response to that
6  amended complaint is stayed as to it until the threshold issue
7  under the -- that we've been discussing is decided.
8        THE COURT: Yes. I mean, the same principle would
9  apply there.
10        MR. PANOPOULOS: Thank you, your Honor.
11        MS. SCHNEIER: Your Honor, I would just join in that
12  request, which is what Judge Jones had previously ordered.
13        THE COURT: Yes. The theory -- I'm just going to have
14  to try to put this together. I was originally starting with
15  the motion. But now we're starting with the amended complaint.
16  There's going to be an amended complaint filed on the turnover
17  proceeding. Then I would say simultaneously we get the motion
18  to dismiss the amended complaint, along with the Clearstream
19  rebriefing of the motion to vacate the restraints, and then
20  anybody who wants to respond to those, which would include all
21  the new plaintiffs, and all the new plaintiffs would then
22  respond, and then there would be reply briefs? Does that make
23  sense?
24        MR. PANOPOULOS: Yes.
25        THE COURT: So first date is when you want to file

1av1petc                                                                Page 42

1  your amended complaint.
2        MR. VOGEL: We can do that within 30 days, your Honor.
3        THE COURT: Yes.
4        MR. PANOPOULOS: But we'll go ahead and work -- file
5  our motion irrespective of the amended complaint -- I mean, his
6  amended complaint. The amended complaint is about --
7        THE COURT: Your issues are completely divorced from
8  their issues, from Banca UBAE and Bank Markazi's issues.
9        MR. PANOPOULOS: Yes. With respect to the amended
10  complaint. Our issues under the UCC, right --
11        THE COURT: With respect to anything. Are there
12  similar issues coming out of both of you?
13        MR. PANOPOULOS: Okay. Yes, there are. It's a claim
14  against Clearstream directly, right, against it for being
15  involved in a fraudulent conveyance. They've alleged that also
16  against UBAE in the amended complaint. That has nothing to
17  do -- well, let me put it this way.
18        THE COURT: You want a stay on that, just the way
19  Judge Jones gave it to you.
20        MR. PANOPOULOS: Right, yes, because if you decide the
21  UCC issues and the situs issues, it goes away.
22        THE COURT: So we should have two schedules, one the
23  motion to dismiss the amended complaint and the other the
24  rebriefing on the motion to vacate. Is that your point?
25        MR. PANOPOULOS: Ms. Erb is indicating consolidated

1av1petc                                                                Page 43

1  briefs by the plaintiffs on, yes, two separate tracks, our
2  motion, amended complaint, responses, to which ours and
3  Citibank's is stayed, and then consolidated briefs by the
4  plaintiff --
5        THE COURT: Wait. That was too fast. Say it again?
6  Amended complaint?
7        MR. PANOPOULOS: Amended complaint, as to which
8  Clearstream and Citibank, any response is stayed until the
9  motion referred to your Honor is decided. And then with
10  respect to the -- with respect to our motion to vacate the
11  restraints, we would like a consolidated brief by all of the
12  plaintiffs.
13        THE COURT: In response.
14        MR. PANOPOULOS: In response. Obviously we'd put one
15  in.
16        THE COURT: Okay. So Mr. Vogel?
17        MR. VOGEL: Your Honor, there's a procedural problem
18  here, and maybe it's just me and I'm missing something, but we
19  raised this as a defense to the interpleader petition filed by
20  Citibank. Technically the interpleader petition is only
21  against the new third-party defendants and the original parties
22  to the Peterson plaintiffs' turnover complaint, which includes
23  the three banks, Iran, and of course the plaintiffs. There's
24  no connection between the two. They're just kind of floating
25  before this court, but there's no pleading inter --

1av1petc                                                                Page 44

1        THE COURT: Wait. Make sure I understand that. The
2  interpleader doesn't mean you and the original people; it just
3  means all these new people who I am mentally aligning with you
4  but you're calling third-party interpleader --
5        MR. VOGEL: Defendants.
6        THE COURT: -- interpleader defendants.
7        MR. VOGEL: Correct.
8        THE COURT: And tell me what the problem with that is.
9        MR. VOGEL: Well, the problem is, the proper way to
10  commence an interpleader --
11        THE COURT: Is to have everybody included.
12        MR. VOGEL: -- is to name everybody, but because
13  you're not starting a new action, the way to do is to put in a
14  counterclaim against the plaintiff, cross-claims against the
15  banks, who have expressed an interest in --
16        THE COURT: I'm sorry. Counterclaims meaning, did you
17  sue Citibank?
18        MR. VOGEL: Yes. Citibank is a defendant.
19        THE COURT: In your turnover proceeding action.
20        MR. VOGEL: Correct.
21        THE COURT: You think that's the only way there should
22  have been a counterclaim is turnover.
23        MR. VOGEL: That's clear law to that effect.
24  Otherwise we're not a party and none of the other banks are
25  parties. They haven't been named.

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL

1    THE COURT: So they should amend their interpleader
2  action to name you?
3    MR. VOGEL: I think that they -- no, it shouldn't be
4  that way, because we commenced this action by a turnover.  The
5  proper way, the proper procedure for them to do it is to
6  counterclaim against us, cross-claim against the other banks,
7  and then the interpleader defendants now, if they want to
8  assert claims against these funds, can do so.  Otherwise, they
9  can't do it because they've been named as third-party
10  defendants to an action where the assets are not even at issue
11  and they can't -- the other defendants, the banks that hold
12  these assets, are not parties to that.  And in particular,
13  Clearstream, who is the garnishee.
14    THE COURT: I mean, I think we're in uncharted
15  territory because they were instructed to file an interpleader
16  action in this docket.
17    MR. VOGEL: Well, that's correct, your Honor, but if
18  you look at that, if you look at that order, the order says
19  that Citibank had, in its discretion, commenced an
20  interpleader, a petition including counterclaims, cross-claims,
21  etc., etc.  It was up to Citibank to do it if they wished to do
22  it.  It was in their discretion.  They chose to do it.  And
23  they did it wrong.  They have an obligation to follow the rules
24  of civil procedure.  Otherwise, we're -- this -- you can
25  decide, your Honor can decide whatever your Honor wishes, and

1  this whole thing could be unraveled on a simple procedural
2  issue on appeal because none of these, the other judgment
3  creditors are really parties to this entire action, nor are the
4  other banks that express an interest in it.  It's not a true
5  interpleader.
6    THE COURT: Are you worried about it being unraveled
7  on appeal?
8    MS. SCHNEIER: No, your Honor, I'm not.  I think the
9  purpose here was to bring before the court all the parties that
10  have an interest in this case so they can have an opportunity
11  to be heard, and that's what's happening here.  Only Mr. Vogel
12  has raised this issue with me.  He said he was going to send me
13  some authority to this effect, and I have not seen it.  We had
14  this argument before Judge Jones and it didn't -- it didn't go
15  anywhere, but, you know, I'm not sure I understand what the --
16    THE COURT: This was raised before Judge Jones?
17    MS. SCHNEIER: Yes.  And that was -- and the
18  purpose --
19    MR. VOGEL: No.
20    THE COURT: We're getting a no, but that's okay.
21    MS. SCHNEIER: But the purpose of what Judge Jones
22  wanted here was to bring before the court all of the different
23  parties so they could have an opportunity to assert their
24  claims, and they have asserted counterclaims and cross-claims
25  against Citi, Clearstream, and so the only one who's been

1  raising this -- and I'm not -- still not sure exactly why --
2  has been Mr. Vogel.  So --
3    THE COURT: Well, I'll take him at his word that it
4  will unravel on appeal, but if we consolidate for all purposes
5  these actions, which effectively they are, I think by virtue of
6  the docket, everyone gets noticed.  What could the possible
7  claim be from the plaintiff?  There's no lack of notice; right?
8    MR. VOGEL: It's not a lack of notice, but there's no
9  just no pleading that forms the basis of the claim, so the way
10  I learned it in law school, civil procedure, is, you've got to
11  have a complaint and an answer for every claim, okay?  So
12  you've got a bunch of claims here that are not represented by
13  pleadings.  If the court wants to leave it the way it is,
14  that's up to the court.  I just -- I just don't see it.  It
15  just doesn't make sense to me.  It doesn't follow the rules of
16  civil procedure.
17    THE COURT: Yes.
18    MR. PANOPOULOS: I would agree that consolidation is
19  probably the way to go, your Honor.
20    THE COURT: Well, I guess it's hard to believe that
21  with everyone given notice to address each of the claims and
22  actually being a party -- everyone we care about is a party to
23  this proceeding.  They will all be given notice.  Consider
24  everything consolidated.  I think the niceties of whether this
25  should have been counterclaims or a separate action at that

1  point don't matter.
2    So Mr. Vogel, I'm not concerned.  I thank you for
3  raising the issue.
4    We were going down the road of giving a date for your
5  amended complaint.  So let's start on two tracks.  And you
6  wanted I think 30 days, which would be November 30th.
7  Mr. Vogel, that's all right for you?
8    MR. VOGEL: Yes.
9    THE COURT: Okay.  File your amended complaint.  And
10  then previously existing stay to respond to that complaint by
11  Citibank and Clearstream is going to be stayed.  Then we're
12  going to get the motion to dismiss from both banks or just one?
13    MR. COLELLA: Your Honor, may I be heard.  Perhaps
14  there's no accident today that I'm sitting between all the
15  parties because Banca UBAE really doesn't have a bone to pick
16  on the underlying issues you've been hearing.  We've had a
17  personal jurisdiction motion, essentially a personal
18  jurisdiction motion on file against Peterson since May, we
19  filed the cross-claims filed by the other creditors, creditors.
20  Only the Acosta and Greenbaum plaintiffs cross-claimed against
21  us.  We filed a motion to dismiss that on similar grounds on
22  September 27th.  And if you're going to go with two tracks,
23  we would want the plaintiffs, the Peterson plaintiffs and the
24  Acosta/Greenbaum plaintiffs to respond on the date they file
25  the amended complaint, on November 30th, and we can then

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL                                    October 31, 2011

---

1av1petc                                                        Page 49

1  reply shortly after that.  Because our -- we don't have
2  anything more to say than what we've already said in our
3  motions, and there's absolutely no connection between our bank
4  and this -- and these transactions that are being discussed
5  with the United States.  And I think that's going to be
6  undisputed.  But we'd like to -- they haven't given us their
7  theory of personal jurisdiction yet, yet it's invisible in the
8  pleadings because there really isn't any prima facie case made
9  other than the fact that there's only one claim made against us
10 and that's on the 250 million, and it doesn't dispute that that
11 transaction occurred in Luxembourg, and we had no -- we had
12 no --
13        THE COURT: Okay.  Well, it sounds like if the
14 defendants were successful, Clearstream were successful, this
15 is going to go away.  Am I right, Mr. Panopoulos?
16        MR. PANOPOULOS: Yes.
17        THE COURT: UBAE then goes away.
18        MR. PANOPOULOS: Yes.
19        THE COURT: So I guess the question is whether this
20 issue should be briefed now.  Should that be briefed now?  I
21 don't know.  It's just going to delay what we really want to
22 do, which is clear out whether this case is staying or not.
23        MR. COLELLA: But if Clearstream doesn't prevail, then
24 we're going to sort of be back in on the same issues and so we
25 would -- again, we think our issues are very straightforward,

---

1av1petc                                                        Page 50

1  very simple.
2        THE COURT: I know, but if this case goes on, then you
3  are one of 50 other things that are going to start happening.
4  The question is, why should we brief your thing up front?
5        MR. COLELLA: Because this case is hanging out there
6  against the bank and --
7        THE COURT: I know.  Just as plaintiffs are suffering
8  not having discovery, you may have to suffer putting off your
9  motion to dismiss until we have this question answered.  That's
10 my point.
11       MR. COLELLA: Will it be stayed against us too,
12 pending the resolution of the Clearstream issue?
13       THE COURT: Yes.
14       MR. COLELLA: Okay.  If that's how your Honor wants to
15 proceed, we're not going to have an objection to that.
16       THE COURT: Okay.  So --
17       MR. FLEISCHMAN: Your Honor -- oh.
18       THE COURT: Go ahead.
19       MR. FLEISCHMAN: But I'm not going to interrupt you,
20 your Honor.  Go ahead.
21       THE COURT: Well, no.  Go ahead.  Just identify
22 yourself.
23       MR. FLEISCHMAN: Yes.  Keith Fleischman for the Valore
24 judgment creditors, plaintiffs.  We have a couple of hats.  Do
25 I understand the court that for the amended complaint -- and

---

1av1petc                                                        Page 51

1  this may solve any jurisdictional problem -- that all of the
2  judgment creditors can join that amended complaint with the
3  Peterson plaintiffs?
4        THE COURT: Mr. Vogel?
5        MR. VOGEL: Your Honor, I only just heard that
6  suggestion a moment ago, and certainly something that could be
7  done.  I mean, there are issues about -- potential issues about
8  which of the plaintiffs have what kind of rights with respect
9  to this asset based upon what kind of enforcement proceedings
10 they have historically undertaken, but I suppose we could
11 somehow deal with that in a single pleading.  It may get rather
12 lengthy, but it could be done.
13       THE COURT: Anyone else have any views on that?  If
14 there's no objection, I'll simply allow it.
15       MR. LINDSEY: No objection by Bank Markazi, your
16 Honor.
17       MR. PANOPOULOS: No objection by Clearstream.
18       MR. COLELLA: No objection by UBAE.
19       THE COURT: Okay.
20       MR. KREMEN: Richard Kremen again on behalf of the
21 Heiser judgment creditors.  I'm not sure I understand exactly,
22 you know -- we all have individual interests and, for example,
23 you had mentioned earlier -- somebody mentioned it ought to be
24 consolidated briefs.  You know, we all have our own -- our own
25 interests, we all have our own priorities.  There certainly are

---

1av1petc                                                        Page 52

1  similar issues that can in fact be consolidated for the ease of
2  the court, but I'm concerned about how you go about filing an
3  amended pleading when we're not under any kind of a cooperation
4  agreement or any kind of agreement amongst ourselves.
5        THE COURT: I wasn't going to require it.  I thought
6  someone was asking for permission.  Were you planning to file a
7  complaint, a turnover complaint?
8        MR. KREMEN: No, your Honor.  We were going to leave
9  it as it stands right now.  We can file a turnover, but I think
10 it would be individual, not as an amended pleading.
11       THE COURT: Well, and I didn't mean to say that this
12 was going to be required.
13       So I guess going back to you, Mr. -- I'm sorry.
14       MR. FLEISCHMAN: Your Honor, Keith Fleischman.
15       THE COURT: -- Mr. Fleischman, did you wish to file --
16 it sounds like not every third-party defendant, whatever I can
17 call you, is interested in filing a turnover at this point.
18       MR. FLEISCHMAN: Your Honor, we may, but I'd like to
19 explore it with counsel for the Peterson plaintiffs.
20       THE COURT: Okay.  Well, why don't we just leave it
21 that way.  If you folks reach an agreement, fine; if not,
22 that's fine too.
23       MR. FLEISCHMAN: Thank you, your Honor.
24       MS. SCHNEIER: Your Honor, may I just raise one thing
25 about that, one little thing?

---

---

1av1petc                                              Page 53

1    THE COURT: Yes.
2    MS. SCHNEIER: One of the situations we had and I
3  think one of the things that Judge Jones tried to do here
4  is not have all of these duplicative actions pending.  The Heisers
5  had filed another action in another case and you've had them,
6  you know, sort of consolidated -- I'm speaking sort of loosely
7  here -- and that was one of the reasons for the interpleader
8  proceeding so everything would be brought in one, you know,
9  proceeding, and notwithstanding, you know, Mr. Vogel's
10  complaint exactly about how it was done, we are all together
11  and every -- and I just don't want to have what we've had
12  before, which is a lot of different proceedings and a lot of
13  different complaints.  That was part of the purpose of the
14  interpleader here.
15    THE COURT: Well, I guess I don't really understand
16  the need for a turnover complaint given the interpleader.  I
17  mean, certainly the original plaintiffs --
18    MS. SCHNEIER: If they can all come together, I don't
19  have a problem.  I just don't want to have --
20    THE COURT: But it's hard to force a party to join a
21  complaint.  I mean, I have no problem consolidating the
22  briefing so that you can do one brief to respond to all the
23  complaints, which presumably will have similar allegations with
24  similar principles that you would use to address them, but I
25  don't know whether I can stop them from filing a complaint.

---

1av1petc                                              Page 54

1    MS. SCHNEIER: Well, I think that was, you know -- we
2  dealt with this with DLA Piper before, that to try to stay
3  these other actions, and since all of these issues are
4  already -- as to these assets are already before this court --
5    THE COURT: And I have no problem staying it.  I agree
6  with you on that.
7    MS. SCHNEIER: Okay.
8    THE COURT: If that's all you care about.  Talking
9  very technically about the requests to file a complaint.
10    MS. SCHNEIER: In this case, the filing in this case.
11    THE COURT: In this case.  Not that it's going to stop
12  people from filing complaints in other cases, but I think it
13  should be filed in this case, obviously, and you could then
14  deal with the stays, if necessary.  Whatever stay is going to
15  exist as to the Peterson's complaint certainly should exist as
16  to any other complaint.
17    MS. SCHNEIER: I just think simple and keeping it
18  together will be better.  I think that's what we're been
19  working towards.  I'm not sure what Mr. Kremen has in mind,
20  but --
21    THE COURT: Well, you didn't want to file it, so
22  you're fine.
23    MR. KREMEN: Your Honor, I'm not sure what the comment
24  is.  We're here today before this court in this case and, you
25  know, all I was saying was that I'll think about whether I'm

---

1av1petc                                              Page 55

1  going to file an amended complaint or whatever I'm going to do.
2  All I was trying to say was, at this point in time there is no
3  agreement that exists amongst the various plaintiffs and I
4  didn't want to suggest to the court that we were agreeing that
5  there would in fact be one, quote-unquote, amended pleading
6  that would in fact incorporate all the parties.
7    THE COURT: That's fine.  And for all we know, there
8  may be the amended complaint only involving the Peterson
9  people.  I don't know that anyone even needs to file amended
10  complaints given the interpleader action, but I don't think I
11  have to decide anything on that right now.
12    Let me try to go back to the schedule.  So we made it
13  as far as amended complaint to be filed by November 30th by
14  the Peterson people.  We're going to have the same stay as
15  previously.  I guess my proposal is to stay as to UBAE also the
16  time to respond because they're not going to have this
17  threshold jurisdiction issue right now that I'm trying to deal
18  with as quickly as possible.  So that leaves Markazi?
19    MR. LINDSEY: And as far as refiling motion to
20  dismiss, we would ask, with the holidays, into January if we
21  could, your Honor, maybe mid January.
22    THE COURT: I don't have a calendar.
23    MR. LINDSEY: I don't have one.  It's in my phone
24  downstairs.
25    (Discussion held off the record)

---

1av1petc                                              Page 56

1    THE COURT: 17th?
2    MR. LINDSEY: That's fine, your Honor.  Thank you.
3    THE COURT: All right.  And then I'll give you
4  February 17th for response?  And then how much do you want
5  for reply brief?  Three weeks?
6    MR. LINDSEY: Three weeks would be fine, your Honor.
7    THE COURT: March 11.  Okay.  So that's set.
8    Now I need a schedule from you on your consolidated
9  thing that doesn't require any prior brief.
10    MR. PANOPOULOS: Friday, December 17th?  I think
11  that's the Friday.
12    THE COURT: Okay.  Response was January 17th?  And
13  then reply February 10th.
14    MR. VOGEL: Your Honor, the period between December 17
15  and January 17th has a number of holidays --
16    THE COURT: Okay.  No problem.
17    MR. VOGEL: -- if we can push that out a bit.
18    THE COURT: December 17th is a Saturday.
19    MS. ERB: Oh, 16th.
20    THE COURT: December 16th is a Friday.
21    MR. PANOPOULOS: Okay.
22    THE COURT: So January 31st, is that enough time?
23    MR. VOGEL: I think so, your Honor.
24    THE COURT: Okay.  And reply, February 21.  And I
25  don't view the response to the motion to dismiss as including a

---

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL

October 31, 2011

---

1av1petc                                                          Page 57

1  motion to compel discovery or however it was framed in the
2  order.  The response to the motion to dismiss will be an
3  explanation of what discovery you didn't get and why, you know,
4  what it could show theoretically and why that's relevant and
5  means that the motion to vacate can't be granted.  Everything I
6  just said was about the motion to vacate.
7      So Mr. Vogel, do you understand now?
8      MR. VOGEL: Yes, your Honor.
9      THE COURT: Are we perhaps done or is there more?
10     MR. PANOPOULOS: One other matter, your Honor.
11     THE COURT: Don't worry.  I'll give you all a chance.
12     MR. PANOPOULOS: Well, I'll let --
13     MR. KREMEN: Your Honor, I just wanted to understand
14 the court's statement.  Again, they're going to be filing their
15 motion to vacate.
16     THE COURT: Right.
17     MR. KREMEN: Is the court saying to us that we only
18 have one consolidated response or can the individual judgment
19 creditors file their own pleadings if they want to rather than
20 just simply relying upon Mr. Vogel?
21     THE COURT: Oh, certainly file your own pleadings.
22 You should all do it on the same date, but I can't imagine
23 why --
24     MR. PANOPOULOS: Richard, are you saying pleading or
25 briefing?

---

1av1petc                                                          Page 58

1      THE COURT: No, not pleading.  You mean response to
2  the motion to vacate.
3      MR. KREMEN: Yes.  It was getting back to the comment
4  you made earlier about a consolidated response.
5      THE COURT: I heard that as a single plaintiff
6  generally responding and maybe they meant it as one response.
7  Did you mean one response?
8      MR. PANOPOULOS: It would be good if it was one
9  response, but you can't force them.
10     THE COURT: It would certainly help me if there was
11 one response.  It would be great if Mr. Vogel circulated his
12 brief in advance and then you could just write a letter saying
13 "I join in full" or not in full the arguments or "I join only
14 these arguments" or whatever it is.
15     MR. KREMEN: Your Honor, we're not going to try to
16 duplicate anything.  All I want to do is keep the option open.
17 We have individual arguments.  We want to keep the right to
18 file our individual arguments.
19     THE COURT: Yes.
20     MR. PANOPOULOS: The matter I wanted to raise, so I
21 understand that Clearstream's response to the amended complaint
22 continues to be stayed, and what about our response to the
23 other turnover motions?  For example, Mr. Kremen has filed a
24 turnover complaint against Clearstream in another action.  That
25 turnover complaint in that action was one of the reasons why

---

1av1petc                                                          Page 59

1  they were interpled.  I don't know --
2      THE COURT: Where is the action pending?
3      MR. PANOPOULOS: It's pending before Judge Batts, and
4  Judge Dolinger is the magistrate on the case and, you know,
5  I've reached out to Mr. Kremen to, you know, come to terms
6  about whether, you know, that turnover complaint could be
7  consolidated with this one or withdrawn and, you know, we can't
8  reach terms but, you know, I -- it doesn't work if we're going
9  to have to respond to other turnover complaints that would
10 require us to respond in the same way as we would here to the
11 same legal and fact issues.  The restraints and the writ of
12 execution in that turnover complaint concern the same assets as
13 here, the restrained assets in the omnibus account.
14     MR. KREMEN: Your Honor, the action has been filed.
15 They've not even responded to the action.  At this point --
16     THE COURT: You filed as a turnover.
17     MR. KREMEN: As a turnover, and they've never even
18 answered it.  It's just simply sitting there, and my
19 understanding is that they've requested another extension of
20 time, so they're not really duplicating.
21     THE COURT: Do you have any, objection assuming Judge
22 Batts is on board, consolidating that with this case?
23     MR. KREMEN: I think the action can simply be stayed
24 at this time and we can proceed in this forum.
25     MR. PANOPOULOS: Sure.  If you're willing to stay the

---

1av1petc                                                          Page 60

1  action until the decisions are done in this case, that's okay
2  with us for now.
3      THE COURT: Okay.  Why don't you do a stipulation.  If
4  for some reason Judge Batts has a problem with that, having a
5  case sitting on her docket indefinitely, we can talk about
6  whether something else should happen.
7      MR. PANOPOULOS: Should we address the stipulation to
8  Judge Dolinger, your Honor, or Judge Batts?
9      THE COURT: Send it to me, and depending upon what the
10 referral is --
11     MR. PANOPOULOS: Right, okay.  We'll get it.
12     MS. SCHNEIER: That would apply to us as well.
13     THE COURT: Yes.  Same thing for Citibank.
14     Okay.  I'm hoping that someone will present this to me
15 in an order and form that I can use.  But maybe Mr. Panopoulos
16 can just circulate a proposed order and then take any comments
17 and send it to me, and if people have objections, they can send
18 a letter as well.  Is that all right?
19     MR. PANOPOULOS: That's fine, your Honor.
20     THE COURT: Before you do that, I'll hear from anyone
21 who wants to be heard.  So does anyone else wish to be heard on
22 anything?
23     MR. FLEISCHMAN: Your Honor, just procedurally, so
24 you're not going to issue a minute order on this, you're going
25 to wait for --

---

1      THE COURT: Yes. I think I'd like to have something
2  so that the world knows what's going on.
3      MR. FLEISCHMAN: Thank you, your Honor.
4      THE COURT: All right. And --
5      MR. PANOPOULOS: Yes. The cross-claims and the
6  counterclaims that were asserted -- well, the cross-claims have
7  been asserted against Clearstream by some of the plaintiff
8  groups that have been interpled and counterclaims against
9  Citibank, Judge Jones stayed those responses as well, and we
10  would just ask that they also be stayed. I'll put it in the
11  order.
12      THE COURT: Yes. Those will be stayed.
13      MR. LINDSEY: Your Honor, the same as to Bank Markazi.
14      THE COURT: Okay. Yes.
15      MS. SCHNEIER: Citibank too.
16      THE COURT: Yes.
17      MR. KREMEN: Your Honor, I heard a comment about also
18  in reference to Citibank. I assume we're only talking about
19  the Clearstream matters.
20      MS. SCHNEIER: Yes.
21      THE COURT: Anything else from anybody? Yes.
22      MR. VOGEL: Your Honor, I just want to have some
23  clarity on the names of UBAE and Markazi. Are those now being
24  decided still? We're in the process of redacting the
25  historical pleadings in this matter. It's taking an inordinate

1  amount of time --
2      THE COURT: Basically it's just their two names,
3  probably.
4      MR. VOGEL: Their two names and all the other stuff.
5  The other stuff, there's no question it should be taken out.
6  But the question is, do we or do we not continue to keep their
7  names out of the pleadings?
8      THE COURT: I'm hoping that the United States of
9  America will solve this problem for us. Mr. Jones, are you
10  still here?
11      MR. JONES: I am, your Honor.
12      THE COURT: When do you think we might get your
13  letter?
14      MR. JONES: I can write it fast. I just need someone
15  to tell me what to do.
16      I'll speak to them later today. It would be very
17  helpful to know, as I discuss this with them, if anyone
18  believes there's any other basis for the banks' names not to be
19  public, because --
20      THE COURT: Other than Judge Lambert's order, you
21  mean, or whatever it is that started this?
22      MR. JONES: Yeah, your Honor, you know what, I don't
23  even know --
24      THE COURT: Maybe you can answer this question, which
25  is whether they have any objection to it. I think that might

1  help.
2      MR. JONES: I'll put that to OFAC. I guess I would
3  just invite anyone who believes that OFAC could perceive a
4  problem to tell me. That would be helpful.
5      THE COURT: All right. Anyone who wants to address
6  the OFAC on this matter should write to Mr. Jones by Wednesday,
7  5 p.m., okay?
8      MR. FLEISCHMAN: Your Honor, Keith Fleischman. Just
9  as a practical matter, this is open court. This is a public
10  forum. It's done already, and I just -- I find it a little
11  strange, but I understand -- it's almost a procedure that's
12  moot because this is open court. There could be -- anyone
13  could be sitting in here, and these names have been repeatedly
14  stated.
15      THE COURT: I think I said that at the beginning.
16      MR. FLEISCHMAN: I know. I just don't understand. I
17  guess, your Honor, you have the power right now to say that at
18  this point any confidentiality has been waived.
19      THE COURT: I believe I do have the power. I'd still
20  like to hear from the government though. I gather that we have
21  not heard objections from Banca UBAE or Bank Markazi.
22      I'll take silence as no objection.
23      Yes.
24      MR. PANOPOULOS: Just on that point, your Honor, I
25  just want to clarify that the protective order has been

1  supplemented by other orders of the court, by Judge Koeltl and
2  then Judge Jones, with respect to banking secrecy information
3  from Clearstream. And that information is, you know -- doesn't
4  fall under the rubric of the protective order or the
5  information that OFAC gave to the plaintiffs. So even though,
6  you know, Bank Markazi's name and UBAE's name may be unredacted
7  from the pleadings or in the open, that doesn't mean that any
8  of the other banking secrecy information that's been, you know,
9  produced here can be made public at all.
10      THE COURT: That's correct. I'm just talking about
11  these two names for purposes of filing.
12      MR. COLELLA: And your Honor, just on behalf of UBAE,
13  we still have a pending motion in front of Judge Jones, and
14  we're not waiving our rights to points made there, which
15  involve the Italian proceedings and all of that information
16  remaining under the protective order. As I understand the
17  court, you're just talking about the names in the pleading.
18      THE COURT: And the motion papers and any filings.
19      MR. COLELLA: Right.
20      THE COURT: Any other issues from anybody?
21      Okay. Thank you.
22              o0o
23
24
25

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL
October 31, 2011

**$**

**$250 (1)**
7:9
**$50 (1)**
21:24

**1**

**10 (1)**
21:18
**10th (1)**
56:13
**11 (1)**
56:7
**11th (1)**
7:16
**12 (2)**
40:11,14
**12b6 (1)**
37:24
**12g2 (1)**
40:16
**1610 (1)**
14:17
**1610f1A (2)**
14:13;15:1
**1611 (1)**
40:3
**16th (2)**
56:19,20
**17 (1)**
56:14
**17th (6)**
56:1,4,10,12,15,18
**18 (2)**
25:5;32:3
**1983 (1)**
11:25

**2**

**20 (3)**
21:14,15,19
**200 (1)**
21:21
**2008 (7)**
7:9,16;9:19;20:4;28:7,
18;34:7
**2009 (1)**
19:3
**2010 (3)**
9:19;15:23;19:18
**21 (1)**
56:24
**23rd (1)**
19:3
**25 (1)**
32:13
**250 (3)**
28:17,17;49:10
**27 (1)**

34:7
**27th (3)**
12:16;20:4;48:22

**3**

**30 (2)**
42:2;48:6
**30th (3)**
48:6;25;55:13
**31st (1)**
56:22

**4**

**4 (1)**
34:4

**5**

**5 (1)**
63:7
**50 (4)**
21:18,20,23;50:3

**7**

**7 (1)**
34:3

**A**

**able (1)**
37:8
**absolutely (3)**
13:20;35:20;49:3
**accept (3)**
25:25;37:15,25
**access (8)**
30:7,10;31:15,17;
34:22,23;40:9,10
**accident (1)**
48:14
**according (1)**
25:1
**account (18)**
6:3;10:7;17:25;19:5,
24;20:2;22:22,24,24;
23:2,5;26:17;27:3,14;
34:9,11;37:10;59:13
**accounts (9)**
19:13;20:6,7,13,13,14;
22:18;36:13,14
**accumulate (1)**
21:3
**Acosta (1)**
48:20
**Acosta/Greenbaum (1)**
48:24
**acquired (1)**
20:1
**Act (3)**
14:12,18;36:11

**action (22)**
9:24;11:7;13:2;14:14;
28:16;44:13,19;45:2,4,
10,16;46:3;47:25;53:5;
55:10;58:24,25;59:2,14,
15,23;60:1
**actions (7)**
11:12,14;12:13;33:11;
47:5;53:4;54:3
**activities (8)**
20:21,25;21:1,2;22:8,
11;29:15;34:16
**activity (3)**
21:4,6,10
**acts (1)**
14:21
**Actually (10)**
4:19,24;7:21;9:13;
13:1,9;22:12,19;25:24;
47:22
**addition (1)**
34:15
**additional (2)**
29:6;38:22
**address (13)**
16:12,13;23:8;24:1;
25:3;29:22;33:24;39:21;
40:8;47:21;53:24;60:7;
63:5
**addressed (5)**
15:8,14,17;16:4;29:17
**addressing (1)**
3:15
**adequately (1)**
40:3
**admissible (1)**
34:7
**advance (2)**
37:19;58:12
**advice (1)**
27:6
**advising (1)**
12:18
**affidavits (2)**
33:17;39:18
**again (8)**
17:10,14;29:11,15;
43:5;49:25;51:20;57:14
**against (28)**
11:12,13,13,19,20;
12:22;14:8;28:13,16;
36:8;42:14,14,16;43:21;
44:14,14;45:6,6,8;46:25;
48:18,20;49:9;50:6,11;
58:24;61:7,8
**ago (2)**
40:1;51:6
**agree (4)**
23:12;32:12;47:18;
54:5
**agreed (1)**
19:3
**agreeing (1)**

55:4
**agreement (11)**
8:3;17:25;22:24,24;
23:2,5;27:14;52:4,4,21;
55:3
**ahead (6)**
16:24;36:2;42:4;
50:18,20,21
**aligned (1)**
9:25
**aligning (1)**
44:3
**allegations (2)**
22:9;53:23
**allege (1)**
37:16
**alleged (4)**
36:16;38:2;39:24;
42:15
**alleging (1)**
40:13
**allow (2)**
3:12;51:14
**allowed (1)**
40:12
**allows (1)**
37:6
**almost (1)**
63:11
**along (4)**
9:8;29:8;35:23;41:18
**alterego (4)**
39:13,13,24,25
**alternative (3)**
18:10;24:25,25
**although (1)**
40:2
**amend (4)**
38:19;39:20;40:24;
45:1
**amended (33)**
9:22;14:14;28:16;
40:17,19;41:4,6,15,16,
18;42:1,5,6,6,6,9,16,23;
43:2,6,7;48:5,9,25;
50:25;51:2;52:3,10;
55:1,5,8,9,13;58:21
**America (1)**
62:9
**among (1)**
25:6
**amongst (2)**
52:4;55:3
**amount (1)**
62:1
**analysis (10)**
14:24;15:1;19:8,9,10;
24:17;25:12;26:7,24;
27:20
**anonymous (1)**
7:16
**answered (2)**
50:9;59:18

**apparently (1)**
30:6
**appeal (3)**
46:2,7;47:4
**appear (1)**
10:18
**appearance (6)**
3:11;4:19,25;5:8;6:17;
8:9
**Appearances (1)**
3:3
**appeared (1)**
20:4
**appearing (1)**
4:25
**apple (1)**
40:13
**application (2)**
38:18,18
**applies (1)**
29:14
**apply (6)**
13:19;35:2;36:13;
38:4;41:9;60:12
**appropriate (1)**
5:22
**April (1)**
19:18
**area (1)**
29:24
**Argentina (3)**
27:2,3,5
**Argentine (2)**
27:4;35:7
**argue (3)**
14:25;18:3,4
**arguing (1)**
19:1
**argument (36)**
10:3,5,21,22,25;11:4;
13:15;14:6;15:8,15;
16:4;17:6,7,8,14,15;
18:6,10,11,11;19:7,11,
11;21:8,12;22:13,16;
23:4;24:1;25:9;26:5;
29:16;31:6;35:14;38:9;
46:14
**arguments (8)**
10:20;13:19;14:6;
15:17;17:20;23:22;24:4,
25,25;30:25;31:8;32:9,
18;33:19;58:13,14,17,18
**around (1)**
12:12
**Article (1)**
17:4
**articulate (1)**
15:16
**aside (1)**
40:7
**aspects (1)**
33:25
**assert (2)**

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL

45:8;46:23
**asserted (5)**
14:14;28:15;46:24;
61:6,7
**asset (4)**
14:19,19;27:1;51:9
**assets (23)**
4:5,11;11:1;12:24;
13:7,8,9;19:23;20:21;
22:8,16;24:11,22;28:5,
11,20;29:11,15;45:10,
12;54:4;59:12,13
**assist (2)**
4:4,5
**Assistant (2)**
5:1,4
**assortment (1)**
12:21
**assume (14)**
10:24;13:22;15:6;
18:6,24;21:9;22:9;
23:12;27:12;31:11,21;
33:15;37:11;61:18
**assumed (2)**
19:11;36:15
**assuming (5)**
13:22;19:14;27:21;
36:15;59:21
**attached (3)**
20:11;30:8;31:15
**attachments (1)**
33:17
**Attorney (2)**
5:1;7:4
**Attorney's (2)**
4:18,24
**authentic (1)**
34:7
**authenticity (1)**
27:13
**authority (1)**
46:13
**authorization (2)**
5:6,7
**available (2)**
28:23;35:1
**aware (4)**
8:18;13:3;36:4,11
**away (5)**
10:10,24;42:21;49:15,
17
**awfully (1)**
6:18

**B**

**back (10)**
4:18;7:9;12:15;19:13;
28:18;36:16;49:24;
52:13;55:12;58:3
**backup (2)**
5:6,7
**bad (1)**

38:14
**bag (2)**
6:8;8:14
**Balk (2)**
18:6,12
**Banca (5)**
7:5;9:21;42:8;48:15;
63:21
**bank (33)**
3:7,8,16;7:11;9:21,22;
17:15;18:24;19:13,14,
18;20:13,24;21:3,10,19,
22;27:6,6;36:4,9,18;
38:23,24;39:8,9;42:8;
49:3;50:6;51:15;61:13;
63:21;64:6
**banking (2)**
64:2,8
**banks (17)**
3:11;5:18,25;7:15;
8:25;9:3;11:5;21:1;
25:20;39:8;43:23;44:15,
24;45:6,11;46:4;48:12
**bank's (1)**
3:13
**banks' (1)**
62:18
**barracks (2)**
11:21,25
**based (2)**
39:17;51:9
**basically (8)**
11:17;12:17;14:18;
18:17;19:1;21:15;33:2;
62:2
**basis (5)**
14:2,4;39:22;47:9;
62:18
**Batts (4)**
59:3,22;60:4,8
**became (3)**
7:8;28:3,14
**becomes (2)**
23:21;29:1
**begin (1)**
3:4
**beginning (2)**
24:23;63:15
**behalf (6)**
3:11;16:2;28:21;30:3;
51:20;64:12
**Beirut (1)**
11:25
**believes (2)**
62:18;63:3
**belonging (1)**
12:7
**beneficial (13)**
18:20,21,22,25;19:14,
15,16,20,21;22:7;27:25;
28:2,5
**benefit (7)**
4:1,2,11;25:12,20;

28:21;29:19
**best (2)**
26:13,16
**better (3)**
11:16;37:3;54:18
**beyond (3)**
9:3;30:1;31:15
**big (3)**
16:11;32:6;37:5
**bill (3)**
14:13;15:3,15
**billion-dollar (1)**
21:16
**binder (2)**
34:6;35:6
**bit (2)**
15:13;56:17
**bite (1)**
40:12
**blessing (1)**
4:25
**blessings (1)**
5:22
**blocked (2)**
13:8;14:19
**board (1)**
59:22
**bombing (1)**
11:25
**bombings (1)**
12:2
**bond (5)**
20:25;21:1,16,24;22:1
**bonds (11)**
7:10;21:4,5,17,19,21;
22:3,4,4;25:22,23
**bone (1)**
48:15
**book (1)**
22:2
**both (2)**
42:12;48:12
**bottom (1)**
34:4
**branch (1)**
27:3
**brief (16)**
27:10;31:3,4;35:11;
38:17,19,22;39:1,10,16;
43:11;50:4;53:22;56:5,
9;58:12
**briefed (3)**
36:18;49:20,20
**briefing (9)**
10:4;15:24;16:4;19:9;
23:24;32:1,23;53:22;
57:25
**briefingwise (1)**
33:16
**briefly (1)**
8:16
**briefs (12)**
16:1;17:21;25:5;26:8;

32:3,4,6;40:9;41:22;
43:1,3;51:24
**bring (4)**
11:17;12:17;46:9,22
**broad (4)**
14:23;15:1,3;38:21
**brought (4)**
13:1,11;33:4;53:8
**bunch (1)**
47:12
**business (1)**
34:8

**C**

**calendar (1)**
55:22
**call (3)**
17:14;21:25;52:17
**called (2)**
3:2;13:8
**calling (1)**
44:4
**came (5)**
3:18;12:5;26:18;27:5,
15
**can (56)**
4:19;6:4;8:7;10:18;
11:10;12:13;13:4;14:19;
17:2,8,9;18:5;21:7;22:6;
23:8,25;24:4,19,20;25:8;
26:15;27:10;31:21;32:7,
13;33:17,17;34:3;35:16,
25;39:16;41:1;42:2;
45:8,24,25;46:10;48:25;
51:2;52:1,9,16;53:18,22,
25;56:17;57:18;59:23,
24;60:5,15,16,17;62:14,
24;64:9
**capacity (1)**
5:2
**care (3)**
33:18;47:22;54:8
**Case (39)**
3:2;5:11;8:7;9:10,14;
11:21;12:25;13:4;14:8;
15:19;17:21;24:20;
26:25;27:2,3,19;29:5,19;
30:11;35:7;36:6;37:17,
24;39:23;46:10;49:8,22;
50:2,5;53:5;54:10,10,11,
13,24;59:4,22;60:1,5
**caselaw (3)**
25:2;26:23;29:13
**cases (3)**
14:22;26:7;54:12
**cat (1)**
8:14
**cat's (1)**
6:7
**cause (2)**
14:14;28:16
**central (2)**

39:8,9
**certainly (11)**
23:17;24:2;29:20;
39:2;40:15;51:6,25;
53:17;54:15;57:21;
58:10
**chain (1)**
13:19
**challenge (3)**
10:14,18;18:8
**challenged (1)**
37:11
**challenges (1)**
36:4
**chance (1)**
57:11
**change (1)**
19:10
**changed (2)**
19:8;40:1
**changing (1)**
3:24
**chase (1)**
28:8
**check (1)**
26:1
**chose (1)**
45:22
**Circuit (7)**
38:19;39:7,14,23,24;
40:1,7
**circulate (1)**
60:16
**circulated (1)**
58:11
**cite (1)**
19:25
**cited (1)**
26:8
**Citi (1)**
46:25
**Citibank (37)**
9:21,24;11:8,9,10,13,
22,23;12:2,16,17;13:18,
23;14:7,8;15:4;19:2;
25:19,19;26:19;27:2,4;
28:19,19,22;34:12;43:8,
20;44:17,18;45:19,21;
48:11;60:13;61:9,15,18
**Citibank's (2)**
27:3;43:3
**Civil (4)**
4:23;45:24;47:10,16
**claim (12)**
14:8;21:7;22:11;
24:13,20;37:15;39:25;
42:13;47:7,9,11;49:9
**claimed (2)**
7:10;12:18
**claiming (2)**
12:23;23:22
**claims (4)**
45:8;46:24;47:12,21

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL

October 31, 2011

**clarified (2)**
30:24;31:7
**clarify (1)**
63:25
**clarity (1)**
61:23
**clear (8)**
22:15;25:2;27:18;
28:19;31:1;40:4;44:23;
49:22
**clearly (3)**
22:25;26:23;29:13
**Clearstream (57)**
7:8,13;9:20;10:6,8,15,
21;11:13;12:18;13:15,
18;14:3,7;16:1,2;18:5,7,
14;19:1,5;20:3;21:2,11;
24:11,16,20,22;25:1,17;
26:19;28:4,17;29:2,11;
32:8,8;34:5,6,12;35:6;
36:8;38:16;41:5,18;
42:14;43:8;45:13;46:25;
48:11;49:14,23;50:12;
51:17;58:24;61:7,19;
64:3
**Clearstream's (7)**
10:23;18:23,23;24:9;
28:1,1;58:21
**client (3)**
3:18;39:8,13
**client's (1)**
3:17
**clock (1)**
40:25
**closely (1)**
6:18
**cloth (1)**
26:23
**coextensive (1)**
17:3
**COLELLA (11)**
8:16,18,22;48:13;
49:23;50:5,11,14;51:18;
64:12,19
**Columbia (1)**
3:9
**combined (1)**
32:7
**coming (1)**
42:12
**commence (1)**
44:10
**commenced (2)**
45:4,19
**comment (3)**
54:23;58:3;61:17
**comments (1)**
60:16
**common (4)**
17:19;24:18;25:4,6
**communications (1)**
26:20
**compel (1)**

57:1
**complaint (52)**
9:19,22;14:15;28:16;
37:14;39:12,16,20,22;
40:18,19,24;41:4,6,15,
16,18;42:1,5,6,6,10,16,
23;43:2,6,7,22;47:11;
48:5,9,10,25;50:25;51:2;
52:7,7;53:10,16,21,25;
54:9,15,16;55:1,8,13;
58:21,24,25;59:6,12
**complaints (5)**
53:13,23;54:12;55:10;
59:9
**complete (1)**
24:6
**completely (2)**
12:10;42:7
**complicated (1)**
5:20
**complying (1)**
13:23
**concede (1)**
18:7;23:24;37:7
**concern (5)**
6:18;38:20;40:11,18;
59:12
**concerned (3)**
20:15;48:2;52:2
**concerning (1)**
24:11
**concrete (1)**
38:17
**conditions (1)**
17:25
**conference (1)**
37:4
**confidential (7)**
3:13,17,22;4:8,13,15;
9:3
**confidentiality (7)**
3:6,9,24;5:16;7:14;
8:3;63:18
**connection (2)**
43:24;49:3
**consider (3)**
37:3;41:5;47:23
**considered (1)**
19:7
**consolidate (1)**
47:4
**consolidated (11)**
42:25;43:3,11;47:24;
51:24;52:1;53:6;56:8;
57:18;58:4;59:7
**consolidating (2)**
53:21;59:22
**consolidation (1)**
47:18
**consuming (2)**
33:7,8
**contained (1)**
34:6

**contents (1)**
8:23
**context (3)**
35:15,24;37:2
**continue (1)**
62:6
**continued (1)**
28:5
**continues (1)**
58:22
**contrary (1)**
28:7
**control (1)**
7:13
**conveyance (5)**
19:7,9,12;36:17;42:15
**conveyances (1)**
19:13
**cooperation (1)**
52:3
**copies (1)**
32:3
**correspondent (1)**
25:20
**counsel (3)**
28:24;40:6;52:19
**counterclaim (3)**
44:14,22;45:6
**Counterclaims (6)**
44:16;45:20;46:24;
47:25;61:6,8
**couple (2)**
33:24;50:24
**course (4)**
23:15;31:20;40:1;
43:23
**court (222)**
3:1,4;4:1,10,17,22;5:7,
14,18,25;6:3,5,7,23;7:1,
9,20;8:5,14,15,17,21,24;
11:3,19;12:4;13:14,17,
22,25;14:11,16;15:6,11,
20,22;16:3,6,14,16,18,
19,21,24;17:5,8,10,22;6,
15;23:1,4,8,9,10,14;
24:5,9,10,14,15,21,22;
25:25;26:13,22;27:1,10,
21;28:7;29:17,23;30:21;
31:3,5,10,14,19,21,23;
32:14,16,22;33:5,9,10,
14,21;34:1,14,19,24,25;
35:4,8,10,12,22;36:2,4,8,
11,13,21,24;38:23,25;
39:3,5,12,20;40:17,22,
24;41:3,8,13,25;42:3,7,
11,18,22;43:5,8,11,19,21;
44:1,6,8,11,16,19,21;
45:1,14;46:6,9,16,20,22;
47:3,13,14,17,20;48:9;
49:13,17,19;50:2,7,13,
16,18,21,25;51:4,4,13,19;
52:2,5,11,15,20;53:1,15,
20;54:4,5,8,11,21,24;

55:4,7,22;56:1,3,7,12,16,
18,20,22,24;57:9,11,16,
17,21;58:1,5,10,19;59:2,
16,21;60:3,9,13,20;61:1,
4,12,14,16,21;62:2,8,12,
20,24;63:5,9,12,15,19;
64:1,10,17,18,20
**courtroom (7)**
3:10;6:8;8:8,11;9:2,5,
6
**courts (1)**
4:8
**court's (3)**
13:24;36:5;57:14
**covering (1)**
5:5
**create (1)**
25:14
**created (1)**
17:3
**credited (1)**
20:2
**creditor (1)**
12:12
**creditors (21)**
4:4,7;11:11,24;12:1,
10,22;13:1,3,6;14:20;
28:10,24;30:4;46:3;
48:19,19;50:24;51:2,21;
57:19
**creditor's (3)**
14:13;15:3,15
**critical (1)**
25:13
**cross-claim (1)**
45:6
**cross-claimed (1)**
48:20
**cross-claims (6)**
44:14;45:20;46:24;
48:19;61:5,6
**crystallized (2)**
16:3;39:11
**cumbersome (1)**
6:6
**currently (2)**
39:12;40:2
**customer (1)**
20:2
**cut (1)**
13:4

**D**

**damages (1)**
28:16
**date (5)**
30:11;41:25;48:4,24;
57:22
**David (3)**
3:16;4:21,23
**days (2)**
42:2;48:6

55:4,7,22;56:1,3,7,12,16,
18,20,22,24;57:9,11,16,
17,21;58:1,5,10,19;59:2,
16,21;60:3,9,13,20;61:1,
4,12,14,16,21;62:2,8,12,
20,24;63:5,9,12,15,19;
64:1,10,17,18,20

**deal (5)**
36:9;39:12;51:11;
54:14;55:17
**deals (1)**
8:22
**dealt (1)**
54:2
**debate (1)**
23:20
**debtor (1)**
12:7
**debtor's (1)**
10:7
**December (4)**
56:10,14,18,20
**decide (8)**
10:15;16:19;18:9;
26:5;42:20;45:25,25;
55:11
**decided (8)**
8:20;10:22;29:7,7;
37:18;41:7;43:9;61:24
**deciding (2)**
18:10;35:17
**decision (2)**
39:7,17
**decisions (1)**
60:1
**deem (1)**
4:15
**defendant (2)**
44:18;52:16
**defendants (11)**
9:25;25:21;29:18;
38:5;43:21;44:5,6;45:7,
10,11;49:14
**defense (2)**
15:25;43:19
**define (1)**
39:7
**defined (2)**
14:22;22:22
**defines (1)**
25:1
**definition (3)**
14:23,23;15:2
**defraud (1)**
28:10
**delay (1)**
49:21
**dematerialized (1)**
21:25
**Department (3)**
3:19,20,22
**depending (1)**
60:9
**deposit (1)**
22:1
**depository (1)**
22:1
**deprived (1)**
25:16
**details (1)**

19:6
**determine (6)**
  6:20;16:7,8,9;24:15;
  26:4
**determined (1)**
  29:13
**difference (2)**
  26:3;35:17
**different (6)**
  11:14;15:13;21:17;
  46:22;53:12,13
**directed (1)**
  12:16
**directing (1)**
  5:12
**directly (1)**
  42:14
**disadvantage (1)**
  38:1
**disagree (1)**
  15:6
**discharge (1)**
  13:23
**disclosed (2)**
  7:6;24:14
**disclosing (1)**
  8:22
**disclosure (1)**
  7:15
**discovery (46)**
  16:9,10,11;18:16,20;
  19:15,21,22;20:10,19;
  22:17,18;23:21,25;24:9,
  12;25:16;27:9;28:4;
  29:3,6,8,10,17,20,21,24;
  30:6,10;31:12,15,17;
  33:22;34:19,21,25;
  35:14,16;37:16,19,20;
  38:3,9;50:8;57:1,3
**discretion (2)**
  45:19,22
**discuss (3)**
  11:24;16:14;62:17
**discussed (1)**
  49:4
**discussing (2)**
  20:6;41:7
**Discussion (1)**
  55:25
**disingenuous (1)**
  34:10
**dismiss (15)**
  9:23;11:5,6;37:14,22;
  39:19;40:12;41:18;
  42:23;48:12,21;50:9;
  55:20;56:25;57:2
**dismissed (1)**
  37:18
**dispose (1)**
  24:22
**dispositive (2)**
  15:5;36:6
**dispute (6)**

9:11;16:11;32:23;
  38:8,8;49:10
**disputed (2)**
  20:16,16
**disputes (2)**
  37:13,13
**disputing (1)**
  23:1
**dissipates (1)**
  40:18
**District (1)**
  3:9
**Division (1)**
  4:23
**divorced (1)**
  42:7
**DLA (1)**
  54:2
**docket (3)**
  45:16;47:6;60:5
**document (1)**
  12:18
**documenting (1)**
  20:8
**documents (10)**
  12:21;20:6,9,12;
  22:19;30:7;34:6;35:5,9;
  37:10
**Dolinger (2)**
  59:4;60:8
**done (10)**
  9:18;21:13,24;22:2;
  51:7,12;53:10;57:9;
  60:1;63:10
**doubt (1)**
  24:15
**down (2)**
  35:12;48:4
**downstairs (1)**
  55:24
**drafted (1)**
  39:22
**due (1)**
  3:19
**duplicate (1)**
  58:16
**duplicating (1)**
  59:20
**duplication (1)**
  11:15
**duplicative (1)**
  53:4
**duties (1)**
  18:1

**E**

**earlier (3)**
  5:11;51:23;58:4
**ease (1)**
  52:1
**economic (2)**
  25:11,15

**economics (1)**
  6:19
**effect (2)**
  44:23;46:13
**effectively (1)**
  47:5
**either (3)**
  9:4;26:11;34:23
**electronically (2)**
  21:24;22:2
**eliminated (1)**
  39:19
**else (9)**
  6:3;8:7;10:9;23:6;
  38:23;51:13;60:6,21;
  61:21
**e-mails (1)**
  26:21
**emergency (1)**
  5:5
**enforce (1)**
  28:25
**enforcement (1)**
  51:9
**enough (3)**
  24:13;36:24;56:22
**enter (2)**
  3:20;4:8
**entered (3)**
  3:21;5:12;8:9
**entire (2)**
  36:6;46:3
**entirely (1)**
  26:6
**entities (3)**
  7:16,17;8:21
**entitled (3)**
  29:21;34:21;38:9
**entitlement (2)**
  14:25;17:16;18:2;20:1
**entitlements (4)**
  17:4;19:4;21:15;22:5
**enunciated (1)**
  35:8
**Erb (2)**
  42:25;56:19
**essentially (4)**
  10:16;23:23;37:7;
  48:17
**establish (1)**
  20:13
**established (1)**
  20:15
**etc (6)**
  34:10,10;35:9,9;
  45:21,21
**even (17)**
  10:25;14:7;18:6,11,
  14;20:15;21:9;32:3;
  36:6,7,8;45:10;55:9;
  59:15,17;62:23;64:5
**event (1)**
  18:3

**everybody (4)**
  11:17;21:2;44:11,12
**everyone (6)**
  16:17;35:1,2;47:6,21,
  22
**evidence (1)**
  22:25
**exactly (4)**
  31:8;47:1;51:21;53:10
**example (4)**
  26:25;30:18;51:22;
  58:23
**except (1)**
  21:2;22:21
**execution (3)**
  12:21;13:12;59:12
**exist (2)**
  54:15,15
**existing (1)**
  48:10
**exists (1)**
  55:3
**expanding (1)**
  32:5
**expects (1)**
  22:18
**expensive (2)**
  33:6,8
**explanation (3)**
  32:19;37:2;57:3
**explore (2)**
  37:1;52:19
**express (1)**
  46:4
**expressed (1)**
  44:15
**extension (1)**
  59:19

**F**

**facie (1)**
  49:8
**facilitate (1)**
  5:13
**fact (21)**
  5:3;12:24;19:16;
  20:15,19;25:2,12;26:14,
  16;27:2;30:6,9,10,16,24,
  25;49:9;52:1;55:5,6;
  59:11
**fact-intensive (8)**
  18:18;19:22;20:20;
  24:10;26:7;27:7,11,19
**factors (2)**
  26:9;35:7
**facts (16)**
  23:12,17,19;24:13;
  26:5,9,11,12,22,22;
  27:15;29:25;37:7,25;
  38:2;40:2
**factual (8)**
  11:15;20:18;23:5,21;

24:6;37:13,13;38:8
**failed (1)**
  28:19
**failure (1)**
  37:14
**fairly (1)**
  27:18
**faith (1)**
  32:16
**fall (1)**
  64:4
**false (1)**
  24:8
**family (1)**
  5:5
**far (3)**
  20:14;55:13,19
**fast (2)**
  43:5;62:14
**favor (2)**
  10:23;29:7
**February (3)**
  56:4,13,24
**feel (2)**
  36:25;37:18
**few (1)**
  40:1
**figure (1)**
  12:9;38:11
**file (17)**
  40:25;41:25;42:4;
  45:15;48:9,18,24;52:6,9,
  15;54:9,21;55:1,9;57:19,
  21;58:18
**filed (17)**
  11:7,7,9;14:10;30:9,
  14;41:16;43:19;48:19,
  19,21;53:5;54:13;55:13;
  58:23;59:14,16
**files (1)**
  41:4
**filing (11)**
  11:12;12:12;30:17,17;
  52:2,17;53:25;54:10,12;
  57:14;64:11
**filings (4)**
  3:6;5:19;9:18;64:18
**find (5)**
  28:9;36:8;37:16;38:3;
  63:10
**finding (1)**
  4:14
**finds (2)**
  13:17,22
**fine (8)**
  23:19;52:21,22;54:22;
  55:7;56:2,6;60:19
**finish (1)**
  21:13
**finished (1)**
  27:22
**first (14)**
  7:24;9:13;10:2,8;

16:20,25;18:19;19:1;
24:3;31:10,14,23;38:25;
41:25
**fit (1)**
    24:22
**five (2)**
    16:1;17:21
**FLEISCHMAN (14)**
    50:17,19,23,23;52:14,
    14,15,18,23;60:23;61:3;
    63:8,8,16
**floating (1)**
    43:24
**flows (1)**
    22:20
**focused (2)**
    39:17,25
**folks (3)**
    8:2,8;52:21
**follow (2)**
    45:23;47:15
**following (3)**
    4:9;23:16,17
**footnote (2)**
    14:17;39:22
**force (3)**
    40:20;53:20;58:9
**foreign (3)**
    4:5;14:12;36:10
**form (1)**
    60:15
**former (1)**
    7:10
**forms (1)**
    47:9
**forum (3)**
    26:20;59:24;63:10
**forward (1)**
    29:5
**found (9)**
    10:25;16:5;18:5,7,15;
    24:20,20;25:8;27:1
**four (1)**
    16:21
**framed (1)**
    57:1
**Frank (1)**
    10:11
**frankly (5)**
    4:13;32:2;34:10;
    35:13;39:10
**fraudulent (5)**
    19:7,9,12;36:17;42:15
**fray (1)**
    30:6
**freestanding (1)**
    37:19
**Friday (3)**
    56:10,11,20
**front (3)**
    22:10;50:4;64:13
**frustration (2)**
    8:4,5

**FSIA (1)**
    15:17
**full (3)**
    32:18;58:13,13
**funds (4)**
    25:21,22,22;45:8
**further (9)**
    5:3;13:19;15:24;19:9;
    29:6,9,10;34:4;37:1

---

**G**

**garnishee (9)**
    14:3,4,7;15:4;19:5;
    24:19;25:7,8;45:13
**garnishees (1)**
    19:2
**gather (3)**
    3:7;9:18;63:20
**gave (4)**
    25:19,20;42:19;64:5
**General (3)**
    5:1,10;35:25
**generally (1)**
    58:6
**gets (2)**
    6:6;47:6
**given (8)**
    4:7;7:15;25:17;47:21,
    23;49:6;53:16;55:10
**giving (2)**
    9:15;48:4
**goes (10)**
    10:10,23;12:15;16:9,
    10;30:19;31:25;42:21;
    49:17;50:2
**Good (3)**
    10:11;32:15;58:8
**goose (1)**
    28:8
**governed (3)**
    18:2;22:22,25
**government (4)**
    6:16;27:4;39:14;63:20
**government's (1)**
    6:15
**governs (3)**
    17:4,25;18:1
**granted (1)**
    57:5
**great (2)**
    39:11;58:11
**Greenbaum (1)**
    48:20
**grounds (2)**
    26:15;48:21
**groups (1)**
    61:8
**guess (20)**
    3:4;8:8;9:12,25;12:5;
    21:14;23:20;26:9,16;
    27:8;31:10;35:10;40:6;
    47:20;49:19;52:13;

53:15;55:15;63:2,17

---

**H**

**half (1)**
    28:8
**hanging (1)**
    50:5
**happen (2)**
    16:21;60:6
**happened (8)**
    6:11;12:6,14;18:25;
    22:12;26:1,2,10
**happening (2)**
    46:11;50:3
**happens (2)**
    12:13;21:15
**happy (1)**
    5:9
**hard (3)**
    6:12;47:20;53:20
**harmless (1)**
    12:11
**Harris (3)**
    18:6,11,12
**hats (1)**
    50:24
**headache (2)**
    6:5;8:2
**hear (8)**
    4:17;14:1;15:10;
    34:10;38:4,25;60:20;
    63:20
**heard (13)**
    8:16;15:16;23:23;
    29:25;34:17;46:11;
    48:13;51:5;58:5;60:21,
    21;61:17;63:21
**hearing (1)**
    34:7;48:16
**Heiser (4)**
    30:4;31:9;32:25;51:21
**Heisers (1)**
    53:4
**held (3)**
    12:10;14:20;55:25
**help (10)**
    6:13;24:1;28:10,12;
    32:6;33:10,12;39:3;
    58:10;63:1
**helped (2)**
    32:2;39:7
**helpful (3)**
    39:10;62:17;63:4
**helps (2)**
    15:23;33:9
**here's (1)**
    12:8
**hide (1)**
    28:10
**hindered (1)**
    5:3
**historical (1)**

61:25
**historically (1)**
    51:10
**Hold (4)**
    7:1;11:3;34:14;45:11
**holds (1)**
    21:22
**holidays (2)**
    55:20;56:15
**Honor (74)**
    3:16;4:3,21;5:17,21;
    6:6,13,25;7:3,19;8:1,12,
    16;10:11;12:15;14:2;
    15:21;23:3,11;24:2;
    29:4;30:3;31:2,13;35:3;
    36:1;39:6,21;41:2,10,11;
    42:2;43:9,17;45:17,25,
    25;46:8;47:19;48:13;
    50:14,17,20;51:5,16;
    52:8,14,18,23,24;54:23;
    55:21;56:2,6,14,23;57:8,
    10,13;58:15;59:14;60:8,
    19,23;61:3,13,17,22;
    62:11,22;63:8,17,24;
    64:12
**hoping (2)**
    60:14;62:8
**hundred (2)**
    21:18,20

---

**I**

**identified (1)**
    7:16
**identify (1)**
    50:21
**identities (1)**
    7:18
**identity (4)**
    3:18;7:5,14;28:11
**illustrative (1)**
    24:5
**imagine (4)**
    9:4;24:4;26:13;57:22
**Immunities (2)**
    14:12;36:11
**immunity (1)**
    39:8
**important (1)**
    26:8
**include (2)**
    38:22;41:20
**included (1)**
    44:11
**includes (4)**
    14:10,10,13;43:22
**including (4)**
    6:18;17:18;45:20;
    56:25
**incorporate (1)**
    55:6
**incorrectly (1)**
    29:12

**indefinitely (1)**
    60:5
**indicated (1)**
    28:4
**indicates (1)**
    26:23
**indicating (1)**
    42:25
**individual (5)**
    51:22;52:10;57:18;
    58:17,18
**information (14)**
    3:19;4:7,14,14,15;
    6:10;7:7,22;13:5;64:2,3,
    5,8,15
**inordinate (1)**
    61:25
**instructed (1)**
    45:15
**instruction (1)**
    25:18
**instructions (2)**
    25:17,18
**Insurance (1)**
    14:18
**intangible (11)**
    11:1;17:1,15,23,24;
    18:4,13;21:8;24:18,19;
    25:10
**intend (1)**
    8:7
**intensive (2)**
    20:18;26:24
**inter (1)**
    43:25
**interest (16)**
    6:12,15;10:17;12:19,
    24;13:4,6,13,16;14:21;
    15:2;17:3,16;44:15;
    46:4,10
**interested (2)**
    32:12;52:17
**interests (3)**
    17:2;51:22,25
**intermediary (2)**
    10:7;14:24
**internet (1)**
    6:10
**interpleaded (1)**
    12:3
**interpleader (22)**
    9:24,25;11:7,18,19;
    12:13;33:11;43:19,20;
    44:2,4,6,10;45:1,7,15,
    20;46:5;53:7,14,16;
    55:10
**interpled (3)**
    33:4;59:1;61:8
**interpretation (1)**
    15:3
**interrupt (1)**
    50:19
**interrupted (1)**

October 31, 2011

27:22
**intervene (1)**
13:2
**into (6)**
19:6;29:19;30:5;35:6;
38:17;55:20
**investment (1)**
27:6
**investors (1)**
21:17
**invisible (1)**
49:7
**invite (1)**
63:3
**involve (1)**
64:15
**involved (1)**
42:15
**involving (2)**
13:9;55:8
**Iran (10)**
9:21;11:12,20;12:1,
23;13:7,8;39:9,14;43:23
**Iranian (3)**
3:7,13;28:13
**irrelevant (3)**
21:10;37:9;39:15
**irrespective (1)**
42:5
**issue (47)**
3:5;8:19;11:1,16;14:5;
16:20,25;17:12,13,14;
18:1,21;19:24;20:7,8,8,
18,18,20;21:6,14;22:6,
18,20,21,23;24:10,24;
25:5;27:25;29:1,9,18;
30:12,15,16;32:1;40:3;
41:6;45:10;46:2,12;
48:3;49:20;50:12;55:17;
60:24
**issued (6)**
19:2,18;21:21;22:4;
30:13,18
**issuer (3)**
20:25;21:16,25
**issues (49)**
11:15;15:14,19,24,25;
16:3,8,9,10,15,18,20,22;
17:18;18:17,18;21:16,
25;24:6,12;27:7,12;
29:6;30:21,22;32:5;
33:22;35:6,15;36:9,25;
37:21;39:11;42:7,8,8,10,
12,21,21;48:16;49:24,
25;51:7,7;52:1;54:3;
59:11;64:20
**Italian (4)**
3:8,12;8:23;64:15
**Italy (2)**
28:3;34:22

**J**

**January (5)**
55:20,21;56:12,15,22
**join (6)**
11:10;41:11;51:2;
53:20;58:13,13
**Jones (33)**
4:21,21,23,23;5:9,11,
16,21;6:2,4,13,24;7:1;
8:19;13:2,5;15:24;19:2;
41:12;42:19;46:14,16,
21;53:3;61:9;62:9,11,14,
22;63:2,6;64:2,13
**Jones' (2)**
12:16;34:3
**Judge (28)**
3:20;5:11;8:19;12:16;
13:2,5,9;15:24;19:2;
20:4;34:3;41:12;42:19;
46:14,16,21;53:3;59:3,4,
21;60:4,8,8;61:9;62:20;
64:1,2,13
**judgment (27)**
4:4,7;10:7;11:11,20,
21,24;12:1,7,8,10,12,20,
22;13:1,3,6;14:20,20;
30:4;31:9;35:16;46:2;
50:24;51:2,21;57:18
**judgments (2)**
11:12;28:25
**July (1)**
15:23
**June (9)**
7:9,16;12:16;19:3,3;
20:4;28:7,18;34:7
**jurisdiction (12)**
10:14,19;18:9;24:16,
17;25:7;36:5,10;48:17,
18;49:7;55:17
**jurisdictional (6)**
10:3,5,13;32:9;36:25;
51:1
**Justice (1)**
4:4

**K**

**keep (4)**
27:21;58:16,17;62:6
**keeping (1)**
54:17
**Keith (3)**
50:23;52:14;63:8
**kept (1)**
4:7
**kind (7)**
12:5;17:1;43:24;51:8,
9;52:3,4
**kinds (2)**
26:20,21
**knew (4)**
28:4,15;29:9,10
**knocks (1)**
14:5

**knowledge (8)**
18:19,21;22:7,10;
28:1,1,2,2
**known (3)**
3:18;7:8;28:22
**knows (2)**
6:9;61:2
**Koetl (2)**
20:4;64:1
**Kremen (21)**
30:3,3,22;31:4,6,23;
51:20,20;52:8;54:19,23;
57:13,17;58:3,15,23;
59:5,14,17,23;61:17

**L**

**lack (2)**
47:7,8
**Lambert (1)**
3:20
**Lambert's (1)**
62:20
**last (3)**
17:21;35:3;36:1
**later (1)**
62:16
**law (22)**
10:17;17:2,19,23;
18:2;21:9;22:25;24:16,
18;25:4,6,9;27:17,18;
28:22;29:14,14;33:17,
18;35:1;44:23;47:10
**lawyers (1)**
32:16
**learned (2)**
28:15;47:10
**least (5)**
10:6;14:6;26:15;31:9;
36:18
**leave (2)**
13:16;47:13;52:8,20
**leaves (1)**
55:18
**left (1)**
25:4
**legal (18)**
11:15;12:18,19;13:13;
16:20,20,25;17:12,14;
18:16;19:24;20:18;
22:20,23;23:16,22;
24:17;59:11
**legally (4)**
22:12;23:18,19;26:3
**legitimate (1)**
38:20
**lengthy (1)**
51:12
**less (1)**
22:15
**letter (9)**
5:14;9:13;18:18;24:5;
33:6;34:3;58:12;60:18;

62:13
**letters (3)**
29:23;32:2,22
**lift (1)**
20:5
**limitations (1)**
38:13
**limited (2)**
29:4;40:15
**limits (4)**
32:12,14,17;37:9
**Lindsey (17)**
3:16,16;4:3,12;6:25;
7:5,19,21,24;8:12;39:6;
51:15;55:19,23;56:2,6;
61:17
**lis (1)**
13:12
**list (2)**
24:3,6
**little (5)**
9:9;15:13;38:1;52:25;
63:10
**Liviu (1)**
7:3
**locally (1)**
27:4
**located (1)**
19:23
**locating (1)**
4:5
**location (2)**
17:24;29:11
**long (1)**
19:6
**longer (2)**
7:12;33:15
**look (8)**
20:25,25;21:2;26:7;
27:24;34:2;45:18,18
**looking (2)**
30:1;37:5
**loose (1)**
14:23
**loosely (1)**
53:6
**lot (4)**
11:11;15:19;53:12,12
**Luxembourg (13)**
11:2;17:17;18:2,3;
19:23;20:3,14,17;22:16,
25;27:14;34:9;49:11
**lying (1)**
26:21

**M**

**magistrate (1)**
59:4
**main (3)**
5:4;9:11,16
**maintained (1)**
10:8

**makes (1)**
26:3
**making (2)**
23:16;37:7
**Manhattan (2)**
26:17,18
**many (1)**
25:13
**March (1)**
56:7
**marine (2)**
11:21,25
**Markazi (30)**
3:17;7:6,11;9:21,22;
18:13,24;19:14,19;
20:14;21:3,19;22:26:18;
28:5,10,12,21;34:12;
36:16,18;38:18,23,24;
39:9;51:15;55:18;61:13,
23;63:21
**Markazi's (9)**
17:15;19:13;20:24;
21:11;36:4,9;40:6;42:8;
64:6
**matter (13)**
6:15;21:9;26:14;
27:15;36:5,10;38:5;
48:1;57:10;58:20;61:25;
63:6,9
**matters (5)**
6:18;27:13,13;38:6;
61:19
**matured (1)**
25:22
**may (21)**
4:6,6:13;7:19;8:1,16;
11:10;25:25;26:3;27:16,
23;29:21;37:1;48:13,18;
50:8;51:1,11;52:18,24;
55:8;64:6
**maybe (11)**
13:4;16:13;23:7;
31:25;35:12;38:25;
43:18;55:21;58:6;60:15;
62:24
**mean (32)**
8:5,6;11:10;15:7;
16:11,25;26:4,11;31:11,
17;32:16;33:1,13,21;
34:24;35:19;36:17,24;
37:9;38:23;41:8;42:5;
44:2;45:14;51:7;52:11;
53:17,21;58:1,7;62:21;
64:7
**meaning (1)**
44:16
**means (4)**
20:22;21:25;44:3;57:5
**meant (1)**
58:6
**mechanism (1)**
31:16
**medical (1)**

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL                                                October 31, 2011

5:5
**meet (1)**
  23:22
**memoranda (2)**
  33:16,18
**mentally (1)**
  44:3
**mention (1)**
  32:7
**mentioned (2)**
  51:23,23
**merits (3)**
  9:8;15:11,12
**met (2)**
  26:18;27:5
**microphone (2)**
  4:20,22
**mid (1)**
  55:21
**might (5)**
  31:15;37:16;39:25;
  62:12,25
**million (12)**
  7:9;21:18,18,18,20,20,
  21,23,24;28:17,17;49:10
**mind (3)**
  6:7;40:1;54:19
**minimum (2)**
  30:23;33:14
**minor (1)**
  3:5
**minute (1)**
  60:24
**minutes (1)**
  16:14
**miscellaneous (2)**
  12:25;13:2
**missing (1)**
  43:18
**modify (1)**
  3:12
**moment (4)**
  37:1,1,4;51:6
**money (1)**
  28:22
**monitor (1)**
  6:20
**monitoring (2)**
  5:5,11
**months (1)**
  40:1
**moot (1)**
  63:12
**more (10)**
  5:19;9:9;14:23,23;
  27:23;32:12;39:17;40:4;
  49:2;57:9
**morning (1)**
  10:11
**most (3)**
  15:13;20:11;25:13
**motion (65)**
  7:8;8:8,19;9:17;10:3,

14;11:5;14:9;15:4,18;
16:19,19;18:8,24;20:11,
12,22;23:13,15,20;24:8,
9,13;26:5;29:1,4,7;31:5,
6;32:8;35:17;36:4,10,
19;37:9,14,17,24;39:18;
40:12,25;41:15,17,19;
42:5,23,24;43:2,9,10;
48:12,17,18,21;50:9;
55:19;56:25;57:1,2,5,6,
15;58:2;64:13,18
**motions (16)**
  3:14;10:16,24;15:8;
  18:23,24;19:1;29:22;
  30:9,14,17;37:2,6,22;
  49:3;58:23
**move (6)**
  9:8;11:6;20:4;29:5;
  33:2;35:22
**moved (2)**
  9:22;29:8
**moving (1)**
  38:12
**much (7)**
  13:5;14:23,23;39:11,
  17,17;56:4

## N

**name (8)**
  3:7,17,22;7:17;44:12;
  45:2;64:6,6
**named (4)**
  9:21,24;44:25;45:9
**names (14)**
  3:13;5:18,25;8:21,25;
  9:3;61:23;62:2,4,7,18;
  63:13;64:11,17
**naming (2)**
  14:3,4
**nature (4)**
  6:14;23:21;25:1,10
**navigating (1)**
  6:18
**near (1)**
  25:16
**necessarily (1)**
  29:1
**necessary (3)**
  10:15;35:18;54:14
**need (24)**
  3:23;4:19,22;9:9;
  10:13;11:6;18:9,20;
  19:15,20;23:4,8,17,22;
  24:12;26:4;29:17,22;
  35:10;37:24;38:17;
  53:16;56:8;62:14
**needs (2)**
  31:7;55:9
**nevertheless (1)**
  28:6
**New (38)**
  10:15,17,25;17:2,17,

23;18:7,14;20:17,21,23;
21:7;22:1,8,11;24:18,21;
25:9,16,19,20,23;26:3;
27:19;28:11;29:14,16,
18;33:10,16;34:11;
38:19;40:13;41:21,21;
43:21;44:3,13
**news (1)**
  38:14
**next (1)**
  19:22
**nexus (2)**
  20:23;21:7
**niceties (1)**
  47:24
**nonappearance (1)**
  5:10
**none (4)**
  27:12;38:6;44:24;46:2
**nonetheless (1)**
  18:4
**nor (1)**
  46:3
**normally (2)**
  12:6;34:25
**note (2)**
  4:19,24
**noted (2)**
  3:3;5:10
**notes (1)**
  27:24
**notice (7)**
  3:10;8:9;12:23;47:7,8,
  21,23
**noticed (1)**
  47:6
**notified (1)**
  13:12
**notify (2)**
  6:4;28:19
**notwithstanding (2)**
  37:17;53:9
**November (3)**
  48:6,25;55:13
**number (2)**
  9:18;56:15
**numbers (1)**
  6:3
**nutshell (1)**
  11:11

## O

**o0o (1)**
  64:22
**obeying (1)**
  12:11
**objection (9)**
  5:23;50:15;51:14,15,
  17,18;59:21;62:25;
  63:22
**objections (2)**
  60:17;63:21

**obligation (2)**
  12:9;45:23
**observing (1)**
  5:2
**obtained (1)**
  31:18
**obtaining (1)**
  34:25
**obviously (7)**
  11:4;30:13;33:9,12;
  37:10;43:14;54:13
**occurred (6)**
  20:21;25:15,23;29:16;
  30:7;49:11
**occurring (1)**
  22:8
**OFAC (13)**
  3:23;4:6,12;5:11;7:6,
  13,21;19:17;28:12;63:2,
  3,6;64:5
**OFAC's (2)**
  5:14;7:15
**off (3)**
  13:4;50:8;55:25
**Office (2)**
  4:18,24
**old (1)**
  33:17
**omnibus (1)**
  59:13
**once (2)**
  28:6,14
**one (44)**
  6:13;7:5,24,25;8:1;
  11:17;12:12;14:5;18:19;
  20:11;22:17;23:1,3;
  26:9,25;30:5;33:19;
  34:2,25;38:17;40:12;
  42:22;43:14;46:25;
  48:12;49:9;50:3;52:24,
  25;53:2,3,7,8,22;55:5,
  23;57:10,18;58:6,7,8,11,
  25;59:7
**only (24)**
  4:10;10:10;11:20;
  14:4,5;23:5,12,13,16;
  28:3;29:4;30:19;40:11;
  43:20;44:21;46:11,25;
  48:20;49:9;51:5;55:8;
  57:17;58:13;61:18
**open (8)**
  3:1;9:2;26:17;38:13;
  58:16;63:9,12;64:7
**opened (5)**
  19:24;20:14;22:19,22;
  27:4;34:11
**opening (4)**
  20:6;34:9;36:18;37:10
**operation (1)**
  6:19
**opinion (2)**
  38:20;39:23;40:7
**opportunity (4)**

37:3;40:4;46:10,23
**opposed (1)**
  13:7
**option (1)**
  58:16
**order (30)**
  3:6,10,21,25;4:8;5:12;
  7:7;9:10;12:16;13:24;
  19:3;20:23;24:21;25:11;
  26:5;30:8;34:3;38:21;
  40:8;45:18,18;57:2;
  60:15,16,24;61:11;
  62:20;63:25;64:4,18
**ordered (2)**
  15:24;34:5;41:12
**orders (1)**
  64:1
**ordinarily (1)**
  6:15
**original (5)**
  7:6;13:14;43:21;44:2;
  53:17
**originally (1)**
  41:14
**otherwise (4)**
  6:21;44:24;45:8,24
**ought (4)**
  30:24,25;40:4;51:23
**ours (1)**
  43:2
**ourselves (2)**
  3:21;52:4
**out (22)**
  6:7;8:1,14;10:13;12:9,
  10;14:5;21:1;25:21;
  27:14;28:9,20;31:21;
  32:21;38:11;42:12;
  49:22;50:5;56:17;59:5;
  62:5,7
**outline (1)**
  17:8
**over (7)**
  10:14,18;24:16;25:7;
  28:8;36:5;39:7
**own (6)**
  28:9;51:24,24,25;
  57:19,21
**owner (9)**
  7:11;18:22,25;19:14,
  16,20;25:15;28:5,11
**ownership (7)**
  18:20,21;19:15,21;
  22:7;27:25;28:3

## P

**page (4)**
  32:12,17;34:4;38:13
**pages (1)**
  24:7
**paid (1)**
  25:22
**PANOPOULOS (74)**

10:11,12;11:9,23;
15:21,23;16:12,18,23,
25;17:7,11;22:7,14,21;
23:3,6,11,23;24:3,24;
27:12;30:2;32:10,11,15,
20,25;33:8,12,20,24;
34:2,17,20;35:3,5,11,20,
24;36:3,14,22;41:2,4,10,
24;42:4,9,13,20,25;43:7,
14;47:18;49:15,16,18;
51:17;56:10,21;57:10,
12,24;58:8,20;59:3,25;
60:7,11,15,19;61:5;
63:24
**paper (3)**
13:13;21:21,22
**papers (14)**
14:9;15:8,14,18;
18:24;19:12,19;20:11,
12,22;23:20;24:8;25:12;
64:18
**parameters (1)**
38:11
**parse (1)**
10:13
**part (3)**
4:16;10:6;53:13
**participated (1)**
28:20
**participation (1)**
6:17
**particular (3)**
14:4;29:24;45:12
**particularly (1)**
29:18
**parties (14)**
7:12;9:11,16;13:11,
21;25:14;43:21;44:25;
45:12;46:3,9,23;48:15;
55:6
**parts (1)**
28:9
**party (7)**
10:17;11:17;14:4;
44:24;47:22,22;53:20
**passed (1)**
28:13
**passive (1)**
6:22
**past (1)**
33:15
**path (2)**
35:12,13
**Patterson (1)**
13:10
**pay (1)**
21:1
**pendens (1)**
13:12
**pending (8)**
8:18;29:2,4;50:12;
53:4;59:2,3;64:13
**people (12)**

6:14;9:14;10:8;11:21;
26:19;32:4;44:2,3;
54:12;55:9,14;60:17
**perceive (1)**
63:3
**perfectly (1)**
38:20
**performance (2)**
25:11;35:8
**performances (1)**
25:14
**performed (1)**
17:24
**perhaps (6)**
3:23;4:18;5:15;36:6;
48:13;57:9
**period (1)**
56:14
**permissible (1)**
40:15
**permission (1)**
52:6
**person (3)**
5:6,7;31:11
**personal (7)**
10:14,19;18:8;24:15;
48:17,17;49:7
**persons (1)**
4:11
**Peterson (11)**
7:4;16:2;30:20;33:3;
43:22;48:18,23;51:3;
52:19;55:8,14
**Peterson's (1)**
54:15
**petition (3)**
43:19,20;45:20
**phone (1)**
55:23
**pick (1)**
48:15
**picture (1)**
37:5
**piece (1)**
12:6,8;13:13;21:22
**Piper (1)**
54:2
**place (2)**
3:12;33:19
**plaintiff (7)**
32:23;39:24;43:4;
44:14;47:7;58:5;61:7
**plaintiffs (44)**
7:4;9:20;10:1,22;14:1;
15:25;16:3;17:13;18:3,
17;19:18,22;20:9,10,16;
29:7,24;32:7;33:1,11;
34:21;36:19;37:8,15,23,
23;38:8;41:21,21;43:1,
12,23;48:20,23,23,24;
50:7,24;51:3,8;52:19;
53:17;55:3;64:5
**plaintiff's (5)**

18:10;22:9;23:12;
33:6;38:4
**plaintiffs' (1)**
43:22
**plan (1)**
39:15
**planning (1)**
52:6
**pleading (13)**
31:1,3;38:1;40:2;
43:25;47:9;51:11;52:3,
10;55:5;57:24;58:1;
64:17
**pleadings (9)**
5:12;30:8;47:13;49:8;
57:19,21;61:25;62:7;
64:7
**please (1)**
23:12
**pm (1)**
63:7
**point (26)**
6:12;8:1;9:5;14:1;
16:6;22:17;29:3;30:12,
12,14;31:10,14,23,25;
35:3;36:1,20;38:10;
42:24;48:1;50:10;52:17;
55:2;59:15;63:18,24
**points (5)**
22:23;23:16,24;30:5;
64:14
**position (4)**
5:15;20:2;21:23;35:15
**positions (5)**
21:17,19,20,23;22:5
**possession (2)**
7:12;26:12
**possible (5)**
26:13,16;37:19;47:6;
55:18
**possibly (1)**
27:7
**potential (2)**
37:25;51:7
**power (3)**
24:21;63:17,19
**practical (1)**
63:9
**precisely (1)**
32:9
**prefer (1)**
35:13
**premise (1)**
24:7
**prepare (1)**
30:8
**prepared (2)**
16:12,13
**present (1)**
60:14
**presented (1)**
35:15
**presumably (1)**

53:23
**prevail (1)**
49:23
**prevailed (1)**
11:3
**previously (5)**
32:5;40:10;41:12;
48:10;55:15
**prima (1)**
49:8
**principle (3)**
35:2;38:3;41:8
**principles (1)**
53:24
**prior (2)**
8:10;56:9
**priorities (1)**
51:25
**privacy (1)**
4:11
**probably (5)**
39:19;40:3,4;47:19;
62:3
**problem (13)**
3:14;34:24;43:17;
44:8,9;51:1;53:19,21;
54:5;56:16;60:4;62:9;
63:4
**procedural (4)**
3:5;30:12;43:17;46:1
**procedurally (1)**
60:23
**procedure (5)**
45:5,24;47:10,16;
63:11
**procedures (1)**
12:11
**procedure's (1)**
9:6
**proceed (4)**
9:1;38:15;50:15;59:24
**proceeding (9)**
8:6;9:20;11:4,6;41:17;
44:19;47:23;53:8,9
**proceedings (7)**
6:16;8:23;9:23;13:9;
51:9;53:12;64:15
**process (2)**
34:25;61:24
**produced (4)**
20:5;30:11;34:6;64:9
**progeny (2)**
18:12,12
**promptly (1)**
6:4
**proper (8)**
14:7,8;15:4;19:2,5;
44:9;45:5,5
**properties (2)**
17:23;25:11
**property (15)**
12:6,9,19;14:22;15:2;
17:1,3,15;18:13;20:24;

21:8;25:2,4,10,15
**proposal (1)**
55:15
**proposals (1)**
38:13
**proposed (4)**
38:18,21;40:8;60:16
**protective (4)**
7:7;63:25;64:4,16
**provide (1)**
7:21
**provides (2)**
4:6;29:12
**providing (1)**
4:3
**provisions (1)**
20:1
**public (7)**
3:6,10;6:8;8:6;62:19;
63:9;64:9
**publicly (1)**
5:24
**purpose (5)**
10:24;46:9,18,21;
53:13
**purposes (10)**
17:5;18:9;19:11;
23:13,24;24:5;35:17;
36:16;47:4;64:11
**push (1)**
56:17
**put (13)**
6:10;12:23;16:25;
18:25;35:6,14;38:17;
41:14;42:17;43:14;
44:13;61:10;63:2
**putting (1)**
50:8

## Q

**quash (1)**
20:5
**quick (1)**
27:24
**quickly (1)**
55:18
**quite (2)**
4:12;15:16
**quote-unquote (1)**
55:5

## R

**raise (3)**
18:17;52:24;58:20
**raised (11)**
14:9;15:25;24:11;
31:8,24;32:1,5;35:7;
43:19;46:12,16
**raises (1)**
18:18
**raising (4)**

31:7;36:11;47:1;48:3
**rather (3)**
  11:14;51:11;57:19
**reach (2)**
  52:21;59:8
**reached (1)**
  59:5
**reaction (1)**
  6:5
**read (4)**
  20:22;34:3;37:2;38:4
**ready (1)**
  33:21
**really (10)**
  22:17;30:15,19;33:18;
  46:3;48:15;49:8,21;
  53:15;59:20
**reason (6)**
  3:11,17;6:19;11:10;
  33:5;60:4
**reasonably (1)**
  22:17
**reasons (3)**
  33:3;53:7;58:25
**rebriefing (3)**
  32:2;41:19;42:24
**rebriefings (1)**
  33:6
**recent (1)**
  30:5
**record (3)**
  22:3;34:13;55:25
**records (5)**
  34:8,8,9,13,15
**redacted (1)**
  3:8
**redacting (1)**
  61:24
**redraft (1)**
  39:10
**reference (2)**
  33:18;61:18
**references (1)**
  17:20
**referral (1)**
  60:10
**referred (2)**
  16:19;43:9
**refiling (1)**
  55:19
**regard (1)**
  39:8
**regime (1)**
  6:19
**regularly (1)**
  27:5
**regulations (3)**
  14:22;28:12,13
**relationship (1)**
  13:21
**relative (2)**
  20:21;29:15
**relatively (1)**

3:5
**relay (1)**
  6:4
**release (2)**
  7:9;28:18
**releasing (1)**
  3:24
**relevant (13)**
  18:22,23;22:8,13;
  27:7,16;28:3,14;29:1,10,
  16;38:7;57:4
**relying (2)**
  30:25;57:20
**remaining (1)**
  64:16
**remember (1)**
  33:7
**repeatedly (1)**
  63:13
**replead (1)**
  39:15
**reply (5)**
  41:22;49:1;56:5,13,24
**reported (1)**
  39:6
**representations (1)**
  5:2
**representatives (2)**
  26:18;27:5
**represented (2)**
  28:24;47:12
**request (3)**
  5:23;38:21;41:12
**requested (1)**
  59:19
**requests (1)**
  54:9
**require (4)**
  6:16;52:5;56:9;59:10
**required (3)**
  25:14;31:1;52:12
**requires (3)**
  4:25;6:21;25:10
**res (1)**
  36:5
**reset (1)**
  40:25
**resides (2)**
  22:1
**resisting (1)**
  32:10
**resolution (1)**
  50:12
**resolve (2)**
  9:11;26:15
**respect (8)**
  7:14;11:25;12:11;
  18:16;19:4,16;20:24;
  30:17,23;31:9;32:25;
  37:20;42:9,11;43:10,10;
  51:8;64:2
**respond (12)**
  16:17;30:19;31:2;

36:19;41:20,22;48:10,
24;53:22;55:16;59:9,10
**responded (1)**
  59:15
**responding (2)**
  24:13;58:6
**response (20)**
  7:6;37:22;41:1,5;43:8,
  13,14;56:4,12,25;57:2,
  18;58:1,4,6,7,9,11,21,22
**responses (6)**
  19:17;30:9;33:1;38:4;
  43:2;61:9
**responsible (1)**
  5:4
**rest (1)**
  10:10
**restrained (2)**
  17:2;59:13
**restraint (4)**
  9:17,18;10:4;15:9
**restraints (12)**
  10:16,17,18,19,23;
  11:13;15:18;20:5;36:7;
  41:19;43:11;59:11
**result (1)**
  24:16
**rewrite (1)**
  39:16
**Richard (3)**
  30:3;51:20;57:24
**right (56)**
  4:11;6:12;12:22;16:6,
  12;17:2,19,24;18:4,13,
  17,18;19:25;20:1,24;
  21:8,11;23:7;24:18,19;
  25:2,10,10,15;26:15;
  27:10,17,21;31:25;34:8;
  35:21,24;36:5,24;38:7;
  40:19,24;41:1;42:10,14,
  20;47:7;48:7;49:15;
  52:9;55:11,17;56:3;
  57:16;58:17;60:11,18;
  61:4;63:5,17;64:19
**rights (4)**
  18:1;25:4;51:8;64:14
**Risk (1)**
  14:18
**risks (5)**
  30:13,15,17,17,19
**road (1)**
  48:4
**role (1)**
  6:22
**room (2)**
  8:2;28:25
**rubric (1)**
  64:4
**rule (4)**
  18:12;40:11,14,16
**rules (3)**
  17:19;45:23;47:15
**ruling (1)**

37:20

**S**

**same (19)**
  11:15;13:19;15:1;
  16:21;30:25;33:1,2,3;
  38:3;39:23;41:8;49:24;
  55:14;57:22;59:10,11,
  12;60:13;61:13
**sanction (1)**
  6:19
**sanctions (1)**
  28:14
**satisfy (1)**
  14:19
**Saturday (1)**
  56:18
**saw (2)**
  32:22;33:5
**saying (10)**
  19:3,17,19;22:16;
  30:23;34:14;54:25;
  57:17,24;58:12
**schedule (5)**
  32:21;37:6;38:12;
  55:12;56:8
**schedules (1)**
  42:22
**scheme (1)**
  28:9
**SCHNEIER (18)**
  12:15;13:17;15:7,12;
  41:11;46:8,17,21;52:24;
  53:2,18;54:1,7,10,17;
  60:12;61:15,20
**school (1)**
  47:10
**seal (2)**
  8:8;9:5
**sealed (4)**
  6:8;8:11;9:7;40:11
**second (14)**
  7:22,25;17:13;22:13;
  26:1;31:25;38:19;39:6,
  14,23,23;40:1,7,12
**secondly (1)**
  34:20
**secrecy (2)**
  64:2,8
**Section (1)**
  14:13
**secured (1)**
  28:18
**securities (9)**
  10:6;14:24,25;18:1,2;
  19:4;20:3;21:5,15
**security (4)**
  17:4,16;20:1;22:4
**seek (1)**
  5:22
**seeking (1)**
  23:25

**seem (1)**
  32:10
**seems (4)**
  9:11;22:9;33:14;40:8
**sees (1)**
  24:22
**self-proving (1)**
  22:19
**selling (1)**
  28:20
**send (5)**
  5:14;46:12;60:9,17,17
**sending (1)**
  28:20
**sense (4)**
  9:15;37:13;41:23;
  47:15
**sent (2)**
  5:12;28:7
**separate (2)**
  43:1;47:25
**September (1)**
  48:22
**served (2)**
  12:17,20
**set (7)**
  8:6;13:10;17:21;19:1;
  32:17;33:16;56:7
**sets (1)**
  16:1
**Several (1)**
  30:5
**shall (2)**
  4:8;34:5
**short (1)**
  19:6
**shorter (2)**
  39:11,17
**shortly (1)**
  49:1
**show (2)**
  20:23;57:4
**showed (1)**
  34:12
**side's (1)**
  37:2
**signed (1)**
  8:3
**silence (1)**
  63:22
**similar (5)**
  42:12;48:21;52:1;
  53:23,24
**simple (4)**
  25:5;46:1;50:1;54:17
**simply (6)**
  30:7,18;51:14;57:20;
  59:18,23
**simultaneously (1)**
  41:17
**single (3)**
  32:8;51:11;58:5
**sited (1)**

October 31, 2011

17:16
sitting (5)
28:24;48:14;59:18;
60:5;63:13
situation (3)
4:5;26:14,16
situations (1)
53:2
situs (22)
10:22,25;11:1;17:13,
14,19,23;18:3,4,10;
19:10;20:17;21:7,12;
24:11,19,24;25:3,8;27:1;
29:13;42:21
solely (1)
8:21
solve (2)
51:1;62:9
somebody (2)
5:15;51:23
somehow (1)
51:11
someone (9)
4:17,18;9:2;12:7,20;
38:23;52:6;60:14;62:14
somewhat (1)
38:21
soon (1)
37:18
sorry (5)
6:5;30:2;31:13;44:16;
52:13
sort (6)
15:14,18;22:19;49:24;
53:6,6
sought (1)
13:1
sounded (1)
32:23
sounds (3)
32:4;49:13;52:16
sovereign (3)
4:6;14:12;36:10
speak (2)
5:2;62:16
speaking (1)
53:6
specific (3)
12:24;13:7;35:25
specifically (3)
5:12,23;23:8
specificity (1)
23:1
speculate (1)
39:4
spoke (1)
7:2
stage (2)
12:25;30:16
stand (1)
4:20
stands (1)
52:9

start (7)
9:13;16:16;22:23;
24:23;33:22;48:5;50:3
started (1)
62:21
starting (4)
24:7;41:14,15;44:13
state (4)
8:4;29:14,14;37:14
stated (3)
28:6;29:12;63:14
statement (1)
57:14
states (6)
25:7;28:10,12;34:4;
49:5;62:8
States' (1)
4:2
statute (2)
4:3,9
stay (8)
36:21;42:18;48:10;
54:2,14;55:14,15;59:25
stayed (11)
36:22;41:6;43:3,8;
48:11;50:11;58:22;
59:23;61:9,10,12
staying (2)
49:22;54:5
stays (1)
54:14
Sticking (1)
22:13
still (11)
14:8;15:4;18:13;
23:19;36:9;41:5;47:1;
61:24;62:10;63:19;
64:13
stipulate (1)
34:5
stipulation (2)
60:3,7
stood (1)
4:18
stop (2)
53:25;54:11
straightforward (1)
49:25
strange (1)
63:11
stuff (2)
27:13;62:4,5
subargument (1)
17:22
subject (4)
3:9;7:7;36:5,10
sublegal (1)
17:18
submission (1)
7:22
submitted (5)
17:21;19:19;20:5;
24:8;25:5

subpoena (2)
19:17,18
successful (7)
10:9;13:15,18;14:5;
15:5;49:14,14
successive (1)
32:4
succinctly (1)
17:1
sue (1)
44:17
suffer (1)
50:8
suffering (1)
50:7
suggest (2)
4:1;55:4
suggested (1)
35:13
suggestion (1)
51:6
sum (1)
22:6
summer (1)
39:7
supplants (1)
17:18
supplemental (1)
19:17
supplemented (1)
64:1
support (1)
40:3
suppose (3)
4:15;38:16;51:10
sure (14)
4:12;8:18;13:6;20:15;
27:18;33:20;34:1;44:1;
46:15;47:1;51:21;54:19,
23;59:25
surely (1)
4:10
surrounding (2)
21:4,5
suspect (1)
26:1

**T**

Tab (1)
34:3
table (1)
35:14
talk (6)
22:3;35:9,25;38:19;
40:9;60:5
talking (7)
8:24,25;22:3;54:8;
61:18;64:10,17
talks (2)
39:13,13
tandem (1)
29:5

technically (3)
8:2;43:20;54:9
ten (1)
16:13
terms (9)
3:24;13:11;17:25;
24:12,23;26:20;29:3;
59:5,8
territory (1)
45:15
Terrorist (1)
14:18,21
testimony (1)
20:6
theoretical (1)
6:15
theoretically (1)
57:4
theory (5)
3:8;37:12,12;41:13;
49:7
therefore (4)
7:13;11:5;14:25;24:21
thinking (2)
4:16;33:22
third (2)
7:12;20:19
third-party (5)
29:18;43:21;44:4;
45:9;52:16
Though (4)
5:9;10:4;63:20;64:5
thought (5)
11:16;13:25;27:22;
33:5;52:5
three (8)
14:6;16:1;18:18;
29:19;39:18;43:23;56:5,
6
threshold (11)
16:8,9,10,15;30:15;
32:9;33:19;36:25;37:6;
41:6;55:17
thrust (1)
39:12
timing (1)
32:20
today (5)
9:9;16:11;48:14;
54:24;62:16
together (5)
15:15;41:14;53:10,18;
54:18
topic (2)
5:15,16
totally (1)
8:9
touch (1)
5:10
touched (1)
15:19
towards (1)
54:19

tracks (3)
43:1;48:5,22
transaction (2)
28:13;49:11
transactions (2)
26:21;49:4
transfer (1)
25:21
transferred (3)
7:11;19:13;28:6
transfers (4)
20:7,7,8;25:18
travel (1)
18:14
travels (1)
21:11
Treasury (5)
3:19,20,22;4:4,6
TRIA (10)
14:10,11,16,17,22,22;
15:1,7,17;16:4
tried (2)
13:5;53:3
true (4)
26:6;28:11;37:25;46:4
truncate (1)
32:18
trust (1)
22:1
try (7)
9:8,15;20:23;41:14;
54:2;55:12;58:15
trying (3)
16:7;55:2,17
turn (3)
10:18;25:18,19
turnover (25)
9:20,23;10:23;11:4,6,
12;14:14;36:7;41:16;
43:22;44:19,22;45:4;
52:7,9,17;53:16;58:23,
24,25;59:6,9,12,16,17
two (19)
3:11,15;5:18,25;7:15;
8:21,25;9:3;16:2;24:24;
39:18;42:22;43:1,24;
48:5,22;62:2,4;64:11
type (1)
31:1
types (1)
6:16

**U**

UBAE (18)
7:5;9:21,22;19:23;
20:13;28:4,6;32:8;
34:22;42:8,16;48:15;
49:17;51:18;55:15;
61:23;63:21;64:12
UBAE's (2)
19:5;64:6
UCC (26)

DEBORAH D. PETERSON v.
ISLAMIC REPUBLIC OF IRAN, ET AL

October 31, 2011

10:21;13:15,19;14:2,
24;15:5,24;17:3,5,7,8,
18,20;18:11;19:10,24,
25;22:22,23;24:24;25:1,
3;29:12;36:9;42:10,21
**ultimately (1)**
6:20
**uncharted (1)**
45:14
**under (30)**
10:16;12:9;14:22,24;
15:5;17:2,3,18,22,22;
18:11,11;19:10,24,25;
21:5,11,11;24:16,18;
25:9;36:10;38:1;40:11,
15;41:7;42:10;52:3;
64:4,16
**underlying (1)**
48:16
**undertaken (1)**
51:10
**undisputed (1)**
49:6
**United (5)**
4:2;28:10,12;49:5;
62:8
**unless (1)**
8:3
**unnecessarily (1)**
32:17
**unravel (1)**
47:4
**unraveled (2)**
46:1,6
**unredacted (1)**
64:6
**unsealed (1)**
6:1
**up (16)**
3:17;4:18;6:10;12:7;
13:19;15:15;22:6;23:14;
26:22,22;27:15;34:12;
40:19;45:21;47:14;50:4
**upon (3)**
51:9;57:20;60:9
**use (5)**
15:1,3;33:17;53:24;
60:15
**used (6)**
14:19;20:9,10;24:3,4;
34:6
**uses (1)**
34:25

## V

**vacate (16)**
9:17;10:3,16;15:9,18;
16:20;31:5,6;33:2;
41:19;42:24;43:10;57:5,
6,15;58:2
**Valore (1)**
50:23

**value (1)**
25:15
**various (6)**
14:9;25:11,14;30:13,
13;55:3
**view (3)**
10:9;38:15;56:25
**views (1)**
51:13
**VIII (1)**
17:4
**violate (1)**
28:12
**violated (1)**
40:14
**violating (1)**
28:22
**virtue (1)**
47:5
**Vogel (63)**
7:3,3,23;14:2,12,17;
15:16;16:2;23:14;24:2;
26:6,16;27:17,23;30:1;
31:11,13,17,20,22;
34:11,21,24;35:22;
38:14,16,24;39:2,3,4,21;
40:21,23;42:2;43:16,17;
44:5,7,9,12,18,20,23;
45:3,17;46:11,19;47:2,8;
48:2,7,8;51:4,5;56:14,
17,23;57:7,8,20;58:11;
61:22;62:4
**Vogel's (2)**
16:22;53:9

## W

**Wait (3)**
43:5;44:1;60:25
**waive (1)**
10:19
**waived (1)**
63:18
**waiving (1)**
64:14
**walk (2)**
16:14;17:8
**wants (9)**
4:12;22:17;29:25;
35:22;41:20;47:13;
50:14;60:21;63:5
**wasted (2)**
29:8,9
**way (15)**
14:21;17:19;20:11;
42:17,18;44:9,13,21;
45:4,5;47:9,13,19;52:21;
59:10
**Wednesday (1)**
63:6
**weeks (2)**
56:5,6
**welcome (1)**

23:17
**whatever's (1)**
3:12
**what's (12)**
3:6,6;9:10,15;13:7;
14:16;21:14;24:1;38:14;
40:15;46:11;61:2
**wherever (1)**
24:19
**White (1)**
9:14
**whoever's (2)**
6:9;37:7
**whole (2)**
26:23;46:1
**who's (2)**
6:9;46:25
**wild (1)**
28:8
**willing (3)**
22:9;23:24;59:25
**wish (2)**
52:15;60:21
**wished (1)**
45:21
**wishes (1)**
45:25
**withdrawn (1)**
59:7
**within (2)**
37:9;42:2
**without (2)**
24:15;27:8
**wonder (1)**
12:5
**word (1)**
47:3
**words (1)**
12:19
**work (3)**
32:21;42:4;59:8
**worked (1)**
31:21
**working (1)**
54:19
**world (1)**
61:2
**worried (1)**
46:6
**worry (1)**
57:11
**worth (1)**
7:9
**wrapped (1)**
15:15
**writ (1)**
12:20;13:12;59:11
**write (3)**
58:12;62:14;63:6
**wrong (5)**
21:9;24:1;26:4;27:16;
45:23

## Y

**year (1)**
28:8
**years (1)**
29:20
**York (28)**
10:15,17,25;17:2,17,
23;18:7,14;20:17,21,23;
21:7;22:2,8,11;24:18,21;
25:9,16,19,20,23;26:3;
27:19;28:11;29:14,16;
34:11

## Z

**zero (1)**
40:25