


INTERNATIONAL INSTITUTE FOR THE UNIFICATION OF PRIVATE LAW
INSTITUT INTERNATIONAL POUR L'UNIFICATION DU DROIT PRIVE

**UNIDROIT STUDY GROUP ON HARMONISED SUBSTANTIVE RULES REGARDING SECURITIES HELD WITH AN INTERMEDIARY**

**Rome, December 2004**

UNIDROIT 2004
Study LXXVIII – Doc. 19
Original: English

# PRELIMINARY DRAFT CONVENTION ON HARMONISED SUBSTANTIVE RULES REGARDING SECURITIES HELD WITH AN INTERMEDIARY

## EXPLANATORY NOTES

# Table of Contents

**PART 1: INTRODUCTION**

**1 HISTORY OF THE PROJECT**

**2 BACKGROUND OF THE FUTURE INSTRUMENT**

**2.1 Change towards modern practice of holding and disposition of securities**

*2.1.1 Immobilisation and dematerialisation*

*2.1.2 Pooling*

*2.1.3 Acquisition and disposition of securities*

**2.2 Repercussions of modernisation: increased legal risk and economic inefficiency**

2.2.1 *Legal risk*

2.2.1.1 Why the risk is particularly high

2.2.1.2 Examples

*2.2.2 Cross-border links*

*2.2.3 High economic risk*

*2.2.4 Economic inefficiency*

**2.3 Remedies**

*2.3.1 Recommendations of non-governmental organisations*

*2.3.2 National law reform*

*2.3.3 International law reform*

2.3.3.1 Hague Convention

2.3.3.2 European Union

**2.4 Conclusion**

**3 KEY FEATURES OF THE PRELIMINARY DRAFT CONVENTION**

**3.1 Internal soundness and compatibility**

**3.2 Functional approach**

*3.2.1 Importance of the functional approach*

*3.2.2 Neutrality as to language*

*3.2.3 Limits to the functional approach*

**3.3 Internationality**

**3.4 The needs of market participants as guidelines**

*3.4.1 Effective book-entries*

3.4.2 *Fruits, voting rights, etc.*

3.4.3 *Clear and simple rules for transactions*

3.4.4 *Integrity of the account holder / intermediary relationship*

3.4.5 *Instructions*

3.4.6 *Net settlement*

3.4.7 *Integrity of the issue*

3.4.8 *Realisation of security interests*

3.4.9 *Right of use*

**PART 2: EXPLANATORY NOTES**

Articles 1 - 23

**APPENDIX**

Preliminary draft Convention on Harmonised Substantive Rules regarding Securities Held with an Intermediary

### ARTICLE 6 - FINALITY OF CREDITS, DEBITS ETC.

The purpose of Article 6 is to endorse the notion that a credit, debit or designation under Article 4(1)(b) can no longer be reversed from the moment when it is made ("Finality").

### ARTICLE 7 – OVERRIDING EFFECT OF CERTAIN RULES OF CLEARING AND SETTLEMENT SYSTEMS

Article 7 reflects the fact that clearing and settlement systems are heavily regulated entities with an advanced operational and legal structure designed to minimise legal and systemic risk.

It may be useful to insert in Article 1 a definition of the term 'clearing and settlement system'. One might use the following wording: 'The term 'clearing and settlement system' describes a formal arrangement between several intermediaries with common rules and standardised operational practices for the execution of transactions between them'. - Moreover, the Committee of governmental experts will have to consider which categories of intermediary are eligible to be part of such a system. Furthermore, the Committee may wish to consider whether, to what extent and by whom the characterisation as 'clearing and settlement system' in the sense of the draft instrument is to be made public.

### ARTICLE 8 – PROHIBITION OF UPPER-TIER ATTACHMENT

This article prohibits the making of orders, such as so-called "upper-tier attachment" orders, which would disrupt the system of holding securities through intermediaries by permitting a creditor or other person seeking to enforce a judgment or claim against an account holder by attaching securities held by the account holder to obtain an order against a higher-tier intermediary, compelling the higher-tier intermediary to freeze or segregate securities held in an account in which the account holder is indirectly interested. The risk of such an order undermines the integrity of the intermediated holding system, because a higher-tier intermediary will typically have no means of identifying any interest of an account holder holding securities with a lower-tier intermediary, but will merely operate an omnibus securities account, in the name of the lower-tier intermediary. The freezing of such an account will consequently damage the interests of all account holders of the lower-tier intermediary and severely disrupt the operation of the system.

### ARTICLE 9 – PRIORITIES AMONG COMPETING INTERESTS

The methods of acquisition, disposition and granting security provided by this Convention do not preclude other – traditional – methods that are provided by the applicable domestic law, cf. Articles 3(7) and 4(5). However, legal certainty with respect to book entry holdings and transactions requires the existence of a uniform system that delivers a clear and predictable legal result in all jurisdictions concerned. Therefore, Article 9 gives interests created under Article 3 and 4 of the preliminary draft Convention absolute priority over interests created under traditional rules.

Security interests arising by operation of a mandatory rule of the domestic law are entirely exempt from these rules: their priority is exclusively governed by the domestic law, i.e. such a security interest might prevail over a book-entry transaction effected under Articles 3 and 4.

Transactions under Article 3 and 4 rank among themselves in the order in which they are created. The priority of transactions under traditional domestic law that do not comply with Article 3 and 4 is determined by the domestic law.

Priority rules can be changed contractually between parties to a transaction, as long as the interests of third parties are not affected.