**Uniform Commercial Code Series**
**Database updated May 2008**
**Article 8 [Rev] Investment Securities**
Written by the late William D. Hawkland, James S. Rogers & Carl S. Bjerre;
Edited by Frederick H. Miller
**Part 1 [Rev] Short Title and General Matters**
**8-112 [Rev] Creditor's Legal Process**

§ 8-112:01 [Rev] Creditor's legal process

Section 8-112 deals, in very general terms, with the means by which a debtor's interest in securities holdings may be reached by creditors pursuing legal process for the collection of judgments. Article 8 is not, of course, the place to look for rules of procedure on execution process or related matters of civil procedure. Rather, the function of section 8-112 might be described as providing "bridging principles" between the Article 8 description of the various means by which a person may hold an interest in security and the other body of law that deals with the means by which a creditor pursues legal process against various forms of property.

Subsection 8-112(a) provides that if the debtor is the direct holder of a certificated security, the appropriate means by which a creditor can reach the debtor's interest is by actual seizure of the certificate. The principal effect of this rule would be to direct one to whatever law governs legal process for reaching ordinary chattels, rather than whatever law governs legal process for reaching choses in action. Thus, this rule is merely a reflection, in the context of the rules of creditor process, of the principle that a security certificate is an embodiment of the underlying rights against the issuer. [FN0.50]

Subsection 8-112(b) provides that if the debtor is the direct holder of an uncertificated security, the appropriate means by which a creditor can reach the debtor's interest is by legal process upon the issuer. The principal effect of this rule would be to direct one to whatever law governs legal process for reaching choses in action, rather than whatever law governs legal process for reaching ordinary chattels. Subsection 8-112(a) does, however, have one further significant substantive effect. It provides that the debtor's interest in an uncertificated security can be reached only by legal process "upon the issuer at its chief executive office in the United States." Thus, in addition to specifying the general manner of creditor process, this provision also specifies the detail of the particular office to which legal process must be directed. This provision is essentially unchanged from the 1978 version of Article 8.[FN1]

Subsection 8-112(c) provides that if a debtor holds a security indirectly, that is, the debtor is the entitlement holder having a security entitlement rather than the direct holder of a certificated or uncertificated security, the appropriate means by which a creditor can reach the debtor's interest is by legal process upon the debtor's own securities intermediary. Note that unlike subsection 8-112(c) concerning directly held uncertificated securities, this provision does not specify the precise office of the securities intermediary to which the legal process must be directed. That question is left to other law. Subsection 8-112(c) does, however, make clear that the legal process must be directed to the debtor's own intermediary.

Subsection 8-112(c) is a good illustration of the way in which the security entitlement concept facilitates analysis of the indirect holding system. Suppose that Able holds securities through an account with Custodian Bank, who in turn holds through Clearing Corporation. Creditor seeks to reach Able's interest to collect a judg-

Copyright © 2008 by Clark Boardman Callaghan

ment. Creditor seeks to do so by directing legal process to the Clearing Corporation. It is readily apparent that it would make no sense to say that Creditor could reach Able's property by process directed to Clearing Corporation, for Clearing Corporation would never have even heard of Able. Yet the conceptual structure of old Article 8 would lend a certain odd plausibility to an assertion by Creditor against Clearing Corporation. The old Article 8 rules describe all relationships in the indirect holding system in terms of transfers of property interests in "the security." The security in question is in the hands of Clearing Corporation, so it would seem to follow that Clearing Corporation has possession of an item of property that belongs to Able. If so, then it would seem to be consistent with general property concepts and the law of creditors' rights to say that Creditor could seek to reach Able's property by process directed to Clearing Corporation. [FN2] In New York, where the principal clearing corporation for the United States securities markets is located, it was thought necessary to add special legislation to the civil procedure statutes to eliminate this potential problem.[FN3]

Under the Article 8 [Rev] approach, the resolution of the problem described above is simple. Able's property interest is a security entitlement, which is a package of rights against its intermediary, Custodian Bank. Since Able's property interest is "located" at Custodian Bank, it is clear as a matter of general principle that the only proper subject of legal process by Able's creditors would be Custodian Bank. Clearing Corporation does not have possession of some item of property in which Able has a direct property interest and, hence, is not subject to legal process by Able's creditors. Subsection 8-112(c) states this point explicitly, but even were that not the case, the result under general principles of creditor process would be fairly clear once Able's property interest is described in a fashion consistent with the realities of the modern securities holding system.

Subsection 8-112(d) permits a creditor to reach the debtor's interest by means of legal process upon a secured party. It thus constitutes an exception to the restrictions of subsections (a) through (c) and is perhaps most noteworthy as an exception to subsection (a)'s requirement of actual seizure of a security certificate. A creditor proceeding under subsection (d) can assert a lien on a certificated security even though the certificate remains in the secured party's possession. The rights and vulnerabilities of the creditor in relation to the secured party would be governed by UCC Article 9, and the rights and vulnerabilities of the creditor in relation to a purchaser would be governed by Article 8's rules on adverse claims.[FN4]

Subsection (e) simply makes clear that a creditor is entitled to appropriate aid from courts of competent jurisdiction, a proposition that would surely follow from other state law even in the subsection's absence.[FN5] Subsection (e) provides for no relaxation of the requirements of the rest of section 8-112 (including subsection (a)'s actual seizure requirement) but merely welcomes supplemental means by which those requirements might be met. [FN6]

[FN0.50] See Moreland v. Alpert, 124 P.3d 896, 59 U.C.C. Rep. Serv. 2d 969 (Colo. Ct. App. 2005), in which a plaintiff twice attempted to attach certificated securities before judgment. The first attempt was ineffective because it was served on the transfer agent at a time the transfer agent did not possess the certificates, and when the transfer agent later obtained possession this was not for the benefit of the plaintiff or the sheriff. The second attempt was also ineffective because the sheriff acquiesced in the transfer agent's refusal to relinquish certificates.

But see note 6, below, for the *Moreland* court's ruling as to garnishment. Similarly, see **Huntington Nat. Bank v. Entecap Corp., 61 U.C.C. Rep. Serv. 2d 473 (S.D. Miss. 2006)** (permitting judgment creditor to use pre-Article 8 demand procedure rather than seizure because certificates had allegedly been lost or destroyed, rather than compelling reissue of certificates under U.C.C. § 8-405 [Rev.]).

Copyright © 2008 by Clark Boardman Callaghan

[FN1] See UCC § 8-317(2).

Cf. Nastro v. D'Onofrio, 263 F. Supp. 2d 446, 50 U.C.C. Rep. Serv. 2d 888 (D. Conn. 2003) (for purposes of motion to dismiss, Connecticut court did not have quasi-in-rem jurisdiction over security certificates held by Channel Islands trustee pursuant to allegedly fraudulent transfer). This case is further discussed in note 6.

[FN2] The analog of subsection 8-112(c) in old Article 8 dealing with creditor process said that the interest of a person who holds through an intermediary "may be reached by a creditor by legal process upon the financial intermediary on whose books the interest of the debtor appears," UCC § 8-317(5) (1978), but did not explicitly state that this was the exclusive method.

Fidelity Partners, Inc. v. First Trust Company of New York, 58 F. Supp. 2d 55, 40 U.C.C. Rep. Serv. 2d 844 (S.D. N.Y. 1999) (discussing earlier ruling under pre-1994 Article 8 to the effect that creditor's turnover efforts should have been directed at Philippines bank through which judgment debtor's interest was held, not at New York-based paying agent, and indicating that same result would follow under Revised section 8-112).

[FN3] NY Civ Prac L & R § 5201(c)(4).

Generally, Credit Agricole Indosuez v. Rossiyskiy Kredit Bank, 38 U.C.C. Rep. Serv. 2d 973 (N.Y. 1999) (attempt by plaintiffs in debt collection action to utilize Revised § 8-112(e) to direct defendants to bring unspecified securities into New York whereby they could be attached would be denied; reviewing Revised § 8-112(e) in context of that statutory section and entirety of Revised Article 8, it was evident that legislature meant provision to apply to actions where securities sought were subject matter of action as opposed to just being assets of debtor defendant; although there was no precedent on this issue, review of legislative history (i.e., Governor's memorandum in support of adoption) supported conclusion that Revised Article 8 was intended to apply exclusively to investments).

[FN4] Subsection (d) carries forward the idea of pre-1994 section 8-317(3), but without distinguishing secured parties that are financial intermediaries from those that are not. The distinction is unnecessary in light of the 1994 Article 8 revisions that sharpen the demarcation between the direct and indirect holding systems.

[FN5] E.g., Koehler v. Bank of Bermuda Ltd., 56 U.C.C. Rep. Serv. 2d 782 (S.D. N.Y. 2005) (earlier New York court had been without authority to order Bermuda bank to deliver security certificates owned by judgment debtor into jurisdiction).

[FN6] This point was well made in two cases decided under the statute's pre-1994 version. In Detox Industries, Inc. v. Gullett, 770 S.W.2d 954, 9 U.C.C. Rep. Serv. 2d 207 (Tex. App. Houston 1st Dist. 1989), the judgment debtor's only asset was a certificated security that could not be located or seized under the predecessor of subsection 8-112(a), and as an alternative to seizure, the trial court had ordered the issuer to cancel that certificated security and reissue it in the name of a receiver. On appeal, the majority ruled this order not to be authorized by the predecessor of subsection 8-112(e), because the order would have undermined the actual seizure requirement's "sound" principle that "all possibility of the security finding its way into a transferee's hands [be] removed." See also First Nat. Bank in Dallas v. Dyes, 638 S.W.2d 957, 34 U.C.C. Rep. Serv. 1346 (Tex. App. Eastland 1982) (statute "provides no right to the issuance of a new certificate when the old one cannot be reached").

Yield Dynamics, Inc. v. Zavecz, 58 U.C.C. Rep. Serv. 2d 458 (Cal. App. 6th Dist. 2005), unpublished/noncit-

Copyright © 2008 by Clark Boardman Callaghan

able, reaches a contrary result by slighting subsection 8-112(a)'s principle of protecting possible innocent transferees. The lower court had issued an order cancelling shares represented by a certificate held out of state by a judgment debtor, and on appeal this order was held not to be an abuse of discretion. The *Detox Industries* case discussed above was found to be "factually distinguishable" in several respects, though none of these distinctions precluded the possibility of a later innocent purchaser from the judgment debtor. Similarly, in Moreland v. Alpert, 124 P.3d 896, 59 U.C.C. Rep. Serv. 2d 969 (Colo. Ct. App. 2005), the court read U.C.C. § 8-112(e) [Rev.] as permitting the state's garnishment procedures to be used as a substitute for actual seizure under U.C.C. § 8- 112(a).

Cf. Nastro v. D'Onofrio, 263 F.Supp. 2d 446, 50 U.C.C. Rep. Serv. 2d 888 (D. Conn. 2003), in which a judgment creditor sought avoidance of an allegedly fraudulent transfer of certificated securities and the debtor moved to dismiss because the certificates and the transferee were beyond the court's reach. The court denied the motion, ruling that a remedy for the creditor might take the form of an order that the issuer issue new certificates in lieu of the transferred ones. No order was actually issued due to the case's procedural posture, and the court supported its reasoning only with UCC section 1-103 (principles of law and equity supplement the Code's other provisions) and considered neither subsection 8-112(a)'s goal of protecting potential innocent transferees nor that subsection's possible effect on section 1-103 ("displac [ing]" more general principles of law and equity).

© 2008 Thomson Reuters/West

HAWKLAND § 8-112:01 [Rev]
END OF DOCUMENT

Copyright © 2008 by Clark Boardman Callaghan