Case 1:10-cv-04518-LAP   Document 255-21   Filed 07/11/12   Page 1 of 5

# INTERESTS IN SECURITIES

A Proprietary Law Analysis of the International Securities Markets

Dr Joanna Benjamin



OXFORD
UNIVERSITY PRESS

# OXFORD
UNIVERSITY PRESS

Great Clarendon Street, Oxford OX2 6DP

Oxford University Press is a department of the University of Oxford.
It furthers the University's objective of excellence in research, scholarship,
and education by publishing worldwide in

Oxford  New York

Athens  Auckland  Bangkok  Bogotá  Buenos Aires  Calcutta
Cape Town  Chennai  Dar es Salaam  Delhi  Florence  Hong Kong  Istanbul
Karachi  Kuala Lumpur  Madrid  Melbourne  Mexico City  Mumbai
Nairobi  Paris  São Paulo  Shanghai  Singapore  Taipei  Tokyo  Toronto  Warsaw

and associated companies in  Berlin  Ibadan

Oxford is a registered trade mark of Oxford University Press
in the UK and in certain other countries

Published in the United States
by Oxford University Press Inc., New York

© Dr Joanna Benjaman 2000

The moral rights of the author have been asserted

Database right Oxford University Press (maker)

First published December 2000

Crown copyright material is reproduced with the permission
of the Controller of Her Majesty's Stationery Office

All rights reserved. No part of this publication may be reproduced,
stored in a retrieval system, or transmitted, in any form or by any means,
without the prior permission in writing of Oxford University Press,
or as expressly permitted by law, or under terms agreed with the appropriate
reprographics rights organizations. Enquiries concerning reproduction
outside the scope of the above should be sent to the Rights Department,
Oxford University Press, at the address above

You must not circulate this book in any other binding or cover
and you must impose this same condition on any acquirer

British Library Cataloguing in Publication Data

Data available

Library of Congress Cataloging in Publication Data

Data available

ISBN 0–19–826992–7

1 3 5 7 9 10 8 6 4 2

Typeset by Hope Services (Abingdon) Ltd.
Printed in Great Britain
on acid-free paper by
Biddles Ltd.,
Guildford & King's Lynn

Case 1:10-cv-04518-LAP  Document 255-21  Filed 07/11/12  Page 3 of 5

# CONTENTS—SUMMARY

| | |
|---|---|
| *Preface* | xvii |
| *Acknowledgements* | xix |
| *Abbreviations* | xxi |
| *Glossary* | xxiii |
| *Table of Cases* | xxvii |
| *Table of Legislation* | xxxv |

### I  OVERVIEW

| | |
|---|---|
| 1. INTRODUCTION TO SECURITIES, INTERESTS IN SECURITIES, THE SECURITIES MARKETS AND SETTLEMENT | 3 |
| 2. THE LEGAL NATURE OF SECURITIES AND INTERESTS IN SECURITIES | 31 |

### II  DELIVERIES

| | |
|---|---|
| 3. TRANSFERS | 63 |
| 4. SECURITIES COLLATERAL | 79 |
| 5. SECURITY INTERESTS | 97 |
| 6. OUTRIGHT COLLATERAL TRANSFERS | 119 |
| 7. THE CONFLICT OF LAWS AND SECURITIES COLLATERAL | 147 |
| 8. COLLATERALISING CLEARING EXPOSURES | 171 |

### III  INFRASTRUCTURE PRODUCTS AND SERVICES

| | |
|---|---|
| 9. INTERNATIONAL AND UK SECURITIES SETTLEMENT | 189 |
| 10. GLOBAL CUSTODY, PRIME BROKERAGE AND STRAIGHT THROUGH PROCESSING | 223 |

*Contents—Summary*

## IV  REPACKAGED PRODUCTS

11. DEPOSITARY RECEIPTS AND MANAGED FUNDS .......... 251
12. COLLATERALISED BOND OBLIGATIONS AND RELATED STRUCTURES .......... 279

## V  CONCLUSIONS

13. PROPERTY RIGHTS IN INTERESTS IN SECURITIES .......... 303
14. CONCLUSIONS .......... 321

*Index* .......... 333

*B. The Legal Nature of Interests in Securities*

the bailor retains title to them.[42] Other examples of bailment are the storage of goods in warehouses and the placing of jewellery in safety deposit boxes.

However, because bailment is based on possession, it can only relate to tangible assets. Interests in securities cannot be the subject of bailment, because they are intangible.[43] The rise of interests in securities therefore requires the traditional custodial relationship to be reappraised, as discussed below.[44]   **2.32**

*(2) Indirect Interests*

Interests in securities confer on their holders rights of property in relation to the underlying securities.[45] However, they only do so indirectly, as against the intermediary in whose account the interests in securities are recorded. As discussed in Chapter 1, the holder of an interest in securities does not have a direct claim against the issuer of the underlying securities.[46] She has an economic interest in the underlying securities, but this must normally be enforced through the intermediary or intermediaries that stand between her and the issuer in the chain of ownership.   **2.33**

Chapter 13 will consider the difference between personal and property rights. It will argue that intangible assets (such as interests in securities) are only subject to property rights *as against* intermediaries. Thus, where debt securities are held for an investor by a custodian, the rights of the investor *as against the custodian* are proprietary, in the sense that they will not be at risk in the insolvency of the custodian. However, as against the issuer, any rights in relation to the debt securities are personal, because of course the rights of investors are at risk in the insolvency of the issuer. See Chapter 13 for a further discussion.   **2.34**

**Intermediary credit risk; bailment and trust**

Whenever a client entrusts her assets to an intermediary, she is concerned to ensure that her assets will not be treated as part of the intermediary's own estate, but that they will be treated as a separate fund (ie separate from the intermediary's own assets). This is because she wishes to ensure that creditors of the intermediary   **2.35**

---

[42] Although in the normal course, delivery of a bearer instrument passes title, the effect of delivery can be varied by the intention of the parties. Thus, delivery for the purposes of safekeeping creates a bailment (and delivery by way of security creates a pledge). The bailee acquires a limited legal interest, which enables it to pass good title to a purchaser.

[43] Equally registered securities cannot be bailed, because they are also intangible.

[44] See also the discussion of custody in Chapter 10.

[45] To be exact they confer indirect rights on the underlying *(interests in)* securities. However, for the sake of simplicity, it will be assumed in this discussion that the asset held by the intermediary in whose accounts the interests in securities are recorded, are securities, so that only one intermediary is involved.

[46] As indicated in Chapter 1, this is the usual position. A participant in a settlement system may be given conditional rights against the issuer under deed poll, which arise in the event of default. For the meaning of the term 'deed poll', see Blackstone (n 14 above) vol 2, 296.