# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

DEBORAH D. PETERSON,
Personal Representative of the Estate of James
C. Knipple (Dec.) *et al.*,

Case No.: 10 CIV 4518 (KBF)

Plaintiffs,

v.

ISLAMIC REPUBLIC OF IRAN, BANK
MARKAZI a/k/a CENTRAL BANK OF
IRAN, BANCA UBAE SpA, CITIBANK,
N.A., and CLEARSTREAM BANKING,
S.A.,

Defendants.

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
## ABKIR ASSOCIATES, LLC'S PETITION TO INTERVENE

Liviu Vogel
SALON MARROW DYCKMAN
NEWMAN & BROUDY LLP
292 Madison Avenue
New York, New York 10017
Tel:  (212) 661-7100
Fax: (212) 661-3339

January 23, 2013

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................... ii

THE RELEVANT FACTS....................................................................................................... 1

ARGUMENT
ABKIR'S LONG-DELAYED MOTION DOES NOT SATISFY
THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT UNDER FED.R.CIV.P. 24(A)
OR PERMISSIVE INTERVENTION UNDER FED.R.CIV.P. 24(B) ................................................ 3

    A.  RULE 42'S INTERVENTION REQUIREMENTS................................................................. 3

    B.  ABKIR CANNOT SATISFY ITS BURDEN OF DEMONSTRATING
        THE TIMELINESS OF ITS MOTION............................................................................... 4

        1.  THE DURATION OF ABKIR'S DELAY
            WEIGHS HEAVILY AGAINST INTERVENTION ...................................................... 4

        2.  THE SUBSTANTIAL PREJUDICE ASSOCIATED  WITH
            INTERVENTION AT THIS LATE DATE WEIGHS HEAVILY
            IN FAVOR OF DENYING THE PETITION............................................................... 6

        3.  THE DENIAL OF INTERVENTION WILL NOT PREJUDICE ABKIR .......................... 8

    C.  THE SECOND AND THIRD INTERVENTION FACTORS RELATED TO
        ABKIR'S INTEREST IN THE PROPERTY THAT IS THE SUBJECT OF THIS ACTION
        ALSO COMPEL DENIAL OF THE PETITION ............................................................... 10

CONCLUSION.................................................................................................................. 10

# TABLE OF AUTHORITIES

## *Cases*

*Angelo Holding Corp. v. United States,*
    321 Fed. Appx. 28 (2d Cir. 2009)..................................................................... 5

*Baker v. Hull,*
    250 N.Y. 484 (1929) ....................................................................................... 9

*Bernheim v. Damon and Morey, LLP,*
    2007 U.S. App. LEXIS 15530 (2d Cir. June 28, 2007) ........................................ 5

*Butler, Fitzgerald & Potter v. Sequa Corp.,*
    250 F.3d 171 (2d Cir. 2001)........................................................................ 3, 5, 10

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001).............................................................................. 7

*Dorey v. Perfetti Builder's Hardware, Inc.,*
    241 B.R. 507 (Bankr. W.D.N.Y. 1999) ............................................................ 9

*In re Bank of New York Derivative Litig.,*
    320 F.3d 291 (2d Cir. 2003)........................................................................... 3

*In re Holocaust Victim Assets Litig.,*
    225 F.3d 191 (2d Cir. 2000)........................................................................... 5

*Levin v. Bank of New York,*
    2011 U.S. Dist. LEXIS 8946 (S.D.N.Y. Jan. 28, 2011)........................................ 8

*Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n,*
    471 F.3d 377 (2d Cir. 2006)...................................................................3-4, 7, 10

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg., Corp.,*
    467 F.3d 238 (2d Cir. 2006)............................................................................ 3

*Schonfeld v. City of New York,*
    14 Fed. Appx. 128 (2d Cir. 2001) ...................................................................7-8

*State Tax Com. v. Shor,*
    43 N.Y.2d 151 (1977) .................................................................................... 9

*United States v. New York,*
    820 F.2d 554 (2d Cir. 1987)........................................................................... 4, 8

*United States v. Pitney Bowes, Inc.,*
    25 F.3d 66 (2d Cir. 1994).............................................................................. 5, 8

### *Statutes and Rules*

22 U.S.C. § 8772.................................................................................................2, 6-7

28 U.S.C. § 1610.................................................................................................1-3, 8

50 U.S.C. § 1701....................................................................................................... 2

Fed. R. Civ. P. 7.1 .................................................................................................... 1

Fed. R. Civ. P. 24.............................................................................................1, 3-4, 8-9

### *Other Authorities*

Executive Order 13599 ............................................................................................. 2

Terrorism Risk Insurance Act of 2002...............................................................2, 7-8

All of the judgment creditors in this action (collectively, "Plaintiffs") respectfully submit this joint memorandum of law in opposition to the "petition" of Abkir Associates, LLC ("Abkir") to intervene in this action (the "Petition").[1]

### THE RELEVANT FACTS

Plaintiffs are judgment creditors of the Islamic Republic of Iran ("Iran"). *See* Declaration of Liviu Vogel ("Vogel Decl.") at ¶ 13, 16-17. The total of Plaintiffs' compensatory damages judgments exceeds $3.7 billion. *Id.* at ¶ 32. All Plaintiffs obtained orders permitting the execution of their judgments pursuant to 28 U.S.C. § 1610(c), a prerequisite to execution of judgments against foreign sovereigns and their agencies and instrumentalities under the Foreign Sovereign Immunities Act ("FSIA"). Vogel Decl. at ¶ 13. In addition, most if not all Plaintiffs obtained writs of execution that have already been levied upon the Blocked Assets (as defined below). *Id.* at ¶¶ 3-6, 13.

In June 2008, Plaintiffs began their efforts to enforce their judgments when the Peterson Plaintiffs served restraining notices on Citibank and Clearstream and caused an execution to be levied upon Citibank by the U.S. Marshal (the "Restraints"). *Id.* at ¶¶ 3,5 and 6. After Citibank and defendant Clearstream Banking, S.A. moved to vacate that order, the Court modified the Restraints to reflect that Markazi had sold certain bonds with a face amount of $250 million before the Restraints issued. *Id.* at ¶ 7. Thus, the total amount of assets subject to the Restraints (the "Blocked Assets") now exceeds $1.75 billion. *Id.*

After the Peterson Plaintiffs conducted significant motion practice and discovery in the Miscellaneous Action that they commenced to obtain the Restraints and otherwise facilitate the collection of their judgment, they commenced a turnover action on June 8, 2010. *Id.* at ¶ 19. The Court ordered consolidation of the turnover and miscellaneous proceedings on June 27,

---

[1] Abkir has not moved to intervene in this proceeding in accordance with Fed. R. Civ. P. 24. Nor has it complied with Fed. R. Civ. P. 7.1 by filing a corporate disclosure statement.

2011. *Id.* at ¶ 23. The hundreds of additional Plaintiffs also have asserted turnover claims related to the Blocked Assets. *Id.* at ¶ 22. Since the Peterson Plaintiffs commenced their collection efforts in this court, Iran's interest in the Blocked Assets and the pendency of this proceeding have been the subject of numerous press reports, including articles in *The Wall Street Journal* (December 12, 2009, August 16, 2011 and December 30, 2011), *Bloomberg.com* (December 31, 2011), PR Newswire (December 12, 2011), *The Jerusalem Post* (August 17, 2011, March 13, 2012, May 16, 2012 and June 12, 2012) and Reuters (August 24, 2012). *See* Vogel Decl. at ¶ 28 and Ex. O.

While Plaintiffs were pursuing their turnover action, President Obama issued Executive Order 13599 ("E.O. 13599") on February 5, 2012. Vogel Decl. at ¶ 14. E.O. 13599 declared the Blocked Assets (and other Iranian assets) "blocked" pursuant to the President's authority under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.* Vogel Decl. at ¶ 14 and Ex. I at § 1. Following the issuance of E.O. 13599, all Plaintiffs joined in their April 2, 2012 summary judgment motion, which seeks to enforce their rights to turnover of the Blocked Assets pursuant to § 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA").[2] Vogel Decl. at ¶ 25. After Plaintiffs filed that motion, Congress passed 22 U.S.C. § 8772, which eliminated certain of the supposed defenses that defendants Markazi and Clearstream have asserted to turnover of the Blocked Assets. Vogel Decl. at ¶ 26. All Plaintiffs also joined in the supplemental summary judgment brief that Plaintiffs filed with respect to their rights under § 8772. *Id.* At the status conference held on November 27, 2012, the Court indicated that it intended to resolve Plaintiffs' summary judgment motions (and all other pending motions) by the end of this month. *See id.* at ¶ 27 and Ex. N at 8:17-19 and 32:20-25.

---

[2] TRIA was adopted as Pub. L. No. 107-297, 116 Stat. 2322 (2002) and is codified at 28 U.S.C. § 1610 (Note).

2

According to Abkir's Petition, Shahintaj Bakhtiar obtained a $12 million judgment against Iran (the "Bakhtiar Judgment") on July 17, 2008. Petition at Ex. 1. Ms. Bakhtiar assigned the Bakhtiar Judgment to Abkir on August 27, 2010. Petition at Ex. 2. Abkir registered the Bakhtiar Judgment in this Court on December 14, 2012. Petition at Ex. 3. On January 9, 2013, the Clerk of this Court issued a writ of execution to Abkir for the Blocked Assets. Petition at Ex. 4. Abkir never asserts that it obtained an order pursuant to 28 U.S.C. § 1610(c) authorizing its writ. On January 14, 2013, Abkir filed its Petition, together with a form of proposed order granting Abkir leave to intervene and "to share in any assets ordered to be turned over by the Court in satisfaction of judgment."

**ARGUMENT**

**ABKIR'S LONG-DELAYED MOTION DOES NOT SATISFY THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT UNDER FED. R. CIV. P. 24(a) OR PERMISSIVE INTERVENTION UNDER FED. R. CIV. P. 24(b)**

**A.      Rule 24's Intervention Requirements**

The Second Circuit has determined that "substantially the same factors" govern motions to intervene irrespective of "whether the claim for intervention is 'of right' under Fed. R. Civ. P. 24(a)(2), or 'permissive' under Fed. R. Civ. P. 24(b)(2)." *"R" Best Produce, Inc. v. Shulman-Rabin Mktg., Corp.*, 467 F.3d 238, 240 (2d Cir. 2006) (citing *In re Bank of New York Derivative Litig.*, 320 F.3d 291, 300 n.5 (2d Cir. 2003)). "Intervention as of right under Rule 24(a)(2) is granted when all four of the following conditions are met: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006); *accord, e.g., Butler, Fitzgerald &*

3

*Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001) (emphasizing that the failure to satisfy any one of the same criteria mandates the denial of intervention).[3]

"Factors to consider in determining timeliness include: '(a) the length of time the applicant knew or should have known of [its] interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to [the] applicant if the motion is denied; and (d) [the] presence of unusual circumstances militating for or against a finding of timeliness.'" *Mastercard*, 471 F.3d at 390 (quoting *United States v. New York,* 820 F.2d 554, 557 (2d Cir. 1987)).

**B.      Abkir Cannot Satisfy Its Burden Of
         Demonstrating The Timeliness Of Its Motion**

**1.      The Duration Of Abkir's Delay Weighs Heavily Against Intervention**

Even standing alone, the untimeliness of Abkir's motion compels its denial.  Abkir admits that Ms. Bakhtiar secured her judgment four-and-one-half years ago, in July 2008. Petition at ¶ 22.  Two years later, Ms. Bakhtiar assigned her judgment to Abkir, an entity about which the Petition reveals precious little.  *Id.* at ¶ 23 and Ex. 2 at p. 2.  The assignment declares that Ms. Bakhtiar received "good and valuable" consideration for assigning her claim to Abkir, which apparently serves as a financial buyer of judgments.  Petition, Ex. 2 at p. 2.

Despite the nature of Abkir's business, the Petition offers no explanation whatsoever regarding why it stood idly by until four-and-one-half years after Ms. Bakhtiar obtained her judgment.  Abkir and Ms. Bahktiar have known of their right to undertake efforts to enforce their judgment since 2008.  Moreover, this case itself has generated substantial publicity since its filing in 2008.  *See* Vogel Decl. at ¶ 28.  Thus, Abkir cannot advance any credible explanation

---

[3] Rule 24(b), which governs permissive intervention, provides: "On timely motion, the court may permit anyone to intervene who: [¶] (A) is given a conditional right to intervene by a federal statute; or [¶] (B) has a claim or defense that shares with the main action a common question of law or fact."

for its lengthy, impermissible delay.  The substantial duration of that delay alone justifies the denial of intervention.  *See, e.g., Angelo Holding Corp. v. United States*, 321 Fed. Appx. 28, 29 (2d Cir. 2009) (denying intervention in post-foreclosure surplus action brought by entity whose predecessor-in-interest forfeited a substantial down payment when it failed to close on a first foreclosure sale involving the foreclosed property where the proposed intervenor filed its motion "fifteen months after the second (successful) foreclosure sale, and eleven months after that sale was formally closed in February 2006"); *Butler*, 250 F.3d at 182 (law firm's one-year delay in seeking to intervene in an ongoing action where it had been discharged as counsel for the purpose of protecting its charging lien weighed heavily in favor of denying intervention); *Bernheim v. Damon and Morey, LLP*, 2007 U.S. App. LEXIS 15530, at *7-8 (2d Cir. June 28, 2007) ("As Bernheim has failed to justify his three month delay in filing his motion to intervene, we cannot say that the District Court abused its discretion in denying that motion as untimely."); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198-99 (2d Cir. 2000) (denying motion to intervene brought by group of Polish Holocaust survivors who waited eight months before filing their motion); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 71 (2d Cir. 1994) (denying intervention where applicant should have known of potential interest in Superfund litigation from notice filed in Federal Register eight months prior to the motion).

Citibank's observation that other Plaintiffs entered this litigation seven months ago does not cure the untimeliness of Abkir's Petition.  Many of those Plaintiffs are members of Marine families injured in the same Beirut bombing as the Peterson Plaintiffs who had only recently obtained judgments, and all of the additional Plaintiffs have worked cohesively with the other Plaintiffs throughout the course of this litigation.  As a result, those Plaintiffs participated in Plaintiffs' settlement of their priority issues and their inclusion in this action did not prejudice any party by delaying the resolution of this action.

5

2.     **The Substantial Prejudice Associated With Intervention At
       This Late Date Weighs Heavily In Favor Of Denying The Petition**

Abkir's Petition also ignores the substantial prejudice that permitting intervention at this late date would impose upon Plaintiffs. The Peterson Plaintiffs restrained and commenced execution on the Blocked Assets that are the subject of this action approximately one month before Ms. Bakhtiar secured her judgment. *See* Vogel Decl. at ¶ 3,5-7. Since that time, they and the other Plaintiffs have worked tirelessly here in New York and elsewhere in order to secure the payment of their judgments by Iran or its agencies and instrumentalities. *See id.* at ¶¶ 11-12, 19-21, 25-26, 29-30. In this Court alone, those efforts have required the expenditure of millions of dollars in legal fees and hundreds of thousands of dollars in expenses. *Id.* at ¶ 29. In addition, Plaintiffs worked cohesively to focus the attention of Congress upon this matter, their efforts to secure payment from Iran and the actions of and defenses asserted by the Defendants. *Id.* at ¶ 30. Those efforts contributed to the passage of 28 U.S.C. § 8772, which supplies one of the principal bases for Plaintiffs' summary judgment motion. *Id.*

While undertaking those extensive efforts, Plaintiffs made countless strategic decisions that were impacted by the identities of the parties in this litigation and the status of Plaintiffs' collection efforts. Perhaps most importantly, Plaintiffs struck an agreement that governs their relative interests in any funds ultimately recovered in this litigation in order to avoid the delay and other difficulties inherent in any internal battle to establish priority to the Blocked Assets among themselves. *Id.* at ¶ 31. That long-negotiated compromise facilitated Congress's passage of § 8772.

Moreover, through their extensive efforts, Plaintiffs have pushed this case to the brink of a favorable resolution. Specifically, the Court recently indicated its intention to resolve

Plaintiffs' motion for summary judgment with respect to their TRIA claim and their rights under § 8772 by the end of this month. *See* Vogel Decl. at ¶ 27 and Ex. N at 8:17-19 and 32:20-25.

Thus, Abkir has filed its intervention motion at absolutely the last possible moment, in a litigation that has been pending for over four-and-one-half years in which Plaintiffs have undertaken enormous efforts both within and outside of the litigation to guarantee their success in collecting upon their judgments. In contrast, Abkir has done nothing to protect whatever rights it possesses. It merely seeks to swoop in at the last minute to draft off of Plaintiffs' work after their efforts have produced a high likelihood of success.

Permitting Abkir to profit from its dilatory conduct would be decidedly unfair. It would delay justice – at the eleventh hour – for victims of terrorism who have put forth enormous effort at great expense to push this case towards the brink of resolution. It would upset the delicate balance that Plaintiffs struck in their compromise agreement between expediting the resolution of this action, pursuing their claims to priority and facilitating the passage of § 8772. *See* Vogel Decl. at ¶¶ 30-31. Permitting Abkir to intervene at this late date also would encourage judgment creditors to strategically stand on the sidelines while others fight their battles, something New York's priority rules emphatically bar. Accordingly, the prejudice entailed in Abkir's belated intervention suffices – even standing alone – to deny Akbir's Petition. *See, e.g., Mastercard,* 471 F.3d at 381, 390-91 (denying Visa intervention in an action brought by Mastercard related to its supposed right to serve as sponsor of soccer's World Cup because permitting Visa to intervene six months after Mastercard commenced the action and just weeks prior to a preliminary injunction hearing would prejudice Mastercard); *D'Amato v. Deutsche Bank,* 236 F.3d 78, 84 (2d Cir. 2001) (finding motion to intervene untimely, in part because "[a]ppellant offers no explanation for waiting to file his intervention motion until three days prior to the Fairness Hearing"); *Schonfeld v. City of New York,* 14 Fed. Appx. 128, 131 (2d Cir. 2001)

7

(denying motion to intervene as untimely where lawsuit had proceeded to summary judgment stage and delay to accommodate proposed intervenor would therefore prejudice all parties); *Pitney Bowes*, 25 F.3d at 72 (delay inherent in belatedly adding new party to well-developed settlement negotiations in CERCLA action constituted prejudice sufficient to justify denial of intervention); *United States v. New York*, 820 F.2d at 557 (denying intervention by party who sought admission to state trooper class just one month prior to commencement of classes based upon race discrimination arguments because granting motion would impermissibly prejudice state by requiring it to reassess the membership of the new class).

### 3.      The Denial Of Intervention Will Not Prejudice Abkir

Abkir also fails to articulate any prejudice that it will suffer if the Court denies its Petition because Abkir fails to assert any cognizable interest in the Blocked Assets.  The only reference in Abkir's Petition to the basis of its claim appears in paragraph 1, in a conclusory statement that suggests that its claim arises under the FSIA and TRIA.  One might infer from the attachment of a copy of a writ of execution issued by the Clerk of this Court as Exhibit 4 to the Petition that Abkir asserts an interest as an execution creditor.  Abkir fails, however, to allege that it obtained a Court Order permitting enforcement of its judgment, as 28 U.S.C. § 1610(c) requires for FSIA and TRIA claims related to the assets of foreign states and their agents and instrumentalities.  In the absence of a valid writ of execution, Abkir lacks the legally protectable interest in the Restrained Assets required to satisfy Rule 24(a)(2)'s third requirement.  *See Levin v. Bank of New York*, 2011 U.S. Dist. LEXIS 8946, at *35-36, 43-46 (S.D.N.Y. Jan. 28, 2011) (plaintiffs' failure to follow the procedures mandated by 1610(c) before issuing a writ of execution rendered their writ of execution invalid and prevented them from enforcing claims under TRIA or the FSIA).

8

Abkir also fails to satisfy Rule 24's "interest" requirement because it advances no basis for ruling that its judgment should assume priority over Plaintiffs' compensatory damages judgments, which vastly exceed the amount of the Blocked Assets. *See* Vogel Decl. at ¶ 32 (explaining that Plaintiffs' compensatory damages judgments total $3,745,106,155, which far exceeds the approximate $1.8 billion value of the Blocked Assets). In connection with their summary judgment motion, Plaintiffs established the validity of their judgments and their priority status as claimants against the Blocked Assets. *See id.* at ¶ 13, 25 and 26. Even assuming, *arguendo*, that Abkir's writ of execution was validly issued, it would not establish a priority lien over the liens already established by Plaintiffs. *See* Vogel Decl. at ¶¶ 3, 4, 9, 10 and 11. Assuming Abkir served its writ on the United States Marshal in the Southern District of New York on the day the writ issued, Abkir's lien on personal property of the judgment debtors within New York County would first have been established on January 9, 2013. *See State Tax Com. v. Shor*, 43 N.Y.2d 151, 158 (N.Y. 1977) ("CPLR 5202 and 5234, governing rights and priorities of judgment creditors in personal property, require delivery of [an] execution to the sheriff before a creditor may obtain priority in the property"); *Dorey v. Perfetti Builder's Hardware, Inc.*, 241 B.R. 507, 509 (Bankr. W.D.N.Y. 1999) ("A lien is obtained upon personal property of a judgment debtor when the execution has been actually delivered to the sheriff to be executed. Moreover, the lien upon the personal property arises, not when levy is made, but at the moment when the execution is delivered to the officer.") (citing *Baker v. Hull*, 250 N.Y. 484, 488 (N.Y. 1929) ("[F]rom the earliest period in our history it was the law of the State that a lien arises, not when a levy is made, but at the moment when an execution is delivered to an officer.").

By contrast, the Peterson Plaintiffs established their priority to the Blocked Assets by serving their writ on the Marshal on June 12, 2008, four-and-one-half years before Abkir allegedly established its lien. *See* Vogel Decl. at ¶ 3. Moreover, according to pleadings filed

under seal, all of the other Plaintiffs established their liens upon the Blocked Assets long before

Abkir belatedly filed its Petition.  Because the amount of the priority liens that Plaintiffs have

established vastly exceeds the amount of the Blocked Assets, Abkir has failed to demonstrate

any cognizable interest that it possesses in the Blocked Assets.

**C.     The Second And Third Intervention Factors Related To
         Abkir's Interest In The Property That Is The Subject Of
         This Action Also Compel The Denial Of The Petition**

The second and third intervention factors cited in *Mastercard, Butler* and countless other

cases also weigh heavily against granting the Petition.  In short, for the reasons addressed in

Point B3, Abkir has no cognizable interest in the Blocked Assets because Plaintiffs have

established their superior priority to those funds.  As a result: (a) Abkir possesses no "interest

relating to the property . . . that is the subject of the action"; and (b) denying intervention will not

impede Abkir's "ability to protect its interest" in any property because Abkir possesses no such

interest.  *Mastercard*, 471 F.3d at 390; *Butler*, 250 F.3d at 176.

**CONCLUSION**

For all of the reasons set forth above, the Court should deny Abkir's "Petition" to

intervene in this action in all respects.

Dated:  January 23, 2013                    Respectfully submitted,

                                            Liviu Vogel
                                            Annureet K. Grewal
                                            Salon Marrow Dyckman Newman & Broudy LLP
                                            292 Madison Avenue
                                            New York, NY  10017
                                            (212) 661-7100

                                            – and –

                                            James P. Bonner

10

Patrick L. Rocco
Stone Bonner & Rocco LLP
260 Madison Avenue, 17th Floor
New York, NY  10016
(212) 239-4340

*Attorneys for Peterson Plaintiffs*


Curtis C. Mechling
James L. Bernard
Benjamin Weathers-Lowin
Monica Hanna
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY  10038
(212) 806-5400

*Attorneys for Greenbaum and Acosta
Plaintiffs*


Richard Marc Kremen
DLA Piper US LLP (MD)
6225 Smith Avenue
Baltimore, MD 21209
(410) 580-3000

*Attorneys for Heiser Plaintiffs*


Suzelle M. Smith
Howarth and Smith (LA)
523 West Sixth Street,
Suite 728
Los Angeles, CA 90014
(213) 955-9400

*Attorneys for Levin Plaintiffs*

11

Keith Martin Fleischman
Fleischman Law Firm
565 Fifth Avenue, 7th Floor
New York, NY 10017
(212) 880-9571

*Attorneys for Valore Plaintiffs*