# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate Of James C. Knipple (Dec.), et al. | Case No.: 10 CIV 4518(BSJ) (CWG) |
| **Plaintiffs,** | |
| v. | **DECLARATION OF LIVIU VOGEL IN SUPPORT OF PLAINTIFFS' OPPOSITION TO ABKIR ASSOCIATES, LLC'S PETITION TO INTERVENE** |
| ISLAMIC REPUBLIC OF IRAN; BANK MARKAZI a/k/a CENTRAL BANK OF IRAN; BANCA UBAE SpA; CITIBANK, N.A., and CLEARSTREAM BANKING, S.A., | |
| **Defendants.** | |

I, Liviu Vogel, an attorney duly admitted to practice law before the Courts of the State of New York, and this Court, declare under penalties of perjury:

1.    I am a member of the firm of Salon Marrow Dyckman Newman & Broudy LLP, attorneys for Peterson Plaintiffs in the above-captioned action.  I make this declaration in support of Plaintiffs' opposition to the petition to intervene of Abkir Associates, LLC ("Abkir").

**A. History of Peterson Plaintiffs' Restraint of the Blocked Assets**

2.    This turnover action involves the roughly $1.75 billion in funds comprised of securities and cash (the "Blocked Assets") owned by Defendant Bank Markazi a/k/a Central Bank of Iran ("Markazi") that are *currently* located in a "blocked," interest-bearing suspense account at Citibank, N.A. (the "Blocked Account") and which are the subject of restraints (the "Restraints") described below.

3.      The Clerk of the United States District Court, Southern District of New York issued to Peterson Plaintiffs a Writ of Execution, dated June 12, 2008 as to the Blocked Assets, which were levied upon by the United States Marshal at Citibank, N.A. ("Citibank") on June 13, 2008.  Those actions had the effect of restraining the Blocked Assets under CPLR §5232(a).  True and correct copies of the Writ of Execution and the return of service by the United States Marshal evidencing the levy are annexed hereto as Exhibit A.

4.      The Clerk of the United States District Court, Southern District of New York issued to Peterson Plaintiffs a Writ of Execution, dated October 17, 2008 as to the Blocked Assets, which were levied upon by the United States Marshal at Clearstream Banking S.A. on October 27, 2008.  Those actions had the effect of restraining the Blocked Assets under CPLR §5232(a).  True and correct copies of the Writ of Execution and the return of service by the United States Marshal evidencing the levy are annexed hereto as Exhibit B.

5.      The Peterson Plaintiffs issued a Restraining Notice regarding the Blocked Assets dated June 16, 2008, and an Amended Restraining Notice dated June 20, 2008, and served the same upon Citibank on June 17, 2008 and June 24, 2008, respectively. True and correct copies of the Restraining Notice and Amended Restraining Notice served on Citibank are attached hereto as Exhibit C.

6.      The Peterson Plaintiffs issued a Restraining Notice regarding the Blocked Assets dated June 16, 2008, and an Amended Notice dated June 20, 2008, and served the same upon Clearstream Banking, S.A. ("Clearstream") on June 16, 2008 and June 23,

2008, respectively.  True and correct copies of the Restraining Notice and Amended
Restraining Notice served on Clearstream are attached hereto as <u>Exhibit D</u>.

7.      When initially entered, the above-mentioned restraints applied to
approximately $2 billion worth of assets.  However, after Citibank and defendant
Clearstream moved to vacate the Restraints, at a hearing on June 27, 2008 this Court
modified the Restraints to reflect the fact that Markazi had sold certain bonds with a face
amount of $250 million before the Restraints issued.  At that time, this Court also ordered
that the Blocked Assets remain restrained until further order of the Court.  *See* a true and
correct of the Court's Order of June 27, 2008 attached hereto as <u>Exhibit E</u>.  Thus, the
total amount of the Blocked Assets with accumulated interest now exceeds $1.75 billion.

8.      Pursuant to the Peterson Plaintiffs' application dated May 28, 2009 for
leave to serve a second restraining notice or for an order extending the restraining notices
previously served upon Clearstream and Citibank, this Court, by way of an Order dated
June 23, 2009, continued the restraint of the Blocked Assets until further order of this
Court.  A true and accurate copy of this Court's Order dated June 23, 2009 is attached
hereto as <u>Exhibit F</u> ("The restraints will remain in place until the Court has determined
whether Clearstream is, or could be made, a proper garnishee, assuming a fraudulent
conveyance could be shown by Plaintiffs.").

9.      This Court issued an order on May 10, 2010, a true and correct copy of
which is attached hereto as <u>Exhibit G</u>, which continued the restraint and effect of the June
2008 execution and levy of the Blocked Assets.  *Id.*  ("Plaintiffs' execution issued by this
Court on June 12, 2008 and the levy by service of the execution initially made on

Citibank on June 13, 2008, are hereby extended *nunc pro tunc* until 30 days after the date of this Order...").

10.     On June 11, 2010, the Court again extended the restraint and the October 2008 execution and levy of the Blocked Assets. A true and correct copy of the Court's Order dated June 11, 2010 is attached hereto as <u>Exhibit H</u> ("Plaintiffs' execution issued by this Court on October 17, 2008 and the levy by service of the execution initially made on Clearstream on October 27, 2008, are hereby extended *nunc pro tunc* until 15 days after the date of this Order...").

11.     On June 8, 2010, the Peterson Plaintiffs filed their complaint seeking turnover of the Blocked Assets, which had the effect of continuing the restraints on those assets pursuant to CPLR 5232(a) until transfer or payment of the Blocked Assets is made.

12.     The Peterson Plaintiffs filed their Amended Complaint on October 20, 2010 and their Second Amended Complaint on December 7, 2011.

13.     All of the Plaintiffs have obtained orders permitting the enforcement of their judgments pursuant to 28 U.S.C. § 1610(c), a prerequisite to execution of judgments against sovereigns and their agencies and instrumentalities under the Foreign Sovereign Immunities Act ("FSIA"). All of the plaintiffs secured judgments against Iran based on acts of terrorism. (*See* Declarations of various Plaintiffs' counsel filed on April 4, 2012 in this action at Docket Entries 211, 212, 213 and 214).

14.     On February 5, 2012, by Executive Order 13599 ("E.O. 13599"), President Obama declared "[a]ll property and interests in property of" Iran or Markazi held in the United States or by a "United States person" "blocked" pursuant to the President's authority under the International Emergency Economic Powers Act

("IEEPA"), 50 U.S.C. § 1701.   *See* the true and correct copy of E.O. 13599 attached hereto as Exhibit I at § 1.

**B.  The Peterson Plaintiffs' Judgment**

15.     On May 30, 2003, the United States District Court for the District of Columbia issued an opinion, in the consolidated action styled *Peterson v. Islamic Republic of Iran,* 01-cv-2094 (RCL) ("Peterson Action"), finding that (a) the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS") legally responsible for providing material financial and logistical support to help carry out the murder of the 241 American servicemen at the United States Marine barracks in Beirut, Lebanon on October 23, 1983 and (b) the surviving family members suffered and would continue to suffer mental anguish and loss of society.  A true and accurate copy of the May 30, 2003 Memorandum and Order from the United States District Court for the District of Columbia, which is a public record, is attached hereto as Exhibit J.

16.     On September 7, 2007, the United States District Court for the District of Columbia entered a Default Judgment ("Judgment") against Iran and MOIS, jointly and severally, in the Peterson Action, awarding economic and compensatory damages totaling $2,656,944,877.00.  A true and correct copy of the September 7, 2007 Memorandum and Judgment from the United States District Court for the District of Columbia, which is a public record, is attached hereto as Exhibit K.

17.     The Judgment was entered under 28 U.S.C. § 1605(a)(7) and remains unsatisfied in the amount of $2,656,944,877.00, plus post-judgment interest at the legal rate against Iran and MOIS.

18.     On March 24, 2008, the Peterson Plaintiffs registered the September 7, 2007 Judgment with this Court pursuant to 28 U.S.C. § 1963, under case number M18-302, judgment number 080472.  A true and correct copy of the September 7, 2007 Judgment as registered with this Court, which is a public record, is attached hereto as Exhibit L.

### C.  The Peterson Plaintiffs' Action for Turnover

19.     After significant motion practice and discovery (requiring multiple trips by the undersigned to Italy) was conducted in Miscellaneous Action M18-302, the Peterson Plaintiffs commenced this action by filing a Summons and Complaint on June 8, 2010 and an Amended Complaint on October 20, 2010 against Iran, Markazi, Banca UBAE SpA ("UBAE"), Citibank and Clearstream for, among other relief, a turnover of the now Blocked Assets.

20.     Thereafter, the Peterson Plaintiffs duly served each defendant with Plaintiffs' initial Summons and Complaint and their Amended Complaint.

21.     On December 7, 2011, the Peterson Plaintiffs filed their Second Amended Complaint, which continued to seek, among other things, turnover of the Blocked Assets. (*See* Docket Entry 216).  That complaint was served on counsel for Defendants Markazi, Clearstream, Citibank and UBAE.

22.     The remaining Plaintiffs also have asserted turnover claims related to the Blocked Assets in pleadings filed under seal.

23.     On June 27, 2011, after a telephonic conference on April 21, 2011 with counsel for Peterson and the defendants, the Court ordered consolidation of Miscellaneous Action M18-302 with this proceeding and required Citibank to file any

interpleader complaint by no later than August 8, 2011 and that any further interpleader pleadings shall be filed no later than October 3, 2011.  The deadlines for filing interpleader pleadings was established by the Court to address the Peterson plaintiffs' concern that continually adding other creditors to the turnover action would unduly delay the action and prejudice the Peterson plaintiffs.  The June 27, 2011 Order is filed under seal.

24.    On July 29, 2011, Citibank served its Third-Party Petition Alleging Claims in the Nature of Interpleader on Defendants Clearstream, Markazi and UBAE.  *See* a true and correct copy of Citibank's Certificate of Service of its Third-Party Petition Alleging Claims in the Nature of Interpleader Exhibit M.

### D.  Plaintiffs' Motion for Summary Judgment

25.    Following the issuance of E.O. 13599, all of the Plaintiffs joined in their April 2, 2012 summary judgment motion, which seeks to enforce their rights to turnover of the Blocked Assets pursuant to Terrorism Risk Insurance Act of 2002 ("TRIA").

26.    After Plaintiffs filed that motion, Congress passed 22 U.S.C. § 8772, which eliminated certain of the supposed defenses that defendants Markazi and Clearstream have asserted to turnover.  All of the Plaintiffs also joined in the supplemental summary judgment motion that Plaintiffs filed pursuant to § 8772.

27.    At the status conference held on November 27, 2012, the Court indicated that it intended to resolve Plaintiffs' summary judgment motions (and all other pending motions) by the end of this month.  (*See* Transcript of November 27, 2012 [Docket Entry 293] annexed hereto as Exhibit N at 8:17-19 and 32:20-25).

**E.  Widespread Publicity Concerning This Action**

28.    Since the Peterson Plaintiffs commenced their collection efforts in this court, Iran's interest in the Blocked Assets and the pendency of this proceeding have been the subject of numerous press reports, including articles that appeared in The Wall Street Journal (on December 12, 2009, August 16, 2011 and December 30, 2011), Bloomberg.com (December 11, 2011), PR Newswire (December 12, 2011), and The Jerusalem Post (including on August 17, 2011, March 13, 2012, May 16, 2012 and June 12, 2012) and Reuters (August 24, 2012).  See articles attached as Exhibit O.

**F.  Plaintiffs' Enormous Effort to Enforce Their Judgment and Prosecute Their Claims**

29.    Since the filing of the Peterson Plaintiffs' initial restraints in 2008, the Peterson Plaintiffs, the other Plaintiffs involved in this action and their counsel collectively have worked tirelessly here in New York and elsewhere in an effort to secure the payment of their judgments by Iran or its agencies and instrumentalities.  In this Court alone, those efforts have required the expenditure of millions of dollars in legal fees and hundreds of thousands of dollars in expenses.

30.    In addition, the Plaintiffs worked cohesively and at considerable expense to focus the attention of Congress upon this matter, their efforts to secure payment from Iran and the actions and defenses asserted by the Defendants.  Those efforts led to the passage of 28 U.S.C. § 8772, which is the subject of Plaintiffs' Supplemental Motion for summary judgment.

31.    While undertaking those extensive efforts, the Plaintiffs have made countless strategic decisions that were impacted by the identities of the parties in this litigation.  Perhaps most importantly, the Plaintiffs struck an agreement that governs their

8

relative interests in any funds ultimately recovered in this litigation.

32.     Because the Blocked Assets are far less than the total amount of Plaintiffs'
judgments for compensatory damages (which are collectively worth $3,745,106,155),
that agreement resolves the priority of the various plaintiffs groups to the Blocked Assets.
Moreover, through their extensive efforts, Plaintiffs have pushed this case to the brink of
resolution.  Specifically, the Court recently indicated its intention to resolve Plaintiffs'
pending motion for summary judgment with respect to their TRIA claim and their rights
under § 8772 by the end of this month.  *See* Exhibit N at 8:17-19 and 32:20-25.

33.     Thus, Abkir has filed its intervention motion at absolutely the last possible
moment, in a litigation that has been pending for more than four-and-one-half years in
which Plaintiffs have undertaken enormous efforts both within and outside of the
litigation to guarantee their success in collecting upon their judgments.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing
is true and correct. Executed on January 23, 2013 in New York, New York.

_____
Liviu Vogel