Exhibit O

» Print

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to colleagues, clients or customers, use the Reprints tool at the top of any article or visit: www.reutersreprints.com.

# Tweak to U.S. bill on Iran sanctions opens door to damages

Fri, Aug 24 2012

By Basil Katz



NEW YORK (Reuters) - One way to win a court case is to get the United States Congress to change the rules of the game midstream.

A little-noticed provision tucked into the latest Iran sanctions bill may have done just that for American victims of a 1983 bombing of the U.S. Marine Corps barracks in Beirut.

The sanctions bill, signed by President Barack Obama on August 10, set out additional penalties against Tehran to curb the country's nuclear ambitions.

The bill also specifically disarms claims the Central Bank of Iran has made in a legal battle in federal court in Manhattan over $1.75 billion in securities frozen in a New York bank account that the central bank says it owns.

The plaintiffs in that case are trying to get Tehran, through the Central Bank of Iran, to pay damages for Iran's suspected role in helping Hezbollah carry out the barracks attack during the civil war in Lebanon.

The $1.75 billion was uncovered by the U.S. Treasury Department in 2008 and sits in a New York branch of Citibank, part of Citigroup. Treasury says the money is effectively Iranian funds.

The Beirut plaintiffs' lawsuit, filed in 2010, argues that the funds should go toward paying a $2.65 billion damages award they obtained against Iran in 2007 and have so far been unable to collect.

In court papers, the Central Bank of Iran has argued that the funds are off limits from seizure under the doctrine of sovereign immunity, which holds that foreign states or their agents are not subject to another nation's laws.

But Section 502 of the sanctions law, officially known as the Iran Threat Reduction and Syria Human Rights Act of 2012, takes direct aim at that defense.

The section specifically declares that the Central Bank of Iran "is not immune" under the Foreign Sovereign Immunities Act of 1976, the U.S. law that Iran's central bank claims protects its funds from seizure.

It also states that the "financial assets that are identified" in the Manhattan case "shall be subject to execution or attachment ... to satisfy any judgment to the extent of any compensatory damages awarded against Iran."

Over the years, there have been billions of dollars in default judgments against Iran levied by U.S. courts in favor of Americans, but never collected. Language in the latest sanctions bill, which could be subject to legal challenge, appears to have brought the plaintiffs in the Manhattan case closer to seizing actual funds than in any other case.

David Lindsey, a New York-based lawyer for the Central Bank of Iran, also known as Bank Markazi, acknowledged that the new sanctions law could affect the Manhattan case.

"The purpose of this 10th inning change in the law was to do away with our defenses," Lindsey said. "No allegations have ever been made that the Central Bank of Iran was involved in the 1983 attack," he said.

Steven Perles, a lawyer for the Beirut plaintiffs, declined comment. The case was brought on behalf of Deborah Peterson, the personal representative of one of the deceased servicemen, and encompasses hundreds of individual plaintiffs.

"If this section stands, it does seem to overcome any defenses Iran might have," said Julian Ku, a professor at Hofstra University's School of Law.

Ku, who called the statute modification "unusual," said that "if the payment is made, I think it would be the first such payment, and certainly the largest ever paid out in a U.S. court against Iran."

To be sure, the plaintiffs must file supplemental briefs in light of the new legislation, and the judge must eventually decide whether to order that the funds be turned over - a process that could still take years.

A BIG ASSIST FROM CONGRESS

While Congress has previously intervened to help terrorism victims obtain compensation from foreign states, it is rare for a law to directly address an active case, legal experts said.

"There is precedent for massive payouts, but this is a little bit unusual because it changes a law about Iranian sovereign immunity in just one case," said Roger Alford, a professor at the University of Notre Dame Law School. "How did the lawyers get Congress to do that?"

The amendment was introduced last winter by Senator Robert Menendez, a New Jersey Democrat. A senior aide to Menendez said the lawmaker's efforts were spurred on by a visit from a victim's family from his home state.

The aide, who spoke on condition of anonymity, said the purpose of the legislation was to ensure that claims against Iran were in fact actionable.

"The amendment sends a message not just to Iran but to the other states that support terrorism that the U.S. will allow the seizure and attachment of assets to satisfy judgments against those countries," the aide said.

Experts and lawyers involved in such cases said the defendants in the Manhattan case may seek to challenge the constitutionality of Congress changing the statute, but that this would likely be a losing battle. One way would be to argue that the legislative branch had improperly interfered with judicial matters.

Lindsey, the lawyer for the Iran bank, would say only that "Iran is studying the new legislation to decide its next steps in the litigation."

'INNOCENT THIRD PARTY'

There is another wrinkle in the claims over the $1.75 billion held in a Citibank account. The money was deposited there by Luxembourg-based bank Clearstream, which holds Iranian funds in accounts in Luxembourg.

Clearstream said in court papers in July that if it is forced to turn over the $1.75 billion in New York, it may be barred from docking an equivalent sum from a Bank Markazi account in Europe because of European sanctions against Iran.

Clearstream has argued that since the Iranian assets were booked in Europe, they could not be considered to be in the United States.

The sanctions law, however, said that a sum held in the United States that was "equal in value" to Iranian assets held abroad could be attached.

A spokesman for Clearstream's law firm, White & Case, declined comment.

FEEDING FRENZY

Ever since the Menendez amendment was introduced, other groups of plaintiffs who have won judgments against Iran have expressed interest in getting a piece of any possible payout.

Lawyers close to the case in New York say the $1.75 billion would currently be shared among about 1,350 people, which includes families of victims of a 1996 truck bomb attack at a U.S. military complex in Khobar near the Saudi Arabian oil city of Dhahran. The attack killed 19 soldiers and injured nearly 400.

The aide to Menendez said lawyers for the 1,350 people had brokered a sharing agreement for the funds should they be turned over.

Five days after Obama signed the sanctions bill, the Peterson plaintiffs sued London-based bank Standard Chartered seeking compensation over its concealment of Iran-linked transactions, citing the Beirut bombing, which killed 241 U.S. servicemen.

Iran denies that it wants to develop nuclear weapon technology. But its refusal to limit and be more transparent about its nuclear activity has led to increasingly tough sanctions.

Experts say the U.S. State Department has been reluctant to push for enforcement of existing money judgments against Iran because they could serve as a potential lever in negotiations with Tehran, while levying the $1.75 billion would have only a minimal impact.

"While the assets involved are substantial," said Suzanne Maloney, a former State Department adviser who now works at the Brookings Institution's Saban Center for Middle East Policy, "I don't believe they are perceived as a meaningful bargaining chip with Tehran on the nuclear issue or other elements of concern with respect to Iranian policy."

The case is Peterson v. Islamic Republic of Iran, U.S. District Court for the Southern District of New York, No. 10-cv-04518.

(This story is corrected to add "s" to Marine Corps in 2nd paragraph)

(Editing by Grant McCool, Eric Effron and Leslie Adler)

© Thomson Reuters 2011. All rights reserved. Users may download and print extracts of content from this website for their own personal and non-commercial use only. Republication or redistribution of Thomson Reuters content, including by framing or similar means, is expressly prohibited without the prior written consent of Thomson Reuters. Thomson Reuters and its logo are registered trademarks or trademarks of the Thomson Reuters group of companies around the world.

Thomson Reuters journalists are subject to an Editorial Handbook which requires fair presentation and disclosure of relevant interests.

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to colleagues, clients or customers, use the Reprints tool at the top of any article or visit: www.reutersreprints.com.



9 of 12 DOCUMENTS

Copyright 2012 The Jerusalem Post
All Rights Reserved
Jerusalem Post

March 30, 2012 Friday

**SECTION:** NEWS; Pg. 7

**LENGTH:** 975 words

**HEADLINE:** US court: Iran must pay $44.6m. to 1983 Beirut victims

**BYLINE:** JOANNA PARASZCZUK

**BODY:**

The US District Court in the District of Columbia on Wednesday awarded victims of the 1983 US Marine barracks bombing in Beirut $44.6 million in damages from Iran.

Chief Judge Royce C. Lamberth awarded the damages to plaintiffs Jeffrey P. O'Brien and Daniel Lane Gaffney, two American servicemen wounded in the bombing, and to their family members.

According to court documents, the 1983 Beirut bombing was the deadliest terror attack against the US prior to September 11, 2001, and the largest non-nuclear explosion that had ever been detonated on the face of the Earth. It decimated the barracks building, killing 241 American servicemen and wounding many others.

Evidence later showed that Hezbollah was responsible for the attack, which it perpetrated using massive technological and material support from Tehran.

O'Brien v. Iran is one of a string of ongoing civil actions that legal experts have said are helping expose the links between Iran and Hezbollah, as well as the role mainstream banks have played in helping finance terror.

For years, Israel has accused Tehran of funding Hezbollah's terror activities. In 2010, 85 Israelis wounded in the Second Lebanon War filed a claim for $1 billion in US court against Iran's Central Bank and Iranian commercial banks. Via their lawyer, attorney Nitsana Darshan-Leitner, the plaintiffs argued that Tehran had channeled over $50m. to Hezbollah before the war, enabling the terror group to fire at Israeli and American targets.

Virginia-based attorney Joseph Peter Drennan, representing the O'Brien v. Iran plaintiffs, told The Jerusalem Post on Thursday that he hoped new legislation would soon allow Wednesday's judgment to be enforced against frozen Iranian assets in US banks.

The lawsuit - the full name of which is O'Brien et al vs. the Islamic Republic of Iran - is one of many civil suits that US victims of the 1983 attack have brought against Tehran, using powerful US anti-terror legislation enacted to allow private citizens to sue state sponsors of terror.

In 2007, a US federal judge ruled in a separate lawsuit, known as Peterson v. Islamic Republic of Iran, that Tehran must pay $2.65b. to families of the 241 servicemen killed in the Beirut bombing. Since that judgement, the Peterson plaintiffs have actively sought Iranian assets that could be seized to pay the damages the court awarded, but so far they have not been successful.

US court: Iran must pay $44.6m. to 1983 Beirut victims Jerusalem Post March 30, 2012 Friday

Luxembourg-based clearing house and bank Clearstream is allegedly holding around $2b. of Iranian debt-securities in a Citibank account in New York. Last August, the plaintiffs in Peterson v. Iran sued Clearstream over the assets. For months, the court's ruling was sealed, but in November, The Wall Street Journal reported that the US District Court for the Southern District of New York had ordered Citibank to freeze $2b. in assets. Clearstream denies holding funds for Iran, and Citibank is fighting for the courts to unfreeze the $2b.

However, Drennan said that new legislation was being created that would allow the plaintiffs to attach those assets from Citibank in New York. Last month, the Senate Banking Committee unanimously approved an amendment to the Iran Sanctions, Accountability and Human Rights Act 2012, designed to allow the victims of the 1983 bombing to attach the $2b.

According to Drennan, the final legislation is expected to pass by early May. The measures, which Senator Robert Menendez (D-New Jersey) proposed, are part of an escalating campaign to tighten sanctions against Iran. Significantly the amendments were approved at the same time that President Barack Obama gave US banks new powers to freeze assets linked to the Iranian government, a move intended to increase pressure on Iran's Central Bank.

Drennan also said that the plaintiffs had subpoenaed the US Treasury Department to reveal any information the government had on Iranian assets in US banks, and hoped that information would soon be forthcoming.

"We intend to pursue any and all Iranian assets in the US," he added.

If the plaintiffs are able to attach the $2b. assets in New York, it would represent a major step forward in their fight for justice, the lawyer said.

Although it has long been known that the 1983 bombing was an act of state-sponsored terror that Iran perpetrated, the Islamic Republic has not been held accountable to date, and that is why there are so many efforts under way both in the courts and in Congress, Drennan said.

It is significant, he added, that it is these private civil lawsuits against Iran that have exposed the degree to which the Islamic Republic masterminded the bombing, and its control over its proxy Hezbollah. Expert testimony in the Peterson v. Iran case, on which the judgement in O'Brien vs. Iran is based, said that then-Iranian president Ali Akbar Hashemi Rafsanjani and then-supreme leader Ayatollah Ruhollah Khomeini would have approved the attack. Evidence was also presented that Iran's Ambassador to Syria, Muhammad Khatami, contacted a member of the Iranian Revolutionary Guards and instructed him to instigate the barracks bombing.

FBI experts testified that at the time of the attack, the PETN explosives used in the bomb were only manufactured in bulk in Iran.

Also involved in the attack was Ahmad Vahidi, Iran's current defense minister and former commander of the Revolutionary Guards' elite Quds Force, which is responsible for operations outside the country's borders. Vahidi is also wanted by Interpol for his alleged role in the 1994 bombing of the Buenos Aires Jewish community center.

"The families of the servicemen killed and injured in the attack are outraged that almost a quarter-century later, we have yet to see the regime that perpetrated it held fully accountable," Drennan added. "We hope that at long last, Iran is going to be made to pay and that justice will finally be done for the victims."

**LOAD-DATE:** April 3, 2012



9 of 12 DOCUMENTS

Copyright 2012 The Jerusalem Post
All Rights Reserved
Jerusalem Post

March 30, 2012 Friday

**SECTION:** NEWS; Pg. 7

**LENGTH:** 975 words

**HEADLINE:** US court: Iran must pay $44.6m. to 1983 Beirut victims

**BYLINE:** JOANNA PARASZCZUK

**BODY:**

The US District Court in the District of Columbia on Wednesday awarded victims of the 1983 US Marine barracks bombing in Beirut $44.6 million in damages from Iran.

Chief Judge Royce C. Lamberth awarded the damages to plaintiffs Jeffrey P. O'Brien and Daniel Lane Gaffney, two American servicemen wounded in the bombing, and to their family members.

According to court documents, the 1983 Beirut bombing was the deadliest terror attack against the US prior to September 11, 2001, and the largest non-nuclear explosion that had ever been detonated on the face of the Earth. It decimated the barracks building, killing 241 American servicemen and wounding many others.

Evidence later showed that Hezbollah was responsible for the attack, which it perpetrated using massive technological and material support from Tehran.

O'Brien v. Iran is one of a string of ongoing civil actions that legal experts have said are helping expose the links between Iran and Hezbollah, as well as the role mainstream banks have played in helping finance terror.

For years, Israel has accused Tehran of funding Hezbollah's terror activities. In 2010, 85 Israelis wounded in the Second Lebanon War filed a claim for $1 billion in US court against Iran's Central Bank and Iranian commercial banks. Via their lawyer, attorney Nitsana Darshan-Leitner, the plaintiffs argued that Tehran had channeled over $50m. to Hezbollah before the war, enabling the terror group to fire at Israeli and American targets.

Virginia-based attorney Joseph Peter Drennan, representing the O'Brien v. Iran plaintiffs, told The Jerusalem Post on Thursday that he hoped new legislation would soon allow Wednesday's judgment to be enforced against frozen Iranian assets in US banks.

The lawsuit - the full name of which is O'Brien et al vs. the Islamic Republic of Iran - is one of many civil suits that US victims of the 1983 attack have brought against Tehran, using powerful US anti-terror legislation enacted to allow private citizens to sue state sponsors of terror.

In 2007, a US federal judge ruled in a separate lawsuit, known as Peterson v. Islamic Republic of Iran, that Tehran must pay $2.65b. to families of the 241 servicemen killed in the Beirut bombing. Since that judgement, the Peterson plaintiffs have actively sought Iranian assets that could be seized to pay the damages the court awarded, but so far they have not been successful.

US court: Iran must pay $44.6m. to 1983 Beirut victims Jerusalem Post March 30, 2012 Friday

Luxembourg-based clearing house and bank Clearstream is allegedly holding around $2b. of Iranian debt-securities in a Citibank account in New York. Last August, the plaintiffs in Peterson v. Iran sued Clearstream over the assets. For months, the court's ruling was sealed, but in November, The Wall Street Journal reported that the US District Court for the Southern District of New York had ordered Citibank to freeze $2b. in assets. Clearstream denies holding funds for Iran, and Citibank is fighting for the courts to unfreeze the $2b.

However, Drennan said that new legislation was being created that would allow the plaintiffs to attach those assets from Citibank in New York. Last month, the Senate Banking Committee unanimously approved an amendment to the Iran Sanctions, Accountability and Human Rights Act 2012, designed to allow the victims of the 1983 bombing to attach the $2b.

According to Drennan, the final legislation is expected to pass by early May. The measures, which Senator Robert Menendez (D-New Jersey) proposed, are part of an escalating campaign to tighten sanctions against Iran. Significantly the amendments were approved at the same time that President Barack Obama gave US banks new powers to freeze assets linked to the Iranian government, a move intended to increase pressure on Iran's Central Bank.

Drennan also said that the plaintiffs had subpoenaed the US Treasury Department to reveal any information the government had on Iranian assets in US banks, and hoped that information would soon be forthcoming.

"We intend to pursue any and all Iranian assets in the US," he added.

If the plaintiffs are able to attach the $2b. assets in New York, it would represent a major step forward in their fight for justice, the lawyer said.

Although it has long been known that the 1983 bombing was an act of state-sponsored terror that Iran perpetrated, the Islamic Republic has not been held accountable to date, and that is why there are so many efforts under way both in the courts and in Congress, Drennan said.

It is significant, he added, that it is these private civil lawsuits against Iran that have exposed the degree to which the Islamic Republic masterminded the bombing, and its control over its proxy Hezbollah. Expert testimony in the Peterson v. Iran case, on which the judgement in O'Brien vs. Iran is based, said that then-Iranian president Ali Akbar Hashemi Rafsanjani and then-supreme leader Ayatollah Ruhollah Khomeini would have approved the attack. Evidence was also presented that Iran's Ambassador to Syria, Muhammad Khatami, contacted a member of the Iranian Revolutionary Guards and instructed him to instigate the barracks bombing.

FBI experts testified that at the time of the attack, the PETN explosives used in the bomb were only manufactured in bulk in Iran.

Also involved in the attack was Ahmad Vahidi, Iran's current defense minister and former commander of the Revolutionary Guards' elite Quds Force, which is responsible for operations outside the country's borders. Vahidi is also wanted by Interpol for his alleged role in the 1994 bombing of the Buenos Aires Jewish community center.

"The families of the servicemen killed and injured in the attack are outraged that almost a quarter-century later, we have yet to see the regime that perpetrated it held fully accountable," Drennan added. "We hope that at long last, Iran is going to be made to pay and that justice will finally be done for the victims."

**LOAD-DATE:** April 3, 2012

 LexisNexis®

8 of 12 DOCUMENTS

Copyright 2012 The Jerusalem Post
All Rights Reserved
Jerusalem Post

May 16, 2012 Wednesday

**SECTION:** NEWS; Pg. 1

**LENGTH:** 1181 words

**HEADLINE:** US court rules Iran, Syria must pay $332m. to family of TA suicide-bombing victims. Wultz family brought civil suit after 16-year-old boy killed and father seriously wounded in attack

**BYLINE:** JOANNA PARASZCZUK

**BODY:**

Six years after 16-year-old American Daniel Wultz died of wounds he sustained in a Tel Aviv suicide bombing, a US district court judge awarded his family $332 million in damages from Iran and Syria.

The court found that Iran and Syria were responsible for providing material support for the April 17, 2006, attack, in which 11 people were murdered and more than 60 others were wounded when an Islamic Jihad suicide bomber detonated a bomb laced with nails and other projectiles in a crowded south Tel Aviv fast food restaurant.

In his ruling, Chief Judge Royce C. Lamberth said the bombing had been a "barbaric act" that had "no place in civilized society and represents a moral depravity that knows no bounds."

Daniel's father, Yekutiel "Tuly" Wultz, who was seriously wounded in the attack; his mother, Sheryl; and his siblings Amanda and Abraham brought the civil lawsuit in the US District Court for the District of Columbia, under powerful US anti-terrorism laws that permit American civilians to sue sovereign states that sponsor acts of terrorism.

Via their lawyers - New York attorney Robert Tolchin and Tel Aviv attorney Nitsana Darshan-Leitner - the Wultz family alleged that the Syrian and Iranian governments, both of which the US has designated as state sponsors of terrorism, provided Islamic Jihad with the material support and resources it needed to carry out the deadly attack.

The court learned that Daniel had been conscious immediately after the bombing and up until his death, and had suffered extreme physical and emotional pain both because he knew the horrific extent of his injuries and because he was aware he would die from them.

The 16-year-old suffered wounds including severe bleeding from multiple shrapnel wounds, a perforated bowel and multiple infections, including gangrene.

In their fight to save his life, surgeons at Tel Aviv's Ichilov Hospital removed several of Daniel's organs, and amputated two fingers and part of his right leg, but the teenager succumbed to his injuries and died on May 14, 2006.

His father, who was sitting with Daniel at the time of the bombing, endured extensive physical injuries as well as severe psychological damage. He still suffers pain and post-traumatic stress disorder, including terrifying nightmares and daily flashbacks of the attack.

The other members of the Wultz family, including Daniel's mother, suffered serious psychological and emotional damage as a result of the bombing.

US court rules Iran, Syria must pay $332m. to family of TA suicide-bombing victims. Wultz family brought civil suit after 16-year-old boy killed and father seriously wounded in attack Jerusalem Post M

In addition to Iran and Syria, the Wultz family's lawsuit named as defendants the Iranian Ministry of Information and Security, the Syrian Ministry of Defense, Syrian Military Intelligence and the Syrian Air Force Intelligence Directorate.

In finding all of the plaintiffs responsible for providing the material support that led to the suicide bombing, Lamberth said the evidence established that Islamic Jihad "acted generally as an agent of the Iranian and Syrian defendants" and that "their financing, encouragement and instruction prompted [the attack]."

"When a state chooses to use terror as a policy tool - as Iran and Syria continue to do - that state forfeits its sovereign immunity and deserves unadorned condemnation," he said in his ruling.

The ruling cites testimony from Dr. Patrick Clawson, an expert on Iranian terror funding, who said Iran provided annual financial support for terror of around $300m. to $500m.

According to Clawson, in 2008 Iran provided Hezbollah with around $200m. in direct cash assistance, as well as "many tens of millions of dollars" of sophisticated weaponry, including rockets, since 2006.

Evidence presented to the court in a two-day hearing in February showed that at the time of the 2006 bombing, Islamic Jihad was headquartered in Damascus with the Syrian regime's approval and consent, and that the Syrian government would escort potential terrorists and suicide bombers to training camps on Syrian territory.

Expert witnesses who testified in the trial said Islamic Jihad received "substantial logistical, financial and technical support from both the Iranian and Syrian defendants."

An offshoot of Hamas, Islamic Jihad was created in 1980. Its founder, Fathi Shiqaqi, had been inspired by the Islamic Revolution in Iran a year previously.

Until Israel assassinated him in 1995, Shiqaqi - the first Palestinian terrorist to publish a pamphlet legitimizing suicide bombings in jihad - received funds from the Syrian intelligence services, and his successor Ramadan Shallah continues to receive funding from Iran and Syria, evidence presented to the court shows.

At the time of the 2006 terror attack, Iranian funding passed to Islamic Jihad via Syria, but after Hamas took over Gaza, Iran has been able to fund Islamic Jihad and Hamas directly, the court found.

Moreover, Iran and Syria encouraged Islamic Jihad and other Palestinian terrorist groups to use suicide bombers as a "weapon" during the second intifada, the court found, noting that Islamic Jihad was responsible for around a quarter of all suicide bombings in Israel during this time.

Islamic Jihad suicide bombers also received training from Hezbollah, which is directly funded by Iran.

"The evidence shows that [Iran and Syria] completely lacked any semblance of remorse for this deadly attack - and in fact, encouraged and supported this and similar attacks," Lamberth said.

In closing, the judge praised the Wultz family's courage, saying they "stood in stark contrast to the Iranian and Syrian thugs."

The family members had "resolved to fight injustice with whatever tools were at their disposal, and their patient determination over the past six years is a credit to both themselves and the memory of their beloved Daniel," Lamberth said.

The Wultz v. Iran verdict is the latest in a series of US courtroom victories by victims of terrorism against Iran that have highlighted the extent to which the Islamic Republic funds Palestinian terrorism in Israel and neighboring territories.

In March, Lamberth awarded two victims of the 1983 US Marine barracks bombing in Beirut $44.6m. in damages from Iran.

In 2007, a US federal judge ruled in a separate lawsuit, Peterson v. Iran, that Iran must pay $2.65 billion to the families of servicemen killed in the Beirut attack.

While plaintiffs in these cases have actively sought Iranian assets that could be seized to pay the court-awarded damages, they have so far been unsuccessful.

US court rules Iran, Syria must pay $332m. to family of TA suicide-bombing victims. Wultz family brought civil suit after 16-year-old boy killed and father seriously wounded in attack Jerusalem Post M

That may be about to change, as the US Senate may vote before the end of this month on a bill that would subject Iranian assets to US court jurisdiction, thereby releasing them to pay against judgements of lawsuits brought against the Islamic Republic. If the bill passes, the plaintiffs may be able to reach nearly $2b. in Iranian debt-securities, which currently sit frozen in a Citibank account in New York.

Luxembourg-based clearing house and bank Clearstream is allegedly holding the money for Iran, a matter that came to light last November after the Peterson plaintiffs sued Clearstream over the assets. Clearstream denies holding funds for Iran, while Citibank is fighting for the courts to unfreeze the $2b.

**GRAPHIC:** Photo: Daniel Wultz (Credit: Courtesy of the Daniel Wultz Foundation)

**LOAD-DATE:** May 20, 2012



7 of 12 DOCUMENTS

Copyright 2012 The Jerusalem Post
All Rights Reserved
Jerusalem Post

June 12, 2012 Tuesday

**SECTION:** NEWS; Pg. 6

**LENGTH:** 1061 words

**HEADLINE:** US gov't opposes forcing Iran to reveal its American assets. Top lawyer accuses Department of Justice of 'aiding and abetting' state-sponsored terror after it files amicus brief. Supreme Court will rule on whether terror victims seeking compensation have right to Iranian information

**BYLINE:** JOANNA PARASZCZUK

**BODY:**

Lawyers for American victims of a Hamas triple suicide bombing who successfully sued Iran for damages have slammed the US Department of Justice's backing of a court ruling preventing the plaintiffs from obtaining information about Iran's US-based assets, The Jerusalem Post learned this week.

The lawsuit, Rubin v. The Islamic Republic of Iran, first made headlines in 2003 when the US District Court in Washington, DC, awarded 33-year-old American Daniel Miller and other victims seriously wounded in the attack $71.5 million in compensatory damages from Iran.

The court ruled that Iran was responsible for the attack, because it had provided funding and training to Hamas.

However, in the nine years since that ruling, Miller and the other plaintiffs have been unable to obtain justice from the Islamic Republic, because the Iranian government has refused to pay out the damages.

In an odd twist of events, the lawsuit has led to accusations recently that the US government is supporting Iran by filing court briefs in support of Tehran's decision to hide its assets and avoid paying Miller and the other victims.

After the 2003 court ruling awarding them compensation from Iran, Miller and the other plaintiffs served the Islamic Republic with a request to produce documents regarding all of its US-based assets.

Iran, which had previously refused to appear in US court, immediately hired a lawyer and sought a protective order to shield its US assets from the terror victims' discovery requests.

Eventually, the US Court of Appeals ruled in favor of Iran and concluded that the terror victims could not obtain information about all Iranian assets in the US, and that instead they could only seek discovery about specific Iranian property.

In what is set to be a landmark decision this month, the US Supreme Court is expected to decide by June 25 whether to review the Court of Appeals ruling denying Miller access to information about Iranian assets.

Late last month, in a move that has provoked anger among terror victims, the US Department of Justice filed an amicus brief to the Supreme Court, arguing that the Court of Appeals ruling was correct.

US gov't opposes forcing Iran to reveal its American assets. Top lawyer accuses Department of Justice of 'aiding and abetting' state-sponsored terror after it files amicus brief. Suprem

"Compelling a foreign state to produce extensive material pertaining to its assets may impose significant burdens and impugn the state's dignity, and may have implications for the United States' foreign relations," the Department of Justice brief reads.

Theodore Olson, a former US solicitor-general and the lawyer representing Miller, slammed the US government over its position on the matter, saying it was "aiding and abetting Iranian terrorism by supporting Iran's attempts to conceal its assets," because Congress had passed laws permitting terrorist victims to sue state sponsors of terror as a way to deter terrorism.

"It is outrageous that the [US] State Department would support Iran's efforts to evade a judgment properly entered by a United States court in favor of American citizens," Olson told the Post.

Olson said that the question of whether Iran financed the Hamas terrorist attacks that devastated Miller's life and those of his fellow victims was not in dispute.

"Iran is unquestionably liable to pay the victims of its crimes, but it has made every effort to avoid paying by repeatedly concealing its assets," he said. "The victims in our case simply seek what every other judgment creditor is entitled to obtain: The identity and location of the judgment debtor's assets," he added.

Olson said Miller and the other victims faced a "critical difficulty," in that they cannot begin attachment proceedings to obtain the damages they were awarded, if they are unable to locate Iranian assets in the US.

"The [Obama] administration's position that Daniel cannot receive even this minimal discovery about the location of Iranian assets prevents him from even attempting to recover his judgment against Iran," Olson told the Post.

The issue of victims of Iranian-sponsored terror being unable to locate Iranian assets to pay US court rulings against the Islamic Republic extends far beyond the case of Rubin v. The Islamic Republic.

Courtroom victories by victims of terror against Iran have highlighted the extent to which the Islamic Republic funds Palestinian terror in Israel and neighboring territories.

Last month, the US District Court awarded a $332m. judgment against Iran and Syria to the family of a 16-year-old boy, Daniel Wultz, who died of horrific injuries in a 2006 Hamas suicide bombing in Tel Aviv.

In March, the same court awarded two victims of the 1983 US Marine barracks bombing in Beirut $44.6m. in damages from Iran.

In 2007, a US federal judge ruled in a separate lawsuit, Peterson v. Iran, that Iran must pay $2.65 billion to the families of servicemen killed in the Beirut attack, the largest non-nuclear explosion on earth at that time.

However, although plaintiffs in all these cases have actively sought Iranian assets that could be seized to pay the court-awarded damages, they have so far been unsuccessful.

At the same time as lawyers for the Rubin v. Iran plaintiffs are fighting their case in the US Supreme Court, other terror victims and their supporters are pushing forward a bipartisan bill which would subject Iranian assets to US court jurisdiction, thereby releasing them to pay against judgements of lawsuits brought against the Islamic Republic.

In recent months, lawyers in the Peterson v. Iran suit have attached nearly $2b. in Iranian debt-securities, which sits frozen in a Citibank account in New York.

Allegedly, Luxembourg-based clearing house and bank Clearstream is holding the money, which came to light last November after the Peterson plaintiffs sued Clearstream over the assets.

Clearstream denies holding funds for Iran, while Citibank is fighting for the courts to unfreeze the $2b.

Meanwhile, Olson said that the only issue now at stake for the Rubin v. Iran case in the US Supreme Court is whether Miller and the other terror victims can obtain basic information about Iranian assets in the US.

"Iran has refused to provide even this basic discovery, which the victims need in order to determine which assets might be subject to attachment," he concluded. "If the issue arose in the future whether the victims are permitted to attach any particular asset - cultural asset or otherwise - Iran would have the right to assert any objections it might have at the time."

**LOAD-DATE:** June 14, 2012



11 of 12 DOCUMENTS

Copyright 2011 The Jerusalem Post
All Rights Reserved
Jerusalem Post

August 17, 2011 Wednesday

**SECTION:** NEWS; Pg. 10

**LENGTH:** 613 words

**HEADLINE:** US terror victims sue Deutsche Borse group, citing transfer of Iranian funds. Allegation could endanger takeover of NYSE

**BYLINE:** BENJAMIN WEINTHAL/Jerusalem Post correspondent

**BODY:**

BERLIN - A lawsuit filed in a US Federal court in Manhattan by roughly 1,000 victims of a joint Hezbollah and Iran 1983 attack on US soldiers in Beirut alleges that Clearstream Banking SA of Luxembourg, which is owned by the Deutsche Borse AG, illegally transferred $250,000 million of seized Iranian funds, according to a report in Tuesday's Wall Street Journal.

Hezbollah, along with Tehran's government, killed 241 US servicemen in an attack on the Marine Corps housing complex, prompting family members to initiate litigation. A US Federal Judge ruled in 2003 that Iran was responsible for the terror attack and ordered the Islamic Republic to pay $2.7 billion in compensation to the family members of the murdered service personnel.

Iran rejects the charges of complicity in the single deadliest terror attack on US soldiers.

According to the Journal article, court documents from 2008 show that "Clearstream and a second financial institution helped Iran move the money out of accounts at Citigroup Inc.'s Citibank unit in New York after a federal court had ordered the funds frozen."

A Judge from the Southern District of Manhattan court "ordered Citibank in June 2008 to freeze $2.25b. of Clearstream accounts that were allegedly controlled by Iran," wrote the Journal.

The family victims argued that Clearstream furnished improper information to secure the release of the $250m. A second bank was also involved in transferring Iranian funds, but the name of that bank has been "redacted" from the court documents, noted the Journal.

The lawsuit against Deutsch Borse could throw a wrench in the negotiating process to control the NYSE, in which the Deutsche Borse seeks to take over NYSE Euronext Inc, which oversees the New York Stock Exchange. According to the Journal, US lawmakers have raised the Clearstream controversy as a reason to block the Deutsche Borse's takeover attempt.

The Journal cites a question asked by US Congressional Representative Steve Austria (R.Ohio) to Treasury Secretary Timothy Geithner at a legislative hearing this year: "Are you concerned that the New York Stock Exchange is going to be owned by a company that's allegedly - and I think is - conducting business with Iran?"

The involvement of the Deutsche Borse in reportedly transferring Iran funds is another blow to Germany's financial reputation. The Deutsche Bundesbank - with assistance from Germany's Foreign Ministry - circumvented US sanctions

US terror victims sue Deutsche Borse group, citing transfer of Iranian funds. Allegation could endanger takeover of NYSE Jerusalem Post August 17, 2011 Wednesday

earlier this year and funneled at least $1.5b. euros to a US sanctioned bank, the European-Iranian trade bank (EIH), to help pay for Indian crude oil payments owed to Iran.

The US Treasury Department expressed alarm about Germany's business relations with the EIH because the Iranian entity finances illicit nuclear proliferation and weapons activities.

After considerable US, French and British pressure, Germany agreed to place the EIH on the EU sanctions list.

The EIH, however, is still permitted to process previous financial transactions, which were commenced before the May EU sanctions targeting Iran.

German critics view Chancellor Angela Merkel's failure to shut down pre-sanction EIH transactions as undercutting international efforts to stop Iran's drive to obtain nuclear weapons and finance terror groups.

Germany remains Iran's largest European trade partner, with an annual 2010 volume of combined export and import trade reaching over 4b. euros.

German engineering firms play a key role in Iran's infrastructure.

According to the Journal, Clearstream declined to comment on the US lawsuit. The Deutsch Borse wrote in its 2010 annual financial disclosure that Clearstream "intends to defend itself vigorously to the fullest extent."

**LOAD-DATE:** August 22, 2011



FOCUS - 5 of 14 DOCUMENTS

Copyright 2011 Factiva ®, from Dow Jones
All Rights Reserved
**Dow Jones Factiva**

(Copyright (c) 2011, Dow Jones & Company, Inc.)
**THE WALL STREET JOURNAL.**
The Wall Street Journal

August 16, 2011 Tuesday

**SECTION:** Pg. A7

**LENGTH:** 647 words

**HEADLINE:** World News: Deutsche Boerse Unit Sued Over Alleged Iran Funds

**BYLINE:** By Jay Solomon

**BODY:**

WASHINGTON -- A group of nearly 1,000 American victims of international terrorism is suing Clearstream Banking SA of Luxembourg, a unit of Germany's Deutsche Boerse AG, for allegedly assisting Iran in fraudulently securing the release of $250 million in frozen assets and in moving it out of the U.S. financial system, according to legal documents recently unsealed by a federal court in New York.

The plaintiffs -- family members of the 241 U.S. servicemen killed in the 1983 bombing of a Marine Corps barracks in Beirut -- are seeking the funds as partial payment of the $2.7 billion that a federal judge in 2003 ordered Iran to pay the victims of the bombing. The judge ruled Tehran had orchestrated the attack. Iran has denied any role in the bombing.

The plaintiffs, according to records at the U.S. District Court for the Southern District of New York, allege that in 2008 Clearstream and a second financial institution helped Iran move the money out of accounts at Citigroup Inc.'s Citibank unit in New York after a federal court had ordered the funds frozen. The plaintiffs say Clearstream and the second bank fraudulently masked Iran's control of the accounts as a means to win the release of the money.

The name of the second financial institution has been redacted from the unsealed documents. The case was sealed by a judge both for U.S. national-security reasons and to respect Luxembourg bank-secrecy laws.

"The foregoing transfers were made . . . in a deliberate attempt to stave off creditors by putting property in such a form and place that Iran's creditors could not reach it," the plaintiffs alleged in the court filing.

A Clearstream representative said Monday that the company doesn't comment on ongoing litigation. But Clearstream said in court filings the money held at its accounts at Citibank was Clearstream's property, not Iran's.

Deutsche Boerse, in its 2010 annual financial report, briefly referred to the lawsuit and said Clearstream would fight any efforts to seize the money. Clearstream "intends to defend itself vigorously to the fullest extent," Deutsche Boerse wrote. The company said in the annual report that Clearstream was first notified of the lawsuit in January.

The Clearstream representative said the company began closing the accounts of Iranian customers in late 2007 "in light of the political environment at the time."

World News: Deutsche Boerse Unit Sued Over Alleged Iran Funds The Wall Street Journal August 16, 2011 Tuesday

Law firm White & Case LLP, which is representing Clearstream, declined to comment.

The U.S. District Court for the Southern District of New York initially ordered Citibank in June 2008 to freeze $2.25 billion of Clearstream accounts that the plaintiffs alleged were controlled by Iran. Clearstream's lawyers submitted records that argued $250 million of the frozen $2.25 billion didn't belong to Iran, and the following month a judge ordered Citibank to release the funds. The plaintiffs are now alleging that the information provided by Clearstream and the second bank was fraudulent.

"Had Citibank been so informed, those bonds would continue to remain in the custody of Citibank in New York and be available for enforcement of the judgment," the plaintiffs said in the court filing. Roughly $2 billion remains frozen at Citibank, and the claimants and Clearstream continue to fight for control of the funds at the Southern District Court of New York.

Clearstream, primarily a clearinghouse for financial trades, specializes in managing transactions for governments.

Deutsche Boerse is currently in negotiations to take over NYSE Euronext Inc., which operates the New York Stock Exchange. Some U.S. lawmakers have raised the allegations against Clearstream as a reason that the U.S. government should question Deutsche Boerse's suitability to take over the NYSE.

Deutsche Boerse didn't respond to requests to comment.

---

John W. Miller in Brussels contributed to this article.

License this article from Dow Jones Reprint Service

**NOTES:**
PUBLISHER: Dow Jones & Company, Inc.

**LOAD-DATE:** August 16, 2011



FOCUS - 1 of 1 DOCUMENT

Copyright 2011 Factiva ®, from Dow Jones
All Rights Reserved
**Dow Jones Factiva**

(Copyright (c) 2011, Dow Jones & Company, Inc.)

## THE WALL STREET JOURNAL
The Wall Street Journal

December 30, 2011 Friday

**SECTION:** Pg. A12

**LENGTH:** 715 words

**HEADLINE:** World News: Iran to File in U.S. Court to Unfreeze Funds --- Nearly $2 Billion at Citibank Frozen Three Years Ago;
Terrorism Victims Seek Money as Partial Payout in Legal Judgment

**BYLINE:** By Jay Solomon

**BODY:**

WASHINGTON -- Iran's central bank is preparing to file a motion in a New York federal court early next year to release nearly $2 billion of its frozen funds at Citigroup Inc.'s Citibank unit, according to attorneys for the Iranian bank.

Tehran's action will mark the latest step in a widening legal struggle for control of the money.

The assets were frozen in 2008 after a group of more than 1,000 victims of international terrorism sought the funds as partial payment for a $2.7 billion legal judgment made against Tehran for its alleged role in the 1983 bombing of a Marine Corps barracks in Beirut that killed 241 servicemen.

A federal judge's decision to freeze the funds from the central bank, known as Bank Markazi, was the largest seizure of Iranian funds outside Iran since the 1979 Islamic revolution.

The funds were deposited in Citibank by Luxembourg-based Clearstream Banking SA.

Bank Markazi has emerged as a target in the West's financial war against Iran, which is partly aimed at forcing Tehran to end its production of nuclear fuel.

U.S. President Barack Obama is scheduled to sign new legislation that will ban any business dealings with Bank Markazi, which conducts the majority of Iran's oil sales. The European Union also is considering blacklisting Bank Markazi, as well as imposing an embargo on all purchases of Iranian energy, in a bid to end Tehran's nuclear program and support for Middle East-based militant groups.

Lawyers representing Bank Markazi are arguing in the U.S. Court for the Southern District of New York that freezing the Iranian funds is illegal under U.S. law, according to recently unsealed court documents.

These lawyers cite the Foreign Sovereign Immunities Act as safeguarding from seizure by litigants the holdings inside the U.S. of any foreign central bank.

Bank Markazi's counsel plans to file a motion in early February to release the funds on these grounds.

World News: Iran to File in U.S. Court to Unfreeze Funds --- Nearly $2 Billion at Citibank Frozen Three Years Ago;
Terrorism Victims Seek Money as Partial Payout in Legal Judgment The Wall Street Jou

"Bank Markazi will show that its property is immune from seizure," said David Lindsey of Chaffetz Lindsey LLP, the law firm representing the Iranian central bank.

Lawyers for the terrorism victims believe the new U.S. legislation blacklisting Bank Markazi will strengthen their case for claiming the funds at Citibank.

The 2008 decision by a New York judge to freeze Bank Markazi's assets used information from the U.S. Treasury Department, according to court documents.

Treasury showed Bank Markazi deposited debt instruments with the Luxembourg-based financial-services company Clearstream, which placed the securities in the account at Citibank.

The New York court later ordered that $250 million be released on the grounds it didn't ultimately belong to Iran. But lawyers representing the terrorism victims' families have sued Clearstream and a Rome-based trade bank, Banca UBAE, for allegedly fraudulently covering up Iran's ownership of these funds.

Banca UBAE had been controlled by the late Libyan dictator Moammar Gadhafi before his government was overthrown this year.

A spokesman for Banca UBAE in Rome declined to comment.

Clearstream has declined to comment on ongoing litigation. The company said in court filings the money held at its accounts at Citibank was Clearstream's property and not Iran's.

Clearstream has argued in the New York court that the nearly $2 billion should be released because the bank was protected by Luxembourg banking laws.

Tensions between the West and Iran have intensified in recent weeks due to the international efforts to target Bank Markazi and Tehran's oil revenues. Senior Iranian officials said this week that Iran's navy would stop the flow of international shipping through the strategic Strait of Hormuz if the oil embargo went through. Roughly 15 million barrels of oil pass through the waterway every day.

On Thursday, Italian Prime Minister Mario Monti said his government will support further sanctions against Iran, as long as they exclude oil supplies to Italy's biggest energy company that constitute repayment for work the firm did in the Islamic republic.

"There is strong concern on the advancement of Iran's nuclear program reaching a point of nonreturn and the strategy, which Italy agrees with, is the urgency to strengthen instruments of pressure on Iran," he told a news conference.

License this article from Dow Jones Reprint Service

**NOTES:**
PUBLISHER: Dow Jones & Company, Inc.

**LOAD-DATE:** December 30, 2011

# Bloomberg

🖶 Print   Back to story

# Bank Markazi Will Ask Court to Block Payment to Terror Victims

By Bob Van Voris - Dec 31, 2011

Iran's Central Bank, Bank Markazi Jomhouri Islami Iran, will ask a U.S. judge in New York to dismiss a suit freezing alleged Iranian assets held by Citigroup Inc. (C), according to a court filing.

The assets were frozen as part of an attempt to collect on a $2.7 billion judgment in a suit claiming Iran aided the 1983 bombing of a U.S. Marine Corps barracks in Beirut. A federal judge in 2008 froze cash and bonds held in a custodial account at Citibank in the name of Clearstream Banking SA, a bank based in Luxembourg.

Bank Markazi is scheduled in February to ask a federal court in New York to dismiss a lawsuit seeking to enforce collection of the judgment, claiming it's barred by the U.S. Foreign Sovereign Immunities Act, according to court papers. The law limits claims against foreign governments. Clearstream is also scheduled to ask that the freeze be lifted.

"Clearstream strongly condemns the 1983 terrorist attacks on the U.S. military base in Beirut, Lebanon, and deeply sympathizes with the victims of those attacks and their families," Nicolas Nonnenmacher, a bank spokesman, said in an e-mail. "As a custodian, Clearstream has a duty to protect its customers' assets, and believes the plaintiffs' claims against Clearstream are legally and factually without merit."

"Citibank has complied with all applicable laws and court orders in this case," Molly Meiners, a spokeswoman for the New York-based bank, said in an e-mailed statement. "It continues to hold the assets that were frozen by the court and will comply with any further orders from the court in the pending litigation as to their disposition."

The case is Peterson v. Islamic Republic of Iran, 10- cv-4518, U.S. District Court, Southern District of New York (Manhattan).

To contact the reporter on this story: Bob Van Voris in New York federal court at rvanvoris@bloomberg.net.

To contact the editor responsible for this story: David E. Rovella at drovella@bloomberg.net.

©2013 BLOOMBERG L.P. ALL RIGHTS RESERVED.

Advertisement

# IGZO: Vision for the Future

**Higher Resolution, Lower Power Consumption, Higher Performance in touch sensitivity: IGZO's breakthrough technology and what it means.**

Read More...

Presented by:
SHARP




Dow Jones Reprints: This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit www.djreprints.com
• See a sample reprint in PDF format.        • Order a reprint of this article now

## THE WALL STREET JOURNAL.
WSJ.com

LAW  |  December 12, 2009

# U.S. Freezes $2 Billion in Iran Case

By JAY SOLOMON

WASHINGTON -- More than $2 billion allegedly held on behalf of Iran in Citigroup Inc. accounts were secretly ordered frozen last year by a federal court in Manhattan, in what appears to be the biggest seizure of Iranian assets abroad since the 1979 Islamic revolution.

The legal order, executed 18 months ago by the U.S. District Court for the Southern District of New York, is under seal and hasn't been made public. The court acted in part because of information provided by the U.S. Treasury Department.

President Barack Obama has pledged to enact new economic sanctions on Iran at year-end if Tehran doesn't respond to international calls for negotiations over its nuclear-fuel program.

The frozen $2 billion stands at the center of an intensifying legal struggle between Luxembourg's Clearstream Banking S.A., the holder of the Citibank account, and the families of hundreds of U.S. Marines killed or injured in a 1983 terrorist attack on a Marine barracks in Beirut, Lebanon.

Clearstream is primarily a clearing house for financial trades and is a wholly owned subsidiary of Germany's Deutsche Börse AG. Luxembourg's bank secrecy laws have helped it grow into a major European financial center.

There is no indication that Citibank knew the funds may ultimately belong to Iran. U.S. firms that do business with Iran face stiff civil and criminal penalties.

A federal judge in Washington ruled in 2003 that Iran orchestrated the bombing of the Marine barracks and later ordered Tehran to pay the victims' families $2.7 billion in compensation.

Lawyers for the families, backed by information provided by the U.S. Treasury, are arguing that Clearstream is holding Iranian funds at Citibank and are seeking to seize the assets as payment for their clients.

"I was stunned when this money popped up in New York," said Steven Perles, a lawyer representing the victims' families. "I had no idea there was Iranian money of this size flowing through the United States."

Citibank, Clearstream and the Iranian government all declined to comment on the case, and Tehran hasn't made any filings in the matter. The outlines of the dispute, however, appear in judicial filings and in the federal court's docket sheets.

Those documents show that Clearstream has denied it is holding funds for the Iranian government and that the European firm has been fighting to release the $2 billion.

The court initially ordered Citibank in June 2008 to freeze $2.25 billion of Clearstream's accounts, but the company's lawyers were able to get $250 million released the following month, according to court records. Clearstream is represented in the U.S. by White & Case LLP, which declined to comment.

The legal battle over the funds could lead to a trial. A victory for the plaintiffs would mark the largest seizure of Iranian funds since Islamist parties seized power in Tehran from the U.S.-backed Shah in 1979.

That year, the U.S. government froze around $12 billion of Iranian assets in retaliation for the kidnapping of American diplomats and military personnel. While a portion of the funds was returned after the hostages' release, a United Nations body in the Netherlands continues to try and arbitrate the return of the remaining assets, which include bank deposits, gold and real estate.

The legal case concerning Citibank in New York comes as the U.S. government is intensifying efforts to use the global financial system to pressure Iran into giving up its nuclear program and support for international terrorism.

U.S. officials said that the Obama administration has also finished tailoring a new round of economic sanctions on Iran that could be enacted early next year.

The new penalties seek to hobble Tehran's oil and gas industry by blacklisting Iranian energy, insurance and shipping firms.

The U.S. strategy also seeks to target the economic assets of Iran's elite military unit, the Revolutionary Guards Corps, which is believed to oversee the country's nuclear program. U.S. officials said international deliberations over new Iran sanctions could begin at the United Nations Security Council within the next month.

"Inside the U.S. government, the plan is now done," said a senior U.S. official briefed on the sanctions deliberations. "We've put together a plan that's comprehensive and goes after a number of Iran's vulnerabilities."

U.S. Defense Secretary Robert Gates joined with European leaders Friday to warn that Iran risks sanctions soon if it fails to cooperate with the West on its expanding nuclear program.

"I think that you are going to see some significant additional sanctions imposed by the international community," Mr. Gates said. He cautioned that "any military action would only buy some time, maybe two or three years."

Lawyers for the victims of the Beirut bombing said they started looking for Iranian assets to seize after winning the $2.7 billion judgment in 2007. A federal judge in Washington D.C. ruled that Iran's intelligence service, the Ministry of Information and Security, directly oversaw the bombing of the Marine Corps barracks in coordination with the Lebanese militant group, Hezbollah. Before

the Sept. 11, 2001, attacks, it was the largest terrorist attack ever inflicted on U.S. citizens; 241 servicemen died.

The lawyers initially looked at targeting assets of global oil companies who did business with Iran, as well as international organizations like the World Bank. But last year, they also subpoenaed the Treasury Department to gain any information that the U.S. government had on Iranian assets inside the U.S.

In June 2008, the Treasury's Office of Foreign Assets Control filed a motion in Washington D.C. federal court, seeking authorization to disclose to the plaintiffs in the terrorism cases information concerning assets being held inside the U.S. in which Iran might have an interest.

Treasury also said in its court filing that its motion needed to be expedited due to "the risk of immediate asset flight."

Two days later, the New York court ordered Citibank to freeze $2.25 billion of Clearstream's accounts in New York.

**Write to** Jay Solomon at jay.solomon@wsj.com

Copyright 2012 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com



 Send a release

Become a member  Member sign in ⌄
For journalists  For bloggers
Global sites ⌄

**Search**      Advanced Search
○ Products & Services  ○ News Releases

→

Products & Services          Knowledge Center          Browse News Releases          Contact PR Newswire          ▼

See more news releases in Foreign Policy & International Affairs | Legal Issues

## Attorney for Deutsche Borse Subsidiary Clearstream Says Transfer of Iranian Central Bank Money Not Legally Relevant

### Beirut Bombing Victim Group Asks President Obama to Stop NYSE Merger

    More ⌄

WASHINGTON, Dec. 12, 2011 /PRNewswire/ -- An attorney for Clearstream Banking, SA told a federal court in New York recently that even if the bank fraudulently transferred funds belonging to Bank Markazi, Iran's Central Bank, out of the U.S. financial system to keep them from being paid to Americans killed and injured in Iranian acts of terror, it is not "relevant" to American law designed to prohibit such activity.

In light of that position, surviving victims and families of the 1983 Beirut bombing have sent a letter to President Obama expressing their concern that the merger of the New York Stock Exchange and Deutsche Borse, Clearstream's parent company, presents a national security threat.

In procedural arguments before Magistrate Judge Gabriel Gorenstein of the U.S. District Court for the Southern District of New York, Frank Panopoulos , an attorney representing Clearstream, said last week, "...we've assumed in our papers that there was a fraudulent conveyance..." as he was outlining legal points for the plaintiff.

Once Mr. Panopoulos completed his presentation, which included points on jurisdiction and the current location of Iranian assets, Judge Goldstein summarized Clearstream's position.

"...you're willing to assume the plaintiffs' allegations...you just think that they're not legally relevant," the judge stated.

"Yes," Mr. Panopoulos said.

The Plaintiff group, representing more than 1,000 Americans who lost 241 loved family members in the 1983 Beirut bombing obtained a $2,656,944,877.00 judgment against Iran. They have filed a lawsuit in New York alleging that Clearstream Banking, SA, helped to hide Iranian Government funds that could be used to pay part of that judgment.

The group told President Obama the NYSE merger could pose a national security threat to the United States because of Clearstream Banking, SA's ties to the Iranian Government. They recently wrote to Treasury Secretary Geithner, requesting a re-evaluation of findings by the Committee for Foreign Investment in the United States (CFIUS) permitting the NYSE-Deutsche Borse merger to move forward. The Treasury Secretary serves as the Chair for the CFIUS. Secretary Geithner has yet to respond. The group has also shared its concern with Members of Congress.

"It's appalling to think that a company which takes violation of U.S. banking laws so cavalierly could be so close to the heart of the American economy. It's even more troubling that Clearstream Banking, SA seems to think that hiding Iranian assets from its terror victims is acceptable," said Lynn Smith Derbyshire , whose brother, Marine Captain Vincent Smith , was killed in the Beirut attack.

"We think President Obama, who has the final say about the merger, owes it to the American people to consider very carefully whether having the NYSE as a sister company to Clearstream is in the best interests of the United States," she continued.

The group wrote to President Obama: "We believe Clearstream's movement of Iranian Government assets through the American financial system is a clear violation of United States law and a direct security threat to our Nation. We suggest that having the New York Stock Exchange controlled by the same company that owns Clearstream Banking, SA flies directly in the face of the sanctions against Iran your Administration has worked so hard to implement."

"Every person who has any investment listed on the NYSE should want to know more about what influence Clearstream may have on Deutsche Borse's position as the world's largest stock exchange if this merger is completed. Will the most extensive financial system in history be facilitating the financing of the world's most active sponsor of terrorism? It seems to us that this question is beyond rhetorical. We should be very careful in how it will be answered," Ms. Derbyshire said.

This release is distributed by Saylor Company Public Relations Counsel under the guidance, direction, and authority of Thomas Fortune Fay , legal counsel to the Plaintiff Group referred to in the text.

SOURCE Saylor Company Public Relations Counsel under the guidance, direction, and authority of Thomas Fortune Fay , legal counsel to the Plaintiff Group referred to in the text.

**Featured Video**



Drivers Could be Stuck in an
Emergency if They Only Have Junk in
their Trunk

**Journalists and Bloggers**



Visit PR Newswire for
Journalists for releases, photos,
ProfNet experts, and customized
feeds just for Media.

View and download archived
video content distributed by
MultiVu on The Digital Center.

Attorney for Deutsche Borse Subsidiary Clearstream Says Transfer of Iranian Central Bank Money Not Legally Relevant - Foreign Policy & International Affairs News

   

Next in Foreign Policy & International Affairs News

**Custom Packages**

Browse our custom packages or build your own to meet your unique communications needs. Start today.

**PR Newswire Membership**

Fill out a PR Newswire membership form or contact us at (888) 776-0942.

**Learn about PR Newswire services**

Request more information about PR Newswire products and services or call us at (888) 776-0942.

About PR Newswire | Contact PR Newswire | PR Newswire's Terms of Use Apply | Careers | Privacy | Site Map | RSS Feeds | Blog
Copyright © 2013 PR Newswire Association LLC. All Rights Reserved.
A UBM plc company.
Dynamic Site Platform powered by Limelight Networks.