```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
DEBORAH D. PETERSON, Personal                               :
Representative of the Estate of James C. Knipple            :
(Dec.), et al.,                                             :        10 Civ. 4518 (KBF)
                                                            :
                Plaintiffs,                                 :        MEMORANDUM
                                                            :        DECISION & ORDER
        -v-                                                 :
                                                            :
ISLAMIC REPUBLIC OF IRAN, et al.,                           :
                                                            :
                Defendants.                                 :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAY 10 2013

KATHERINE B. FORREST, District Judge:

Four proposed intervenors – the Estate of Daniel Wultz, Sheryl Wultz, Yekutiel "Tuly" Wultz, and Amanda Wultz ("Intervenors") – seek to join this action as plaintiffs, pursuant to Fed. R. Civ. P. 24(a), (b). They argue that their intervention is timely and as of right; the existing plaintiffs in this action vehemently disagree. For the reasons set forth below, the Court grants the motion to intervene.

FACTUAL BACKGROUND

As the participants in this action are well aware, more than 1,000 party plaintiffs have actively pursued this asset turnover litigation since 2010. Plaintiffs hold unsatisfied default judgments against the Islamic Republic of Iran ("Iran") arising out of various acts of Iranian-sponsored terrorism. In this litigation, plaintiffs seek to execute against two sets of assets, both of which are alleged to be beneficially owned by defendant Bank Markazi, an agency of Iran: (1)

1

approximately $1.75 billion in cash proceeds of certain bonds which are currently frozen in an account at Citibank in New York, and (2) bonds with a face value of $250 million that are alleged to have been wrongfully sold and transferred out of the United States. This Court issued an Opinion and Order on February 28, 2013, granting partial summary judgment to plaintiffs and ordering turnover of the $1.75 billion in cash. (ECF No. 367.) A motion by defendant Clearstream S.A. for reconsideration of the Court's ruling is currently pending, as is an appeal by defendant Bank Markazi.[1] The remaining assets – consisting of the $250 million in bonds – are the sole assets at issue in plaintiffs' remaining claims for, inter alia, fraudulent conveyance against defendants Clearstream S.A. and Banca UBAE S.p.A.

The Intervenors' proposed complaint explains that they – much like the existing plaintiffs – hold an unsatisfied judgment against Iran.[2] (Prop. Compl. in Intervention ("Prop. Compl.") ¶¶ 10-12, Prop. Intervenors' Mem. of L. in Suppt. of Mot. to Intervene Ex. A, ECF No. 330.) While the events at issue in the Wultzs' underlying claim took place in 2006, it was not until June 4, 2012, that the U.S. District Court for the District of Columbia issued a final default judgment against Iran. (See Prop. Compl. ¶¶ 11-12 (citing Am. Judgment, Wultz v. Islamic Republic of Iran, No. 08 Civ. 1460 (RCL)(D.D.C. June 4, 2012), ECF No. 137).)

---

[1] The Court takes no position as to whether the appeal by Bank Markazi is procedurally proper. In addition, the Court notes that a separate motion for reconsideration – brought by defendant Banca UBAE, SpA – is pending. That motion seeks reconsideration of the Court's denial of UBAE's motion to dismiss for lack of personal jurisdiction and is not relevant to the intervention motion.

[2] In this case, the Intervenors sought and received a $332 million default judgment against Iran and several other entities for the death of Daniel Wultz and injuries to his father, Yekutiel "Tuly" Wultz, resulting from a suicide bombing in Tel Aviv, Israel in May 2006. (Prop. Compl. ¶¶ 10-11.)

2

Following the entry of judgment by the D.C. District Court, the Intervenors moved that court for an order pursuant to 28 U.S.C. § 1610(c), permitting them to enforce the judgment; the court entered the § 1610(c) order on January 16, 2013. (Id. ¶ 13.) The D.C. District Court provided the Intervenors with a Clerk's Certification on February 8, 2013. (Id. ¶ 14.)

The Intervenors registered their judgment with this Court on February 19 and recorded it with the New York County Clerk on February 22. (Id. ¶¶ 15-16.) They then obtained a writ of execution from the Clerk of this Court and delivered it to the United States Marshal on February 21.[3] (Id. ¶ 17.)

The Wultzes filed the instant motion on February 25, fewer than 30 days after receiving the Clerk's Certification from the D.C. District Court and less than one week after they obtained the writ of execution from the U.S. Marshal. (ECF No. 329.) The motion appends the Intervenors' proposed complaint, which states causes of action for turnover of the Restrained Assets under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1603, 1605A, 1606 and 1610, and the Terrorism Risk Insurance Act of 2002 ("TRIA") § 201(a), Pub. L. No. 107-297, 116 Stat. 2322 (2002). The Intervenors have not joined in plaintiffs' common-law claims as regards the $250 million in bonds. (See Letter of Lee S. Wolosky to Hon. Katherine B. Forrest, Mar. 14, 2013, ECF No. 368.)

---

[3] The proposed Intervenors' complaint lists this date incorrectly as February 21, 2012. The Court assumes that the Intervenors intended February 21, 2013.

3

STANDARD OF REVIEW

To intervene as a matter of right under Rule 24(a), a party must demonstrate that: (1) the application is timely; (2) it claims "an interest relating to the property or transaction which is the subject matter of the action;" (3) it is situated such that "disposition of the action may, as a practical matter, impair or impede [its] ability to protect [its] interests;" and (4) its interest is "not adequately protected by an existing party." MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir.2006); accord St. John's Univ., New York v. Bolton, 450 Fed.Appx. 81, 83–84 (2d Cir.2011) (summary order); Fed. R. Civ. P. 24(a). Failure to demonstrate one of the above requires denial of the intervention motion. MasterCard Int'l Inc., 471 F.3d at 389; see also Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 96 (2d Cir.1990).

Courts typically consider the same four factors whether a motion for intervention is "of right" under Fed. R. Civ. P. 24(a), or "permissive" under Fed. R. Civ. P. 24(b). See, e.g., R Best Produce, Inc. v. Shulman–Rabin Marketing Corp., 467 F.3d 238, 240 (2d Cir.2006); see also Hnot v. Willis Group Holdings, Ltd., 234 Fed.Appx. 13, 14 (2d Cir.2007) (same). "A district court has broad discretion under Rule 24(b) to determine whether to permit intervention on the basis that the intervenor's 'claim or defense and the main action have a question of law or fact in common.'" St. John's Univ., 450 Fed.Appx. at 84 (quoting Fed. R. Civ. P. 24(b)(2)).

4

ANALYSIS

Of the four Rule 24(a) intervention requirements, it is undisputed that disposition of this action in the absence of the Intervenors would harm their interests, and that the existing plaintiffs do not adequately represent those' interests – in fact, plaintiffs wish to seize the same set of assets. However, plaintiffs assert that the remaining two Rule 24(a) requirements bar intervention: first, that the motion is untimely and, in addition, that the Intervenors cannot claim "an interest relating to the property or transaction which is the subject matter of the action." Fed. R. Civ. P. 24(a). The Court disagrees.

Timeliness

Despite plaintiffs' assertions that the Intervenors could have asserted their interest six months before they filed the instant motion, the Court finds that the Intervenors' motion is timely.

The timeliness of an intervention motion is a matter left to the district court's discretion. See In re Bank of New York Deriv. Litig., 320 F.3d 291, 300 (2d Cir.2003). In determining timeliness, the Court may consider, inter alia, "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to the existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." MasterCard Int'l Inc., 471 F.3d at 390. While the Court may consider the "the point

5

to which the suit has progressed" to determine timeliness, that factor is not dispositive. See NAACP v. New York, 413 U.S. 345, 365-66 (1973).

The Intervenors admit that they were aware of this litigation since it was commenced in 2010, but argue that they asserted their interest at the earliest time that the law permitted – after the February 2013 issuance of the § 1610(c) order. They argue that the Foreign Sovereign Immunities Act ("FSIA") supplies the governing procedure for execution on sovereign assets such as the $1.75 billion in cash that was the subject of the Court's February 28 Decision. The Intervenors explain that, under the FSIA, a party is required to satisfy four steps to execute upon the assets of a sovereign state involved in terrorism: they must first obtain a judgment against the party, which occurred here in June 2012. Next, they must serve notice of the judgment on the foreign state via diplomatic channels. Third, they must obtain an order under 28 U.S.C. § 1610(c), which verifies that the first two steps have been satisfied and permits the party to enforce the judgment (here, the D.C. District Court entered a § 1610(c) order on January 16, 2013). Finally, the party must register their judgment and § 1610(c) order with the clerk of the court in the district in which the assets to be seized are located and deliver the Clerk's Writ of Execution to the U.S. Marshal. The Intervenors delivered their Writ of Execution to the Marshal on February 21, 2013, four days before they filed the instant motion.

Plaintiffs do not argue that the Intervenors were dilatory in following the FSIA process outlined above; rather, they claim the FSIA process is wholly inapplicable. Plaintiffs argue that the Intervenors should have asserted their

interest in this litigation as early as August 10, 2012, when President Obama signed a statute – 22 U.S.C. § 8772 – into law. Section 8772 provides that certain financial assets held in the United States

> [S]hall be subject to execution or attachment in aid of execution in order to satisfy any judgment to the extent of any compensatory damages awarded against Iran for damages for personal injury or death caused by an act of torture, extrajudicial killing, aircraft sabotage, or hostage-taking, or the provision of material support or resources for such an act.

22 U.S.C. § 8772(a)(1). Section 8772 also provides that its effect is "notwithstanding any other provision of law, including any provision of law relating to sovereign immunity, and preempting any inconsistent provision of State law." Id.

Plaintiffs argue that the "notwithstanding" language of § 8772 overrides the FSIA requirements for executing upon the assets at issue here. Thus, the Intervenors could have asserted an interest in this litigation as early as August 2012, when President Obama signed § 8772 into law.

Even if plaintiffs are correct in their reading of § 8772, the intervention motion is nonetheless timely. Only six months elapsed between the August signing of § 8772 and the Intervenors' February 2013 motion – not an excessive time frame, given that this litigation has dragged on for nearly four years. In addition, the Court accepts the Intervenors' belief that they had to comply with the § 1610(c) requirement. As no case law interpreted § 8772 prior to this Court's February 28 Decision, the Intervenors had a good faith belief that they were required to follow the FSIA process. If ever there were an "unusual circumstance[ ]" to excuse a late-

7

filed intervention motion, the passage of § 8772 is such a circumstance. Fed. R. Civ. P. 24(a).

In addition, the prejudice to the existing plaintiffs is outweighed by that which would result from barring the Intervenors from this action. The Intervenors have made colorable arguments to entitlement to a portion of the $1.75 billion in cash proceeds. Given the difficulty of locating assets of Iran subject to execution in the United States, barring the Intervenors from satisfying their $32 million judgment surely constitutes prejudice.

In contrast, the prejudice to the existing parties is minimal. The Intervenors filed their motion just three days before the Court released its Opinion and Order on plaintiffs' partial summary judgment motion. The Court's decision on summary judgment is not affected by their intervention, nor has a rule 54(b) final judgment been entered with respect to the $1.75 billion in cash. While the Rule 54 judgment and turnover of the assets may be delayed slightly by the Intervenors' challenge to the priority of the various judgments here, the Court expects to resolve any priority issues as quickly as practicable. The Intervenors here are thus unlike those who sought improperly to intervene on the eve of trial or after judgment has been entered; they have arrived, as it were, just under the wire.

Nor are plaintiffs unduly prejudiced by the potential that granting the Intervenors' motion will disrupt plaintiffs' agreement as regards the priority of distributing the assets. Plaintiffs are understandably upset that the Intervenors seek to claim part of any recovery, especially after the Intervenors failed to

8

participate in five years of negotiations that led to a priority agreement among the thousands of plaintiffs. And it is true that the Second Circuit has listed disruption of a settlement agreement as an acceptable rationale to deny a motion to intervene. See In re Holocaust Victim Assets Litig., 225 F.3d 191, 199 (2d Cir. 2000)(noting "intervention at this late stage would prejudice the existing parties by destroying their Settlement and sending them back to the drawing board"); Pitney Bowes, Inc., 25 F.3d at 72; Farmland Dairies v. Comm'r of New York State Dep't of Agric. & Markets, 847 F.2d 1038, 1044 (2d Cir. 1988)("[I]f Appellants were permitted to intervene at this late date, there is no question that the settlement concluded by [plaintiff] Farmland and [defendant] State would be jeopardized.").

The nature of plaintiffs' agreement counsels against denying the motion, however. Unlike in the Second Circuit cases, here there is no settlement agreement between the adverse parties. The priority agreement amongst the existing plaintiffs does not affect the way in which the issues in this case will be tried; plaintiffs have already proven they are entitled to summary judgment on the $1.75 billion in cash, and the Intervenors admit they have no interest in the remaining state-law claims. The only settlement that may be disrupted here is precisely the arrangement whose validity the Intervenors challenge. The Court has a responsibility to adjudicate the issue of priority on the merits that is of greater import than evading disruption to plaintiffs' private agreement. In balancing the upset to plaintiffs' apple cart against the effects of barring them from the action, the Court concludes, in its discretion, that the intervention motion is timely.

This conclusion should not give undue encouragement to other nonparty judgment creditors, however; the Intervenors here have threaded a very narrow needle. The Intervenors assert a good-faith position that they could not have moved to intervene any earlier. They filed for intervention prior to any merits decision or entry of judgment. Given these unique facts, it is highly unlikely that any other proposed parties could intervene in this action.

Asserted Interest

Nor are plaintiffs correct that the Intervenors fail to "claim[ ] an interest relating to the property or transaction which is the subject matter of the action." Fed. R. Civ. P. 24(a). At least at this stage of the proceedings, the Intervenors claim a cognizable interest. Whether that claimed interest is a compensable interest is a question for another day.

"For an interest to be cognizable under Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" United States v. Peoples Benefit Life Ins. Co., 271 F.3d 411, 415 (2d Cir. 2001)(citing Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir.1990)). "'An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule.'" Id.

The Intervenors assert a cognizable interest in the litigation. Their default judgment against Iran is substantial and legally protectable. The § 1610(c) order and Writ of Execution filed with the U.S. Marshal gives them a direct interest in

10

the disposition of the $1.75 billion at issue in this lawsuit, pursuant to the FSIA and § 8772. Cf. Pers. v. New York State Bd of Elections, 467 F.3d 141, 144 (2d Cir. 2006)(finding "abstract interest in the democratic process in New York State" was not cognizable for purposes of Rule 24(a)). In addition, their interest is not contingent upon any sequence of future events; they claim that the existing Writ of Execution entitles them to relief. The interest claimed by the Intervenors is, in fact, virtually identical to that of the existing plaintiffs.

Plaintiffs challenge the Intervenors' interest on two grounds: first, that the $1.75 billion in cash is no longer part of the litigation and the Intervenors therefore have no property over which they can claim an interest. Second, plaintiffs argue that the Intervenors' interest is subordinate to that of the existing plaintiffs; under either the FSIA or state-law priority rules, the $1.75 billion would be exhausted well before the Intervenors would collect a penny.

Neither of plaintiffs' challenges is availing. First, the $1.75 billion in cash remained at issue in this litigation at the time of the Intervenors' motion. As discussed above, the Intervenors filed the motion prior the Court's February 28 Decision. That ruling granted plaintiffs' partial summary judgment motion, but the Court has not yet entered a formal Rule 54(b) turnover order. Until the 54(b) order issues, the Intervenors may assert an interest in the $1.75 billion in cash.

As to their second argument, plaintiffs may well be correct that the Intervenors' late-filed Writ of Execution will entitle them to nothing. But plaintiffs have not demonstrated that this is inevitably the case, nor do the Intervenors have

a burden of proof on the merits at this stage. They must only show that they possess a cognizable interest – demonstrated here by the valid judgment and the statutory provisions permitting execution on that judgment – not that they have a compensable interest.

Even so, the Intervenors argue in their reply brief that they do have a compensable interest. They argue that some of the plaintiffs lost their place in line by failing to follow the procedural requirements of the FSIA. The Intervenors have a colorable argument that their interest in the $1.75 billion is senior to that of at least some existing plaintiffs. Plaintiffs have not yet effectively countered this assertion.

Despite this conclusion, the Court reiterates that permitting intervention in no way indicates entitlement to relief. To recover any portion of the $1.75 billion, the Intervenors will have to demonstrate that their judgments have priority because the FSIA priority regime is applicable and/or that the writs of execution obtained by plaintiffs are defective. This will be a high hurdle.

## CONCLUSION

For the reasons set forth above, the Wultz Intervenors' motion to intervene is GRANTED.

Not later than May 20, 2013, plaintiffs and the Intervenors shall confer and submit a joint proposed briefing schedule for any motion(s) regarding the validity of the various plaintiffs' right to execute and the priority of distribution of the $1.75 billion in cash that was the subject of the Court's February 28 Opinion and Order.

The schedule shall provide that all briefing be completed not later than July 10, 2013.

The Clerk of Court is directed to close the motion at ECF No. 329.

SO ORDERED.

Dated:    New York, New York
         May 10, 2013

                              _____
                              KATHERINE B. FORREST
                              United States District Judge