THOMPSON
HINE

| ATLANTA | | CLEVELAND | | DAYTON | | WASHINGTON, D.C. |
| CINCINNATI | | COLUMBUS | | NEW YORK | |

August 16, 2013

**VIA ELECTRONIC MAIL**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ____8/19/13____
```

Hon. Katherine B. Forrest
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Forrest:

We are counsel to Banca UBAE, S.p.A. ("UBAE"), and we respond to the Plaintiffs' August 9, 2013 letter suggesting that UBAE is not willing to produce certain documents. As we demonstrate below, UBAE in the meet and confer discussions has agreed to produce,[1] and will produce, documents (if UBAE has them) responsive to almost all of the Plaintiffs' requests. Accordingly, no intervention by this Court is necessary.

**The Relevant Bonds**. Plaintiffs contend that UBAE purportedly will not produce documents concerning the Turnover Assets or other assets other than the Transferred Bonds (as defined in the Plaintiffs' discovery demands[2]). This is untrue. UBAE will produce documents related to the Turnover Assets and to the Transferred Bonds.

UBAE, however, has declined to produce documents related to what the Plaintiffs call "Foreign Bonds." Plaintiffs define that to mean the "roughly $2.527 billion in face value of bonds sub-custodized outside the United States that Markazi transferred from its account at Clearstream to the UBAE/Markazi Account in February, 2008, and proceeds thereof." Plaintiffs contend that information related to the Foreign Bonds "will assist the jury in assessing issues such as UBAE's intent or motive for engaging in the illicit conduct that Plaintiffs allege."

The Foreign Bonds are not at issue in this litigation. Equally, the Foreign Bonds are irrelevant to the central issue of whether UBAE engaged in any tortious conduct when it sold the *Transferred Bonds* on the open market in Luxembourg in March 2008. Plaintiffs contend (at 2, ¶ 2) that if "Iran/Markazi was one of UBAE's largest clients and paid millions of dollars in fees to

---

[1] In fact, UBAE is agreeing to respond to document requests that seek information that the Plaintiffs already have, as confirmed by their partial summary judgment motion and opposition to UBAE's motion to dismiss.

[2] A true and correct copy of the Plaintiffs' document demands is attached hereto as **Exhibit 1**.

---

THOMPSON HINE LLP          3900 Key Center              www.ThompsonHine.com
ATTORNEYS AT LAW           127 Public Square            Phone: 216.566.5500
                           Cleveland, Ohio  44114-1291  Fax: 216.566.5800



August 16, 2013
Page 2

UBAE every year, the jury could determine that those facts make it more likely that UBAE would assist the efforts of Iran and Markazi to hide their assets in order to advance UBAE's own financial interests." UBAE will produce (even though Plaintiffs already have this information in their possession) documents concerning the fees that UBAE earned on the sale of the Transferred Bonds and in connection with the Turnover Assets.

However, Plaintiffs' requests (34 and 48) go too far because they seek information concerning any fees concerning any other assets that UBAE may have held on behalf of Bank Markazi going back to 2001. That information, even assuming UBAE possesses it, is not probative of whether Bank Markazi was one of UBAE's "largest clients." Indeed, to defend such a claim, UBAE would be forced to disclose fees from all of its clients going back more than a decade. This is unduly burdensome and takes the Court and the parties far afield from the central issues in this case.

Finally, Plaintiffs assert (at 2, ¶ 3) that information concerning the Foreign Bonds "will assist Plaintiffs in establishing a pattern of trading in the securities . . . that supports the conclusion that the Defendants intentionally moved American-based assets outside of the United States to impede Plaintiffs' collection efforts and avoid government sanctions." Plaintiffs further contend (*id.*) that "[t]he absence of any similar trading in the non-U.S. based assets that Iran and Markazi held at UBAE and Clearstream will support the conclusion that Markazi's trading was motivated by a desire to hide Iranian assets that Plaintiffs could recover." But UBAE's actions (if any) concerning the Foreign Bonds is not probative of its intent with respect to the Transferred Bonds or its knowledge of Plaintiffs' judgments.

**Judgments Against Libya**. Consistent with its agreement with Plaintiffs, UBAE will produce information showing who its shareholders were in 2008 (Request 14). UBAE has also agreed to produce documents reflecting communications, if any, with its majority shareholder concerning the judgments at issue here (Request 16). However, Plaintiffs seek information that goes far beyond the issues in this case. Judgments against Libya and information concerning Libya's creditors have nothing to do with the issues concerning the Plaintiffs' judgments against Iran and the sale of Bank Markazi bonds in March 2008. To the extent that Plaintiffs seek information about its controlling shareholder's knowledge of the judgments at issue here, UBAE of course does not control that entity or otherwise have access to documents in that entity's possession, custody, or control.

**Policies/Practices Regarding Terrorist Entities**. UBAE will produce its written policies in this regard. During the parties' meet and confer, UBAE did not refuse to produce documents concerning any "informal policies and practices," but stated that it will determine whether any such documents exist and produce those documents if they do in fact exist.


THOMPSON
HINE

August 16, 2013
Page 3

**Judgments Against Iran/Sanctions; Relationship Termination**.   UBAE has not refused to produce documents responsive to Requests 22, 43-44, and 46 (to the extent that UBAE has any documents responsive to these requests).  Instead, UBAE objects to the time frame that Plaintiffs have identified (2004-2008) to the extent that Plaintiffs seek documents related to judgments other than the ones at issue here.  Plaintiffs say (at 3, ¶ 3) that they "must establish UBAE's knowledge of the existence of judgments against Iran" and that "[t]he requested documents will no doubt shed light on UBAE's knowledge of the pariah status of Iran and Markazi in the banking world."  But the only judgments that matter in this case are those that concern the various plaintiffs' groups in this litigation and those judgments with which the plaintiffs contend UBAE interfered.  UBAE's knowledge (or lack thereof) of other judgments involving other creditors anywhere in the world is legally immaterial.

**Foreign Currency Reserve Practices**.  During the parties' meet and confer, we advised Plaintiffs' counsel that we would produce these documents if any such documents are in the possession, custody, or control of UBAE.   UBAE has therefore not refused to produce documents responsive to these requests.

**Document Retention Policies**.   During the parties' meet and confer, we informed Plaintiffs' counsel that UBAE would determine whether it had such policies and, if so, produce those policies in effect from 2008-2010.  Plaintiffs seek all policies going back to 2001.  That request is overbroad and not likely to lead to the discovery relevant evidence.

**Documents UBAE Intends to Rely Upon**.  UBAE will produce to the Plaintiffs all documents in its possession, custody, or control responsive to Plaintiffs' requests (except those specifically referenced herein).  UBAE is not obligated to identify the documents that it intends to use for impeachment.  Nor could it.  Plaintiffs have refused to identify their trial witnesses or witnesses with information relevant to this case in response to UBAE's interrogatories.  Thus, asking UBAE to produce impeachment material now is premature and inappropriate.

Sincerely,

/s/ *Ugo Colella*

Ugo Colella
*Counsel for Banca UBAE, S.p.A.*

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate Of James C. Knipple (Dec.) et al., <br><br> Plaintiffs, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN; BANK MARKAZI a/k/a CENTRAL BANK OF IRAN; BANCA UBAE SpA; CITIBANK, N.A., and CLEARSTREAM BANKING, S.A., <br><br> Defendants. | Case No.: 10 CIV 4518 (KBF) |

**PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF
DOCUMENTS DIRECTED TO DEFENDANT BANCA UBAE SpA**

The Peterson, Greenbaum and Acosta Judgment Creditors/Plaintiffs (collectively,

"Plaintiffs") hereby request, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure,

that defendant Banca UBAE SpA ("UBAE") make the documents specified herein available for

inspection and copying at the offices of Salon Marrow Dyckman Newman & Broudy LLP, 292

Madison Avenue, 6th Floor, New York, NY 10017, within thirty (30) days from the date of

service of this Request for the Production of Documents, or at such other time and place as

counsel may agree.  Plaintiffs request that production be made in accordance with the definitions

and instructions set forth below.

215669

1

# I.

## DEFINITIONS

1.      In accordance with Local Rule 26.3(c), "Citibank" means defendant Citibank, N.A. and its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

2.      In accordance with Local Rule 26.3(c), "Clearstream" means defendant Clearstream Banking, S.A. and its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

3.      In accordance with Local Rule 26.3(c), "Markazi" means defendant Bank Markazi a/k/a Central Bank of Iran and its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

4.      The term "Defendants" means Markazi, Clearstream and UBAE.

5.      The term "Plaintiffs" means the plaintiffs in the *Peterson, Greenbaum* and *Acosta* actions that have been consolidated in the above-captioned proceedings.

6.      The term "Iran" means the Islamic Republic of Iran and all of its agencies or instrumentalities.

7.      The term "Policy" means any rule, procedure, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, that was recognized or followed, explicitly or implicitly, by any Defendant.

8.      The term UBAE/Markazi Account means the account opened at Clearstream by UBAE on or about January 18, 2008 for the purpose of housing investments held by Markazi and/or the account(s) opened at UBAE by Markazi in or around 2008 for the purpose of housing investments previously held by Clearstream on behalf of Markazi.

2

9.     The term "OFAC" means the Office of Foreign Assets Control at the United States Department of Treasury.

10.     "SDN" means a Specially Designated National designated as such by OFAC.

11.     "SDGT" means a Specially Designated Global Terrorist designated as such by OFAC.

12.     "State Sponsor of Terrorism" means a state sponsor of terrorism designated as such by the United States Department of State.

13.     The term "Turnover Assets" means the approximately $1.75 billion in assets that the Court has ordered Defendants and Citibank to turn over to Plaintiffs and other judgment creditors of Iran.

14.     The term "Transferred Bonds" means the roughly $250 million in face value of bonds that Markazi sold in or about June 2008 that were held in the UBAE/Markazi Account prior to sale or transfer.

15.     The term "Foreign Bonds" means the roughly $2.527 billion in face value of bonds sub-custodized outside the United States that Markazi transferred from its account at Clearstream to the UBAE/Markazi Account in February, 2008, and proceeds thereof.

16.     The term "Relevant Time Period" means the period from January 2000 to the present, and all of the requests set forth below request the production of documents created or maintained during the Relevant Time Period, unless a request specifically indicates otherwise.

17.     The terms "you" or "your" refer to Banca UBAE SpA and, unless the context requires otherwise, its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

215669                                                    3

18.     "Including" means "including, but not limited to."

19.     "Referring to" or "relating to" means any document or communication that mentions, constitutes, contains, embodies, concerns, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, involves or is in any way pertinent to that subject.

20.     Plaintiffs hereby incorporate by reference the definitions of the terms "Communication," "Document," "Person," and "Concerning" set forth in Local Rule 26.3(c).

21.     Plaintiffs hereby incorporate by reference the rules of construction for the terms "all/each," "and/or" and for the use of singular and plural verb tenses set forth in Local Rule 26.3(d).

## II.

### INSTRUCTIONS

1.     These document requests are continuing so as to require supplemental responses as specified in Fed. R. Civ. P. 26(e).

2.     The fact that a document is produced by one Defendant does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical in all respects.

3.     In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by your attorneys or their agents, employees, representatives or investigators.

4

4.      Documents are to be produced in full; redacted documents will not constitute compliance with this request.  If any requested document or thing cannot be produced in full, produce it to the extent possible, indicating which document, or portion of that document, is being withheld, and the reason that document is being withheld.

5.      In producing documents, you are requested to produce the original of each document requested together with all non-identical copies and drafts of that document.  If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

6.      Pursuant to Rule 34 of the Federal Rules of Civil Procedure, produce all documents as they are kept in the usual course of business.

7.      All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by you.  If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

8.      Documents shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

9.      Documents attached to each other should not be separated.

10.     Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents that are called for by this discovery request, or if such documents are attached to documents called for by this discovery request and constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

11.     If you claim the attorney-client privilege, or any other privilege or work product protection for any document, that document need not be produced, but you shall provide the information required by Local Rule 26.2 concerning that document.

215669                                   5

12.     In the absence of an agreement to the contrary among counsel, produce electronic documents and information in their native format.

### III.

#### REQUESTS FOR PRODUCTION

1.     Organizational charts or other documents sufficient to show the positions and responsibilities of all persons involved in performing or negotiating services related to any account maintained by Iran, Markazi or you at Clearstream or any decision making with respect to the following issues:

        a.     The establishment of the UBAE/Markazi Account;

        b.     The transfer of assets from any account maintained by Markazi at Clearstream into the UBAE/Markazi Account;

        c.     The investments made by Markazi in any Clearstream account, including the UBAE/Markazi Account; or

        d.     The communications between or among Citibank, Clearstream, UBAE and Markazi concerning the Turnover Assets, the Transferred Assets, the Foreign Bonds or any investment made by Iran or Markazi in an account maintained at Clearstream, including the UBAE/Markazi Account.

2.     Organizational charts or other documents sufficient to show the positions and responsibilities of all persons involved in performing or negotiating services related to any account maintained by Iran or Markazi with you or any decision making with respect to the following issues:

        a.     The sale or transfer of assets from any account maintained by Iran or Markazi into an account maintained with or by you; or

        b.     The investments made by Markazi or Iran in any account maintained with or by you.

3.    All leases and related executed documents maintained by you for the leasing, rental, or possession of real property located in the United States.

4.    All licenses pursued, obtained, and/or maintained by you with respect to your business operations in the United States.

5.    Documents sufficient to identify all persons employed by you in the United States at any point during the Relevant Time Period.

6.    Any budgets or financial reports produced on a monthly, quarterly or annual basis that show expenditures made by you with respect to business operations maintained by you in the United States.

7.    All contracts or agreements that you have negotiated and/or entered since 2000 that call for you to provide services from or in the United States.

8.    All contracts or agreements that you have negotiated and/or entered since 2000 that call for third parties to provide goods or services to you in the United States, including, your agreements with any correspondent banks in the United States.

9.    All documents concerning any travel conducted by your employees for business in the United States.

10.   Documents sufficient to identify all investments in entities located in the United States owned by you or held on your behalf, including securities issued by United States entities.

11.   Documents sufficient to identify all securities owned by you or held on your behalf during the Relevant Time Period that were custodized or sub-custodized in the United States.

12.   All invoices or bills received by you for services rendered by or good purchased from entities located in the United States.

215669                                        7

13.    All account opening documents and account statements related to bank, securities, trading, correspondent or other accounts maintained by you in the United States or with a United States institution.

14.    Documents sufficient to identify your shareholders during 2008.

15.    All documents concerning any policies, practices or procedures, whether formal or informal, that you maintained that relate to providing banking or financial services to Iran, Markazi, or any entity that has been designated as an SDN, SDGT or a State Sponsor of Terrorism.

16.    All communications with the governments of Libya or Iran concerning any judgments entered or enforced against them by a court located in the United States, the existence of judgment creditors of Libya, Iran or any of their agencies or instrumentalities or efforts by the judgment creditors of Libya, Iran or any of their agencies or instrumentalities to collect upon their judgments.

17.    All documents concerning any services provided by you to Iran or Markazi that assisted in avoiding or were intended to avoid the surrender or freezing of any assets as a result of any sanctions imposed upon and/or enforced against Iran or Markazi by the U.S. government or any of its agencies or any foreign government or any of its agencies.

18.    All documents concerning any transfers or sales made by you or through any account maintained with or by you to Hezbollah, Hamas, any SDN, any SDGT, any of the affiliates of the foregoing entities, or any "charity" affiliated with any of those entities.

19.    Documents sufficient to identify the sources of all assets transferred into or maintained in the UBAE/Markazi Account.

20.    Documents sufficient to identify the destination of all funds transferred out of the UBAE/Markazi Account.

21.    All documents and internal or external communications concerning the Turnover Assets, the Foreign Bonds or the Transferred Bonds, including:

      a.    All account statements related to those assets;

      b.    Your communications with the Defendants or third parties concerning those assets;

      c.    Your internal communications and documents regarding those assets, including drafts;

      d.    Your communications regarding the acquisition, sale or transfer of any portion of those assets;

      e.    Your communications with any United States or foreign government or governmental agency concerning those assets; or

      f.    Any tax records prepared by or provided to you concerning those assets.

22.    All documents, including internal or external communications, concerning the existence of any judgment issued by a court located in the United States against Iran or any of its agencies or instrumentalities.

23.    All documents, including internal and external communications, concerning assets held by Iran or Markazi in the United States, investments made by Markazi or Iran in assets physically located in the United States or securities immobilized or held in custody or trust by entities located in the United States.

24.    All documents, including internal and external communications, concerning efforts by you, Markazi or Iran to conceal or disguise the beneficial owner of investments or assets held by Markazi or Iran.

25.    All documents, including internal and external communications, concerning strategies for avoiding the collection or enforcement of judgments by Iran's judgment creditors.

26.    All documents and communications circulating or concerning any press releases issued by you, Iran or Markazi, or other public communications by you, Iran or Markazi, or any agent of Iran or Markazi, concerning the above-captioned proceedings or any judgment entered against Iran by an American court.

27.    All documents concerning the purposes for which you or Markazi used any funds held in the UBAE/Markazi Account, including any documents showing that Markazi utilized those funds to manage its foreign currency reserves.

28.    All documents concerning any policies, practices or procedures maintained by you, Iran or Markazi related to the maintenance or management of their foreign currency reserves, including documents concerning:

        a.    The investments approved for those reserves;

        b.    Where Iran or Markazi maintained those reserves;

        c.    The currencies in which Iran or Markazi maintained those reserves;

        d.    The reasons why Iran or Markazi maintained reserves in those currencies;

        e.    The sources of the policies, practices and procedures maintained by Iran or Markazi concerning those reserves;

        f.    Your communications with the other Defendants concerning those policies; or

        g.    Changes in those policies, practices and procedures over time.

29.    All communications between you and any other person in which the funds maintained in the UBAE/Markazi Account are referred to as foreign currency reserve funds.

30.    Documents sufficient to demonstrate all investments made by Markazi or Iran in any account maintained by you.

31.    All communications between you and OFAC, the United States Department of Treasury or any other state or federal governmental agency or Italian governmental agency

10

concerning the services that you provided to Iran, Markazi, any SDN, any SDGT or any State Sponsor of Terrorism.

    32.    Your communications with any Defendant concerning:

        a.    The creation, maintenance, and/or administration of the UBAE/Markazi Account;

        b.    The transfer of assets into or out of the UBAE/Markazi Account;

        c.    The above-captioned proceedings or any other actual or potential proceedings or litigation related to the Turnover Assets, the Foreign Bonds or the Transferred Bonds;

        d.    The custody, control, administration, and/or maintenance of the Turnover Assets;

        e.    The custody, control, administration, and/or maintenance of the Transferred Bonds;

        f.    The custody, control, administration, and/or maintenance of the Foreign Bonds

        g.    The custody, control, administration, and/or maintenance of the any account maintained by Iran or Markazi at Clearstream;

        h.    The existence and enforcement of U.S. or foreign government sanctions against Iran or Markazi; or

        i.    The existence and enforcement of judgments issued by courts located in the United States against Iran.

    33.    All documents produced or provided by you to any state or federal prosecutor's office or any governmental agency in connection with any investigation undertaken regarding your activities, services, agreements, or contracts concerning the Turnover Assets, the Foreign Bonds or the Transferred Bonds.

215669                    11

34.     Documents sufficient to demonstrate the amount of the fees, compensation, benefits, and/or interests paid or transferred by Iran or Markazi to you for each year from 2001 through the present, whether directly or indirectly, and whether related to services provided inside or outside of the United States.

35.     Any agreement of insurance or indemnity that you contend may provide coverage for the claims asserted by Plaintiffs in the above-captioned proceedings.

36.     All documents concerning any cost or judgment sharing agreement that you have entered with any person related to the claims at issue in the above-captioned proceedings.

37.     All documents concerning any joint defense or common interest agreement that you have entered with any person related to the claims at issue in the above-captioned proceedings.

38.     Any communications between you or any person acting on your behalf with any non-U.S. government or governmental agency concerning the custody, control, administration, and/or maintenance of the Turnover Assets, the Foreign Bonds or the Transferred Bonds.

39.     Documents sufficient to identify the entities involved in transferring interest, principal or dividend payments on investments owned by Markazi in any account maintained with you or Clearstream (including the UBAE/Markazi Account) from the issuers of securities to Markazi and the steps involved in making those transfers.

40.     All account opening documents for any account maintained by Iran, Markazi or you with Clearstream.

41.     All documents provided or communications made by you to Iran, Markazi or Clearstream concerning the creation, maintenance, and/or administration of any account maintained by any of those entities with you.

12

42.     All documents concerning any account maintained by you at Clearstream in which you held investments beneficially owned by Iran or Markazi.

43.     All documents regarding any actual or potential sanctions and/or their enforcement against Iran or any of its agencies or instrumentalities, including all documents identifying or discussing the bases for the imposition of those sanctions.

44.     All documents concerning any judgment entered against Iran or any of its agencies or instrumentalities during or prior to 2008, including any judgment related to any terrorist activity in which Iran or any of its instrumentalities were alleged to have engaged, efforts to enforce any such judgment, and/or United States laws concerning the enforcement of such judgments.

45.     All internally or externally circulated news reports or other documents concerning any terrorist activity in which Iran was alleged to have engaged during or prior to 2008.

46.     All documents concerning the possibility that you or Clearstream would terminate a business relationship with Markazi, Iran or any of its agencies or instrumentalities or that Markazi would terminate its business relationship with you or Clearstream.

47.     All documents provided to any member of your board of directors concerning your business relationship with Iran, Markazi or Clearstream, and all communications concerning any such document, including drafts.

48.     Documents sufficient to demonstrate the amount of fees, compensation, benefits, and/or interests paid to you by Iran or Markazi, whether directly or indirectly, for all years during the Relevant Time Period.

49.     Any document retention policy maintained by you during the period from 2001 through the present.

50.     Any litigation holds or other documents prepared by or for you that instructed your employees to maintain any documents relevant to the matters at issue in this litigation.

215669                                  13

51.     Any document not otherwise herein requested that you believe supports any
defense that you plan to assert in this action or that you may rely upon to impeach any potential
witness or to attack the veracity of any other document in the above-captioned proceedings.

Dated: March 25, 2013

Liviu Vogel
Salon Marrow Dyckman Newman & Broudy LLP
292 Madison Avenue
New York, NY 10017
(212) 661-7100

– and –

James P. Bonner
Patrick L. Rocco
Stone Bonner & Rocco LLP
260 Madison Avenue, 17th Floor
New York, NY 10016
(212) 239-4340

*Attorneys for Peterson Plaintiffs*

Curtis C. Mechling
James L. Bernard
Benjamin Weathers-Lowin
Monica Hanna
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038
(212) 806-5400

*Attorneys for Greenbaum and Acosta
Plaintiffs*

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN; BANK MARKAZI a/k/a CENTRAL BANK OF IRAN; BANCA UBAE SpA; CITIBANK, N.A., and CLEARSTREAM BANKING, S.A., <br><br> Defendants. | Case No. 10 Civ. 4518 (KBF) <br><br> **AFFIRMATION OF SERVICE** |

I, Liviu Vogel, declare under the penalty of perjury that I have served a copy of the attached Plaintiffs' First Request For the Production of Documents Directed to Defendant BANCA UBAE SpA by enclosing a true copy of same in a postpaid properly addressed wrapper and depositing it in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York, upon the following at their last known address designated for that purpose to:

Frank Panopoulos, Esq.
White & Case LLP
*Counsel for Clearstream Banking S.A.*
701 Thirteenth Street, N.W.
Washington, DC 20005
Email: fpanopoulos@washdc.whitecase.com
      nerb@washdc.whitecase.com

Sharon L. Schneier, Esq.
Davis Wright Tremaine LLP
*Counsel for Citibank, N.A.*
1633 Broadway, 27th Floor
New York, NY 10019

215655.1

Email: sharonschneier@dwt.com
          ChrisRobinson@dwt.com

David Lindsey, Esq.
Chaffetz Lindsey LLP
*Counsel for Bank Markazi*
505 Fifth Avenue, 4th Floor
New York, NY 10017
Email: David.Lindsey@chaffetzlindsey.com
          andreas.frischknecht@chaffetzlindsey.com

John L. Zefutie, Jr., Esq.
Patton Boggs LLP
*Counsel for Banca UBAE SpA*
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, NJ 07102
Email: JZefutie@PattonBoggs.com
          UColella@PattonBoggs.com

Curtis Campbell Mechling, Esq.
Strook & Strook & Lavan LLP
*Counsel for Greenbaum & Acosta Judgment Creditors*
180 Maiden Lane
New York, NY 10038
Email: cmechling@stroock.com
          jbernard@stroock.com
          bweatherslowin@stroock.com

Keith M. Fleischman, Esq.
Fleischman Law Firm
*Counsel for Valore Judgment Creditors*
565 5th Avenue, 7th Floor
New York, NY 10017
Email: keith@fleischmanlawfirm.com
          jpark@fleischmanlawfirm.com

Noel J. Nudelman, Esq.
Heideman Nudelman & Kalik PC
*Counsel for Valore Judgment Creditors*
1146 19th Street, NW
5th Floor
Washington, DC 20036
Email: njnudelman@hnklaw.com

215655.1

Richard M. Kremen, Esq.
DLA Piper US LLP
*Counsel for Heiser Judgment Creditors*
6225 Smith Avenue
Baltimore, MD 21209
Email:  richard.kremen@dlapiper.com

Suzelle M. Smith, Esq.
Howard and Smith
*Counsel for Levin Judgment Creditors*
523 W 6th Street, Suite 728
Los Angeles, CA 90014
Email: ssmith@howarth-smith.com
          jrankin@howarth-smith.com

John Karr, Esq.
Karr & Allison, P.C.
*Counsel for Murphy Judgment Creditors*
1250 Connecticut Ave, NW, 2nd Floor
Washington, DC  20036
Email: jwkarr@msn.com


Dated: New York, New York
          March 25, 2013

Liviu Vogel
Salon Marrow Dyckman Newman &
Broudy LLP

215655.1