

27th Floor
1633 Broadway
New York, NY 10019-6708

**Sharon L. Schneier**
212-603-6448 tel
212-489-8340 fax

sharonschneier@dwt.com

CONTAINS INFORMATION SUBJECT TO
<u>JULY 9, 2013</u> PROTECTIVE ORDER

October 7, 2013

**VIA E-MAIL**

(ForrestNYSDChambers@nysd.uscourts.gov)
The Honorable Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street, Room 1610
New York, NY 10007

    **Re:** ***Peterson v. Islamic Republic of Iran, et al.*, Civ. No. 1:10-4518 (KBF)**

Dear Judge Forrest:

    We represent Citibank, N.A. ("Citibank") which is a non-party in the above-referenced action.

    As the Court is aware, in accordance with the Court's Order Entering Partial Final Judgment Pursuant to Fed.R.Civ.P. 54(b), Directing Turnover of the Blocked Assets, Dismissal of Citibank with Prejudice and Discharging Citibank from Liability, entered on July 9, 2013 (ECF. No. 463), Citibank transferred approximately $1.9 billion in Blocked Assets to a Qualified Settlement Fund established by certain judgment-creditors/plaintiffs, and was dismissed from this action. The remaining claims in this case, which were not the subject of the Court's February 28, 2011 Opinion and Order (ECF No. 367), and concern $250,000,000 in bonds sold prior to the issuance of the restraints in this case, were not alleged against Citibank.

    Subsequent to the transfer of the Blocked Assets, Citibank was served with a non-party deposition notice and document request ("the Subpoena"), dated August 13, 2013 directing Citibank to produce certain documents and designate a corporate officer to testify about certain topics enumerated in the Subpoena. A copy of the Subpoena is annexed hereto as Exhibit A. The document requests set forth in the Subpoena largely mirror Plaintiffs' First Request for Production of Documents, dated March 25, 2013 which Citibank responded and/or objected to on July 25, 2013 ("Document Response"). A copy of the Document Response is annexed hereto

Anchorage    New York    Seattle
Bellevue    Portland    Shanghai
Los Angeles    San Francisco    Washington, D.C.    www.dwt.com

The Honorable Katherine B. Forrest
October 7, 2013
Page 2


as Exhibit B.  Plaintiffs never raised any objections to Citibank's response to the Document Request but instead served Citibank with a Subpoena.

Counsel has conferred several times about the scope of the document request set forth in the Subpoena as well as the need for a deposition.  Based on those discussions, Citibank recently agreed to undertake a search of documents with respect to certain custodians based upon agreed-upon search terms.  That search is underway.  Plaintiffs' counsel has recently insisted that Citibank also produce a corporate representative for a 30(b)(6) deposition by no later than October 10, 2013.  On October 4, 2013, Plaintiffs served Citibank with another Subpoena scheduling the 30(b)(6) deposition for October 10, 2013, notwithstanding that Plaintiffs' counsel is aware that Citibank is not prepared to go forward on that date.

Initially, Citibank submits that there is no legitimate need for it to produce a corporate officer to be deposed in this case.  We therefore write pursuant to Local Rule 37.2 to request a protective order under Federal Rule of Civil Procedure 26(c) in response to plaintiffs' deposition notice.  To the extent that most of the discovery directed at Citibank (in both the Document Request and Subpoena) is focused

REDACTED

In recent conversations, Plaintiffs' counsel has advised me that notwithstanding the foregoing, plaintiffs believe that the deposition is important in order to be able to inquire as to whether Clearstream misled Citibank by not disclosing that Bank Markazi had a "beneficial interest" (as found by the Court), in security entitlements held by Clearstream in its omnibus account at Citibank in New York.  What, if anything, Citibank would have not done had Clearstream disclosed the identity of its underlying customer (Bank Markazi), at some undefined time, prior to Citibank being served with a writ of execution in June 2008, and then restraining the Blocked Assets, is entirely speculative and in any event seeks a legal conclusion, and cannot serve as the basis for a 30(b)(6) deposition of Citibank.

In the event that the Court orders Citibank to go forward with the deposition we ask that the date for the deposition be extended from October 10, 2013 to a mutually convenient date in

The Honorable Katherine B. Forrest
October 7, 2013
Page 3


October.  Plaintiffs' counsel has consented to the extension.  Defendants' counsel has similarly consented to the deposition.  Because UBAE's counsel has an arbitration scheduled for mid-October, he has asked that the Citibank deposition go forward the week of October 28, 2013.

A redacted copy of the letter will be filed in the public docket.

Respectfully submitted,

Sharon L. Schneier

Enclosures

cc:     All counsel of record via e-mail

DWT 22679697v2 0067486-000011

# EXHIBIT A

AO 88A (Rev 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| | | |
|---|---|---|
| Peterson et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   10 Civ. 4518 (KBF) |
| Islamic Republic of Iran et al. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Citibank, N.A., c/o Legal Intake Unit, 1 Court Square, 31st Floor, Long Island City, NY 11120

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit A

| Place: Salon Marrow Dyckman Newman & Broudy, LLP, 292 Madison Avenue, New York, NY 10017 | Date and Time:<br>08/21/2013 10:00 am |
|---|---|

The deposition will be recorded by this method:   stenographic and video

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Exhibit B

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  ___08/13/2013___

| | CLERK OF COURT | OR | |
|---|---|---|---|
| | _____ | | _____ |
| | *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*      the Peterson Plaintiffs
_____ , who issues or requests this subpoena, are:

Liviu Vogel, Salon Marrow Dyckman Newman & Broudy LLP, 292 Madison Avenue, New York, NY 10017, (212) 661-7100, LVogel@salonmarrow.com

AO 88A  (Rev  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   10 Civ. 4518 (KBF)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

    ❏ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

    $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

                                    _____
                                        *Server's signature*

                                    _____
                                        *Printed name and title*

                                    _____
                                        *Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

### Exhibit A – Deposition Topics

Citibank, N.A. shall designate one or more officers, directors, managing agents, or other persons who are most qualified to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. The person(s) so designated by Citibank shall testify on matters known or reasonably available to Citibank concerning the subjects listed below:

1. The identities and responsibilities of the persons involved in performing or negotiating services related to any account maintained by defendant Clearstream Banking, S.A. ("Clearstream") for the benefit of defendants Islamic Republic of Iran ("Iran"), Bank Markazi ("Markazi") or Banca UBAE S.p.A. ("UBAE") at Citibank;

2. The identities and responsibilities of the persons involved in performing or negotiating services related to any account maintained by Iran, Markazi or Clearstream at UBAE or Citibank;

3. Any account opened at Clearstream by UBAE on or about January 18, 2008 for the purpose of housing investments beneficially owned by Markazi (the "UBAE/Markazi Account");

4. The transfer of assets from any account maintained by Markazi at Clearstream into the UBAE/Markazi Account;

5. The investments made by Markazi or Iran in any account maintained with UBAE, Clearstream or Citibank;

6. The following assets: (a) the approximately $1.8 billion in assets that the Court has ordered Citibank to turn over to Plaintiffs and other judgment creditors of Iran (the "Turnover Assets"); (b) the roughly $250 million in face value of bonds that

Markazi sold in or about June 2008 that were held in the UBAE/Markazi Account prior to sale or transfer of those assets (the "Transferred Assets"); (c) the roughly $2.527 billion in face value of bonds sub-custodized outside the United States that Markazi transferred from its account at Clearstream to the UBAE/Markazi Account in February, 2008 (the "Foreign Bonds"); and (d) any investment made by Markazi in any account maintained by Markazi at or through UBAE or Clearstream, including the UBAE/Markazi Account.

7.   The communications between or among Citibank, Clearstream, UBAE, Iran and Markazi concerning: (a) the Turnover Assets; (b) the Transferred Assets; (c) the Foreign Bonds; or (d) any investment made by Markazi in any account maintained by Markazi at or through UBAE or Clearstream, including the UBAE/Markazi Account.

8.   The procedures used at Citibank with respect to Clearstream's omnibus account for tracking Clearstream customer account numbers or other customer information, collecting interest and principal payments on bonds held in the omnibus account, crediting payments of interest and principal to any other account at Citibank in Clearstream's name, receiving and processing withdrawal instructions, and transferring payments to or for the benefit of Clearstream or its customers through correspondent banks.

9.   Your document retention policies.

Dated:  August 13, 2013

SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

By:  _____
        Liviu Vogel

- 2 -

292 Madison Avenue, 6th Floor
New York, New York 10017
Telephone: (212) 661-7100

STONE BONNER & ROCCO LLP
James P. Bonner
Patrick L. Rocco
260 Madison Avenue, 17th Floor
New York, New York 10016
Telephone: (212) 239-4340

*Attorneys for Peterson Plaintiffs/Judgment Creditors*


STROOCK & STROOCK & LAVAN LLP
Curtis C. Mechling
James L. Bernard
Benjamin Weathers-Lowin
Monica Hanna
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400

*Attorneys for Greenbaum and Acosta
Plaintiffs/Judgment Creditors*

## Exhibit B to Subpoena – Citibank, N.A.

This subpoena requires the production of the documents described below.  In responding to the subpoena, you should comply with the instructions and apply the definitions set forth below.

### I.

### DEFINITIONS

1.      In accordance with Local Rule 26.3(c), "UBAE" means defendant Banca UBAE SpA and its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

2.       In accordance with Local Rule 26.3(c), "Clearstream" means defendant Clearstream Banking, S.A. and its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

3.      In accordance with Local Rule 26.3(c), "Markazi" means defendant Bank Markazi a/k/a Central Bank of Iran and its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

4.      The term "Defendants" means Markazi, Clearstream and UBAE.

5.      The term "Plaintiffs" means the plaintiffs in the *Peterson, Greenbaum* and *Acosta* actions that have been consolidated in the above-captioned proceedings.

6.      The term "Iran" means the Islamic Republic of Iran and all of its agencies or instrumentalities.

7.      The term "Policy" means any rule, procedure, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, that was recognized or followed, explicitly or implicitly, by any Defendant.

215668                                                          1

8.     The term UBAE/Markazi Account means the account opened at Clearstream by UBAE on or about January 18, 2008 for the purpose of housing investments held by Markazi and/or the account(s) opened at UBAE by Markazi in or around 2008 for the purpose of housing investments previously held by Clearstream on behalf of Markazi.

9.     The term "OFAC" means the Office of Foreign Assets Control at the United States Department of Treasury.

10.     "SDN" means a Specially Designated National designated as such by OFAC.

11.     "SDGT" means a Specially Designated Global Terrorist designated as such by OFAC.

12.     "State Sponsor of Terrorism" means a state sponsor of terrorism designated as such by the United States Department of State.

13.     The term "Turnover Assets" means the approximately $1.75 billion in assets that the Court has ordered Defendants and Citibank to turn over to Plaintiffs and other judgment creditors of Iran.

14.     The term "Transferred Bonds" means the roughly $250 million in face value of bonds that Markazi sold in or about June 2008 that were held in the UBAE/Markazi Account prior to sale or transfer.

15.     The term "Foreign Bonds" means the roughly $2.527 billion in face value of bonds sub-custodized outside the United States that Markazi transferred from its account at Clearstream to the UBAE/Markazi Account in February, 2008, and proceeds thereof.

16.     The term "Relevant Time Period" means the period from January 2000 to the present, and all of the requests set forth below request the production of documents created or maintained during the Relevant Time Period, unless a request specifically indicates otherwise.

17.     The terms "you" or "your" refers to Citibank, N.A. and, unless the context requires otherwise, its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

18.     "Including" means "including, but not limited to."

19.     "Referring to" or "relating to" means any document or communication that mentions, constitutes, contains, embodies, concerns, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, involves or is in any way pertinent to that subject.

20.     Plaintiffs hereby incorporate by reference the definitions of the terms "Communication," "Document," "Person," and "Concerning" set forth in Local Rule 26.3(c).

21.     Plaintiffs hereby incorporate by reference the rules of construction for the terms "all/each," "and/or" and for the use of singular and plural verb tenses set forth in Local Rule 26.3(d).

## II.

### INSTRUCTIONS

1.     These document requests are continuing so as to require supplemental responses as specified in Fed. R. Civ. P. 26(e).

2.      The fact that a document is produced by one Defendant does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical in all respects.

3.      In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by your attorneys or their agents, employees, representatives or investigators.

4.      Documents are to be produced in full; redacted documents will not constitute compliance with this request.  If any requested document or thing cannot be produced in full, produce it to the extent possible, indicating which document, or portion of that document, is being withheld, and the reason that document is being withheld.

5.      In producing documents, you are requested to produce the original of each document requested together with all non-identical copies and drafts of that document.  If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

6.      Pursuant to Rule 34 of the Federal Rules of Civil Procedure, produce all documents as they are kept in the usual course of business.

7.      All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by you.  If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

8.      Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each document's custodian(s).

9.      Documents attached to each other should not be separated.

4

10.     Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents that are called for by this discovery request, or if such documents are attached to documents called for by this discovery request and constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

11.     If you claim the attorney-client privilege, or any other privilege or work product protection for any document, that document need not be produced, but you shall provide the information required by Local Rule 26.2 concerning that document.

12.     In the absence of an agreement to the contrary among counsel, produce electronic documents and information in their native format.

### III.

### REQUESTS FOR PRODUCTION

1.     Organizational charts or other documents sufficient to show the positions and responsibilities of all persons involved in performing or negotiating services related to any account maintained by Clearstream, Markazi or Iran that contained any assets beneficially owned by Markazi.

2.     All documents concerning:

a.     The establishment of the UBAE/Markazi Account;

b.     The transfer of assets from any account maintained by Markazi at Clearstream into the UBAE/Markazi Account;

c.     The investments made by Markazi in any Clearstream account, including the UBAE/Markazi Account; or

d.     The communications between or among you, Clearstream, UBAE and Markazi concerning the Turnover Assets, the Foreign Bonds, the Transferred Assets, or any

215668                                        5

investment made by Markazi in an account maintained by Markazi at Clearstream, including the UBAE/Markazi Account.

    3.    All documents concerning the Turnover Assets, the Foreign Bonds or the Transferred Bonds, including:

        a.    All account statements related to those assets;

        b.    Your communications with the Defendants or third parties concerning those assets;

        c.    Your internal communications and documents regarding those assets, including drafts;

        d.    Your records of Clearstream's customer account numbers maintained by you on behalf of Clearstream with respect to the Turnover Assets, the Foreign Bonds and/or the Transferred Bonds;

        e.    Your communications regarding the sale or transfer of any portion of those assets;

        f.    Your communications with any United States or foreign government or governmental agency concerning those assets; and

        g.    Any tax records prepared by or provided to you concerning those assets.

    4.    All documents, including internal and external communications, concerning efforts by Markazi or Iran to conceal the beneficial owner of investments or assets held by Markazi or Iran.

    5.    All documents, including internal or external communications, concerning the strategies adopted by Iran or Markazi for avoiding the collection of judgments by Iran's judgment creditors.

6

6.     All documents concerning the purposes for which Markazi used any funds held in the UBAE/Markazi Account, including any documents showing that Markazi utilized those funds to manage its foreign currency reserves.

7.     All communications between you and OFAC, the United States Department of Treasury or any other state or federal governmental agency concerning the Turnover Assets, the Foreign Bonds, the Transferred Bonds, Markazi or Iran.

8.     Your communications with any Defendant concerning:

a.     The creation, maintenance, and/or administration of the UBAE/Markazi account;

b.     The transfer of assets into or out of the UBAE/Markazi Account;

c.     The above-captioned proceedings or any other actual or potential proceedings or litigation related to the Turnover Assets or the Transferred Bonds;

d.     The custody, control, administration, and/or maintenance of the Turnover Assets, the Foreign Bonds or the Transferred Bonds;

e.     The custody, control, administration, and/or maintenance of any account maintained by Iran or Markazi at Clearstream, Citibank or UBAE, including your records of Clearstream's customer account numbers maintained by you on behalf of Clearstream with respect to the Turnover Assets, the Foreign Bonds and/or the Transferred Bonds;

f.     The existence and enforcement of U.S. or foreign government sanctions against Iran or Markazi; or

g.     The existence and enforcement of judgments issued by courts located in the United States against Iran.

9.     The documents produced or provided by you to any state or federal prosecutor's office or any governmental agency in connection with any investigation regarding the Turnover Assets, the Foreign Bonds or the Transferred Bonds.

10.     All documents concerning any cost or judgment sharing agreement that you have entered with any person related to the claims at issue in the above-captioned proceedings.

11.     All documents concerning any joint defense or common interest agreement that you have entered with any person related to the claims at issue in the above-captioned proceedings.

12.     Any communications between you or any person acting on your behalf with any non-U.S. government or governmental agency concerning the custody, control, administration, and/or maintenance of the Turnover Assets, the Foreign Bonds or the Transferred Bonds.

13.     Documents sufficient to identify the entities involved in transferring interest, principal or dividend payments on investments beneficially owned by Markazi in any account maintained with or by you or Clearstream (including the UBAE/Markazi Account) from the issuers of securities to Markazi and the steps involved in making those transfers.

14.     All account opening documents for any account maintained by Clearstream with you.

15.     All documents provided by you to Clearstream concerning the custody, control, administration, and/or maintenance of any account maintained by Clearstream with you.

16.     All documents reflecting the possibility that you or Clearstream would terminate your business relationship with each other.

17.     All documents provided to any member of your board of directors concerning your business relationship with Iran, Markazi or Clearstream, and all communications concerning any such document, including drafts.

18.     Any document retention policy maintained by you during the period from 2001 through the present.

19.     Any litigation holds or other documents prepared by or for you that instructed your employees to maintain any documents relevant to the matters at issue in this litigation.

8

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
............................................................ x

DEBORAH D. PETERSON,                                    :
Personal Representative of the Estate                    :        10 Civ. 4518 (KBF)
of James C. Knipple (Dec.) et al.,                       :
                                                         :
                              Plaintiffs,                :
                                                         :
              - against -                                :
                                                         :
ISLAMIC REPUBLIC OF IRAN; BANK                           :
MARKAZI a/k/a CENTRAL BANK OF IRAN;                      :
BANCA UBAE SpA; CITIBANK, N.A., and                     :
CLEARSTREAM BANKING, S.A.,                               :
                                                         :
                              Defendants.                :
............................................................ x

### DEFENDANT CITIBANK, N.A.'S REPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and the Local Rules of the

United States District Court of the Southern District of New York Citibank, N.A. ("Citibank"),

by its undersigned attorneys Davis Wright Tremaine LLP, hereby submits the following

Responses and Objections to Plaintiffs' First Request for the Production of Documents dated

March 25, 2013 Directed to Defendant Citibank, N.A. (the "Document Request") as follows:

### GENERAL OBJECTIONS

Citibank objects generally to the Document Request as set forth below (the "General

Objections"). Each of the responses that follow is made subject to the General Objections.

Citibank also will assert specific objections to each document request as appropriate. To the

extent that Citibank responds to a document request to which it objects, such objections are not

waived and are expressly reserved. The inadvertent disclosure of privileged information shall

not constitute a waiver of any applicable privilege. Citibank's objections and responses will be

made according to its best understanding of the terms used in the Document Request and subject

to a reasonable inquiry into the relevant facts within the time allowed for responding to the Document Request. Citibank reserves the right to correct, amend, modify or supplement their responses from time to time and at any time in the future, as warranted by the circumstances.

1.      Citibank objects to the Document Request to the extent that it seeks documents and/or information with respect to the "Relevant Time Period", as defined in the Document Request, on the ground that it seeks to impose an obligation to produce information and/or documents relating to time periods not relevant to the allegations of the Second Amended Complaint.

2.      Citibank objects to the Document Request to the extent that it seeks documents and/or information about transactions other than those that relate to the "Transferred Bonds", as defined in the Document Request, on the grounds that it is overly broad and seeks information that is neither material, necessary nor reasonably likely to lead to the discovery of admissible evidence since the only remaining claims in the Second Amended Complaint pertain solely to the Transferred Bonds. *See* February 28, 2013 Opinion and Order (ECF No. 367), and May 20, 2013 Decision and Order (ECF No. 405) in this action.

3.      Citibank objects to the Document Request to the extent that it seeks documents and/or information with respect to the "Turnover Assets", as defined in the Document Request, on the grounds that turnover of these assets has been adjudicated by the Court in its February 28, 2011 Opinion and Order (ECF No. 367), and May 20, 2013 Decision and Order (ECF No. 405) and therefore it is overly broad and seeks information that is neither material, necessary nor reasonably likely to lead to the discovery of admissible evidence.

4.      Citibank objects to the Document Request to the extent that it seeks documents and/or information with respect to the "Foreign Bonds", as defined in the Document Request, on

the grounds that they are not relevant to any claim at issue in this proceeding, and therefore it is overly broad and seeks information that is neither material, necessary nor reasonably likely to lead to the discovery of admissible evidence.

5.      Citibank objects to the Document Request to the extent that it is vague, ambiguous, overbroad, unduly burdensome, unreasonably duplicative, and oppressive, or seeks documents and/or information that are not reasonably calculated to lead to the discovery of admissible evidence in this proceeding.

6.      Citibank objects to the Document Request to the extent that it is unduly burdensome such that the cost and effort of answering outweighs either the utility of the information sought or the probability that the answer would provide information that is reasonably likely to lead to the discovery of relevant and admissible evidence.

7.      Citibank objects to the Document Request to the extent that it seeks information that is not in the possession, custody and/or control of Citibank.

8.      Citibank objects to the Document Request to the extent that it seeks information about assets and/or transactions that are not the subject of any claims alleged against Citibank in the Second Amended Complaint.

9.      Citibank objects to the definitions of "you," "your," and "Citibank" to the extent that they are inconsistent with Local Rule 26.3(5)  and pursuant to that rule, Citibank will only produce relevant documents in the possession, custody or control of Citibank.

10.      Citibank objects to the Document Request to the extent that it seeks confidential commercial, customer or proprietary information or information that Citibank received in confidence and/or is obligated to treat confidentially.  Subject to and without waiving said objection, responses to the Document Request and responsive documents, if any, containing such

information will only be provided subject to the Stipulated Protective Order Governing the Production of Confidential Materials, dated June 25, 2013 which was So-Ordered by the Court on July 9, 2013 (the "Protective Order").   (ECF No. 465.)

11.     Citibank objects to the Document Request to the extent it seeks information and/or documents protected by the attorney-client privilege, attorney work-product, or any other applicable privilege, including all documents and other tangible things which constitute or relate to confidential communications between or among Citibank and its attorneys.

12.     A response that Citibank will provide documents and/or information responsive to any individual document request does not imply that Citibank has located any responsive documents and/or information, but only that Citibank will produce such responsive non-privileged documents and/or information as it locates through good-faith efforts and reasonable diligence.

13.     Citibank objects to the Document Request to the extent that it seeks documents and/or information that are publicly available and therefore would impose no greater burden for Plaintiffs to obtain than for Citibank to provide and/or are already in Plaintiffs' possession.

14.     On July 9, 2013 the Court entered an order which, *inter alia*, dismissed Citibank from this action.  (ECF No. 463.)  Accordingly, Citibank is no longer a named party in these proceedings.  By responding to the Document Request which was served pursuant to Rule 34 of the Federal Rules of Civil Procedure, and not Rule 45, Citibank is not waiving its rights and objections with respect to any further or additional discovery requests, all of which are expressly preserved.

15.     Citibank reserves the right to correct, amend, modify or supplement its production from time to time and at any time in the future, as warranted by the circumstances.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to and without waving the foregoing objections, Citibank hereby responds as follows:

### REQUEST NO. 1:

Organizational charts or other documents sufficient to show the positions and responsibilities of all persons involved in performing or negotiating services related to any account maintained by Clearstream, Markazi or Iran that contained any assets beneficially owned by Markazi.

### RESPONSE TO REQUEST NO. 1:

Subject to and without waiving its General and Specific Objections, Citibank further

objects to Request No. 1 on the ground that at no time during the Relevant Time Period did

Citibank possess information that "any account maintained by Clearstream, Markazi or Iran [ ]

contained any assets beneficially owned by Markazi." *See* Response and Objections to Request

No 2.

### REQUEST NO. 2:

All documents concerning:

a.  The establishment of the UBAE/Markazi Account;

b.  The transfer of assets from any account maintained by Markazi at Clearstream into the UBAE/Markazi Account;

c.  The investments made by Markazi in any Clearstream account, including the UBAE/Markazi Account; or

d.  The communications between or among you, Clearstream, UBAE and Markazi concerning the Turnover Assets, the Foreign Bonds, the Transferred Assets, or any investment made by Markazi in an account maintained by Markazi at Clearstream, including the UBAE/Markazi Account.

### RESPONSE TO REQUEST NO. 2:

Subject to and without waiving its General and Specific Objections, Citibank further

objects to Request No. 2, to the extent that it seeks information regarding the "UBAE/Markazi

Account," as defined in the Document Request, on the ground that the account was allegedly

opened at Clearstream and Citibank has no information with respect to said account. Citibank

further objects to subsection "d" to the extent that it seeks information regarding "any investment

made by Markazi in an account maintained by Markazi at Clearstream" on the grounds that it is

overly broad, vague, ambiguous and unintelligible.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

While Citibank recognizes that the Court has determined that Bank Markazi has a "beneficial interest" in the Blocked Assets (or Turnover Assets) in Clearstream's omnibus account at Citibank in New York, and has directed turnover of those assets under 22 U.S.C. § 8772, the identities of Clearstream's individual account holders or customers are not revealed to Citibank, nor is that information contained in Citibank's books and records. While Citibank may record the settlement of certain trades of assets (such as certain securities) in Clearstream's omnibus account by reference to an "account" number provided by Clearstream (which is done for Clearstream's own bookkeeping purposes) Citibank is not provided with information to permit it to identify which of Clearstream's assets correspond to any specific Clearstream client or the identity of Clearstream's clients. Rather, Citibank maintains records for Clearstream's omnibus account by reference to the International Securities Identifying Number ("ISIN") of the securities in the account, and Clearstream's holdings in that ISIN (on an aggregated basis by security for all of Clearstream's clients). To the extent the intent of the request can be determined, and subject to and without waiver of the foregoing objections, Citibank responds that, based on a search of Clearstream's omnibus account records for the period 2003-2008, Citibank has determined that there were no instructions from Clearstream to Citibank with respect to either the Transferred Assets or the Turnover Assets.

## REQUEST NO. 3:

All documents concerning the Turnover Assets, the Foreign Bonds or the Transferred Bonds, including:

    a.     All account statements related to those assets;

    b.     Your communications with the Defendants or third parties concerning those assets;

    c.     Your internal communications and documents regarding those assets, including drafts;

    d.     Your records of Clearstream's customer account numbers maintained by you on behalf of Clearstream with respect to the Turnover Assets, the Foreign Bonds and/or the Transferred Bonds;

    e.     Your communications regarding the sale or transfer of any portion of those assets;

    f.     Your communications with any United States or foreign government or governmental agency concerning those assets; and

    g.     Any tax records prepared by or provided to you concerning those assets.

## RESPONSE TO REQUEST NO. 3:

Subject to and without waiving its General and Specific Objections, Citibank further objects to Request No. 3 on the ground that it is overly broad, unduly burdensome and vague and fails to describe with reasonable particularity "communications" regarding the assets. Citibank further objects to Request No. 3 because it is not relevant to any claim in the Second Amended Complaint to the extent that it seeks information regarding any assets besides the Transferred Bonds.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Citibank further responds that only on receipt of Plaintiffs' Writ of Execution on or about June 13, 2008, was Citibank advised that certain "assets have been held on Clearstream's books, apparently in the Iranian client's name, under account number 80726". *See* Writ of Execution. Prior to that time Citibank had no information regarding the identity of Clearstream's clients and/or the entities represented by Clearstream's internal customer numbers. *See* Response and Objections to Request No 2.

9

**REQUEST NO. 4:**

All documents, including internal and external communications, concerning efforts by Markazi or Iran to conceal the beneficial owner of investments or assets held by Markazi or Iran.

**RESPONSE TO REQUEST NO. 4:**

Subject to and without waiving its General and Specific Objections, Citibank further

objects to Request No. 4 on the grounds that it is overly broad, unduly burdensome and vague

vague and fails to describe with reasonable particularity "communications" sought.

Notwithstanding the foregoing, Citibank states that it has no documents responsive to Request

No. 4.

**REQUEST NO. 5:**

All documents, including internal or external communications, concerning the strategies adopted by Iran or Markazi for avoiding the collection of judgments by Iran's judgment creditors.

**RESPONSE TO REQUEST NO. 5:**

Subject to and without waiving its General and Specific Objections, Citibank further

objects to Request No. 5 on the grounds that it is overly broad, unduly burdensome and vague.

Notwithstanding the foregoing, Citibank states that it has no documents responsive to Request

No. 5.

**REQUEST NO. 6:**

All documents concerning the purposes for which Markazi used any funds held in the UBAE/Markazi Account, including any documents showing that Markazi utilized those funds to manage its foreign currency reserves.

**RESPONSE TO REQUEST NO. 6:**

Subject to and without waiving its General and Specific Objections, Citibank further

objects to Request No. 6, to the extent that it seeks information regarding the UBAE/Markazi

Account, as defined in the Document Request. *See* Response and Objections to Request No 2.

Citibank further objects to Request No. 6 on the grounds that it is overly broad, unduly

burdensome and vague.  Notwithstanding the foregoing, Citibank states that it has no documents responsive to Request No. 6.

## REQUEST NO. 7:

All communications between you and OFAC, the United States Department of Treasury or any other state or federal governmental agency concerning the Turnover Assets, the Foreign Bonds, the Transferred Bonds, Markazi or Iran.

## RESPONSE TO REQUEST NO. 7:

Subject to and without waiving its General and Specific Objections, Citibank further objects to Request No. 7 on the grounds that it is overly broad, unduly burdensome and vague. Citibank further objects to Request No. 7 because it is not relevant to any claim in the Second Amended Complaint.  Notwithstanding the foregoing, Citibank states that Plaintiffs are already in possession of any communications between Citibank and OFAC regarding Executive Order 13599 and the Blocked Assets.

## REQUEST NO. 8:

Your communications with any Defendant concerning:

a.   The creation, maintenance, and/or administration of the UBAE/Markazi account;

b.   The transfer of assets into or out of the UBAE/Markazi Account;

c.   The above-captioned proceedings or any other actual or potential proceedings or litigation related to the Turnover Assets or the Transferred Bonds;

d.   The custody, control, administration, and/or maintenance of the Turnover Assets, the Foreign Bonds or the Transferred Bonds;

e.   The custody, control, administration, and/or maintenance of any account maintained by Iran or Markazi at Clearstream, Citibank or UBAE, including your records of Clearstream's customer account numbers maintained by you on behalf of Clearstream with respect to the Turnover Assets, the Foreign Bonds and/or the Transferred Bonds;

f.   The existence and enforcement of U.S. or foreign government sanctions against Iran or Markazi; or

g.    The existence and enforcement of judgments issued by courts located in the
United States against Iran.

**RESPONSE TO REQUEST NO. 8:**

Subject to and without waiving its General and Specific Objections, Citibank further

objects to subsections "a" and "b" of this Request, to the extent that they seek information

regarding the UBAE/Markazi Account, as defined in the Document Request.  *See* Response and

Objections to Request No 2.  Citibank further objects to subsections "d" and "e" of this Request

to the extent that they seek documents relating to the "custody, control, administration, and/or

maintenance of any account maintained by ... Clearstream" on the grounds that they are overly

broad, vague and unintelligible.  Citibank further objects to subsections "c", "f", and "g" of this

Request on the grounds that they are overly broad and unduly burdensome and that the

documents and information sought therein are already in Plaintiffs' possession.  To the extent the

intent of the request can be determined, and subject to and without waiver of the foregoing

objections, *see* Responses and Objections to Request Nos. 2 and 5.

**REQUEST NO. 9:**

The documents produced or provided by you to any state or federal prosecutor's office or
any governmental agency in connection with any investigation regarding the Turnover Assets, the
Foreign Bonds or the Transferred Bonds.

**RESPONSE TO REQUEST NO. 9:**

Citibank further objects to this Request on the grounds that the documents and

information requested are not relevant to any claim in this proceeding.  Citibank further objects

to Request No. 9 because it is not relevant to any claim in the Second Amended Complaint.

Subject to and without waiving its General and Specific Objections, Citibank responds there are

no documents responsive to Request No. 9.

**REQUEST NO. 10:**

All documents concerning any cost or judgment sharing agreement that you have entered with any person related to the claims at issue in the above-captioned proceedings.

**RESPONSE TO REQUEST NO. 10:**

Citibank objects to this Request on the ground that the documents and information

requested are not relevant to any claim in this proceeding.  Subject to and without waiving its

General and Specific Objections, Citibank responds there are no documents responsive to

Request No. 10.

**REQUEST NO. 11:**

All documents concerning any joint defense or common interest agreement that you have entered with any person related to the claims at issue in the above-captioned proceedings.

**RESPONSE TO REQUEST NO. 11:**

Citibank objects to this Request on the ground that the documents and information

requested are not relevant to any claim in this proceeding.  Subject to and without waiving its

General and Specific Objections, Citibank responds there are no documents responsive to

Request No. 11.

**REQUEST NO. 12:**

Any communications between you or any person acting on your behalf with any non-U.S. government or governmental agency concerning the custody, control, administration, and/or maintenance of the Turnover Assets, the Foreign Bonds or the Transferred Bonds.

**RESPONSE TO REQUEST NO. 12:**

Citibank objects to this Request with respect to the Turnover Assets and the Foreign

Bonds as set forth in the General Objections hereto.  Citibank further objects to Request No. 12

because it is not relevant to any claim in the Second Amended Complaint to the extent that it

seeks information regarding any assets besides the Transferred Bonds.  Subject to and without

waiving its General and Specific Objections, Citibank responds there are no documents

responsive to Request No. 12.

**REQUEST NO. 13:**

Documents sufficient to identify the entities involved in transferring interest, principal or dividend payments on investments beneficially owned by Markazi in any account maintained with or by you or Clearstream (including the UBAE/Markazi Account) from the issuers of securities to Markazi and the steps involved in making those transfers.

**RESPONSE TO REQUEST NO. 13:**

Subject to and without waiving its General and Specific Objections, Citibank further

objects to Request No. 13 on the grounds that it is overly broad, unduly burdensome and vague.

Citibank further objects to Request No. 13 because it is not relevant to any claim in the Second

Amended Complaint. *See* Response and Objections to Request No. 2.

**REQUEST NO. 14:**

All account opening documents for any account maintained by Clearstream with you.

**RESPONSE TO REQUEST NO. 14:**

Subject to and without waiving its General and Specific Objections, Citibank further

objects to Request No. 14 on the grounds that it is overly broad, unduly burdensome and vague,

and seeks documents and/or information that is not relevant to any claim in this proceeding.

**REQUEST NO. 15:**

All documents provided by you to Clearstream concerning the custody, control, administration, and/or maintenance of any account maintained by Clearstream with you.

**RESPONSE TO REQUEST NO. 15:**

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Subject to and without waiving its General and Specific Objections, Citibank further objects to Request No. 15 on the grounds that it is overly broad, unduly burdensome and vague given that Clearstream's omnibus account at Citibank contains the transactions and assets of thousands of Clearstream account holders.  Clearstream receives reports on transactions and securities positions via SWIFT message rather than a monthly written statement of the type customary in consumer accounts.  In the most recent month, Citibank sent Clearstream approximately 150,000 such messages regarding Clearstream's omnibus account which, to the extent it is representative of all such activity, translates to approximately 23 million SWIFT messages for the Relevant Time Period, as defined in the Document Request.

Citibank further objects to Request No. 15 because it is not relevant to any claim in the Second Amended Complaint.

**REQUEST NO. 16:**

All documents reflecting the possibility that you or Clearstream would terminate your business relationship with each other.

**RESPONSE TO REQUEST NO. 16:**

Subject to and without waiving its General and Specific Objections, Citibank further objects to this Request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. Citibank further objects to Request No. 16 because it is not relevant to any claim in the Second Amended Complaint. Subject to and without waiving its General and Specific Objections, Citibank responds there are no documents responsive to this Request.

**REQUEST NO. 17:**

All documents provided to any member of your board of directors concerning your business relationship with Iran, Markazi or Clearstream, and all communications concerning any such document, including drafts.

**RESPONSE TO REQUEST NO. 17:**

Subject to and without waiving its General and Specific Objections, Citibank further objects to this Request on the grounds that it is overly broad in that it seeks "[a]ll documents … concerning your business relationship with … Clearstream", as well as drafts of such documents, and is not reasonably calculated to lead to the discovery of admissible evidence. Citibank further objects to the Request to the extent that it seeks documents protected by the attorney client privilege, work product doctrine and/or any other applicable privilege or immunity. Citibank further objects to Request No. 17 because it is not relevant to any claim in the Second Amended Complaint.

**REQUEST NO. 18:**

Any document retention policy maintained by you during the period from 2001 through the present.

**RESPONSE TO REQUEST NO. 18:**

Subject to and without waiving its General and Specific Objections, Citibank further objects to this Request on the grounds that the time period specified is overly broad and is not reasonably calculated to lead to the discovery of admissible evidence. Citibank further objects to Request No. 18 because it is not relevant to any claim in the Second Amended Complaint.

**REQUEST NO. 19:**

Any litigation holds or other documents prepared by or for you that instructed your employees to maintain any documents relevant to the matters at issue in this litigation.

**RESPONSE TO REQUEST NO. 19:**

Subject to and without waiving its General and Specific Objections, Citibank further objects to this Request to the extent that it calls for the production of documents protected by the attorney-client privilege, attorney work-product, or other applicable privilege, and on the further ground that it is not reasonably calculated to lead to the discovery of admissible evidence. Citibank further objects to Request No. 19 because it is not relevant to any claim in the Second Amended Complaint.

Dated: New York, New York
       July 25, 2013

DAVIS WRIGHT TREMAINE LLP

By: _S Schneier_____

Sharon L. Schneier
Christopher Robinson

1633 Broadway 27th floor
New York, New York 10019
(212) 489-8230

*Attorneys for Defendant Citibank, N.A.*