```
                                                        USDC SDNY
                                                        DOCUMENT
                                                        ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                            DOC #: _____
SOUTHERN DISTRICT OF NEW YORK                           DATE FILED:
------------------------------------------------------------X
                                                     :
DEBORAH D. PETERSON, Personal                        :
Representative of the Estate of James C. Knipple     :
(Dec.), et al.,                                      :      10 Civ. 4518 (KBF)
                                                     :
                            Plaintiffs,              :      OPINION & ORDER
                                                     :
            -v-                                      :
                                                     :
ISLAMIC REPUBLIC OF IRAN, et al.,                    :
                                                     :
                            Defendants.              :
------------------------------------------------------------X
```

KATHERINE B. FORREST, District Judge:

This Opinion & Order is another in a series of decisions rendered by this Court in a long-running action by plaintiffs, judgment creditors of the Islamic Republic of Iran, seeking to collect billions of dollars in unsatisfied money judgments.[1]  The procedural history and facts relating to this matter are set forth in the Court's prior decisions; the Court recites only those facts necessary to resolution of the instant motions.

On February 28, 2013, this Court granted summary judgment to plaintiffs for turnover of $1.75 billion in blocked assets (the "Blocked Assets") held in a segregated account at Citibank N.A. ("Citibank").  (ECF No. 367.)  The Court subsequently granted a motion pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, severing those claims and allowing an immediate appeal.  (ECF Nos. 462, 463.)

---

[1] (See, e.g., Opinion & Order, February 28, 2013, ECF No. 340; Memorandum Decision & Order, May 20, 2013, ECF No. 405.)

Remaining before the Court are claims against Bank Markazi (the Central Bank of Iran), Banca UBAE SapA, and Clearstream Banking, S.A.[2] The two remaining claims in the Second Amended Complaint ("SAC") against Bank Markazi (the "Remaining Claims") are that Bank Markazi, UBAE, and Clearstream engaged in fraudulent conveyances and transfers relating to $250 million (Second Count) and for rescission relating to the same $250 million (Third Count).

Before this Court are three motions: Bank Markazi has moved to dismiss all Remaining Claims based on lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. §§ 1602–11 (1996) (ECF No. 419), and has opposed certain discovery on the basis that the Court lacks jurisdiction. In particular, plaintiffs have made a letter-motion to compel dated August 15, 2013 (ECF No. 481), and Bank Markazi has opposed that motion by letter dated August 21, 2013 (ECF No. 487). Bank Markazi has itself sought a protective order as to upcoming depositions by letter-motion dated October 1, 2013 (ECF No. 499), and plaintiffs have opposed that motion by letter dated October 4, 2013 (ECF No. 503).

In its Opinion and Order dated February 28, 2013, this Court determined that there was a sufficient legal and factual basis for subject matter jurisdiction over Bank Markazi with respect to the turnover claims. Those claims related to funds that were then held in an account at Citibank in the United States. In contrast, there is no dispute that plaintiffs' Remaining Claims against Bank

---

[2] An order of dismissal was entered as to Citibank in August 2013. (ECF No. 485.) Clearstream and the plaintiffs are currently involved in discussions that may result in an order of dismissal as to Clearstream; Clearstream has withdrawn its motion to dismiss with leave to renew should those discussions be unsuccessful. (ECF Nos. 491, 492.)

Markazi derive from two bonds with face values totaling $250 million—and that proceeds relating to the sale of these bonds are believed to be located outside the United States.  (See, e.g., SAC ¶¶ 213, 217, ECF No. 216; Pls.' Mem. of L. in Opp. to Mots. to Dismiss ("Pls.' Opp.") 3, ECF No. 469.)  Bank Markazi asserts that this Court lacks subject matter jurisdiction with respect to the Remaining Claims as to it since they relate to funds outside of the United States.

For the reasons set forth below, the Court denies Bank Markazi's motion to dismiss, grants plaintiffs' motion to compel discovery, and denies Bank Markazi's motion for a protective order.

I. FACTS RELEVANT TO THE REMAINING CLAIMS

As stated above, each of the Remaining Claims is based on defendant Bank Markazi's[3] alleged acts with respect to two U.S.-dollar denominated bonds with a face value of $250 million.  (See, e.g., SAC ¶ 167.)  According to plaintiffs, after they obtained judgments and it became clear that various sanctions and statutory provisions might allow for collection efforts of Bank Markazi's assets located in the United States, Bank Markazi transferred two bonds as to which a restraining order had been lifted (the "Transferred Assets") to an account at Clearstream in the name of UBAE (the "UBAE/Markazi Account").  (SAC ¶¶ 146–67.)  Plaintiffs allege that this transfer was made without consideration (id. ¶¶ 154–55), and was made in order to conceal the identity of Iran as the beneficial owner of the two bonds (id. ¶¶ 142–43, 148–51).  UBAE then sold the Transferred Assets to third parties; the

---

[3] UBAE and Clearstream are alleged to have participated in these acts, but they are not the subject of the motion or part of this Court's decision herein.

proceeds from these sales have been maintained at Clearstream as credits, with Bank Markazi denominated as beneficiary. (Id. ¶¶ 167–68, 173, 262.)

## II. LEGAL STANDARD FOR MOTION TO DISMISS

Plaintiffs have asserted that this Court has subject matter jurisdiction over their actions, inter alia, by virtue of the FSIA.  (See SAC ¶ 19.)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  To survive a Rule 12(b)(1) challenge to the Court's subject matter jurisdiction, the plaintiff must "allege facts that affirmatively and plausibly" suggest that jurisdiction exists.  Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir.2011); see also GMA Accessories, Inc. v. Dorfman-Pacific Co., No. 11 Civ. 3731, 2012 WL 899385, at *3 (S.D.N.Y. Mar. 16, 2012) (holding that dismissal is proper "when the complaint fails to allege sufficient allegations to support subject matter jurisdiction").

As with motions brought pursuant to Rule 12(b)(6), in the context of a motion to dismiss for lack of subject matter jurisdiction, the Court draws "all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the complaint."  Amidax, 671 F.3d at 145.  The Court also construes "reasonable inferences to be drawn from those factual allegations" in the plaintiff's favor.  Id.

4

III.   THE FSIA

Bank Markazi's motion to dismiss is premised on a lack of subject matter jurisdiction pursuant to the FSIA, 28 U.S.C. §§ 1605–1611.[4]  (Def. Bank Markazi's Mem. of L. in Supp. of Mot. to Dismiss (Def.'s Mot.) 2–4, ECF No. 419.)

 It is certainly true that the FSIA provides that foreign sovereigns are generally immune from suit in the United States.  See generally 28 U.S.C. § 1605–1611.  The statutory scheme codifies "[a] restrictive theory of sovereign immunity," Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 488 (1983), and is intended to ensure that "duly created instrumentalities of a foreign state are accorded a presumption of independent status," First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec"), 462 U.S. 611, 627 (1983).

Bank Markazi does not dispute that it is an instrumentality of Iran.  (See Def.'s Mot. 3.)  Indeed, its acknowledgement of that fact forms the premise of its motion that it is entitled to FSIA immunity.  See 28 U.S.C. § 1603(b).  The hook for its motion is the legal principle that this Court lacks the power under any exception of the FSIA to attach property located outside of the United States, and the Transferred Assets (or proceeds relating thereto) are alleged now to be outside of the United States.  See EM Ltd. v. Republic of Argentina, 695 F.3d 201, 208 (2d Cir. 2012); see also Bank of Tokyo-Mitsubishi, UFJ, Ltd. N.Y. Branch v. Peterson, No. 12 Civ. 4038 (BSJ), 2012 WL 1963382, at *2 n.3 (S.D.N.Y. May 29, 2012); Elliott

---

[4] Bank Markazi also argues that section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA") and 22 U.S.C. § 8772 only apply to "blocked assets" – and therefore those provisions cannot separately be used as support for execution on any assets. Plaintiffs do not pursue a TRIA or § 8772 argument in opposition to this motion.

Assocs., L.P. v. Banco De La Nacion, No. 96 Civ. 7916 (RWS), 2000 WL 1449862, at *3 (S.D.N.Y. Sept. 29, 2000).

Resolution of Bank Markazi's motion requires this Court to distinguish between immunity from a liability determination with respect to a cause of action, and immunity from an action for execution in satisfaction of a judgment.

In terms of seeking a liability determination, a foreign sovereign—or here its agency, Bank Markazi—may not be immune from suit if 28 U.S.C. § 1605(a)(2) or (a)(5) applies.[5] (See Pls.' Opp. at 5–6.) Section 1605(a)(2) provides an exception where:

> . . . <u>the action</u> is premised upon a commercial activity carried on in the United States by a foreign state, or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere, or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2) (emphasis added).

Section 1605(a)(5) provides that a foreign sovereign is not entitled to immunity from suit where "money damages are sought against a foreign state for . .

---

[5] Section 1610 states:

> (b) In addition to subsection (a), any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States . . . if—
>
> > (2) the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605(a)(2), (3) or (5) or 1605(b), or 1605A of this chapter . . . .

28 U.S.C. § 1610.

6

. damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state." 28 U.S.C. § 1605(a)(5).

The facts alleged in the SAC are sufficient to support subject matter jurisdiction as against Bank Markazi pursuant to both of these provisions. Bank Markazi is alleged to have engaged in conduct in the United States, at the alleged behest of Iran, with respect to property as to which plaintiffs asserted an entitlement at that time. (See, e.g., SAC ¶¶ 83–125.) (Indeed, at the time of the conveyance of the Transferred Assets, some plaintiffs were lienholders in the property.) Within the rubric of Section 1605(a)(2), Bank Markazi is alleged to have engaged in conduct in the United States effecting a transfer within the United States of the two bonds. It is true that the two bonds end up outside of the United States, but there is ample and necessary initial conduct in the United States to effect that transfer. Those acts are alleged to have been "in connection with a commercial activity" (that is, raising cash) "of a foreign state," namely Iran. See 28 U.S.C. § 1605(a)(2). Plaintiffs' claims also support subject matter jurisdiction pursuant to Section 1605(a)(5), because their claim for fraudulent conveyance is a claim for "money damages" (rescissionary damages) being "sought against a foreign state," Iran, for the "tortious act" of fraudulent conveyance. See 28 U.S.C. § 1605(a)(5).

Bank Markazi argues that 28 U.S.C. § 1611(b)(1) provides an additional basis for immunity, because it is a central bank. This provision relates not to immunity

<u>from suit</u>, however, but to immunity <u>from attachment</u> of assets in aid of execution of a judgment. It provides:

> (b) Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be <u>immune from attachment and from execution</u>, if—
>
> > (1) the property is that of a foreign central bank or monetary authority, held for its own account . . . .

28 U.S.C. § 1611 (emphasis added). See <u>NML Capital, Ltd. v. Banco Central de la Republica Argentina</u>, 652 F.3d 172, 194 (2d Cir. 2011).

Thus, because the Remaining Counts seek to establish liability, not to attach assets in execution of a judgment, and because, in any event, there are sufficient allegations at this stage of the case to fall within the exceptions of § 1610, this Court has subject matter jurisdiction over the Remaining Claims as to Bank Markazi.  In addition, the SAC contains sufficient allegations that Bank Markazi engages in non-central bank activities such that it is plausible that if plaintiffs <u>did</u> obtain a money judgment, and Bank Markazi has property within the United States, the immunity in Section 1611 would not apply.[6]

Another cornerstone of Bank Markazi's argument is that, even if those claims were properly brought under an exception to the FSIA, this Court cannot have subject matter jurisdiction because plaintiffs seek rescission as the remedy for their claims, and Bank Markazi's assets are located outside of the United States.  This

---

[6] To determine whether property is held for the account of a central bank, the Second Circuit has adopted a functional test that asks whether the central bank uses the property for central bank functions as normally understood, irrespective of their commercial nature.  See <u>NML Capital</u>, 652 F.3d at 194.  Thus, to execute against the property of a central bank, a plaintiff must demonstrate "with specificity that the funds are not being used for central banking functions as such functions are normally understood." <u>Id.</u> at 194.

proposition incorrectly assumes that a claim for rescission can only be satisfied by the specific assets as to which rescission is sought, or where fraudulent conveyance is alleged. That is not so.

There can be no serious doubt that the SAC clearly refers to rescission and disregarding the fraudulent conveyances as the remedy sought. (SAC ¶¶ 226–27.) This proposed remedy is not, however, fatal to subject matter jurisdiction. Rescissory damages are "an established remedy where rescission, the voiding of a contract, may not be a valid form of relief." See Syncora Guarantee Inc. v. Countrywide Home Loans, 935 N.Y.S.2d 858, 869 (Sup. Ct. 2012) (collecting cases). Moreover, under New York law, a claim for fraudulent conveyance may be satisfied with a judgment for money damages. See In re Adelphia Recovery Trust v. HSBC Bank USA, 634 F.3d 678, 692 (2d Cir. 2011) (holding that New York law permits an award of money damages when the traditional fraudulent conveyance remedy of rescission is no longer practicable) (citing Neshewat v. Salem, 365 F. Supp. 2d 508, 521 (S.D.N.Y. 2005); RTC Mortg. Trust 1995-S/n1 v. Sopher, 171 F. Supp. 2d 192, 201 (S.D.N.Y. 2001)).

Thus, should plaintiffs succeed in obtaining a liability determination pursuant to one of the exemptions discussed above, they could obtain a judgment for money damages; that judgment could only be executed upon property of a foreign sovereign located in the United States. The question of liability is, however, separate from whether this Court is able to exercise jurisdiction over the assets of a

9

foreign sovereign to fulfill a money judgment. The former is currently before this Court, and the latter is premature.[7]

IV. DISCOVERY MOTIONS 1 AND 2

Plaintiffs seek to compel discovery relating to Bank Markazi's assets wherever located and to take depositions of Bank Markazi personnel. The Court will allow both categories of discovery, as set forth below.

As discussed in this Opinion & Order, this Court has determined that it has subject matter jurisdiction over the claims as to Bank Markazi. Bank Markazi has resisted the discovery sought in the motion to compel brought by plaintiffs first and foremost based on its pending motion to dismiss. (See Aug. 21, 2013 Letter 1, ECF No. 487; Oct. 1, 2013 Letter 1, ECF No. 499.) Having resolved that motion, the Court has eliminated that basis for resisting discovery.

The discovery sought is relevant to plaintiffs' claims: as discussed above, any judgment plaintiffs might obtain could be executed only against those assets located in the United States.

For that reason, however, the Court finds that discovery regarding Bank Markazi's assets should only proceed as to those in the United States. The Court includes within this category any accounts at financial institutions at which credits for the benefit of Bank Markazi are maintained, or upon which Bank Markazi could draw if it chose to do so.

---

[7] Plaintiffs do not in fact rely upon TRIA or § 8772 to establish subject matter jurisdiction; the Court therefore does not address defendant's arguments in that regard.

For the same reasons, the Court allows depositions of Bank Markazi personnel located in the United States or obtainable via foreign discovery methods. Such personnel may well have knowledge of facts relevant to the liability claims and damages sought.

## V.     CONCLUSION

For the reasons set forth above, defendant Bank Markazi's Motion to Dismiss the Remaining Claims is DENIED.

The Clerk of Court shall terminate the motions at ECF Nos. 419 and 499.

Dated:    New York, New York
          October 8, 2013

>                            _____
>                                  KATHERINE B. FORREST
>                                  United States District Judge