### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **DEBORAH D. PETERSON,** Personal Representative of the Estate of James C. Knipple (Dec.), et al., <br><br> Plaintiffs, <br><br> v. <br><br> **THE ISLAMIC REPUBLIC OF IRAN,** et al., <br><br> Defendants. | Case No. 10-cv-4518-KBF |

## MEMORANDUM OF LAW IN SUPPORT
## OF THE MOTION TO INTERVENE

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................................... 1

II.    OVERVIEW OF THE LITIGATION AGAINST IRAN FOR ITS ROLE IN
SPONSORING ACTS OF TERRORISM .......................................................... 2

III.   THE LIMITED FUND CLASS ACTION ........................................................ 5
     A.    Equity Mandates the Creation of "Limited Fund" For Iran's Victims ................. 6

     B.    The Claims of Iran's Victims Far Exceed the Value of Iran's Available
Assets ........................................................................................................ 8

     C.    The Claims of Iran's Victims Far Exceed the Value of Iran's Available
Assets ........................................................................................................ 9

IV.   INTERVENORS' MOTION TO INTERVENE SHOULD BE GRANTED .................. 11
     A.    Intervenors Should Be Permitted to Intervene as of Right in this Litigation........ 11

          1.    Intervenors Have a Substantial Interest in the Distribution of the
Funds Subject to this Litigation and that Interest Would Be
Impaired Were Their Intervention Motion Denied................................... 12

          2.    Intervenors' Interests Are Not Adequately Represented by the
Existing Parties ....................................................................................... 15

          3.    The Motion to Intervene is Timely .......................................................... 16

     B.    Permissive Intervention ................................................................................. 23

V.    CONCLUSION ............................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re 650 Fifth Ave. & Related Props.*,
No. 08 Civ. 10934 (KBF), 2013 WL 5178677 (S.D.N.Y. Sept. 16, 2013) ............................5

*In re 650 Fifth Ave. & Related Props.*,
No. 08 Civ. 10934 (KBF), 2014 WL 1516328 ....................................................................5, 9

*Allco Fin. Ltd. v. Etsy*,
300 F.R.D. 83 (D. Conn. 2014)............................................................................................12

*In re Am. Family Enterps.*,
256 B.R. 377 (D. N.J. 2000) ..................................................................................................7

*Anderson v. Islamic Republic of Iran*,
839 F. Supp. 2d 263 (D.D.C. 2012) .......................................................................................3

*Atl. Mut. Ins. Co. v. Nw. Airlines, Inc.*,
24 F.3d 958 (7th Cir. 1994) ................................................................................................19

*Bay Casino, LLC v. M/V Royal Empress*,
199 F.R.D. 464 (E.D.N.Y. 1999) ........................................................................................11

*Beer et al. v. Islamic Republic of Iran et al.*,
08 Civ. 1807 (RCL) (D.D.C) ................................................................................................4

*In re Black Farmers Discrimination Litig.*,
856 F. Supp. 2d 1 (D.D.C. 2011) ...........................................................................................9

*Bland v. Islamic Republic of Iran*,
831 F. Supp. 2d 150 (D.D.C. 2011) .......................................................................................3

*Blount-Hill v. Ohio*,
244 F.R.D. 399 (S.D. Ohio 2005) ........................................................................................14

*Bridgeport Guardians, Inc. v. Delmonte*,
602 F.3d 469 (2d Cir. 2010)................................................................................................12

*British Airways Bd. v. Port Auth. of N.Y. & N.J.*,
71 F.R.D. 583 (S.D.N.Y. 1976) ..........................................................................................16

*Brown v. Islamic Republic of Iran*,
   872 F. Supp. 2d 37 (D.D.C. 2012) .......................................................................3

*Cnty. of Fresno v. Andrus*,
   622 F.2d 436 (9th Cir. 1980) .............................................................................12

*Cnty. of Suffolk v. Long Island Lighting Co*.,
   907 F.2d 1295 (2d Cir. 1990).............................................................................7

*Coburn v. 4-R Corp*.,
   77 F.R.D. 43 (E.D. Ky. 1977)............................................................................7

*Commack Self-Serv. Kosher Meats, Inc. v. Rubin*,
   170 F.R.D. 93 (E.D.N.Y. 1996) .......................................................................12

*Cook v. Bates*,
   92 F.R.D. 119 (S.D.N.Y. 1981) .........................................................................17

*Cuthill v. Ortman-Miller Mach. Co*.,
   216 F.2d 336 (7th Cir. 1954) .............................................................................20

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001).........................................................................17, 22

*Davis v. Islamic Republic of Iran*,
   882 F. Supp. 2d 7 (D.D.C. 2012) ......................................................................3

*In re Discovery Zone Sec. Litig*.,
   181 F.R.D. 582 (N.D. Ill. 1998) ......................................................................14

*Dorsett v. Cnty. of Nassau*,
   283 F.R.D. 85 (E.D.N.Y. 2012) ......................................................................16

*Dow Jones & Co. v. U.S. Dep't of Justice*,
   161 F.R.D. 247 (S.D.N.Y. 1995) ................................................................18, 23

*Fain v. Islamic Republic of Iran*,
   885 F. Supp. 2d 78 (D.D.C. 2012) ....................................................................3

*Farmland Dairies v. Comm'r of the N.Y. State Dep't of Agric. & Mkts.*,
   847 F.2d 1038 (2d Cir. 1988)...............................................................16, 19, 22

*Fleming v. Citizens for Albemarle, Inc*.,
   577 F.2d 236 (4th Cir. 1978) .............................................................................20

*Floyd v. City of New York*,
   302 F.R.D. 69 (S.D.N.Y. 2014) ..................................................................11, 19

*Greenbaum v. Islamic Republic of Iran,*
    451 F. Supp. 2d 90 (D.D.C. 2006) .......................................................................3

*Hartford Fire Ins. Co. v. Mitlof,*
    193 F.R.D. 154 (S.D.N.Y. 2000) ........................................................................17

*Estate of Heiser v. Islamic Republic of Iran,*
    659 F. Supp. 2d 20 (D.D.C. 2009) .......................................................................3

*Hoblock v. Albany Cnty. Bd. of Elections,*
    233 F.R.D. 95 (N.D.N.Y. 2005).........................................................................15

*Hodgson v. United Mine Workers of Am.,*
    473 F.2d 118 (D.C. Cir. 1972)...........................................................................12

*In re Holocaust Victim Assets Litig.,*
    225 F.3d 191 (2d Cir. 2000)..............................................................16, 21, 22

*Hurd v. Illinois Bell Tel. Co.,*
    234 F.2d 942 (7th Cir. 1956) ............................................................................20

*In re Jackson Lockdown/MCO Case,*
    107 F.R.D. 703 (E.D. Mich. 1985) ......................................................................7

*McDonald v. E. J. Lavino Co.,*
    430 F.2d 1065 (5th Cir. 1970) .....................................................................20, 21

*Meyer v. Macmillan Pub. Co.,*
    85 F.R.D. 149 (S.D.N.Y. 1980) .........................................................................21

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.,*
    72 F.3d 361 (3d Cir. 1995)...........................................................................13, 14

*Murphy v. Islamic Republic of Iran,*
    740 F. Supp. 2d 51 (D.D.C. 2010) .......................................................................3

*N.Y. News, Inc. v. Kheel,*
    972 F.2d 482 (2d Cir. 1992)...............................................................................23

*O'Brien v. Islamic Republic of Iran,*
    853 F. Supp. 2d 44 (D.D.C. 2012) .......................................................................3

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999).....................................................................................6, 7, 8

*Pellegrino v. Nesbit,*
    203 F.2d 463 (9th Cir. 1953) ............................................................................20

*Peterson v. Islamic Republic of Iran*,
    10 Civ. 4518(KBF), 2013 WL 1155576 (S.D. N.Y. Mar. 13, 2013)........................................4

*Peterson v. Islamic Republic of Iran*,
    264 F. Supp. 2d 46 (D.D.C. 2003) ..........................................................................2

*Peterson v. Islamic Republic of Iran*,
    290 F.R.D. 54 (S.D.N.Y. 2013) ........................................................................15, 22

*Peterson v. Islamic Republic of Iran*,
    515 F. Supp. 2d 25 (D.D.C. 2007) ..........................................................................3

*Peterson v. Islamic Republic of Iran*,
    758 F.3d 185 (2d Cir. 2014)..............................................................................4, 9

*Price v. Price*,
    118 W. Va. 48 (1936) ....................................................................................8

*Purnell v. City of Akron*,
    925 F.2d 941 (6th Cir. 1991) ........................................................................14, 15

*SEC v. Navin*,
    166 F.R.D. 435 (N.D. Cal. 1995) ..........................................................................14

*Spencer v. Islamic Republic of Iran*,
    12-cv-42 (RCL), 2014 WL 5141429 (D.D.C. Oct. 14, 2014)................................................3

*Spirt v. Teachers Ins. & Annuity Ass'n*,
    93 F.R.D. 627 (S.D.N.Y.) ..............................................................................19

*Sun Const. Co. v. Torix Gen. Contractors, LLC*,
    No. 07-CV-01355-LTB, 2007 WL 4178505 (D. Colo. Nov. 26, 2007) ..................................14

*Taylor v. Islamic Republic of Iran*,
    881 F. Supp. 2d 19 (D.D.C. 2012) ..........................................................................3

*U.S. Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978)..........................................................................15, 16

*United States v. Hooker Chems. & Plastics Corp.*,
    540 F. Supp. 1067 (W.D.N.Y. 1982) ......................................................................20

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994) ..................................................................11, 16, 22, 23

*United States v. Yonkers Bd. of Educ.*,
    801 F.2d 593 (2d Cir. 1986)......................................................................16, 17, 19, 22

*Valore v Islamic Republic of Iran,*
    700 F. Supp. 2d 52 (D.D.C. 2010) ....................................................................3

*Williams v. Nat'l Sec. Ins. Co.,*
    237 F.R.D. 685 (M.D. Ala. 2006) ....................................................................6

**STATUTES**

22 U.S.C. § 8772 ........................................................................................................4

28 U.S.C. §§ 1603, 1605A, 1606, 1610 ..................................................................13

Pub. L. No. 107–297, 116 Stat. 2322 § 201(a) (2002) ............................................13

**OTHER AUTHORITIES**

Charles Alan Wright *et al.*, *Federal Practice & Procedure* (3d ed. 2014) ...........12, 17

Fed. R. Civ. P. 24 ............................................................................................ passim

Fed. R. Civ. P. 23 ............................................................................................ passim

H.R. Rep. No. 104-383, at 62 (1995) .....................................................................22

Matt Chaban & Daniel Beekman, *A HIGH SEIZE: Feds Win OK to Take Fifth
    Ave. Tower Tied to Iran $*, N.Y. Daily News (Sept. 16, 2013) .............................9

Pomeroy, *Equity Jurisprudence* § 407 (4th ed. 1918) .............................................8

This motion to intervene is brought by John Relvas, John Kees, and Mark Boyd ("Intervenors") through counsel and pursuant to Fed. R. Civ. P. 24, individually and on behalf of a class pursuant to Rule 23 that includes all persons with an interest in the limited fund as a result of a claim arising from terrorist attacks sponsored by the Islamic Republic of Iran.

## I.   <u>INTRODUCTION</u>

In the early morning hours of October 23, 1983, 241 servicemembers stationed in Beirut, Lebanon were murdered in their sleep by a suicide bomber sponsored by the government of Iran. In the years, days, and minutes before the attack, those 241 servicemembers—and many other servicemembers who were injured in the attack—ate together, trained together, and worked together in the service of common goals greater than any one of them alone. They were supported in their service by husbands and wives, sons and daughters, and brothers and sisters who sacrificed both their own comfort and years of common memories for the benefit of our country and our world. In a single instant, the lives of the families of those killed were forever altered when their partners and parents were stolen from them. Those families, and the servicemembers who were injured in the attack, were traumatized by wounds both physical and psychological that they must endure even to this day.

Nothing can blot out from history the horrors of October 23, 1983, and nothing can return to the families their loved ones who were lost. But more than 30 years after the Beirut Marine Barracks attack, certain of its survivors, at long last, stand at the precipice of obtaining some measure of justice. Assets seized from the Iranian government will soon be used to compensate some victims of the attack.

For many victims of the Beirut attack, and of other terrorist attacks sponsored by Iran, however, justice remains elusive. Although billions of dollars of Iranian assets have been confiscated, not all of Iran's victims stand to receive compensation. It is exceedingly unlikely

that substantial additional, seizable Iranian assets will be located in the United States.  This means that, despite their equal and shared sacrifice, some injured servicemembers and families and other victims stand to receive millions of dollars in compensation, while many others are unlikely to ever receive so much as a penny.

This inequitable arrangement should not—and need not—stand.  The present motion is an effort to obtain equal justice for *all* victims of Iran-sponsored terrorist attacks.   In an accompanying class action complaint, Intervenors seek certification, under Federal Rule of Civil Procedure 23(b)(1)(B), of a "limited fund" class in order to ensure that each victim is compensated fairly and adequately.  Intervenors now move to intervene in the present case on behalf of the class in order to preserve the limited fund, which is comprised of the assets at issue in *Peterson v. Islamic Republic of Iran*, 1:10-cv-0418-KBF (S.D.N.Y.), and *In re 650 Fifth Avenue and Related Properties*, No. 08 Civ. 10934(KBF) (S.D.N.Y.).

## II.   OVERVIEW OF THE LITIGATION AGAINST IRAN FOR ITS ROLE IN SPONSORING ACTS OF TERRORISM

In 2001, family members of some, but not all, of the 241 deceased servicemembers, as well as several of the survivors injured in the Marine Barracks Bombing, brought two separate suits against Iran in the District Court for the District of Columbia.  *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46, 48 (D.D.C. 2003).  The victims' complaints included claims against Iran for wrongful death, battery, assault, and intentional infliction of emotional distress. Although the complaints were properly served, Iran failed to respond, and the plaintiffs moved for a default judgment.  *Id*.  After a bench trial, the court found that Iran "actively participated in the attack . . . , which was carried out by [Iranian] agents with the assistance of Hezbollah," and was, accordingly, liable for compensatory damages.  *Id*. at 61.  The court subsequently directed special masters to provide reports recommending the amount of damages owed to each plaintiff.

2

*Id*. at 61–62.   On September 7, 2007, after reviewing the special masters' reports, the court entered a default judgment for the plaintiffs and against Iran in the total amount of $2,656,944,877.   *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 60 (D.D.C. 2007).

After the default judgment was entered against Iran in *Peterson*, many other suits were filed seeking damages on behalf of additional groups of Bombing victims.   Some of these groups have obtained judgments against Iran, while others are still in the process of obtaining judgments.   *See, e.g.*, *Spencer v. Islamic Republic of Iran*, 12-cv-42 (RCL), --- F. Supp. 3d ---, 2014 WL 5141429 (D.D.C. Oct. 14, 2014); *Fain v. Islamic Republic of Iran*, 885 F. Supp. 2d 78 (D.D.C. 2012); *Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7 (D.D.C. 2012); *Taylor v. Islamic Republic of Iran*, 881 F. Supp. 2d 19 (D.D.C. 2012); *Brown v. Islamic Republic of Iran*, 872 F. Supp. 2d 37 (D.D.C. 2012); *Anderson v. Islamic Republic of Iran*, 839 F. Supp. 2d 263 (D.D.C. 2012); *Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150 (D.D.C. 2011); *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51 (D.D.C. 2010); *Valore v Islamic Republic of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010); *O'Brien v. Islamic Republic of Iran*, 853 F. Supp. 2d 44 (D.D.C. 2012).   The victims of several other Iran-sponsored terrorist attacks also sued Iran, and some have obtained judgments.   *See, e.g.*, *Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90 (D.D.C. 2006) (entering judgment for the victims of an August 9, 2001 attack by Hamas in Israel); *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20 (D.D.C. 2009) (entering judgment for family members and estates of U.S. servicemen killed in a bombing in Saudi Arabia).

In the meantime, beginning in 2008, nearly twenty different groups of victims of Iranian-sponsored terrorist attacks who had obtained judgments against Iran filed suits in the Southern District of New York to obtain writs of attachment, restrain funds, and execute judgments on two

sets of Iranian assets—bank assets held on behalf of the Bank of Markazi (the Central Bank of Iran) and real and other property owned by 650 Fifth Avenue Company—that were located within the district. *See Peterson v. Islamic Republic of Iran*, 10 Civ. 4518(KBF), 2013 WL 1155576, at *1 n.1 (S.D. N.Y. Mar. 13, 2013).[1]  On March 13, 2013, this Court ordered the turnover of $1.75 billion of blocked Bank of Markazi assets under both the Terrorism Risk Insurance Act of 2002 and 22 U.S.C. § 8772. *Peterson*, 2013 WL 1155576, at *7–10, 28–29. The Second Circuit affirmed that turnover order on July 9, 2014, *Peterson v. Islamic Republic of Iran*, 758 F.3d 185 (2d Cir. 2014), but the mandate has not issued and the assets subject to that order have not yet been distributed.[2]

---

[1] Those groups include: (1) *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 451 8(KBF) (S.D.N.Y.); (2) *Greenbaum et al. v. Islamic Republic of Iran, et al.*, 02 Civ. 2148 (RCL) (D.D.C); (3) *Acosta, et al. v. Islamic Republic of Iran, et al.*, 06 Civ. 745 (RCL) (D.D.C); (4) *Rubin, et al. v. Islamic Republic of Iran*, 01 Civ. 1655 (RCL) (D.D.C); (5) *Estate of Heiser et al. v. Islamic Republic of Iran et al.*, 00 Civ. 2329 and 01 Civ. 2104 (RCL) (D.D.C); (6) *Levin v. Islamic Republic of Ir an*, 05 Civ. 2494 (GK) (D.D.C); (7) *Valore. et al. v. Islamic Republic of Iran, et al.*, 03 Civ. 1959 (RCL) (D.D.C); (8) *Bonk, et al. v. Islamic Republic of Iran et al.*, 08 Civ. 1273( RCL) (D.D.C); (9) *Estate of James Silvia, et al.*, 06 Civ. 750 (RCL) (D.D.C); (10) *Estate of Anthony K. Brown, et al. v. Islamic Republic of Iran, et al.*, 08 Civ. 531 (RCL) (D.D.C.); (11) *Estate of Stephen B. Bland v. Islamic Republic of Iran, et al.*, 05 Civ. 2124 (RCL) (D.D.C); (12) *Judith Abasi Mwila, et al. v. Islamic Republic of Iran, et al.*, 08 Civ. 1377 (JDB) (D.DC.); (13) *James Owens, et al. v. Republic of Sudan, et al.*, 01 Civ. 2244 (JDB) (D.D.C.); (14) *Rizwan Khaliq, et al. v. Republic of Sudan, et al.*, 08 Civ. 1273 (JDB) (D.D.C.); (15) *Beer et al. v. Islamic Republic of Iran et al.*, 08 Civ. 1807 (RCL) (D.D.C); (16) *Kirschenbaum v. Islamic Republic of Iran et al.*, 03 Civ. 1708 (RCL) (D.D.C); (17) *Arnold et al. v. Islamic Republic of Iran et al.*, 06 Civ. 516 (RCL) (D.D.C); and (18) *Murphy et al. v. Islamic Republic of Iran et al.*, 06 Civ. 596 (RCL) (D.D.C).

[2] This Court denied reconsideration of its summary judgment order.  The United States Court of Appeals for the Second Circuit affirmed, *Peterson v. Islamic Republic of Iran*, 758 F.3d 185 (2d Cir. 2014), and subsequently denied Bank Markazi's requests for panel rehearing and rehearing *en banc* on September 29, 2014.  On October 29, 2014, however, the Second Circuit granted Bank Markazi's motion to stay the mandate.  Bank Markazi filed a petition for certiorari with the U.S. Supreme Court on December 29, 2014.  Petition for Certiorari, *Bank Markazi v. Deborah D. Peterson*, No. 14-770 (U.S. Dec. 29, 2014).  That petition is currently pending. Because the mandate has been stayed, the partial judgment has not become a non-appealable sustained judgment, and the plaintiffs have not applied for an order authorizing distribution of

At around the same time that the victims' suits against the Bank of Markazi assets were proceeding, the U.S. government and the victims were also seeking civil forfeiture of real and other property owned by the 650 Fifth Avenue Company on the basis that 650 Fifth Avenue's partners were agents of the Iranian Government.  This Court granted summary judgment to the government and the victims in opinions dated September 16, 2013 and April 18, 2014.  *See In re 650 Fifth Ave. & Related Props*., No. 08 Civ. 10934 (KBF), 2014 WL 1516328, at *1–7 (S.D.N.Y. Apr. 18, 2014); *In re 650 Fifth Ave. & Related Props*., No. 08 Civ. 10934 (KBF), 2013 WL 5178677, at *6–16 (S.D.N.Y. Sept. 16, 2013).  Those properties have not yet been sold, nor have any assets been distributed, and related litigation over the assets is ongoing.

This series of separate litigations brought on behalf of individuals and groups of victims of the Bombing has led to the current state of affairs: where some of Iran's victims stand to receive significant compensation for their losses, while others will receive nothing.

### III.    THE LIMITED FUND CLASS ACTION

Intervenors, John Relvas, John Kees, and Mark Boyd, are among the plaintiffs in *Relvas et al. v. Iran*, 1:14-cv-01752 (D.D.C. filed Oct. 20, 2014), a suit against Iran brought by more than 80 wounded American servicemembers, and relatives of servicemembers who were killed or wounded, in the 1983 bombing of the U.S. Marine barracks in Beirut, Lebanon.  (Attached as Ex. 1).

In conjunction with their Motion to Intervene, Intervenors have attached a proposed class action complaint ("Class Suit") in this Court against the owners and possessors of Iranian assets that are located in the United States and subject to attachment by the victims of Iran-sponsored

---

the funds in the QSF Account, the funds in the QSF Account have not been distributed and transferred to the control of the Peterson Plaintiffs.

5

terrorist attacks.[3]  (Attached as Ex. 2).  In the Class Suit, Intervenors seek to represent a class

encompassing all of the victims of Iran-sponsored terrorist attacks.  Intervenors further seek to

establish that the assets that are the subject of *Peterson v. Islamic Republic of Iran*, 1:10-cv-

0418-KBF (S.D.N.Y.), and *In re 650 Fifth Avenue and Related Properties*, No. 08 Civ.

10934(KBF) (S.D.N.Y.) constitute a limited fund.  Because the total claims of the classmembers

far exceed the value of the available Iranian assets, certification of a mandatory limited fund

class is necessary and appropriate in order to ensure that all of Iran's victims are able to obtain

compensation for their injuries and for the deaths of their loved ones.

A.      **Equity Mandates the Creation of "Limited Fund" For Iran's Victims**

A limited fund class under Rule 23(b)(1)(B) is the <u>only</u> means for managing the *Peterson*

and *In re 650 Fifth Avenue* cases equitably and efficiently.  Under Rule 23(b)(1)(B), a limited

fund class is appropriate when:

> prosecuting separate actions by or against individual class members would create
> a risk of . . . adjudications with respect to individual class members that, as a
> practical matter, would be dispositive of the interests of the other members not
> parties to the individual adjudications or would substantially impair or impede
> their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1)(B).   The Supreme Court has recognized that, "[a]mong the varieties of

suit traditionally encompassed by Rule 23(b)(1)(B) are those involving a 'limited fund,' in which

numerous individual claims against an insufficient fund would impair the ability of all members

of the class to protect their interests."  *Williams v. Nat'l Sec. Ins. Co.*, 237 F.R.D. 685, 692 (M.D.

Ala. 2006) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999)).

---

[3]  The Defendants include: Bank Markazi a/k/a Central Bank of Iran; Citibank, N.A.;
Clearstream Banking, S.A.; Banca UBAE SpA; Alavi Foundation of New York; Assa
Corporation; Assa Company Limited; and 650 Fifth Avenue Company.

"Under such circumstances, Rule 23(b)(1)(B) is designed to preserve the limited fund for the entire class against the individual claims of class members, which claims might otherwise exhaust the limited fund and thereby leave subsequent plaintiffs with no remedy." *Cnty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1303 (2d Cir. 1990) (internal quotation marks and citations omitted). Certification of a limited class is used to prevent, as will otherwise have occurred here, an "unseemly race to the courtroom door with monetary prizes for a few winners and worthless judgments for the rest." *Coburn v. 4-R Corp.*, 77 F.R.D. 43, 45 (E.D. Ky. 1977).[4] A limited fund class action accomplishes this goal by "necessarily provid[ing] for mandatory participation by class members because allowing class members to opt out of the class and pursue individual claims would deplete the fund to the detriment of other class members." *Stott*, 277 F.R.D. at 326–27.[5]

Courts have noted that the creation of a "limited fund"—a concept that predates the Federal Rules of Civil Procedure—is mandated by equity when it is plain that the value of the claims to be asserted will exceed the value of the assets available for satisfying those claims. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 836 (1999) ("As the Advisory Committee [on the Federal Rules] recognized in describing *Dickinson* [*v. Burnham*, 197 F.2d 973 (2d Cir. 1952)], equity *required* absent parties to be represented, joinder being impractical, where individual

---

[4] *See also In re Jackson Lockdown/MCO Case*, 107 F.R.D. 703, 712 (E.D. Mich. 1985) ("Rather than allowing the fund to be exhausted by litigation expenses and to precipitate unjust percentage recoveries to early arriving claimants, a 'non-opt out' settlement allows fair recovery of the limited fund by all claimants . . . . Where a limited fund exists in a particular litigation and the projected number of claims would exceed the amount of that fund, it is both equitable and reasonable that the mere fortuitousness of one party filing before another should not be the deciding factor in determining the availability of recompense.")

[5] *See also In re Am. Family Enterps.*, 256 B.R. 377, 416 (D. NJ. 2000) (declining to permit opt-outs); *In re Jackson Lockdown/MC Cases*, 107 F.R.D. 703, 709 (E.D. Mich. 1985) ("The 'limited fund' doctrine has been applied or endorsed by many courts as the basis for mandatory certification").

claims to be satisfied from the one asset would, as a practical matter, prejudice the rights of absent claimants against a fund inadequate to pay them all." (emphasis added));[6] *Price v. Price*, 118 W. Va. 48 (1936) ("It is even said that no rule of equity appeals more to the conscience of a chancellor than that requiring an insufficient fund to be apportioned ratably among all its claimants. So it may be taken as settled that equity will assume jurisdiction when necessary to prevent unequal distribution of a limited fund." (internal citations omitted)); *Hallett v. Hallett*, 2 Paige 15, 21 (N.Y. 1829) ("[I]f by the answer of the defendant [in a creditors' or legatees' suit] it appears there will be a deficiency of assets so that all the creditors cannot be paid in full, or that there must be an abatement of the complainant's legacy, the court will make a decree for the general administration of the estate, and a distribution of the same among the several parties entitled thereto, agreeable to equity"); Pomeroy, *Equity Jurisprudence* § 407 (4th ed. 1918) ("[I]f the fund is not sufficient to discharge all claims upon it in full . . . equity will incline to regard all the demands as standing upon an equal footing, and will decree a pro rata distribution or payment").

**B.    The Claims of Iran's Victims Far Exceed the Value of Iran's Available Assets**

The total claims of the classmembers far exceed the value of the available assets.  At the time this motion was filed, courts have awarded judgments against Iran totaling $9,992,896,885.04 to the victims of the Beirut Marine Barracks Bombing alone.

By contrast, in the more than thirty years since the Marine Barracks Bombing, and after much effort by various counsel, the U.S. government and the victims of the Marine barracks attack and of other terrorist attack sponsored by Iran have only been able to locate two sets of

---

[6] *Id*. at 837 ("[I]n equity, legatee and creditor bills against the assets of a decedent's estate had to be brought on behalf of all similarly situated claimants where it was clear from the pleadings that the available portion of the estate could not satisfy the aggregate claims against it.").

attachable Iranian assets that they may use to satisfy their judgments.  The first of these is $1.75 billion in cash proceeds of Iranian government bonds that had been held in New York by Citibank, N.A. in an omnibus account for Clearstream Banking, S.A.  *See Peterson v. Islamic Republic of Iran*, 758 F.3d 185, 188 (2d Cir. 2014).[7]  A second source of assets for the limited fund are assets formerly held by the 650 Fifth Avenue Company and its partners, the Alavi Foundation and Assa Corporation.  *See generally In re 650 Fifth Ave.*, No. 08 CIV. 10934 KBF, 2014 WL 1516328 (S.D.N.Y. Apr. 18, 2014) (holding that Alavi Foundation and Assa Corporation are organs of the Iranian government).  Among these assets, by far the most valuable is the 650 Fifth Avenue property, worth an estimated $500 to $700 million.  Matt Chaban & Daniel Beekman, *A HIGH SEIZE: Feds Win OK to Take Fifth Ave. Tower Tied to Iran $*, N.Y. Daily News (Sept. 16, 2013).

It is unlikely that substantial additional, seizable Iranian assets are present in the United States.  Although the Iranian government possesses substantial assets within its own borders, Iran's control over its own legal system renders those assets useless as a means for satisfying the class's claims.  Accordingly, those assets do not affect the "limited" nature of the fund.  *Cf. In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 18 (D.D.C. 2011) (rejecting the argument that funds allocated by the U.S. government to satisfy class claims could not constitute a limited fund because "the government is that unique defendant which has the legal authority to define the extent of its own liability").

C.     **The Claims of Iran's Victims Far Exceed the Value of Iran's Available Assets**

---

[7]  "Clearstream maintain[ed] this account [for] . . . Banca UBAE S.p.A., an Italian bank whose customer, in turn, is Bank Markazi."  *Id*. at 188.

This Court can adopt a plan for distributing the Iranian assets that balances the interests of victims with preexisting judgments in receiving, without delay, their distribution of the Iranian assets with the interests that other victims have in securing just compensation from Iran.

For instance, as soon as the funds are capable of distribution, this Court could immediately turn over to those classmembers who have already obtained judgments a portion of the funds equivalent to their estimated percentage of the overall class claims.  This estimate could be based on: (1) government records and other publicly available information concerning the identities of Iran's victims; (2) public records showing the judgments already obtained by the victims of Iran-sponsored attacks; and (3) previously articulated damages formula adopted in prior suits by the victims of Iran-sponsored terrorism.  By distributing these funds to claimants with preexisting judgments at the soonest practicable date, the plan would avoid prejudicing those claimants who have already waited far too long to obtain justice from those responsible for the Beirut tragedy.

After a class is certified, class counsel could provide notice to the remaining members of the class who have not yet obtained judgments, informing them of the class certification and the availability of the limited fund, and requiring them to indicate to class counsel by a court-approved deadline of their intention to seek judgments so that they may be eligible to receive a distribution from the limited fund.  *See* Rule 23(c)(2)(A) (providing that, "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class").  After the class notice deadline has passed, and the remaining classmembers have obtained judgments, the balance of the fund could be distributed on a pro rata basis to the remaining class members.  If the fund balance is sufficient, the original claimants with preexisting judgments

10

might receive a second distribution such that all members of the class have received distributions on an actual pro rata basis.

IV.     **INTERVENORS' MOTION TO INTERVENE SHOULD BE GRANTED**

A.     **Intervenors Should Be Permitted to Intervene as of Right in this Litigation**

In order to protect the limited fund on behalf of all members of the class, Intervenors seek to intervene as of right as plaintiffs in this action.   If their intervention motion is granted, Intervenors will move to distribute the funds in a manner that is consistent with the distribution plan proposed herein and subsequently filed class certification motion.

A request to intervene as of right under Rule 24(a)(2) must be granted when an applicant: "(1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties."  *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).

"Motions to intervene are highly fact-specific and tend to resist comparison to prior cases."  *Floyd v. City of New York*, 302 F.R.D. 69, 83 (S.D.N.Y. 2014), *aff'd in part, appeal dismissed in part*, 770 F.3d 1051 (2d Cir. 2014) (citing *Bay Casino, LLC v. M/V Royal Empress*, 199 F.R.D. 464, 466 (E.D.N.Y. 1999)).  In deciding whether an applicant possesses a right to intervene, "courts are guided by practical and equitable considerations in an effort to balance 'efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand.'"  *Floyd*, 302 F.R.D. at 83 (quoting *Pitney Bowes*, 25 F.3d at 69).

In this case, those equitable considerations counsel strongly in favor of granting Intervenors's request to intervene as of right.

        1.      <u>Intervenors Have a Substantial Interest in the Distribution of the Funds<br>Subject to this Litigation and that Interest Would Be Impaired Were Their<br>Intervention Motion Denied</u>

"The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972). An applicant possesses an interest sufficient to intervene by right if that interest is "direct, substantial, and legally protectable." *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (internal quotation marks and citation omitted). Nevertheless, Rule 24's "interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (internal quotation marks and citation omitted). Accordingly, an applicant's interest in intervention is sufficient, for instance, "when the intervenor claims an identifiable interest in funds that are the subject of litigation." 7C Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 1908.1 (3d ed. 2014). Rule 24's impairment requirement is similarly based on "the practical disadvantage suffered, and does not require the would-be intervenor to go so far as to show that res judicata *principles* would affect any later suit they might bring." *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 87 (D. Conn. 2014) (internal quotation marks and citation omitted).[8]

---

[8] "In *Restor–A–Dent Dental Lab., Inc*., [725 F.2d 871, 874 (2d Cir. 1984),] the [Second Circuit] concluded that the 1966 amendments to Fed. R. Civ. P. 24(a) were intended to expand the right to intervene beyond those situations where the proposed intervenor 'is or may be bound by a judgment in the action' or where the 'applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof.'" *Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 100 (E.D.N.Y. 1996) (quoting

Intervenors have a direct, substantial, and legally protectable interest in the bank assets held on behalf of Bank Markazi, the Central Bank of Iran.  Intervenors consist of American servicemembers who were wounded in the 1983 Beirut Marine Barracks attack and the families and estates of servicemembers who were killed or wounded.  Intervenors are among a group of plaintiffs asserting damages claims against Iran under § 1605A of the Foreign Sovereign Immunities Act ("FSIA").  Once a default judgment is entered, Intervenors will register, record, and execute that judgment and will be in a position to move in this court for turnover of the restrained assets under the FSIA, 28 U.S.C. §§ 1603, 1605A, 1606, 1610, and the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107–297, 116 Stat. 2322 § 201(a) (2002).  Additionally, as discussed above, Intervenors seek to file a limited fund class action suit on behalf of themselves and all other similarly situated individuals.  The bank assets held on behalf of the Bank of Markazi are one of two sets of asset pools that constitute the limited fund identified in the class action suit.

Although Intervenors have not yet obtained a judgment on their individual claims against Iran, courts recognize that applicants asserting an interest in assets arising out of claims in pending litigation have a sufficient interest to justify intervention in a separate suit involving the distribution of those assets.  In *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995), for instance, the Third Circuit held that condominium owners possessed a sufficient interest to justify intervention in their condominium association's suit against construction contractors after the association deposited the remainder of hurricane damage insurance proceeds in a court registry in return for the release of a construction lien.  The

---

original Fed. R. Civ. P. 24(a)(2) and (3)).  After the 1966 amendments, an applicant need only show that she "would be substantially affected in a practical sense by the determination made in an action."  Fed. R. Civ. P. 24 advisory committee's note, 1966 Amendment, Federal Civil Judicial Procedure and Rules, at 104.

owners had filed a separate suit against the association for improperly managing the distribution of the same insurance proceeds that the association had deposited in the *Mountain Top Condo* court's registry.  The owners sought to intervene in *Mountain Top Condo* to protect against the risk that the association would settle that suit by paying the contractors the entirety of the insurance proceeds, thereby preventing the owners from satisfying a potential favorable judgment in their suit against the association.  The Third Circuit explained that, despite the fact that the owners had not yet obtained a judgment in their suit against the association, "an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund." *Id*. at 366.[9]

As in *Mountain Top Condo*, Intervenors have filed a separate suit—their action in the District Court for the District of Columbia—asserting an interest in the very same funds that are at issue in the suit in which they now seek to intervene.  This court should adopt the logic of the Third Circuit and find that Intervenors possess a sufficient interest to intervene as of right.

---

[9] *See also Purnell v. City of Akron*, 925 F.2d 941, 945–48 (6th Cir. 1991) (holding that the alleged children of a man killed by police had a sufficient interest to intervene in a survival action asserting excessive force claims even though paternity had not yet been determined by the probate court); *Sun Const. Co. v. Torix Gen. Contractors, LLC*, No. 07-CV-01355-LTB, 2007 WL 4178505, at *4 (D. Colo. Nov. 26, 2007) ("When an intervenor and a party both have an interest in the same limited source of funds, this sufficiently shows competing interests such that intervention of right should be allowed."); *In re Discovery Zone Sec. Litig.*, 181 F.R.D. 582, 594 (N.D. Ill. 1998) (holding that there was a right to intervene when necessary to protect the intervenor's "pro rata interest in . . . insurance and settlement funds" if those funds are "the only means of satisfying any settlement or judgment"); *SEC v. Navin*, 166 F.R.D. 435 (N.D. Cal. 1995) (holding that corporate investors had a right to intervene in a securities fraud suit brought by the SEC where the investors stood to lose most of their investment if the receiver liquidated the assets); *cf. Blount-Hill v. Ohio*, 244 F.R.D. 399, 402 (S.D. Ohio 2005), *aff'd sub nom. Blount-Hill v. Bd. of Educ. of Ohio*, 195 F. App'x 482 (6th Cir. 2006) (holding that a management firm had a right to intervene in a suit challenging the constitutionality of a state's method for funding community schools where the firm's sole funding source was derived from contracts with community schools).

Moreover, Intervenors' interest in the limited funds would be significantly impaired were their intervention motion denied.  As discussed above, the total value of the claims against Iran arising from its role in the Marine Barracks Bombing far exceeds the value of the available collectible assets.  At the time this motion was filed, courts have awarded nearly $10 billion in judgments against Iran to the victims of the Bombing alone.  By contrast, in the more than thirty years since the Bombing, and after much effort by various counsel, Iran's victims have only been able to locate two sets of attachable Iranian assets that they may use to satisfy their judgments. The value of those assets—the Bank of Markazi funds at issue in this case and the assets formerly held by the 650 Fifth Avenue Company and its partners, the Alavi Foundation and Assa Corporation—are unlikely to exceed $3 billion in the aggregate.  Accordingly, denying Intervenors' motion, and distributing Iran's assets in their absence, would impair their ability both to maintain their D.D.C. suit and to achieve redress—through any mechanism—for the injuries they and their loved ones suffered at the hands of Iran.  *See Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 57 (S.D.N.Y. 2013) ("[I]t is undisputed that disposition of this action in the absence of Intervenors would harm their interests, and that the existing plaintiffs do not adequately represent those interests—in fact, plaintiffs wish to seize the same set of assets.").[10]

Intervenors have shown that Rule 24(a)'s impairment prong is satisfied.

2.    Intervenors' Interests Are Not Adequately Represented by the Existing Parties

Although the burden to demonstrate the inadequacy of representation of interests is on the intervenor, that burden is minimal and not onerous.  *Hoblock v. Albany Cnty. Bd. of*

---

[10] Intervenors' "standing," as distinct from Rule 24's interest requirement, is irrelevant to the issue of whether they possess a right to intervene.  "[A] party seeking to intervene need not possess the standing necessary to initiate a lawsuit." *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991); *see also Brennan*, 579 F.2d at 190 (holding that because the existence of a case or controversy had been established between the original plaintiff and defendant, there was no need to impose a standing requirement on the would-be intervenor).

*Elections*, 233 F.R.D. 95, 99 (N.D.N.Y. 2005); *see also U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978).   In determining whether a proposed intervenor's interest is being adequately represented by existing parties, courts in this Circuit often look to whether there is evidence of "(1) collusion; (2) adversity of interest; (3) possible nonfeasance; or (4) incompetence."   *Dorsett v. Cnty. of Nassau*, 283 F.R.D. 85, 93 (E.D.N.Y. 2012) (internal quotation marks and citation omitted); *see also British Airways Bd. v. Port Auth. of N.Y. & N.J.*, 71 F.R.D. 583, 585 (S.D.N.Y. 1976).

Intervenors' interests are not adequately represented by the existing parties to the suit. The existing parties seek to further their individual interests in recovery.  Given the limited funds available, those efforts necessarily come at the expense of other victims of the Iran-sponsored terrorism.  By contrast, Intervenors are pursuing a fair and equitable distribution of Iranian assets that ensures that all of Iran's victims are compensated for their injuries.   This court should conclude that because an "adversity of interests" exists between Intervenors and the existing parties, Intervenors have adequately demonstrated that they are not adequately represented in this litigation.

> 3.   The Motion to Intervene is Timely

Although an intervention as of right is generally mandatory if its requirements are satisfied, "the determination of the timeliness of a motion to intervene is within the discretion of the district court."  *Farmland Dairies v. Comm'r of the N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1043–44 (2d Cir. 1988); *see also In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000) ("A district court has broad discretion in assessing the timeliness of a motion to intervene, which defies precise definition." (internal quotation marks and citation omitted)). The timeliness requirement "is flexible," *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir. 1986), and should be determined "from all the circumstances," *Pitney Bowes*, 25

F.3d at 70.   Accordingly, a district court "must not consider merely the length of time the litigation or proceeding has been pending."  *Yonkers Bd. of Educ.*, 801 F.2d at 594–95; *see also Cook v. Bates*, 92 F.R.D. 119, 122 (S.D.N.Y. 1981) ("While an application for intervention of right must be 'timely' . . . . [, i]n the absence of prejudice to the opposing party, even significant tardiness will not foreclose intervention.").  "Since in situations in which intervention as of right the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive."  Wright *et al.*, 7C Fed. Prac. & Proc. Civ. at § 1916.

To assist trial courts in determining the timeliness of a motion to intervene, the Second Circuit has developed the following four nonexclusive factors that courts should consider: "(1) how long the applicant had notice of the interest before [he] made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness."  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (internal quotation marks and citation omitted).   Of these four factors, "the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties."  *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000) (internal quotation marks and citation omitted).

> a.   *The Denial of Intervenors' Motion Would Substantially Prejudice them by Permanently Barring Intervenors from Recovering Against Iran for their Injuries and the Deaths of Their Loves Ones*

Intervenors would suffer substantial prejudice if their motion to intervene is denied.  As discussed above, the total value of the actual and potential claims against Iran for its participation

in and support for acts of terrorism far exceeds the value of collectible Iranian assets, and it is unlikely that additional collectible Iranian assets will become available in the future. Accordingly, if this Court were to deny Intervenors' motion to intervene, this Court would likely forever deny justice to many victims of Iranian terrorism.

> b.   *Granting Intervenors' Motion Would Not Prejudice the Existing Parties*

In contrast to the substantial prejudice that Intervenors would suffer if their motion to intervene were denied, if the motion to intervene is granted, any prejudice to the existing parties would be minimal.  As addressed above, Intervenors seek, in their class action suit, to distribute the Iranian funds based on the actual and estimated pro rata shares of the classmembers' claims using a process that seeks to minimize conflicts between and prejudice to the classmembers. Under this proposal, this Court could ensure that as soon as the funds at issue in this suit are capable of distribution, a portion of those funds (equivalent to their estimated percentage of the overall class claims) would be turned over immediately to those classmembers who have already obtained judgments.  By distributing these funds to claimants with preexisting judgments at the soonest practicable date, this plan avoids prejudicing those claimants.

> c.   *Unusual Circumstances Present in This Case Counsel Granting Intervenors' Motion to Intervene*

The strength of the equities at issue here constitutes an unusual circumstance that weighs strongly in favor of granting Intervenors' motion to intervene as of right.  *See Dow Jones & Co. v. U.S. Dep't of Justice*, 161 F.R.D. 247, 253 (S.D.N.Y. 1995) (holding that "unusual circumstances" justified granting a motion by a widow to intervene as of right in a Freedom of Information Act case seeking to compel disclosure of her husband's suicide note due to the amount of pain that such a disclosure would cause their family).  Denying the motion to

intervene is likely tantamount to permanently denying many of Iran's victims compensation for injuries to themselves and for injuries to and deaths of their loved ones.  Moreover, granting the motion to intervene serves an important public policy function by signaling that, in cases like this one, compensation should be allocated equitably to terrorism victims and should not be determined by a race to the courthouse.

><ins>d.</ins>   *The Amount of Time that Has Passed Since This Suit Was Filed Is Not an Adequate Basis For Denying Intervention*

The amount of prejudice that Intervenors would suffer if their motion to intervene were denied, and the strength of the equities at issue, is sufficient to overcome any delay that might weigh against granting the motion to intervene.  Although intervention after liability has been adjudged is generally disfavored, *see Farmland Dairies*, 847 F.2d at 1044,[11] there is no absolute legal bar to post-judgment intervention, *see Spirt v. Teachers Ins. & Annuity Ass'n*, 93 F.R.D. 627, 637 (S.D.N.Y.), a*ff'd in part, rev'd in part on other grounds*, 691 F.2d 1054 (2d Cir. 1982), *vacated on other grounds*, 463 U.S. 1223 (1983) ("[I]t is beyond peradventure that post-judgment intervention motions are, in certain circumstances 'timely'").

Indeed, numerous courts, including in this Circuit, have granted post-judgment motions to intervene as of right when the other relevant factors weighed in favor of intervention.  *See, e.g.*, *Atl. Mut. Ins. Co. v. Nw. Airlines, Inc.*, 24 F.3d 958, 960 (7th Cir. 1994) ("We may assume that settlement of litigation by the original parties is not conclusive if a third party possessing an interest in 'the property or transaction which is the subject of the action' has been excluded from the negotiations. Intervention permits such an entity to prevent the original litigants from bargaining away its interests.  If they beat the intervenor to the punch, the court may annul the settlement in order to give all interested persons adequate opportunity to participate in the

---

[11] *See also Yonkers Bd. of Educ.*, 801 F.2d at 596; *Floyd*, 302 F.R.D. at 84.

negotiations and proceedings."); *Fleming v. Citizens for Albemarle, Inc.*, 577 F.2d 236, 238 (4th Cir. 1978) (holding that an "effort at intervention [by two citizen groups] in the circumstances was not precluded . . . because their motion was not made until after a final decree had been entered," where property owners feared that planned community would endanger the purity and potability of reservoir water); *Hurd v. Illinois Bell Tel. Co.*, 234 F.2d 942, 944 (7th Cir. 1956) ("[A]lthough intervention after judgment is not to be lightly permitted[,] this cause is so fraught with elements of possible prejudice to petitioner and other pensioners similarly situated, that we, in the exercise of a sound discretion[,] conclude that our order permitting petitioner to intervene should be allowed to stand."); *Cuthill v. Ortman-Miller Mach. Co.*, 216 F.2d 336, 338 (7th Cir. 1954) (permitting a stockholder's post-judgment motion to intervene where a corporation's officials and its counsel knew that the corporation owed the employee nothing and wrongfully failed to defend his suit, the corporation deliberately concealed its valid defense from the trial court, and, as a result of collusion with an employee, a fraudulent judgment was entered and corporate funds deposited with the court to satisfy it); *Pellegrino v. Nesbit*, 203 F.2d 463, 465 (9th Cir. 1953) ("Intervention should be allowed even after a final judgment where it is necessary to preserve some right which cannot otherwise be protected."); *United States v. Hooker Chems. & Plastics Corp.*, 540 F. Supp. 1067, 1082 (W.D.N.Y. 1982) (noting that the court granted a motion to intervene "filed within two months after [a] consent decree was lodged with the court" in order for the intervenor "to contest the validity of the consent decree, to challenge the settlement, and to present the citizens' objection to the consent decree").

Indeed, in *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970), the Fifth Circuit cautioned that "the requirement of timeliness is [not] a tool of retribution which can be used to punish a would-be intervenor for allowing time to pass before moving to intervene" and

20

that the intervention device must have the "accommodating flexibility" necessary for it to be "employed to regulate intervention in the interest of justice."  At issue in *McDonald* was an insurance company's motion to intervene, after a judgment was entered but before the funds at issue in the suit were distributed, in order to protect its subrogation interest in those funds.  In reversing the district court's denial of the intervention motion, the Fifth Circuit explained that a court should focus *not* on the extent to which a proposed intervenor delayed in filing a motion but on "whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene." *Id*. at 1073.  The Fifth Circuit went so far as to say that prejudice "may well be the only significant consideration when the proposed intervenor seeks intervention of right." *Id*.; *see also Meyer v. Macmillan Pub. Co*., 85 F.R.D. 149, 150–51 (S.D.N.Y. 1980) (permitting intervention by the EEOC in a sex-discrimination suit, even though it did not seek to intervene until five years after the original complaint was filed with that agency and a year and a half after the federal complaint was filed, because the defendant failed to show any prejudice to its position resulting from the delay).

The Second Circuit's decision in *In re Holocaust Victim Assets Litigation* is not to the contrary.  225 F.3d at 199.  In that case, the Second Circuit denied a motion to intervene as of right after a settlement agreement was reached between a class of Holocaust victims and a group of Swiss banks over, among other things, the banks' complicity in the Nazi expropriation of Jewish assets immediately before and during the Holocaust. *Id*. at 198–99.  In contrast, in this case, the plan for distributing funds is not based on a settlement agreement between the existing plaintiffs and Bank of Markazi.  Accordingly, there is no risk that granting intervention here would diminish the existing plaintiffs' chances of recovery.  Moreover, in the *Holocaust Victim* case, both the district court and the Second Circuit emphasized that the group seeking

21

intervention would not be prejudiced by a denial of their motion because they "remain[ed] free to file a separate action." *Id.* at 199.   Here, however, Intervenors would unquestionably be prejudiced by a denial of their motion to intervene because the funds available to satisfy their claims against Iran are limited and would be entirely depleted if distributed under the current arrangement.[12]

Moreover, the Second Circuit has stated that the requirements for intervention of right "must be examined in the context of the statutory scheme under which the underlying litigation is being pursued." *Pitney Bowes*, 25 F.3d at 72.   Among Congress's primary goals in creating the terrorism exception to the FSIA was to provide an avenue for the victims of state-sponsored terrorism to obtain relief in the form of damages from terrorist states.   *See* H.R. Rep. No. 104-383, at 62 (1995) (explaining that the growth of state-sponsors of terror justified "allowing suits in the federal courts against countries responsible for terrorist acts where Americans and/or their loved ones suffer injury or death at the hands of the terrorist states" and that the terrorism exception to the FSIA would "give American citizens an important economic and financial

---

[12] *Pitney Bowes*, is distinguishable on identical grounds.   25 F.3d at 72–73 (denying a motion to intervene as of right in an environmental lawsuit by a holder of a mortgage on property located within a Superfund site, in part, because permitting intervention would "jeopardize[e] a settlement agreement" and, additionally, due to the mortgage holder's failure to sufficiently show that it would be prejudiced absent intervention); *see also D'Amato*, 236 F.3d at 84; *Farmland Dairies*, 847 F.2d at 1044 (both denying intervention on similar grounds).

Nor is there great risk that granting Intervenors' motion to intervene would jeopardize the ability of the Court and the existing parties to reach a final resolution of the distribution of the funds by encouraging "waves" of additional intervenors.   *Yonkers Bd. of Educ.*, 801 F.2d at 596. As discussed above, Intervenors have filed a limited fund class action in which they seek to represent *all* of the victims Iran-sponsored terrorism.   As a result, Intervenors' motion to intervene does not implicate the Court's previously stated concern about opening up the floodgates to additional intervenors.   *See Peterson*, 290 F.R.D. 54 at 59 (cautioning that its decision granting a motion to intervene "should not give undue encouragement to other nonparty judgment creditors").

weapon against these outlaw states"). Granting Intervenors' intervention motion furthers that goal by permitting all of Iran's victims, rather than just a fortunate few, to obtain compensation.

Finally, punishing Intervenors for delay would be particularly inappropriate here. Intervenors were not aware until very recently about the pending litigation against Iran for its sponsorship of terrorist attacks and never received any notice from the military or any court about the ongoing litigation. Indeed, even today, it is likely that many of Iran's other victims continue to be in the dark about the possibility of obtaining justice from Iran.

Accordingly, Intervenors' motion to intervene as of right should be granted.

**B.      Permissive Intervention**

Even if this court denies Intervenors' motion to intervene as of right under Rule 24(a), it should grant their request for permissive intervention pursuant to Rule 24(b). Permissive intervention may be granted when an intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In analyzing Rule 24(b)(1), "the words claim or defense are not to be read in a technical sense, but only require some interest on the part of the applicant." *Dow Jones*, 161 F.R.D. at 254. A district court has "broad discretion" in deciding whether to grant permissive intervention. *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir. 1992). "The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Pitney Bowes*, 25 F.3d at 73 (quoting former Fed. R. Civ. P. 24(b)(2)).

Permissive intervention is warranted here because Intervenors seek to execute judgments against the same funds, arising out of the same events, and based on the same claims as the existing plaintiffs. Moreover, as previously explained, Intervenors' intervention motion is

timely.  Accordingly, if this court denies Intervenors' request to intervene as of right, it should

nonetheless grant their request for permissive intervention.

## V.     <u>CONCLUSION</u>

      For the reasons stated above, this Court should grant Intervenors' motion to intervene.

March 11, 2015                 Respectfully submitted,


                BY:    /s/   Douglas J. McNamara

                R. Joseph Barton
                jbarton@cohenmilstein.com
                Douglas J. McNamara
                dmcnamara@cohenmilstein.com
                COHEN MILSTEIN SELLERS & TOLL PLLC
                1100 New York Ave NW
                Suite 500
                Washington, DC 20005
                Telephone:  (202) 408-4600

                Daniel B. Rehns
                drehns@cohenmilstein.com
                COHEN MILSTEIN SELLERS & TOLL PLLC
                88 Pine Street
                14th Floor
                New York, NY 10005
                Telephone:  (202) 838-7797

                Theodore J. Leopold
                tleopold@cohenmilstein.com
                COHEN MILSTEIN SELLERS & TOLL PLLC
                2925 PGA Boulevard
                Suite 200
                Palm Beach Gardens, FL 33410
                Telephone:  (877) 515-7955

R. Paul Hart
paul@kmtrial.com
Jeremy S. McKenzie
jeremy@kmtrial.com
KARSMAN, MCKENZIE & HART
21 West Park Avenue
Savannah, Georgia 31401
Telephone:  (912) 335-4977

*Attorneys for Proposed Intervenors Relvas, Kees*
*& Boyd & Proposed Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2015, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which in turn sent notice to all counsel of record who are registered with that system.

/s/  *Douglas J. McNamara*