Steven G. Storch
Edward P. Dolido
Jeffrey Chubak
STORCH AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for Proposed Intervenor-Plaintiff
Jay Glenn*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), *et al.*,<br><br>      Plaintiff,<br><br> - against -<br><br>ISLAMIC REPUBLIC OF IRAN, *et al.*,<br><br>      Defendants. | Case No. 10-cv-4518 (KBF) |
| JAY GLENN,<br><br>      Intervenor-Plaintiff,<br><br> - against -<br><br>STANLEY SPORKIN, as Trustee of the Peterson § 468B Qualified Settlement Fund,<br><br>      Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF JAY GLENN'S
MOTION TO INTERVENE AND FOR ADDITIONAL RELIEF**

**TABLE OF CONTENTS**

**PAGE**

Table of Authorities ................................................................................................................. ii

PRELIMINARY STATEMENT .............................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 2

    I.    THE DC ACTION ................................................................................................ 2

    II.   THE DECLARATORY JUDGMENT ACTION AND PRIOR
          INTERVENTION MOTION .............................................................................. 4

    III.  THE INSTANT ACTION .................................................................................... 5

ARGUMENT ............................................................................................................................ 6

    I.    GLENN IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT ............. 6

        A.  Glenn's Motion is Timely .......................................................................... 7

        B.  Glenn Has a Direct, Financial Interest in the QSF Trust ........................... 9

        C.  Glenn's Interest Will Be Impaired if the Relief Sought Herein is Denied ........... 9

        D.  The Peterson Plaintiffs' Counsel in the Instant Action Cannot
             Adequately Represent Glenn .................................................................... 9

    II.   ALTERNATIVELY, PERMISSIVE INTERVENTION IS APPROPRIATE .............. 9

CONCLUSION ....................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*,
    386 U.S. 129 (1967) .................................................................................................... 6

*John v. Sotheby's, Inc.*,
    141 F.R.D. 29 (S.D.N.Y. 1992) .................................................................................. 6

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
    471 F.3d 377 (2d Cir. 2006) ....................................................................................... 7

*Peterson v. Islamic Republic of Iran*,
    264 F. Supp. 2d 46 (D.D.C. 2003) ............................................................................. 2

*Peterson v. Islamic Republic of Iran*,
    290 F.R.D. 54 (S.D.N.Y. 2013) ........................................................................... 7, 10

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) .................................................................................................... 9

*U. S. Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978) ....................................................................................... 6

**State Cases**

*Wolf v. Sherman*,
    682 A.2d 194 (D.C. App. 1996) ................................................................................. 9

**Statutes & Rules**

New York Judiciary Law § 475 ........................................................................................ 9

Federal Rules of Civil Procedure 24 ........................................................................ passim

Jay Glenn ("Glenn") respectfully submits this memorandum of law, together with his proposed Complaint in Intervention (the "Complaint") and the accompanying declaration of Steven G. Storch dated June 1, 2016 (the "Storch Decl."), in support of his motion for an order permitting him to intervene in this action pursuant to Fed. R. Civ. P. 24(a) and/or (b).

## PRELIMINARY STATEMENT

Glenn was counsel for 103 of the Peterson Plaintiffs and represented them in damages proceedings pursuant to which they were awarded judgments aggregating over $300 million, which judgments will imminently be satisfied, in part, from the Peterson §468B Qualified Settlement Fund (the "QSF Trust") established by this Court. By reason of having represented such plaintiffs pursuant to engagement agreements by which he is entitled to portions of any amounts collected on their judgments, Glenn has a charging lien against the respective portions of the QSF Trust allocated to such plaintiffs.

Accordingly, by this motion, Glenn seeks to intervene in this action to protect his interest in the QSF Trust and to secure the fees to which he is contractually entitled. Importantly, the fees to which Glenn is entitled are a subset of the fees claimed by lead counsel Thomas Fay and Steven Perles (sometimes acting as "Fay & Perles") and, therefore, granting him leave to intervene to assert the claim set forth in his accompanying Complaint in Intervention should not reduce or delay the amounts otherwise to be distributed to the individual plaintiffs from the QSF Trust. Further, intervention for this purpose is required by the terms of this Court's July 9, 2013, Order (Dkt. No. 462) inasmuch as that Order prohibits any claim from being asserted against the QSF Trust in any other jurisdiction or tribunal (*id.* ¶ 10) and resolving Glenn's entitlement to his fees in this action will serve the interests of judicial economy by avoiding a multiplicity of proceedings.

1

**Factual Background**

I.  **THE DC ACTION**

Thomas Fortune Fay and Steven R. Perles (acting through their respective firms) served as lead counsel for certain plaintiffs in the action brought in the United States District Court for the District of Columbia to seek redress on behalf of the Marines injured or killed (and their respective families) in the suicide bombing of the Marine Barracks in Beirut, Lebanon, on October 23, 1983. *Peterson, et al., v. Islamic Republic of Iran, et al.*, Case No. 01-cv-2094 (D. D.C.) (as consolidated, the "DC Action").  By Order in the DC Action dated May 30, 2003, United States District Judge Royce C. Lamberth entered default judgments in favor of plaintiffs as to all issues of liability and Ordered that Special Masters would be appointed to assess and report on damages to be awarded to the respective individual plaintiffs.  Storch Decl. Exhibit 1; *see also Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46 (D.D.C. 2003) (accompanying memorandum opinion).

Thereafter, Thomas Fay and Steven Perles, acting as "The Law Offices of Fay & Perles" (hereinafter, "Fay & Perles") retained Glenn to represent individual plaintiffs "in the prosecution of [plaintiffs'] claims for compensatory damages," including being "responsible for preparation of all witnesses for hearing, presentation of all evidence to the Court or Special Master and presentation of all records and medical reports to the Court."  *See* the engagement agreement (the "Glenn Engagement Agreement") annexed as Exhibit A to his proposed Complaint.

Fay & Perles represented in the Glenn Engagement Agreement that each family that had retained them had executed a contingent agreement [sic] providing for attorneys' fees consisting of 33 1/3% of the total gross recovery before deduction of any fees, liens or charges of any type and an amount equal to the necessary expenses incurred.  The Glenn Engagement Agreement provided that Glenn "shall be paid a fee consisting of the following: (1) 3% of the gross amount collected from the Defendants with respect to compensatory damages as to each client referred to

[Glenn]; and (2) an amount equal to the necessary expenses incurred by [Glenn] in the preparation, prosecution and administration of the case. This fee is contingent upon collection and to the extent of collection only."

Fay & Perles thereafter referred 63 clients to Glenn and Glenn prosecuted their claims for damages before the Special Master. Those clients are identified on Exhibit B to the Complaint and were, as a result of Glenn's efforts, awarded aggregate damages of $197,991,881 as memorialized in the judgment entered in the DC Action on September 7, 2007. Storch Decl. Exhibit 2.

During the course of representing those 63 plaintiffs, Glenn identified an additional 40 potential plaintiffs who were not represented in the DC Action. Thomas Fay told Glenn that if he referred such potential plaintiffs to Fay & Perles, Glenn would receive one-third of the fees those clients would pay. (Complaint ¶ 10.) In reliance upon that promise, Glenn had such new clients execute Fay & Perles' standard engagement agreement and, in most if not all cases, Glenn executed the engagement agreement on behalf of Fay & Perles and also executed it individually as well. *Id.* Glenn was fully authorized to execute the engagement agreements on behalf of Fay & Perles. *Id.* The clients expressly agreed that Glenn was entitled to one-third of the contingent fees due to Fay & Perles. *Id..* Glenn's 40 clients that he referred to Fay & Perles in this manner are identified on Exhibit C to his Complaint.

Glenn thereafter prosecuted the damages claims on behalf of the 40 plaintiffs identified on Exhibit C to his Complaint and, due to his efforts, they were awarded an aggregate of approximately $111,750,000 in damages as memorialized in the judgment entered in the DC Action on September 7, 2007. Storch Decl. Exhibit 2.

Immediately after the Special Master issued a report and recommendation as to the damages sustained by each of the 103 plaintiffs Glenn represented, Glenn forwarded the report to

3

Fay & Perles together with his computation as to the amount that would be due to Glenn if and when the plaintiff collected in full upon his or her such judgment. Fay & Perles never objected to or disputed Glenn's fee calculations. *See* Complaint ¶ 13.

Pursuant to his fee agreements, if the 103 plaintiffs he represented in the DC Action fully collect their judgments, Glenn will be owed $22,263,181.43. Glenn has not been paid any part of the fees due him with respect to the 103 plaintiffs he represented in the DC Action and has incurred $15,288.56 in unreimbursed out-of-pocket expenses incurred in connection with his representation of those plaintiffs. Complaint ¶¶ 9, 12, 15, 20.

On June 1, 2016, Glenn filed and served via ECF an Amended Notice of Charging Lien in the DC Action. Complaint ¶ 16 and Exhibit D thereto.

## II. THE DECLARATORY JUDGMENT ACTION AND PRIOR INTERVENTION MOTION

In or about March 2010—approximately two-and-one-half years after the judgment was entered in favor of Glenn's clients in the DC Action, Thomas Fay told Glenn that Fay & Perles would not honor the agreement to pay him 3% of the judgments collected by the 103 plaintiffs he represented in the DC Action and the agreement to pay him 11.111% (*i.e.*, one-third of the one-third fee that Fay & Perles would receive) of the judgments that 40 of those 103 plaintiffs collected. *See* Complaint ¶ 14.

On November 3, 2010, Glenn commenced an action in this Court (the "Declaratory Judgment Action") against Fay & Perles, Thomas Fay, Steven Perles, Allen L. Rothenberg, and Anthony J. LaSpada seeking a declaratory judgment affirming Glenn's charging lien on any recovery by the 103 plaintiffs he represented in the DC Action. On July 29, 2011, that action was dismissed, without prejudice, on jurisdictional and venue grounds because, at that point, the QSF Trust had not yet been created and funded (nor had this Court's July 9, 2013, "Turnover Judgment"

4

(Dkt. No. 462) awarding plaintiffs the assets held in the QSF Trust been issued). Therefore, there was no *res* upon which the charging lien could attach nor any basis for *in rem* jurisdiction. *See* Storch Decl. Exhibit 3 at pp. 13-15.

On March 22, 2011, Glenn sought to intervene in the miscellaneous proceeding related to this action (18-mc-302 (BSJ)) to ensure that assets remained in this jurisdiction sufficient to satisfy the lien he sought to have declared in his Declaratory Judgment Action. However, that motion was denied on various grounds by Order of the Honorable Barbara S. Jones, entered November 7, 2011 (Dkt. No. 145), including because the Declaratory Judgment Action had already been dismissed, and because, at that point, there had not yet been any recovery on behalf of the Peterson Plaintiffs. Therefore, the Court found that Glenn's interests were still being adequately represented by the Peterson Plaintiffs. *See* Storch Decl. Exhibit 4 at pp. 4-5.

### III. THE INSTANT ACTION

By Order entered on July 9, 2013 (Dkt. No. 460), this Court created the QSF Trust for purposes of holding funds belonging to the defendants in the DC Action and ultimately distributing them to judgment creditors including the 103 plaintiffs Glenn represented in the DC Action. By Order dated July 9, 2013 (Dkt. No. 462), this Court entered a judgment (the "Turnover Judgment") in favor of the plaintiffs (including the 103 plaintiffs represented by Glenn in the DC Action) awarding them the assets held in the QSF Trust and enjoining them from pursuing any claim to those assets in any other jurisdiction.

On May 24, 2016, after the Second Circuit's decision affirming the Turnover Judgment was affirmed by the Supreme Court, and the mandate was issued (Dkt.No. 616), counsel for the Peterson Plaintiffs in this action filed a letter motion for an order directing the distribution of the QSF Trust "in accordance with the terms of the Cooperation Agreement and in writing and in written agreements between the Plaintiffs and other judgment creditors of Iran." (Dkt. No. 617.)

On May 26, 2016, Glenn filed a letter with the Court opposing the letter motion seeking distribution of the funds in the QSF Trust on the grounds that his interests had diverged from that of counsel representing the Peterson Plaintiffs because any distribution to such plaintiffs and their counsel herein, before his charging lien was enforced, would destroy his ability to enforce his charging lien (ECF No. 625). He specifically stated that as long as an amount sufficient to pay his fees and expenses was withheld from distribution to Fay & Perla (and their associated counsel), he had no objection to the remainder being promptly distributed to plaintiffs. *Id.*

This motion to intervene followed.

## ARGUMENT

### I.  GLENN IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT

Fed. R. Civ. P. 24(a)(2) provides:

> [T]he court must permit anyone to intervene who … claims an interest relating to the property … that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Second Circuit has held that Fed. R. Civ. P. 24(a) should be construed liberally. *U. S. Postal Serv. v. Brennan*, 579 F.2d 188, 193 n.2 (2d Cir. 1978) ("The policy of liberalizing the right to intervene … is reflected in the change of language of Rule 24(a) in 1966"). In addition, courts have held that intervention as of right is particularly appropriate in an interpleader action, such as this effectively is, because "a traditional basis for intervention [as of right] derives from interpleader practice; when a number of persons possess claims to a fund which are or may be mutually exclusive, intervention is allowed by a claimant." *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 146 (1967); *see also John v. Sotheby's, Inc.*, 141 F.R.D. 29, 34-35 (S.D.N.Y. 1992).

To intervene as a matter of right under Fed. R. Civ. P. 24(a)(2), a party must demonstrate:

6

   (a) the application is timely;

   (b) it claims "an interest relating to the property … which is the subject matter of the action;"

   (c) it is situated such that "disposition of the action may, as a practical matter, impair or impede [its] ability to protect [its] interests;" and

   (d) its interest is "not adequately protected by an existing party."

*Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 57 (S.D.N.Y. 2013) (the "*Wultz Decision*") (citations omitted).

  For the reasons set forth below, Glenn satisfies each of the foregoing requirements.

  **A.** **Glenn's Motion is Timely**

  The timeliness of an intervention is a matter left to the district court's discretion. In determining timeliness, a court may consider, *inter alia*:

   (a) "the length of time the applicant knew or should have known of its interest before making the motion,"

   (b) "prejudice to the existing parties resulting from the applicant's delay;"

   (c) "prejudice to the applicant if the motion is denied;" and

   (d) "the presence of unusual circumstances militating for or against a finding of timeliness."

*Wultz Decision*, 290 F.R.D. at 57 (citing *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006)). All of these factors favor intervention here.

  As noted above, Glenn has long tried to assert his interest in the assets that are now held in the QSF Trust but those attempts had been rebuffed in large part because they were premature before the QSF Trust was created and the Turnover Judgment entered. *See* Storch Decl. Exhibit 3 (holding that there was not yet any *res* to support *in rem* jurisdiction) and Storch Decl. Exhibit 4 at pp. 4-5 (holding that with the dismissal of his Declaratory Judgment Action in Storch Decl. Exhibit 3, "the underlying rationale for Glenn's application to intervene . . . no longer exists"),

and Storch Decl. Exhibit 4 at p. 4 (holding that until the Peterson Plaintiffs recovered in this action, Glenn's interest was aligned with theirs and, therefore, was adequately being represented).[1]

Even after the Turnover Judgment was entered, until it was affirmed by the Supreme Court, there was no assurance that it would be upheld and that the QSF Trust would in fact constitute a "recovery" on behalf of the plaintiffs that Glenn represented and from which he is entitled to his contingent fees. Once the Supreme Court affirmed the Turnover Judgment and the Second Circuit's mandate issued on May 24, 2016, Glenn moved quickly to intervene.

Nor is there any prejudice to any party from the lapse of one-week before seeking to intervene as this Court has not yet ordered any distributions from the QSF Trust. Indeed, even apart from issues of timeliness, there is no prejudice—and in fact there is benefit—to the parties from the intervention motion itself. Glenn's proposed Complaint in Intervention does not seek to diminish or delay distribution of funds to the plaintiffs themselves, but only to adjudicate his claim with respect to the portion of the QSF Trust that would otherwise be distributed to their counsel. Moreover, such counsel would actually benefit from Glenn's intervention as it would enable Glenn's entitlement to his fees to be resolved quickly in this action, where there are funds to satisfy it, instead of having to litigate the issue less efficiently in separate actions where the result potentially would be personal judgments against the counsel that received distributions from the QSF Trust.

For the same reason that intervention would benefit the other counsel who are obligated to share their fees with Glenn, denial of his motion would prejudice Glenn because distribution of

---

[1] In the Order denying Glenn's motion to intervene prior to entry of the Turnover Judgment, Judge Jones also held that his application was untimely when measured from Fay & Perla's statement that Glenn would not receive all the money due to him if the Peterson Plaintiffs collected their judgment. Storch Exhibit 4 at p. 3. However, as discussed in the text, that is no longer the appropriate point from which to measure timeliness after entry and affirmance of the Turnover Judgment.

the QSF Trust would evade his charging lien, and compel him to bring separate actions to obtain personal judgments which may not be easily enforceable.

### B. Glenn Has a Direct, Financial Interest in the QSF Trust

Glenn has a direct financial interest in the property to be distributed by the QSF Trust by virtue of his contingency fee arrangement and the resulting judgment entered in favor of his clients. Under both New York law (Judiciary Law § 475) and District of Columbia law (*see, e.g., Wolf v. Sherman*, 682 A.2d 194 (D.C. App. 1996)) those facts give rise to a charging lien against his clients' respective shares of the QSF Trust.

### C. Glenn's Interest Will be Impaired if the Relief Sought Herein is Denied

As noted above, denial of Glenn's motion to intervene will deny him access to the funds in the QSF Trust against which his charging lien attaches and thereby impair his ability to collect the fees and expenses to which he is contractually entitled.

### D. The Peterson Plaintiffs' Counsel in the Instant Action Cannot Adequately Represent Glenn

An intervenor's burden of showing its interests may not be adequately represented is, generally speaking, "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Glenn easily meets this burden. The Peterson Plaintiffs' counsel in the instant action cannot adequately represent Glenn because, as alleged in his Complaint (at ¶ 14), they have already denied his entitlement to the fees and expenses to which he is entitled by contract. They have no incentive to protect his interests because denial of his right to fees means "a bigger slice of the pie" for them.

## II. ALTERNATIVELY, PERMISSIVE INTERVENTION IS APPROPRIATE

Alternatively, Glenn should be permitted to intervene under Rule 24(b), which provides that "the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact," subject to the limitation that "[i]n exercising its

9

discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

In evaluating requests to intervene under Rule 24(b), courts typically consider the same four factors that apply to requests to intervene as of right under Rule 24(a). *Wultz Decision*, 290 F.R.D. at 57 (citations omitted).

The reasons supporting Glenn's request to intervene as of right also supports his request to intervene permissively under Rule 24(b). The amount sought by Glenn will not impact distributions to the Peterson Plaintiffs, only their counsel. Moreover, as noted above, Glenn's interests would be significantly prejudiced without the relief sought herein and he cannot be adequately represented by the Peterson Plaintiffs' counsel in the instant action.

## CONCLUSION

For the foregoing reasons, this Court should grant Glenn's motion and permit him to intervene while directing the Trustee of the QSF Trust to hold sufficient funds to satisfy Glenn's charging lien until Glenn's entitlement to those funds is determined.

Dated: New York, New York
       June 1, 2016

                                                                                                                STORCH AMINI & MUNVES PC

                                                                                                                By: /s/Steven G. Storch
                                                                                                                   Steven G. Storch
                                                                                                                   Edward P. Dolido
                                                                                                                   Jeffrey Chubak
                                                                                                140 East 45th Street, 25th Floor
                                                                                                 New York, New York 10017
                                                                                                 (212) 490-4100
                                                                                                 Fax: (212) 490-4208
                                                                                                 sstorch@samlegal.com

                                                                                      *Attorneys for Proposed Intervenor-Plaintiff Jay Glenn*