

Brookfield Place
200 Vesey Street, 20th Floor
New York, New York 10281
Telephone: 212-415-8600
Fax: 212-303-2754
www.lockelord.com

Attorneys & Counselors

Shalom Jacob
Direct Telephone: (212) 415-8618
sjacob@lockelord.com

January 13, 2017

**BY ECF:**

Honorable Katherine B. Forrest
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York  10007-1312

    Re:    <u>Peterson v. Islamic Republic of Iran, 10 Civ. 4518 (KBF)</u>

Dear Judge Forrest:

    We represent Retired Judge Stanley Sporkin, who was appointed by Your Honor as Trustee of the Peterson § 468B Fund pursuant to 26 U.S.C. § 468B (the "Peterson Fund"). We are writing to provide the Court with an update on the status of distributions from the Peterson Fund pursuant to Your Honor's request made on November 21, 2016.

    As explained below, the Peterson Fund has made distributions and payments in excess of $1.1 billion to Plaintiffs, attorneys and other parties and these distributions and payments are continuing on a weekly basis. The Trustee is pleased with the status and continuing progress being made in connection with the first round of distributions and anticipates commencing a second round of smaller distributions during the second and/or third quarters of 2017.

A.    <u>Summary of Distribution Status</u>

    As we explained in our letter to the Court dated November 18, 2016 (ECF 689), payment of the initial distribution to the Plaintiffs commenced on October 19, 2016. As we also explained, distributions from the Peterson Fund are based upon a Confidential Disbursement Authorization form ("CDA") which contains all of the necessary information regarding, among other things, the funds available for distribution, net of

Honorable Katherine B. Forrest
January 13, 2017
Page 2

attorneys' fees, expenses and reserves, the amount payable to each Plaintiff and other appropriate information and disclosures. In order for a Plaintiff to participate in the distribution, he or she must return a properly completed and signed CDA to the Trustee's distribution administrator, Epiq Class Action & Claim Solutions ("Epiq"). The returned CDA is then reviewed to make sure that it is complete, that it was executed by the appropriate party and that any required additional documents have been provided. Upon completion of this review, each complete CDA is approved and added to the payment roster for the following week's distributions.[1]

As explained below, the initial distributions to the non-Peterson plaintiffs entitled to share in approximately 13 percent of plaintiff recoveries pursuant to the Litigation Cooperation and Settlement Agreement, dated June 1, 2012 (referred to as the "13% Plaintiffs") are virtually complete, and more than 73 percent of the Peterson Plaintiffs have received their initial distributions.

Distributions to Plaintiffs are continuing on a weekly basis and the Trustee anticipates that at least 100 to 150 of the remaining approximately 390 initial distribution payments will be made during the next 30 to 60 days as the Trustee continues to resolve various Plaintiff-specific issues and receive and approve additional CDA's.

According to the Trustee's estimates, total payments to Plaintiffs in this initial round of distributions will constitute approximately 93 percent of the total amounts that the Trustee anticipates will be available for payment to the Plaintiffs. The remaining funds have been held as various reserves established by the Trustee (the "Reserves"), pursuant to this Court's order dated June 6, 2016 Authorizing Distribution of Funds ("ECF 651").[2] As explained below, the Trustee anticipates distribution to the Plaintiffs of a significant portion of the amounts held in these Reserves during the second and/or third quarters of 2017.

The attorneys for the 13% Plaintiffs have received most of their attorneys' fees. In November, 2016, the Trustee also authorized and has substantially completed payment of a $250 million interim distribution of fees to the attorneys who provided services, directly or indirectly, for the Peterson Plaintiffs. Although, as explained below, significant issues remain unresolved with respect to fees owing to many of these attorneys, the Trustee anticipates proposing a second interim distribution of attorneys' fees to these attorneys during the first quarter of 2017.

---

[1] If a CDA is deemed incomplete, the Plaintiff will be contacted by Epiq and advised what information or documents are required for the CDA to be approved.
[2] The Trustee estimates that the funds held in the Reserves will constitute approximately 6 or 7% of the total amount that will eventually be distributed to most of the Plaintiffs, assuming that substantially all of the funds held in the Reserves become available for distribution.

Honorable Katherine B. Forrest
January 13, 2017
Page 3

B.   Distributions to the 13% Plaintiffs

As of this date, all of the 113 CDA's mailed to the 13% Plaintiffs have been returned to Epiq and the Plaintiffs who returned 112 of these CDA's have received their initial distributions totaling $204,434,095, representing approximately 99.7 percent of the initial distributions payable to the 13% Plaintiffs. This amount also includes payments to attorneys for the 13% Plaintiffs but does not include approximately $22,963,316 currently held by the Trustee as the result of a dispute between certain parties.[3]

The Trustee currently anticipates that, barring any unexpected developments, the majority of the funds set aside as Reserves specifically for the 13% Plaintiffs will be made available for distribution prior to June 30, 2017.

C.   Distributions to the Peterson Plaintiffs

As of this date, CDA's have been mailed to 1,374 of the total 1,417 Peterson Plaintiffs. Also, as of this date, 1,266 of these CDA's have been returned to Epiq and payment in the amount of $680,342,679 has been made on account of 1,027 of these CDA's, representing approximately 73 percent of the amounts payable to the Peterson Plaintiffs in the initial distribution. It is anticipated that at least an additional 100 of the Peterson Plaintiffs will receive their initial distributions in the ordinary course in the next 30 to 60 days.

Payments to the Peterson Plaintiffs on account of the other CDA's, however, may take additional time as a result of individual issues that must be resolved as to these Plaintiffs. Most of the CDA's for which payments are delayed involve one or more of the following issues:

> i.   **Incomplete CDA's.** At the present time, 91 CDA's returned to Epiq are incomplete. Epiq is in the process of working with these Plaintiffs to complete these CDA's.
>
> ii.  **Advance Company Issues.** Approximately 261 of the Peterson Plaintiffs assigned specified portions of their judgments to one or more of approximately six advance companies in exchange for a cash advance. The agreements governing these assignments (the "Assignment Agreements") provide that one or more of the advance

---

[3] This dispute is pending before the New York State Supreme Court, Nassau County and it is at the present time unclear who is entitled to receive these funds.

companies has priority to receive payment of a specified amount from each assignor's distribution.

The CDA's for Plaintiffs who entered into Assignment Agreements required, among other things, additional calculations by the Trustee's accountants and Epiq[4], review of certain complex documents and drafting and insertion of a supplemental section that details the impact of the assignment upon each Plaintiff's distribution and requests that each Plaintiff confirm the amount owed to the relevant advance company (or companies) and either consent to payment thereof or provide the basis for any objection to payment. In certain cases, the Plaintiff's distribution exceeds the amount owed to the advance company and therefore must be divided between the assignment company and the Plaintiff assignor. In other cases, however, the amount owed to the advance company exceeds the amount of Plaintiff's initial distribution.

The mailing of these CDA's did not commence until November, 2016, and a number of these CDA's have not yet been returned to Epiq. The Trustee anticipates that many of these payments will be made in the ordinary course during the next 60 to 90 days. However, some of these payments may be delayed as a result of Plaintiffs who do not return their CDA's and/or are asserting a dispute regarding the calculation of payments to the assignment companies and/or challenging the right of the assignment company to receive payment. The Trustee's professionals are working with these Plaintiffs and the advance companies to determine whether these issues and disputes can be easily resolved.[5]

iii. <u>Estates</u>. More than 400 of the Peterson Plaintiffs are estates of victims of the Beirut bombing or estates of relatives of the victims who have died since becoming Plaintiffs in these actions. The distributions to estates involve certain unique issues and complications arising from the passage of time and the different probate

---

[4] To date, these calculations and the verification process have resulted in credits being made to or available for Plaintiffs of almost $1 million.

[5] Some of the advance companies have advised the Trustee that they may commence judicial or arbitration proceedings in connection with objections asserted by Plaintiffs. The Trustee's participation in any such proceedings may be necessary in order to foster an expeditious resolution.

rules that govern each jurisdiction, including the lack of a currently qualified personal representative or inadequate estate documents, the identity of the appropriate payee(s) in intestacy situations and limitations imposed by law on the authority of a personal representative to receive funds. North Carolina has the largest number of estates and issues primarily due to rules governing the disposition of wrongful death proceeds that are different and more complicated than most other jurisdictions. The Trustee has placed special emphasis on estates in order to make sure that these payments are made correctly.

As of today, approximately 310 estates have returned their CDA's and 215 of these estates have received payment of their initial distributions. The Trustee anticipates that at least an additional 100 estates will receive their interim distribution payments within the next 30 to 60 days. The Trustee is working with the appropriate parties to address any outstanding issues necessary to facilitate payment of the initial distributions to the remaining estates.[6]

    iv.   **Bankruptcy Filings**. Approximately 55 of the Peterson Plaintiffs have sought bankruptcy relief at some time, and most of these Plaintiffs did not list a judgment or claim for damages relating to the Beirut bombing as an asset of their bankruptcy estate (and may not have realized that they may have had an obligation to do so). Under applicable bankruptcy laws, all or part of these Plaintiffs' distributions may be subject to a claim by the trustee in their respective bankruptcy case that the distribution is property of the bankruptcy estate. The facts relating to these Plaintiffs vary widely. Some of these cases are currently open while others have already been closed. In certain of the bankruptcy cases it is relatively clear that the bankruptcy trustee lacks a colorable claim to any part of the Plaintiff's distribution. In other cases, however, the bankruptcy trustee may have such a claim. The Trustee is assisting the Plaintiffs, their bankruptcy attorneys and/or other parties to take the actions necessary to remove obstacles to payment to the remaining Plaintiffs who have unresolved bankruptcy issues. As of

---

[6] The Trustee may, at some point, determine that it is necessary to appear and/or participate in proceedings in order to expedite resolution of these or other issues.

Honorable Katherine B. Forrest
January 13, 2017
Page 6

      today, approximately half of these Plaintiffs' distributions have been resolved and released.[7]

      v.    <u>Disputes</u>. Several Plaintiffs are involved in family or other disputes which have resulted in their distributions being withheld pursuant to a court order or otherwise. The Trustee has responded to requests from certain parties involved in these disputes to make sure that any amounts not genuinely subject to dispute are made available for distribution.

In sum, distributions to the Peterson Plaintiffs are continuing on a weekly basis and, as noted above, the Trustee anticipates continued further progress.

The Trustee has commenced the analyses necessary to prepare for a second round of distributions to the Peterson Plaintiffs from the Peterson Reserves. The Trustee currently anticipates that the second round of distributions to the Peterson Plaintiffs will commence sometime during the second or third quarter of 2017.

D.    <u>Payments to Attorneys and Lobbyists for the Peterson Plaintiffs</u>

On or about November 24, 2016, the Trustee approved and has since substantially completed payment in the aggregate amount of $250 million to attorneys who provided services, directly or indirectly, to the Peterson Plaintiffs (the "Peterson Attorneys"). This constitutes almost 50 percent of the fees payable to these attorneys before additional amounts that may become available upon distribution of any Reserves. The Trustee received the consent of the attorneys to remit this payment to all of the Peterson Attorneys on a pro rata basis.

The Trustee has addressed some of the issues identified in our November 18, 2016 letter to the Court relating to these attorneys' fees, including satisfaction of disclosed liens asserted by lenders against certain attorneys. However, significant issues remain unresolved regarding the payment of fees to many of the Peterson Attorneys. The Trustee is currently analyzing how much can be made available for distribution to these attorneys prior to resolution of these issues.

As we have previously advised the Court, the fees owing to these attorneys are governed by more than 1,400 engagement agreements and numerous other agreements that relate to payment of fees to the Peterson Attorneys. Many of these agreements have been the subject of intense factual and legal disputes between certain

---

[7] It may at some point become necessary for the Trustee to formally appear in some of these bankruptcy proceedings in order to assist the relevant Plaintiffs in resolving obstacles to receiving their distributions.

attorneys arising from, among other things, alleged ambiguous provisions, partially unexecuted agreements, missing engagement agreements, amounts owed to certain attorneys who were terminated, referral fee provisions that are in certain cases allegedly unclear and may not be enforceable, alleged conflicts of interest and whether the lien rights of certain attorneys entitle them to priority over payments made to other attorneys. Further, certain of the attorneys do not agree as to which of the trial attorneys should share in covering the fees incurred by certain enforcement attorneys. In addition, there appears to be a question whether certain of the attorneys had authority to enter into certain agreements, which may raise ethical issues.[8]

The parties to these disputes have held settlement discussions but thus far the majority of the disputes remain unresolved. The Trustee is currently in the process of analyzing the various issues, positions and agreements and communicating with the attorneys involved in the disputes in a continued effort to resolve as many issues as possible. The Trustee anticipates proposing a second interim distribution of fees to the Peterson Attorneys within the next 30 to 45 days, assuming appropriate cooperation from all of these attorneys.[9]

The Trustee has also made payments in excess of $30 million to lobbyists and other professionals who performed work for the Peterson Plaintiffs in connection with these cases. The Trustee anticipates that payment of these obligations will continue in the ordinary course.

* * * * * *

The Trustee is pleased with the progress of the distributions and payments to date, and anticipates continued progress in the coming weeks and months as he prepares for a second round of distributions to the Plaintiffs and attorneys. The Trustee may seek approval from the Court for authority to initiate or participate in litigation and/or other proceedings in order to facilitate resolution of one or more of the unresolved issues or disputes referred to above.

---

[8] In addition, certain Plaintiffs have informed the Trustee that one of the trial counsel in the Peterson cases has undertaken another representation that allegedly constitutes a conflict of interest with his role in the Peterson cases and has requested that the Trustee withhold some of his fees in these cases until this matter can be resolved.

[9] The Trustee is also analyzing whether payment of a second interim distribution of attorneys' fees requires the consent of some or all of the attorneys absent a resolution of the disputes. If the Trustee is unable to resolve some or all of the disputes, he may have no alternative but to commence or otherwise participate in judicial, arbitration or other proceedings. Although, as noted previously, some or all of these disputes may be the subject of an arbitration clause, the Trustee continues to seek to facilitate a resolution of at least some of the issues in order to minimize the likely delay in payment to all or most of the Peterson Attorneys that would almost certainly ensue if these disputes were to become the subject of formal proceedings.

Honorable Katherine B. Forrest
January 13, 2017
Page 8

    If the Court has any questions regarding any of the foregoing issues, the Trustee will of course respond expeditiously in order to assist the Court in addressing such issues.

                                                       Respectfully submitted,

                                                       Shalom Jacob

SJ:ma

837894v.1