UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
:
DEBORAH D. PETERSON, Personal               :
Representative of the Estate of James C. Knipple  :
(Dec.), et al.,                             :
                    Plaintiffs,             :   10 Civ. 4518 (KBF)
                                            :
            -v-                             :
                                            :
ISLAMIC REPUBLIC OF IRAN, et al.,           :
                                            :
                    Defendants.             :
---------------------------------------------------------------------X

## LAWYER ANNIE KAPLAN'S PARTIAL OPPOSITION TO THE MOTION FOR DISBURSEMENT OF REMAINING FUNDS, AND HER REQUEST TO WITHHOLD $10 MILLION

Lawyer Annie Pennock Kaplan submits this Memorandum of Law in partial opposition to the Motion "Requesting Order Directed to Trustee Regarding Disbursement of Remaining Qualified Settlement Funds" (ECF 727) (the "Motion"), and to request that the Trustee withhold $10 million from any disbursement of attorneys' fees to her former co-counsel Thomas Fortune Fay, pending resolution of an action pending in the Superior Court of the District of Columbia. Ms. Kaplan holds a charging lien on those funds, and she and Mr. Fay previously agreed in writing that $10 million would be her share of the *Peterson* attorneys' fees.[1]

---

[1] Ms. Kaplan requests that this filing be treated as an "application," as described in the Court's May 17, 2017 Order, or as a motion to sequester the funds referenced herein. Ms. Kaplan has no objection to the Court's appointing a Special Master.

**INTRODUCTION**

Ms. Kaplan was counsel of record for the plaintiffs in this action. Her efforts were instrumental to the plaintiffs' favorable outcome. She represented the plaintiffs alongside Mr. Fay at their eponymous law firm, Fay Kaplan Law, P.A.

Ms. Kaplan and Mr. Fay parted ways on December 1, 2015, after the Second Circuit had affirmed this Court's judgment. Mr. Fay renamed the law firm "Fay Law Group, P.A." He then, without informing Ms. Kaplan, obtained from the Qualified Settlement Fund ("QSF") a personal distribution of $67.2 million in attorneys' fees. Ms. Kaplan has received no attorneys' fees for her years of work.

In his Motion, Mr. Fay seeks to increase his own attorneys' fees to $134.3 million, while effectively denying Ms. Kaplan any compensation for her years of work on plaintiffs' behalf. Ms. Kaplan does not oppose distribution of attorneys' fees to her former colleague Mr. Fay. *Ms. Kaplan respectfully requests, however, that the Trustee continue holding $10 million of the $67 million that otherwise would be distributed to Mr. Fay.* As counsel of record, Ms. Kaplan possesses an attorneys' charging lien on those funds. The amount of her lien is beyond reasonable dispute: in 2015, Mr. Fay and Ms. Kaplan agreed in writing that Ms. Kaplan is entitled to $10 million of the attorneys' fees from the QSF. Unfortunately, Mr. Fay and Ms. Kaplan are now litigating that agreement in the District of Columbia (with discovery set to close on September 11).

The Trustee's continuing to hold $10 million that otherwise would be distributed to Mr. Fay is warranted because of Ms. Kaplan's charging lien, and to preserve the *status quo* pending resolution of the District of Columbia action. Mr. Fay dissipated his prior, $67.2 million distribution, and he has refused Ms. Kaplan's reasonable request that he escrow from any future distribution the $10 million he previously agreed in writing would be Ms. Kaplan's share.

Accordingly, Ms. Kaplan respectfully requests that the Motion be denied in part as to $10 million that otherwise would be distributed to Mr. Fay, or, alternatively, that the Court defer ruling pending resolution of the District of Columbia action.

## BACKGROUND

### A.     Annie Kaplan

Annie Kaplan is a graduate of Hofstra University and New York Law School with more than 30 years of litigation experience. Ex. A (Kaplan Decl.) ¶ 1. She has represented clients in more than 30 jury trials, and she has served as an officer or on the board of governors of the Pennsylvania, Maryland, and District of Columbia Trial Lawyers Associations. *Id.* She is a member of the bars of New York and this Court (among others). *Id.*

### B.     Ms. Kaplan's Efforts as Counsel of Record for Plaintiffs

From 2008 through 2015, Ms. Kaplan and Mr. Fay, from their Washington, D.C. law firm Fay Kaplan Law, P.A., represented plaintiffs in this and related actions, along with other members of the *Peterson* enforcement team. *Id.* at ¶ 2. For example, when the defendants sought to lift the restraints on their assets in 2008, Ms. Kaplan appeared in this Court for motions hearings and status conferences. *Id.* at ¶ 3. She helped formulate the plaintiffs' legal strategy in response to the defendants' filings. *Id.*

In 2009, she traveled to North Carolina and New York to take depositions of approximately 15 surviving marines and their family members. *Id.* at ¶ 4. She also took action to restrain defendants' assets, serving notices of *lis pendens* on Citibank and Clearstream on behalf of the *Bonk* and *Valore* plaintiffs, who are sharing in the *Peterson* recovery. Ex. B (*Bonk* Notice of *Lis*

*Pendens*) & Ex. C (*Valore* Notice of *Lis Pendens*).[2]  Ms. Kaplan also represented the *Bonk* and *Valore* plaintiffs when they were named as third-party defendants in a related action, *Levin v. Bank of New York*, No. 09-cv-5900 (S.D.N.Y.).  Ex. D (Notice of Appearance of A. Kaplan).

When the effort to enforce judgments against Iran turned political, Ms. Kaplan represented the *Peterson* plaintiffs in dealings with Congress.  Ex. A (Kaplan Decl.) ¶ 6.  She accompanied her clients to meetings with members of Congress, organized events in Washington to promote their claims, and with Mr. Fay hosted a fundraiser for Senator Harry Reid at a time when they were discussing with Senator Reid's staff proposed changes to the Federal Sovereign Immunity Act.  *Id*.

In 2012, Ms. Kaplan on behalf of her clients helped negotiate the cooperation agreement to share the assets restrained in *Peterson*.  *Id.* at ¶ 7.  She spent significant time advising her clients in connection with that agreement.  *Id.*  She also attended multiple meetings in New York to help negotiate the terms and language that all of the plaintiff groups' different counsel ultimately approved.  *Id*.

When defendants appealed the judgment against them, Ms. Kaplan attended oral argument before the Second Circuit along with co-counsel.  *Id.* at ¶ 8.  When defendants petitioned the Supreme Court for certiorari, she coordinated an effort to identify amici and persuade them to file amicus briefs.  *Id.*  These are but examples of Ms. Kaplan's legal work over seven years on behalf of plaintiffs in this action. [3]

---

[2] The actions in which the notices of *lis pendens* were filed are *Catherine Bonk, et al. v. Islamic Republic of Iran*, et al., No. 09-mc-00693 (E.D.N.Y.) and *Terrance J. Valore, et al. v. Islamic Republic of Iran, et al.*, No. 09-mc-00694 (E.D.N.Y.).

[3] Ms. Kaplan no longer has access to the files of her former law firm.  Those files should contain documentary evidence of her work on behalf of plaintiffs who are sharing in the *Peterson* recovery.

### C.  Ms. Kaplan and Mr. Fay Part Ways and Agree on Her $10 Million Share

In late 2015, more than a year after the Second Circuit had affirmed this Court's judgment, Ms. Kaplan and Mr. Fay agreed to part ways. Ex. E (Resignation Agreement). They signed a "Resignation Agreement and General Release" in which they agreed that "Fay Kaplan Law, P.A. and/or Thomas Fortune Fay will pay Annie Kaplan $10,000,000.00 at the time that distribution of attorney's fees in the *Peterson* Collection case is released to Thomas Fortune Fay and/or Fay Kaplan Law, P.A." *Id.* at § 2.a.

### D.  Mr. Fay Receives and Dissipates $67.2 Million in Attorneys' Fees

In late 2016, Mr. Fay obtained from the Trustee a $67.2 million attorneys' fees distribution. Ex. F (Locke Lord May 19, 2017 Ltr.). Mr. Fay did not inform Ms. Kaplan of the distribution in advance, or pay her any part of her $10 million share. Ex. A (Kaplan Decl.) ¶ 9. Ms. Kaplan learned of the distribution and met with Mr. Fay, who reported that he already had used the money to pay off his many creditors. *Id.* Mr. Fay's adult daughter, lawyer Caragh Fay, also told Ms. Kaplan that the $67.2 million had been spent. *Id.*

When Ms. Kaplan's counsel asked Mr. Fay to confirm he would escrow $10 million from any future distribution, as required by Rule 1.15 of the Rules of Professional Conduct, he demurred. Ex. G (Vail Ltr.).

In his Motion, Mr. Fay tells the Court that "[t]here are no liens pending against either the Plaintiffs in this case or their attorneys who seek payment of their fees." Mot. at 4. This is not accurate. Ms. Kaplan has informed the Trustee (with a carbon copy to Mr. Fay's counsel) of her $10 million charging lien. Ex. H (Jan. 17, 2017 Finkelstein Ltr.); Ex. I (Jan. 30, 2017 Finkelstein Ltr.).

### E. The District of Columbia Action

In January, Ms. Kaplan filed a lawsuit in District of Columbia Superior Court against Mr. Fay and Fay Law Group over the $10 million. Ex. J (MTD Order). Mr. Fay and Fay Law Group filed a motion to dismiss, which the Superior Court denied in an eight-page opinion. *Id.* Discovery will close on September 11, 2017.

## ARGUMENT

### I. MS. KAPLAN POSSESSES AN ATTORNEY'S CHARGING LIEN

An attorney's charging lien is a "security interest in the favorable result of litigation, giving the attorney equitable ownership interest in the client's cause of action and ensuring that the attorney can collect [her] fee from the fund [she] has created for that purpose on behalf of the client." *Chadbourne & Parke, LLP v. AB Recur Finans*, 18 A.D.3d 222, 223 (N.Y. App. Div. 2005). In New York, charging liens are governed by Judiciary Law § 475:

> From the commencement of an action . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

*See also Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998). While the lien exists "at the commencement of an action," it "only attaches when proceeds from an identifiable fund are created by an attorney's own efforts in the action or proceeding." *In re Air Crash at Belle Harbor*, 2006 WL 3247675, at *2 (S.D.N.Y. Nov. 9, 2006). Further, "[t]here is no requirement that a charging lien be docketed or filed in order to perfect the lien." *Sconberger v. Serchuk*, 1993 WL 299279, at *3 (S.D.N.Y. Aug. 4, 1993).

6

As this Court has recognized, charging liens are "for the benefit of an 'attorney of record' only." Memorandum Decision & Order at 4, *Peterson et al. v. Islamic Republic of Iran et al.*, No. 10-cv-4518 (S.D.N.Y. June 6, 2016), ECF No. 647 (citing *Itar-Tass*, 140 F.3d at 450). An attorney of record includes one who "participat[ed] in a legal proceeding on the client's behalf by having his [or her] name affixed to the pleadings, motions, records, briefs, or other papers submitted in the matter.'" *Sellick v. Consol. Edison Co. of N.Y., Inc.*, 2017 WL 1133443, at *3 (S.D.N.Y. Mar. 23, 2017) (citing *Picciolo v. State*, 287 A.D.2d 721, 722 (N.Y. App. Div. 2001)). "[A]n attorney's participation in the proceeding *at one point* as counsel of record is a sufficient predicate for invoking [Section 475's] protection." *Klein v. Eubank*, 663 N.E.2d 599, 600 (N.Y. 1996) (emphasis in original).

Moreover, an attorney may enforce a charging lien "even if recovery is obtained in an action different from the one in which the services were rendered," so long as there is a "logical sequence" between the attorney's representation and the ultimate recovery. *Sellick*, 2017 WL 1133443, at *4 (citing *Cohen v. Grainger, Tesoriero & Bell*, 622 N.E.2d 288, 289 (N.Y. 1993)).

Ms. Kaplan's representation of the *Peterson* plaintiffs was broad in scope and duration. As counsel, she took approximately 15 depositions, acted to restrain the assets that are being used to satisfy her clients' judgments, lobbied Congress, negotiated a cooperation agreement between the numerous judgment creditors, and arranged for the filing of amicus briefs. She also served as counsel of record in a related action as part of the plaintiffs' sprawling efforts to restrain Iranian assets in the United States. Accordingly, she is entitled to an attorney's charging lien. *See Mason v. City of New York*, 2016 WL 2766652, at *3 (S.D.N.Y. May 12, 2016) (granting a lien to an attorney who had only filed a complaint on behalf of his client before being discharged).

In addition, an attorney may "pursue an action under Section 475 against another attorney for fees due to the attorney from [her] former client." *Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 698 (S.D.N.Y. 2014). It makes no difference that Ms. Kaplan no longer represents the *Peterson* plaintiffs because "an attorney need not be counsel of record at the time the judgment or settlement fund is created in order to be entitled to the lien afforded by Judiciary Law § 475." *Klein*, 663 N.E.2d at 600. Not only does Ms. Kaplan have a valid lien, she has the ability to enforce that lien against Mr. Fay.

The Motion, if granted without a $10 million hold-back, would improperly vitiate Ms. Kaplan's lien. Accordingly, pending the outcome of the District of Columbia action, the Court should deny the Motion as to $10 million that otherwise would be distributed to Mr. Fay.

## II.     ALTERNATIVELY, THE COURT SHOULD TEMPORARILY DEFER RULING

In the alternative, the Court should defer ruling on the Motion, at least as to $10 million, pending resolution of the District of Columbia action. "It is well established that district courts possess the inherent power and responsibility to manage their dockets," particularly in complex cases such as this one. *In re World Trade Center Disaster Site Litig.*, 722 F.3d 483, 487 (2d Cir. 2013). This includes the power to defer ruling on motions, particularly when the outcome may depend on an anticipated ruling in a different case. *See Am. Freedom Defense Initiative v. Metro. Transp. Auth.*, 889 F. Supp. 2d 606, 613 (S.D.N.Y. 2012) (deferring decision on attorneys' fees pending outcome of appeal).

The Court should exercise its discretion to defer ruling on the Motion as to $10 million that otherwise would be distributed to Mr. Fay. Such deferral would preserve the *status quo* between Ms. Kaplan and Mr. Fay, and prevent the money's dissipation, pending the District of Columbia court's forthcoming decision on entitlement to the $10 million.

## **CONCLUSION**

For these reasons, Ms. Kaplan respectfully requests that the Motion be denied, in part, as to $10 million that otherwise would be distributed to Mr. Fay, or, alternatively, that the Court defer ruling as to such $10 million pending resolution of the District of Columbia action.

Dated: May 22, 2017                    /s/ Chanakya A. Sethi
                                       Chanakya A. Sethi[*] (CS2626)
                                       Williams & Connolly LLP
                                       725 Twelfth St., N.W.
                                       Washington, DC  20005
                                       Telephone: (202) 434-5000
                                       Facsimile: (202) 434-5029
                                       Email:  csethi@wc.com

                                       For Matters in New York:
                                       Williams & Connolly LLP
                                       1330 Avenue of the Americas, Suite 23A
                                       New York, NY 10019

                                       *Counsel for Annie Kaplan*

---

[*] Admitted only in New York.  Practice limited to federal litigation outside the District of Columbia and ADR proceedings.

## **CERTIFICATE OF SERVICE**

I certify that on the 22nd day of May, 2017, I caused a copy of the foregoing document to be served electronically on all counsel of record via operation of the Court's CM/ECF system.

By: /s/ Chanakya A. Sethi
Chanakya A. Sethi