# Exhibit D

## No. 4132. TREATY[1] OF AMITY, ECONOMIC RELATIONS, AND CONSULAR RIGHTS BETWEEN THE UNITED STATES OF AMERICA AND IRAN. SIGNED AT TEHRAN, ON 15 AUGUST 1955

The United States of America and Iran, desirous of emphasizing the friendly relations which have long prevailed between their peoples, of reaffirming the high principles in the regulation of human affairs to which they are committed, of encouraging mutually beneficial trade and investments and closer economic intercourse generally between their peoples, and of regulating consular relations, have resolved to conclude, on the basis of reciprocal equality of treatment, a Treaty of Amity, Economic Relations, and Consular Rights, and have appointed as their Plenipotentiaries :

The President of the United States of America :

     Mr. Selden Chapin, Ambassador Extraordinary and Plenipotentiary of the United States of America at Tehran; and

His Imperial Majesty, the Shah of Iran :

     His Excellency Mr. Mostafa Samiy, Under Secretary of the Ministry of Foreign Affairs;

Who, having communicated to each other their full powers found to be in due form, have agreed upon the following articles :

### Article I

There shall be firm and enduring peace and sincere friendship between the United States of America and Iran.

### Article II

1. Nationals of either High Contracting Party shall be permitted, upon terms no less favorable than those accorded to nationals of any third country, to enter and remain in the territories of the other High Contracting Party for the purpose of carrying on trade between their own country and the territories of such other High Contracting Party and engaging in related commercial activities, and for the purpose of developing and directing the operations of an enterprise in which they have invested, or in which they are actively in the process of investing, a substantial amount of capital.

---

[1] Came into force on 16 June 1957, one month after the day of exchange of the instruments of ratification at Tehran on 16 May 1957, in accordance with article XXIII.

Case 1:10-cv-04518-LAP   Document 821-4   Filed 08/31/17   Page 3 of 15

2.   Nationals of either High Contracting Party within the territories of the other High Contracting Party shall, either individually or through associations, and so long as their activities are not contrary to public order, safety or morals : (*a*) be permitted to travel therein freely and reside at places of their choice ; (*b*) enjoy freedom of conscience and the right to hold religious services ; (*c*) be permitted to engage in philanthropic, educational and scientific activities ; and (*d*) have the right to gather and transmit information for dissemination to the public abroad, and otherwise to communicate with other persons inside and outside such territories.   They shall also be permitted to engage in the practice of professions for which they have qualified under the applicable legal provisions governing admission to professions.

3.   The provisions of paragraphs 1 and 2 of the present Article shall be subject to the right of either High Contracting Party to apply measures which are necessary to maintain public order, and to protect public health, morals and safety, including the right to expel, to exclude or to limit the movement of aliens on the said grounds.

4.   Nationals of either High Contracting Party shall receive the most constant protection and security within the territories of the other High Contracting Party.   When any such national is in custody, he shall in every respect receive reasonable and humane treatment ; and, on his demand, the diplomatic or consular representative of his country shall without unnecessary delay be notified and accorded full opportunity to safeguard his interests.   He shall be promptly informed of the accusations against him, allowed all facilities reasonably necessary to his defense and given a prompt and impartial disposition of his case.

## *Article III*

1.   Companies constituted under the applicable laws and regulations of either High Contracting Party shall have their juridical status recognized within the territories of the other High Contracting Party.   It is understood, however, that recognition of juridical status does not of itself confer rights upon companies to engage in the activities for which they are organized.   As used in the present Treaty, " companies " means corporations, partnerships, companies and other associations, whether or not with limited liability and whether or not for pecuniary profit.

2.   Nationals and companies of either High Contracting Party shall have freedom of access to the courts of justice and administrative agencies within the territories of the other High Contracting Party, in all degrees of jurisdiction, both in defense and pursuit of their rights, to the end that prompt and impartial justice be done.   Such access shall be allowed, in any event, upon terms no

less favorable than those applicable to nationals and companies of such other High Contracting Party or of any third country.   It is understood that companies not engaged in activities within the country shall enjoy the right of such access without any requirement of registration or domestication.

3.   The private settlement of disputes of a civil nature, involving nationals and companies of either High Contracting Party, shall not be discouraged within the territories of the other High Contracting Party; and, in cases of such settlement by arbitration, neither the alienage of the arbitrators nor the foreign situs of the arbitration proceedings shall of themselves be a bar to the enforceability of awards duly resulting therefrom.

*Article IV*

1.   Each High Contracting Party shall at all times accord fair and equitable treatment to nationals and companies of the other High Contracting Party, and to their property and enterprises; shall refrain from applying unreasonable or discriminatory measures that would impair their legally acquired rights and interests; and shall assure that their lawful contractual rights are afforded effective means of enforcement, in conformity with the applicable laws.

2.   Property of nationals and companies of either High Contracting Party, including interests in property, shall receive the most constant protection and security within the territories of the other High Contracting Party, in no case less than that required by international law.   Such property shall not be taken except for a public purpose, nor shall it be taken without the prompt payment of just compensation.   Such compensation shall be in an effectively realizable form and shall represent the full equivalent of the property taken; and adequate provision shall have been made at or prior to the time of taking for the determination and payment thereof.

3.   The dwellings, offices, warehouses, factories and other premises of nationals and companies of either High Contracting Party located within the territories of the other High Contracting Party shall not be subject to entry or molestation without just cause.   Official searches and examinations of such premises and their contents, shall be made only according to law and with careful regard for the convenience of the occupants and the conduct of business.

4.   Enterprises which nationals and companies of either High Contracting Party are permitted to establish or acquire, within the territories of the other

Case 1:10-cv-04518-LAP    Document 821-4    Filed 08/31/17    Page 5 of 15

High Contracting Party, shall be permitted freely to conduct their activities therein, upon terms no less favorable than other enterprises of whatever nationality engaged in similar activities. Such nationals and companies shall enjoy the right to continued control and management of such enterprises; to engage attorneys, agents, accountants and other technical experts, executive personnel, interpreters and other specialized employees of their choice; and to do all other things necessary or incidental to the effective conduct of their affairs.

### *Article V*

1. Nationals and companies of either High Contracting Party shall be permitted, within the territories of the other High Contracting Party: (*a*) to lease, for suitable periods of time, real property needed for their residence or for the conduct of activities pursuant to the present Treaty; (*b*) to purchase or otherwise acquire personal property of all kinds; and (*c*) to dispose of property of all kinds by sale, testament or otherwise. The treatment accorded in these respects shall in no event be less favorable than that accorded nationals and companies of any third country.

2. Upon compliance with the applicable laws and regulations respecting registration and other formalities, nationals and companies of either High Contracting Party shall be accorded within the territories of the other High Contracting Party effective protection in the exclusive use of inventions, trade marks and trade names.

### *Article VI*

1. Nationals and companies of either High Contracting Party shall not be subject to the payment of taxes, fees or charges within the territories of the other High Contracting Party, or to requirements with respect to the levy and collection thereof, more burdensome than those borne by nationals, residents and companies of any third country. In the case of nationals of either High Contracting Party residing within the territories of the other High Contracting Party, and of nationals and companies of either High Contracting Party engaged in trade or other gainful pursuit or in non-profit activities therein, such payments and requirements shall not be more hurdensome than those borne by nationals and companies of such other High Contracting Party.

2. Each High Contracting Party, however, reserves the right to: (*a*) extend specific tax advantages only on the basis of reciprocity, or pursuant to agreements for the avoidance of double taxation or the mutual protection of revenue; and (*b*) apply special requirements as to the exemptions of a personal

nature allowed to non-residents in connection with income and inheritance taxes.

3. Companies of either High Contracting Party shall not be subject, within the territories of the other High Contracting Party, to taxes upon any income, transactions or capital not attributable to the operations and investment thereof within such territories.

### Article VII

1. Neither High Contracting Party shall apply restrictions on the making of payments, remittances, and other transfers of funds to or from the territories of the other High Contracting Party, except (*a*) to the extent necessary to assure the availability of foreign exchange for payments for goods and services essential to the health and welfare of its people, or (*b*) in the case of a member of the International Monetary Fund, restrictions specifically approved by the Fund.

2. If either High Contracting Party applies exchange restrictions, it shall promptly make reasonable provision for the withdrawal, in foreign exchange in the currency of the other High Contracting Party, of : (*a*) the compensation referred to in Article IV, paragraph 2, of the present Treaty, (*b*) earnings, whether in the form of salaries, interest, dividends, commissions, royalties, payments for technical services, or otherwise, and (*c*) amounts for amortization of loans, depreciation of direct investments and capital transfers, giving consideration to special needs for other transactions. If more than one rate of exchange is in force, the rate applicable to such withdrawals shall be a rate which is specifically approved by the International Monetary Fund for such transactions or, in the absence of a rate so approved, an effective rate which, inclusive of any taxes or surcharges on exchange transfers, is just and reasonable.

3. Either High Contracting Party applying exchange restrictions shall in general administer them in a manner not to influence disadvantageously the competitive position of the commerce, transport or investment of capital of the other High Contracting Party in comparison with the commerce, transport or investment of capital of any third country; and shall afford such other High Contracting Party adequate opportunity for consultation at any time regarding the application of the present Article.

### Article VIII

1. Each High Contracting Party shall accord to products of the other High Contracting Party, from whatever place and by whatever type of carrier

arriving, and to products destined for exportation to the territories of such other High Contracting Party, by whatever route and by whatever type of carrier, treatment no less favorable than that accorded like products of or destined for exportation to any third country, in all matters relating to : (*a*) duties, other charges, regulations and formalities, on or in connection with importation and exportation; and (*b*) internal taxation, sale, distribution, storage and use.   The same rule shall apply with respect to the international transfer of payments for imports and exports.

2.   Neither High Contracting Party shall impose restrictions or prohibitions on the importation of any product of the other High Contracting Party or on the exportation of any product to the territories of the other High Contracting Party, unless the importation of the like product of, or the exportation of the like product to, all third countries is similarly restricted or prohibited.

3.   If either High Contracting Party imposes quantitative restrictions on the importation or exportation of any product in which the other High Contracting Party has an important interest :

(*a*)   It shall as a general rule give prior public notice of the total amount of the product, by quantity or value, that may be imported or exported during a specified period, and of any change in such amount or period; and

(*b*)   If it makes allotments to any third country, it shall afford such other High Contracting Party a share proportionate to the amount of the product, by quantity or value, supplied by or to it during a previous representative period, due consideration being given to any special factors affecting the trade in such product.

4.   Either High Contracting Party may impose prohibitions or restrictions on sanitary or other customary grounds of a non-commercial nature, or in the interest of preventing deceptive or unfair practices, provided such prohibitions or restrictions do not arbitrarily discriminate against the commerce of the other High Contracting Party.

5.   Either High Contracting Party may adopt measures necessary to assure the utilization of accumulated inconvertible currencies or to deal with a stringency of foreign exchange.   However, such measures shall deviate no more than necessary from a policy designed to promote the maximum development of non-discriminatory multilateral trade and to expedite the attainment of a balance-of-payments position which will obviate the necessity of such measures.

6.  Each High Contracting Party reserves the right to accord special advantages : (*a*) to products of its national fisheries, (*b*) to adjacent countries in order to facilitate frontier traffic, or (*c*) by virtue of a customs union or free trade area of which either High Contracting Party, after consultation with the other High Contracting Party, may become a member.   Each High Contracting Party, moreover, reserves rights and obligations it may have under the General Agreement on Tariffs and Trade,[1] and special advantages it may accord pursuant thereto.

### Article IX

1.  In the administration of its customs regulations and procedures, each High Contracting Party shall : (*a*) promptly publish all requirements of general application affecting importation and exportation; (*b*) apply such requirements in a uniform, impartial and reasonable manner; (*c*) refrain, as a general practice, from enforcing new or more burdensome requirements until after public notice thereof; (*d*) provide an appeals procedure by which prompt and impartial review of administrative action in customs matters can be obtained; and (*e*) not impose greater than nominal penalties for infractions resulting from clerical errors or from mistakes made in good faith.

2.  Nationals and companies of either High Contracting Party shall be accorded treatment no less favorable than that accorded nationals and companies of the other High Contracting Party, or of any third country, with respect to all matters relating to importation and exportation.

3.  Neither High Contracting Party shall impose any measure of a discriminatory nature that hinders or prevents the importer or exporter of products of either country from obtaining marine insurance on such products in companies of either High Contracting Party.

### Article X

1.  Between the territories of the two High Contracting Parties there shall be freedom of commerce and navigation.

2.  Vessels under the flag of either High Contracting Party, and carrying the papers required by its law in proof of nationality, shall be deemed to be vessels of that High Contracting Party both on the high seas and within the ports, places and waters of the other High Contracting Party.

---

[1] See footnote 2, p. 76 of this volume.

3. Vessels of either High Contracting Party shall have liberty, on equal terms with vessels of the other High Contracting Party and on equal terms with vessels of any third country, to come with their cargoes to all ports, places and waters of such other High Contracting Party open to foreign commerce and navigation. Such vessels and cargoes shall in all respects be accorded national treatment and most-favored-nation treatment within the ports, places and waters of such other High Contracting Party; but each High Contracting Party may reserve exclusive rights and privileges to its own vessels with respect to the coasting trade, inland navigation and national fisheries.

4. Vessels of either High Contracting Party shall be accorded national treatment and most-favored-nation treatment by the other High Contracting Party with respect to the right to carry all products that may be carried by vessel to or from the territories of such other High Contracting Party; and such products shall be accorded treatment no less favorable than that accorded like products carried in vessels of such other High Contracting Party, with respect to : (*a*) duties and charges of all kinds, (*b*) the administration of the customs, and (*c*) bounties, drawbacks and other privileges of this nature.

5. Vessels of either High Contracting Party that are in distress shall be permitted to take refuge in the nearest port or haven of the other High Contracting Party, and shall receive friendly treatment and assistance.

6. The term " vessels ", as used herein, means all types of vessels, whether privately owned or operated, or publicly owned or operated; but this term does not, except with reference to paragraphs 2 and 5 of the present Article, include fishing vessels or vessels of war.

## Article XI

1. Each High Contracting Party undertakes (*a*) that enterprises owned or controlled by its Government, and that monopolies or agencies granted exclusive or special privileges within its territories, shall make their purchases and sales involving either imports or exports affecting the commerce of the other High Contracting Party solely in accordance with commercial considerations, including price, quality, availability, marketability, transportation and other conditions of purchase or sale; and (*b*) that the nationals, companies and commerce of such other High Contracting Party shall be afforded adequate opportunity, in accordance with customary business practice, to compete for participation in such purchases and sales.

2.   Each High Contracting Party shall accord to the nationals, companies and commerce of the other High Contracting Party fair and equitable treatment, as compared with that accorded to the nationals, companies and commerce of any third country, with respect to : (*a*) the governmental purchase of supplies, (*b*) the awarding of government contracts, and (*c*) the sale of any service sold by the Government or by any monopoly or agency granted exclusive or special privileges.

3.   The High Contracting Parties recognize that conditions of competitive equality should be maintained in situations in which publicly owned or controlled trading or manufacturing enterprises of either High Contracting Party engage in competition, within the territories thereof, with privately owned and controlled enterprises of nationals and companies of the other High Contracting Party. Accordingly, such private enterprises shall, in such situations, be entitled to the benefit of any special advantages of an economic nature accorded such public enterprises, whether in the nature of subsidies, tax exemptions or otherwise.   The foregoing rule shall not apply, however, to special advantages given in connection with : (*a*) manufacturing goods for government use, or supplying goods and services to the Government for government use; or (*b*) supplying at prices substantially below competitive prices, the needs of particular population groups for essential goods and services not otherwise practically obtainable by such groups.

4.   No enterprise of either High Contracting Party, including corporations, associations, and government agencies and instrumentalities, which is publicly owned or controlled shall, if it engages in commercial, industrial, shipping or other business activities within the territories of the other High Contracting Party, claim or enjoy, either for itself or for its property, immunity therein from taxation, suit, execution of judgment or other liability to which privately owned and controlled enterprises are subject therein.

## *Article XII*

Each High Contracting Party shall have the right to send to the other High Contracting Party consular representatives, who, having presented their credentials and having been recognized in a consular capacity, shall be provided, free of charge, with exequaturs or other authorization.

## *Article XIII*

1.   Consular representatives of each High Contracting Party shall be permitted to reside in the territory of the other High Contracting Party at the places where consular officers of any third country are permitted to reside and

at other places by consent of the other High Contracting Party.  Consular officers and employees shall enjoy the privileges and immunities accorded to officers and employees of their rank or status by general international usage and shall be permitted to exercise all functions which are in accordance with such usage; in any event they shall be treated, subject to reciprocity, in a manner no less favorable than similar officers and employees of any third country.

2.    The consular offices shall not be entered by the police or other local authorities without the consent of the consular officer, except that in the case of fire or other disaster, or if the local authorities have probable cause to believe that a crime of violence has been or is about to be committed in the consular office, consent to entry shall be presumed.  In no case shall they examine or seize the papers there deposited.

## *Article XIV*

1.    All furniture, equipment and supplies consigned to or withdrawn from customs custody for a consular or diplomatic office of either High Contracting Party for official use shall be exempt within the territories of the other High Contracting Party from all customs duties and internal revenue or other taxes imposed upon or by reason of importation.

2.    The baggage, effects and other articles imported exclusively for the personal use of consular officers and diplomatic and consular employees and members of their families residing with them, who are nationals of the sending state and are not engaged in any private occupation for gain in the territories of the receiving state, shall be exempt from all customs duties and internal revenue or other taxes imposed upon or by reason of importation.  Such exemptions shall be granted with respect to the property accompanying the person entitled thereto on first arrival and on subsequent arrivals, and to that consigned to such officers and employees during the period in which they continue in status.

3.    It is understood, however, that : (*a*) paragraph 2 of the present Article shall apply as to consular officers and diplomatic and consular employees only when their names have been communicated to the appropriate authorities of the receiving state and they have been duly recognized in their official capacity; (*b*) in the case of consignments, either High Contracting Party may, as a condition to the granting of exemption, require that a notification of any such consignment be given, in a prescribed manner; and (*c*) nothing herein authorizes importations specifically prohibited by law.

## Article XV

1. The Government of either High Contracting Party may, in the territory of the other, acquire, own, lease for any period of time, or otherwise hold and occupy, such lands, buildings, and appurtenances as may be necessary and appropriate for governmental, other than military, purposes. If under the local law the permission of the local authorities must be obtained as a prerequisite to any such acquiring or holding, such permission shall be given on request. .

2. Lands and buildings situated in the territories of either High Contracting Party, of which the other High Contracting Party is the legal or equitable owner and which are used exclusively for governmental purposes by that owner, shall be exempt from taxation of every kind, national, state, provincial and municipal, other than assessments levied for services or local public improvements by which the premises are benefited.

## Article XVI

1. No tax or other similar charge of any kind, whether of a national, state, provincial, or municipal nature, shall be levied or collected within the territories of the receiving state in respect of the official emoluments, salaries, wages or allowances received (*a*) by a consular officer of the sending state as compensation for his consular services, or (*b*) by a consular employee thereof as compensation for his services at a consulate. Likewise, consular officers and employees, who are permanent employees of the sending state and are not engaged in private occupation for gain within the territories of the receiving state, shall be exempt from all taxes or other similar charges, the legal incidence of which would otherwise fall upon such officers or employees.

2. The preceding paragraph shall not apply in respect of taxes and other similar charges upon : (*a*) the ownership or occupation of immovable property situated within the territories of the receiving state; (*b*) income derived from sources within such territories (except the compensation mentioned in the preceding paragraph); or (*c*) the passing of property at death.

3. The provisions of the present Article shall have like application to diplomatic officers and employees, who shall in addition be accorded all exemptions allowed them under general international usage.

## Article XVII

The exemptions provided for in Articles XIV and XVI shall not apply to nationals of the sending state who are also nationals of the receiving state, or to any other person who is a national of the receiving state, nor to persons having immigrant status who have been lawfully admitted for permanent residence in the receiving state,

### Article XVIII

Consular officers and employees are not subject to local jurisdiction for acts done in their official character and within the scope of their authority. No consular officer or employee shall be required to present his official files before the courts or to make declaration with respect to their contents.

### Article XIX

A consular officer shall have the right within his district to : (*a*) interview, communicate with, assist and advise any national of the sending state; (*b*) inquire into any incidents which have occurred affecting the interests of any such national; and (*c*) assist any such national in proceedings before or in relations with the authorities of the receiving state and, where necessary, arrange for legal assistance to which he is entitled. A national of the sending state shall have the right at all times to communicate with a consular officer of his country and, unless subject to lawful detention, to visit him at the consular office.

### Article XX

1. The present Treaty shall not preclude the application of measures :
(*a*) regulating the importation or exportation of gold or silver;
(*b*) relating to fissionable materials, the radio-active by-products thereof, or the sources thereof;
(*c*) regulating the production of or traffic in arms, ammunition and implements of war, or traffic in other materials carried on directly or indirectly for the purpose of supplying a military establishment; and
(*d*) necessary to fulfill the obligations of a High Contracting Party for the maintenance or restoration of international peace and security, or necessary to protect its essential security interests.

2. The present Treaty does not accord any rights to engage in political activities.

3. The stipulations of the present Treaty shall not extend to advantages accorded by the United States of America or its Territories and possessions, irrespective of any future change in their political status, to one another, to the Republic of Cuba, to the Republic of the Philippines, to the Trust Territory of the Pacific Islands or to the Panama Canal Zone.

4. The provisions of Article II, Paragraph 1, shall be construed as extending to nationals of either High Contracting Party seeking to enter the territories of

Case 1:10-cv-04518-LAP    Document 821-4    Filed 08/31/17    Page 14 of 15

the other High Contracting Party solely for the purpose of developing and directing the operations of an enterprise in the territories of such other High Contracting Party in which their employer has invested or is actively in the process of investing a substantial amount of capital : provided that such employer is a national or company of the same nationality as the applicant and that the applicant is employed by such national or company in a responsible capacity.

### Article XXI

1.   Each High Contracting Party shall accord sympathetic consideration to, and shall afford adequate opportunity for consultation regarding, such representations as the other High Contracting Party may make with respect to any matter affecting the operation of the present Treaty.

2.   Any dispute between the High Contracting Parties as to the interpretation or application of the present Treaty, not satisfactorily adjusted by diplomacy, shall be submitted to the International Court of Justice, unless the High Contracting Parties agree to settlement by some other pacific means.

### Article XXII

1.   The present Treaty shall replace the following agreements between the United States of America and Iran :
(a)   the provisional agreement relating to commercial and other relations, concluded at Tehran May 14, 1928,[1] and
(b)   the provisional agreement relating to personal status and family law, concluded at Tehran July 11, 1928.[2]

2.   Nothing in the present Treaty shall be construed to supersede any provision of the trade agreement and the supplementary exchange of notes between the United States of America and Iran, concluded at Washington April 8, 1943.[3]

### Article XXIII

1.   The present Treaty shall be ratified, and the ratifications thereof shall be exchanged at Tehran as soon as possible.

2.   The present Treaty shall enter into force one month after the day of exchange of ratifications.  It shall remain in force for ten years and shall continue in force thereafter until terminated as provided herein.

---

[1] De Martens, *Nouveau Recueil général de Traités*, troisième série, tome XXX, p. 885.
[2] De Martens, *Nouveau Recueil général de Traités*, troisième série, tome XXV, p. 58.
[3] United Nations, *Treaty Series*, Vol. 106, p. 155.

3.   Either High Contracting Party may, by giving one year's written notice to the other High Contracting Party, terminate the present Treaty at the end of the initial ten-year period or at any time thereafter.

IN WITNESS WHEREOF the respective Plenipotentiaries have signed the present Treaty and have affixed hereunto their seals.

DONE in duplicate, in the English and Persian languages, both equally authentic, at Tehran this fifteenth day of August one thousand nine hundred fifty-five, corresponding with the twenty-third day of Mordad one thousand three hundred and thirty-four.

Selden CHAPIN                                    MOSTAFA SAMIY
[SEAL]                                               [SEAL]