UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBORAH D. PETERSON,
Personal Representative of the Estate of
James C. Knipple (Dec.) et al.,

                    Plaintiffs,

        v.

ISLAMIC REPUBLIC OF IRAN, et al.,

                    Defendants.

Case No. 10 CIV 4518 (BSJ)

**FILED UNDER SEAL**

**CONTAINS CONFIDENTIAL
MATERIAL SUBJECT TO
PROTECTIVE ORDER**

**DEFENDANT BANK MARKAZI'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

David M. Lindsey
James M. Hosking
Andreas A. Frischknecht
Yasmine Lahlou

**CHAFFETZ LINDSEY LLP**
505 Fifth Avenue, 4th Floor
New York, NY 10017
Tel. (212) 257-6960
Fax (212) 257-6950
www.chaffetzlindsey.com

*Attorneys for Defendant Bank Markazi*

June 15, 2012

{00120148;v1}

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND ....................................... 3

ARGUMENT ...................................................................................................... 5

I.    Standard Applicable to Plaintiffs' Motion for Partial Summary Judgment and Relationship with Bank Markazi's Motion to Dismiss ................... 5

I.    Plaintiffs' TRIA Section 201 Claim Raises a Non-Justiciable Political Question ........................................................................ 7

II.    Even Were the Court to Consider It, Plaintiffs' TRIA Section 201 Claim Fails Because Plaintiffs Cannot Establish the Essential Element of Ownership ........................................................................ 8

        A.    Only Blocked Assets Owned by a "Terrorist Party" Are Subject to Execution as "Blocked Assets of" that "Terrorist Party" under TRIA Section 201(a) ........................................................ 8

        B.    Under the UCC and Luxembourg Law, Bank Markazi Is Not the Owner of the Restrained Bonds ................................. 17

        C.    Plaintiffs' "Admission" Argument Is Irrelevant to the Purely Legal Issue of Whether Bank Markazi Is the Owner of the Restrained Bonds under the UCC and Luxembourg Law ......................... 18

III.    Plaintiffs May Not Execute Upon Bank Markazi's Assets Held at Clearstream in Luxembourg ................................................. 20

        A.    This Court's Ruling in *Bank Of Tokyo* that Assets of Bank Markazi Held at a Foreign Financial Institution outside the United States Are Immune from Attachment and Execution under the FSIA Is Law of the Case in this Closely Related Turnover Action ...................................................... 20

        B.    *Koehler v. Bank Of Bermuda* Has No Bearing on the Immunity of Bank Markazi's Assets Held at Clearstream in Luxembourg from Attachment and Execution under the FSIA ...................... 24

        C.    Plaintiffs' Waiver and Ancillary Jurisdiction Arguments Fail as a Matter of Law ................................................ 26

CONCLUSION ................................................................................................ 28

# TABLE OF AUTHORITIES

**CASES**

*Allied Maritime, Inc. v. Descatrade SA,*
    620 F.3d 70 (2d Cir. 2010) ..………………………………………..…………25

*Aurelius Capital Partners, LP v. Republic of Argentina,*
    584 F.3d 120 (2d Cir. 2009) ..…………………………………………………21

*Aurelius Capital Partners, LP v. Republic of Argentina,*
    No. 07 Civ. 2715 (TPG),
    2010 WL 768874 (S.D.N.Y. Mar. 5, 2010) ……………………………………..25

*Bank of New York v. Norilsk Nickel,*
    14 A.D. 3d 140 (1st Dep't 2004) ..……………………………………………11

*Bank of Tokyo-Mitsubishi, UFJ, Ltd. New York Branch v. Peterson,*
    No. 12 Civ. 4038 (BSJ),
    2012 WL 1963382 (S.D.N.Y. May 29, 2012) …………………………......……..passim

*Bank of Tokyo-Mitsubishi, UFJ, Ltd. New York Branch v. Peterson,*
    No. 12 Civ. 4038 (BSJ)
    (S.D.N.Y. May 25, 2012) (Dkt. # 4) ..…………………………………..……..22

*Bd. of Trs. of the Leland Stanford Junior Univ. v.*
    *Roche Molecular Sys., Inc.,*
    --- U.S. ----, 131 S.Ct. 2188 (2011) ..……………………………………9, 16

*Bridgeway Corp. v. Citibank,*
    201 F.3d 134 (2d Cir. 2000) ..……………………………………..………6

*Calderon-Cardona v. JPMorgan Chase Bank,* N.A.,
    --- F. Supp. 2d ----, No. 11 Civ. 3283 (DLC),
    2011 WL 6155987 (S.D.N.Y. Dec. 7, 2011) ……………………………passim

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ..…………………………………………..………6

*CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP,*
    654 F.3d 276 (2d Cir. 2011) ..…………………………………………..…18, 19

*Dames & Moore v. Regan,*
    453 U.S. 654 (1981) ..………………………………………………17

*DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund,*
    975 F. Supp. 258 (S.D.N.Y. 1997) ..…………………………………………..19

*Dole Food Co. v. Patrickson,*
    538 U.S. 468 (2003) ...……………………………………………………………15

*Eitzen Bulk A/S v. Bank of India,*
    827 F. Supp. 2d 234 (S.D.N.Y. 2011 ……………………………...……………………25

*Elliott Assocs., L.P. v. Banco De La Nacion,*
    No. 96 Civ. 7916 RWS,
    2000 WL 1449862 (S.D.N.Y. Sep. 29, 2000) ...……………………………………………21

*Ellis v. United States,*
    206 U.S. 246 (1907) ...……………………………………………………………16

*Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.,*
    609 F.3d 111 (2d Cir. 2010) ...……………………………………………………12

*Fidelity Partners, Inc. v. Philippine Export &*
    *Foreign Loan Guarantee Corp.,*
    921 F. Supp. 1113 (S.D.N.Y. 1996) ……………………………………………………21

*First National City Bank v.*
    *Banco Para El Comercio Exterior de Cuba,*
    462 U.S. 611 (1983) ...……………………………………………….…………………8

*Flores-Figueroa v. United States,*
    556 U.S. 646 (2009) ...……………………………………………………………16

*Franconero v. Universal Music Corp.,*
    No. 02 Civ. 1963 (BSJ),
    2011 WL 566794 (S.D.N.Y. Feb. 11, 2011) ………………………………………………21

*Gen. Elec. Co. v. New York State Dep't of Labor,*
    936 F.2d 1448 (2d Cir. 1991) ……...………………………………………………6

*Hausler v. JPMorgan Chase Bank, N.A.,*
    740 F. Supp. 2d 525 (S.D.N.Y. 2010) …………………………………………..…10

*Hausler v. JPMorgan Chase Bank, N.A.,*
    --- F. Supp. 2d ----, No. 09 Civ. 10289 (VM),
    2012 WL 601034 (S.D.N.Y. Feb. 22, 2012) …………………………………..…10, 14

*Hegna v. Islamic Republic of Iran,*
    380 F.3d 1000 (7th Cir. 2004) …………………………………………………..……23

*Holy Land Found. for Relief and Dev. v. Ashcroft,*
    333 F.3d 156 (D.C. Cir. 2003) ………………………………………………..……12

*Johnson v. Holder,*
    564 F.3d 95 (2d Cir. 2009) ...……………………………………………..………21

*Karaha Bodas Co., L.L.C. v.*
    *Perusahaan Pertambangan Minyak Dan Gas Bumi Negar,*
    313 F.3d 70 (2d Cir. 2002) …………………………..………………13, 14, 15

*Koehler v. Bank of Bermuda Ltd.,*
    12 N.Y.3d 533 (2009) …….……………………………………..…………24, 25, 26

*Levin v. Bank of New York,*
    No. 09 CV 5900 (RPP),
    2011 WL 812032 (S.D.N.Y. Mar. 4, 2011) …………………..……………10, 23, 24

*Lyons v. Lancer Ins. Co.,*
    No. 7:07–cv–7095 (WWE),
    2010 WL 6442153 (S.D.N.Y. Oct. 20, 2010),
    *aff'd,* --- F.3d ----, No. 10-4569-cv,
    2012 WL 1813673 (2d Cir. May 21, 2012) …………………………………………4

*Ministry of Defense & Support of the Armed Forces*
    *of the Islamic Republic of Iran v. Elahi,*
    556 U.S. 366 (2009) ...…………………………………..…………..………………15

*New York State Nat'l Org. for Women v. Terry,*
    159 F.3d 86 (2d Cir. 1998) ...………………………………………………………19

*NML Capital, Ltd. v. Banco Central de la República Argentina,*
    652 F.3d 172 (2d Cir. 2011) ...……………………………..………………………6

*Ovadia v. Top Ten Jewelry Corp.,*
    No. 04-CIV-2690 (RJH)(MHD),
    2005 WL 1949970 (S.D.N.Y. Aug. 12, 2005) ………..………………………………21

*Roberts v. Sea-Land Servs., Inc.,*
    132 S.Ct. 1350 (2012) ...…………………………………………..……………15

*Smith v. Federal Reserve Bank of New York,*
    346 F.3d 264 (2d Cir. 2003) ……………………………………………..…………11

*Strom v. Goldman, Sachs & Co.,*
    202 F.3d 138 (2d Cir. 1999) ...……………………………………………………19

*Trans Commodities, Inc. v. Kazakhstan Trading House and*
    *Rep. of Kazakhstan,* No. 96 CIV. 9782 (BSJ),
    1997 WL 811474 (S.D.N.Y. May 28, 1997) …………………………………………24

*Uzdavines v. Weeks Marine, Inc.,*
    418 F.3d 138 (2d Cir. 2005) ....................................................................20

*Verlinden B.V. v. Central Bank of Nigeria,*
    461 U.S. 480 (1983) ................................................................................26

*Walters v. Indus. & Commercial Bank of China, Ltd.,*
    651 F.3d 280 (2d Cir. 2011) ...................................................................23

*Weinstein* and *Weininger v. Castro,*
    462 F. Supp. 2d 457 (S.D.N.Y.) ..........................................................27

*Weinstein v. Islamic Republic of Iran,*
    609 F.3d 43 (2d Cir. 2010) ...............................................................13, 26

*Williams v. Taylor,*
    529 U.S. 362, 364 (2000) .......................................................................14

## STATUTES AND RULES

28 U.S.C. § 1603(b) ...................................................................... 15

28 U.S.C. § 1605(a)(7).................................................................. 8, 24

28 U.S.C. § 1605A......................................................................... 8

28 U.S.C. § 1609.... ...........................................................19, 21, 27

28 U.S.C. § 1610 ......................................................................5, 6, 7

28 U.S.C. § 1610(a) ....................................................................23, 24

28 U.S.C. § 1610(b) ....................................................................23, 24

28 U.S.C. § 1610(c) ....................................................................23, 24

28 U.S.C. § 1610(f)(1)(a)..................................................................17

28 U.S.C. § 1611(b)(1) ............................................................... 6, 7, 19

N.Y.U.C.C. Article 8...............................................................passim

Terrorism Risk Insurance Act,
    Pub. L. No. 107-297, Title II, § 201, 116 Stat. 2337 (2002) ............................passim

S.D.N.Y. Local Rule 56.1(a) ..............................................................4

**TREATIES**

Treaty of Amity, Economic Relations and Consular Rights
    between the United States and Iran, Aug. 15, 1955, 8 U.S.T. 899 ..................…......7, 8, 17


**OTHER AUTHORITIES**

Exec. Order No. 13599 dated February 5, 2012……………...…................................…….passim

H.R. REP. No. 94-1487, 1976 U.S.C.C.A.N. 604…………………………………………….…….26

BLACK'S LAW DICTIONARY (9th ed. 2009) …………………………………………...……….18

Statement of President Clinton, 1998 Pub. Papers, 1843, 1847…………………………………17

Brief for the United States as *Amicus Curiae*
    in Support of the Appellees, *Rubin v.*
    *Islamic Republic of Iran*,
    No. 11-2144 (1st Cir. June 8, 2012)…………………………………….………………….passim

Motion of the United States for a 30-day Extension of
    Time to File an *Amicus* Brief,
    *Calderon-Cardona v. JP Morgan Chase Bank, N.A.,*
    No. 12-75 (2d Cir. May 15, 2012) (Dkt. # 56)...……………………………....………..10

Statement of Interest of the United States, *Rux v. ABN Amro Bank NV*,
    08 Civ. 6588 (AKH) (S.D.N.Y. Jan. 12, 2009) (Dkt. # 185)…..…….... ……………………9

Defendant Bank Markazi ("Bank Markazi" or "the Bank"), the Central Bank of Iran, respectfully submits this Memorandum of Law in opposition to the Motion for Partial Summary Judgment ("Plaintiffs' Motion") submitted on behalf of the Plaintiffs identified in Exhibit A to the Memorandum of Law in Support of Plaintiffs' Motion ("Plaintiffs' Brief").

## PRELIMINARY STATEMENT

The Court should deny Plaintiffs' Motion, which merely repeats Plaintiffs' arguments concerning one of several issues already before the Court in connection with Bank Markazi's Motion to Dismiss the Second Amended Complaint for Lack of Subject Matter Jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611 (the "Bank Markazi Motion") and the Renewed Motion of Clearstream Banking, S.A. ("Clearstream") to Vacate Restraints (the "Clearstream Motion").

The common issue raised in all three Motions is whether Plaintiffs have a viable claim under section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA") with respect to the over $1.75 billion in assets (the "Restrained Bonds") that have been restrained at Citibank N.A. ("Citibank") in New York since June 2008, and which are now blocked pursuant to President Obama's Executive Order 13599, to satisfy their default judgments against Iran.

As a threshold matter, Plaintiffs' TRIA section 201 claim raises a non-justiciable political question that the Court lacks constitutional authority to adjudicate because the Restrained Bonds blocked in New York and the reciprocal assets of Bank Markazi held at Clearstream in Luxembourg are subject to competing U.S. and EU blocking regimes. The existence of that non-justiciable political question, standing alone, precludes Plaintiffs' TRIA section 201 claim here.

Even were the Court to consider it, however, the TRIA section 201 claim fails as a matter of law. The Restrained Bonds are not subject to TRIA section 201 because Bank Markazi is not the owner of those assets. As the *Calderon* court found, only assets actually *owned by* a

"terrorist party" are subject to execution under that provision.  The United States Government is on record expressing its agreement with the *Calderon* court's conclusion that TRIA section 201 requires *ownership*.

Indeed, the plain language of the statute compels that conclusion.  TRIA section 201 provides that only "blocked *assets of*" a "terrorist party" are potentially available for distribution to judgment creditors.  Plaintiffs have not (and apparently cannot) explain why the word "of" in the operative clause of TRIA section 201 should not be deemed indicative of ownership, as the United States Supreme Court has held at least three times in a number of different contexts. Instead, Plaintiffs advance a variety of theories in an effort to avoid this key limitation of the statute's scope, from advocating a more "holistic approach" to statutory interpretation that would render the operative words in TRIA section 201 meaningless to criticizing the *Calderon* court's purportedly "myopic" focus on giving effect to every clause and word of the statute, in accordance with basic rules of statutory construction.

Nor—despite filing three separate briefs to date in connection with this Motion, the Bank Markazi Motion and the Clearstream Motion—have Plaintiffs rebutted Clearstream's showing that Bank Markazi is not the owner of the Restrained Bonds under applicable law, namely the New York Uniform Commercial Code ("UCC") and Luxembourg law, to which the UCC's choice of law provisions refer.  Instead, Plaintiffs' argument relies almost entirely on a purported "admission" by Bank Markazi that it is the owner of those assets.

Plaintiffs' "admission" argument is a red herring.  Even accepting at face value Plaintiffs' allegation that Bank Markazi has "admitted" ownership of the Restrained Bonds, a party's *assertion* that it is the owner of disputed assets obviously cannot *confer* ownership if that party is not the owner of the assets *as a matter of law*.  In this Turnover Action, Clearstream has

demonstrated that Bank Markazi *is not* the owner of the Restrained Bonds under the UCC and Luxembourg law. Plaintiffs' "admission" argument is simply an attempt to distract from their inability to rebut Clearstream's showing.

Thus, the assets that have been restrained (and now blocked) in New York are not Bank Markazi's assets. Instead, as Clearstream has demonstrated, Bank Markazi's assets are held at Clearstream in Luxembourg. Yet this Court has already ruled—in the closely related *Bank of Tokyo* proceeding in which these very same Plaintiffs sought to execute upon assets of Bank Markazi held at a Japanese Bank in Japan—that Plaintiffs may not restrain or execute upon assets of Bank Markazi held at a foreign financial institution outside the United States.

The Court's ruling in *Bank of Tokyo* is law of the case in this Turnover Action and precludes any attempt by Plaintiffs to restrain or execute upon Bank Markazi's assets held at Clearstream in Luxembourg.

## PROCEDURAL AND FACTUAL BACKGROUND

The Court is by now well acquainted with the procedural and factual background of this Turnover Action. Accordingly, Bank Markazi will not burden the Court at this juncture with a further, lengthy recitation of the relevant procedural history and facts.

Briefly, however, most—but not all—of the facts set forth in Plaintiffs' Rule 56.1 Statement are undisputed (indeed, a number of those purported "facts" are in reality improper conclusions of law). In this respect, Bank Markazi respectfully refers the Court to its Responses to Plaintiffs' Rule 56.1 Statement, submitted together with this Opposition.

Yet only one of Plaintiffs' improper conclusions of law, couched as a factual statement, has any real relevance to the Court's determination of Plaintiffs' Motion, namely Plaintiffs'

assertion that Bank Markazi has "admitted" that the Restrained Bonds "are Bank Markazi's own property."[1]

Plaintiffs fundamentally misconceive the nature and purpose of a Rule 56.1 Statement as a "short and concise statement . . . of the *material facts* as to which the moving party contends there is no genuine issue to be tried."[2]   Whether Bank Markazi is the owner of the assets restrained, and now blocked, at Citibank in New York is not only a key, contested issue in this Turnover Action, it is an *issue of law* that does not belong in a Rule 56.1 Statement.[3]  And, as an issue of law, ownership is not susceptible to any "admission" by Bank Markazi.  *See* Section II.C, *infra*.

The material *facts* concerning the nature of Bank Markazi's interest in the Restrained Bonds are not in dispute.  As Plaintiffs acknowledge in their Complaint, the property interest of security entitlement holders such as Bank Markazi "is reflected in a book-entry in the records of the financial institution with which the owner has an account."  Compl. ¶ 106.  Bank Markazi's property interest is thus reflected in Clearstream's books in Luxembourg.  *See id.* ¶ 145 (referring to Bank Markazi's "assets held in its name at Clearstream").[4]  For its part, Clearstream maintains an Omnibus Account with Citibank, which housed the assets that have been restrained

---

[1]   Pls.' Rule 56.1 Statement, ¶ 12.

[2]   S.D.N.Y. Local Rule 56.1(a) (emphasis added).

[3]   *See, e.g., Lyons v. Lancer Ins. Co.,* No. 7:07–cv–7095 (WWE), 2010 WL 6442153, *1 n.1 (S.D.N.Y. Oct. 20, 2010), *aff'd*, --- F.3d ----, No. 10-4569-cv, 2012 WL 1813673 (2d Cir. May 21, 2012) ("Because the parties agree about most facts underlying this dispute, the Court will accept all cited evidence, *except for any logical or legal conclusions contained in the various [Rule 56.1] statements.*") (emphasis added).

[4]   Of course, this does not take into account the presence of UBAE as an additional intermediary between Clearstream and Bank Markazi.  However, as Clearstream has demonstrated, the omission of UBAE from the analysis makes no difference under applicable law.  *See* Clearstream's Dec. 22, 2011 Memorandum of Law in Support of its Motion to Vacate Restraints ("Clearstream Opening Brief"), at 21.

(and now blocked) in New York—*i.e.,* the Restrained Bonds.  *See id.* ¶ 98 (referring to "Clearstream's cash account at Citibank").

The *legal* issue before the Court is whether, in light of these undisputed facts, Bank Markazi can be deemed the owner of the Restrained Bonds under applicable law, namely the UCC and Luxembourg law, the law to which the UCC's choice of law provisions refer.

## ARGUMENT

I.     **Standard Applicable to Plaintiffs' Motion for Partial Summary Judgment and Relationship with Bank Markazi's Motion to Dismiss**

Plaintiffs' Motion is essentially a mirror image of Bank Markazi's argument concerning *one of several issues* the Court will need to determine in connection with the Bank Markazi Motion.  The common issue raised in both motions is whether Plaintiffs have a viable claim under Section 201 of TRIA, Pub. L. No. 107-297, Title II, § 201, 116 Stat. 2337 (2002) (codified as a note to section 1610 of the FSIA).  Clearstream likewise has addressed Plaintiffs' TRIA section 201 claim at length in connection with the Clearstream Motion.  Bank Markazi expressly adopts and incorporates as though fully set forth herein all of the arguments previously raised in the Bank Markazi Motion and in the Clearstream Motion that are pertinent to Plaintiffs' Motion.

As stated above, the material facts concerning Bank Markazi's interest in the Restrained Bonds are undisputed.  Accordingly, whether Bank Markazi's interest in the Restrained Bonds rises to the level of actual *ownership* such that the Restrained Bonds could be deemed "assets of" Bank Markazi, as required by the plain text of TRIA section 201(a), is a pure question of law. *See Calderon-Cardona v. JPMorgan Chase Bank,* N.A., --- F. Supp. 2d ----, No. 11 Civ. 3283 (DLC), 2011 WL 6155987, at *14 (S.D.N.Y. Dec. 7, 2011) ("As a matter of law, . . . TRIA § 201 *requires* property ownership.") (emphasis in original).

The Court must deny Plaintiffs' Motion if it finds that Plaintiffs cannot establish an essential element of their TRIA section 201 claim because the Restrained Bonds are not "assets of" Bank Markazi within the meaning of that provision. Indeed, the Court is empowered to enter partial summary judgment *sua sponte in Bank Markazi's favor* under these circumstances. *See Gen. Elec. Co. v. New York State Dep't of Labor,* 936 F.2d 1448, 1452 (2d Cir. 1991) ("[S]ummary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)); *Bridgeway Corp. v. Citibank,* 201 F.3d 134, 139 (2d Cir. 2000) (district courts may enter summary judgment "against parties who have themselves moved for summary judgment," provided that they "give clear and express notice before granting summary judgment *sua sponte*") (emphasis in original).[5]

Plaintiffs' Motion is (appropriately) styled as a motion for *partial* summary judgment limited to the issue of whether Plaintiffs have stated a viable claim under TRIA section 201. Should the Court decide that issue in Plaintiffs' favor, the Court will then need to consider the additional arguments Bank Markazi has raised in its Motion to Dismiss, including whether the heightened immunity section 1611(b)(1) of the FSIA confers on the property of a foreign central bank overrides any claim under TRIA section 201, codified as a note to FSIA section 1610. *See NML Capital, Ltd. v. Banco Central de la República Argentina,* 652 F.3d 172, 187 (2d Cir. 2011)

---

[5]  Here, there is no need for the Court to enter partial summary judgment *sua sponte* in Bank Markazi's favor because the Court can achieve the same result—*i.e.,* dismissal of Plaintiffs' TRIA section 201 claim—by granting the pending Bank Markazi Motion.

("[E]ven if [FSIA] § 1610 would otherwise bring foreign state property within the jurisdiction of a court, §1611(b)(1) overrides [the] exceptions in § 1610.").[6]

Thus, resolution in Plaintiffs' favor of the common issue raised in Plaintiffs' Motion, the Bank Markazi Motion and the Clearstream Motion of whether Plaintiffs have a viable claim under TRIA section 201 will not dispose of this Turnover Action.  On the contrary, Plaintiffs cannot prevail in this Turnover Action unless the Court rules in their favor on each and every one of the issues raised in the Bank Markazi Motion, as well as the issues raised in the Clearstream Motion.

## I.      Plaintiffs' TRIA Section 201 Claim Raises a Non-Justiciable Political Question

As Clearstream demonstrates in its May 18, 2012 Reply Memorandum of Law in Support of the Clearstream Motion (the "Clearstream Reply"), Plaintiffs' TRIA section 201 claim raises a non-justiciable political question that the Court lacks constitutional authority to adjudicate because the Restrained Bonds blocked in New York and the reciprocal assets held in accounts at Clearstream in Luxembourg established at the time of the restraints are subject to competing U.S. and EU blocking regimes.[7]   The existence of this non-justiciable political question, standing alone, precludes Plaintiffs' TRIA section 201 claim.

To avoid duplicative briefing, Bank Markazi will not repeat Clearstream's argument here and instead incorporates, adopts and joins in that argument as though fully set forth herein.

---

[6]    *See* Bank Markazi's March 15, 2012 Memorandum of Law in Support of the Bank Markazi Motion (the "Bank Markazi Motion Brief"), at 26-46.   Additionally, the Bank Markazi Motion Brief demonstrates that allowing Plaintiffs to seize the Restrained Bonds would violate the Treaty of Amity, Economic Relations and Consular Rights between the United States and Iran, Aug. 15, 1955, 8 U.S.T. 899 (the "Treaty of Amity").  *See id.* at 22-24.

[7]    *See* Clearstream Reply at 9-16.

II.     **Even Were the Court to Consider It, Plaintiffs' TRIA Section 201 Claim Fails Because Plaintiffs Cannot Establish the Essential Element of Ownership[8]**

      A.     Only Blocked Assets Owned by a "Terrorist Party" Are Subject to Execution as "Blocked Assets of" that "Terrorist Party" under TRIA Section 201(a)

As demonstrated in the Bank Markazi Motion Brief and the Clearstream Reply, only blocked assets *actually owned by* a "terrorist party" (or an agency or instrumentality of a "terrorist party")[9] are subject to attachment and execution under TRIA section 201(a).

> The plain language of TRIA § 201 requires *both* that the [assets in question] be "blocked assets" and that these blocked assets be "of that terrorist party." . . . . The Supreme Court has determined that "the use of the word 'of' denotes ownership." For [a blocked asset] to be attachable, then, [the terrorist party] must actually *own* it.

---

[8]  Plaintiffs' TRIA Section 201 claim also fails for the additional reason that permitting Plaintiffs to seize the Restrained Bonds would violate the Treaty of Amity between the United States and Iran. To avoid duplicative briefing on this issue, Bank Markazi will not repeat its argument based on the Treaty of Amity here and instead incorporates by reference the relevant argument in the Bank Markazi Motion Brief as though fully set forth herein. *See* Bank Markazi Motion Br. at 22-24.

We further note that TRIA section 201(a), by its terms, is applicable where "a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune *under section 1605(a)(7)* of title 28, United States Code" (emphasis added).

Here, Plaintiffs state that only the Peterson, Greenbaum and Levin Plaintiffs have obtained a judgment under former FSIA section 1605(a)(7). Pls.' Br. at 8. In contrast, Plaintiffs state that the judgments obtained by the Acosta, Heiser and Valore Plaintiffs were pursuant to FSIA section 1605A. *Id.* at 8-9. Accordingly, it is unclear whether TRIA section 201 is even available to the Acosta, Heiser and Valore Plaintiffs.

[9]  We note that Bank Melli Iran, a state-owned Iranian bank, has filed a Petition for a Writ of Certiorari in the *Weinstein* case seeking Supreme Court review, *inter alia*, on the issue of whether TRIA section 201 overrides the Court's holding in *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"), as well as applicable treaty provisions, by authorizing creditors of a foreign sovereign to execute against assets of the sovereign's juridically distinct instrumentalities. A decision by the Court on whether to grant certiorari is anticipated in the near future. *See* Supreme Court Docket, *Bank Melli Iran New York Representative Office v. Weinstein*, No. 10-947.

*Calderon,* 2011 WL 6155987, at \*8 (emphasis in original) (quoting *Board of Trustees of the Leland Stanford Junior University v. Roche Molecular Systems, Inc.,* --- U.S. ----, 131 S.Ct. 2188, 2196 (2011) ("*Stanford*").

Significantly, the United States Government has repeatedly made its position clear that only blocked assets *owned by* a "terrorist party" are subject to attachment and execution under TRIA section 201. *See* Statement of Interest of the United States of America in Response to Petitioners' Motion for Immediate Turnover of Funds ("Statement of Interest of the United States"), at 10-11, *Rux v. ABN Amro Bank NV,* 08 Civ. 6588 (AKH) (S.D.N.Y.) (Dkt. # 185, filed on Jan. 12, 2009)[10] ("The plain meaning of the phrase 'of that terrorist party' [in TRIA section 201] clearly requires ownership on the part of that terrorist party; the statute's text does not support attachment of assets that do not belong to the 'terrorist party.'").

The Government recently reaffirmed its position that only blocked assets owned by a "terrorist party" are subject to attachment and execution under TRIA section 201 in an *amicus* brief filed on behalf of, *inter alia,* the U.S. Department of the Treasury and the U.S. Department of State, in the pending appeal before the United States Court of Appeals for the First Circuit in *Rubin v. Islamic Republic of Iran. See* Brief for the United States as *Amicus Curiae* in Support of the Appellees, *Rubin v. Islamic Republic of Iran,* at 14, No. 11-2144 (1st Cir. filed June 8, 2012) (the "United States *Amicus* Brief in *Rubin*") ("TRIA does not, as plaintiffs contend, permit them to attach the artifacts [at issue in *Rubin,* which are currently in the possession of museums in the United States] if those assets are not owned by Iran. It would not be sufficient, as

---

[10]   The Statement of Interest of the United States is attached as <u>Exhibit C</u> to the March 15, 2012 Declaration of David M. Lindsey in Support of the Bank Markazi Motion (the "March 15 Lindsey Declaration").

plaintiffs argue, to show that the assets might have been subject to the 1979 OFAC regulation that blocked all property in which Iran has 'any interest of any nature whatsoever[.]'").[11]

Plaintiffs nonetheless contend that Judge Cote's decision in *Calderon* (and by extension, the stated position of the United States Government) is "flawed" and "lacks any persuasive force,"[12] and that this Court instead should follow the decisions of two other courts in this district, which found that all blocked assets *irrespective of ownership* are available for distribution to judgment creditors of "terrorist parties" under TRIA section 201(a). *See Hausler v. JPMorgan Chase Bank*, N.A., 740 F. Supp. 2d 525 (S.D.N.Y. 2010) (*"Hausler I"*); *Hausler v. JPMorgan Chase Bank*, N.A., --- F. Supp. 2d ----, No. 09 Civ. 10289 (VM), 2012 WL 601034 (S.D.N.Y. Feb. 22, 2012) (*"Hausler II"*); *Levin v. Bank of New York*, No. 09 CV 5900 (RPP), 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011).

The Second Circuit will soon resolve this split of opinion among courts in this district. *Calderon* and *Hausler II* have both been appealed to that court, and both appeals will be heard in tandem. *Calderon-Cardona v. JP Morgan Chase Bank, N.A.,* No. 12-75 (2d Cir.) (Dkt. # 56, Apr. 16, 2012). Further, the United States Government has stated that it is considering participating as *amicus curiae* in both appeals "[g]iven the significant governmental interests that may be at stake." *See* Motion of the United States of America for a 30-day Extension of Time to File an Amicus Brief, *Calderon-Cardona v. JP Morgan Chase Bank, N.A.*, at 5, No. 12-75 (2d Cir.) (Dkt. # 64-2) (May 15, 2012).[13]

---

[11]   A copy of the United States *Amicus* Brief in *Rubin* is attached as <u>Exhibit A</u> to the June 15, 2012 Declaration of David M. Lindsey in Opposition to Plaintiffs' Motion (the "June 15 Lindsey Declaration").

[12]   Pls.' Br. at 26.

[13]   A copy of the May 15, 2012 Motion of the United States of America for a 30-day Extension of Time to File an Amicus Brief is attached as <u>Exhibit B</u> to the June 15 Lindsey Declaration.

As of the date of this writing, however, the Government has already made its position clear in the United States *Amicus* Brief in *Rubin* that "the analysis in *Hausler* cannot be squared with TRIA's language," and that the *Calderon* court "correctly rejected *Hausler's* reasoning."[14] There is no reason to think the Government will take a different position if and when it appears as *amicus curiae* in the pending appeal in *Calderon*.

In the interim, to avoid duplicative briefing, Bank Markazi will not repeat here all of the arguments previously raised by Bank Markazi and Clearstream, respectively, demonstrating that the plain language of TRIA section 201(a) limits the assets subject to attachment and execution under that statute to assets actually owned by the "terrorist party," as the *Calderon* court found. Instead, Bank Markazi respectfully refers the Court to the pertinent arguments in the Bank Markazi Motion Brief and the Clearstream Reply.[15]

Briefly, however, none of Plaintiffs' arguments in support of their TRIA section 201 claim withstands scrutiny. *First,* the standard Plaintiffs suggest the Court should apply to determine whether TRIA section 201 preempts state property law is incorrect.[16] On the contrary,

---

[14]  United States *Amicus* Brief in *Rubin* (June 15 Lindsey Declaration, Ex. A), at 18.

[15]  *See* Bank Markazi Motion Br. at 10-17; Clearstream Reply at 20-31.

[16]  *See* Pls.' Br. at 17-19. The "notwithstanding" clause in TRIA section 201 is irrelevant to the Court's preemption analysis. As the Second Circuit has explained, "the 'notwithstanding' clause applies only when some 'other provision of law' *conflicts with* TRIA." *Smith v. Federal Reserve Bank of New York,* 346 F.3d 264, 271 (2d Cir. 2003) (emphasis added).

Here, there is no conflict between TRIA and state law. Indeed, "[n]owhere in TRIA is there a definition of 'property' or 'property ownership,' or any other indication that the statute intends to create a special regime of federal property interests or rights." *Calderon,* 2011 WL 6155987, at *9. Nor does Executive Order 13599 pre-empt state law, as it does not purport to define "property *ownership.*" *See id.* at *12 (emphasis in original). Nothing in the Executive Order "impl[ies] that simply because a certain piece of 'property' or 'property interest' is blocked pursuant to the sanctions regime [against Bank Markazi], it therefore belongs to [Bank Markazi]." *Id.*

In other words, "federal and state law d[o] not conflict at all; they simply address[] different issues." *Bank of New York v. Norilsk Nickel,* 14 A.D. 3d 140, 147 (1st Dep't 2004). Thus, "there are no 'conflicting portions' of state law that TRIA might supersede." *Calderon,* 2011 WL 6155987, at *14. "Rather, . . . state law fills an interpretive gap in TRIA by giving meaning to the phrase 'of that terrorist party.'" *Id.* Accordingly, TRIA section 201 leaves "ample room" for the application of New

the Second Circuit's opinion in *Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, 609 F.3d 111, 117 (2d Cir. 2010) (*"Asia Pulp"*) provides the correct standard here.  Because none of TRIA section 201, the Executive Order, the Iranian Transaction Regulations ("ITR") nor the International Emergency Economic Powers Act ("IEPPA") creates or defines any property right or interest, the Court should apply the two-step analysis outlined in *Asia Pulp*.  Thus, the Court must look to state law to determine what property rights Bank Markazi has to the now-blocked Restrained Bonds.  Then, the Court must look to the federal statute, TRIA section 201(a), to determine whether those property rights, as defined by state law, are sufficient to trigger the statute, *i.e.,* whether the Restrained Bonds constitute "the blocked assets of" a terrorist party.[17]

*Second,* Plaintiffs' argument that all blocked assets "*automatically* become available for execution" by judgment creditors[18] ignores the plain language of TRIA section 201(a) limiting the assets available for execution under that provision to "the blocked *assets of*" a terrorist party. As Clearstream has stated, the scope of Executive Order 13599, which provides for the blocking of "*[a]ll property and interests in property* of any Iranian financial institution,"[19] is exceedingly broad and "arguably covers any property interest, ranging from complete ownership to partial, beneficial, future or non-legal interests in property."[20]  *See generally Holy Land Foundation for Relief and Development v. Ashcroft,* 333 F.3d 156, 162-63 (D.C. Cir. 2003) (any "interest" in property may be subject to blocking; "[t]he interest need not be a legally protected one").

TRIA section 201(a), in contrast, is worded more narrowly and applies only to the subset of blocked assets that are owned by the "terrorist party."  This limitation is necessary to avoid the

---

York law to determine "which subset of 'blocked assets' constitutes those that are 'of that terrorist party' and that should therefore be subject to attachment." *Id.* at *12.

[17]   *See* Bank Markazi Motion Br. at 17-18; Clearstream Reply at 17-19.

[18]   Pls. Br. at 13 (emphasis in original).

[19]   Executive Order 13599 § 1(b) (emphasis added).

[20]   Clearstream Reply at 22.

"absurd results" that would ensue if there were no requirement of ownership. *Calderon,* 2011 WL 6155987, at *11. Here, if Plaintiffs were permitted to execute against Clearstream's cash account with Citibank, Clearstream would be exposed "to the risk of turnover of its cash to Plaintiffs while its liability to Bank Markazi remains unresolved."[21]   The requirement of ownership inherent in TRIA section 201(a) is designed to avoid precisely that kind of "absurd result."

*Weinstein v. Islamic Republic of Iran,* 609 F.3d 43 (2d Cir. 2010) is not to the contrary. Although the requirement of ownership under TRIA section 201(a) was not before the court in *Weinstein,* the Second Circuit's holding in that case is nonetheless instructive. In *Weinstein,* the Second Circuit held that "Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against *property held in the hands of an instrumentality* of the judgment debtor[.]" *Weinstein,* 609 F.3d at 50 (emphasis added); *see also id.* at 49 (the "parties *whose* blocked assets are subject to execution or attachment . . . can include not only the terrorist party but also 'any agency or instrumentality of that terrorist party'") (emphasis added).  Far from being "held in the hands of" Bank Markazi, the assets at issue in this Turnover Action consist of securities and cash held in *Clearstream's account* with Citibank.

The *Weinstein* court's focus on *possession*—"property held in the hands of an instrumentality"—in defining the scope of TRIA section 201(a) is consistent with the requirement of ownership inherent in TRIA section 201(a) because "the party who possesses property *is presumed to be the party who owns it.*" *Karaha Bodas Co., L.L.C. v. Perusahaan*

---

[21]   Clearstream Reply at 43.

*Pertambangan Minyak Dan Gas Bumi Negara ("Pertamina")*, 313 F.3d 70, 86 (2d Cir. 2002) (emphasis added).

   *Third,* Plaintiffs urge the Court to adopt the *Hausler* court's flawed conclusion that *the only limitation* on the blocked assets available for distribution to judgment creditors under TRIA section 201(a) is that blocked assets in which a particular "terrorist state" (*e.g.,* Cuba) has some undefined interest cannot be used to satisfy a judgment against a different "terrorist state" (*e.g.,* Iran).[22]  *See Hausler II,* 2012 WL 601034, at *9.  While that is plainly *one of* the limitations inherent in TRIA section 201(a), it is not *the only* requirement imposed by the plain words of the statute.  The United States Government agrees.[23]

   The critical flaw in the *Hausler* court's analysis lies in that court's exclusive focus on the word "that" in the operative phrase—"the blocked assets of that terrorist party"—while ignoring the word "of."  As a result, the *Hausler* court's interpretation contravenes "the cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute[.]"  *Williams v. Taylor,*   529 U.S. 362, 364 (2000).   Applying that basic rule of construction here, it is clear that TRIA section 201(a) requires *both* (1) that the blocked assets in question must be owned by a "terrorist party" *and* (2) that the owner of the blocked assets must be the same "terrorist party" that is liable on the underlying judgment.

   *Fourth,* Plaintiffs' reliance on another phrase in TRIA section 201(a) containing the word "of"—namely the statute's reference to "any agency or instrumentality *of that terrorist party"*—

---

[22]   *See* Pls.' Br. at 28.

[23]   *See* U.S. Amicus Brief in *Rubin* (June 15 Lindsey Decl., Ex. A) at 18-19 ("there is no reason to believe" that Congress intended the operative phrase in TRIA section 201—"the blocked assets of that terrorist party"—solely to clarify the "obvious" proposition that "Iran's judgment creditors can pursue only assets blocked under an Iran sanctions scheme and cannot pursue assets blocked under, for example, the Cuba sanctions").

only further undermines their argument.[24]  There, too, Congress's use of the word "of" is plainly indicative of ownership.  FSIA section 1603(b) defines an agency or instrumentality of a foreign state to "include[] any entity in which a government has 'a majority of . . . shares or other ownership interest.'"  *Karaha Bodas,* 313 F.3d at 76 n.4 (quoting 28 U.S.C. § 1603(b)).[25]  Consistent with this requirement, Plaintiffs expressly allege that Bank Markazi "is 100% *owned by* . . . the Government of Iran."[26]

*Fifth,* Plaintiffs claim that the legislative history of TRIA and the United States Supreme Court's opinion in *Ministry of Defense & Support of the Armed Forces of the Islamic Republic of Iran v. Elahi,* 556 U.S. 366 (2009), support their argument that the scope of TRIA section 201 is not limited to blocked assets owned by the "terrorist party."[27]  That argument likewise fails.  As Clearstream has demonstrated, the legislative history does not support Plaintiffs' argument that TRIA section 201 preempts state property law.[28]  Further, as Plaintiffs acknowledge, the Supreme Court instructed in *Elahi* that statutory language should be interpreted in accordance with "the ordinary meaning" of the words Congress used.  *Elahi,* 556 U.S. at 382; *see generally Roberts v. Sea-Land Servs., Inc.,* 132 S.Ct. 1350, 1356 (2012) ("[I]n construing . . . any statute, we look first to its language, giving the words used their ordinary meaning.") (internal quotation and citation omitted).

That is precisely Bank Markazi's argument here: the requirement of ownership flows from the plain and ordinary meaning of the words "blocked *assets of*" a terrorist party in TRIA

---

[24]  *See* Pls.' Br. at 29.

[25]  As the United States Supreme Court has explained, the phrase "other ownership interest" in FSIA section 1603(b) is designed to account for "ownership forms in other countries, or even in this country, that depart from conventional corporate structures" and are not based on "ownership of stock."  *Dole Food Co. v. Patrickson,* 538 U.S. 468, 476 (2003).

[26]  Pls.' Br. at 3; Pls.' Rule 56.1 Statement, ¶ 14 (emphasis added).

[27]  *See* Pls.' Br. at 14-16.

[28]  *See* Clearstream Reply at 28-29.

section 201. Thus, in *Stanford*, the Supreme Court cited no fewer than three dictionary definitions in support of its conclusion that interpretation of the word "of" as denoting ownership "follows from a common definition" of that word. *Stanford*, 131 S.Ct. at 2196.

Nor is *Stanford* the only case in which the Supreme Court has interpreted Congress's use of the word "of" in a statute as denoting ownership. The Court has reached the same conclusion on at least two other occasions. *See Flores-Figueroa v. United States*, 556 U.S. 646, 648, 657 (2009) (holding that identity theft statute imposing criminal sanctions where an offender "knowingly transfers, possesses, or uses . . . a means of identification *of another person*" "requires the Government to show that the defendant knew that the means of identification at issue *belonged to another person"*) (emphasis added); *Ellis v. United States*, 206 U.S. 246, 254, 259 (1907) (holding that "the most natural meaning of [the statutory phrase] '*of the United States*' is '*belonging to the United States*'" where employment statute established a maximum eight-hour workday for laborers employed "upon any of the public works of the United States").

*Sixth*—and finally, Plaintiffs' assertion that applying TRIA section 201 as written somehow would allow "terrorist states" to "derive the benefits of investing in the United States"[29] is meritless. If the Court dismisses this Turnover Action, the Restrained Bonds will remain exactly where they are now—frozen at Citibank in New York—and Bank Markazi will not derive any "benefit" from those assets. Far from giving rise to a "logical inconsistency"[30] as Plaintiffs contend, this result comports with the purpose of blocking orders such as Executive Order 13599, which is "to put control of foreign assets in the hands of the President" for

---

[29]   Pls.' Br. at 20.

[30]   Pls.' Br. at 20.

potential "use in negotiating the resolution of a declared national emergency." *Dames & Moore v. Regan,* 453 U.S. 654, 673 (1981).[31]

This was the purpose and effect of Presidential blocking orders for decades prior to the passage of TRIA in 2002, and—at least with respect to blocked assets that are not subject to TRIA section 201 because they are not owned by any "terrorist party"—it continues to be the purpose and effect of blocking orders such as Executive Order 13599 today.[32] Maintaining the Restrained Bonds under the Executive Branch's control pursuant to Executive Order 13599 is particularly appropriate here in light of the ongoing, sensitive negotiations between the United States, its European allies and Iran concerning that country's nuclear program.[33]

> B.  Under the UCC and Luxembourg Law, Bank Markazi Is Not the Owner of the Restrained Bonds

As Clearstream has demonstrated, Bank Markazi is not the owner of the Restrained Bonds under Article 8 of the UCC, nor under Luxembourg law, the law governing Bank Markazi's rights arising out of its security entitlements pursuant to the UCC's choice of law provisions.[34] Instead, Bank Markazi's assets are held at Clearstream in Luxembourg. Even were the Court to consider it, the application of New York common law likewise would establish Luxembourg as the situs of Bank Markazi's property interest.[35]

---

[31]  Here, Executive Order 13599 provides that it was issued "in order to take additional steps with respect to the national emergency declared in Executive Order 12957 of March 15, 1995[.]" Executive Order 13599, Preamble.

[32]  Indeed, as former President Clinton stated in 1998 in connection with a predecessor provision of TRIA section 201, FSIA section 1610(f)(1)(A), distributing blocked assets to private plaintiffs would "effectively eliminate" an "important source of leverage" in negotiations with foreign states. 1998 Pub. Papers, 1843, 1847 (Oct. 23, 1998). *See* Bank Markazi Motion Br., at 25.

[33]  As previously noted in the Bank Markazi Motion Brief, while the authority of the Executive Branch under *United States law* to block any property in which a sanctions target has an interest is clear, Bank Markazi does not concede that such blocking is appropriate as a matter of *international law,* including without limitation under the Treaty of Amity. *See* Bank Markazi Motion Br. at 29 n.44.

[34]  *See* Clearstream Opening Brief at 21-32; Clearstream Reply at 48-63.

[35]  *See* Clearstream Opening Br. at 32-38; Clearstream Reply at 63-77.

Clearstream has additionally demonstrated that the redemption of the Restrained Bonds (which, at the time they were first restrained in June 2008, consisted of sovereign and supranational bonds) in the ordinary course in the nearly four years that those assets have now been restrained has no impact on ownership of any cash resulting from such redemptions.[36]

To avoid duplicative briefing, Bank Markazi will not repeat Clearstream's arguments here and instead adopts and incorporates by reference Clearstream's arguments as though fully set forth herein.

C.    Plaintiffs' "Admission" Argument Is Irrelevant to the Purely Legal Issue of Whether Bank Markazi Is the Owner of the Restrained Bonds under the UCC and Luxembourg Law

Plaintiffs' argument that the Restrained Bonds should be deemed "blocked assets of" Bank Markazi for purposes of TRIA Section 201 based on the Bank's purported "admission" that it is the beneficial owner of those assets fails as a matter of law.[37]

As stated above, Clearstream has demonstrated in this Turnover Action that Bank Markazi *is not* the owner of the Restrained Bonds under Article 8 of the UCC and Luxembourg law. Instead, Bank Markazi's assets are held at Clearstream in Luxembourg. *See* Section II.B, *supra*. Plaintiffs have failed to rebut Clearstream's showing.

Even accepting Plaintiffs' claims of "admission" at face value, therefore, any assertion by Bank Markazi that it is the beneficial owner of the Restrained Bonds obviously could not *confer* ownership on Bank Markazi if the Bank is not the owner of those assets *as a matter of law. See, e.g., CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 654 F.3d 276, 297 n.8 (2d Cir. 2011)

---

[36]    *See* Clearstream Reply at 37-48; *see also* Bank Markazi Motion Br. at 19-21.

[37]    Plaintiffs' assertion that Bank Markazi has somehow "admitted its *full ownership"* (as opposed to beneficial ownership) of the Restrained Bonds is baseless in any event. *See* Pls.' Br. at 3 (emphasis in original).  Plaintiffs do not (and cannot) allege that Bank Markazi has—or has ever claimed to have— legal title to the Restrained Bonds.  *See* BLACK'S LAW DICTIONARY (9th ed. 2009) (defining a "beneficial interest" as "[a] right or expectancy in something (such as a trust or an estate), as opposed to legal title to that thing").

("beneficial ownership is a legal question" for the court; a party's *assertions* of ownership "add nothing to [that party]'s rights" under applicable law). Nor is that purely *legal* question of ownership susceptible to an "admission" by Bank Markazi.[38]

Further, it is important to set the record straight concerning the context in which Bank Markazi's purported "admission" of beneficial ownership occurred. Plaintiffs fail to mention that the Prior Bank Markazi Brief expressly adopted what Bank Markazi then understood Clearstream's argument to be, namely that the assets of Bank Markazi "are located outside the United States and are therefore not subject to attachment and execution under the FSIA."[39] Bank Markazi added: "If the Court grants the Clearstream Motion, it must also dismiss the Complaint in the Turnover Action for lack of subject matter jurisdiction under the FSIA, irrespective of the additional grounds for dismissal identified by Bank Markazi[.]"[40]

Those "additional grounds for dismissal" were the immunity of central bank property located *in the United States* from attachment and execution under FSIA section 1611(b)(1). The remainder of the Prior Bank Markazi Brief thus *assumed* that the Court might find that the Restrained Bonds constitute "property in the United States" of Bank Markazi within the meaning of FSIA section 1609. It was in *that* context, and based on that assumption, that Bank Markazi asserted its beneficial ownership of the assets.[41]

---

[38] *See New York State Nat'l Org. for Women v. Terry,* 159 F.3d 86, 97 n.7 (2d Cir. 1998) ("[J]udicial admissions . . . are statements of fact rather than legal arguments made to a court."); *DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund,* 975 F. Supp. 258, 267 n.14 (S.D.N.Y. 1997), *abrogated in part on other grounds, Strom v. Goldman, Sachs & Co.,* 202 F.3d 138 (2d Cir. 1999) ("It is well established that judicial admissions on questions of law have *no* legal effect.") (emphasis in original).

[39] Prior Bank Markazi Brief (Vogel Decl. Ex. I), at 6 & *id.* n. 2.

[40] *Id.*

[41] Beneficial ownership is not a precise term with a "generally accepted or universal definition[.]" *CSX Corp.,* 654 F.3d at 296. More importantly, beneficial ownership is a common law concept. As Clearstream has demonstrated, however, Bank Markazi's interest in the Restrained Bonds is defined and governed solely by Article 8 of the UCC and Luxembourg law, to which the UCC's choice of law

Plaintiffs' reliance on individual snippets of Bank Markazi's argument in the Prior Bank Markazi Brief is therefore disingenuous at best.   To the extent that Bank Markazi misapprehended the precise nature of Clearstream's argument at that time, this was because the Bank did not yet have access to any of the filings under seal in the then-separate, but related, Enforcement Proceeding, *Peterson v. Islamic Republic of Iran,* Case. No. 18 Misc. 302 (S.D.N.Y.), including Clearstream's argument in support of its then-pending Motion.[42]   And the reason Bank Markazi did not have access to those filings was because *Plaintiffs objected* to the Bank's request for access.   Accordingly, Bank Markazi expressly reserved its right to amend or supplement its arguments in the Prior Bank Markazi Brief.[43]

### III.   Plaintiffs May Not Execute Upon Bank Markazi's Assets Held at Clearstream in Luxembourg

#### A.   This Court's Ruling in *Bank Of Tokyo* that Assets of Bank Markazi Held at a Foreign Financial Institution outside the United States Are Immune from Attachment and Execution under the FSIA Is Law of the Case in this Closely Related Turnover Action

This Court has already ruled that Plaintiffs may not restrain or execute upon assets of Bank Markazi held at a foreign financial institution outside the United States.   *Bank of Tokyo-Mitsubishi, UFJ, Ltd. New York Branch v. Peterson,* No. 12 Civ. 4038 (BSJ), 2012 WL 1963382, *2 (S.D.N.Y. May 29, 2012) ("*Bank of Tokyo*").   There, the Court rejected an attempt by these

---

provisions refer—not common law concepts such as beneficial ownership. *See* Clearstream Opening Br. at 22-28.

[42]   Plaintiffs have not (and cannot) argue that Bank Markazi should be estopped from relying on Clearstream's showing that the Bank is not, as a matter of law, the owner of the Restrained Bonds. Even assuming *arguendo* that Bank Markazi's legal arguments in the Prior Bank Markazi Brief were deemed inconsistent with the Bank's present argument, this Court never even considered (let alone adopted) Bank Markazi's arguments in the Prior Bank Markazi Brief.  Accordingly, there can be no issue of estoppel.  *See Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 148 (2d Cir. 2005) ("Our circuit has consistently limited the application of judicial estoppel to situations where a party both takes a position that is inconsistent with one taken *in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced.*") (internal quotation and citation omitted) (emphasis added).

[43]   *See* Prior Bank Markazi Brief (Vogel Decl. Ex. I), at 7 n.3.

very same Plaintiffs to restrain and execute against assets of Bank Markazi held at a Japanese Bank in Japan.

The Court's ruling in *Bank of Tokyo* is law of the case in this closely related Turnover Action and precludes any attempt by Plaintiffs to attach or execute against Bank Markazi's assets held at Clearstream in Luxembourg. *See Ovadia v. Top Ten Jewelry Corp.,* No. 04-CIV-2690 (RJH)(MHD), 2005 WL 1949970, *1 (S.D.N.Y. Aug. 12, 2005) (law of the case doctrine applies to issues previously determined in a closely related case); *Bank of Tokyo,* 2012 WL 1963382, *1 n.1 (describing this Turnover Action as "a related matter before this Court").[44]

As the Court found in *Bank of Tokyo,* "attachment and execution of property that is appurtenant to a foreign state and that is located outside the United States would violate the Foreign Sovereign Immunities Act, 28 U.S.C. § 1609 ('FSIA')." *Bank of Tokyo,* 2012 WL 1963382, at *2. As the Court further stated, the "limited exceptions to the otherwise complete immunity from attachment and execution to which a foreign state is entitled" under the FSIA apply "only with respect to property located within the United States." *Id.* at *2 n.3. Substantial precedent—and the text of the FSIA itself—support that conclusion.[45]

---

[44] "The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Johnson v. Holder,* 564 F.3d 95, 99 (2d Cir. 2009) (internal quotation and citation omitted); *accord Franconero v. Universal Music Corp.,* No. 02 Civ. 1963 (BSJ), 2011 WL 566794, *7 (S.D.N.Y. Feb. 11, 2011) (Jones, J.) (adhering to prior order in the absence of a "compelling reason" to deviate from it). Here, no reason (let alone a "compelling" reason) exists to depart from the Court's ruling in *Bank of Tokyo.*

[45] *See Elliott Assocs., L.P. v. Banco De La Nacion,* No. 96 Civ. 7916 RWS, 2000 WL 1449862, at *3 (S.D.N.Y. Sep. 29, 2000) ("[T]he FSIA's exception to immunity from attachment—whether for foreign states or their instrumentalities—extends at most to property located 'in the United States.'") (quoting 28 U.S.C. § 1609); *Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp.,* 921 F. Supp. 1113, 1119 (S.D.N.Y. 1996) ("Under the FSIA, assets of foreign states located outside the United States retain their traditional immunity from execution to satisfy judgments entered in United States courts."); *see also Aurelius Capital Partners, LP v. Republic of Argentina,* 584 F.3d 120, 130 (2d Cir. 2009) ("[T]he property that is subject to attachment and execution must be property in the United States of a foreign state[.]") (internal quotation and citation omitted).

On that basis, the Court vacated the Restraining Notice Plaintiffs had served on Bank of Tokyo-Mitsubishi, a Japanese Bank with a branch in New York, "to the extent that [the Restraining Notice] seeks attachment and execution of property and/or interests in property of the Judgment Debtors [*i.e.,* Iran and the Iranian Ministry of Information and Security or "MOIS"] or their agencies or instrumentalities that is located outside of the United States." *Bank of Tokyo-Mitsubishi, UFJ, Ltd. New York Branch v. Peterson,* No. 12 Civ. 4038 (BSJ) (S.D.N.Y. May 25, 2012) (Dkt. # 4).[46] Among the property this Court found to be immune from attachment and execution under the FSIA were "one or more accounts held in the name of the Central Bank of Iran [*i.e.,* Bank Markazi] located at Bank of Tokyo-Mitsubishi" outside the United States. *Bank of Tokyo,* 2012 WL 1963382, at *1.

Importantly, the Court held that Executive Order 13599 "*prohibits* the restraint of assets that are (1) held by non-United States persons and (2) located outside the United States." *Id.* (emphasis added). With respect to Bank of Tokyo-Mitsubishi in particular, the Court found that "[t]he Japanese branches of a Japanese bank are not United States persons regardless of the existence of a New York branch of the bank." *Id.*

*A fortiori,* therefore, Clearstream—a Luxembourg financial institution with only a representative office, as opposed to a full-fledged branch, in New York—is not a "United States person" for purposes of Executive Order 13599.[47] Accordingly, Executive Order 13599 does not

---

[46] A copy of the Court's May 25, 2012 Order is attached as <u>Exhibit C</u> to the June 15 Lindsey Declaration.

[47] As Clearstream has stated, "Clearstream's only presence in New York (indeed the entire United States) is a representative office, which is not authorized to conduct banking, settlement or clearing operations or engage in customer transactions." Clearstream Opening Br. at 6.

block Bank Markazi's assets held at Clearstream in Luxembourg, and those assets are not "blocked assets" within the meaning of TRIA section 201.[48]

Further, because Clearstream is not a "United States person," the Court's February 27, 2012 Order pursuant to 28 U.S.C. § 1610(c) directing the Clerk of the Court to issue a Writ of Execution "with respect to the property and interests in property of Iran and MOIS and/or property or interests in property of Iran's agencies and instrumentalities, including, but not limited to Iranian financial institutions, including . . . the Central Bank of Iran, *held by United States persons* . . . and located outside the United States" does not apply to Bank Markazi's assets held at Clearstream in Luxembourg.[49]   *See Bank of Tokyo,* 2012 WL 1963382, at *1 (emphasis added).

Thus, the *Peterson* Plaintiffs in particular lack a valid Writ of Execution in this Turnover Action because their prior, June 12, 2008 Writ of Execution was issued by the Clerk of the Court *without prior judicial authorization,* in contravention of FSIA section 1610(c).[50]   *See Walters v. Indus. & Commercial Bank of China, Ltd.,* 651 F.3d 280, 291 (2d Cir. 2011) ("[FSIA] § 1610(c) . . . requires *a prior judicial determination* that the execution is warranted under one of the §

---

[48]   Because Bank Markazi's assets held at Clearstream in Luxembourg are not "blocked assets" pursuant to Executive Order 13599 and thus are not subject to TRIA section 201 in any event, Plaintiffs' argument that in cases where it applies, TRIA section 201 purportedly trumps the immunity of sovereign property located outside the United States pursuant to, *inter alia,* FSIA section 1610(a) and (b) self-evidently fails here. *See* Pls.' Br. at 18 n.8.

Indeed, Plaintiffs' argument would fail even absent this Court's ruling in *Bank of Tokyo.* In cases where it applies, TRIA section 201 does not simply supplant all of the provisions of the FSIA as Plaintiffs contend, but instead "must be read in the context of the overarching statutory scheme of the FSIA." *Levin,* 2011 WL 812032, at *10. As the *Levin* court found, there is simply "no evidence that Congress intended for TRIA to trump [FSIA] section 1610." *Id.* Thus, TRIA section 201 merely "subjects a class of Iran's *property in the United States* to execution and attachment in aid of execution." *Hegna v. Islamic Republic of Iran,* 380 F.3d 1000, 1002 (7th Cir. 2004) (emphasis added).

[49]   A copy of the Court's February 27, 2012 Order is attached as <u>Exhibit D</u> to the June 15 Lindsey Declaration.

[50]   *See* Bank Markazi's Response to Plaintiffs' Rule 56.1 Statement of Undisputed Facts, at ¶ 2.

1610(a) or (b) exceptions and with respect to specifically identified property.") (emphasis added).[51]

    That Plaintiffs' claim here purportedly arises under TRIA section 201 does not obviate the requirement of compliance with FSIA section 1610(c).  *Levin,* 2011 WL 812032, *10 ("While the Levins are pursuing attachment under TRIA, their judgment against Iran was obtained via the exception to sovereign immunity found at 1605(a)(7), not in TRIA. Therefore, they remain subject to the requirements of 1610(c), and, since they are not in compliance, their writs are invalid.").[52]

                    B.       *Koehler v. Bank Of Bermuda* Has No Bearing on the Immunity of Bank Markazi's Assets Held at Clearstream in Luxembourg from Attachment and Execution under the FSIA

    The New York Court of Appeals' decision in *Koehler v. Bank of Bermuda Ltd.,* 12 N.Y.3d 533 (2009) has no bearing on the immunity of sovereign property located outside the United States from attachment and execution under the FSIA.[53]  *Koehler* stands for the proposition—in an ordinary turnover action not involving sovereign property and not arising under the FSIA—that "a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee." *Koehler,* 12 N.Y.3d at 541.[54]

---

[51]   Indeed, this Court has previously vacated restraining notices in a case where no court had "specifically passed upon the propriety of [a specific] Restraining Notice," notwithstanding the existence of a court order authorizing the judgment creditor to "undertake any attachment and/or execution against any assets of [sovereign] defendants as may be necessary to enforce the Judgment[.]" *Trans Commodities, Inc. v. Kazakhstan Trading House and Republic of Kazakhstan,* No. 96 CIV. 9782 (BSJ), 1997 WL 811474 (S.D.N.Y. May 28, 1997).

[52]   As Clearstream has demonstrated, the *Peterson, Acosta, Greenbaum, Heiser, Levin* and *Valore* Plaintiffs are estopped from contesting the *Levin* court's rulings on issues of law because they were all parties to that case.  *See* Clearstream Reply at 73-74.

[53]   *See* Clearstream Opening Br. at 40-42.

[54]   As Clearstream points out, the *Koehler* court did not consider the applicability of the "separate entity" rule under New York law.  That rule "dictates that each branch of a bank [be] treated as a separate

However, *Koehler* is simply "not on point" where a plaintiff seeks to restrain and execute upon sovereign assets in an account located outside the United States. *Aurelius Capital Partners, LP v. Republic of Argentina,* No. 07 Civ. 2715 (TPG), 2010 WL 768874, *4 (S.D.N.Y. Mar. 5, 2010).  Instead, as the court stated there, "the ultimate issue" of whether a plaintiff may attach and execute against sovereign assets maintained in an account outside the United States "arises under the FSIA." *Id.*  Accordingly, because sovereign assets located outside the United States are immune from attachment and execution under the FSIA, the court in *Aurelius Capital* vacated the restraints on assets of Argentina maintained in accounts at a Citibank branch in Argentina. *Id.*  That the court unquestionably had personal jurisdiction over the garnishee bank in that case, Citibank, was irrelevant to the immunity of the sovereign assets under the FSIA. *See id.* at *1 (no issue of personal jurisdiction over the garnishee as Citibank "has its headquarters in New York City").

Not surprisingly, Plaintiffs cite no case (and, as far as we are aware, none exists) in which a New York state or federal court has ever relied on *Koehler* to require a garnishee, let alone a sovereign defendant, to turn over sovereign property located outside the United States in a turnover action in New York.[55]

Moreover, this Court lacks personal jurisdiction over Bank Markazi—the *sine qua non* under *Koehler* for a court's authority to order the turnover of even *non-sovereign,* out-of-state

---

entity for attachment purposes." *Allied Maritime, Inc. v. Descatrade SA,* 620 F.3d 70, 74 (2d Cir. 2010) (internal quotation and citation omitted, alteration in original). *See* Clearstream Opening Br. at 41.

[55]   In *Eitzen Bulk A/S v. Bank of India,* 827 F. Supp. 2d 234 (S.D.N.Y. 2011), a court in this district applied *Koehler* to require a state-owned Indian garnishee bank to produce documents in response to a subpoena served on that bank's New York branch "even if those materials are located outside New York" where the bank had waived sovereign immunity. *Eitzen Bulk* has no relevance here because the judgment debtor in that case was a private party rather than a sovereign.  Thus, the immunity of sovereign assets located outside the United States from attachment and execution under the FSIA was not at issue in *Eitzen Bulk.*

property. *Koehler,* 12 N.Y.3d at 541 (only a "court with personal jurisdiction over a defendant" may order that defendant to turn over out-of-state property).

In *Bank of Tokyo,* this Court ruled that the FSIA and Executive Order 13599 (the purported basis for Plaintiffs' TRIA section 201 claim) preclude any attempt by Plaintiffs to restrain or execute upon assets of Bank Markazi held at a foreign financial institution outside the United States. Thus, the Court has already determined that it lacks subject matter jurisdiction over any such claim under the FSIA. As a matter of law, therefore, the Court also lacks *personal* jurisdiction over Bank Markazi under the FSIA. *See Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 485 n.5 (1983) (under the FSIA, "both statutory subject matter jurisdiction (otherwise known as 'competence') and personal jurisdiction turn on application of the substantive provisions of the Act").[56]

### C.   Plaintiffs' Waiver and Ancillary Jurisdiction Arguments Fail as a Matter of Law

Plaintiffs' brief half-heartedly alludes to the conclusory (and inaccurate) allegation in the Complaint that Iran has somehow waived Bank Markazi's "immunity from collection."[57] Under

---

[56]  Although the issue is moot in light of the Court's ruling in *Bank of Tokyo,* we note that TRIA section 201 could not confer personal jurisdiction over Bank Markazi in any event. Instead, as the Second Circuit held in *Weinstein v. Islamic Republic of Iran,* 609 F.3d 43, 50 (2d Cir. 2010), "Section 201(a) of TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings *against property* held in the hands of an instrumentality of the judgment-debtor." (emphasis added). In cases where it applies, TRIA section 201 thus confers jurisdiction only over *property*; it does not confer personal jurisdiction over the sovereign instrumentality itself.

This limitation is consistent with the structure and legislative history of the FSIA. *See* HOUSE REPORT NO. 94-1487, H.R. REP. 94-1487, 23, 1976 U.S.C.C.A.N. 6604, 6622. ("Federal district courts [have] original jurisdiction *in personam* against foreign states (defined as including political subdivisions, agencies, and instrumentalities of foreign states)," but personal jurisdiction extends only to claims "with respect to which the foreign state is not entitled to immunity *under sections 1605-1607"* of the FSIA) (emphasis added).

[57]  Compl. ¶ 8; *see* Pls.' Br. at 22-23. Bank Markazi has already refuted Plaintiffs' unsupported waiver allegation in the Bank's Motion to Dismiss. To the extent that Plaintiffs have amplified on their waiver theory in opposition to that motion, Bank Markazi will further demonstrate in reply that there has been no waiver of immunity.

the FSIA, however, a waiver of immunity is relevant only with respect to "*property in the United States* of a foreign state." 28 U.S.C. § 1609 (emphasis added).  As a matter of law, therefore, Plaintiffs' waiver allegation is immaterial to the immunity of Bank Markazi's assets held *outside the United States,* at Clearstream in Luxembourg.

Finally, Plaintiffs' argument that the Court may exercise ancillary jurisdiction over their claims against Bank Markazi's assets held at Clearstream in Luxembourg likewise fails in light of the Court's ruling in *Bank of Tokyo. Weinstein* and *Weininger v. Castro,* 462 F. Supp. 2d 457, 489-90 (S.D.N.Y.), relied on by Plaintiffs, are inapposite because the issue in both cases was whether sovereign assets *in the United States* were subject to attachment and execution under TRIA section 201.

Here, the Court has already determined that the FSIA and Executive Order 13599 preclude any attempt by Plaintiffs to attach or execute upon assets of Bank Markazi held at a foreign financial institution *outside the United States.*  Accordingly, TRIA section 201 provides no basis for subject matter jurisdiction (whether ancillary or otherwise) over Plaintiffs' claims against such assets.

## CONCLUSION

For all of the foregoing reasons, Bank Markazi respectfully requests that the Court deny

Plaintiffs' Motion for Partial Summary Judgment.

Dated:      New York, New York
June 15, 2012

Respectfully Submitted,

David M. Lindsey
James M. Hosking
Andreas A. Frischknecht
Yasmine Lahlou

**CHAFFETZ LINDSEY LLP**
505 Fifth Avenue, 4th Floor
New York, NY 10017
Tel. (212) 257-6960
Fax (212) 257-6950
david.lindsey@chaffetzlindsey.com
www.chaffetzlindsey.com

*Attorneys for Defendant Bank Markazi*