UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate Of James C. Knipple (Dec.), et. al., <br><br> Plaintiffs, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN; BANK MARKAZI a/k/a CENTRAL BANK OF IRAN; BANCA UBAE SpA; CITIBANK, N.A., and CLEARSTREAM BANKING, S.A., <br><br> Defendants. | Case No.: 10 CIV 4518 (BSJ)(GWG) <br><br> **FILED UNDER SEAL** <br><br> **CONTAINS CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER** |

**DEFENDANT BANK MARKAZI'S LOCAL RULE 56.1 RESPONSE TO PLAITIFFS' CONSOLIDATED STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF BANK MARKAZI'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56.1(b) of the Local Rules of the United States Courts for the Eastern and Southern Districts of New York, Defendant Bank Markazi, the Central Bank of Iran ("Bank Markazi" or "the Bank") responds as follows to each statement, numbered 1 through 64, in Plaintiffs' Statement of Undisputed Material Facts in Support of Their Motion for Partial Summary Judgment in the above captioned action (the "Turnover Action").

**A.    General Undisputed Facts**

1. This turnover action involves the roughly $1.75 billion in funds comprised of securities and cash (the "Blocked Assets") owned by Defendant Bank Markazi a/k/a Central Bank of Iran ("Markazi") that are currently located in a "blocked," interest bearing suspense account at Citibank (the "Blocked Account") and which are the subject of restraints (the "Restraints") described below.

{00116399}

> Response No. 1: <u>Disputed in Part</u>. Bank Markazi disputes that the Blocked Assets are "owned by" the Bank. This statement constitutes an improper conclusion of law rather than a statement of fact.

2. The United States District Court, Southern District of New York issued a Writ of Execution, dated June 12, 2008 as to the Blocked Assets, which were levied upon by the United States Marshal at Citibank, N.A. on June 13, 2008. Those actions had the effect of restraining the Blocked Assets under CPLR §5232(a).

   > Response No. 2: <u>Disputed in Part</u>. The June 12, 2008 Writ of Execution was issued by the Clerk of the Court, not by the Court itself. (*See* Declaration of Liviu Vogel in Support of Plaintiffs' Motion for Summary Judgment ("Vogel Decl."), Ex. A.)
   >
   > Further, Plaintiffs' statement that "[t]hose actions had the effect of restraining the Blocked Assets under CPLR §5232(a)" constitutes an improper conclusion of law rather than a statement of fact.

3. The Clerk of the United States District, Southern District of New York issued a Writ of Execution, dated October 17, 2008 as to the Blocked Assets, which were levied upon by the United States Marshal at Clearstream Banking S.A. on October 27, 2008. Those actions had the effect of restraining the Blocked Assets under CPLR §5232(a).

   > Response No. 3: <u>Disputed in Part</u>. Plaintiffs' statement that "[t]hose actions had the effect of restraining the Blocked Assets under CPLR §5232(a)" constitutes an improper conclusion of law rather than a statement of fact.

4. The Peterson Plaintiffs issued a Restraining Notice regarding the Blocked Assets dated June 16, 2008, and an Amended Restraining Notice dated June 20, 2008, and served the same upon Citibank, N.A. ("Citibank") on June 17, 2008 and June 24, 2008, respectively.

   Response No. 4: <u>Undisputed</u>.

5. The Peterson Plaintiffs issued a Restraining Notice regarding the Blocked Assets dated June 16, 2008, and an Amended Restraining Notice dated June 20, 2008, and served the same upon Clearstream Banking, S.A.. ("Clearstream") on June 16, 2008 and June 23, 2008, respectively.

   Response No. 5: <u>Undisputed</u>.

6. At a hearing on June 27, 2008, this Court ordered that the Blocked Assets remain restrained until further order of the Court.

Response No. 6: Undisputed.

7. Pursuant to the Peterson Plaintiffs' application dated May 28, 2009 for leave to serve a second restraining notice or for an order extending the restraining notices previously served upon Clearstream and Citibank, this Court, by way of Order dated June 23, 2009, continued the restraint of the Blocked Assets until further order of this Court.

   Response No. 7: Undisputed, with Clarification. The Court's June 23, 2009 Order provides in pertinent part for a continuation of the restraints "until the Court has determined whether Clearstream is, or could be made, a proper garnishee, assuming a fraudulent conveyance could be shown by Plaintiffs." (*See* Vogel Decl., Ex. F.)

8. This Court issued an order on May 10, 2010, which continued the restraints of the Blocked Assets.

   Response No. 8: Undisputed, with Clarification. The Court's May 10, 2010 Order provides in pertinent part for a continuation of the restraints "until 30 days after the date of this Order[.]" (*See* Vogel Decl. Ex. G.)

9. On June 11, 2010, the Court again extended the restraints of the Blocked Assets.

   Response No. 9: Undisputed, with Clarification. The Court's June 11, 2010 Order provides in pertinent part for a continuation of the restraints "until 15 days after the date of this Order[.]" (*See* Vogel Decl. Ex. H.)

10. On June 8, 2010, the Peterson Plaintiffs filed their complaint seeking turnover of the Blocked Assets, which had the effect of continuing the restraints on those assets pursuant to CPLR 5232 (a) until transfer or payment of the Blocked Assets is made.

    Response No. 10: Disputed in part. Plaintiffs' statement that the filing of their complaint "had the effect of continuing the restraints on those assets pursuant to CPLR 5232 (a) until transfer or payment of the Blocked Assets is made" constitutes an improper conclusion of law rather than a statement of fact.

11. The Peterson Plaintiffs' filed their Amended Complaint on October 20, 2010 and their Second Amended Complaint on December 7, 2011.

    Response No. 11: Undisputed.

12. Markazi has repeatedly admitted that the Blocked Assets are Markazi's own property. In Markazi's First Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction ("Markazi's First MOL"), Markazi admitted its *full ownership*, not just "beneficial" ownership, of the Blocked Assets in no fewer than six different passages.

Response No. 12: Disputed. Bank Markazi respectfully refers the Court to its Memorandum of Law dated May 11, 2011 (Vogel Decl. Ex. I) in Support of Its Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction, which speaks for itself.

Plaintiffs' statement that Bank Markazi has "admitted" ownership of the Blocked Assets constitutes an improper conclusion of law rather than a statement of fact. Ownership is a question of law that is not susceptible to "admission." Further, the phrase "full ownership" appears nowhere in the Bank's Memorandum of Law dated May 11, 2011.

13. Markazi has also submitted sworn testimony of two Markazi officers both of whom aver that the Blocked Assets are the "sole property of Bank Markazi and held for its own account" and one of whom also avers that Markazi "is the sole beneficial owner of The Restrained Securities."

    Response No. 13: Undisputed, with Clarification. Bank Markazi respectfully refers the Court to the Affidavit of Gholamhossein Arabieh (Vogel Decl. Ex. J) and the Affidavit of Ali Asghar Massoumi (Vogel Decl. Ex. K), which speak for themselves.

14. Markazi has also admitted that it is the Central Bank of Iran, was formed under Iranian law in 1960, is 100% owned by the Government of Iran and is an instrumentality of the Government of Iran.

    Response No. 14: Undisputed.

15. Markazi's account opening documents regarding its Clearstream account demonstrate that Markazi is 100% owned by the Islamic Republic of Iran.

    Response No. 15: Undisputed.

16. On February 5, 2012, by Executive Order 13599 ("E.O. 13599"), President Obama declared "[a]ll property and interests in property of" Iran or Markazi held in the United States or by a "United States person" "blocked" pursuant to the President's authority under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701.

    Response No. 16: Undisputed, with Clarification. Bank Markazi respectfully refers the Court to the full text of Executive Order 13599 (Vogel Decl. Ex. N), which speaks for itself.

17. The property blocked by means of E.O. 13599 includes the Blocked Assets. Accordingly, in a letter dated February 14, 2012, Citibank informed this Court that all of the assets restrained in this litigation have been blocked pursuant to E.O. 13599.

Response No. 17: Undisputed.

18. E.O. 13599 recognizes and responds to the critical role that Markazi plays in Iran's ongoing efforts to conceal and facilitate its evasion of international sanctions and other illegal conduct.

   Response No. 18: Disputed. This statement is not a statement of fact, but rather an improper characterization of the Executive Order.

   Executive Order 13599 refers only to "the deceptive practices of [Bank Markazi] to conceal transactions of sanctioned parties." Bank Markazi otherwise respectfully refers the Court to the text of Executive Order 13599 (Vogel Decl. Ex. N), which speaks for itself.

19. As a result, E.O. 13599 declares "[a]ll property and interests in property of Iran or Markazi held in the United States or by a "United States person" "blocked" pursuant to the President's authority under IEEPA, 50 U.S.C. § 1701 *et seq.*

   Response No. 19: Undisputed, with Clarification. Executive Order 13599 provides in relevant part for the blocking of property "in the United States" or "*within the possession or control* of a United States person." (Vogel Decl. Ex. N at Section 1(a) and (b) (emphasis added).)

   Bank Markazi otherwise respectfully refers the Court to the text of Executive Order 13599 (Vogel Decl. Ex. N), which speaks for itself.

20. Section 7 of E.O. 13599 further provides that, "[f]or the purposes of this order: (a) the term 'person' means an individual or entity; [and] (c) the term 'United States person' means any ... entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), *or any person in the United States.*"

   Response No. 20: Undisputed, with Clarification. The emphasis in the quoted language is absent from the text of Executive Order 13599.

   Bank Markazi otherwise respectfully refers the Court to the text of Executive Order 13599 (Vogel Decl. Ex. N), which speaks for itself.

21. Consistent with IEEPA, E.O. 13599 blocks *any property* within the possession or control of *any person subject to the jurisdiction of the United States* regardless of the property's location.

   Response No. 21: Disputed. This statement constitutes an improper conclusion of law rather than a statement of fact.

{00116399}

5

The phrase "the jurisdiction of the United States" is absent from Executive Order 13599, which refers to property "in the United States" or "in the possession or control of a United States person." The Executive Order defines a "United States person" as "any United States citizen, permanent resident alien, entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), or any person in the United States." (*See* Vogel Decl. Ex. N, Sections 1(a) and (b), & 7(c).)

Bank Markazi otherwise respectfully refers the Court to the text of Executive Order 13599 (Vogel Decl. Ex. N), which speaks for itself.

22. The execution of E.O. 13599 transformed the Markazi assets that the Court had previously restrained by means of Orders issued on June 27, 2008, June 23, 2009, May 10, 2010, and June 11, 2010, into "blocked" assets within the meaning of the TRIA.

    Response No. 22: Disputed in Part. Plaintiffs' characterization of the assets blocked pursuant to Executive Order 13599 as "the Markazi assets" constitutes an improper conclusion of law rather than a statement of fact.

    Plaintiffs' characterization of those assets as blocked "within the meaning of the TRIA" likewise constitutes an improper conclusion of law rather than a statement of fact.

23. Thus, no entity located in the United States or United States person can transfer, pay, export, withdraw, or otherwise deal in those blocked assets.

    Response No. 23: Disputed. This statement constitutes an improper conclusion of law rather than a statement of fact. Further, the term "entity located in the United States" appears nowhere in the text of Executive Order 13599.

    Bank Markazi otherwise respectfully refers the Court to the text of Executive Order 13599 (Vogel Decl. Ex. N), which speaks for itself.

24. Citibank is an entity located in the United States.

    Response No. 24: Undisputed.

25. Citibank complied with its obligations under E.O. 13599 by reporting to the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") that it had placed the Blocked Assets in the interest-bearing Blocked Account.

    Response No. 25: Disputed in Part. The statement that Citibank reported to OFAC that it had placed the Blocked Assets in the interest-bearing Blocked Account is undisputed. The statement that Citibank did so in compliance with Executive

Order 13599 constitutes an improper conclusion of law rather than a statement of fact.

Bank Markazi otherwise respectfully refers the Court to the text of Executive Order 13599 (Vogel Decl. Ex. N), which speaks for itself.

26. In compliance with E.O. 13599, Citibank advised this Court on February 14, 2012 "that the restrained funds at issue in this litigation have been designated as blocked funds and are being held in a Citibank account established in accordance with OFAC regulations."

    Response No. 26: Disputed in Part. The statement that Citibank advised this Court on February 14, 2012 "that the restrained funds at issue in this litigation have been designated as blocked funds and are being held in a Citibank account established in accordance with OFAC regulations" is undisputed. The statement that Citibank did so in compliance with Executive Order 13599 constitutes an improper conclusion of law rather than a statement of fact.

    Bank Markazi otherwise respectfully refers the Court to the text of Executive Order 13599 (Vogel Decl. Ex. N), which speaks for itself.

27. Citibank maintains the Blocked Account in this District.

    Response No. 27: Undisputed.

28. Markazi's March 15, 2012 brief in support of vacating the Restraints acknowledges that, "[b]ecause Bank Markazi plainly has an 'interest in' the Restrained Bonds, those assets have been blocked pursuant to" E.O. 13599.

    Response No. 28: Undisputed, with Clarification. Bank Markazi's March 15, 2012 Memorandum of Law is not "in support of vacating the Restraints" but rather in support of the Bank's Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction under the FSIA.

    Bank Markazi respectfully refers the Court to the text of its March 15, 2012 Memorandum of Law, which speaks for itself.

29. The Blocked Assets will soon consist solely of cash housed in the Citibank Blocked Account in this District. Indeed, the last bond in the Blocked Assets will mature and be converted to cash on April 25, 2012.

    Response No. 29: Undisputed.

## B. Undisputed Facts Regarding Peterson Plaintiffs

30. On October 23, 1983, the United States Marine barracks in Beirut, Lebanon were bombed by a suicide bomber resulting in the murder of 241 American servicemen operating under peacetime rules of engagement. This attack was regarded as the most deadly state-sponsored terrorist attack made against American citizens, until the tragic attacks on September 11, 2007.

    Response No. 30: Undisputed, with Clarification. Plaintiffs have not proffered any evidence in admissible form to support this statement.

    Bank Markazi lacks sufficient information to form a belief concerning the statement that "[t]his attack was regarded as the most deadly state-sponsored terrorist attack made against American citizens, until the tragic attacks on September 11, 2007 *(sic)*."

31. On October 3, 2001, the nearly one thousand plaintiffs in the action of *Deborah D. Peterson v. Islamic Republic of Iran,* which are many of the family members and estates of the 241 servicemen killed in the attach, filed a complaint in the United States District Court for the District of Columbia, Case No. 01-cv-2094, alleging the Islamic Republic of Iran and the Iranian Ministry of Information and Security were liable for damages from the attack because they provided material support and assistance to Hezbollah, the terrorist organization that orchestrated and carried out the bombing.

    Response No. 31: Undisputed, with Clarification. Plaintiffs have not proffered any evidence in admissible form to support this statement.

    Bank Markazi lacks sufficient information to form a belief concerning this statement.

32. On March 17-18, 2003, the District Court for the District of Columbia conducted a bench trial to determine the defendants' liability for their part in the perpetration of the attack.

    Response No. 32: Undisputed, with Clarification. Plaintiffs have not proffered any evidence in admissible form to support this statement.

    Bank Markazi lacks sufficient information to form a belief concerning this statement.

33. On May 30, 2003, the United States District Court for the District of Columbia issued an opinion, in the consolidated action styled *Peterson v. Islamic Republic of Iran,* 01-cv-2094 (RCL) ("Peterson Action"), finding that (a) the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS") legally responsible for providing material financial and logistical support to help carry out the murder of the 241 American servicemen at the United States marine barracks in Beirut, Lebanon on October 23, 1983 and (b) the surviving family members' suffered and would continue to suffer mental anguish and loss of society.

    Response No. 33: Undisputed.

34. On September 7, 2007, the United States District Court for the District of Columbia entered a Default Judgment in favor of plaintiffs and against the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, for compensatory damages in the amount of $2,656,944,877.00.

   Response No. 34: Undisputed.

35. The Judgment was entered pursuant to 28 U.S.C. § 1605(a)(7), now repealed and replaced by 28 U.S.C. §1605A, and remains unsatisfied in the amount of $2,656,944,877.00, plus post-judgment interest at the legal rate, against the Islamic Republic of Iran and the Iranian Ministry of Information and Security.

   Response No. 35: Disputed in Part. To the extent this statement is intended to suggest that plaintiffs are entitled to proceed under 28 U.S.C. §1605A following the repeal of 28 U.S.C. § 1605(a)(7), this statement constitutes an improper conclusion of law rather than a statement of fact.

   Bank Markazi lacks sufficient information to form a belief concerning the extent to which the Judgment remains unsatisfied.

36. On March 24, 2008, the Peterson Plaintiffs registered the September 2007 Judgment with this Court pursuant to 28 U.S.C. § 1963, under case number M18-302, judgment number 080472.

   Response No. 36: Undisputed.

37. Defendants Markazi, Clearstream, UBAE and Citibank were duly served with the Peterson Plaintiffs' Summons and Complaint and Amended Complaint in this action.

   Response No. 37: Disputed in Part. The statement that Bank Markazi, Clearstream, UBAE and Citibank were "duly" served constitutes an improper conclusion of law rather than a statement of fact.

38. Defendants Iran and MOIS were duly served with the Peterson Plaintiffs' Summons and Complaint and Amended Complaint in this action.

   Response No. 38: Disputed in Part. The statement that Iran and MOIS were "duly" served constitutes an improper conclusion of law rather than a statement of fact.

39. Default was entered against Iran and MOIS by this Court on November 17, 2011, and November 28, 2011, respectively, for their failure to file an answer or otherwise move with respect to the Peterson Plaintiffs' Amended Complaint.

   Response No. 39: Undisputed.

40. On December 7, 2011, the Peterson Plaintiffs filed their Second Amended Complaint. That complaint was served on counsel for Defendants Markazi, Clearstream, Citibank and UBAE.

   Response No. 40: Undisputed.

## C. Undisputed Facts Regarding Greenbaum and Acosta Plaintiffs

41. Third-Party Defendants Steven M. Greenbaum, on behalf of himself individually and as Administrator of the Estate of Judith (Shoshana) Lillian Greenbaum, deceased, Alan D. Hayman, and Shirlee Hayman (the "Greenbaum Judgment Creditors") hold an unsatisfied judgment against Iran and MOIS in the amount of $19,879,023, issued by the United States District Court for the District of Columbia pursuant to 28 U.S.C. §1605(a)(7). The judgment was obtained in an action arising from the August 9, 2001 suicide bombing of a restaurant in downtown Jerusalem, Israel. Plaintiffs, the husband, parents and estate of a woman killed in the attack, alleged that Iran and MOIS are liable for damages resulting from the attack because they provided material support and assistance to Hamas, the terrorist organization that orchestrated the bombing.

   Response No. 41: Disputed in Part. Bank Markazi disputes the statement that the Greenbaum Judgment Creditors hold an "unsatisfied" judgment in the amount of $19,879,023 because in *Levin et al. v. Bank of New York*, on June 30, 2011, Judge Patterson "grant[ed] the Levin Plaintiffs and the Greenbaum, Acosta and Heiser Judgment Creditors' joint motion for partial summary judgment and turnover of phase One Assets[.]" *Levin et al. v. Bank of New York*, Order dated June 30, 2011, 1:09-cv-05900-RPP-MHD (Docket No. 412). Bank Markazi lacks sufficient information to form a belief concerning the extent of the Greenbaum Judgment Creditors' recovery to date under that judgment.

42. The Greenbaum Judgment Creditors duly registered their judgment in the Southern District of New York on December 17, 2008.

   Response No. 42: Disputed in Part. The statement that the judgment was "duly" registered constitutes an improper conclusion of law rather than a statement of fact.

43. Carlos Acosta, Maria Acosta, Irving Franklin, Estate of Irma Franklin, Sonya Kahane, Cipporah Kaplan, Tova Ettinger, Baruch Kahane, Ethel Griffin as Administrator of Binyamin Kahane's Estate, and Rabbi Norman Kahane (the "Acosta Judgment Creditors") hold an unsatisfied judgment against Iran and MOIS in the amount of $350,172,000, including $50,172,000 in compensatory damages and an award of $300,000,000 in punitive damages, issued by the United States District Court for the District of Columbia pursuant to 28 U.S.C. §1605A. The judgment was obtained in an action arising from the assassination of Rabbi Meier Kahane and the shooting of Irving Franklin and U.S. Postal Police Officer Carlos Acosta on November 5, 1990, in New York City. Rabbi Meier

Kahane was killed, and Irving Franklin and Carlos Acosta were seriously wounded by El Sayyid Nosair. Nosair was and is a member of Al-Gam'aa Islamiyah, a terrorist organization headed by Sheik Omar Ahmad Ali Adbel Rahman and supported by Iran and MOIS.

> Response No. 43: Disputed in Part. Bank Markazi disputes the statement that the Acosta Judgment Creditors hold an unsatisfied judgment in the amount of $19,879,023 because in *Levin et al. v. Bank of New York*, on June 30, 2011, Judge Patterson "grant[ed] the Levin Plaintiffs and the Greenbaum, Acosta and Heiser Judgment Creditors' joint motion for partial summary judgment and turnover of phase One Assets[.]" *Levin et al. v. Bank of New York*, Order dated June 30, 2011, 1:09-cv-05900-RPP-MHD (Docket No. 412). Bank Markazi lacks sufficient information to form a belief concerning the extent of the Acosta Judgment Creditors' recovery to date under their judgment.

44. The Acosta Judgment Creditors duly registered their judgment in the Southern District of New York on December 1, 2008.

> Response No. 44: Disputed in Part. The Acosta Judgment Creditors' judgment was registered in the amount of $50,172,000. (Declaration of Curtis C. Mechling in support of Plaintiffs Motion for Partial Summary Judgment, Ex. F.) The statement that the judgment was "duly" registered constitutes an improper conclusion of law rather than a statement of fact.

## D. Undisputed Facts Regarding Heiser Plaintiffs

45. At approximately 9:50 p.m., Saudi Arabian time, on June 25, 1996, security guards stationed atop of Building 131 of the Khobar Towers complex in Saudi Arabia witnessed a large gasoline tanker truck pull up alongside the perimeter wall of the complex. The driver of the tanker truck jumped out and ran over to and got into a car that had pulled up near the tanker truck. The car sped off. The security guards became gravely concerned and immediately began to evacuate the Khobar Towers complex. The tanker truck, however, exploded with terrible force within approximately fifteen minutes. The force of the explosion equaled that of 20,000 pounds of TNT according to the later investigation. The explosion sheared off the face of Building 131 and reduced most of the building to rubble. Nineteen U.S. Air Force personnel were killed and hundreds of others were injured in the explosion. The U.S. Department of Defense later stated that the explosion was the largest non-nuclear explosion ever as of its date.

> Response No. 45: Undisputed, with Clarification. Plaintiffs have not proffered any evidence in admissible form to support this statement.
>
> Bank Markazi lacks sufficient information to form a belief concerning this statement.

46. The American citizens who were killed on June 25, 1996 as a result of the attack on the Khobar Towers include: (1) Master Sergeant Michael Heiser; (2) Captain Leland Timothy Haun; (3) Airman First-Class Justin R. Wood; (4) Senior Airman Earl F. Cartrette, Jr.; (5) Airman First Class Brian McVeigh; (6) Sergeant Millard D. Campbell; (7) Staff Sergeant Kevin J. Johnson; (8) Airman First Class Joseph E. Rimkus; (9) Airman First Class Brent E. Marthaler; (10) Technical Sergeant Thanh Van Nguyen; (11) Airman First Class Joshua E. Woody; (12) Airman First Class Peter J. Morgera; (13) Master Sergeant Kendall Kitson, Jr.; (14) Captain Christopher Adams; (15) Airman First Class Christopher Lester; (16) Senior Airman Jeremy A. Taylor; and (17) Technical Sergeant Patrick P. Fennig.

   Response No. 46: Undisputed, with Clarification. Bank Markazi lacks sufficient information to form a belief concerning this statement.

47. On September 29, 2000, the personal representatives of the Heiser, Haun, Wood, Cartrette, and McVeigh estates filed a complaint for wrongful death and intentional infliction of emotional distress under the Foreign Sovereign Immunity Act on behalf of themselves individually and the estates against the Islamic Republic of Iran, the Iranian Ministry of Information & Security ("MOIS"), and the Iranian Revolutionary Guard Corps ("IRGC"), among others, in the United States District Court for the District of Columbia (Case No.00-CV-2329) ("*Heiser v. Iran*").

   Response No. 47: Undisputed, with Clarification. Plaintiffs have not proffered any evidence in admissible form to support this statement.

   Bank Markazi lacks sufficient information to form a belief concerning this statement.

48. On October 9, 2001, the personal representatives of the Campbell, Johnson, Rimkus, Marthaler, Nguyen, Woody, and Morgera estates filed a complaint for wrongful death and intentional infliction of emotional distress under the FSIA on behalf of themselves individually and the estates against Iran, MOIS, and IRGC, among others, in the United States District Court for the District of Columbia (Case No. 01-CV-2104) (*"Campbell v. Iran"*).

   Response No. 48: Undisputed, with Clarification. Plaintiffs have not proffered any evidence in admissible form to support this statement.

   Bank Markazi lacks sufficient information to form a belief concerning this statement.

49. The United States District Court for the District of Columbia consolidated *Heiser v. Iran* and *Campbell v.* Iran on February 1, 2002, upon finding that they involve common questions of law and fact.

   Response No. 49: Undisputed, with Clarification. Plaintiffs have not proffered any evidence in admissible form to support this statement.

> Bank Markazi lacks sufficient information to form a belief concerning this statement.

50. On December 22, 2006, the United States District of Columbia entered a Default Judgment against Iran, MOIS, and IRGC (collectively, "Iran"), jointly and severally, in the consolidated actions, awarding economic and compensatory damages totaling $254,431,903.00 (the "December 2006 Judgment").

> Response No. 50: Undisputed.

51. On September 30, 2009, the United States District Court for the District of Columbia entered a supplemental judgment awarding additional damages in the amount of $336,658,063.00 against Iran (the "September 2009 Judgment," together with the December 2006 Judgment, the "Judgment").

> Response No. 51: Undisputed, with Clarification. The September 2009 Judgment awarded compensatory damages in the amount of $36,658,063 and punitive damages in the amount of $300,000,000.

52. The Judgment was entered pursuant to 28 U.S.C. §1605A and remains unsatisfied in the amount of $591,089,966.00 plus post-judgment interest at the legal rate, against Iran.

> Response No. 52: Disputed. Bank Markazi disputes the statement that the Judgment remains unsatisfied in the amount of $591,089,966.00 because in *Levin et al. v. Bank of New York*, on June 30, 2011, Judge Patterson "grant[ed] the Levin Plaintiffs and the Greenbaum, Acosta and Heiser Judgment Creditors' joint motion for partial summary judgment and turnover of phase One Assets[.]" *Levin et al. v. Bank of New York*, Order dated June 30, 2011, 1:09-cv-05900-RPP-MHD (Docket No. 412). Bank Markazi lacks sufficient information to form a belief concerning the extent of the Heiser Judgment Creditors' recovery to date under their judgment.

53. On September 8, 2008, the Heisers registered the December 2006 Judgment with this Court pursuant to 28 U.S.C. § 1963, under case number M 18-302, judgment number 08,1562.

> Response No. 53: Undisputed.

54. In addition, on December 6, 2010, the Heisers registered the September 2009 Judgment with this Court pursuant to 28 U.S.C. §1963 under case number 10-MC-00005, judgment number 10,2146.

> Response No. 54: Undisputed.

E.  **Undisputed Facts Regarding Valore Plaintiffs**

55. Third-Party Defendants the Valore Judgment Creditors are judgment creditors in the following consolidated actions: *Valore, et al. v. Islamic Republic of Iran, et al.,* No. 03-cv-1959 (RCL) (D.D.C.); *Arnold, et al. v. Islamic Republic of Iran, et al.,* No. 06-cv-516 (RCL) (D.D.C.); *Spencer, et al. v. Islamic Republic of Iran, et al.,* No. 06-cv-750 (RCL) (D.D.C.); and *Bonk, et al. v. Islamic Republic of Iran, et al,* No. 08-cv-1273 (RCL) (D.D.C.). The Valore Judgment Creditors hold an unsatisfied judgment in the amount of $1,290,291,092.00, comprising $290,291,092.00 in compensatory damages and $1,000,000,000.00 in punitive damages, against the Republic of Iran and the Iranian Ministry of Information and Security, issued by the United States District Court for the District of Columbia pursuant to 28 U.S.C. §1605A. The Judgment arises from the October 23, 1983 Iran-sponsored terrorist bombing of the United State Marine Barracks in Beirut, Lebanon, where a suicide bomber murdered 241 American military servicemen and injured many others.

   Response No. 55: Undisputed, with Clarification. Bank Markazi lacks sufficient information to form a belief concerning the extent to which the Valore Judgment Creditors' judgment remains unsatisfied.

56. The Valore Judgment Creditors duly registered their judgment in the Southern District of New York on July 5, 2011.

   Response No. 56: Disputed in Part. The statement that the Valore Judgment Creditors' judgment was "duly" registered constitutes an improper conclusion of law rather than a statement of fact.

F.  **Undisputed Facts Regarding Levin Plaintiffs**

57. Plaintiff, Mr. Jeremy Levin, was the CNN bureau chief in Lebanon during a period when the Islamic Republic of Iran ("Iran"), through the Revolutionary Guard, among other entities, was particularly active in violent anti-American activities, using Hizbollah directly and indirectly to commit terrorist acts against American civilians.

   Response No. 57: Disputed in Part. The bulk of this statement consists of improper characterizations. To the extent this statement is factual in nature, Bank Markazi lacks sufficient information to form a belief concerning such facts.

58. Mr. Levin was held hostage and tortured during 1983-4, held by Hizbollah in a house directly across from the Iranian Revolutionary Guard headquarters in the Bekka Valley of Lebanon.

   Response No. 58: Undisputed, with Clarification. Bank Markazi lacks sufficient information to form a belief concerning this statement.

59. After his escape from the terrorists, Mr. Levin returned to the United States. The effects of the torture and imprisonment caused severe and continuing damage to both Mr. Levin and his wife, Plaintiff D. Lucille Levin.

   Response No. 59: <u>Undisputed, with Clarification</u>. Bank Markazi lacks sufficient information to form a belief concerning this statement.

60. On February 6, 2008, after a full trial, the United States District court for the District of Columbia entered judgment in favor of the Levins and against the Islamic Republic of Iran, the Iranian Ministry of Information and Security ("MOIS") and the Iranian Islamic Revolutionary Guard Corp ("IRGC") (collectively referred to as the "Iranian Judgment Debtors"). The judgment is for $28,807,719.00 in compensatory damages plus interest. The Levins did not seek an award of punitive damages. The judgment has not been satisfied.

   Response No. 60: <u>Disputed in Part</u>. The Levin judgment was issued by the Clerk of the United States District Court for the District of Columbia, not by the Court. Bank Markazi further disputes the statement that the Levin Judgment Creditors hold an unsatisfied judgment in the amount of $28,807,719.00 because in *Levin et al. v. Bank of New York*, on June 30, 2011, Judge Patterson "grant[ed] the Levin Plaintiffs and the Greenbaum, Acosta and Heiser Judgment Creditors' joint motion for partial summary judgment and turnover of phase One Assets[.]" *Levin et al. v. Bank of New York*, Order dated June 30, 2011, 1:09-cv-05900-RPP-MHD (Docket No. 412). Bank Markazi lacks sufficient information to form a belief concerning the extent of the Levin Judgment Creditors' recovery to date under that judgment.

61. The Levins registered their judgment in the United States District Court for the Southern District of New York on April 20, 2009.

   Response No. 61: <u>Undisputed</u>.

62. The Levins served the Iranian Judgment Debtors with their judgment on October 14, 2008 through the court and diplomatic channels.

   Response No. 62: <u>Undisputed</u>.

G. **Additional Undisputed Facts**

63. The U.S. Department of State first designated Iran as a state sponsor of terror under the statute on January 19, 1984, and Iran has maintained its place on that list of terrorist states until the present.

   Response No. 63: <u>Undisputed, with Clarification</u>. Plaintiffs do not identify the "statute" referenced in this statement, and Bank Markazi lacks sufficient information to form a belief as to the existence or terms of any such statute.

64. On July 29, 2011, Citibank served its Third-Party Petition Alleging Claims in the Nature of Interpleader on Defendants Clearstream, Markazi and UBAE. *See* a true and correct copy of Citibank's.

   Response No. 64: Undisputed.

Dated:      New York, New York
            June 15, 2012

                                    Respectfully Submitted,

                                    _____
                                    David M. Lindsey
                                    James M. Hosking
                                    Andreas A. Frischknecht
                                    Yasmine Lahlou

                                    **CHAFFETZ LINDSEY LLP**
                                    505 Fifth Avenue, 4th Floor
                                    New York, NY 10017
                                    Tel. (212) 257-6960
                                    Fax (212) 257-6950
                                    david.lindsey@chaffetzlindsey.com
                                    www.chaffetzlindsey.com

                                    *Attorneys for Defendant Bank Markazi*