**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

DEBORAH D. PETERSON,
Personal Representative of the Estate of James
C. Knipple (Dec.), *et al.*,

*Plaintiffs*,

v.

ISLAMIC REPUBLIC OF IRAN, BANK
MARKAZI a/k/a CENTRAL BANK OF IRAN,
BANCA UBAE SpA, CITIBANK, N.A., AND
CLEARSTREAM BANKING, S.A.

*Defendants*.

_____

Civil Action

No. 10-Civ-4518 (KBF)

## PLAINTIFF ANNETTE LIVINGSTON'S OBJECTIONS TO THE SPECIAL MASTER'S REPORT & RECOMMENDATION

Daniel Cobrinik
ATTORNEY AT LAW
276 Fifth Avenue, Suite 405
New York, New York 10001
Telephone: (212) 725-6888
Email: dancobrinik@gmail.com

Richard D. Greenfield
Marguerite R. Goodman
GREENFIELD & GOODMAN, LLC
250 Hudson Street, 8th Floor
New York, New York 10013
Telephone: (917) 495-4446
Email:  whitehatrdg@earthlink.net
              twowhitehats@earthlink.net

*Of Counsel*:

Ira N. Richards
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Telephone: (215) 751-2503
Email:  irichards@schnader.com

Dated:  October 3, 2017

Pursuant to Fed R. Civ. P. 53(f)(2) and this Court's Order appointing the Special Master (Order 6/7/17 (Dkt. 775)), plaintiff Annette Livingston hereby objects, on the grounds set forth below, to the Special Master's Report & Recommendations, dated September 12, 2017 (the "Report").  For the reasons explained below, Ms. Livingston requests that the Court reject the Report's recommendations 1, 4, 5, 6, and 7.  *See* Report (Dkt. 842) at 53-54.[1]

## BACKGROUND AND PROCEDURAL HISTORY

1.      Plaintiff Annette Livingston obtained judgments in 2007 in the United States District Court for the District of Columbia individually and as the personal representative of the estate of her late husband, who was killed in the Beirut bombing.

2.      To receive her share of the Qualified Settlement Fund ("QSF"), Ms. Livingston, like all plaintiffs, has been asked to sign a Confidential Disbursement Authorization Form ("CDA") that contains representations and acknowledgements that require her to: (i) approve $85 million in expenses that counsel has charged against plaintiffs' recoveries; (ii) ratify counsel's determination to enter into a 2012 "Sharing Agreement" with non-Peterson Plaintiffs; and (iii) affirm that she has no unanswered questions concerning the Beirut bombing cases, this action, or the CDA.

---

[1]    Ms. Livingston withdraws her request for an accounting of Fay and Perles' efforts to recover additional funds to satisfy the judgments of the Peterson plaintiffs. Subsequent to the filing of her Motion to Invalidate Certain Contractual Provisions of the Confidential Disbursement Authorization Form, to Compel an Accounting, and for Other Relief, Steven Perles provided to her counsel the information on this issue.

3.      On May 3, 2017, Ms. Livingston filed a Motion to Invalidate Certain Contractual Provisions of the Confidential Disbursement Authorization Form, to Compel an Accounting, and for Other Relief (the "Motion").  Moving Br. (Dkt. 718-21).  By her Motion, Ms. Livingston seeks (i) an accounting of the expenses being charged against the settlement fund; (ii) a declaration that certain provisions of the CDA are not enforceable; and (iii) an accounting of ongoing collection efforts.

4.      On May 17, 2017, Thomas Fay, attorney for the Peterson Plaintiffs, submitted a letter to the Court that conceded that "Annette Livingston's Motion should be granted as to her requests designated (i) and (iii)" (5/17/17 Letter (Dkt. 744) at 2), which correspond to Ms. Livingston's requests for an accounting of the expenses being charged against the settlement fund and an accounting of ongoing collection efforts.

5.      On May 17, 2017, this Court ordered the appointment of a Special Master to resolve a variety of disputes raised in this action, among them the Motion submitted by Ms. Livingston.  5/17/17 Order (Dkt. 743).  The Court then issued an order on June 7, 2017 appointing Kathleen Massey as Special Master. 6/7/17 Order (Dkt. 775).  The Special Master divided the disputes into three separate tracks.  Ms. Livingston's Motion was assigned to the "Trust Administration Disputes" track.[2]

---

[2]      Also assigned to the Trust Administration Disputes track was the request of Thomas Fay seeking an order compelling the Trustee to provide an accounting of the expenses the Trustee has incurred and an order compelling the Trustee to establish a schedule of distributions for all remaining assets of the QSF.

PHDATA 6189576_1

6.     Mr. Fay and Steven Perles filed a brief in response to Ms. Livingston's Motion, dated June 14, 2017 (the "Opposition Brief").  Opp. Br. (Dkt. 781).  The Opposition Brief asserted among other things, that (1) Ms. Livingston's Motion is moot because "Steven Perles met at length with Ms. Livingston, her husband and her attorneys," (*id*. at 2); (2) "there is no need for the court to order an accounting because the Trustee's professionals have already assessed the expenses" (*id*. at 8); and (3) "investigative fees were necessary and reasonable." *Id*. 10.

7.     Although Ms. Livingston's Motion requested information about expenses being charged against the QSF and addressed the terms of the CDA, the Trustee did not submit any briefing on those issues.  Rather, the Trustee filed a letter report without addressing the issues Ms. Livingston raised in her Motion. 6/30/17 Letter (Dkt. 790).

8.     On June 15, 2017, the Special Master conducted a teleconference with counsel for parties and persons interested in issues pertaining to the Trust Administration Track. Part of the teleconference addressed the purpose of Ms. Livingston's Motion and the relief she sought.

9.     To the best of Ms. Livingston's knowledge the teleconference was not transcribed for inclusion in the record.

10.     On June 21, 2017, Ms. Livingston submitted a reply in support of her Motion (the "Reply").  Reply (Dkt. 784).  The Reply pointed out that Mr. Fay admitted in a letter to the Court that Ms. Livingston's Motion should be granted as it relates to a request for an accounting of expenses and collection efforts.  Reply (Dkt. 784) at 2.  In addition, the Reply showed that Mr. Perles had likewise conceded Ms. Livingston's entitlement to an accounting by

PHDATA 6189576_1

initiating a meeting with Ms. Livingston and her independent counsel.  *Id*.  As the Reply brief explained, "[T]he Opposition Brief's description of the meeting, including the description of Perles's supposed motivation for the meeting, acknowledges that Ms. Livingston is entitled to full and complete disclosure from her counsel." *Id*.

11.     The Special Master concurred with Ms. Livingston's assessment.  As the Special Master confirmed in the Report, Fay and Perles "did not seriously dispute that they have certain duties to provide information to Livingston concerning the Expenses reflected in the CDA."  Report (Dkt. 842) at 36. The Special Master further explained that "Fay's initial response to Livingston's motion…essentially concedes that Livingston is entitled to request the information she seeks. …Perles's willingness to meet with Livingston and her counsel indicates Perles did not take issue with the nature of the requests either." *Id*. at 39.

12.     The Reply specifically addressed the fact that the Perles meeting did not obviate the need for further information, particularly with respect to expenses for lobbyists and investigators.  *See, e.g*., Reply (Dkt. 784) at 5.  The Reply pointed out that "Mr. Perles acknowledged that it was the Fay Law Group, not him, who had information regarding litigation expenses." And while Mr. Perles "provided some specific information about the activities of the investigators, and only the most conclusory and general information about lobbyists," Ms. Livingston still lacked (and still lacks) any information about what the lobbyists did, who they lobbied, when, for what, and for how long.  *See id*.  Nothing in the record refutes these points.

13.     Moreover, to the extent that Fay and Perles argued in the Opposition Brief that the lobbyist and investigator expenses were necessary and proper, the Reply explained they were off the topic of whether Ms. Livingston is entitled to know the who, what, when, where,

why, and how of the lobbying efforts for which the QSF is being charged and which the CDA requires her to acknowledge.   The Reply explained that although "it may well be the case that many of the investigatory and lobbying expenses were appropriate [t]he point here is that we do not know.  "*Because Fay and Perles have failed to provide the necessary information, Ms. Livingston cannot make this determination*."  *Id.* at 6 (emphasis added).

14.     The Order appointing the Special Master authorized her to have *ex parte* communications with the parties. 6/7/17 Order (Dkt. 775) at 4.  On August 14, 2017, the Special Master sent Ms. Livingston's counsel an *ex parte* request for documents, including, among other items: (i) production of the balance of the correspondence between Ms. Livingston and Fay and Perles regarding Ms. Livingston's requests for information, including copies of any material provided by Fay and Perles in response to Ms. Livingston's requests; (ii) copies of documents reflecting communications between Ms. Livingston and Fay and Perles that were shared with any individuals who did not represent Ms. Livingston at the time the material was shared; and (iii) Ms. Livingston's consent to the Sharing Agreement and any correspondence between Ms. Livingston and Fay and Perles relating to any objections or protests by Ms. Livingston concerning the Sharing Agreement. *See* Report (Dkt. 842) at 20.

15.     On August 21, 2017, counsel for Ms. Livingston participated in a brief teleconference follow-up to the Special Master's request for documents.

16.     On August 29, 2017, counsel for Ms. Livingston sent to the Special Master a letter in response to her August 14 correspondence, and also sent to her the additional documents she requested for her in camera review.

17.     The record does not reflect whether the Special Master requested and received other documents or information from other parties for in camera review in connection with making recommendations on Ms. Livingston's Motion.  The Report notes that the Special Master held two telephone calls with Caragh Fay on July 6 and August 10, 2017.  Report (Dkt. 842) at 19.

18.     On September 12, 2017, the Special Master issued her Report.  Apart from the June 15 teleconference referenced above, the Special Master did not hold argument on the Motion after the close of briefing or receipt of any documents or information that might have been requested (including the documents that Ms. Livingston provided).  As relates to Ms. Livingston's Motion, the Report recommends that the Court:

> (1)     find that [] Livingston's motion [is] moot to the extent [she] seeks order[s] compelling additional disclosure;
>
> …
>
> (4)     deny Livingston's motion to proceed as a representative of a class;
>
> (5)     to the extent that it is not moot, deny Ms. Livingston's motion for an order compelling further disclosure from her counsel;
>
> (6)     deny Livingston's motion to the extent it seeks to invalidate portions of the CDA; and
>
> (7)     deny Ms. Livingston's motion to the extent it seeks an order requiring Fay & Perles to bear the cost of certain investigator and lobbyist expenses
>
> …

Report (Dkt. 842) at 53-54.

19.     The Special Master incorrectly recommends that the Court deny all of the relief Ms. Livingston seeks in her Motion.  The Special Master's recommendations are not supported by the record, particularly as made available to Ms. Livingston.  Indeed, the Special Master denied Ms. Livingston's request for an accounting, even though the Special Master concluded that the request was unopposed.  Further, the Report makes recommendations on issues not presently before the Court, including whether lobbyist and investigator expenses were necessary and appropriate and whether Ms. Livingston consented to the Sharing Agreement notwithstanding the lack of any dispute that she had noted her protest. The Report's recommendation 7 in fact addresses an issue - whether Fay and Perles must bear expenses for lobbyists and investigators - that was never raised in Ms. Livingston's Motion and not referred to the Special Master by this Court's order. With respect to the provisions of the CDA, the Report does not provide either a legal or factual basis to require Ms. Livingston to give the acknowledgements it demands of her as a named plaintiff with a judgment in order to obtain funds due to her.

## STANDARD OF REVIEW

20.     Fed. R. Civ. P. 53(f) requires *de novo* review of all of the Special Master's factual determinations and legal conclusions.  Fed. R. Civ. P. 53(f)(3) and (4).  *De novo* review affords no deference to a Special Master's resolution, and affords no presumption of validity to the findings or recommendations set forth by the Special Master.  "In acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse,

PHDATA 6189576_1

or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1); *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168. ("When we review a district court's decision *de novo*, we take note of it, and study the reasoning on which it is based. However, our review is independent and plenary; as the Latin term suggests, we look at the matter anew, as though the matter had come to the courts for the first time.").

## OBJECTIONS

### I.    THE SPECIAL MASTER COMMITTED ERROR IN RECOMMENDING THAT THE COURT DENY MS. LIVINGSTON'S UNOPPOSED REQUEST FOR AN ACCOUNTING OF EXPENSES.

21.    The Report acknowledges that "Fay and Perles do not seriously dispute that they have certain duties to provide information to Livingston concerning Expenses reflected in the CDA." *See* Report (Dkt. 842) at 36.  Indeed, Fay and Perles acknowledge in their Opposition Brief that Ms. Livingston is entitled to an accounting.  *See* Opp. Br. (Dkt. 781) at 2; *also see* Reply (Dkt. 784) at 2.  Notably, Mr. Fay submitted a letter to the Court acknowledging that Ms. Livingston's request for an accounting is appropriate.  *See supra* at ¶4.  Mr. Perles also acknowledged this point by his actions in meeting with Ms. Livingston after she filed her Motion.  *See supra* at ¶6.

22.    Further, the Trustee did not, in any form or fashion, oppose Ms. Livingston's request for an accounting.

23.    Given the lack of opposition to Ms. Livingston's Motion as it relates to an accounting, and the admission of her entitlement to an accounting, the Special Master erred in recommending that the Court deny Ms. Livingston's request for an accounting of expenses. Rather, that portion of the Motion should simply be granted as unopposed.

24.     Moreover, the Special Master's recommendation suggesting that the request for an accounting is moot is belied by the record.  As the Reply shows, without contradiction, Ms. Livingston has not been provided with full information sufficient to allow her to make the judgments necessary to sign the acknowledgement in the CDA regarding expenses, whether for lobbyists or otherwise.  As an initial matter, Mr. Fay, in requesting his own accounting from the Trustee, explained that "an accounting is not a figure representing the total amount…without specification of the amounts spent and a description of the reason for the expenditure" 6/24/17 Letter (Dkt. 755) at ¶ 2.  Again, Mr. Fay concedes that Ms. Livingston is entitled to an accounting of expenses, and there is no evidence in the record that Ms. Livingston has been provided anything beyond general information of lump sum categories of expenses claimed, rather than any detail about the underlying expenses.

25.     In this regard, there is no basis in the record for concluding that Mr. Perles has provided - or can provide - Ms. Livingston with the expense information to which she is entitled as the client of a lawyer.  Mr. Perles himself acknowledged to Ms. Livingston that he lacks that information. Opp. Br. (Dkt. 781) at 8-9.

26.     Likewise, there is no basis in the record for the Special Master's suggestion that Ms. Livingston is not entitled to information about what *all* the lawyers are charging as expenses against the QSF.  Report (Dkt. 842) at 3.  The CDA requires Ms. Livingston to acknowledge all expenses for all lawyers who claim an entitlement out of funds due to her.  She is entitled to detailed information consistent with the obligation lawyers owe to their clients.

PHDATA 6189576_1

27.     The need for clarity in expenses is underscored by the opaque treatment of expenses that the Fay firm supposedly has waived.  As the Special Master's Report acknowledges, Mr. Fay has given conflicting accounts of the amount of supposedly waived expenses, yet Ms. Livingston is required by the CDA to agree to the expenses being charged. There is no record evidence of any information being provided to Ms. Livingston documenting the actual amount of expenses being waived and what the amounts are for.  Report (Dkt. 842) at 44.  The shifting representations by Mr. Fay belie any suggestion that information Ms. Livingston received from her lawyers provide her with a reliable basis on which to assess the expenses she must acknowledge under the CDA to participate in the distribution from the QSF.

28.     The Report does not explain why Ms. Livingston cannot have access to documents evidencing the supposed expense waiver, particularly where the Special Master apparently was given the documents, and where there appears to be a link between the waiver of expenses and the amounts that are being charged against the QSF for investigators and lobbyists. Report (Dkt. 842) at 44-45.  For instance, the Special Master states that "I have been informed by Fay's office that the Trustee required Fay to forego the right to reimbursement of the expenses he formally waived as a condition of obtaining approval for the payment to at least one of the investigators since the request for payment had been made somewhat belatedly." Report (Dkt. 842) at 45.  Having been denied access to the underlying information, Ms. Livingston has no knowledge of, or ability to assess, the representations apparently made to the Special Master or the claimed actions of the Trustee.  *See infra* ¶¶ 42-53 (addressing the lack of an available factual record for the Special Master's conclusions).

29.     It is no answer to Ms. Livingston's inquiries to say, as the Special Master does, that the Trustee has been given the information about expenses, including waived

PHDATA 6189576_1

expenses.  Report (Dkt. 842) at 51-52.  The Trustee is not Ms. Livingston's lawyer and the order

appointing the Trustee does not supplant the duties Ms. Livingston's lawyers owe to her.

Moreover, it is Ms. Livingston, not the Trustee, who must sign the CDA acknowledgments of

expenses in order to obtain any distribution from the QSF.

## II.   THE SPECIAL MASTER COMMITTED ERROR IN DECIDING ISSUES NOT BEFORE THE COURT OR THE MASTER.

30.      Compounding the error in recommending that the Court deny Ms.

Livingston access to information about the investigators and lobbyists, the Special Master

nonetheless considers and decides the issue of whether the expenses are in fact appropriate.  *See*

Report (Dkt. 842) at 51-53.

31.      As a preliminary matter, the Court's Order appointing the Special Master

did not list the propriety of the investigatory and lobbying expenses as a dispute at issue or

referred to the Special Master.  *See* 6/7/17 Order (Dkt. 775) at 2.

32.      An order appointing a special master defines the scope of the special

master's authority.  *See OLIN Corp. v. Ins. Co. of N. Am.*, No. 84 Civ. 1986 (LFM), 1986 U.S.

Dist. LEXIS 15878, at *7 (S.D.N.Y. Dec. 30, 1986).

33.      Ms. Livingston and her counsel made clear on numerous occasions that

she was not bringing this issue before the Court at this time or in this Motion.  *See* Reply (Dkt.

784) at 6 ("Fay & Perles spend much of their Opposition Brief off topic.  Rather than explain

what reason there can possibly be for denying Ms. Livingston information to which she is

entitled, they spend the bulk of their argument explaining why, in their view, the investigatory

and lobbying expenses were necessary and reasonable.").

34. In proceeding to decide the issue of whether the lobbyist expenses are appropriate, the Report quotes page 14 of Ms. Livingston's opening brief out of context omitting, among other things, the last sentence of the paragraph from which the quoted portion is taken. *See* Report (Dkt. 842) at 51. The Report quotes Ms. Livingston's brief as stating that "[t]here are legitimate questions whether these claimed expenses were reasonable and appropriate and…whether they are…not expenses the attorneys prosecuting the litigation and collection actions should bear themselves." *Id.* The Report omits the concluding sentence, which states "[t]hat is a legitimate question *and an accounting is necessary to provide the answer.*" Moving Br. at 15 (emphasis added). In other words, Ms. Livingston does not have the information necessary to assess the legitimacy of the lobbyist expenses and the charges against the QSF, and is seeking in this Motion the information, not a determination about the expenses.

35. Again, as the Special Master noted, there was no opposition to Ms. Livingston's request for an accounting of expenses. And if the Special Master was going to proceed to decide the issue of whether the investigator and lobbyist expenses were reasonable and appropriately charged, then Ms. Livingston was entitled to not only her unopposed accounting of the expenses but also notice and an opportunity to be heard on the issue. *See infra* at ¶¶ 45-49.

36. That, however, is not the only issue the Special Master decided that was not before her. The Report considers whether Ms. Livingston consented to the Sharing Agreement. The actual issue before the Special Master was whether Ms. Livingston had to sign the CDA acknowledgement of the Sharing Agreement. Going beyond that narrow issue, the Report purports to decide not only whether Ms. Livingston had previously consented to the Sharing Agreement, but more broadly whether her consent was knowing and fully informed, and

whether her undisputed protest was valid.  Ms. Livingston noted in her Motion, without any dispute in the record, that she had consented to the Sharing Agreement previously, noting her protest of it.  Just as with the question of whether the lobbyist expenses were necessary and proper, the issue of knowing and informed consent was not before the Special Master.  It was error for the Special Master to address that issue, particularly without a fully developed factual record and discovery.  As with the lobbyist expenses, if the Special Master was going to proceed to this issue, then Ms. Livingston was entitled to notice and an opportunity to be heard and to present evidence on the underlying issues.  *See infra* ¶ 50.

37.     Moreover, the Report failed to address the narrow question before the Special Master:  whether Ms. Livingston's receipt of QSF distributions can be conditioned on her signing an acknowledgement of the Sharing Agreement.  The Report does not provide a basis for concluding such a condition is properly part of the CDA.  Apart from referring to the Court's appointment of the Trustee to oversee the process, the Report does not directly answer the question of why that provision is in the CDA and there is nothing in the record from the Trustee (or Fay and Perles) that even attempts to provide a rationale for the conditions the CDA imposes.

## III.    THE SPECIAL MASTER COMMITTED ERROR WITH RESPECT TO THE PROCEDURAL POSTURE OF THE CASE.

38.     The Report suggests that Ms. Livingston must institute a new action for relief in order to demand an accounting of the expenses referenced in the CDA.  *See id.* at 36.  That conclusion is in error.

39.     *First*, the Court's Order Authorizing Distribution of Funds, dated June 6, 2016, governs distribution of assets held by the QSF and explicitly references "reserving a reasonable amount for expenses."  6/6/16 Order (Dkt. 651) at 3.  Any dispute regarding the

distribution of funds or calculation of expenses therefore come under the Order and must be litigated in the action in which the Order was issued. Ms. Livingston's request for an accounting is directly related to the Court's supervision of the QSF distributions. Further to this point, the CDA requires Ms. Livingston to sign certain acknowledgments for her to receive her distribution from the QSF.

40.     *Second*, to the extent that the Report concludes that Ms. Livingston's motion for an accounting fails because it is directed towards Fay and Perles rather than the Trustee, again it is in error. Fay and Perles represented Ms. Livingston in this action. Everyone agrees – Ms. Livingston, Fay and Perles, and the Special Master – that as Ms. Livingston's attorneys, Fay and Perles owed her the duty of disclosure. *See* Report (Dkt. 842) at 36 ("since Fay and Perles do not seriously dispute that they have certain duties to provide information to Livingston concerning the Expenses reflected in the CDA and the efforts they are making to identify additional assets…"). In fact, Ms. Livingston is a named plaintiff in this action. Any issue stemming from her participation in this action can be adjudicated by this Court.

41.     Even if Ms. Livingston should have directed the Motion to the Trustee rather than Fay and Perles, this is a technical issue that can easily be remedied or overlooked by the Court. Courts regularly overlook procedural issues related to motion practice where doing so does not affect the substance of the motion. *See e.g., Kelly v. Runyon*, 96 Civ. 3922 (BSJ), 1997 U.S. Dist. LEXIS 19418, at *6 (S.D.N.Y. Dec. 5, 1997) ("no useful purpose would be served if the Court were to deny defendant's motion due to a procedural error, and then to set a schedule for rebriefing under Rule 12(b)(6), only to have the parties submit substantively identical motion papers and memoranda at a later date."). Thus, to the extent that Ms. Livingston is entitled to the relief she seeks, albeit from a different party or a different person under the

Court's direction, the Special Master or Court can still order the appropriate person to provide the information requested.

### IV. THE SPECIAL MASTER ERRED IN MAKING FACTUAL FINDINGS UNSUPPORTED BY THE RECORD.

42. Throughout the Report, the Special Master relies on facts unsupported by the record.

43. A Special Master's determination is not binding, especially in the absence of any information regarding the basis for his conclusion. *Chevron Corp. v. Salazar*, No. 11-cv-3718 (LAK)(JCF), 2011 U.S. Dist. LEXIS 85392 (S.D.N.Y. Aug. 3, 2011), at *37.

44. Here, certain findings cannot be sourced to the record available to Ms. Livingston and are untested. For example, the Report concludes that "for the overwhelming majority of the Peterson Plaintiffs, [the CDA] process appears to have worked well." *See* Report (Dkt. 842) at 48. This assertion relied on conclusions in the Opposition Brief that "Ms. Livingston is the sole plaintiff among over 1400 to raise any complaint regarding the Peterson Plaintiffs' counsel and the first to contend that the plaintiffs should not be required to confirm the decision they made years ago to share the recovered funds with the non-Peterson Plaintiffs." Opp. Br. (Dkt. 781) at 3. But that assertion in a brief is not evidence and was never tested through discovery or an adversary hearing.

45. The lack of a factual record supporting the Report's findings is particularly acute with respect to the Special Master's conclusions relating to the investigator and lobbyist expenses. The Special Master made findings that the expenses were necessary and appropriate - an issue not before the Special Master - yet there is nothing in the record to support

this, including in the exhibits attached to the Report.  If there was information that the Special

Master relied on to reach this conclusion, then Ms. Livingston was, and is, entitled to access to

the information not just as a client of Fay and Perles but as a party to a court proceeding where

the Special Master made findings of fact.  While the Court's order appointing the Special Master

authorized *ex parte* communications, it did not authorize proceedings where factual findings

would be made on a basis untested through adversary proceedings.  *See also supra* ¶ 28

(addressing supposedly waived expenses and representations made to the Special Master).

46.     There is no information in the record about what the lobbyists did, how

much time and resources the lobbyists spent, and how, if at all, anything they did benefited the

Peterson Plaintiffs.  Further, the Opposition Brief and the Report fail to explain how simply

providing summary numbers is sufficient, particularly given the CDA acknowledgments that Ms.

Livingston is required to sign.

47.     The Report misstates that "Livingston fails specifically to identify any

additional information about the Expenses listed in the CDA that Fay and Perles should be

required to disclose."  *See* Report (Dkt. 842) at 45.  But this is not the case.  Ms. Livingston

makes clear in her briefs that she is looking for "who they are, what they did, what expenses they

are claiming and why."  Reply (Dkt. 784) at 4.

48.     Further, putting the rabbit in the hat, the Report takes Ms. Livingston to

task because she did not provide evidence to rebut Fay and Perles's assertions on this matter.

*See id*.  But how could Ms. Livingston contradict Fay and Perles' assertions on this issue if they

have not shared with her the relevant information?  For the Special Master to hold against Ms.

PHDATA 6189576_1

Livingston the fact that she does not have the very information she seeks because she does not have it is to avoid Ms. Livingston's Motion altogether.

49.    The Report concludes that the agreements with investigators and lobbyists "were negotiated at arms' length and at a time when the recovery, if any, that may have resulted from their efforts was unknown." Report (Dkt. 842) at 53.  Yet again, there is no record support for this untested and unverifiable conclusion, and the Report cites to none.

50.    Likewise, as discussed above, the Special Master determines that Ms. Livingston previously consented to the Sharing Agreement.  But the validity of her consent, and whether it was made on full disclosure of all facts from her attorneys, was not an issue before the Special Master, and was not an issue tested through discovery or otherwise.  To the extent that the Special Master sought to make determinations on this issue, Ms. Livingston was entitled to notice and an opportunity to take discovery and develop a factual record.

51.    The Report also makes unsupported determinations about Fay's and Perles's motives for withholding expense information from Ms. Livingston and her independent counsel, Daniel Cobrinik, Esq.  The Special Master concludes that "it was entirely reasonable for Fay to consider the risk that Livingston or her counsel would share information with others to the detriment of the Peterson Plaintiffs, especially since Fay believed…there was a risk that Cobrinik was not acting in the interest of the Peterson Plaintiffs" (Report (Dkt. 842) at 43), and that "prior history also suggests that it was understandable for Fay's office to be concerned about Cobrinik's interests here since he previously represented Jay Glenn, one of the attorneys Fay and Perles had retained to assist with the damages phase of the Peterson case before the United States District Court for the District of Columbia."  *Id.* at 43 n.23.

52.     But the Report does not point to any evidence provided by Fay or Perles supporting why Fay's office had any concern or why their concern about Mr. Cobrinik was reasonable.

53.     To the extent that the Special Master relied on information on any issue beyond what was submitted in the briefing on the Motion, Ms. Livingston was entitled to know what that information was and to have an opportunity to examine and confront it.  *See* Report (Dkt. 842) at 20 (explaining that the Special Master asked for and received information concerning expenses waived by Fay and Perles that was never produced or shown to Ms. Livingston.).

## V.     THE REPORT'S FINDINGS ABOUT WHETHER CLASS TREATMENT IS APPROPRIATE SHOULD BE REJECTED BECAUSE MS. LIVINGSTON DID NOT MOVE FOR CLASS CERTIFICATION.

54.     In response to a footnote in Ms. Livingston's Motion that offers to "submit a separate brief on the issue of why class relief is appropriate" (*see* Motion (Dkt. 719) at 12 n.3), the Report makes substantial findings regarding Ms. Livingston's ability to bring her Motion as a class representative (*see* Report (Dkt. 842) at 32-36).  The Report ultimately determines that "there are no circumstances under which class treatment of Livingston's motion would 'reduce the range of issues in dispute' or 'promote judicial economy.'"  *Id*. at 36 n.19.  This conclusion is legally infirm for multiple reasons.

55.     *First*, given that the Special Master's Report rejects on the merits Ms. Livingston's claims for an accounting and to invalidate certain provisions of the CDA, the issue of class relief is moot and should not have been decided.

PHDATA 6189576_1

56.     *Second*, and further to the point, the issue was not briefed in Ms. Livingston's pending Motion before the Court.  Ms. Livingston simply suggested in her Motion that class relief may be appropriate in this circumstance and sought the Court's permission to submit an appropriate motion.  *See* Motion (Dkt. 719) at 12 n.3.  Indeed, the Report itself acknowledges that the footnote at issue was not a motion under Rule 23 for class certification.  Report (Dkt. 842) at 32-33.  It is black letter law that a Court should only consider issues before it.  *Direct Mktg. Assoc. v. United States Postal Service*, 721 F.2d 55, 59 (2d Cir. 1983) ("we should only decide issues that are presented by a live fact situation before the Court.").

57.     Nor was it appropriate for the Special Master to consider the issue of class relief on her own volition given that the issue was not designated by the Court as before the Special Master.  *See* 6/7/17 Order (Dkt. 775) at 2 (explaining that the Special Master was limited to seeking resolution of Ms. Livingston's requests that: "(1) certain provisions of the Confidential Disbursement Authorization be declared invalid; (2) Fay & Perles provide an accounting of the expenses being charged against the Peterson [P]laintiffs; and (3) Fay & Perles provide an accounting of their ongoing actions to locate additional assets from which the Peterson plaintiffs' judgments may be further satisfied.").  For this reason too, the Special Master's Report finding on this issue should be rejected.

58.     *Third*, a finding on class certification requires that the parties have been afforded an opportunity to engage in discovery and submit appropriate argument, neither of which happened here.  *See, e.g., Jacob v. Duane Reade, Inc*., 602 F. App'x 3, 7 (2d Cir. 2015) ("the "district judge is to assess all of the relevant evidence admitted at the class certification stage" and resolve material factual disputes."(internal citations omitted)).  For example, the Report reaches conclusions about Ms. Livingston, including whether she is typical of other

PHDATA 6189576_1

Peterson plaintiffs without any evidence in the record about Ms. Livingston, through deposition or otherwise.  Likewise, the Special Master makes factual determinations on whether there are issues common to all Peterson Plaintiffs, yet there is no evidence in the record about any of the Peterson plaintiffs and how the issues raised in Ms. Livingston's Motion relates to them.  Ms. Livingston was not afforded an opportunity to provide testimony or take discovery that could support a class certification motion.  As she explains in her briefs, she has serious questions regarding issues related to the CDA and the purported expenses, and it is unclear at this stage whether other plaintiffs share in her concerns.

59.     Nonetheless, the Report presumes facts not in the record, including: that Ms. Livingston was the only plaintiff who took issue with the requirements of the CDA (Report (Dkt. 842) at 8); that Ms. Livingston was the only plaintiff to request the information sought or to raise questions about the expenses listed in the CDA (*id*. at 34); that the other plaintiffs did not have any issue with authorizing the Trustee to pay their attorney's fees or expenses or with confirming their agreement to the terms of the Sharing Agreement (*id*.); and that the relief Ms. Livingston seeks is antagonistic to the interests of the other Peterson Plaintiffs (*id*.).  A court cannot presume facts not in evidence.  *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.,* 209 F. Supp. 3d 612, 627 n.1 (S.D.N.Y. 2016) ("the Court disregards all asserted facts that are unsupported by record evidence or otherwise inadmissible.)).

## CONCLUSION

60.     For the foregoing reasons and the reasons stated in the Motion, Ms. Livingston respectfully requests that the Court reject Special Master's Report and enter an Order granting her Motion.

PHDATA 6189576_1

/s/ Daniel Cobrinik

Daniel Cobrinik
ATTORNEY AT LAW
276 Fifth Avenue, Suite 405
New York, New York 10001
Telephone:  (212) 725-6888
Email: dancobrinik@gmail.com

Richard D. Greenfield
Marguerite R. Goodman
GREENFIELD & GOODMAN, LLC
250 Hudson Street, 8th Floor
New York, New York 10013
Telephone (917) 495-4446
Email:  whitehatrdg@earthlink.net
            twowhitehats@earthlink.net

*Of Counsel:*

Ira N. Richards
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Telephone: (215) 751-2503
Email: irichards@schnader.com

*Attorneys for Plaintiff Annette Livingston*

Dated:  October 3, 2017

PHDATA 6189576_1

**CERTIFICATE OF SERVICE**

I certify that on the 3rd day of October, 2017, I caused a copy of the foregoing

document to be served electronically on all counsel of record via operation of the court's

CM/ECF system.


By: /s/ Ira N. Richards
    Ira N. Richards