# STORCH AMINI PC

Steven G. Storch
**MEMBER NY & IL BARS**

212.497.8216
sstorch@storchamini.com

October 27, 2017

**POSTED TO BOX**

Special Master Kathleen N. Massey, Esq.
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036

Re:   *Peterson v. Islamic Republic of Iran*, 10-cv-4518-KBF (S.D.N.Y.) (the "Turnover Action")

Dear Special Master Massey:

We represent Jay Glenn ("Glenn") who served as "damages attorney" for 103 of the plaintiffs in the underlying *Peterson* action in which they obtained their judgments that are now being enforced through the above-referenced Turnover Action.  Despite having established the factual bases for those plaintiffs to have received their judgments totaling $309,741,881.00, Glenn has yet to be paid anything for his services and, in fact, has yet even to receive any reimbursement for the expenses he incurred.

As discussed below, Glenn was hired by lead counsel Thomas Fortune Fay[1] and Stephen Perles (then operating in partnership as "Fay & Perles") and, pursuant to written agreements, was to be paid solely out of the fees collected by Fay & Perles; payment to him will have no impact on the amounts to be received by the *Peterson* plaintiffs, and he has not asserted any lien against the amounts plaintiffs are to be paid by the QSF Trustee (his asserted lien attaches only to funds belonging to Fay & Perles and, therefore, only to QSF funds that the Trustee earmarks for distribution to Fay & Perles).  His claim against Fay & Perles is being resolved in the United States District Court for the District of Columbia in *Glenn v. Fay, et al.*, No. 1:16-cv-02498 (D. D.C.) (Lamberth, J.).

We address, below, the specific questions contained in the respective bullet-points in your October 20, 2017, letter, and hereby confirm our availability for a telephonic conference on November 8, 2017, as requested.

---

[1] Mr. Fay is Glenn's brother-in-law and, Glenn believes, is resisting paying Glenn the fees to which he is entitled solely for reasons of family dynamics which, obviously, is not a legal defense.

Special Master Kathleen M. Massey, Esq.
October 27, 2017
Page 2

**Total Amount of Attorneys' Fees Claimed.** Pursuant to agreements with Fay & Perles and certain of the *Peterson* plaintiffs (annexed and discussed in more detail below), Glenn is entitled to be paid the following sums from the attorneys' fees received by Fay & Perles in connection with the 103 plaintiffs whom Glenn represented as damages attorney in the underlying *Peterson* action: (1) 3% of gross amounts collected on behalf of those 103 plaintiffs; plus an additional (2) referral fee equivalent one-ninth (representing one-third of Fay & Perles's one-third fee, or 11.11%) of gross amounts collected on behalf of 40 of the aforementioned 103 plaintiffs who retained Fay & Perles pursuant to engagement agreements tendered and executed by Glenn, (executed both individually and on behalf of Fay & Perles); and (3) reimbursement of his expenses totaling $15,289. Based on the total $309,741,881.00 judgments obtained by the 103 plaintiffs, of which $111,750,000.00 was obtained by the relevant subset of 40, Glenn is entitled to aggregate fees totaling $21,7089,923.09, plus expenses, to the extent that the respective *Peterson* plaintiffs' judgments will be fully collected.

While Glenn's fee, above, is calculated as a percentage of the plaintiffs' respective recoveries as provided in his engagement agreements with Fay & Perles, those contracts make it clear that those fees are to come solely out of legal fees that Fay & Perles receive: The "Associated Counsel Agreement" between Glenn and Fay & Perles (annexed as Exhibit 1 to Exhibit A hereto) recites that each plaintiff "has executed a contingent agreement providing for attorneys' fees [to Fay & Perles] as follows: (1) 33 1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type; and (2) an amount equal to the necessary expenses incurred in the preparation, prosecution and administration of the case," noting that "[t]his fee [to Fay & Perles] is contingent upon collection and to the extent of collection only." As to the fees promised to Glenn by Fay & Perles, the agreement makes it clear that the clients have no obligation beyond their promise to pay one-third of their collected recoveries (plus expenses) to Fay & Perles as recited therein and that "[a]ll expenses incurred by [Glenn] will be charged to the Client in accordance with the paragraph above. Clients shall otherwise have no liability for any expenses."

Thus, Fay & Perles agreed that Glenn's expenses would be reimbursed by the clients together with their own expenses, but that his fees would be paid from their own "33 1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type" and that Glenn's fee, like their own, "is contingent upon collection and to the extent of collection only."

The 103 plaintiffs represented by Glenn during the damages phase have not collected the full amounts of their judgments, so Glenn expects to be paid only the percentage of his total fees corresponding to the percentage of their total judgments collected by the respective *Peterson* plaintiffs to date.[2]

---

[2] It is Glenn's understanding that, subsequent to his being retained, Fay & Perles and some or all of the *Peterson* plaintiffs jointly agreed to forego a portion of what had been collected on their behalves in order to share it with other plaintiffs who were otherwise not entitled to a piece under the Supreme Court's holding in *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1319 n.5 (2016). Glenn was not a party to any such agreements and believes that, under his agreements with Fay & Perles, his current entitlement to fees should

Special Master Kathleen M. Massey, Esq.
October 27, 2017
Page 3

**Persons from Whom Payment is Sought**. While certain of the *Peterson* plaintiffs expressly consented to Glenn being paid out of the fees obtained by Fay & Perles, as discussed below, the contractual obligation to pay those fees is solely that of Fay & Perles, and the payment was to come solely from the portion of the fees awarded to Fay & Perles as noted above.[3]  Thus, because Fay & Perles is not currently operating as a partnership, Glenn sued the members of Fay & Perles individually for his fees, Thomas Fortune Fay and Steven R. Perles, as well as their current firms, Fay Law Group, P.A. and the Perles Law Firm, P.C., as successors to Fay & Perles. That suit is currently pending. *Glenn v. Fay, et al.*, No. 1:16-cv-02498 (D. D.C.) (the Complaint in that action is annexed hereto as Exhibit B). Those are the parties responsible for his fees.

Payment of those fees is sought from the QSF Trustee under authority of Judge Forrest's Order Authorizing Distribution of Funds entered June 6, 2016, which directs that the "Trustee of the QSF shall distribute the assets of the Fund, reserving a reasonable amount for expenses and contingencies, by making payments to the Plaintiffs … and their respective attorneys in accordance with paragraph 3.1.3 of the QSF (Dkt. No. 461), and no further order from the Court shall be required to make such distributions" (Dkt. No. 651 at p. 3).

**Amounts Paid Toward Claimed Amounts Due**. To date, Glenn has not received any payment from any source with respect to the fees to which he is entitled, nor any portion of the reimbursable expenses he incurred.

**Factual and Legal Bases for Attorneys' Fees Claimed**. Glenn's entitlement to attorneys' fees is a straight contractual matter: Pursuant to a written "Associate Counsel Agreement," Fay & Perles agreed to pay to Glenn, out of the contingent fees they collect from the *Peterson* plaintiffs for which Glenn was to serve as damages attorney, an amount equal to 3% of the gross judgments collected by the respective plaintiffs. Thomas Fay further orally agreed to pay Glenn a referral fee for signing up new clients, and that agreement is evidenced by, among other things, the 33 written engagement agreements with new clients that Glenn executed on behalf of Fay & Perles, as well as individually.

Glenn's legal claims are set forth in his Complaint (Exhibit B hereto) in which he is seeking to recover his fees as a matter of contract or, in the alternative, *quantum meruit*. We presume that the Special Master does not require Glenn to provide authorities setting forth the legal elements of such claims, but he will be happy to provide them if that will be helpful.

The material facts on which the claims rest (and more) are recited in the Declaration of Jay Glenn dated June 21, 2016 (Exhibit A hereto). Exhibit 1 to the declaration is the Associate Counsel

---

not be reduced by any sums which were in fact collected on behalf of the *Peterson* plaintiffs but which they or Fay & Perles voluntarily relinquished.

[3] The language of the Associate Counsel Agreement quoted above in the preceding section does, however, suggest that Fay & Perles expected to charge Glenn's expenses to the *Peterson* plaintiffs as part of Fay & Perles's own expenses (just as Glenn's fees were encompassed within their own contingent fees). Presumably (although Glenn has no way to know), Fay & Perles have already sought – and possibly already obtained – reimbursement of Glenn's expenses in conjunction with their own fee submissions.

Agreement, and Exhibits 2A-2G are 33 of the 40 retainer agreements which Glenn entered into with new plaintiffs individually and on behalf of Fay & Perles (as Glenn notes in his declaration (at ¶ 12 n.2), he has been unable to locate the remaining seven such agreements, but as Fay & Perles are seeking their own fees from those plaintiffs, they presumably are doing so on the basis of the agreements Glenn had executed on their behalves). Fay & Perles admit having entered into the Associate Counsel Agreement with Glenn (*see* Exhibit C hereto ¶ 2)[4] and, to the extent that they are seeking their own fees based on the 40 engagement agreements that Glenn executed on their behalves, they will have a particularly hard time denying that Glenn brought them those clients or that they had agreed to give him a referral fee. Other exhibits to Glenn's declaration provide additional supporting evidence to which you are respectfully referred.

Fay & Perles did not answer Glenn's complaint but, instead, moved to dismiss on the basis of the statute of limitations. That motion has been *sub judice* before Judge Lamberth since March 31, 2017, and Glenn expects to prevail based on the briefing annexed hereto as Exhibit D through Exhibit H. There has been no discovery yet and, therefore, beyond a general understanding that Fay & Perles intend to defend on the (false) basis that Glenn somehow failed to fully perform his contractual obligations (*see* Exhibit C hereto ¶¶ 4-5), Glenn does not presently know enough about what they will contend to enable him to provide further evidence to refute it.

**Glenn Does Not Claim a Lien on the QSF.** Glenn claims only a lien in the amount of fees he is owed by Fay & Perles, as identified above, attaching solely to the funds owed to Fay & Perles for attorneys' fees in connection with the 103 *Peterson* plaintiffs covered by Glenn's agreements. Therefore, Glenn does not claim a lien on any QSF funds held by the Trustee unless and until such funds are earmarked by the Trustee for payment to Fay & Perles.

Analyzing the issue under New York law, Judge Forrest has held that Glenn does not have an attorney charging lien with respect to the QSF funds (Dkt. No. 647, p.4).[5] But Glenn was retained to provide services in connection with a proceeding in the District of Columbia, under engagement agreements governed by District of Columbia Law (*see* Exhibits 1-2 to Exhibit A hereto), and, therefore, his lien, if any, is governed by District of Columbia law. *Peterson v. Islamic Republic of Iran*, 220 F. Supp. 3d 98, 104 (D. D.C. 2016) (citing 7 Am. Jur. 2d, Attorneys at Law § 351 (1980)). While Judge Lamberth similarly held that Glenn does not have an attorney charging lien under District of Columbia law because Glenn had not obtained the consent of the *Peterson* plaintiffs being represented by Fay & Perles (*id.* at 106-08), that decision is on appeal to the United States Court of Appeals for the District of Columbia Circuit. Fay & Perles have not yet filed their opposition brief, but Glenn's appellate brief is annexed hereto as Exhibit I and explains why Glenn believes that Judge Lamberth was wrong as a matter of law (not only had Judge Lamberth missed the fact that Glenn obtained the consent of at least 40 of the

---

[4] Exhibit C is a declaration filed by Fay & Perles in which their paralegal confirms that Glenn was retained as damages attorney for certain *Peterson* plaintiffs. The full list of *Peterson* plaintiffs Glenn represented is set forth in the charging lien notice annexed to his declaration (included in Exhibit 8 to Exhibit A hereto).

[5] The ruling was made by Judge Forrest in connection with Glenn's motion to intervene in the New York Turnover Action, but was rendered before the motion was even fully briefed.

Special Master Kathleen M. Massey, Esq.
October 27, 2017
Page 5

plaintiffs (Exhibit A ¶ 13[6]), but under District of Columbia law Glenn did not need the consent of plaintiffs to assert a lien that did not attach to any funds to which they were entitled; Fay & Perles's promise that Glenn would be paid from the attorneys' fees they would receive is enough to give rise to a standard equitable lien (albeit perhaps not strictly "an attorney charging lien") under District of Columbia law.)

Glenn expects to prevail in the D.C. Circuit and to obtain a ruling that Fay & Perles's promise to pay Glenn from the attorneys' fees they receive gave rise to a lien against those attorneys' fees, but respectfully submits that it should not matter for present purposes. Whether or not Glenn can assert a formal lien that would be violated by the Trustee's distribution of attorneys' fees to Fay & Perles, the fact is that Glenn served as an attorney for 103 of the *Peterson* plaintiffs, is entitled to compensation for the services he rendered (whether under contract or if, as Fay & Perles seemingly contend, he did not fully perform under the contract, then under *quantum meruit*), and the QSF Trustee is under direction to use the funds to compensate attorneys entitled to fees. Glenn is entitled to be paid as an attorney irrespective of whether the lien he has asserted is upheld.

**Glenn Does Not Seek Payment of Fees or Expenses from Plaintiffs' Recovery.** As noted above, Glenn only seeks payment from the fees to be received by Fay & Perles. Payment to Glenn will not affect plaintiffs' recoveries in any way.

**Intervention.** Glenn was denied intervention in the New York Turnover Action in 2011 by Judge Jones on the ground that, among other things, his interests were being adequately protected because, "[i]f the Peterson Plaintiffs successfully enforce their judgment and recover, Glenn may be entitled to some of the recovery via attorneys' fees" (Dkt. No. 145, p. 4). In 2016, shortly after the Supreme Court had confirmed that the *Peterson* plaintiffs in fact did successfully enforce their judgments and recover through the Turnover Action, Glenn again sought to intervene to seek his fees and was denied again, this time by Judge Forrest on the ground that, among other things, he was too late (Dkt. No. 647, p. 3).

Glenn should not have to intervene to be entitled to be paid what he is owed. Judge Forrest recognized that in referring Glenn's entitlement to attorneys' fees to you even after denying his

---

[6] The individual plaintiffs should affirm that they had consented to Glenn being paid from Fay & Perles's fees as Glenn states in his declaration, but the seven days accorded him to provide supporting evidence did not leave sufficient time to try to track 130 plaintiffs down for that purpose. (Glenn worked with all the plaintiffs to build their damages cases, so even those who did not engage Fay & Perles through him understood and at least implicitly consented to his being paid from the fees they had promised to Fay & Perles – indeed, they knew that they were benefitting from Glenn's services and they knew that they had not agreed to pay anything more than what they had already agreed to pay Fay & Perles, so there is no reason to expect any of them would not to have agreed to that arrangement). Obtaining such evidence would have been further complicated by the fact that those plaintiffs are still technically being represented in this action by Fay & Perles. The issue of their consent is, however, only relevant to whether Glenn can assert an attorney charging lien (as opposed to a common-law equitable lien), and even that is irrelevant to whether Glenn is entitled to be compensated for the work he performed, as discussed below.

Special Master Kathleen M. Massey, Esq.
October 27, 2017
Page 6

motion to intervene as a party. *See* Glenn's letter to you dated June 9, 2017 (posted to the Box site) discussing the Order Appointing Special Master, entered June 7, 2017 (Dkt. No. 775).

**Status of Litigation.** As noted above, Glenn's claim for attorneys' fees from Fay & Perles is pending before Judge Lamberth in the District of Columbia, and his right to assert a lien against funds to be received by Fay & Perles is pending on appeal before the District of Columbia Circuit. To date, there have been no meaningful settlement discussions and no attempt at ADR.

The pending District of Columbia proceedings will resolve Glenn's entitlement to be paid from the QSF funds, although that may take some time. In the meantime, Glenn is open to settlement talks or, potentially, to seeking resolution through ADR if you believe that either may be fruitful. In any event, however, the QSF Trustee should hold back in reserve sufficient funds from the fees due Fay & Perles until Glenn's claims are resolved. Doing so will not affect the amounts to be distributed to any of the injured plaintiffs and will not interfere with the Trustee's completion of his duties and prompt discharge of the Trustee when everything else has been distributed.[7] Given that the Trustee now controls the very fund from which Fay & Perles had agreed in writing that Glenn would be paid (*i.e.*, the attorneys' fees due them with respect to the *Peterson* plaintiffs, *see* Exhibit 1 to Exhibit A), holding those funds until Glenn's right to be paid is resolved would be the equitable thing to do, even if it were not (as Glenn believes it is) the legally required thing for the Trustee to do.

We sincerely appreciate your consideration of this matter and will be available at your convenience to discuss the foregoing and to answer any questions you might have.

Respectfully,

Steven G. Storch

cc:     Paul Kingsbery (pkingsbery@dechert.com)
        Shalom Jacob (sjacob@lockelord.com)
        Alan Katz (akatz@lockelord.com)
        Steven R. Perles (sperles@perleslaw.com)
        Geoffrey T. Hervey (ghervey@bregmanlaw.com)
        Thomas Fay (thomasfay@aol.com)

---

[7] If Glenn's entitlement to fees is not resolved by the time the Trustee is ready to be discharged, the Clerk of the Court can hold the funds, as though this were an interpleader, because ultimate distribution of the funds as between Glenn and Fay & Perles will be a ministerial act once Glenn's entitlement to fees is determined.

# Exhibits A–C Redacted

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAY GLENN,
Plaintiff,

v.                                                      Case No. 1:16-cv-02498-RCL

THOMAS FORTUNE FAY,
FAY LAW GROUP, P.A.,
STEVEN R. PERLES, and
PERLES LAW FIRM, P.C.,
Defendants.

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, OF DEFENDANTS THOMAS FORTUNE FAY AND FAY LAW GROUP, P.A.

Defendants move, pursuant to Fed.R.Civ.Proc. 12(b)(6), or, alternatively, pursuant to Fed.R.Civ.Proc. 56, to dismiss Plaintiff Glenn's case because it is barred by the applicable statue of limitations. Defendant Fay Law Group, P.A., additionally moves to dismiss because the pleadings state no claim against it.

Defendants submit with this Motion a Memorandum of Law in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment, of Defendants Thomas Fortune Fay and Fay Law Group, P.A. , and a proposed Order.

Respectfully submitted,

FAY LAW GROUP, P.A.

_____/s/ John Vail_____
John Vail, of Counsel    (DC Bar 461512)
777 Sixth Street, NW

Suite 410
Washington, D.C.  20001
(202) 589-1300
Fax  589-1721
john@johnvaillaw.com


BOND & NORMAN LAW, P.C.


By: _____/s/ Ferris Ridgely Bond_____
Ferris Ridgely Bond (D.C. Bar 372607)
777 6th Street, N.W.
Suite 410
Washington, D.C. 20001
202-638-4100 telephone
202-207-1041 fax
Ferrisbond@bondandnorman.com



By: _____/s/ Jane Carol Norman_____
Jane Carol Norman (D.C. Bar 384030)
777 6th Street, N.W.
Suite 410
Washington, D.C. 20001
202-638-4100 telephone
202-207-1041 fax
Janenorman@bondandnorman.com


*Attorneys for Defendants Thomas Fortune*
*Fay and Fay Law Group, P.A.*




## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Motion, the Memorandum in support thereof, and the proposed Order were filed electronically via the Court's ECF system and were served electronically at that time on all counsel of record, all of whom are registered to receive filings via the Court's ECF system.

JUDGE PAULEY

19 CIV 8287

JS 44C/SDNY
REV. 5/2010

## CIVIL COVER SHEET

NOV 03 2010

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**PLAINTIFFS**

Jay Glenn

**DEFENDANTS**

v. Thomas Fortune Fay, Steven R. Perles and Fay & Perles,

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Daniel Cobrinik, 475 Park Avenue South, 19th Floor
New York, New York 10016 – (212) 725-6888

**ATTORNEYS (IF KNOWN)**

Not known

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Breach of contract to pay attorneys fees:  Filed under 28 U.S.C. 1332

Has this or a similar case been previously filed in SDNY at any time? No? [✓] Yes? [ ]   Judge Previously Assigned

If yes, was this case Vol.[ ]  Invol. [ ]  Dismissed. No [ ]  Yes [ ]   If yes, give date _____  & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*   NATURE OF SUIT

### ACTIONS UNDER STATUTES

**TORTS**

**CONTRACT**

[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[X] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**PERSONAL INJURY**

[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**

[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**

[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**

[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING/ ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 440 OTHER CIVIL RIGHTS

**REAL PROPERTY**

[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**PRISONER PETITIONS**

[ ] 510 MOTIONS TO VACATE SENTENCE 20 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

**FORFEITURE/PENALTY**

[ ] 610 AGRICULTURE
[ ] 620 OTHER FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**LABOR**

[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

**IMMIGRATION**

[ ] 462 NATURALIZATION APPLICATION
[ ] 463 HABEAS CORPUS- ALIEN DETAINEE
[ ] 465 OTHER IMMIGRATION ACTIONS

**BANKRUPTCY**

[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**

[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**

[ ] 861 HIA (1395ff)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC/DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**

[ ] 870 TAXES (U.S. Plaintiff or Defendant)
[ ] 871 IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**

[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLU- ENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 890 OTHER STATUTORY ACTIONS
[ ] 891 AGRICULTURAL ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES

*Check if demanded in complaint:*

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ See Rider ___ OTHER ___

*Check YES only if demanded in complaint*
JURY DEMAND: [ ] YES [✓] NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

JUDGE _____  DOCKET NUMBER _____

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

*(PLACE AN x IN ONE BOX ONLY)*                                    **ORIGIN**

☑ 1 Original    ☐ 2a. Removed from    ☐ 3 Remanded from    ☐ 4 Reinstated or    ☐ 5 Transferred from    ☐ 6 Multidistrict    ☐ 7 Appeal to District
     Proceeding       State Court        Appellate Court      Reopened        (Specify District)      Litigation        Judge from
             ☐ 2b. Removed from                                                                Magistrate Judge
                    State Court AND                                                                     Judgment
                    at least one
                    party is pro se.

*(PLACE AN x IN ONE BOX ONLY)*       **BASIS OF JURISDICTION**       *IF DIVERSITY, INDICATE*
                                                                      *CITIZENSHIP BELOW.*
☐ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ☐ 3 FEDERAL QUESTION    ☑ 4 DIVERSITY      *(28 USC 1322, 1441)*
                                       (U.S. NOT A PARTY)

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED <u>and</u> PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | ☒ 2 | ☒ 2 | INCORPORATED <u>or</u> PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

**PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)**

Jay Glenn
27148 West Lakeview Drive South
Lake Barrington, Illinois 60084

**DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)**

Thomas Fortune Fay             Fay & Perles
2048 Merrifields Drive            777 6th Street N.W. Suite 410
Silver Springs, MD 20906        Washington, D.C. 20001

Steven R. Perles
1146 19th Street N.W. 5th Floor
Washington, D.C. 20036

**DEFENDANT(S) ADDRESS UNKNOWN**
     REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

---

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    ☐ WHITE PLAINS    ☑ MANHATTAN
          (DO NOT check either box if this a PRISONER PETITION.)

DATE        SIGNATURE OF ATTORNEY OF RECORD                ADMITTED TO PRACTICE IN THIS DISTRICT
                                                             [ ] NO                   March     1983
RECEIPT #                                                    ☒ YES (DATE ADMITTED Mo. _____ Yr. _____ )
                                                               Attorney Bar Code #    D C 6 4 0 6

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ MAG. KATZ \_\_\_ is so Designated.

\_\_\_\_ Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____ .

\_TES DISTRICT COURT (NEW YORK SOUTHERN)

Continuation: Civil Cover Sheet for Jay Glenn v. Thomas Fortune Fay, Steven R. Perles and Fay & Perles

This case is related to two cases now pending in the Southern District of New York.

1.  Levin et al. v. Bank of America, 09 cv 5900 (RPP). On information and belief, Levin involves a turnover proceeding for the assets which are at issue in Glenn v. Fay, and both cases arise from Iran's complicity in the murder of United States marines stationed in Lebanon in 1983, including those Marines and their families (the "Peterson Parties") who were represented by Glenn in prior litigation in Washington D.C., resulting in a judgment against Iran.

2.  Peterson v. 650 Fifth Avenue Holding Company et al, 10 cv 1627 (RJH). Plaintiff Glenn represented the Peterson plaintiffs in connection with securing the judgment against Iran which those plaintiffs now seek to enforce via a lien against 650 Fifth Avenue Holding Company. Glenn seeks to assert an attorneys lien over some of the funds recovered in this case.

CERTIFIED AS A TRUE COPY ON

THIS DATE _2/10/17_

BY _____

( ) Clerk

(X) Deputy

JUDGE PAULEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**10 CIV 8287**

------------------------------------------------------------

JAY GLENN,

                          **Plaintiff,**

      -against-

THOMAS FORTUNE FAY, STEVEN R. PERLES
and FAY & PERLES,

                       **Defendants.**

**COMPLAINT**

------------------------------------------------------------x

     Plaintiff Jay Glenn ("Glenn"), by his attorney Daniel Cobrinik, hereby commences this civil action against Defendants Thomas Fortune Fay ("Fay"), Steven R. Perles, Esq., ("Perles") and Fay & Perles ("F&P") for legal fees owed in connection with Glenn's legal work on civil lawsuits. The lawsuits all arise from the 1983 bombing of the United States Marine barracks in Beirut Lebanon (the "Beirut Bombing"). In support of his action, Plaintiff Glenn alleges as follows:

## JURISDICTION AND VENUE

    1.    Glenn is a resident of the State of Illinois, with his residence address at 27148 West Lakeview Drive South, Lake Barrington, Illinois 60084.

    2.    Defendant Fay is a resident of Silver Spring, Maryland, with his residence address located at 2048 Merrifields Drive, Silver Springs, Maryland 20906.

    3.    Upon information and belief, defendant Perles is a resident of Florida, but maintains his business address at 1146 19th Street, N.W., 5th Floor, Washington, D.C. 20036.

1

4.    On information and belief, defendant F&P is a partnership with its place of business located at 777 6th Street N.W., Suite 410, Washington, D.C. 20001.

5.    The amount in controversy in this case exceeds Seventy Five Thousand Dollars ($75,000.00).

6.    There is complete diversity of citizenship between the parties.

7.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

8.    Venue is proper in this Court based on the fact that many of the acts complained of took place here.

9.    Glenn seeks to assert a charging lien in New York, where the fees which he seeks to lien are being collected by Defendants.

**PARTIES**

10.    Glenn is an attorney admitted to practice law in the State of Illinois and engaged in the practice of law in Illinois.

11.    Defendant Fay is an attorney admitted to practice law in the District of Columbia, and engaged in the practice of law in the District of Columbia.

12.    Defendant Steven R. Perles is an attorney admitted to practice law in the District of Columbia, and is engaged in the practice of law in the District of Columbia.

13.    Defendant F&P is a partnership engaged in the practice of law in the District of Columbia.

14.    On information and belief, Defendants Fay and Perles are the only partners in F&P.

2

## THE 1983 BEIRUT MARINE CORPS BOMBING LITIGATION

15.  In 1983 terrorists attacked the United States military barracks in Beirut, Lebanon, killing more than 200 Americans and causing many others to suffer horrific injuries (the "Beirut Bombing").

16.  Numerous legal actions (the "Beirut Bombing Actions") were commenced against the government of Iran ("Iran") on behalf of the estates of the marines who were killed, the surviving marines and the widows, children, parents and siblings of marines who were killed in the Beirut Bombing.

17.  The aforementioned actions were brought under the state sponsored terrorism exception to the Foreign Sovereign Immunities Act.

18.  The Beirut Bombing Actions alleged that Iran masterminded the Beirut Bombing, and sought damages from Iran.

19.  Starting in or about 2001 Defendant F&P was retained by certain relatives of the Beirut Bombing victims to prosecute their claims (the "F&P Plaintiffs") against Iran in the Beirut Bombing Actions.

20.  On or about October 2, 2001, F&P filed Case No. 1:2001-cv-02094 entitled Peterson, et al. v. Islamic Republic of Iran, in the United States District Court for the District of Columbia, and on December 28, 2001 F&P filed a second case entitled Boulos, et al. v. Islamic Republic of Iran, (collectively referred to herein as the "Peterson Actions") on behalf of those victims of the Beirut Bombing who had retained F&P.

3

## THE AGREEMENT BETWEEN GLENN AND DEFENDANTS

### The Legal Services Fee Agreement

21. Defendants' retainer agreements with their clients in the Peterson Action provided that F&P was to receive a contingent legal fee equal to Thirty Three and One Third Percent (33 1/3%) of any recovery for those plaintiffs.

22. In or about 2001, Defendants retained Glenn as Associate Counsel in the Peterson Action.

23. Defendants asked Glenn to try the damages phase of the Peterson Action before a special master.

24. Because Glenn was not admitted to the bar of the District of Columbia, F&P moved for his admission pro hac vice, so that Glenn could try the damages portion of the Peterson Action.

25. Glenn has known the Fay family for 50 years, and Fay has been Glenn's brother-in-law since 1967.

26. In light of this long family relationship, Glenn trusted Fay implicitly.

27. Defendants Fay and Perles did not know when or whether they would ever collect a judgment against Iran in the Peterson Action.

28. On information and belief, Fay and Perles did not want to pay any of the attorneys who worked with them on the Peterson Action on an hourly basis, because they did not have any money coming in from the case. All of the attorneys who worked with defendants on the Peterson Action – including Glenn -- agreed to payment on a contingency basis.

4

29. In June, 2003, Defendants offered to pay Glenn Three Percent (3%) of any damages which he proved and which were recovered on behalf of the plaintiffs in the Peterson Action (the "Legal Services Fees").

30. Glenn accepted Defendants' offer.

31. On or about June 13, 2003, Glenn signed an Agreement (the "Legal Services Contract", Exhibit A hereto), which provided in pertinent part that Glenn would be paid Three Percent (3%) of any damages which he proved and which Defendants' clients recovered in the Peterson Case.

32. Fay and Perles delivered a fully executed copy of the Agreement (Exhibit A) to Glenn four years later, on or about June 23, 2007, thereby acknowledging in writing their agreement to pay Glenn Three Percent (3%) of any damages which he proved and which were recovered on behalf of plaintiffs in the Peterson Action.

### The Legal Referral Fees Agreement

33. After starting work on the Peterson Action, Glenn realized that defendants had failed to identify all the potential plaintiffs who they should have joined in the Peterson Action.

34. Glenn located additional plaintiffs with claims against Iran (the "Glenn Plaintiffs").

35. Glenn offered to identify such additional potential clients for F&P, if F&P would pay him a standard referral fee equal to one third of F&P's contingency fee.

36. Beginning in or about 2003 and continuing to March, 2010, Fay told Glenn numerous times   that F&P would pay Glenn a standard referral fee equal to Thirty

Three and One Third (33 1/3%) of any legal fee F&P earned for each such Plaintiff that Glenn referred to F&P (the "Legal Referral Fees").

37.  Based on this promise and subsequent correspondence to his brother-in-law Fay, Glenn referred Forty (40) plaintiffs to F&P.

38.  All of these Glenn Plaintiffs were joined in the Peterson Action, and became F&P Plaintiffs as a result of Glenn's work.

39.  Glenn submitted the Special Master recommendations to Fay and F&P and each transmittal specified the Special Master's recommendation and projected Fees, both  the Damage Attorney Award and Referral Fees.

## THE PETERSON ACTION

40.  In March 2003, The U.S. District Court for the District of Columbia conducted a trial to determine the liability of Iran in the Peterson Action, and the amount of the damages to be awarded to the families of the victims of the Beirut Bombing.

41.  Glenn was instrumental in proving the damages suffered by the plaintiffs 103 of the plaintiffs in the Peterson Action.

42.  As a result of Glenn's work, and the work of other attorneys, the court issued a judgment holding Iran liable to the plaintiffs in the Peterson Action for compensatory damages totaling $2,656,944,877.00.

43.  No punitive damages were awarded in the Peterson Case.

44.  The judgment in the Peterson Case is now final and non-appealable.

## THE SUBSEQUENT PETERSON COLLECTION ACTIONS

45.  On information and belief, in 2008, F&P initiated numerous collection actions against Iran (the "Peterson Collection Actions").

46.  On information and belief, two Peterson Collection Actions are now pending in the Southern District of New York, and Peterson has been joined as a necessary party in a third proceeding.

47.  Glenn provided information to F&P which led to two collection actions against Iran in the Northern District of Illinois,

48.  On March 18, 2008, F&P commenced proceedings in the Northern District of Illinois Case #:1:08-cv-0152 entitled Deborah D. Peterson, et al. v. Islamic Republic of Iran, et al v. Garnishee Field Museum of Natural History, Garnishee The University of Chicago.  This case is now on appeal before the 7thd Circuit Court of Appeals 08-2764.

49.  Glenn served as local counsel for the Illinois Peterson Collection Cases until Fay terminated him in 2009.

50.  On information and belief, the Peterson Collection Actions sought to satisfy the judgment in the Peterson Action from Iran's secret bank accounts in American banks, and from other assets belonging to Iran but located in the United States.

51.  On information and belief, as a result of the Peterson Collection Actions, more than Two Billion Dollars ($2,000,000,000.00) in assets belonging to Iran have been frozen to pay damages to the Peterson Action plaintiffs, and to pay attorneys' fees for F&P and the other attorneys in the Peterson Action.

52.  On information and belief, these payments will begin shortly.

53.   On information and belief, the Defendants will recover several hundred million dollars in legal fees for their representation of the Beirut Bombing victims in the Peterson Action.

## DEFENDANTS' ANTICIPATORY BREACH OF THEIR OBLIGATION TO PAY GLENN

54.   On information and belief, Defendants intend to withhold from Glenn the payments which are due him under his agreements with Defendants.

55.   Defendants have told Glenn in substance that they will not pay him any of the Legal Referral Fees which they previously agreed to pay as a condition for Glenn referring the 40 Glenn Plaintiffs.

56.   Defendants never paid Glenn any money for proving approximately $309,741,881.00 in 103 damage claims in the Peterson Action

57.   Defendants never paid Glenn any money for contacting, interviewing and contracting Forty (40) referral plaintiffs resulting in $111,750,000.00 in claims in the Peterson Action.

58.   Defendants never reimbursed Glenn for the out-of-pocket costs that he incurred in contacting, interviewing, travel, conducting formal hearings and preparing post-hearing briefs in103 damage claims.

59.   Pursuant to the parties' agreement, Glenn is entitled to recover from Defendants approximately $9,292,256.43 plus interest for Legal Services Fees pursuant to his Legal Services Contract, as payment for his work proving damages for 103 plaintiffs in the Peterson Action.

60. Pursuant to the parties' agreement, Glenn is entitled to recover $15,288.56 in out of pocket expenses that he paid in connection with his duties as Associate Counsel, including identification and referral of the Glenn Plaintiffs, and his representation of all the F&P Plaintiffs in the Peterson Action.

61. Pursuant to the parties' agreement, Glenn is entitled to recover from Defendants approximately $12,416,666.66) for Legal Referral Fees for the Forty (40) victims of the Beirut Bombing that Glenn referred to F&P.

62. Defendants have told Glenn that they will not pay the full Legal Services Fees and will not pay the Legal Referral Fees due to Glenn.

## COUNT 1

63. Plaintiff repeats and realleges each allegation set forth in paragraphs 1 through 62 as though set forth more fully herein.

64. By virtue of the foregoing, Defendants have anticipatorily breached their agreement to pay Plaintiff for Legal Services Fees and Legal Referral Fees in an amount not less than $21.7 Million plus interest.

65. Plaintiff is entitled to a declaratory judgment that he is entitled to one-third of any attorneys fees recovered by Defendants with respect to the Glenn Plaintiffs, and that he is entitled to Three Percent (3%) of all damages collected on the judgment in the Peterson Action, whether such damages are collected by a turnover proceeding in the Peterson Collection Actions or otherwise.

## COUNT 2

66.  Plaintiff repeats and realleges each allegation set forth in paragraphs 1 through 65 as though set forth more fully herein.

67.  On information and belief, as a result of the Peterson Collection Actions, funds located in New York have been identified and frozen.

68.  On information and belief, Defendants and their agents are prosecuting a turnover proceeding in the Southern District of New York, to obtain the frozen Iranian assets and to use them to satisfy the judgment in the Peterson Action.

69.  On information and belief, the turnover proceedings in New York are sealed.

70.  Glenn is unable to obtain any information about the turnover proceeding in the Peterson Collection Actions from PACER.

71.  Defendants have refused to provide Glenn with any information about the turnover proceeding.

72.  As an attorney with an interest in receiving payment of legal fees, Glenn has a charging lien against any proceeds recovered as a result of the Peterson Collection Actions and the turnover proceeding now pending in the Southern District of New York.

73.  Glenn is also entitled to copies of all pleadings and proceedings in the turnover proceedings, so that he can determine whether and when defendants have been paid in those proceedings.

**WHEREFORE,** Plaintiff prays that the Court enter a judgment:

a)      Declaring that Plaintiff is entitled to recover from Defendants one-third of any attorneys fees recovered by Defendants with respect to the Glenn

Plaintiffs plus Three Percent (3%) of any amounts collected on the judgment in the Peterson 1 Action for those Plaintiffs where Glenn proved damages;

b) Placing a charging lien on any funds or assets recovered as a result of the Peterson Collection Actions, in an amount not less than $23.3 Million.

c) Directing Defendants to provide Glenn with all pleadings and proceedings in the Peterson Collection Actions; and

d) Awarding to Glenn the interest, costs and disbursements as provided for under the law and such other relief as the Court deems just and proper.

Dated:     New York, New York
            November 2, 2010

_____

Daniel Cobrinik (DC 6406)
Attorney for Plaintiff
475 Park Avenue South – 19th Floor
New York, New York 10016
(212) 725-6888

CERTIFIED AS A TRUE COPY ON

THIS DATE _____2/10/17_____

BY _____
          ( ) Clerk
          ( ) Deputy

11

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAY GLENN,
Plaintiff,

v.                                                    Case No. 1:16-cv-02498-RCL

THOMAS FORTUNE FAY,
FAY LAW GROUP, P.A.,
STEVEN R. PERLES, and
PERLES LAW FIRM, P.C.,
Defendants.


## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, OF DEFENDANTS THOMAS FORTUNE FAY AND FAY LAW GROUP, P.A.

### I.  Introduction

In December this Court, *sua sponte*, discretionarily declined to entertain the same claims Mr. Glenn asserts here.  *Glenn v. Fay, et al.*, Case 1:16-cv-01452-RCL, ECF Documents 16 (Memorandum Opinion), pp. 9-10; 17 (Order) (December 6, 2016)(*Glenn I*).  In *Glenn I* Mr. Glenn sought declaratory relief for Defendants' alleged breach of a contract to pay attorney fees; here (*Glenn II*) Mr. Glenn seeks money damages.  Mr. Glenn's claims are barred by the statute of limitations.

The statute of limitations was raised but not decided in *Glenn I*.  Mr. Glenn has deemed *Glenn I* related to this case and Defendants ask that the Court take judicial notice of documents filed in that case and in a prior case involving the same claims and the same parties, *Glenn v. Fay*, Case No. 1: 10-cv:-08287 (SD NY) ("*Glenn NY*")).   *Glenn*

1

*NY* was discussed by this Court in *Glenn I*. Memorandum Opinion, Doc.17 at 2-3

Such notice is appropriate when considering a motion to dismiss, Alston *v. Johnson,* No. 14-CV-1888 (TSC), 2016 WL 5349201, at *2–3 (D.D.C. Sept. 23, 2016); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 and n. 9 (D.C. Cir. 1979)(citing 5 C. Wright & A. Miller, Federal Practice, § 1357, 593 (1969)). Notice is especially appropriate here to avoid a deficient claim surviving a motion to dismiss because of artful pleading. *Alston, supra,* at 2-3. The current pleading omits the date, 2010, of repudiation of the contract under which Mr. Glenn claims, *compare* Complaint, Doc.1, para. 3, and Complaint in *Glenn I*, *supra*, Doc.1, para. 3, and recites nothing from *Glenn NY*. Uncontestable facts – what was pleaded in those cases — are the predicate for this motion. *See* Memorandum Opinion in *Glenn I*, *supra*, Doc.17 at 2-3. To any extent the Court believes cited documents are not permissibly considered in a motion to dismiss, Defendants ask that it exercise its discretion to convert Defendants' motion to one for summary judgment. *Id*.

Defendant Fay Law Group, P.A., raises one distinct issue: Mr. Glenn has pleaded no facts to support his asserted naked legal conclusion, "Fay Law Group is a successor to and is responsible for debts incurred by" the partnership with whom Mr. Glenn had contracted. Complaint, Doc. 1, para. 8. That conclusion is necessary to his claim of liability against the Fay Law Group but does not meet the requirements of Fed.R.Civ.Proc. 8.

## II. Argument

### A. Mr. Glenn's claim for breach of contract is time-barred.

Mr. Glenn asserts here the same claims he asserted in *Glenn I*: that Defendants

2

have breached a contract with him and owe him attorney fees for work done in the case of *Peterson v. Islamic Republic of Iran*, Case Nos. 0l-cv-2094, 01-cv-268, there seeking a declaratory judgment, here seeking money damages. Complaint, §§ 1-3; Memorandum Opinion in *Glenn I*, *supra*, Doc. 17 at 2-3. In *Glenn I* Mr. Glenn pleaded that the Defendants repudiated his contract in 2010, *id*. at 3; *compare* Complaint, §3 (re-asserting repudiation, but omitting date). This Court noted that Glenn previously had sought relief for the repudiation in the United Stated District Court for the Southern District of New York, *Glenn v. Fay*, Case No. 1: 10-cv:-08287 ("*Glenn NY*"). *Glenn I*, *supra*, Doc.17 at 3. In that case Mr. Glenn characterized the claim as "Breach of contract to pay attorneys fees," and checked code 190, "Other Contract," on the civil cover sheet accompanying his original filing. Certified copy Attached as Exhibit A. He pleaded that Defendants Fay and Perles "anticipatorily breached their agreement to pay" legal fees to Glenn. Certified copy attached at Exhibit B.

Under applicable District of Columbia law[1], when his contract was repudiated in 2010, Mr. Glenn had the option of electing to treat repudiation as a breach and seeking relief immediately or of waiting until the executory agreement was fully performed and subsequently bringing any claim for breach. *Eastbanc, Inc. v. Georgetown Park Associates II, L.P.*, 940 A.2d 996, 1007-08 (D.C. 2008). In 2010 Mr. Glenn sued the parties here, characterizing his claim as for breach of contract. Exhibit A. He alleged the same breach of the same contract at issue here and sought declaratory and injunctive relief, whereas here he seeks money damages. *Compare*

---

[1] District of Columbia law is applicable as the law of the forum, but also as designated by the contract under which Glenn claims entitlement. *Glenn II*, Doc. 1-1, at 3.

3

Exhibit B, Complaint in *Glenn NY, supra,* and Complaint, Doc. 1.  *See* Amended

Complaint in *Glenn NY* (Doc. 18 in that case, on file as Document 7-3 in *Glenn I*).

Glenn's filing suit on these claims in 2010 – regardless of the disposition of

the claims – establishes that Mr. Glenn, in 2010, chose to treat the repudiation as

breach.[2]  *Eastbanc, Inc. supra,* 940 A.2d, 1008 ("One method of manifesting [] an

election is to file an action for breach of contract.") (citing 23 Williston & Lord §

63:55, at 666).   Mr. Glenn characterized the claims in *Glenn NY* as being for breach

of contract and specifically pleaded that his contract had been anticipatorily

breached.  Under *Eastbanc*, *Inc., supra,* 940 A.2d, 1008-09, Mr. Glenn's election

triggered the running of the statute of limitation, as any cause of action for breach of

contract accrued in 2010.  Upon his claims having been dismissed for lack of

jurisdiction and venue, Glenn *NY,* Doc. 32, Mr. Glenn's proper course was to have

brought his claims in a proper forum and to do so within the three-year statute of

limitations. D.C. Code Ann. § 12-301(7)(contract), 8 (catchall).  His current filing in

this Court, six years later, is clearly time-barred.

**B.  Mr. Glenn's claim in quantum meruit is time-barred**.

 Mr. Glenn here asserts, in addition to the breach of contract claim also

asserted in *Glenn 1*, a claim in quantum meruit.   That is of no moment, as D.C. law

"clearly shows" that "that if a legal claim is barred by the statute of limitations then

its counterpart in equity is also barred. " *Union Labor Life Ins. Co. v. Sheet Metal*

---

[2] Mr. Glenn's case in New York was dismissed for lack of jurisdiction and for improper
venue.  *Glenn v. Fay*, Case No. 1:10-cv-08287-WHP, Doc. 32.  Defendants cite the
pleadings as evidence of the election made, not for any preclusive effect.  Mr. Glenn
should be judicially estopped from denying that he did not make an election.  *Moses
v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010).

*Workers Nat. Health Plan*, 1991 WL 212232, at *5 (D.D.C. Sept. 30, 1991) (dismissing

quantum meruit claim when breach of contract claim was barred); *Braude &*

*Margulies, P.C. v. Fireman's Fund Ins. Co.*, 468 F. Supp. 2d 190, n. 4 (D.D.C.

2007)(same).

**C. Mr. Glenn fails to plead any cognizable claim against Fay Law Group, P.A.**

 Mr. Glenn's primary claim is that a law partnership, Fay & Perles, and its

principals, owe him money for breach of contract. His sole allegation against Fay

Law Group, P.A., is the naked assertion that it "is a successor to and is responsible

for debts incurred by Fay & Perles." Complaint, para. 8. The assertion is a

conclusion of law, not a statement of fact, and no facts are pleaded from which the

conclusion plausibly could be made. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct.

1937, 1949 (2009)(a complaint is insufficient "if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'")(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 557, 127 S. Ct. 1955 (2007)).

 Allegations containing much greater factual content were deemed too

conclusory in *Tracy v. United States*, No. CV 16-651 (RDM), 2016 WL 7664716, at *4

(D.D.C. Nov. 18, 2016). There, an allegation "that the FBI 'shared surveillance video

records with '[t]hird [p]arties,' including video showing the [plaintiffs] in 'various

states of dress and undress, disrobing and marital relations,'" were deemed to have

"no greater factual content than the allegations that the Supreme Court treated as

legal conclusions in *Iqbal*." *Id.* (first two elisions in original; "[plaintiffs]" added). In

*Mapp v. D.C.*, 993 F. Supp. 2d 22, 25–26 (D.D.C. 2013), an allegation that a Title VII

"[p]laintiff was treated disparately compared to other similarly situated male

probation officers in that she was subjected to heightened scrutiny, reporting and performance standards that were not applied to those male comparators" was found too conclusory to survive the *Iqbal* standard.

The conclusory allegation here fails to provide any facts from which a claim against Fay Law Group, P.A., plausibly could be inferred. The asserted claim must be dismissed.

### III. Conclusion

Mr. Glenn's claims being time-barred, they must be **DISMISSED WITH PREJUDICE** with regard to Defendants Thomas Fortune Fay and Fay Law Group, P.A.

Mr. Glenn having failed to plead any cognizable claim against Fay Law Group, P.A.. Mr. Glenn's claims against Fay Law Group, P.A., must be **DISMISSED WITH PREJUDICE.**

Respectfully submitted,

FAY LAW GROUP, P.A.

_____/s/ John Vail_____
John Vail, of Counsel   (DC Bar 461512)
777 Sixth Street, NW
Suite 410
Washington, D.C.  20001
(202) 589-1300
Fax  589-1721
john@johnvaillaw.com

BOND & NORMAN LAW, P.C.

By: _____/s/ Ferris Ridgely Bond_____
Ferris Ridgely Bond (D.C. Bar 372607)

6

777 6th Street, N.W.
Suite 410
Washington, D.C. 20001
202-638-4100 telephone
202-207-1041 fax
Ferrisbond@bondandnorman.com


By: _____/s/ Jane Carol Norman_____
Jane Carol Norman (D.C. Bar 384030)
777 6th Street, N.W.
Suite 410
Washington, D.C. 20001
202-638-4100 telephone
202-207-1041 fax
Janenorman@bondandnorman.com

*Attorneys for Defendants Thomas Fortune*
*Fay and Fay Law Group, P.A.*

7

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JAY GLENN,
Plaintiff,

v.                                                    Case No. 1:16-cv-02498-RCL

THOMAS FORTUNE FAY,
FAY LAW GROUP, P.A.,
STEVEN R. PERLES, and
PERLES LAW FIRM, P.C.,
Defendants.


## ORDER DISMISSING CASE AGAINST DEFENDANTS THOMAS FORTUNE FAY AND FAY LAW GROUP, P.A.

The **MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY**

**JUDGMENT, OF DEFENDANTS THOMAS FORTUNE FAY AND FAY LAW**

**GROUP, P.A .**being well taken, Plaintiff Glenn's case against them

is herby **DISMISSED WITH PREJUDICE**.


This ___ day of _____, 2017


_____
The Hon. Royce C. Lamberth, Judge

# EXHIBIT E

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JAY GLENN,

     Plaintiff,

vs.

THOMAS FORTUNE FAY, *et al.,*

     Defendants.

Civil No.: 1:16-cv-02498-RCL

# MOTION TO DISMISS OF DEFENDANTS
# STEVEN R. PERLES AND PERLES LAW FIRM, P.C.

Pursuant to Fed.R.Civ.Proc. 12(b)(6), Defendants Steven R. Perles and Perles Law Firm, P.C. (collectively, "Perles"), by and through counsel, move to dismiss the Complaint filed by Plaintiff, Jay Glenn ("Glenn"), on the grounds that Glenn's claims are plainly barred by limitations. Glenn himself concedes in his Complaint that any such claims arose in 2010. Furthermore, Glenn sued the Defendants in November of 2010 in the Southern District of New York for the very same alleged acts at issue in this case. Glenn's Complaint is untimely and therefore fails to state a claim upon which relief can be granted, and it must be dismissed.

WHEREFORE, for the foregoing reasons, and for those more fully set forth in the accompanying Memorandum, Perles submits that this Motion to Dismiss should be granted and

that this action should be dismissed. Furthermore, the fact that Glenn's action is time-barred cannot be remedied, and therefore the dismissal should be with prejudice.

Respectfully submitted,

BREGMAN, BERBERT, SCHWARTZ & GILDAY, LLC

By: _____/s/ Douglas M. Bregman_____
Douglas M. Bregman #218354

By: _____/s/ Geoffrey T. Hervey_____
Geoffrey T. Hervey #415907

7315 Wisconsin Avenue
Suite 800 West
Bethesda, Maryland 20814
(301) 656-2707 – telephone
(301) 961-6525 – facsimile
dbregman@bregmanlaw.com
ghervey@bregmanlaw.com

*Counsel for Defendant Perles*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Motion, the Memorandum of Points and Authorities in support thereof, and the proposed Order were filed electronically via the Court's ECF system on February 21, 2017 and were served electronically at that time on all counsel of record, all of whom are registered to receive filings via the Court's ECF system.

_____/s/ Geoffrey T. Hervey _ _____

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JAY GLENN,

      Plaintiff,

vs.

THOMAS FORTUNE FAY, *et al.,*

      Defendants.

Civil No.: 1:16-cv-02498-RCL

---

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS OF
## DEFENDANTS STEVEN R. PERLES AND PERLES LAW FIRM, P.C.

This is the second lawsuit that the Plaintiff – Jay Glenn, Esquire – brings in this Court, and the third lawsuit that he has filed overall, against the same defendants arising out of the same facts. The previous two cases were dismissed, as this one must also be. Glenn first sued the Defendants in this regard in 2010. The claims that Glenn now brings in this action – for breach of contract and quantum meruit – are clearly barred by the three-year statute of limitations, which is plain on the face of the Complaint. The Complaint must, therefore, be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## I.    BACKGROUND

Glenn contends that the Defendants owe him fees. But Glenn sought the same fees in two prior lawsuits, each of which was dismissed. The claims are stale, and the instant case must be dismissed as untimely.

Glenn filed his current Complaint against Perles and the other Defendants – Thomas Fortune Fay and Fay Law Group, P.A. (collectively "Fay") – on December 22, 2016. Perles and Fay were lead counsel in the action captioned *Peterson v. Islamic Republic of Iran*, Case Nos. 01-cv-2094, 01-cv-2684 (RCL) (D.D.C.), a case that they commenced in this Court on behalf of the

Marine Barracks bombing victims and their relatives (the "*Peterson* Case").[1] Glenn alleges that he entered into contracts with Fay and Perles under which he performed legal services in the *Peterson* case for which he was to be paid a portion of the attorney fees arising out of that case. Glenn claims that Perles and Fay breached the contracts with Glenn, and further, that Fay and Perles have been unjustly enriched by the services provided by Glenn.

Glenn relies upon two purported fee agreements with Defendants, *i.e.*, a written "Associate Counsel Agreement" dated June 13, 2003, and an oral "Additional Fee Agreement" of an unspecified date. *Complaint,* ¶¶ 13-16. Glenn alleges that he "fulfilled all of his responsibilities in 2007, when judgments were entered in the *Peterson* action in favor of plaintiffs represented by Glenn . . . ." *Complaint,* ¶ 3. Based on these allegations, Glenn seek judgments from this Court for breach of contract and/or quantum meruit arising out of the alleged breaches of the Associate Counsel Agreement and the Additional Fee Agreement.

Yet Glenn frankly admits in his Complaint that the Defendants told him in no uncertain terms in 2010 that they were not going to pay him. Indeed, Glenn bluntly states that he was "advised by Fay in 2010 that Glenn would not be paid any amount under the Associate Counsel or Additional Fee Agreements." *Complaint,* ¶22. On the face of the Complaint, therefore, Glenn concedes that the Defendants allegedly breached their purported payment obligations to him in 2010. This lawsuit, filed more than six years later, is plainly time barred.

Glenn's admission in the text of his Complaint that he was told in 2010 that he was not going to be paid is sufficient in itself for this Court to determine that his claims are barred by limitations. The Court can and should dismiss this case on that basis alone.

---

[1] The *Peterson* case and other cases at issue in this lawsuit involved claims by plaintiffs who were injured directly or indirectly as a result of the bombing of the Marine Corps Barracks in Beirut, Lebanon by Iranian agents in 1983. This Court is well aware of the facts and history involved in the *Peterson* case, so they will not be elaborated on here.

In addition to the fact that Glenn admits in his Complaint that his causes of action accrued in 2010, the history of the litigation of his dispute with Defendants makes it undoubtedly clear that his claims are stale. On November 3, 2010, Glenn filed a lawsuit against Defendants Perles and Fay in the United States District Court for the Southern District of New York in an action styled *Glenn v. Fay, et al.*, Case No. 1:10-cv-08287-WHP. In the Civil Cover Sheet that accompanied the Complaint that he filed in that Court, Glenn described the Cause of Action in that case as "[b]reach of contract to pay attorneys fees: Filed under 28 U.S.C. 1332." A true test copy of Glenn's Civil Cover Sheet is attached hereto as Exhibit 1 (the "SDNY Civil Cover Sheet").

Glenn's Complaint in that action described the same written and oral contracts that are at issue in this instant case. A true test copy of the Complaint that Glenn filed in 2010 in the U.S. District Court for the Southern District of New York is attached hereto as Exhibit 2 (the "SDNY Complaint"). Glenn included the following allegations in the SDNY Complaint:

> 56. Defendants never paid Glenn any money for proving approximately $309,741,881.00 in 103 damage claims in the Peterson Action.
>
> 57. Defendants never paid Glenn any money for contacting, interviewing and contracting Forty (40) referral plaintiffs resulting in $111,750,000.00 in claims in the Peterson Action.
>
> 58. Defendants never reimbursed Glenn for the out-of-pocket costs that he incurred in contacting, interviewing, travel, conducting formal hearings and preparing post-hearing briefs in 103 damage claims.
>
> 59. Pursuant to the parties' agreement, Glenn is entitled to recover from Defendants approximately $9,292,256.43 plus interest for Legal Services Fees pursuant to his Legal Services Contract, as payment for his work proving damages for 103 plaintiffs in the Peterson Action.
>
> 60. Pursuant to the parties' agreement, Glenn is entitled to recover $15,288.56 in out of pocket expenses that he paid in connection with his duties as Associate Counsel, including identification and referral of the Glenn Plaintiffs, and his representation of all the F&P Plaintiffs in the Peterson Action.

3

61. Pursuant to the parties' agreement, Glenn is entitled to recover from Defendants approximately $12,416,666.66) [sic] for Legal Referral Fees for the Forty (40) victims of the Beirut Bombing that Glenn referred to F&P.

SDNY Complaint, Exhibit 2. Furthermore, in Count I of the SDNY Complaint, Glenn sued for breach of contract, alleging: "64. By virtue of the foregoing, Defendants have anticipatorily breached their agreement to pay Plaintiff for Legal Services Fees and Legal Referral Fees in an amount not less than $21.7 Million plus interest." SDNY Complaint, ¶ 64, Exhibit 2.

Even though the SDNY Civil Cover Sheet and the SDNY Complaint are not attached to the Complaint that initiated this case, this Court is clearly entitled to review them when considering the instant Rule 12(b)(6) motion to dismiss, without treating it as a motion for summary judgment. *See, e.g., E.E.O.C. v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice.") (emphasis added); *Gumpad v. Commissioner of Social Security Admin.,* 19 F. Supp. 3d 325, 327-28 (D.D.C. 2014) ("[A] court may consider, without triggering the conversion rule [under which a motion to dismiss would be converted into a motion for summary judgment], 'matters of which . . . judicial notice' may be taken . . . such as an agency decision contained in the administrative record.").

Pleadings containing statements that Glenn presented to the Southern District of New York are documents of which this Court is entitled to take judicial notice. "The court may take judicial notice of public records from other court proceedings." *Lewis v. Drug Enf. Admin.*, 777 F.Supp.2d 151, 159 (D.D.C. 2011) (citing *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)). This is recognized in Rule 201 of the Federal Rules of Evidence, which provides, in part:

(b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it: . . .

(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

The Advisory Committee Notes to subdivision (b) of F.R.E. 201, quoted above, explains:

This rule is consistent with Uniform Rule 9(1) and (2) which limit judicial notice of facts to those "so universally known that they cannot reasonably be the subject of dispute," those "so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute," and those "capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy." The traditional textbook treatment has included . . . specific topics as facts relating to the personnel and records of the court, Id. § 327, and other governmental facts, Id. § 328.

(Emphasis added).

The Southern District of New York, and the United States Court of Appeals for the Second Circuit, where Glenn filed his original action in 2010, have expressly recognized the right of a court to take judicial notice of pleadings that have been filed in another case when deciding a motion to dismiss. "The Court may take judicial notice of pleadings filed in other cases in deciding a motion to dismiss without converting that motion into a motion for summary judgment. *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a complaint filed in another action as a public record pursuant to Federal Rule of Evidence 201(b))." *Ndremizara v. Swiss Re America Holding Corp.*, 93 F.Supp.3d 301, 313 n.7 (S.D.NY. 2015); *see also, Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other court . . . ."); *HSA Residential Mortg. Services of Texas v. Casuccio*, 350 F. Supp. 2d 352, 361 (E.D.N.Y. 2003) ("It is proper to take judicial notice of pleadings from other lawsuits attached to a defendant's motion to dismiss . . . .").

5

There can be no dispute that, as of November 3, 2010, when Glenn initiated his suit for fees in the Southern District of New York, he believed that Defendants had breached their contracts with him, that he had been damaged, and that he was able to articulate specific damages figures.

Glenn subsequently filed an Amended Complaint and a Second Amended Complaint in the SDNY action.  The Southern District of New York dismissed the action on July 29, 2011, for lack of *in rem* jurisdiction and improper venue.[2]  See the Order of the Southern District of New York, a copy of which was obtained from Pacer (Document 32) and is attached hereto as Exhibit 3.

On July 14, 2016, five and a half years after he sued Defendants in the Southern District of New York, and virtually five years after that action was dismissed, Glenn filed a new suit, this time in this Court, also arising out of the Associate Counsel and Additional Fee Agreements.  That action was styled *Glenn v. Fay*, 1:16-cv-01452-RCL.  In that action, Glenn included only one claim, for declaratory judgment, to the effect that he is entitled to be paid out of the fees to be paid to Fay and Perles once such fees are distributed in connection with the *Peterson* case.  See the Complaint, Document 1, Case 1:16-cv-01452-RCL.  Glenn did not include claims in that previous lawsuit for breach of contract or for quantum meruit because any such claims would clearly have been barred as untimely.  That action was dismissed by this Court on December 6, 2016, *sua sponte*.[3]  See Documents 16 and 17, Case 1:16-cv-01452-RCL.

Having failed twice before, Glenn now makes a third attempt to sue Defendants for the exact same alleged wrongs.  As explained below, however, Glenn cannot pursue claims now for breach of contract or quantum meruit because both claims are plainly time barred.

---

[2]  The bases on which the Southern District of New York dismissed Glenn's action there are not relevant here.  The point is that Glenn sued Defendants in 2010 for the same fees arising out of the same facts that he seeks to put at issue in this case in this Court.

[3]  Although Defendants filed separate motions to dismiss in that action, the Court styled its order dismissing the suit as a *sua sponte* decision.

## II.   ARGUMENT

### A.   Glenn's Claim for Breach of Contract Is Barred By The Statute of Limitations.

Glenn's claim for breach of contract is plainly barred by the statute of limitations. Contract claims in the District of Columbia are governed by a three-year statute of limitations under D.C. Code § 12-301(7), and that three-year period expired at the latest in 2013.  It necessarily follows that Glenn's claim for breach of contract must be dismissed.

As noted above, Glenn concedes on the face of the Complaint that Fay told him in 2010 the Defendants were not going to pay him under either alleged contract.  *Complaint*, ¶ 22.  Plainly, any such repudiation would constitute the breach of the purported contract and begin the clock on the statute of limitations.  *See Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.,* 940 A.2d 996, 1007-07 (D.C. 2008).  Glenn himself acknowledged as much when he sued the Defendants for this same reason in the Southern District of New York in 2010.

Under *Eastbanc,* the statute of limitations began to run in 2010 when the alleged repudiation occurred, as Glenn plainly alleges (and certainly not later than November 2, 2010, the date of Glenn's filing of the action in the Southern District of New York).  As stated by the D.C. Court of Appeals in *Eastbanc*: "[a] so-called anticipatory breach 'only becomes a wrongful act if the promisee elects to treat it as such." *Id.* (quoting *Sheffield v. Paul T. Stone, Inc.,* 68 App. D.C. 378, 380 (D.C. Cir. 1938)).  Glenn unquestionably elected to treat the 2010 notice as an anticipatory repudiation of the contract, as manifested by the fact that he sued Perles and Fay in 2010 in the Southern District of New York based upon this very notice.

The D.C. Court of Appeals has further held that, when a defendant notified his broker that he would not pay any commission under the parties' agreement, that notice triggered the running of the statute of limitations.  *Medhin v. Hailu,* 26 A.3d 307, 311 (D.C. 2011).  "When Hailu

7

represented to Medhin that he would not pay any commission, Medhin could have sued to enforce his rights under the parties' brokerage agreement." *Id.* (citing *News World Communications, Inc. v. Thompsen,* 878 A.2d 1218, 1224–25 (D.C. 2005)) ("[T]he statute of limitations began to run no later than [the date] Ms. Thompsen had performed her last service to the Times, [and] the Times had declined to compensate her . . ., for by that date she had been definitively told that she would not be paid."); *see also Pardue v. Center City Consortium Sch. of Archdiocese of Wash., Inc.,* 875 A.2d 669, 679 (D.C. 2005) (holding that notice of appellee's "failure to pay . . . gave rise to [appellant's] claim and marked the accrual of her cause of action").

In *Medhin,* the defendant repeatedly told the broker that he was not going to pay the commission. *Id.* at 309. Three years after the initial refusal to pay, the disputed funds were placed in an escrow account, and four years after that, the plaintiff sued to recover the commission funds. *Id.* The court ruled that the action was time-barred by the statute of limitations because Medhin was well aware that he suffered an injury when he was told that no commission would be paid. *Id.* at 311. Thus, "any claim by Medhin to recover that commission brought more than three years after that notice would be untimely." *Id.* Medhin argued that the notice of refusal to pay did not constitute a breach, and that no breach occurred until the funds were disbursed. *Id.* The court rejected this argument, again stating that "Medhin was well aware of Hailu's decision not to pay him a commission" and the unavailability of the funds did nothing to "affect the running of the statute of limitations." *Id.*

In reliance on the *Medhin* decision, and applying D.C. law, this Court has held that the statute of limitations begins to run "when a party has been made aware that the other is refusing to perform". *LoPiccolo v. American University*, 840 F. Supp. 2d 71, 78 (D.D.C. 2012).

This Court has also held that the statute of limitations for breach of an employment contract began to run from the date the plaintiff received notice that his contract would not be renewed for the following school year. *Gauer v. Gallaudet Univ.,* 915 F. Supp. 2d 145, 148 (D.D.C. 2013). The plaintiff in that case alleged that the notice from his employer was an anticipatory repudiation, *i.e.*, "an intention to breach the contract five months hence, at the start of the new academic school year . . . when [defendant's] performance under the employment contract came due." *Id.* at 147-48. The plaintiff in that case contended that the statute of limitations did not begin to run until the first day of the new school year, but the *Gauer* court rejected that argument, holding that notice of a later breach was itself a breach of contract, thus triggering the statute of limitations. *Id.* (citing *Allison v. Howard University,* 209 F. Supp. 2d 55 at 60 (D.D.C. 2002) (holding that the date from which the statute of limitations began to run was the date "the decision was made and communicated to the plaintiff.")).

These cases make it abundantly clear that the statute of limitations on Glenn's breach of contract claim began to run from the date of the anticipatory repudiation – when he received notice from Fay in 2010 that Defendants were refusing to pay him. Glenn frankly confesses that he was "advised by Fay in 2010 that Glenn would not be paid any amount under the Associate Counsel or Additional Fee Agreements." *Complaint*, ¶22. The fact that Glenn was on notice of his claims in 2010 is made even clearer by Glenn's November 2010 lawsuit against Defendants filed in the Southern District of New York arising out of the very same facts. Therefore, Glenn's breach of contract claim is barred by the statute of limitations on the face of the Complaint.

### B.  Glenn's Claim for Quantum Meruit Is Barred By The Statute of Limitations.

Glenn's claim for quantum meruit is barred by the statute of limitations for the exact same reasons that the contract claim is barred. Like breach of contract claims, quantum meruit claims

in the District of Columbia are governed by a three-year statute of limitations under D.C. Code §12-301(7) and (8). That three-year period expired long ago. It necessarily follows that Glenn's claim for quantum meruit must also be dismissed.

In *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1225 (D.C. 2005), the D.C. Court of Appeals held that the statute of limitations began to run on a quantum meruit or unjust enrichment claim at the time the plaintiff performed her last service for the defendant and compensation was expressly denied by the defendant. In *Thompsen*, the plaintiff had completed a significant amount of work on a magazine idea she had pitched to defendants after they expressed enthusiasm for the idea on multiple occasions. *Id.* at 1220. After months of work, the defendants called the plaintiff and told her they would not be moving forward with her idea and she would not be compensated. *Id.*

In determining the plaintiff's unjust enrichment claim, the Court determined that such a claim accrues when a wrongful act occurs that causes the enrichment to become unjust or unlawful. *Id.* at 1223. The wrongful act in the plaintiff's case was the defendants' phone call to her indicating that she would not be compensated for the work she already performed on their behalf. *Id.* The statement made by Defendants to Glenn in 2010 that they were not going to pay him for his services, *Complaint*, ¶22, is analogous to the phone call referenced in *Thompsen*. It therefore follows that Glenn's quantum meruit claim accrued in 2010, when he was told that he would not be paid for the services he purportedly provided.

The invalidity of Glenn's quantum meruit claim is further illustrated by *Vila v. Inter-Am. Inv., Corp.*, 596 F. Supp. 2d 28 (D.D.C. 2009). In *Vila,* a financial consultant brought a quantum meruit claim against an investment company who failed to compensate him for services performed. *Id.* at 30. The Court held the limitations period on the plaintiff's claim began when the defendant

"unequivocally refused to compensate the plaintiff for his services." *Id.* In reaching its decision, the Court relied on *Thompsen*. *Id.* ("This Court interpreted *Thompsen* to hold . . . that an unjust enrichment claim accrues when enrichment becomes unjust as determined by the point in time when payment has been refused."). Unjust enrichment also occurs when "under the circumstances the defendant's retention of the benefit is unjust." *Id.* (citing *Thompsen*, 878 A.2d 1218 at 1222 (D.C. 2005)). Under *Vila*, it is clear that the statute of limitations on Glenn's quantum meruit claim began as soon as Defendants expressed to Glenn that he would not be paid. At that point, payment had been refused for services already provided, rendering Defendants' retention of those services unjust under the circumstances. That occurred in 2010; Glenn's suit, filed at the end of 2016, is plainly stale.

## III.  CONCLUSION

Glenn's claims for breach of contract and quantum meruit are plainly time barred. Accordingly, the Complaint must be dismissed. Furthermore, the defects in Glenn's lawsuit cannot be remedied, and therefore the dismissal should be with prejudice.

Respectfully submitted,

BREGMAN, BERBERT, SCHWARTZ & GILDAY, LLC


By: _____/s/ Douglas M. Bregman_____
Douglas M. Bregman #218354

By: _____/s/ Geoffrey T. Hervey_____
Geoffrey T. Hervey #415907
7315 Wisconsin Avenue
Suite 800 West
Bethesda, Maryland 20814
(301) 656-2707 – telephone
(301) 961-6525 – facsimile
dbregman@bregmanlaw.com
ghervey@bregmanlaw.com
*Counsel for Defendant Perles*

11

# EXHIBIT 1

JUDGE PAULEY

JS 44C/SDNY
REV. 5/2010

**CIVIL COVER SHEET**

NOV 03 2010

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Jay Glenn v. Thomas Fortune Fay, Steven R. Perles and Fay & Perles, | |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Daniel Cobrinik, 475 Park Avenue South, 19th Floor New York, New York 10016 — (212) 725-6888 | Not known |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Breach of contract to pay attorneys fees:  Filed under 28 U.S.C. 1332

Has this or a similar case been previously filed in SDNY at any time? No?☑ Yes?☐   Judge Previously Assigned

If yes, was this case Vol☐  Invol.☐  Dismissed. No☐  Yes ☐  If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*          NATURE OF SUIT

**ACTIONS UNDER STATUTES**

**TORTS**

**CONTRACT**

**PERSONAL INJURY**
[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[x] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**PERSONAL INJURY**
[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY - PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**
[ ] 610 AGRICULTURE
[ ] 620 OTHER FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**LABOR**
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**
[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**
[ ] 861 HIA (1395f)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC/DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 TAXES (U.S. Plaintiff or Defendant)
[ ] 871 IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 890 OTHER STATUTORY ACTIONS
[ ] 891 AGRICULTURAL ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES

**REAL PROPERTY**
[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**
[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING/ ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**
[ ] 510 MOTIONS TO VACATE SENTENCE 20 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

**IMMIGRATION**
[ ] 462 NATURALIZATION APPLICATION
[ ] 463 HABEAS CORPUS- ALIEN DETAINEE
[ ] 465 OTHER IMMIGRATION ACTIONS

*Check if demanded in complaint:*

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $See Rider  OTHER _____

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

JUDGE _____  DOCKET NUMBER _____

*Check YES only if demanded in complaint*
JURY DEMAND: ☐ YES ☑ NO

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

*(PLACE AN  x  IN ONE BOX ONLY)*                    **ORIGIN**

☑ 1 Original  
 Proceeding

☐ 2a. Removed from  
 State Court  
☐ 2b. Removed from  
 State Court AND  
 at least one  
 party is pro se.

☐ 3 Remanded from  
 Appellate Court

☐ 4 Reinstated or  
 Reopened

☐ 5 Transferred from  
 (Specify District)

☐ 6 Multidistrict  
 Litigation

☐ 7 Appeal to District  
 Judge from  
 Magistrate Judge  
 Judgment

*(PLACE AN  x  IN ONE BOX ONLY)*      **BASIS OF JURISDICTION**                 **IF DIVERSITY, INDICATE**  
**CITIZENSHIP BELOW.**  
*(28 USC 1322, 1441)*

☐ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☐ 3 FEDERAL QUESTION      ☑ 4 DIVERSITY  
                                    (U.S. NOT A PARTY)

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [X] 2 | [X] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Jay Glenn  
27148 West Lakeview Drive South  
Lake Barrington, Illinois 60084

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

Thomas Fortune Fay              Fay & Perles  
2048 Merrifields Drive          777 6th Street N.W. Suite 410  
Silver Springs, MD 20906        Washington, D.C. 20001

Steven R. Perles  
1146 19th Street N.W. 5th Floor  
Washington, D.C. 20036

DEFENDANT(S) ADDRESS UNKNOWN  
 REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE  
RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:     THIS ACTION SHOULD BE ASSIGNED TO:     ☐ WHITE PLAINS     ☑ MANHATTAN  
          (DO NOT check either box if this a PRISONER PETITION.)

DATE          SIGNATURE OF ATTORNEY OF RECORD              ADMITTED TO PRACTICE IN THIS DISTRICT  
                                                  [ ] NO  
                                                  [X] YES (DATE ADMITTED Mo. March  Yr. 1983 )  
RECEIPT #                                         Attorney Bar Code #      D C   6 4 0 6

Magistrate Judge is to be designated by the Clerk of the Court.

gistrate Judge _____      MAG  KATZ is so Designated.

   Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

   'TES DISTRICT COURT (NEW YORK SOUTHERN)

Continuation: Civil Cover Sheet for Jay Glenn v. Thomas Fortune Fay, Steven R. Perles and Fay & Perles

This case is related to two cases now pending in the Southern District of New York.

1. Levin et al. v. Bank of America, 09 cv 5900 (RPP). On information and belief, Levin involves a turnover proceeding for the assets which are at issue in Glenn v. Fay, and both cases arise from Iran's complicity in the murder of United States marines stationed in Lebanon in 1983, including those Marines and their families (the "Peterson Parties") who were represented by Glenn in prior litigation in Washington D.C., resulting in a judgment against Iran.

2. Peterson v. 650 Fifth Avenue Holding Company et al, 10 cv 1627 (RJH). Plaintiff Glenn represented the Peterson plaintiffs in connection with securing the judgment against Iran which those plaintiffs now seek to enforce via a lien against 650 Fifth Avenue Holding Company. Glenn seeks to assert an attorneys lien over some of the funds recovered in this case.

CERTIFIED AS A TRUE COPY ON

THIS DATE 2/10/17

BY _____
Clerk
(X) Deputy

# **EXHIBIT 2**

JUDGMENT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 10 CIV 8287

-------------------------------------------------------------------

JAY GLENN,

                                    Plaintiff,                          **COMPLAINT**

            -against-

THOMAS FORTUNE FAY, STEVEN R. PERLES
and FAY & PERLES,

                                    **Defendants.**

------------------------------------------------------------------x

      Plaintiff Jay Glenn ("Glenn"), by his attorney Daniel Cobrinik, hereby commences

this civil action against Defendants Thomas Fortune Fay ("Fay"), Steven R. Perles,

Esq., ("Perles") and Fay & Perles ("F&P") for legal fees owed in connection with Glenn's

legal work on civil lawsuits. The lawsuits all arise from the 1983 bombing of the United

States Marine barracks in Beirut Lebanon (the "Beirut Bombing"). In support of his

action, Plaintiff Glenn alleges as follows:


## JURISDICTION AND VENUE

     1.    Glenn is a resident of the State of Illinois, with his residence address at 27148

West Lakeview Drive South, Lake Barrington, Illinois 60084.

     2.    Defendant Fay is a resident of Silver Spring, Maryland, with his residence

address located at 2048 Merrifields Drive, Silver Springs, Maryland 20906.

     3.    Upon information and belief, defendant Perles is a resident of Florida, but

maintains his business address at 1146 19th Street, N.W., 5th Floor, Washington, D.C.

20036.

4.    On information and belief, defendant F&P is a partnership with its place of business located at 777 6th Street N.W., Suite 410, Washington, D.C. 20001.

5.    The amount in controversy in this case exceeds Seventy Five Thousand Dollars ($75,000.00).

6.    There is complete diversity of citizenship between the parties.

7.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

8.    Venue is proper in this Court based on the fact that many of the acts complained of took place here.

9.    Glenn seeks to assert a charging lien in New York, where the fees which he seeks to lien are being collected by Defendants.


**PARTIES**

10.    Glenn is an attorney admitted to practice law in the State of Illinois and engaged in the practice of law in Illinois.

11.    Defendant Fay is an attorney admitted to practice law in the District of Columbia, and engaged in the practice of law in the District of Columbia.

12.    Defendant Steven R. Perles is an attorney admitted to practice law in the District of Columbia, and is engaged in the practice of law in the District of Columbia.

13.    Defendant F&P is a partnership engaged in the practice of law in the District of Columbia.

14.    On information and belief, Defendants Fay and Perles are the only partners in F&P.

2

## THE 1983 BEIRUT MARINE CORPS BOMBING LITIGATION

15. In 1983 terrorists attacked the United States military barracks in Beirut, Lebanon, killing more than 200 Americans and causing many others to suffer horrific injuries (the "Beirut Bombing").

16. Numerous legal actions (the "Beirut Bombing Actions") were commenced against the government of Iran ("Iran") on behalf of the estates of the marines who were killed, the surviving marines and the widows, children, parents and siblings of marines who were killed in the Beirut Bombing.

17. The aforementioned actions were brought under the state sponsored terrorism exception to the Foreign Sovereign Immunities Act.

18. The Beirut Bombing Actions alleged that Iran masterminded the Beirut Bombing, and sought damages from Iran.

19. Starting in or about 2001 Defendant F&P was retained by certain relatives of the Beirut Bombing victims to prosecute their claims (the "F&P Plaintiffs") against Iran in the Beirut Bombing Actions.

20. On or about October 2, 2001, F&P filed Case No. 1:2001-cv-02094 entitled Peterson, et al. v. Islamic Republic of Iran, in the United States District Court for the District of Columbia, and on December 28, 2001 F&P filed a second case entitled Boulos, et al. v. Islamic Republic of Iran, (collectively referred to herein as the "Peterson Actions") on behalf of those victims of the Beirut Bombing who had retained F&P.

3

## THE AGREEMENT BETWEEN GLENN AND DEFENDANTS

### The Legal Services Fee Agreement

21.  Defendants' retainer agreements with their clients in the Peterson Action provided that F&P was to receive a contingent legal fee equal to Thirty Three and One Third Percent (33 1/3%) of any recovery for those plaintiffs.

22.  In or about 2001, Defendants retained Glenn as Associate Counsel in the Peterson Action.

23.  Defendants asked Glenn to try the damages phase of the Peterson Action before a special master.

24.  Because Glenn was not admitted to the bar of the District of Columbia, F&P moved for his admission pro hac vice, so that Glenn could try the damages portion of the Peterson Action.

25.  Glenn has known the Fay family for 50 years, and Fay has been Glenn's brother-in-law since 1967.

26.  In light of this long family relationship, Glenn trusted Fay implicitly.

27.  Defendants Fay and Perles did not know when or whether they would ever collect a judgment against Iran in the Peterson Action.

28.  On information and belief, Fay and Perles did not want to pay any of the attorneys who worked with them on the Peterson Action on an hourly basis, because they did not have any money coming in from the case. All of the attorneys who worked with defendants on the Peterson Action – including Glenn -- agreed to payment on a contingency basis.

4

29. In June, 2003, Defendants offered to pay Glenn Three Percent (3%) of any damages which he proved and which were recovered on behalf of the plaintiffs in the Peterson Action (the "Legal Services Fees").

30. Glenn accepted Defendants' offer.

31. On or about June 13, 2003, Glenn signed an Agreement (the "Legal Services Contract", Exhibit A hereto), which provided in pertinent part that Glenn would be paid Three Percent (3%) of any damages which he proved and which Defendants' clients recovered in the Peterson Case.

32. Fay and Perles delivered a fully executed copy of the Agreement (Exhibit A) to Glenn four years later, on or about June 23, 2007, thereby acknowledging in writing their agreement to pay Glenn Three Percent (3%) of any damages which he proved and which were recovered on behalf of plaintiffs in the Peterson Action.

### The Legal Referral Fees Agreement

33. After starting work on the Peterson Action, Glenn realized that defendants had failed to identify all the potential plaintiffs who they should have joined in the Peterson Action.

34. Glenn located additional plaintiffs with claims against Iran (the "Glenn Plaintiffs").

35. Glenn offered to identify such additional potential clients for F&P, if F&P would pay him a standard referral fee equal to one third of F&P's contingency fee.

36. Beginning in or about 2003 and continuing to March, 2010, Fay told Glenn numerous times   that F&P would pay Glenn a standard referral fee equal to Thirty

Three and One Third (33 1/3%) of any legal fee F&P earned for each such Plaintiff that Glenn referred to F&P (the "Legal Referral Fees").

37. Based on this promise and subsequent correspondence to his brother-in-law Fay, Glenn referred Forty (40) plaintiffs to F&P.

38. All of these Glenn Plaintiffs were joined in the Peterson Action, and became F&P Plaintiffs as a result of Glenn's work.

39. Glenn submitted the Special Master recommendations to Fay and F&P and each transmittal specified the Special Master's recommendation and projected Fees, both the Damage Attorney Award and Referral Fees.

## THE PETERSON ACTION

40. In March 2003, The U.S. District Court for the District of Columbia conducted a trial to determine the liability of Iran in the Peterson Action, and the amount of the damages to be awarded to the families of the victims of the Beirut Bombing.

41. Glenn was instrumental in proving the damages suffered by the plaintiffs 103 of the plaintiffs in the Peterson Action.

42. As a result of Glenn's work, and the work of other attorneys, the court issued a judgment holding Iran liable to the plaintiffs in the Peterson Action for compensatory damages totaling $2,656,944,877.00.

43. No punitive damages were awarded in the Peterson Case.

44. The judgment in the Peterson Case is now final and non-appealable.

6

**THE SUBSEQUENT PETERSON COLLECTION ACTIONS**

45.  On information and belief, in 2008, F&P initiated numerous collection actions against Iran (the "Peterson Collection Actions").

46.  On information and belief, two Peterson Collection Actions are now pending in the Southern District of New York, and Peterson has been joined as a necessary party in a third proceeding.

47.  Glenn provided information to F&P which led to two collection actions against Iran in the Northern District of Illinois,

48.  On March 18, 2008, F&P commenced proceedings in the Northern District of Illinois Case #:1:08-cv-0152 entitled Deborah D. Peterson, et al. v. Islamic Republic of Iran, et al v. Garnishee Field Museum of Natural History, Garnishee The University of Chicago.  This case is now on appeal before the 7thd Circuit Court of Appeals 08-2764.

49.  Glenn served as local counsel for the Illinois Peterson Collection Cases until Fay terminated him in 2009.

50.  On information and belief, the Peterson Collection Actions sought to satisfy the judgment in the Peterson Action from Iran's secret bank accounts in American banks, and from other assets belonging to Iran but located in the United States.

51.  On information and belief, as a result of the Peterson Collection Actions, more than Two Billion Dollars ($2,000,000,000.00) in assets belonging to Iran have been frozen to pay damages to the Peterson Action plaintiffs, and to pay attorneys' fees for F&P and the other attorneys in the Peterson Action.

52.  On information and belief, these payments will begin shortly.

53. On information and belief, the Defendants will recover several hundred million dollars in legal fees for their representation of the Beirut Bombing victims in the Peterson Action.

## DEFENDANTS' ANTICIPATORY BREACH OF THEIR OBLIGATION TO PAY GLENN

54. On information and belief, Defendants intend to withhold from Glenn the payments which are due him under his agreements with Defendants.

55. Defendants have told Glenn in substance that they will not pay him any of the Legal Referral Fees which they previously agreed to pay as a condition for Glenn referring the 40 Glenn Plaintiffs.

56. Defendants never paid Glenn any money for proving approximately $309,741,881.00 in 103 damage claims in the Peterson Action

57. Defendants never paid Glenn any money for contacting, interviewing and contracting Forty (40) referral plaintiffs resulting in $111,750,000.00 in claims in the Peterson Action.

58. Defendants never reimbursed Glenn for the out-of-pocket costs that he incurred in contacting, interviewing, travel, conducting formal hearings and preparing post-hearing briefs in103 damage claims.

59. Pursuant to the parties' agreement, Glenn is entitled to recover from Defendants approximately $9,292,256.43 plus interest for Legal Services Fees pursuant to his Legal Services Contract, as payment for his work proving damages for 103 plaintiffs in the Peterson Action.

8

60. Pursuant to the parties' agreement, Glenn is entitled to recover $15,288.56 in out of pocket expenses that he paid in connection with his duties as Associate Counsel, including identification and referral of the Glenn Plaintiffs, and his representation of all the F&P Plaintiffs in the Peterson Action.

61. Pursuant to the parties' agreement, Glenn is entitled to recover from Defendants approximately $12,416,666.66) for Legal Referral Fees for the Forty (40) victims of the Beirut Bombing that Glenn referred to F&P.

62. Defendants have told Glenn that they will not pay the full Legal Services Fees and will not pay the Legal Referral Fees due to Glenn.

## COUNT 1

63. Plaintiff repeats and realleges each allegation set forth in paragraphs 1 through 62 as though set forth more fully herein.

64. By virtue of the foregoing, Defendants have anticipatorily breached their agreement to pay Plaintiff for Legal Services Fees and Legal Referral Fees in an amount not less than $21.7 Million plus interest.

65. Plaintiff is entitled to a declaratory judgment that he is entitled to one-third of any attorneys fees recovered by Defendants with respect to the Glenn Plaintiffs, and that he is entitled to Three Percent (3%) of all damages collected on the judgment in the Peterson Action, whether such damages are collected by a turnover proceeding in the Peterson Collection Actions or otherwise.

## COUNT 2

66. Plaintiff repeats and realleges each allegation set forth in paragraphs 1 through 65 as though set forth more fully herein.

67. On information and belief, as a result of the Peterson Collection Actions, funds located in New York have been identified and frozen.

68. On information and belief, Defendants and their agents are prosecuting a turnover proceeding in the Southern District of New York, to obtain the frozen Iranian assets and to use them to satisfy the judgment in the Peterson Action.

69. On information and belief, the turnover proceedings in New York are sealed.

70. Glenn is unable to obtain any information about the turnover proceeding in the Peterson Collection Actions from PACER.

71. Defendants have refused to provide Glenn with any information about the turnover proceeding.

72. As an attorney with an interest in receiving payment of legal fees, Glenn has a charging lien against any proceeds recovered as a result of the Peterson Collection Actions and the turnover proceeding now pending in the Southern District of New York.

73. Glenn is also entitled to copies of all pleadings and proceedings in the turnover proceedings, so that he can determine whether and when defendants have been paid in those proceedings.

**WHEREFORE,** Plaintiff prays that the Court enter a judgment:

    a)     Declaring that Plaintiff is entitled to recover from Defendants one-third of any attorneys fees recovered by Defendants with respect to the Glenn

Plaintiffs plus Three Percent (3%) of any amounts collected on the judgment in the Peterson 1 Action for those Plaintiffs where Glenn proved damages;

b) Placing a charging lien on any funds or assets recovered as a result of the Peterson Collection Actions, in an amount not less than $23.3 Million.

c) Directing Defendants to provide Glenn with all pleadings and proceedings in the Peterson Collection Actions; and

d) Awarding to Glenn the interest, costs and disbursements as provided for under the law and such other relief as the Court deems just and proper.

Dated:    New York, New York
          November 2, 2010

Daniel Cobrinik (DC 6406)
Attorney for Plaintiff
475 Park Avenue South – 19th Floor
New York, New York 10016
(212) 725-6888

CERTIFIED AS A TRUE COPY ON

THIS DATE

BY _____
( ) Clerk
( ) Deputy

11

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                             :

JAY GLENN,                              10 Civ. 8287 (WHP)
                             :

          Plaintiff,           ORDER
                             :

        -against-
                             :

THOMAS FORTUNE FAY, et al.,
                             :

         Defendants.
                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: 7/29/11 |

WILLIAM H. PAULEY III, District Judge:

        For the reasons set forth on the record on July 29, 2011, Defendants' motion to

dismiss for lack of in rem jurisdiction and improper venue is granted. The Clerk of the Court is

directed to terminate all pending motions and mark this case as closed.

Dated: July 29, 2011
       New York, New York

                        SO ORDERED:

                         WILLIAM H. PAULEY III
                             U.S.D.J.

-1-

*Counsel of Record:*

Daniel Cobrinik, Esq.
Daniel Cobrinik, P.C.
475 Park Avenue South, 19th Floor
New York, NY 10016
*Counsel for Plaintiff*

Annie P. Kaplan, Esq.
Fay Kaplan Law, P.A.
777 Sixth Street, N.W., Suite 410
Washington, DC 20001
*Counsel for Defendants Thomas F. Fay, Fay & Perles and Anthony LaSpada*

James P. Bonner, Esq.
Shalov Stone & Bonner & Rucco LLP
485 Seventh Avenue, Suite 1000
New York, NY 10018
*Counsel for Steven R. Perles*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAY GLENN,

      Plaintiff,

vs.

                        Civil No.: 1:16-cv-02498-RCL

THOMAS FORTUNE FAY, *et al.,*

      Defendants.

## ORDER OF DISMISSAL

UPON CONSIDERATION of the Motion of Defendants Steven R. Perles and Perles Law

Firm, P.C., submitted pursuant to Fed.R.Civ.Proc. 12(b)(6), and the Opposition thereto, it is this

_____ day of _____, 2017,

ORDERED, that the Motion should be and hereby is GRANTED, and it is further

ORDERED, that the Complaint filed in this action should be and hereby is DISMISSED

WITH PREJUDICE.


_____
United States District Court Judge