# STORCH AMINI PC

**Steven G. Storch**
MEMBER NY & IL BARS

212.497.8216
sstorch@storchamini.com

November 3, 2017

**POSTED TO BOX**

Special Master Kathleen N. Massey, Esq.
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036

Re:   *Peterson v. Islamic Republic of Iran*, 10-cv-4518-KBF (S.D.N.Y.) (the "Turnover Action")

Dear Special Master Massey:

  We represent Jay Glenn ("Glenn") who served as "damages attorney" for 103 of the plaintiffs in the underlying *Peterson* action in which they obtained their judgments that are now being enforced through the above-referenced Turnover Action. We provided details of Glenn's claim on October 27 (the "Glenn Letter") and now respond to the October 27, 2017, letter sent by the firm Bregman, Berbert, Schwartz & Gilday, LLC on behalf of Steven R. Perles and the Perles Law Firm, P.C. (the "Perles Letter"), to the extent that it addresses Glenn's claim (as it does in the last bullet point on page 3).

  At that bullet, Mr. Perles asserts that:

> Perles has been named as a defendant in two lawsuits brought by attorney Jay Glenn in the U.S. District Court for the District of Columbia. The first action was dismissed and is on appeal to the Circuit Court. The second action is substantially similar to the first, dismissed action. Motions to dismiss have been pending in the second action since March of 2017, presumably awaiting disposition of the appeal.

That statement is inaccurate in three respects, and noteworthy for two others which we address together in the fourth point, below.

  *First*, what Mr. Perles refers to as the "first action" was an action seeking a declaratory judgment confirming "that upon Defendants' [Fay & Perles's] receipt of a distribution from the QSF Trust, defendants must immediately remit to Glenn an amount to be determined at trial, plus interest and costs, as required by the Associate Counsel Agreement and the Additional Fee

Agreement." Complaint filed July 14, 2016, in *Glenn v. Fay, et al.*, No: 1:16-cv-01452-RCL (D. D.C.) [Dkt. No. 1] at ¶ 30. Glenn sought a declaratory judgment because, as monies had not then been distributed from the QSF Trust, performance by Fay & Perles was not yet due as their contractual obligation was to pay him from the contingent fees they received themselves. In the *sua sponte* exercise of his discretion, Judge Lamberth dismissed the claim, without prejudice, on the basis that it would serve no useful purpose to render a declaratory judgment when "disbursement of funds from the QSF Trust appears imminent, and it is unlikely that this declaratory action -- or the damages litigation sought therein -- would be able to resolve the dispute before performance under the purported agreements becomes due. Thus, continuation of this action likely serves no useful purpose, as the contractual dispute is likely to ripen into the very type of claim the Declaratory Judgment Act seeks to avoid: breach of contract." Memorandum Opinion filed December 6, 2016, at p. 8, Dkt. No. 16 (reported at 222 F. Supp. 3d 31). Contrary to Mr. Perles assertion, no appeal was taken from that dismissal.

Second, contrary to Mr. Perles's assertion, the "second action is [*not*] substantially similar to the first, dismissed action." The "second action" asserts the breach of contract claim which Judge Lamberth anticipated and which became ripe as the QSF Trust was being distributed to pay Fay & Perles the contingent fees that they had promised to share with Glenn. Complaint filed December 22, 2016, in *Glenn v. Fay, et al.*, No. 1:16-cv-02498-RCL (D.D.C.) [Dkt. No. 1]. That action is not similar to the first action in the sense that Mr. Perles implies, that it is subject to dismissal for the same reason, because it is not a declaratory judgment action and cannot be dismissed in the exercise of discretion as the first action was.

Third, while motions to dismiss the second action on statute of limitations grounds are pending (*see* Glenn Letter at p. 4), Mr. Perles is wrong to "presume" that decision is awaiting determination of Glenn's appeal to the D.C. Circuit, because that appeal has nothing to do with the statute of limitations. What is on appeal is the granting of Fay & Perles's motion to quash Glenn's attorney charging lien in the underlying action, *Peterson v. Islamic Republic of Iran*, No. 01-cv-2094-RCL (D. D.C.), Memorandum Opinion filed December 6, 2016 [Dkt. No. 565] (reported at 220 F. Supp. 3d 98). As noted in the Glenn Letter (at p. 5), whether Glenn can assert a charging lien is not material to the question of whether he has a valid contractual claim against Fay & Perles that should be paid from the QSF Trust funds otherwise being distributed to Fay & Perles, and Judge Lamberth acknowledged exactly that in quashing the lien: "While Glenn may have a claim against Fay & Perles based on their agreement, he can assert no charging lien against plaintiffs here." Dkt. No. 565 at p. 13; 220 F. Supp. 3d at 108. (With respect to Judge Lamberth's phrasing, we note that Glenn has never asserted a charging lien "against plaintiffs," but only against the contingent fees due from plaintiffs to Fay & Perles, *see* Glenn Letter at p. 4.)

Fourth, what is interesting about Mr. Perles's letter is not merely that he does not directly dispute Glenn's entitlement to be paid, but that he asserts that he seeks his own fees "on the grounds that Perles, via the Fay & Perles FSIA Litigation Partnership [the partnership they had previously referred to, as does Glenn, as "Fay & Perles"], represented all of the plaintiffs in all of those cases." (Perles Letter at p. 2.) To the extent that he is asserting that he represented, and is entitled to fees from, those 40 plaintiffs that Glenn referred to Fay & Perles, Mr. Perles presumably is relying on the engagement letters that Glenn signed on behalf of Fay & Perles, as well as

Special Master Kathleen M. Massey, Esq.
November 3, 2017
Page 3

individually. *See* Glenn Letter at p. 4 and Exhibits 2A-2G. To the extent that Mr. Perles is relying for his own fees on the engagement letters executed on his (and Thomas Fay's) behalves by Glenn, that will not only prove the existence of the seven missing agreements (Glenn Letter at p. 4), but will certainly be probative of Glenn's assertion that he was promised a referral fee with respect to those plaintiffs who engaged Fay & Perles through his efforts.

As we understand it, Mr. Perles is suggesting that the QSF Trustee hold back sufficient funds from distribution to him to pay the "disputed claims," including Glenn's, pending resolution of those claims. Perles Letter at p. 2. As Glenn stated in his own letter, he believes that to be the proper course of action and endorses Mr. Perles's position, provided that what is kept in reserve for Glenn is sufficient to pay his claim in full (Mr. Perles claims to have deducted the "disputed claims" from the payment he is seeking, but he did not disclose how much he advocates reserving for Glenn).

We continue to appreciate your consideration of this matter and to be available at your convenience to discuss the foregoing and to answer any questions you might have.

Respectfully,

Steven G. Storch

cc: Paul Kingsbery (pkingsbery@dechert.com)
Shalom Jacob (sjacob@lockelord.com)
Alan Katz (akatz@lockelord.com)
Steven R. Perles (sperles@perleslaw.com)
Geoffrey T. Hervey (ghervey@bregmanlaw.com)
Thomas Fay (thomasfay@aol.com)