# STORCH AMINI PC

Steven G. Storch
**MEMBER NY & IL BARS**

212.497.8216
sstorch@storchamini.com

November 10, 2017

**POSTED TO BOX**

Special Master Kathleen N. Massey, Esq.
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036

Re:   *Peterson v. Islamic Republic of Iran,* 10-cv-4518-KBF (S.D.N.Y.) (Claim of Jay Glenn)

Dear Special Master Massey:

We represent Jay Glenn ("Glenn"), and write in response to Your Honor's request, during the November 8, 2017, conference call, for citation to authority demonstrating that New York law requires that Glenn's charging lien arising under D.C. law be honored in this Court, notwithstanding that it has not yet been reduced to judgment.[1]

To keep this letter short as Your Honor requested, we are providing an overview of the case law to show that Glenn's contention that New York law protects his D.C. lien is well-grounded.  It is our belief that as long as the proposition is even arguable, equity (if not the law) requires that the QSF Trustee reserve sufficient funds to protect Glenn's interests until his claim is adjudicated in the District of Columbia where it is pending.  Given the short time we were allotted to address the issue, we presume that to be Your Honor's intent as well.  However, to the extent that the QSF Trustee might be permitted to distribute the fees Glenn claims to Fay & Perles before there is such final adjudication of his claim, Glenn respectfully requests the opportunity to fully and formally brief the issue.[2]

---

[1] Glenn's lien has been liquidated (although it may be disputed) insofar as it is a sum certain requiring only a ministerial calculation by the QSF Trustee.  *See* Glenn's October 27, 2017, letter to Your Honor, p.2 (the "Prior Letter").  As noted in the Prior Letter, Judge Lamberth granted Fay & Perles's motion to quash that lien in the D.C. *Peterson* action, and that decision is on appeal to the U.S. Court of Appeals for the D.C. Circuit.  Glenn's reply brief on that appeal is due to be filed November 17, 2017, and we received notice from the Court of Appeals this past Wednesday scheduling argument for January 22, 2017.

[2] For Glenn, who did substantial work securing the judgment being enforced and has not even had his expenses reimbursed, the amount at stake is quite substantial.  Notwithstanding that such sum is the "proverbial drop in the bucket" of the fees Fay & Perles are receiving, the fact that they insist on receiving

Special Master Kathleen M. Massey, Esq.
November 10, 2017
Page 2

As an initial matter, we note that Judge Lamberth has already held that D.C. law governs Glenn's lien *and* that the D.C. District Court has the power to enforce such a lien against the QSF funds in New York. In *Peterson v. Islamic Republic of Iran,* 220 F. Supp. 3d 98 (D.D.C. 2016), the Court noted that "Fay and Perles[] claim that this Court lacks jurisdiction because [the] QSF trust exists in New York. . . . Thus, they argue, no lien can arise in the District of Columbia because there are no funds under the control of the court." *Id.* at 105. Judge Lamberth disagreed: "this Court entered judgment against Iran, and the QSF trust consists of funds seized for the satisfaction of that judgment. This Court rejects the argument that this Court is precluded from enforcing an otherwise proper attorney's charging lien because the funds to satisfy that judgment were seized in another jurisdiction." *Id.* at 106. *See also id.* at 104 (holding that D.C. law governed Glenn's charging lien as applied to the QSF Trust).[3]

Even in the absence of Judge Lamberth's prior determination that D.C. law applies, New York law would dictate that D.C. law govern Glenn's rights to participate in the QSF funds. In *Istim, Inc. v. Chemical Bank,* 78 N.Y.2d 342 (1991), the New York Court of Appeals held that an "interests analysis" was to be applied to resolve choice-of-law issues with respect to attorneys' liens. To apply that analysis, the courts "first look to the purposes of the statutes in conflict and identify the policies which the States seek to promote through the application of their laws. Then, based upon the facts of the case which relate to the statutes' purpose, we determine which State has the greater interest in having its law applied." *Id.* at 348. That analysis, which pointed to New York law in *Istim,* points squarely to D.C. law when applied here.

At first blush, the facts in *Istim* appear similar to those here, but the differences were and are dispositive. In that case, "Coronet" owed a debt to "Istim" and promised to repay it from the

---

Glenn's portion of their fees now, rather than letting the Trustee (or the Clerk of the Court) safely hold the disputed amount until his claim is resolved, strongly hints at the risk that Glenn might never be able to recover the funds once distributed to them. Indeed, Annie Kaplan, Thomas Fay's former partner who is apparently now on the verge of settling her own attorneys' fee claim against him, had previously submitted a declaration accusing him of dissipating $67.2 million in attorneys' fees [ECF No. 753-1, ¶ 9; *see also* ECF No. 753 pp. 5-6]. Finally, also from an equitable standpoint, there would be something wrong with permitting other attorneys in precisely Glenn's situation viz. the existence of a charging lien to be paid today, simply because Fay & Perles did not object or settled with them, while permitting the mere fact that Fay & Perles objected to Glenn's being paid (however meritless the objection) not only to delay his receipt of payment (which certainly is fair until the claim is adjudicated), but to also deprive him of the security that exists today for the very purpose of ensuring that he will be paid (which is patently unfair). Indeed, the threat that the money is here today, but potentially gone tomorrow, gives Fay & Perles enormous leverage in forcing attorneys to give up their legitimate rights to fees (which may or may not have been a factor in Ms. Kaplan's settlement).

[3] Although Judge Lamberth ultimately quashed Glenn's charging lien in the cited decision, that decision is on appeal to the D.C. Circuit (*see* n. 1, *supra*), and the D.C. District Court has thus made it clear that it is prepared to enforce the lien with respect to the QSF funds once its prior decision is reversed as Glenn anticipates. New York courts similarly recognize that a charging lien that arises under New York law "is imposed on the cause of the action and that the proceeds, wherever found, are subject to it. And this is so even if recovery is obtained in an action different from the one in which the services were rendered." *Cohen v. Grainger, Tesoriero & Bell,* 81 N.Y.2d 655, 658 (1993).

Special Master Kathleen M. Massey, Esq.
November 10, 2017
Page 3

proceeds of a lawsuit it would bring against a third-party, "ETX." *Id.* at 345. "Willkie" represented Coronet in that Illinois lawsuit against ETX and, when it settled, Willkie acted as escrow agent for the settlement fund in New York. *Id.* Thereafter, Istim commenced an action against Coronet in New York, obtained a judgment, and asserted a judgment lien against the New York settlement fund, while Willkie asserted its own charging lien, and the ultimate question at issue was the priority of their respective liens. *Id.* at 345-46. The conflict of laws question arose because, under Illinois law, Willkie's failure to give statutorily-required notice to the judgment debtor in the Illinois lawsuit (ETX) precluded assertion of a charging lien. *Id.* at 348.

Applying the first prong of the interests analysis in *Istim*, the Court of Appeals noted that the "law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the [only] facts or contacts which obtain significance in defining State interest are those which relate to the purpose of the particular law in conflict." *Id.* at 347 (internal quotations and citation omitted). Thus, the policy underlying the notice requirement of the Illinois statute was to be disregarded in that "whatever interest Illinois might have had in requiring Willkie to give notice to ETX is not now applicable" and "is irrelevant" because ETX was "not a party to the instant dispute" and "has nothing to do with Willkie's enforcement of its attorney's lien." *Id.* at 348. In the instant case, if there is a conflict here at all, it arises from the assertion that New York Judiciary Law requires that the attorney asserting the lien have been of record in the New York proceeding.[4] But, like the Illinois statute in *Istim*, that policy is "irrelevant" to the analysis here as it serves to protect someone who has no interest in the present dispute: Glenn's lien will have no effect on the *Peterson* plaintiffs as it involves solely the fees that would otherwise be distributed to Fay & Perles. *See* Glenn's Prior Letter. Insofar as the "purpose of the New York attorney's lien statute is to ensure that attorneys have the means to enforce the right to their fees," *Istim*, 78 N.Y.2d at 348, and D.C.'s common law of charging liens (there is no statute) likewise reflects "[t]he trend of the modern decisions . . . to protect the right of the attorney to receive compensation for his services," *Elam v. Monarch Life Ins. Co.*, 598 A.2d 1167, 1170 (D.C. 1991), the public policies of *both* the State and the District will be furthered by applying D.C. law so Glenn can finally be paid.

Under *Istim*, the inquiry then turns to "which State has the greater interest in having its law applied," an inquiry which is to be "based upon the facts of the case which relate to the state's purpose." 78 N.Y.2d at 348. That "state" here is clearly the District of Columbia insofar as Glenn's services were provided in connection with the D.C. action and its law is designed to ensure that Glenn is compensated for his services. The New York Court of Appeals held that it was inappropriate to focus in *Istim* on the Illinois location of the underlying lawsuit because the New

---

[4] Judge Forrest suggested as much when she denied Glenn the right to intervene in the New York proceeding, observing that Glenn "had [not] entered an appearance in this action" and therefore could not "meet the requirements of N.Y. Jud. Law § 475, which requires that any such lien must be 'for the benefit of an 'attorney of record' only." June 6, 2016, Order [Dkt. No. 647] at p. 4. That decision was rendered without full briefing and without any party having raised § 475 insofar as Glenn had only asserted a lien under D.C. law. *See id.* Had the issue been briefed, Glenn would have pointed out that, in *Istim*, the Court of Appeals squarely held that Willkie was entitled to assert a charging lien under New York Judiciary Law § 475 even though it had never represented its client in any New York proceeding at all. *See also* Judiciary Law § 475 (providing that "from the commencement of an action . . . in any court . . . the attorney who appears for a party has a lien.").

Special Master Kathleen M. Massey, Esq.
November 10, 2017
Page 4

York turnover proceeding before it was not an attempt to enforce the underlying (Illinois) judgment, and the parties to the Illinois action had no interest in the proceeding,[5] but the Court specifically noted that "focusing upon the underlying litigation would be appropriate" where, as here, the case presents "the typical attorney's lien dispute between an attorney and a client or a party to the litigation upon which the lien is based[.]" *Id.* at 347-48. That is exactly what Judge Lamberth focused on in holding that Glenn's lien would be governed by D.C. law. *Peterson*, 220 F. Supp. 3d at 104 ("The existence and effect of an attorney's lien is governed by the law of the place in which the contract between the attorney and client is to be performed."). Indeed, in their agreement engaging Glenn as a damages attorney in the D.C. action, Fay & Perles expressly provided that their relationship with Glenn would be governed by D.C. law. *See* Glenn's Prior Letter Exhibit A, Exhibit 1.

At the same time, New York has minimal, if any, connection to the "facts of the case which relate to the statutes' purpose," *Istim*, 78 N.Y.2d at 348, namely getting the attorneys in the underlying D.C. action paid, other than the fact that that was the very purpose of bringing the New York proceeding in the first place.  (Of course, the New York action was brought to get the plaintiffs paid, but that had to happen in order for the attorneys to get paid.)  Of the many hundreds of plaintiffs, and seemingly almost as many lawyers, very few have any connection to New York and any such connection is entirely coincidental.  None of the interested parties are from New York: Glenn resides in South Carolina, both Fay and Perles are based in the D.C. area (indeed, upon information and belief the QSF Trustee is in D.C.), and any distribution to Fay & Perles from the QSF Trust would, presumably, be a distribution directly out of state. Just as *Istim* applied New York law because "there is no contrary interest in another State to suggest that New York's policies should not control[,]" *id.* at 349, here, there is no contrary interest *in New York* to suggest that *D.C.'s* policies should not control.  The analysis that led the Court of Appeals to hold New York law applicable in *Istim*, is the analysis that would compel it to apply D.C. law to Glenn's lien here.

Additionally, under New York law, Glenn is entitled to payment from the QSF Trust even absent an enforceable lien of his own, because Fay & Perles's promise to share a portion of their own fees (*see* Exhibit A of Exhibit 1 to Glenn's Prior Letter, ¶¶ 6, 11) operated to effectuate an equitable assignment of the corresponding portions of their own liens (and no one has disputed that Fay & Perles have charging liens with respect to the funds in the QSF Trust, even if they have not needed to assert them).  Under New York law, a charging lien constitutes an "'equitable ownership interest in the client's cause of action,'" rather than providing for a mere 'priority of payment' in favor of the attorney." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 178 (2d Cir. 2001) (quoting *LMWT Realty Corp. v. Davis Agency Inc.,* 85 N.Y.2d 462, 467-68 (1995)). Therefore, "even if we were to conclude that [associate counsel] was not an attorney of record, there are cases to suggest that he would nonetheless have been an equitable assignee of the cause of action by virtue of his agreement with [counsel of record] and plaintiffs. *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 452 (2d Cir. 1998) (citing both New York and

---

[5] The N.Y *Peterson* turnover action here was brought to enforce the D.C. *Peterson* judgment, whereas the turnover proceeding in *Istim* was brought by Istim to enforce its separate judgment against Willkie's client and was not a proceeding to enforce the judgment that Willkie had obtained on behalf of its client (Coronet) in Illinois. *Id.* at 345.

Special Master Kathleen M. Massey, Esq.
November 10, 2017
Page 5

Second Circuit cases).   "Thus, the distinction between an 'attorney of record' and one who is 'of counsel' may be of little practical significance in cases where attorneys have agreed among themselves to share in the fruits of their combined labor." *Louima v. City of New York*, No. 98 CV 5083 (SJ), 2004 WL 2359943, at *58 (E.D.N.Y. Oct. 5, 2004) (quoting *Itar-Tass*, 140 F.3d at 452), *aff'd sub nom. Roper-Simpson v. Scheck*, 163 F. App'x 70 (2d Cir. 2006).

Finally, the fact that the amount of Glenn's lien has not yet been reduced to judgment is of no moment under either New York or D.C. law.   The law of both jurisdictions recognizes the existence of the attorney's lien from the moment the action is commenced, even though it is then obviously unliquidated.   *See, e.g.*, *People v. Keeffe*, 50 N.Y.2d 149, 155-56 (1980) (under New York law, a charging lien constitutes "a lien upon the client's cause of action from the commencement of the action (or if a proper notice is served, prior to such commencement), which attaches to the judgment and the proceeds of the judgment"); *Elam*, 598 A.2d at 1170 (under D.C. law, "an agreement providing for a contingent fee of '33 1/3% out of any judgment' obtained against the defendant created 'a contract lien' which, though 'inchoate before judgment . . . relates back and takes effect from the time of the commencement of the suit.'" (citation omitted)).   After judgment, a New York lien can be enforced "by appropriate order of the court in which the action is pending." *Keeffe*, 50 N.Y.2d at 156; *see also Istim*, 78 N.Y.2d at 345-46 (Willkie did not seek to enforce its lien until after a judgment lienor had already sought to enforce its competing lien against the fund).   Glenn is in the process of following the analogous procedure in D.C. and, as noted above, the D.C. Court is prepared to enforce Glenn's lien as against the QSF Trust once the U.S. Court of Appeals for the District of Columbia Circuit confirms the existence of Glenn's lien under D.C. law.   *See supra* n. 3.

We trust that this is responsive to Your Honor's inquiry.

Respectfully,

Steven G. Storch

cc:   Paul Kingsbery (paul.kingsbery@dechert.com)
      Alan H. Katz (akatz@lockelord.com)
      Shalom Jacob (sjacob@lockelord.com)
      Steven R. Perles (sperles@perleslaw.com)
      Douglas M. Bregman (dbregman@bregmanlaw.com)
      Geoffrey T. Hervey (ghervey@bregmanlaw.com)
      Thomas Fay (thomasfay@aol.com)
      Ferris R. Bond (ferrisbond@bondandnorman.com)