UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBORAH D. PETERSON, Personal
Representative of the Estate of James C. Knipple
(Dec.) et al.,

                                        Plaintiffs,

                        -v-

ISLAMIC REPUBLIC OF IRAN et al.,

                                        Defendants.

10-cv-4518 (KBF)

**SPECIAL MASTER'S**
**REPORT & RECOMMENDATION**

KATHLEEN N. MASSEY, SPECIAL MASTER:

The Court has appointed me as Special Master in the above-captioned proceeding

pursuant to Rule 53(a) of the Federal Rules of Civil Procedure to resolve certain disputes that

have arisen in connection with the Peterson § 468B Qualified Settlement Fund (the "QSF" or the

"Fund").  (*See* ECF No. 775.)  To resolve these disputes in an efficient manner, I have divided

them into three separate "tracks," with each track involving common legal and factual issues.[1]

In this report, I address an issue that falls within the scope of the Attorneys' Fee Disputes

track, which was the subject of my Report & Recommendation dated November 29, 2017.  (ECF

No. 870.)  Specifically, I address an application I received after my issuance of the Report from

attorney Allen L. Rothenberg and the Law Firm of Allen L. Rothenberg (jointly, "Rothenberg")

for an order restraining the Trustee from paying attorney Anthony LaSpada in his capacity as a

---

[1]      The three tracks have been designated the "Trust Administration Disputes" track, the
"Advance Company Disputes" track, and the "Attorneys' Fee Disputes" track.  (ECF No. 777
at 1–2.)  This report presumes familiarity with my previous Reports & Recommendations (*see*
ECF Nos. 842, 845, 852, 870 and 872), and the Court's decisions adopting my Report &
Recommendation on the Trust Administration Disputes track and adopting and modifying my
Report & Recommendation on the Advance Company Disputes track (*see* ECF Nos. 853, 861,
871).  Capitalized terms not otherwise defined herein have the meanings ascribed to them in my
prior reports.

Damages Attorney insofar as the payments to him are to be deducted from fees otherwise payable to Rothenberg. Based on Rothenberg's submissions, it appears he questions the proprietary of paying LaSpada approximately $966,000 for his work as a Damages Attorney on behalf of 76 of Rothenberg's clients. (SM Ex. 23A (Aff. of Allen Louis Rothenberg, Esq. made on Dec. 28, 2017) ¶ 8.)[2]

As discussed below, I recommend that the Court deny Rothenberg's application because, among other reasons, he failed to request the relief at issue in a timely fashion and fails to provide a factual or legal basis for restraining the Trustee from paying LaSpada for his work as a Damages Attorney on behalf of Rothenberg's clients from payments otherwise due to Rothenberg. Nothing in this Report & Recommendation is intended to prevent or limit Rothenberg's right to seek reimbursement for the payment in a separate proceeding. In the event the Court adopts my initial Report & Recommendation on the Attorneys' Fee Disputes, I note that Rothenberg's application does not require any delay in the Trustee's payment of attorneys' fees, except for the payment of $966,000 to LaSpada pending the Court's consideration of this report.

## I.     Background

As discussed in my Report & Recommendation on Attorneys' Fee Disputes, in 2001 and 2003, Fay and Perles, through the FSIA Partnership, brought the first two cases against Iran on behalf of victims of the 1983 terrorist attack on the Marine barracks in Beirut Lebanon, and certain personal estates and family members of other victims of the attack. They are captioned

---

[2]     In connection with this Report & Recommendation, I have considered the following submissions on the Court's docket: ECF Nos. 651, 727, 735, 738, 775, 777 and 870. I have also considered the submissions from counsel for Rothenberg, LaSpada, Fay Group and the Trustee. The submissions cited herein are listed in the attached Appendix A, with each of the documents in Appendix A designated herein as a Special Master exhibit ("SM Ex. __").

*Peterson v. Islamic Republic of Iran*, No. 1:01-cv-02094 (D.D.C. filed Oct. 3, 2001), and *Boulos v. Islamic Republic of Iran*, No. 1:01-cv-02684 (D.D.C. filed May 30, 2003), and they are referred to jointly herein as the "*Peterson* Action." (ECF No. 870 at 9–10.) Fay, Perles and others brought 14 follow-on cases against Iran, one of which is captioned *Bonk v. Islamic Republic of Iran*, No. 1:08-cv-1273 (D.D.C. filed July 24, 2008) (the "*Bonk* Action"). (*Id.* at 14– 15.)

By Order entered June 6, 2016, the Court directed the Trustee to commence distribution of the assets of the Fund to Plaintiffs and their attorneys in accordance with the terms of the QSF Agreement and certain other agreements, including agreements between Plaintiffs and their respective counsel. (ECF No. 651 at 3; *see also* ECF No. 870 at 27–29.) Pursuant to the Court's Order, the Trustee began to distribute funds to Plaintiffs and their counsel in late 2016. (ECF No. 710 at 7, ECF No. 870 at 30–32.)

Distributions from the QSF to Plaintiffs' counsel are governed in the first instance by retainer agreements between Plaintiffs and their counsel, two of which are relevant here.

- Where Rothenberg referred clients to Fay and Perles, the plaintiffs entered into retainer agreements with Fay, Perles and Rothenberg, with the plaintiffs agreeing that the net attorneys' fees would be shared equally by the retained attorneys. (*See, e.g.*, SM Ex. 1 (Contingent Retainer Agreement dated Apr. 9, 2001) at 1.)

- Where LaSpada referred clients to Fay and Perles, plaintiffs entered into retainer agreements with Fay, Perles and LaSpada, also with the plaintiffs agreeing that the net attorneys' fees would be shared equally by the retained attorneys. (*See, e.g.*, SM Ex. 2 (Contingent Retainer Agreement dated Apr. 10, 2001) at 1.)

In addition to the foregoing, the Peterson Plaintiffs' counsel entered into various fee-sharing agreements between and among themselves, three of which are relevant here.

- As reflected in a letter from Rothenberg dated November 27, 2007, Fay, Perles and Rothenberg apparently agreed that Rothenberg would receive one-third of the net attorneys' fee for each of the clients he had referred to the FSIA Partnership.  (SM Ex. 5 (Letter from A. Rothenberg dated Nov. 27, 2007) at 1.)  Rothenberg's letter identified 101 clients for whom Rothenberg was entitled to a one-third share of the net attorneys' fees.  (*Id.* at 2–4)

- As reflected in correspondence between Fay and LaSpada in May and June 2014, Fay and Perles apparently agreed that LaSpada would also receive a share of the net attorneys' fee for each client he had referred to the FSIA Partnership.  (SM Ex. 6 (Letter from T. Fay dated May 28, 2014); SM Ex. 7 (Letter from A. LaSpada dated June 2, 2014).)  While this correspondence does not specify the percentage share of the attorneys' fees to which LaSpada would be entitled and does not reflect Perles's agreement to the referral fee, Fay and LaSpada have claimed in these proceedings that the agreed-upon referral fee was a one-third share of the net fees (SM Ex. 11 (Letter from C. Fay on Behalf of LaSpada dated Oct. 26, 2017) at 1, Ex. 1), and Perles has not disputed this claim.

- Fay and Perles entered into an agreement, the form of which is generally referred to as an Associate Counsel Agreement, providing that LaSpada agreed, among other things, to prepare and present evidence of damages with respect to particular clients, and Fay and Perles agreed that LaSpada would be paid "3% of the gross amount collected from the

Defendants with respect to compensatory damages as to each client referred to [LaSpada]." (SM Ex. 3 (Agreement dated June 13, 2003) at 1–3.)[3]

Fay Group has taken the lead among the Peterson Plaintiffs' counsel in determining how to allocate attorneys' fees in accordance with the governing agreements. As an interim measure, in late 2016, Fay Group provided the Trustee with a proposed schedule for the distribution of approximately $250 million in attorneys' fees, representing roughly half of the fees due to be paid to the Peterson Plaintiffs' attorneys. (*See* SM Ex. 13 (Letter from S. Jacob dated Nov. 7, 2017) at 6.) Because the Trustee did not have sufficient information at the time to ensure that the proposed allocation accurately and completely reflected the terms of all of the relevant agreements, the Trustee required each recipient of fees to sign an Acknowledgment Regarding Interim Distribution of Attorneys' Fees (the "Acknowledgment") that included as Exhibit A an Interim Attorney Fee Payout schedule of the proposed distributions (the "Interim Payment Schedule") and provided, among other things, that the distribution was without prejudice to any attorney's right to the payment of attorneys' fees. (*Id.*; *see also* SM Ex. 8 (Acknowledgment Regarding Interim Distribution of Attorneys' Fees dated as of Nov. 21, 2016) ¶ 1.)

As the notes to the Interim Payment Schedule indicate, "Rothenberg & LaSpada receive 1/3 of the net attorney fees only from the Peterson and Bonk cases after subtracting . . . the damages attorneys' fees (based on C. Fay Esq's calculations)." (SM Ex. 8 (Acknowledgment Regarding Interim Distribution of Attorneys' Fees dated as of Nov. 21, 2016) at 4 n.1(iii).) The Interim Payment Schedule identified LaSpada as one of the Damages Attorneys. (*Id.* at 3.)

---

[3]      As discussed further below, there is another version of this Associate Counsel Agreement that was prepared when the original version referred to above was believed to have been lost. They are identical in terms of the clients on whose behalf LaSpada agreed to serve as a Damages Attorney and the fee arrangement. (*See* SM Ex. 4 ([Replacement] Agreement dated as of June 13, 2003).)

Important for the present purposes is that Rothenberg signed an Acknowledgment dated of November 21, 2016, indicating that he had received the Interim Payment Schedule.  (*Id.* at 1.)

Pursuant to the schedule, Rothenberg received a payment of $26,789,058 for his share of the net attorneys' fees on matters where he had been retained by certain plaintiffs. (*See* SM Ex. 12 (Letter from P. Buckley dated Oct. 27, 2017) at 2.)  LaSpada was paid $8,473,103, with $6,744,572 representing his share of the net attorneys' fees on the matters where he had been retained by certain other plaintiffs, and $1,728,531 representing his fees on matters where he had served as a Damages Attorney.  (*See* SM Ex. 11 (Letter from Caragh Fay dated Oct. 26, 2017) ¶ 2.)

In May 2017, Fay moved for an order compelling the Trustee to disburse the balance of the attorneys' fees owed to him and other counsel for the Peterson Plaintiffs pursuant to a schedule identical to the Interim Payment Schedule insofar as it concerned dollar amounts and percentage shares of attorneys' fees.  (ECF Nos. 727, 735, 738.)  Although the notes to the proposed schedule filed in connection with Fay's motion are somewhat different from those of the Interim Payment Schedule, it is clear that Fay's proposed distribution reflected the same assumptions as those that were used for the interim distribution, including that Retained Attorneys would have their distributions reduced to pay for the fees of the Damages Attorneys who worked on behalf of their clients.  (*See* ECF No. 735-5 at 3–5.)  There can also be no dispute that the proposed schedule identified LaSpada as one of the Damages Attorneys.  (*See id.* at 3–4.)  Significantly, Rothenberg did not oppose Fay's motion and did not raise any concerns about the Trustee's deduction of fees for Damages Attorneys from the fees otherwise due to him as a Retained Attorney.

In a manner consistent with the relief sought by Fay, Rothenberg requested that the Trustee pay him at least $27,429,790.33, representing the balance of his one-third share of the net attorneys' fees due in connection with the awards to be paid to the plaintiffs identified in his fee-sharing agreement with Fay and Perles. (*See* SM Ex. 12 (Letter from P. Buckley dated Oct. 27, 2017) at 1–2.) LaSpada also sought an order requiring the Trustee to pay him the balance of his one-third share of the net attorneys' fees due in connection with the awards to be paid to the plaintiffs identified in his fee-sharing agreement with Fay and Perles, plus payment of fees pursuant to the terms of his Associate Counsel Agreement with Fay and Perles for work he had performed as a Damages Attorney on behalf of certain of the plaintiffs, for a total of at least $13,650,458.60. (SM Ex. 11 (Letter from C. Fay on Behalf of LaSpada dated Oct. 26, 2017) ¶ 1.) Prior to the issuance of my Report & Recommendation on the Attorneys' Fee Disputes, Rothenberg raised no objection to the payment of fees to LaSpada for his work as a Damages Attorney.[4]

After Rothenberg, LaSpada and others had indicated the amounts they expected to be paid in respect of attorneys' fees owed, the Trustee noted that there were some discrepancies in the amounts being claimed, due in part to the different assumptions used in the attorneys'

---

[4]   Rothenberg asserted in a footnote to his submission of October 27 that he had requested but not received "an accounting as to how amounts allocated to the N.Y. Collection Attorneys have been assessed against him" and that he would have a claim if such fees had been over-allocated to him. (*See* SM Ex. 12 (Letter from P. Buckley dated Oct. 27, 2017) at 2 n.1.) During a call involving all of the participants and/or their counsel in the Attorneys Fee Disputes track, the Trustee's counsel asserted that they had not been aware of such a request until it was referenced in Rothenberg's submission. (SM Ex. 14 (Transcript of Telephone Conference on Nov. 8, 2017) at 148:19–49:18.) In any event, I understand that any concern on the part of Rothenberg about his allocation of fees for these "N.Y. Collection Attorneys" has been resolved. Moreover, any such concern is not relevant to the present dispute, which focuses on the allocation of fees for LaSpada as a Damages Attorney, not the allocation of fees for the Enforcement Attorneys.

calculations (*i.e.*, whether and the extent to which the amounts claimed reflected any deduction for reserves).  (*See* SM Ex. 13 (Letter from S. Jacob dated Nov. 7, 2017) at 1–2.)  After comparing the claimed amounts due with the figures in Fay Group's then most recent spreadsheet on proposed allocations, the Trustee confirmed that Rothenberg's calculation of his allocation appeared to be consistent with that of Fay Group.  (*Id.* Ex. A at 1.)  However, the Trustee noted an error with LaSpada's calculation and clarified that the total amount should be slightly higher than LaSpada initially claimed—or $14,027,504—according to Fay Group's most recent spreadsheet.  (*Id.* Ex. A at 2.)  Rothenberg raised no objection to the Trustee's discussion of the relevant calculations.

For the reasons discussed in my Report & Recommendation on the Attorneys' Fee Disputes (ECF No. 870), I recommended, among other things, that the Court order the Trustee to pay attorneys' fees in the manner proposed by Fay (with limited exceptions not relevant here), including payment to:  (1) Rothenberg and LaSpada pursuant to the terms of the contingent-fee retainer agreements they have with their clients and the fee-sharing agreements they have with Fay and Perles; and (2) LaSpada pursuant to the terms of the Associate Counsel Agreement he has with Fay and Perles for his work as a Damages Attorney.  (*See* ECF No. 870 at 40–43, 70–71, 79–80, 82, 84–85.)[5]  I also made clear that my recommendations were not intended to foreclose or prejudice the right of any participant to pursue relief against any other participant (other than the Trustee or the Peterson Plaintiffs) in a separate proceeding.  (*Id.* at 86.)

---

[5]      I also recommended that the Court order the Trustee to pay other Retained Attorneys, other Damages Attorneys and the Enforcement Attorneys pursuant to the relevant retainer and fee-sharing agreements, subject to appropriate reserves for expenses and contingencies, but not for any claims by Cook, Glenn or Delaney or for Perles' claims with respect to the Follow On Attorneys.  (*See* ECF No. 470 at 43–84.)

Because the submissions by participants in the Attorneys' Fee Disputes track reflected certain discrepancies concerning the calculation of attorneys' fees to be paid and because the recommendations I had made, if adopted by the Court, would require certain adjustments to be made to take into account the denial of Glenn's claims, I noted in my Report & Recommendation that I expected that the Trustee, the Retained Attorneys, the Damages Attorneys and the Enforcement Attorneys would be able to confer on the final calculations and reach agreement on them within seven days. (*Id.* at 86.) To the extent the participants were not able to reach agreement, I directed the Trustee to submit a report to me concerning the outstanding disagreements no later than 10 days after service of the Report & Recommendation. (*Id.*)

On December 11, 2017, Fay Group provided me with a spreadsheet reflecting its understanding of each attorney's allocation of fees, along with detailed calculations in support thereof. (SM Ex. 15 (Email from C. Fay dated Dec. 11, 2017).) At the same time, Fay Group indicated that almost all of the Peterson Plaintiffs' attorneys had consented to the calculations, subject to confirmation by Perles, which was anticipated the next day. (*Id.*)[6] By letter dated December 14, 2017, counsel for the Trustee informed me that they were waiting for confirmation from certain attorneys as to whether they agreed with Fay Group's calculations. (SM Ex. 16 (Letter from S. Jacob dated Dec. 14, 2017).) On December 20, 2017, Fay Group provided the Trustee's counsel, the Trustee's accountants and me with a revised spreadsheet of proposed distributions reflecting additional input from participants in the Attorneys' Fee Disputes track. (SM Ex. 18 (Email from C. Fay dated Dec. 20, 2017).) Based on the revised spreadsheet, Rothenberg would be paid $33,158,450.07 in additional attorneys' fees and LaSpada would be

---

[6]     I assume that Cook, Glenn and Delaney object to the allocations insofar they reflect a rejection of their claims.

paid $10,742,897.92 in additional attorneys' fees.  I understand that all of the questions about the calculations themselves have now been resolved.

Notwithstanding the foregoing, I was informed on about December 18, 2017 by Trustee's counsel and others that in addition to raising questions about the calculations prepared by Fay Group, Rothenberg had also raised a concern about the allocation of fees to LaSpada for his work as a Damages Attorney on cases where Rothenberg was a Retained Attorney.  At my request, counsel for Rothenberg provided me with a summary of Rothenberg's concerns by email dated December 19, 2017.  (SM Ex. 17 (Email from P. Buckley dated Dec. 19, 2017) at 1–2.)  I held conference calls with Rothenberg's counsel, LaSpada's counsel, LaSpada, Caragh Fay and the Trustee's counsel and accountants the following day to discuss those concerns and related issues.  On December 21, 2017, counsel for Rothenberg provided additional information about Rothenberg's position.  (SM Ex. 19 (Email from P. Buckley dated Dec. 21, 2017).)  In response to issues raised by LaSpada's counsel and Caragh Fay, I requested a sworn statement from Rothenberg and received such statement and a clarifying email on December 28, 2017.  (SM Ex. 23 (Email from P. Buckley dated Dec. 28, 2017) at 1–2; SM Ex. 23A (Aff. of Allen Louis Rothenberg, Esq. made on Dec. 28, 2017).)  I received papers in opposition to Rothenberg's application from counsel for LaSpada. (SM Ex. 20 (Letter from J. Norman and F. Bond dated Dec. 21, 2017); SM Ex. 24 (Letter from J. Norman dated Dec. 29, 2017); SM Ex. 25 (Email from J. Norman dated Jan. 11, 2018).)  I also received submissions from counsel for the Trustee and Fay Law Group.  (SM Ex. 21 (Email from S. Jacob dated Dec. 21, 2017); SM Ex. 22 (Email from C. Fay dated Dec. 22, 2017).)

## II.    Rothenberg's Application For Relief

Rothenberg claims to have been "shocked to learn" recently that LaSpada was listed as a Damages Attorney on his cases.  (SM Ex. 19 (Email from P. Buckley dated Dec. 21, 2017) at 1.)

Rothenberg asserts that although he knew as early as September 2015 that Damages Attorneys had been retained by Fay to work on matters for Rothenberg's clients in exchange for a 3% share of the gross damages collected on behalf of each client (SM Ex. 23A (Aff. of Allen Louis Rothenberg, Esq. made on Dec. 28, 2017) ¶ 5), he did not learn until mid-December 2017 that LaSpada was among them.  (*Id.* ¶ 8.)  Rothenberg also states that he did not see LaSpada's "'damages attorney' contract" until December 19, 2017, and that he has no record of having received it before then.  (*Id.* ¶ 7–8)  To justify his delay in raising concerns about the allocation of fees to LaSpada on his cases, Rothenberg asserts that he has been "kept in the dark" about information concerning the allocation of fees.  (SM Ex. 19 (Email from P. Buckley dated Dec. 21, 2017) at 2.)

Rothenberg does not dispute that it is appropriate to pay Damages Attorneys for their work or that the payments to Retained Attorneys must be reduced by the amounts necessary to compensate the Damages Attorneys for their work on behalf of the Retained Attorneys' clients. Nor does Rothenberg dispute that LaSpada served as a Damages Attorney on behalf of certain of Rothenberg's clients.  However, Rothenberg believes it is inequitable for him to bear any responsibility for payments to LaSpada.  According to his counsel,

> Rothenberg seeks to remedy this inequity, where he is asked to share his fee with LaSpada, but where LaSpada is not asked to share his fee with Rothenberg.  In [his] view, each attorney has already been compensated for his work through the co-counsel fee and there is no basis to award co-counsel any separate compensation – especially where it reduced the fee due to another co-counsel.

(*See* SM Ex. 17 (Email from P. Buckley dated Dec. 19, 2017) ¶ 5.)

As an alternative, Rothenberg argues that there is an insufficient basis for requiring him to bear any of the burden of paying the fees of LaSpada as a Damages Attorney.  In support of this position, Rothenberg asserts that he did not sign the agreement pursuant to which LaSpada

was retained and that he is not even mentioned in it.  (SM Ex. 19 (Email from P. Buckley dated Dec. 21, 2017) ¶ 1.)  He argues that he never authorized Fay to enter into contracts with other attorneys that would entitle them to a portion of Rothenberg's share of attorneys' fees.  (SM Ex. 23A (Aff. of Allen Louis Rothenberg, Esq. made on Dec. 28, 2017) ¶¶ 2–4.)  Rothenberg also raises questions about the authenticity of the contract, pointing out that the version he initially obtained was not the "original," arguing that it reflected information that would only have been available after the date of the agreement, and insinuating that the agreement raises questions about whether it may have been the product of questionable dealing on the part of Fay. (SM Ex. 19 (Email from P. Buckley dated Dec. 21, 2017) ¶ 3; *see also* SM Ex. 23A (Aff. of Allen Louis Rothenberg, Esq. made on Dec. 28, 2017) ¶¶ 6–7.)

Rothenberg requests that I obtain answers to questions surrounding LaSpada's Associate Counsel Agreement, require the production of documents on those and other issues, and take time to develop an appropriate record before the Trustee pays LaSpada the disputed fees for his service as a Damages Attorney and deducts from Rothenberg's fees his share of LaSpada's payment.  (SM Ex. 19 (Email from P. Buckley dated Dec. 21, 2017) at 3.)  Insofar as the Court is not able to resolve Rothenberg's dispute with LaSpada, Rothenberg seeks an order requiring LaSpada to submit the dispute to arbitration.  (*Id.*)

In opposition to Rothenberg's arguments, LaSpada argues that Rothenberg has failed to establish a legal basis for sequestering fees due to LaSpada for his work as a Damages Attorney. (SM Ex. 20 (Letter from J. Norman and F. Bond dated Dec. 21, 2017) ¶ 4; (SM Ex. 24 (Letter from J. Norman dated Dec. 29, 2017) at 2.)  With regard to Rothenberg's claim that he was "kept in the dark" about case developments, LaSpada notes that Rothenberg was free to ask for any information he wanted about the case from Fay Group, Trustee's Counsel and Epiq.  (SM Ex. 20

(Letter from J. Norman and F. Bond dated Dec. 21, 2017) ¶ 3.)  LaSpada further asserts that

Rothenberg received "[n]umerous drafts of accountings" that "listed all of the damages

attorneys, including Anthony LaSpada, and the amounts that they were expected to be paid."

(Id.)[7]

　　　With regard to the timeliness of Rothenberg's application, LaSpada argues that

Rothenberg delayed at least two years in raising any objection to LaSpada's being paid as a

Damages Attorney, based on Rothenberg's concession that he received a spreadsheet from Fay

Group in the Fall of 2015, which indicated that LaSpada was a Damages Attorney (SM Ex. 24

(Letter from J. Norman dated Dec. 29, 2017) at 2.)[8]  Indeed, LaSpada asserts that Rothenberg

knew or should have known that LaSpada was among the Damages Attorneys representing

plaintiffs as early as March 2003, when Rothenberg and LaSpada both entered appearances in

the *Peterson* Action and attended an evidentiary hearing together.  (Id. at 1–2.)[9]

　　　In response to Rothenberg's argument based on equitable principles, LaSpada argues that

there would be nothing inequitable about paying him for his work as a Damages Attorney on

---

[7]　　　The Trustee's counsel and Fay Group also disputed Rothenberg's claim to have been kept
in the dark.  In that regard, Trustee's counsel states that he is "dismayed and disappointed" by
Rothenberg's "last minute lack of transparency claims."  (SM Ex. 21 (Email from S. Jacob dated
Dec. 21, 2017) at 1.)  Counsel notes that "everyone has had access to the information" in the
spreadsheets distributed by Fay Group and "an abundance of opportunities to ask questions at
numerous meetings . . . ."  (Id.)  Fay Group echoes those sentiments, asserting that Rothenberg
had as much access to information regarding case administration and proposed allocations of
fees as all of the other attorneys.  (SM Ex. 22 (Email from C. Fay dated Dec. 22, 2017) at 2.)

[8]　　　Fay Group confirms LaSpada's assertion, stating that beginning in September 2015, it
shared with Rothenberg several versions of a spreadsheet showing proposed fee allocations and
had discussions with one of Rothenberg's representatives throughout 2016 about various
"discrepancies" he had identified in the spreadsheet, none of which related to LaSpada's being
paid as a Damages Attorney.  (SM Ex. 22 (Email from C. Fay dated Dec. 22, 2017) ¶ 1.)

[9]　　　LaSpada's counsel also asserts that they were told Rothenberg listened by telephone to an
organization meeting in 2003 with Fay, Perles and the Damages Attorneys and that it was clear
at that time that LaSpada would be serving as a Damages Attorney.  (SM Ex. 20 (Letter from J.
Norman and F. Bond dated Dec. 21, 2017) ¶ 3.)

Rothenberg's cases because he "benefitted enormously from the work that Mr. LaSpada has done as a damages attorney" on those cases insofar as he "is getting 1/3rd of the monetary judgment that Mr. LaSpada obtained for Mr. Rothenberg's clients." (SM Ex. 20 (Letter from J. Norman and F. Bond dated Dec. 21, 2017) ¶ 2.) LaSpada responded to Rothenberg's concern about the authenticity of LaSpada's Associate Counsel Agreement by providing a copy of the original agreement between Fay & Perles, on the one hand, and LaSpada on the other hand, dated June 13, 2003. (SM Ex. 3 (Agreement dated June 13, 2003) at 2–4; SM Ex. 25 (Email from J. Norman dated Jan. 11, 2018) at 1.) LaSpada also argues that Rothenberg should not be heard to argue Fay was unauthorized to retain LaSpada as a Damages Attorney since Rothenberg has not contested Fay's authorization to enter into Associate Counsel Agreements with other Damages Attorneys and has selectively objected to being bound by the Associate Counsel Agreement with LaSpada. (SM Ex. 20 (Letter from J. Norman and F. Bond dated Dec. 21, 2017) ¶ 1.)

LaSpada asserts that any challenge to his receipt of attorneys' fees for his work as a Damages Attorney should proceed in another forum; however, LaSpada opposes arbitration on the grounds that there is no agreement to arbitrate between Rothenberg and LaSpada, and LaSpada is "not willing to arbitrate this matter." (SM Ex. 20 (Letter from J. Norman and F. Bond dated Dec. 21, 2017) ¶ 5.)

## III.   Recommendations Concerning Rothenberg's Application

For the reasons discussed in my Report & Recommendation on the Attorneys' Fee Disputes, I recommended, among other things, that the Court grant Fay's motion insofar as it seeks an order requiring the Trustee to pay the Retained Attorneys, including Rothenberg, pursuant to the terms of their contingent retainer agreements and fee-sharing agreements. (*See* ECF No. 870 at 70–71, 84–85.) I also recommended that the Court grant Fay's motion insofar as it seeks an order requiring the Trustee to pay the Damages Attorneys, including LaSpada, in

accordance with the terms of their Associate Counsel Agreements. (*See id.* at 79–82, 84–85.) Rothenberg did not file a timely objection, or even an untimely one, to my Report & Recommendation. Therefore, assuming the Court adopts the foregoing recommendations, I recommend that the Court find Rothenberg waived any right he may have had to object to the Trustee's paying LaSpada his fees as a Damages Attorney for the work he performed on behalf of Rothenberg's clients and the Trustee's reduction of Rothenberg's fees by the amount necessary to cover Rothenberg's share of such fees. *See* Fed. R. Civ. P. 53(f)(2); *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1130–31 (Fed. Cir. 2011) (finding that appellant "waived its right to challenge the district court's claim construction by failing to file timely objections to the special master's R&R").

     Even if the Court did not find waiver, I would recommend that the Court deny the relief Rothenberg seeks for two reasons. First, Rothenberg has failed to provide me with any factual or legal basis that justifies restraining the Trustee from paying LaSpada for his work as a Damages Attorney on Rothenberg's cases. Although Rothenberg questioned the authenticity of the first version of LaSpada's Associate Counsel Agreement he received, a copy of the original was subsequently produced and resolves any question about authenticity. (*See supra* at 12, 14.) Although Rothenberg argued that LaSpada's Associate Counsel Agreement could have been the product of questionable dealing on the part of Fay, there is no evidence of any such dealing. In support of his position, Rothenberg asserted that the striking of a sentence in the agreement stating that "This document constitutes the only agreement between Fay and Perles and Associate Counsel" suggested that there could be an agreement between Fay and LaSpada pursuant to which LaSpada agreed to share his fees as a Damages Attorney with Fay (essentially allowing Fay to obtain more than his fair share of net attorneys' fees). (SM Ex. 19 (Email from

P. Buckley dated Dec. 21, 2017) at 1.)  Fay Group clarified that there are no other agreements between Fay, Perles or Fay & Perles, on the one hand, and LaSpada, on the other hand, except for "the referral agreement and the damages attorney agreement."  (SM Ex. 22 (Email from C. Fay dated Dec. 22, 2017) ¶ 6.)[10]

Second, Rothenberg has failed to present sufficient support for a determination that it would be inequitable for the Trustee to pay LaSpada for his work as a Damages Attorney on behalf of Rothenberg's clients and to reduce Rothenberg's fees by an amount equal to one third of the fees LaSpada earned for his service in that capacity.  As discussed above (*supra* at 11), Rothenberg does not object to having his fees reduced by an amount equal to one third of the fees that Damages Attorneys other than LaSpada earned for their services as Damages Attorneys on Rothenberg's cases.  Nor does Rothenberg disagree with the assumption underlying Fay's proposed allocation of fees that the fees of all of the Retained Attorneys are net of their shares of the fees of the Damages Attorneys who worked on behalf of the Retained Attorneys' clients.

Although Rothenberg argues that LaSpada should be treated differently from the other Damages Attorneys, Rothenberg fails to offer a compelling justification for doing so.  In support of his position, Rothenberg asserts that it is unfair to require him to share his fees with LaSpada since LaSpada is not required to share any part of his fees with Rothenberg.  However, Rothenberg fails to take into account the undisputed facts that LaSpada served as a Damages

---

[10]     Rothenberg argues that he should not be required to comply with the terms of LaSpada's Associate Counsel Agreement because he did not sign it, is not mentioned in it and did not authorize Fay to enter into it.  (SM Ex. 19 (Email from P. Buckley dated Dec. 21, 2017) at 1; SM Ex. 23A (Aff. of Allen Louis Rothenberg, Esq. made on Dec. 28, 2017) ¶ 3–4.)  I decline to make a recommendation on this argument since, among other reasons, it was raised belatedly and has not been fully briefed.  While I recommend that the Trustee be directed to pay LaSpada's fees pursuant to his Associate Counsel Agreement in connection with this proceeding, nothing in this Report & Recommendation should be construed to limit Rothenberg's ability to make the argument in a separate proceeding.

Attorney on behalf of Rothenberg's clients, but Rothenberg did not serve as a Damages Attorney on behalf of LaSpada's clients. (*See* SM Ex. 3 (Agreement dated June 13, 2003) at 2–4.)

Rothenberg also fails to take into account that he benefitted tremendously from LaSpada's work on behalf of Rothenberg's clients, since Rothenberg earned substantial fees based on the damages LaSpada obtained for those clients. (*See* SM Ex. 20 (Letter from J. Norman and F. Bond dated Dec. 21, 2017) ¶ 2.)  Given that Rothenberg is disputing the payment to LaSpada of approximately $966,000, that that amount represents one-third of the fees due to LaSpada, and that LaSpada is entitled to 3% of the gross recoveries, $966,000 is one percent of the total amount recovered.  Thus, if the Court adopts my Report & Recommendation on the Attorneys' Fee Disputes, it is fair to assume that Rothenberg will be paid one-third of the net attorneys' fees payable on a $96.6 million recovery.

Balanced against Rothenberg's receipt of substantial fees as a result of LaSpada's work, it does not seem unreasonable for LaSpada to be paid by Rothenberg for his work as a Damages Attorney.  As discussed above (*supra* at 11), Rothenberg does not dispute that LaSpada actually did the work of a Damages Attorney for Rothenberg's clients.  Thus, Rothenberg cannot establish that LaSpada would be "unjustly enriched" by receiving a fee for his work as a Damages Attorney.  *See Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (unjust enrichment claim requires a showing that "equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover").

In addition to the foregoing, I note that Rothenberg fails to establish he was kept in the dark about issues concerning the allocation of fees in his cases.  Rothenberg received detailed information about fee allocations from Fay Group beginning in the Fall of 2015.  (SM Ex. 22 (Email from C. Fay dated Dec. 22, 2017) ¶ 1.)  Thereafter, Fay Group responded to questions

from Rothenberg or his representative about how the allocations were prepared and endeavored

to ensure that Rothenberg was comfortable with the methodology.  (*Id.*)  The Trustee's

professionals also made themselves available to discuss any concerns Rothenberg may have had.

(SM Ex. 21 (Email from S. Jacob dated Dec. 21, 2017) at 1.)[11]

Despite Rothenberg's claim that he was shocked to learn that LaSpada was a Damages

Attorney on cases for his clients (SM Ex. 19 (Email from P. Buckley dated Dec. 21, 2017) at 1),

Rothenberg could easily have learned of LaSpada's role before December 2017.  Rothenberg

concedes that he received a spreadsheet from Fay Group in the Fall of 2015 that listed LaSpada

as a Damages Attorney.  (SM Ex. 23A (Aff. of Allen Louis Rothenberg, Esq. made on Dec. 28,

2017) ¶ 5.)  Although the spreadsheet does not indicate that LaSpada served as a Damages

Attorney for any of Rothenberg's clients, there is no reason to believe that information was not

readily available to Rothenberg.  Since Rothenberg had agreements with his clients, he could

have inquired of them about who had been hired to serve as their Damages Attorneys.  Since

Rothenberg had a fee-sharing agreement with Fay and knew he had retained Damages Attorneys

to represent their clients in the damages phases of their cases, Rothenberg could have asked Fay

about who was serving as Damages Attorneys on his cases.  If Rothenberg had made reasonable

inquiries and had believed that LaSpada's fees as a Damages Attorney should not be deducted

from Rothenberg's share of attorneys' fees, Rothenberg could have opposed Fay's motion to

---

[11]     Although LaSpada argues that Rothenberg should have known that LaSpada was serving
as a Damages Attorney based on their appearances in Court in 2003 (SM Ex. 20 (Letter from J.
Norman and F. Bond dated Dec. 21, 2017) ¶ 3), I have not been provided with any document or
information indicating definitively that there was disclosure at that time of LaSpada's role as a
Damages Attorney.  Nor have I been provided with any first-hand information to support the
proposition that Rothenberg knew or should have known of LaSpada's role as a Damages
Attorney based on his having participated in an organizational meeting concerning Damages
Attorneys.

compel the payment of attorneys' fees, or he could have opposed LaSpada's request for the payment of fees insofar as they concerned fees for his service as a Damages Attorney on Rothenberg's clients.  But Rothenberg did none of those things.

Given the ease with which Rothenberg could have determined what he claims to have only recently learned, the failure of Rothenberg to raise his concerns when he had multiple opportunities to review and ask questions about the spreadsheet concerning fee allocations, the failure of Rothenberg to oppose Fay's motion for an order requiring the Trustee to allocate attorneys' fees in accordance with the spreadsheet accompanying his motion, the request by Rothenberg to be paid in accordance with the spreadsheet, and the failure of Rothenberg to oppose LaSpada's request to be paid in accordance with the spreadsheet, I recommend that the Court deny Rothenberg's application for an order restraining the Trustee from paying LaSpada and Rothenberg in accordance with my prior recommendations on the Attorneys' Fee Disputes. I further recommend that the Court find Rothenberg is free to pursue any legitimate claims he has against LaSpada, Fay and/or Perles for the disputed fees in an appropriate forum.   Insofar as Rothenberg seeks an order requiring LaSpada to arbitrate their dispute, I recommend that the Court deny the request since it is undisputed that there is no agreement to arbitrate between them. (*See* SM Ex. 20 (Letter from J. Norman and F. Bond dated Dec. 21, 2017) ¶ 5.)

As mentioned above, Rothenberg's application does not require any delay in the Trustee's payment of attorneys' fees, except for the payment of $966,000 to LaSpada pending the Court's review of this report.

## CONCLUSION

For all the foregoing reasons, I recommend that the Court deny Rothenberg's request for an order restraining the Trustee from reducing payments to Rothenberg by his share of the fees due to LaSpada for his service as a Damages Attorney on behalf of Rothenberg's clients.  For the

avoidance of doubt, nothing herein is meant to foreclose or prejudice Rothenberg's ability to pursue his claims against LaSpada, Fay or Perles through a separate action.

To the extent Rothenberg has raised any arguments not explicitly addressed above, I have considered them and recommend that the Court reject such arguments for lack of merit.

Finally, because it contains and refers to potentially confidential and sensitive personal information, I will file this Report & Recommendation, along with the exhibits attached hereto, with the Court under seal contemporaneously with service on counsel for Rothenberg, LaSpada, Fay Group, and the Trustee.  I direct counsel for Rothenberg, LaSpada, Fay Group, and the Trustee to inform me of any requested redactions no later than 3:00 p.m. on Friday, February 9. Thereafter, a redacted version of this Report & Recommendation and its exhibits will be filed on the public docket reflecting the parties' reasonable proposed redactions.

Dated:     New York, New York
           February 8, 2018

                                        _____
                                        Kathleen N. Massey
                                        Special Master

**APPENDIX A**

| Exhibit # | Description |
|:---:|:---|
| 1 | Contingent Retainer Agreement dated April 9, 2001 |
| 2 | Contingent Retainer Agreement dated April 10, 2001 |
| 3 | Associate Counsel Agreement dated June 13, 2003 |
| 4 | [Replacement] Associate Counsel Agreement dated as of June 13, 2003 |
| 5 | Letter from Allen L. Rothenberg regarding "Division of Fees—Peterson et al. v. Iran," dated November 27, 2007 |
| 6 | Letter from Thomas Fortune Fay regarding "Deborah D. Peterson, et al. v. The Islamic Republic of Iran," dated May 28, 2014 |
| 7 | Letter from Anthony J. LaSpada regarding "Deborah D. Peterson, et-al The Islamic Republic of Iran," dated June 2, 2014 |
| 8 | Acknowledgment Regarding Interim Distribution of Attorneys' Fees dated as of November 21, 2016 (Executed by Allen Rothenberg) |
| 9 | Revised Exhibit A to Acknowledgment Regarding Interim Distribution of Attorneys' Fees from Caragh Fay received August 10, 2017 |
| 10 | Letter from Caragh Fay on Behalf of Fay Law Group dated October 26, 2017 |
| 11 | Letter from Caragh Fay on Behalf of Anthony LaSpada dated October 26, 2017 |
| 12 | Letter from Peter C. Buckley regarding "Peterson v. Islamic Republic of Iran—Attorneys' Fee Disputes Track," dated October 27, 2017 |
| 13 | Letter from Shalom Jacob regarding "Peterson v. Islamic Republic of Iran, No. 1:10 Civ. 4518-KBF," dated November 7, 2017 |
| 14 | Transcript of Teleconference of Attorneys' Fee Disputes Track Call on November 8, 2017 |
| 15 | Email from Caragh Fay regarding "peterson," dated December 11, 2017 |
| 16 | Letter from Shalom Jacob regarding "Peterson v. Islamic Republic of Iran, no. 1:10 civ. 4518-kbf," dated December 14, 2017 |
| 17 | Email from Peter Buckley regarding "Peterson v. Iran--Disputes on Numbers for Distributions," dated December 19, 2017 |
| 18 | Email from Caragh Fay regarding "12-20-17 Peterson QSF Attorney Fees.xlsx," dated December 20, 2017 |
| 19 | Email from Peter Buckley regarding "Peterson v. Iran—Disputes on Numbers for Distributions," dated December 21, 2017 |
| 20 | Letter from Jane Carol Norman and Ferris Bond regarding "Peterson v. Islamic Republic of Iran, No. 10-cv-4518 (KBF)," dated December 21, 2017 |
| 21 | Email from Shalom Jacob regarding "Peterson v. Iran--Disputes on Numbers for Distributions," dated December 21, 2017 |

APPENDIX A

| Exhibit # | Description |
|---|---|
| 22 | Email from Caragh Fay regarding "Peterson v. Iran--Disputes on Numbers for Distributions," dated December 22, 2017 |
| 23 | Email from Peter Buckley regarding "Peterson v. Islamic Republic of Iran--Fee Calculation Dispute," dated December 28, 2017 |
| 23A | Affirmation of Allen Louis Rothenberg, Esq. made on December 28, 2017 |
| 24 | Letter from Jane Carol Norman regarding "Peterson v. Islamic Republic of Iran, No. 10-cv-4518 (KFB)," dated December 29, 2017 |
| 25 | Email from Jane Norman regarding "Rothenberg Dispute Re LaSpada," dated January 11, 2018 |