USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 18, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

DEBORAH D. PETERSON, Personal :
Representative of the Estate of James C. Knipple :
(Dec.) et al., :
                                                                    :
                                                  Plaintiffs, :
                                                                    :
                                                                    :
                            -v-                                   :
                                                                    :
ISLAMIC REPUBLIC OF IRAN et al., :
                                                                    :
                                                Defendants. :

------------------------------------------------------------------X

10-cv-4518 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

Currently before the Court for approval is the Third Report & Recommendation of Special Master Kathleen Massey dated November 29, 2017 (the "Report"). (ECF No. 870.) The Report addresses and resolves, in sum, various disputes among counsel regarding their entitlement to a distribution of attorneys' fees from the Peterson § 468B Qualified Settlement Fund (the "QSF" or the "Fund").

Three attorneys raised objections to the Report within the applicable time period: (1) David J. Cook ("Cook") (ECF No. 887); (2) Jay Glenn ("Glenn") (ECF No. 883-2); and (3) Colleen M. Delaney ("Delaney") (ECF No. 890). On January 4, 2018, Trustee Stanley Sporkin (the "Trustee") formally opposed a portion of Glenn's response (ECF No. 894), and Glenn replied on January 11, 2018 (ECF No. 895). No party opposed or otherwise responded to the objections raised by Cook or Delaney.

On February 16, 2018, after briefing on the pending objections had closed, certain parties began filing a flurry of letters, motions, and updates regarding the Report and the pending objections. All told, more than twenty such submissions

1

were made before the Court directed all parties to cease filing without further leave of the Court on April 18, 2018.  (ECF No. 940.)  The Court addresses those filings as necessary (most, if not all, are mooted by virtue of the Court's decision herein), but generally considers them to have been improperly filed and not part of the record for purposes of this Opinion & Order.

For the reasons stated below, the Court hereby DENIES the objections raised by Glenn, Cook, and Delaney, and ADOPTS and CONFIRMS the Report as set forth in this Opinion & Order.

I.    BACKGROUND

A.    The Report

On June 7, 2017, the Court appointed Kathleen N. Massey as Special Master in this action to resolve a number of disputes concerning the QSF.  (ECF No. 775.) The QSF was established by the Court partially to satisfy a set of judgments entered against Iran for its involvement in the 1983 terrorist attack on the U.S. Marine barracks in Beirut, Lebanon.  Although the Trustee has made partial distributions from the QSF, distributions have been on hold for some time due to a series of disputes between interested parties.

Following her appointment, Special Master Massey divided the disputes into three separate "tracks," each involving common legal or factual issues.  (ECF No. 777.)  The third track—hereinafter referred to as the "Attorneys' Fee Disputes" track or "Track Three"—includes various disputes among counsel regarding their entitlement to attorneys' fees for their claimed representation of plaintiffs

(collectively, the "Peterson Plaintiffs") in the underlying actions against Iran.[1]  The Special Master appropriately characterized four of those disputes as "major," including the following three which are of particular significance to this Opinion & Order given the pending objections:

- Cook's claim to possession of a lien on $200 million of the funds in the QSF otherwise payable to other attorneys;

- Glenn's claim to possession of a lien on $21.7 million of the funds in the QSF otherwise payable to Thomas Fortune Fay ("Fay") and Steven R. Perles ("Perles"); and

- Delaney's claim to possession of a lien on $53.4 million of the funds in the QSF otherwise payable to Fay Law Group, P.A. ("Fay Group"), the Perles Law Firm, P.C. (the "Perles Law Firm"), and the Rothenberg Law Firm.

(See Special Master's R. & R. ("R. & R.") at 4-5, ECF No. 870.)

On November 29, 2017, Special Master Massey filed the Report, which addresses and resolves all of the disputes assigned to Track Three, including the three aforementioned "major" disputes.  (See generally R. & R.)  The Report recommends, in sum, that the Court: (1) order the Trustee to complete a second distribution from the QSF in respect of claims by the Peterson Plaintiffs as soon as

---

[1] As set forth in the Report, Special Master Massey considered the following submissions on the Court's docket in putting together the Report: ECF Nos. 38, 103, 153, 402, 460, 461, 462, 466, 475, 535, 536, 538, 608, 609, 617, 620, 621, 625, 626, 631, 633, 634, 637, 638, 643, 644, 647, 648, 649, 650, 651, 653, 654, 655, 656, 657, 662, 663, 681, 682, 683, 687, 689, 691, 704, 706, 710, 727, 735, 735-5, 737, 738, 740, 744, 753, 755, 762, 763, 764, 770, 773, 774, 775, 776, 777, 782, 788, 842, 845, 852, 853, and 860.  The Special Master additionally considered "more than 100 submissions by or on behalf of the [Track Three] participants" that were not filed on the docket.  (See R. & R. at 35.)

reasonably practicable (subject to "reasonable and appropriate" reserves for anticipated expenses and contingencies); (2) deny the applications of Cook, Glenn, and Delaney to intervene and/or prevent distributions from the QSF; (3) reject a series of arguments made by the Perles Law Firm regarding its entitlement to fees or seeking to limit the fees owed to the Follow On Attorneys[2] and Heideman Nudelman & Kalik, P.C. ("HNK"); (4) order the Trustee to pay the Retained Attorneys[3] according to the terms of their contingent-fee agreements with their clients, as well as the fee-sharing agreements between or among themselves; (5) order the Trustee to pay the Damages Attorneys[4] and the Enforcement Attorneys[5] according to the terms of their fee-sharing agreements with Retained Attorneys (subject to "appropriate" reserves for reasonable expenses and contingencies); and (6) order the Trustee to notify all potential attorneys who may seek to claim any entitlement to reimbursement of expenses that such claims and supporting documents must be submitted within 30 days of the Court's adoption of the Report.  (See R. & R. at 7-8, 84-85.)

With specific reference to the claims made by Cook, Glenn, and Delaney, Special Master Massey made the following recommendations:

---

[2] The "Follow On Attorneys" include: (1) the Law Offices of Dan Gaskill, LLC ("Gaskill"); (2) Wise & Donahue, PLC ("Donahue"); (3) Joseph Peter Drennan, Esq. ("Drennan"); and (4) Karr & Allison PC ("Karr").
[3] The "Retained Attorneys" include: (1) The Follow On Attorneys; (2) HNK; (3) Fay Group; (4) the Perles Law Firm; (5) the Rothenberg Law Firm; and (6) Anthony LaSpada, Esq. ("LaSpada").
[4] The "Damages Attorneys" include: (1) LaSpada; (2) Gaskill; (3) Drennan; (4) Karr; and (5) Bond & Norman Law ("Bond").
[5] The "Enforcement Attorneys" include: (1) Salon Marrow Dyckman Newman & Broudy LLP ("SMD"); (2) Stone Bonner & Rocco ("SBR"); and (3) the Fleischman Law Firm.

- **<u>Cook</u>** – The Court previously denied Cook's motion to intervene as of right, holding that the motion was untimely, that it failed to establish the requisite elements under Fed. R. Civ. P. 24(a) ("Rule 24(a)"), and that it failed to advance a proper basis for enforcing a charging lien under N.Y. Jud. Law. § 475 ("§ 475"). (<u>See</u> Mem. Dec. & Order at 3-4, ECF No. 647.)  That decision was subsequently affirmed by the United States Court of Appeals for the Second Circuit (the "Second Circuit"). <u>See</u> <u>Peterson v. Islamic Republic of Iran</u>, 690 F. App'x 744, 746 (2d Cir. 2017) (summary order).  Given that the Court must consider "substantially the same factors" in deciding a motion for permissive intervention under Fed. R. Civ. P. 24(b) ("Rule 24(b)"), and that Cook's current request is "even more untimely than his previous request," the Court should once again deny Cook's motion to intervene. Additionally, even if Cook were permitted to intervene for the purpose of asserting his claimed lien rights, the Court should find that he has not established entitlement to a lien against any funds in the QSF. (<u>See</u> R. & R. at 54-61.)

- **<u>Glenn</u>** – The Court previously denied Glenn's motion to intervene in this action for the same reasons it denied Cook's motion.  (<u>See</u> Mem. Dec. & Order at 3-4, ECF No. 647.)  Cook failed to perfect his appeal of that decision, and it was dismissed.  (ECF No. 686.)  For the same reasons noted above, the Court should once again deny Glenn's motion

to intervene.  Further, even if Glenn is permitted to intervene for the purpose of asserting his claimed lien rights, the Court should find that he has not established entitlement to a lien against any funds in the QSF, and therefore has no basis for relief.  (See R. & R. at 61-64.)

- **Delaney** – Delaney did not notify the Trustee that she was asserting a lien against the QSF until May 11, 2017, and did not seek intervention in this action until October 27, 2017.  Delaney thus fails to satisfy the timeliness requirement for intervention under Rules 24(a) and 24(b), and her request should be denied on that basis alone.  Further, even if Delaney were permitted to intervene, the Court should find that she has failed to establish entitlement to a lien under the applicable law. (See R. & R. at 64-69.)

B.    Objections

Pursuant to Fed. R. Civ. P. 53(f)(2), responses to the Report were due not later than December 21, 2017.[6]  Three attorneys filed objections by that deadline: Cook, Glenn, and Delaney (collectively, the "Objecting Attorneys").  The Court briefly summarizes each in turn.

1.    Cook

On December 21, 2017, Cook (together with Cook Collection Attorneys, P.L.C.) objected to the Special Master's recommendation that the Court deny his

---

[6] Delaney, through her attorney Nathan M. Crystal, requested a two-week extension of time to object to the Report.  The Court denied that request by Order dated December 20, 2017, and directed that all objections be filed not later than December 21, 2017 as required by Fed. R. Civ. P. 53(f)(2).  (ECF No. 880.)

application to intervene for the purpose of asserting a lien against funds in the QSF. (See Mem. of Law ("Cook Mem."), ECF No. 887.)[7]  Cook argues, in sum, that it would be a violation of constitutional due process for this Court to conclusively hold that he has no lien under § 475 without giving him an opportunity to be heard, and that the enforceability of his lien is not properly before this Court.  (Id. at 10-16.) Cook further argues that he does have a § 475 lien against the proceeds of the underlying Peterson judgments, this Court "is not constitutionally allowed to divest [him] of that vested right by adopting [the Report]."  (Id. at 21-25.)

       2.    Glenn

On December 21, 2017, Glenn similarly objected to the Special Master's recommendation that the Court deny his application to intervene for the purpose of asserting a lien against funds in the QSF.  (See Jay Glenn's Objs. to the Special Master's R. & R. ("Glenn Objs."), ECF No. 883-2.)  Glenn argues, in sum, that the enforceability of his lien against the QSF has not been fully litigated, and therefore the Special Master's recommendation that the Trustee should distribute funds to Fay and Perles without reservation creates a risk that the Trustee will be violating an existing and perfected lien.  (Id. at 3.)  Glenn further requested the Court's permission under Barton v. Barbour, 104 U.S. 126, 132 (1881) to join the QSF Trustee as a stakeholder in ongoing fee litigation between himself and Fay and

---

[7] Exhibits B and C to the Cook Memorandum are blank pages containing the corresponding exhibit name and the notation "FILED UNDER SEAL."  By letter motion dated December 21, 2017, Cook requested permission to file Exhibits B and C under seal.  (ECF No. 886.)  The Court denied that request, and directed Cook to "redact information from Exhibits B and C as he deems appropriate and re-file on the public docket."  (ECF No. 892.)  Cook never filed either exhibit on the public docket, and therefore the Court has not considered them in ruling on the pending objections.

Perles in the United States District Court for the District of Columbia ("D.D.C.").
(See Mem. of Law in Supp. of Jay Glenn's Mot. ("Glenn Mem.") at 7-11, ECF No.
884.)

On January 4, 2018, Trustee Stanley Sporkin objected to Glenn's motion for
an order granting permission to join the Trustee in the D.D.C. litigation.  (See
Opp'n of Fund Trustee to Mot. of Jay Glenn ("Trustee Opp'n"), ECF No. 894.)  The
Trustee argues that granting Glenn's motion would "hinder the efficient
administration of the Peterson Fund" and "allow him to make an end run around
the prior rulings of this Court and another federal district court" as well as "the
recommendations of the Special Master."  (Id. at 4.)  Glenn filed a reply on January
11, 2018, characterizing the Trustee's opposition as "suggest[ing] that Glenn not be
permitted to pursue his lien rights in the D.C. Fee Action" and repeating his
argument that he should be permitted to adjudicate the enforceability of his
purported lien in some forum.  (See Jay Glenn's Reply in Supp. of Mot. ("Glenn
Reply" at 1, ECF No. 895.)

3.    Delaney

On December 21, 2017, Delaney objected to the Special Master's
recommendation that the Court deny her application to intervene for the purpose of
asserting a lien against funds in the QSF.  (See Objs. of Colleen Delaney to R. & R.
("Delaney Mem."), ECF No. 890.)  Delaney argues, in sum, that her motion to
intervene (either by right or permissively) was timely because she had "no reason to
believe her joint venturers . . . were not protecting her interest" until June 19, 2017.

8

(Id. at 5-6.)  Delaney further argues that from 2001-2016 there was "no realistic possibility of compensation necessitating action," and that she did not learn that distributions of attorney fees were being made until May 2017.  (Id. at 7.)

## II.   LEGAL PRINCIPLES

### A.   Standard of Review

In acting on a Special Master's report and recommendation, the Court is empowered to "adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions."  Fed. R. Civ. P. 53(f)(1).  Before doing so, however, the Court must "give the parties notice and an opportunity to be heard." Id.[8]  The Court must review de novo any objections to the Special Master's findings of fact and conclusions of law.  See Fed. R. Civ. P. 53(f)(3)-(4).

### B.   Intervention

#### 1.   As of Right

Pursuant to Rule 24(a)(2), the Court must permit anyone to intervene as of right who, on a timely motion, "claims an interest relating to the property . . . that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  An applicant seeking to intervene as of right must "(1) file a timely motion; (2) show an

---

[8] Although some Circuit Courts of Appeal have held that this provision requires an oral hearing on the parties' objections, the Second Circuit has not adopted that approach.  See Goodrich Corp. v. Town of Middlebury, 311 F.3d 154, 178 (2d Cir. 2002).  In any event, no objecting party in this case has requested oral argument, and therefore any right which might otherwise have existed has been waived.

interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action." In re Holocaust Victim Assets Litig., 225 F.3d 191, 197 (2d Cir. 2000).

The Second Circuit has explained that "[t]he timeliness requirement is flexible and the decision is one entrusted to the district judge's sound discretion." Floyd v. City of New York, 770 F.3d 1051, 1058 (2d Cir. 2014) (per curiam) (quotation and citation omitted).  The inquiry is inherently fact-specific, but courts may consider the following factors in determining timeliness: "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." Id. (quotation marks omitted). Ultimately, "the court's analysis must take into consideration the totality of the circumstances." In re Holocaust Victim Assets Litig., 225 F.3d at 198.

        2.    Permissive

Pursuant to Rule 24(b)(1)(B), the Court may permit anyone to intervene "who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  In evaluating an application for permissive intervention under Rule 24(b), "[t]he court considers substantially the same factors" as it does when considering an application for intervention as of right.  "R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp., 467 F.3d 238, 240 (2d Cir. 2006).  A

district court has "broad discretion" under Rule 24(b) to determine whether to permit intervention.  See St. John's Univ., New York v. Bolton, 450 F. App'x 81, 84 (2d Cir. 2011) (summary order).

III.    DISCUSSION

For purposes of this Opinion & Order, the Report's recommendations are separated into two groups: (1) recommendations as to which direct objections have been raised (the "Disputed Recommendations"); and (2) recommendations as to which no direct objection has been raised (the "Undisputed Recommendations"). The Court will address each group in turn.

A.    Disputed Recommendations

Three attorneys have objected to recommendations contained in the Report: Cook, Glenn, and Delaney.  Since none of those attorneys are currently party to this action or representing parties to this action, they must successfully intervene under Rules 24(a) or (b) in order to obtain the relief they seek—namely, to obtain liens against certain funds in the QSF.  For the reasons stated below, the Court concludes that each of the Objecting Attorneys' respective attempts to intervene were untimely, and therefore should be denied on that basis alone.  The Court addresses each set of objections individually.

1.      Cook

Cook has sought permissive intervention under Rule 24(b) for the purpose of preventing the distribution of certain funds from the QSF.  (See SM Ex. 37 at 4.)[9] This marks the second time that Cook has moved to intervene for that very purpose—previously, Cook moved to intervene as of right in order to prevent distributions that interfered with his alleged contractual and statutory interests in the funds.  (See ECF No. 634.)  The Court denied that motion by Memorandum Decision & Order dated June 6, 2016, reasoning that: (1) the motion was untimely; and (2) Cook had failed to advance a proper basis for enforcing an attorney charging lien under § 475.  (See ECF No. 647 at 3-4.)  The Second Circuit affirmed that decision on May 18, 2017, noting that it "agree[d] . . . that the motion was untimely" and that "denial of intervention would not unduly prejudice Cook," who was concurrently attempting to vindicate his alleged rights in separate judicial and arbitral proceedings.  See Peterson, 690 F. App'x at 746.

Nothing has changed so as to warrant a different outcome here.  In evaluating a motion for permissive intervention under Rule 24(b), the Court must consider "substantially the same factors" it did when it denied Cook's motion for intervention as of right, including timeliness.  See "R" Best Produce, Inc., 467 F.3d at 240.  And as the Special Master correctly noted, Cook's current request to intervene is "even more untimely than his previous request."  (R. & R. at 54.)  In

---

[9] All citations to "SM Ex. __" in this Opinion & Order refer to materials considered by the Special Master and subsequently cited in the Report.  A complete list of all "SM" exhibits has been filed as Appendix A to the Report at ECF No. 870.

2016, this Court concluded that Cook had "sat on [his] alleged rights to intervene for years" without justification.  (ECF No. 647 at 3).  The Second Circuit agreed with that determination, holding that "Cook should have known of the need to intervene by October 3, 2011 . . . but he waited more than four years to file his motion."  Peterson, 690 F. App'x at 746.  Whether Cook likes it or not, timeliness is a requirement for intervention under Rules 24(a) and 24(b), see NAACP v. New York, 413 U.S. 345, 365 (1973), and intervention is required to obtain relief from the Court.  Because Cook's current motion—like his previous motion—is untimely, the Court agrees that it should be denied on that basis.  Accordingly, the Court need not address or determine the merits of Cook's underlying claim to a § 475 lien.

Cook argues, in sum, that it would violate due process for the Court to issue a decision as to his § 475 claim without giving him a proper opportunity to be heard.  (See Cook Mem. at 11-14.)  But that argument is without merit for multiple reasons.  First, the Court has not issued a decision with respect to the merits of Cook's § 475 claim.  Although the Court agrees in sum and substance with the Report's alternative recommendation that Cook has failed to satisfy the requirements for a § 475 lien (see, e.g., R. & R. at 61, fn. 28), both this Opinion & Order and the prior Memorandum Decision & Order (ECF No. 647) denied Cook's attempt to intervene as untimely, not on the merits.[10]  And since there is no legal

---

[10] Although the Court's June 6, 2016 Memorandum Decision & Order stated that Cook had "not advanced a proper basis for enforcing any charging lien under [§ 475]," (ECF No. 647 at 4), it did not, as Cook suggests, conclusively hold "that Cook did not have a right to assert a Section 475 lien" (Cook Mem. at 2).  The problem was that Cook had relied "exclusively and repeatedly on the fact that he had filed a lien . . . under the law of the District of Columbia," (R. & R. at 60), which was the incorrect legal standard.  The actual merits of Cook's purported § 475 lien have never been fully litigated or presented to the Court.

basis for the proposition that an attorney may assert or enforce a § 475 lien without being granted intervention, there is simply no need to address the merits. Second, to the extent Cook is arguing that the Court's denial of intervention effectively extinguishes his rights under § 475, that result is (as harsh as it may sound) his own fault. Timeliness is a requirement for intervention under Rules 24(a) and 24(b), and intervention is required to assert or enforce a § 475 lien.[11]

The Court understands Cook's frustration with this result. But as Cook himself has repeatedly argued, his entitlement to attorneys' fees is not and never has been before this Court. Cook continues to pursue litigation against the relevant counsel in D.D.C. as well as arbitration before JAMS. As such, denial of intervention here does not unduly prejudice Cook.

For the reasons stated above, the Court hereby DENIES Cook's objections to the Report at ECF No. 887, and ADOPTS and CONFIRMS the Report's top-line recommendation that the Court deny Cook's current attempt to intervene as untimely.

        2.     Glenn

             i.     Objections to the Report

Similar to Cook, Glenn has sought an order preventing the Trustee from distributing certain funds from the QSF. (See generally SM Ex. 25.) Unlike Cook, however, Glenn has not sought permissive intervention under Rule 24(b) to obtain

---

[11] The Second Circuit explicitly affirmed this Court's denial of Cook's previous motion to intervene on timeliness grounds with full knowledge that Cook was asserting a § 475 lien. See Peterson, 690 F. App'x at 746. The clear import of that holding is that the mere fact of an alleged § 475 lien is not sufficient to overcome the timeliness requirement for intervention under Rules 24(a) and 24(b).

that relief.  Instead, Glenn has argued that he "should not have to intervene to be entitled to be paid what he is owed," and that "the QSF Trustee should hold back in reserve sufficient funds from the fees due Fay & Perles until Glenn's claims are resolved."  (Id. at 5-6.)  Glenn thus objects to the Report to the extent it recommends the Trustee distribute funds to Fay & Perles free of any encumbrance.

As an initial matter, to the extent Glenn's various submissions can be construed as seeking permissive intervention under Rule 24(b) (despite Glenn's protestations to the contrary), the Court denies them for substantially the same reasons as explained above for Cook.  The Court previously denied Glenn's attempt to intervene as of right on timeliness grounds, and the current attempt to intervene is even more untimely.  Accordingly, there being no basis to reconsider or reverse the Court's previous decision on timeliness, the Court denies permissive intervention under Rule 24(b).

Absent intervention, it is unclear exactly what Glenn wants the Court to do to protect his alleged interest in certain funds in the QSF.  Glenn argues that his entitlement to funds is currently being litigated in D.D.C., and that any lien he possesses against the QSF funds (under New York or D.C. law) "arises by operation of law and exists to prevent the QSF Trustee from distributing funds subject to his lien."  (Glenn Objs. at 2.)  But Glenn provides absolutely no legal support for the proposition that he may, absent intervention, hold up or object to distributions from the QSF in this action based on ongoing litigation in a separate action.  Glenn himself acknowledges that "the existence (or not) of Glenn's lien will not be

determined in this action." (Glenn Objs. at 7.) Glenn should also understand, therefore, that there is no basis for <u>this Court</u> to restrict or prevent distributions from the QSF otherwise due to Fay and Perles.

Like Cook, Glenn takes issue with the Report and the Court's previous orders to the extent they suggest or purport to conclude that he does not have an attorney charging lien. (<u>See</u> Glenn Objs. at 7-10.) But the Court previously denied Glenn's motion to intervene on timeliness grounds (not on the merits), and has concluded herein that Glenn may not prevent or restrict distributions absent intervention (not that he is not entitled to any fees). As such, Glenn is essentially fighting a straw man. The problem is, and always has been, that Glenn is not a party to this action and did not timely move to intervene. Glenn may be entitled to some recovery against Fay and Perles, but as Glenn himself recognizes, that entitlement must be resolved in other fora.[12]

For the reasons stated above, the Court hereby DENIES Glenn's objections to the Report at ECF No. 883-2, and ADOPTS and CONFIRMS the Report's top-line recommendation that the Court deny Glenn's attempt to obtain relief without intervention.

ii.  Motion to Join the QSF Trustee as Stakeholder

In addition to objecting to the Report, Glenn also moved for permission to join the QSF Trustee as stakeholder in the ongoing D.D.C. litigation between himself

---

[12] Because the Court has held that Glenn has no right to object to or restrict distributions from the QSF absent intervention, and that any attempt to intervene would be untimely, all of the various updates that have been filed regarding the import of the D.D.C. action and corresponding appeal are essentially irrelevant.

and Fay and Perles pursuant to the so-called "Barton doctrine."  (See Glenn Mem. at 7-11.)  The Trustee opposed that motion on January 4, 2018 (ECF No. 894), and Glenn replied on January 11, 2018 (ECF No. 895).

As an initial matter, the Court understands why Glenn wants to join the Trustee as stakeholder in his D.D.C. fee action, but not how.  The Second Circuit has held that a bankruptcy court may allow cross claims against a Trustee in a state court action and may direct the Trustee to appear in that action when doing so "would aid in the efficient administration of the estate."  See In re Beck Industries, Inc. 724 F.2d 880, 887 (2d Cir. 1984).  But that provides virtually no support for the proposition that this Court may (or should) direct the QSF Trustee to appear as "stakeholder" in a separate federal action for the express purpose of preventing distributions that this Court has authorized on multiple occasions.  Indeed, the Court agrees that granting such a motion would "allow [Glenn] to make an end run around the prior rulings of this Court."  (Trustee Opp'n at 4.)

The Court hereby concludes that it would not aid in the efficient administration of the QSF Fund to permit Glenn to join the QSF Trustee in the ongoing D.D.C. litigation.  Glenn has twice sought unsuccessfully to prevent distributions from the QSF in this Court.  He has the right to seek payment from Fay and Perles in D.D.C., but that is no reason to further delay distributions from the QSF.  As such, Glenn's motion for permission to join the QSF Trustee in the D.D.C. litigation is hereby DENIED.

3.      Delaney

Unlike Cook and Glenn, Delaney is currently seeking to intervene in this action for the first time.  Similar to Cook and Glenn, however, Delaney is seeking intervention in order to restrict distributions from the QSF on the basis of an alleged attorney charging lien.  (See SM Ex. 10 at 1.)  Based on its own de novo review of the underlying materials and applicable law, the Court fully agrees with the Report's recommendation that Delaney's motion should be denied as untimely.

As previously explained, motions for intervention under Rules 24(a) and 24(b) must be timely.  See, e.g., NAACP, 413 U.S. at 365 ("Whether intervention be claimed of right or as permissive, it is at once apparent . . . that the application must be 'timely.'  If it is untimely, intervention must be denied.") (emphasis added).  And in determining whether a motion to intervene is timely, the court may consider "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." Floyd, 770 F.3d at 1058.

Here, although Delaney alleges that she performed work on the underlying Peterson action in 2001, she did not seek intervention in this action until, at the earliest, May 11, 2017.  (R. & R. at 64.)  Nonetheless, Delaney argues that her motion to intervene is timely because she did not conclusively know that her alleged partners—Fay, Perles, and Rothenberg—were not honoring her claims until June

18

19, 2017.  (Delaney Objs. at 5-6.)  Further, Delaney argues that any delay in seeking relief is due to: (1) her trust in Fay, Perles, and Rothenberg; and (2) the fact that from 2001-2016, there was "no realistic possibility of compensation necessitating action."  (Delaney Objs. at 6-7.)  Those arguments are unavailing.

Delaney's claim is primarily based on the alleged existence of an oral agreement between herself, Fay, Perles, and Rothenberg, which dictated she would receive one-third of all fees collected in the underlying <u>Peterson</u> action.  It is undisputed that on December 22, 2006, Delaney sent an e-mail to Rothenberg stating, in relevant part, "I trust when the money comes in my efforts will be rewarded per our verbal agreements."  (<u>See</u> SM Ex. 34, Ex. 5.)  As the Special Master correctly noted, there is no evidence whatsoever that Rothenberg responded to confirm his agreement, and therefore Delaney should have known that her claim was in jeopardy <u>at that moment</u>.  Although Delaney argues that there was no "specific event jeopardizing [her] compensation," (Delaney Objs. at 5-6), Rothenberg's failure to respond to that 2006 e-mail and her own failure to follow-up constitute such an event.  Delaney's right to intervene—if such right ever existed—therefore accrued <u>earlier</u> than Cook or Glenn.  Given that the Court held in 2016 that Cook and Glenn's attempts to intervene were untimely (a decision reaffirmed in this Opinion & Order), Delaney's attempt to intervene is even more untimely.

Delaney's proffered excuses do not constitute "unusual circumstances militating for . . . a finding of timeliness."  <u>Floyd</u>, 770 F.3d at 1058.  As evidenced by Rothenberg's lack of response to her 2006 e-mail, Delaney's "trust" in her alleged

partners was misplaced and unjustifiable as of that date.  Further, Delaney's assertion that there was no "realistic possibility of compensation" from 2001-2016 is both factually incorrect and mostly irrelevant.  As a factual matter, the Court issued its turnover order in 2013, and therefore the "possibility of compensation" would have been "realistic" as of that date <u>at the latest</u>.[13]  Delaney's apparent lack of attention to these proceedings does not excuse her untimely motion to intervene.

The Court additionally agrees that allowing Delaney to intervene would result in "significant prejudice to the existing parties."  Many parties have been waiting years for disbursements from the QSF; allowing Delaney to intervene and assert a lien against certain of those disbursements this late in the game would be fundamentally unfair.  Further, the Special Master is correct in noting that, like Cook and Glenn, Delaney "remains free to pursue her claims . . . in separate litigation against Rothenberg, Fay and Perles."  (R. & R. at 67.)

For the reasons stated above, the Court hereby DENIES Delaney's objections to the Report at ECF No. 890, and ADOPTS and CONFIRMS the Report's top-line recommendation that the Court deny Delaney's attempt to intervene as untimely. The Court need not address the merits of Delaney's underlying claim to a lien against certain funds in the QSF.

---

[13] Both Cook and Glenn previously attempted to argue that their 2016 motions to intervene were timely because there was no guarantee that the turnover judgment would be upheld on appeal and that the funds would be distributed.  The Court rejected that argument, reasoning that "[f]or <u>any</u> intervention action, there is no 'guarantee' that the outcome the party seeking intervention wishes to avoid would happen until final judgment," and that "Glenn and Cook's interpretation would actually render the timeliness requirement of Rule 24 effectively useless."  (ECF No. 647 at 3-4.)

B.    Undisputed Recommendations

As previously noted, no party has directly[14] objected to a number of the Report's recommendations, including that the Court should: (1) order the Trustee to complete a second distribution from the QSF in respect of claims by the Peterson Plaintiffs as soon as reasonably practicable; (2) reject a series of arguments made by the Perles Law Firm regarding its entitlement to fees or seeking to limit the fees owed to the Follow On Attorneys and HNK; (3) order the Trustee to pay the Retained Attorneys according to the terms of their contingent-fee agreements, as well as the fee-sharing agreements between or among themselves; (4) order the Trustee to pay the Damages Attorneys and the Enforcement Attorneys according to the terms of their fee-sharing agreements; and (5) order the Trustee to set a time limit for claims of reimbursement and notify all potentially interested attorneys. The Court has reviewed each recommendation and fully agrees with the Special Master's careful and thorough analysis.  Accordingly, the Court hereby ADOPTS and CONFIRMS the Undisputed Recommendations in all respects.

IV.    CONCLUSION

For the reasons stated above, the Court hereby DENIES the objections raised by Glenn, Cook, and Delaney, and ADOPTS and CONFIRMS the Report as set forth in this Opinion & Order.

The Clerk of Court is directed to close the open motions at ECF Nos. 883, 887, and 890

---

[14] Cook, Glenn, and Delaney have objected to some of these recommendations to the extent they impact or reply upon the Report's recommendations regarding each of their individual claims.

The Clerk of Court is further directed to terminate the open motions at ECF Nos. 918 and 929, which are hereby DENIED as moot given this Opinion & Order.

SO ORDERED:

Dated:    New York, New York
          June 18, 2018

_____
KATHERINE B. FORREST
United States District Judge