UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.) et al.,

Plaintiffs,

-v-

ISLAMIC REPUBLIC OF IRAN et al.,

Defendants.

10-cv-4518 (KBF)

**SPECIAL MASTER'S**
**REPORT & RECOMMENDATION**

KATHLEEN N. MASSEY, SPECIAL MASTER:

The Court appointed me as Special Master in the above-captioned proceeding pursuant to Rule 53(a) of the Federal Rules of Civil Procedure to resolve certain disputes that have arisen in connection with the Peterson § 468B Qualified Settlement Fund (the "QSF" or the "Fund"). (ECF No. 775.) To resolve these disputes in an efficient manner, I divided them into three separate "tracks," with each track involving common legal and factual issues.[1]

In this report, I address a matter the Court referred to me by Order dated February 21, 2018 (ECF No. 905) arising from a disagreement between attorney Colleen Delaney, who sought to intervene in this action, and attorney Allen L. Rothenberg, who is counsel to certain of the

---

[1] The three tracks have been designated the "Trust Administration Disputes" track, the "Advance Company Disputes" track, and the "Attorneys' Fee Disputes" track. (ECF No. 777 at 1–2.) This report presumes familiarity with my previous Reports & Recommendations (*see* ECF Nos. 842, 845, 852, 870, 872, 899, and 962), and the Court's decisions adopting my Report & Recommendation on the Trust Administration Disputes, adopting and modifying my Report & Recommendation on the Advance Company Disputes, adopting my Report & Recommendation on the Attorneys' Fee Disputes as set forth in the Court's Opinion and Order dated June 18, 2018, and adopting my Report & Recommendation on a dispute relating to the Attorneys' Fee Disputes track between attorney Allen L. Rothenberg and the Law Firm of Allen L. Rothenberg, on the one hand, and attorney Anthony LaSpada, on the other. (ECF Nos. 853, 861, 871, 944 & 946.) Capitalized terms not otherwise defined herein have the meanings ascribed to them in my prior reports.

Peterson Plaintiffs, about the permissibility of Delaney's attempts to contact certain of the plaintiffs to gather evidence in support of her claimed entitlement to contingent fees for work she performed in connection with the *Peterson* Action. As discussed below, I recommend that the Court find that the referenced matter is moot and that no further action by the Court is necessary.

**BACKGROUND**

In connection with the Attorneys' Fee Disputes track, Delaney sought to "intervene in this action . . . to restrict distributions from the QSF on the basis of an alleged attorney charging lien." (ECF No. 944 (Opinion and Order dated June 18, 2018) at 18.) Her claim was premised upon an alleged oral fee-sharing agreement between and among Delaney and attorneys Rothenberg, Thomas Fay and Steven Perles pursuant to which Delaney claims she is owed as much as $53.4 million. (*See* ECF No. 870-10 (Letter from E. Manning dated June 16, 2017) at 2; ECF No. 870-14 (Letter from E. Manning dated June 22, 2017) at 5; ECF No. 870-34 (Letter from E. Manning dated October 27, 2017) at 2.) In support of her position, Delaney asserted, among other things, that she had recruited certain plaintiffs for the *Peterson* Action. (ECF No. 870-10 (Letter from E. Manning dated June 16, 2017) at 3–6; ECF No. 870-34 (Letter from E. Manning dated Oct. 27, 2017) at 1.) Rothenberg, Fay and Perles opposed Delaney's claim, arguing primarily that Delaney was not a referring attorney and that she had been paid in full for the work she did. (ECF No. 870-18 (Letter from P. Buckley dated June 27, 2017); ECF No. 870-50 (Letter from P. Buckley dated Nov. 7, 2017) at 1–2, Ex. 2 ¶¶ 10–11.) In my Report & Recommendation on the Attorneys' Fee Disputes dated November 29, 2017, I recommended, *inter alia*, that the Court deny Delaney's request to intervene in this action. (ECF No. 870 at 65–67.) On December 21 and 27, 2017, Delaney filed objections to that Report & Recommendation through counsel. (ECF Nos. 888 & 890.)

On February 16, 2018, Delaney's counsel filed a letter, captioned "Letter Notice Re Ethical Aspects of Communication with *Peterson* Plaintiffs and Witnesses," that purports to "give notice to the Court of the . . . gathering of evidence [in support of Delaney's fee claim] and of the effort of some attorneys with adverse interest to block her efforts." (ECF No. 901 at 1, referred to hereinafter as the "Letter Notice.") The Letter Notice details Delaney's efforts to contact certain of the Peterson Plaintiffs to obtain evidence of "the legal services she rendered and the advice she gave to them as co-counsel" in the *Peterson* Action. (*Id*. at 2.) According to the Letter Notice and an exhibit thereto, counsel for Rothenberg demanded that Delaney cease and desist from communicating with the Peterson Plaintiffs, representing that she was their attorney or asking them to provide statements in support of her claim. (ECF No. 901-1.) Rothenberg asserted that Delaney's communications violated applicable ethics rules, arguing that "[c]ontact with represented parties by an attorney is against the Rules of Professional Conduct in every jurisdiction, and so is misrepresentation of a material fact." (*Id*.)

Delaney argues, through counsel, that the assertions in Rothenberg's "cease and desist" demand are "factually and legally incorrect." (ECF No. 901 at 3.) Delaney does not dispute having contacted certain of the Peterson Plaintiffs, but argues that such contacts were permissible because those individuals were her clients or former clients, and that "[t]he prohibition against communication with a person represented by counsel applies when the lawyer is 'representing a client,'' and not when the lawyer is acting on her own behalf. (*Id*. at 3 (citing N.Y. R. Prof'l Conduct 4.2(a)).) In a declaration submitted in support of the Letter Notice, Delaney states that she "believe[s] that it is perfectly proper to contact victims and family members of the bombing

who I represented or dealt with at the inception of the case, to support my claim for compensation and I plan to do so unless the Court directs otherwise." (ECF 901-4 at 3 ¶ 22.)[2]

Rothenberg responded to the Letter Notice, through counsel, by email dated February 22, 2018. (SM Ex. 1 (Email from P. Buckley dated February 22, 2018).) Rothenberg argued, among other things, that it was irrelevant that Delaney was acting on her own behalf since Rule 4.2(c) of the New York Rules of Professional Conduct provides that the prohibitions of Rule 4.2(a) apply to lawyers acting *pro se*. (*Id.*) Recognizing that Rule 4.2(c) allows lawyers acting *pro se* to communicate with represented persons when they "give[] reasonable advance notice to the represented person's counsel that such communications will be taking place," Rothenberg questioned whether Delaney had provided the requisite notice. (*Id.*)

I held a conference call on February 26, 2018, to clarify Delaney's and Rothenberg's positions and the relief Delaney was seeking, and to determine whether an agreement could be reached as to a resolution of Delaney's concerns. Both parties consented to the application of the New York Rules of Professional Conduct to their dispute. Counsel argued that her contacts with the Peterson Plaintiffs were not impermissible under Rule 4.2(a) because the plaintiffs are not parties to the fee dispute and, alternatively, that such contacts were permissible under Rule 4.2(c) because Delaney has provided notice to their counsel of her intent to make such contacts. In addition, Delaney's counsel argued that Rothenberg had a conflict of interest that prevented him from advising plaintiffs not to speak with Delaney. Delaney's counsel also clarified that she is

---

2 Delaney also stated in her Notice that she had encountered previous efforts to block her gathering of support for her claim insofar as she was told that three unnamed attorneys sought to discourage a potential witness from communicating with her by informing the witness that she was suing Fay. (ECF No. 901 at 3.) Delaney suggested that Rothenberg was one of those attorneys. (*Id.*) In response, Rothenberg's counsel asserted that he "did not participate in any such interaction" and was not "aware of anyone who did." (SM Ex. 1 (Email from P. Buckley dated February 22, 2018).)

requesting an order (i) authorizing her to speak with certain Peterson Plaintiffs she claims to have recruited about her fee dispute; (ii) requiring Rothenberg to identify the plaintiffs he had instructed not to communicate with her so she can follow up with them about what had been said; and (iii) compelling Rothenberg to provide current contact information for the plaintiffs Delaney claims to have recruited.

In response, Rothenberg's counsel raised the threshold issue of whether Delaney was permitted to seek relief from the Court given the status of her application to intervene. He also suggested that, even if she were permitted to intervene, her request for an advisory ruling on ethical issues from this Court was misplaced. With regard to Delaney's conduct, counsel argued that Rule 4.2(c) applies to communications between lawyers acting *pro se* and "represented persons," not just represented parties, and that Delaney had violated Rule 4.2(c) since she had not provided sufficient "advance notice" of her intent to communicate with such persons. Rothenberg's counsel stated that he did not know if Rothenberg, Fay and Perles represented any of the plaintiffs in connection with the fee dispute specifically, but argued it was not necessary to address that question since the plaintiffs' views on Delaney are not relevant to the dispute.

Because the Court had not yet ruled on my recommendation that the Court deny Delaney's application to intervene in this action, I suggested that it was premature for Delaney to request from the Court the relief sought in the Letter Notice and proposed that a determination on any entitlement to such relief should await a ruling from the Court on whether Delaney would be permitted to intervene. Counsel for Delaney and Rothenberg agreed with this proposal, and Delaney agreed to refrain from further contact with plaintiffs in the meantime, unless and until there was a pressing need for such contact, in which case counsel would contact me.

On June 18, 2018, the Court issued its Opinion & Order adopting and confirming my recommendation that Delaney's application to intervene be denied. (*See* ECF No. 944.)

**DISCUSSION**

In the Letter Notice, Delaney primarily sought the assistance of the Court on a dispute with Rothenberg over whether and how she may obtain discovery from certain of the Peterson Plaintiffs to support her claim against Rothenberg, Fay and Perles. With the Court now having ruled that Delaney's request to intervene "should be denied as untimely" (ECF No. 944 (Opinion and Order dated June 18, 2018) at 18–20), there is no reason for the Court to involve itself in what is primarily a discovery dispute regarding Delaney's potential claim against Rothenberg, Fay and Perles.

To the extent Delaney seeks a ruling on whether she may collect evidence from the Peterson Plaintiffs without running afoul of the New York Rules of Professional Conduct, the current factual record is incomplete. Rule 4.2(a) provides that:

> In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.

N.Y. R. of Prof'l Conduct 4.2(a). Rule 4.2(c) provides in relevant part that:

> A lawyer who is acting *pro se* or is represented by counsel in a matter is subject to paragraph (a), but may communicate with a represented person, unless otherwise prohibited by law [. . .], provided the lawyer or the lawyer's counsel gives reasonable advance notice to the represented person's counsel that such communications will be taking place.

N.Y. R. of Prof'l Conduct 4.2(c).[3] Since Rule 4.2 does not categorically prohibit communication by a lawyer acting *pro se* with a represented person, the permissibility of Delaney's

---

[3] The comments to Rule 4.2 explain that the "Rule contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference

communicating with any of the Peterson Plaintiffs depends on a number of factors, including whether the communication relates to matters outside the scope of the representation, whether counsel for the represented person has been given reasonable advance notice of the communication, and whether the communication might present a risk of invading an attorney-client relationship.

To the extent Delaney seeks an order compelling Rothenberg to produce certain information about the plaintiffs Delaney claims to have represented, again, the record is incomplete. A determination of whether Delaney is entitled to such information from Rothenberg would require an analysis of any claim she may have against him and consideration of whether the information requested is relevant to such claim.

Because Delaney is not a proper party to this dispute, it appears that further proceedings to determine whether Delaney's contacts with the Peterson Plaintiffs have violated or will violate the New York Rules of Professional Conduct, or whether Delaney is entitled to the information she seeks to obtain from Rothenberg, would not be a proper use of the Court's resources. To the extent Delaney pursues claims against Fay, Perles or Rothenberg in an appropriate forum, Delaney may raise these issues in that forum.

---

by those lawyers with the client-lawyer relationship, and un-counseled disclosure of information relating to the representation." N.Y. R. of Prof'l Conduct 4.2 cmt. 1. The Rule "does not prohibit communication with a represented party or person . . . concerning matters outside the representation. . . . A lawyer having independent justification or legal authorization for communicating with a represented party or person is permitted to do so." N.Y. R. of Prof'l Conduct 4.2 cmt. 4; *see also* Prof' Ethics Comm., Ass'n of the Bar of N.Y.C., *Contacting Former Clients Represented by Successor Counsel*, Formal Op. 2011-1 at 3 (2011), https://www2.nycbar.org/pdf/report/uploads/3_20072049-FormalOpinion2011-1.pdf (Rule 4.2 "does not flatly prohibit all contact with former clients"; "there appears to be no reason to adopt any such blanket prohibition").

## CONCLUSION

For all of the foregoing reasons, I recommend that the Court enter an order denying the relief requested by Delaney as moot and take no further action in response to the Letter Notice.[4]

Dated: New York, New York
July 13, 2018

Kathleen N. Massey
Special Master

[4] Between July 10 and 13, 2018, a member of my staff contacted counsel for Rothenberg and Delaney to advise them of the foregoing recommendation and to inquire whether, in light of the Court's June 18, 2018 Opinion & Order, they took issue with it. Counsel for Rothenberg and Delaney have both separately confirmed their agreement that there is no basis for the Court to take any further action in response to the Letter Notice, though Delaney reserves any right she may have to seek appropriate relief in another forum.