# EXHIBIT "1"

**EXHIBIT 1**

```
PETERSON FUND
FINAL ACCOUNTING OF DISTRIBUTED FUNDS
AS OF 2/28/21
```

| | | |
|---|--:|--:|
| Amount Originally Deposited Into Fund | | $1,895,672,127 |
| | | |
| **Transactions inception to 2/28/21:** | | |
| Add: Income | | 24,643,351 |
| | | |
| Less: Fund Expenses* | | (32,804,749) |
| | | |
| Less: Distributions**: | | |
| 87% Group Plaintiffs*** | $(1,020,402,507) | |
| 87% Group Attorneys**** | (546,493,942) | |
| 13% Group Plaintiffs & Attorneys | (219,286,900) | |
| 13% Group-ACCJ | (24,526,773) | |
| 87% Group Attorney Expenses | (74,995,227) | |
| Wultz & Bakhtiar/Abkir | (2,000,000) | |
| DC Special Master Fees | (651,184) | |
| | | |
| Total Distributions | | (1,888,356,533) |
| | | |
| Add: Citibank Recovery | | 1,162,500 |
| | | |
| Net Cash As Of 2/28/21 | | $     316,696 |
| | | |
| Add:  Estimated Insurance Policy Refund | | 50,000 |
| | | |
| Less: Anticipated Administrative Expenses Pre Termination | | (185,474) |
| | | |
| Less: Anticipated Administrative Expenses Post Termination | | (181,000) |
| | | |
| Net remaining small difference- income earned since 11/30/20 | | $          222 |

*NOTE: These amounts include expenses accrued but not paid as of 2/28/21.

**NOTE:  Included in these amounts are the following amounts assigned as Delayed Distributions including
 undeliverable and/or uncashed checks : $175,009 for the 87% plaintiff attorneys,  $493,963 for the 87% plaintiffs
 (including amounts for advance companies), $31,863 for the 13% plaintiff attorneys and $200,279 for the
 13% plaintiffs.

***NOTE: As previously disclosed, the Fund received a credit applied as reimbursement for $250,000 for
 expenses incurred with respect to one of the advance companies.  This amount was allocated among all of the 87% group.

****NOTE:  Of this amount, a little over $1 million was made available to the attorneys but not requested or paid until March.

# EXHIBIT "2"

## EXHIBIT 2

**PETERSON FUND**
**FINAL ALLOCATION OF INCOME**
**INCEPTION TO 11/30/20**

|  | **87% Group** | **13% Group** |
|---|---|---|
| Inception to 10/31/16 | 10,756,362 | 1,595,827 |
| 11/1/16-12/31/16 | 478,507 | 46,519 |
| 1/1/17-6/30/17 | 1,683,552 | 53,667 |
| 7/1/17-12/31/17 | 2,351,187 | 58,992 |
| 1/1/18-6/30/18 | 2,661,339 | 59,179 |
| 7/1/18-12/31/18 | 1,932,015 | 93,285 |
| 1/1/19-3/31/19 | 462,494 | 45,499 |
| 4/1/19-5/31/19 | 276,790 | 29,916 |
| 6/1/19-6/30/19 | 122,345 | 12,307 |
| 7/1/19-9/30/19 | 384,894 | 38,302 |
| 10/1/19-2/29/20 | 477,771 | 45,043 |
| 3/1/20-11/30/20 | 86,457 | 12,827 |
|  |  |  |
| Total allocated | $21,673,713 | $ 2,091,364 |
|  |  |  |
| Additional ACCJ | 458,312 | 67,996 |
|  |  |  |
| Total allocated including ACCJ interest reallocation | $22,132,025 | $ 2,159,360 |

NOTE: After 11/30/20 income amounts were de minimis.

|  | **87% Group** | **13% Group** | **ACCJ** |
|---|---|---|---|
| Inception to 10/31/16 | 10,756,362 | 1,595,827 |  |
| To 12/31/16 | 478,507 | 46,519 | 7,654 |
| 1/1/17-6/30/17 | 1,683,552 | 53,667 | 65,499 |
| 7/1/17-12/31/17 | 2,351,187 | 58,992 | 121,280 |
| 1/1/18-6/30/18 | 2,661,339 | 59,179 | 153,571 |
| 7/1/18-12/31/18 | 1,932,015 | 93,285 | 272,340 |
| 1/1/19-3/31/19 | 462,494 | 45,499 | 138,569 |
| 4/1/19-5/31/19 | 276,790 | 29,916 | 97,549 |
| 6/1/19-6/30/19 | 122,345 | 12,307 | 18,986 |
| 7/1/19-9/30/19 | 384,894 | 38,302 | 1,608 |
| 10/1/19-2/29/20 | 477,771 | 45,043 | 996 |
| 3/1/20-11/30/20 | 86,457 | 12,827 |  |
|  |  |  |  |
| Total allocated | $21,673,714 | $ 2,091,365 | $878,053 |
|  |  |  |  |
| Less:  Expenses allocable to ACCJ |  |  | (351,745) |
|  |  |  |  |
| Remaining interest allocable to entire fund |  |  | $526,308 |

# EXHIBIT "3"

## EXHIBIT 3

**PETERSON FUND**
**FINAL ALLOCATION OF EXPENSES**
**TOTAL AMOUNTS**

| | **Total** | **87% Group** | **87% Attorneys** | **87% Plaintiffs** | **13% Group** | **ACCJ** |
|---|---|---|---|---|---|---|
| Fund Expenses: | | | | | | |
| Trustee fees (Judge S. Sporkin) | $   400,000 | 348,322 | 116,107 | 232,215 | 51,678 | $   - |
| UBS fees | 4,300,438 | 3,800,083 | 1,266,694 | 2,533,388 | 500,358 | - |
| Professional liability insurance | 5,969,062 | 5,197,896 | 1,732,632 | 3,465,264 | 771,166 | - |
| Taxes | 298,227 | 283,808 | - | 283,808 | 14,419 | - |
| Special Master fees | 1,998,357 | 1,998,357 | 1,005,914 | 992,443 | - | - |
| | | | | | | |
| Professional fees: | | | | | | |
| Locke Lord | 11,394,201 | 9,896,291 | 3,739,764 | 6,156,527 | 1,151,394 | 346,516 |
| Wood | 1,163,171 | 1,024,027 | 369,009 | 655,018 | 139,144 | - |
| Heller, Horowitz | 198,701 | 179,591 | 17,240 | 162,351 | 19,111 | - |
| Accounting fees | 3,835,039 | 3,489,266 | 1,258,089 | 2,231,177 | 340,544 | 5,229 |
| Distribution fees | 3,613,763 | 3,448,496 | 1,149,499 | 2,298,997 | 165,267 | - |
| | | | | | | |
| Total Fund Expenses | $33,170,959 | $29,666,136 | 10,654,947 | 19,011,189 | $3,153,081 | $351,745 |

NOTE:  The above includes estimated amounts for the period after 2/28/21.

# EXHIBIT "4"

# EXHIBIT 4

### POST-TERMINATION PLAN

Subsequent to the Termination of the Peterson Fund, the Trustee shall be authorized to do the following to the extent not sufficiently completed prior to the Termination of the Fund:

(i)      Continue to act through his professionals; maintain reserves from which to compensate such professionals; and pay such professionals for their services;

(ii)      Enter into and execute such documents and agreements, and provide any notices deemed necessary or appropriate in connection with Termination of the Fund;

(iii)      Process funds related to any uncashed, un-cleared and/or returned payment as Delayed Distributions and transfer such funds to lead attorneys;

(iv)      Enter into a supplemental agreement with Epiq Class Action & Claims Solutions, Inc. ("Epiq") pursuant to which Epiq will provide limited communication services and/or record retention services substantially as provided in the annexed February 23, 2021 proposal and make payment(s) to Epiq in connection with such agreement;

(v)      Terminate insurance policies held by or for the Fund and/or Trustee and commence or invoke any extended reporting periods provided under any such insurance policies; collect, endorse and deposit any credit or premium refund due to the Fund upon termination of any such insurance policies; and make and/or prosecute any claim available to the Fund and/or Trustee pursuant to any such insurance policies;

(vi)      File tax returns, tax related forms and requests for expedited assessment on behalf of the Fund as the Trustee may determine to be required or prudent; claim, collect, endorse and deposit tax refunds, carryback or carryforward taxes or other tax credits that the Fund may be entitled to claim; execute and deliver any powers of attorney that may be required for the Trustee's professionals to communicate with to the Internal Revenue Service (IRS) or state tax authorities; respond to any audits or other similar requests or inquiries with respect to the Fund's tax matters; and issue any required Forms 1099 necessary in connection with the Fund's reporting requirements;

(vii)      Close any and all existing bank, brokerage and/or investment accounts in the name of the Fund held at any bank or other financial institution; and open and/or maintain such bank or other accounts in the name of the Fund at any bank or other financial institution that the Trustee deems necessary to collect, receive and/or process any funds, credits, payments and/or refunds (including any tax or insurance credits or refunds) that may be payable to the Fund or any uncashed, uncleared and/or returned payments;

(viii)      Execute releases in favor of vendors, professionals or any other parties, entities or intermediaries that have completed his, her or its duties and/or satisfied his, her or its obligations to the Fund;

(ix)    Enter into any other agreement or taking any other action necessary to effectuate termination of the Fund; and

(x)    Remit any remaining funds held in any account with respect to the Fund or the Trustee for the ratable account of the Plaintiffs to (i) Caragh Fay, Esq., for the benefit of the Peterson Plaintiffs, and (ii) counsel for each of the 13% Plaintiffs, for the benefit of their respective Plaintiffs.

2



**P** 503 350 5800 **T** 800 547 4407 **F** 503 350 5890
10300 SW ALLEN BOULEVARD, BEAVERTON OR 97005
WWW.EPIQGLOBAL.COM

February 23, 2021

Ken Feinberg, Trustee
c/o Shalom Jacob
Locke Lord LLP
3 World Financial Center
New York NY 10281

Re:     Closure of Administration in the *Peterson, et. al.*, Matters

Dear Trustee Feinberg:

Below is a summary of Epiq's case closing process, which outlines our standard procedures for each item in the process. If you have any questions or need further information please contact me.  Please note that the dates and timelines discussed below are subject to change, at your direction, depending on the ongoing needs of the parties, counsel and your professionals.

- <u>Toll-Free Phone Line:</u> We will shut down the phone line 1-800-773-7598 as of June 30, 2021. We continue staffing the line with live agents through March 31, 2021. From April 1, 2021 to June 30, 2021, the phone line will have a recorded phone line directing the caller to reach out to their attorney for information. Beginning July 1, 2021, individuals who call the toll free number will hear a recording that states the line is no longer in service.

- <u>Website/Email inbox</u>: We will shut down the website, BeirutLawsuit.com, and email inbox as of June 30, 2021. We will respond to emails through March 31, 2021. From April 1, 2021 to June 30, 2021, individuals sending an email will receive an automatic response informing them that the email inbox is not being monitored and that they should reach out to their attorney for information. For the website, we will put a message up on or after April 1, 2021 informing the visitor that the website will be taken down June 30, 2021 and for visitors to contact their attorney with any questions. Epiq will maintain a limited archive of the site, including text and structure, which will be retained with the electronic data discussed below.

- <u>Future correspondence:</u> Epiq will address any correspondence received until March 31, 2021. After March 31, 2021, Epiq's standard response to any correspondence received will be to return the correspondence with a notation that the administration is closed and questions should be directed to plaintiff's counsel.

- <u>Physical Document Storage and Retention:</u> We are currently storing 37 boxes of documents, including confidential disbursement authorization forms, estate documents, retainer agreements, and correspondence. Between now and March 31, 2021, that quantity will likely increase by a few boxes. Epiq understands Caragh Fay has requested that these boxes of original documents be

shipped to her in April 2021, which will terminate monthly box storage charges.  Unless otherwise instructed by you, Epiq will ship these boxes to Ms. Fay.[1]

- <u>Electronic Data and Digital Images</u>: Epiq is currently in possession of electronically stored claimant data (records of mailings, documents received, etc.) and images (claim forms and correspondence received). Epiq will retain and destroy this electronic data and images as follows:

  - *Facilitator Access*: Consistent with your direction, we will shut Facilitator down on June 30, 2021 and direct any inquiries from counsel or the Trustee's professionals to me or Michael O'Connor. After June 30, 2021, if you so instruct, we can leave Facilitator active for a monthly hosting fee of $450.

  - *Electronic Data on Epiq-owned Media*: This includes all case-specific data related to or supporting maintenance of the administration in our system database, e.g. payment records, call center agent notes summarizing conversations with individual plaintiffs, emails sent and received, etc. Epiq will maintain this data until January 1, 2024, at which time access to the data through our software will be disabled and destroyed at no additional charge.

  - *Digital Images*: This includes all scanned images specifically related to the administration and stored on Epiq-owned media for access through our system database (and currently viewable through Facilitator). Epiq will maintain the data until January 1, 2024, at which time access to the digital images through our system database will be disabled and the related images destroyed at no additional charge. We can provide copies of digital images prior to destruction, if requested, at no additional charge.

- <u>Final Epiq Invoice and Payment:</u> Upon finalization of your decisions regarding how to approach the above issues, Epiq will provide a final invoice detailing the balance of costs already incurred and future costs related to the above items. I will forward a separate e-mail with the final invoice.

- <u>Qualified Settlement Fund Closure:</u> We understand you are still working closely with your team of professionals to evaluate how and when to close the Qualified Settlement Fund ("QSF"). As a reminder, once the QSF account is closed, Epiq will not be able to reissue any checks.

We estimate $57,000 in fees and costs for the services described herein, from January 1, 2021 through June 30, 2021.   If you have any questions, please contact me at 503-277-0045 or email cmarr@epiqglobal.com.

Sincerely,


/s/ Charles Marr
Project Director

---

[1] For your reference, if Epiq is instructed to continue storing the boxes, Epiq charges $3.50 per box, per month. The current quantity would cost $1,554 to store for one year.

# EXHIBIT "5"

<u>EXHIBIT 5 (pt. 1)</u>

BLD Administrator
P.O. Box 4349
Portland, OR 97208-4349

**Return by
June 12, 2020**



*851900164696*
000 0000001 00000000 0001 0010 00001 INS: 0 0

**Tracking Number:** ▉▉▉

## Beirut Lawsuit – Final Confidential Distribution Authorization Form

Dear ▉▉▉▉▉▉

On April 6, 2020, the Court in the matter captioned *Peterson v. Iran*, Case No. 10-CIV-4518 (S.D.N.Y.) (the "NY Action"), appointed Kenneth R. Feinberg as Successor Trustee of the qualified settlement fund (the "QSF") created by Court order in the NY Action. References to the "Trustee" in this Final Confidential Distribution Authorization Form (the "FCDA") shall mean Kenneth R. Feinberg and/or former Fund Trustee the Honorable Stanley Sporkin, as appropriate.

The Trustee is prepared to proceed with the distribution of the remaining assets of the QSF. Pursuant to a Motion filed by the Trustee on February 28, 2020, the Court entered an Order governing the distribution of the remaining assets and the termination of the QSF. The Order contains detailed procedures governing distributions from the QSF and related actions to be taken by the Trustee. This FCDA contains important disclosures and acknowledgments regarding the remainder of the funds to be distributed by the QSF and is qualified by the Motion and the Order, which are available on **www.BeirutLawsuit.com**, or from your Attorneys (see Section 7, Paragraph 3). The Trustee recommends that you obtain and review the Motion and Order, and that you discuss any questions you may have with your Attorneys.[1]

The QSF will be making a Pre-Final Distribution payment. We anticipate that there will also be a small Final Distribution payment before the QSF is terminated. After these payments are made, there will be no further payments made by the QSF to you. **In order to receive your payments, you must return a properly completed FCDA in accordance with the instructions contained herein.** The exact amount of the Final Distribution payment is not known at this time. If a portion of your judgment award was assigned to a Third-Party Judgment Purchaser, the Pre-Final Distribution payment and the Final Distribution payment will be paid to the Third-Party Judgment Purchaser to the extent of the remaining amount due on the assignment that was made.

> **YOUR PRE-FINAL DISTRIBUTION AMOUNT THAT IS BEING PAID TO YOU IS $22,166.25. The calculation of this amount can be found in Section 2 of this FCDA.**
>
> **AN ESTIMATE OF YOUR FINAL DISTRIBUTION AMOUNT is set forth in Section 3 of this FCDA.**

---

[1] The Trustee has relied on Plaintiffs' attorneys for information relevant to each Plaintiff involved in this litigation including but not limited to, judgments, liens (to the best of such attorneys' knowledge), engagement/retainer agreements, attorneys' fees and expenses of the litigation in accordance with the agreements between and among the Plaintiffs, as well as other information that may affect the Trustee's calculations. The Trustee and the Trustee's Professionals do not take any position on and make no representations concerning the agreements between the respective Plaintiffs and their attorneys, including any agreements required by the Plaintiffs' attorneys in this FCDA.

**Questions? Call 1-800-773-7598 or email info@BeiruitLawsuit.com.**


01-CA8519
AA1811 v.06





Tracking Number:

*851900164696*

---

**STOP** **If you prefer to complete this document electronically, please send an email to the Beirut Lawsuit Distribution Administrator at info@BeirutLawsuit.com stating that you wish to do so.**

---

**STOP** **You may receive some or all of your Pre-Final Distribution Amount and/or Final Distribution Amount as future periodic payments through the use of a structured settlement.**

**IF YOU WISH TO BE PAID USING THE STRUCTURED SETTLEMENT OPTION IN FULL OR IN PART, YOU MUST PROMPTLY NOTIFY THE BEIRUT LAWSUIT DISTRIBUTION ADMINISTRATOR BY TELEPHONE (1-800-773-7598) OR EMAIL (info@BeirutLawsuit.com).**

**IF THE BEIRUT LAWSUIT DISTRIBUTION ADMINISTRATOR DOES NOT RECEIVE YOUR REQUEST FOR THE STRUCTURED SETTLEMENT OPTION BY June 7, 2020, YOU WILL NOT BE ABLE TO REQUEST A STRUCTURED SETTLEMENT.**

---

In order to receive your payments, you must complete, sign, and return the sections of this FCDA applicable to your situation as set forth below:

| Section | Title | Must I Complete This Section? |
|---------|-------|-------------------------------|
| 1 | QSF Accounting Overview | No. |
| 2 | Plaintiff Specific Pre-Final Distribution Amount Information and Authorization | Yes. |
| 3 | Plaintiff Specific Final Distribution Amount Information and Authorization | Yes. |
| 4 | Acknowledgment of Payment to Third-Party Judgment Purchaser | If Section 4 is included, you must complete it. Your FCDA may not include Section 4. |
| 5 | Designated Distribution Agent | Yes. |
| 6 | Payment Information | Yes, if you choose to receive cash payments. |
| 7 | Acknowledgments, Agreements, and Release | Yes, this is required by your Attorneys. |
| 8 | Trustee Release and Indemnity Agreement | Yes, this is required by the Trustee. |
| Exhibit A | Change of Address | Please keep Exhibit A and return it to us if your address changes after you complete and return the FCDA. |

**You must complete the required sections, sign, and return this Final Confidential Distribution Authorization Form to the Beirut Lawsuit Distribution Administrator at the following address to receive your payments:**

Beirut Lawsuit Distribution Administrator
P.O. Box 4349
Portland, OR 97208-4349

A postage prepaid envelope is enclosed for your convenience.

**Questions? Call 1-800-773-7598 or email info@BeirutLawsuit.com.**

02-CA8519
AA1812 v.06

2

Tracking Number:

*851900164696*

Please contact us at **1-800-773-7598** or via email at **info@BeirutLawsuit.com** if:

(a) you, or your predecessor where applicable, have not previously completed and returned the initial Confidential Disbursement Authorization Form (the "CDA") or the subsequent Supplemental Confidential Disbursement Authorization Form (the "SCDA"), as we require that those forms be completed and returned; or

(b) the person who signed the SCDA has changed names or the person who will sign the FCDA is not the same person who signed the SCDA (for example, if the representative of an estate has changed or the Plaintiff is now deceased), in which case we will inform you of additional documentation that must be provided.

Please contact us at **1-800-773-7598** or via email at **info@BeirutLawsuit.com**, or your Attorneys at **1-202-589-1300** or via email at **Caragh.Fay@FayLawGroup.com**, if you have any questions regarding how to complete the FCDA.

If you have any questions regarding the meaning or implications of this Final Confidential Distribution Authorization Form, please contact your attorney.

Please be advised that the Trustee, his attorneys, accountants, agents, and other professionals, including but not limited to the Beirut Lawsuit Distribution Administrator, (collectively the "Trustee's Professionals") and, to our knowledge, your Attorneys and Collection Counsel (see Section 7, Paragraph 8) do not represent you (or, if you are a representative, the Plaintiff you represent) concerning tax, financial or investment matters, or income-based government assistance implications related to the distributions referenced in the FCDA, and you and the Plaintiff may not rely on the Trustee, the Trustee's Professionals, or, to our knowledge, your Attorneys and Collection Counsel to provide advice on such matters. You are advised to consult with a private tax attorney, probate attorney, certified public accountant, actuary, or other licensed professional with specialized knowledge of tax, income-based government assistance, probate/estate, and/or investment matters concerning the distributions referenced in the FCDA.

Sincerely,

Beirut Lawsuit Distribution Administrator


03-CA8519
AA1813 v.06

3





## Section 1 - QSF Accounting Overview

The information below provides an overview of the QSF's receipts, disbursements, and reserves in connection with the current Pre-Final Distribution and the pending Final Distribution, insofar as the Plaintiffs in the following cases are concerned: *Peterson, Valore, Bonk, Arnold, Spencer I, Anderson, Murphy, Bland, O'Brien, Davis, Brown, Taylor, Fain, Spencer II, and Worley.*[2] Some of the terms in this table may not be self-explanatory and are explained below. Because the QSF continues to receive income on its undistributed funds and to incur expenses, the income, expense, and amounts available for the Final Distribution are estimates and the actual amounts may vary from those presented here. Certain categories in the table below are explained in greater detail after the table.

| PRE-FINAL DISTRIBUTION CALCULATION[3] | |
|---|---|
| Amount of Initial Deposit into QSF Allocated to Plaintiffs | $1,649,021,337 |
| **Plus**: Income Earned by QSF through 2/29/2020 and Allocated to Plaintiffs & Plaintiffs' Attorneys | $22,045,570 |
| **Minus**: Plaintiffs' & Plaintiffs' Attorneys' Share of QSF Expenses through 2/29/2020 | $25,769,008 |
| **Plus**: Reimbursement of QSF Expenses Obtained by Trustee from a Third-Party Judgment Purchaser | $250,000.00 |
| **Minus**: Reserve Retained for Contingencies | $12,691,286 |
| **Minus**: Reserve for Anticipated Expenses of Pre-Final Distribution | $1,304,930 |
| **Equals**: Distribution Amount Before Plaintiffs' Attorneys' Fees, Expenses, and Credits Shown Below | $1,631,551,682 |
| **Minus**: Plaintiffs' Attorneys' Fees (one-third) | $543,850,561 |
| **Plus**: Additional Fund Expenses Allocated to Plaintiffs' Attorneys Instead of Plaintiffs, Net of Certain Credits Allocated to Plaintiffs' Attorneys | $766,235 |
| **Minus**: Plaintiffs' Attorneys' Expenses and $651,184.45 of DC Special Master Fees (DC Special Master fees have been taxed as court costs to Iran) | $75,646,411 |
| **Plus**: Funds Recovered by the Trustee from Citibank | $1,012,312 |
| **Equals**: Amount Available for Distribution to All Plaintiffs through Pre-Final Distribution | $1,013,833,258 |
| **Minus**: Amounts Allocated to All Plaintiffs in Prior Distributions[4] | $975,985,119 |
| **Equals**: Amount Available for Distribution to All Plaintiffs in Pre-Final Distribution | $37,848,138 |

---

[2] *Peterson v. Iran,* 01-cv-2094, 01-cv-2684; *Murphy v. Iran,* 06-cv-0596; *O'Brien v. Iran,* 06-cv-0690; *Davis v. Iran,* 07-cv-1302; *Brown v. Iran,* 08-cv-0531; *Taylor v. Iran,* 10-cv-0844; *Fain v. Iran,* 10-cv-0628; *Worley v. Iran,* 12-cv-2069; *Valore v. Iran,* 03-cv-1959, 06-cv-0516, 06-cv-0750, 08-cv-1273; *Bland v. Iran,* 05-cv-2124; *Spencer v. Iran,* 12-cv-0042; *Arnold v. Iran,* 06-cv-516.

[3] The amounts in the charts in Sections 1, 2, and 3 are amounts allocated to the Plaintiffs in all cases noted above. They do not include amounts allocated to other claimants as the result of certain settlements that Plaintiffs made.

[4] Almost this entire amount has been paid. Due to certain legal impediments, a small amount has not yet been paid to a small number of Plaintiffs.

**Questions? Call 1-800-773-7598 or email info@BeiruitLawsuit.com.**

04-CA8519
AA1814 v.06                                   4

**Amount of Initial Deposit into QSF Allocated to Plaintiffs** – This is the portion of the amount recovered from assets of Iran and deposited into the QSF in 2013 that was allocated to Plaintiffs in all cases noted above. It does not include amounts that were allocated to other claimants as the result of certain settlements that Plaintiffs made.

**Reserve Retained for Contingencies and Reserve for Anticipated Expenses of Pre-Final Distribution** – These amounts are being withheld from the Pre-Final Distribution as a reserve for anticipated expenses of the QSF, the Trustee, and the Trustee's Professionals, and as a reserve in an amount the Trustee has determined is necessary to cover any potential or unanticipated liabilities and obligations arising from potential disputes as to expenses, liens, fees, or judgments. To the extent these reserves are not used and are no longer needed, they will be disbursed to Plaintiffs and their attorneys, as appropriate, as part of the Final Distribution.

**Additional Fund Expenses and Credits Allocated to Plaintiffs' Attorneys Instead of Plaintiffs** – These are certain expenses and credits that the QSF has allocated only to Plaintiffs' attorneys.

**Attorneys' Expenses and DC Special Master Fees** – This includes amounts, other than attorneys' fees, paid by the QSF to all attorneys, investigators, lobbyists, special masters appointed by the U.S. District Court for the District of Columbia, and others for expenses incurred during the litigation and collection actions in these cases (for example, filing fees and fees for witnesses and experts). Note that your share of these expenses is shown in Section 3 - Plaintiff Specific Pre-Final Distribution Amount Information and Authorization as Plaintiff's Share of Common Case Expenses.

**Funds Recovered by the Trustee from Citibank** – This is an amount recovered from Citibank in settlement of the Trustee's claim that Citibank improperly withheld funds from its 2013 deposit into the QSF.

**Amount Available for Distribution to Plaintiffs through Pre-Final Distribution** – This is the total amount that the Trustee has made available for distribution to Plaintiffs.

| ESTIMATED FINAL DISTRIBUTION RANGE | LOWER END OF DISTRIBUTION RANGE | UPPER END OF DISTRIBUTION RANGE |
|---|---|---|
| Estimated QSF Expenses for Final Distribution through Termination of the QSF | $8,482,390 | $899,833 |
| Estimated Amount Available for Distribution from Inception through Final Distribution to All Plaintiffs and Plaintiffs' Attorneys[5] | $1,636,772,890 | $1,644,355,447 |
| <u>Minus</u>: Amount Allocated and/or Paid in Prior Distributions, Including Pre-Final Distribution[6] | $1,632,563,994 | $1,632,563,994 |
| <u>Equals</u>: Estimated Range of Final Distribution Amount Available for Distribution to All Plaintiffs and Plaintiffs' Attorneys | $4,208,896 | $11,791,453 |
| <u>Minus</u>: Estimated Range of Plaintiffs' Attorneys' Fees | $1,402,965 | $3,930,484 |
| <u>Equals</u>: Estimated Range of Final Distribution Amount Available for Distribution to All Plaintiffs | $2,805,931 | $7,860,969 |

[5] Almost all of this amount has been paid. Due to certain impediments a small amount has not yet been paid to a small number of plaintiffs.

[6] This amount includes Plaintiffs' Attorneys' expenses and fees payable to DC Special Masters.


05-CA8519
AA1815 v.06

**Questions? Call 1-800-773-7598 or email info@BeiruitLawsuit.com.**
5


*851900164696*

Tracking Number:
Section 2 – Plaintiff Specific Pre-Final Distribution Amount
Information and Authorization

## Section 2 – Plaintiff Specific Pre-Final Distribution Amount Information and Authorization

The chart below shows the calculation of your specific Pre-Final Distribution Amount to be paid to you at this time from the QSF. It is important that you review this chart for accuracy, and that you (or a Legal Representative) sign below to acknowledge its accuracy.

| | |
|---|---|
| Amount Available for Distribution to All Plaintiffs and Plaintiffs' Attorneys from Inception through Pre-Final Distribution | $1,632,563,994 |
| Plaintiff's Share of Amount Available for Distribution to All Plaintiffs and Plaintiffs' Attorneys from Inception through Pre-Final Distribution, Including Plaintiff's Attorneys' Fees and Expenses | $956,132.15 |
| <u>Minus</u>: Plaintiff's Attorneys' Fees, Plaintiffs' Attorneys' Expenses, and Plaintiff's Share of $651,184.45 of DC Special Master Fees from Distributions Prior to Pre-Final Distribution | $355,061.98 |
| <u>Minus</u>: Plaintiff's Attorneys' Fees to be Paid in Pre-Final Distribution | $7,305.65 |
| <u>Equals</u>: Plaintiff's Share of Amount Available for Distribution from Inception through Pre-Final Distribution after Deduction of Plaintiff's Attorneys' Fees | $593,764.52 |
| <u>Minus</u>: Amounts Allocated to Plaintiff in Distributions Prior to Pre-Final Distribution, Including Plaintiff's Specific Expenses | $571,598.27 |
| <u>Equals</u>: **Pre-Final Distribution Amount** Allocated to Plaintiff | $22,166.25 |
| *Note: The following portion of this chart applies only to certain Plaintiffs who made assignments to Third-Party Judgment Purchasers* | |
| Portion of Plaintiff's Pre-Final Distribution Amount Being Paid to Third-Party Judgment Purchaser ("Pre-Final Advance Payment") | $0.00 |
| Portion of Plaintiff's Pre-Final Distribution Amount Being Paid to Plaintiff | $22,166.25 |
| Remaining Balance Owed to Third-Party Judgment Purchaser after Payment of Pre-Final Advance Payment, as calculated by Trustee[7] | $0.00 |

| | |
|---|---|
| Plaintiff's share of funds recovered by the Trustee from RD Legal Funding, LLC ("RD Legal") for the benefit of certain Plaintiffs who received advances from RD Legal. This amount was previously distributed to Plaintiff | $0.00 |

---

[7] The Trustee has calculated this amount for your convenience. If you have any questions about this amount, please contact the Third-Party Judgment Purchaser.

**Questions? Call 1-800-773-7598 or email info@BeiruitLawsuit.com.**



*851900164696*

### Section 2 – Plaintiff Specific Pre-Final Distribution Amount Information and Authorization

Please indicate your agreement by checking or initialing the box to the left of each statement below:

☐   **A.**   I have reviewed and hereby approve the above itemized calculation and distribution of my Pre-Final Distribution Amount. I confirm that each amount set forth in the calculation was fully explained to me, or that I had the opportunity to have the calculations fully explained to me, before I signed this FCDA. I release the QSF, the Trustee, and the Trustee's Professionals from any claims concerning such calculation.

☐   **B.**   The previous CDA and SCDA remain in full force and effect, and all releases, affirmations, acknowledgements, and information contained in the CDA and SCDA (including, but not limited to, those concerning Government Assistance, liens, and bankruptcies) remain true and valid for the purpose of this FCDA and the Pre-Final Distribution being made from the QSF and will remain true and valid for the Final Distribution to be made from the QSF. I will notify the Beirut Lawsuit Distribution Administrator immediately should there be a change in any information previously provided to the Beirut Lawsuit Distribution Administrator and/or the Trustee.

☐   **C.**   I certify that I have the legal authority to sign this form as I am either:

     i.   a Plaintiff in the above case and signed the SCDA on my own behalf; OR

     ii.   a Legal Representative of a deceased or incapacitated person who is a Plaintiff in the above case and signed the SCDA on behalf of that Plaintiff; OR

     iii.   a newly appointed Personal Representative of a deceased or incapacitated person who is a Plaintiff in the above case who either completed their own SCDA or whose SCDA was completed by a previously appointed Personal Representative.

☐   **D.**   If I am acting as a Legal Representative or Personal Representative on behalf of a deceased or incapacitated Plaintiff, I further certify that all documentation previously submitted showing my authority to act on behalf of said Plaintiff remains in full force and effect. I will notify the Beirut Lawsuit Distribution Administrator immediately should any such documentation expire or otherwise lose force or effect.

     If I am a newly appointed Legal Representative, I affirm that I am presently authorized to act as Legal Representative or Personal Representative and that **I have attached a copy of my government identification and documentation showing my authority to sign this FCDA.**

**Questions? Call 1-800-773-7598 or email info@BeiruitLawsuit.com.**

07-CA8519
AA1817 v.06

7



*851900164696*

☐   E.   Except for bankruptcies and liens that have previously been disclosed, I certify that:

   i.   I am signing on my own behalf, I have not filed for bankruptcy, and I have not become aware of any liens against me or my judgment since the CDA and SCDA were completed; OR

   ii.  I am a Legal Representative or Personal Representative, and certify that, to my knowledge, the Plaintiff or decedent whose estate I represent has never been in bankruptcy and, further, that I am not aware of any liens against such person or such person's judgment; OR

   iii. I am aware of the following bankruptcy action and liens that have been filed by or against me, or by or against the Plaintiff or decedent for whom I am a Legal Representative or Personal Representative:

   (Please describe any such bankruptcy actions and liens here.) _____

   _____

☐   F.   I have been advised that I could receive any Pre-Final Distribution Amount and/or Final Distribution Amount that is to be paid to me in the form of a structured settlement or a lump sum cash payment. If I choose to receive any payment in the form of a structured settlement, I acknowledge that I must notify the Beirut Lawsuit Distribution Administrator on or before **June 7, 2020**. I understand that if I do not notify the Beirut Lawsuit Distribution Administrator on or before **June 7, 2020**, the Trustee will assume that I have chosen to receive all my funds as immediate lump sum cash payments and not over time in the form of structured settlement payments.

☐   G.   I will promptly notify the Beirut Lawsuit Distribution Administrator if my address changes. (A Change of Address Form is included with this FCDA as Exhibit A for my future use.)

I have read and agree to this Section 2 – Plaintiff Specific Pre-Final Distribution Amount Information and Authorization, as indicated by my signature below:

**Signature of Plaintiff, Personal Representative, or Legal Representative:**

**Print name of Plaintiff:**

**Print name of Personal Representative or Legal Representative, if applicable:**

**Date Signed:**  ☐☐ – ☐☐ – ☐☐☐☐
          MM     DD     YYYY

Questions? Call 1-800-773-7598 or email info@BeiruitLawsuit.com.

08-CA8519
AA1818 v.06

8

*851900164696*

## Section 3 – Plaintiff Specific Final Distribution Amount Information and Authorization

The chart below shows the calculation of the anticipated range of the Final Distribution Amount that may be paid to you at a later date. All amounts presented here are estimates, and it is possible that the actual amount distributed will be outside of the range presented here.

|  | LOWER END OF DISTRIBUTION RANGE | UPPER END OF DISTRIBUTION RANGE |
|---|---|---|
| Estimated Range of Amount Available for Distribution to All Plaintiffs and Plaintiffs' Attorneys from Inception through Final Distribution | $1,636,772,890 | $1,644,355,447 |
| Estimated Range of Plaintiff's Share of Amount Available for Distribution to All Plaintiffs and Plaintiffs' Attorneys from Inception through Final Distribution, Including Plaintiff's Attorneys' Fees and Expenses | $958,597.14 | $963,037.96 |
| **Minus:** Plaintiff's Attorneys' Fees from Distributions Prior to Final Distribution | $362,367.63 | $362,367.63 |
| **Minus:** Estimated Range of Plaintiff's Attorneys' Fees to be Paid in Final Distribution | $821.66 | $2,301.94 |
| **Equals:** Estimated Range of Plaintiff's Share of Amount Available for Distribution from Inception through Final Distribution after Deduction of Plaintiff's Attorneys' Fees | $595,407.85 | $598,368.39 |
| **Minus:** Amounts Allocated to Plaintiff in Distributions Prior to Final Distribution, Including Plaintiff's Specific Expenses | $593,764.52 | $593,764.52 |
| **Equals:** Estimated Range of Plaintiff's **Final Distribution Amount** | $1,643.33 | $4,603.88 |
| *Note: The following portion of this chart applies only to certain Plaintiffs who made assignments to Third-Party Judgment Purchasers.* | | |
| Estimated Range of Portion of Plaintiff's Final Distribution Amount Being Paid to Third-Party Judgment Purchaser ("Final Advance Payment") | $0.00 | $0.00 |
| Estimated Range of Portion of Plaintiff's Final Distribution Amount Being Paid to Plaintiff | $1,643.33 | $4,603.88 |
| Estimated Range of Remaining Balance Owed to Third-Party Judgment Purchaser After Payment of Final Advance Payment, as Calculated by Trustee[8] | $0.00 | $0.00 |

---

[8] The Trustee has calculated this amount for your convenience. If you have any questions about this amount, please contact the Third-Party Judgment Purchaser.

**Questions? Call 1-800-773-7598 or email info@BeiruitLawsuit.com.**


09-CA8519
AA1819 v.06



*851900164696*

Please indicate whether you agree by checking or initialing the box to the left of each statement below:

☐  A.  I have reviewed and hereby approve the above estimate of my Final Distribution Amount. I acknowledge that the amounts presented here are estimates and the actual amount distributed may be higher or lower than the range presented here. I confirm that each amount set forth in the calculation was fully explained to me, or that I had the opportunity to have the calculations fully explained to me, before I signed this FCDA. I release the QSF, the Trustee, and the Trustee's Professionals from any claims concerning such calculation.

☐  B.  I further acknowledge and agree that all provisions of Section 2 – Plaintiff Specific Final Distribution Amount Information and Authorization apply to this Section 3 and will remain true and valid for the Final Distribution to be made from the QSF. I will notify the Beirut Lawsuit Distribution Administrator immediately should there be a change to any information in Section 2.

☐  C.  I understand I will not receive another disbursement authorization form before receiving my Final Distribution Amount and that the Final Distribution Amount will be the final distribution made to me by the QSF. I will promptly notify the Beirut Lawsuit Distribution Administrator if my address changes. (A Change of Address Form is included with this FCDA as Exhibit A for my future use.)

I have read and agree to this Section 3 – Plaintiff Final Distribution Amount Information and Authorization, as indicated by my signature below:

**Signature of Plaintiff, Personal Representative, or Legal Representative:**

**Print name of Plaintiff:**

**Print name of Personal Representative or Legal Representative, if applicable:**

**Date Signed:**  ☐☐ – ☐☐☐ – ☐☐☐☐
                     MM        DD            YYYY

*(The rest of this page is intentionally left blank.)*

010-CA8519
AA18110 v.06

## Section 4 – Acknowledgment of Payment to Third-Party Judgment Purchaser(s)

**This Section applies only to Plaintiffs who have sold portions of their Judgments/Awards to Third-Party Judgment Purchasers that remain unsatisfied prior to payment of the Pre-Final Distribution Amount.**

I, ▓▓▓▓▓▓▓▓▓▓, acknowledge and confirm the following:

- I, or my predecessor, sold one or more portions of my Judgment/Award to Cedars (hereinafter "Third-Party Judgment Purchaser(s)," whether one or more), free and clear of attorneys' fees, expenses, and other liens. The total amount sold to the Third Party Judgment Purchaser(s) is $292,750.00. If there have been any sales of portions of my Judgment/Award that are not described in this paragraph, I am providing information about such sales on the following lines:

    Dates of Sales: _____
    Names of Purchasers: _____
    Addresses of Purchasers: _____
    Amount Sold: _____

- The portion(s) of my Judgment/Award sold to the Third-Party Judgment Purchaser(s) is (are) to be paid in full on my behalf before any funds are paid to me. Therefore, the Trustee will not remit any payments to me on account of my Judgment/Award until the total amount shown above that was sold to the Third-Party Judgment Purchaser(s) has been paid in full.

- The Trustee has previously paid a total of $285,799.14 to the Third-Party Judgment Purchaser(s). That has reduced the total amount claimed by the Third-Party Judgment Purchaser(s) to $6,950.87. If I am aware of any other payments that have been made to the Third-Party Judgment Purchaser(s), I will immediately contact the Beirut Lawsuit Distribution Administrator and provide information about such payments.

- The Trustee will pay $6,950.87 of my Pre-Final Distribution Amount to the Third-Party Judgment Purchaser(s). This will reduce the amount claimed by the Third-Party Judgment Purchaser(s) to $0.00. After the Third-Party Judgment Purchaser(s) has (have) been paid in full, the balance, if any, will be paid to me.

- If the Third-Party Judgment Purchaser(s) has (have) not been paid in full after payment of the Pre-Final Distribution Amount as described in the preceding paragraph, the Trustee will pay the Final Distribution Amount to the Third-Party Judgment Purchaser(s) until the Third-Party Judgment Purchaser(s) has (have) been paid in full. As of now, the precise amount of the Final Distribution is not known.[8a] Please note that to the extent that payments made by the Trustee are not adequate to pay the Third-Party Judgment Purchaser(s) in full, the Third-Party Judgment Purchaser(s) may be entitled to additional funds my attorneys may recover elsewhere on account of my Judgment/Award.

- The information contained in this FCDA regarding my transactions with the Third-Party Judgment Purchaser(s) and the amounts owed to the Third-Party Judgment Purchaser(s) were provided to the Trustee by the Third-Party Judgment Purchaser(s). The Trustee is not responsible for the accuracy of such information. The Trustee is not responsible for crediting any payments received by the Third-Party Judgment Purchaser(s) from any other sources.

If I have any questions or concerns about the above amounts, I will immediately contact the Beirut Lawsuit Distribution Administrator.

---

[8a] Section 3 of the FCDA contains an estimated range for the Final Distribution Amount.

**Questions? Call 1-800-773-7598 or email info@BeirutLawsuit.com.**

10-A





Tracking Number:

*851900178381*

### Section 4 – Acknowledgment of Payment to Third-Party Judgment Purchaser(s)

**Signature of Plaintiff, Personal Representative, or Legal Representative:**

**Print name of Plaintiff:**

**Print name of Personal Representative or Legal Representative, if applicable:**

**Date Signed:**   □□  –  □□  –  □□□□
                   MM       DD       YYYY

*(The rest of this page is intentionally left blank.)*

Questions? Call 1-800-773-7598 or email info@BeirutLawsuit.com.

012-CA8519
AA18112 v.12

10-B

*851900164696*

## Section 5 – Designated Distribution Agent

Some previous distributions to certain Plaintiffs have been delayed as a result of individual issues and legal impediments pertaining to those Plaintiffs, such as incomplete confidential disbursement authorization forms, estate issues, bankruptcies, and certain disputes. The Trustee has been able to resolve most of these issues with respect to previous distributions. The Trustee would like to avoid any delay in the termination of the QSF and distribution of the Pre-Final and Final Distribution Amounts that may arise as a result of any such issues or impediments.

The Court in the NY Action has authorized the Trustee, if he determines that any such individual issues or legal impediments may delay the completion of distributions or cause the QSF to incur additional expense on account of such individual issues or legal impediments, (i) to transfer such distributions to another person who will be able to assist in resolving the issues or legal impediments, (ii) to transfer such distributions to the registry of a court, or (iii) to take such other action as the Court may authorize or to which the parties may agree. The Court has ordered that once the Trustee has transferred such distributions to such a person, to the attorney for a Plaintiff or another party in the Litigation, or to the registry of a court, the Trustee and the QSF will be relieved of any and all further liability and/or responsibility as to such distribution.

You may, should you so choose, designate your Attorneys (see Section 7, Paragraph 3), another attorney, an escrow agent, a trust company, or another legally qualified person or company to hold your distribution pending resolution of any such issues or legal impediments (the "Designated Distribution Agent") and authorize the Trustee to transfer your Pre-Final Distribution Amount, Final Distribution Amount, and/ or any other payment or distribution to your selected Designated Distribution Agent in the event that the Trustee determines, in the Trustee's discretion, that any individual issue, legal impediment, or other circumstance will prevent or delay the Trustee from promptly remitting any such amount, payment, or distribution to you or for your benefit or will cause the QSF additional expense. **If you do not designate anyone, the Trustee may consider your Attorneys to be your Designated Distribution Agent and, at the Trustee's option, will either transfer such amount, payment, or distribution to your Attorneys or deposit such amount, payment, or distribution in the registry of the Court pending resolution of any issues that may prevent the Trustee from completing the transfer or payment of such amount, payment, or distribution.**

If you choose to designate someone other than your Attorneys, please first confirm with such attorney, escrow agent, trust company, or other legally qualified person or company that he, she, or it is qualified, willing, and able to serve in this capacity and agrees to do so. The Trustee recommends that you discuss your choice with your Attorneys. Your selected Designated Distribution Agent cannot be your relative or employee and must be located in the United States. Please note that if you choose someone as your Designated Distribution Agent and that person or company is unable or unwilling to serve in that capacity, or the Trustee, at his discretion, determines that your selected Designated Distribution Agent cannot serve in that capacity, the Trustee is authorized to and will deliver your amount, payment, or distribution to your Attorneys or deposit such amount, payment, or distribution in the registry of the Court pending resolution of any issues that may prevent the Trustee from completing the transfer or payment of such amount, payment, or distribution.

If you choose to designate someone, including your Attorneys, please write that person's name and contact information where indicated below. Then write your name, sign, and date where indicated below, and return it to the Beirut Lawsuit Distribution Administrator.

I HEREBY DESIGNATE the following attorney, firm, company, or other person to be my Designated Distribution Agent and authorize the QSF and the Trustee to transfer to my Designated Distribution Agent such amounts that may be distributable to me or for my benefit in the event the Trustee determines, in the Trustee's discretion, that a legal impediment or another circumstance has arisen that will prevent or delay the QSF and/or the Trustee from promptly remitting such amounts to me or for my benefit. I understand and agree that once the QSF and/or the Trustee has done so, the Trustee and the QSF will be relieved of any and all further liability and/or responsibility for such amounts.

I ACKNOWLEDGE that my Designated Distribution Agent is not my relative or employee, I have shown this Section 5 – Designated Distribution Agent to my Designated Distribution Agent, and my Designated Distribution Agent has confirmed that he, she, or it is qualified, willing, and able to serve and agrees to serve in the capacity described in this Section 5 and to hold any amount, payment, or distribution received by him, her, or it in trust pending resolution of the issues that prevented or delayed the Trustee from promptly remitting such amount to me or for my benefit.

**Questions? Call 1-800-773-7598 or email info@BeirutLawsuit.com.**

11

011-CA8519
AA18111 v.06



Tracking Number:

Section 5 – Designated Distribution Agent

Designated Distribution Agent:   Name: _____

Firm or Company: _____

Address: _____

Telephone: _____

Email: _____

**Signature of Plaintiff, Personal Representative, or Legal Representative:**

**Print name of Plaintiff:**

**Print name of Personal Representative or Legal Representative, if applicable:**

**Date Signed:** ☐☐ – ☐☐ – ☐☐☐☐
                  MM      DD      YYYY

*(The rest of this page is intentionally left blank.)*

**Questions? Call 1-800-773-7598 or email info@BeiruitLawsuit.com.**

012-CA8519
AA18112 v.06

12

*851900164696*

## Section 6 – Payment Information

**You have chosen to receive your Distribution Amounts as cash payments.**

**Unless you provide new payment information, the Trustee will make any payments due to you in the same manner as was done with the most recent payment. For example, if, in the case of an estate, the most recent payment was sent to an estate attorney's escrow account, unless you provide new payment information, future payments will also be made to the estate attorney's escrow account.**

**If you do not wish to change the manner in which payments are made, you do not need to complete Part A, Part B, or Part C. Instead, please check here _____ and sign at the bottom of this form.**

**If you want to change the payee or the address or the manner in which payments are sent, please complete either Part A, Part B, or Part C and sign at the bottom of this form.**

Part A.  If you would like to receive your payments in the form of checks made payable to yourself or, if you represent an estate, to such estate, please use this section:

☐  I would like to receive my payments in the form of checks made payable to me or, if I am the Personal Representative of an estate, made payable to the estate. Checks should be made payable as follows and should be mailed to the following address:

Make check payable to: _____

Mail check to: _____

_____

Part B.  If you would like to receive your payments in the form of checks made payable to an individual or entity other than yourself or the estate for which you are the Personal Representative, please contact the Beirut Lawsuit Distribution Administrator to learn what additional documentation will be required, and please use this section:

☐  I would like to receive my payments in the form of checks made payable to an individual or entity other than myself or the estate for which I am the Personal Representative. **I am enclosing legal documentation, trust documentation, or other documentation authorizing me to provide this payment instruction.**

Make check payable to: _____

Mail check to: _____

_____

Part C.  If you would like to receive your payments by some other method, please use this section:

☐  Instead of receiving my payments in the form of checks, I would like to receive my payments by the following method: _____ and will contact the Beirut Lawsuit Distribution Administrator to discuss payment arrangements. I understand that both the Pre-Final and the Final payments will be made via this method. (Note: All payment arrangements must be acceptable to the Trustee.)

**Questions? Call 1-800-773-7598 or email info@BeirutLawsuit.com.**

013-CA8519
AA18113 v.06

13



*851900164696*

I understand that additional documentation or identification may be required to confirm payment directions if payments are to be directed to a payee other than myself or the Plaintiff I represent. I agree to provide such documentation or identification if requested by the Trustee or the Beirut Lawsuit Distribution Administrator.

I authorize and direct my lump sum payments be made in accordance with the instructions above as, indicated by my signature below:

**Signature of Plaintiff, Personal Representative, or Legal Representative:**

**Print name of Plaintiff:**

**Print name of Personal Representative or Legal Representative, if applicable:**

**Date Signed:** 

MM – DD – YYYY

*(The rest of this page is intentionally left blank.)*

**Questions? Call 1-800-773-7598 or email info@BeiruitLawsuit.com.**

014-CA8519
AA18114 v.06

14

*851900164696*

## Section 7 – Acknowledgments, Agreements, and Release

### Acknowledgments

By signing below, I acknowledge that:

1. I have received this Final Confidential Distribution Authorization Form.

2. The Plaintiffs (the "Beirut Plaintiffs") in the following cases have secured judgments for damages against the Islamic Republic of Iran ("Iran") arising out of the terrorist bombing of the Marine Barracks in Beirut, Lebanon on October 23, 1983: *Peterson, Valore, Bonk, Arnold, Spencer I, Anderson, Murphy, Bland, O'Brien, Davis, Brown, Taylor, Fain, Spencer II, and Worley*[9] (the "October 23, 1983 Beirut Bombing Cases" or individually the "October 23, 1983 Beirut Bombing Case").

3. I am still represented by counsel (the "Attorneys") pursuant to my retainer agreement, with regard to my claims against the Islamic Republic of Iran, et al. ("Iran") arising from or in connection with the October 23, 1983 Beirut Bombing (hereinafter the "Litigation").

4. I have reviewed all sections of this Final Confidential Distribution Authorization Form in detail. I have been provided with ample time to perform that review and ample opportunity to seek advice and counsel and make such inquiries as I deem necessary. I have been encouraged by the Attorneys to ask any questions that I may have regarding the October 23, 1983 Beirut Bombing Cases, the NY Action, the Final Confidential Distribution Authorization Form, the Plaintiff Specific Pre-Final Distribution Amount Information and Authorization (Section 2), the Plaintiff Specific Final Distribution Amount Information and Authorization (Section 3), and all other matters related to the Attorneys' representation of me. At this time, I have no unanswered questions regarding these matters.

### Agreements

By signing below, I also agree and affirm that:

5. To the extent that I represent another individual or entity (such as an estate of a deceased individual or as a representative of an incapacitated individual), I acknowledge that the NY Action's proportionate allocation between and among all October 23, 1983 Beirut Plaintiffs who hold judgments against Iran was consistent with the duties that I owe to that person or entity and was made after consultation with all persons legally entitled to consider that decision.

6. I have advised my Attorneys of all liens, advances, assignments, and/or loans that affect my judgment recovery and indemnify my Attorneys from any future claims that may result from any such liens, advances, assignments, and/or loans.

7. The recovery of each Beirut Plaintiff will be reduced by the amount of the Attorneys' fees and expenses that all Beirut Plaintiffs agreed to pay in their separate retainer agreements with the Attorneys who serve as their lead counsel, as itemized in Section 2 – Plaintiff Specific Pre-Final Distribution Amount Information and Authorization and Section 3 – Plaintiff Specific Final Distribution Amount Information and Authorization.

8. I hereby release and will hold harmless and indemnify the Trustee, the Trustee's Professionals, the Attorneys and Salon Marrow Dyckman Newman & Broudy LLP, Stone Bonner & Rocco LLP, Fleischman Law Firm, and/or Gibson Dunn & Crutcher LLP (collectively with their successors, if any, "Collection Counsel") from any liability concerning any matter arising out of or in connection with payment and/or distribution of sums allocated or paid to me or on my behalf by the Trustee and/or the QSF, including, but not limited to, payments and/or reimbursements of the QSF's expenses, Attorneys' expenses and Attorneys' fees, payments to third-party judgment purchasers, and any tax, tax reporting, or tax filing requirements arising in connection with any such payments, distributions, and/or reimbursements.

---

[9] *Peterson v. Iran,* 01-cv-2094, 01-cv-2684; *Murphy v. Iran,* 06-cv-0596; *O'Brien v. Iran,* 06-cv-0690; *Davis v. Iran,* 07-cv-1302; *Brown v. Iran,* 08-cv-0531; *Taylor v. Iran,* 10-cv-0844; *Fain v. Iran,* 10-cv-0628; *Worley v. Iran,* 12-cv-2069; *Valore v. Iran,* 03-cv-1959, 06-cv-0516, 06-cv-0750, 08-cv-1273; *Bland v. Iran,* 05-cv-2124; *Spencer v. Iran,* 12-cv-0042; *Arnold v. Iran,* 06-cv-516.

**Questions? Call 1-800-773-7598 or email info@BeiruitLawsuit.com.**

15

015-CA8519
AA18115 v.06



Section 7 – Acknowledgments, Agreements, and Release

*851900164696*

9. I have reviewed the calculations set forth in Section 2 – Plaintiff Specific Pre-Final Distribution Amount Information and Authorization and Section 3 – Plaintiff Specific Final Distribution Amount Information and Authorization, and the Attorneys have provided me with adequate disclosures concerning those calculations and the opportunity to ask any questions I may have regarding those calculations.

10. I affirm that those calculations are accurate and accept that the Pre-Final Distribution Amount and Final Distribution Amount reflected in Section 2 – Plaintiff Specific Pre-Final Distribution Amount Information and Authorization and Section 3 – Plaintiff Specific Final Distribution Amount Information and Authorization, together with distributions previously made, are the amounts distributable to me (or the person I represent) from the QSF. In particular, I agree to the payment of all of the Attorneys' fees, litigation, lobbying and collection expenses, QSF administrative fees, Trustee's fees, Trustee's Professionals' fees, the holding of reserves as established by the Trustee (identified in Section 1 – QSF Accounting Overview), and other costs and charges stated in the CDA, the SCDA, Section 2 – Plaintiff Specific Pre-Final Distribution Amount Information and Authorization and Pre-Final Distribution Amount and Section 3 – Plaintiff Specific Final Distribution Amount Information and Authorization.

11. For my benefit and convenience, I direct the Trustee to immediately pay the Attorneys and the Collection Counsel for the legal fees specified in my retainer agreement with the Attorneys in an immediate lump sum and/or as future periodic payments.

12. The signature below is mine, I have the legal authority to sign this document on my behalf or on behalf of the person or entity I represent, and I further represent and warrant the validity of any document I attach hereto.

13. The Trustee and the Attorneys can reasonably rely upon my representations in this Final Confidential Distribution Authorization Form in completing the distribution of the NY Action and of my Pre-Final Distribution Amount and Final Distribution Amount to me or the entity that I represent.

14. The Trustee shall distribute my Pre-Final Distribution Amount and Final Distribution Amount as I have agreed to and authorized herein and in accordance with the elections I have made herein. I acknowledge and understand that this Final Confidential Distribution Authorization Form presents a range of amounts for the Final Distribution Amount and the actual amount distributed may be more or less than the Final Distribution Amount stated in this FCDA.

**Signature of Plaintiff, Personal Representative, or Legal Representative:**

**Print name of Plaintiff:**

**Print name of Personal Representative or Legal Representative, if applicable:**

**Date Signed:**  MM – DD – YYYY

Questions? Call 1-800-773-7598 or email info@BeiruitLawsuit.com.

016-CA8519
AA18116 v.06
16

*851900164696*

## Section 8 – Trustee Release and Indemnity Agreement

This Trustee Release and Indemnity Agreement ("Release") is entered into by and between ███ ███ ("Releasor"), the Peterson Qualified Settlement Fund (the "QSF"), and Kenneth R. Feinberg, its Successor Fund Trustee ("Trustee"). The QSF, former Fund Trustee the Honorable Stanley Sporkin, Successor Fund Trustee Kenneth R. Feinberg, and the Trustees' attorneys, accountants, agents, representatives, employees, affiliates, partners, predecessors, successors in interest, heirs and assigns, and all other persons or entities with whom any of the former have been, are now, or may hereafter be affiliated are collectively referred to as "Released Parties." The Releasor, the QSF, and the Trustee hereby agree as follows:

1. <u>Release and Discharge.</u> In consideration of the payments set in this Final Confidential Distribution Authorization Form, and in further consideration of payments previously made, Releasor hereby completely releases and forever discharges Released Parties from any and all known and unknown, past and present claims, demands, obligations, actions, causes of action, rights, damages, costs, fees, expenses, and compensation of any nature whatsoever, whether based in tort, contract, or other theory, which Releasor now has, or which may hereafter arise relating to *Peterson v. Iran,* Case No. 10 CIV 4518 (S.D.N.Y.), the establishment, management, and operation of the QSF, or the underlying facts, injuries, or deaths that lead up to the actions that eventually culminated in the QSF.

   (a) This Release applies to Released Parties' past, present, and future trustees, attorneys, accountants, agents, representatives, employees, affiliates, partners, predecessors, successors in interest, heirs and assigns, and all other persons or entities with whom any of the former have been, are now, or may hereafter be affiliated.

   (b) This Release is a fully binding and a complete settlement between Releasor and Released Parties, and is binding upon Releasor's heirs, successors, and assigns.

   (c) Releasor acknowledges and agrees that this is a general release. Releasor expressly waives and assumes the risk of any and all claims for damages that exist as of this date, but of which Releasor does not know, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would or could affect Releasor's decision to execute this Release. Releasor is accepting payment of the sums specified herein in complete settlement and compromise of matters involving disputed issues of law and fact. Releasor assumes the risk that facts or law may be other than as Releasor believes. Releasor has an attorney and has consulted with that attorney.

2. <u>Payments.</u> In consideration for this Release, the QSF agrees to pay the amounts specified on this Final Confidential Distribution Authorization Form to the persons and entities identified thereon.

3. <u>No Liability.</u> Releasor acknowledges and agrees that once Released Parties have transferred funds as specified on this Final Confidential Distribution Authorization Form, Released Parties' responsibilities and duties shall end and there shall be no further distributions to Plaintiffs. Released Parties shall not be responsible or liable for any legal, tax, investment, or financial matter, nor for any claim, obligation, damages, liability, expenses, interest, or penalty whatsoever following Released Parties' adherence to the instructions on this Final Confidential Distribution Authorization Form. Releasor shall indemnify, defend (by counsel reasonably acceptable to Released Parties), and hold harmless the Released Parties from and against any claims, damages, losses, and expenses (other than acts of either Trustee's gross negligence or willful misconduct), including, but not limited to, Attorneys' fees arising out of or resulting from Released Parties' adherence to Releasor's instructions in this executed Final Confidential Distribution Authorization Form up to, but not exceeding, the amount actually disbursed to the Releasor.

4. <u>Attorneys' Fees.</u> Except as provided in Paragraph 3, above, each party hereto shall bear all Attorneys' fees and costs arising from the actions of its own counsel in connection with this Release, the matters and documents referred to herein, and in all related matters.

5. <u>Representation of Comprehension of Document.</u> In entering into this Release, Releasor represents that Releasor has relied upon the advice of Releasor's own choice of attorneys concerning all legal and tax consequences of this Release. Releasor fully understands and voluntarily accepts this Release.

6. <u>Warranty of Capacity to Execute Agreement.</u> Releasor represents and warrants that no other person or entity has, or had, any interest in the claims, demands, obligations, actions, causes of action, rights, damages, costs, fees, expenses, and/or compensation referred to in this Release, except as set forth herein; that Releasor has the sole right and exclusive authority to execute this Release and receive the sums specified in it; and that Releasor has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations actions, causes of action, rights, damages, costs, fees, expenses, and/or compensation referred to in this Release, except as set forth herein.

**Questions? Call 1-800-773-7598 or email info@BeiruitLawsuit.com.**

017-CA8519
AA18117 v.06

17



*851900164696*

7. <u>No Release of Defendants.</u> Nothing in this Release should be construed to release Iran or other defendants in *Peterson, Valore, Bonk, Arnold, Spencer I, Anderson, Murphy, Bland, O'Brien, Davis, Brown, Taylor, Fain, Spencer II, and Worley*[10] from liability arising out of the terrorist bombing of the Marine Barracks in Beirut, Lebanon on October 23, 1983.

8. <u>Governing Law.</u> This Release shall be construed and interpreted in accordance with the laws of the state of New York.

9. <u>Additional Documents.</u> All parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions, which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Release.

10. <u>Entire Agreement and Successors in Interest.</u> This Release contains the entire agreement between the Releasor and the Released Parties with regard to the matters set forth in it, and shall be binding upon and inure to the benefit of their executors, administrators, personal representatives, heirs, successors, and assigns.

11. <u>Effectiveness.</u> This Release shall become effective immediately following execution by each of the parties.

IN WITNESS WHEREOF, the parties have executed this Trustee Release and Indemnity Agreement on the dates indicated below.

**RELEASOR:**

**Signature of Plaintiff, Personal Representative, or Legal Representative:**

**Print name of Plaintiff:**

**Print name of Personal Representative or Legal Representative, if applicable:**

**Date Signed:** [  ] [  ] – [  ] [  ] – [  ] [  ] [  ] [  ]
　　　　　　　MM　　　　DD　　　　YYYY

THE PETERSON QUALIFIED SETTLEMENT FUND
By:

*Kenneth R. Feinberg*

Name: Kenneth R. Feinberg, Successor Trustee
Date Signed: May 8th, 2020

SUCCESSOR TRUSTEE
By:

*Kenneth R. Feinberg*

Name: Kenneth R. Feinberg,
Date Signed: May 8th, 2020

---

[10] *Peterson v. Iran*, 01-cv-2094, 01-cv-2684; *Murphy v. Iran*, 06-cv-0596; *O'Brien v. Iran*, 06-cv-0690; *Davis v. Iran*, 07-cv-1302; *Brown v. Iran*, 08-cv-0531; *Taylor v. Iran*, 10-cv-0844; *Fain v. Iran*, 10-cv-0628; *Worley v. Iran*, 12-cv-2069; *Valore v. Iran*, 03-cv-1959, 06-cv-0516, 06-cv-0750, 08-cv-1273; *Bland v. Iran*, 05-cv-2124; *Spencer v. Iran*, 12-cv-0042; *Arnold v. Iran*, 06-cv-516.

**Questions? Call 1-800-773-7598 or email info@BeiruitLawsuit.com.**

018-CA8519
AA18118 v.06

18

*851900164696*

## Exhibit A – Change of Address Form for Changes After Return of FCDA
## Do not return this form with your FCDA. Keep it for future changes of address.

If your address has changed, complete, sign, and mail this form to:

Beirut Lawsuit Distribution Administrator
P.O. Box 4349
Portland, OR 97208-4349

My address has changed. My new address is:

_____

_____

_____

**Signature of Plaintiff, Personal Representative, or Legal Representative:**

**Print name of Plaintiff:**

**Print name of Personal Representative or Legal Representative, if applicable:**

**Date Signed:** ☐☐ – ☐☐ – ☐☐☐☐
MM       DD       YYYY

**Questions? Call 1-800-773-7598 or email info@BeiruitLawsuit.com.**

019-CA8519
AA18119 v.06

19



EXHIBIT 5 (pt. 2)

PETERSON QUALIFIED SETTLEMENT FUND
# Final Confidential Distribution Authorization Form

██████████████████████
████████████████████████████████
███████████████████
███████████████

<div style="border:2px solid red">

**Return by**
**September 11, 2020**

</div>

**Tracking Number:** ██████

Dear ███████████████████████████████████████,

On April 6, 2020, the Court in the matter captioned Peterson v. Iran, Case No. 10-CIV-4518 (S.D.N.Y.) (the "NY Action"), appointed Kenneth R. Feinberg as Successor Trustee of the qualified settlement fund (the "QSF") created by Court order in the NY Action.  References to the "Trustee" in this Final Confidential Distribution Authorization Form (the "FCDA") shall mean Kenneth R. Feinberg and/or former Fund Trustee the Honorable Stanley Sporkin, as appropriate.

The Trustee is prepared to proceed with the distribution of the remaining assets of the QSF.  Pursuant to a Motion filed by the Trustee, on February 28, 2020 the Court entered an Order governing the distribution of the remaining assets and the termination of the QSF.  The Order contains detailed procedures governing distributions from the QSF and related actions to be taken by the Trustee.  This FCDA contains important disclosures and acknowledgments regarding the remainder of the funds to be distributed by the QSF and is qualified by the Motion and the Order, which are available from your Attorneys (see Section 8, Paragraph 2).  The Trustee recommends that you obtain and review the Motion and Order, and that you also discuss any questions you may have with your attorneys. [537]

The QSF will be making a Pre-Final Distribution payment.  We anticipate that there will also be a small Final Distribution payment before the QSF is terminated. After these payments are made, there will be no further payments made by the QSF to you.  In order to receive your payments, you must return a properly completed FCDA in accordance with the instructions contained herein.  The exact amount of the Final Distribution payment is not known at this time.

<div style="border:2px solid green">

**YOUR PRE-FINAL DISTRIBUTION AMOUNT THAT IS BEING PAID TO YOU IS**
$33,306.29.
**The calculation of this amount can be found in Section 2 of this FCDA.**

**AN ESTIMATE OF YOUR FINAL DISTRIBUTION AMOUNT is set forth in Section 3 of this FCDA.**

</div>

**In order to receive your payments, you must complete the required sections, sign and return this FCDA to the Distribution Administrator at the following address:**

> Peterson QSF Distribution Administrator
> PO Box 4349
> Portland, OR 97208-4349

A postage prepaid envelope is enclosed for your convenience.

---

[537] The Trustee has relied on Plaintiffs' Attorneys for information relevant to each Plaintiff involved in this litigation including, but not limited to, judgments, liens (to the best of such attorneys' knowledge), engagement/retainer agreements, attorneys' fees and expenses of the litigation in accordance with the agreements between and among the Plaintiffs, as well as other information that may affect the Trustee's calculations.  The Trustee and the Trustee's Professionals do not take any position on and make no representations concerning the agreements between the respective Plaintiffs and their attorneys, including any agreements that are required by the Plaintiffs' attorneys in this FCDA.

**Questions?  Call 1-800-773-7598.**

| Section Number | Title | Must I Complete This Section? |
|---|---|---|
| 1 | QSF Accounting Overview | No. |
| 2 | Plaintiff Specific Pre-Final Distribution Amount Information and Authorization | Yes. |
| 3 | Plaintiff Specific Final Distribution Amount Information and Authorization | Yes. |
| 4 | Designated Distribution Agent | Yes |
| 5 | Distribution Election | Yes. <br><br> 🛑 **IF YOU CHOOSE TO BE PAID BY THE STRUCTURED SETTLEMENT OPTION, YOU MUST RETURN SECTION 5 BY NO LATER THAN SEPTEMBER 7, 2020** |
| 6 | Lump Sum Payment Information | Yes, unless you are electing to receive all of your distributions pursuant to the structured settlement option. |
| 7 | Structured Settlement Option | Only if you choose to receive your Pre-Final Distribution Amount and/or Final Distribution Amount pursuant to the structured settlement option. <br><br> 🛑 **DO NOT COMPLETE OR RETURN THIS FCDA UNTIL ADVISED BY YOUR STRUCTURED SETTLEMENT BROKER.** |
| 8 | Acknowledgments, Agreements & Release | Yes. |
| 9 | Trustee Release & Indemnity Agreement | Yes. |
| 10 | Certification of Counsel | No, your attorney must complete this. |
| Exhibit A | Change of Address | Please keep Exhibit A and return it to us if your address changes after you complete and return the FCDA. |
| Exhibit B | Structured Settlement Documents | Only if you choose to receive your payment as a structured settlement. |

If you have any questions regarding how to complete this FCDA, please contact the Distribution Administrator at 1-800-773-7598 or at info@BeirutLitigation.com.  If you have any questions regarding the meaning or contents of the FCDA, please contact your attorney.

**Questions?  Call 1-800-773-7598.**

 **IF YOU WISH TO BE PAID USING THE STRUCTURED SETTLEMENT OPTION (AS DESCRIBED IN SECTION 7) IN FULL OR IN PART,**

**A. BY NO LATER THAN SEPTEMBER 7, 2020 YOU MUST RETURN SECTION 5 OF THIS FINAL CONFIDENTIAL DISTRIBUTION AUTHORIZATION FORM; and**

**B. EXCEPT FOR SECTION 5, YOU MUST NOT COMPLETE OR RETURN THIS FINAL CONFIDENTIAL DISTRIBUTION AUTHORIZATION FORM UNTIL ADVISED TO DO SO BY YOUR STRUCTURED SETTLEMENT BROKER.**

The QSF's appointed structured settlement broker, or a structured settlement broker of your choice, will help you assemble the paperwork necessary to elect the Structured Settlement Option.  If you choose to work with a structured settlement broker, other than the QSF's appointed structured settlement broker, your chosen structured settlement broker should contact:

> The Settlement Solutions Group
> UBS Financial Services Inc.
> 1285 Avenue of the Americas, 16th Floor
> New York, NY  10019
> Telephone: 1-877-827-8001
> Email: settlementsolutions@ubs.com

The Structured Settlement Option will include additional documents that will be submitted with your Final Confidential Distribution Authorization Form.

**If you do not return Section 5, indicating that you want a structured settlement, by September 7, 2020, the Distribution Administrator may consider that you have accepted that your Pre-Final Distribution Amount and Final Distribution Amount will be paid in lump sums and you do NOT want a structured settlement.**

Please be advised that the Trustee and his attorneys, accountants, agents, and other professionals, including but not limited to the Distribution Administrator (collectively the "Trustee's Professionals"), do not represent you (or, if you are a representative, the Plaintiff you represent) in any capacity, and will not provide you (or, if you are a representative, the Plaintiff you represent) with any legal, financial, estate/probate, tax or any other form of advice in connection with these distributions. and you (or, if you are a representative, the Plaintiff you represent) may not rely on the Trustee and/or the Trustee's Professionals to provide advice on such matters. You are advised to consult with a private tax attorney, probate attorney, certified public accountant, actuary or such other licensed professional with specialized knowledge of tax, income-based government assistance, probate/estate and/or investment matters as you deem appropriate concerning the distributions referenced in the FCDA.

Sincerely,

Peterson QSF Distribution Administrator

**Questions?  Call 1-800-773-7598.**

82768220v.14

# Section 1 – QSF Accounting Overview

The information below provides an overview of the QSF's receipts, disbursements and reserves in connection with the current pre-final distribution and the pending final distribution, insofar as the groups of Plaintiffs in the following cases are concerned:  *Greenbaum; Acosta; Rubin; Heiser; Levin; Kirschenbaum; and Beer*.[538]  Certain of the terms in this chart that may not be self-explanatory are explained below the chart.  Because the QSF continues to receive income on its undistributed funds and to incur expenses, the income, expense and amounts available for the Final Distribution are estimates and the actual amounts may vary from those presented here.  Certain categories in the table below are explained in greater detail after the tables below.

| **PRE-FINAL DISTRIBUTION CALCULATION[539]** | |
|---|---|
| Amount of Initial Deposit into QSF Allocated to Plaintiffs & Plaintiffs' Attorneys | $244,650,790 |
| Plus: Income earned by QSF through 2/29/2020 and Allocated to Plaintiffs & Plaintiffs' Attorneys | $2,146,533 |
| Minus: Plaintiffs' & Plaintiffs' Attorneys' Share of QSF Expenses through 2/29/2020 | $2,623,110 |
| Minus: Reserve Retained for Contingencies | $1,808,714 |
| Minus: Reserve for Anticipated Expenses of Pre-Final Distribution | $193,601 |
| Equals: Distribution Amount Before Expenses and Credits Shown Below | $242,171,898 |
| Minus: Amounts Allocated to Plaintiffs in Prior Distributions | $237,639,352 |
| Equals: Amount Available for Distribution to Plaintiffs & Plaintiffs' Attorneys in Pre-Final Distribution Before Expenses and Credits Shown Below | $4,532,546 |
| Plus: Funds Recovered by the Trustee from Citibank, Allocable to Plaintiffs Only (Not to Plaintiffs' Attorneys) | $136,581 |
| Equals: Amount Available for Distribution to Plaintiffs through Pre-Final Distribution | $4,669,126 |
| Minus: West & Feinberg Fees Deducted from Plaintiffs' Attorneys Only | $5,235 |
| Equals: Current Distribution to Plaintiffs & Plaintiffs' Attorneys for Pre-Final Distribution | $4,663,892 |

---

[538] *Greenbaum, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 02-2148 (RCL) (D.D.C.); *Acosta et al. v. Islamic Republic of Iran, et al.*, Civil Action No.  06-745 (RCL) (D.D.C.); *Rubin, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 01-1655 (RCL (D.D.C.); *Estate of Heiser, et al. v. Islamic Republic of Iran, et al.*, Civil Action Nos. 00-02329 and 01-02104 (RCL) (D.D.C.);  *Levin, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 05-02494 (GK) (D.D.C.) *Kirschenbaum, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 08-01814 (RCL) (D.D.C.); and *Beer, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 1:08-CV-01807 (RCL) (D.D.C.).

[539] The amounts in the charts in Sections 1, 2 and 3 are amounts allocated to the Plaintiffs in all cases noted above.  They do not include amounts allocated to other claimants as the result of certain settlements that Plaintiffs made.

**Amount of Initial Deposit into QSF Allocated to Plaintiffs & Plaintiffs' Attorneys** – This is the portion of the amount recovered from assets of Iran and deposited into the QSF in 2013 that was allocated to Plaintiffs in all cases noted above.  It does not include amounts that were allocated to other claimants as the result of certain settlements that Plaintiffs made.

**Reserve Retained for Contingencies** and **Reserve for Anticipated Expenses of Pre-Final Distribution** - These amounts are being withheld from the Pre-Final Distribution as a reserve for anticipated expenses of the QSF, the Trustee and the Trustee's Professionals and as a reserve in an amount the Trustee has determined is necessary to cover any potential or unanticipated liabilities and obligations arising from potential disputes as to expenses, liens, fees or judgments.  To the extent these reserves are not used and are no longer needed, they will be disbursed to Plaintiffs and their attorneys, as appropriate, as part of the Final Distribution.

**Funds Recovered by the Trustee from Citibank, Allocable to Plaintiffs Only** – This is an amount recovered from Citibank in settlement of the Trustee's claim that Citibank improperly withheld funds from its 2013 deposit into the QSF.

**Amount Available for Distribution to Plaintiffs through Pre-Final Distribution** – This is the total amount that the Trustee has made available for distribution to Plaintiffs.

| ESTIMATED FINAL DISTRIBUTION RANGE | LOWER END OF DISTRIBUTION RANGE | UPPER END OF DISTRIBUTION RANGE |
|---|---|---|
| Estimated QSF Expenses for Final Distribution through termination of the QSF | $1,184,277 | $133,500 |
| Estimated Amount Available for Distribution from Inception through Final Distribution to Plaintiffs & Plaintiffs' Attorneys | $242,932,916 | $243,983,692 |
| Minus: Amount Allocated and/or Paid in Prior Distributions including Pre-Final Distribution | $242,308,479 | $242,308,479 |
| Equals: Estimated Range of Final Distribution Amount Available for Distribution to Plaintiffs & Plaintiffs' Attorneys | $624,437 | $1,675,214 |

**Questions?  Call 1-800-773-7598.**

82768220v.14

# Section 2 - Plaintiff Specific Pre-Final Distribution Amount Information and Authorization

Below is a table of pro rata shares based on the agreements contained in the June 1, 2012 Litigation Cooperation and Settlement Agreement (the "Cooperation Agreement").[540]  The table includes percentages for the Plaintiffs identified in Section 1 of this FCDA and a percentage for the Peterson Plaintiffs who are not covered in Section 1. These percentages together with the amount of your judgment have been used to calculate your individual distributions pursuant to the terms of the Cooperation Agreement.  You are a Heiser Plaintiff.

| Creditor Plaintiff | Percentage of Total Distribution |
|---|---|
| Peterson Plaintiffs | 71.0392905144694% |
| Greenbaum Plaintiffs | 0.531509592940952% |
| Acosta Plaintiffs | 1.34145925063991% |
| Rubin Plaintiffs | 1.91171044448603% |
| Heiser Plaintiffs | 7.64924721769027% |
| Levin Plaintiffs | 0.770238004113549% |
| Valore Plaintiffs | 7.761573601645540% |
| Kirschenbaum Plaintiffs | 0.367636623939622% |
| Beer Plaintiffs | 0.347583717179279% |
| Murphy Plaintiffs | 0.851996405433578% |
| Bland Plaintiffs | 7.4277546274619% |

The chart below shows the calculation of your specific Pre-Final Distribution Amount, to be paid to you at this time.  It is important that you review this chart for accuracy, and that you (or the Legal Representative) sign below to acknowledge its accuracy.

| | |
|---|---|
| Amount Available for Distribution to Plaintiffs and Plaintiffs' Attorneys from Inception through Pre-Final Distribution | $242,308,479 |
| Plaintiff's Share of Amount Available for Distribution to Plaintiffs and Plaintiffs' Attorneys from Inception through Pre-Final Distribution[541] | $2,505,924.52 |
| Minus: Plaintiff's Attorneys' Fee Payable to DLA Piper from Distributions Prior to Pre-Final Distribution | $368,853.46 |
| Minus: Amount Payable from Distributions Prior to Pre-Final Distribution to American Center for Civil Justice, Inc. ("ACCJ") pursuant to Court Orders[542] | $418,033.92 |
| Minus: Amounts Allocated and/or Paid to Plaintiff in Distributions Prior to Pre-Final Distribution | $1,672,135.68 |
| Equals: Plaintiff's, ACCJ's and Plaintiff's Attorneys' Share of Amount Available for Distribution in Pre-Final Distribution | $46,901.47 |

[540] The percentages above vary slightly from the percentages stated in the Cooperation Agreement.  As explained in the initial disbursement authorization form previously provided to you, the percentages stated in the Cooperation Agreement were subsequently adjusted to correct a miscalculation, as allowed by the Cooperation Agreement.
[541] This amount is before the Citibank recovery is added and the West & Feinberg fees are deducted.
[542] According to agreements between the Plaintiffs and ACCJ provided to the Trustee by Plaintiffs' Attorneys, ACCJ agreed to assist the Plaintiffs in prosecuting their claims against Iran, including engaging DLA Piper as Plaintiffs' Attorneys, in return for which the Plaintiffs agreed to pay ACCJ a certain percentage of their recoveries and to pay DLA Piper a certain percentage of such recoveries as attorneys' fees.

**Questions?  Call 1-800-773-7598.**

| | |
|---|---|
| <u>Minus</u>: Plaintiff's Attorneys' Fee Payable to DLA Piper to be Paid in Pre-Final Distribution | $7,035.22 |
| <u>Minus</u>: Amount Payable in Pre-Final Distribution to ACCJ pursuant to Court Orders | $7,973.25 |
| <u>Plus</u>: Plaintiff's Share of Citibank Recovery Allocable Only to Plaintiffs | $1,413.30 |
| <u>Equals</u>: Plaintiff's Share of Amount Available for Distribution in Pre-Final Distribution after Deduction of Plaintiff's Attorneys' Fee and Amounts Payable to ACCJ ("**Pre-Final Distribution Amount**") | $33,306.29 |
| *Note: DLA Piper fees shown above will be reduced by the amount shown below*: | |
| Share of West & Feinberg Fees Deductible from Plaintiffs' Attorneys Only | $54.17 |

I certify that I have reviewed the above itemized calculations of funds presently available for distribution to me from the QSF.  I understand that the funds that will be disbursed will be in partial satisfaction of my judgment against the Islamic Republic of Iran.  I do hereby approve each amount set forth above, which I confirm has been fully explained to me prior to my execution of this FCDA.  I release the QSF, the Trustee and the Trustee's Professionals from any claims concerning such calculations.  I confirm the engagement of my Attorneys and I acknowledge that my Attorneys may receive their attorneys' fees as an immediate lump sum and/or future periodic payments.

The previous distribution authorization forms that were submitted by me (and, if I am a Legal Representative, any previous distribution authorization forms that were submitted on behalf of the person whom I represent) remain in full force and effect and all releases, affirmations, acknowledgements and information contained therein remain true and valid for the purpose of this FCDA and the Pre-Final Distribution being made from the QSF and will remain true and valid for the Final Distribution to be made from the QSF.  I will notify the Distribution Administrator immediately should there be a change in any information previously provided to the Distribution Administrator and/or the Trustee. I will promptly notify the Distribution Administrator if my address changes.  (A Change of Address Form for my future use is included with this FCDA as Exhibit A.)

I have been advised that I could receive any Pre-Final Distribution Amount and/or Final Distribution Amount that is to be paid to me in the form of a structured settlement or a lump sum cash payment.  If I choose to receive any payment in the form of a structured settlement, I acknowledge that I must complete and return Section 5 of the FCDA to the Distribution Administrator on or before September 7, 2020.  I understand that if I do not complete and return Section 5 to the Distribution Administrator on or before September 7, 2020 the Trustee will assume that I have chosen to receive all my funds as immediate lump sum cash payments and not over time in the form of structured settlement payments.

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

**Questions?  Call 1-800-773-7598.**

7

## Section 3 – Plaintiff Specific Final Distribution Amount Information and Authorization

The chart below shows the calculation of the anticipated range of the Final Distribution Amount that may be paid to you at a later date.  All amounts presented here are estimates, and it is possible that the actual amount distributed will be outside of the range presented here.

| | LOWER END OF DISTRIBUTION RANGE | UPPER END OF DISTRIBUTION RANGE |
|---|---|---|
| Estimated Range of Amount Available for Distribution to Plaintiffs, ACCJ and Plaintiffs' Attorneys from Inception through Final Distribution | $242,932,916 | $243,983,692 |
| Estimated Range of Plaintiff's, ACCJ's and Plaintiff's Attorneys' Share of Amount Available for Distribution to Plaintiffs, ACCJ and Plaintiffs' Attorneys from Inception through Final Distribution | $2,513,799.31 | $2,524,672.44 |
| Minus: Plaintiff's Attorneys' Fee Payable to DLA Piper from Distributions Prior to Final Distribution | $375,888.68 | $375,888.68 |
| Minus: Estimated Range of Plaintiff's Attorneys' Fee Payable to DLA Piper in Final Distribution | $969.22 | $2,600.19 |
| Minus: Amount Payable from Distributions Prior to Final Distribution to ACCJ pursuant to Court Orders[543] | $426,007.17 | $426,007.17 |
| Minus: Estimated Range of Amount Payable in Final Distribution to ACCJ pursuant to Court Orders | $1,098.45 | $2,946.89 |
| Equals: Estimated Range of Plaintiff's Share of Amount Available for Distribution from Inception through Final Distribution after Deduction of Plaintiff's Attorneys' Fee and Amounts Payable to ACCJ | $1,709,835.78 | $1,717,229.51 |
| Minus: Amounts Allocated to Plaintiff in Distributions Prior to Final Distribution | $1,705,441.97 | $1,705,441.97 |
| Equals: Estimated Range of Plaintiff's **Final Distribution Amount** | $4,393.81 | $11,787.54 |

I certify that I have reviewed and hereby approve the above estimate of my Final Distribution Amount.  I acknowledge that the amounts presented here are estimates and the actual amount distributed may be higher or lower than the range presented here.  I confirm that each amount set forth in the calculation was fully explained to me, or that I had the opportunity to have the calculations fully explained to me, before I signed this FCDA.  I release the QSF, the Trustee and the Trustee's Professionals from any claims concerning such calculation.

I further acknowledge and agree that all provisions of Section 2, Plaintiff Specific Final Distribution Amount Information and Authorization apply to this Section 3 and will remain true and valid for the Final Distribution to be made from the QSF.

I understand I will not receive another disbursement authorization form before receiving my Final Distribution Amount and that the Final Distribution Amount will be the final distribution made to me by the QSF.  I will

---

[543] See footnote 6 above.

**Questions?  Call 1-800-773-7598.**

promptly notify the Distribution Administrator if my address changes. (A Change of Address Form for my future use is included with this FCDA as Exhibit A.)

I have read and agree to this Section 3, Plaintiff Final Distribution Amount Information and Authorization, as indicated by my signature below:

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

82768220v.14

# Section 4 –Designated Distribution Agent

Some previous distributions to certain Plaintiffs have been delayed as a result of individual issues and legal impediments pertaining to those Plaintiffs, such as incomplete confidential disbursement authorization forms, estate issues, bankruptcies and certain disputes.  The Trustee has been able to resolve most of these issues with respect to previous distributions.  The Trustee would like to avoid any delay in the termination of the QSF and distribution of the Pre-Final and Final Distribution Amounts that may arise as a result of any such issues and impediments.

The Court in the NY Action has authorized the Trustee, if he determines that any such individual issues or legal impediments may delay completion of distributions or cause the QSF to incur additional expense on account of such individual issues or legal impediments, (i) to transfer such distributions to another person who will be able to assist in resolving the issues or legal impediments, or (ii) to transfer such distributions to the registry of a court, or (iii) to take such other action as the Court may authorize or to which the parties may agree.  The Court has ordered that once the Trustee has transferred such distributions to such a person, or to the attorney for a Plaintiff or another party in the Litigation, or to the registry of a court, the Trustee and the QSF will be relieved of any and all further liability and/or responsibility as to such distribution.

You may, should you so choose, designate your Attorneys (see Section 8, Paragraph 2), another attorney, an escrow agent, a trust company or another legally qualified person or company to hold your distribution pending resolution of any such issues or legal impediments (the "Designated Distribution Agent") and authorize the Trustee to transfer your Pre-Final Distribution Amount, Final Distribution Amount and/or any other payment or distribution to your selected Designated Distribution Agent in the event that the Trustee determines, in the Trustee's discretion, that any individual issue or legal impediment or other circumstance prevents or delays the Trustee from promptly remitting any such amount, payment or distribution to you or for your benefit or will cause the QSF additional expense.  **If you do not designate anyone, the Trustee may consider your Attorneys to be your Designated Distribution Agent, and, at the Trustee's option, the Trustee will either transfer such amount, payment or distribution to your Attorneys or deposit such amount, payment or distribution in the registry of the Court pending resolution of any issues that may prevent the Trustee from completing the transfer or payment of such amount, payment or distribution.**

If you choose to designate someone other than your Attorneys, please first confirm with such attorney, escrow agent, trust company or other legally qualified person or company that he, she or it is qualified, willing and able to serve in this capacity and agrees to do so.  The Trustee recommends that you discuss your choice with your Attorneys.  Your selected Designated Distribution Agent cannot be your relative or employee and must be located in the United States.  Please note that if you choose someone as your Designated Distribution Agent and that person or company is unable or unwilling to serve in that capacity, or the Trustee, at his discretion, determines that your selected Designated Distribution Agent cannot serve in that capacity, the Trustee is authorized to and will deliver your payment or distribution to your Attorneys or deposit such payment or distribution in the registry of the Court pending resolution of any issues that may prevent the Trustee from completing the transfer or payment of such payment or distribution.

If you choose to designate a Designated Distribution Agent, including your Attorneys, complete Part A below, sign and date where indicated below, and return this Section 4 to the Distribution Administrator.  If you choose not to designate a Designated Distribution Agent, complete Part B below, sign and date where indicated below, and return it to the Distribution Administrator.

PART A: _____ (check here).  I HEREBY DESIGNATE the following attorney, firm, company or other person to be my Designated Distribution Agent and authorize the QSF and the Trustee to transfer to my Designated Distribution Agent such amounts that may be distributable to me or for my benefit in the event the Trustee determines, in the Trustee's discretion, that a legal impediment or another circumstance has arisen that may prevent or delay the QSF and/or the Trustee from promptly remitting such amounts to me or for my benefit.  I

**Questions?  Call 1-800-773-7598.**

understand and agree that once the QSF and/or the Trustee has done so, the Trustee and the QSF will be relieved of any and all further liability and/or responsibility for such amounts.

Designated Distribution Agent:  Name: _____

Firm or Company: _____

Address: _____

Telephone: _____

Email: _____

I ACKNOWLEDGE that my Designated Distribution Agent is not my relative or employee, I have shown this Section 4 – Designated Distribution Agent to my Designated Distribution Agent, and my Designated Distribution Agent has confirmed that he, she or it is qualified, willing and able to serve and agrees to serve in the capacity described in this Section 4 and to hold any amount, payment or distribution received by him, her or it in trust pending resolution of the issues that prevented or delayed the Trustee from promptly remitting such amount to me or for my benefit.

PART B:  _____  (check here).  I choose <u>not</u> to designate a Designated Distribution Agent.

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

## Section 5 – Distribution Election

You have the option of receiving your Pre-Final Distribution Amount and/or your Final Distribution Amount in a lump sum cash payment, in the form of a structured settlement, or in a combination of those methods.  Please indicate below which payment option you choose by checking the appropriate box.

Pre-Final Distribution Amount:

_____ I wish to receive my Pre-Final Distribution Amount in a lump sum cash payment.  I have been advised that I can receive my distribution in the form of a structured settlement and have chosen to receive all my funds as an immediate cash payment.  I have completed Section 6, Lump Sum Payment Information, directing the Trustee how to disburse the payment.

_____ I wish to receive my entire Pre-Final Distribution Amount in the form of a structured settlement.  I will complete Section 7, Structured Settlement Option, providing the Trustee with the required broker information.

_____ I wish to receive $_____ of my Pre-Final Distribution Amount in the form of a cash payment and $_____ of my Pre-Final Distribution Amount to be allocated to a structured settlement.  I have completed Section 6, Lump Sum Payment Information, directing the Trustee how to disburse the cash portion of that payment and will complete Section 7, Structured Settlement Option, providing the Trustee with the required broker information.

Final Distribution Amount:

_____ I wish to receive my Final Distribution Amount in a lump sum cash payment.  I have been advised that I could receive my distribution in the form of a structured settlement and have chosen to receive all my funds as an immediate cash payment.  I have completed Section 6, Lump Sum Payment Information, directing the Trustee how to disburse the payment.

_____ I wish to receive my entire Final Distribution Amount in the form of a structured settlement.  I will complete Section 7, Structured Settlement Option, providing the Trustee with the required broker information.

**IF YOU CHOOSE TO BE PAID USING THE STRUCTURED SETTLEMENT OPTION, IN FULL OR IN PART, YOU MUST COMPLETE AND RETURN THIS SECTION 5 TO THE BEIRUT LAWSUIT DISTRIBUTION ADMINISTRATOR BY NO LATER THAN SEPTEMBER 7, 2020.**

I have selected my payment option above and agree to this Section 5, Election, as indicated by my signature below:

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

**Questions?  Call 1-800-773-7598.**

82768220v.14

## Section 6 –Lump Sum Payment Information

**You have chosen to receive your Distribution Amount(s) as cash payment(s).**

**Unless you provide new payment information, the Trustee will make any payments due to you in the same manner as was done with the most recent payment.  For example, if in the case of an estate the most recent payment was sent to an estate attorney's escrow account, unless you provide new payment information, future payments will be made to the estate attorney's escrow account.**

**If you do not wish to change the manner in which payments are made, you do not need to complete Part A or Part B.  Instead, please check here _____ and sign at the bottom of this form.**

**If you want to change the payee or the address to which payments are sent, please complete either Part A or Part B and sign at the bottom of this form.**

Part A.  If you would like to receive your payments in the form of checks made payable to yourself or, if you represent an estate, to such estate, please use this section:

____ (check here) I would like to receive my payments in the form of checks made payable to me or, if I am the Representative of an estate, made payable to the estate.  Checks should be made payable as follows and should be mailed to the following address:

Make check payable to: _____

Mail check to: _____

_____

Part B.  If you would like to receive your payments in the form of checks made payable to an individual or entity other than yourself or the estate for which you are the Representative, please contact the Distribution Administrator to learn what additional documentation will be required, and please use this section:

____ (check here) I would like to receive my payments in the form of checks made payable to an individual or entity other than myself or the estate for which I am the Representative. **I am enclosing government identification and legal documentation, trust documentation or other documentation authorizing me to provide this payment instruction.**

Make check payable to: _____

Mail check to: _____

_____

I authorize and direct my lump sum payment be made in accordance with the instructions above as indicated by my signature below. I understand that additional documentation or identification may be required to confirm payment directions if payment is to be directed to a payee other than myself or the Plaintiff that I represent.  I agree to provide such documentation or identification if requested by the Trustee or the Distribution Administrator.

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

**Questions?  Call 1-800-773-7598.**

## Section 7 – Structured Settlement Option

🛑 *Only complete this section if you are getting a structured settlement and when advised by your structured settlement broker.*

### Structured Settlement Information

You may receive some or all of your Pre-Final Distribution Amount and/or Final Distribution Amount as future periodic payments through the use of a structured settlement. A structured settlement is often used by claimants at the resolution of a lawsuit to protect their money and maximize its value going forward.

If you would like more information on structured settlements and why they may or may not be beneficial for you, please consult with a structured settlement broker. It is important that you review this option now as there are critical timing requirements with respect to structured settlements. ***If you would like to utilize a structured settlement for some or all of your distribution, you must elect this option <u>prior</u> to the time you receive any of your funds***.

**If you would like to receive any of your payments as structured settlements, you must notify the Distribution Administrator no later than SEPTEMBER 7, 2020.**

Please note that only specially licensed structured settlement brokers can provide structured settlement services. It is your choice as to the broker you choose to use. These brokers can help you design a future periodic payment plan that best meets your individual needs. The Trustee has appointed the Settlement Solutions Group of UBS as the structured settlement broker on behalf of the QSF. The Settlement Solutions Group of UBS will assemble the paperwork necessary for you to implement a structured settlement and send all documentation to the Distribution Administrator.

Please note that you are not required to use the Settlement Solutions Group of UBS as your structured settlement broker. You may work with any licensed structured settlement broker that you choose. If you choose to work with another broker, please have your broker contact:

> The Settlement Solutions Group
> UBS Financial Services Inc.
> 1285 Avenue of the Americas, 16th Floor
> New York, NY 10019
> Telephone: 1-877-827-8001
> Email: settlementsolutions@ubs.com

### Structured Settlement Acknowledgement and Contact Information

I confirm and acknowledge that I may receive some or all of my Pre-Final Distribution Amount and/or Final Distribution Amount as future periodic payments through the use of structured settlements. I have been advised that I may consult with the Settlement Solutions Group of UBS or any other structured settlement broker that I choose regarding a specific payment plan for my needs. I have also been advised that I should consult with my own attorneys, accountants and investment advisors regarding my distribution decisions. I designate the following broker as my structured settlement broker:

Broker Name: _____

Company: _____

Address: _____

_____

Telephone: _____

Email: _____

**Questions?  Call 1-800-773-7598.**

I have attached my required structured settlement documents as Exhibit B and these documents are incorporated into this FCDA as indicated by my signature below:

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

## Section 8 – Acknowledgments, Agreements & Release

By signing this Section 8, I acknowledge that:

1. I have received the FCDA.

2. I hereby affirm that I am represented by the following attorney(s) with regards to my claims against the Islamic Republic of Iran, et. al. ("Iran") in the matter known as *Estate of Heiser, et al. v. Islamic Republic of Iran, et al.*, (hereinafter "Litigation"): DLA PIPER(collectively, the "Attorneys").

3. I confirm and acknowledge that I may receive some or all of my distribution amounts as future periodic payments through the use of structured settlements. I have been advised that I may consult with the Trustee's appointed Structured Settlement Broker, the Settlement Solutions Group at UBS, or any other structured settlement broker that I choose regarding a specific payment plan for my needs. I have also been advised that I should consult with my own attorneys, accountants and investment advisors regarding my distribution decisions.

4. The Attorneys may have retained law firms to assist the Attorneys in their efforts to obtain recovery of the funds that were deposited in the QSF ("Collection Counsel").

5. Aside from the Attorneys and Collection Counsel, I am not aware of any other attorneys who have represented me with regard to pursuing, recovering, or collecting my judgment.

6. The distributions that the Attorneys, Collection Counsel, ACCJ and I receive from the QSF represent only a partial recovery of the damages awarded in my judgment. Any other claims I have asserted or may assert that involve the same injuries and same judgment at issue in the NY Action may be subject to reduction or offset by an amount equal to all or some part of my share of the recovery obtained in the NY Action.

7. I have reviewed the FCDA in detail. I have been provided with ample time to perform that review and ample opportunity to seek advice, counsel and make such inquiries as I deem necessary. I have been encouraged by the Attorneys to ask any questions that I may have regarding the foregoing, and all other matters related to the Attorneys' representation of me. At this time, I have no unanswered questions regarding those matters.

### **Agreements**

By signing below, I also agree and affirm that:

8. I certify that I have advised my Attorneys of all liens, advances, assignments and/or loans that affect my judgment recovery and indemnify my Attorneys from any future claims that may result from any such liens, advances, assignments and/or loans.

9. I certify that I am not currently in bankruptcy and have not been in bankruptcy and that I do not know of any liens that might affect my rights under my judgment. If I am a Legal Representative, I certify that the person for whom I am Legal Representative has not been in bankruptcy and that I do not know of any liens against such person's judgment.

10. I hereby release and will hold harmless and indemnify the Trustee and the Trustee's Professionals from any liability concerning any matter arising out of or in connection with any tax, tax reporting or tax filing requirements applicable to the payment and or distribution of all sums allocated to me or on my behalf from the QSF.

**Questions?  Call 1-800-773-7598.**

11. I acknowledge and confirm that the QSF, the Trustee and the Trustee's Professionals do not represent me in this matter and have not provided me with any advice regarding the distributions made by the Trustee and/or the QSF, including advice regarding taxation, financial planning, probate/estate issues, legal advice, or income based government assistance; and that I have either engaged other attorneys or financial advisors to provide me with consultation or advice as to all tax and financial matters or have made the decision not to do so notwithstanding the advice I have received to obtain tax and financial advice from advisors of my own choosing.

12. For my benefit and convenience, I direct the Trustee to immediately pay DLA Piper for the legal fees specified in my retainer agreement with DLA Piper and to pay ACCJ for the amounts specified in my agreement with it.  I acknowledge that my Attorneys may elect to take their attorneys' fees as either an immediate lump sum and/or future periodic payments.

13. The signature below is mine, and I have the legal authority and am competent to sign this document on my behalf or on behalf of the person or entity I represent.  If I am a legal representative, my authority has not expired or been revoked.  If I have not previously provided documents showing my authority to act and a copy of my government-issued identification to the Distribution Administrator, **I am attaching such documents to this FCDA and warrant the validity of all documents that I submit.**

14. I understand that the Trustee and the Attorneys have relied, and will continue to rely upon, information that I provide.  The Trustee and the Attorneys can reasonably rely upon my representations in this FCDA.

15. I acknowledge that this FCDA presents a range of amounts for the Final Distribution Amount payable to me and the actual amount distributed may be more or less than the Final Distribution Amount stated in this FCDA.

In accordance with the payment election I have made herein, the Trustee shall distribute the Pre-Final Distribution Amount and Final Distribution Amount as I have agreed to herein.

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

**Questions?  Call 1-800-773-7598.**

## Section 9 – Trustee Release & Indemnity Agreement

This Trustee Release and Indemnity Agreement ("Release") is entered into by and between ████████████ ("Releasor"), the Peterson Qualified Settlement Fund (the "QSF"), and Kenneth R. Feinberg, its Successor Fund Trustee ("Trustee"). The QSF, former Fund Trustee the Honorable Stanley Sporkin, Successor Fund Trustee Kenneth R. Feinberg, and the Trustees' attorneys, accountants, agents, representatives, employees, affiliates, partners, predecessors, successors in interest, heirs and assigns, and all other persons, or entities with whom any of the former have been, are now, or may hereafter be affiliated are collectively referred to as "Released Parties." The Releasor, the QSF and the Trustee hereby agree as follows:

1. <u>Release and Discharge</u>. In consideration of the payments set forth in this FCDA, and in further consideration of payments previously made, Releasor hereby completely releases and forever discharges Released Parties from any and all known and unknown, past and present claims, demands, obligations, actions, causes of action, rights, damages, costs, fees, expenses, and compensation of any nature whatsoever, whether based in tort, contract, or other theory, which Releasor now has, or which may hereafter arise relating to *Peterson v. Iran*, Case No. 10 CIV 4518 (S.D.N.Y.), the establishment, management and operation of the QSF, or the underlying facts, injuries or deaths that led up to the actions that eventually culminated in the QSF.

   (a) This Release applies to Released Parties' past, present, and future trustees, attorneys, accountants, agents, representatives, employees, affiliates, partners, predecessors, and successors in interest, heirs and assigns, and all other persons, or entities with whom any of the former have been, are now, or may hereafter be affiliated.

   (b) This Release is a fully binding and a complete settlement among Releasor and Released Parties, and is binding upon Releasor's heirs, successors and assigns.

   (c) Releasor acknowledges and agrees that this is a general release. Releasor expressly waives and assumes the risk of any and all claims for damages that exist as of this date, but of which Releasor does not know, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would or could affect Releasor's decision to execute this Release. Releasor is accepting payment of the sums specified herein in complete settlement and compromise of matters involving disputed issues of law and fact. Releasor assumes the risk that facts or law may be other than as Releasor believes. Releasor has an attorney and has consulted with that attorney.

2. <u>Payments</u>. In consideration for this Release, the QSF agrees to pay the amounts specified on this FCDA to the persons and entities identified thereon.

3. <u>No Liability</u>. Releasor acknowledges and agrees that once Released Parties have transferred funds as specified on this FCDA, Released Parties' responsibilities and duties shall end and there shall be no further distributions to Plaintiffs. Released Parties shall not be responsible or liable for any legal, tax, investment, financial matter, claim, obligation, damages, liability, expenses, interest or penalty whatsoever following Released Parties' adherence to the instructions on this FCDA. Releasor shall indemnify, defend (by counsel reasonably acceptable to Released Parties) and hold harmless the Released Parties from and against any claims, damages, losses and expenses (other than acts of either Trustee's gross negligence or willful misconduct), including but not limited to, attorneys' fees arising out of or resulting from Released Parties' adherence to Releasor's instructions in this executed FCDA up to, but not exceeding, the amount actually disbursed to the Releasor.

4. <u>Attorneys' Fees</u>. Except as provided in paragraph 3, above, each party hereto shall bear all attorney fees and costs arising from the actions of its own counsel in connection with this Release, and the matters and documents referred to herein, and in all related matters.

82768220v.14

5. <u>Representation of Comprehension of Document</u>.  In entering into this Release, Releasor represents that Releasor has relied upon the advice of Releasor's own choice of attorneys concerning all legal and tax consequences of this Release.  Releasor fully understands and voluntarily accepts this Release.

6. <u>Warranty of Capacity to Execute Agreement</u>.  Releasor represents and warrants that no other person or entity has, or has had, any interest in the claims, demands, obligations, actions, causes of action, rights, damages, costs, fees, expenses, and/or compensation referred to in this Release, except as set forth herein; that Releasor has the sole right and exclusive authority to execute this Release and receive the sums specified in it; and that Releasor has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, actions, causes of action, rights, damages, costs, fees, expenses, and/or compensation referred to in this Release.

7. <u>No Release of Defendants</u>.  Nothing in this Release should be construed to release Iran or other defendants in *Greenbaum, Acosta, Rubin, Heiser, Levin, Kirschenbaum,* or *Beer* matters.[544]

8. <u>Governing Law</u>.  This Release shall be construed and interpreted in accordance with the laws of the state of New York.

9. <u>Additional Documents</u>.  All parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions, which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Release.

10. <u>Entire Agreement and Successors in Interest</u>.  This Release contains the entire agreement between the Releasor and the Released Parties with regard to the matters set forth in it, and shall be binding upon and inure to the benefit of their executors, administrators, personal representatives, heirs, successors, and assigns.

11. <u>Effectiveness</u>.  This Release shall become effective immediately following execution by each of the parties.

IN WITNESS WHEREOF, the parties have executed this Trustee Release and Indemnity Agreement on the dates indicated below.

**RELEASOR:**

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

THE PETERSON QUALIFIED SETTLEMENT FUND

By:

*Kenneth R. Feinberg*

Name: Kenneth R. Feinberg, Successor Trustee

Date Signed: August 7, 2020

SUCCESSOR TRUSTEE

By:

*Kenneth R. Feinberg*

Name: Kenneth R. Feinberg

Date Signed: August 7, 2020

---

[544] *Greenbaum, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 02-2148 (RCL) (D.D.C.); *Acosta et al. v. Islamic Republic of Iran, et al.*, Civil Action No.  06-745 (RCL) (D.D.C.); *Rubin, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 01-1655 (RCL (D.D.C.); *Estate of Heiser, et al. v. Islamic Republic of Iran, et al.*, Civil Action Nos. 00-02329 and 01-02104 (RC) (D.D.C.); *Levin, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 05-02494 (GK) (D.D.C.); *Kirschenbaum, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 08-01814 (RCL) (D.D.C.); and *Beer, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 1:08-CV-01807 (RCL) (D.D.C.).

**Questions?  Call 1-800-773-7598.**

# Section 10 – Certification of Counsel

I, _____, from the law firm of _____, represent the following Plaintiff Group(s) in this consolidated action: _____.

I have read the foregoing Acknowledgments signed by my client(s) and believe them to be true, accurate, and complete to the best of my knowledge.  I have provided the Trustee with copies of my engagement letter(s), the applicable judgments, and other documents relevant to this distribution.  I am not aware of any other attorneys or law firms involved in this matter, aside from those who are identified in Paragraph 2 of Section 8 of my clients' Final Confidential Distribution Authorization Form.

I certify that the foregoing is true, accurate, and complete to the best of my knowledge, and that if any of the foregoing is willfully false, I am subject to punishment.

**Signature of Counsel:** _____

**Name of Counsel:** _____

**Name of Law Firm:** _____

**Law Firm Address:** _____

**Date Signed:** _____

82768220v.14

## Exhibit A – Change of Address Form for Changes After FCDA Is Returned.
## Do not return this form with your FCDA.  Keep it for future changes of address.

If your address has changed, complete, sign and mail this form to:

> Peterson QSF Distribution Administrator
> PO Box 4349
> Portland, OR  97208-4349

My address has changed.  My new address is:

_____

_____

_____

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

**Questions?  Call 1-800-773-7598.**

82768220v.14

## Exhibit B – Structured Settlement Documents

I have attached my required structured settlement documents as Exhibit B and these documents are incorporated into my FCDA as indicated by my signature below:

**Signature of Plaintiff or Legal Representative:**  _____

**Print name of Plaintiff:**  _____

**Print name of Legal Representative, if applicable:**  _____

**Date Signed:** _____

82768220v.14

<div align="center">EXHIBIT 5 (pt. 3)</div>

# PETERSON QUALIFIED SETTLEMENT FUND
# Final Confidential Distribution Authorization Form



**Tracking Number:** ▮

<div style="border: 2px solid red;">

**Return by**

**July 15, 2020**

</div>

Dear ▮▮▮▮▮▮▮

On April 6, 2020, the Court in the matter captioned Peterson v. Iran, Case No. 10-CIV-4518 (S.D.N.Y.) (the "NY Action"), appointed Kenneth R. Feinberg as Successor Trustee of the qualified settlement fund (the "QSF") created by Court order in the NY Action. References to the "Trustee" in this Final Confidential Distribution Authorization Form (the "FCDA") shall mean Kenneth R. Feinberg and/or former Fund Trustee the Honorable Stanley Sporkin, as appropriate.

The Trustee is prepared to proceed with the distribution of the remaining assets of the QSF. Pursuant to a Motion filed by the Trustee, on February 28, 2020 the Court entered an Order governing the distribution of the remaining assets and the termination of the QSF. The Order contains detailed procedures governing distributions from the QSF and related actions to be taken by the Trustee. This FCDA contains important disclosures and acknowledgments regarding the remainder of the funds to be distributed by the QSF and is qualified by the Motion and the Order, which are available from your Attorneys (see Section 7, Paragraph 2). The Trustee recommends that you obtain and review the Motion and Order, and that you also discuss any questions you may have with your attorneys.[190]

The QSF will be making a Pre-Final Distribution payment. We anticipate that there will also be a small Final Distribution payment before the QSF is terminated. After these payments are made, there will be no further payments made by the QSF to you. In order to receive your payments, you must return a properly completed FCDA in accordance with the instructions contained herein. The exact amount of the Final Distribution payment is not known at this time.

<div style="border: 2px solid green;">

**YOUR PRE-FINAL DISTRIBUTION AMOUNT IS** $67,564.84.
**The calculation of this amount can be found in Section 2 of this FCDA.**

**AN ESTIMATE OF YOUR FINAL DISTRIBUTION AMOUNT is set forth in Section 3 of this FCDA.**

</div>

==In order to receive your payments, you must complete the required sections, sign and return this FCDA to the Distribution Administrator at the following address:==

    Peterson QSF Distribution Administrator
    PO Box 4349
    Portland, OR 97208-4349

A postage prepaid envelope is enclosed for your convenience.

---

[190] The Trustee has relied on Plaintiffs' Attorneys for information relevant to each Plaintiff involved in this litigation including, but not limited to, judgments, liens (to the best of such attorneys' knowledge), engagement/retainer agreements, attorneys' fees and expenses of the litigation in accordance with the agreements between and among the Plaintiffs, as well as other information that may affect the Trustee's calculations. The Trustee and the Trustee's Professionals do not take any position on and make no representations concerning the agreements between the respective Plaintiffs and their attorneys, including any agreements that are required by the Plaintiffs' attorneys in this FCDA.

<div align="center">**Questions? Call 1-800-773-7598.**</div>

| Section Number | Title | Must I Complete This Section? |
|---|---|---|
| 1 | QSF Accounting Overview | No. |
| 2 | Plaintiff Specific Pre-Final Distribution Amount Information and Authorization | Yes. |
| 3 | Plaintiff Specific Final Distribution Amount Information and Authorization | Yes. |
| 4 | Designated Distribution Agent | Yes |
| 5 | Distribution Election | Yes.<br><br>🛑 **IF YOU CHOOSE TO BE PAID BY THE STRUCTURED SETTLEMENT OPTION, YOU MUST RETURN SECTION 5 BY NO LATER THAN JULY 10, 2020.** |
| 6 | Structured Settlement Option | Only if you choose to receive your Pre-Final Distribution Amount and/or Final Distribution Amount pursuant to the structured settlement option.<br><br>🛑 **DO NOT COMPLETE OR RETURN THIS FCDA UNTIL ADVISED BY YOUR STRUCTURED SETTLEMENT BROKER.** |
| 7 | Acknowledgments, Agreements & Release | Yes. |
| 8 | Trustee Release & Indemnity Agreement | Yes. |
| 9 | Certification of Counsel | No, your attorney must complete this. |
| Exhibit A | Change of Address | Please keep Exhibit A and return it to us if your address changes after you complete and return the FCDA. |
| Exhibit B | Structured Settlement Documents | Only if you choose to receive your payment as a structured settlement. |

If you have any questions regarding how to complete this FCDA, please contact the Distribution Administrator at 1-800-773-7598 or at info@BeirutLitigation.com.  If you have any questions regarding the meaning or contents of the FCDA, please contact your attorney.

**Questions?  Call 1-800-773-7598.**

2

 **IF YOU WISH TO BE PAID USING THE STRUCTURED SETTLEMENT OPTION (AS DESCRIBED IN SECTION 6) IN FULL OR IN PART,**

**A. BY NO LATER THAN JULY 10, 2020 YOU MUST RETURN SECTION 5 OF THIS FINAL CONFIDENTIAL DISTRIBUTION AUTHORIZATION FORM; and**

**B. EXCEPT FOR SECTION 5, YOU MUST NOT COMPLETE OR RETURN THIS FINAL CONFIDENTIAL DISTRIBUTION AUTHORIZATION FORM UNTIL ADVISED TO DO SO BY YOUR STRUCTURED SETTLEMENT BROKER.**

The QSF's appointed structured settlement broker, or a structured settlement broker of your choice, will help you assemble the paperwork necessary to elect the Structured Settlement Option.  If you choose to work with a structured settlement broker, other than the QSF's appointed structured settlement broker, your chosen structured settlement broker should contact:

> The Settlement Solutions Group
> UBS Financial Services Inc.
> 1285 Avenue of the Americas, 16th Floor
> New York, NY  10019
> Telephone: 1-877-827-8001
> Email: settlementsolutions@ubs.com

The Structured Settlement Option will include additional documents that will be submitted with your Final Confidential Distribution Authorization Form.

**If you do not return Section 5, indicating that you want a structured settlement, by JULY 10, 2020, the Distribution Administrator may consider that you have accepted that your Pre-Final Distribution Amount and Final Distribution Amount will be paid in lump sums and you do NOT want a structured settlement.**

Please be advised that the Trustee and his attorneys, accountants, agents, and other professionals, including but not limited to the Distribution Administrator (collectively the "Trustee's Professionals"), do not represent you (or, if you are a representative, the Plaintiff you represent) in any capacity, and will not provide you (or, if you are a representative, the Plaintiff you represent) with any legal, financial, estate/probate, tax or any other form of advice in connection with these distributions. and you (or, if you are a representative, the Plaintiff you represent) may not rely on the Trustee and/or the Trustee's Professionals to provide advice on such matters. You are advised to consult with a private tax attorney, probate attorney, certified public accountant, actuary or such other licensed professional with specialized knowledge of tax, income-based government assistance, probate/estate and/or investment matters as you deem appropriate concerning the distributions referenced in the FCDA.

Sincerely,

Peterson QSF Distribution Administrator

82839353v.9

# Section 1 – QSF Accounting Overview

The information below provides an overview of the QSF's receipts, disbursements and reserves in connection with the current pre-final distribution and the pending final distribution, insofar as the groups of Plaintiffs in the following cases are concerned:  *Greenbaum; Acosta; Rubin; Heiser; Levin; Kirschenbaum; and Beer*.[191]  Certain of the terms in this chart that may not be self-explanatory are explained below the chart.  Because the QSF continues to receive income on its undistributed funds and to incur expenses, the income, expense and amounts available for the Final Distribution are estimates and the actual amounts may vary from those presented here.  Certain categories in the table below are explained in greater detail after the tables below.

| **PRE-FINAL DISTRIBUTION CALCULATION**[192] | |
|---|---|
| Amount of Initial Deposit into QSF Allocated to Plaintiffs & Plaintiffs' Attorneys | $244,650,790 |
| Plus: Income earned by QSF through 2/29/2020 and Allocated to Plaintiffs & Plaintiffs' Attorneys | $2,146,533 |
| Minus: Plaintiffs' & Plaintiffs' Attorneys' Share of QSF Expenses through 2/29/2020 | $2,623,110 |
| Minus: Reserve Retained for Contingencies | $1,808,714 |
| Minus: Reserve for Anticipated Expenses of Pre-Final Distribution | $193,601 |
| Equals: Distribution Amount Before Expenses and Credits Shown Below | $242,171,898 |
| Minus: Amounts Allocated to Plaintiffs in Prior Distributions | $237,639,352 |
| Equals: Amount Available for Distribution to Plaintiffs & Plaintiffs' Attorneys in Pre-Final Distribution Before Expenses and Credits Shown Below | $4,532,546 |
| Plus: Funds Recovered by the Trustee from Citibank, Allocable to Plaintiffs Only (Not to Plaintiffs' Attorneys) | $136,581 |
| Equals: Amount Available for Distribution to Plaintiffs through Pre-Final Distribution | $4,669,126 |
| Minus: West & Feinberg Fees Deducted from Plaintiffs' Attorneys Only | $5,235 |
| Equals: Current Distribution to Plaintiffs & Plaintiffs' Attorneys for Pre-Final Distribution | $4,663,892 |

---

[191] *Greenbaum, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 02-2148 (RCL) (D.D.C.); *Acosta et al. v. Islamic Republic of Iran, et al.*, Civil Action No.  06-745 (RCL) (D.D.C.); *Rubin, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 01-1655 (RCL (D.D.C.); *Estate of Heiser, et al. v. Islamic Republic of Iran, et al.*, Civil Action Nos. 00-02329 and 01-02104 (RCL) (D.D.C.);  *Levin, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 05-02494 (GK) (D.D.C.) *Kirschenbaum, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 08-01814 (RCL) (D.D.C.); and *Beer, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 1:08-CV-01807 (RCL) (D.D.C.).

[192] The amounts in the charts in Sections 1, 2 and 3 are amounts allocated to the Plaintiffs in all cases noted above.  They do not include amounts allocated to other claimants as the result of certain settlements that Plaintiffs made.

82839353v.9

**Amount of Initial Deposit into QSF Allocated to Plaintiffs & Plaintiffs' Attorneys** – This is the portion of the amount recovered from assets of Iran and deposited into the QSF in 2013 that was allocated to Plaintiffs in all cases noted above.  It does not include amounts that were allocated to other claimants as the result of certain settlements that Plaintiffs made.

**Reserve Retained for Contingencies** and **Reserve for Anticipated Expenses of Pre-Final Distribution** - These amounts are being withheld from the Pre-Final Distribution as a reserve for anticipated expenses of the QSF, the Trustee and the Trustee's Professionals and as a reserve in an amount the Trustee has determined is necessary to cover any potential or unanticipated liabilities and obligations arising from potential disputes as to expenses, liens, fees or judgments.  To the extent these reserves are not used and are no longer needed, they will be disbursed to Plaintiffs and their attorneys, as appropriate, as part of the Final Distribution.

**Funds Recovered by the Trustee from Citibank, Allocable to Plaintiffs Only** – This is an amount recovered from Citibank in settlement of the Trustee's claim that Citibank improperly withheld funds from its 2013 deposit into the QSF.

**Amount Available for Distribution to Plaintiffs through Pre-Final Distribution** – This is the total amount that the Trustee has made available for distribution to Plaintiffs.

| ESTIMATED FINAL DISTRIBUTION RANGE | LOWER END OF DISTRIBUTION RANGE | UPPER END OF DISTRIBUTION RANGE |
|---|---|---|
| Estimated QSF Expenses for Final Distribution through termination of the QSF | $1,184,277 | $133,500 |
| Estimated Amount Available for Distribution from Inception through Final Distribution to Plaintiffs & Plaintiffs' Attorneys | $242,932,916 | $243,983,692 |
| Minus: Amount Allocated and/or Paid in Prior Distributions including Pre-Final Distribution | $242,308,479 | $242,308,479 |
| Equals: Estimated Range of Final Distribution Amount Available for Distribution to Plaintiffs & Plaintiffs' Attorneys | $624,437 | $1,675,214 |

# Section 2 - Plaintiff Specific Pre-Final Distribution Amount Information and Authorization

Below is a table of pro rata shares based on the agreements contained in the June 1, 2012 Litigation Cooperation and Settlement Agreement (the "Cooperation Agreement").[193]  The table includes percentages for the Plaintiffs identified in Section 1 of this FCDA and a percentage for the Peterson Plaintiffs who are not covered in Section 1. These percentages together with the amount of your judgment have been used to calculate your individual distributions pursuant to the terms of the Cooperation Agreement.

| Creditor Plaintiff | Percentage of Total Distribution |
| --- | --- |
| Peterson Plaintiffs | 71.0392905144694% |
| Greenbaum Plaintiffs | 0.531509592940952% |
| Acosta Plaintiffs | 1.34145925063991% |
| Rubin Plaintiffs | 1.91171044448603% |
| Heiser Plaintiffs | 7.64924721769027% |
| Levin Plaintiffs | 0.770238004113549% |
| Valore Plaintiffs | 7.761573601645540% |
| Kirschenbaum Plaintiffs | 0.367636623939622% |
| Beer Plaintiffs | 0.347583717179279% |
| Murphy Plaintiffs | 0.851996405433578% |
| Bland Plaintiffs | 7.4277546274619% |

The chart below shows the calculation of your specific Pre-Final Distribution Amount, to be paid to you at this time.  It is important that you review this chart for accuracy, and that you (or the Legal Representative) sign below to acknowledge its accuracy.

| | |
| --- | --- |
| Amount Available for Distribution to Plaintiffs and Plaintiffs' Attorneys from Inception through Pre-Final Distribution | $242,308,479 |
| Plaintiff's Share of Amount Available for Distribution to Plaintiffs and Plaintiffs' Attorneys from Inception through Pre-Final Distribution[194] | $3,508,294.33 |
| <u>Minus</u>: Amounts Allocated and/or Paid to Plaintiff and Plaintiff's Attorneys in Distributions Prior to Pre-Final Distribution | $3,442,632.27 |
| <u>Equals</u>: Plaintiff's and Plaintiff's Attorneys' Share of Amount Available for Distribution in Pre-Final Distribution | $65,662.06 |
| <u>Plus</u>: Plaintiff's Share of Citibank Recovery, Allocable Only to Plaintiff | $1,978.61 |
| <u>Minus</u>: Plaintiff's Share of West & Feinberg Fees, Allocable Only to Plaintiff's Attorneys | $75.83 |
| <u>Equals</u>: Plaintiff's "**Pre-Final Distribution Amount,**" Allocable to Plaintiff and Plaintiff's Attorneys[195] | $67,564.84 |

---

[193] The percentages above vary slightly from the percentages stated in the Cooperation Agreement.  As explained in the initial disbursement authorization form previously provided to you, the percentages stated in the Cooperation Agreement were subsequently adjusted to correct a miscalculation, as allowed by the Cooperation Agreement.

[194] This amount is before the Citibank recovery is added and the West & Feinberg fees are deducted.

[195] Of this amount, the Plaintiff's Share of Citibank Recovery amount above is allocable only to the Plaintiff, not to the Plaintiff's Attorneys, and the Plaintiff's Share of West & Feinberg Fees amount above is allocable only to the Plaintiff's Attorneys, not to the Plaintiff.

**Questions?  Call 1-800-773-7598.**

I understand that the Plaintiff's Pre-Final Distribution Amount does not take into consideration any attorneys' fees or other expenses that may be payable to others out of this recovery. My Attorneys will advise me of the amount of attorneys' fees and expenses that will be deducted from my Pre-Final Distribution Amount in accordance with my applicable retainer/engagement agreements. By signing below, I confirm the engagement of my Attorneys, and for my benefit and convenience, I authorize and direct the Trustee to pay all funds that are payable to me, pursuant to Paragraphs 12, 13 and 14 of Section 7 of this FCDA, directly to said Attorneys for distribution to me in accordance with the engagement agreement between my Attorneys and me, as well as any other engagement agreements with other counsel whom I have retained to represent me in this matter. I further confirm that the Trustee shall have no responsibility for the determination of the amounts due to me or my Attorneys pursuant to my engagement agreement with my Attorneys or the timing of my Attorneys' payments to me.

I certify that I have reviewed the above itemized calculations of funds presently available for distribution to me from the QSF. I understand that the funds that will be disbursed will be in partial satisfaction of my judgment against the Islamic Republic of Iran. I do hereby approve each amount set forth above, which I confirm has been fully explained to me prior to my execution of this FCDA. I release the QSF, the Trustee and the Trustee's Professionals from any claims concerning such calculations. I confirm the engagement of my Attorneys and I acknowledge that my Attorneys may receive their attorneys' fees as an immediate lump sum and/or future periodic payments.

The previous distribution authorization forms that were submitted by me (and, if I am a Legal Representative, any previous distribution authorization forms that were submitted on behalf of the person whom I represent) remain in full force and effect and all releases, affirmations, acknowledgements and information contained therein remain true and valid for the purpose of this FCDA and the Pre-Final Distribution being made from the QSF and will remain true and valid for the Final Distribution to be made from the QSF. I will notify the Distribution Administrator immediately should there be a change in any information previously provided to the Distribution Administrator and/or the Trustee. I will promptly notify the Distribution Administrator if my address changes. (A Change of Address Form for my future use is included with this FCDA as Exhibit A.)

I have been advised that I could receive any Pre-Final Distribution Amount and/or Final Distribution Amount that is to be paid to me in the form of a structured settlement or a lump sum cash payment. If I choose to receive any payment in the form of a structured settlement, I acknowledge that I must complete and return Section 5 of the FCDA to the Distribution Administrator on or before JULY 10, 2020. I understand that if I do not complete and return Section 5 to the Distribution Administrator on or before JULY 10, 2020, the Trustee will assume that I have chosen to receive all my funds as immediate lump sum cash payments and not over time in the form of structured settlement payments.

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

82839353v.9

## Section 3 – Plaintiff Specific Final Distribution Amount Information and Authorization

The chart below shows the calculation of the anticipated range of the Final Distribution Amount that may be paid to you at a later date.  All amounts presented here are estimates, and it is possible that the actual amount distributed will be outside of the range presented here.

|  | LOWER END OF DISTRIBUTION RANGE | UPPER END OF DISTRIBUTION RANGE |
|---|---|---|
| Estimated Range of Amount Available for Distribution to Plaintiffs and Plaintiffs' Attorneys from Inception through Final Distribution | $242,932,916 | $243,983,692 |
| Estimated Range of Plaintiff's and Plaintiff's Attorneys' Share of Amount Available for Distribution to Plaintiffs and Plaintiffs' Attorneys  from Inception through Final Distribution | $3,519,319.03 | $3,534,541.42 |
| <u>Minus</u>: Amounts Allocated to Plaintiff and Plaintiff's Attorneys  in Distributions Prior to Final Distribution | $3,510,272.94 | $3,510,272.94 |
| <u>Equals</u>: Estimated Range of Plaintiff's and Plaintiff's Attorneys' **Final Distribution Amount** | $9,046.09 | $24,268.47 |

I certify that I have reviewed and hereby approve the above estimate of my Final Distribution Amount.  I acknowledge that the amounts presented here are estimates and the actual amount distributed may be higher or lower than the range presented here.  I confirm that each amount set forth in the calculation was fully explained to me, or that I had the opportunity to have the calculations fully explained to me, before I signed this FCDA.  I release the QSF, the Trustee and the Trustee's Professionals from any claims concerning such calculation.

I further acknowledge and agree that all provisions of Section 2, Plaintiff Specific Final Distribution Amount Information and Authorization apply to this Section 3 and will remain true and valid for the Final Distribution to be made from the QSF.

I understand I will not receive another disbursement authorization form before receiving my Final Distribution Amount and that the Final Distribution Amount will be the final distribution made to me by the QSF.  I will promptly notify the Distribution Administrator if my address changes. (A Change of Address Form for my future use is included with this FCDA as Exhibit A.)

I have read and agree to this Section 3, Plaintiff Final Distribution Amount Information and Authorization, as indicated by my signature below:

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

# Section 4 –Designated Distribution Agent

Some previous distributions to certain Plaintiffs have been delayed as a result of individual issues and legal impediments pertaining to those Plaintiffs, such as incomplete confidential disbursement authorization forms, estate issues, bankruptcies and certain disputes.  The Trustee has been able to resolve most of these issues with respect to previous distributions.  The Trustee would like to avoid any delay in the termination of the QSF and distribution of the Pre-Final and Final Distribution Amounts that may arise as a result of any such issues and impediments.

The Court in the NY Action has authorized the Trustee, if he determines that any such individual issues or legal impediments may delay completion of distributions or cause the QSF to incur additional expense on account of such individual issues or legal impediments, (i) to transfer such distributions to another person who will be able to assist in resolving the issues or legal impediments, or (ii) to transfer such distributions to the registry of a court, or (iii) to take such other action as the Court may authorize or to which the parties may agree.  The Court has ordered that once the Trustee has transferred such distributions to such a person, or to the attorney for a Plaintiff or another party in the Litigation, or to the registry of a court, the Trustee and the QSF will be relieved of any and all further liability and/or responsibility as to such distribution.

You may, should you so choose, designate your Attorneys (see Section 7, Paragraph 2), another attorney, an escrow agent, a trust company or another legally qualified person or company to hold your distribution pending resolution of any such issues or legal impediments (the "Designated Distribution Agent") and authorize the Trustee to transfer your Pre-Final Distribution Amount, Final Distribution Amount and/or any other payment or distribution to your selected Designated Distribution Agent in the event that the Trustee determines, in the Trustee's discretion, that any individual issue or legal impediment or other circumstance prevents or delays the Trustee from promptly remitting any such amount, payment or distribution to you or for your benefit or will cause the QSF additional expense.  **If you do not designate anyone, the Trustee may consider your Attorneys to be your Designated Distribution Agent, and, at the Trustee's option, the Trustee will either transfer such amount, payment or distribution to your Attorneys or deposit such amount, payment or distribution in the registry of the Court pending resolution of any issues that may prevent the Trustee from completing the transfer or payment of such amount, payment or distribution.**

If you choose to designate someone other than your Attorneys, please first confirm with such attorney, escrow agent, trust company or other legally qualified person or company that he, she or it is qualified, willing and able to serve in this capacity and agrees to do so.  The Trustee recommends that you discuss your choice with your Attorneys.  Your selected Designated Distribution Agent cannot be your relative or employee and must be located in the United States.  Please note that if you choose someone as your Designated Distribution Agent and that person or company is unable or unwilling to serve in that capacity, or the Trustee, at his discretion, determines that your selected Designated Distribution Agent cannot serve in that capacity, the Trustee is authorized to and will deliver your payment or distribution to your Attorneys or deposit such payment or distribution in the registry of the Court pending resolution of any issues that may prevent the Trustee from completing the transfer or payment of such payment or distribution.

If you choose to designate a Designated Distribution Agent, including your Attorneys, complete Part A below, sign and date where indicated below, and return this Section 4 to the Distribution Administrator.  If you choose not to designate a Designated Distribution Agent, complete Part B below, sign and date where indicated below, and return it to the Distribution Administrator.

PART A:  _____ (check here).  I HEREBY DESIGNATE the following attorney, firm, company or other person to be my Designated Distribution Agent and authorize the QSF and the Trustee to transfer to my Designated Distribution Agent such amounts that may be distributable to me or for my benefit in the event the Trustee determines, in the Trustee's discretion, that a legal impediment or another circumstance has arisen that may prevent or delay the QSF and/or the Trustee from promptly remitting such amounts to me or for my benefit.  I

**Questions?  Call 1-800-773-7598.**

understand and agree that once the QSF and/or the Trustee has done so, the Trustee and the QSF will be relieved of any and all further liability and/or responsibility for such amounts.

Designated Distribution Agent:  Name: _____

Firm or Company: _____

Address: _____

Telephone: _____

Email: _____

I ACKNOWLEDGE that my Designated Distribution Agent is not my relative or employee, I have shown this Section 4 – Designated Distribution Agent to my Designated Distribution Agent, and my Designated Distribution Agent has confirmed that he, she or it is qualified, willing and able to serve and agrees to serve in the capacity described in this Section 4 and to hold any amount, payment or distribution received by him, her or it in trust pending resolution of the issues that prevented or delayed the Trustee from promptly remitting such amount to me or for my benefit.

PART B:  _____  (check here).  I choose not to designate a Designated Distribution Agent.

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

82839353v.9

## Section 5 – Distribution Election

You have the option of receiving your Pre-Final Distribution Amount and/or your Final Distribution Amount in a lump sum cash payment, in the form of a structured settlement, or in a combination of those methods.  Please indicate below which payment option you choose by checking the appropriate box.

Pre-Final Distribution Amount:

\_\_\_\_  I wish to receive my Pre-Final Distribution Amount in a lump sum cash payment.  I have been advised that I can receive my distribution in the form of a structured settlement and have chosen to receive all my funds as an immediate cash payment.  I direct the Trustee to disburse the payment to my Attorneys.

\_\_\_\_  I wish to receive my entire Pre-Final Distribution Amount in the form of a structured settlement.  I will complete Section 6, Structured Settlement Option, providing the Trustee with the required broker information.

\_\_\_\_  I wish to receive $_____ of my Pre-Final Distribution Amount in the form of a cash payment and $_____ of my Pre-Final Distribution Amount to be allocated to a structured settlement.  I direct the Trustee to disburse the cash payment to my Attorneys.  I will complete Section 6, Structured Settlement Option, providing the Trustee with the required broker information.

Final Distribution Amount:

\_\_\_\_  I wish to receive my Final Distribution Amount in a lump sum cash payment.  I have been advised that I could receive my distribution in the form of a structured settlement and have chosen to receive all my funds as an immediate cash payment.  I direct the Trustee to disburse the payment to my Attorneys.

\_\_\_\_  I wish to receive my entire Final Distribution Amount in the form of a structured settlement.  I will complete Section 6, Structured Settlement Option, providing the Trustee with the required broker information.

**IF YOU CHOOSE TO BE PAID USING THE STRUCTURED SETTLEMENT OPTION, IN FULL OR IN PART, YOU MUST COMPLETE AND RETURN THIS SECTION 5 TO THE BEIRUT LAWSUIT DISTRIBUTION ADMINISTRATOR BY NO LATER THAN JULY 10, 2020.**

I have selected my payment option above and agree to this Section 5, Election, as indicated by my signature below:

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

**Questions?  Call 1-800-773-7598.**

82839353v.9

## Section 6 – Structured Settlement Option

🛑 *Only complete this section if you are getting a structured settlement and when advised by your structured settlement broker.*

### Structured Settlement Information

You may receive some or all of your Pre-Final Distribution Amount and/or Final Distribution Amount as future periodic payments through the use of a structured settlement. A structured settlement is often used by claimants at the resolution of a lawsuit to protect their money and maximize its value going forward.

If you would like more information on structured settlements and why they may or may not be beneficial for you, please consult with a structured settlement broker. It is important that you review this option now as there are critical timing requirements with respect to structured settlements. *If you would like to utilize a structured settlement for some or all of your distribution, you must elect this option __prior__ to the time you receive any of your funds*.

**If you would like to receive any of your payments as structured settlements, you must notify the Distribution Administrator no later than JULY 10, 2020.**

Please note that only specially licensed structured settlement brokers can provide structured settlement services. It is your choice as to the broker you choose to use. These brokers can help you design a future periodic payment plan that best meets your individual needs. The Trustee has appointed the Settlement Solutions Group of UBS as the structured settlement broker on behalf of the QSF. The Settlement Solutions Group of UBS will assemble the paperwork necessary for you to implement a structured settlement and send all documentation to the Distribution Administrator.

Please note that you are not required to use the Settlement Solutions Group of UBS as your structured settlement broker. You may work with any licensed structured settlement broker that you choose. If you choose to work with another broker, please have your broker contact:

> The Settlement Solutions Group
> UBS Financial Services Inc.
> 1285 Avenue of the Americas, 16th Floor
> New York, NY 10019
> Telephone: 1-877-827-8001
> Email: settlementsolutions@ubs.com

### Structured Settlement Acknowledgement and Contact Information

I confirm and acknowledge that I may receive some or all of my Pre-Final Distribution Amount and/or Final Distribution Amount as future periodic payments through the use of structured settlements. I have been advised that I may consult with the Settlement Solutions Group of UBS or any other structured settlement broker that I choose regarding a specific payment plan for my needs. I have also been advised that I should consult with my own attorneys, accountants and investment advisors regarding my distribution decisions. I designate the following broker as my structured settlement broker:

Broker Name:    _____

Company:        _____

Address:        _____

                _____

Telephone:      _____

Email:          _____

**Questions?  Call 1-800-773-7598.**

12

I have attached my required structured settlement documents as Exhibit B and these documents are incorporated into this FCDA as indicated by my signature below:

**Signature of Plaintiff or Legal Representative:**  _____

**Print name of Plaintiff:**  _____

**Print name of Legal Representative, if applicable:**  _____

**Date Signed:** _____

## Section 7 – Acknowledgments, Agreements & Release

By signing this Section 7, I acknowledge that:

1. I have received the FCDA.

2. I hereby affirm that I am represented by the following attorney(s) with regards to my claims against the Islamic Republic of Iran, et. al. ("Iran") in the matter known as Rubin, et al. v. Islamic Republic of Iran, et al., Civil Action No. 01-1655 (RCL) (D.D.C.) (hereinafter "Litigation"): David J. Strachman, McIntyre Tate LLP; Nitsana Darshan Leitner, Mordechai Haller, Bennett J. Bergman, Thomas Pearlman, and Robert J. Tolchin (collectively, the "Attorneys").

3. I confirm and acknowledge that I may receive some or all of my distribution amounts as future periodic payments through the use of structured settlements. I have been advised that I may consult with the Trustee's appointed Structured Settlement Broker, the Settlement Solutions Group at UBS, or any other structured settlement broker that I choose regarding a specific payment plan for my needs. I have also been advised that I should consult with my own attorneys, accountants and investment advisors regarding my distribution decisions.

4. The Attorneys may have retained law firms to assist the Attorneys in their efforts to obtain recovery of the funds that were deposited in the QSF ("Collection Counsel").

5. Aside from the Attorneys and Collection Counsel, I am not aware of any other attorneys who have represented me with regard to pursuing, recovering, or collecting my judgment.

6. The distributions that the Attorneys, Collection Counsel and I receive from the QSF represent only a partial recovery of the damages awarded in my judgment. Any other claims I have asserted or may assert that involve the same injuries and same judgment at issue in the NY Action may be subject to reduction or offset by an amount equal to all or some part of my share of the recovery obtained in the NY Action.

7. I have reviewed the FCDA in detail. I have been provided with ample time to perform that review and ample opportunity to seek advice, counsel and make such inquiries as I deem necessary. I have been encouraged by the Attorneys to ask any questions that I may have regarding the foregoing, and all other matters related to the Attorneys' representation of me. At this time, I have no unanswered questions regarding those matters.

### **Agreements**

By signing below, I also agree and affirm that:

8. I certify that I have advised my Attorneys of all liens, advances, assignments and/or loans that affect my judgment recovery and indemnify my Attorneys from any future claims that may result from any such liens, advances, assignments and/or loans.

9. I certify that I am not currently in bankruptcy and have not been in bankruptcy and that I do not know of any liens that might affect my rights under my judgment. If I am a Legal Representative, I certify that the person for whom I am Legal Representative has not been in bankruptcy and that I do not know of any liens against such person's judgment.

10. I hereby release and will hold harmless and indemnify the Trustee and the Trustee's Professionals from any liability concerning any matter arising out of or in connection with any tax, tax reporting or tax filing requirements applicable to the payment and or distribution of all sums allocated to me or on my behalf from the QSF.

**Questions? Call 1-800-773-7598.**

11. I acknowledge and confirm that the QSF, the Trustee and the Trustee's Professionals do not represent me in this matter and have not provided me with any advice regarding the distributions made by the Trustee and/or the QSF, including advice regarding taxation, financial planning, probate/estate issues, legal advice, or income based government assistance; and that I have either engaged other attorneys or financial advisors to provide me with consultation or advice as to all tax and financial matters or have made the decision not to do so notwithstanding the advice I have received to obtain tax and financial advice from advisors of my own choosing.

12. To the extent that I have elected to receive some or all of my distributions as cash payments in Section 5, for my benefit and convenience, I direct the Trustee to distribute my distributions to my attorneys, who are signatories to this agreement, for distribution to me in accordance with the engagement agreement between myself and my Attorneys, as well as any other retainer/engagement agreements with other counsel who I may have retained to represent me in this matter, including Collection Counsel.  I further confirm that the Trustee shall have no responsibility for the determination of the amounts due to me or my Attorneys pursuant to my engagement agreement with my Attorneys or the timing of my Attorneys' payments to me.

13. To the extent that I have elected to receive some or all of my distributions as structured settlements in Section 5, I confirm that (i) the Trustee shall continue to hold the amount necessary to fund my structured settlements and shall fund such structured settlements, and (ii) for my benefit and convenience, I direct the Trustee to distribute immediately to my attorneys, who are signatories to this agreement, my distributions less the amount held back in (i) of this Paragraph 13 for distribution to me in accordance with the engagement agreement between myself and my Attorneys, as well as any other retainer/engagement agreements with other counsel who I have retained to represent me in this matter, including Collection Counsel.

14. I acknowledge that I have entered into agreements with the Attorneys wherein I am obligated to pay attorney's fees based on a recovery in this case.  For my benefit and convenience, the Trustee has authority to pay attorney's fees on my behalf directly to the Attorneys and may likewise pay fees to the Attorneys in a series of future periodic payments through the use of structured settlements. Notwithstanding anything in this agreement to the contrary, for my benefit and convenience, if any of my Attorneys are to receive future periodic payments, the Trustee shall subtract from the amount to be distributed as described in Paragraphs 12 and 13 herein the pro rata amount of my attorney's fees due to said Attorneys necessary to fund the future periodic payments.

15. I acknowledge that in the discretion of the Trustee, the Trustee may assign any periodic payment obligation to a qualified assignee as contemplated by Section 130(c) of the Internal Revenue Code.  I further understand that the future periodic payments shall be set forth in a Structured Settlement Disbursement Agreement and Release (for Attorneys) to be executed by the Attorney, the Trustee, and me.  I further acknowledge that said arrangement will require additional documents be executed by me in the future confirming that the attorney's fees are agreed to and are being paid directly to the attorney for my benefit and convenience.  For administrative ease and my convenience, I hereby grant a power of attorney to Marc R. Feinberg, Esquire, for the sole limited purpose of executing all said documents referenced in this Paragraph 15.

16. The signature below is mine, and I have the legal authority and am competent to sign this document on my behalf or on behalf of the person or entity I represent.  If I am a legal representative, my authority has not expired or been revoked.  If I have not previously provided documents showing my authority to act and a copy of my government-issued identification to the Distribution Administrator, **I am attaching such documents to this FCDA and warrant the validity of all documents that I submit.**

**Questions?  Call 1-800-773-7598.**

17. I understand that the Trustee and the Attorneys have relied, and will continue to rely, upon information that I provide.  The Trustee and the Attorneys can reasonably rely upon my representations in this FCDA.

18. I acknowledge that this FCDA presents a range of amounts for the Final Distribution Amount payable to me and the actual amount distributed may be more or less than the Final Distribution Amount stated in this FCDA.

In accordance with the payment election I have made herein, the Trustee shall distribute the Pre-Final Distribution Amount and Final Distribution Amount as I have agreed to herein.

**Signature of Plaintiff or Legal Representative:**  _____

**Print name of Plaintiff:**  _____

**Print name of Legal Representative, if applicable:**  _____

**Date Signed:** _____

# Section 8 – Trustee Release & Indemnity Agreement

This Trustee Release and Indemnity Agreement ("Release") is entered into by and between ███████ ("Releasor"), the Peterson Qualified Settlement Fund (the "QSF"), and Kenneth R. Feinberg, its Successor Fund Trustee ("Trustee"). The QSF, former Fund Trustee the Honorable Stanley Sporkin, Successor Fund Trustee Kenneth R. Feinberg, and the Trustees' attorneys, accountants, agents, representatives, employees, affiliates, partners, predecessors, successors in interest, heirs and assigns, and all other persons, or entities with whom any of the former have been, are now, or may hereafter be affiliated are collectively referred to as "Released Parties." The Releasor, the QSF and the Trustee hereby agree as follows:

1. <u>Release and Discharge</u>. In consideration of the payments set forth in this FCDA, and in further consideration of payments previously made, Releasor hereby completely releases and forever discharges Released Parties from any and all known and unknown, past and present claims, demands, obligations, actions, causes of action, rights, damages, costs, fees, expenses, and compensation of any nature whatsoever, whether based in tort, contract, or other theory, which Releasor now has, or which may hereafter arise relating to *Peterson v. Iran*, Case No. 10 CIV 4518 (S.D.N.Y.), the establishment, management and operation of the QSF, or the underlying facts, injuries or deaths that led up to the actions that eventually culminated in the QSF.

   (a) This Release applies to Released Parties' past, present, and future trustees, attorneys, accountants, agents, representatives, employees, affiliates, partners, predecessors, and successors in interest, heirs and assigns, and all other persons, or entities with whom any of the former have been, are now, or may hereafter be affiliated.

   (b) This Release is a fully binding and a complete settlement among Releasor and Released Parties, and is binding upon Releasor's heirs, successors and assigns.

   (c) Releasor acknowledges and agrees that this is a general release. Releasor expressly waives and assumes the risk of any and all claims for damages that exist as of this date, but of which Releasor does not know, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would or could affect Releasor's decision to execute this Release. Releasor is accepting payment of the sums specified herein in complete settlement and compromise of matters involving disputed issues of law and fact. Releasor assumes the risk that facts or law may be other than as Releasor believes. Releasor has an attorney and has consulted with that attorney.

2. <u>Payments</u>. In consideration for this Release, the QSF agrees to pay the amounts specified on this FCDA to the persons and entities identified thereon.

3. <u>No Liability</u>. Releasor acknowledges and agrees that once Released Parties have transferred funds as specified on this FCDA, Released Parties' responsibilities and duties shall end and there shall be no further distributions to Plaintiffs. Released Parties shall not be responsible or liable for any legal, tax, investment, financial matter, claim, obligation, damages, liability, expenses, interest, or penalty whatsoever following Released Parties' adherence to the instructions on this FCDA. Releasor shall indemnify, defend (by counsel reasonably acceptable to Released Parties) and hold harmless the Released Parties from and against any claims, damages, losses and expenses (other than acts of either Trustee's gross negligence or willful misconduct), including but not limited to, attorneys' fees arising out of or resulting from Released Parties' adherence to Releasor's instructions in this executed FCDA up to, but not exceeding, the amount actually disbursed to the Releasor.

4. <u>Attorneys' Fees</u>. Except as provided in paragraph 3, above, each party hereto shall bear all attorney fees and costs arising from the actions of its own counsel in connection with this Release, and the matters and documents referred to herein, and in all related matters.

**Questions?  Call 1-800-773-7598.**

82839353v.9

5. <u>Representation of Comprehension of Document</u>.  In entering into this Release, Releasor represents that Releasor has relied upon the advice of Releasor's own choice of attorneys concerning all legal and tax consequences of this Release.  Releasor fully understands and voluntarily accepts this Release.

6. <u>Warranty of Capacity to Execute Agreement</u>.  Releasor represents and warrants that no other person or entity has, or has had, any interest in the claims, demands, obligations, actions, causes of action, rights, damages, costs, fees, expenses, and/or compensation referred to in this Release, except as set forth herein; that Releasor has the sole right and exclusive authority to execute this Release and receive the sums specified in it; and that Releasor has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, actions, causes of action, rights, damages, costs, fees, expenses, and/or compensation referred to in this Release.

7. <u>No Release of Defendants</u>.  Nothing in this Release should be construed to release Iran or other defendants in *Greenbaum, Acosta, Rubin, Heiser, Levin, Kirschenbaum,* or *Beer* matters.[196]

8. <u>Governing Law</u>.  This Release shall be construed and interpreted in accordance with the laws of the state of New York.

9. <u>Additional Documents</u>.  All parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions, which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Release.

10. <u>Entire Agreement and Successors in Interest</u>.  This Release contains the entire agreement between the Releasor and the Released Parties with regard to the matters set forth in it, and shall be binding upon and inure to the benefit of their executors, administrators, personal representatives, heirs, successors, and assigns.

11. <u>Effectiveness</u>.  This Release shall become effective immediately following execution by each of the parties.

IN WITNESS WHEREOF, the parties have executed this Trustee Release and Indemnity Agreement on the dates indicated below.

**RELEASOR:**

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

THE PETERSON QUALIFIED SETTLEMENT FUND

By:

*Kenneth R. Feinberg*

Name: Kenneth R. Feinberg, Successor Trustee

Date Signed: June 10, 2020

SUCCESSOR TRUSTEE

By:

*Kenneth R. Feinberg*

Name: Kenneth R. Feinberg

Date Signed: June 10, 2020

---

[196] *Greenbaum, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 02-2148 (RCL) (D.D.C.); *Acosta et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 06-745 (RCL) (D.D.C.); *Rubin, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 01-1655 (RCL) (D.D.C.); *Estate of Heiser, et al. v. Islamic Republic of Iran, et al.*, Civil Action Nos. 00-02329 and 01-02104 (RC) (D.D.C.); *Levin, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 05-02494 (GK) (D.D.C.); *Kirschenbaum, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 08-01814 (RCL) (D.D.C.); and *Beer, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 1:08-CV-01807 (RCL) (D.D.C.).

## Section 9 – Certification of Counsel

I, _____, from the law firm of _____, represent the following Plaintiff Group(s) in this consolidated action: _____.

I have read the foregoing Acknowledgments signed by my client(s) and believe them to be true, accurate, and complete to the best of my knowledge.  I have provided the Trustee with copies of my engagement letter(s), the applicable judgments, and other documents relevant to this distribution.  I am not aware of any other attorneys or law firms involved in this matter, aside from those who are identified in Paragraph 2 of Section 7 of my clients' Final Confidential Distribution Authorization Form.

I certify that the foregoing is true, accurate, and complete to the best of my knowledge, and that if any of the foregoing is willfully false, I am subject to punishment.

**Signature of Counsel:** _____

**Name of Counsel:** _____

**Name of Law Firm:** _____

**Law Firm Address:** _____

**Date Signed:** _____

82839353v.9

## Exhibit A – Change of Address Form for Changes After FCDA Is Returned.
## Do not return this form with your FCDA.  Keep it for future changes of address.

If your address has changed, complete, sign and mail this form to:

Peterson QSF Distribution Administrator
PO Box 4349
Portland, OR  97208-4349

My address has changed.  My new address is:

_____

_____

_____

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

**Questions?  Call 1-800-773-7598.**

82839353v.9

# Exhibit B – Structured Settlement Documents

I have attached my required structured settlement documents as Exhibit B and these documents are incorporated into my FCDA as indicated by my signature below:

**Signature of Plaintiff or Legal Representative:** _____

**Print name of Plaintiff:** _____

**Print name of Legal Representative, if applicable:** _____

**Date Signed:** _____

82839353v.9